# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VIASAT, INC.,<br><br>Defendant. | Civil Action No. 1:25-cv-00927-KMN (Hon. Keli M. Neary) |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS
## <u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ...................................................................................................1

RELEVANT ALLEGATIONS AND FACTS ..........................................................2

I.    The Allegations in the Complaint...................................................................2

II.   Viasat's Extrinsic Evidence ..........................................................................3

APPLICABLE LEGAL STANDARDS....................................................................4

I.    Rule 12(b)(1) – Lack of Standing / Subject Matter Jurisdiction ...................4

II.   Rule 12(b)(6) – Failure to State a Claim for Relief.......................................5

ARGUMENT ..........................................................................................................6

I.    The Entire Complaint Should Be Dismissed Under Rule 12(b)(1) Because Extrinsic Evidence Shows Plaintiff Lacks Article III Standing. ....................6

II.   In the Alternative, The Entire Complaint Should Be Dismissed Under Rule 12(b)(6) For Failure to State a Claim for Relief Under the TCPA. ................8

     A.    Plaintiff Fails to Sufficiently Plead a Theory of TCPA Liability. .........9

     B.    Plaintiff Also Fails to Plead Sufficient Facts Supporting Other Essential Elements of His Asserted TCPA Claims.............................16

CONCLUSION .....................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Aaronson v. CHW Grp., Inc.*,
   2019 WL 8953349 (E.D. Va. Apr. 15, 2019) .....................................9, 10, 12, 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................5

*Baccari v. Carguard Admin., Inc.*,
   2022 WL 3213839 (E.D. Pa. Aug. 8, 2022) .............................................1, 5, 6, 7

*Ballentine v. U.S.*,
   486 F.3d 806 (3d Cir. 2007) ....................................................................4

*Bank v. Alleviate Tax, LLC*,
   2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024)..................................................15

*Bank v. Vivint Solar, Inc.*,
   2019 WL 2280731 (E.D.N.Y. Feb. 25, 2019) ..................................................15

*Barnes v. SunPower Corp.*,
   2023 WL 2592371 (N.D. Cal. Mar. 16, 2023) .................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................5

*Belleville v. Florida Insur. Services, Inc.*,
   2024 WL 2342337 (S.D. Fla. May 23, 2024)..................................................13

*Bennett v. Celtic Ins. Co.*,
   2022 WL 865837 (N.D. Ill. Mar. 23, 2022) ...................................................11

*Bridges v. Torres*,
   809 F.App'x 69 (3d Cir. 2020)...................................................................6

*Brown v. Nano Hearing Tech OPCP, LLC*,
   2024 WL 3367536 (S.D. Cal. July 9, 2024) ...................................................14

*CNA v. U.S.*,
   535 F.3d 132 (3d Cir.2008) ......................................................................5

*Constitution Party of Pennsylvania v. Aichele*,
   757 F.3d 347 (3d Cir. 2014) .....................................................................5

*Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*,
   450 F.3d 130 (3d Cir. 2006) .....................................................................6

*Cunningham v. Daybreak Solar Power, LLC*,
   2023 WL 3985245 (N.D. Tex. June 13, 2023)............................................13, 16

*Dobronski v. Russo*,
    2024 WL 4363118 (E.D. Mich. Sept. 30, 2024) .................................................14

*Dobronski v. Selectquote Ins. Servs.*,
    462 F. Supp. 3d 784 (E.D. Mich. 2020) ............................................................18

*Dobronski v. Selectquote Ins. Servs.*,
    773 F. Supp. 3d 373 (E.D. Mich. 2025) ............................................................19

*Dobronski v. Selectquote Ins. Servs.*,
    2025 WL 900439 (E.D. Mich. Mar. 25, 2025)....................................................19

*Dobronski v. Total Ins. Brokers, LLC*,
    2021 WL 4452218 (E.D. Mich. Sept. 29, 2021) .................................................18

*Doyle v. GoHealth, LLC*,
    2023 WL 3984951 (D.N.J. Mar. 30, 2023) .............................................9, 14, 15

*Doyle v. Matrix Warranty Sols., Inc.*,
    2023 WL 4188313 (D.N.J. June 26, 2023)....................................................9, 16

*Eggleston v. Reward Zone USA LLC*,
    2022 WL 886094 (C.D. Cal. Jan. 28, 2022)........................................................17

*Frank v. Cannabis & Glass, LLC*,
    2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ...................................................11

*Gillam v. Reliance First Capital, LLC*,
    2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ....................................................17

*Hall v. Xanadu Mktg., Inc.*,
    682 F. Supp. 3d 1278 (N.D. Ga. 2023)................................................................7

*Hurley v. Messer*,
    2018 WL 4854082 (S.D.W.Va. Oct. 4, 2018) ...................................................10

*In re Dish Network, LLC*,
    2013 WL 1934349, 28 FCC Rcd. 6574 (2013) ...........................................10, 11

*In re Rules & Regs. Implementing the TCPA*,
    30 FCC Rcd. 7961 (2015)...........................................................................6, 11

*Katz v. Caliber Home Loans, Inc.*,
    2023 WL 5311488 (N.D. Tex. Aug. 17, 2023) ..................................................12

*Katz v. CrossCountry Mortg., LLC*,
    2022 WL 16950481 (N.D. Ohio Nov. 15, 2022)................................................17

*Klein v. Just Energy Grp., Inc.*,
    2016 WL 3539137 (W.D. Pa. June 29, 2016) ...................................................10

*Landy v. Nat. Power Sources, LLC*,
    2021 WL 3634162 (D.N.J. Aug. 17, 2021) ...................................................9, 12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
　572 U.S. 118 (2014)............................................................................4, 6

*Lujan v. Defenders of Wildlife*,
　504 U.S. 555 (1992)................................................................................4

*Maldonado-Rodriguez v. Citibank, N.A.*,
　2013 WL 350814 (N.D. Ind. Jan. 28, 2013)........................................14

*Matthews v. Senior Life Ins. Co.*,
　2025 WL 1181789 (E.D. Va. Apr. 22, 2025) ......................................15

*Meyer v. Cap. All. Grp.*,
　2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) .......................................18

*Morse v. Lower Merion Sch. Dist.*,
　132 F.3d 902 (3d Cir. 1997) ...................................................................6

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
　549 F.2d 884 (3d Cir. 1977) ...................................................................5

*Murray v. Choice Energy, LLC*,
　2015 WL 4204398 (S.D. Ohio July 10, 2015).....................................12

*Nelums v. Mandu Wellness, LLC*,
　2023 WL 5607594 (D.N.M. Aug. 30, 2023) ........................................10

*Pascal v. Agentra, LLC*,
　2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) ........................................9

*Public Int. Research of NJ v. Powell Duffryn*,
　913 F. 2d 64 (3rd. Cir. 1990) ..................................................................5

*Rogers v. Assurance IQ, LLC*,
　2023 WL 2646468 (W.D. Wash. Mar. 27, 2023)...........................12, 16

*Santiago v. Warminster Township*,
　629 F.3d 121 (3d. Cir. 2010) ..................................................................6

*Scruggs v. CHW Grp., Inc.*,
　2020 WL 9348208 (E.D. Va. Nov. 12, 2020) ................................11, 15

*Sheski v. Shopify (USA) Inc.*,
　2020 WL 2474421 (N.D. Cal. May 13, 2020).......................................10

*Smith v. Direct Building Supplies, LLC*,
　2021 WL 4623275 (E.D. Pa. Oct. 7, 2021) .......................9, 10, 11, 15

*Smith v. Vision Solar LLC*,
　2020 WL 5632653 (E.D. Pa. Sept. 21, 2020)...........................9, 10, 11

*Spokeo, Inc. v. Robins*,
　578 U.S. 330 (2016)................................................................................4

*St. Louis Heart Ctr., Inc. v. Nomax, Inc.*,
    899 F.3d 500 (8th Cir. 2018), *cert. denied,* 139 S. Ct. 1198 (2019) ................... 7

*Stewart v. Network Cap. Funding Corp.*,
    549 F. Supp. 3d 1058 (C.D. Cal. 2021) ............................................................... 7

*Warnick v. Dish Network LLC*,
    301 F.R.D. 551 (D. Colo. 2014) ........................................................................ 16

*Weingrad v. Top Healthcare Options Ins. Agency Co.*,
    2024 WL 4228149 (E.D. Pa. Sept. 17, 2024) .................................................... 17

*Winner v. Kohl's Dept. Stores, Inc.*,
    2017 WL 3535038 (E.D. Pa. Aug. 17, 2017) ...................................................... 7

*Woodard v. Health Ins. All.*,
    2024 WL 942629 (N.D. Ill. Mar. 5, 2024) ........................................................ 12

*Worsham v. Travel Options, Inc.*,
    2016 WL 4592373 (D. Md. Sept. 2, 2016) ........................................................ 18

*Zarichny v. Complete Payment Recovery Servs., Inc.*,
    80 F. Supp. 3d 610 (E.D. Pa. 2015) .................................................................. 16

**Statutes**

47 U.S.C. § 227 ........................................................................................... passim

47 U.S.C. § 227(c)(5) ................................................................................... 8, 16

**Other Authorities**

47 C.F.R. § 64.1200(c)(2) .............................................................................. 8, 17

47 C.F.R. § 64.1200(f)(15) ................................................................................ 17

47 C.F.R. § 64.1601(e) ............................................................................... 8, 9, 18

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................ passim

Fed. R. Civ. P. 12(b)(6) ................................................................................ passim

## INTRODUCTION

Plaintiff Asher Bronston conclusorily alleges that Viasat, Inc. violated certain provisions of the Telephone Consumer Protection Act ("TCPA") by placing two calls to his cell phone. *See generally* Dkt. 1. But the extrinsic evidence submitted with this Motion shows ***Plaintiff did not receive a phone call from or on behalf of Viasat***, and thus lacks Article III standing to pursue this action.[1] In reality, it was the ***Plaintiff who called Viasat***—not the other way around. In other words, Plaintiff's alleged "injuries" in this case are simply non-existent and not attributable to Viasat even at the most basic level given the evidence, let alone "fairly traceable" to Viasat as is required to have Article III standing to bring a TCPA claim. The Complaint should therefore be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of federal subject matter jurisdiction. *See, e.g., Baccari v. Carguard Admin., Inc*., 2022 WL 3213839, at *2–3 (E.D. Pa. Aug. 8, 2022) (dismissing a TCPA complaint under 12(b)(1) where defendants presented extrinsic "evidence directly contradicting the bases for [Plaintiff]'s standing").

In the alternative, Plaintiff's Complaint is facially defective and should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Among other deficiencies, Plaintiff baldly concludes, without any requisite factual support, that he received calls either from Viasat itself "and/or" from unidentified "affiliates, agents, and/or other persons or entities acting on [its] behalf." Dkt. 1, ¶ 50, 52, 56, 58. But

---

[1] *See generally* Declaration of Greg Henderson ("Henderson Decl."), attached hereto.

Plaintiff's Complaint fails to meaningfully connect the relevant calls to Viasat. Nor does it plausibly establish that Viasat bears any legal responsibility for the calls or that they even violated the TCPA in the first instance. Such threadbare allegations do not meet federal pleadings standards and cannot survive dismissal at the pleadings stage in a TCPA case. Therefore, for the reasons outlined above and discussed below, Plaintiff's entire Complaint should be dismissed under Rules 12(b)(1) and/or 12(b)(6).

## RELEVANT ALLEGATIONS AND FACTS

### I.      The Allegations in the Complaint

Plaintiff's Complaint alleges (or, rather, concludes) that Plaintiff "received at least two telemarketing calls from the Defendant on April 19, 2024" made to his purported "residential" cell phone number—a number he claims "has been listed on the National Do Not Call Registry for over a year prior to the calls at issue." Dkt. 1, ¶¶ 18, 20, 22 24. The first call at issue allegedly occurred at 2:12 p.m. and originated from someone using the phone number (931) 413-8533. *Id*., ¶ 25. "During this call, the Plaintiff spoke with an [unidentified] individual who stated he was calling from Viasat and was attempted to be sold Viasat's internet services [*sic*]." *Id*., ¶ 26. Plaintiff alleges that he told the caller he was not interested and hung up. *Id*., ¶ 27.

The second call at issue allegedly occurred two minutes later and originated from someone using a different phone number than the first, (530) 235-8385. *Id*., ¶ 29. This second unidentified caller also purportedly "stated they were calling from

Viasat and attempted to sell the Plaintiff Viasat's services." *Id*. Plaintiff claims that "[a]s a result of the second call, [he] received an email from the Defendant and his card attempted to be charged [*sic*] for Defendant's services." *Id*., ¶ 31. The Complaint includes a partial screenshot of this purported email. *Id*., ¶ 32. Notably, it contains no sender email address or anything else reflecting Viasat itself sent the message. *Id.*

Though Plaintiff does not allege what his cell phone's caller ID displayed at the time of these calls, he vaguely avers that his counsel has the ability to query "the Caller ID database of the calling carrier" to show what caller ID information would have been displayed, and that the carrier was "transmitting a geographic location instead of the caller's name." *Id*., ¶¶ 33-34. Yet, Plaintiff provides no factual support for his conclusion the "carrier" his counsel queried has any connection to Viasat; and he pleads nothing remotely connecting Viasat to the alleged callers' phone numbers.

Nevertheless, based on these threadbare allegations, Plaintiff baldly concludes that "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA." *Id*., ¶¶ 50, 52, 56, 58.

## II.     <u>Viasat's Extrinsic Evidence</u>

Extrinsic evidence submitted with this Motion tells a much different story. In reality, Plaintiff did <u>not</u> receive any calls from or on behalf of Viasat, as alleged. *See* Henderson Decl., ¶¶ 8-13. Indeed, Viasat (i) does not own, use, or have any connection with the numbers allegedly used to call Plaintiff, (ii) has no records of any calls being

made to Plaintiff's number, (iii) does not make any outbound marketing calls at all, and (iv) forbids others from making such calls on its behalf. *Id*. Instead, available records show that Plaintiff made an inbound call to inquire about Viasat's internet services, and that he agreed to purchase Viasat's services. *Id*., ¶ 12 and Exhibit A thereto. Perhaps worst of all, Plaintiff's call to Viasat took place at the ***exact same time*** Plaintiff's Complaint alleges Viasat called Plaintiff in violation of the TCPA. *Id*.

## APPLICABLE LEGAL STANDARDS

### I.    Rule 12(b)(1) – Lack of Standing / Subject Matter Jurisdiction

Rule 12(b)(1) mandates dismissal of a complaint for lack of federal subject matter jurisdiction where, as here, a federal plaintiff fails to establish his or her standing under Article III of the United States Constitution. *See, e.g., Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007). To show Article III standing and avoid dismissal under Rule 12(b)(1), Plaintiff bears the sole burden of demonstrating that: (1) he suffered a concrete and particularized "injury in fact," (2) there is a causal connection between the injury and the alleged unlawful conduct complained of (*a.k.a.* "causation" or "traceability"), and (3) the injury is capable of being redressed via a favorable decision (*a.k.a.* "redressability"). *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

As relevant here, the second element requires that the alleged "injury in fact" be "fairly traceable" only to the defendant's conduct. *Lexmark Int'l, Inc. v. Static*

*Control Components, Inc*., 572 U.S. 118, 125 (2014). To meet it, a plaintiff must show there was a "substantial likelihood" that the defendant's conduct caused the alleged harm. *Public Int. Research of NJ v. Powell Duffryn*, 913 F. 2d 64, 72 (3rd. Cir. 1990).

Further, a defendant can raise either a "facial" or a "factual" challenge to a plaintiff's standing. *Baccari*, 2022 WL 3213839, at *2 (citations omitted). A factual challenge, as Viasat makes here, "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *CNA v. U.S.,* 535 F.3d 132, 139 (3d Cir. 2008) (cleaned up). Put differently, a factual challenge argues "that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). In evaluating a factual challenge, "evidence outside of the pleadings may be weighed and considered, and 'no presumptive truthfulness attaches' to the facts pled in the [C]omplaint." *Baccari*, 2022 WL 3213839, at *2 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

## II.    <u>Rule 12(b)(6) – Failure to State a Claim for Relief</u>

Bare assertions or conclusory allegations will not suffice to avoid dismissal under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While this Court must accept well-pled factual allegations as true under Rule 12(b)(6), it need not accept

conclusory allegations or bare legal conclusions, nor must the court draw unwarranted or unreasonable inferences from the Complaint. *See, e.g., Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 133 (3d Cir. 2006); *Bridges v. Torres*, 809 F.App'x 69, 71 (3d Cir. 2020); *Santiago v. Warminster Township,* 629 F.3d 121, 128 (3d. Cir. 2010); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

## **ARGUMENT**

As the FCC noted, the TCPA unwittingly spawned a cottage industry of class action litigation in this country, "has strayed far from its original purpose" as a beneficial remedial statute, and has "become the poster child for lawsuit abuse" ever since its enactment. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015). Thus, given this potential for abuse by profit-seeking plaintiffs and their counsel, federal courts across the country (particularly in this Circuit) have strictly held TCPA plaintiffs to applicable pleadings standards. Plaintiff here fails to satisfy those standards and, more fundamentally, simply lacks standing as a factual matter.

I.    **The Entire Complaint Should Be Dismissed Under Rule 12(b)(1) Because Extrinsic Evidence Shows Plaintiff Lacks Article III Standing.**

As a threshold issue, the Complaint must be dismissed under Rule 12(b)(1) because Plaintiff lacks Article III standing, as evidence shows that he did not suffer any "injury in fact" that is "fairly traceable" to Viasat. *See Lexmark*, 572 U.S. at 125.

The *Baccari* case cited above is highly instructive on this point, as the facts are closely analogous to those at bar. There, the plaintiff filed a TCPA complaint claiming

a third-party made certain phone calls on behalf of the defendant. Like in the present case, those claims were supported by a variety of purely conclusory allegations. *See* 2022 WL 3213839, at *3. The defendant asserted an Article III factual standing challenge under Rule 12(b)(1), and submitted extrinsic evidence, including a sworn declaration from a corporate officer, "directly contradicting the bases for [plaintiff's] standing." *Id*. This evidence showed that the defendant had no connection to the alleged calls. In fact, like ViaSat does, the defendant in *Baccari* "contractually prohibited" the alleged third-party caller from making telemarketing calls, thereby "break[ing] the factual link" between the defendant and the plaintiff's alleged harm. *Id*. Accordingly, the court dismissed the entire complaint under Rule 12(b)(1). *Id*.[2]

Here, Viasat's extrinsic evidence shows Viasat has no connection with the two alleged calls in this case (and likewise contractually prohibits telemarketing), and therefore that Plaintiff did not suffer an injury-in-fact traceable to Viasat. *See* Henderson Decl., ¶¶ 8-13. Indeed, Plaintiff did not suffer any injury at all in this case, as he did not receive any call from or on behalf of Viasat. *Id*. Rather, the evidence shows that **Plaintiff** placed an **inbound** call lasting over 23 minutes to inquire about

---

[2] *Baccari* does not stand alone, and many other courts in this Circuit and nationally have dismissed TCPA cases in response to factual standing challenges under Rule 12(b)(1) where, as here, evidence showed the plaintiff lacked an injury traceable to the defendant. *See, e.g., Winner v. Kohl's Dept. Stores, Inc.,* 2017 WL 3535038, at *7-8 (E.D. Pa. Aug. 17, 2017); *Stewart v. Network Cap. Funding Corp*., 549 F. Supp. 3d 1058, 1059 (C.D. Cal. 2021); *Hall v. Xanadu Mktg., Inc.,* 682 F. Supp. 3d 1278, 1285-1286 (N.D. Ga. 2023); *St. Louis Heart Ctr., Inc. v. Nomax, Inc.,* 899 F.3d 500, 504 (8th Cir. 2018), *cert. denied,* 139 S. Ct. 1198 (2019). This Court should rule similarly.

Viasat's services and voluntarily gave his credit card number (presumably so he could cite a declined charge in his Complaint). Worse, this evidence shows the second call Plaintiff alleges was placed to his cell phone number "at 2:14 pm" on April 19, 2024, which supposedly lasted "twenty-five minutes and twenty-three seconds," thus ending around 2:39 pm, simply ***could not have occurred***. Dkt. 1, ¶ 29. That is because he placed his 23-minute inbound call using the same number at 2:17 p.m. the same day, just three minutes after he alleges he received the second call from or on behalf of Viasat, and while he was apparently still on that second alleged call. *See* Henderson Decl., ¶ 12 and Exhibit A thereto. Consequently, as a factual matter, Plaintiff lacks Article III standing, which deprives this Court of federal subject matter jurisdiction. The entire Complaint should be dismissed under Rule 12(b)(1) for this reason alone.

## II.    <u>In the Alternative, The Entire Complaint Should Be Dismissed Under Rule 12(b)(6) For Failure to State a Claim for Relief Under the TCPA.</u>

Beyond his obvious lack of standing, Plaintiff's Complaint is also subject to dismissal on its face under Rule 12(b)(6) for failure to state a claim. In Count I (*see* ¶¶ 49-53), Plaintiff invokes the TCPA's "Do Not Call" ("DNC") rules which, in pertinent part, prohibit "initiat[ing]" more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). In Count II (*see* ¶¶ 55-59), Plaintiff invokes 47 C.F.R. § 64.1601(e), which contains technical regulations relating

to Caller ID requirements. As demonstrated below, however, Plaintiff failed to plausibly allege such claims with sufficient supporting facts in several key ways.

### A. Plaintiff Fails to Sufficiently Plead a Theory of TCPA Liability.

As myriad district courts in and beyond this Circuit have recognized, there are only two potential theories of TCPA liability that must be adequately plead in <u>all</u> cases to avoid a dismissal under Rule 12(b)(6): direct liability and vicarious liability. *See, e.g., Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021); *Smith v. Vision Solar LLC*, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (citing *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019)); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023); *Doyle v. Matrix Warranty Sols., Inc.,* 2023 WL 4188313, at *4 (D.N.J. June 26, 2023); *Landy v. Nat. Power Sources, LLC,* 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021) (each dismissing TCPA cases on these grounds). As one court summarized, "for a person to 'make' [or 'initiate'] a call under the TCPA [and thus be subject to any TCPA liability], the person must either (1) directly make the call, or (2) have [a common law] agency relationship with the person who made the call." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (citation omitted).

Further, it is also well-settled that failure to allege facts, pled in accordance with federal pleading standards, supporting such theories warrants a <u>complete</u> dismissal of <u>any</u> TCPA claim at the pleadings stage, regardless of whether there are facts pled

supporting other essential elements of their claims. *See, e.g., Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the [subject] text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims.). *See also Hurley v. Messer*, 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (recognizing plaintiffs must plead such theories without the benefit of discovery). Here, Plaintiff's Complaint fails to allege either a direct or vicarious liability theory, warranting its complete dismissal.

For direct liability, federal law is clear that the TCPA applies <u>only</u> to persons or entities that "initiate" or "make" telemarketing calls, which means to actually "***physically place***" the calls at issue directly to the plaintiff. *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)) (emphasis added). *Accord Direct Building Supplies*, 2021 WL 4623275, at *3 (citing, *inter alia*, *Aaronson*); *Vision Solar*, 2020 WL 5632653, at *3 (same); *Klein v. Just Energy Grp., Inc.*, 2016 WL 3539137, at *8 (W.D. Pa. June 29, 2016) (citation omitted).

It is not enough to allege that a third party placed calls on the defendant's behalf to state a direct TCPA liability theory, which "generally does not include persons or entities … that might merely have some [indirect] role, however minor, in the causal

chain that results in the making of a telephone call." *In re Dish Network, LLC*, 28 FCC Rcd. at 6583; *see also Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at \*3 (N.D. Ill. Mar. 23, 2022) (dismissing on this basis, holding "a [TCPA] defendant 'generally does not [physically] initiate calls placed by third-party telemarketers,' even if the third party had acted on its behalf"). In short, there must be a "direct connection between a person or entity and the making of a call" for direct liability. 30 FCC Rcd. at 7980.

Here, Plaintiff concludes he "received at least two telemarketing calls from the Defendant on April 19, 2024" that were "made" by Viasat. Dkt. 1, ¶¶ 25-29. As countless district courts in this Circuit and elsewhere have found, however, "[m]erely alleging that [a defendant or an agent] 'made' or 'initiated' [a] call" without further plausible factual enhancement "is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal on this basis under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at \*2 (E.D. Wash. Oct. 1, 2019). *See also Direct Building Supplies,* 2021 WL 4623275, at \*3 ("'[A]t the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that [physically] made the calls to plaintiff's cellular phone.'" (quoting *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at \*10 (E.D. Va. Nov. 12, 2020); *Vision Solar*, 2020 WL 5632653, at \*3 (finding that the plaintiff's allegations that the "[d]efendant contacted or attempted to contact [plaintiff] from multiple telephone numbers confirmed to belong to [d]efendant" were insufficient for direct liability, standing

alone); *Landy,* 2021 WL 3634162, at *3 (finding no direct liability where plaintiff did not sufficiently allege the defendant itself physically placed the call); *Aaronson,* 2019 WL 8953349, at *2 (holding that "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls" and dismissing on this basis where, as here, plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue"); *Woodard v. Health Ins. All.,* 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024) (dismissing on this basis, holding that all "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal"); *Rogers v. Assurance IQ, LLC,* 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing on this basis where, as here, "[p]laintiffs have not pleaded any *facts* supporting their inference that [said defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)).

In fact, courts have widely recognized that even a call allegedly "from" the defendant, as Plaintiff avers here, is not enough to plead a direct TCPA liability theory. *See, e.g., Katz v. Caliber Home Loans, Inc.,* 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023) (dismissing where plaintiff alleged an "unidentified caller 'offered the Defendant's services from the Caliber Home Loan Mortgage Refinance Team'"); *Murray v. Choice Energy, LLC,* 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015)

(dismissing, even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls"); *Belleville v. Florida Insur. Services, Inc.,* 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part and rejected in part,* 2024 WL 2794108 (May 31, 2024) (dismissing, even though caller expressly stated the call was "from" the defendant).

That the alleged caller mentioned the defendant's name or products, or that the defendant sent a follow up communication, also does not plausibly establish direct TCPA liability, standing alone. *See, e.g., Cunningham v. Daybreak Solar Power, LLC,* 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) (dismissing, use of defendant's name in voicemail alone insufficient); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (dismissing, even though one plaintiff spoke to someone "who identified herself as working for" defendant, and the other received an email from defendant after the call). That is because courts recognize companies often hire third parties to handle their outbound communications. Calls from a third-party call vendor would naturally identify the defendant by name, and may result in subsequent communications (emails) identifying the defendant, like Plaintiff alleges. But such calls are not "physically placed" by the defendant and thus cannot support direct TCPA liability. In sum, these cases show how the alleged content of a call alone is not dispositive of direct liability, and more factual enhancement is needed.

13

As applied here, it is readily apparent that Plaintiff here tries to skirt the issue by adopting a flawed "either/or" pleading approach. *See, e.g.,* Dkt. 1, ¶ 50, 52, 56, 58 (concluding without factual support that the subject calls were placed either by Viasat itself "and/or" by countless unidentified third party "affiliates, agents, and/or other persons or entities acting on [its] behalf."). But it is well established that allegations of this type—"defendant or its agent called me"—are insufficient to plausibly allege direct TCPA liability. *See*, *e.g.*, *Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing on this basis where plaintiff concluded the caller's "numbers belonged to [defendant] Nano or Nano's agent," without supporting facts suggesting the defendant physically placed each call directly to plaintiff); *Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (dismissing on this basis, holding that plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" was insufficient to plead any theory of TCPA liability); *Doyle,* 2023 WL 3984951, at *4–6 (ruling similarly and dismissing).[3]

As these cases and many others show, the precise identity of the caller is the critical threshold element for establishing direct TCPA liability and, at the pleadings stage, this requires factual allegations (not conclusions) that plausibly suggest the defendant itself placed the subject calls. As one court noted, "simply asserting a

---

[3] Indeed, courts have found such allegations are "woefully insufficient to state a claim of ***any sort***." *Maldonado-Rodriguez v. Citibank, N.A.,* 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013) (emphasis added). Such is particularly true in the TCPA context.

purported fact does not make it one, where there are no factual allegations to support the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024) (dismissing on this basis). Plaintiff here has done no better.

Moreover, with respect to direct liability, Plaintiff's Complaint is perhaps more notable for what facts it <u>omits</u> on this front. For example, Plaintiff does <u>not</u> allege any facts indicating, *inter alia*, that (i) Viasat owns or uses the alleged callers' numbers, (ii) he called those numbers back and reached Viasat, (iii) he ever spoke to a Viasat employee, or (iv) Viasat's name appeared on his Caller ID (in fact, he pleads a name was not displayed). Such facts, if pled, could support an inference of direct TCPA liability, as other courts have recognized. *See, e.g., Direct Building Supplies,* 2021 WL 4623275, at *3; *Doyle*, 2023 WL 3984951, at *4–6; *Aaronson*, 2019 WL 8953349, at *2; *Bank v. Vivint Solar, Inc.*, 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (each dismissing on this basis where complaint lacked such specific facts about the numbers, calls, and callers at issue). That Plaintiff did not plead such facts, which should be within his knowledge, warrants dismissal of his Complaint on direct liability grounds. *See also Matthews v. Senior Life Ins. Co.*, 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025) (holding "[a]s a party to these calls, [p]laintiff[s] 'should be able to provide greater detail" in their complaints) (quoting *Scruggs,* 2020 WL 9348208, at *3).

Lastly, Plaintiff also fails to plead facts suggesting Viasat can be held vicariously liable. Beyond using legal buzzwords suggestive of agency (which are not facts), Plaintiff does not plead anything supporting an inference Viasat had any "control" over a third party "agent" and its call campaign, which is the key touchstone of agency (and thus vicarious liability) under the TCPA and must also be pled to avoid dismissal. *See, e.g., Doyle.,* 2023 WL 4188313, at *4; *Cunningham,* 2023 WL 3985245, at *3; *Rogers*, 2023 WL 2646468, at *6 (each dismissing for same reasons). Absent facts suggesting Viasat's control over a third-party and its call campaign, dismissal of the Complaint on vicarious liability grounds is warranted. *See, e.g., Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 619 (E.D. Pa. 2015) (dismissing where plaintiff did not plead facts supporting agency theories.).

### B. Plaintiff Also Fails to Plead Sufficient Facts Supporting Other Essential Elements of His Asserted TCPA Claims.

The Complaint should also be dismissed under Rule 12(b)(6) because Plaintiff fails to plead sufficient facts supporting other essential elements of his two claims.

For example, as to Count I, Section 227(c) of the TCPA "relates solely to telemarketing and solicitation calls." *Warnick v. Dish Network LLC,* 301 F.R.D. 551, 558 fn. 3 (D. Colo. 2014). Consequently, to survive dismissal here, Plaintiff must also plead plausible facts suggesting his receipt of a "telephone solicitation"—which is defined in the TCPA's implementing regulations as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in,

property, goods, or services, which is transmitted to any person" without their "prior express invitation or permission." 47 C.F.R. §§ 64.1200(c)(2), (f)(15).

Applying federal pleading standards, courts have often dismissed DNC claims under Rule 12(b)(6) where the plaintiff omits facts, beyond bald conclusions parroting the statute, supporting an inference that a call they received constituted a "telephone solicitation." *See, e.g., Weingrad v. Top Healthcare Options Ins. Agency Co*., 2024 WL 4228149, at \*3–4 (E.D. Pa. Sept. 17, 2024) (dismissing DNC claim where plaintiff "only plead[ed] [that] 'the purpose of the [subject] call was to sell the Plaintiff health insurance"); *Eggleston v. Reward Zone USA LLC,* 2022 WL 886094, at \*7 (C.D. Cal. Jan. 28, 2022) (dismissing DNC claim where "Plaintiff simply relies on conclusory labels such as 'advertisement' and 'promotion' without any supporting factual detail"); *Katz v. CrossCountry Mortg., LLC*, 2022 WL 16950481, at \*6 (N.D. Ohio Nov. 15, 2022) (dismissing and holding "[w]ithout factual allegations as to the content of [the calls], [p]laintiff's [complaint] fails to properly allege that such calls were solicitations under the TCPA"); *Gillam v. Reliance First Capital, LLC*, 2023 WL 2163775, at \*3 (E.D.N.Y. Feb. 22, 2023) (dismissing DNC claim where plaintiff "failed to allege sufficient facts regarding the content of the calls from which the [c]ourt could infer that the purpose of the calls was to encourage 'the purchase or rental of, or investment in, property, goods, or services'" and "merely conclude[d], without any factual support, [defendant's] agent 'solicit[ed] refinancing products'").

17

This Court should dismiss Count I for this same reason. Plaintiff merely relies on conclusory labels without factual enhancement, vaguely asserting he "was attempted to be sold Viasat's internet services" on these calls. Dkt. 1, ¶ 26; *see also id.*, ¶ 30 ("The purpose of the Defendant's calls was to sell the Plaintiff satellite internet services."). The authorities above show that such conclusory allegations are insufficient to allege receipt of a "telephone solicitation" fitting the definition above.

For Count II, Plaintiff invokes 47 C.F.R. § 64.1601(e) of the TCPA's implementing regulations, which relate to technical Caller ID requirements. But since Plaintiff does not plead facts connecting Viasat to the subject calls (*e.g.,* that Viasat owns or is connected with the phone numbers allegedly used to call Plaintiff) as discussed above, he has not plausibly alleged Viasat is responsible for such a violation.

Moreover, many other courts have thoroughly analyzed the statute and dismissed claims based Section 64.1601(e) because those regulations ***do not afford consumers a private cause of action***. *See, e.g., Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 790 (E.D. Mich. 2020); *Dobronski v. Total Ins. Brokers, LLC*, 2021 WL 4452218, at *3 (E.D. Mich. Sept. 29, 2021); *Meyer v. Cap. All. Grp.,* 2017 WL 5138316, at *15 (S.D. Cal. Nov. 6, 2017) (same); *Worsham v. Travel Options, Inc.,* 2016 WL 4592373, at *3-4 (D. Md. Sept. 2, 2016). As the *Worsham* court concluded, "[a]ny violation of § 64.1601(e) is a violation of technical and procedural standards under subsection *d,* and as earlier noted, no private right of action exists

under the latter subsection of the TCPA." This Court should rule similarly here and

dismiss Count II of the Complaint under Rule 12(b)(6) given this legal defect, as well.[4]

## CONCLUSION

For all the reasons provided above, the Court should dismiss the Complaint.

Dated: July 17, 2025                          Respectfully submitted,

                                         */s/ Frederick P. Santarelli*
                                         FREDERICK P. SANTARELLI (PA 53901)
                                         STEVEN C. TOLLIVER, JR. (PA 327165)
                                         ELLIOTT GREENLEAF, P.C.
   Union Meeting Corporate Center V
   925 Harvest Drive, Suite 300
   Blue Bell, PA 19422
   (215) 977-1000 (phone)
   (215) 977-1099 (fax)
   FPSantarelli@elliottgreenleaf.com
   sct@elliottgreenleaf.com

   JOHN W. MCGUINNESS
   (*Pro Hac Vice* to be requested)
   A. PAUL HEERINGA
   (*Pro Hac Vice* to be requested)
   MANATT, PHELPS & PHILLIP, LLP
   1050 Connecticut Avenue, NW, Suite 600
   Washington, D.C. 20036
   Telephone: 202-585-6500
   Facsimile: 202-585-6600
   jmcguinness@manatt.com
   pheeringa@manatt.com

   *Counsel for Defendant Viasat, Inc.*

---

[4] Anticipating this argument, Plaintiff's complaint cites to "*Dobronski v. Selectquote Ins. Servs.,* No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025)" (Dkt. 1, ¶ 15), which is a summary judgment decision where the court expressly noted that it was ***ruling against the majority of courts on this issue***. *See Dobronski v. Selectquote Ins. Servs.,* 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025).

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8

I hereby certify that, pursuant to M.D.Pa. Local Rule 7.8(b)(2), this Brief complies with the word-count limitation of Local Rule 7.8, as the Brief contains **4,926 words** (including headings and footnotes but not including the cover page, tables, signature block, or certificates) in 14-point Times New Roman font. This calculation was provided by the word count feature in Microsoft Word.

Dated: July 17, 2025                          */s/ Frederick P. Santarelli*
                                                         FREDERICK P. SANTARELLI

                                                         *Counsel for Defendant Viasat, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I am causing the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon all counsel of record.

Dated: July 17, 2025                              */s/ Frederick P. Santarelli*
                                                          FREDERICK P. SANTARELLI

                                                          *Counsel for Defendant Viasat, Inc.*