# EXHIBIT A

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 2 of 233

Aaronson v. CHW Group, Inc., Not Reported in Fed. Supp. (2019)

KeyCite Yellow Flag - Negative Treatment
Distinguished by Atkinson v. Choice Home Warranty, D.N.J., January 11, 2023

2019 WL 8953349
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Alexandria Division.

Adam AARONSON, Plaintiff,

v.

CHW GROUP, INC., d/b/a Choice Home
Warranty, Defendant.

Case No. 1:18-cv-1533
|
Signed 04/15/2019

**Attorneys and Law Firms**

Richard William Ferris, FerrisWinder PLLC, Richmond, VA, for Plaintiff.

Kyle Reese Elliott, Ogletree Deakins Nash Smoak & Stewart PC, Richmond, VA, for Defendant.

**ORDER**

T. S. Ellis, III, United States District Judge

**\*1** Before the Court in this "robocall" case, brought under the Telephone Consumer Protection Act[1] ("TCPA"), is defendant's motion for judgment on the pleadings filed pursuant to Rule 12(c), Fed. R. Civ. P. The question presented by the motion is whether plaintiff's Complaint alleges facts sufficient to show plausibly that defendant made calls to plaintiff's cellular telephone using an automatic telephone dialing system or an artificial or prerecorded voice, in violation of 47 U.S.C. § 227(b)(1)(A)(iii). Because the Complaint alleges almost no facts concerning the substance or details of the calls at issue, and thus does not raise the probability above a speculative level that defendant made the calls or that defendant did so using automated telephone equipment,

defendant is entitled to judgment on the pleadings.

**I.**

Rule 12(c) provides that "[a]fter the pleadings are closed ... a party may move for judgment on the pleadings." The standard of review for Rule 12(c) motions is the same as the "plausibility standard" governing Rule 12(b)(6) motions. *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014); *Travelers Indem. Co. of Connecticut v. Lessard Design, Inc.*, 321 F. Supp. 3d 631, 635 (E.D. Va. 2018).[2] Thus, "a motion for judgment on the pleadings should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Id.*

**II.**

Plaintiff claims in the Complaint that defendant violated 47 U.S.C. § 227(b)(1)(A)(iii), the provision of the TCPA that prohibits the use of automated telephone equipment to make calls to a cellular telephone. In pertinent part, § 227(b)(1)(A)(iii) states:

> It shall be unlawful for any person within the United States ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service....

The TCPA also provides a private right of action to recover statutory damages for violations of this provision. *Id.* § 227(b)(3)(B). Accordingly, to state a claim under the TCPA, a plaintiff must allege (i) defendant made one or more calls (ii) to plaintiff's cellular phone (iii) using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice. The parties do not dispute that the calls at issue were made to plaintiff's cellular phone. Analysis thus proceeds to examine whether the Complaint alleges sufficient facts to show that defendant made the calls and that defendant did so using one of the statutorily prohibited automated devices.

## III.

**\*2** Defendant first argues that plaintiff failed to allege facts that show defendant made the telephone calls at issue. A TCPA plaintiff can establish that the defendant "made" a call through theories of direct or vicarious liability. *See Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018).

In order to establish that a defendant is directly liable under the TCPA, courts have concluded that the plaintiff must show that the defendant actually, physically initiated the telephone call at issue. *Id.* (collecting cases).[3] Accordingly, at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone. *See id.*; *Gulden v. Consol. World Travel Inc.*, No. CV-16-01113-PHX-DJH, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017); *Sepehry-Fard v. Dep't Stores Nat'l Bank*, 15 F. Supp. 3d 984, 987 (N.D. Cal. 2014), *aff'd in part*, 670 F. App'x 573 (9th Cir. 2016); *Wallace v. Mercantile Adjustments Bureau, Inc.*, No. 14-10387, 2014 WL 1515852, at *3 (E.D. Mich. Apr. 18, 2014).

In this respect, plaintiff fails to plead facts to support his conclusory allegation that defendant called plaintiff's cellular phone. The Complaint is devoid of facts such as how the caller identified itself, the substance of the calls, or any other details from the telephone calls that would tend to identify defendant as the party that actually, physically took the steps to place the calls to plaintiff's phone. The lone *fact* marshalled in the Complaint that even comes close to supporting plaintiff's conclusion that defendant was the party that called his cellular telephone is the allegation that one of the calls made to plaintiff was from a telephone number that, according to the Complaint, "is one of the Defendant's many telephone numbers." Compl. ¶ 11. But without any facts to explain why plaintiff believes the identified phone number is owned by defendant,[4] this allegation amounts to nothing more than another conclusory allegation that defendant made the calls to plaintiff's cellular phone. Therefore, plaintiff has failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations do not show plausibly that defendant actually, physically initiated the telephone calls at issue.

**\*3** On the other hand, to demonstrate that a defendant is vicariously liabile under the TCPA for calls made by an agent or other third party, courts have held that a plaintiff must show that the defendant would be vicariously liable under common law principles of agency. *See, e.g., Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018); *Childress*, 2018 WL 4684209, at *3; *In re:*

*Monitronics Int'l, Inc.*, 223 F. Supp. 3d at 520. It is well-established under such common law principles that an agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at *6 (S.D.N.Y. Nov. 30, 2015) (quoting Restatement (Third) of Agency, § 1.01 (2006)). Thus, at the pleadings stage, plaintiff "must allege *some* facts regarding the relationship between an alleged principal and agent" that show defendant had the right to control the party making the calls; plaintiff "cannot simply allege general control in a vacuum." *Id.* at *7 (emphasis in original).

These principles, applied here, confirm that plaintiff has failed to allege facts to show defendant was vicariously liable for the calls at issue. After repeatedly alleging that defendant itself made the calls to plaintiff's cellular telephone, the Complaint further alleges that, in placing the calls, defendant "acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers." Compl. ¶ 9. This conclusory, boilerplate allegation plainly fails to provide any *facts* to demonstrate an agency relationship between defendant and the party who physically initiated the call. *See Melito*, 2015 WL 7736547, at *7 (stating that "mere conclusory allegations that [the caller] was [the defendant's] agent ... fails to plead an agency relationship ... sufficient to allege vicarious liability under section 227(b)(1)(A)(iii) of the TCPA"). Indeed, the Complaint fails to allege any facts that reflect how the caller identified itself (*e.g.*, as defendant's employee), the substance of the call (*e.g.* a statement by the caller that he or she was marketing defendant's goods or services), or any other details from the telephone calls that would tend to demonstrate an agreement between the caller and defendant that the caller would act on the principal's behalf and subject to the principal's control. Accordingly, it is clear that plaintiff has failed to plead facts sufficient to support a theory of vicarious liability under the TCPA because plaintiff's allegations do not show plausibly that the party who actually, physically initiated the telephone calls at issue was subject to defendant's control in an agency relationship.

## IV.

Defendant next argues that even assuming *arguendo* that the Complaint alleges facts sufficient to show that

defendant made the calls at issue, plaintiff has nonetheless failed to plead facts to show plausibly that defendant did so using an ATDS or an artificial or prerecorded voice.

As an initial matter, it is clear that there is no basis in the Complaint on which to conclude that the calls at issue used an artificial or prerecorded voice. In fact, the Complaint alleges that after plaintiff answered the calls, he was greeted by a live, human representative. Compl. ¶¶ 24, 32. Thus, because plaintiff has not pled "factual allegations suggesting that the voice on the other end of the line was prerecorded" or artificial, plaintiff must instead demonstrate that the calls were made using ATDS. *See Trumper v. GE Capital Retail Bank*, 79 F. Supp. 3d 511, 513 (D.N.J. 2014).

The TCPA defines an ATDS as "equipment which has the capacity ... to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1). As courts have explained, the defining characteristic of an ATDS is the ability to "dial numbers without human intervention." *ACA Int'l v. FCC*, 885 F.3d 687, 695, 703 (D.C. Cir. 2018); *Herrick v. GoDaddy.com LLC*, 312 F. Supp. 3d 792, 801 (D. Ariz. 2018).

**\*4** At the pleadings stage, to demonstrate that a call was made using an ATDS, plaintiff must allege facts to show "why they believe[ ] that an ATDS was used." *Reo v. Caribbean Cruise Line*, Inc., 2016 WL 1109042, at \*4 (N.D. Ohio Mar. 18, 2016).[5] In this respect, given "the difficulty a plaintiff faces in knowing the type of calling system used ... courts can rely on details about the call to infer the use of an ATDS." *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1129–30 (W.D. Wash. 2012). But without more, merely alleging, in a conclusory fashion, that defendant used an ATDS or parroting the statutory definition of an ATDS to describe the equipment used is insufficient to show plausibly that the telephone calls were made to plaintiff's cellular phone via an ATDS. *Baranski v. NCO Fin. Sys., Inc.*, 2014 WL 1155304, at \*6 (E.D.N.Y. Mar. 21, 2014) (holding that "[p]laintiffs must do more than simply parrot the statutory language" defining ATDS and noting that the "vast majority of courts to have considered the issue have found that "a bare allegation that defendants used an ATDS is not enough").

In this respect, plaintiff fails to plead facts to support his conclusory allegation that defendant called plaintiff's cellular phone using an ATDS. Indeed, the majority of the allegations in the complaint amount to nothing more than a formulaic recitation of the statutory definition of an ATDS. *See* Compl. ¶¶ 25–31. The only factual detail alleged by plaintiff with respect to the content or nature of

the calls at issue that could support plaintiff's belief that the call had been made using ATDS is that plaintiff was "*sometimes* greeted with 'dead air' whereby no person was on the other end of the line"; then after "several seconds, an agent was connected" to the call. *Id.* ¶ 24 (emphasis added). Plaintiff also alleges that "the dead air that the Plaintiff *may have experienced* on the calls that he received is indicative of the use of an ATDS." *Id.* ¶ 32 (emphasis added). Putting aside the equivocal nature of these factual allegations, courts have routinely held that a plaintiff cannot support a belief that an ATDS was being used by alleging only that plaintiff experienced "dead air" during the calls at issue. *See, e.g., Norman v. AllianceOne Receivables Mgmt., Inc.*, 637 Fed. Appx. 214, 215 (7th Cir. 2015) (finding that "dead air" was insufficient to create an issue of material fact even though auto dialers frequently result in "dead air"); *Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1308 (S.D. Fla. 2016); *Estrella v. Ltd. Fin. Servs.*, LP, No. 14-cv-2624, 2015 WL 6742062, at \*3 (M.D. Fla. Nov. 2, 2015). Therefore, plaintiff has failed to plead facts sufficient to support his conclusion that defendant made the calls at issue using an ATDS, as is required in order to state a claim under the TCPA.

## V.

Seeking to avoid dismissal, plaintiff advances two arguments that attempt to show defendant's motion for judgment on the pleadings is inappropriate on procedural grounds.

First, plaintiff argues that defendant's motion was filed in bad faith and that the motion unreasonably increases the proceedings. In this regard, plaintiff emphasizes that in a joint motion to vacate the entry of default against defendant in this matter, defendant "agreed to file its answer and affirmative defenses to the Complaint, rather than a Rule 12(b) motion, as its responsive pleading on or before February 15, 2019." Joint Mot. to Vacate, Dkt. 12, ¶ 12. But it appears that defendant did in fact file its Answer on February 15, 2019, as required by this agreement. *See* Answer, Dkt. 13. Moreover, the joint motion to vacate makes clear that neither side "waivi[es] any rights, defenses, objections, or arguments that may be raised later during the course of this litigation," *see* Joint Mot. to Vacate, Dkt. 12, ¶ 12, and specifically recognized that defendant intended to raise the defense of "failure to state a claim under the TCPA," *see id.* ¶ 11. Thus, it does not appear that defendant violated any agreement between the parties or otherwise acted in bad faith by filing its answer, as required, and then later bringing the instant

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Rule 12(c) motion.

**\*5** Second, plaintiff argues that defendant's motion for judgment on the pleadings is inappropriate because defendant, in its Answer, has denied the central allegations of the Complaint. This argument fails because the fact that a defendant, in its answer, has denied allegations in the plaintiff's complaint does not bar the defendant from seeking judgment on the pleadings. *See, e.g., Chalif v. Spitzer*, No. 9:05-CV-1355, 2008 WL 1848650, at \*3, \*14(N.D.N.Y. Apr. 23, 2008) (granting the defendants' motion for judgment on the pleadings, notwithstanding the fact that the defendants, in their answer had "generally denied the material allegations of plaintiff's complaint and asserted various affirmative defenses"). This is so because "when a party moves for judgment on the pleadings pursuant to Rule 12(c), the well-pled factual allegations in the complaint are taken as true, whereas those of the answer are taken as true only to the extent that they have not been denied or do not conflict with the complaint." *Shelton v. Safeway, Inc.*, No. CIV. PJM 10-2358, 2011 WL 1869827, at \*3 (D. Md. May 16, 2011). Accordingly, because resolution

of a motion for judgment on the pleadings turns on whether the factual allegations in the Complaint state a claim to relief that is plausible on its face, it is immaterial whether the defendant has admitted or denied certain allegations in the Complaint. *Meyer Nat. Foods, LLC v. Liberty Mut. Fire Ins. Co.*, 218 F. Supp. 3d 1034, 1037 (D. Neb. 2016).

## VI.

Accordingly, for the reasons stated above,

It is hereby **ORDERED** that defendant's motion for judgment on the pleadings (Doc. 21) is **GRANTED**.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 8953349

Footnotes

1    47 U.S.C. § 227.

2    As the Supreme Court famously held in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007), to state a claim under Fed. R. Civ. P. 12(b)(6), the allegations of the Complaint "must be enough to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face."

3    *See also, e.g. Hurley v. Messer*, No. CV 3:16-9949, 2018 WL 4854082, at \*3 (S.D.W. Va. Oct. 4, 2018); *Vessal v. Alarm.com*, No. 17 C 2188, 2017 WL 4682736, at \*2 (N.D. Ill. Oct. 18, 2017); *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 519 (N.D.W. Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018); *Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at \*5 (M.D. Tenn. Nov. 19, 2014), *report and recommendation approved*, No. 3:14-CV-01574, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015); *Golan v. Veritas Entm't, LLC*, 2014 WL 2095310, at \*4 (E.D. Mo. May 20, 2014).

4    Plaintiff does not allege, for example, that the caller identification feature on his telephone informed him that the phone number belonged to defendant. *Cf. Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 916 (9th Cir. 2012).

5    *See also, e.g., Sprye v. Ace Motor Acceptance Corp.*, No. CV PX 16-3064, 2017 WL 1684619, at \*5 (D. Md. May 3, 2017); *Aikens v. Synchrony Financial*, 2015 WL 5818911, \*3 (E.D. Mich. 2015) report and recommendation adopted, 15 CV 10058, 2015 WL 5818860 (E.D Mich. 2015); Johansen v. Vivant, Inc., 2012 WL 6590551, \*3 (N.D. Ill. Dec. 18, 2012).

**Aaronson v. CHW Group, Inc., Not Reported in Fed. Supp. (2019)**

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 7 of 233

Baccari v. Carguard Administration, Inc., Not Reported in Fed. Supp. (2022)

🚩 KeyCite Yellow Flag

Distinguished by   Nater v. State Farm Mutual Automobile Insurance Co.,
C.D.Ill.,   May 14, 2024

2022 WL 3213839
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Anthony BACCARI, on behalf of himself
and others similarly situated, Plaintiff,
v.
CARGUARD ADMINISTRATION, INC., Defendants.

CIVIL ACTION NO. 22-CV-1952
|
Filed August 8, 2022

**Attorneys and Law Firms**

Alex M. Washkowitz, CW Law Group, P.C., Framingham,
MA, Anthony Paronich, Paronich Law, P.C., Hingham, MA,
Jeremy C. Jackson, Bower Law Associates, PLLC, State
College, PA, for Plaintiff.

Brittany A. Andres, Eric J. Troutman, Troutman Firm, Irvine,
CA, Corey M. Scher, Fox Rothschild LLP, Philadelphia, PA,
Stephanie B. Fineman, Fox Rothschild LLP, Warrington, PA,
for Defendants.

**MEMORANDUM OPINION**

WENDY BEETLESTONE, District Judge

**\*1** Plaintiff Anthony Baccari brings this putative class
action against Carguard Administration, Inc. ("Carguard") for
violation of the Telephone Consumer Protection Act of 1991,
47 U.S.C. § 227, ("TCPA"), after he received telemarketing
calls from an entity which is not part of this litigation but
which he alleges made the calls on behalf of Carguard.
Carguard has filed, in successive order (as shown on the ECF
docket): (1) a motion to dismiss for failure to state a claim
pursuant to Fed. R. Civ. P. 12(b)(6); (2) a motion to strike
pursuant to Fed. R. Civ. P. 12(f); and, (3) a motion to dismiss
for lack of subject matter jurisdiction pursuant to Fed. R. Civ.
P. 12(b)(1).

**I. FACTUAL ALLEGATIONS**

As pled in Baccari's complaint, the facts are plain. Baccari
had placed his cell phone number on the National Do Not
Call Registry. Despite his registration, he began receiving
telemarketing calls in late September 2021 about auto
warranties. During one of the calls, Baccari asked the person
on the other end of the line to identify who he worked for
—and was told it was A-List Marketing Solutions, Inc. ("A-
List"). In the call, the representative tried to sell to Baccari
Carguard's warranty services. Following the call, Baccari
received a proposed service contract from Carguard.

Baccari alleges that Carguard and A-List had a marketing
agreement, and pursuant to that agreement, "A-List
Marketing was contractually required to promote CarGuard
products on their telemarketing calls." He alleges CarGuard
had "day-to-day control over A-List Marketing's actions,"
including by instructing A-List about the number of calls it
should make and the geographies in which it should make
them. Baccari further alleges that Carguard had previously
received complaints about its telemarketing calls and that, in a
statement to the Better Business Bureau, it acknowledged that
it had the power to tell companies like A-List to stop making
its calls.

**II. DISCUSSION**

**A. Motion to Strike**

As an initial matter, Carguard's Motion to Strike pursuant
to Federal Rule of Civil Procedure is untimely because it
falls afoul of Federal Rule of Civil Procedure 12(g)(2), which
provides that "[e]xcept as provided in Rule 12(h)(2) or (3),
a party that makes *a motion under this rule* must not make
*another motion under this rule* raising a defense or objection
that was available to the party but omitted from its earlier
motion." Fed. R. Civ. P. 12 (emphasis added); *see also
Jaroslawicz v. M&T Bank Corp.*, 912 F.3d 96, 105 n.4 (3d
Cir. 2018), *reh'g granted, judgment vacated on other grounds*,
925 F.3d 605 (3d Cir. 2019) (stating that Rule 12(g) "prohibits
a party from making a successive motion to dismiss if that
motion 'rais[es] a defense or objection that was available to
the party but omitted from its earlier motion' " (quoting Fed.
R. Civ. P. 12(g)(2))). The purpose of the Rule is "to prevent
[ ] dilatory motion practice ... a course of conduct that was
pursued often for the sole purpose of delay." 5C Charles Alan
Wright & Arthur R. Miller, Federal Practice and Procedure §
1384 (3d ed. 2022); *see also Aetna Life Ins. Co. v. Alla Med.
Servs., Inc.*, 855 F.2d 1470, 1475 n.2 (9th Cir. 1988) (noting

Case 1:25-cv-00927-KMN   Document 14-1   Filed 07/18/25   Page 8 of 233

Baccari v. Carguard Administration, Inc., Not Reported in Fed. Supp. (2022)

that the purpose of Rule 12(g) is "simple and basic: a series of motions should not be permitted because that results in delay and encourages dilatory tactics"). Consequently, "the right to raise [Rule 12] defenses [and objections] by preliminary motion is lost when the defendant neglects to consolidate them in his initial motion." Wright & Miller, *supra* at § 1385.

**\*2** A motion to strike is "a motion under" Rule 12; specifically, a motion to strike is one made under Rule 12(f). *See* Fed. R. Civ. P. 12(f); *see also* Wright & Miller, *supra* at § 1388 ("Motions to strike ... are motions under Rule 12 and thus clearly are within the language of subdivision (g)."). Because Carguard filed a separate motion to strike *after* it already filed a motion to dismiss pursuant to Rule 12(b)(6), it has failed to comply with Rule 12(g)'s mandate to consolidate all motions "available to [it]" into a single motion.

### B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A reading of Rule 12(g) would also suggest that Carguard should have consolidated this motion for lack of subject matter jurisdiction with its two other motions. But "a challenge to the court's subject matter jurisdiction may be raised at any time and is not subject to the consolidation and waiver provisions [of Rule 12]." Wright & Miller, *supra* at § 1385. Accordingly, the Court will consider Carguard's only argument, which is that Baccari lacks standing to bring this case. *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) ("A motion to dismiss for want of standing is [ ] properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.") To establish standing, a plaintiff must show three elements: injury-in-fact, causation, and redressability. *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014).

Before delving into the standing analysis, however, a determination must first be made as to whether the motion presents a "facial" or "factual" attack on the claims at issue, because that distinction determines how the pleading must be reviewed. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). A facial attack "contests the sufficiency of the pleadings," *id.*, "whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (internal quotation marks omitted) (alterations in original). In

other words, a "facial attack ... is an argument that considers a claim *on its face* and asserts that it is insufficient to invoke the subject matter jurisdiction," while "[a] factual attack ... is an argument that there is no subject matter jurisdiction because *the facts of the case* ... do not support the asserted jurisdiction." *Aichele*, 757 F.3d at 358 (3d Cir. 2014) (emphasis added). To make a factual attack, a challenger must raise "a factual dispute" by "present[ing] competing facts" about the basis for jurisdiction. *Id.; see also Mortensen*, 549 F.2d at 892 n.17 ("A factual jurisdictional [attack] cannot occur until plaintiff's allegations have been controverted.")

When reviewing a facial challenge, "the same standard as on review of a motion to dismiss under Rule 12(b)(6)" is applied; that is, only the allegations in the complaint are examined, and are done so in the light most favorable to the plaintiff. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). When reviewing a factual challenge, on the other hand, evidence outside of the pleadings may be weighed and considered, and "no presumptive truthfulness attaches" to the facts pled in the complaint. *Mortensen*, 549 F.2d at 891.

**\*3** Here, Carguard raises a factual attack, because it presents evidence directly contradicting the bases for Baccari's standing. In particular, Carguard disputes facts in the complaint tending to show that it caused Baccari's injury. The complaint alleges, for example, that "A-list Marketing was contractually required to promote Carguard's products on their telemarketing calls in order to potentially generate new customers." Carguard's CEO, however, attests in a declaration that A-List was "contractually *prohibited* from engaging in any form of telemarketing to market Carguard's products" (emphasis added). The CEO's statement is confirmed by the marketing agreement between Carguard and A-List, (attached as an exhibit to the motion), and the Exclusivity Agreement, (also attached), which clearly states that "[A-List] will not use any form of telemarketing to market the products."

Carguard's declaration raises further factual disputes concerning whether it caused Baccari's injury. For example, the complaint alleges that "Carguard has previously received complaints regarding the telemarketing conduct of its third-party vendors," and that "Carguard was knowingly and actively accepting the business that originated through the illegal telemarketing calls through the issuance of vehicle service contracts." In contrast, Carguard's declaration states that "Carguard was unaware that A-List was making any sort

**Baccari v. Carguard Administration, Inc.,** Not Reported in Fed. Supp. (2022)

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 9 of 233

of prerecorded calls during the timeframes at issue in the Complaint. It would not have accepted any contracts from A-List had it been aware of those facts at the time it accepted the contracts."

When a "defendant contests the jurisdictional allegations ... under oath, then it is incumbent upon the plaintiff to respond to the defendant's sworn factual assertions. In doing so, a conclusory response will not suffice." *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines,* Inc., 673 F.2d 700, 711-12 (3d Cir. 1982). Instead, the plaintiff must present proof of jurisdiction countering the defendant's facts "by affidavits or other sworn proofs." *Id.* Here, Baccari has failed to do just that. In response to the evidence Carguard presented to break the factual link between itself and Baccari's harm, Baccari only provides a lengthy discussion about the law concerning principles of agency, and restates allegations

in the complaint. For example, Baccari merely re-asserts that A-List was "contractually require[d]" to use telemarketing practices to reach customers like himself. Because Baccari has not met his burden to produce evidence responding to Carguard's factual attack, Carguard's motion for lack of subject matter jurisdiction will be granted, and the Complaint will be dismissed without prejudice. Further, as Baccari's complaint is being dismissed for lack of subject matter jurisdiction, Carguard's motion to dismiss it for failure to state a claim will be denied as moot.

An appropriate order follows.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3213839

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1332635
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Todd C. **BANK**, Plaintiff,
v.
**ALLEVIATE TAX**, **LLC**, Defendant.

23-CV-5457 (PKC) (PK)
|
Signed March **28**, **2024**

**Attorneys and Law Firms**

Todd C. **Bank**, Law Office of Todd C. **Bank**, Kew Gardens, NY, for Plaintiff.

Jenniffer Cabrera, Pro Hac Vice, Troutman Amin LLP, Boca Raton, FL, Philip Langer, Fox Rothschild LLP, New York, NY, for Defendant.

**MEMORANDUM & ORDER**

PAMELA K. CHEN, United States District Judge:

**\*1** Plaintiff Todd C. **Bank** ("Plaintiff"), an attorney proceeding *pro se*, brings this action individually and on behalf of three proposed classes against **Alleviate Tax**, **LLC** ("Defendant" or "**Alleviate**"), alleging a violation of Section 227(b)(1) of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1); a violation of the TCPA's Federal Do-Not-Call Registry ("DNCR") regulation, 47 U.S.C. § 227(c)(5), 47 C.F.R. § 64.1200(c)(2); and New York's General Business Law ("GBL") § 399-p.[1] Before the Court is Defendant's motion to dismiss Plaintiff's First Amended Complaint ("FAC"). For the reasons discussed below, Defendant's motion is granted.

**BACKGROUND**

**I. Relevant Facts**[2]
In the present action, Plaintiff alleges that he received three automated calls from Defendant—two on or about June 23, 2023 (FAC ¶¶ 20, 32), and one on or about June 29, 2023 (*id.* ¶ 45). These calls were all made to a residential phone number for which Plaintiff "was a regular user." (*Id.* ¶¶ 21–22; 33–34; 46–47.) "Upon [ ] answering [the call,] ... a message was played that sounded robotic ...." (*Id.* ¶¶ 23, 35, 48.) All three calls "advertised **tax**-debt services," "included and introduced an advertisement," and "constituted telemarketing." (*Id.* ¶¶ 24–26, 36–38, 49–51.)[3] Neither the name or address of the person on whose behalf the message was being transmitted was disclosed at the beginning or the end of the call. (*Id.* ¶¶ 29–31; 40–41; 53–54.) Plaintiff pressed a button on his telephone during the first call he received, on or about June 23, that allegedly "transferred [him] to an employee of **Alleviate** named Jack Patnoe." (*Id.* ¶ 27.) After receiving the second call on or about June 23, Plaintiff called the telephone number provided during the call and an alleged "employee of **Alleviate** came onto the line." (*Id.* ¶¶ 42–44.)

**\*2** Plaintiff did not give "prior express written consent" to receive any of these three calls. (*Id.* ¶¶ **28**, 39, 52.) The three calls "temporarily caused the receiving telephone line to be unavailable for other uses." (*Id.* ¶ 56.) Further, these calls not only "annoyed and frustrated" Plaintiff, but they also "disturbed [his] peace, solitude, and tranquility ...." (*Id.* ¶¶ 57–58.)

**II. Relevant Procedural History**
Plaintiff filed his original complaint on July 19, 2023. (*See generally* Compl., Dkt. 1.) On August 9, 2023, Defendant requested a pre-motion conference ("PMC") on its anticipated motion to dismiss the Complaint and also moved for a stay of discovery pending the resolution of a motion to dismiss. (*See* Dkts. 10, 11.) The Honorable Peggy Kuo granted **Alleviate's** motion to stay discovery the next day. (*See* 8/10/2023 Docket Order.) On August 11, 2023, Plaintiff amended his complaint,[4] which is the operative pleading in this case. (*See* Dkt. 12.) Defendant then filed an amended PMC request on August 25, 2023. (*See* Dkt. 15.)

After reviewing both the amended PMC request and Plaintiff's response letter (Dkt. 16), the Court determined and advised the parties that it would construe Defendant's amended PMC request as the operative motion to dismiss and Plaintiff's response as his opposition. (*See* 9/**5**/2023 Docket Order.) The Court allowed additional letter briefing to supplement the original amended PMC filings, which were submitted to the Court on September 19, 2023. (*See* Dkts. 18, 19.)

**LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Hogan*, 738 F.3d at 514. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guardian Corp.*, 712 F.3d at 718. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In considering a motion to dismiss for failure to state a claim, courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guardian Corp.*, 712 F.3d at 717 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks and citations omitted)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Pension Benefit Guardian Corp.*, 712 F.3d at 717 (quoting *Iqbal*, 556 U.S. at 679).

**\*3** "Although allegations drafted by *pro se* plaintiffs are generally held to less stringent standards than formal pleadings drafted by lawyers, ... *pro se* attorneys cannot claim the special consideration, ... customarily grant[ed] to *pro se* parties." *Appel v. Hayut*, No. 20-CV-6265 (JPC), 2021 **WL** 2689059, at *8 (S.D.N.Y. June 30, 2021), *aff'd sub nom. Appel v. Cohen*, No. 22-170, 2023 **WL** 1431691 (2d Cir. Feb. 1, 2023) (internal quotation marks and citations omitted). "[T]his is because attorneys have knowledge of the law[.]" *Este-Green v. Meta Platform, Inc.*, No. 24-CV-35 (NJC) (AYS), **2024 WL** 99487, at *1 (**E.D.N.Y**. Jan. 8, **2024**) (citing

*Fenner v. City of N.Y.*, No. 08-CV-2355 (BMC) (LB), 2009 **WL** 5066810, at *3 (**E.D.N.Y**. Dec. 21, 2009)).

### DISCUSSION

Defendant argues that the FAC fails to state a claim for the three causes of action Plaintiff brings—one count under Section 227(b)(1) of the TCPA, one count related to the DNCR regulation, and one count under the GBL. The Court finds that Plaintiff has failed to sufficiently plead his TCPA and DNCR claims against **Alleviate** and that these claims must be dismissed. The Court is also denying Plaintiff's request to file an amended complaint to cure the deficiencies in his TCPA and DNCR claims. Because the Court is dismissing the federal claims in this action without leave to amend, it declines to exercise supplemental jurisdiction over Plaintiff's GBL claim.

### I. Plaintiff's TCPA Claims

#### A. Section 227(b) of the TCPA ("TCPA Claim")

Section 227(b)(1)(B) of the TCPA makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States ... *to initiate* any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party[.]" 47 U.S.C. § 227(b)(1)(B) (emphasis added). "In order to state a plausible claim for direct liability under [S]ection 227(b) (1) of the TCPA, 'a plaintiff must allege that a defendant initiated an unlawful call.' " *Bank v. Vivint Solar, Inc.*, No. 18-CV-2555 (MKB), 2019 **WL** 2280731, at *2 (**E.D.N.Y**. Feb. 25, 2019) (quoting *Bank[ ] v. Pro Custom Solar*, 17-CV-613 (LDH) (JO), 2018 **WL** 3637960, at *2 (**E.D.N.Y**. July 31, 2018)), *R. & R. adopted*, No. 18-CV-2555 (MKB) (RLM), 2019 **WL** 1306064 (**E.D.N.Y**. **Mar**. 22, 2019). In order for a plaintiff to assert a TCPA violation under a theory of vicarious liability, "a plaintiff ... must allege an agency relationship between the maker of the call, such as a marketing company, and the defendant.... The existence of *some* connections between the defendant and the maker of the call will not suffice[.]" *Id.* at *3 (internal quotation marks and citation omitted). "[C]laims based on alleged violations of the TCPA need not be pled with particularity." *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 138 (**E.D.N.Y**. 2015) (citations omitted).

Defendant argues that Plaintiff's "barebones" FAC fails to state a violation of the TCPA because it does not allege facts from which it can be plausibly inferred that **Alleviate** initiated the three calls, "such as the dialing number, or how Plaintiff knows each call came from **Alleviate**." (Def.'s Letter Mot., Dkt. 15 (hereinafter "Def.'s Mot."), at 2.) Plaintiff counters that Defendant's argument "ignores" the FAC's "allegation that, with respect to the telephone call that I answered, ... I 'was transferred to an employee of **Alleviate** named Jack Patno[e]'[,]" referring to the first call that was placed on June 23, 2023. (Pl.'s Letter Opp'n, Dkt. 16 (hereinafter "Pl.'s Opp'n"), at 1 (internal citation omitted); *see also* FAC ¶ 27.) The Court agrees with Defendant that the FAC fails to allege sufficient facts to state a TCPA claim against **Alleviate**.

**\*4** In support of its argument, Defendant cites several authorities, including *Vivint Solar* (notably one of Plaintiff's other TCPA lawsuits), for the proposition that Plaintiff has still failed to state a claim because, even if Plaintiff was eventually transferred to an **Alleviate** representative (i.e., Jack Patnoe), "Plaintiff was contacted by a third-party who transferred the call to **Alleviate**" and for TCPA liability to attach, "there must be a 'direct connection' between the person or entity and the making of the call." (Def.'s Supp. Letter Mot., Dkt. 18 (hereinafter "Def.'s Supp. Mot."), at 2 (quoting *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015) ("*2015 FCC Ruling*"))); *see also Vivint Solar, Inc.*, 2019 **WL** 2280731, at \*4–**5**.

In *Vivint Solar*, Plaintiff pressed a button on his telephone during an automated call that transferred him to an individual who then, in turn, told Plaintiff he would receive a follow-up call in approximately 30 minutes. *Vivint Solar*, 2019 **WL** 2280731, at \*1. Plaintiff received a follow-up call at the designated time, and the caller identified himself as a Vivint employee, who stated during their conversation that, "Vivint regularly uses telephone calls with prerecorded material advertising Vivint's services." *Id.* Other than these details, Plaintiff in *Vivint Solar* did not include the number of the initial caller and stated only that the defendant "placed, or directed to be placed," the prerecorded call. *Id.* at \*2. Based on these facts, the court concluded that Plaintiff failed to establish Vivint's direct liability for the offending call because the Vivint employee's comment was "an insufficient basis upon which to infer that Vivint *made* the specific Prerecorded Call ...." *Id.* at \*3 (emphasis added). The *Vivint Solar* court went on to address Plaintiff's allegation that Vivint was vicariously liable for the automated call and found that

Plaintiff had failed to sufficiently allege this theory of liability because he did not plead an agency relationship between the initiator of the call and Vivint. *Id.* In conducting its vicarious liability analysis, the *Vivint Solar* court noted that Plaintiff had provided "no details as to the content of the Prerecorded Call from which he could have inferred that it was placed by an agent of Vivint." *Id.* at \*4. Additionally, Plaintiff did "not identif[y] any statements made by [Vivint] that would have led [plaintiff] to reasonably believe that the maker of the Prerecorded Call had authority to act on Vivint's behalf." *Id.* The court further noted that "**Bank** [also did not] allege that following the Prerecorded Call, he was transferred to a live person who informed him that he was a representative of defendant or was promoting defendant's goods and services." *Id.* In a footnote attached to this sentence, the *Vivint Solar* court added: "Even had [a direct transferal] happened, at least one court has held that '[t]he transfer of the call [to the defendant] does not establish that Defendant exerted control over the initiator of the call, supervised or controlled the initial call, or maintained any sort of relationship with the initiator of the call, and thus is insufficient to establish an agency relationship between the transferor and [the defendant].' " *Id.* at \*4 n.7 (quoting *Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051 (MV) (KBM), 2018 **WL** 4684209, at \*4 (D.N.M. Sept. **28**, 2018)).

Here, just as in *Vivint Solar*, Plaintiff asserts, "in conclusory fashion, that [Defendant] 'placed, or directed to be placed,' " the calls at issue. 2019 **WL** 2280731, at \*2. Plaintiff concedes that while the calls "advertised **tax**-debt services" (FAC ¶¶ 24, 36, 49), the calls "did not state" at the beginning or end of the messages "the name of the person or on whose behalf the message was being transmitted." (*Id.* ¶¶ 29–31; 40–41; 53–54.) And, as to the other two calls, Plaintiff's description of them utterly fails to connect them to Defendant or even to each other. (*Id.* ¶¶ 37–38, 50–51 (describing the second and third calls simply as having "included and introduced an advertisement" and "constituted telemarketing," respectively).) [5] Further, the FAC "is silent as to the caller ID displayed" during these calls. *Vivint Solar*, 2019 **WL** 2280731, at \*2. And despite Plaintiff alleging that he was directly transferred to an **Alleviate** employee—a fact that was not present in *Vivint Solar*—his pleadings still shed no light on who initiated the offending call, which is necessary to allege direct liability under the TCPA. *Id.*

**\*5** Nor do the facts alleged for the second of the three calls adequately set out a TCPA violation. During that call, which also occurred on June 23, 2023, the message

"requested that the listener of the message call a particular telephone number ...." (FAC ¶ 42.) The FAC alleges that when Plaintiff called that number, the call "was answered with the playing of pre-recorded material, following which an [alleged] employee of **Alleviate** came onto the line." (*Id.* ¶ 44.) But the FAC provides absolutely no factual basis for its assertion that the person who answered the call "was an employee of **Alleviate**."[6] Because there is even less of a nexus between Defendant and the second call as alleged in the FAC, Plaintiff has failed to adequately plead a TCPA violation for this call as well.

Plaintiff neither alleges in the FAC nor argues in his papers a violation of the TCPA under a theory of vicarious liability. Nor could he. Plaintiff simply states in conclusory fashion that Jack Patnoe was an **Alleviate** employee. There are no other details of the call with Patnoe in the FAC, such as, for example, details about how Plaintiff was informed that the representative at the other end of line worked for Defendant, or further context regarding whether the initiator of the call contracted to sell Defendant's services. *Cf. **Bank**[ ] v Pro Custom Solar*, 416 F. Supp. 3d 171, 174 (**E.D.N.Y**. 2018) (finding Plaintiff had sufficiently pleaded a TCPA violation because Plaintiff alleged that he was directly transferred to a live representative of the purported agent who stated the phone call was placed to "promote the goods and services of [the defendant]").

Instructive to the Court in assessing the sufficiency of the pleadings is the 2015 Declaratory Ruling and Order issued by the Federal Communications Commission ("FCC"), which has authority to promulgate regulations implementing the TCPA. In that Order, the FCC attempted to clarify what is needed to establish a "direct connection between a person or entity and the making of a call," and explained that the FCC looks "to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it." *2015 FCC Ruling*, 30 F.C.C. Rcd. at 7980. As the Court has noted, there is precious little information with which it can assess the totality of the circumstances surrounding the first June 23 call. Nevertheless, applying the FCC's first factor, the FAC is silent as to who took the steps necessary to place the call, as the automated message did not mention **Alleviate**, and Plaintiff has not included the caller ID of the originating number or provided any details about the three calls' contents. Applying the FCC's second factor, the FAC provides no

detail regarding who was involved in placing the call. Indeed, the Court has not even been presented with details of the alleged conversation Plaintiff had with Jack Patnoe to determine that he was working at the direction of Defendant or that Defendant regularly used calling schemes to advertise its services. *Cf. Vivint Solar*, 2019 **WL** 2280731, at *3 (describing allegation that Plaintiff spoke to an employee of the defendant, who stated that the defendant "regularly utilizes telephone calls in which ... prerecorded material advertises Vivint's services"). Therefore, the Court is still left with no factual allegations connecting Defendant with the initiator of the call so as to establish either direct or vicarious liability under the TCPA.

**\*6** Despite Plaintiff's argument to the contrary, this conclusion is not inconsistent with this Court's determination in one of Plaintiff's other TCPA actions, ***Bank** v. Spark Energy, **LLC***. (*See* Pl.'s Supp. Opp'n, Dkt. 19, at 1); *see also **Bank** v. Spark Energy, **LLC*** ("*Spark Energy II*"), No. 19-CV-4478 (PKC) (LB), 2020 **WL** 6873436, at *2 (**E.D.N.Y** Nov. 23, 2020) (denying Plaintiff leave to file an amended complaint after previously dismissing his case without prejudice). In that case, the Court, upon reviewing Plaintiff's proposed amended complaint, noted that it "appear[ed] to correct the[ ] deficiencies" regarding the alleged connection between Defendant and the offending calls. *Spark Energy II*, 2020 **WL** 6873436, at *2. However, there, Plaintiff's proposed amended complaint provided substantially more detail than is present in the FAC, including the phone number from which Plaintiff was called,[7] details of Plaintiff's conversations with the defendant's representatives, and allegations that Plaintiff was given the defendant's name as the provider of the service at issue. *Id.* (citing 33 paragraphs of new information regarding the details of Plaintiff's conversation with the representative). Furthermore, the original complaint in that case, which the Court had found deficient, was far more similar to the barebones FAC in this case, and, on appeal, the Second Circuit found on *de novo* review that the original complaint in *Spark Energy, **LLC*** was insufficient to state a TCPA claim against Spark Energy. *See **Bank** v. Spark Energy, **LLC***, 860 F. App'x 205, 206 (2d Cir. 2021) (summary order).

Because of the lack of information in the FAC connecting Defendant to the initiator of any of the three calls, the Court finds that Plaintiff has failed to adequately plead a TCPA claim against Defendant and dismisses this cause of action under Rule 12(b)(6).

**B. Section 227(c)(5) of the TCPA ("DNCR Claim")**

Section 227(c)(5) of the TCPA provides a private right of action for violations of 47 C.F.R. § 64.1200(c)(2), which prohibits telephone solicitation to telephone numbers on the national DNCR. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). Defendant points to the fact that there is no allegation that the residential land line on which Plaintiff received the three calls was listed on the national DNCR. (Def.'s Mot., at 2.) Plaintiff simply responds that he would "respectfully [ ] request permission to file an amended complaint that would correct this oversight." (Pl.'s Opp'n, at 2.)

This Court has unfortunately been at this very juncture before with Plaintiff. In *Spark Energy*, the Court dismissed Plaintiff's DNCR claim where he similarly failed to allege that his residential telephone number was on the national DNCR. *Bank v. Spark Energy, LLC* ("*Spark Energy I*"), No. 19-CV-4478 (PKC) (LB), 2020 WL 5752185, at *5 (E.D.N.Y. Sept. 24, 2020), *aff'd*, 860 F. App'x 205 (2d Cir. 2021) (summary order). In that case, the Court rejected Plaintiff's invitation to "take judicial notice of the fact that his residential telephone number is on the [DNCR]" because the Court cannot "use such records to establish the truth of the matter asserted therein." *Id.* Here, Plaintiff does not try a similar tactic but acknowledges the insufficiency of his pleading and, without even attempting to articulate good cause, seeks permission to amend his complaint a second time to cure this deficiency. (Pl.'s Opp'n, at 2 ("Alleviate notes that ... 'the FAC is silent as to whether either of the alleged residential numbers were actually on the Do-Not-Call Registry or whether Plaintiff placed said numbers on the Do-Not-Call Registry.' Def. Ltr. at 2. I respectfully would request permission to file an amended complaint that would correct this oversight.").) The Court therefore has no trouble dismissing this claim under 12(b)(6).

**C. Leave to Amend TCPA and DNCR Claims**

Plaintiff seeks leave to amend his complaint, for a second time, but only as to his DNCR claims. (*Id.*)

**\*7** Rule 15(a)(1) allows a party to amend its complaint once as a matter of course within 21 days after serving the complaint or within 21 days after a responsive pleading has been served. *See* Fed. R. Civ. P. 15(a)(1). Where, as here, the time for amendment as a matter of course has passed, a party may amend its pleading with the opposing party's written consent or with leave of the court. Fed. R. Civ. P.

15(a)(2). "The court should freely give leave [to amend] when justice so requires." *Id.* Nevertheless, "it is within the sound discretion of the [court] to grant or deny leave to amend." *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) (quotation marks omitted).

Certain factors, "such as undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party[,] ... [and] futility of amendment," may justify a district court's decision to deny leave to amend. *Williams v. Citigroup, Inc.*, 659 F.3d 208, 213–14 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). As relevant here, a court may deny a motion to amend where the movant knew or should have known facts upon which the amendment is based, especially where the movant does not explain the delay. *See Hutter v. Countrywide Bank, N.A.*, 41 F. Supp. 3d 363, 371 (S.D.N.Y. 2014), *vacated in part on other grounds*, 710 F. App'x 25 (2d Cir. 2018).

As this Court has concluded before in Plaintiff's *Spark Energy* case:

> Based on both the volume of, and rulings in, the TCPA cases Plaintiff has filed, it is plain that he specializes in this area, and the Court rejects any suggestion that Plaintiff did not know what facts had to be alleged for his [ ] TCPA claims in this case. Whatever tactical reason Plaintiff may have had for knowingly omitting essential facts in this case, the circumstances here justify a finding of bad faith and the denial of leave to amend.

*Spark Energy II*, 2020 WL 6873436, at *3 (denying Plaintiff leave to amend). It is clear from Plaintiff's litigation history —nearly a decade of bringing TCPA claims in the Eastern District of New York—that he knew or should have known the requirements to adequately plead a violation of both provisions of the TCPA he invokes in this case. Indeed, Plaintiff appears to not have learned from past pleading deficiencies for adequately alleging liability for violations of Section 227(b) and Section 227(c)(5)—even before this very Court. *See, e.g.*, *Spark Energy I*, 2020 WL 5752185; *Spark Energy II*, 2020 WL 6873436. The Court is further compelled to deny Plaintiff leave to further amend his pleadings because

he has already done so once in this case—the day after Defendant filed its first PMC letter seeking leave to file a motion to dismiss. Plaintiff therefore had the benefit of a preview of Defendant's arguments for dismissal, at least as to the first cause of action for a violation of Section 227(b)(1). In the case of his DNCR claim under Section 227(c)(5) of the TCPA, he openly admits to his "oversight" in failing to plead adequate facts and does not even attempt to show good cause for this oversight.

Therefore, the Court finds that Plaintiff's barebones—and ultimately deficient—pleadings do not merit a third chance. *See Spark Energy, LLC*, 860 F. App'x at 206 (finding that the Court did not abuse its discretion in denying Plaintiff **Bank** leave to amend in *Spark Energy II*).

**II. Plaintiff's GBL Claim**

Section 1367(c) provides, in relevant part, that "district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." **28** U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining

state-law claims." *Pension Benefit Guardian Corp.*, 712 F.3d at 727 (internal quotation marks omitted).

**\*8** Because the Court has dismissed both of Plaintiff's federal causes of action and because the Court finds that judicial economy would be served in so doing, the Court declines to exercise supplemental jurisdiction over this GBL claim. *See Bank v. Philips Elecs. N. Am. Corp.*, No. 14-CV-5312 (JG) (VMS), 2015 **WL** 1650926, at \*3 (**E.D.N.Y.** Apr. 14, 2015) (dismissing Plaintiff's TCPA claim and declining to exercise supplemental jurisdiction over Plaintiff's GBL claim); *see also Spark Energy LLC*, 860 F. App'x at 207 ("[H]aving properly dismissed **Bank's** federal claims and denied leave to amend, the District Court did not abuse its discretion in declining to exercise supplemental jurisdiction over his state-law claim.").

### CONCLUSION

For the reasons stated herein, Defendant's motion is granted and this case is dismissed.

**All Citations**

Slip Copy, 2024 WL 1332635

---

### Footnotes

1    Plaintiff is no stranger to this Court, as he has initiated numerous lawsuits on his own behalf in the Eastern District of New York. *See, e.g., Bank v. Spark Energy, LLC*, No. 19-CV-4478 (PKC) (LB); *Bank v. CreditGuard of Am., Inc.*, No. 18-CV-1311 (PKC) (RML); *Bank v. Am. Renewable Energy Inc.*, No. 18-CV-43 (PKC) (LB); *Bank v. Am. Home Shield Corp.*, No. 10-CV-4014 (PKC) (RER); *see also Bank v. Dimension Serv. Corp.*, No. 23-CV-2467 (AMD) (JAM); *Bank v. Consumer Tax Advoc., LLC*, No. 23-CV-9229 (HG) (CLP); *Bank v. Cogint, Inc.*, No. 18-CV-3307 (WFK) (PK); *Bank v. All. Sec. Inc.*, No. 19-CV-3970 (EK) (LB). The vast majority of the actions that Plaintiff has brought in this District, especially for the last nine years, are for violations of the TCPA and GBL.

2    The Court "must take all of the factual allegations in the complaint as true, ... [but is] not bound to accept as true a legal conclusion couched as a factual allegation." *Pension Benefit Guardian Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (internal quotation marks and citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true.") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *id.* ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Where the Court finds, as discussed *infra*,

that a factual allegation in the FAC is, in reality, a legal conclusion, the Court has prefaced the statement with "Plaintiff alleges" or "allegedly."

3    This is the entire description of each of the three calls' contents in the FAC. (*Id.*)

4    The Court notes that Plaintiff filed the FAC 23 days after serving his original complaint without leave of the Court. (*See* Summons, Dkt. 4.) Therefore, the FAC falls outside of Rule 15(a)(1)(A)'s 21-day window for amending pleadings as a matter of right. *See* Fed. R. Civ. P. 15(a)(1)(A). However, because leave to amend should be freely granted when justice so requires, and in the absence of any challenge by Defendant, the Court accepts the FAC as his operative pleading. *See U.S. Flour Corp. v. Certified Bakery, Inc.,* No. 10-CV-2522 (JS) (WDW), 2012 **WL** 728227, at *1 n.1 (**E.D.N.Y**. **Mar**. 6, 2012) (adopting same approach).

5    Indeed, the Court is skeptical that none of the three calls identified a specific person or entity, since they are described in the FAC as either "advertisements" or "telemarketing." Yet the FAC is devoid of any details about the contents of those calls. *Compare* Am Compl., *Bank v. CreditGuard of Am., Inc.,* 18-CV-1311 (PKC) (RLM) (**E.D.N.Y**. Jun. 11, 2018), ECF No. 20, ¶¶ 18–19, 27 (Plaintiff **Bank** providing verbatim recitation of allegedly pre-recorded call from which Plaintiff was transferred to one of the defendants' representatives, which led to a live conversation with transferee-defendant's representative indicating that the pre-recorded call likely came from the other defendant).

6    This attempted sleight of hand is emblematic of Plaintiff's FAC, throughout which Plaintiff simply asserts in conclusory, unsupported fashion that **Alleviate** was behind the alleged conduct. (*See, e.g.*, FAC ¶ 20 ("**Alleviate** made, or caused to be made, a telephone call ('**Bank's** First **Alleviate** Call')."), ¶ 23 (labeling first call message "**Bank's** First **Alleviate** Call Message"), ¶¶ 32, 35, 45, 48 (asserting that second and third calls were made or caused to be made by "**Alleviate**" and labeling them and the related messages as such), ¶ 27 (alleging that **Bank** "was transferred to an employee of **Alleviate** named Jack Patnoe"), ¶ 42 (labeling the phone number provided during the second call as the "**Alleviate** Telephone Number").) However, simply asserting a purported fact does not make it one, where there are no factual allegations to support the asserted conclusion.

7    However, the proposed amended complaint did not allege that the phone number from which the recorded call was made belonged to Spark Energy. Rather, it asserted that it was a non-real number because it consisted of only 8 digits, including the area code. *See* Proposed Am. Compl., *Bank v. Spark Energy, LLC,* No. 19-CV-4478 (**E.D.N.Y**. Oct. 2, 2020), ECF No. 24, ¶ 41.

---

**End of Document**                                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 17 of 233

Bank v. Vivint Solar, Inc., Not Reported in Fed. Supp. (2019)

KeyCite Yellow Flag - Negative Treatment
Distinguished by   Bank v. GoHealth, LLC,   E.D.N.Y.,   March 8, 2021

2019 WL 2280731
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Todd C. BANK, Plaintiff,
v.
VIVINT SOLAR, INC., Defendant.

18-CV-2555 (MKB)
|
Signed 02/25/2019

**Attorneys and Law Firms**

Todd C. Bank, Law Office of Todd C. Bank, Kew Gardens, NY, for Plaintiff.

Kelly Jones Howell, Ross B. Hofherr, Harris Beach PLLC, New York, NY, for Defendant.

### REPORT AND RECOMMENDATION

ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:

**\*1** Plaintiff Todd C. Bank ("Bank" or "plaintiff"), an attorney proceeding *pro se*, brings this action against defendant Vivint Solar, Inc. ("Vivint" or "defendant"), alleging individual and class claims based on unauthorized "robocalls" in violation of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, and New York General Business Law (the "GBL") § 399-p. See Amended Complaint (June 27, 2018) ("Am. Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") #12. Currently before this Court, on a referral from the Honorable Margo K. Brodie, is defendant's motion to dismiss the Amended Complaint in its entirety pursuant to Rules 12(b)(6) and 12(b)(2) of the Federal Rules of Civil Procedure (the "FRCP"). See Memorandum in Support of Motion to Dismiss (Aug. 10, 2018) ("Def. Mem."), DE #14-1; Order Referring Motion (Oct. 9, 2018). For the reasons that follow, this Court recommends that defendant's motion to dismiss be granted.

### BACKGROUND

The following facts are drawn from plaintiff's Amended Complaint and those that are non-conclusory are accepted as true for purposes of this motion.

On or about March 17, 2018, Bank received an unsolicited phone call to his cellular telephone (the "Prerecorded Call"). See Am. Compl. ¶ 16. Upon answering the telephone call, a prerecorded voice on the other end promoted residential solar-energy services. See id. ¶ 18. Following the playing of the prerecorded material, Bank was transferred to a live person (the "Transferee"). See id. ¶ 19. Bank provided an (unspecified) alias to the Transferee, who told Bank that, approximately 30 minutes later, someone would call him. See id. ¶¶ 20-21. Approximately 30 minutes later, the same cellular telephone utilized by Bank received a telephone call from Joshua Lilly, an employee of defendant, who stated that he was calling to speak with the alias that Bank had provided to the Transferee. See id. ¶¶ 22-23. During the conversation between Bank and Lilly, Lilly stated that Vivint regularly uses telephone calls with prerecorded material advertising Vivint's services. See id. ¶ 24. According to the Amended Complaint, defendant placed, or directed to be placed, the Prerecorded Call. See id. ¶ 32.

Plaintiff brings his lawsuit on behalf of a nationwide class of persons who have received similar prerecorded telephone calls in their home states, as well as on behalf of a class of New York residents who have received such calls on New York telephone numbers. See id. ¶¶ 2, 3.

### PROCEDURAL HISTORY

Plaintiff commenced this action on April 30, 2018. See Complaint (Apr. 30, 2018) ("Compl."), DE #1. Following the filing of defendant's request for a premotion conference in contemplation of moving to dismiss, see Motion for Pre Motion Conference (June 22, 2018), DE #10, plaintiff filed the Amended Complaint, which contains two causes of action: the first, for violations of section 227(b) of the TCPA, and the second, for violations of section 399-p(3)(a) of the GBL, see Am. Compl. The Amended Complaint does not, however, address the alleged deficiencies raised by defendant in its premotion letter with regard to the individual claim brought under section 227(b) of the TCPA, and that claim

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 18 of 233

**Bank v. Vivint Solar, Inc., Not Reported in Fed. Supp. (2019)**

is reasserted in the First Cause of Action in the Amended Complaint. [1]

**\*2** Defendant now moves to dismiss the remaining TCPA cause of action for failure to state a claim, the GBL state law claim for lack of subject matter jurisdiction, and the class claims of non-New York residents for lack of personal jurisdiction.

## DISCUSSION

### I. The Legal Standard Under Rule 12(b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the FRCP, a court must accept the complaint's factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. See, e.g., Sherman v. Town of Chester, 752 F.3d 554, 560 (2d Cir. 2014). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff need not allege "detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 70 (2d Cir. 2014). Nevertheless, "a formulaic recitation of the elements of a cause of action will not do": the claim must set forth "more than labels and conclusions[.]" Twombly, 550 U.S. at 555.

### II. The TCPA Claim

Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful for any person:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned ... to a cellular telephone service....

47 U.S.C. § 227(b)(1)(A)(iii).

Defendant argues that Bank's TCPA claim should be dismissed for failure to state a claim. Specifically, defendant contends that Bank failed to allege facts demonstrating that the Prerecorded Call was made either by Vivint, or by an agent of Vivint for which Vivint would be vicariously liable. See Def. Mem. at 4-8.

Plaintiff counters that his amended pleading sufficiently alleges (1) that defendant is directly liable for the Prerecorded Call, and (2) that defendant is vicariously liable for that robocall under a variety of legal theories, addressed below. See Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's Individual Federal Claims (Aug. 31, 2018) ("Pl. Opp.") at 18-23, DE #15.

#### A. Direct Liability

In order to state a plausible claim for direct liability under section 227(b)(1) of the TCPA, "a plaintiff must allege that a defendant initiated an unlawful call[.]" Bank[ ] v. Pro Custom Solar, 17-CV-613 (LDH) (JO), 2018 WL 3637960, at *2 (E.D.N.Y. July 31, 2018). Here, the Amended Complaint asserts, in conclusory fashion, that Vivint "placed, or directed to be placed," the Prerecorded Call. See Am. Compl. ¶ 32. The pleading nevertheless acknowledges that, while promoting "residential solar-energy services," id. & 18, the Prerecorded Call did not disclose the name, address or telephone number of any entity (or entities) on whose behalf the call was being made, see id. ¶¶ 27-29. Further, the Amended Complaint is silent as to the caller ID displayed during the Prerecorded Call. Likewise absent from the pleading are any specifics as to the statements made by the Transferee (the live person to whom the robocall was forwarded) regarding the source of the Prerecorded Call or the entity or entities whose business was being promoted.

**\*3** In support of his theory of direct liability, Bank points to the telephone call placed by Lilly to Bank's cellphone 30 minutes after Bank's conversation with the Transferee. See Pl. Opp. at 18; Am. Compl. & 24 (alleging that Lilly stated that Vivint "regularly utilizes telephone calls in which ... prerecorded material advertises Vivint's services"). Lilly's comment is, however, an insufficient basis upon which to infer that Vivint made the specific Prerecorded Call that is the subject of plaintiff's First Cause of Action. See Pro Custom Solar, 2018 WL 3637960, at *2 (ruling that Bank failed to state a plausible claim for direct liability under section

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 19 of 233

Bank v. Vivint Solar, Inc., Not Reported in Fed. Supp. (2019)

227(b) of the TCPA, despite his allegation that in two calls occurring after the challenged prerecorded call, defendant's agents acknowledged that defendant utilized robocalls); Cunningham v. Channer, LLC, Case # 17-CV-1305-FPG, 2018 WL 4620391, at *6 (W.D.N.Y. Sept. 26, 2018) (denying motion for default judgment where plaintiff failed to allege facts from which the court could infer that defendant, which processed payments on behalf of collection agency that robocall instructed plaintiff to call, was either directly or vicariously liable for violating the TCPA); see also Bank v. Philips Elecs. N. Am. Corp., No. 14-CV-5312 (JG)(VMS), 2015 WL 1650926, at *1-2 (E.D.N.Y. Apr. 14, 2015) (Bank's allegation that prerecorded "calls were 'made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]' " were "too conclusory to state a plausible claim against [defendant]," despite allegation that defendant's product was referenced in the robocall). [2]

**B. Vicarious Liability**

As defendant concedes, see Reply in Support (Sept. 10, 2018) at 1, DE #17, a TCPA defendant may also be held liable under a theory of vicarious liability, see Pro Custom Solar, 2018 WL 3637960, at *2; Cummingham, 2018 WL 4620391, at *6; Jenkins v. National Grid USA, 15-CV-1219(JS)(GRB), 2017 WL 1208445, at *7 (E.D.N.Y. Mar. 31, 2017). In opposing defendant's motion, plaintiff proffers several theories of vicarious liability -- apparent authority, ratification, and aiding and abetting, see Pl. Opp. at 19-21 [3] -- all of which are unavailing for the reasons discussed below. [4]

As a preliminary matter, and as recognized by a series of decisions issued out of this District, in order to withstand a motion to dismiss, a plaintiff asserting vicarious liability in a TCPA action "must allege an agency relationship between" the maker of the call, such as a marketing company, and the defendant. See Philips Elecs., 2015 WL 1650926, at *3 (citing Jackson v. Caribbean Cruise Line, Inc., 88 F.Supp.3d 129 (E.D.N.Y. 2015)); accord Alliance Health, 2015 WL 464513, at *2. [5] The existence of *some* connections between the defendant and the maker of the call will not suffice: Vicarious liability will not be found in the absence of "allegations of fact that establish an agency relationship between [the defendant] and [the maker of the robocalls] or any control by [the defendant] over [that entity]." Philips Elecs., 2015 WL 1650923, at *3; see Jackson, 88 F.Supp.3d at 138-39 (granting motion to dismiss TCPA claim; even if a contract existed between the defendant and the sender of automated calls, the pleading contained no "non-conclusory

suggestion of 'direction' or 'control' by [the defendant] of [the robocaller]"); Melito v. Am. Eagle Outfitters, Inc., 14-CV-02440 (VEC), 2015 WL 7736547, at *6-7 (S.D.N.Y. Nov. 30, 2015). As detailed more fully below, the absence of non-conclusory allegations of such an agency relationship and/or control is a fatal flaw in each of plaintiff's various theories of vicarious liability.

*1. Apparent Authority*

**\*4** "Apparent authority exists when a principal, either intentionally or by lack of ordinary care, induces [a third party] to believe that an individual has been authorized to act on its behalf." Highland Capital Mgmt. LP v. Schneider, 607 F.3d 322, 328 (2d Cir. 2010) (internal quotation marks omitted); see Dinaco, Inc. v. Time Warner, Inc., 346 F.3d 64, 69 (2d Cir. 2003). Apparent authority is created "through the words and conduct of the principal as they are interpreted by a third party, and cannot be established by the actions or representations of the agent." Minskoff v. Am. Express Travel Related Servs. Co., Inc., 98 F.3d 703, 708 (2d Cir. 1996) (citing Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989)).

In support of his theory of apparent authority, Bank relies principally on Bank[ ] v. Pro Custom Solar, 2018 WL 3637960, at *3, wherein Judge LaShann DeArcy Hall concluded that Bank had adequately alleged that the defendant was vicariously liable for violations of the TCPA by its purported agent. See Pl. Opp. at 19; see also id. at 15-18. There, however, Bank alleged that after receiving a telephone call with a prerecorded message, he was *directly transferred* to a live representative of the purported agent who stated that the phone call was placed "to 'promote the goods and services of [Defendant].' " See Pro Custom Solar, 2018 WL 3637960, at *3 (brackets in original). A representative of the defendant thereafter confirmed that the purported agent "was its operating service." See id. [6]

Bank's Amended Complaint in the instant action contains no similar factual allegations. Bank provides no details as to the content of the Prerecorded Call from which he could have inferred that it was placed by an agent of Vivint. More importantly, Bank has not identified any statements made by the purported principal (Vivint) that would have led Bank to reasonably believe that the maker of the Prerecorded Call had authority to act on Vivint's behalf. See Thomas v. Taco Bell Corp., 582 F.App'x 678, 679-80 (9th Cir. 2014) (affirming

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 20 of 233

**Bank v. Vivint Solar, Inc., Not Reported in Fed. Supp. (2019)**

dismissal of TCPA complaint where plaintiff failed to allege that defendant manifested that agent was authorized); Avola v. Louisiana-Pac. Corp., 991 F.Supp.2d 381, 398 (E.D.N.Y. 2013); see also Keating v. Peterson's Nelnet, LLC, 615 F.App'x 365, 373-74 (6th Cir. 2015) ("[N]othing in the record before this court reasonably can be construed to indicate that the defendants held out to third parties, or to anyone else, that [the marketing company] was authorized to send text messages to individuals who had not agreed to receive them."). Nor does Bank allege that following the Prerecorded Call, he was transferred to a live person who informed him that he was a representative of defendant [7] or was promoting defendant's goods and services. [8]

 **\*5** The Amended Complaint does not allege that Bank believed that the Prerecorded Call was placed by an agent of Vivint, let alone that such a belief was reasonable. See Thomas, 582 F.App'x at 679-80 (finding that plaintiff "has not shown that she reasonably relied, much less to her detriment, on any apparent authority"); Smith v. State Farm Mut. Auto. Ins. Co., 30 F.Supp.3d 765, 777-78 (N.D. Ill. 2014). Plaintiff's allegation that, in a subsequent communication, Vivint's representative (Lilly) acknowledged that Vivint uses prerecorded material to advertise its services does not plausibly show that Vivint authorized the Prerecorded Call. See Naiman v. Tranzvia LLC, Case No. 17-cv-4813-PJH, 2017 WL 5992123, at \*7, \*12 (N.D. Cal. Dec. 4, 2017) (plaintiff failed to allege facts sufficient to sustain theory of apparent authority, despite allegation that shortly after plaintiff left a voicemail message in response to telemarketer's robocalls requesting additional information, a representative of defendant called him). [9]

### 2. *Ratification*

Plaintiff additionally argues that in his conversation with Bank, Lilly, acting on behalf of defendant, ratified the Prerecorded Call. See Pl. Opp. at 19. "Ratification requires acceptance by the principal of the benefits of an agent's acts, with full knowledge of the facts, in circumstances indicating an intention to adopt the unauthorized [conduct]." Monarch Ins. Co. of Ohio v. Ins. Corp. of Ireland Ltd., 835 F.2d 32, 36 (2d Cir. 1987); see Hamm v. United States, 483 F.3d 135, 140 (2d Cir. 2007); Davis v. Carroll, 937 F.Supp.2d 390, 427 (S.D.N.Y. 2013); A. Terzi Prods., Inc. v. Theatrical Protective Union, 2 F.Supp.2d 485, 492 (S.D.N.Y. 1998). First, as shown above, see *supra* pp.7-10, plaintiff has failed to allege

any nonconclusory facts to establish an agency relationship between defendant and the maker of the Prerecorded Call. See Thomas, 582 F.App'x at 679, 680 (no ratification of sending of text message absent a principal-agent relationship); Childress, 2018 WL 4684209, at \*4 (no ratification of robocall where plaintiff failed to allege facts to show agency relationship between maker of robocall and defendant, to whom the call was transferred); Murray v. Choice Energy LLC, No. 1:15-cv-60, 2015 WL 4204398, at \*6 (S.D. Ohio July 10, 2015) (dismissing TCPA claim where plaintiff failed to plausibly allege an agency relationship, which is a necessary element of ratification); see also Kristensen v. Credit Payment Servs. Inc., 879 F.3d 1010, 1014-15 (9th Cir. 2018) (where telemarketer was not agent or purported agent of defendant, its conduct was not ratifiable act). Furthermore, the Amended Complaint fails to allege that defendant had any knowledge, let alone "full knowledge," of the material facts surrounding the Prerecorded Call. See Naiman, 2017 WL 5992123, at \*7, \*12, \*13 (rejecting ratification theory and dismissing TCPA complaint despite allegation that live representative of defendant called plaintiff shortly after plaintiff left messages in response to two robocalls); A. Terzi Prods., 2 F.Supp.2d at 492 (Sotomayor, J.) (dismissing claims that were based on conclusory allegations of ratification); see also Hodgin v. UTC Fire & Sec. Ams. Corp., Inc., 885 F.3d 243, 254 (4th Cir. 2018). Therefore, Bank's Amended Complaint does not state a TCPA claim against Vivint based on a ratification theory.

### 3. *Aiding and Abetting*

 **\*6** Plaintiff additionally contends that a defendant may be held liable under the TCPA for aiding and abetting a statutory violation. See Pl. Opp. at 19-20. Although defendants may be held vicariously liable for TCPA violations under federal common-law principles of agency, see, e.g., Campbell-Ewald Co. v. Gomez, 136 S.Ct. 663, 674 (2016), plaintiff does not cite a single case, nor has this Court located one, where secondary liability for aiding and abetting was extended to the TCPA. [10] "[W]hen Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors." Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 182 (1994) (construing the Securities Exchange Act). In fact, the Supreme Court has declared that "[i]f ... Congress intended to impose aiding and abetting liability [for violation of a civil statute], we presume it would have used the words 'aid' and 'abet' in the statutory

Bank v. Vivint Solar, Inc., Not Reported in Fed. Supp. (2019)

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 21 of 233

text. But it did not." Id. at 177; see Rich v. BAC Home Loans Servicing LP, No. CV-11-00511-PHX-SRB, 2013 WL 10104612, at *5 (D. Ariz. Dec. 13, 2013) (citing Central Bank and dismissing claim for aiding and abetting violations of the FDCPA).

Even assuming *arguendo* that a claim for aiding and abetting a violation of the TCPA were cognizable, plaintiff has not pled facts sufficient to state such a claim. Under federal common law, a plaintiff asserting a cause of action for aiding and abetting a tortfeasor must allege "(1) the existence of a violation by the primary wrongdoer; (2) knowledge of this violation on the part of the aider and abettor; [and] (3) substantial assistance by the aider and abettor in the achievement of the primary violation." Stutts v. De Dietrich Grp., No. 03-CV-4058 (ILG), 2006 WL 1867060, at *12 (E.D.N.Y. June 30, 2006) (internal quotation marks and citation omitted). Bank contends that his allegation that Lilly told him that defendant regularly uses prerecorded phone calls establishes that defendant aided and abetted the statutory violation. See Pl. Opp. at 20. But plaintiff has not identified any substantial assistance that defendant provided to the unidentified party making the Prerecorded Call. See Pan American World Airways, Inc. v. Vetements, Inc., No. 08 Civ. 5480(RJH), 2010 WL 3632732, at *6 (S.D.N.Y. Sept. 16, 2010); Mastafa v. Australian Wheat Bd. Ltd., No. 07 Civ. 7955(GEL), 2008 WL 4378443, at *4 (S.D.N.Y. Sept. 25, 2008) (Lynch, J.); Stutts, 2006 WL 1867060, at *14 n.24. In the absence of such an allegation, the Amended Complaint does not state a claim based on a theory of aiding and abetting liability. The District Court should dismiss the TCPA claim.

## III. New York General Business Law Claim

Plaintiff relies on the Court's exercise of supplemental jurisdiction in connection with his claims brought under New York's GBL. See Am. Compl. ¶ 14. Where, however, a "district court has dismissed all claims over which it has original jurisdiction," it may decline to exercise supplemental jurisdiction over a state claim. See 28 U.S.C. § 1367(c). Having recommended dismissal of the claim over which the Court has original jurisdiction, this Court further recommends that the District Court, in its discretion, decline to exercise supplemental jurisdiction over the remaining state law claims. See Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994) ("exercise of supplemental jurisdiction is left to the discretion of the district court"); see also Philips Elecs., 2015 WL 1650926, at *3 (dismissing Bank's TCPA claim and declining to exercise supplemental jurisdiction over GBL claim); Letter in Response to Defendant's [Premotion] Letter (June

25, 2018) at 2, DE #11 ("Bank does not disagree" that supplemental jurisdiction should be declined if his TCPA claim is dismissed).

## IV. Personal Jurisdiction Over Claims of Out-of-State Class Members

**\*7** This Court briefly discusses defendant's motion to dismiss for lack of personal jurisdiction, which will be rendered moot unless the District Court rejects this Court's recommendation to dismiss plaintiff's federal cause of action for failure to state a claim.

Defendant contends that this Court lacks personal jurisdiction over putative out-of-state class members. See Def. Mem. at 9-15. "Under New York law, 'for a plaintiff to demonstrate personal jurisdiction over a defendant ... the plaintiff must show either that the defendant was present and doing business in New York within the meaning of C.P.L.R. § 301,' known as general jurisdiction, 'or that the defendant committed acts within the scope of New York's long-arm statute, C.P.L.R. § 302,' known as specific jurisdiction." Stroud v. Tyson Foods, Inc., 91 F.Supp.3d 381, 385 (E.D.N.Y. 2015) (quoting Reich v. Lopez, 38 F.Supp.3d 436, 454 (S.D.N.Y. 2014)) (alteration omitted).

First, defendant correctly argues that the Court lacks general jurisdiction over the claims of out-of-state class members because New York is neither defendant's principal place of business nor its state of incorporation. See Def. Mem. at 9-10; Am. Compl. ¶ 8. Thus, defendant is not "at home" in New York so as to invoke either of those two bases for establishing general jurisdiction. See Daimler AG v. Bauman, 571 U.S. 117, 137-39 (2014).

Second, defendant contends that the Supreme Court's decision in Bristol-Myers Squibb Co. v. Superior Court of California, 137 S.Ct. 1773 (2017), compels the conclusion that the Court lacks specific jurisdiction over the claims of out-of-state class members. In Bristol-Myers, 600 individual plaintiffs, only some of whom were California residents, brought a mass-tort action in California state court. See id. at 1778. The Supreme Court concluded that the state courts lacked personal jurisdiction over claims brought by out-of-state plaintiffs against an out-of-state defendant, since neither the conduct nor injuries alleged had occurred in California. See id. at 1781-82. In her dissent, Justice Sotomayor noted that the majority failed to address whether its opinion applied to federal class actions "in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 22 of 233

Bank v. Vivint Solar, Inc., Not Reported in Fed. Supp. (2019)

all of whom were injured there." Bristol-Myers, 137 S.Ct. at 1789 n.4. In the wake of the Bristol-Myers decision, lower federal courts have split on whether its rationale applies to federal court nationwide class actions. See, e.g., Gazzillo v. Ply Gem Indus., Inc., 1:17-CV-1077 (MAD/CFH), 2018 WL 5253050, at *7 (N.D.N.Y. Oct. 22, 2018) (applying Bristol-Myers and dismissing non-resident plaintiffs' claims for lack of specific jurisdiction); Molock v. Wholefoods Market, Inc., 297 F.Supp.3d 114, 124-27 (D.D.C. 2018) (concluding that Bristol-Myers did not apply to claims of putative class members); Sloan v. General Motors LLC, 287 F.Supp.3d 840, 858-59 (N.D. Cal. 2018) (holding that Bristol-Myers does not preclude jurisdiction over out-of-state plaintiffs in class action); see also 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 6.26 (5th ed. 2018) (noting split in federal courts).

Here, as Bank notes, he has not yet filed a motion to certify a nationwide class. See Memorandum in Opposition to Defendant's Motion to Dismiss Class Claims (Aug. 31, 2018) ("Pl. Opp. Class") at 5-7, DE #16 (arguing that defendant's motion is premature). Given the unsettled and constantly developing caselaw regarding the application of Bristol-Myers to nationwide class actions, the more prudent course would be to follow the lead of other decisions in this and other districts and to defer the Bristol-Myers issue until such time as plaintiff moves for class certification. See, e.g., Campbell v. Freshbev LLC, 322 F.Supp.3d 330, 337 (E.D.N.Y. 2018); Gonzalez v. Costco Wholesale Corp., No. 16 Civ. 2590 (NGG) (JO), 2018 WL 4783962, at *7 (E.D.N.Y. Sept. 29, 2018).

**V. Plaintiff's Request for Sanctions**

**\*8** Plaintiff requests that sanctions be imposed against defendant for its "flagrantly ... dece[ptive]" arguments regarding specific jurisdiction. See Pl. Opp. Class at 10. This Court does not find defendant's arguments, or its characterization of the cases on which it relies, deceptive. Accordingly, plaintiff's request for sanctions should be denied.

<u>CONCLUSION</u>

For the foregoing reasons, this Court respectfully recommends that defendant's motion to dismiss under Rule 12(b)(6) of the FRCP be granted and that the District Court decline to exercise supplemental jurisdiction over plaintiff's New York state law claim. In the alternative, this Court recommends deferring ruling on defendant's motion to dismiss the out-of-state putative class members' claims for lack of personal jurisdiction until plaintiff moves for class certification. Finally, plaintiff's request for sanctions should be denied.

Any objections to the recommendations contained herein must be filed with Judge Brodie on or before March 11, 2019. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2280731

---

**Footnotes**

1    In amending his pleading, plaintiff did drop his claim under section 227(c)(5) of the TCPA, which was set forth in the Second Cause of Action of the original Complaint.

2    Indeed, as a frequent filer of TCPA claims, on behalf of himself and others, Bank is well versed in how to identify an unauthorized caller. See, e.g., Pro Custom Solar, 2018 WL 3637960, at *1 (describing investigation conducted by Bank); Philips Elecs., 2015 WL 1650926, at *1 (identifying caller by information in caller ID); Bank v. Alliance Health Networks, LLC, No. 15-CV-213 (JG)(VMS), 2015 WL 4645317, at *1 (E.D.N.Y. Aug. 4, 2015) (same), aff'd, 669 F.App'x 584 (2d Cir. 2016).

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 23 of 233

**Bank v. Vivint Solar, Inc., Not Reported in Fed. Supp. (2019)**

3    Notably, Bank does not argue that the maker of the Prerecorded Call acted with *actual authority* from defendant to do so. See Pl. Opp. at 19-21; cf. Pro Custom Solar, 2018 WL 3637960, at *2 (noting that Bank "advance[d] the theory of actual authority").

4    Plaintiff's purported theory of "Approval After the Tortious Act" is not distinct from his aiding and abetting and/or ratification theories. See generally Semon v. Rock of Ages Corp., Case No. 5:10-cv-143, 2011 WL 13112212, at *13 (D. Vt. Dec. 23, 2011) ("all who aid in the commission of a tort by another, or who approve of it after it is done, if done for their benefit, are liable in the same manner as they would be if they had done it with their own hands") (citation, internal quotation marks, and alteration omitted).

5    In Alliance Health, a case brought by Bank, Judge John Gleeson distinguished his earlier decision in another Bank case, McCabe v. Caribbean Cruise Line, Inc., No. 13-CV-6131 (JG), 2014 WL 301487, at *3 (E.D.N.Y. July 3, 2014), in which robocalls were alleged to have been made pursuant to a contract with one of the defendants. See 2015 WL 4645317, at *1.

6    Bank also relies upon unreported rulings in two related TCPA cases brought by him in this District, in which Judge Carol B. Amon denied the defendants' motions for summary judgment. See Pl. Opp. at 14 (citing DE #107 in Bank v. Lifewatch Inc., 15cv2278 (CBA), and DE #62 in Bank v. Lifewatch Inc. 15cv5708 (CBA)). An unreported ruling on the record has no precedential value, see Bd. of Managers of Soho Int'l Arts Condo. v. City of New York, No. 01 Civ.1226 (DAB), 2003 WL 21403333, at *15 & n.20 (S.D.N.Y. June 17, 2003), and the court transcript upon which Bank purports to rely, see Pl. Opp. at 14, has not even been made part of the record in this case. Moreover, the facts alleged in the two Lifewatch complaints bear no resemblance to the facts pled in the instant case: There, at the conclusion of the challenged robocalls, Bank was transferred either to the defendant's representative, see Amended Complaint ¶ 11, DE #37 in Lifewatch, 15-cv-5708, or to a live person who identified the defendant as the maker of the robocall, see Amended Complaint &&amp; 22-28, DE #48 in Lifewatch, 15cv2278.

7    Even had that happened, at least one court has held that "[t]he transfer of the call [to the defendant] does not establish that Defendant exerted control over the initiator of the call, supervised or controlled the initial call, or maintained any sort of relationship with the initiator of the call, and thus is insufficient to establish an agency relationship between the transferor and Defendant." Childress v. Liberty Mut. Ins. Co., No. 17-CV-1051 (MV/ KBM), 2018 WL 4684209, at *4 (D.N.M. Sept. 28, 2018).

8    Plaintiff's reliance on Pro Customer Solar is therefore misplaced, as Bank alleged in that case that upon receiving the prerecorded calls, he was transferred to a live person who stated that the calls were being made to promote the defendant's goods and services. See 2018 WL 3637960, at *1. And in Charvat v. Allstate Corp., 29 F.Supp.3d 1147, 1150 (N.D. Ill. 2014), the defendant was specifically referenced in the robocalls.

9    The facts in Naiman are most closely analogous to those in the instant case, and Bank's cursory dismissal of the Naiman decision is unpersuasive. See Pl. Opp. at 23. Bank discusses at length two earlier decisions out of the same district, see id. at 10-12 -- Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc., Case No. 16-cv-05486–JCS, 2017 WL 733123 (N.D. Cal. Feb. 24, 2017), and Morris v. SolarCity Corp., Case No. 15-cv-05107-RS, 2016 WL 1359378 (N.D. Cal. Apr. 6, 2016) -- a couple of outliers that have never been cited by any federal courts in New York and that are at odds with decisions from this District.

10    Bank appears to conflate aiding and abetting liability with vicarious liability. See Pl. Opp. at 19 (listing "Aiding and Abetting" as subheading under "Vicarious Liability"). In fact, an aiding and abetting theory imposes liability on a defendant for its own acts while vicarious liability imposes liability on a defendant for the acts of its agents. See Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 194 (2d Cir. 2010).

**Bank v. Vivint Solar, Inc., Not Reported in Fed. Supp. (2019)**

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 24 of 233

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite citing references available

2023 WL 2592371
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Trevor BARNES, et al., Plaintiffs,
v.
SUNPOWER CORPORATION,
Defendant.

Case No. 22-cv-04299-TLT
|
Signed March 16, 2023

**Attorneys and Law Firms**

Adam J. Schwartz, Adam J. Schwartz, Attorney at Law, Beverly Hills, CA, Anthony I. Paronich, Pro Hac Vice, Paronich Law, P.C., Hingham, MA, Edward A. Broderick, Pro Hac Vice, Broderick Law, P.C., Boston, MA, for Plaintiffs.

Alexandra Nicole Krasovec, Christine Marie Reilly, Erin Gilmore, Manatt, Phelps & Phillips, LLP, Los Angeles, CA, for Defendant.

**ORDER GRANTING MOTION TO DISMISS**

Re: ECF No. 24

TRINA L. THOMPSON, United States District Judge

**\*1** Plaintiffs Trevor Barnes and Stephanie Brown ("Plaintiffs") bring this proposed putative class action against Defendant SunPower Corporation ("Defendant") for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq. *See* Pls. ['] Compl., ECF No. 1. Before the Court now is Defendant's motion to dismiss the entire complaint under Rule 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, or in the alternative or in addition, Defendant

seeks an order striking Plaintiffs' class allegations under Rule 12(f) and Rule 23 of the Federal Rules of Civil Procedure. Def. ['s] Mot. to Dismiss, ECF No. 24.

In its discretion, the Court finds this motion suitable for determination without oral argument. Civ. L.R. 7-1(b). Having carefully considered the parties' briefs, the relevant legal authority, and for the reasons below, the Court hereby **GRANTS** Defendant's motion to dismiss.

**I. BACKGROUND**

**A. Plaintiff Barnes's Allegations**
Plaintiff Barnes is an individual residing in Hawthorne, California. Compl. ¶ 5. He has a residential telephone number that has "been on the National Do Not Call Registry [("DNC")] for more than 31 days prior to June 2, 2022 and it has not been removed from the [DNC] since that time." *Id.* ¶ 21.

Plaintiff Barnes alleges that on June 2, 2022, he received two calls from Defendant "offering its good[s] or services." *Id.* ¶ 27. Plaintiff Barnes answered the first call and said he was not interested. *Id.* ¶ 28. The first call was from caller ID 385-398-XXXX, and a "later return call to that number to an entity that identified itself as Green Energy Solutions." *Id.* ¶¶ 29-30. Plaintiff Barnes alleges that because he was "annoyed that he was receiving a second illegal call after expressing his lack of interest, he played along in order to learn who was behind the calls and whose goods or services were being offered." *Id.* ¶ 31. Plaintiff Barnes claims he "spoke to a woman named Lia Smith, who identified herself as working for [Defendant]." *Id.* ¶ 31.

**B. Plaintiff Brown's Allegations**
Plaintiff Brown is an individual residing in Lakeland, Florida. Compl. ¶ 6. She does not allege to have her cellular number on the DNC. *See* Compl. Plaintiff Brown alleges that on May 31, 2022, she received "a prerecorded phone call on her cellular telephone. Before the message played there was a pause and a click, which is indicative of an autodialed call." *Id.* ¶ 38. "The prerecorded message stated that it was Brian Lee from 'solar project' and stated

if interested in solar panels, press a number." *Id.* ¶ 39.

"In order to find our who was behind the illegal prerecorded call to her cell phone, Ms. Brown pressed the number and spoke with a woman named Sarah who gave her a call back number of 817-813-XXXX and made an appointment for June 1, 2022." Compl. ¶ 40. Plaintiff Brown alleges she "additionally received a confirmatory text from 510-426-XXXX and a confirmatory email from solaradvisors@sunpower.com." *Id.* ¶ 41. According to Plaintiff Brown, the ability of the caller to transfer her directly to ... Sarah at [Defendant] indicates that the caller either worked at [Defendant] or was previously authorized to the place the call by [Defendant], as did the confirmatory text and email." *Id.* ¶ 42.

## II. LEGAL STANDARD

**\*2** Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to " 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.' " *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, " 'a plaintiff may plead herself out of court' " if she "plead[s] facts which establish that [s]he cannot prevail on h[er] ... claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

## III. DISCUSSION

Under the TCPA, it is "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States ... to make any call ... using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call...." 47 U.S.C. § 227(b)(1)(A)(iii). An automatic telephone dialing system is "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers." *Id.* at § 227(a)(1).

To properly plead a TCPA claim, a plaintiff must allege that (1) the defendant called or texted a cellular telephone number (2) using an automatic telephone dialing system (3) without the recipient's prior express consent. *See Meyer v. Portfolio Recovery Assocs.*, LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) ("[A] text message is a 'call' within the TCPA.").

Defendant argues that Plaintiffs fail to plausibly plead that Defendant is directly or vicariously liable for the alleged violations of the TCPA. The Court agrees with Defendant.

### A. Direct or Vicarious Liability

"To 'make' a call under the TCPA," and thus become liable, "the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Ewing v. Encor Solar, LLC*, No. 18-CV-2247-CAB-MDD, 2019 WL 277386, at \*6 (S.D. Cal. Jan. 22, 2019) (citing *Gomez v. Campbell-Ewald, Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014)).

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to so act." *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2008) (discussing agency in the context of a TCPA lawsuit) (quoting *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017)). "For an agency relationship to exist, an agent must have authority to act

on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.' " *Mavrix*, 873 F.3d at 1054 (quotation omitted).

**\*3** Here, Plaintiffs make only conclusory allegations that Defendant was directly or vicariously involved in transmitting the May 31, 2022, and June 2, 2022 telephone calls and text. For example, Plaintiff Barnes alleges that the first call he received was from caller ID 385-398-XXXX, but he does not allege this call originated directly from Defendant. Compl. ¶ 29. In fact, Plaintiff Barnes alleges that a "later return call to that number to an entity that identified itself as Green Energy Solutions." *Id.* ¶ 30. Plaintiff Barnes also claims he "spoke to a woman named Lia Smith, who identified herself as working for [Defendant]." *Id.* ¶ 31. However, no facts he has alleged support a plausible inference that Defendant itself made the two alleged calls or that Defendant has an agency relationship with "Green Energy Solutions."

Similarly, Plaintiff Brown alleges that she received "a prerecorded phone call on her cellular telephone" with a message stating it was Brian Lee from "solar project." Compl. ¶ 38. Plaintiff Brown does not allege that this initial call originated from Defendant. Instead, she alleges that she pressed a button as instructed and spoke with a woman named "Sarah who gave her a call back number of 817-813-XXXX," and she "additionally received a confirmatory text from 510-426-XXXX and a confirmatory email from solaradvisors@sunpower.com." *Id.* ¶ 41.

However, no facts she alleges support a plausible inference that Defendant itself made the original call or that Defendant has an agency relationship with "solar project." In addition, Plaintiff Brown does not allege that her number is placed on the DNC, and she only received the alleged confirmatory email from solaradvisors@sunpower.com after she voluntarily pressed a button to speak with someone. According to Plaintiff Brown, the ability of the caller to transfer her directly to ... Sarah at [Defendant] indicates that the caller either worked at [Defendant] or was previously authorized to the place the call by [Defendant], as did the confirmatory text and email," *id.* ¶ 42, but this allegation is conclusory and insufficient to establish that Defendant directly made the call or that Defendant has an agency relationship with "solar project" who made the initial call.

In other words, Plaintiffs here do not plausibly allege that Defendant directly made the alleged calls, nor do they plausibly allege what relationship, if any, they believe "Green Energy Solutions" and "solar project" had with Defendant and what, if any, control Defendant had over

the persons who made the alleged calls. "In determining whether vicarious liability should be imposed, the 'extent of control exercised by the [principal]' is the 'essential ingredient.' " *Jones*, 887 F.3d at 450 (quoting *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010)). A plaintiff "must also establish actual authority to place the unlawful calls." *Jones*, 887 F.3d at 449.

Accordingly, the Court finds Plaintiffs have failed to plausibly allege a TCPA claim. *See, e.g., Canary v. Youngevity Int'l, Inc.*, No. 5:18-cv-03261-EJD, 2019 WL 1275343, at \*6 (N.D. Cal. Mar. 20, 2019) ("Lacking, however, are sufficient factual allegations to plead that [defendant] exercised control over the specific contents of the March 15 call.... Even if [plaintiff] had alleged such facts, control over the content of an advertising call, without more, is insufficient to plead vicarious liability."); *see also Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014) ("To succeed on this [TCPA] vicarious liability theory, [plaintiff] must demonstrate that these entities acted as an agent of [defendant]: that [defendant] controlled or had the right to control them and, more specifically, the manner and means of the text message campaign they conducted.") (citing *Bonds*, 608 F.3d at 506).

### B. Leave to Amend
**\*4** Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 is to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). Leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

Despite the above deficiencies, the Court cannot say at this stage that amending Plaintiffs' complaint would be futile. Plaintiffs may still be able to allege sufficient facts to state a TCPA claim. Accordingly, dismissal of Plaintiffs' complaint is with leave to amend.

## IV. CONCLUSION

For the above reasons, Defendant's motion to dismiss is **GRANTED** with leave to amend.[1] Any amended complaint must be filed no later than within 14 days of the date of this Order. No new claims or parties may be added without leave of court or stipulation of Defendant. Any response to an amended complaint is due 14 days after Plaintiff's filing. In any such response, Defendant may not move to dismiss based on arguments that should have been raised previously.

This Order terminates docket number 24.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2592371

Footnotes

1    Because the Court finds Plaintiffs have failed to plausibly allege a TCPA violation under Rule 12(b)(6), the Court **GRANTS** Defendant's motion to dismiss on this ground. As such, the Court need not reach the question of whether Plaintiffs claims are subject to dismissal under Rule 12(b)(1) or whether Plaintiffs' class allegations should be stricken under Rule 12(f) and Rule 23.

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite negative history or citing references available
Report and Recommendation Adopted in Part, Rejected in Part by
Belleville v. Florida Insurance Services, Inc., S.D.Fla., May 31, 2024

2024 WL 2342337
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

Douglas BELLEVILLE, individually and
on behalf of all others similarly situated,
Plaintiff,
v.
FLORIDA INSURANCE SERVICES,
INC., a Florida Corporation, Defendant.

CASE NO. 23-CV-14369-AMC/SMM
|
Signed May 22, 2024
|
Filed May 23, 2024

**Attorneys and Law Firms**

Avi Robert Kaufman, Kaufman P.A., Miami, FL, Stefan Louis Coleman, Coleman, PLLC, Miami, FL, for Plaintiff.

Mario Garcia Menocal, Block & Scarpa, Attorneys at Law, Vero Beach, FL, for Defendant.

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS [DE 15]**

SHANIEK MILLS MAYNARD, UNITED STATES MAGISTRATE JUDGE

**\*1** Plaintiff Douglas Belleville brings this putative class action against Defendant Florida Insurance Services, Inc., for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. DE 13. Plaintiff alleges two counts under § 277(c)(5) of the TCPA, premised upon violations of two separate Federal Communication Commission ("FCC") regulations: 47 C.F.R. § 64.1200(c) and 47 C.F.R. § 64.1200(d).

Defendant has filed a Motion to Dismiss ("Motion") seeking to dismiss Plaintiff's Amended Complaint with prejudice for failure to state a claim under the TCPA and for lack of Article III standing. DE 15. Alternatively, Defendant's Motion seeks to strike certain improper allegations. Presiding U.S. District Judge Aileen M. Cannon has referred this Motion to me for appropriate disposition. DE 21. I have considered the Motion DE 15, Plaintiff's Response DE 18, and Defendant's Reply DE 22. For the reasons discussed below, I respectfully recommend that the Motion be **GRANTED** and that the Amended Complaint be dismissed in its entirety with leave to amend.

**BACKGROUND**

At this motion-to-dismiss stage, I will accept Plaintiff's factual allegations as true and construe them in the light most favorable to him.

According to the Amended Complaint, Defendant, doing business as Senior Life Services, sells life, health and annuity insurance plans, including final expense insurance to consumers throughout the U.S. DE 13 ¶¶ 13-14. Plaintiff is a resident of St. Louis, Missouri who has owned his cell phone number since November of 1996. Id. ¶¶ 1, 25. According to Plaintiff, he only ever uses his cell phone for personal use, and never for business. Id. ¶¶ 26-34. On July 20, 2009, Plaintiff registered his cell phone number on the national do-not-call list. Id. ¶ 25.

According to Plaintiff, Defendant, Florida Insurance Services Inc., uses the fictitious name, Senior Life Services. DE 13 ¶ 13.[1] Between October and November 2023, Plaintiff received four calls from different numbers he believed to be telemarketing calls from Senior Life Services. Plaintiff alleges that, each time, the caller asked for Phyllis Pearson.[2] First, on October 23, 2023, Plaintiff received a call from 661-399-8000. Id. ¶ 40. Plaintiff informed the caller that they had the wrong number, and the caller hung up before Plaintiff could receive more information. Id. ¶ 41. No company name was mentioned. Id. Second, on November 4, 2023, Plaintiff received a call from 405-960-7088. This time, the caller asked for Phyllis Pearson and wanted to provide an insurance quote. Id. ¶ 44. Once again, Plaintiff informed the caller they had the wrong number, and the caller hung up before Plaintiff could ask for more information. Id. ¶ 45. Third, on November 7, 2023, Plaintiff received a call from 314-919-9812, asking for Phyllis Pearson, and to provide an insurance quote. Id. ¶¶ 46, 47. The caller stated they

were calling from "what sounded like Senior Life Services." *Id.* ¶ 47. Again, Plaintiff told the caller they had the wrong number and the caller hung up. Lastly, on November 8, 2023, Plaintiff received a call from 314-948-9841. *Id.* ¶ 49. The caller once again asked for Phyllis Pearson and wanted to provide a supplemental insurance quote. *Id.* ¶ 50. This time, however, Plaintiff "feigned interest," and the caller revealed they were calling from Senior Life Services and even provided their website, theslsway.com. *Id.* ¶¶ 50,51. Plaintiff believes that all four calls were from Senior Life Services because they all called to provide an insurance quote, began their sales pitch the same way, and when called back, each number provided the same busy signal. *Id.* ¶ 52.

**\*2** On November 23, 2023, Plaintiff filed this class action lawsuit for violations of the TCPA. DE 1. On January 11, 2024, Defendant moved to dismiss the action for failure to state a claim and lack of Article III standing. DE 10. On February 1, 2024, Plaintiff filed an Amended Complaint, DE 13, alleging two counts. Count I alleges that Defendant violated 47 C.F.R. § 64.1200(c) by initiating telemarketing calls to Plaintiff and others who have registered their telephone numbers on the National Do Not Call Registry. DE 13 ¶ 67. Count II alleges that Defendant violated 47 C.F.R. § 64.1200(d) by calling Plaintiff and others without implementing internal procedures for maintaining a list of persons who request not to be called. *Id.* at ¶ 73.

On February 15, 2024, Defendant moved to dismiss the Amended Complaint or, in the alternative, to strike certain allegations as improper. DE 15. Defendant seeks dismissal with prejudice on grounds that the Amended Complaint is Plaintiff's "second failed attempt to state a claim or to allege sufficient class allegations" and he should not be afforded another opportunity to amend. *Id.* at 10.[3] Plaintiff filed a response in opposition, DE 18, Defendant has replied, DE 22, and the Motion is ripe for review.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the basis that it fails to state a claim upon which relief can be granted. When considering such a motion, a court must accept the factual allegations pleaded in the complaint as true and must construe the complaint in the light most favorable to the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir.

2004). However, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" so as to "nudge his claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In determining whether the plausibility standard has been met, a court must consider the pleading as a whole and must draw on judicial experience and common sense. *Id.*; *see also Speaker v. U.S. Dept. of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

**\*3** A plaintiff need not detail all the facts on which his claim is based; rather, Rule 8(a)(2) requires only a short and plain statement that fairly notifies the defendant of what the claim is and the grounds on which it rests. *Twombly*, 550 U.S. at 555-56, 127 S.Ct. 1955; *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). The allegations must, however, be enough to raise a right to relief above the speculative level. *Twombly,* 550 U.S. at 555-56, 127 S.Ct. 1955. The Federal Rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 662, 129 S.Ct. 1937. "Mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.' " *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (citation omitted). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

A complaint may also be dismissed under Rule 12(b)(1) for a lack of subject matter jurisdiction for lack of Article III standing. *See Elend v. Basham*, 471 F.3d 1199, 1205, 1208 (11th Cir. 2006). Article III standing is a threshold question of "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Sims v. Fla. Dep't of Highway Safety & Motor Vehicles*, 862 F.2d 1449, 1458 (11th Cir. 1989) (en banc). " 'The law of Article III standing ... serves to prevent the judicial process from being used to usurp the powers of the political branches,' and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013); *Warth v. Seldin*, 422

U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Further, "standing requirements 'are not mere pleading requirements but rather [are] an indispensable part of the plaintiff's case.' " *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "Indeed, standing is a threshold question that must be explored at the outset of any case." *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019) (citing *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005)), *cert. denied*, —— U.S. ——, 140 S. Ct. 900, 205 L. Ed. 2d 467 (2020). "In its absence, 'a court is not free to opine in an advisory capacity about the merits of a plaintiff's claim.' " *Id.* (quoting *Bochese*, 405 F.3d at 974). "In fact, standing is 'perhaps the most important jurisdictional' requirement, and without it, [federal courts] have no power to judge the merits." *Id.* (footnote omitted) (quoting *Bochese*, 405 F.3d at 974).

To establish standing, a plaintiff must allege that: (1) it "suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) "the injury is fairly traceable to conduct of the defendant;" and (3) "it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003).

## ANALYSIS

The TCPA directs the FCC to create regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019) (citing 47 U.S.C. § 227(c)(1)). The TCPA "creates a private right of action for any 'person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under' the TCPA." *Becker v. Pro Custom Solar LLC*, 2020 WL 474647, at *5 (M.D. Fla. Jan. 29, 2020) (quoting 47 U.S.C. § 227(c)(5)).

**\*4** Plaintiff brings two counts under 47 U.S.C. § 227(c)(5) of the TCPA. Count I alleges a violation of 47 C.F.R. § 64.1200(c), which provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." Count II

alleges a violation of 47 C.F.R. § 64.1200(d), which provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

### A. Counts I and II Should Be Dismissed for Failure to Sufficiently Allege Direct or Vicarious TCPA Liability.

Defendant argues that Plaintiff fails to plead sufficient facts supporting a plausible theory of liability for either of the two counts pled. DE 15 at 13. Specifically, Defendant argues that Plaintiff fails to plead facts demonstrating either direct or vicarious liability. *Id.* I agree. "To state a claim for relief under the TCPA, a plaintiff may proceed either on a theory of direct liability, which "applies only to entities that 'initiate' the telemarketing calls", or on a theory of vicarious liability which, 'in the TCPA context[,] is governed by the federal common law of agency[.]' " *Tuso v. Lennar Corp.*, 2024 WL 1239474 at *3 (S.D. Fla. March 22, 2024) (citations omitted); *see also Taylor v. Suntuity Solar Limited Liability Company*, 2024 WL 964199 at *6 (M.D. Fla. March 6, 2024); *Ewing v. Encor Solar, LLC*, 2019 WL 277386, at *6 (S.D. Cal. Jan. 22, 2019) (citing *Gomez v. Campbell-Ewald, Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014)). Vicarious liability can be established using principles of agency law: actual agency, apparent authority, or ratification. *See Tuso*, 2024 WL 1239474 at *3.

Here, Plaintiff alleges in conclusory fashion that Defendant was directly involved in making the first three telephone calls to Plaintiff. For example, Plaintiff states that the first call he received was from Senior Life Services, but the Amended Complaint fails to explain how Plaintiff knows that call was from Senior Life Services. DE 13 ¶¶ 40-42. In fact, Plaintiff clarifies that no company name was mentioned on that first call. *Id.* ¶ 42. Similarly, the Amended Complaint provides no information linking Defendant to the second call. On the third call, Plaintiff vaguely claims the caller identified his employer as "what sounded like Senior Life Services." *Id.* ¶ 47. Rather than allege specific facts tying the first three calls to Defendant, Plaintiff provides only the conclusory allegation that he "received an unsolicited telemarketing call to his cell phone from Senior Life Services" and provides either insufficient or no facts to support a plausible inference that those calls were truly from Senior Life Services. *Id.* ¶¶ 40, 43, 46, 49. It was not until the

fourth call that Plaintiff alleges he was directly told the caller was calling on behalf of Senior Life Services and that the caller provided a website for Senior Life Services. *Id.* ¶¶ 50, 51.

Plaintiff attempts to link the four calls to Defendant by noting the callers were all calling to provide an insurance quote, they began with the same sales pitch, and upon calling back each of the phone numbers, the same busy signal was produced. *Id.* ¶ 52. However, Plaintiff does not describe the sales pitch or how the busy signal links the callers.[4] The lone facts in the Amended Complaint that link the first three calls to Defendant, are the callers asking for Phyllis Pearson, and providing an insurance quote. *Id.* ¶¶ 41, 44, 47, 50. However, Plaintiff admittedly has been receiving calls asking for Phyllis Pearson for approximately three years. *Id.* ¶ 36. Further, a telemarketer asking if they can provide an insurance quote is like a police officer asking if you know why you are being pulled over. It is a common practice that fails to narrow down Defendant in any way. These allegations are conclusory and insufficient to establish that Defendant directly made the first three calls.

**\*5** In his Response, Plaintiff argues an additional reason the calls are linked to Defendant. Plaintiff argues that the four calls all came "within a few days of each other." DE 18 at 3. Specifically, the November 7 and November 8, 2023 calls were "within 1 day of each other" and came "from similar 314 telephone numbers" showing that if the last call came from Defendant, the rest must have as well. *Id.* However, this is a stretch, and still insufficient because the proximity of the last two calls and similarity in number could very well be coincidental, which is not enough to tie them together or to Defendant.

"To establish a [Do Not Call Registry] claim under TCPA § 227(c)(5) and related regulations, a plaintiff must plead facts that plausibly demonstrate: (1) they received multiple calls within twelve months, (2) from the same entity, (3) to a phone number registered on the National DNC Registry." *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275 at \*4 (E.D. Pa., Oct. 7, 2021). *See Huber v. Pro Custom Solar, LLC*, 2020 WL 2525971, at \*2 (M.D. Pa. May 18, 2020) (citing 47 C.F.R. § 64.1200(c)(2)). Plaintiff does not meet the first two prongs. First, Plaintiff only provided facts showing the November 8, 2023 call was made by Defendant; that is only one call, which is not sufficient to state a claim. "The TCPA's private right of action provision only grants the right to sue to persons who have received more than one phone call within a 12-month period." *Taylor v. Suntuity Solar Limited Liability Co.*, 2024 WL 964199 (M.D. Fla., March 16, 2024) (citing 47 U.S.C. § 227(c)(5)). Second, Plaintiff has not alleged facts plausibly showing that it

received more than the November 8, 2023 call from Defendant.

Courts have held that, "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone." *Scruggs v. CHW Grp., Inc.*, 2020 WL 9348208, at \*10 (E.D. Va. Nov. 12, 2020) ("The sole factual allegation linking [defendant] to the calls is that the caller identified himself as 'associated with [defendant]' which is insufficient under the *Iqbal* pleading standards"); See *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275 at \*3-4 (E.D. Pa., Oct. 7, 2021) (finding that plaintiffs did not sufficiently plead the offending calls came from defendant, when they provided no details specifying how they knew that defendant itself placed the calls, such as caller ID, identifying themselves, or specifying their services); *Aaronson v. CHW Group, Inc.*, 2019 WL 8953349 at \*2 (E.D. Va., April 15, 2019) ("The lone fact marshalled in the Complaint that even comes close to supporting plaintiff's conclusion that defendant was the party that called his cellular telephone is the allegation that one of the calls made to plaintiff was from a telephone number that, according to the Complaint, 'is one of the Defendant's many telephone numbers.' But without any facts to explain why plaintiff believes the identified phone number is owned by defendant, this allegation amounts to nothing more than another conclusory allegation that defendant made the calls to plaintiff's cellular phone."); *Augustin v. Santander Consumer USA, Inc.*, 43 F.Supp.3d 1251, 1254 (M.D. Fla., Aug. 7, 2012) (court dismissed case because the plaintiff "recited the elements of a TCPA claim" but did not "provide the dates of the calls, his phone number, his girlfriend's name or phone number, or the number from which he received the allegedly unlawful calls.") *Barnes v. SunPower Corporation*, 2023 WL 2592371 at \*3 (N.D. Cal., March 16, 2023) (Finding that even though a plaintiff alleged that upon a return call, an employee claimed to work for defendant, and plaintiff's allegations provided the numbers that called, plaintiff still failed to allege the calls originated directly from defendant).

**\*6** As it is here, Plaintiff fails to allege factual support identifying Defendant as the offending caller, and therefore Counts I and II should therefore be dismissed.[5]

### B. Count II is also Subject to Dismissal for Lack of Standing.

Defendant argues that Count II should also be dismissed

for lack of Article III standing. DE 22 at 12. Specifically, Defendant argues that "Plaintiff never once alleges in his [Amended Complaint] that he asked for his cell phone number to be placed on any caller's internal DNC list ..." *Id.* Defendant is correct. Plaintiff's allegations are insufficient to establish Plaintiff's standing to state a claim under the TCPA. *See Cordoba v. DirectV, LLC, 942 F.3d 1259, 1271-72 (11th Cir. 2019).*

In *Cordoba*, the plaintiff initiated a class action lawsuit alleging that the defendants violated the TCPA's regulatory scheme, including the provisions in section 64.1200(d). *Id. at 1266.* The named plaintiff repeatedly asked defendants not to be called and the Eleventh Circuit concluded that while the named plaintiff had standing, class members who did not ask the defendants to stop calling them "were not injured by the failure to comply with the regulation" and thus lacked Article III standing to sue. *Id.*

Here, the Amended Complaint is completely devoid of any allegation that Plaintiff asked to be placed on Defendant's internal do-not-call list. Like the class members in *Cordoba* who lacked standing, Plaintiff never asked Defendant to be placed on any internal do-not-call list. Nor does Plaintiff ever tell the callers that he did not wish to be called. Thus, as currently pled, the allegations in the Amended Complaint are insufficient to establish Plaintiff's standing to sue for Defendant's alleged violations. Plaintiff's alleged injuries are not fairly traceable to Defendant's wrongful conduct and Defendant lacks Article III standing.

Further, "[t]he Eleventh Circuit has held that Article III standing to sue for failure to maintain and honor an internal DNC list arises from calls made in violation of the Act." *Hossfeld v. American Financial Security Life Ins. Co., 544 F. Supp. 3d 1323, 1333 (S.D. Fla., June 16, 2021).* As discussed above, Plaintiff fails to allege facts plausibly showing that Defendant made more than one call to Plaintiff. *Id. at 1333.* Meaning that multiple calls must be made in violation of the Act to establish standing for an internal DNC claim. In the absence of allegations linking Defendant to more than one offending call, Plaintiff does not and cannot sufficiently allege that any calls were made in violation of any internal DNC list. Without factual support, Plaintiff has not sufficiently alleged standing to sue for failure to maintain an internal DNC list. This one call is insufficient to establish Article III standing. Count II should therefore be dismissed on this additional basis.

## CONCLUSION

**\*7** The Amended Complaint's allegations are presently insufficient to state claims under the TCPA. However, because Plaintiff has only amended his complaint once as a matter of course and may be able to plead greater detail to support his claim, he should be granted one final opportunity to amend this claim. *See Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001)* (dismissal of amended complaint without leave to amend was abuse of discretion where amended complaint had been filed as a matter of course in response to a defendant's prior motion to dismiss such that "it cannot be said that the plaintiffs already had been given an opportunity to amend or that the plaintiffs repeatedly had failed to cure deficiencies through previously allowed amendments"); *Fed. R. Civ. P. 15(a)* (leave to amend should be freely given "when justice so requires."). However, I caution Plaintiff, that without additional supporting factual allegations to satisfy the required legal elements outlined above, he will fail to state a claim.

Therefore, I respectfully **RECOMMEND** that Defendant's Motion to Dismiss, DE 15, be **GRANTED** as follows. The Amended Complaint should be **DISMISSED** in its entirety. However, given that Plaintiff has amended once before as a matter of course and may be able to plead greater detail to support his claims, this dismissal should be **WITHOUT PREJUDICE** and Plaintiff should be afforded one final opportunity to amend his complaint to address the deficiencies discussed in this Report.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1* (2016). **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

Belleville v. Florida Insurance Services, Inc., Slip Copy (2024)

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 22nd day of May, 2024.

**All Citations**

Slip Copy, 2024 WL 2342337

Footnotes

1    The Amended Complaint includes a picture of and link to the Florida Department of State's Fictitious Name Detail, verifying that Defendant uses the name Senior Life Services. *Id.*

2    Plaintiff claims that "[f]or approximately three years, [he] has received calls from callers asking for a woman named Phyllis Pearson." *Id.* ¶ 36.

3    For reasons discussed *infra* in this report, I find that Counts I and II should be dismissed for failure to state a claim, Count II fails for lack of standing, and Plaintiff should be given one final opportunity to replead. In light of these findings, I do not reach Defendant's alternative arguments concerning injunctive relief and class allegations. It should be noted that dismissal of class allegations at the pleading stage "is an extreme remedy appropriate only where a defendant demonstrates 'from the facts of [the] complaint that it will be impossible to certify the classes alleged by the plaintiff[ ] regardless of the facts the plaintiff [ ] may be able to prove.' " *Epler v. Air Methods Corp.*, 2021 WL 2813817, at *1 (M.D. Fla. June 30, 2021) (alterations in original) (citing *Oginski v. Paragon Prop. of Costa Rica, LLC*, 2011 WL 3489541, at *3 (S.D. Fla. Aug. 9, 2011)). In the context of seeking to strike class allegations, courts in this Circuit generally consider motions to strike to be premature, instead finding that such issues are best addressed in opposition to a motion for class certification, after the benefit of discovery. *Sharfman v. Premier Med., Inc.*, 2021 WL 6884683, at *4 (M.D. Fla. Dec. 29, 2021) (collecting cases).

4    A common busy signal is not sufficient to establish a plausible inference that any two callers are linked in any way.

5    Defendant argues Plaintiff has not given Defendant fair notice of his TCPA claims because the Amended Complaint does not contain at least a redacted version of Plaintiff's phone number. DE 15 at 1. In this district, "[t]he fact that Plaintiff does not identify the specific telephone number called ... is not fatal under *Twombly* and *Iqbal*." *Buslepp v. Improv Miami, Inc.*, 2012 WL 1560408, at *1 (S.D. Fla. May 4, 2012) (denying motion to dismiss TCPA claim where plaintiff alleged the date and content of the text message but did not provide his number.) However, while not fatal to his claim, I do agree with the reasoning in Defendant's out of district case, *Mendez v. Optio Sols., LLC,* and advise Plaintiff, should he choose to amend his complaint, it should include at least the last four digits of the telephone number that Defendant allegedly called, in order to give Defendant fair notice. 219 F. Supp. 3d 1012, 1015 (S.D. Cal. 2016); See *Augustin* 43 F.Supp.3d at 1254.

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 35 of 233

Bennett v. Celtic Insurance Company, Not Reported in Fed. Supp. (2022)

2022 WL 865837
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Tawni BENNETT, individually and on
behalf of all other similarly situated, Plaintiff,
v.
CELTIC INSURANCE COMPANY, CR
Insurance Group, LLC, and Joel Ortiz, Defendants.

Case No. 20-cv-06172
|
Signed 03/23/2022

**Attorneys and Law Firms**

Joshua Harris Eggnatz, Eggnatz Pascucci, P.A., Davie, FL,
Jordan Richards, Jordan Richards PLLC, Fort Lauderdale,
FL, for Plaintiff Tawni Bennett.

Phillip Russell Perdew, William Patrick Conlon, Locke Lord
LLP, Chicago, IL, for Defendant Celtic Insurance Company.

Vincent B. Lynch, ELP Global, Orlando, FL, Adrian
Mendoza, Jr., Angela Marie Iaria, Ms., Lillig & Thorsness,
Ltd., Oak Brook, IL, for Defendant CR Insurance Group,
LLC.

**MEMORANDUM OPINION AND ORDER**

John Robert Blakey, United States District Judge

 **\*1** Plaintiff Tawni Bennett brings putative class-action
claims against Defendants Celtic Insurance Company, CR
Insurance Group, LLC, and Joel Ortiz for violating the
Telephone Consumer Protection Act (TCPA) and the Illinois
Automatic Telephone Dialers Act (IATDA). [15]. She
alleges that Defendants "placed thousands of nonconsensual
automated or prerecorded calls to consumers' cellphones,"
including hers, using an "automatic telephone dialing
system." *See id.* at ¶¶ 1–3. This Court previously dismissed
Plaintiff's claims against Defendants CR and Ortiz for lack of
personal jurisdiction. *See* [40]. Defendant Celtic now moves
to dismiss Plaintiff's TCPA and IATDA claims for failure to
state a claim pursuant to Federal Rule of Civil Procedure
12(b)(6). [25]. For the reasons explained below, this Court
grants Celtic's motion.

**I. The Complaint's Allegations**
In December 2019, Plaintiff began receiving telemarketing
calls on her cellular phone trying to sell her health insurance.
[15] at ¶¶ 10, 19. These unsolicited calls continued through
October 2020, even though Plaintiff registered her cellphone
number on the National Do-Not-Call Registry in 2014. *See
id.* at ¶¶ 39–40, 54. Plaintiff incurred charges for the calls. *Id.*
at ¶ 52.

Plaintiff claims that the calls were made using an automatic
telephone dialing system (ATDS). *Id.* at ¶ 28. She knew
this because the calls were prerecorded, "sounded the same,"
and "had the same or substantially similar" generic message
that "the caller had a 'very important call to help you' with
'renewal of your insurance.' " *Id.* at ¶¶ 24–29. Plaintiff
additionally alleges, based on "information and belief," that
the ATDS at issue can "store or produce telephone numbers ...
using a random or sequential number generator" and "dial
numbers without human intervention." *Id.* at ¶¶ 44–45. She
states that the caller used "spoofed" phone numbers because
most calls she received "displayed a different number." *Id.* at
¶¶ 21, 41.

While investigating the source of the calls, Plaintiff connected
with the caller's live operators on two occasions. *Id.* at ¶ 31.
The live operators "identified themselves as sales agents who
worked with Ambetter to sell an Ambetter plan." *Id.* One of
them referred to the insurance product as "our plans" and
stated that she was calling "with Ambetter" from "the call
center." *Id.* Ambetter, the only policy offered in the calls,
is a product of Defendant Celtic. *Id.* at ¶¶ 31–32, 35. Upon
agreeing to purchase "the health insurance product offered in
the calls," Plaintiff received a copy of the insurance policy,
which "confirmed" that the "calls and product sold were from,
or on behalf of Celtic." *Id.* at ¶ 34.

Plaintiff alleges that "Defendants promote and market Celtic
services and products" through unlawful telemarketing. *Id.*
at ¶ 15. In her second amended complaint, she names
as Defendants CR and Ortiz, "licensed and authorized
Celtic insurance broker and/or sales agent[s]," and Celtic, a
company that "hires, authorizes, and pays third-party brokers
and sales agents, including but not limited to CR and Ortiz,"
to sell its products via telemarketing. *Id.* at ¶¶ 11–13.

 **\*2** Plaintiff also alleges that "Celtic and/or CR" provided
"interim instructions" to "CR and/or Ortiz regarding the calls"
and specified "the geographic location and/or volume of the
calls." *Id.* at ¶¶ 73–75. Additionally, "Defendants specified

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 36 of 233

**Bennett v. Celtic Insurance Company, Not Reported in Fed. Supp. (2022)**

the criteria of potential customers," allowed their marketers to access "records and data concerning the persons called," and "had access to the sales and customers generated by the illegal robocalling." *Id.* at ¶¶ 77–79. Finally, Plaintiff claims that she reasonably believed "the telemarketers who called her had received permission, authority, and instruction to conduct activity on behalf of Defendant Celtic." *Id.* at ¶ 82.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) tests the factual sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so the defendant could have "fair notice" of the claim and "the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The plaintiff is not required to provide "detailed factual allegations" at the pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The alleged facts, however, must be enough to raise a facially plausible right to relief. *Twombly*, 550 U.S. at 569. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Warcik v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678).

When deciding a Rule 12(b)(6) motion, this Court accepts "all well-pleaded allegations of the complaint as true," and draws all reasonable inferences in favor of the plaintiff. *Iqbal*, 556 U.S. at 678. This Court, however, need not accept a complaint's legal conclusions and "threadbare recitals of the elements of a cause of action." *Id.*; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## III. Analysis

In its motion, Celtic seeks to dismiss both of Plaintiff's claims for failure to state a claim. This Court considers the sufficiency of the allegations as to each claim in turn.

### A. The Sufficiency of Plaintiff's TCPA Allegations

The TCPA makes it "unlawful to use an automatic telephone dialing system or an artificial or prerecorded voice message, without the prior express consent of the called party, to call any ... cellular telephone ... for which the receiver is charged for the call." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368,

373 (2012); *see also* 47 U.S.C. § 227(b)(1)(A)(iii). An entity violates the TCPA and may be held directly liable if it initiates the unlawful calls to the plaintiff; an entity may also be liable vicariously, under common law agency principles, if third parties make calls on its behalf. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771–73 (N.D. Ill. 2014) (citing *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Red. 6574 (2013)).

Plaintiff claims that Celtic is directly or vicariously liable for the unlawful calls at issue in this case. [15]. She alleges that she received calls from "Defendants," CR, Ortiz, or an unknown telemarketer. *See id.* at ¶¶ 11, 19, 57, 63, 68. She further claims that Celtic is liable as part of a joint enterprise with CR and Ortiz for the alleged TCPA violations. *Id.* at ¶¶ 104–15. Celtic argues that Plaintiff's claims fail for various reasons, including that she did not allege facts showing that Celtic itself physically placed the calls and did not allege facts to demonstrate any agency relationship between Celtic and the individuals or entities that called her. [25].

### 1. Liability Based upon CR and Ortiz's Actions

**\*3** As a preliminary matter, this Court dismissed Plaintiff's joint enterprise allegations based upon its prior dismissal of CR and Ortiz for lack of personal jurisdiction. *See* [40]. For the same reasons, this Court dismisses Plaintiff's allegations seeking to hold Celtic vicariously liable for the actions of its purported agents CR and Ortiz. Although Plaintiff claims that CR and Ortiz have engaged in unlawful telemarketing, *see, e.g.*, [15] ¶ 85, her complaint does not plausibly link their conduct to the calls *she* received. She never spoke to either of them and does not allege any connection between them and the live operators with whom she spoke.

### 2. Liability Based Upon the Ambetter Representative

Plaintiff also seeks to hold Celtic liable for the calls that wound up connecting her to the Ambetter call center representative. But, again, Plaintiff failed to allege facts that would provide a substantive basis to hold Celtic either directly or vicariously liable for the calls that connected her to Ambetter's call center.

#### a. Direct Liability

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 37 of 233

Bennett v. Celtic Insurance Company, Not Reported in Fed. Supp. (2022)

Direct liability exists when a defendant "initiates" the disputed phone call. *Smith*, 30 F. Supp. 3d at 771. Initiation occurs when the defendant physically places the calls or is "so involved in" their placement that it essentially made them itself. *Warciak v. Subway Rests., Inc.*, No. 1:16-CV-08694, 2019 WL 978666, at *2 (N.D. Ill. Feb. 29, 2019), *aff'd*, 949 F.3d 354 (7th Cir. 2020). The "so involved" standard is demanding; a defendant "generally does not 'initiate' calls placed by third-party telemarketers," even if the third party had acted on its behalf. *Smith*, 30 F. Supp. 3d at 771.

Plaintiff does not claim that Celtic made the calls. Instead, she alleges that "Defendants utilized a systematic telemarketing campaign whereby robocalls were placed in a seamless process to make it appear to Plaintiff and Class Members that Defendant, Celtic, was calling them directly, or that they were being called on Defendant Celtic's behalf, from Defendants' telemarketing department or call center." [15] at ¶ 68; [32]. But her allegations do not demonstrate that Celtic was "so involved" in placing the calls at issue.

The allegations relating to her conversations with the live operators show at best that the calls originated from *Ambetter*'s call center. But Plaintiff does not plausibly tie Ambetter to Celtic. Plaintiff does allege that the Ambetter plan is a product promoted and sold by Celtic, *id.* at ¶ 35, but she does not allege, for example, that Ambetter is sold exclusively by Celtic, that Ambetter is otherwise synonymous with Celtic, or that anyone selling Ambetter necessarily worked for Celtic. Plaintiff alleges that the insurance policy she received after talking with the live operators "further confirmed that the calls and product sold were from, or on behalf of Celtic." *Id.* at ¶ 34. But she alleges no facts to suggest anything more than the identification of the Ambetter product; certainly she alleges nothing about the actual content of the policy, or any facts to tie Celtic (as opposed to Ambetter) to its issuance. In short, this allegation is conclusory, and the Court need not accept it as true.

*Smith* and *Warciak* are dispositive. In both *Smith* and *Warciak*, the court dismissed the direct liability claim because the plaintiff acknowledged that a third party was responsible for the disputed telemarketing activities. *See Smith*, 30 F. Supp. 3d at 771; *Warciak*, 2019 WL 978666, at *2. Here, although Plaintiff did not explicitly acknowledge the point, she did not allege facts affirmatively raising a plausible right to relief. Plaintiff has not alleged facts that plausibly establish that Ambetter is Celtic; nor has she alleged facts showing that a call from a person selling Ambetter necessarily equates with

Celtic. This Court therefore finds that Plaintiff's allegations fail to state a claim against Celtic for direct liability under the TCPA.

### b. Vicarious Liability

**\*4**  The TCPA additionally holds a defendant vicariously liable for the unlawful telemarketing activities conducted by its third-party agents. *Warciak*, 949 F.3d at 356. Parties create an agency relationship "when a person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act." Restatement (Third) of Agency § 1.01 (2006). Plaintiff here argues that an agency relationship exists between Celtic and the telemarketers from Ambetter's call center, and she bases her argument on her allegation that the caller never advised her that it was not an Ambetter/ Celtic representative or that it was not an authorized agent of Ambetter/Celtic. [15] at ¶ 33. But the failure to disclose a non-connection does not necessarily create an agency relationship; indeed, by that purported standard, almost anyone could be liable.

Agency is "typically a factual issue" that warrants discovery. *See Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016) (citing *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014)). At the motion to dismiss stage, a plaintiff need not identify the third-party telemarketer responsible for her injury or "what arrangement that third party had" with the defendant, *see id.*, because only the defendant "can reasonably be expected to know these facts," *Charvat*, 29 F. Supp. 3d at 1151. The complaint must, however, allege facts sufficient to support an inference that the defendant acknowledges the telemarketer's activities.

In *Charvat*, the court found the plaintiff's allegation that the prerecorded call stated it was *backed by* the defendant sufficient to establish a substantive basis for vicarious liability. 29 F. Supp. 3d at 1150–51. Likewise, in *Vessal v. Alarm.com*, the court denied dismissal of the plaintiff's agency claims because she asserted that her callers used the named defendant's website. No. 17 C 2188, 2017 WL 4682736, at *3 (N.D. Ill. Oct. 18, 2017). And, in *Mauer*, the court found a plausible connection between a telemarketer and the defendant when, minutes after the telemarketer received the plaintiff's investigator's phone number, the

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 38 of 233

Bennett v. Celtic Insurance Company, Not Reported in Fed. Supp. (2022)

defendants called the investigator via the same number. 2016 WL 4651395, at *2.

Conversely, courts have dismissed complaints that only allege a contractual relationship between the telemarketer and the defendant, *see* Warciak, 949 F.3d at 356, or the telemarketer's one-sided namedropping of the defendant's product, *see* Cunningham v. Health Plan Intermediaries Holdings, LLC, No. 17-CV-1216, 2018 WL 835222, at *6 (N.D. Ill. Feb. 13, 2018) (dismissing the plaintiff's apparent authority claim because he based it solely upon the telemarketer's mentioning the defendant's name and product).

Here, Plaintiff's complaint only alleges the live operators' one-sided namedropping of Ambetter, a product available from Celtic and possibly others. She does not allege facts suggesting that Celtic actively interacted with the live operators by "backing" them or allowing them to use or sell its exclusive products. She also does not claim that she has interacted with Celtic at all, let alone immediately after connecting with the telemarketer. Because Plaintiff's allegations do not support the existence of active interactions between the telemarketer and the defendant, this Court dismisses her vicarious liability claims against Celtic based upon the Ambetter caller.

### B. The Sufficiency of Plaintiff's IATDA Allegations

The IATDA makes it unlawful for a person to "operate an autodialer in this State except in accordance with this Act." 815 Ill. Comp. Stat. 305/10. To state a claim under the IATDA, a plaintiff must allege that: "(1) she is a telephone customer; (2) the defendant placed a call using an autodialer; (3) the defendant played a prerecorded message; (4) the call was not made with her consent; and (5) she was injured by the defendant's alleged violation." Thrasher-Lyon v. Ill. Farmers

Ins. Co., 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012); 815 Ill. Comp. Stat. 305/30(b)–(c).

**\*5** Plaintiff alleges that Celtic violated the IATDA because Celtic "caused calls to be made to the phones of Plaintiff" using an autodialer that played a prerecorded message. [15] at ¶ 158. As discussed above, however, Plaintiff has not plausibly alleged that either Celtic or its third-party agent placed the calls she received. This Court, therefore, finds that Plaintiff's allegations fail to state a claim under the IATDA and dismisses her IATDA claims against Celtic.

### IV. Conclusion

For the reasons explained more fully above, this Court grants Defendant Celtic's Rule 12(b)(6) motion to dismiss [25] and dismisses Counts I through VI of Plaintiff's second amended complaint. The Court notes that Plaintiff has already amended her complaint twice, including once in response to Celtic's Rule 12(b)(6) arguments. Yet, given Rule 15(a)(2)'s mandate to freely give leave to amend, the Court will give Plaintiff one last chance to cure the deficiencies noted above. *E.g.,* Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana, 786 F.3d 510, 519 (7th Cir. 2015) ("a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). If, consistent with Rule 11, Plaintiff can allege facts to support her claims against Celtic, she may amend her complaint by April 15, 2022. If Plaintiff fails to file an amended complaint by this date, the Court will dismiss this case.

### All Citations

Not Reported in Fed. Supp., 2022 WL 865837

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

C KeyCite citing references available

2024 WL 3367536
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

Stephanie BROWN, individually and on
behalf of others similarly situated,
Plaintiff,

v.

NANO HEARING TECH OPCO, LLC
d/b/a Nano Hearing Aids, Defendant.

Case No.: 3:24-cv-00221-BTM-JLB
|
Signed July 9, 2024

**Attorneys and Law Firms**

Aryanna Yvette Young, Ryan Lee McBride, Kazerouni
Law Group, APC, San Diego, CA, for Plaintiff.

Kenneth M. Fitzgerald, Fitzgerald Knaier LLP, San
Diego, CA, Michael L. Simes, Pro Hac Vice, Simes Law
P.C., New York, NY, for Defendant.

**ORDER GRANTING DEFENDANT NANO
HEARING AIDS' MOTION TO DISMISS**

**[ECF NO. 6]**

Barry Ted. Moskowitz, United States District Judge

**\*1** Defendant Nano Hearing Tech Opco, LLC doing
business as Nano Hearing Aids ("Nano") has filed a
Motion to Dismiss Plaintiff's Complaint. (ECF No. 6
("Def.'s MTD").) In response, Plaintiff Stephanie Brown
("Brown") filed an opposition. (ECF No. 7 ("Pls.'
Opp'n").) Nano then filed a reply. (ECF No. 10 ("Def.'s
Reply").) For the reasons discussed below, the Court

grants Nano's Motion to Dismiss and Motion to Strike.

**I. BACKGROUND**

Brown, on behalf of herself and a potential class, filed suit
against Nano alleging unsolicited marketing that
constitutes negligent and willful violations of the
Telephone Consumer Protection Act ("TCPA"), 47
U.S.C. § 227(c)(5). (ECF No. 1 ("Complaint").) Brown
alleges she "has been on the National Do Not Call
Registry since approximately June 12, 2009," and that she
has never consented to contact from Nano. (Id. at ¶¶ 28,
35.) Brown alleges that despite the above, she received
two phone calls on or around January 19, 2023 from the
phone numbers 727-431-6059 and 727-413-6449, both of
which she alleges "[u]pon information and belief ...
belong[ ] to Defendant and/or Defendant's agent." (Id. at
¶¶ 30–31.) She alleges the callers both promoted Nano
Hearing Aids to her. (Id.) Next, Brown alleges she
received another phone call on or around February 15,
2023 from the phone number 727-373-1759, during which
she "spoke to Daniel Houston who said he was with Life
Care." (Id. at ¶ 32.) Mr. Houston then transferred the call
to someone named Ken, who gave Brown a callback
number of 619-348-6968 x 21. (Id.) Brown alleges this
call was also made by Defendant's agent who also spoke
to her about Nano Hearing Aids, and that "[w]hen called
back, this number goes to Nano Hearing." (Id.)

Brown's Complaint asks for declaratory and injunctive
relief and damages under section 277 of the TCPA. (Id. at
14.) Brown seeks to represent a putative class of similarly
situated individuals, called a "Federal TCPA DNC Class,"
which she defines in her Complaint as:

> All persons within the United States who received two
> phone calls within a 12-month period from Defendant
> to said person's telephone, and such person had
> previously included their name on the National Do Not
> Call Registry at least 31 days prior to receiving
> Defendant [sic] first call, within the four years prior to
> the filing of this Complaint.

(Id. at ¶ 41.)

**II. STANDARD**

Nano moves to dismiss Brown's Complaint under Federal
Rule of Civil Procedure ("FRCP") 12(b)(6) for failure to

state a claim and 12(b)(1) for lack of subject matter jurisdiction. (ECF No. 6.) In the alternative or in addition, Nano moves to strike the class allegations under FRCP 12(f) and 23. (Id.) For the reasons discussed below, the Court grants Nano's Motion to Dismiss and Motion to Strike.

### A. Motion to Dismiss for failure to state a claim under 12(b)(6)

A motion to dismiss under FRCP 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id.*

### B. Motion to Dismiss for lack of subject matter jurisdiction under 12(b)(1)

**\*2** Nano challenges the Complaint, in part, on the ground that Brown lacks Article III standing. (ECF No. 6.) Standing is an element of subject matter jurisdiction. Therefore, Nano moves to dismiss Brown's Complaint for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1).

A Rule 12(b)(1) jurisdictional attack may be facial or factual. Fed. R. Civ. P. 12(b)(1). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Generally, on a 12(b)(1) motion regarding subject matter jurisdiction, unlike a 12(b)(6) motion, a court need not defer to a plaintiff's factual allegations. *Id.* But the Supreme Court has held that where a 12(b)(1) motion to dismiss is based on lack of standing, the court must defer to the plaintiff's factual allegations and must "presume[e] that general allegations embrace those specific facts that are necessary to support

the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Therefore, to show standing "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The party invoking federal subject matter jurisdiction has the burden of establishing standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).

### C. Motion to Strike class allegations under 12(f) and 23

Rule 12(f) authorizes courts to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Before a motion to strike is granted, the court must be convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (citing *RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005)). "When considering a motion to strike, a court must view the pleadings in a light most favorable to the non-moving party." *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 888 (N.D. Cal. 2012) (citation omitted).

Plaintiffs bear the burden of pleading, and ultimately demonstrating, compliance with Rule 23's requirements. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). Though "[i]n general, the appropriateness of proceeding as a class action is not tested at the pleading stage," *Hernandez v. State Farm Fire & Cas. Co.*, No. 16CV200-LAB (JLB), 2017 WL 932198, at \*2 (S.D. Cal. Mar. 9, 2017), "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). "In the Ninth Circuit, motions to strike are proper, even if the material is not prejudicial to the moving party, if granting the motion would make trial less complicated or otherwise streamline the ultimate resolution of the action." *Brown*, 913 F. Supp. 2d at 888 (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)).

### III. DISCUSSION

### A. Motion to Dismiss for failure to state a claim under 12(b)(6)

**\*3** Brown seeks relief under the TCPA for three phone calls allegedly placed to her cellular telephone. There are two potential theories of liability under the TCPA: (1) direct liability and (2) vicarious liability. *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014). In other words, "[f]or a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Pascal v. Agentra, LLC*, No. 19-CV-02418-DMR, 2019 WL 5212961, at \*2 (N.D. Cal. Oct. 16, 2019) (citation omitted).

### I. Direct TCPA Liability

First, Nano argues Brown's Complaint does not plausibly allege that Nano, rather than some third party, physically placed the alleged calls. (ECF No. 6, 8–10.) In response, Brown argues the Complaint plausibly alleges direct liability because it alleges all three calls promoted Nano's products and that "an individual associated with the final call gave a callback number (with an extension) that is directly associated with Nano Hearing." (ECF No. 7, 10–11.)

Direct liability under the TCPA applies only to persons or entities that directly "make" or "initiate" calls, which requires "tak[ing] the steps necessary to physically place" the call. *Sheski v. Shopify (USA) Inc.*, No. 19-CV-04668-HSG, 2020 WL 2474421, at \*2 (N.D. Cal. May 13, 2020) (analyzing claim under section 227(b) of TCPA) (citing *In re Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6583 ¶ 26 (2013)); *see Naiman v. Freedom Forever, LLC*, No. 19-CV-00256-JSC, 2019 WL 1790471, at \*4 (N.D. Cal. Apr. 24, 2019) (applying substantially similar rule to claims asserted under TCPA section 227(c)).

Here, Brown merely alleges "on information and belief" that these phone numbers belonged to Nano or Nano's agent. (ECF No. 1, ¶¶ 30–32.) The Complaint does not explain the reasons behind this belief. In her Opposition, Brown explains that she believed these numbers belonged to Nano or its agent because the callers promoted Nano Hearing Aids to her and because one of the calls was transferred to a phone number that connects to Nano. (ECF No. 7, 11.) Brown does not allege that any of the callers identified themselves as representatives of Nano.

These allegations are insufficient to establish that Nano directly made the calls. *See Canary v. Youngevity Int'l, Inc.*, No. 5:18-CV-03261-EJD, 2019 WL 1275343, at \*3 (N.D. Cal. Mar. 20, 2019) (holding "the Complaint lacks sufficient facts to support a plausible inference that [the defendant] dialed [the plaintiff's] telephone number" where plaintiff only alleged the calls were made by defendant's agent based on "understanding and belief" and a callback number which reached an individual who may have been employed by defendant); *Naiman*, No. 19-CV-00256-JSC, 2019 WL 1790471, at \*4 (finding allegations that "Defendant made the calls in question" without "further details (i.e., how the caller identified itself or what entity it was calling on behalf of)" did not show direct liability for DNC claim).

Further, the only caller whose identity Brown describes in the Complaint identified himself as an employee of Life Care, not Nano. (ECF No. 1, ¶ 32.) Brown does not allege that "Life Care" is Nano or affiliated with Nano. In addition, the only phone number which Brown alleges she called is the alleged callback number, 619-348-6968 ("619 Number"). (Id.) Even if the Court takes Brown's allegation that the 619 Number belongs to Nano as true, the Complaint indicates that no call was placed *from* the 619 Number. The allegation that, after being transferred from a representative of Life Care, someone identified only as "Ken" gave Brown a callback number that reaches Nano is insufficient to show that Nano made any of the calls to Brown. (See id.)

### II. Vicarious TCPA Liability

**\*4** "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd but criticized on other grounds*, 577 U.S. 153 (2016), *as revised* (Feb. 9, 2016). "To determine whether a plaintiff has established an agency relationship, the Ninth Circuit 'relies on the Restatement (Third) of Agency.' " *Ewing v. Freedom Forever, LLC*, No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at \*7 (S.D. Cal. Jan. 19, 2024) (quoting *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018)). Common law agency under the Restatement requires a consensual relationship between an alleged principal and agent. Restatement (Third) of Agency, § 1.01, cmt. C. This is "more than mere passive permission; it involves request, instruction, or command." *Klee v. United States*, 53 F.2d 58, 61 (9th Cir. 1931). "For an agency

Brown v. Nano Hearing Tech Opco, LLC, Slip Copy (2024)

relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.' " *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement (Third) Of Agency § 1.01, cmt. C). "Though 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed.' " *Ewing*, No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at *7 (quoting *Kristensen*, 12 F. Supp. 3d at 1301).

"Three theories of agency could support vicarious liability: (1) actual authority; (2) apparent authority; and (3) ratification." *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018) (citing *Thomas*, 582 Fed. App'x at 679).

**i. Actual Authority**

Nano argues Brown failed to allege sufficient facts to establish that Nano had an agency relationship with any third parties who allegedly placed the calls. (ECF No. 6, 12–13.) In response, Brown argues the Complaint plausibly alleges actual authority because it alleges all three calls promoted Nano's products and Nano's phone number was provided as a callback number in the last call. (ECF No. 7, 12–14.)

To allege actual authority, a plaintiff must allege facts showing that (1) the principal "controlled or had the right to control" the agent; (2) the principal " 'manifest[ed] assent' to their right to control" the agent; and (3) the principal "either communicated a direction to" the agent to make the calls or the calls were "consistent with" the principal's "general statement of what [the agent] [was] supposed to do." *Pascal*, No. 19-CV-02418-DMR, 2019 WL 5212961, at *3 (quoting *Mavrix*, 873 F.3d at 1054).

Here, Brown's conclusory allegations are also insufficient to show actual authority. Brown does not allege that any of the callers identified themselves as Nano's agents or had any interactions with Nano. Brown's allegations that "[u]pon information and belief, [each] number belongs to Defendant and/or Defendant's agent" are conclusory and insufficient to plead vicarious liability. (ECF No. 1, ¶¶30–32); *see Naiman*, No. 19-CV-00256-JSC, 2019 WL 1790471, at *4 (finding "boilerplate allegation asserting the existence of an agency relationship" that "each and every Defendant was acting as an agent and/or employee

of each of the other Defendants" "is wholly conclusory" and insufficient to plead vicarious liability).

Further, even if Brown had sufficiently alleged Life Care made the third call on Nano's behalf, she still fails to allege facts showing the three prongs necessary for actual authority. There are no allegations supporting the existence of an agency relationship between the two companies, any "request, instruction, or command," *Klee*, 53 F.2d at 61, or that Nano demonstrated "a right to control the actions of [an] agent." Restatement (Third) Of Agency § 1.01, cmt. C. Since Brown has failed to allege "sufficient facts ... to support a reasonable inference that an agency relationship existed," *Ewing*, No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at *7, she cannot hold Nano liable under vicarious liability through actual authority. *See Panacci v. A1 Solar Power, Inc.*, No. 15-CV-00532-JCS, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015) (finding no vicarious liability where plaintiff did not allege that defendant "controlled, authorized, or even knew about [third party's] phone calls or that [defendant] had any control over" the caller, and where plaintiff pleaded "virtually no [factual] allegations regarding the relationship" between defendant and the caller). Finally, Brown also fails to allege any facts that connect Life Care or Nano to the first two calls she received, as the calls came from different phone numbers, and Brown does not allege any identifying information of either caller.

**\*5** Brown made nearly identical arguments in *Barnes v. SunPower Corp.*, No. 22-CV-04299-TLT, 2023 WL 2592371 (N.D. Cal. Mar. 16, 2023), and the Northern District of California rejected them for the same reasons. The *Barnes* court explained, "[a]ccording to Plaintiff Brown, the ability of the caller to transfer her directly to ... [']Sarah at [Defendant] indicates that the caller either worked at [Defendant] or was previously authorized to the place the call by [Defendant], as did the confirmatory text and email,' but this allegation is conclusory and insufficient to establish that Defendant directly made the call or that Defendant has an agency relationship with 'solar project'," No. 22-CV-04299-TLT, 2023 WL 2592371, at *3 (citation omitted). Similarly here, even if the 619 Number belongs to Nano, this allegation is insufficient to establish that Nano made or authorized any of the calls through an agent.

This case is unlike *Ewing*, where this Court found the plaintiff alleged actual authority by pleading "each of the [ ] callers indicated that they were acting on behalf of Freedom Forever, either by introducing themselves as a 'master dealer' for Freedom Forever, indicating that they refer leads to Freedom Forever, or emailing links to

Brown v. Nano Hearing Tech Opco, LLC, Slip Copy (2024)

websites associated with Freedom Forever." No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at *7. The *Ewing* Court also relied on the facts of *Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021), where the Seventh Circuit "determined that the plaintiff had met his burden by pleading that: (1) the defendant authorized the callers to make calls using its approved scripts, tradename, and proprietary information; (2) the callers quoted him the defendant's health insurance[;] and (3) the defendant provided said callers those quotes and permitted said callers to enter information into its system." *Id.* (citing 8 F.4th at 587–88). Unlike the plaintiffs in *Ewing* and *Bilek*, Brown failed to plead concrete facts meeting the elements of actual authority. *See id.*; 8 F.4th at 589.

**ii. Apparent Authority**

Brown argues she also sufficiently alleged apparent authority because it is "obvious that some agreement existed between Defendant and its agents regarding the placing of calls, the promotion of Defendant's products, and the transfer of that call to Defendant." (ECF No. 7, 15.) In response, Nano argues Brown failed to plead apparent authority because the allegations do not sufficiently connect Nano to the callers, and the caselaw she relies on was overruled. (ECF No. 10, 3–5.)

An agency relationship may also be created through apparent authority. *Mavrix Photographs, LLC*, 873 F.3d at 1054 (citation omitted). "Apparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have." *Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*, 414 F.2d 750, 756 (9th Cir. 1969). "The principal's manifestations giving rise to apparent authority may consist of direct statements to the third person, directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts and conduct negotiations under circumstances which create in him a reputation of authority." *Id.* (citation omitted). Apparent authority can "only 'be established by proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied.'" *Thomas*, 582 F. App'x at 679 (quoting *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997)).

Here, Brown's apparent authority theory fails because Brown fails to allege any facts of interaction between Nano and Brown or Nano and the callers that could support a belief that the callers had authority to make calls

on Nano's behalf. *See Thomas*, 582 F. App'x at 679. Allegations of the alleged agents' statements alone are insufficient. *See Hawaiian Paradise Park Corp.*, 414 F.2d at 756; *Hanson v. Am. W. Airlines, Inc.*, 544 F. Supp. 2d 1038, 1043 (C.D. Cal. 2008) ("Only the acts of the principal, not of the agent, give rise to apparent authority.") (citing *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 479 (9th Cir. 2000)).

**\*6** Brown's arguments in her Opposition also fail. Brown relies on a single case to support an apparent authority theory based entirely on the actions of the callers, but the case was overruled on the exact ground for which Brown relies on it. (ECF No. 7, 16); *see Mey v. Monitronics Int'l, Inc.*, 959 F. Supp. 2d 927 (N.D.W. Va. 2013), *subsequently rev'd sub nom. In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 527 (N.D.W. Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018) ("This Court is well aware that in so ruling, I am rejecting the prior decision of this Court in this case[:] *Mey v. Monitronics International, Inc.*, 959 F.Supwp.2d 927 (N.D.W. Va. 2013)."). Brown argues, "[s]imilarly to *Mey*, Plaintiff here has clearly pled that the representatives on the calls were holding themselves out as representatives of Defendant." (ECF No. 7, 16.) In overruling *Mey*, the *Monitronics* court held that "the fact that entities were permitted to hold themselves out as authorized dealers or some similar description is insufficient" to hold a defendant vicariously liable. *In re: Monitronics International, Inc., Telephone Consumer Protection Act Litigation*, 223 F. Supp. 3d at 527–28; *see also Makaron v. GE Sec. Mfg., Inc.*, No. CV-14-1274-GW AGRX, 2015 WL 3526253, at *10 (C.D. Cal. May 18, 2015) (disagreeing generally with the conclusion reached in *Mey*, 959 F. Supp. 2d, that an agreement allowing an entity to hold itself out as an authorized dealer of another's products was sufficient to establish apparent authority. The court explained this is because "the mere fact that a dealer uses a supplier[']s name does not render it an agent of the supplier, just as every bar which advertises that they sell a particular brand of beer is not the agent of the brewery whose name they advertise." *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d at 527–28.

**iii. Ratification**

In response to Nano's arguments that Brown failed to plead vicarious liability, Brown argues the Complaint also alleges vicarious liability through a theory of ratification

because Nano "ratified its agent's actions through accepting the benefits of their telemarketing services." (ECF No. 7, 16–17.) Nano responds that the Complaint never mentions ratification, and that a vicarious liability theory based on ratification fails regardless because it still requires proof of an agency relationship. (ECF No. 10, 6–7.)

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) Of Agency § 4.01. "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." Id. "The set of effects that ratification creates are the consequences of actual authority." Id., cmt. B. "Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." Batzel v. Smith, 333 F.3d 1018, 1036 (9th Cir. 2003), superseded in part by statute on other grounds as stated in Breazeale v. Victim Servs., Inc., 878 F.3d 759, 766–67 (9th Cir. 2017).

Here, Brown's ratification theory fails for the same reasons her other vicarious liability theories fail: she has not sufficiently pleaded an agency relationship. The Complaint lacks facts alleging that Nano acted as a principle or that it ratified any of the alleged conduct. Brown "cannot show [Nano] is liable under a ratification theory because 'the principal-agent relationship is still a requisite.' " Abante Rooter & Plumbing, No. 17-CV-03315-PJH, 2018 WL 288055, at *6 (quoting Batzel, 333 F.3d at 1036).

Accordingly, the Court **GRANTS** Nano's FRCP 12(b)(6) Motion to Dismiss with leave to amend.

## B. Motion to Dismiss for lack of subject matter jurisdiction under 12(b)(1)

### I. Article III Standing

Next, Nano argues that Brown's Complaint should be dismissed for lack of subject matter jurisdiction under FRCP 12(b)(1) because it fails to meet the causation and redressability elements of Article III standing.

Standing is a necessary element of federal court jurisdiction under Article III of the U.S. Constitution.

Warth v. Seldin, 422 U.S. 490, 498 (1975). Accordingly, standing is a "threshold question in every federal case." Thomas v. Mundell, 572 F.3d 756, 760 (9th Cir. 2009) (citing Warth, 422 U.S. at 498.). To establish standing, (i) a plaintiff must have suffered a "concrete and particularized" "injury in fact"; (ii) "there must be a causal connection between the injury and the conduct complained of" ("causation"); and (iii) the injury must be capable of being "redressed by a favorable decision" ("redressability"). Lujan, 504 U.S. at 560–61. "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." Bates v. United Parcel Serv., 511 F.3d 974, 985 (9th Cir. 2007).

**\*7** For causation, "the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.' " Lujan, 504 U.S. at 560–61 (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41–42 (1976)). In order to establish causation under a theory of vicarious liability, the plaintiff must show a causal relationship between the agent making the calls and the actions of the principle. Freidman v. Massage Envy Franchising, LCC, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, at *4 (S.D. Cal. June 13, 2013). For redressability, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " Lujan, 504 U.S. at 561 (quoting Simon, 426 U.S. at 38, 43).

Here, Nano argues Brown's complaint fails for many of the reasons discussed above. First, the Complaint fails to plead causation. As explained above, the Complaint does not establish direct or vicarious liability because Brown fails to allege facts showing that Nano or an agent of Nano placed any of the calls. See, e.g., Freidman, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, at *4 (finding no Article III standing where plaintiff did not plead direct or vicarious liability); Biggins v. Wells Fargo & Co., 266 F.R.D. 399, 414 (N.D. Cal. 2009) (finding allegations that "all of the named Defendants engaged in the conduct alleged and caused each of them injury" and that one defendant "is an 'agent, subsidiary, parent, joint venturer or predecessor' " of another are insufficient for standing). Accordingly, Brown's injury is not fairly traceable to Nano. Lujan, 504 U.S. at 560–61 (citation omitted). Further, the absence of facts establishing this connection to Nano leaves room for a substantial possibility that any injury was "th[e] result [of] the independent action of some third party not before the court." Id. (citation omitted).

Second, the Complaint also fails to plead redressability. Since the injury may have been caused by someone other

than Nano, a decision favorable to Brown and against Nano would not necessarily redress the injury. *See Simon, 426 U.S. at 41.*

Since causation and redressability are speculative at best, Brown lacks standing.

## II. Injunctive Relief

Nano also argues Brown's Complaint lacks standing to seek injunctive relief. (ECF No. 6, 14–15.) In response, Brown argues the Complaint plausibly alleged future harm for purposes of injunctive relief. (ECF No. 7, 17–18.)

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 185 (2000) (citations omitted). For injunctive relief, the threat of injury must be "actual and imminent," or "*certainly impending,*" not merely conjectural or hypothetical. *Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009)); *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990)). "Allegations of possible future injury do not satisfy the requirements." *Whitmore,* 495 U.S. at 158. "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.' " *Davidson,* 889 F.3d at 967 (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983)). "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United States,* 599 F.3d 964, 970 (9th Cir. 2010) (citing *Lujan,* 504 U.S. at 560).

**\*8** Here, Brown requests injunctive relief in her Complaint. (ECF No. 1, 14, ¶ 60 ("Plaintiff and the class are also entitled to an injunction against future calls.").) However, Brown fails to allege any likelihood of future injury. The Complaint does not allege any facts regarding potential future calls. In addition, Brown alleges she received three calls within one month in 2023 and does not allege she has received any additional calls since then. (ECF No. 1, ¶¶ 30–32.) The timing and number of calls do not show "a sufficient likelihood that [s]he will again be wronged in a similar way." *Lyons,* 461 U.S. at 111; *see Koby v. ARS Nat'l Servs., Inc.,* 846 F.3d 1071, 1079 (9th Cir. 2017) ("The fact that a class member was a target of collection efforts sometime between 2008 and 2011,

however, does without more establish that he or she would likely be contacted by ARS again after October 2013."); *Miller v. Time Warner Cable Inc.,* No. 816CV00329CASASX, 2016 WL 7471302, at \*4 (C.D. Cal. Dec. 27, 2016) (granting motion to dismiss plaintiff's claims for injunctive relief because, without evidence to the contrary, "the risk [defendant] will continue to make unsolicited phone calls to plaintiff's phone is too speculative to establish a real or immediate threat of repeated injury."). Brown's conclusory argument in her Opposition that the Complaint "demonstrated a pattern of unlawful behavior that will not cease without court intervention" does not resolve the lack of any facts alleging that this pattern would continue. (ECF No. 7, 17.) Thus, Brown lacks standing to seek injunctive relief.

Accordingly, the Court **GRANTS** Nano's FRCP 12(b)(1) Motion to Dismiss with leave to amend.

## C. Motion to Strike class allegations under 12(f) and 23

Next, Nano moves to strike class allegations from the Complaint on two grounds. First, Nano argues Brown's class allegations should be stricken as overbroad. (ECF No. 6, 15–17.) Second, Nano argues Brown's class allegations should be stricken because Brown is not a member of the class she seeks to represent. (Id. at 17–18.) Brown responds to both arguments that "the class allegations have been sufficiently pled," "the proposed class may evolve throughout discovery," and regardless, the Court should not rule on class issues prior to a motion for class certification. (ECF No. 7, 18–19.)

## I. Sufficiency of Class Definition

A defendant may move to strike class allegations before discovery when the complaint shows a class action could not be maintained on the facts alleged. *Sanders,* 672 F. Supp. 2d at 990. "[N]o class may be certified that contains members lacking Article III standing." *Id.* at 991 (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 264 (2d Cir. 2006)). In *Sanders,* the court granted a motion to dismiss and struck class allegations under FRCP 12(f) because the class definition "include[d] all persons within the United States who own a 20–inch Aluminum iMac," which "necessarily include[d] individuals who did not purchase their 20–inch Aluminum iMac, individuals who either did not see or were not deceived by advertisements, and

individuals who suffered no damages." *Id.* The court explained that "[s]uch individuals would lack standing to bring these claims." *Id.*

Here, the class definition is overly broad because it fails to exclude any members who may have consented to receiving phone calls from Nano. The TCPA expressly precludes claims made by individuals who consented to be called. 47 U.S.C. § 227(b)(1)(A) (excluding from liability any call "made with the prior express consent of the called party.") Brown's class definition necessarily includes any individuals who have consented to calls from Nano. (*See* ECF No. 1, ¶ 41.) Like in *Sanders,* these individuals would also lack standing. 672 F. Supp. 2d at 991; *see Hernandez,* No. 16CV200-LAB (JLB), 2017 WL 932198, at *6 (striking class allegations in part "[b]ecause the class definition includes insureds who were not injured at all.").

## II. Typicality

Rule 23(a)(3) requires that an individual plaintiff's claims be typical of those that the proposed class would advance. Fed. R. Civ. P. 23(a)(3). The test for Rule 23(a) typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 984 (9th Cir. 2011). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Texas Motor Freight Sys. Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216 (1974)).

**\*9** Here, Brown has not alleged that she falls into her own class definition. For the reasons discussed above, Brown failed to plead she was injured by Nano because the Complaint does not sufficiently allege the calls were made by Nano or its agent. As a result, her claims cannot be typical of those that the proposed class would advance, and other class members cannot "have been injured by the same course of conduct." *Ellis,* 657 F.3d at 984. Since the Complaint does not name any other plaintiffs, the purported class lacks typicality. *See Galan Segura v. CRST Van Expedited, Inc.,* No. EDCV1201901TJHSPX, 2014 WL 12567799, at *2 (C.D. Cal. June 16, 2014) (denying class certification in part for lack of typicality because the named plaintiff "has not suffered any injuries under the alleged [ ] violations ... and, therefore, is not a class member.").

Accordingly, the Court **GRANTS** Nano's FRCP 12(f) Motion to Strike class allegations with leave to amend.

## IV. CONCLUSION

For the reasons discussed above, Nano's Motion to Dismiss Brown's Complaint under FRCP 12(b)(6) and 12(b)(1) is **GRANTED.** Nano's Motion to Strike class allegations from the Complaint under FRCP 12(f) and 23 is also **GRANTED**. Brown has leave to file an amended complaint by August 6, 2024.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 3367536

---

2023 WL 3985245
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Fort Worth Division.

Craig CUNNINGHAM, Plaintiff,
v.
DAYBREAK SOLAR POWER, LLC, Defendant.

Civil Case No. 4:22-cv-00599-O
|
Signed June 13, 2023

**Attorneys and Law Firms**

Anthony I. Paronich, Paronich Law PC, Hingham, MA, Karl S. Gwaltney, Pro Hac Vice, Maginnis Howard, Raleigh, NC, Katherine Hendler Fayne, Katherine Fayne Law PLLC, Dallas, TX, for Plaintiff.

Michael P. Hutchens, William Brent Shellhorse, Whitaker Chalk Swindle & Sawyer, Fort Worth, TX, John D. Boutwell, Charlotte, NC, for Defendant.

**ORDER AND OPINION**

Reed O'Connor, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court are Defendant's Motion to Dismiss (ECF No. 38), filed February 23, 2023; Plaintiff's Response and Objection (ECF No. 39), filed March 9, 2023; and Defendant's Reply (ECF No. 41), filed March 23, 2023. Defendant's Motion is hereby **GRANTED**.

### I. Factual Background [1]

On December 23, 2021, Plaintiff Craig Cunningham alleges he received a pre-recorded call from Defendant Daybreak Solar Power, LLC. Plaintiff states that the message started off saying "Hi, this is Brian Lee calling on behalf of The-Solar-Project.com." [2] Plaintiff describes The-Solar-Project.com as not being linked to any "specific entity," and therefore, Plaintiff alleges that it is a "trade or marketing name" used by Defendant. [3] Plaintiff states the call then continued through Defendant's alleged employee "Yesenia." [4]

In subsequent calls with Defendant's employees, Plaintiff claims that "at no point did [they] deny [calling him]." [5] As Defendant did not deny calling him, Plaintiff concludes that "Daybreak called him directly." [6] Plaintiff did not consent to receiving such calls.

Plaintiff initially filed this lawsuit on January 7, 2022 in the United States District Court for the Western District of North Carolina. [7] The case was transferred to this Court on July 14, 2022. [8] Defendant filed its original Motion to Dismiss on August 4, 2022. [9] The Court granted the motion and granted Plaintiff leave to amend his original complaint. [10]

Plaintiff filed his Amended Complaint on February 9, 2023. [11] Plaintiff brings a class action on behalf of the "Robocall Class," which includes "[a]ll persons within the United States: (1) to whose cellular telephone number or other number for which they are charged for the call (2) Defendant (or an agent acting on behalf of Defendant) placed a telemarketing call (3) within the four years prior to the filing of the Complaint (4) using an identical or substantially similar pre-recorded message used to place telephone calls to Plaintiff." [12] He also brings claims on behalf of the "NCTSA Class," which includes "[a]ll North Carolina Telephone Subscribers whose (1) telephone numbers received calls using a recorded message player (2) from or on behalf of Defendant (3) from four years prior to the filing of the Complaint." [13] Plaintiff alleges Defendant violated § 227(b) and § 227(c) of the Telephone Consumer Protection Act ("TCPA") and § 75-100 of the North Carolina Telephone Solicitations Act ("NCTSA"). [14]

**\*2** Defendant filed the present Motion to Dismiss on February 23, 2023. [15] Plaintiff filed his Response on March 9, 2023. [16] Defendant filed its Reply on March 23, 2023. [17] The Motion is now ripe for the Court's review.

### II. Legal Standard

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 48 of 233

Cunningham v. Daybreak Solar Power, LLC, Not Reported in Fed. Supp. (2023)

may file a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (cleaned up). A court may not accept legal conclusions as true. *Id.* at 678–79. When well-pleaded factual allegations are present, a court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

## III. Analysis

The Court turns first to Plaintiff's TCPA claims. Under the TCPA, a plaintiff must establish that a defendant is either directly or vicariously liable for any violations. *See Cunningham v. Politi*, No. 4:18-CV-00362-ALM-CAN, 2019 WL 2519568, at *5 (E.D. Tex. Apr. 30, 2019) ("Theories of direct and vicarious liability are both cognizable under the TCPA."). Direct liability is found when an entity "initiates" a phone call. *Hunsinger v. Dynata LLC*, No. 3:22-cv-00136-G-BT, 2023 WL 2377481, at *5 (N.D. Tex. Feb. 7, 2023). Initiating a phone call is recognized to mean that the Defendant "takes the steps necessary to physically place a telephone call." *Cunningham v. Lifestyles Dev., LLC*, No. 4:19-CV-00006-ALM-CAN, 2019 WL 4282039, at *3 (E.D. Tex. Aug. 8, 2019). At the pleading stage, the plaintiff must allege facts to support claim that the defendant is the party that initiated the phone calls. *See id.*

In this case, Defendant contends Plaintiff fails to sufficiently plead direct liability. [18] Plaintiff states that he received a pre-recorded message that started with "Hi, this is Brian Lee calling on behalf of The-Solar-Project.com." [19] Plaintiff alleges that "[t]he solicitation for Daybreak Solar continued through Daybreak's employee 'Yesenia.' " [20] In ruling on Defendant's initial motion to dismiss, this Court found that those same facts failed to show "whether Defendant physically initiated the phone call or whether the call was instead placed by a third-party telemarketer." [21] The Court

concluded from the pleadings that Plaintiff did "not know who actually placed the offending call." [22] In an attempt to cure this defect Plaintiff now alleges that The-Solar-Project.com is a "trade or marketing name used by the Defendant for its pre-recorded telemarketing." [23] Yet, at the same time, Plaintiff alleges that The-Solar-Project.com "doesn't appear to be linked to any specific entity." [24] The Plaintiff fails to provide any facts in support of the assertion that The-Solar-Project is simply a "trade or marketing" name used by the Defendant. Thus, this Court finds that such conclusory assertions fail to plausibly show that Defendant physically initiated the phone call.

**\*3** Furthermore, Plaintiff states in his Amended Complaint that Defendant called him directly. [25] He points to the fact that he eventually spoke with Defendant's employee "Yesenia," and, in subsequent calls, Defendant never denied calling him. [26] However, like in his original complaint, Plaintiff fails to allege how "Yesenia" came to be on the other end of the call. [27] Accordingly, this Court again finds that Plaintiff has not sufficiently pled facts indicating Defendant is directly liable for any alleged TCPA violation.

Regarding vicarious liability, the Court finds that Plaintiff in his Amended Complaint still does not make any allegation that Defendant was vicariously liable. Even if Plaintiff's assertions that The-Solar-Project.com is simply a "trade or marketing name" can be taken as alleging vicarious liability, they fall short. A seller "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020) (citation omitted). To prove the existence of an agency relationship, the principal must have "both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task." *Id.* (quoting *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008)). Here, Plaintiff alleges no facts indicating that Defendant had any sort of control over The-Solar-Project.com. Therefore, the Court again finds that Defendant is not vicariously liable for any TCPA violation.

Turning to Plaintiff's NCTSA claim, the Court, for the reasons discussed above, likewise finds Plaintiff fails to plead facts sufficiently showing Defendant's liability.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 49 of 233

**Cunningham v. Daybreak Solar Power, LLC, Not Reported in Fed. Supp. (2023)**

### IV. Conclusion

As Plaintiff has failed to sufficiently plead facts to support his claims under the TCPA and NCTSA, Plaintiff's Amended Complaint is hereby **DISMISSED with prejudice.**

**SO ORDERED** on this **13th day** of **June, 2023**.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3985245

---

### Footnotes

1    This Court previously provided extensive recitation of the facts in the prior Order (ECF No. 27) on the Defendant's initial Motion to Dismiss. Here, the Court offers a brief summation of those facts with careful attention to newly pleaded facts in the Plaintiff's Amended Complaint. *See* Pl.'s Am. Compl., ECF No. 28. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to the plaintiff. *See Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

2    *Id.* at 5.

3    *Id.*

4    *Id.*

5    Pl.'s Am. Compl. 6, ECF No. 28.

6    *Id.*

7    Pl.'s Orig. Compl., ECF No. 1.

8    *See* ECF No. 17.

9    Def.'s Orig. Mot. to Dismiss, ECF No. 23.

10   *See* Order Granting Mot. to Dismiss, ECF No. 27.

11   *See* Pls. Am. Compl., ECF No. 28.

12   *Id.* at 7.

13   *Id.*

14   *Id.* at 8-9.

15   Def.'s Mot. to Dismiss, ECF No. 38.

16   Pl.'s Resp., ECF No. 39.

17   Def.'s Reply, ECF No. 41.

18   Def.'s Mot. to Dismiss 5, ECF No. 38.

19   Pl.'s Am. Compl. 5, ECF No. 28.

20   *Id.*

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 50 of 233

Cunningham v. Daybreak Solar Power, LLC, Not Reported in Fed. Supp. (2023)

21    Order Granting Mot. to Dismiss 11, ECF No. 27.

22    *Id.*

23    Pl.'s Am. Compl. 5, ECF No. 28.

24    *Id.*

25    *Id.* at 6.

26    *Id.* at 5.

27    *Id.* at 5–6.

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 51 of 233

Delgado v. eMortgage Funding LLC, Not Reported in Fed. Supp. (2022)

KeyCite Blue-Striped Flag

Appeal Filed by   In re: Emortgage Funding, LLC,   6th Cir.,   February 4,
2022

2022 WL 229844
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Jaqueline **DELGADO**, Plaintiff,
v.
EMORTGAGE FUNDING LLC, Defendant.

Civil Action No. 21-CV-11401
|
Signed 01/25/2022

**Attorneys and Law Firms**

Avi Robert Kaufman, Kaufman P.A., Coral Gables, FL, Stefan
Coleman, Law Offices of Stefan Coleman, P.A., Miami, FL,
for Plaintiff.

Brett J. Natarelli, Manatt, Phelps & Phillips, Chicago, IL, for
Defendant.

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR CERTIFICATION
OF THE COURT'S NOVEMBER 8, 2021,
ORDER FOR INTERLOCUTORY APPEAL
AND FOR A STAY OF PROCEEDINGS**

BERNARD A. FRIEDMAN, SENIOR UNITED STATES
DISTRICT JUDGE

**\*1**  This matter is presently before the Court on defendant's
motion for certification of the Court's November 8, 2021,
order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b)
and for a stay of proceedings. (ECF No. 21). Plaintiff has
responded and defendant has replied. Pursuant to E.D. Mich.
LR 7.1(f)(2), the Court shall decide this motion without a
hearing. For the following reasons, the Court shall grant the
motion.

The Court previously summarized the facts of this case as
follows:

> This is a Telephone Consumer Protection Act ("**TCPA**")
> case. Plaintiff alleges that between May 4 and May 14,

2021, she received twenty-[two] unsolicited calls on her
home telephone, which has been registered on the National
Do Not Call Registry since June 2006. [(ECF No. 8,
¶¶ 28, 30-44)]. All of the calls were from the same
number. [(*Id.*, ¶ 44)]. Plaintiff did not answer many of
the calls and many others disconnected following a short
period of silence. [(*Id.*, ¶¶ 31-44)]. However, on the two
occasions when plaintiff did speak with the caller, he or
she attempted to promote mortgage services. [(*Id.*, ¶¶ 37,
42-43)]. Plaintiff alleges that on one of these two occasions
she feigned interest in the services being promoted and was
transferred to a second individual who indicated that he
or she worked for defendant and provided plaintiff with
defendant's telephone number and street address. [(*Id.* ¶
43)]. Plaintiff further alleges that she received fourteen
of the twenty-[two] calls after she requested that the
calls stop. [(*Id.* ¶¶ 38-44)]. Plaintiff's experience allegedly
mirrors that of other consumers. [(*Id.* ¶¶ 20-21)]. Plaintiff's
complaint includes two claims on behalf of herself and two
proposed classes. Count I asserts a violation of 47 C.F.R.
§ 64.1200(c) ("DNC registry claim") and Count II asserts
a violation of § 64.1200(d) ("internal DNC claim"). [1]  On
October 13, 2021, the Court issued an opinion and order
denying defendant's motion to dismiss and/or strike certain
allegations from plaintiff's amended complaint.

[1]  The **TCPA** authorizes the Federal Communications
Commission ("FCC") to promulgate regulations
"concerning the need to protect residential telephone
subscribers' privacy rights to avoid receiving telephone
solicitations to which they object." 47 U.S.C. § 227(c)(1).
In relevant part, the FCC's regulations state:

> No person or entity shall initiate any telephone
> solicitation to ... [a] residential telephone subscriber
> who has registered his or her telephone number on the
> national do-not-call registry of persons who do not wish
> to receive telephone solicitations that is maintained by
> the Federal Government. Such do-not-call registrations
> must be honored indefinitely, or until the registration is
> cancelled by the consumer or the telephone number is
> removed by the database administrator. [("DNC registry
> provision")].

\* \* \*

> No person or entity shall initiate any call for
> telemarketing purposes to a residential telephone
> subscriber unless such person or entity has instituted
> procedures for maintaining a list of persons who request

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 52 of 233

Delgado v. eMortgage Funding LLC, Not Reported in Fed. Supp. (2022)

not to receive telemarketing calls made by or on behalf of that person or entity. [("internal DNC provision")].

**\*2** § 64.1200(c)(2), (d). Pursuant to § 227(c)(5), "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection [of the **TCPA**]" may bring a claim in state or federal court. *See Mims v. Arrow Fin. Servs.*, 565 U.S. 368, 371-72 (2012).

Defendant subsequently requested that the Court reconsider its ruling only "with respect to whether Plaintiff's FAC sufficiently alleges facts supporting claims of direct and vicarious liability under the [**TCPA**]." (ECF No. 16, PageID.213). The Court denied that motion in a November 8 opinion and order. (ECF No. 17). It is this order that defendant now seeks to appeal.

## I. Defendant's Motion for Certification for Interlocutory Appeal and for a Stay

In the instant motion, defendant contends that the Court's November 8 opinion and order warrants immediate appellate review. (ECF No. 21, PageID.266). Defendant states that

in its Order, the Court declined to reconsider its denial of eMortgage's motion to dismiss Plaintiff's FAC, primarily on the grounds that: (1) "[P]laintiff asserted that defendant [eMortgage], or an agent acting on its behalf, violated the **TCPA**"; and (2) the FAC "does not assert claims under 'vicarious' or 'direct' **TCPA** liability" and instead "raises two alleged **TCPA** violations for which [eMortgage] may be held directly or vicariously liable." Yet, numerous, if not the majority of, other federal district courts have ruled differently and, in stark contrast to this Court's Order, have uniformly held that (1) plaintiffs must "assert claims under [a] 'vicarious' or 'direct' **TCPA** liability" theory; and (2) merely alleging the "defendant, or an agent acting on its behalf, violated the **TCPA**" without pleading specific non-conclusory facts supporting either theory is insufficient to do so under federal pleading standards.

(*Id.*, PageID.266-67) (citations omitted). Defendant argues that (1) the Court's order involves controlling questions of law; (2) substantial differences of opinion exist as to these questions of law; and (3) an immediate appeal would advance the ultimate resolution of this case, as it might be subject to dismissal under Fed. R. Civ. P. 12(b)(6) and/or 12(b)(1). (*Id.*, PageID.267-69). Defendant contends that an interlocutory

appeal is therefore warranted in this case. Defendant further requests that if the Court grants its motion for certification for interlocutory review, the case be stayed pending the outcome of the appellate proceedings. (*Id.*, PageID.282-83).

In response, plaintiff concedes that the Court's order involves controlling questions of law. However, she argues that "there are no exceptional circumstances warranting immediate appellate review and immediate appellate review will not advance resolution of this case because there is no substantial ground for difference of opinion regarding the Court's findings that Plaintiff adequately alleges eMortgage's direct or vicarious liability under the [**TCPA**]." (ECF No. 24, PageID.293). Plaintiff contends that for these reasons, interlocutory review would be inappropriate in this case.

## II. Legal Standard

Interlocutory review pursuant to § 1292(b) [1] is warranted only if "(1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). "[M]ixed questions of fact and law are treated as questions of law for purposes of an interlocutory appeal." *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 875 (E.D. Mich. 2012). Further, "[r]eview under § 1292(b) is granted sparingly and only in exceptional cases." *In re City of Memphis*, 293 F.3d at 250. *See also Kraus v. Bd. of Cnty. Road Comm'rs for Kent Cnty.*, 364 F.2d 919, 922 (6th Cir. 1966) (stating that "Congress intended that *section 1292(b)* ... be sparingly applied. It is to be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation").

## III. Analysis

**\*3** Because plaintiff does not dispute that the Court's November 8 opinion and order involves controlling questions of law, [2] the Court will begin with the second prong of the three-prong test for certification for interlocutory appeal: whether a substantial ground for difference of opinion exists regarding the correctness of the Court's decision. "Substantial ground for a difference of opinion" means that

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 53 of 233

Delgado v. eMortgage Funding LLC, Not Reported in Fed. Supp. (2022)

(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question.

*Newsome*, 873 F. Supp. 2d at 876 (internal quotation marks omitted).

Defendant states that one case, *Lucas v. Telemarketer Calling from (407) 476-5680*, No. 18-3633, 2019 WL 3021233 (6th Cir. May 29, 2019), appears to be the only "applicable binding decision from the Sixth Circuit to date on the necessity of and standards for adequately pleading direct or vicarious **TCPA** liability for alleged unlawful calls or texts." (ECF No. 21, PageID.274). Defendant adds that "[t]he *only* other binding opinions relevant to direct or vicarious **TCPA** liability were decided at the summary judgment stage and/or involve faxes (which have different liability standards than **TCPA** call/text cases) and, thus, are not applicable for present purposes." (*Id.*, n.6) (emphasis in original). Although plaintiff contends that "[a] Lexis Nexis search for the terms '**TCPA**' and 'vicarious liability' returns over 500 results, including more than 75 opinions from the Sixth Circuit" (ECF No. 24, PageID.294 n.1), she has failed to cite additional binding precedent on the particular issue before the Court. Nor is the Court aware of any. Because there is so little relevant precedent on the pleading standard for **TCPA** call/text claims, the Court concludes that a substantial ground for difference of opinion exists in this case.

The Court also concludes that an interlocutory appeal will materially advance the ultimate termination of the litigation. "An interlocutory appeal materially advances the litigation when it save[s] judicial resources and litigant expense." *Newsome*, 873 F. Supp. 2d at 878 (internal quotation marks omitted). "Interlocutory appeal is favored where reversal would substantially alter the course of the district court proceedings or relieve the parties of significant burdens.... [T]he role of interlocutory appeal is diminished when a case is nearing trial and large expenditures have already been made." *Cerjanec v. FCA US, LLC*, No. 17-10319, 2018 WL 7152556, at *3 (E.D. Mich. Sept. 4, 2018). The present case is only at the pleading stage. The parties have not engaged in discovery, nor is the case nearing trial. If the Sixth Circuit finds that plaintiff has failed to meet the **TCPA's** pleading standard for alleged unlawful calls or texts, the case would be subject to dismissal, thereby materially advancing the ultimate termination of the litigation. [3] "It would be a waste of resources for the parties to engage in extensive, costly, and time-consuming class action discovery on a claim or claims that may ultimately be dismissed." *Id.* The third and final factor for certification for interlocutory appeal is therefore met. Accordingly,

**\*4** IT IS ORDERED that defendant's motion for certification of this Court's November 8, 2021, order for interlocutory appeal (ECF No. 21) is granted.

IT IS FURTHER ORDERED that the case be stayed pending the outcome of the appellate proceedings.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 229884

---

**Footnotes**

1      Section 1292(b) states:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to

be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, [t]hat application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

2    Moreover, the Court agrees that its order involves controlling questions of law.

> The Sixth Circuit has ... set a low bar for a determination that a question of law is controlling in the context of a motion for certification under § 1292(b). All that must be shown in order for a question to be controlling is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court.

*Newsome,* 873 F. Supp. 2d at 875-76 (internal quotation marks omitted). Resolution of the issue – whether plaintiff sufficiently pled her **TCPA** claims – on appeal could materially affect the outcome of the litigation before this Court. Therefore, the Court's order satisfies the first prong of the test for certification for interlocutory appeal.

3    Although plaintiff does not concede this final prong of the three-prong test for certification for interlocutory appeal, she does not clearly dispute it. Rather, plaintiff contends that "immediate appellate review will not advance resolution of this case because there is no substantial ground for difference of opinion regarding the Court's findings that Plaintiff adequately alleges eMortgage's direct or vicarious liability under the [**TCPA**]." (ECF No. 24, PageID.293). Because the Court has determined that there is a substantial ground for difference of opinion on this issue, appellate review may in fact advance resolution of this case.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

**WESTLAW**   © 2025 Thomson Reuters. No claim to original U.S. Government Works.   4

2024 WL 4363118
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Mark W. DOBRONSKI, Plaintiff,

v.

ANTHONY J. RUSSO, JR., PA, et al. Defendants.

Case No. 2:23-cv-12288
|
Signed September 30, 2024

**Attorneys and Law Firms**

Mark W. Dobronski, Dexter, MI, Pro Se.

Samantha L. Southall, Buchanan Ingersoll & Rooney PC, Philadelphia, PA, for Defendants Anthony J. Russo, Jr., PA, Anthony John Russo Jr., Matthew A. Dolman, TorHoerman Law LLC, Saddle Rock Legal Group LLC, Thomas Lowe Young, Tyler Joseph Schneider.

Amy Sabbota Gottlieb, Dickinson Wright PLLC, Troy, MI, Jared Alexander Christensen, Dickinson Wright PLLC, Detroit, MI, for Defendants Spring Investments, Inc., Jeffrey Steven Fishman, Rochelle Marissa Adler.

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 28 & 42)**

SUSAN K. DeCLERCQ, United States District Judge

**\*1** Plaintiff Mark W. Dobronski, like many Americans, is tired of telemarketing calls—especially unsolicited robocalls. Indeed, such calls are so pervasively annoying that Congress enacted the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227, et seq., that, along with its implementing regulations, 47 CFR 64.1200(a), restricts the use of sophisticated telemarketing equipment and practices that can target millions of consumers *en masse.* In an attempt to fight back against companies that continue such practices in violation of the TCPA, Dobronski has become a frequent self-represented litigant in this district.

In this case, Dobronski has sued four law firms: Anthony J. Russo, Jr. P.A., Matthew A. Dolman P.A., TorHoerman Law LLC, Saddle Rock Legal Group LLC; two other entities: Spring Investments, Inc., Intake On Demand, LLC; two "non-registered fictitious business name[s]": Injury Claims Service, Consumer Enrollments Center; and five individuals. [1] Dobronski alleges that all Defendants violated various provisions of the TCPA. [2] Two motions to dismiss were filed by ten of the defendants. [3]

For the reasons that follow, the motions will be granted.

**I. BACKGROUND**

**A. Alleged Scheme**

In his First Amended Complaint ("complaint"), Dobronski alleges that Defendants are all engaged in "soliciting members of the public to be represented by Defendants in filing claims and lawsuits" related to potential exposure to contaminated drinking water at Camp Lejeune in North Carolina from 1953 to 1987. ECF No. 25 at PageID.137. He alleges that they are doing so by "engaging in mass telemarking and robocalling campaigns to broad swathes of the United States ...." *Id.* Specifically, Dobronski alleges that Defendants Anthony J. Russo, Jr. P.A., and Matthew A. Dolman P.A., are the lead law firms representing "consumers injured by toxic water at Camp Lejeune," and that they are "partnering with other law firms and lawyers," including Defendants TorHoerman Law LLC and Saddle Rock Legal Group LLC. *Id.* Defendants Anthony Russo, Tyler Schneider, and Thomas Young are alleged to be leading the "Camp Lejeune water contamination lawsuit consumer marketing" on behalf of their respective law firms. *Id.* at PageID.137–38.

**\*2** Dobronski alleges that to solicit potential plaintiffs, Defendants "utilize third-party telemarketers to initiate telephone calls *en masse* using automated telephone dialing systems." *Id.* at PageID.139, 142. When a call is answered, the telemarketers will ask questions to determine if they might qualify as a plaintiff in the Camp Lejeune litigation. *Id.* If so, they will "transfer the call to a 'verifier' to make a further determination of their qualifications, and then if verified, will transfer the call to "an agent who will further discuss legal representation of the consumer and seek to have the consumer agree to legal representation" in the Camp Lejeune litigation. *Id.* at PageID.139–40. A representation agreement is then sent to the consumer, which is the first time that the attorney or law firm name is disclosed. *Id.* Any inquiry into identification of the caller results in the telemarketer hanging up or failing to provide the information. *Id.* at PageID.140.

If the consumer does not qualify or makes "a do-not-call demand," the telemarketer will terminate the call. *Id.* at PageID.139–40.

Dobronski further alleges that "Defendants are engaged in a concert of action ... designed to conceal the identity" of the entities and people involved. *Id.* at PageID.138. In order to "conceal identities, the third-party telemarketers will falsify or 'spoof' their caller identification numbers information" so the recipient will not know who called. *Id.* at PageID.141. Dobronski therefore engages in conduct that he terms "a canary trap," which means that in response to the telemarketer's call, he provides a false, unique name, so that if the name resurfaces, he will be able to tie it to a certain telephone call. *Id.* at PageID.142.

Although Dobronski admits that the identities of the third-party telemarketers allegedly utilized by Defendants currently are unknown, *id.* at PageID.142–43, he attributes many of the calls involved in this case to Defendant Consumer Enrollment Center, based on the caller ID display—"CONSUMER ENROLL"—during the calls. *See id.* at PageID.146–54. Dobronski also alleges involvement with these calls to Defendants Intake On Demand, Injury Claims Center, and Spring Investments, Inc., based on links between them and individual Defendants Fishman and Adler. *Id.* at PageID.154–56.

## B. Subject Telephone Calls

Dobronski claims that prior to August 16, 2023, he "received dozens of telephone solicitation calls to his "residential telephone line (321) ***-0911 where the caller [was] attempting to ascertain whether [he] or 'any loved ones' ... worked or served at Camp Lejeune between 1953 and 1987." ECF No. 25 at PageID.143. Despite demanding that they no longer call him, the telephone solicitations continued. *Id.*

Although Dobronski's telephone number has a Florida area code, he asserts in his motion papers that he "subscribes to a telephone which uses Voice Over Internet Protocol" (VoIP), so when his number is called, it appears at both his Florida and Michigan residences. ECF No. 32 at PageID.227–29. In his complaint, Dobronski specifically states that at the time he received all the relevant calls, he "was located at his residence in Michigan." ECF No. 25 at PageID.131.

The claims at issue in this case involve 18 specific calls received on that line between August 16 and August 29, 2023, that allegedly violate the TCPA ("Subject Calls"). *Id.* at PageID.143–54.

Dobronski received Call #1 on August 16, 2023, at approximately 10:48 a.m. *Id.* at PageID.143–44. Upon saying hello, he "heard a 'bonk' sound," which Dobronski states "is indicative of an automatic telephone dialing system being used," and two to three seconds later, "a male individual began speaking and identified himself as 'Michael ... with Injury Claims Services ... on a recorded line." *Id.* at PageID.144. The caller asked Dobronski if "you or anyone else in your family ever served at Camp Lejeune," to which he replied, "yes." *Id.* Dobronski then gave false answers to a number of identification questions, including giving his name as Lester Clarke. *Id.* The caller noted that Dobronski's telephone number "shows on the do not call list" and asked if he had an alternate telephone number. *Id.* Dobronski responded that he did not. *Id.*

 **\*3** The call was then transferred to a different telemarketer who identified herself as "Tony ... with the Camp Lejeune Compensation Center" and asked the same questions as the prior telemarketer. *Id.* at PageID.144–45. Tony thereafter sent Dobronski an email addressed to Lester Clarke at the false email address Dobronski had provided, which attached "a contingency fee retainer agreement on Russo Firm letterhead" and identified "Russo Firm, RP Law LLC, and Dolman" as the law firms providing representation. *Id.* at PageID.145. The agreement was pre-filled with the false Lester Clarke information Dobronski had provided. *Id.* Although Tony attempted to get Dobronski to electronically sign the retainer agreement, she hung up when Dobronski asked her what company she worked for and where she was located. *Id.*

Shortly thereafter, at 11:40 a.m., Tony called back (Call #2) asking for Lester; she told him that the "the contract was already sent out" to him and to tell any future callers that he had already signed up. *Id.* at PageID.146. Tony called again asking for Lester later that day at 2:43 p.m. (Call #5).

On August 17, 2023, Dobronski received another call asking for Lester (Call #7). *Id.* at PageID.148. The caller identification displayed CONSUMER ENROLL. *Id.* Upon answering, the caller identified himself as being from "the Enrollment Center" and want to confirm that Dobronski had "done the intake yesterday with Tony with the law firm Russo Dolman." *Id.*

On August 23, 2023, Dobronski received another call asking for Lester. *Id.* at PageID.150–51. The female caller identified herself as "Tony ... with the Enrollment Center" and asked if Dobronski had "ever been at Camp Lejeune, to which [he] responded 'yes.' " *Id.* at PageID.151. Like what occurred during the call on August 16, Tony thereafter sent Dobronski an email addressed to Lester Clarke at the false email address Dobronski had provided, which attached "a contingency fee retainer agreement," this time on "TorHoerman and Saddle Road letterhead" and identified "TorHoerman and Saddle Road" as the law firms providing representation. *Id.* at PageID.145. The agreement was pre-filled with the false Lester Clarke information Dobronski had provided. *Id.* The email also included "an introductory letter on behalf of Saddle Rock" signed by Defendant Young and "an introductory letter on behalf of TorHoerman" signed by Defendant Schneider. *Id.*

In addition, between August 16 and August 29, 2023, Dobronski received 13 calls (Calls # 3–4, 6, 8–11,13–18), all of which displayed CONSUMER ENROLL on the caller identification screen, but when Dobronski answered the calls, the caller hung up. *Id.* at PageID.146–48.

### C. Claims

Dobronski alleges the following claims against all Defendants:

1. Count I: TPCA regulation 47 CFR § 64.1200(a)(1)(iii) – Autodialer – calls #1–18

2. Count II: TPCA regulation 47 CFR § 64.1200(a)(6) – Hang up – calls # 4, 8, 14, 18

3. Count III: TPCA regulation 47 CFR § 64.1200(a)(7) – Abandoned – calls # 3, 6, 8–11, 13-18

4. Count IV: TPCA regulation 47 CFR § 64.1200(d)(3) – Do Not Call – calls #1–18

5. Count V: TPCA regulation 47 CFR § 64.1200(d)(4) – Failure to Identify – calls #1–18

6. Count VI: TPCA regulation 47 CFR § 64.1601(e) – Spoofed Caller ID – calls #1–18

Dobronski alleges that these violations were knowing and willful.

## II. ANALYSIS

Defendants move to dismiss the complaint for three reasons: (1) improper venue under Civil Rule 12(b)(3); (2) failure to provide them with adequate notice of the claims against them and the grounds upon which they rest under Civil Rule 8(a)(2); and (3) failure to state a claim upon which relief may be granted under Civil Rule 12(b)(6).

### A. Venue [4]

**\*4** This Court must dismiss " 'a case laying venue in the wrong division or district,' unless [this Court] finds 'in the interest of justice' that the case should be transferred 'to [the district] in which it could have been brought,' rather than dismissed." *Stanifer v. Brannan*, 564 F.3d 455, 456 (6th Cir. 2009) (second alteration in original) (quoting 28 U.S.C. § 1406(a)). Venue for civil cases is governed by 28 U.S.C. § 1392, which provides, *inter alia*, that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1392(b).

Defendants contend that venue is not proper in this judicial district because Dobronski received the telephone calls at issue on a residential number with a Florida area code. ECF Nos. 28 at PageID.193; 42 at PageID.381. Defendants argue that the Court should focus its analysis on the dialed number and that any call that Dobronski may have received in Michigan from that number was because he had the calls forwarded there. *Id.*, citing *Thompson v. Branch Banking & Trust Co.*, No. 19-cv-60108, 2020 WL 3316092 at *1 (S.D. Fla. May 1, 2020). However, Dobronski's complaint specifically alleges that when he received the Subject Calls, he was at his residence in Washtenaw County, Michigan. ECF No. 25 at PageID.131. This occurred not because Dobronski forwarded calls from Florida to Michigan, but because he utilizes a Voice Over Internet Protocol (VoIP) so calls to his number appear at his residences both in Florida and Michigan. ECF No. 32 at PageID.229. Accordingly, this situation is distinguishable from *Thompson*.

Given that Dobronski received the Subject Calls while in Washtenaw County, Michigan, this district is where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1392(b). Accordingly, venue is proper.

### B. Notice of Claims

Defendants argue that Dobronski's complaint "fails to delineate the necessary allegations between each of the named Defendants and, instead, takes the 'shotgun' approach, which is not sufficient to state a claim." ECF No. 42 at PageID.379. Defendants take issue with the fact that "none of the Amended Complaint's [ ] causes of action are clearly directed at any specific Defendant." ECF No. 28 at PageID.195.

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff also must "provide the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392–93 (6th Cir. 2020) (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)).

In this case, although Dobronski's complaint sets forth specific factual allegations that delineate the specific roles and relationships of the Defendants, *see* ECF No. 25 at PageID.137–143, 154–172, it fails to "connect specific facts or events with the various causes of action [he] asserted." *Lee*, 951 F.3d at 392 (quoting *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013)).

Under the TCPA, a defendant who "initiates" a call is "directly" liable for violations that occurred during the call. *In re DISH Network*, 28 FCC Rcd. 6574, 6582–84 (2013). Alternatively, a defendant who did not initiate a call "may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer." *Id.* at 6582. Applicable agency principles embrace "not only formal agency, but also principles of apparent authority and ratification" *Lucas v. Telemarketer Calling from (407) 476-5680*, No. 18-3633, 2019 WL 3021233, at *5 (6th Cir. May 29, 2019) (quoting *In re DISH Network*, 28 FCC Rcd. at 6584, ¶ 28). As explained by the Sixth Circuit in *Lucas*,

> **\*5** In determining that vicarious liability *could* be applied to claims for relief under the TCPA, the FCC noted that "[t]he classical definition of 'agency' contemplates 'the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and

subject to the principal's control," and extends to situations where a "third party has apparent (if not actual) authority" to act as a principal's agent. Dish Network, 28 FCC Rcd. at 6586, ¶ 34. Finally, ratification occurs when an agent acts for the principal's benefit and the principal does not repudiate the agent's actions. Sphere Drake Ins. v. Am. Gen. Life Ins., 376 F.3d 664, 677 (7th Cir. 2004).

*Lucas*, 2019 WL 3021233, at *5.

Here, Dobronski concedes that he does not know the identity of the telemarketers who initiated the Subject Calls. ECF No. 25 at PageID.142. So for each claim, he simply alleges that "Defendants or Defendants' agent" initiated calls that violated a particular section of the TCPA. *Id.* at PageID.156–60. However, these allegations could mean that all 13 Defendants collectively initiated the calls. It could also mean that all 13 are jointly liable under a theory of vicarious liability under the TCPA because they mutually authorized third parties to initiate the calls, or they ratified a benefit derived from the third parties' actions. Other statements in the complaint, such as "Defendants engaged in a concert of action" or that the Defendants acted "in partnership" with other Defendants, imply that Dobronski may be asserting concerted-action or partnership liability. These are just a few examples of how one could interpret the Dobronski's claims in light of the agency law principals available. Given that the complaint fails to connect specific facts or specific defendants to any of these theories of liability, it fails to give Defendants adequate notice of the grounds upon which Dobronski's claims rest.

Although there are cases where a complaint that asserts identical claims against multiple defendants can adequately give notice to the defendants as to the claims against them, *see e.g.*, *Johnson v. The Berkely Group*, 2013 WL 12130296 at *1, *5 (2013), here, given that the third-party telemarketers are unknown, there are 13 defendants whose involvement vastly differs, several of the defendants are simply "fictitious business names," and not every call necessarily involves every defendant, this Court finds that the complaint fails to connect specific facts to any of the numerous theories of liability it raises.

In addition, Dobronski's contention that all Defendants could be held jointly liable for all 18 Subject Calls based on a civil conspiracy theory is unpersuasive when the complaint itself states that "*numerous* entities, *including* Defendants, are engaging in mass telemarketing and robocalling campaigns to broad swathes of the United States" relating to mass tort matters. ECF No.25 at PageID.137 (emphasis added).

Thus, many of the Subject Calls, especially those that were terminated immediately upon being answered so no information was exchanged, could be the result of efforts by entities apart from these Defendants and outside of the alleged conspiracy.

Because the complaint improperly groups Defendants together, the remaining claims will be dismissed for failing to provide Defendants with proper notice of the basis of the individual claims against each one.

### C. Failure to State a Claim

In light of this Court's decision on the notice issue, it need not address Defendants' arguments that the complaint fails to state a claim.

### III. CONCLUSION

**\*6**  Accordingly, it is **ORDERED** that:

1. Defendants Anthony J. Russo, Jr. P.A. d/b/a The Russo Firm, Anthony John Russo, Jr. d/b/a RP Law LLC, Matthew A. Dolman, P.A. d/b/a Dolman Law Group, TorHoerman Law LLC, Saddle Rock Legal Group LLC, Thomas Lowe Young, and Tyler Joseph Schneider's Motion to Dismiss, ECF No. 28, is **GRANTED**;

2. Defendants Spring Investment, Inc. d/b/a Media Merchants Group, Jeffrey Steven Fishman and Rochelle Marissa Adler's Motion to Dismiss, ECF No. 42, is **GRANTED**;

3. Counts I through IV are **DISMISSED WITHOUT PREJUDICE**.

**All Citations**

Slip Copy, 2024 WL 4363118

---

### Footnotes

1    The individuals are Anthony John Russo Jr., Thomas Lowe Young, and Tyler Joseph Schneider, Jeffrey Steven Fishman, and Rochelle Marissa Adler.

2    Dobronski also claimed violations of the Florida Telemarketing Sales Act, Fla. Stat. § 501.059, but the Court previously declined to exercise supplemental jurisdiction over these claims. ECF No. 30.

3    Defendants Intake On Demand, Injury Claims Service, and Consumer Enrollments Center have not appeared in the case or filed any motions. A default was entered by the Clerk against Defendant Intake On Demand on February 8, 2024. ECF No. 35. And in the motion filed by Spring Investments, Inc., Jeffrey Steven Fishman, and Rochelle Marissa Adler, ECF No. 42, it asserts (in a footnote) that Defendant Injury Claims Service has not been served with process, but that the motion similarly applies to it, presumably since Defendants Adler and Fishman are alleged to be the owners and partners of Injury Claim Service. *See* ECF No. 25, PageID.119.

Because the complaint, motions, and responses do not factually distinguish the non-moving Defendants from the moving Defendant, this Court sua sponte considers the claims against all of the Defendants in this opinion. *Silverton v. Dept. of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.") (collecting cases).

4    In his response, Dobronski disputes that concurrence was sought before the Russo Defendants filed their motion. ECF No. 32 at PageID.225; E.D. Mich. L.R. 7.1. He states that had concurrence been properly sought, he would have consented to transferring this case to the Middle District of Florida. *Id.* Even assuming that

to be true, given the Court's analysis of the venue issue, the court deems the transgression harmless in this particular instance only.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Doyle v. GoHealth, LLC, Not Reported in Fed. Supp. (2023)

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 61 of 233

2023 WL 3984951
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Robert DOYLE, et al.

v.

GOHEALTH, LLC

Civil Action No. 22-04291
|
Signed March 30, 2023

**Attorneys and Law Firms**

Ross H. Schmierer, Kazerouni Law Group, APC, Mount Laurel, NJ, for Robert Doyle, et al.

Matthew F. Bruno, Manatt, Phelps & Phillips, LLP, New York, NY, for GoHealth, LLC.

**LETTER ORDER**

MADELINE COX ARLEO, United States District Judge

*1 Dear Litigants:

Before the Court is Defendant GoHealth, LLC's ("Defendant") Motion to Dismiss the First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 8. Plaintiff Robert Doyle ("Plaintiff"), individually and on behalf of all others similarly situated, opposes the Motion. ECF No. 16. For the reasons set forth below, the Motion is **GRANTED**.

**I. BACKGROUND** [1]

This case arises out of an unsolicited telemarketing phone call Plaintiff received to his cell phone on November 4, 2021. FAC ¶¶ 24-29, ECF No. 4. The call came from an unknown number, (689) 209-1190, and a "pre-recorded voice" identified the caller as "Sarah, a Medicare Specialist." Id. ¶¶ 29-30. Plaintiff was able to determine that he was not speaking to a live representative at the outset of the call, and that the message was prerecorded because of the "generic content ... [and] the tone, cadence and inflection of the voice message." Id. ¶¶ 42-43. A live person, Jason, then began speaking, and told Plaintiff he was a "licensed Medicare specialist." Jason told Plaintiff that "GoHealth" and "GoMedicare" are the same company, and that he wanted to

speak with Plaintiff about their program. Id. ¶¶ 32-33. Jason read Plaintiff "some type of disclaimer," and told Plaintiff that "their website was GoHealth.com" before he transferred Plaintiff to a woman named Jocelyn. Id. ¶¶ 34-36.

Jocelyn explained that she "works for GoHealth," and "listed a bunch of insurance companies that her company works with." Id. ¶¶ 36-37. After Jocelyn, an individual Dennis Hunter began speaking, and told Plaintiff his phone number was (855) 673-3578, extension 4363. Id. ¶¶ 38-39. Dennis Hunter also emailed Plaintiff to confirm that he was calling from GoHealth. Id. ¶ 40. The call was not for emergency purposes, and Plaintiff did not provide any express written consent to receive the call to his cell phone. Id. ¶¶ 46-47.

Plaintiff seeks to represent the following class of persons pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3):

> All persons within the United States who received any telephone call/s from Defendant, its employees and/ or agents, for the purpose promoting Defendant's goods or services, to said person's cellular telephone made through the use of an artificial or prerecorded voice and such person had not previously consented in writing to receiving such calls within the four years prior to the filing of this action.

FAC ¶ 54. Plaintiff maintains that Defendant "has called thousands of wireless telephone customers" without their consent, and he corroborates this allegation by asserting that Defendant is the subject of "several TCPA lawsuits and class actions complaining of unsolicited marketing calls." Id. ¶¶ 50-51.

Plaintiff argues the phone call invaded his privacy and expressly violated 47 U.S.C. § 227(b)(1). He filed his first Complaint in this Court on June 27, 2022. ECF No. 1. He later filed the FAC on July 18, 2022, alleging two counts: (1) negligent violations of the Telephone Consumer Protection Act (the "TCPA") 47 U.S.C. § 227, et seq. (Count I), and (2) knowing and/or willful violations of the TCPA, 47 U.S.C. § 227, et seq. (Count II). See FAC ¶¶ 70-82. The instant Motion followed.

## II. STANDARD OF REVIEW

**\*2** Under Rule 12(b)(1), Plaintiff bears the burden of persuading the Court that subject matter jurisdiction exists. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). In resolving a Rule 12(b)(1) motion, a court must first determine whether the motion presents a "facial" or "factual" attack. See Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack argues that a claim on its face "is insufficient to invoke the subject matter jurisdiction of the court," id. at 358, and "does not dispute the facts alleged in the complaint," Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016). A court reviewing a facial attack must "consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Constitution Party of Pa., 757 F.3d at 358. Here, Defendant's motion to dismiss is a facial attack because it asserts Plaintiff lacks Article III standing, and thus the Court lacks subject matter jurisdiction over the matter. See Society Hill Towers Owners' Ass'n v. Rendell, 210 F.3d 168, 175 (3d Cir. 2000). "Although 'general factual allegations of injury resulting from the defendant's conduct may suffice,' the complaint must still 'clearly and specifically set forth facts sufficient to satisfy' Article III." Reilly v. Ceridian Corp., 664 F.3d 38, 41 (3d Cir. 2011).

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citations omitted). To survive a motion to dismiss, the claims must be facially plausible, meaning that the pleaded facts "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## III. ANALYSIS

Defendant moves to dismiss the FAC on several grounds. Defendant first alleges that Plaintiff's FAC should be dismissed under Rule 12(b)(1) because Plaintiff lacks Article III standing. Def. Mem. at 5-9. Second, Defendant argues the FAC should be dismissed under Rule 12(b)(6) for failure to state a claim, as Plaintiff fails to plead facts supporting

direct or vicarious liability under the TCPA, and he does not establish any willful or knowing violation of the TCPA. Def. Mem. at 9-22. The Court addresses each in turn, after a brief background on the relevant portions of the TCPA.

The TCPA restricts certain telemarketing and robocalls. Specifically, the statute prohibits making: "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ["ADTS"] or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). To state a claim under the TCPA, a plaintiff must plead that the defendant "(1) made a non-emergency call without prior express consent, (2) using an ATDS or artificial or prerecorded voice, (3) to a cell phone." Johnson v. Comodo Grp., Inc., No. 16-4469, 2020 WL 525898, at *5 (D.N.J. Jan. 31, 2020) (emphasis removed).

### A. Article III Standing

Defendant moves to dismiss Plaintiff's FAC for lack of Article III standing, arguing that Plaintiff has failed to plead facts establishing his injury is fairly traceable to Defendant, and therefore cannot be redressed by Defendant. See Def. Mem. at 5-8. Plaintiff counters that he has plausibly alleged his injury is traceable to Defendant because two agents with whom he spoke indicated they were working for or calling on behalf of Defendant. Pl. Opp. at 5. The Court agrees with Plaintiff.

**\*3** To establish Article III standing, the plaintiff has the burden of establishing three elements: "(1) [he] suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). The Third Circuit addressed the "injury in fact" component of Article III standing in this context in Susinno v. Work Out World, Inc., 862 F.3d 346, 350-51 (3d Cir. 2017). There, the Court held that the "nuisance and invasion of privacy resulting from a single prerecorded telephone call" qualify as "the very harm that Congress sought to prevent." Id. (internal quotation marks omitted).

Defendant challenges the second element of standing, traceability, and argues Plaintiff's FAC fails to establish any link between the prerecorded call Plaintiff received and Defendant's business. Def. Mem. at 6. To show traceability, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... traceable to the challenged action of the defendant and not ...

th[e] result [of] the independent action of some third party not before the court." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42 (1976) (alterations in original)). Defendant maintains Plaintiff has failed to plead that the initial call from "Sarah, a Medicare Specialist" had any connection to Defendant, and that the subsequent transfers to live agents are insufficient to tie Defendant to the initial prerecorded call. Def. Mem. at 6.

Plaintiff relies on Bank v. GoHealth, No. 19-5459, 2021 WL 2323282 (E.D.N.Y. May 11, 2021). Pl. Opp. at 5-6. There, the plaintiff received a similar prerecorded call claiming to offer discounts for Medicare Supplement plans, and after being transferred to two live agents, the third live person with whom he spoke identified himself as a "licensed agent of [the defendant]." Bank, 2021 WL 2323282, at *1. Although, like here, the plaintiff did not allege that the initial call identified defendant, the Court concluded that the facts pled "suffice[d] to allege that plaintiff's injury is traceable to the defendant and, if proven, make it likely that the injury would be redressable if there were a favorable outcome in the case." Id. at *6.

The Court sees no reason to depart from Bank's logic with respect to Article III standing and traceability. Here, the FAC alleges that "[u]pon information and belief ... Defendant called Plaintiff using a pre-recorded message," FAC ¶ 41. The FAC also alleges that the first live person with whom Plaintiff spoke named the Defendant business – a closer connection than the third live person in Bank. Although the allegations may not be sufficient to eventually establish liability, they are enough to support standing. See Bank, 2021 WL 2323282, at *10-12 (finding the plaintiff failed to allege plausible facts to support liability under the TCPA); Perrong v. Quotewizard.com, LLC, No. 20-2506, 2020 WL 5039445, at *4 (E.D. Pa. Aug. 26, 2020) (finding plaintiff pled sufficient facts to establish Article III standing even though he could not directly connect the initial prerecorded call to the defendant).

**B. Liability Under the TCPA**

Defendant next argues that Plaintiff fails to plead facts to support direct or vicarious liability under the TCPA. Def. Mem. at 9-20. Plaintiff, on the other hand, maintains that he has alleged facts plausibly supporting a reasonable inference that Defendant is either directly or vicariously responsible for the robocall he received. Pl. Opp. at 11-23. The Court agrees with Defendant.

**\*4** Under the TCPA, a plaintiff establishes direct liability by showing that the defendant was the person or entity that "initiated" the telemarketing call. [2] A person or entity "initiates" a telephone call when "it takes the steps necessary to physically place a telephone call." In re Joint Petition filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6583 ¶ 26 (2013). Accordingly, an entity "is not directly liable for a violation of the TCPA unless it initiates a call." Id. at 6582 ¶ 24. In addition to direct liability, the TCPA " 'creates a form of vicarious liability making an entity liable when a third party sends unsolicited communications on its behalf in violation of the Act.' " City Select Auto Sales, Inc. v. David/Randall Assocs., Inc., 96 F. Supp. 3d 403, 419 (D.N.J. 2015) (quoting Brodsky v. HumanaDental Ins. Co., No. 10–C–3233, 2014 WL 2780089, at *6 (N.D. Ill. June 12, 2014)). Federal common law principles of vicarious liability are applicable where the plaintiff establishes an agency relationship between the defendant and a third-party caller. See Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 168 (2016); Cunningham v. Cap. Advance Sols., LLC, No. 17-13050, 2018 WL 6061405, at *6 (D.N.J. Nov. 20, 2018).

It is well established that vicarious liability may be established under three agency theories: actual authority, apparent authority, and ratification. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 120 (3d Cir. 2013) (citation and quotations omitted). Apparent authority, on the other hand, can be shown "in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship." Id. (citation and quotations omitted). Finally, "[r]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement Third of Agency, § 4.01 (2006).

Here, the Court is not convinced that Plaintiff has alleged direct liability under the TCPA. Plaintiff acknowledges that the initial telemarketing call he received only identified the caller as "Sarah, a Medicare Specialist," and he does not allege that the number associated with the call – 629-209-1190 – belonged to Defendant. FAC ¶¶ 29-30; see also Camunas v. Nat'l Republican Senatorial Comm., 541 F. Supp. 3d 595, 602 (E.D. Pa. 2021) (dismissing the plaintiff's claims on direct liability grounds where plaintiff did not allege

the number that sent unsolicited text messages was owned or operated by the defendant); Smith v. Vision Solar LLC, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (dismissing plaintiff's claims as insufficient to support direct liability under the TCPA where the plaintiff did " 'not show plausibly that defendant actually, physically initiated the telephone calls at issue' ") (quoting Aaronson v. CHW Group, Inc., No. 18-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019)). As such, direct liability is not established because there are no facts to support the conclusion that Defendant "physically placed" the call. In re Dish Network, LLC, 28 F.C.C.R. at 6583 ¶ 26.

**\*5** Neither has Plaintiff pled sufficient facts to allow the Court to "draw the reasonable inference" that Defendant is vicariously liable for the telemarketing call Plaintiff received. See Iqbal, 556 U.S. at 678. Plaintiff relies upon Landy v. Nat. Power Sources, LLC, in which an unidentified operator utilizing ADTS called the plaintiff's cell phone and made a generic solicitation regarding solar panels. No. 3:21-00425, 2022 WL 797967, at *1 (D.N.J. Mar. 16, 2022) (hereinafter, "Landy II"). The plaintiff was then transferred to a live agent associated with a third-party named "US Home Solar," before a second live agent identified herself as the defendant's agent. Id. There, the Court held that the plaintiff had pled sufficient facts to plausibly plead vicarious liability on the part of the defendant. Id. at *3. The Court determined that the "description of the process of the call" established "circumstantial evidence that by accepting the call, and following up with an e-mail after the call, [defendant] demonstrated consent to the use of ATDS." Id. (internal quotation marks omitted). The Court further reasoned that "an agency relationship [could] be inferred from ... the smooth transfer from the initial ATDS contact to" the two live agents, which showed "a cooperative relationship from which one may infer authority or apparent authority of [defendant] to the initial contact by ATDS." Id.

In Landy II, however, the plaintiff amended his complaint after an initial dismissal for failure to state a claim, to include new factual allegations regarding the "nature of the services" initially offered to plaintiff, and specifically "allege[d] that the initial ATDS contact was made to market [defendant's] products." Id. at *1. The amended complaint further supplemented the original by adding that "the initial call was made at the direction of [defendant], and that [defendant] knew the initial caller utilized an ATDS to generate customers for [defendant]." Id. at *3. Plaintiff here has not alleged any such facts.

First, Plaintiff does not provide any details regarding Defendant's relationship to Sarah and Jason, and he does not explain Jason's relationship to Jocelyn. [3] While the FAC states that Jason, the first live agent with whom Plaintiff spoke, indicated that "GoHealth and GoMedicare are the same company," FAC ¶ 33, Plaintiff does not allege any agency relationship between GoHealth and Jason, nor whether and how GoMedicare is related to Defendant. See Landy v. Nat. Power Sources, LLC, No. 3:21-00425, 2021 WL 3634162, at *4 (D.N.J. Aug. 17, 2021) ("Landy I") (dismissing the plaintiff's TCPA claims where he did "not allege that the initial caller referenced [defendant], t[ell] him to expect contact from [defendant], or otherwise indicate[ ] a relationship with [defendant]"); Klein v. Just Energy Grp., Inc., No. CV 14-1050, 2016 WL 3539137, at *9-13 (W.D. Pa. June 29, 2016) (rejecting plaintiff's vicarious liability allegations as based on speculation that the defendant "accepted or received any benefit" from the call, and where plaintiff offered no evidence of defendant's affirmance, assent, or consent to the call).

Moreover, Plaintiff failed to allege that Sarah and Jason were attempting to sell him GoHealth-specific Medicare services, and "the purported interrelatedness" of GoHealth to Medicare is not explained anywhere in the Complaint. See Doyle v. Matrix Warranty Sols., Inc., No. 22-3198, 2023 WL 1794838, at *5 (D.N.J. Feb. 6, 2023). While Plaintiff presented proofs demonstrating GoHealth's Medicare business for the first time when he opposed Defendant's Motion to Dismiss, those exhibits are "not appropriately considered as part of the Court's Rule 12(b)(6) analysis." Id. Plaintiff may not attempt to make such a connection his briefing, as "the Complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. v. Zimmerman v. Pepsico, 836 F.2d 173, 181 (3d Cir. 1988). [4]

**\*6** Accordingly, the FAC makes insufficient allegations for this Court to infer that Defendant bears responsibility for the initial telemarketing call. [5]

## IV. CONCLUSION

Defendant's Motion to Dismiss pursuant to Rule 12(b)(6), ECF No. 8, is accordingly **GRANTED**. Plaintiff may amend his Complaint within 30 days of this Order to cure any deficiencies identified herein.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3984951

---

**Footnotes**

1   These facts are principally drawn from the FAC.

2   Plaintiff has satisfied the TCPA requirement that the caller use an artificial or prerecorded voice, and the parties do not dispute this. See Pl. Opp. at 9-10; Somogyi v. Freedom Mortg. Corp., No. 17-6546, 2018 WL 3656158, at *7 (D.N.J. Aug. 2, 2018) (The "complaint must include some factual allegations beyond "the call had a prerecorded voice," such as descriptions of the voice's "clarity and cadence" or "the absence of anything specific" to a live person such as saying "the name of the person being called.").

3   Plaintiff's attempts to explain that the use of the word "their" website indicates that Jason was associated with GoHealth are unavailing, and as noted below, are after-the-fact explanations that were not included in Plaintiff's pleadings, and will therefore not be considered at this stage. Pl. Opp. at 15-17.

4   The Court similarly rejects Plaintiff's request for judicial notice of Defendant's website, as "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" at the motion to dismiss stage. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

5   At this stage, the Court also declines to issue an order certifying the matter as a class action with Plaintiff as Class Representative, FAC ¶ 82(a). Plaintiff may bring a formal motion to certify the class if he so chooses.

---

**End of Document**                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

679 F.Supp.3d 42
United States District Court, D. New Jersey.

Robert DOYLE, individually and on behalf
of all others similarly situated, Plaintiff,

v.

MATRIX WARRANTY SOLUTIONS,
INC. d/b/a Element Protection, Defendant.

Civil Action No. 22-03198(MEF)(AME)
|
Signed June 26, 2023

**Synopsis**
**Background:** Consumer brought putative class action under
the Telephone Consumer Protection Act (TCPA) alleging that
he received a prerecorded phone call from third-party entity
for which company was liable. Company moved to dismiss.

**Holdings:** The District Court, Michael E. Farbiarz, J., held
that:

[1] consumer failed to set forth sufficient allegations to
support vicarious liability theory, and

[2] consumer adequately alleged that company was directly
liable for third-party's violation of TCPA.

Motion denied.

**Procedural Posture(s):** Motion to Dismiss.

West Headnotes (8)

[1] **Federal Courts** ⚖ Necessity of Objection;
Power and Duty of Court
Court must satisfy itself that it has subject matter
jurisdiction, and when there is a question as to the
court's authority to hear a dispute, it is incumbent
upon the court to resolve such doubts before
proceeding to the merits.

[2] **Federal Civil Procedure** ⚖ In general;
injury or interest
Plaintiff must demonstrate federal standing
separately for each form of relief sought. U.S.
Const. art. 3, § 2, cl. 1.

[3] **Injunction** ⚖ Persons entitled to apply;
standing
To establish federal standing for injunctive relief,
plaintiff must generally show that they are likely
to suffer future injury caused by defendant. U.S.
Const. art. 3, § 2, cl. 1.

3 Cases that cite this headnote

[4] **Telecommunications** ⚖ Advertising,
Canvassing, and Soliciting; Telemarketing
The elements of a violation of the Telephone
Consumer Protection Act (TCPA) are that:
(1) the defendant called a cellular telephone
number; (2) using a prerecorded voice; (3)
without the recipient's prior express consent.
Communications Act of 1934 § 227, 47 U.S.C.A.
§ 227(b)(1)(A)(iii).

1 Case that cites this headnote

[5] **Telecommunications** ⚖ Vicarious or joint
liability
Consumer failed to set forth sufficient
allegations to support vicarious liability theory in
putative class action under Telephone Consumer
Protection Act (TCPA) alleging that he received
prerecorded phone call for which company was
liable, where consumer alleged that third-party
entity acted as an agent on behalf of company
as a principle in placing the prerecorded call,
but consumer did not make any allegations
that third-party had actual authority to act on
company's behalf, such as by describing any
communications or contract between company
and third-party, by describing any control of
third-party by company, or by alleging that
consumer knew anything about company upon
receiving call from third-party, as required for
consumer to reasonably believe third-party was

acting for company. Communications Act of 1934 § 227, 47 U.S.C.A. § 227(b)(1)(A)(iii).

**[6] Telecommunications** 🔑 Advertising, Canvassing, and Soliciting; Telemarketing

In enacting the Telephone Consumer Protection Act (TCPA), Congress created a tort action. Communications Act of 1934 § 227, 47 U.S.C.A. § 227(b)(1)(A)(iii).

1 Case that cites this headnote

**[7] Torts** 🔑 Vicarious liability

When Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules.

1 Case that cites this headnote

**[8] Telecommunications** 🔑 Persons Liable

Consumer adequately alleged that company was directly liable for third-party entity's violation of Telephone Consumer Protection Act (TCPA) via placement of prerecorded phone call to consumer's telephone, where company and third-party shared the same address, operating out of the same office suite, third-party's website instructed customers to contact "our" lawyers at an email address of company, third-party and company did business under somewhat similar names, offering similar extended warranty coverage services, and a contract on third-party's website listed company as contract administrator and obligor, describing obligations that ran between customer and "we," "use," or "our," which were terms defined in contract as referring to company. Communications Act of 1934 § 227, 47 U.S.C.A. § 227(b)(1)(A)(iii).

**Attorneys and Law Firms**

**\*43** Ross H. Schmierer, Kazerouni Law Group, APC, Mount Laurel, NJ, for Plaintiff.

Shaji M. Eapen, Methfessel & Werbel, Esqs., Edison, NJ, for Defendant.

**OPINION and ORDER**

Michael E. Farbiarz, United States District Judge

**\*\*1** The Plaintiff sued under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), alleging that he received a prerecorded phone call for which the Defendant is liable.

The Defendant has now moved to dismiss. The motion is denied.

**I. Subject Matter Jurisdiction**

**[1]** The Court must satisfy itself that it has subject matter jurisdiction, and "when there is a question as to [the Court's] authority to hear a dispute, it is incumbent upon the court [ ] to resolve such doubts ... before proceeding to ... the merits." Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010) (cleaned up).

Here, there are two potential "doubts."

First, the Plaintiff alleges that he received a prerecorded call, see Amended Complaint at ¶¶ 30-32, [1] and that this amounted to an "inva[sion]" of his "personal privacy." Id. at ¶ 22. To trigger the Court's subject matter jurisdiction, the phone call must constitute a "concrete" injury. See Transunion, LLC v. Ramirez, 594 U.S. 413, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021); Spokeo, Inc. v. Robins, 578 U.S. 330, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016); see generally Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

It does. See Susinno v. Work Out World, Inc., 862 F.3d 346 (3d Cir. 2017) (holding that a plaintiff who received a single phone call has pleaded a sufficiently "concrete" injury); see also Leyse v. Bank of Am. Nat'l Ass'n, 856 F. App'x 408, 411 (3d Cir. 2021).

**\*44** It is true that the plaintiff in the cited case, Susinno, met her standing burden by alleging that she received a single unwanted call that went to voice mail. See id. at 348, 352. And the Plaintiff in this case would meet his standing burden

by alleging receipt of a single unwanted call, answered before it went to voice mail. See Amended Complaint at ¶¶ 30-33.

But this does not matter. If anything, speaking with an unwanted caller (as alleged here) represents a more "concrete" injury than picking up an unwanted voice mail (as in Susinno). [2]

[2]  [3]  Second, in addition to other relief, the Plaintiff seeks an injunction to prevent the Defendant from violating the TCPA in the future. See Amended Complaint at ¶ 97. The Plaintiff must "demonstrate standing separately for each form of relief sought[,]" Friends of the Earth v. Laidlaw Env't Servs. TOC, Inc., 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), and to establish standing for injunctive relief a plaintiff must generally show that they are "likely to suffer future injury" caused by the defendant. City of Los Angeles v. Lyons, 461 U.S. 95, 105, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

The Amended Complaint sets forth no allegations that purport to satisfy this standard. Accordingly, the request for injunctive relief will be stricken from the Amended Complaint, in keeping with "this Court's continuing obligation to assess its subject matter jurisdiction." Zambelli, 592 F.3d at 420. [3]

## II. Merits

**2  The Defendant, as noted, has filed a motion to dismiss.

To survive such a motion, a complaint must plead facts that make the claim for relief set out in the complaint "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678, 129 S.Ct. 1937. This analysis is "context specific, requiring the reviewing court to draw on its experience and common sense." Id. at 663-64, 129 S.Ct. 1937.

In the Third Circuit, motions to dismiss are assessed as follows.

First, the Court "must tak[e] note of the elements a plaintiff must plead to state a claim." Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d Cir. 2016). Second, the Court must identify those allegations that are merely conclusory, and set them to one side as irrelevant to the analysis. See id. Third,

the Court must determine whether the remaining allegations "plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679, 129 S.Ct. 1937).

## A. Elements of the TCPA

The Plaintiff invokes Section 227(b)(1)(A)(iii) of the TCPA. That Section reads:

It shall be unlawful for any person ... −

**45  (A) to make any call (other than a call ... made with the prior express consent of the called party) using any ... prerecorded voice—

(iii) to any telephone number assigned to a ... cellular telephone service, ....

[4]  The elements of a Section 227(b)(1)(A)(iii) violation are "that (1) the defendant called a cellular telephone number; (2) using a[ ] ... prerecorded voice; (3) without the recipient's prior express consent." Camunas v. Nat'l Republican Senatorial Comm., 541 F.Supp.3d 595, 601 (E.D. Pa. 2021) (cleaned up). See generally Mims v. Arrow Fin. Serv., LLC, 565 U.S. 368, 373, 132 S.Ct. 740, 181 L.Ed.2d 881 (2012) (["T]he TCPA forbids using ... prerecorded voice messages to call [cellular] telephone lines without prior express consent."); Perrong v. Victory Phones, LLC, 519 F.Supp.3d 193, 197 (E.D. Pa. 2021).

## B. Analysis of the Amended Complaint

The Defendant argues only that the Plaintiff has failed to satisfy the first element of Section 227(b), because it was another entity, "Element Protection," that called the Plaintiff --- and the Defendant cannot be liable based on Element's conduct. See Motion to Dismiss at page 5.

The Plaintiff responds by arguing that the Defendant can be liable for Element's conduct on a vicarious liability theory (see II.B.1) or on a direct liability theory (see II.B.2).

## 1. Vicarious Liability

[5]  Section 227(b) of the TCPA is silent as to the possibility of vicarious liability. It says nothing on the subject.

[6]  [7]  But with the TCPA Congress created a tort action. See, e.g., Klein v. Just Energy Grp., Inc., 2016 WL 3539137,

at *9 (W.D. Pa. June 29, 2016); cf. City Select Auto Sales Inc. v. David Randall Assoc., Inc., 885 F.3d 154, 163 (3rd Cir. 2018)(Shwartz, J., Concurring). And "[w]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." Meyer v. Holley, 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003).

 **3  In keeping with this principle, most courts have concluded that a plaintiff may recover on a vicarious liability theory under Section 227(b) of the TCPA. See Warciak v. Subway Rest., Inc., 949 F.3d 354, 356 (7th Cir. 2020); Hodgin v. UTC Fire & Sec. Am. Corp., Inc., 885 F.3d 243, 251-52 (4th Cir. 2018); Keating v. Peterson's Nelnet, LLC, 615 F.App'x 365, 371 (6th Cir. 2015); Campbell-Ewald Co. v. Gomez, 768 F.3d 871, 877 (9th Cir. 2014) aff'd 577 U.S. 153, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016); Smith v. Vision Solar, LLC, 2022 WL 1172985, at *2 (E.D. Pa. Apr. 20, 2022); Landy v. Nat. Power Sources, LLC, 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021); Frey v. Frontier Util. Ne., LLC, 2020 WL 12697468, at *2 (E.D. Pa. Apr. 13, 2020); Newell v. Strategic Admin. Grp., Inc., 2020 WL 12770854, at *1 (E.D. Pa. May 6, 2020); Kline v. Elite Med. Lab'y, Inc., 2019 WL 6828590, at *5 (M.D. Pa. Dec. 13, 2019); Valdes v. Century 21 Real Estate, LLC, 2019 WL 5388162, at *3-4 (D.N.J. Oct. 22, 2019); Cunningham v. Cap. Advance Sol., LLC, 2018 WL 6061405, at *6 (D.N.J. Nov. 20, 2018); In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig., 223 F.Supp.3d 514, 518-19 (N.D. W. Va. 2016); Richardson v. Verde Energy USA, Inc., 2016 WL 7380708, at *3-4 (E.D. Pa. Dec. 19, 2016); Klein v. Just Energy Grp., Inc., 2016 WL 3539137, at *9 (W.D. Pa. June 29, 2016); *46  Jackson v. Caribbean Cruise Line, Inc., 88 F.Supp.3d 129, 138 (E.D.N.Y. 2015); Smith v. State Farm Mut. Automobile Ins. Co., 30 F.Supp.3d 765, 773 (N.D. Ill. 2014); Hartley-Culp v. Green Tree Serv., LLC, 52 F.Supp.3d 700, 703 (M.D. Pa. 2014); Dobkin v. Enter. Fin. Grp., Inc., 2014 WL 4354070, at *4 (D.N.J. Sept. 3, 2014).[4]

There is less on the other side of the ledger. One court has held that Section 227(b) of the TCPA does not permit recovery on a vicarious liability theory --- because while Section 227(b) does not refer to vicarious liability, another part of the TCPA does. See Mais v. Gulf Coast Collection Bureau, Inc., 944 F.Supp.2d 1226, 1242 (S.D. Fla. 2013); see generally, e.g., Marx v. Gen. Revenue Corp., 568 U.S. 371, 381, 133 S.Ct. 1166, 185 L.Ed.2d 242 (2013) (describing the

context in which the expressio unius canon can be applied to interpretation of a federal statute).

But there is no need, now, to choose between the majority rule (Section 227(b) allows recovery on a vicarious liability basis) and the minority rule (it does not). This is because even if as a general matter vicarious liability is possible under Section 227(b), the Amended Complaint does not contain allegations that would allow for such liability.

 **4  Courts that hold that Section 227(b) of the TCPA permits vicarious liability routinely cite the Restatement (Third) of Agency as setting forth the relevant vicarious liability principles. See Warciak, 949 F.3d at 357; Hodgin, 885 F.3d at 252; Campbell-Ewald Co., 768 F.3d at 878; Jackson, 88 F.Supp.3d at 138; Smith, 30 F.Supp.3d at 773. Neither party in this case has suggested a different approach. In this circumstance, the Court will apply the Restatement (Third). Cf., e.g., Williams v. BASF Catalysts, LLC, 765 F.3d 306, 316 (3d Cir. 2014).

Under the Restatement, there are three principal theories of vicarious liability.

First, a principal may be liable based on the acts of an agent when the agent acts with actual authority. See Restatement (Third) Agency § 1.01 (2006). "[A]n agent's actual authority originates with expressive conduct by the principal toward the agent by which the principal manifests assent to action by the agent with legal consequences for the principal." Id. § 2.01 cmt. b (2006). Thus, for example, actual authority may be created by a contract between the principal and the agent. See id. Or it may be created by direction given by the principal to the agent. See id. at cmt. c; see also, e.g., Landy v. Nat. Power Sources, LLC, 2021 WL 3634162, at *4 (D.N.J. Aug. 17, 2021).

Here, the purported principal is the Defendant, and the purported agent is Element, which allegedly made the phone call at issue. But there are no allegations that Element had actual authority to act on the Defendant's behalf. The Amended Complaint does not, for example, describe any communications between Element and the Defendant, or any contract between them. And, more generally, the Amended Complaint does not describe any control of  *47  Element by the Defendant. Such control is the key touchstone of actual authority. See Restatement (Third) Agency § 2.01 cmt. c, d (2006).

Second, a principal may be liable based on the acts of an agent when the agent acts with apparent authority. See id. § 2.013. "Apparent authority is the power held by an agent ... when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Id. at § 2.03.

Here, though, there is no allegation that the Plaintiff (who received a call from Element) knew anything about the Defendant. Accordingly, there could have been no basis for the Plaintiff to "reasonably believe[ ]" that Element was acting for the Defendant.

Finally, a principal may be liable for an action taken by the agent if the principal later ratifies the action. See id. § 4.01. "[R]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority. Doyle v. GoHealth, LLC, 2023 WL 3984951, at *4 (D.N.J. Mar. 30, 2023) (quoting Restatement (Third) Agency § 4.01 (2006)).

But here, as noted, there is no allegation that the Plaintiff (who received a call from Element) knew anything about the Defendant. Accordingly, there could have been no basis for the Plaintiff to conclude that, after the call, the Defendant had taken responsibility for it.

To summarize: The Plaintiff advances a vicarious liability argument --- that Element was acting for the Defendant, such that the Defendant is liable for Element's conduct. But even assuming that in certain circumstances a plaintiff may recover on a vicarious liability theory under Section 227(b) of the TCPA, the Amended Complaint does not set forth legally sufficient allegations to support vicarious liability in this case.

## 2. Direct Liability

 **5   [8]   The Plaintiff also presses a direct liability argument --- that Element and the Defendant are, for the purposes of this case, essentially functioning as the same entity, such that a call nominally made by Element can be chalked up to the Defendant, and can form a basis for the Defendant's liability under Section 227(b).

A number of allegations in the Amended Complaint support this conclusion.

First, the Defendant and Element share an address. Indeed, they operate out of the same office suite. See Amended Complaint at ¶¶ 61, 62.

Second, Element's website instructs customers to contact "our" lawyers --- at an email address of the Defendant, legal@matrixprotection. [5]  See Amended Complaint at ¶ 62 n.12. This allegation is especially probative given the care that lawyers are expected to take to separate out their work between one client and another.

Third, the Defendant and Element do business under somewhat similar names. When the Plaintiff received the complained-of phone call, the caller identified herself as calling from "Elementprotectionplans.com." See Amended Complaint at ¶ 34. And the website for the Defendant bears the name www.matrixprotection.com. See id. at ¶ 62 n.12.

Fourth, the Defendant and Element offer similar services. Compare id. at ¶ 20 (alleging that the Defendant "provides extended warranty services") with id. at ¶¶ 30, 31 (describing call which began with a prerecorded message --- "[w]e are calling **48 regarding your vehicle warranty" --- and then pivoted to a live caller who said she was associated with "Elementprotectionplans.com").

Fifth, a contract on Element's website, see Amended Complaint at ¶ 63, is prominently labeled, in its header, "ElementEP Vehicle Service Contract." See id. at Exhibit A.

But the "ElementEP" contract says that "IT IS A SERVICE CONTRACT BETWEEN YOU AND THE ADMINISTRATOR OBLIGOR[.]" See id. at Exhibit A, page 3. The "[a]dministrator" is defined in the contract as Matrix Warranty Solutions, Inc., which is described as operating out of the same office suite as Element. See id. at Exhibit A, page 5. The "[o]bligor," also described as operating out of the same office suite as Element, is defined in the contract as "Matrix Financial Services, LLC," in forty-one states, "Matrix Financial Services, LLC, d/b/a/ Matrix Capital Services, LLC," in three states, Matrix Capital Services, LLC of Delaware" in one state, and "MFS of Florida Inc." in another state. See id. at Exhibit A, page 1.

In addition, and as is typical in such consumer-facing form contracts, the "ElementEP" contract describes obligations that run between "you" (the person who signs the contract, see id. at Exhibit A, page 5) and "we," "us" or "our." See id. at Exhibit A, page 4. "We," "us" and "our" are defined in the

contract as "Matrix Financial Services LLC," id. at Exhibit A, page 5, an entity described as operating out of the same office suite as Element.

A number of inferences may be drawn from this cluster of allegations. See Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 ("The plausibility standard is not akin to a probability requirement.") But a "plausible" inference, made in light of "experience and common sense," id. at 679, 129 S.Ct. 1937, is that the Defendant and Element are, for present purposes, functioning as one and the same entity, and that the Defendant, for purposes that include the call the Plaintiff received, is doing business under the name Element. This means the Defendant can be liable for Element's alleged phone call to the

Plaintiff --- and that, on a direct liability theory, the Amended Complaint passes muster.

* * *

**6** For the reasons set out above, the motion to dismiss is denied.

IT IS on this 26th day of June, 2023, so **ORDERED**.

**All Citations**

679 F.Supp.3d 42, 2023 WL 4188313

---

## Footnotes

1    "Amended Complaint," refers to the most recent complaint, at Docket Entry 20.

2    Susinno was decided in light of the jurisdictional principles laid down by the Supreme Court in Spokeo --- but before the Court issued its most recent landmark decision in this area, Transunion. But this, too, does not matter. Transunion did not alter Spokeo in ways that are relevant here.

3    As set forth in the Order issued today, the request for injunctive relief will not be stricken for two weeks, to afford the parties time to make any filings they deem relevant to that issue.

4    The Federal Communications Commission shares this view. See In re Joint Petition Filed by Dish Network LLC, 28 F.C.C.R. 6574, 6582 (2013) ("[A] seller may be liable for violations by its representatives under a broad range of agency principles."). Is the FCC's conclusion entitled to deference? This question has been answered in divergent ways. Compare, e.g., See Campbell-Ewald Co., 768 F.3d at 877 (deference) with Dish Network, LLC v. Fed. Commc'n Comm'n, 552 F.App'x 1 (D.C. Cir. 2014)) (none). But this debate does not matter here --- as set out below, even if a plaintiff may generally recover on a Section 227(b) vicarious liability theory, the Plaintiff in this case cannot do so on the allegations in the Amended Complaint.

5    A reminder that the Defendant's name is "Matrix Warranty Solutions, Inc."

**Case 1:25-cv-00927-KMN   Document 14-1   Filed 07/18/25   Page 72 of 233**

Eggleston v. Reward Zone USA LLC, Not Reported in Fed. Supp. (2022)

2022 WL 886094
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Tracy EGGLESTON et al
v.
REWARD ZONE USA LLC, et al.

Case No. 2:20-cv-01027-SVW-KS
|
Filed 01/28/2022

**Attorneys and Law Firms**

Meghan Elisabeth George, Thomas Edward Wheeler, Adrian Robert Bacon, Todd M. Friedman, Law Offices of Todd Friedman PC, Woodland Hills, CA, for Lucine Trim.

Jay T. Ramsey, Sheppard Mullin Richter and Hampton LLP, Los Angeles, CA, for Reward Zone USA LLC, et al.

**Proceedings:** ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [34]

STEPHEN V. WILSON, U.S. DISTRICT JUDGE

**\*1** Before the Court is Defendant's motion to dismiss [34]. For the reasons below, the motion is granted; Plaintiff's first and second causes of action are dismissed with prejudice, while Plaintiff's third and fourth causes of action are dismissed with leave to amend.

### I. Factual and Procedural Background

Plaintiff Lucine Trim [1] brought this putative class action against Defendant Reward Zone USA alleging four causes of action under the Telephone Consumer Protection Act ("TCPA"). Third Am. Compl. ¶¶ 65-80, ECF No. 33 ("TAC").

Plaintiff alleges that in 2020, she began receiving text messages from Defendant on her cell phone that contained "spam advertisements and/or promotional offers" that sought to "solicit [Defendant's] 'rewards' and other associated promotions." *Id.* ¶¶ 17-19. Plaintiff claims that Defendant used an "automatic telephone dialing system" and a "prerecorded or artificial voice" to contact her without her prior express consent and in doing so, violated the TCPA. *Id.* ¶¶ 20-42. Plaintiff also claims that her phone number was

on the National Do-Not-Call Registry and that Defendant's messages to her constituted telephone solicitations that further violated the TCPA. *Id.* ¶¶ 43-48. Plaintiff seeks to represent two classes: one consisting of persons who received similar unsolicited text messages from Defendant and the other consisting of such person who were registered on the Do-Not-Call Registry while receiving those messages. *Id.* ¶¶ 49-51.

After this case was originally filed in 2020, the complaint had been amended twice when this Court stayed the case pending a decision from the Supreme Court in a case that concerned which types of systems constituted an "automatic telephone dialing system" under the TCPA. ECF No. 26. The Supreme Court issued its opinion in that case, *Facebook, Inc. v. Duguid,* 141 S.Ct. 1163 (2021), on April 1, 2021.

The Court then issued an order to show cause, noting that some of Plaintiff's claims might be barred under the Supreme Court's *Duguid* decision. ECF No. 28. Plaintiff responded, asserting that she believed she could re-plead her claims in a manner consistent with *Duguid.* ECF No. 29. The parties stipulated to filing a Third Amended Complaint ("TAC"). ECF No. 31.

Defendant now brings the instant motion to dismiss the TAC, claiming that, contrary to Plaintiff's assertion, *Duguid* still bars two of her claims, and that the other two claims fail because its messages did not constitute "telephone solicitations." Mot. to Dismiss 9-11, ECF No. 34 ("MTD").

### II. Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal,* 556 U.S. at 678).

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 73 of 233

Eggleston v. Reward Zone USA LLC, Not Reported in Fed. Supp. (2022)

**\*2**  In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### III. Application

Plaintiff brings four claims in her TAC: two of which assert that Defendant's messages used an "automatic telephone dialing system" or "an artificial or prerecorded voice" in violation of 47 U.S.C. § 227(b), and two of which allege that Defendant's messages constituted "telephone solicitations" to persons on the Do-Not-Call Registry in violation of § 227(c). The Court concludes that the § 227(b) claims fail as a matter of law and must be dismissed with prejudice and that the § 227(c) claims lack sufficient factual detail and must be dismissed with leave to amend.

### A. Section 227(b) Claims

The TCPA, codified at 47 U.S.C. § 227, imposes restrictions on the use of automated telephone equipment. As relevant here, the TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a [ ] cellular telephone service [...]" *Id.* § 227(b)(1)(A)(iii).[2] Thus, there are two ways to violate this provision: using an "automatic telephone dialing system" (hereinafter 'autodialer') and using an "artificial or prerecorded voice." Plaintiff claims that Defendant's messages did both.

#### 1. Use of an Autodialer

The TCPA defines an "automatic telephone dialing system" – or autodialer – as "equipment which has the capacity to store or produce telephone numbers to be called, *using a random or sequential number generator*, and to dial such numbers." *Id.* § 227(a)(1) (emphasis added).

In *Duguid*, the Supreme Court clarified the impact of the phrase "using a random or sequential number generator" in this definition. There, the plaintiff sued Facebook, alleging that its security feature – which sent a text message to users when someone tried to log into their accounts from an unknown device – was an autodialer. *Duguid*, 141 S.Ct. at 1168. Users provided their phone number to opt-in to the feature, which would then store the number and send a text when triggered by an unknown login. *Id.*

In proceedings below, the Ninth Circuit had held that this feature constituted an autodialer because it had the capacity to (1) store phone numbers, and (2) dial them automatically, notwithstanding the fact that a number generator (whether random or sequential) was not used. *Id.* In essence, the Ninth Circuit's view was that the requirement of using a number generator only applied to producing the phone number – not to storing it. Thus, equipment which merely stored and automatically dialed phone numbers without any use of a number generator still met the definition of an autodialer.

**\*3**  The Supreme Court reversed, holding that the phrase "using a random or sequential number generator" modified *both* the words "store" and "produce." *Id.* at 1169-73. Accordingly, the Coml held that to constitute an autodialer, a "necessary feature" was "the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Id.* at 1173.

The parties dispute the impact of *Duguid* on the instant case. In Defendant's view, *Duguid* squarely forecloses the § 227(b) claims. *See* MTD 10. In Plaintiff's view, *Duguid* clarified the definition of an autodialer, but its definition still covers the equipment Defendant used here. *See* Opp. MTD 16. The Court does not fully agree with either position but ultimately agrees with the great weight of post-*Duguid* authority that holds that equipment like Defendant's is not an autodialer.

Plaintiff alleges that Defendant obtained her phone number, along with a list of others, from a sales lead vendor called Deal Zingo. TAC ¶ 20. Plaintiff claims that Defendant then used a number generator in two ways: (1) to index the phone numbers obtained from Deal Zingo into a database, and (2) to select an indexed phone number to dial. *Id.* ¶¶ 25-28, 32-33. According to Plaintiff, this entails using a number generator to "store" and to then "produce" a number to be dialed, which is thus still an autodialer under *Duguid*. *See* Opp. MTD 16.

In Defendant's view, the fatal flaw in Plaintiff's claim is that she does not allege that Defendant uses a number generator to generate the phone numbers *themselves*. MTD 10. Defendant argues that *Duguid* "unequivocally stated it 'granted certiorari to resolve a conflict among the Court of Appeals regarding whether an autodialer must have the capacity to ***generate*** random or sequential phone numbers,' " and answered that question in the affirmative. Reply ISO MTD 5, ECF No. 39 (citing 141 S.Ct. at 1168) (emphasis added by Defendant).

*Duguid* clearly establishes that, to constitute an autodialer, the equipment must use a number generator in *some* way. 141 S.Ct. at 1173. However, in this Court's view, it does not conclusively resolve *how* that number generator must be used – whether it must be used to generate the phone number itself, or whether it may also be used for indexing and selecting phone numbers. Put differently, *Duguid* establishes that an autodialer must "use a random or sequential number generator to either store or produce phone numbers," but it did not specify what it means to "store or produce" the phone numbers. *See id.*

While *Duguid* did not resolve this question, many district court decisions since *Duguid* have. Most notably, in this District, *Austria v. Alorica, Inc.*, 2021 WL 5968404, *6 (C.D. Cal. Dec. 16, 2021) considered this issue and concluded that, to be an autodialer, the equipment must use a number generator to generate the phone numbers themselves.

**\*4** *Austria* began by setting out the four possible interpretations of the statutory definition of an autodialer, using a categorization originally articulated by the Seventh Circuit's in *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 464–67 (7th Cir. 2020):

(1) to store telephone numbers using a random or sequential number generator, or to produce telephone numbers using a random or sequential number generator;

(2) any storing or producing of telephone numbers to be called, provided that those telephone numbers were previously generated using a random or sequential number generator;

(3) to store, generally, telephone numbers to be called, or to produce telephone numbers using a random or sequential number generator;

(4) any storing or producing of telephone numbers to be called, provided that those telephone numbers are later dialed using a random or sequential number generator.

2021 WL 5968404 at *2. As *Austria* noted, the Supreme Court's decision in *Duguid* clearly eliminated interpretation (3), however it did not further specify which of the remaining three was correct. *Id.* at *3.

*Austria* concluded that interpretation (2) was correct in light of the text and purpose of the TCPA, as well as caselaw from other districts. *Id.* at *4. *Austria* noted that interpretation (4) contrasted with the grammatical structure of the definition and that interpretation (1) could lead to absurd results in which a company could incur TCPA liability simply by storing a list of phone numbers in an excel spreadsheet (which arguably uses a sequential number-generating feature to identify cells of data). *Id.* at *5. By contrast, interpretation (2) is a better fit for the text, in which the "number generator" specified in the definition implicitly refers back to the term "telephone numbers," not some index number. *Tehrani v. Joie de Vivre Hospitality, Inc.*, 2021 WL 3886043, *4 (N.D. Cal. Aug. 31, 2021).

Further, *Austria* noted that interpretation (2) comports with one of the purposes of the TCPA as identified in *Duguid*: preventing the inconvenience and threats to public safety that could arise from the random generation of phone numbers. *Id.* at *4 (citing 141 S.Ct. at 1167). These concerns are not implicated by using a number generator simply to *select* which number to dial from a list of phone numbers derived from a legitimate source. *Id.*

And finally, *Austria* accords with numerous other courts to have considered the issue, particularly those in the Ninth Circuit, which have concluded that equipment is only an autodialer if it uses a number generator to generate the phone numbers themselves – not if the number generator is used merely to index the phone numbers or select phone numbers from that index. *Id.* at *6 (discussing *Hufnus v. DoNotPay, Inc.*, 2021 WL 2585488, *1 (N.D. Cal. June 24, 2021); *see also Tehrani*, 2021 WL 3886043 at *4-7 (collecting cases and concluding same); *Brickman v. Facebook, Inc.*, 2021 WL 4198512, *2-3 (N.D. Cal. Sept. 15, 2021) (same).

The Court agrees with the well-reasoned opinion in *Austria*, as well as these highly persuasive opinions from the Northern District. While *Duguid* did not directly address the issue, the text and purpose of the TCPA, as well as cases from

around the Ninth Circuit, illustrate that, to be an autodialer under § 227(a)(1), the equipment must use a number generator to generate the phone numbers *themselves*. Plaintiff's claim, which concerns a program that merely uses a number generator to generate and select index numbers, thus does not state a claim as a matter of law.

### 2. Use of Artificial or Prerecorded Voice

**\*5** Plaintiff also alleges that Defendant's text messages violated § 227(b) because they used an "artificial or prerecorded voice. The Court disagrees.

Neither the statute nor its implementing regulations provide a definition of what constitutes an "artificial or prerecorded voice." Plaintiff's argument relies on selective dictionary definitions for the words in this phrase, namely that "artificial" means "humanly contrived, often on a natural model;" "prerecorded" means "to set down in writing in advance of presentation or use;" and "voice" means "an instrument or medium of expression." Opp. MTD 17. Thus, in Plaintiff's view, Defendant's text messages constituted an "artificial or prerecorded voice."

Plaintiff's interpretation is simply beyond the bounds of common sense. For one, the primary definition of "voice" in Webster's dictionary is "sound produced by vertebrates by means of lungs, larynx, or syrinx; especially sound so produced by human beings." *Voice, Merriam-Webster's Online Dictionary*, accessed Jan. 27, 2022. "An instrument or medium of expression" is only the tertiary definition of "voice." *Id.* Webster's tertiary definition includes an example sentence: "the party became the *voice* of the workers," illustrating that this usage of "voice" has an almost metaphorical or symbolic connotation. *See id.*

Thus, Plaintiff's interpretation conflicts with a primary principle of statutory interpretation – that words in a statute should generally be given their most natural understanding unless circumstances suggest otherwise. *See Duguid*, 141 S.Ct. at 1169. The most natural, commonplace understanding of "voice" is the sound produced by one's vocal system. Indeed, it is not plausible that Congress intended the word "voice" in the TCPA to cany the tertiary, metaphorical meaning that Plaintiff suggests over this primary, natural meaning – especially since if Congress *had* intended to adopt Plaintiff's broad meaning, it could have easily chosen clearer,

more literal terms to do so, such as "medium of expression" or "communication."

Tellingly, as Defendant points out, Plaintiff fails to point to even a single case interpreting "voice" in the TCPA in this strained way. *See* Opp. MTD 17-21. And Plaintiff's sweeping interpretation would lead to absurd results. Consider an ordinary individual who wants to invite ten guests to a party; she sends a text message to the first invitee, and then, to save time, copies that text and pastes it into messages to the other nine. Because the messages to the other nine were "prerecorded" (i.e., set down in writing ahead of time) and, in Plaintiff's interpretation, the messages constituted a "voice," this would fall within the statute's prohibition. It nearly goes without saying that Congress did not intend this sort of result in passing the TCPA to crack down on mass commercial solicitations that used automated telephonic technology.

Nor is Plaintiff's argument saved by her generic reference to the purposes of the TCPA as a "remedial statute intended to protect consumers." As the Supreme Court noted in *Duguid*, the fact that Congress was broadly concerned about intrusive telemarketing does not mean that it intended to define every word in the TCPA in the broadest way possible. 141 S.Ct. at 1172. Indeed, as illustrated by the absurd result discussed above, Plaintiff's interpretation would "take a chainsaw" to the nuanced problems meant to be addressed by the TCPA "when Congress meant to use a scalpel." *Id.* at 1171.

**\*6** For all of these reasons, Plaintiff's interpretation of an "artificial or prerecorded voice" lacks support. Defendant's text messages were just that – *text* messages. Given the natural meaning of "voice" as the sound produced by one's vocal chords, Defendant's text messages do not constitute a "voice" under the TCPA.

Thus, since Defendant's text messages did not involve an "automatic telephone dialing system" or an "artificial or prerecorded voice," Plaintiff's claims under § 227(b) fail as a matter of law. Accordingly, Plaintiff's first and second causes of action are dismissed without leave to amend.

### B. Section 227(c) Claims

Plaintiff's third and fourth causes of action assert claims to relief under § 227(c). This subsection provided for the creation of the National Do-Not-Call Registry and for rulemaking by the FCC to regulate the bounds of

permissible telemarketing directed at those on the Registry. The implementing regulations prohibit the initiation of any "telephone solicitation" to consumers who have registered their phone numbers on the Do-Not-Call Registry. 47 C.F.R. § 64.1200(c)(2), (e). The TCPA grants a private right of action to any consumer who receives more than one call in violation of that regulation within a 12-month period. 47 U.S.C. § 227(c)(5).

Plaintiff alleges that she registered her cell phone number on the Do-Not-Call Registry and then received multiple impermissible texts from Defendant within a 12-month period. TAC ¶¶ 43-48. She seeks to represent a class of similarly situated individuals. *Id.* The key dispute between the parties at this stage is whether Defendant's messages constituted "telephone solicitations" in violation of the TCPA's implementing regulations. *See* MTD 11; Opp. MTD 21.

Title 47 U.S.C. § 227(a)(4) defines a "telephone solicitation" as:

> the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization.

Plaintiff alleges that the text messages from Defendant were "spam advertisement and/or promotional messages" that "sought to solicit [Defendant's] 'rewards' and other associated promotions." TAC ¶¶ 18-19. Defendant contends that these allegations are conclusory and do not provide sufficient factual detail and that Plaintiff's claim is thus subject to dismissal. MTD 27.

In the Court's view, this is something of a close call. Plaintiff argues that her allegations are not "simply parroting the statute." Opp. MTD 21. While that may be true, the allegations don't go much further – referring to the messages as "spam advertisements and/or promotional messages" that solicited Defendant's "rewards" and "associated promotions" does little more than allege that they were "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services" by other conclusory terms.

*Iqbal* makes clear that "a formulaic recitation of the elements of a cause of action will not do." 556 U.S. at 678. However, plaintiffs cannot so easily avoid *Iqbal's* requirements by rearranging a few clauses and breaking out the thesaurus. Even if not 'parroting' the statute, a claim that relies on mere "labels and conclusions" is still insufficient; the allegations must include enough factual detail to raise a *plausible* claim to relief. *Id.*; *see also Twombly*, 550 U.S. at 570.

**\*7** Here, Plaintiff simply relies on conclusory labels such as "advertisement" and "promotion" without any supporting factual detail. This falls short of Plaintiff's pleading burden to provide sufficient factual matter to state a plausible claim, particularly since rewards-related messages do not always constitute "telephone solicitations." [3]

Accordingly, Plaintiff's thud and fourth claims are dismissed with leave to amend so that Plaintiff may add allegations regarding the specific content of the messages she received, which, according to Plaintiff, will show that they were "telephone solicitations" within the TCPA's definition. *See* Opp. MTD 10.

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss [34] is GRANTED. Plaintiff's fust and second causes of action are dismissed with prejudice. Plaintiff's third and fourth causes of action are dismissed without prejudice and with leave to amend. Plaintiff shall file an amended complaint within 14 days of this order.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 886094

**Eggleston v. Reward Zone USA LLC, Not Reported in Fed. Supp. (2022)**

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 77 of 233

## Footnotes

1    As originally filed, Tracy Eggleston and Monica Abboud were also named as plaintiffs on behalf of the proposed class, however they were dropped from the Second Amended Complaint, ECF No. 19, thus Lucine Trim is the sole remaining plaintiff.

2    In *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), the Ninth Circuit held that a text message is a "call" within § 227(b)(1)(A), applying *Chevron* deference and deferring to the FCC's interpretation of the term. *Id.* at 953-54.

3    Defendant points to *Daniel v. Five Stars Loyalty, Inc.*, 2015 WL 7454260, *3-5 (N.D. Cal. Nov. 24, 2015), where the court held that a text message providing information about how to sign up for a free customer rewards program was not "telemarketing" (which is defined essentially identically to "telephone solicitation" in 47 C.F.R. § 64.1200(f)). On the other hand, in *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012), the Ninth Circuit held that calls urging a customer to redeem his Best Buy "Reward Zone" points was effectively encouraging him to make a purchase at Best Buy, thus constituting "telemarketing" and "telephone solicitation." *Id.* at 917-18.

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by Bottoms v. Block, Inc., W.D.Wash., May 2, 2024

2019 WL 4855378
Only the Westlaw citation is currently available.
United States District Court, E.D. Washington.

Roberta FRANK, an individual, and all
others similarly situated, Plaintiff,
v.
CANNABIS & GLASS, LLC, a Washington
limited liability company; NXNW Retail,
LLC, a Washington limited liability
company; Springbig, Inc., a Delaware
Corporation; and Tate Kapple and his
marital community, Defendants.

No. 2:19-cv-00250-SAB
|
Signed 10/01/2019

**Attorneys and Law Firms**

Brian Cameron, Cameron Sutherland PLLC, Kirk D. Miller, Kirk D. Miller PS, Spokane, WA, for Plaintiff.

John S. Devlin, III, Taylor Washburn, Lane Powell PC, Seattle, WA, for Defendants Cannabis & Glass LLC, NXNW Retail LLC, Tate Kapple.

David S. Almeida, Pro Hac Vice, Mark S. Eisen, Pro Hac Vice, Suzanne M. Alton de Eraso, Pro Hac Vice, Benesch Friedlander Coplan & Aronoff LLP, Chicago, IL, Medora A. Marisseau, Karr Tuttle & Campbell, Seattle, WA, for Defendant Springbig Inc.

**ORDER GRANTING DEFENDANT SPRINGBIG'S MOTION TO DISMISS; GRANTING LEAVE TO AMEND**

Stanley A. Bastian, United States District Judge

**\*1** Before the Court is Defendant's Springbig's Motion to

Dismiss Under Rule 12(b)(6), ECF No. 14. A hearing on the motion was held on September 26, 2019 in Spokane, Washington. Plaintiff was represented by Kirk D. Miller and Brian Cameron. Defendant Springbig was represented by Mark S. Eisen.

**Background Facts**

Plaintiff is bringing a putative class action against Defendants Cannabis & Glass, LLC, NXNW Retail, LLC, and Tate Kapple ("Retail Defendants") and Defendant Springbig, Inc., for their various respective roles in sending unauthorized text messages to her cell phone. More specifically, in October of 2018, Plaintiff visited the Retail Defendants' store. At the point of sale, she gave the sales associate her cell phone number so she could be part of their loyalty program. She was not told that by giving her number she would start receiving text messages from the Retail Defendants that notified her of sales and discounts. Rather, she was told by the employee that her phone number and first name were required before she could enroll in the loyalty program. She visited a second store and was told that she did not have to enroll in a separate rewards program because the two were linked. The next day, she began to receive daily text messages from the Retail Defendants that were sent using Defendant Springbig's SMS short codes.

Plaintiff is bringing claims under the federal Telephone Consumer Protection Act (TCPA), 47 U.C.S. 227, *et seq.* and the Washington Consumer Protection Act, RCW 19.86, *et seq.*, which is based on an alleged violation of the Washington Commercial Electronic Mail Act (CEMA), RCW 19.190, *et seq.*

**Motion Standard**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the Complaint. *Navarro v. Block*, 250 F.3d 729, 732 (2001). In order to survive a Rule 12(b)(6) Motion to Dismiss, the Complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twobly*, 555 U.S. 544, 570 (2007)). Thus, in deciding whether Plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.* This presumption,

however, does not apply to legal conclusions. *Id.*

The U.S. Supreme Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted lawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> *Id.* (quotations omitted).

Further, it instructed that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* The Complaint must do more than tender "naked assertions devoid of further enhancement." *Id.* (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### Telephone Consumer Protection Act ("TCPA")

**\*2** Under the Telephone Consumer Protection Act, ("TCPA"), it is unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice.... to any telephone number assigned to a ... cellular telephone service," *47 U.S.C. § 227(b)(1)(A)(iii)*. A text message is a "call" under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, *569 F.3d 946, 951-52 (9th Cir. 2009)*. Prior express consent must be in writing if the message is telemarketing but can be either oral or written if the call is informational. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 1830, 1838-44 (2012)*.

Congress has delegated to the Federal Communications Commission (FCC), the authority to make rules and regulations to implement the TCPA. *47 U.S.C. § 227(b)(2)*. Because of this, courts should defer to the FCC's interpretation of a term in the TCPA, so long as the term is not defined by the TCPA and the FCC's interpretation is reasonable. *Satterfield, 569 F.3d at 953*.

According to the FCC, generally, common carriers providing telecommunication services are not liable under

the TCPA. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 FCC Rcd. 8752, 8776 n.83 (1992)* (concluding that common carriers are not liable under the TCPA absent "a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmission"). A carrier is not entitled to this exemption if it "was so involved in placing the call as to be deemed to have initiated it." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7980 (2015)*. In its 2015 Ruling, the FCC clarified that "application providers that play a minimal role in sending text messages are not *per se* liable for unwanted robocalls." *Id.* at 7965. It noted the term "make" is not defined by the TCPA. *Id.* In determining whether an app or user is the maker of the call, the FCC explained that it looks to the "totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purpose of the TCPA." *Id.*

Some of the factors used to evaluate an entity's involvement in placing the call include:

> –the extent to which the provider/host controls the messaging
>
> –the extent to which the provider/host controls the timing or sending of the message;
>
> –the extent to which the provider/host controls the recipient list;
>
> –the extent to which the provider/host "willfully enables fraudulent spoofing of telephone numbers;"
>
> –the extent to which the provider/host assists customers in blocking Caller ID;
>
> –whether the provider/host knowingly allows its customers to use the platform in a way that violates the TCPA;
>
> –whether the service or platform is purely reactive in nature, sending messages as proscribed and arranged by the customer.

2015 TCPA Ruling, *30 FCC Rcd. at 7980-84*.

### Analysis

Plaintiff has not argued the Court should disregard the 2015 Ruling, or that the necessary factors identified by the FCC in that ruling before an application provider can be held liable should not apply to this case. Instead, Plaintiff argues that the allegations in her complaint are sufficient to get past a 12(b)(6) Motion. Her Amended Complaint, however, does not provide any allegations that Defendant Springbig took steps physically necessary to place the call or that it was so involved in the placing of the call as to be deemed to have initiated it. Merely alleging that Defendant Springbig "made" or "initiated" the call is not sufficient to allege a TCPA claim against Defendant Springbig. There are no allegations that Defendant Springbig exercised any discernible involvement in deciding whether, when, or to whom the text message is sent, or what the text message said. It appears Plaintiff is attempting to meet this requirement by including in the Amended Complaint the content of sample text messages found on their website. These allegations and examples are not sufficient to establish liability on the part of Defendant Springbig, given that there are no allegations stating the retail Defendants used Defendant Springbig's suggested content.

**\*3** Taken as true, Plaintiff's allegations in the Amended Complaint allege that Defendant Springbig had some role, albeit a minor one, in the causal chain that resulted in the sending of the text. According to the guidance provided by the FCC, however, this is not enough to survive a 12(b)(6) motion. Because Plaintiff's allegations do not allege that Springbig controlled the recipients, timing or content, the Amended Complaint does not allege that Defendant Springbig was the maker or initiator of the text message. Consequently, Plaintiff has failed to state a TCPA claim against Defendant Springbig.

### Washington's Commercial Electronic Mail Act (CEMA)

The Washington legislature originally enacted the Commercial Electronic Mail Act ("CEMA"), Wash. Rev. Code § 19.190.010 *et seq.*, to deal with unwanted commercial email messages. *Wright v Lyft, Inc.*, 189 Wash.2d 718, 724 (2017). In 2003, CEMA was amended to include prohibitions on initiating or assisting the transmission of electronic commercial text messages to cell phones. Wash. Rev. Code § 19.190.060; *Wright*, 189 Wash.2d at 724.

"Assisting the transmission" of a text message requires providing "substantial assistance or support which enables any person to formulate, compose, send, originate,

initiate, or transmit a commercial electronic mail message," with knowledge that the initiator is violating or intends to violate consumer protections, and expressly excludes electronic mail service providers who provide intermediary transmission services. Wash. Rev. Code § 19.190.100(1). "Initiate the transmission" refers to the action by the original sender of an electronic mail message or an electronic text message but excludes an intervening interactive computer service, unless the service knows, or actively avoids knowing, that the person initiating the transmission is violating consumer protections. *Id.* § (7).

### Analysis

In order for Defendant Springbig to be liable under CEMA, Plaintiff must allege that either it initiated the transmission or assisted in the transmission. Plaintiff has not alleged that Defendant Springbig was the original sender of the test message. Moreover, Plaintiff's conclusory allegations that Defendant Springbig violated CEMA are not sufficient, given that Plaintiff has also alleged that Defendant Springbig's role in the alleged violation was providing a programmable platform from which the Retail Defendants initiate the message. Similar to the TCPA, while Plaintiff has alleged facts that suggest that Defendant provided some form of assistance, *i.e.* the software application used to send the text messages, Plaintiff has not alleged facts to suggest that Defendant Springbig provided *substantial* assistance to the retail Defendants in the sending of the alleged text message, which is required by the statute. Additionally, Plaintiff has not alleged any facts that Defendant Springbig knew or consciously avoided knowing the Retail Defendants were violating or intending to violate the law. Because the Amended Complaint fails to allege adequate facts to show that Defendant Springbig initiated the transmission or assisted in the transmission of the text message as contemplated by the statute, Plaintiff has failed to state a CEMA/CPA claim upon which relief may be granted.[1]

### Leave to Amend

Plaintiff is granted leave to file a Second Amended Complaint if she believes she can remedy the pleading and legal deficiencies identified above.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Springbig's Motion to Dismiss Under Rule 12(b)(6), ECF No. 14, is **GRANTED**.

**\*4** 2. Within 2 (two) weeks from the date of this Order, Plaintiff shall file a Second Amended Complaint if she believes she can remedy the pleading to address the legal deficiencies identified above.

**IT IS SO ORDERED.** The Clerk of Court is directed to enter this Order and forward copies to counsel.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4855378

Footnotes

1       Plaintiff relies on the alleged violation of CEMA to allege a *per se* violation of the Washington Consumer Protection Act.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by   Schmitendorf v. Juicy's Vapor Lounge, Inc.,    D.Kan.,
March 6, 2024

2023 WL 2163775
Only the Westlaw citation is currently available.
For Online Publication Only
United States District Court, E.D. New York.

Adam GILLAM, individually and on behalf
of all others similarly situated, Plaintiff,

v.

RELIANCE FIRST CAPITAL, LLC, Defendant.

21-CV-4774 (JMA) (JMW)
|
Signed February 22, 2023

**Attorneys and Law Firms**

Avi Robert Kaufman, Pro Hac Vice, Kaufman P.A., Coral
Gables, FL, Stefan Louis Coleman, Coleman, PLLC, New
York, NY, for Plaintiff.

Anthony J. Staltari, Quinn Emanuel Urquhart & Sullivan,
LLP, New York, NY, John W. McGuinness, Manatt, Phelps
& Phillips, Washington, DC, Paul Heeringa, Pro Hac Vice,
Manatt, Phelps & Phillips, LLP, Chicago, IL, for Defendant.

**ORDER**

AZRACK, United States District Judge:

**\*1**  Before the Court is the motion filed by Defendant
Reliance First Capital, LLC ("RFC" or "Defendant") that
seeks dismissal for failure to state a claim pursuant to Rule
12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.
P."), or in the alternative, to strike certain allegations from the
Complaint pursuant to Fed. R. Civ. P. 12(f). (See ECF No.
19 (Defendant's Motion)). For the reasons set forth herein,
the Court GRANTS Defendant's motion, and dismisses the
Complaint with prejudice.

**I. BACKGROUND**

The following facts, set forth in the Complaint and
the attached exhibits, are presumed true for purposes of
Defendant's motion to dismiss.

Plaintiff Adam Gillam ("Gillam" or "Plaintiff") is an
individual who resides in Elwood, Indiana. (See Complaint
("Compl.") ECF No. 1, ¶ 1.) Defendant RFC is a
Delaware-registered limited liability company headquartered
in Melville, New York. (Id. ¶ 2.) RFC is a telemarketing
company that "sell[s] home loans and refinancing plans to
consumers." (Id. ¶¶ 16-17.)

Plaintiff alleges that, on or about February 22, 2017, he
registered his cell phone number [1] on the National Do Not
Call ("DNC") registry. [2] (Id. ¶ 23.) According to Gillam, his
cell phone number "is not associated with a business, has
never been held out by Plaintiff to the public, and is primarily
for personal use." (Id. ¶ 24.) Between January 20 and August
3, 2021, Plaintiff received, but did not answer, any of the
approximately seventeen (17) calls originating from the same
number − (877) 271-3082. (Id. ¶ 26.) On or about August
4, 2021, Gilliam received another call from the same phone
number, but this time answered the call and "spoke to an agent
who was soliciting refinancing products and identified their
company as [Defendant]." (Id. ¶ 28.) Gillam instructed the
agent to "stop calling him," which RFC did. (Id.)

Plaintiff initiated this action on August 24, 2021. (See
Compl.) The Complaint asserts a single claim on behalf of
Gillam and a putative class [3] against RFC, for its purported
violation of their rights under Section 227(c)(5) of the
Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §
227, et seq. (Id.) In the Complaint, Gillam seeks injunctive,
statutory, compensatory, and declaratory relief. (Id.)

**\*2**  For the following reasons, the Court finds that Plaintiff
has failed to sufficiently plead facts to support his TCPA cause
of action. The Court grants Defendant's motion to dismiss and
dismisses Plaintiff's Complaint with prejudice.

**II. DISCUSSION**

**A. Legal Standard**

To survive a motion to dismiss pursuant to Federal Rule of
Civil Procedure 12(b)(6), a plaintiff must allege sufficient
facts "to state a claim to relief that is plausible on its face."
Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 83 of 233

Gillam v. Reliance First Capital, LLC, Not Reported in Fed. Supp. (2023)

A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Dobroff v. Hempstead Union Free School Dist., No. 21-cv-1567, 2022 WL 4641128, at *4 (E.D.N.Y. Sept. 30, 2022) (citing Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006)). A court may also consider materials attached to the complaint, materials integral to the complaint, and materials incorporated into the complaint by reference. See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

**B. Plaintiff's Telephone Consumer Protection Act Claim**
Under the TCPA, it is generally unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—to any ... cellular telephone service [or] residential telephone line[.]" 47 U.S.C. § 227(b)(1)(A)-(B); Jennings v. Cont. Serv. Group, Inc., 239 F. Supp. 3d 662, 665 (W.D.N.Y. 2017) (quoting Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc., 847 F.3d 92, 94-95 (2d Cir. 2017)) ("The [TCPA] creates a private right of action, providing for statutory damages in the amount of $500 for each violation as well as injunctive relief against future violations.").

Where, as here, a plaintiff asserts a cause of action pursuant to Section 227(c)(5) of the TCPA ("Section 227(c)(5)"), that plaintiff must allege that the defendant: (1) initiated more than one "telephone solicitation call" within a 12-month period; (2) to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC registry; (3) without the prior consent of the recipient. See Sterling v. Securus Tech., Inc., No. 18-cv-1310, 2019 WL 3387043, at *5-6 (D. Conn. Jul. 26, 2019) (citing Jennings, 239 F. Supp. 3d at 665); 47 U.S.C. § 227(b)(1)(A)-(B), (c)(5); 47 C.F.R. § 64.1200(c)(2).

Defendant seeks dismissal of the Complaint based on Plaintiff's purported failure to sufficiently allege that he: (1) received more than one RFC-initiated "telephone solicitation" in a 12-month period; and (ii) is a "residential telephone subscriber" under Section 227(c)(5). The Court agrees and dismisses Plaintiff's Complaint with prejudice.

**1. Plaintiff Does Not Plausibly Allege That He Received More Than One "Telephone Solicitation" in a 12-Month Period**
 **\*3** Defendant initially contends that Gillam's TCPA claim should be dismissed with prejudice based on his failure to sufficiently allege that he received more than one RFC-initiated "telephone solicitation" in a 12-month period. See 47 C.F.R. § 64.1200(c). Under the TCPA's promulgating regulations, a "telephone solicitation" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." Id. § 64.1200(f)(15). A telephone solicitation does not, however, include "a[ny] call or message [t]o any person with that person's express invitation or permission, [or] [t]o any person with whom the caller has an established business relationship." Id. §§ 64.1200 (f)(5) & (f)(15). A review of the Complaint reveals Plaintiff's failure to adequately plead these facts. Indeed, the Complaint does not allege that: (1) Plaintiff had not previously invited or permitted Defendant to call him and that (2) he and RFC lacked an "established business relationship" prior to the receipt of any calls from RFC's agent(s). [4] See Compl. ¶ 17.

Plaintiff has similarly failed to allege sufficient facts regarding the content of the calls from which the Court could infer that the purpose of the calls was to encourage "the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200 (f)(15). Rather, Plaintiff merely concludes, without any factual support, that an RFC agent "solicit[ed] refinancing products" on the August 4, 2021 telephone call. Compl. ¶ 28. When faced with similarly deficient complaints, courts within and outside of this Circuit have dismissed the complaints without prejudice, and with leave to amend. See Sterling, 2019 WL 3387043, at *10 (dismissing TCPA claim without prejudice and with leave to file an amended complaint, assuming "Plaintiffs [could] cure the deficiencies of their TCPA claims."); Gulden v. Consol. World Travel Inc., No. 16-cv-01113, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (same); Jackson v. Caribbean Cruise Line, Inc., 88 F. Supp. 3d 129, 140 (E.D.N.Y. 2015) (same).

Additionally, while Plaintiff alleges receiving multiple calls, he only alleges answering one call and having one conversation with an RFC representative. See Compl. ¶¶ 25-28. Even if the Court were to assume arguendo

Gillam v. Reliance First Capital, LLC, Not Reported in Fed. Supp. (2023)

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 84 of 233

that Plaintiff had sufficiently pled receipt of a telephone solicitation on August 4, 2021, his failure to plausibly plead receipt of at least one additional telephone solicitation from an RFC agent within the requisite 12-month period is fatal to his Section 227(c)(5) cause of action. See 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(f)(15). Plaintiff's contention that the Court should consider the other calls received by Gillam as "telephone solicitations" because they were allegedly "close in time to and from the same telephone numbers" as the August 4, 2021 telephone solicitation, is unavailing. See ECF No. 21 (Pl. Opp.) at 2; Nicholas Greene v. Select Funding, LLC, No. 2:20-cv-7333, 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) (dismissing plaintiff's complaint because he "only alleged one telephone solicitation" because "more than one telephone solicitation is needed to trigger a violation" and the plaintiff failed to allege "the content of the other calls that would allow the Court to reasonably infer that these other calls were solicitations.") Even assuming the accuracy of the screenshot of the call log included in Plaintiff's Complaint, Gillam did not actually engage with any of RFC's purported representatives until the August 4, 2021 call. See Compl. ¶ 26. Specifically, the call log shows, with the exception of the August 4, 2021 call, that the other calls were "blocked," "missed call[s]" or "declined call[s]." As such, Plaintiff has not plausibly alleged that these prior calls were "telephone solicitation[s]" under Section 227(c)(5). See Greene, 2021 WL 4926495, at *5. As Plaintiff has failed to plausibly allege this element of his claim, the Court grants Defendant's motion to dismiss.

**2. Plaintiff Does Not Plausibly Allege That He is a "Residential Telephone Subscriber"**

**\*4** On its face, Section 227(c) applies only to "residential" telephone subscribers. See 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c). While multiple federal courts have found that a cellular telephone subscriber may satisfy Section 227(c)'s "residential telephone subscriber" element, a plaintiff must plausibly allege facts establishing that his cellular telephone is actually used for "residential purposes." See, e.g., Marks v. Unique Lifestyle Vacations, LLC, No. 20-cv-4915, 2021 WL 5495778, at *3 (E.D. Pa. Nov. 22, 2021) ("A plaintiff may provide specific facts to support his allegation that his cell phone is residential under the TCPA. However, it is not required that a plaintiff provide extensive detail to state a plausible claim as to the residential character of his cell phone."); Strange v. ABC Co., No. 19-cv-1361, 2021 WL 798870, at *4 (W.D. La. Mar. 1, 2021) (citing Cunningham

v. McDonald, No. 15-cv-215, 2018 WL 6737418, *2 (M.D. Tenn. Nov. 5, 2018) ("While a person utilizing a cellular phone may fall within the definition of a 'residential telephone subscriber' under the act, Plaintiff's pleadings allege only that calls were made to his cellular phone and he has pled no facts or offered evidence sufficient for the court to draw the conclusion that he has stated a cause of action under subsection (c)(5)")). A plaintiff's failure to do so renders his Section 227(c)(5) claim(s) vulnerable to dismissal. See Kemen v. Cincinnati Bell Tel. Co. LLC, No. 22-cv-152, 2023 WL 361136, at *5 (S.D. Ohio Jan. 23, 2023) (finding a TCPA claim inadequately pled without allegations showing residential use); Hicks v. Alarm.com, Inc., No. 20-cv-532, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (same).

Based on the above caselaw, the Court finds that Gillam has failed to sufficiently plead that he was, at the time of the calls in question, a "residential telephone subscriber." Here, Plaintiff's Complaint contains conclusory allegations that his cell phone number was not "associated with a business, has never been held out by Plaintiff to the public, and is primarily for personal use," he fails to specifically allege any facts from which the Court could infer that the phone number is used for residential purposes. (See Compl. ¶ 24). This deficiency is similar to the plaintiff's pleading miscues in Hicks, where that court dismissed the plaintiff's failure to articulate – despite his allegations that the subject cell phone number was "not associated with a business" and was "for personal use" – any factual support for the "residential telephone subscriber" element of his Section 227(c) claim. Hicks, 2020 WL 9261758, at *5. The Court similarly finds that Gillam has failed to sufficiently plead this additional element of his Section 227(c) claim. Accordingly, the Court grants Defendant's motion to dismiss. [5]

**CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff has failed to allege sufficient facts to support his one-count TCPA Complaint. The Court grants Defendant's motion to dismiss and dismisses Plaintiff's Complaint with prejudice.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2163775

Gillam v. Reliance First Capital, LLC, Not Reported in Fed. Supp. (2023)

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 85 of 233

## Footnotes

1       Plaintiff does not include his cell phone number in the Complaint or his opposition to Defendant's motion
        to dismiss.

2       The National DNC Registry allows consumers to register their telephone numbers and thereby indicate their
        desire not to receive telephone solicitations at those numbers. See Compl. ¶ 6; 47 C.F.R. § 64.1200(c)(2).

3       Gillam seeks to certify the "Do Not Call Registry Class" ("DNC Registry Class"), consisting of "[a]ll persons in
        the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent
        acting on behalf of the Defendant) called more than one time, (2) within any 12-month period, (3) where the
        person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4)
        for substantially the same reason Defendant called Plaintiff." Compl. ¶ 31.

4       Plaintiff's reliance on paragraphs 19-21 of the Complaint is misplaced. Specifically, those paragraphs contain
        general allegations about the class and do not specifically address Plaintiff.

5       Based on the Court's above findings and dismissal of Plaintiff's Complaint with prejudice, it is unnecessary
        to address Defendant's motion to strike certain portions of the Complaint, which the Court denies as moot.
        See Kemen, 2023 WL 361136, at *5; Smith v. Direct Bldg Supplies, LLC, No. 20-cv-3583, 2021 WL 4623275,
        at *4 (E.D. Pa. Oct. 7, 2021).

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 4854082
Only the Westlaw citation is currently available.
United States District Court, S.D. West Virginia,
Huntington Division.

Joann HURLEY, on behalf of herself and
all others similarly situated, Plaintiffs,
v.
Thomas MESSER, a W.Va. citizen, Sandra Pertee, a
W. Va. citizen, Wayne County Board of Education,
a West Virginia Political Subdivision, RingCentral,
Inc., a Delaware Corp., Callcentric, Inc., a New York
Corp., Fiverr, Inc., a Delaware Corp., and Voicent
Communications, Inc., a California Corp., Defendants.

CIVIL ACTION NO. 3:16-9949
|
Signed 10/04/2018

**Attorneys and Law Firms**

Anthony J. Majestro, Powell & Majestro, J. Ryan Stewart, Bucci Javins & Carter, Timothy C. Bailey, Bailey Javins & Carter, Charleston, WV, for Plaintiffs.

Bernard S. Vallejos, Farrell Farrell & Farrell, Michael J. Farrell, Farrell White & Legg, Huntington, WV, Edward P. Tiffey, Tiffey Law Practice, John R. McGhee, Jr., Kay Casto & Chaney, Michael W. Carey, David R. Pogue, Carey Scott Douglas & Kessler, Robert R. Rodecker, Jared M. Tully, Charleston, WV, Mary Ann L. Wymore, Greensfelder Hemker & Gale, St. Louis, MO, Michael P. Donahue, Marashlian & Donahue the Commlaw Group, Tysons, VA, Bonnie L. Jarrett, Jordan Romanoff, Kirkland & Ellis, New York, NY, Jeffrey A. Backman, Lauren Shoemake, Greenspoon Marder, Fort Lauderdale, FL, for Defendants.

Thomas Messer, Fort Gay, WV, pro se.

## MEMORANDUM OPINION AND ORDER

ROBERT C. CHAMBERS, UNITED STATES DISTRICT JUDGE

**\*1** Pending before the Court are Motions to Dismiss Plaintiff's Second Amended Complaint by Callcentric, Inc. (ECF NO. 73), RingCentral, Inc. (ECF No. 99), and Fiverr, Inc. ECF No. 89. In the Second Amended Complaint,

Plaintiff Joann Hurley alleges that these Defendants violated the Telephone Consumer Protection Act ("TCPA") and the related federal regulations with respect to certain alleged improper political calls. Defendants Callcentric, RingCentral, and Fiverr argue Plaintiff's claims must be dismissed for a variety of reasons.[1] For the following reasons, the Court **DENIES, in part,** and **GRANTS, in part,** the motions of Callcentric and RingCentral and **GRANTS** the motion of Fiverr.

## I. Background

As more fully set forth in this Court's early Memorandum Opinion and Order entered on June 6, 2017 (ECF No. 34), this case involves certain prerecorded political robocalls that were made against Plaintiff in her bid to be re-elected to the Wayne County Board of Education (BoE). In the original Complaint filed on October 21, 2016, Plaintiff, on behalf of herself and all others similarly situated, alleged Defendants Thomas Messer and the BoE violated the TCPA and the Federal Communications Commission's regulations implementing the TCPA ("FCC Rules") by initiating these telephone calls. In the Memorandum Opinion and Order, the Court dismissed the BoE due to Plaintiff's failure to state a claim under either a theory of direct liability or vicarious liability, but it permitted Plaintiff to file an Amended Complaint and proceed against Defendant Messer. A corrected version of the Amended Complaint was filed on June 12, 2017. ECF No. 37.

Thereafter, the parties proceeded with discovery. In light of that discovery, Plaintiff filed a motion on October 10, 2017, seeking Leave to File Second Amended Complaint to add Sandra Pertee, the Superintendent of the BoE during the relevant time, to readd the BoE, and to add Callcentric, RingCentral, Fiverr, and Voicent Communications, Inc. as Defendants. ECF No. 50. The Court granted the motion on November 17, 2017. ECF No. 58. Thereafter, Defendants Callcentric, RingCentral, Fiverr, and Voicent all filed separate motions to dismiss. Defendants Callcentric and Fiverr argue the claims against it should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Defendant RingCentral argues the claims against it should be dismissed under both Rule 12(b)(6) and Rule 12(b)(1).

## II. Legal Standard

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 87 of 233

Hurley v. Messer, Not Reported in Fed. Supp. (2018)

With respect to Rule 12(b)(6), the United States Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), that courts must look for "plausibility" in the complaint. 550 U.S. at 557. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotation marks and citations omitted).

**\*2** In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id.* at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2) ). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide

the framework of a complaint, they must be supported by factual allegations." *Id.*

With respect to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it can follow two tracks. Under the first track, a party asserts a "factual attack," claiming that the jurisdictional allegations made in the complaint are inaccurate. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Under the second track, a party asserts a "facial attack," claiming that the jurisdictional facts contained within the complaint, taken as true, fail to support a court's subject matter jurisdiction over the action. *See id.*; *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986). When considering a "facial attack," a court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns*, 585 F.3d at 192 (internal quotation marks and citation omitted). Defendant RingCentral has asserted a facial attack. Therefore, the Court will proceed under the Rule 12(b)(6) procedural framework. [2]

### III. Discussion

#### A. Direct Liability

In the Second Amended Complaint, Plaintiff alleges that all "Defendants initiated and made ... illegal prerecorded messages from an automatic dialing system utilizing the Wayne County Schools master call list, which is maintained by defendants WVBOE, Thomas Messer and Sandra Pertee[.]" *Second Am. Compl.*, at ¶ 21, in part. In addition, Plaintiff asserts "[D]efendants planned, created, caused, broadcasted and initiated thousands of illegal, misleading, defamatory and false prerecorded telephone messages regarding plaintiff Joann Hurley to be made to members of the prospective class." *Id.* at ¶ 33. Plaintiff further alleges that "Defendants' actions, conduct and omissions, in making and broadcasting the subject prerecorded messages/ calls from an automatic telephone dialing system to cellular and paging services, directly violated" 47 U.S.C. § 227(b) of the TCPA (Count I) and 47 C.F.R. 64.1200(a) of the FCC Rules (Count II). *Id.* at ¶¶ 45, 49.

Section 227(b) of the TCPA provides, in relevant part:

It shall be unlawful for any person ... --

(A) to make any call ... using any automatic telephone dialing system or an artificial or prerecorded voice—

\* \* \*

(iii) to any telephone number assigned to a paging service, cellular telephone service, ... or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]"

47 U.S.C. § 227(b)(3), in part. Similarly, 47 C.F.R. § 64.1200(a) provides, in part:

No person or entity may:

(1) ... initiate any telephone call ... using an automatic telephone dialing system or an artificial or prerecorded voice;

**\*3**

\* \* \*

(iii) To any telephone number assigned to a paging service, cellular telephone service, ... or any service for which the called party is charged for the call.

47 C.F.R. § 64.1200(a)(1)(iii). In *In re Dish Network, LLC*, 28 FCC Rcd. 6574 (2013), the FCC recognized that neither the statute nor the rules define the term "initiate." 28 FCC Rcd. at 6583, ¶ 26. In delineating the term, the FCC concluded "a person or entity 'initiate[s]' a telephone call" by taking "the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id.*

In a subsequent ruling, the FCC further stated initiating a telephone call can mean either the person or entity that "take[s] the steps necessary to physically place a telephone call" or that is "so involved in the placing of a specific telephone call as to be deemed to have initiated it." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act 1991*, 30 FCC Rcd. 7961, 7980, ¶ 30 (2015) ("Omnibus Order") (internal quotation marks and citations omitted). The FCC explained it will

look to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was

so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA.

*Id.* (citation omitted). With respect to the second prong for those that offer calling platform services for others to use, the FCC stated it also will consider as a factor whether they "knowingly allowed [their] client(s) to use that platform for unlawful purposes[.]" *Id.* (citation omitted).

In its motion, Defendant Fiverr argues it cannot be held liable under either the TCPA or the FCC Rules because the Second Amended Complaint is devoid of any factual allegations that it made or initiated the calls as contemplated therein. In the Second Amended Complaint, Plaintiff only mentions Defendant Fiverr by name in two paragraphs. Specifically, Plaintiff alleges that Defendant Fiverr "is a Delaware corporation with its principal place of business in New York, New York. At all times relevant hereto, defendant Fiverr, through its actors, did the voiceovers for the subject messages." *Second Am. Compl.*, at ¶ 7. Additionally, Plaintiff alleges:

> Defendant Messer also hired/retained voice actors from defendant Fiverr, who would read the prepared script for the subject prerecorded message. Defendant Fiverr directly participated in, had knowledge and the right to control the illegal conduct alleged herein, as the "voice" of the subject prerecorded message. As the "voice", defendant Fiverr would have direct knowledge that the subject prerecorded messages were in violation of the TCPA.

*Id.* at ¶ 30.

Upon review, the Court finds that, even if true, these allegations are insufficient to show Defendant Fiverr initiated the telephone calls as contemplated by the statute or the FCC Rules. First, there are simply no facts suggesting that Defendant Fiverr physically placed the telephone calls at issue. Second, the Court finds that the facts alleged also are

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 89 of 233

Hurley v. Messer, Not Reported in Fed. Supp. (2018)

insufficient to support an argument that Defendant Fiverr was so involved in placing the calls that it could be deemed to have initiated them. Plaintiff's factual allegations against Defendant Fiverr is that Defendant Messer "hired/retained voice actors from defendant Fiverr, who would read the prepared script for the prerecorded message." *Id.* By virtue of being the voice, Plaintiff claims Defendant Fiverr "directly participated in, had knowledge and the right to control the illegal conduct alleged[.]" *Id.*

**\*4** However, providing an actor to read the content of an illegal message is not the equivalent of being "so involved in *the placing* of a specific telephone call as to be deemed *to have initiated it.*" *Omnibus Order*, 30 FCC Rcd. at 7980, ¶ 30 (italics added). [3] Additionally, there are no allegations that Defendant Fiverr contributed to the content, timing, or manner the calls were made. Simply put, although Plaintiff has alleged facts suggesting Defendant Fiverr had some role in the recording of the content of the message, and creating the message was part of the chain of events before the call was made, there is nothing supporting a claim Defendant Fiverr was involved in initiating or placing the call. With respect to Defendant Fiverr, Plaintiff's allegation that "Defendants initiated and made these illegal prerecorded messages from an automated dialing system," *Second Am. Compl.*, at ¶ 21, and that "[D]efendants planned, created, broadcasted and initiated" the telephone calls, *Id.* at ¶ 33, are merely legal conclusions that are unsupported by any factual allegations. Therefore, under *Iqbal* and *Twombly*, the Court finds Counts I and II against Defendant Fiverr must be dismissed.

Perhaps realizing her claims against Defendant Fiverr stand on shaky grounds, Plaintiff asks this Court to allow her to conduct discovery on those claims if the Court finds her pleadings insufficient. However, allowing discovery where Plaintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*. Therefore, the Court denies Plaintiff's request.

Turning to the claims of direct liability in Counts I and II against Defendants Callcentric and RingCentral, the Court reaches a different result. Plaintiff alleges Callcentric and RingCentral are companies that provide Voice-Over-Internet-Protocol (VoIP) services. *Second Am. Compl.*, at ¶¶ 5, 6. Plaintiff claims she received the telephone calls at issue from the phone numbers 877-205-4603 and 631-542-1867, which she eventually learned were the numbers of RingCentral and Callcentric. *Id.* at ¶¶ 11, 14. Plaintiff also learned that similar prerecorded messages were being sent and autodialed

to the cellular phones and paging services of members of the community. *Id.* at ¶¶ 15, 20. In addition, Plaintiff alleges that:

> RingCentral and Callcentric were hired/retained, and both knowingly provided defendants Messer, Pertee and the WCBOE an avenue and means, through a direct telephone number, to broadcast the subject illegal prerecorded messages to members of the class. Defendants RingCentral and Callcentric have direct knowledge of and the right of control over the illegal conduct alleged herein, as the subject of the prerecorded messages and robocalls were broadcasted by defendants RingCentral and Callcentric themselves through their own assigned telephone numbers ..., and both defendants maintain records of the subject robocalls being initiated.

*Id.* at ¶ 28, in part.

As with Defendant Fiverr, Defendants RingCentral and Callcentric both argue that they cannot be directly liable under the TCPA or the FCC Rules because they did not "initiate" or make the subject calls. Instead, they assert they are nothing but "passive conduit[s]." *Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, ECF No. 100, at 2; *see Mem. in Supp. of Def. Callcentric's Mot. to Dismiss*, ECF No. 74, at 9. However, unlike Fiverr, Plaintiff claims Callcentric and RingCentral are the VoIP providers and, thus, offered a calling platform for others to use. Additionally, Plaintiff alleges these Defendants knew about the illegal conduct, had a right to control the conduct but, nevertheless, permitted the robocalls to be broadcast through their assigned telephone numbers. Although Callcentric and RingCentral insist they were just a conduit, the Court finds these allegations, at the very least, are sufficient to state a plausible claim that Callcentric and RingCentral offered a calling platform and "knowingly allowed its client(s) to use that platform for unlawful purposes[.]" *Omnibus Order*, 30 FCC Rcd. at 7980, ¶ 30 (citation omitted). Therefore, the Court denies Callcentric and RingCentral's argument.

## B. Standing

**\*5** In its motion to dismiss, Defendant RingCentral also argues that Plaintiff lacks standing to assert the above claims because Plaintiff "fails to establish that [she] suffered a concrete injury-in-fact that is fairly traceable to RingCentral's alleged conduct." *Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, at 15. The Court disagrees.

To bring any action in federal court, a plaintiff must have standing—that is, a plaintiff must have a sufficient personal stake in the outcome of the matter being litigated to make it justiciable under Article III of the Constitution. *See Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 153 (4th Cir. 2000); *see also* U.S. Const. art. III (restricting federal courts to adjudicating "cases" and "controversies"). In order to satisfy the minimum constitutional requirements for standing, an individual plaintiff must demonstrate:

> (1) [she] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) ).

Defendant RingCentral first argues that Plaintiff does not have standing because she has not and cannot allege the first requirement of standing: an injury in fact. *See Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, at 16. However, Supreme Court precedent clearly holds that, when a private cause of action is asserted under the TCPA, the constitutional requirement of an injury in fact is met. *See Mims v. Arrow Financial Services, LLC*, 565 U.S. 368, 370–72 (2012) (holding that a federal district court has jurisdiction to hear a private right of action brought pursuant to the TCPA).

Second, Defendant RingCentral argues that Plaintiff does not have standing because she cannot assert that her injury was *caused* by RingCentral. *Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, at 18. However, this argument is actually no different from the above argument that RingCentral did not "initiate" the calls under the TCPA. In fact, as support for the proposition that Plaintiff does not have standing, Defendant RingCentral implicitly admits it is a repetitive issue when it states "Plaintiff [arguably] concedes in her [Second Amended Complaint] that Defendant Messer ... *initiated* the calls; not RingCentral." *Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, at 19 (emphasis added). Thus, for the same reasons why the Court finds Plaintiff sufficiently pled that RingCentral "initiated" the telephone calls, the Court finds that Plaintiff's injury can be said to be caused by RingCentral, and standing is met.

## c. Residential Phone Numbers

Finally, Defendants RingCentral and Callcentric both argue that because the FCC "has created an exemption for non-commercial robocalls made to residential telephone" numbers, the Court should "dismiss Plaintiff's TCPA claims relating to residential telephones." *Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, at 19-20; *see Mem. in Supp. of Def. Callcentric's Mot. to Dismiss*, at 17-18. However, despite mention that some of the telephone calls were made to landlines, the Second Amended Complaint, as Plaintiff points out, does not actually assert any specific claim related to calls made to landlines. *See Mem. in Opp. to Def. RingCentral's Mot. to Dismiss*, ECF No. 105, at 19; *Mem. in Supp. of Def. Callcentric's Mot. to Dismiss*, at 18. Thus, Defendants' argument is moot.

## d. Vicarious Liability

**\*6** Turning to Count III, Plaintiff alleges liability under a theory of vicarious liability. *Second Am. Compl.*, at ¶¶ 50–54. Claims of vicarious liability exist under the TCPA and arise under federal common-law principles of agency. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016), *as revised* (Feb. 9, 2016) (citing *In re Dish Network* ). The FCC identified three types of relationships giving rise to vicarious liability under the TCPA: classic agency relationships, apparent authority, and ratification. *In re Dish Network*, 28 FCC Rcd. at 6586-87, ¶ 34.

"Agency requires more than mere authorization to assert a particular interest. 'An essential element of agency is the principal's right to control the agent's actions.' "

Case 1:25-cv-00927-KMN   Document 14-1   Filed 07/18/25   Page 91 of 233

Hurley v. Messer, Not Reported in Fed. Supp. (2018)

*Hollingsworth v. Perry*, 570 U.S. 693, 713 (2013) (quoting 1 Restatement (Third) of Agency § 1.01, Comment *f* (Am. Law Inst. 2005) ). "Vicarious liability, however, does not require proof of a formal agency relationship; instead, a plaintiff may use principles of apparent authority and ratification to establish such liability." *In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, No. 5:11-CV-90, 2014 WL 316476, at *6 (N.D. W. Va. Jan. 28, 2014) (citing *In re Dish Network*, 28 F.C.C. Rcd. at 6584).

Generally, to establish apparent authority, a plaintiff must show some representation or permission by the alleged principal to be represented by the alleged agent, and that there was some reliance by the plaintiff on the actions of the alleged agent. *See Hawkspere Shipping Co. v. Intamex, S.A.*, 330 F.3d 225, 235–36 (4th Cir. 2003); *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 166 (4th Cir. 1988) (applying North Carolina law). With regard to ratification, "a [principal] would be responsible under the TCPA for the unauthorized conduct of a[n alleged agent] that is otherwise authorized to market on the [alleged principal's] behalf if the [principal] knew (or reasonably should have known) that the [agent] was violating the TCPA on the [principal's] behalf and the [principal] failed to take effective steps within its power to force the [agent] to cease that conduct." *In re Dish Network*, 28 F.C.C. Rcd. at 6592, ¶ 46 (footnote omitted).

In relevant portions, Plaintiff identifies Callcentric, RingCentral, and Fiverr as having the "right to exercise, control over defendant Messer," and further allege that Defendant Messer was their "agent." *Second Am. Compl.*, at ¶¶ 51–52. Plaintiff also generally alleges Callcentric, RingCentral, and Fiverr held Defendant Messer out "as their agent" and "ratified" Defendant Messer's actions. *Id.* at ¶¶ 53–54. Beyond these conclusory statements, Plaintiff has not alleged a single fact, disputed or otherwise, identifying how Callcentric, RingCentral, and Fiverr exerted any control or authority over Defendant Messer. Nor has Plaintiff identified

any actions Defendant Messer performed at their behest. In fact, the Complaint cuts in the other direction, alleging Defendant Messer "hired/retained" Callcentric, RingCentral, and Fiverr. *Id.* at ¶¶ 28, 30.

Furthermore, the Second Amended Complaint does not indicate any facts where agency may have been established by apparent authority or ratification, as there are no statements indicating any reliance on Callcentric, RingCentral, and Fiverr based on the actions of Defendant Messer. Even construing liberally, the closest Plaintiff comes to alleging non-formal agency leads to a non-sensical hodgepodge of facts. Plaintiff claims, through some sort of temporal and logical loop, that Callcentric, RingCentral, and Fiverr had authorized Defendant Messer's behavior and failed to cease his conduct. Plaintiff implies that before Callcentric, RingCentral, and Fiverr ever met Defendant Messer, they directed him to hire them, thus making the man who "hired" them their agent. However, as stated, Plaintiff has made no more than conclusory allegations and failed to allege a claim for vicarious liability. Therefore, the Court dismisses Count III against Callcentric, RingCentral, and Fiverr.

### IV. Conclusion

**\*7** Accordingly, for the foregoing reasons, the Court **GRANTS** Defendant Fiverr's Motion to Dismiss, and **GRANTS, in part,** and **DENIES, in part,** Defendants Callcentric and RingCentral's Motions to Dismiss. Specifically, the Court **DISMISSES** Count III against Defendants Callcentric and RingCentral, but not Counts I and II.

### All Citations

Not Reported in Fed. Supp., 2018 WL 4854082

---

### Footnotes

1    Defendant Voicent also filed a Motion to Dismiss. The Court will address Defendant Voicent's motion in a separate Memorandum Opinion and Order.

**Hurley v. Messer, Not Reported in Fed. Supp. (2018)**

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 92 of 233

2    Although the parties have submitted documents outside the pleadings, the Court has not considered those documents in ruling on the present motions. Therefore, the Court will not convert these motions into ones for summary judgment.

3    Defendant Fiverr denies the actors are its affiliates or employees. *Mem. in Supp. of Def. Fiverr's Mot. to Dismiss*, ECF No. 74, at 11.

2023 WL 5311488
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

Samuel KATZ, Individually and on
Behalf of All Others Similarly Situated

v.

CALIBER HOME LOANS, INC.

CIVIL ACTION NO. 3:23-CV-0145-S
|
Signed August 17, 2023

**Attorneys and Law Firms**

Anthony I. Paronich, Pro Hac Vice, Paronich Law PC, Hingham, MA, Adam J. Schwartz, Adam J. Schwartz, Attorney at Law, Beverly Hills, CA, Chris R. Miltenberger, The Law Office of Chris R. Miltenberger PLLC, Southlake, TX, for Samuel Katz.

Thomas Nathaniel Abbott, Pro Hac Vice, Perkins Coie LLP, Portland, OR, David T. Biderman, Kristine Elizabeth Kruger, Simon M. Feng, Perkins Coie LLP, San Francisco, CA, Elizabeth Gardner, Perkins Coie LLP, Dallas, TX, Skyler Michelle Howton, Rogge Dunn Group PC, Dallas, TX, for Caliber Home Loans Inc.

**MEMORANDUM OPINION AND ORDER**

KAREN GREN SCHOLER, UNITED STATES DISTRICT JUDGE

**\*1** This Memorandum Opinion and Order addresses Defendant Caliber Home Loans, Inc.'s Motion to Dismiss ("Motion") [ECF No. 33]. The Court has reviewed the Motion, Plaintiff Samuel Katz's Opposition to the Motion to Dismiss ("Response") [ECF No. 35], Defendant's Reply Brief in Support of Its Motion to Dismiss [ECF No. 38], and the applicable law. For the following reasons, the Court **GRANTS** the Motion.

**I. BACKGROUND**

This putative class action arises out of Plaintiff's receipt of unwanted telemarketing calls. Compl. for Inj. and Damages ("Compl.") [ECF No. I] ¶ 3. Plaintiff's residential phone number is on the National Do Not Call Registry. *Id.* ¶ 17. Plaintiff uses his residential phone number "for personal, residential, and household reasons." *Id.* ¶ 18. In 2022, Plaintiff received multiple phone calls from the phone number (207) 203-7685. *Id.* ¶¶ 21-22. Plaintiff did not answer the first phone calls in May and June 2022; however, he did answer the last phone call from this phone number on July 5, 2022. *Id.* ¶¶ 23-24.

When Plaintiff answered the July 5, 2022, phone call, the caller allegedly offered a "VA, conventional or FHA loan," asked Plaintiff if he had a recent bankruptcy, and asked about Plaintiff's credit score and debt. *Id.* ¶¶ 26-28. The caller then allegedly offered services from the Caliber Home Loan Mortgage Refinance Team. *Id.* ¶ 29. Plaintiff states that he did not consent to receive phone calls from Defendant, did not do business with Defendant, and did not request these phone calls. *Id.* ¶¶ 19-20, 31.

Based on the foregoing, Plaintiff brings a single cause of action for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), and 47 C.F.R. § 64.1200(c). *Id.* ¶¶ 48-52. Plaintiff brings this claim on behalf of himself and a putative class of persons in the United States who, at any time in the period from four years before the Complaint's filing to trial, "received more than one telemarketing call from or on behalf of Defendant[ ] within a 12-month period" despite their phone numbers being on the Do Not Call Registry for at least 31 days. *Id.* ¶ 33. Defendant moved to dismiss, arguing that Plaintiff has failed to plausibly allege that Defendant is either directly or vicariously liable for the alleged TCPA violations and that Plaintiff has failed to plausibly allege that he received more than one telemarketing call.

**II. LEGAL STANDARD**

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff.

Katz v. Caliber Home Loans, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 5311488

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 94 of 233

*Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

**\*2** In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the Court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### III. ANALYSIS

To state a claim under 47 U.S.C. § 227(c)(5), Plaintiff must plausibly allege that he received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of regulations promulgated under Section 227(c). Plaintiff claims that the regulation Defendant violated is 47 C.F.R. § 64.1200(c). In relevant part, that regulation prohibits an entity from "initiat[ing] a telephone solicitation to ... a residential telephone subscriber who has registered [his] telephone number on that national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

### A. *Defendant's Liability*

"Theories of direct and vicarious liability are both cognizable under the TCPA." *Hunsinger v. Dynata LLC*, No. 3:22-CV-00136-G-BT, 2023 WL 2377481, at \*5 (N.D. Tex. Feb. 7, 2023) (citation omitted), *report and recommendation adopted by* 2023 WL 2386710 (N.D. Tex. Mar. 4, 2023). Based on Plaintiff's Response, Plaintiff is relying solely on a direct

liability theory; however, Plaintiff does not adequately allege that Defendant is directly liable for placing the challenged phone calls.

#### i. *Direct Liability*

For Defendant to be directly liable for the alleged TCPA violations, Defendant must have "initiated" the phone calls. *Id.* (citing *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C. Rcd. at 6582 ¶ 24 (2013)). Initiating a phone call, in turn, "means that the entity takes the steps necessary to physically place a telephone call." *Id.* (internal quotation marks and citation omitted). "[A] seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA[.]" *Cunningham v. Politi*, No. 4:18-CV-00362-ALM-CAN, 2019 WL 2519568, at \*6 (E.D. Tex. Apr. 30, 2019) (quoting *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1255 (11th Cir. 2015)), *report and recommendation adopted by* 2019 WL 2524736 (E.D. Tex. June 19, 2019).

Plaintiff argues that he has pleaded sufficient facts to support a direct liability theory because he alleged that Defendant made the phone calls at issue. *See* Resp. 3. Plaintiff points to the portions of the Complaint in which he alleges that Defendant "ma[de] telemarketing calls to numbers on the National Do Not Call Registry," and that "Plaintiff got calls from the Defendant in 2022, including on May 26, June 4, 20, 22, and July 5, 2022." *Id.* (emphases omitted) (citing Compl. ¶¶ 3, 21). But conclusory allegations such as these are insufficient. "[A]t the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone." *Aaronson v. CHW Grp., Inc.*, No. 1:18-CV-1533, 2019 WL 8953349, at \*2 (E.D. Va. Apr. 15, 2019) (citations omitted).

**\*3** The only fact Plaintiff alleges in support of his conclusion that Defendant initiated the challenged phone calls is that at some point during the July 5, 2022, phone call, the unidentified caller "offered the Defendant's services from the Caliber Home Loan Mortgage Refinance Team." Compl. ¶ 29. Plaintiff does not allege any facts regarding, for example, the identity of the caller or the nature of the phone number connected to the phone calls (such as whether it belonged to Defendant or was a fictitious phone number), and the facts Plaintiff does provide about the content of the phone call are vague. Without more, Plaintiff's solitary allegation is insufficient to plausibly allege that Defendant took the steps

Katz v. Caliber Home Loans, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 5311488

necessary to physically place the phone call. *See, e.g., Horton v. Nat'l Republican Senatorial Comm.*, No. 3:22-CV-1000-G-BK, 2023 WL 372066, at *5 (N.D. Tex. Jan. 23, 2023) ("Merely stating that he received a message which included a link to a website that solicits donations for [defendant] is not enough to nudge [plaintiff's] argument across the line from conceivable to plausible.").

The lack of factual allegations supporting the notion that Defendant initiated the call distinguishes this case from others in which courts have found a basis for direct liability, including the cases cited by Plaintiff in his Response. For example, in *Stemke v. Marc Jones Construction, LLC*, the plaintiff and her attorneys called several of the phone numbers from which the plaintiff received phone calls and confirmed they belonged to the defendant. No. 5:21-CV-274-30PRL, 2021 WL 4340424, at *1, *3 (M.D. Fla. Sept. 23, 2021). And in *Smith v. American-Amicable Life Insurance Co. of Texas*, a case in which the plaintiff relied on theories of both direct and vicarious liability, the court found a plausible basis for liability because: (1) the plaintiff was informed that he was speaking with the defendant; (2) the plaintiff was directed to the defendant's website; (3) the callback number provided to the plaintiff had an area code from the same state in which the defendant was based; and (4) the phone calls concerned insurance benefits, the defendant's area of business. No. 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 24, 2022). In both cases, the plaintiffs pleaded facts that suggested the defendant itself—as opposed to a third party—initiated the phone calls. *See also, e.g., Whittaker v. Freeway Ins. Servs. Am., LLC*, No. CV-22-8042-PCT-DGC, 2023 WL 167040, at *5 (D. Ariz. Jan. 12, 2023) (holding that plaintiff stated theory of direct liability where: (1) defendant allegedly operated call center, conducted telemarketing campaign, and repeatedly sent unsolicited telemarketing calls; (2) plaintiff called phone number to confirm defendant initiated unwanted calls; and (3) defendant's in-house counsel confirmed defendant placed calls); *Atkinson v. Choice Home Warranty*, No. 22-04464, 2023 WL 166168, at *3 (D.N.J. Jan. 11, 2023) (holding that plaintiff stated theory of direct liability where plaintiff "asked if *the company making the calls* had a website" and was provided with defendant's website). Unlike in these cases, Plaintiff's Complaint in this case lacks factual allegations sufficient to support a theory of direct liability.

Because Plaintiff has not adequately pleaded "that [D]efendant actually, physically initiated the telephone calls at issue," the Court concludes that Plaintiff has failed to state a

TCPA claim under a theory of direct liability. *Aaronson*, 2019 WL 8953349, at *2.

## ii. *Vicarious Liability*

Even if Plaintiff cannot plausibly allege direct liability, "[a] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship ... between the defendant and a third-party caller." *Hunsinger*, 2023 WL 2377481, at *5 (citation omitted). The Court expresses no opinion on whether Plaintiff's allegations could state a claim for vicarious liability, as Plaintiff does not appear to advance such a theory. Plaintiff only makes conclusory statements suggesting vicarious liability in his Complaint. *See, e.g.*, Compl. ¶ 49 ("The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute ... violations of the TCPA ...."). Further, Plaintiff does not address vicarious liability in his Response and instead reaffirms that he is pursuing a theory of direct liability. *See, e.g.*, Resp. 1 ("[Plaintiff] plainly alleges that [Defendant] is directly liable for the calls it made to him ...."); *id.* at 4 ("[T]he only party alleged to have any involvement in the calls [is] [Defendant] ...."). As such, the Court will not analyze whether Plaintiff stated a claim for TCPA violations under a vicarious liability theory at this time.

## B. *More Than One Phone Call*

**\*4** Defendant also moves to dismiss on the ground that Plaintiff has not alleged that he received more than one phone call in violation of regulations promulgated under Section 227(c). Plaintiff allegedly received at least five phone calls from the same phone number in less than two months beginning on May 26, 2022. *See* Compl. ¶ 21. On July 5, 2022, he answered a phone call from that phone number and was offered services from the Caliber Home Loan Mortgage Refinance Team. *Id.* ¶ 29. The Court recognizes that district courts have reached differing conclusions regarding whether a plaintiff states a claim when he only answers one of the allegedly violative phone calls. *Compare Moore v. Healthcare Sols., Inc.*, No. 21-CV-4919, 2022 WL 17487823, at *3 (N.D. Ill. Dec. 7, 2022) ("[T]he content and timing of an answered call can allow the court to draw the reasonable inference that unanswered calls were sales solicitations from the defendant." (cleaned up)), *with Greene v. Select Funding, LLC*, No. 2:20-CV-07333-RGK-KS, 2021 WL 4926495, at

Case 1:25-cv-00927-KMN   Document 14-1   Filed 07/18/25   Page 96 of 233
Katz v. Caliber Home Loans, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 5311488

*5 (C.D. Cal. Feb. 5, 2021) ("And while [plaintiff] alleges that he received eight calls from [d]efendant's number within a one-year period, he only answered one of these calls—on April 10, 2020. Thus, at best, Plaintiff has only alleged *one* telephone solicitation.").

In the absence of binding authority to the contrary, the Court agrees that "[i]t is a reasonable inference that the [five] phone calls from the same number" within the span of less than two months "were about the same thing." *Moore*, 2022 WL 17487823, at *3. Viewing the Complaint in the light most favorable to Plaintiff, as it must, the Court declines to dismiss Plaintiff's claim on this basis at this time. [1] However, the ultimate resolution of this question will rely on whether Plaintiff plausibly alleges that Defendant is liable for the challenged phone calls.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion to Dismiss [ECF No. 33]. Given the Federal Rules of Civil Procedure's liberal policy of allowing amendments to pleadings, the Court sua sponte **GRANTS** Plaintiff leave to amend his Complaint. Plaintiff must file an amended complaint by **August 30, 2023.** If an amended complaint is not filed within such time, Plaintiff's claims will be dismissed with prejudice.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 5311488

## Footnotes

1    Although it is unclear, it does not appear that Defendant challenges whether the call Plaintiff answered constituted a "solicitation" within the meaning of the TCPA. *See, e.g.*, Mot. 8-9 ("Indeed, [Plaintiff] admits that he answered only one call.... This fact alone makes it impossible for [Plaintiff] to establish that at least two calls were 'telephone solicitations.' "). Therefore, the Court will not analyze that issue.

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 16950481
Only the Westlaw citation is currently available.
United States District Court, N.D. Ohio.

Sam KATZ, Plaintiff,

v.

CROSSCOUNTRY MORTGAGE, LLC, Defendant.

Case No. 1:22-CV-00925
|
Signed November 15, 2022

**Attorneys and Law Firms**

Bryan A. Reo, Reo Law, Mentor, OH, for Plaintiff.

Austin M. Richards, Kevin W. Kita, Cleveland, OH, for
Defendant.

### MEMORANDUM OPINION AND ORDER

PAMELA A. BARKER, UNITED STATES DISTRICT
JUDGE

**\*1** This matter comes before the Court upon the Motion
to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) of
Defendant CrossCountry Mortgage, LLC ("Defendant" or
"CrossCountry") filed on September 12, 2022 ("Defendant's
Motion"). (Doc. No. 33.) Plaintiff Samuel Katz ("Plaintiff")
filed a Brief in Opposition on October 11, 2022 ("Plaintiff's
Opposition") (Doc. No. 35) to which Defendant replied on
October 25, 2022 ("Defendant's Reply") (Doc. No. 36).

For the following reasons, Defendant's Motion is GRANTED.

## I. Background

### A. Factual Allegations
Plaintiff's First Amended Complaint ("FAC") sets forth the
following allegations. Plaintiff is a natural person domiciled
in Arkansas. (Doc. No. 32, ¶ 2.) Defendant is a business
headquartered in Ohio. (*Id.* at ¶ 3.) At all times relevant to the
FAC, Plaintiff maintained a telephone within the meaning of
the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.
§ 227(b)(1)(A)(iii), and Plaintiff is charged when he receives a
call to that telephone. (*Id.* at ¶ 7.) Plaintiff listed his telephone
number on the National Do Not Call Registry in November
2020. (*Id.* at ¶ 8.)

Using an Automated Telephone Dialing System ("ATDS"),
"Defendant collectively made multiple calls per week,
beginning in 2019 and continuing into 2022, to Plaintiff's
telephone." (*Id.* at ¶ 9.) Some of the calls involved "artificial
pre-recorded voices while other calls routed to possible
human operators after a perceptible delay." (*Id.* at ¶¶ 10,
11; *see also id.* at ¶ 20.) "Many calls were directly made
by Defendant and Defendant identified itself or the call
resulted in a direct routing to Defendant," while "[o]ther calls
made by Defendant's agents resulted in 'live transfers' to
Defendant." (*Id.* at ¶¶ 18, 19.) "Plaintiff received some calls
that resulted in the receipt of voicemails left by Defendant.
When Plaintiff returned the call and called the number(s) in
question, he directly reached Defendant[.]" (*Id.* at ¶ 21.) On
July 24, 2019, "Plaintiff told Defendant, 'place me on your
do not call list.' " (*Id.* at ¶ 16.)

These calls were "intrusive, harassing, obnoxious, annoying,
and unwanted." (*Id.* at ¶ 13.) Plaintiff did not have a
relationship with Defendant and never provided Defendant
with express or implied consent for Defendant to call
Plaintiff's telephone, nor did Plaintiff ever provide Defendant
or Defendant's affiliates with his telephone number. (*Id.* at ¶¶
14, 22.) According to Plaintiff, as of February 25, 2022, "there
is no record with the State of Ohio Office of the Attorney
General that the Defendant is licensed and registered to
engage in telephone solicitation within the state of Ohio." (*Id.*
at ¶ 23.)

### B. Procedural History
On June 2, 2022, Plaintiff filed a complaint in this Court
against CrossCountry, as well as against Defendants Federal
Savings Bank, Caliber Home Loans, Inc., LoanDepot.com,
LLC, Allied First Bank, and Perry Johnson Mortgage
Company. (Doc. No. 1.) On June 27, 2022, CrossCountry
filed a motion to dismiss, or in the alternative, motion to sever
Plaintiff's claims, and on June 27, 2022 and July 15, 2022,
respectively, Defendants Perry Johnson Mortgage Company,
Allied First Bank, and Federal Savings Bank filed motions
to dismiss. (Doc. Nos. 3, 4, 7, 26, respectively.) On July 22,
2022, Plaintiff filed a Notice of Dismissal pursuant to Fed. R. Civ.
P. 41(a)(1) as to Defendants Federal Savings Bank, Caliber
Home Loans, Inc., LoanDepot.com, LLC, Allied First Bank,
and Perry Johnson Mortgage Company. (Doc. No. 28.) On
July 25, 2022, the Court entered a Marginal Order dismissing
these Defendants from the case, leaving CrossCountry as the
sole remaining Defendant. (Doc. No. 29.) On August 17,
2022, Plaintiff filed a Motion for Leave to File an Amended

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 98 of 233

Katz v. CrossCountry Mortgage, LLC, Not Reported in Fed. Supp. (2022)

Complaint ("Plaintiff's Motion"). (Doc. No. 30.) In Plaintiff's Motion, he asserted that the amended complaint "would likely cure any of the alleged pleading deficiencies that served as the basis of Defendant's motion to dismiss." (*Id.* at 2.) On August 23, 2022, CrossCountry filed a Response to Plaintiff's Motion indicating that it did not oppose it. (Doc. No. 31.) On August 25, 2022, the Court granted Plaintiff's Motion. (Aug. 25, 2022 non-doc. Order.)

**\*2** On August 27, 2022, Plaintiff filed his First Amended Complaint against Defendant alleging four causes of action: (1) statutory violations of the TCPA, 47 U.S.C. § 227(b)(3) (Count I); (2) statutory violations of the TCPA, 47 U.S.C. § 227(c)(5) (Count II); (3) statutory violations of the Ohio Consumer Sales Practices Act ("CSPA"), Ohio Rev. C. §§ 1345.01, *et seq.* (Count III); and (4) statutory violations of the Ohio Telephone Solicitation Sales Act ("TSSA"), Ohio Rev. C. §§ 4719.01, *et seq.* (Count IV). Defendant filed the instant Motion to Dismiss on September 12, 2022 (Doc. No. 33), which Plaintiff opposed on October 11, 2022 (Doc. No. 35), and Defendant replied on October 25, 2022 (Doc. No. 36). Defendant's Motion is ripe for decision.

## II. Standard of Review

Defendant moves to dismiss Plaintiff's FAC for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(6), the Court accepts Plaintiff's factual allegations as true and construes the FAC in the light most favorable to Plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.' " *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the FAC raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.' " *Bassett v. Nat. Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for

relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." ' " *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## III. Analysis

Defendant argues that Plaintiff's FAC "employs a 'shotgun-style' pleading that merely parrots the language of the TCPA," and thus, fails to state a claim for which relief can be granted. (Doc. No. 33 at 2.) Defendant argues that "Plaintiff makes no factual allegations regarding, *inter alia*: (1) the nature of any call, i.e. the goods or services being solicited; (2) the identity of the 'lead generator' or his/her relationship to [Defendant]; [ ] (3) any benefits [Defendant] received from Plaintiff as a result of any alleged call"; or (4) when Defendant "supposedly called his telephone number, or even how many times they called in any given year." (*Id.* at 3.)

**\*3** Plaintiff argues that he "has stated sufficient facts to demonstrate a plausible entitle[ment] to relief, or could do so via amendment if the First Amended Complaint has not done so." (Doc. No. 35 at 2.) Plaintiff argues that Defendant's Motion is, in fact, a motion for summary judgment seeking to resolve factual disputes and adjudicate claims, when, at this stage, Plaintiff's claims are properly pled to survive dismissal. (*Id.* at 4.)

### A. Count I—Statutory Violations of the TCPA, 47 U.S.C. § 227(b)(3)

As to Count I, Defendant asserts that the FAC fails to meet the pleading standard as "[t]here are no factual allegations that would support a conclusion that any call from [Defendant] employed an 'artificial or prerecorded voice'– i.e., an inability to interrupt a message or to talk with a human being," as required. (Doc. No. 33 at 5-6.) According to Defendant,

Case 1:25-cv-00927-KMN   Document 14-1   Filed 07/18/25   Page 99 of 233

Katz v. CrossCountry Mortgage, LLC, Not Reported in Fed. Supp. (2022)

Plaintiff's FAC "concedes whatever calls are alleged to be at issue were made by human beings, alleging he spoke with a 'lead generator' who then transferred him and his information to a 'possible human operator.' " (*Id.* at 6 (quoting Doc. No. 32, ¶¶ 11, 19).) Finally, as to Count I, Defendant asserts that Plaintiff's only allegation supporting his conclusion that Defendant employed an automatic telephone dialing system ("ATDS") was based on Plaintiff experiencing a "perceptible delay" on the call, and Plaintiff has failed to provide an explanation as to how the alleged delay substantiated a conclusion that the call was made using an ATDS. (*Id.* at 6-7.)

Plaintiff maintains that he has sufficiently met the pleading requirements to state a claim under the TCPA. (Doc. No. 35 at 3-4.) Plaintiff asserts that he "is not required to give an account of each syllable, supported with an attached expert report attesting to the artificial nature and quality of the voice," to adequately plead that Defendant used an ATDS. (*Id.* at 4.) Rather, Plaintiff argues that his allegations "that on some calls there was a perceptible delay from his answering the call and saying 'hello' and the call engaging or the Defendant (or its agents) otherwise coming on the call," and that "at least some calls consisted of artificial pre-recorded voices," are "sufficient for pleading purposes at this stage." (*Id.* at 3-4.)

The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). "The TCPA defines an ATDS as equipment that has the capacity to store telephone numbers and dial such numbers." *Reo v. Caribbean Cruise Line, Inc.*, 2016 WL 1109042, at *3 (N.D. Ohio Mar. 18, 2016) (citing 47 U.S.C. § 227(a)(1)). Thus, to state a claim under the TCPA, Plaintiff must allege that Defendant (1) made a call, (2) using an ATDS or artificial or prerecorded voice, (3) to a telephone number assigned to a cellular telephone service, (4) absent the prior express consent of the Plaintiff. *See id.* at *4; *see also Seri v. CrossCountry Mortg.*, 2016 WL 5405257, at *2 (N.D. Ohio Sept. 28, 2016).

Plaintiff is also required to make "some additional factual allegations, no matter how minor, in addition to parroting the language of the statute," to sufficiently allege that Defendant utilized a prerecorded or artificial voice or used an ATDS system. *Caribbean Cruise Line*, 2016 WL 1109042, at *4; *see also Johansen v. Vivant, Inc.*, 2012 WL 6590551, at

*3 (N.D. Ill. Dec. 18, 2012) ("It is not unreasonable [ ] to require a plaintiff to describe the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were pre-recorded or delivered via the ATDS."). As the court in *Johansen* explained:

**\*4** [A] plaintiff must supply enough additional, independent facts "to raise a reasonable expectation that discovery will reveal evidence" of the alleged misconduct. *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. For example, a TCPA plaintiff could describe the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the "person" calling him, the generic content of the message he received, or anything else about the circumstances of a call or message contributing to his belief it was pre-recorded or delivered via an ATDS.

...

This approach does not burden plaintiffs unduly by requiring pleading of technical details impossible to uncover without discovery, rather it necessitates that they plead only facts easily available to them on the basis of personal knowledge and experience. At the same time, it gives fair notice to defendants by "distinguish[ing] the particular case that is before the court from every other hypothetically possible case" under TCPA, *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir.2010), and avoids the potential abuse of the discovery process to pressure defendants into settling weak cases. *See Twombly*, 550 U.S. at 559, 127 S.Ct. at 1967; *Swanson*, 614 F.3d at 405. This approach balances the requirements of liberal pleading for plaintiffs and fair notice to defendants underpinning our legal system.

*Johansen*, 2012 WL 6590551, at *3.

In support of its argument that Plaintiff's FAC does not include sufficient allegations that Defendant used an ATDS or artificial or prerecorded voice in its alleged calls to Plaintiff, Defendant cites to *Reo*, where another court in this district granted the defendant's motion to dismiss when the complaint "contain[ed] very few factual allegations and merely parrot[ed] the statutory elements of Plaintiffs' TCPA claims, thus failing to meet the pleading standard set forth in *Twombly*." *Reo*, 2016 WL 1109042, at *3-4. In describing the complaint at issue therein, the court noted:

Case 1:25-cv-00927-KMN Document 14-1 Filed 07/18/25 Page 100 of 233

Katz v. CrossCountry Mortgage, LLC, Not Reported in Fed. Supp. (2022)

> There is no description of the content of the calls (or texts) and no information regarding the frequency of the calls or why they believed that an ATDS was used or why they believed that an "artificial or prerecorded voice" was used such as a period of "dead air" after answering a call or the inability to interrupt a message or to talk to a human being.

*Id.* at *4. Plaintiff does not attempt to distinguish *Reo* from this matter, and he does not cite any case law in support of his argument.

In his FAC, Plaintiff alleges that Defendant used an ATDS as evidenced by "the perceptible delay and manner in which the Plaintiff's information is transferred between the lead generator and the party the Plaintiff is transferred to," and by "some of the calls having delivered artificial pre-recorded voice messages." (Doc. No. 32, ¶ 11.) Plaintiff provides no other factual allegations to support his claim that Defendant used an ATDS or artificial or prerecorded voice.

Besides the allegation of a "perceptible delay," Plaintiff merely parrots the language of the statute. Like the complaint in *Reo*, Plaintiff's FAC does not include a description of the content of the calls or information regarding the frequency of the calls. *See Reo*, 2016 WL 1109042, at *4. As to Plaintiff's bare assertion that a "perceptible delay" occurred between a "lead generator" and "the party the Plaintiff is transferred to" (Doc. No. 32, ¶ 11), Plaintiff offers no details regarding the alleged delay Plaintiff experienced, including what occurred before or after the delay, nor does Plaintiff offer any description of the "manner" by which the calls were transferred. The allegation that an ATDS was used based on "the perceptible delay and manner in which Plaintiff's information is transferred," is insufficient to state a claim.

 **\*5** Further, and importantly, Plaintiff does not offer any factual allegations as to the identities of the lead generator or transferee. Plaintiff does not allege that Defendant, or Defendant's agent, was the "lead generator," nor does Plaintiff identify "Defendant's agents." (*See id.* at ¶¶ 11, 19.) District courts within the Sixth Circuit have dismissed TCPA claims when the plaintiff fails to allege sufficient facts demonstrating

liability for the actions of third parties. *See Reo*, 2016 WL 1109042, at *5 (dismissing plaintiffs' TCPA claims for failure to allege facts establishing vicarious liability of defendant for actions of third party); *see also Cunningham v. Kondaur Cap.*, 2014 WL 8335868, at *6-8 (M.D. Tenn. Nov. 19, 2014) (granting defendant's motion to dismiss because plaintiff failed to allege facts sufficient to hold defendant directly or vicariously liable for the alleged TCPA violations). Here, Plaintiff has failed to allege direct or vicarious liability inasmuch as he has failed to identify the source of these calls.

Without more, these allegations fail to plausibly state a claim that Defendant used an ATDS or artificial or prerecorded voice as required to state a claim under the TCPA.

## B. Count II—Statutory Violations of the TCPA, 47 U.S.C. § 227(c)(5)

As to Count II, Defendant argues that Section 227(c)(5) only provides a private right of action for a person who has received more than one telephone call in violation of the TCPA within a 12-month period. According to Defendant, Plaintiff fails to state a claim for which relief may be granted because Plaintiff has failed to allege when Defendant called him, whether any calls were made after Defendant registered his number on the National Do-Not-Call Registry in November 2020, and any facts to substantiate an allegation that Defendant made more than one call to Plaintiff within any 12-month period. (Doc. No. 33 at 8.)

In response to what he characterizes as Defendant's argument that his claims are threadbare recitals of the relevant statutes, Plaintiff asserts that his FAC includes allegations that (1) his number was put on the National Do-Not-Call Registry in November 2020; (2) Defendant called him throughout 2019 and into 2022; and (3) he made a specific request on July 24, 2019 to be placed on Defendant's internal Do-Not-Call list. (Doc. No. 35 at 5-6.) What Plaintiff fails to do is point this Court to any part of his FAC that includes an allegation that Defendant made more than one call to him within any twelve-month period of time, much less within the twelve-month period of time following his request to be put on the National Do-Not-Call Registry in November 2020.

47 U.S.C. § 227(c)(5) reads:

> A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 101 of 233

Katz v. CrossCountry Mortgage, LLC, Not Reported in Fed. Supp. (2022)

of court of a State bring in an appropriate court of that State
—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

47 U.S.C. § 227(c)(5).

The regulations restricting telephone solicitation are found in 47 C.F.R. § 64.1200(c)(2), which provides in relevant part:

(c) No person or entity shall initiate any telephone solicitation to:

...

(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government ....

47 C.F.R. § 64.1200(c)(2). The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15).

**\*6** Not only does Plaintiff's FAC fail to allege that Defendant made more than one call to him within a 12-month time frame after Plaintiff joined the National Do-No-Call Registry in November 2020, as required by 47 U.S.C. § 227(c)(5), but it also fails to allege or identify how many times he was called by Defendant in any given year. Plaintiff's sole allegation is that Defendant "*collectively* made multiple calls per week, beginning in 2019 and continuing into 2022" to Plaintiff's phone. (Doc. No. 32, ¶ 9 (emphasis added.) By using the term "collectively," Plaintiff is grouping the calls from 2019 through 2022 together, and by doing so, fails to specify the number of calls that allegedly took place each year. Because section 227(c)(5) only provides a private right of action for a person who has received more than one telephone call in violation of the TCPA within a 12-month period, Plaintiff's FAC does not sufficiently allege a violation of the TCPA.

Further, Plaintiff fails to allege that such phone calls were, in fact, telephone solicitations. Plaintiff's FAC is devoid of any allegations that Defendant initiated these calls "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person," as required by 47 U.S.C. § 227(a)(4). As Defendant points out, Plaintiff's FAC contains no factual allegations as to the "nature of any call, i.e. the goods or services being solicited," nor any factual allegations as to "any benefits [Defendant] received from Plaintiff as a result of any alleged call." (Doc. No. 33 at 3.) Without factual allegations as to the content of these calls, Plaintiff's FAC fails to properly allege that such calls were solicitations under the TCPA.

### C. Counts III and IV—State Law Claims

Counts III and IV of Plaintiff's FAC allege violations of Ohio state law—specifically statutory violations of Ohio's Consumers Sales Practices Act and statutory violations of Ohio's Telephone Solicitation Sales Act. (Doc. No. 32 at 7-10.) Defendant argues that it is exempt from liability under the CSPA and TSSA, and even if it was not, Plaintiff has failed to allege facts that support a violation of either statute. (Doc. No. 33 at 9-14.) Plaintiff argues that Defendant is not exempt from either statute, and has nevertheless adequately alleged facts to support claims of violations of both statutes. (Doc. No. 35 at 8-18.)

The Court need not address either argument. Pursuant to 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over state law claims once they have dismissed all claims over which they had original jurisdiction. "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.' " *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). However, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). Having disposed of Plaintiff's federal claims and considering the relevant factors, the Court declines to exercise supplemental jurisdiction over any state law claims (Counts III and IV) and dismisses them. *See Shaver v. Brimfield Twp.*, 628 F. App'x 378, 384 (6th Cir. 2015) ("[B]ecause the district court properly dismissed the Estate's federal claims, it did not

abuse its discretion when it declined to exercise jurisdiction over the Estate's state law claims.").

### D. Leave to Amend and Dismissal with Prejudice

As a final matter, Plaintiff argues that Defendant's Motion should be denied, but "[i]n the alternative[,] Plaintiff would respectfully request leave to file an amended complaint to resolve any alleged pleading deficiencies." (Doc. No. 35 at 19.) Plaintiff further argues that "Defendant is not entitled to the 'dismissal with prejudice' that they seek, because they have not even bothered to allege they are exempt, as a matter of law, from the TCPA, while their reliance on irrelevant case precedent to claim CSPA and TSSA exemptions is simply misplaced." (*Id.*) In its Reply, Defendant argues that when "the plaintiff does not articulate how granting further leave to amend will cure the [pleading] deficienc[ies], dismissal with prejudice is the standard relief." (Doc. No. 36 at 1.)

**\*7**  Plaintiff's request for leave to amend is denied since Plaintiff has failed to follow the proper procedure for requesting leave to amend. "[A] bare request in an opposition to a motion to dismiss— without any indication of the particular grounds on which amendment is sought ... does not constitute a motion within the contemplation of Rule 15(a)." *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004)). Indeed, "[a] request for leave to amend 'almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is ... not a motion to amend.' " *Id.* (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000)).

Plaintiff's FAC is dismissed with prejudice. As the Sixth Circuit has explained, "a district court does not abuse its discretion by failing to grant leave to amend where the plaintiff has not sought leave and offers no basis for any proposed amendment." *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 739 F. App'x 330, 335 (6th Cir. 2019) (affirming dismissal with prejudice and without leave to amend when the plaintiff provided no basis for the district court to conclude that an amendment could cure his pleading deficiencies). Relying on *Harper*, another court in this district concluded the same, explaining:

> Plaintiffs request leave to amend their complaint following dismissal

for failure to state a claim without providing so much as a hint as to how a second amended complaint could potentially cure the pleading deficiencies set forth in Defendant's Rule 12(b)(6) motion and identified in the Court's dismissal order. Nor have Plaintiffs in their briefing or by affidavit identified any additional factual allegations that could meet the pleading standard. Accordingly, this Court cannot discern whether a basis to grant leave for a second amendment exists. Under these circumstances, and considering that Plaintiffs already have been granted and availed themselves of one opportunity to amend the original complaint, justice is not thwarted by the Court's dismissal with prejudice of the Amended Complaint and denial of leave to amend.

*Chambers v. Nationwide Mut. Ins. Co.*, 2021 WL 463279, at *2 (N.D. Ohio Feb. 8, 2021).

Plaintiff previously sought leave to amend his original complaint to address deficiencies raised in Defendant's initial motion to dismiss, which Defendant did not oppose, and the Court granted. (Doc. Nos. 30, 31; Aug. 25, 2022 non-doc. Order.) Nevertheless, many of the same deficiencies in Plaintiff's original complaint that Defendant raised or identified in its initial motion to dismiss (*see* Doc. No. 3 at 7-9) remain in Plaintiff's FAC. Like the plaintiff in *Chambers*, Plaintiff fails to identify any additional facts or evidence that he can now allege that would cure those deficiencies. As such, there is no indication that a second amended complaint would survive a motion to dismiss. Thus, "justice is not thwarted by the Court's dismissal with prejudice of the Amended Complaint and denial of leave to amend." *Chambers*, 2021 WL 463279, at *2.

Accordingly, Plaintiff's FAC is dismissed with prejudice without leave to amend.

### IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss (Doc. No. 32) is GRANTED.

**Katz v. CrossCountry Mortgage, LLC, Not Reported in Fed. Supp. (2022)**

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 103 of 233

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 16950481

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

2016 WL 3539137

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 104 of 233

2016 WL 3539137
Only the Westlaw citation is currently available.
United States District Court, W.D. Pennsylvania.

Jeffrey Frank KLEIN, Plaintiff,
v.
JUST ENERGY GROUP, INC., et al., Defendants.

Civil Action No. 14-1050
|
Signed 06/29/2016

**Attorneys and Law Firms**

Adam G. Vahanian, The Chiurazzi Law Group, Pittsburgh, PA, for Plaintiff.

Erin Lucas Hamilton, Buchanan Ingersoll & Rooney, Thomas E. Sanchez, Louis A. Depaul, Eckert Seamans Cherin & Mellott, LLC, Scott A. Millhouse, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, PA, Daniel R. Wilson, Neuens Mitchell Bonds, PLLC, Tulsa, OK, for Defendants.

**MEMORANDUM OPINION**

CONTI, Chief District Judge

**I. INTRODUCTION**

 **\*1** Pending before the court is a motion for summary judgment (ECF No. 57) filed on behalf of defendants Just Energy Group, Inc., Just Energy Limited, Just Energy Pennsylvania Corp., and Just Energy Ohio, LLC (collectively the "Just Energy Defendants"). This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. In his second amended complaint (ECF No. 51), plaintiff Jeffrey Frank Klein ("Klein") claims that numerous telephone calls made to him by or on behalf of the Just Energy Defendants violated the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 et seq., constituted negligence and invaded his privacy. Specifically, Klein sues the Just Energy Defendants for a) violation of the TCPA (Count I), b) common law invasion of privacy under intrusion upon seclusion theory (Count II), c) negligence (Count IV), and d) "vicarious liability" for the negligence of defendants Collectcents, Inc. ("Collectcents") and Data Exchange, Inc. ("Data Exchange") as alleged against defendants Collectcents and Data Exchange under other counts (Count VI).[1] The Just Energy Defendants also filed a brief in support of their motion, (ECF No. 58),

their concise statement of material facts, (ECF No. 59), an appendix, (ECF No. 60), a reply brief, (ECF No. 66), and a reply concise statement of material facts, (ECF No. 67). Klein filed a response in opposition (ECF No. 62), containing a "statement of undisputed facts" that appears also to identify certain disputed facts. (ECF No. 62 at 3). In accordance with this court's procedures, the parties filed a Combined Concise Statement of Material Facts ("CCSMF"). (ECF No. 68). Their Combined Concise Statement of Material Facts indicates uncontested facts, disputes about certain facts and disputes about whether the response of Klein to certain of the facts asserted by Just Energy Defendants in their Concise Statement of Material Facts is adequate to dispute those facts under the Local Rules of the United States District Court for the Western District of Pennsylvania and the Chambers' Rule of this court. See e.g., (ECF No. 68 at 6 (citing LCvR 56.C.1.a and this court's Chambers' Rule 3.F.c.ii)). This matter is fully briefed and ripe for disposition. As more fully explained below, the motion for summary judgment will be granted as to Count I because there is insufficient evidence in the record to connect the Just Energy Defendants to the plaintiff's federal claim under the TCPA. The motion for summary judgment also will be granted on the remaining state law claims against the Just Energy Defendants on the same grounds.

**II. PROCEDURAL BACKGROUND**

On August 13, 2014, this court granted plaintiff, who was proceeding *pro se* at that time, leave to proceed *in forma pauperis*. The Just Energy Defendants responded to the *pro se* complaint by filing a partial motion to dismiss the complaint, seeking dismissal of Count II for common law private nuisance under Pennsylvania law and Count IV for negligence undr Pennsylvania law for failure to state a claim. (ECF No. 17). By order dated May 27, 2015, this court granted Just Energy Defendants' motion to dismiss the counts in the original complaint for private nuisance and negligence without prejudice, holding in its Memorandum Opinion that Pennsylvania does not recognize private nuisance claims outside the land context, and that, with respect to the negligence claim, Klein failed to set forth sufficient factual allegations to invoke any of the four scenarios under which a claim for negligent infliction of emotional distress can proceed under Pennsylvania law and also failed to allege the required physical manifestation of his emotional distress. (ECF Nos. 21 at 8-9; 22). In the May 27, 2015 order, this court granted Klein leave to file an amended complaint. Klein, who was still proceeding *pro se*, filed the amended complaint on June 12, 2015. (ECF No. 24).

Case 1:25-cv-00927-KMN Document 14-1 Filed 07/18/25 Page 105 of 233

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

2016 WL 3539137

**\*2** On November 16, 2015, counsel for Klein entered his appearance and Klein no longer proceeded *pro se*. (ECF No. 42). On January 20, 2016, with leave of court, Klein through his counsel filed his second amended complaint and added Collectcents and Data Exchange as defendants to this action. (ECF No. 51). The Just Energy Defendants filed their answer to the second amended complaint on January 26, 2016. (ECF No. 52). After filing that answer and concluding discovery, on February 26, 2016, the Just Energy Defendants filed the present motion for summary judgment. (ECF No. 57).

## III. FACTUAL BACKGROUND [2]

At the outset, the court is constrained to address certain issues the parties' filings with respect to their required statements of material facts. The Just Energy Defendants filed their Concise Statement of Material Facts in accordance with LCvR 56.B.1. (ECF No. 59). Klein did not file a separate concise statement. Instead, Klein responded by filing his opposition containing a section entitled "Statement of Undisputed Facts," in which he indicates that he does not dispute Fact Nos. 1-21, 28, 29, 34, 35, 37, 40, 41 and 44. (ECF No. 62 at 7-8). In that section, he also indicates certain facts that he does not admit in one fashion or another. With respect to Fact Nos. 22, 23, 31, and 38, he asserts that he disputes the "independent contractor" characterization with respect to certain third parties "to the extent it implies lack of agency." (ECF No. 62 at 7-8). With respect to Fact Nos. 24 and 25, he indicates that he admits those facts to the extent the statement is that the Just Energy Defendants "did not physically place the calls," but argues that the calls were placed on the Just Energy Defendants' behalf and for their benefit with "callers identifying themselves as 'Just Energy' " on the call. (ECF No. 62 at 7). Klein asserts that Fact Nos. 26, 27, 30, 33, 36, 39, 40, 43, and 45, are neither admitted nor denied, but rather he "lacks knowledge as to the truth of this allegation." (ECF No. 62 at 7-8). Regarding Fact Nos. 45-51, he does not indicate that he adopts those facts or disputes those facts except to direct the court to section 3 of his opposition regarding his argument that the TCPA applies to calls made to his free Google voice over Internet Protocol ("VoIP") service number ending in 0702 ("Klein's VoIP number") and to restate his allegation that the calls to his VoIP number were charged to him based on his assertion that they were sent from his VoIP service to the Verizon Wireless phone account for which he pays. (ECF No. 62 at 8). Regarding Fact No. 45, Klein "neither admits nor denies" that fact and directs the court to section 3 of his opposition, addressing that fact number twice in response.

Given the manner in which Klein provided his opposition, a discussion of the applicable local rules is appropriate. Local Civil Rule of Court 56.B.1 requires the party moving for summary judgment to file a separate concise statement of material facts and requires that the party cite "to a particular pleading, deposition, answer to interrogatory, admission on file or other part of the record supporting the party's statement, acceptance, or denial of the material fact." LCvR 56.B.1. In further support, the moving party must file an appendix with the documents supporting that party's concise statement of material facts. LCvR 56.B.3. The opposing party also is to provide a separately filed concise statement admitting or denying the facts in the moving party's concise statement, LCvR 56.C.1.a, setting forth the basis for a denial of the moving party's concise statement with reference to the record, LCvR 56.C.1.b, and providing any additional material facts that are necessary for the court's ruling on the motion. LCvR 56.C.1.c. This court's Chambers' Rule 3.F.c.ii requires that the opposing party file a separate document in response to the moving party's concise statement indicating which facts are disputed and citing and attaching the evidence in support of any disputed facts. Local Civil Rule of Court 56.E specifically provides that the facts claimed to be undisputed and material in a party's concise statement "will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56.E.

**\*3** With respect to the Just Energy Defendants' concise statement of material facts, Klein's responses that Fact Nos. 26, 27, 30, 33, 36, 39, 40, 43, and 45 are neither admitted nor denied are wholly inadequate under the local rules. The Just Energy Defendants supported their concise statement with cites to the record and provided record materials in their Appendix, (ECF No. 60), in compliance with Local Civil Rule of Court 56.B.1 and 56.B.3. Under these circumstances, for purposes of the present motion for summary judgment Fact Nos. 26, 27, 30, 33, 36, 39, 40, 43 and 45 will be deemed admitted. With respect to the disputes regarding the distinction between the calls being physically placed by any of the Just Energy Defendants and the characterization of certain entities as independent contractors, the court will further address these matters.

### A. Just Energy Defendants, Other Just Energy Entities and Master Services Agreements

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 106 of 233

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

2016 WL 3539137

Defendant Just Energy Group, Inc., a Canadian corporation, is a natural gas and electricity retailer. CCSMF ¶¶ 14, 18. Defendant Just Energy Group, Inc. has several present and former affiliated entities, CCSMF ¶¶ 19, 20, 21, including defendants Just Energy Limited, Just Energy Pennsylvania Corp., and Just Energy Ohio, LLC. CCSMF ¶ 18. Defendant Just Energy Ohio is a former affiliate and is no longer in existence, having dissolved effective in 2010 under the authority of the Texas Comptroller. CCSMF ¶ 17; (ECF No. 60-2). Just Energy Corporation, which is not a defendant in this lawsuit, was formerly known as Ontario Energy Savings Corporation and also is an affiliate of Defendant Just Energy Group, Inc. CCSMF ¶ 21. Commerce Energy, Inc. d/b/a Just Energy, also not a defendant, likewise is an affiliate of Defendant Just Energy Group, Inc. CCSMF ¶ 20.

Just Energy Corporation, when it was known as Ontario Energy Savings Corporation, entered into a Master Collection Agency Services Agreement dated September 10, 2008 ("collection MSA") with defendant Collectcents operating as Credit Bureau of Canada Collections. CCSMF ¶ 37. Defendant Collectcents provides debt collection services to Commerce Energy, Inc. d/b/a Just Energy for its customer accounts. CCSMF ¶ 37. Just Energy Corporation also entered into a Master Services Agreement effective July 21, 2009 with Quick Response Outsourcing, LLC ("QRO") under which QRO provided customer verification and information services to Just Energy Corporation and its affiliates ("customer verification MSA"). CCSMF ¶¶ 27-29.

## B. Account of P.S. [3] and Customer Call and Verification Process

Cedric Frisco ("Frisco"), who worked as an independent contractor [4] for Just Energy Marketing Corporation, which is not a defendant here, signed up P.S. as a customer of Commerce Energy, Inc. d/b/a Just Energy. CCSMF ¶¶ 26, 43. As part of the process of signing up P.S. as a customer, Frisco provided to QRO the correct phone number for P.S. during a verification call with QRO. CCSMF ¶¶ 27, 29, 30, 32, 33. It is alleged by Klein, and apparently not challenged in the present summary judgment motion, that defendant Data Exchange is the successor in interest to QRO (referred to collectively as "Data Exchange/QRO" for present purposes), [5] (ECF No. 51 ¶ 28), the third-party verification services company that operated a verification call center. CCSMF ¶¶ 27, 29, 30, 32, 33. The individual from QRO participating in the verification

call with Frisco regarding the Commerce Energy, Inc. d/b/a Just Energy account of P.S. incorrectly recorded the phone number for P.S. CCSMF ¶¶ 32, 33, 34. The number recorded was instead Klein's VoIP number ending in 0702, which was assigned to him for his Google VoIP service. CCSMF ¶¶ 34, 35; (ECF No. 51 ¶¶ 22, 23). Klein's Google VoIP service is a free service. CCSMF ¶ 45.

**\*4** None of the Just Energy Defendants directly place calls to consumers for the purpose of verifying customer information when marketing energy to customers or for the purpose of debt collection on delinquent accounts. CCSMF ¶¶ 22-25. The Just Energy Defendants and all of defendant Just Energy Group, Inc.'s affiliates and subsidiaries use third parties, such as defendant Data Exchange/QRO, to verify customer information and use third parties, such as defendant Collectcents, for the purpose of debt collection on delinquent accounts. CCSMF ¶¶ 22-25. [6]

## C. Voluminous Phone Calls to Klein's VoIP number

In September 2013, the account of P.S. with Commerce Energy, Inc. d/b/a Just Energy became delinquent. CCSMF ¶ 36. Commerce Energy, Inc. d/b/a Just Energy utilizes Collectcents for debt collection services with respect to delinquent accounts and Collectcents performed all debt collection activities related to the account of P.S, pursuant to the collection MSA. CCSMF ¶¶ 37, 40. Because Klein's VoIP number had been erroneously recorded as the number for P.S., Commerce Energy, Inc. d/b/a Just Energy provided Klein's VoIP number to Collectcents for the purpose of collecting on the amount owing on the account of P.S. CCSMF ¶ 39. Collectcents made the debt collection calls that were related to the account of P.S., but placing the calls to Klein's VoIP number. CCSMF ¶ 41. Klein claims that the offending calls came from a number ending in 7575 or a blocked number as indicated on his caller identification. (ECF No. 51 ¶ 46). The number ending in 7575 is neither associated with the Just Energy Defendants nor any affiliates or subsidiaries of defendant Just Energy Group, Inc. CCSMF ¶ 43).

Klein contends that over 200 calls were made to Klein's VoIP number without his permission using an autodialer or pre-recorded voice and were made to attempt to collect a debt of P.S. (ECF No. 51 ¶¶ 25, 37, 43, 44). The Just Energy Defendants indicate that they dispute the number and timing of the alleged 200 calls, but admit that the actual number of calls is immaterial for purposes of their present motion.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 107 of 233

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

2016 WL 3539137

(ECF No. 57 at 1 ¶ 2). As acknowledged by the Just Energy Defendants, the records of Collectcents readily support a finding of at least 90 calls. (ECF Nos. 58 at 12; 60-6). There appears to be no dispute that numerous [7] calls were made to Klein's VoIP number.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that judgment as a matter of law is warranted. FED. R. CIV. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007).

**\*5** The burden on a motion for summary judgment is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof or that there is an absence of evidence to support the nonmoving party's case. Celotex Corp., 477 U.S. at 322, 325; Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

Once the movant meets its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide. Fed. R. Civ. P. 56(e); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Celotex, 477 U.S. at 323–25. The nonmoving party must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. Id. at 324. The

nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 323–24. The summary judgment inquiry asks whether there is a need for trial —"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000) (citing decisions); Liberty Lobby, 477 U.S. at 248–49; Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law— will preclude the entry of summary judgment. Liberty Lobby, 477 U.S. at 248.

A defendant who moves for summary judgment is not required to refute every essential element of the plaintiff's claim; rather, the defendant must only point out the absence or insufficiency of plaintiff's evidence offered in support of one or more those elements. Celotex, 477 U.S. at 322–23. If the evidence the nonmovant produces is "merely colorable, or is not significantly probative," the moving party is entitled to judgment as a matter of law. Liberty Lobby, 477 U.S. at 249. The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every challenged] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.' " Corliss v. Varner, 247 Fed.Appx. 353, 354 (3d Cir. 2007) (quoting Port Auth. of

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 108 of 233

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)
2016 WL 3539137

N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)). Inferences based upon speculation or conjecture do not create a material factual dispute sufficient to defeat a motion for summary judgment. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

## V. **DISCUSSION**

**\*6** Just Energy Defendants argue that all of Klein's claims against them fail because: 1) he cannot show as required for his TCPA claim that he is charged for his VoIP service; 2) there is no liability of the Just Energy Defendants for the calls, either directly or vicariously, where they did not make the calls to Klein's VoIP number and do not otherwise have sufficient connection to the challenged calls; 3) he cannot show that there was an intentional invasion of his privacy by the Just Energy Defendants; and 4) he cannot show a duty owed to him by or that was breached by the Just Energy Defendants and cannot sufficiently establish damages caused by any such breach. (ECF No. 55 at 10, 22). For the most part, the dispute centers on two matters: 1) whether either the TCPA's "charged call provision" a call to Klein's VoIP number constitutes a call "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call," 47 U.S.C. § 227(b)(1)(A)(iii); and 2) whether any of the Just Energy Defendants had any connection to P.S. or the calls made to Klein.

### A. TCPA Claim (Count I)

Klein seeks to hold the Just Energy Defendants liable under the TCPA for violation of § 227(b)(1)(A)(iii). (ECF Nos. 51 ¶ 42; 62 at 2, 12). The TCPA provides in pertinent part:

(b) **Restrictions on use of automated telephone equipment**

(1) Prohibitions. **It shall be unlawful** for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) **to make any call** (other than a call made for emergency purposes or made with the prior express consent of the called party) **using any automatic telephone dialing system or an artificial or prerecorded voice**—

(i) to any emergency telephone line ...;

(ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or

(iii) **to any telephone number assigned to** a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or **any service for which the called party is charged for the call** ....

47 U.S.C. § 227(b)(1) (emphasis added).

The TCPA provides a private right of action for violation of 47 U.S.C. § 227(b)(1) as follows:

(3) Private right of action. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

47 U.S.C. § 227(c) relates to residential telephone subscribers and governs calls to the National Do-Not-Call Registry, *see* 47 U.S.C. § 227(c)(1) (authorizing the FCC to initiate rulemaking concerning the privacy rights of residential telephone subscribers). Section 227(c)(5) provides for a private right of action for § 227(c) violations where a person has received more than one telephone call "by or on behalf of" the same entity in violation of § 227(c). 47 U.S.C. § 227(c)(5).

To prevent evasion of the TCPA's call prohibitions, the Federal Communications Commission ("FCC") has treated calls made by a third party on behalf of a company as if the company itself made the call, whether in relation to collection and solicitations calls subject to § 227(b) or further rules

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

2016 WL 3539137

governing solicitation calls addressed in § 227(c). Indeed, with respect to collection calls under § 227(b)(1)(A)(iii) made to wireless numbers, the FCC explained:

> To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications.... [A] creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.

**\*7** In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 23 FCC Rcd. 559, 564 ¶ 10 (2008) (footnotes omitted). In its ruling, the FCC noted that the prohibitions on the use of autodialers in § 227(b)(1)(A)(iii) apply regardless of the content of the call, as opposed to the separate restrictions of § 227(c) on "telephone solicitations" that do not apply to calls solely for the purpose of collecting a debt. 23 FCC Rcd. at 565 ¶ 11.

As a remedial consumer protection statute, Gager v. Dell Financial Services, LLC, 727 F.3d 265, 271 (3d Cir. 2013), the TCPA's language is to be construed "broadly to effect its purpose." Lesher v. Law Offices of Mitchell N. Kay, P.C., 650 F.3d 993, 997 (3d Cir. 2011). If proposed interpretations of the TCPA are equally plausible, the scales tip in favor of the consumer. Leyse v. Bank of America Nat. Ass'n, 804 F.3d 316, 327 (3d Cir. 2015).

Regarding the TCPA, the Supreme Court has explained:

> Voluminous consumer complaints about abuses of telephone technology —for example, computerized calls to private homes—prompted Congress to pass the Telephone Consumer Protection Act of 1991 (TCPA or Act), 47 U.S.C. § 227....The Act bans certain practices invasive of privacy and directs the Federal Communications Commission (FCC or Commission) to prescribe implementing regulations.

Mims v. Arrow Fin. Servs., LLC, ___ U.S. ____, 132 S. Ct. 740, 744 (2012). The Court of Appeals for the Third Circuit observed that "Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls." Gager, 727 F.3d at 268 (citations omitted).

The legislative history of the TCPA refers to prerecorded calls as "an intrusive invasion of privacy" and indicates that the TCPA is aimed at protecting individuals' privacy rights while balancing legitimate telemarketing practices. Leyse, 804 F.3d at 325-26 (citing Telephone Consumer Protection Act of 1991, Pub.L. No. 102–243, § 2(5)-(6), (10), 105 Stat. 2394 (note following 47 U.S.C. § 227); § 2(9), (12)-(13)). Debt collection calls as well as telemarking calls are within the TCPA's purview. Gager, 727 F.3d at 273; Fenescey v. Diversified Consultants, Inc., Civ. Act. No. 14-347, 2014 WL 252651, at *2 (M.D. Pa. June 4, 2014); Forrest v. Genpact Services, LLC, 962 F. Supp. 2d 734, 736 (M.D. Pa. 2013) (holding plaintiff stated a claim under both the TCPA and the FDCPA for excessive debt collection calls).

For purposes of the TCPA, it does not matter that P.S. was the intended recipient of the calls. In Leyse, the Court of Appeals for the Third Circuit held that the individual who answers the robocall [8] has standing to sue. 804 F.3d at 327. The aggrieved persons under the TCPA's provisions include the actual recipient of the telephone call, 804 F.3d at 325-326, because "[i]t is the actual recipient, intended or not, who suffers the nuisance and invasion of privacy." Leyse, 804 F.3d at 326.

VoIP service, like the service used by Klein, is provided over broadband connection, cable modem, fiber to the premises (FTTP), digital subscriber line (DSL) or other wireline, and

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 110 of 233

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

2016 WL 3539137

fixed wireless or other connections. FCC Releases New Local Telephone Competition Data: Third Collection to Comprehensively Include Interconnected VoIP, 2011 WL 97677, at *1-2 (FCC Jan. 11, 2011). VoIP service is becoming more common. Id.

> **\*8** Interconnected VoIP service represents an important and rapidly growing part of the U.S. voice service market. [It] enables voice communications over a broadband connection and allows users both to receive calls from, and place calls to, the public switched telephone network, like traditional phone service. Providers of the service include companies like Vonage as well as cable and telephone companies that own their own networks.

> Id.

There is no dispute that the challenged calls were made to Klein's VoIP number. The Just Energy Defendants, however, dispute that any of them can be held liable for the calls.

### 1. Direct Liability

As a threshold matter, the court considers the Just Energy Defendants' argument that they are not liable because they are not sufficiently connected to the challenged calls. They argue that they are not directly liable under the TCPA for any of the challenged calls because they did not make any of the calls and the prohibition of § 227(b)(1)(A)(iii) by its express language provides for the liability of the party making the call. (ECF No. 58 at 16).

> The plain language of section 227(b) (1)(A)(iii) imposes liability upon persons that "make" a telephone call or text. 47 U.S.C. § 227(b)(1)(A) (iii).... [M]any of the courts that have considered this provision have held that the verb "make" imposes civil

liability only on the party that places the call or text.

Melito v. American Eagle Outfitters, Inc., Civ. Act. Nos. 14-02240, 15-39, and 15-2370, 2015 WL 7736547, at *4 (S.D. N.Y. Nov. 30, 2015) (summarizing decisions).

The court agrees with the Just Energy Defendants. The uncontroverted evidence shows that the calls were not made by or on behalf of the Just Energy Defendants and instead were made by Collectcents on behalf of Commerce Energy, Inc. d/b/a Just Energy, the entity with which P.S. contracted. Thus, the calls were neither made by or on behalf of the Just Energy Defendants.

Klein argues that direct liability under the TCPA extends not only to a party on whose behalf the call is made but also extends to a party who stands to benefit from the call, citing Hartley-Culp v. Credit Management Co., Civ. Act. No. 14-282, 2014 WL 4630852 (M.D. Pa. Sept. 15, 2014). (ECF No. 62 at 11). It appears that Klein intended to cite Hartley-Culp v. Green Tree Servicing, LLC, 52 F. Supp. 3d 700, 703 (M.D. Pa. 2014) (holding TCPA imposes direct and vicarious liability on an entity on whose behalf the call is placed), as Credit Management Co. addressed bifurcation issues. Despite Klein's representation, neither Credit Management Co. nor Green Tree Servicing, LLC suggest the broad sweeping extension of liability, whether direct or vicarious, to parties merely because they "stand to benefit" from the call. The FCC expressed in In the Matter of the Joint Petition filed by Dish Network, LLC, 28 FCC Rcd. 6574 (2013) (Declaratory Ruling): "in sum, under our current rules and administrative precedent interpreting and implementing sections 227(b) and 227(c), we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under ... either section 227(c) or section 227(b)." 28 FCC Rcd. at 6593 ¶ 47. The court is persuaded that a party is not liable merely because they stand to benefit from the call. Even if that determination is incorrect, Klein still would not prevail because he did not point to evidence sufficient for a reasonable jury to find that the Just Energy Defendants stood to benefit.

**\*9** Accordingly, the Just Energy Defendants are entitled to summary judgment on the claim for direct violation of the TCPA because the calls were not made by or on behalf of them.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 111 of 233

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

2016 WL 3539137

## 2. Vicarious Liability under the TCPA

Klein relies on various FCC rulings to assert that the Just Energy Defendants are vicariously liable for violations of the TCPA under an agency theory, citing to an FCC Ruling addressing the liability of third-party telemarketers. According to the FCC, federal common law agency principles providing for vicarious liability for calls initiated by a third party advance the goals of the TCPA. In the Matter of the Joint Petition Filed by Dish Network, LLC., 28 FCC Rcd at 6587 ¶ 35. The United States Supreme Court in Campbell-Ewald Co. v. Gomez held that a party may be liable under the TCPA in accordance with tort-related vicarious liability rules. Campbell-Ewald Co. v. Gomez, 136 S.Ct. 663, 674 (2016) (the Court had no cause to question the FCC's ruling that vicarious liability applies under the TCPA).

"[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." Meyer v. Holley, 537 U.S. 280, 285, 123 S.Ct. 824, 828 (2003). "It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." 537 U.S. at 285, 123 S.Ct. at 829. Thus, a seller or content cannot shield itself from liability simply by outsourcing telemarketing or collection calls to a third party. Gomez v. Campbell-Ewald Co., 768 F.3d 871, 877 (9ᵗʰ Cir. 2014), aff'd 136 S.Ct. 663 (2016). "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." Gomez, 768 F.3d at 879. Vicarious liability under the TCPA may be established under a broad range of agency theories, including formal agency, apparent authority and ratification. 28 FCC Rcd. at 6582 ¶ 24, 6584 ¶ 28, 6588 ¶37. The relationship between the parties is paramount in determining whether there is vicarious liability. Gomez, 768 F.3d at 878.

### a) Independent Contractor Status

In their concise statement and in the parties' Combined Concise Statement of Material Facts, the Just Energy Defendants refer to the third parties used to verify customer information and for debt collection purposes as "independent contractors." (ECF NO. 59 ¶¶ 22-25); CCSMF ¶¶ 22-25. The

Just Energy Defendants argue that they cannot be held liable for the acts of independent contractors, citing Marshall v. Southeastern Pennsylvania Transp. Authority, 587 F. Supp. 258, 261-62 (E.D. Pa. 1984) ("As a general rule, the employer of an independent contractor is not liable for physical harm caused another by an act or omission of the contractor or his servants."), and Woolfolk v. Duncan, 872 F. Supp. 1381, 1392 (E.D. Pa. 1995) ("Under Pennsylvania law, an employer may be liable for the intentional torts committed by a servant, but not for those committed by an independent contractor."). (ECF No. 58 at 19). Klein disputes the use of the term "independent contractor" to refer to the status of Collectcents, Data Exchange and any entities and individuals physically placing the challenged calls or recording customer phone numbers to the extent the term's use is intended to imply a lack of agency. (ECF No. 62 at 7); CCSMF ¶¶ 22, 23, 24, 25.

**\*10** The collection MSA pursuant to which Collectcents performs debt collection services, including debt collection calls, and the verification MSA pursuant to which Data Exchange/QRO provides customer information verification services label the status of Collectcents and Data Exchange/QRO as an "independent contractor" and likewise disavow agency status. (ECF Nos. 60-4 § 10.1; 60-5 ¶¶ 1, 6). A label or express denial of status by the parties to a contract is not alone determinative and the court must consider the actual practice between the parties. Zeno v. Ford Motor Co., Inc., 480 F. Supp. 2d 825, 841-848 (W.D. Pa. 2007) (discussing no-agency clause in contract between automobile dealer and manufacturer and citing Restatement (Third) of Agency § 1.02 ("Parties' Labeling and Popular Usage Not Controlling") cmt. b. ("The parties' agreement may negatively characterize the relationship as not one of agency, or as one not intended by the parties to create a relationship of agency or employment. Although such statements are relevant to determining whether the parties consent to a relationship of agency, their presence in an agreement is not determinative and does not preclude the relevance of other indicia of consent.")); see Beckman v. Vassall-Dillworth Lincoln-Mercury, Inc., 468 A.2d 784, 790-91 (Pa. Super. 1983) (considering "no-agency" clause and lack of evidence as to express, implied or apparent authority in rejecting plaintiff's assertion of agency relationship).

In Zeno, this court denied without prejudice a motion for summary judgment with respect to the issue of agency and pursuant to Federal Rule of Civil Procedure 56(f) (now Rule 56(d)) permitted discovery requested by the nonmoving party about direction and control. 480 F. Supp. 2d at

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 112 of 233

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

2016 WL 3539137

848. The parties in *Zeno* submitted the sales and service agreement between the manufacturer and the dealer and also "superficially" discussed facts relevant to the inquiry about agency, but did not analyze either the agreement or the facts in the record "in sufficient detail" to enable the court to determine whether there was a triable issue of fact regarding the agency relationship. 480 F. Supp. 2d at 848. Similarly, in the case *sub judice*, Just Energy Defendants provide the master services agreements with the verification company and the collection company, cite the "independent contractor" and "no-agency" provisions, but do not undertake an analysis of the facts *vis a vis* agency principles. See Myzkowski v. Penn Stroud Hotel, Inc., 634 A.2d 622, 625 (Pa. Super. Ct. 1993) (discussing principal and agent in context of master-servant and independent contractor relationship and indicating that "the focus of our inquiry should be whether the alleged master has day-to-day control over the manner of the alleged servant's performance.").

The agreements referring to Collectcents and QRO as independent contractors, (ECF 60-4 at 11 Art. 10 § 10.1 [Master Services Agreement]; ¶60-5 at 2 ¶ 6 [Master Collection Agency Services Agreement]), also provide procedures to be followed. That evidence, however, is not sufficient for a reasonable jury to conclude that there was a master-servant relationship between the Just Energy Defendants and Collectcents or QRC. There appears to be insufficient evidence in the record of control over the manner of work. See e.g. (ECF 60-5 at 2 ¶¶ 1, 2). Whether an individual or entity is an "independent contractor" such that the party contracting with that individual or entity would not be liable for the conduct of that individual or entity or an "agent" such that the Just Energy Defendants would be liable for the conduct of its agent depends on the facts and circumstances of each case. Castle Cheese, Inc. v. MS Produce, Inc., Civ. Act. No. 04-878, 2008 WL 4372856, at *6-9 (W.D. Pa. Sept. 19, 2008)(discussing distinction between independent contractor, principal-agent and master-servant relationship and observing that status of agent and independent contractor are not mutually exclusive). Despite their dispute, neither party attempts any analysis about the possible independent contractor status of Collectcents and Data Exchange/QRO. As a result of the moving parties' failure to engage in the analysis, the court declines to accept their characterization of Collectcents and Data Exchange/ QRO as independent contractors for purposes of resolving the summary judgment motion.

### b) Apparent Authority

**\*11**  Klein asserts that the Just Energy Defendants are vicariously liable for the calls made by Collectcents under apparent authority jurisprudence, citing to FCC rulings under the TCPA, Richardson v. John F. Kennedy Memorial Hosp., 838 F. Supp. 979, 985 (E.D. Pa. 1993) (citing Volunteer Fire Co. v. Hilltop Oil Co., 602 A.2d 1348, 1351-52 (Pa. Super. Ct. 1992)), and the Restatement 3d of Agency § 4.01. (ECF No. 62 at 9-10). Klein points to a statement made during the calls. Klein provided twelve recorded voice mail messages, presumably representing the general nature of the offending calls. (ECF No. 62-1). [9] These voice messages appear to be messages that were left on Klein's free Google VoIP's message service. Compare (ECF No. 60-7), (ECF NO. 60-9) and (ECF No. 62-1). [10] In the statement made on these calls, the Collectcents' caller identifies herself as "Just Energy" or "Just Energy Ohio." [11] (ECF No. 62 at 14, 62-1). From this, Klein asserts that Collectcents had apparent authority to make the call on behalf of presumably all the Just Energy Defendants and perhaps even any entity that uses the name "Just Energy." Klein's argument stretches agency principles and ignores the authority on agency on which he relies.

In the case of telemarketing calls challenged under § 227(b), the FCC found "illustrative" certain examples of apparent authority rendering the seller of goods or services vicariously liable for the telemarketing company's calls, stating:

> To provide guidance in this area, we find the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations. For example, ... that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control ... as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved,

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 113 of 233

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

2016 WL 3539137

wrote or reviewed the outside entity's telemarketing scripts.

In the Matter of the Joint Petition filed by Dish Network, LLC, 28 FCC Rcd. at 6592 ¶ 46.

As stated in Richardson, "[a]n agent can bind his principal where the agent has actual or apparent authority.... Apparent authority exists *where the principal, by words or conduct, leads people with whom the alleged agent deals to believe* that the principal has granted the agent the authority he purports to exercise." 838 F.Supp at 985 (internal citations omitted) (emphasis added). In Volunteer Fire Co. of New Buffalo v. Hilltop Oil Co., 602 A.2d 1348 (Pa. Super. Ct. 1992), the court commented that "[a]gency 'cannot be assumed from the mere fact that one does an act for another.' " 602 A.3d at 1351 (quoting Bross v. Varner, 48 A.2d 880, 881 (Pa. Super. Ct. 1946)). The alleged agent cannot create the agency relationship or bind the principal by the agent's acts alone.

**\*12** Richardson involved whether a sub-agent had authority to bind a corporation. In Richardson, where the executive director/president directed the plaintiff to deal with the sub-agent regarding the contract, and the hospital's by-laws vested the president and executive director with authority to enter contracts on the hospital's behalf. The court found under those circumstances there was sufficient evidence from which a reasonable jury could find that the executive director/president had authority to enter into a contract without hospital board approval and that the "special assistant to the president" likewise had such authority. Richardson, 838 F.Supp at 985-86. Thus, the parties' cross-motions for summary judgment on plaintiff's claim for breach of contract were denied.

Klein argues that because Collectcents identified itself as "Just Energy" in the phone calls, the Just Energy Defendants either must have granted Collectcents that right or were aware that Collectcents' callers identified themselves as such to call recipients and thus Collectcents had the apparent authority to make the calls on behalf of the Just Energy Defendants. (ECF No. 62 at 14). The record evidence at most might support that Collectcents had authority on behalf of Commerce Energy d/ b/a Just Energy to make the calls regarding the account of P.S. The evidence does not in any way show a relationship between Collectcents and any of the Just Energy Defendants regarding the account of P.S. or show that the Just Energy

Defendants by their words or conduct led Klein to believe the calls were on behalf of any of the Just Energy Defendants.

While it is true as Klein argues that this court need not conclude that a reasonable jury could find that any of the Just Energy Defendants directly communicated with Klein in order to hold them liable, it is not true that the Just Energy Defendants all can be held liable under agency theory where there is no evidence that the calls made to Klein's VoIP number by Collectcents regarding the account of P.S. were made on behalf of any Just Energy Defendant. Klein's argument and theory are insufficient to defeat the motion for summary judgment. Klein did not adduce sufficient evidence for a reasonable juror to find that Collectcents was acting as the agent of any of the Just Energy Defendants in making the calls to Klein in order for them to be held vicariously liable.

#### c) **Ratification**

Klein asserts that the Just Energy Defendants ratified the acts of Collectcents and QRO. Klein cites to the Restatement (Third) of Agency, Ratification Defined, which provides:

(1) Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.

(2) A person ratifies an act by

(a) manifesting assent that the act shall affect the person's legal relations, or

(b) conduct that justifies a reasonable assumption that the person so consents.

RESTATEMENT (THIRD) OF AGENCY, § 4.01(b). Klein cites the portion of comment d to that section, which notes that acceptance of the benefit of the transaction ratifies the act of entering into the transaction even though the party may manifest dissent to being bound by the legal consequences of the act. RESTATEMENT (THIRD) OF AGENCY, § 4.01(b), cmt. d, ¶ 2; (ECF No. 62 at 11). Klein argues that the Just Energy Defendants can be liable by virtue of the fact that the calls *presumably* would have allowed them to collect money owed to them. (ECF No. 62 at 11).

This argument, however, ignores both the authority Klein cites and the record evidence. Comment d makes clear that "[r]atification requires an objectively or externally observable

2016 WL 3539137

indication that a person consents that another's prior act shall affect the person's legal relations." RESTATEMENT (THIRD) OF AGENCY, § 4.01, cmt. d. Klein did not point to any observable indication that any of the Just Energy Defendants, as opposed to Commerce Energy d/b/a Just Energy, consented to the prior acts of Collectcents in calling Klein's VoIP number, much less that the Just Energy Defendants accepted or received any benefit. These calls at most would have been for the benefit of Commerce Energy d/b/a Just Energy. Klein neither provides nor points to any evidence of ratification by the Just Energy Defendants in the form of an act manifesting affirmance of the calls, manifesting assent for the calls, or justifying a reasonable assumption that any Just Energy Defendant consented. *See* RESTATEMENT 3D OF AGENCY, § 4.01. Klein's arguments involve speculation and conjecture, which are insufficient for a jury to render a verdict in his favor on this argument. See Robertson, 914 F.2d at 382 n.12.

**\*13** In arguing vicarious liability, Klein also cites to the FCC's indication that the seller in the telemarketing context, and presumably the creditor in the debt collection context, would be in the best position to monitor and police third-party compliance with the law and liability would give the seller and creditor the best incentive to ensure compliance with the law. (ECF 62 at 8-9). Klein misses the point that in the context of this case, the named Just Energy Defendants simply are not in the position of creditor or seller vis-a-vis Klein because non-party Commerce Energy, Inc. d/b/a Just Energy is the entity with which P.S. opened the account.

### 3. Lack of Relationship of Just Energy Defendants to the Challenged Calls

The Just Energy Defendants assert that there is no evidence in the record of any relationship, agency or otherwise, between defendants Collectcents and Data Exchange/QRO on the one hand and the just Energy Defendants on the other with respect to the calls made to Klein's VoIP number or with respect to the account of P.S. (ECF No. 58 at 2, 16, 18-20). Klein does not point to any evidence regarding this matter in his opposition.

Defendants Just Energy Limited, Just Energy Ohio, LLC and Just Energy Pennsylvania Corporation are present or former affiliates of Defendant Just Energy Group, Inc. The Just Energy Defendants produced uncontroverted evidence that the entity known as Just Energy Ohio, LLC, ceased to exist prior to any of the calls at issue. Just Energy Limited is a

holding company that conducts no business and there is no evidence that it engaged in any conduct related to this action. Similarly, with respect to Just Energy Pennsylvania Corp., there is no evidence that it engaged in any conduct related to this action.

Klein alleges in his second amended complaint that the Just Energy Defendants are closely-related entities, (ECF No. 51 at 6 ¶ 40), but offers no facts, basis or argument for finding liability of one for the other, or any analysis which would support a finding of liability of any Just Energy defendant. In opposition to summary judgment, Klein states in a footnote that Commerce Energy, Inc. d/b/a Just Energy is an affiliate of Just Energy Group, Inc. (ECF 62 at 5 n.1), yet there is no allegation in his second amended complaint to support that statement and Klein adduced no evidence that could establish any basis for an affiliate to cause the Just Energy Defendants to be liable for the conduct of Commerce Energy, Inc. d/b/a Just Energy with respect to the account of P.S. and the calls made to Klein's VoIP number.

The Just Energy Defendants acknowledge that "Just Energy Group, Inc. is the parent corporation of all the Just Energy entities relevant to this lawsuit." (ECF No. 57 at 8 ¶ 41). They do not indicate precisely what they mean by "Just Energy entities relevant to this lawsuit." The court will assume for the purpose of resolving this motion that they mean that Just Energy Group, Inc. is the parent corporation of the other Just Energy Defendants as well as Commerce Energy, Inc. d/b/a Just Energy. As a general principle, a parent corporation is a separate entity from its subsidiaries. Kiehl v. Action Mfg. Co., 535 A.3d 571, 575 (Pa. 1987). Klein provides no argument or evidence to justify disregarding the corporate veil, and therefore, the separate nature of the Just Energy Defendants and other Just Energy entities will be respected. See Kiehl, 535 A.3d at 575 (refusing to pierce the corporate veil); Culbreth v. Amosa (Pty) Ltd., 898 F.2d 13, 15 (3d Cir. 1990) (observing that in Pennsylvania to disregard the separate entities and pierce the corporate veil on an alter-ego theory, a party must show that controlling corporation so dominated and controlled the other's affairs that the separate existence is a mere sham).

**\*14** In sum, the evidence adduced in this case is not sufficient to support a finding by a reasonable jury that Collectcents was acting as an agent (whether under actual authority, apparent authority or ratification theories) for any of the Just Energy Defendants in making any of the calls mistakenly placed to Klein's VoIP number instead of the

number of P.S. The Just Energy Defendants are entitled to summary judgment in their favor on Klein's claim that those defendants are vicariously liability under the TCPA. Because of the court's determination that Klein failed to adduce sufficient evidence connecting the Just Energy Defendants to the challenged calls, the court need not resolve and leaves for another day whether the calls to Klein's VoIP number are subject to the TCPA under the charged call provision of 47 U.S.C. § 227(b)(1)(A)(iii) because Klein's particular VoIP service from Google is free.

### B. Remaining State Law Claims

Because the court grants summary judgment on the only federal claim by Klein against the Just Energy Defendants, the TCPA claim, pursuant to 28 U.S.C. § 1367(c)(3), the court must consider whether it will exercise supplemental jurisdiction over Klein's state law claims against the Just Energy Defendants for invasion of privacy, negligence and vicarious liability for the conduct of Collectcents and Data Exchange, Angeloni v. Diocese of Scranton, 135 Fed.Appx. 510, 514 (3d Cir. 2005), even though the case continues against defendants Collectcents and Data Exchange. 5J Oilfield Services, LLC v. Pecha, 2013 WL 3458163 (W.D. Pa. July 9, 2013) (declining supplemental jurisdiction as to one party only with case continuing against other defendants); Bangura v. City of Philadelphia, 2007 WL 3376676 (E.D. Pa. Oct. 15, 2007) (same).

Although Klein, who is domiciled in and a legal resident of Pennsylvania, (ECF No. 51, at ¶¶ 1, 2), avers that the court has both federal question and diversity jurisdiction, (ECF No. 51, at ¶¶ 14, 15), the evidence submitted on summary judgment shows that the parties are not completely diverse. Klein's second amended complaint provides that defendant Just Energy Pennsylvania Corp. is a Delaware Corporation doing business in Pennsylvania, but does not identify its principal place of business. (ECF No. 51, at ¶¶ 1, 2). The Affidavit of Jennifer Johnston submitted by the Just Energy Defendants in support of summary judgment clarifies that Defendant Just Energy Pennsylvania Corp. is a Delaware corporation with a principal place of business in Pennsylvania. (ECF 60-1, at ¶ 7). Thus, the parties are not completely diverse as required for diversity jurisdiction. 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State ... by which it has been incorporated and of the State ... where it has its principal place of business."); Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Management, Inc., 316 F.3d 408, 410 (3d Cir. 2003) ("Jurisdiction under 28 U.S.C. § 1332(a)(1) ... requires

complete diversity of the parties; that is, no plaintiff can be a citizen of the same state as any of the defendants.")

Defendants Collectcents and Data Exchange were added to the case relatively recently by the filing of the second amended complaint. (ECF No. 51). A motion to dismiss by defendant Data Exchange is now pending (ECF No. 77), defendant Collectcents just filed its answer on June 21, 2016, (ECF No. 85), and the discovery deadline regarding the claims against defendants Collectcents and Data Exchange has not been set. Thus, the case against Data Exchange and Collectcents is procedurally in the earlier stage. The case has proceeded through discovery, however, regarding the claims against the Just Energy Defendants and the state law claims have been fully litigated on the Just Energy Defendants' summary judgment motion. The vicarious liability claims against the Just Energy Defendants in Count VI are intertwined with the remaining claims against defendants Collectcents and Data Exchange because Count VI is premised on liability of Collectcents and Data Exchange for their alleged negligent conduct.

**\*15** More importantly, the Just Energy Defendants are entitled to summary judgment on the claims for invasion of privacy, negligence and vicarious liability regarding the challenged calls for the very same reason that summary judgment will be granted on the TCPA claim, namely that there is no connection between these entitles and the challenged calls. Assuming Klein can otherwise establish a claim for invasion of privacy, which requires an intentional rather than accidental invasion, O'Donnell v. United States, 891 F.2d 1079, 1083 (3d Cir. 1989), Klein has failed to adduce evidence connecting the calls to the Just Energy Defendants. Klein's negligence claim [12] requires that he show the Just Energy Defendants owed him a duty and breached that duty, Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1366 (3d Cir. 1993), which Klein cannot show because of the lack of connection of the Just Energy Defendants to the challenged calls. Finally, without ruling on the pending claims for negligence against defendants Collectcents and Data Exchange, the court observes that Klein must adduce sufficient evidence of a connection of the Just Energy Defendants to the challenged calls and to the conduct of defendants Collectcent and Data Exchange in order to hold the Just Energy Defendants vicariously liable, which he failed to do on this record. In this posture, the considerations of judicial economy, convenience, fairness and comity, weigh in favor of supplemental jurisdiction regarding the state law claims against the Just Energy Defendants. Cindrich v.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 116 of 233

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

2016 WL 3539137

Fisher, 341 Fed.Appx. 780, 790 (3d Cir. 2009). Accordingly, supplemental jurisdiction over these claims will be exercised and summary judgment will be entered in favor of Just Energy Defendants on the state law claims in Counts II, IV and VI because no reasonable jury could render a verdict in favor of Klein and against the Just Energy Defendants on these claims.

### C. Possible Amendment in Response to Motion for Summary Judgment

Perhaps recognizing the lack of evidentiary connection between the Just Energy Defendants and the challenged calls, Klein states in a footnote in his opposition that "[t]o the extent necessary, Plaintiff intends to request leave of Court to add 'Commerce Energy, Inc. d/b/a Just Energy' as a named Defendant and also to explore the dismissal of some of the existing named Just Energy Defendants, if appropriate." (ECF 62 at 5 n.1). A contention in a brief does not substitute for sufficient evidence justifying denial of summary judgment. Cf United States ex rel. Zizic v. Q2Administrators, LLC, 728 F.3d 228, 243 (3d Cir. 2013)(bare request in opposition to motion to dismiss insufficient); Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1280 (D.C. Cir. 1994) ("bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment was sought...—does not constitute a motion within the contemplation of rule 15(a)."); Williams v. New Castle County, 970 F.2d 1260, 1266 n. 4 (3d Cir. 1992); Zampogna v. Sheriff of Westmoreland County, PA, Civ. A. No. 13-233, 2013 WL 1909146, at *1 (W.D. Pa. May 8, 2013). Even if a motion or proposed amendment may be forthcoming as suggested, it does not forestall summary judgment in favor of the Just Energy Defendants on the TCPA claim. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir 2007) (request for leave to amend without submitting a draft amended complaint is fatal to the request). The Motion for Summary Judgment was filed on February 26, 2016, Klein has filed a response in opposition, the Just Energy Defendants have filed their Reply, and the issue has been joined. Klein's " 'just you wait and see" approach will not be countenanced at this juncture. See FED. R. CIV. P. 1 (2015) (The Federal

Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding).' " Lee v. Sixth Mount Zion Baptist Church of Pittsburg, Civ. Act. No. 15-1599, 2016 WL 2344529, at *6 (W.D. Pa. May 4, 2016) (denying informal and unsupported request for leave to amend).

**\*16** If Klein intends to file a motion to amend referred to, he will be required to satisfy Federal Rule of Civil Procedure 15 or 16, as applicable, regarding any such motion. See Alston v. Parker, 363 F.2d 229, 235 (3d Cir. 2004).

As a result of the lack of evidence showing a connection between any of the Just Energy Defendants to the calls, the Just Energy Defendants are entitled to summary judgment with respect to Klein's state law claims against them.

## VI. CONCLUSION

Viewing the evidence in the light most favorable to Klein, the court concludes that Klein failed to adduce sufficient evidence for a reasonable jury to find that any of the Just Energy Defendants either made the calls, that any of the calls were made on their behalf, or that they had any relevant connection to the calls. On this record a reasonable factfinder could not find the Just Energy Defendants liable on Klein's claims against them for violation of the TCPA, invasion of privacy, negligence or vicarious liability for the negligence of Collectcents and Data Exchange. The Just Energy Defendants' motion for summary judgment on Counts I, II, IV and VI will be granted. Judgment will be entered against Klein and in favor of the Just Energy Defendants on all counts against them.

An appropriate order follows.

### All Citations

Not Reported in Fed. Supp., 2016 WL 3539137

---

### Footnotes

1    Klein sues defendant Collectcents for negligence under Pennsylvania law in Count III and sues defendant Data Exchange for negligence under Pennsylvania law in Count V.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 117 of 233
Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)
2016 WL 3539137

2  The factual background is taken from the undisputed evidence of record, including the parties' Combined Statement of Material Facts, which synthesizes as noted the Just Energy Defendants' Concise Statement of Material Facts with Klein's responses stated in his opposition, (ECF No. 68); evidence not properly disputed on the record; and the disputed evidence of record viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 255 (1986).

3  The individual who signed up as a customer of Commerce Energy, Inc. d/b/a Just Energy is not a party to or involved in this suit and the validity of her debt is not at issue. The court will refer to her simply as P.S.

4  Klein does not dispute the independent contractor status of Frisco.

5  Klein added Data Exchange as a defendant to this action with the filing of his second amended complaint. (ECF No. 51). The status of Data Exchange as successor to QRO is, in part, the subject of the motion to dismiss filed by Data Exchange, (ECF No. 78), but is not raised as an issue relative to the present motion for summary judgment.

6  Given Klein's dispute regarding the Just Energy Defendants' characterization of Collectcents, Data Exchange and QRO as independent contractors, for purposes of the undisputed facts that the court relies on in ruling on this motion for summary judgment the court will not refer to them as independent contractors.

7  Ninety calls by any fair characterization would constitute numerous calls for the purpose of the court's analysis. See Leahey v. Franklin Collection Serv., Inc., 756 F.Supp.2d 1322, 1328 (N.D. Ala. 2010) (referring to 29 calls as numerous); see also Hoover v. Monarch Recovery Mgmt., Inc., 888 F. Supp. 2d 589, 588-89 (E.D. Pa. 2012) (allegation that ten calls a week for eleven weeks was sufficient to survive motion to dismiss on the issue of intent to annoy, abuse or harass).

8  Automatically dialed calls are commonly referred to as "robocalls." See Leyse, 804 F.3d at 322.

9  Audio recordings of twelve phone calls were intended to be filed as Appendix 1 to plaintiff's opposition. The Appendix, however, appeared to be merely a scan of a page listing the recordings. (ECF No. 62-1). Pursuant to an order of the court (ECF No. 71), plaintiff provided copies of the audio files for the court's review.

10  The court reviewed additional records related to the challenged calls and compared them with the audio call records as submitted by Klein. (ECF No. 62-1). Ten of the twelve calls appear to be reflected on Klein's Google VoIP service records that he provided to the Just Energy Defendants in discovery as Google Voice or Text messages. (ECF No. 60-9). The pages from Klein's Google VoIP service that presumably would include the dates of the other two calls, the voice messages provided by Klein for a February 7, 2014 call and a March 24, 2014 call, are not in the record for the court's review.

11  With respect to the statement made on the voice messages that the call is "from Just Energy Ohio," (ECF No. 62-1), whatever the reason for the statement, based on the uncontroverted evidence the call was made for Commerce Energy, Inc. d/b/a Just Energy and not Just Energy Ohio, LLC, sued here, and Just Energy Ohio, LLC had dissolved effective in 2010 well prior to the time when the calls were made. CCMSF ¶¶ 17, 26, 43

12  The court dismissed Klein's claim for negligence against the Just Energy Defendants in his original complaint because Klein failed to make any factual allegations a) that would be sufficient to plausibly implicate any of the four scenarios for recovery of emotional distress; and b) that he suffered physical manifestation of his emotional distress. (ECF No. 21 at 9). Although Klein's second amended complaint alleges that he suffered physical manifestation of emotional distress, (ECF No. 51 ¶ 39), as with the original complaint addressed in the court's prior opinion, (ECF 21 at 8-9), Klein failed to adduce sufficient evidence to support any of the four factual scenarios required under Pennsylvania law. Daly v. New Century Trans, Inc., No. 11-2037, 2012 WL 4060687, at *7 (M.D. Pa. Sept. 14, 2012) (citing Toney v. Chester Cnty. Hosp., 961 A.2d 192, 197-98

2016 WL 3539137

(Pa. Super. Ct. 2008)). Klein did not allege any of the four factual scenarios required for negligent infliction of emotional distress or adduce sufficient evidence for purposes of summary judgment. On this basis alone the Just Energy Defendants are entitled to summary judgment on the count for negligence and the count for vicarious liability of the Just Energy Defendants for the alleged negligence of defendants Collectcents and Data Exchange/QRO.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 119 of 233
Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)

2021 WL 3634162

KeyCite Yellow Flag

Distinguished by  Atkinson v. Choice Home Warranty,  D.N.J.,  January 11, 2023

2021 WL 3634162
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Brennan LANDY, Plaintiff,
v.
NATURAL POWER SOURCES,
LLC d/b/a Suntuity, Defendant.

Case No. 3:21-cv-00425
|
Filed 08/17/2021

**Attorneys and Law Firms**

Jeffrey Steven Arons, Arons & Arons LLC, South Orange, NJ, for Plaintiff.

Adlai J.J. Small, Spiro LLC, Short Hills, NJ, for Defendant.

**MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS AND ALLOWING PLAINTIFF TO AMEND COMPLAINT**

PETER G. SHERIDAN, U.S.D.J.

### I. Introduction

**\*1**  This matter comes before the Court on Defendant Natural Power Sources, LLC d/b/a Suntuity's ("Suntuity" or "Defendant") motion to dismiss Brennan Landy's ("Plaintiff" or "Landy") class action complaint under the Telephone Consumer Protection Act ("TCPA"), 42 U.S.C. § 227. (ECF No. 7.) The Court heard oral argument on July 20, 2021. For the reasons that follow, Defendant's motion to dismiss is granted without prejudice.

### II. Background

On or around October 29, 2020, Landy received a call on his cell phone from an unknown caller who solicited him to purchase green energy products. (Compl. ¶¶ 18-20, ECF No. 1.) Landy heard a pause and click before an operator came on the line, which allegedly indicates the use of an automatic telephone dialing system ("ATDS"). (Compl. ¶ 19.)

Then, Landy was transferred to an operator named Steve who identified himself as working for US Home Solar. (Compl. ¶ 21.) Landy alleges he heard a beep – but not a pause or click – before being connected with Steve. (*Id.*) Steve also solicited Landy to purchase green energy products. (*Id.*)

After speaking with Steve, Landy alleged he was transferred via a "warm transfer" [1] to a third operator named Evelyn, from Suntuity, who solicited Landy to purchase Suntuity's solar energy products. (Compl. ¶¶ 7, 22.) Landy does not allege that he heard a pause and click before being connected to Evelyn. After the call with Evelyn concluded, Landy received a follow-up email from Brendan McGrane, another Suntuity representative, who solicited Suntuity's products. (Compl. ¶ 23.)

Landy claims he never consented to the initial call and, therefore, it was made in violation of the TCPA. (Compl. ¶¶ 24-26.) He alleges Suntuity is vicariously liable for that violation because it "knew about the calls, received the benefits of the calls, directed the calls to be placed, and ratified the calls." (Compl. ¶ 16.)

Landy asserts that he and the proposed class members sustained injuries in the form of aggravation, nuisance, invasion of privacy, monies paid to the wireless caller for the receipt of unwanted calls, interference with the use and enjoyment of their phones, depletion of battery life, and wear and tear on their phones. (Compl. ¶¶ 27, 42.) He defines the proposed class as follows:

> **No Consent Class:** All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the Class; (2) received at least one call from Defendant, or a third person acting on behalf of Defendant; (3) on the person's cellular telephone; (4) for the purpose of selling Defendant's solar products and services; (5) using the same equipment that was used to call the Plaintiffs; and (6) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant

2021 WL 3634162

claims it obtained prior express written consent to call the Plaintiffs.

(Compl. ¶ 29.) Landy alleges that his claims are typical of the class members, he can adequately represent the class, there are common questions of law and fact, Defendant's conduct is common to all class members, and the class members are too numerous to be individually joined. (Compl. ¶¶ 31-35.)

**\*2** Landy timely filed his complaint on January 8, 2021. *See* 28 U.S.C. § 1658; *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 608 (3d Cir. 2018). He seeks an injunction against further unauthorized calls, as well as statutory damages and attorneys' fees for class members under the TCPA's private right of action provision, 47 U.S.C. § 227(b)(3)(B). (Compl. ¶¶ 28, 42.)

### III. Jurisdiction & Venue

This Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, "because each of the alleged Classes consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million." (Compl. ¶ 5.) Venue is proper under 28 U.S.C. § 1391(b) because Suntuity's headquarters are in New Jersey. (Compl. ¶ 7.)

### IV. Legal Standard

Under Fed. R. Civ. P. 8(a)(2), a complaint "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss asserts a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d. Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). This standard requires showing more than just the possibility that the defendant acted unlawfully. *Id.*

In reviewing a motion to dismiss, the Court "accept[s] as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant."

*Monroe v. Beard*, 536 F.3d 198, 205 (3d. Cir. 2008). The court should disregard legal conclusions and "recitals of the elements of a cause of action, supported by mere conclusory statements." *Santiago v. Warminster Township*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

The Third Circuit set forth a three-part test for determining whether or not a complaint may survive a motion to dismiss for failure to state a claim:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Id.* at 130 (alteration in original) (quoting *Iqbal*, 556 U.S. at 675, 679, 129 S.Ct. 1937).

### V. Discussion

### A. TCPA Claim

"To assert a claim under the TCPA's autodialer provision, 47 U.S.C. § 227(b)(1)(A)(iii), a plaintiff must show that the defendant: (1) called her cell phone; (2) using an automatic telephone dialing system ("ATDS"); (3) without her prior express consent." *Valdes v. Century 21 Real Estate, LLC*, No. CV 2:19-05411, 2019 WL 5388162, at \*2 (D.N.J. Oct. 22, 2019). Pursuant to the TCPA's restrictions on use of automated telephone equipment:

> **\*3** (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States —
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> [...]
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 121 of 233

Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)

2021 WL 3634162

any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

U.S.C. § 227(b)(1)(A)(iii).

Landy alleges that he was called on his cell phone without his consent. (Compl. ¶¶ 10-11.) The identity of the initial caller is unknown. (Compl. ¶ 18-20.) However, Landy alleges that because he was eventually transferred to Suntuity, the previous callers acted on Suntuity's behalf and at its direction, thereby establishing vicarious liability. (Compl. ¶ 16.)

### 1. Direct Liability

Courts have held that under the TCPA, 47 U.S.C. § 277(b)(1)(A)(iii), liability is imposed on the party that places the call or text. *See Klein v. Just Energy Grp., Inc.*, No. CV 14-1050, 2016 WL 3539137, at \*8 (W.D. Pa. June 29, 2016) (citing *Melito v. Am. Eagle Outfitters, Inc.*, Civ. Act. Nos. 14-02240, 15-39, and Nos. 15-2370, 2015 WL 7736547, at \*4 (S.D.N.Y. Nov. 30, 2015)). Here, Landy does not allege that Suntuity placed the initial call to Landy; he only alleges the initial caller used an ATDS to call him without his consent. Once that call was initiated, he was transferred to US Home Solar and Suntuity. Therefore, Landy can only pursue a TCPA claim against Suntuity on a vicarious liability theory.

### 2. Vicarious Liability

An entity cannot be held liable under the TCPA "merely because they want to benefit from the call." *Id.* at \*8; *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6593 (F.C.C. 2013). Instead, a defendant that is not the initial caller can be held vicariously liable under the TCPA based on common law agency principles. *Klein v. Com. Energy, Inc.*, 256 F. Supp. 3d 563, 584 (W.D. Pa. 2017). Vicarious liability can be established through actual authority, apparent authority, or ratification. *Cunningham v. Cap. Advance Sols., LLC*, Civil Action No. 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590, at \*6, 2018 WL 6061405 (D.N.J. Nov. 20, 2018). The following subsections will discuss each of those theories.

#### i. Actual Authority

Landy does not allege facts that establish an agency theory through actual authority. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the

principal wishes the agent so to act." *Cunningham* 2018 WL 6061405, at \*17 (quoting *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 120 (3d Cir. 2013)).

A plaintiff sufficiently pleads actual authority when the allegations establish that the defendant consented to or directed the agent to act on its behalf. *Cunningham*, 2018 WL 6061405, at \*18. In *Cunningham*, the plaintiff alleged that, pursuant to a contract, Capital Advance Solutions, LLC ("Capital"), placed telemarketing calls on behalf of the bank defendants and received a commission for each successful loan solicitation. *Id.* at \*7. Further, Capital allegedly facilitated the submission of loan applications to the bank defendants, as acknowledged in the approval and rejection letters the defendants sent to loan applicants. *Id.* Based on those allegations, the court could "reasonably infer that the Bank Defendants exercised a certain level of control over, or, at a minimum, were aware of, Capital's telemarketing efforts." *Id.*

**\*4** Landy does not allege any facts that establish the initial caller had actual authority to make telemarketing calls on Suntuity's behalf. Unlike *Cunningham*, in which the plaintiff alleged specific facts indicating the defendants directed or consented to solicitation via Capital, Landy simply alleges that because he was transferred to Suntuity, the initial caller was acting at Suntuity's direction. He does not plead facts to support his argument that Suntuity authorized the initial caller, directed them, or was aware of their conduct. As such, the complaint does not sufficiently allege an actual authority relationship between Suntuity and the initial caller.

#### ii. Apparent Authority

Landy does not allege enough facts to establish vicarious liability under apparent authority. "[A]pparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship." *Cunningham*, 2018 WL 6061405, at \*6 (quoting *Covington*, 710 F.3d at 120). In a declaratory ruling, the Federal Communications Commission stated that:

> Apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 122 of 233

Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)

2021 WL 3634162

control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote, or reviewed the outside entity's telemarketing scripts.

*In re Dish Network, LLC*, 28 F.C.C. Rcd. at 6593.

A plaintiff sufficiently pleads apparent authority "when a third party reasonably believes that the ... agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations." *Valdes*, 2019 WL 5388162 at *4 (omission in original) (quoting *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167–68 (D. Idaho 2011)). In *Valdes*, the plaintiff alleged that defendant Century 21 was "heavily involved in realtors' unsolicited calls," including directing and training realtors on how to make solicitation calls and what to say. *Id.* Further, the defendant allegedly told callers "to identify themselves as calling on behalf of Century 21, to offer the Century 21 pledge," and it "facilitated realtors' access to lead lists and autodialers." *Id.* Those allegations were sufficient for the court to hold that a third party could reasonably believe that the realtors had authority to act on behalf of Century 21, thereby establishing apparent authority. *Id.*

Unlike the plaintiff in *Valdes*, Landy does not plead any facts that indicate Suntuity's conduct led him to reasonably believe the initial caller had authority to act on Suntuity's behalf. He merely alleges that, because he was transferred to Suntuity and was solicited to buy green energy products, Suntuity must have directed the initial call and known about the initial caller's TCPA violation. Landy's complaint, however, does not assert facts that suggest the initial caller had any relationship with Suntuity, or that would lead a reasonable person to believe the initial caller had authority to act on Suntuity's behalf.

Further, Landy's allegation that Suntuity sent a follow-up email to solicit its products does not support an apparent authority theory. In *Smith v. Vision Solar*, the plaintiffs received telemarketing calls from an Exchange Energy representative, who attempted to sell solar products and stated that Vision Solar would contact them to follow up. *Smith v. Vision Solar LLC*, No. CV 20-2185, 2020 WL 7230975, at *1-2 (E.D. Pa. Dec. 8, 2020). After the initial call from Exchange Energy, Vision Solar called at least one plaintiff to follow up about the solar products. *Id.* Apparent authority was established because the plaintiff alleged that the "purported principal followed-up with the plaintiff after she provided information to the telemarketer, thereby demonstrating that the principal knew of and benefited from the marketing calls." *Id.* at *3. By contrast, Landy does not allege that the initial caller referenced Suntuity, told him to expect contact from Suntuity, or otherwise indicated a relationship with Suntuity.

### iii. Ratification

**\*5** Finally, Landy does not plead facts that support an agency theory based on ratification.

(1) Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.

(2) A person ratifies an act by

(a) manifesting assent that the act shall affect the person's legal relations, or

(b) conduct that justifies a reasonable assumption that the person so consents.

Restatement (Third) Of Agency § 4.01 (2006).

A plaintiff must plead facts that indicate the defendant consented to the initial caller making calls on the defendant's behalf. *Just Energy*, 2016 WL 3539137, at *12. In *Just Energy*, the plaintiff alleged that the defendant ratified telemarketing and debt collection calls made by Collectcents employees, who identified themselves as "Just Energy" during the phone calls. *Id.* at *4, 12. The court rejected the plaintiff's argument that the defendant consented to Collectcents' conduct simply because it might have received a benefit from the calls. *Id.* at *12. Because the plaintiff's allegation was based on speculation that the defendants could be receiving a benefit, and there was no evidence of defendant's affirmance, assent, or consent, the facts pleaded were insufficient to support a ratification theory. *Id.*

2021 WL 3634162

Similarly, Landy's complaint does not include facts that show Suntuity manifested assent to the initial caller calling on its behalf. Like the plaintiff in Just Energy, Landy speculates that because he was eventually transferred to Suntuity and solicited to buy green energy products, Suntuity must have assented to and received a benefit from the prior callers' actions. Such speculative allegations are insufficient to allege an agency relationship based on ratification.

In sum, Landy's complaint does not allege enough facts to indicate that there was an agency relationship between the initial caller and Suntuity. As such, he has failed to allege that Suntuity can be held vicariously liable for the initial caller's TCPA violations.

### B. ATDS

To support a claim under the TCPA, the plaintiff must demonstrate the nonconsensual call was made using an ATDS. *See* 47 U.S.C § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In the Third Circuit, pleading that there was a brief pause or silence before the operator speaks is sufficient to allege the use of an ATDS. *Hazan v. Wells Fargo Home Mortg.*, No. CV1810228 (MAS/TJB), 2020 WL 919183, at *3 (D.N.J. Feb. 26, 2020). Thus, Landy's allegation that he heard a pause before the operator of the initial call came on the line is sufficient to allege that an ATDS was used. (*See* Compl. ¶ 19.)

### C. Consent

To allege a violation under the TCPA, the call must be made without the called party's prior express consent. 47 U.S.C. § 227(b)(1)(A); *Valdes*, 2019 WL 5388162 at *2. Suntuity argues that, because Landy admitted he was transferred to Evelyn via a "warm transfer," he consented to speak to Suntuity. However, neither party defines the term "warm transfer." A warm transfer occurs when the first operator stays on the line with the called party during a transfer

until the second operator answers. *See, e.g.*, *Reeves v. Nuvox Commc'ns*, No. C.A.6:08-4031(HMH/WMC), 2009 WL 4016617, at *5 (D.S.C. Nov. 18, 2009), *aff'd sub nom. Reeves v. Nuvox Commc'ns, Inc.*, 384 F. App'x 255 (4th Cir. 2010); *Tate v. Washington Mut.*, No. 02 C 5853, 2004 WL 1794924, at *1 (N.D. Ill. Aug. 10, 2004). That definition does not imply that the called party consented to speak to either operator.

### VI. Conclusion

**\*6** Because Landy does not provide enough facts to plausibly allege a claim against Suntuity under the TCPA, Defendant's motion to dismiss shall be granted without prejudice. Landy shall have 30 days to file an amended complaint if he wishes to do so. Defendant may move to dismiss the amended complaint in accordance with the timeframes set forth in the Federal Rules of Civil Procedure.

### ORDER

THIS MATTER having come before the Court on a motion to dismiss filed by Defendant Natural Power Sources, LLC d/b/a Suntuity (ECF No. 7); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons,

IT IS on this 16th day of August, 2021,

ORDERED that Defendants' motion to dismiss is **granted without prejudice**, and it is further

ORDERED that Landy will have 30 days to file an amended complaint.

### All Citations

Not Reported in Fed. Supp., 2021 WL 3634162

---

**Footnotes**

2021 WL 3634162

1    Neither Plaintiff nor Defendant defines this term. Its significance will be discussed in Section V.C.

---

**End of Document**                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

2013 WL 350814

KeyCite Yellow Flag

Declined to Extend by    Abramson v. AP Gas & Electric (PA), LLC,
W.D.Pa.,   February 6, 2023

2013 WL 350814
Only the Westlaw citation is currently available.
United States District Court,
N.D. Indiana,
Hammond Division.

Maria MALDONADO–RODRIGUEZ, Plaintiff,
v.
CITIBANK, N.A., and Javitch, Block
& Rathbone, LLC, Defendants.

Cause No. 2:12–CV–150 JD.
|
Jan. 28, 2013.

**Attorneys and Law Firms**

Ryan P. Worden, Taylor Worden Law, Indianapolis, IN, for
Plaintiff.

Loren Patrick Raven, Indianapolis, IN, for Defendants.

***OPINION AND ORDER***

JON E. DEGUILIO, District Judge.

**\*1**  On April 18, 2012, Plaintiff Maria Maldonado–
Rodriguez ("Rodriguez") sued Defendants Citibank, N.A.,
("Citibank") and Javitch, Block & Rathbone, LLC, ("JB
& R") for alleged violations of the Fair Debt Collections
Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* [DE 1].
On April 19, 2012, summons were issued to both defendants.
On May 14, 2012, Citibank moved to dismiss the Complaint
against it for failure to state a claim, pursuant to Fed.R.Civ.P.
12(b)(6). [DE 4]. In the motion, Citibank argues that it is a
"creditor," and not a "debt collector," for the purposes of the
FDCPA, and that Rodriguez therefore has no cause of action
against it. JB & R did not join the motion, instead filing an
Answer on the same day. [DE 6]. Rodriguez never responded
to Citibank's motion to dismiss, but did try (unsuccessfully) to
file an Amended Complaint which differed from the original
Complaint only in that it dropped Citibank from the litigation,
thus appearing to admit that there is some merit to Citibank's

argument. [DE 8; DE 10; DE 11]. The court now grants
Citibank's motion and dismisses Citibank from this litigation.

**DISCUSSION**

**A. Standard of Review**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal if the complaint
fails to set forth a claim upon which relief can be granted. *See*
*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,*
382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); *United*
*States v. Singer Mfg. Co.,* 374 U.S. 174, 83 S.Ct. 1773, 10
L.Ed.2d 823 (1963); *Xechem, Inc. v. BristolMeyers Squibb*
*Co.,* 372 F.3d 899 (7th Cir.2004). Generally speaking, courts
faced with a Rule 12(b)(6) motion must inquire whether the
complaint satisfies the "notice-pleading" standard. Under that
test, "a complaint must provide a short and plain statement of
the claim showing that the pleader is entitled to relief, which
is sufficient to provide the defendant with 'fair notice' of the
claim and its basis." *Maddox v. Love,* 655 F.3d 709, 718 (7th
Cir.2011) (citing *Erickson v. Pardus,* 551 U.S. 89, 93, 127
S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam); *Bell Atl.*
*Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d
929 (2007)). In evaluating the sufficiency of a claim under
the notice-pleading standard, "we construe [the complaint] in
the light most favorable to the nonmoving party, accept well-
pleaded facts as true, and draw all inferences in her favor."
*Reynolds v. CB Sports Bar, Inc.,* 623 F.3d 1143, 1146 (7th
Cir.2010) (citing *Reger Dev. LLC v. Nat'l City Bank,* 592 F.3d
759, 763 (7th Cir.2010) (internal quotation marks omitted)).

But while notice-pleading remains the rule, the Supreme
Court has more recently promulgated a "two-pronged
approach" to the consideration of a motion to dismiss.
*Ashcroft v. Iqbal,* 556 U.S. 662, 679–80, 129 S.Ct. 1937,
173 L.Ed.2d 868 (2009) (citing *Twombly* ). After *Iqbal,*
the court begins "by identifying pleadings that, because they
are no more than conclusions, are *not* entitled to the
assumption of truth." *Id.* (emphasis added). This includes
legal conclusions couched as factual allegations, *see Bonte v.*
*U.S. Bank, N.A.,* 624 F.3d 461, 465 (7th Cir.2010), as well as
"threadbare recitals of a cause of action's elements, supported
by mere conclusory statements [.]" *Iqbal,* 556 U.S. at 663
(citing *Twombly,* 550 U.S. at 555). Next, "[w]hen there *are*
well-pleaded factual allegations, a court should assume their
veracity and then determine whether they *plausibly* give rise
to an entitlement to relief." *Id.* at 679 (emphasis added).

**\*2** "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. 678. Accordingly, while the plaintiff need not plead "detailed factual allegations [,]" *see Reynolds,* 623 F.3d at 1146 (citing *Iqbal* ), the complaint "must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level ." *Maddox,* 655 F.3d at 718 (citing *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.,* 536 F.3d 663, 668 (7th Cir.2008) (emphasis in original)); *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir.2008). "But a plaintiff's claim need not be probable, only plausible: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.' " *Indep. Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 935 (7th Cir.2012) (quoting *Twombly,* 550 U.S. at 556). "To meet this plausibility standard, the complaint must supply 'enough fact to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *See Iqbal,* 556 U.S. at 679.

**B. Analysis**

The question in this case is whether Rodriguez's Complaint states a plausible claim for relief against Citibank under the FDCPA. To obtain relief under the FDCPA, a plaintiff must plead and prove four elements:

(1) the plaintiff is any natural person who is harmed by violations of the FDCPA, or is a "consumer" within the meaning of  15 U.S.C. § 1692a(3) or  § 1692c(d) for purposes of a cause of action under  15 U.S.C. § 1692c (communication in connection with debt collection) or  15 U.S.C. § 1692e(11) (concerning failure to provide the consumer debtor with a "mini-Miranda" warning);

(2) the "debt" arises out of a transaction entered primarily for personal, family, or household purposes;  15 U.S.C. § 1692a(5);

(3) **the defendant collecting the debt is a "debt collector" within the meaning of  15 U.S.C. § 1692a(6);** and

(4) the defendant has violated, by act or omission, a provision of the FDCPA,  15 U.S.C. § 1692a–1692*o*;  15 U.S.C.A. 1692a;  15 U.S.C.A. § 1692k.

Marjorie Wengert,  29 CAUSES OF ACTION 2D 1, § 9 (updated December 2012) (emphasis added). Citibank's argument goes to the third element. It argues that Rodriguez failed to plausibly plead that Citibank is a "debt collector," as defined in  15 U.S.C. § 1692a(6), instead pleading that Citibank is a "creditor," [DE 1 ¶ 9], and that Rodriguez has therefore failed to state a claim. As a corollary, Citibank argues that it undeniably *is* a "creditor," as that term is defined at  15 U.S.C. § 1692a(4), and that "creditors" cannot also be "debt collectors" under the FDCPA. Citibank is correct on both points.

**1. Statutory Definitions and Distinctions in the Case Law**

**\*3** The FDCPA defines "debt collector" as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

 15 U.S.C. § 1692a(6). It defines a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed[.]"  § 1692a(4). Viewing the two definitions together, one can see 4 that a "creditor" who is collecting its own debt is not also a "debt collector" unless it "uses any name other than [its] own" in such a way as to indicate that a third party is involved.

The case law bears the distinction out. " '[A] distinction between creditors and debt collectors is fundamental to the FDCPA, which does not regulate creditors' activities at all.'

2013 WL 350814

" *Schmitt v. FMA Alliance,* 398 F.3d 995, 998 (8th Cir.2005) (quoting *Randolph v. I.M.B.S., Inc.,* 368 F.3d 726, 729 (7th Cir.2004)); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 106 (6th Cir.1996) ("a debt collector does not include the consumer's creditors") (quoting *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir.1985)); *Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 403 (3d Cir.2000) ( "Creditors —as opposed to 'debt collectors'—generally are not subject to the FDCPA.") (citing *Aubert v. Am. Gen. Fin., Inc.,* 137 F.3d 976, 978 (7th Cir.1998)); *see also Scott v. Wells Fargo Home Mortg. Inc.,* 326 F.Supp.2d 709, 717 (E.D.Va.2003) ("It is well-settled that provisions of the FDCPA generally apply only to debt collectors .... And, creditors are not liable under the FDCPA." (citations omitted)). Thus, in order to have stated a claim against Citibank, Rodriguez must have plausibly pleaded that Citibank *is* a debt collector and *is not* a creditor. [1]

### 2. Application to the Complaint

Only three paragraphs of the Complaint are relevant to this dispositive question. In paragraph 9, Rodriguez states:

> Defendant CITIBANK ... is a creditor as that term is defined by *15 U.S.C. 1692a(4),* and allegedly extended credit to the Plaintiff.

[DE 1 ¶ 9 (emphasis original) ]. In paragraph 11, Rodriguez states:

> Defendants are collection agencies that in the ordinary course of business, regularly, on behalf of itself or others, engage in debt collection.

[DE 1 ¶ 11]. In paragraph 13, Rodriguez states:

> Defendants, and each of them, engage in business, the principle of which is the collection of debts using mail and telephone. Defendants, and each of them, regularly and in the ordinary

course of business attempts to collect consumer debts alleged to be due.

**\*4** [DE 1 ¶ 13].

The first step of the *Iqbal* analysis is "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679–80. The same goes for "threadbare recitals of a cause of action's elements, supported by mere conclusory statements [.]" *Iqbal,* 556 U.S. at 663. Putting aside for the moment that these three paragraphs of the Complaint are contradictory, they appear to be little more than "threadbare recitals" of the statutory definitions. Paragraph 9 simply cites the statutory definition of a creditor, and states that Citibank "allegedly" qualifies. Paragraphs 11 and 13 are essentially a copy-and-paste of the language defining a "debt collector" at 15 U.S.C. § 1692a(6). There is no attempt to substantiate these factual allegations with information specific to this case and to these supposed debt collectors anywhere in the Complaint. That alone is cause for concern.

More importantly, however, it is clear that Citibank is, in fact, a creditor. First, Rodriguez herself acknowledged as much by pleading that Citibank is a "creditor" under the FDCPA, and by failing to plead any special circumstances that would allow it to be considered a "debt collector" as well. [DE 1 ¶ 9]. Second, while the Court's consideration of a motion to dismiss is generally limited to the pleadings and any exhibits directly attached thereto, the Seventh Circuit has held that "a district court may take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment." *Anderson v. Simon,* 217 F.3d 472, 474–75 (7th Cir.2000) (citing *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir.1994)). That includes court documents relevant to the issues in the Complaint. *See Cancer Found., Inc. v. Cerberus Capital Mgmt., LP,* 559 F.3d 671, 676 n. 2 (7th Cir.2009). Citibank has produced records from the Lake County Superior Court [DE 5–1; DE 5–2; DE 5–3] which show that it sued Rodriguez to obtain money owing under a credit card agreement [DE 5–1] and obtained a judgment against Rodriguez in the amount of $1,729.65 plus costs and post-judgment interest. [DE 5–2]. These records are file-stamped and are certified by the clerk. The court has no reason to doubt their accuracy or authenticity, and takes judicial notice of them.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    3

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 128 of 233
Maldonado-Rodriguez v. Citibank, N.A., Not Reported in F.Supp.2d (2013)

2013 WL 350814

Accordingly, with respect to Rodriguez, Citibank is a "person ... to whom a debt is owed[,]" 15 U.S.C. § 1692a(4), and is therefore a creditor for purposes of the FDCPA. As a multitude of courts have previously held, Citibank is not acting as a "debt collector" when it acts to collect its own debts. *Wilkinson v. Wells Fargo, Citibank, et al,* 268 Fed.Appx. 476, 2008 WL 681810 (7th Cir.2008); *Citibank (South Dakota) N.A. v. Sablic,* 55 A.D.3d 651, 653, 865 N.Y.S.2d 649, 651 (N.Y.A.D. 2 Dept.2008) ("Citibank is not a debt collector within the meaning of the Fair Debt Collection Practices Act."); *Martin v. United Recovery Sys., LP,* 2007 Westlaw 4200385, 2 (M.D.Pa.2007) ( "Citibank originated the debt at issue; therefore, it is not a debt collector within the meaning of the FDCPA"); *Schafhauser v. Citibank (South Dakota) N.A.,* 2007 Westlaw 2752141, 3 (M.D.Pa.2007) ("Plaintiffs are credit card debtors who brought this federal action after being sued in a state court collection action. This is one of similar suits brought across the country against Citibank. In these cases, the courts have held that Citibank is not subject to the Fair Debt Collections Practices Act."); *Schlotman v. Citibank (South Dakota), N.A.,* 2007 Westlaw 1425474, 1 (W.D.Mo.2007); *Sankowski v. Citibank (South Dakota), N.A.,* 2006 Westlaw 2037463 (E.D.Penn.2006); *Doherty v. Citibank (South Dakota), N.A.,* 375 F.Supp.2d 158, 162 (E.D.N.Y.2005); *Kloth v. Citibank (South Dakota), N.A.,* 33 F.Supp.2d 115, 119 (D.Conn.1998); *Meads v. Citicorp Credit Servs., Inc.,* 686 F.Supp. 330, 333–34 (S.D.Ga.1988); *Ray v. Citibank (South Dakota), N.A.,* 187 F.Supp.2d 719, 722 (W.D.Ky.2001) (same). In light of that, Rodriguez's claim against Citibank is legally deficient, and it must be dismissed.

**\*5** Even if that were not the case, however, Rodriguez has also failed to plausibly plead the fourth element of an FDCPA claim with respect to Citibank: that "the defendant has violated, by act or omission, a provision of the FDCPA." In the "Factual Allegations" section of the Complaint, Rodriguez lists actions taken by JB & R to collect the debt which might in theory violate the FDCPA, but fails to allege that Citibank itself took *any* action whatsoever to collect the debt that was owed. [DE 1 ¶¶ 17–18]. Thus, even if Citibank *was* a "debt collector," the Complaint provides no

basis for a legal action against it under the FDCPA. In its brief, Citibank developed an argument rebutting what it believed might be a respondeat superior claim in Rodriguez's Complaint attempting to hold Citibank liable for the actions taken by JB & R as its debt collector. [DE 5 at 4–6]. The Court finds it unnecessary to consider that issue in depth. The "potential allegation" of respondeat superior in the Complaint amounts to one sentence:

> Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

[DE 1 ¶ 2]. Taken alone, that is woefully insufficient to state a claim of any sort. Far from plausibly pleading a claim for relief under a theory of respondeat superior, paragraph 2 fails to even mention the elements of such a claim. It is no reason to keep the suit against Citibank alive.

### CONCLUSION

In conclusion, Citibank's motion to dismiss [DE 4] is **GRANTED.** Citibank is a creditor, and not a debt collector, for the purposes of the FDCPA. As a result, the Complaint fails to state a claim against Citibank as a matter of law. JB & R did not join in the motion, and the suit may therefore proceed against the sole remaining defendant.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 350814

---

### Footnotes

1     Or, in theory, that Citibank is a creditor who attempted to collect its debt under another name. 15 U.S.C. § 1692a(6). But that exception is irrelevant here; Rodriguez has not even attempted to invoke it.

**Maldonado-Rodriguez v. Citibank, N.A., Not Reported in F.Supp.2d (2013)**

2013 WL 350814

---

**End of Document**                                                       © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

2025 WL 1181789
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Alexandria Division.

Thomas MATTHEWS, on behalf of himself
and others similarly situated, Plaintiff,
v.
SENIOR LIFE INSURANCE COMPANY, Defendant.

No. 1:24-cv-1550-MSN-LRV
|
Signed April 22, 2025

**Attorneys and Law Firms**

Anthony Ilo Paronich, Pro Hac Vice, Paronich Law, P.C., Hingham, MA, William Peter Robinson III, William Robinson, Esq, Vienna, VA, for Plaintiff.

David Mitchell Ross Jr., Wilson Elser Moskowitz Edelman & Dicker LLP, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

Michael S. Nachmanoff, United States District Judge

**\*1** This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint under Rule 12(b)(1) and 12(b)(6) (ECF 12). Upon consideration of the pleadings and for the reasons set forth below, the Court will GRANT the motion and dismiss Plaintiff's claim against Senior Life Insurance Company without prejudice.

## I. BACKGROUND [1]

This action stems from Plaintiff's receipt of three unwanted phone calls telemarketing life insurance by Senior Life Insurance Company ("SLIC"). Since August 31, 2021, Plaintiff's personal phone number has been registered with the National Do Not Call Registry. ECF 1 ("Compl.") ¶ 14. Plaintiff has never solicited information from SLIC prior to receiving these three calls. *Id.* ¶ 18. On August 26, 27, and 28, 2024, Plaintiff received scripted telemarketing calls from the number 239-359-5582. *Id.* ¶¶ 20-21. The calls asked Plaintiff qualifying questions for SLIC's life insurance. *Id.* ¶ 23. During one of the calls, Plaintiff spoke with Daniel Swisa, an employee of SLIC. *Id.* ¶ 24. SLIC continued to call Plaintiff

despite the fact that he indicated he was not interested. *Id.* ¶ 25. Plaintiff alleges he was harmed by these calls through the violation of his privacy, and that he was annoyed and harassed. *Id.* ¶ 27.

Plaintiff brings a single class action claim against SLIC for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *Id.* ¶¶ 46-50. He seeks injunctive relief prohibiting SLIC from calling telephone numbers on the National Do Not Call Registry or using an automated dialer, statutory damages, and other relief as the Court deems just and proper. *Id.* at 8-9. SLIC moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim. ECF 12 at 1.

## II. LEGAL STANDARD

"Article III of the Constitution requires a litigant to possess standing to sue in order for a lawsuit to proceed in federal court." *Ali v. Hogan*, 26 F.4th 587, 595 (4th Cir. 2022) (citation omitted). Without Article III standing, the Court is left without subject matter jurisdiction. *Id.* at 595-96 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) ("Standing is an 'irreducible constitutional minimum' that must be satisfied in all cases."). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Federal Rule of Civil Procedure 12(b)(1) allows a moving party to challenge the court's jurisdiction over the subject matter of the complaint. The moving party may either attack the complaint on its face, asserting that the complaint "fails to allege facts upon which subject matter jurisdiction can be based," or may challenge "the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *White v. CMA Const. Co.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (internal citations omitted). When analyzing a motion made pursuant to Fed. R. Civ. P. 12(b)(1), the court may resolve factual questions to determine whether it has subject matter jurisdiction. *Thigpen v. United States*, 800 F.2d 393, 396 (4th Cir. 1986), *overruled on other grounds, Sheridan v. United States*, 487 U.S. 392 (1988). The court may consider evidence extrinsic to the complaint in resolving such factual questions. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The court also may regard the pleadings as "mere evidence." *Kuntze v. Josh Enterprises, Inc.*, 365 F. Supp. 3d 630, 636 (E.D. Va. 2019) (citation omitted). The plaintiff bears the burden

Matthews v. Senior Life Insurance Company, Slip Copy (2025)

2025 WL 1181789

of establishing the court's subject matter jurisdiction. *Trinity Outdoor, L.L.C. v. City of Rockville*, 123 F. App'x 101, 105 (4th Cir. 2005) (per curiam).

**\*2** Alternatively, a court may dismiss a claim when the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss should be granted unless the plaintiff has "set forth 'enough facts to state a claim to relief that is plausible on its face.' " *Taylor v. First Premier Bank*, 841 F. Supp. 2d 931, 932 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, the court must construe the complaint, read as a whole, in the light most favorable to the plaintiff and take the facts asserted therein as true. *LeSueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012). The general pleading standard requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief ... [and that] give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007) (quotations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

The TCPA provides: "It shall be unlawful for any person ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A) (iii). And, the TCPA provides a private right of action for individuals to receive $500 in damages for each violation, plus treble damages if the violation was willful or knowing. 47 U.S.C. § 227(b)(3).

### III. ANALYSIS

#### A. Defendant's Rule 12(b)(1) Challenge.

SLIC makes a factual challenge to Plaintiff's standing. *See* ECF 13 at 3 ("[I]n support of its factual challenge of Plaintiff's standing...."); ECF 21 at 2 ("...SLIC made a factual challenge to Plaintiff's standing based on his inability to establish traceability or redressability."). Indeed, SLIC includes a declaration providing facts in support of its motion to dismiss for lack of traceability and redressability. *See* ECF 13-1. SLIC argues that Plaintiff's factual allegations in support of liability against SLIC are "incorrect" because SLIC did not initiate the calls to Plaintiff. ECF 13 at 3-4. Such an attack is a factual challenge. *Kuntze v. Josh Enterprises, Inc.*, 365 F. Supp. 3d 630, 645 (E.D. Va. 2019) (explaining that challenging the

"accuracy" of jurisdictional allegations is a factual challenge). SLIC does not attack the injury in fact prong of standing, and the Court finds that Plaintiff has sufficiently alleged an injury in fact based on purported privacy violations, annoyance, and harassment. *See Bryant v. Byron Udell & Assocs. Inc.*, No. 123CV00414AJTLRV, 2023 WL 5180351, at \*3 (E.D. Va. Aug. 11, 2023).

When assessing jurisdictional facts, the court must determine whether the facts are intertwined with the merits. If the facts are not intertwined with the merits, the court is "permitted to weigh evidence and resolve factual disputes to determine jurisdiction[.]" *Kuntze*, 365 F. Supp. 3d at 638. Alternatively, the facts are intertwined with the merits when the "facts [are] necessary to prove the merits of the case such that a 12(b) (1) motion is, essentially, an indirect attack on the plaintiff's alleged factual merits." *Id.* In that case, the court must proceed with the case on the merits, "which entails either denying the 12(b)(1) motion and proceeding with the case, or converting the 12(b)(1) motion into a motion for summary judgment on the merits[.]" *Id.* The court will not "[weigh] the evidence and [resolve] factual disputes," instead, it will proceed with discovery either after the denial of the 12(b)(1) motion or by treating it as a motion for summary judgment and taking it "under advisement until the parties have conducted adequate discovery." *Id.*

**\*3** As such, this Court must evaluate whether the facts dispositive of Plaintiff's claim are intertwined with the facts dispositive of SLIC's jurisdictional challenge. The Court finds the facts are intertwined. Plaintiff's TCPA claim requires that he "show that the defendant actually, physically initiated the telephone call at issue." *Aaronson v. CHW Grp., Inc.*, No. 1:18-cv-1533, 2019 WL 8953349, at \*2 (E.D. Va. Apr. 15, 2019). In challenging Plaintiff's standing, SLIC argues that SLIC in fact did not initiate the calls. *See* ECF 13 at 1 ("As demonstrated in the Declaration submitted herewith as part of SLIC's factual challenge to Plaintiff's Article III standing, this information is incorrect, as SLIC did not initiate or make any calls to Plaintiff."). Whether or not SLIC is the caller will be determinative of both jurisdiction and the merits of Plaintiff's claim; therefore, this question is not suited for resolution in the context of a motion to dismiss for lack of subject matter jurisdiction. *Ackerman v. Maximus Educ., LLC*, No. 1:24-CV-00975-MSN-WBP, 2025 WL 51476, at \*3 (E.D. Va. Jan. 8, 2025) (finding whether Defendant caused Plaintiff harm through statutory violations was intertwined with the merits of the claim); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL 2718439, at \*8

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 132 of 233
Matthews v. Senior Life Insurance Company, Slip Copy (2025)

2025 WL 1181789

(D.S.C. Jul. 1, 2021). Because SLIC's factual challenge to the traceability and redressability of Article III standing involves facts that are intertwined with the merits of Plaintiff's claim, the Court must reject Defendant's challenge. Accordingly, SLIC's motion to dismiss pursuant to Rule 12(b)(1) is denied.

**B. Defendant's Rule 12(b)(6) Challenge.**

SLIC argues that Plaintiff failed to plead facts that state a claim as to Defendant's direct and vicarious liability, under Rule 12(b)(6). SLIC argues Plaintiff did not allege SLIC actually, physically initiated the calls at issue, meaning that Plaintiff failed to plead facts linking SLIC to the calls. *See* ECF 13 at 5-6. SLIC is correct that the Complaint does not include facts—other than those which are conclusory—linking SLIC to the phone calls. Therefore, Plaintiff's complaint will be dismissed without prejudice.

"[T]o state a claim under the TCPA, a plaintiff must allege (i) defendant made one or more calls (ii) to plaintiff's cellular phone (iii) using an automatic telephone dialing system ('ATDS') or an artificial or prerecorded voice." *Aaronson, 2019 WL 8953349, at *1.* A TCPA plaintiff can establish that the defendant "made" a call through theories of direct or vicarious liability. *Id.* at *2 (citing *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018)). TCPA direct liability requires the plaintiff "show that the defendant actually, physically initiated the telephone call at issue." *Id.* (collecting cases). "Accordingly, at the pleading stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone." *Id.* To establish vicarious liability under the TCPA, "courts have held that a plaintiff must show that the defendant would be vicariously liable under common law principles of agency." *Id.*

Plaintiff's Complaint [2] fails to satisfy both standards. Plaintiff makes no allegations related to vicarious liability. *See generally* Compl. As to direct liability, the Complaint contains conclusory statements that Plaintiff "repeatedly received calls from [SLIC]," and that all three calls were "solicitations from [SLIC]." Compl. ¶¶ 19, 20, 22. The Court need not accept this threadbare recitation of an element of the TCPA claim. *Scruggs*, 2020 WL 9348208, at *6. Although Plaintiff identifies the phone number the calls were placed from, he does not link that phone number to SLIC. Compl. ¶ 21. Plaintiff further makes the conclusory allegation that one of the callers, Daniel Swisa, was "an employe of the

Defendant." *Id.* at ¶ 24. However, Plaintiff does not plead any facts to substantiate that claim. Finally, although Plaintiff pleads that during the calls he was asked questions regarding qualifying for SLIC life insurance, that singular fact alone is not sufficient to identify SLIC as the caller. *Smith, v. Direct Building Supplies, LLC, et al.*, No. CV 20-3583, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (finding the mere allegation that Defendant "attempted to solicit Plaintiff to purchase Defendant's services" was insufficient); *Aaronson, 2019 WL 8953349, at *2* (explaining "without any facts to explain why plaintiff believes the identified phone number is owned by defendant, this allegation amounts to nothing more than another conclusory allegation that defendant made the calls to plaintiff's cellular phone."); *Scruggs*, 2020 WL 9348208, at *10 ("The sole factual allegation linking [Defendant] to the calls is that the caller identified himself as 'associated with [Defendant]' " which is "insufficient under the *Iqbal* pleading standards"). As a party to these calls, Plaintiff "should be able to provide greater detail." *Scruggs*, 2020 WL 9348208, at *6. Instead, Plaintiff's conclusory allegations fail to establish direct or vicarious liability.

**\*4** Because the Complaint does not adequate allege liability for SLIC under the TCPA, the Court finds that Plaintiff failed to state a claim upon which relief may be granted. Therefore, the Court grants SLIC's motion to dismiss without prejudice.

**IV. CONCLUSION**

For the foregoing reasons it is hereby

**ORDERED** that Defendant Senior Life Insurance Company's Motion to Dismiss Plaintiff's Complaint (ECF 12) is **GRANTED**; and it is further

**ORDERED** that the claim against Senior Life Insurance Company in Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE.** Plaintiff shall file any amended complaint within ten (10) days of the date of this Order.

It is **SO ORDERED.**

**SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 1181789

---

### Footnotes

1    The Court assumes the truth of Plaintiff's factual allegations and draws all reasonable factual inferences in Plaintiff's favor for purposes of Defendant's Motion to Dismiss. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002).

2    The Court does not rely on any extrinsic evidence provided by the parties for its review of the 12(b)(6) argument. Courts may consider extrinsic evidence attached to a motion to dismiss only when the "evidence is 'integral to and explicitly relied on in the complaint,' and 'the plaintiffs do not challenge its authenticity.' " *Byers v. City of Richmond*, 746 F. Supp. 3d 275, 300 (E.D. Va. 2024) (citations omitted). None of the declarations were explicitly relied on in the complaint, therefore, the factual support developed in those attachments will not be considered in this analysis.

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 134 of 233

Meyer v. Capital Alliance Group, Not Reported in Fed. Supp. (2017)

2017 WL 5138316

KeyCite Yellow Flag

Disagreed With by Dobronski v. Selectquote Insurance Services, E.D.Mich., March 25, 2025

2017 WL 5138316
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

David MEYER et al., Plaintiffs,

v.

CAPITAL ALLIANCE GROUP et al., Defendants.

Case No.: 15-CV-2405-WVG

|

Signed 11/06/2017

**Attorneys and Law Firms**

Christopher Reichman, Justin M. Prato, Prato & Reichman, APC, Daniel J. Williams, Law Offices of Daniel J. Williams, San Diego, CA, for Plaintiffs.

Gene S. Stone, Homan & Stone, Redlands, CA, for Defendants.

**ORDER (1) GRANTING-IN-PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT;
(2) GRANTING-IN-PART DEFENDANTS' MOTION
TO DISMISS; and (3) DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT.**

Hon. William V. Gallo, United States Magistrate Judge

**\*1** In this action, Plaintiffs allege they received unlawful facsimile advertisements and telemarketing calls in violation of the Telephone Consumer Protection Act ("TCPA") and other federal and state statutes and regulations. Pending before the Court are cross-motions for partial summary judgment and a motion to dismiss the Second Amended Complaint ("SAC"). As explained below, Defendants' summary judgment motion is GRANTED-IN-PART, their motion to dismiss is GRANTED-IN-PART, and Plaintiffs' summary judgment motion is DENIED. Ultimately only Claims One and Three, both under the TCPA, remain from the Second Amended Complaint.

## I. CASE SUMMARY

Plaintiffs David Meyer, Arnie Katz, and Ken Moser are individual business owners who maintain fax and telephone lines in furtherance of their businesses. [1] According to Plaintiffs, Defendant Capital Alliance Group, in its various formulations, is engaged in the business of advertising small business loans through third-party companies, which then illegally sent "junk faxes" and initiated telemarketing "robocalls" on its behalf. [2] All three plaintiffs received several junk faxes, which they allege ultimately traced back to Defendants. Plaintiff Moser also received telemarketing calls on his mobile telephone, which he alleges traced back to Defendants. Plaintiffs brought this action under various state and federal statutes and regulations and ultimately seek treble damages and attorneys' fees based on what they allege is Defendants' longstanding, willful, and knowing pattern of violative conduct. Trial is scheduled to commence on December 4, 2017.

## II. DISCUSSION

### A. Defendants' Motion for Partial Summary Judgment (Doc. No. 50)

#### 1. Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party opposing summary judgment cannot " 'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.' " Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008), cert. denied, 555 U.S. 827, 129 S.Ct. 174, 172 L.Ed.2d 44 (2008) (quoting Fed. R. Civ. P 56(e)).

The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these

2017 WL 5138316

purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see also Tolan v. Cotton*, 572 U.S. ——, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. 2505.

### 2. Claims Two, Seven, and Eight

#### a. Claims Two (Cal. Bus. & Prof. Code § 1758.41, Junk Fax Law) and Eight (Cal. Bus. & Prof. Code §§ 17200 *et seq.*, Unfair Competition Law)

**\*2** Defendants contend Plaintiffs lacks standing to bring both Claim Two (the so-called "Junk Fax Law," Cal. Bus. Prof. Code § 1758.41) [3] and Claim Eight (California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code §§ 17200 *et seq.*) because they lack the measurable economic damages that both statutes require. (Doc. No. 48 at 16-17; Doc. No. 50 at 12.) [4] Defendants are correct.

Although an alleged violation of the TCPA is enough to bestow standing under federal law, *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042 (9th Cir. 2017), the UCL and FAL have a "more limited standing requirement" than the general standing requirement for federal claims, *id.* at 1048. "Because elements for standing 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.' " *Troyk v. Farmers Grp., Inc.*, 171 Cal.App.4th 1305, 90 Cal.Rptr.3d 589, 622 (Cal. Ct. App. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

To demonstrate standing under the UCL and FAL, Plaintiffs must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877, 885 (Cal. 2011) (emphasis in original).

The UCL and FAL's "economic injury requirement is 'more restrictive than federal injury in fact' because it encompasses fewer kinds of injuries." *Van Patten*, 847 F.3d at 1048-49 (quoting *Kwikset*, 120 Cal.Rptr.3d 741, 246 P.3d at 886). To satisfy California's statutory injury-in-fact requirement, a plaintiff must show "a personal, individualized loss of money or property in any nontrivial amount." *Kwikset Corp.*, 120 Cal.Rptr.3d 741, 246 P.3d at 887.

Although this bar is not high, trivial, *de minimis*, or nonexistent alleged injuries are not sufficient and do not constitute injury-in-fact for UCL and FAL standing. *Kwikset Corp.*, 120 Cal.Rptr.3d 741, 246 P.3d at 887 (requiring "nontrivial amount"; noting that where California courts have found standing present, "the plaintiff could allege or prove an identifiable monetary or property injury"). For example, in *Van Patten*, the Ninth Circuit found that the plaintiff's receipt of an unwanted text was sufficient to confer Article III standing, but not enough for standing under the UCL. 847 F.3d at 1043, 1049. There, the only economic injury plaintiff alleged was that he was required to pay for receiving defendant's text messages, but the evidence showed that his cell phone plan allowed unlimited messaging, meaning that he had no measurable economic loss. *Id.* at 1049; *see also Reichman v. Poshmark, Inc.*, No. 16-CV-2359-DMS(JLB), —— F.Supp.3d ——, 2017 WL 436505 at \*6, 2017 U.S. Dist. LEXIS 36371 at \*17-18, 2017 WL 436505 (S.D. Cal. Jan. 3, 2017) (finding allegations insufficient where that unsolicited text "advertising uses the paid for and economically valuable text message allotments."); *Olmos v. Bank of Am., N.A.*, No. 15-CV-2786-BAS(BGS), 2016 WL 3092194 at \*4, 2016 U.S. Dist. LEXIS 72329 at \*10-11, 2016 WL 3092194 (S.D. Cal. June 1, 2016) ("[T]he allegation that Plaintiff received two short text messages is insufficient to convey standing because the loss of battery life and bandwidth as a result of these two messages was de minimis."). As Defendants point out, this economic damages requirement was the result of California Proposition 64, which amended the UCL and FAL to require economic damages.

**\*3** In 2004, California voters passed Proposition 64, which amended the UCL and FAL to require plaintiffs to establish economic damages. Plaintiffs here argue that Proposition 64 amended only the UCL and had no impact on the Junk Fax Law as codified in § 17538.43. (Doc. No. 63 at 4.) Plaintiffs are decidedly wrong. Proposition 64 also amended the FAL

2017 WL 5138316

in the same manner as the UCL. *McGill v. Citibank, N.A.*, 216 Cal.Rptr.3d 627, 393 P.3d 85, 92 (Cal. 2017) ("In 2004, the voters, by passing Proposition 64, amended [the UCL and FAL] to provide that private individuals may ... file an action for relief only if they have 'suffered injury in fact and [have] lost money or property as a result of a violation....'"); *Kwikset Corp.*, 120 Cal.Rptr.3d 741, 246 P.3d at 887 ("Proposition 64 requires that a plaintiff's economic injury come "as a result of" the unfair competition *or a violation of the false advertising law.*") (emphasis added); *Angelucci v. Century Supper Club*, 41 Cal.4th 160, 59 Cal.Rptr.3d 142, 158 P.3d 718, 728 n.10 (Cal. 2007) ("We note as well that in 2004 the California electorate enacted legislation restricting previously broad standing requirements for a private right of action under the state unfair competition *and false advertising laws* (Bus. & Prof. Code, §§ 17200 *et seq.*, *17500 et seq.*)") (emphasis added). Accordingly, section 17538.43 of the FAL requires the same economic injury as the UCL. [5]

Here, Defendants contend none of the three Plaintiffs incurred cognizable economic damages as a result of receiving Defendants' faxes. The Court agrees and addresses each Plaintiff in turn. In doing so, the Court keeps in mind that Plaintiffs bear the burden of proving they having standing and that "[i]n response to a summary judgment motion [they cannot rest on] ... mere allegations, but must set forth by affidavit or other evidence *specific facts*, which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (emphasis added; citation and internal quotations omitted); *see also Kwikset Corp.*, 120 Cal.Rptr.3d 741, 246 P.3d at 888-89 (applying *Lujan* standard to state claim, but at motion to dismiss stage); *Troyk v. Farmers Grp., Inc.*, 171 Cal.App.4th 1305, 90 Cal.Rptr.3d 589, 622 (Cal. Ct. App. 2009) (same). [6]

### i. DCM Properties, Inc. and David Meyer

Meyer, DCM's president, testified at deposition that he did not recall whether his fax machine required service after he received Defendants' faxes. (Defendants' Fact No. 10; Doc. No. 50-3 at 18.) Meyer testified he pays Vonage a flat rate for fax services and does not pay for individual faxes. (Defendants' Fact No. 5; Doc. No. 50-3 at 11.) He did not known how much the junk faxes cost DCM in paper or electricity. (Doc. No. 50-3 at 21, 24.) He speculated there might be a limit to the number of faxes he could receive, but did not know whether there was such a limit on his service

plan. (*Id.*) Additionally, during the year Meyer received Defendants' faxes, his business both sent and received "a number of faxes" every day using a single fax machine. (Defendants' Fact No. 6; Doc. No. 50-3 at 14.) Moreover, at deposition, Meyer withdrew any claim of actual damages related to transmission of the junk faxes. (Defendants' Fact No. 11; Doc. No. 53 at 19.)

The only evidence Meyer musters in response to this portion of Defendants' summary judgment motion is his own declaration. (*See* Doc. No. 63-2.) With respect to the economic injury issue, he therein declares that DCM Properties maintains a fax machine that operates in the following manner: "If someone uses a device to send a fax to our fax number it will transcribe text and/or images from a paper document to an electronic signal to be received by our fax machine which will then automatically print out a paper document copy of the fax. *This uses DCM Properties, Inc.'s ink and paper which we and not the sender must purchase to make the physical fax document.*" (Doc. No. 63-2 at 2 ¶ 5 (emphasis added).) Beyond this generic statement, Meyer provides no evidence—documents or lay or expert testimony—that in any manner establishes any measure of economic injury he sustained from receiving seven faxes. He merely avers that the faxes consumed an unknown quantity of ink and paper that his business had to purchase to operate the fax machine. He and DCM conclude that because they suffered a "loss of ink and paper," they have satisfied the economic loss requirement for UCL and FAL standing. (Doc. No. 63 at 5.)

**\*4** It is plainly evident that Meyer is unable to establish that he suffered a cognizable, non-trivial economic injury under the UCL and FAL. Although ink and paper have *some* cost, Meyer provides nothing more than the generic assertion that "literally anybody living in America would have to know that ink and paper are economic commodities." (Doc. No. 63 at 5.) In relying on such generic assertions, Meyer misses the point, relies on "mere allegations," and provides no specific evidence from which the Court can conclude that he and DCM suffered anything beyond a trivial, *di minimis* loss.

To the contrary, Meyer's testimony actually establishes that DCM's loss *was* trivial and *di minimis*. For example, DCM received a total of seven faxes from Defendants in 2013 and 2014, and Meyer testified that DCM employees sent and received "a number" of faxes on a daily basis during that year. Although "a number" of faxes per day is not numerically defined by either party, the ink and paper that seven junk faxes would consume during 2013 and 2014 would have

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 137 of 233

Meyer v. Capital Alliance Group, Not Reported in Fed. Supp. (2017)

2017 WL 5138316

been negligible. Even conservatively assuming for the sake of argument that DCM sent and received only two faxes per day in 2013 and 2014, the resources that the 723 *non*-junk faxes would have consumed in those years would have dwarfed any negligible resources that Defendants' seven [7] junk faxes consumed. Even under this conservative scenario, DCM's losses were *di minimis* and trivial.

Moreover, as in *Van Patten*, DCM paid a flat rate to Vonage and was not charged on a per-fax basis. Thus, there is no evidence that DCM incurred any additional service provider charges when it received the seven junk faxes.

Plaintiffs seem to have recognized and admitted their inability to prove economic damages from the inception of this case. (*See, e.g.*, SAC ¶ 61 (stating, in the context of the TCPA claim, that "[g]*iven the nominal amount of actual damages*, Plaintiffs elect to pursue statutory damages....") (emphasis added).) Because Meyer and DCM have only nominal damages and have failed to meet their burden to establish quantifiable, non-trivial economic injury, they lack standing under the UCL and the Junk Fax Law.

### ii. Arnie Katz, Venture Support Group LLC, and Ken Moser

Plaintiffs Arnie Katz, Venture, and Ken Moser are similarly situated in that they received junk faxes through computer-based fax services called "myfax.com" and "efax.com." These services did not automatically print any of the faxes they received, and the faxes were instead digitally stored on their computers. [8] (Defendants' Fact No. 17; Doc. No. 50-5 at 9-10; *see* Doc. No. 63-3 at 2 ¶¶ 5-6.) Both Katz and Moser saved the junk faxes and chose to voluntarily print the faxes at a later date. (Doc. No. 50-5 at 11; Doc. No. 50-6 at 8-9.) Katz was not charged for individual faxes and paid a flat rate fee to his service provider. (Doc. No. 50-5 at 9.)

Additionally, like Meyer, Katz and Moser generally assert, without any evidence, that their economic loss—whatever the amount might be—encompasses the "use of ink and paper." (Doc. No. 63 at 6.) However, they provide no concrete evidence of economic injury to rebut Defendants' argument that they suffered no such injury. They simply contend that ink and paper have some measure of economic value, and that is enough to satisfy the economic injury requirement under the UCL and FAL. Applying the standard cited above, it is again plainly evident that Katz and Moser suffered nothing more

than trivial, nominal, *di minimis* economic injury from the junk faxes they received. They have not-so-tacitly admitted this since the inception of this case. (SAC ¶ 61.) And they now confirm as much given the complete dearth of evidence of quantifiable economic injury.

**\*5** Finally, it not insignificant that Katz and Moser voluntarily printed the faxes that were electronically stored on their computers. Katz and Moser thus voluntarily took affirmative steps to cause the consumption of ink and electricity—nothing Defendants did compelled Katz and Moser to print the digital faxes and incur damages, whether cognizable or not. Thus, even if Katz, Moser, and Venture had quantifiable damages, they could not be properly traced or attributed to Defendants. Defendants could not have caused such damages because they did not cause the faxes' printing.

Because Katz, Moser, and Venture have failed to meet their burden to establish that they suffered a quantifiable, non-trivial economic injury, they lack standing under the UCL and the Junk Fax Law.

### iii. Conclusion

In sum, Defendants argue Plaintiffs had sustained no cognizable economic injury for UCL and FAL standing purposes. In response, Plaintiffs provided no specific evidence of economic injury and failed to dispute Defendants' asserted facts. Accordingly, Plaintiffs have not sufficiently established for purposes of the summary judgment any injury in fact. *Cf. Troyk v. Farmers Grp., Inc.*, 171 Cal.App.4th 1305, 90 Cal.Rptr.3d 589, 624-25 (Cal. Ct. App. 2009) (denying Defendant's summary judgment motion challenging standing where Plaintiff presented sufficient evidence that he was charged an additional $5 per month). Based on the foregoing, the Court lacks subject matter jurisdiction over Claims Two (Junk Fax Law) and Eight (UCL) because Plaintiffs lack standing. Accordingly, Defendants' motion for summary judgment is GRANTED-IN-PART and judgment shall be entered in Defendants' favor on these claims.

### b. Claim Seven: Consumer Legal Remedies Act, Cal. Civil Code § 1770(a)(22)

In Claim Seven, Plaintiff Moser alleges Defendants violated California Civil Code § 1770(a)(22), which is a part of the Consumer Legal Remedies Act ("CLRA"), and which

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 138 of 233

Meyer v. Capital Alliance Group, Not Reported in Fed. Supp. (2017)

2017 WL 5138316

essentially requires that all unsolicited prerecorded telephone messages first be introduced by a live person who must ask for permission to play a recorded message. Continuing the challenge to Plaintiffs' standing, Defendants contend Moser has not proven he suffered damages under the CLRA.[9] However, there is a more fundamental reason why Moser lacks standing: the CLRA simply does not apply to loan products in the first place. Although neither party addressed whether the CLRA applies to the type of product marketed by the unsolicited faxes and telemarketing at issue in this case, the Court nonetheless has a duty to examine its jurisdiction *sua sponte*. The Court does so now and finds that the CLRA does not apply to this case.

As an initial matter, because the question of standing is a threshold jurisdictional issue, federal courts have a duty to examine their jurisdiction *sua sponte. See D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008); *United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004) (stating that "the district court had a duty to establish subject matter jurisdiction ... sua sponte, whether the parties raised the issue or not"). The Court may even dismiss a case for lack of subject matter jurisdiction without giving notice to the parties. *Scholastic Entm't, Inc. v. Fox Entm't Grp., Inc.*, 336 F.3d 982, 985 (9th Cir. 2003); *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1342 (9th Cir. 1981).

*6  The CLRA applies to "transaction[s] intended to result or which result[ ] in the sale or lease of goods or services to [a] consumer...." Cal. Civ. Code § 1770(a). The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes," *id.* § 1761(a), and "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods," *id.* § 1761(b). For purposes of the CLRA, loans are neither goods nor services. *Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal.App.4th 29, 185 Cal.Rptr.3d 84, 93 (Cal. Ct. App. 2015) ("A mortgage loan is not a 'good' because it is not a 'tangible chattel'; it is not a 'service' because it is not 'work, labor, [or] services ... furnished in connection with the sale or repair of goods.' "); *see also Fairbanks v. Superior Court*, 46 Cal.4th 56, 92 Cal.Rptr.3d 279, 205 P.3d 201, 206 (Cal. 2009) ("[A]ncillary services that insurers provide [such as loans] to actual and prospective purchasers of life insurance do not bring the [insurance] policies within the coverage of the [CLRA]."); *Elstead v. JPMorgan Chase Bank*, Nos. A140069, A141247, 2017 WL 836925, at *16-17, 2017

Cal. App. Unpub. LEXIS 1567, at *51-52 (Mar. 3, 2017) (approvingly discussing *Alborzian* in dicta).

Federal district courts have also held that loans do not qualify as goods and services under the CLRA. *See, e.g., Jamison v. Bank of Am., N.A.*, 194 F.Supp.3d 1022, 1031-32 (E.D. Cal. 2016) ("[T]he court agrees with the California Court of Appeal decision in *Alborzian* and the majority of district court cases and concludes defendant's mortgage services do not fall within the coverage of the CLRA."); *Consumer Solutions Reo, LLC v. Hillery*, 658 F.Supp.2d 1002, 1016-17 (N.D. Cal. 2009) (dismissing CLRA claim with prejudice because "loans are intangible goods and that ancillary services provided in the sale of intangible goods do not bring these goods within the coverage of the CLRA."); *Sapan v. Lexington Mortg. Corp.*, No. SACV 16-01718-JVS(DFMx), 2017 WL 1430619 at *2-3, 2017 U.S. Dist. LEXIS 63069 at *5-6 (C.D. Cal. Apr. 17, 2017); *Kirkeby v. JP Morgan Chase Bank, N.A.*, No. 13-CV-377-WQH(MDD), 2014 WL 7205634 at *8-9, 2014 U.S. Dist. LEXIS 174385 at *22-25 (S.D. Cal. Dec. 17, 2014) (holding loan modification programs, which are contractual obligations to pay money, are not goods or services within the meaning of the CLRA); *Sonoda v. Amerisave Mortg. Corp.*, No. C-11-1803-EMC, 2011 WL 2690451 at *2, 2011 U.S. Dist. LEXIS 73940 at *5, 2011 WL 2690451 (N.D. Cal. July 8, 2011) ("If a contractual obligation to pay money (under an insurance contract) is not a service, then neither is a contractual obligation to *lend* money.") (emphasis in original); *Reynoso v. Paul Fin., LLC*, No. 09-3225-SC, 2009 WL 3833298 at *8-9, 2009 U.S. Dist. LEXIS 106555 at *28-29 (N.D. Cal. Nov. 16, 2009) (concluding the CLRA does not extend to "ancillary services" in connection with mortgage loans).

Here, there is no dispute that Defendants' telemarketing efforts concerned attempts to sell short-term business loans. (Doc. No. 61-5 at 20-28, 32 (exhibits D, E, F, and H to Moser Declaration containing email communications Moser received from Capital Alliance in response to Moser's communications with Capital Alliance after he received telemarketing calls to his cellular telephone; all emails specifically mention short-term business loans); SAC, Doc. No. 1-1 at 30-85 (55 exhibits to Second Amended Complaint containing faxes offering short-term business loans)). Short-term business loans are not materially distinguishable from the mortgage loans at issue in *Alborzian*—at bottom, both are contractual obligations to lend money. Moreover, the services Defendants provided to lenders are ancillary services that do not bring this case within the CLRA. The Court agrees with

2017 WL 5138316

the multitude of state and federal cases and finds the CLRA does not cover the subject matter of this case.

At oral argument, Plaintiffs attempted to distinguish this case by arguing that Defendants were not lenders and were not themselves in the business of making business loans—they merely served as loan advertisers. They contend that because Defendants did not actually issue loans and simply provided marketing or advertising services for the loan originators, they provided services "related to" loans and thus fall outside the rule above. The Court is not persuaded. In *Fairbanks v. Superior Court*, 46 Cal.4th 56, 92 Cal.Rptr.3d 279, 205 P.3d 201 (Cal. 2009), the Supreme Court of California held that "the ancillary services that insurers provide to actual and prospective purchasers of life insurance do not bring the policies within the coverage of the CLRA." 92 Cal.Rptr.3d 279, 205 P.3d at 206. Since then, state and federal courts have followed *Fairbanks* and have consistently found that the CLRA does not cover ancillary services related to loans, and such services do not transform intangible goods and services into tangible goods and services that would otherwise not be covered by the CLRA. *See, e.g., Jamison v. Bank of Am., N.A.*, 194 F.Supp.3d 1022 (E.D. Cal. 2016) (CLRA inapplicable to servicer of mortgage loan); *Gerbitz v. ING Bank*, 967 F.Supp.2d 1072, 1080 (D. Del. 2013) (finding that California law "makes clear that ... ancillary services, including maintenance or other customer services, do not transform an intangible service into a tangible good or service under the CLRA."); *Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal.App.4th 29, 185 Cal.Rptr.3d 84, 93 (Cal. Ct. App. 2015) (affirming the dismissal of a homeowner's CLRA claim alleged against one of its mortgage lenders *and* a debt collection agent of the lender); *Robles v. One W. Bank*, No. B234196, 2012 WL 5193966 at *4-5, 2012 Cal. App. Unpub. LEXIS 7618, at *13-14, 2012 WL 5193966 (Cal. Ct. App. Oct. 22, 2012) (explaining that the court in *Fairbanks* "held that 'ancillary services' provided by insurers—like those also provided by sellers of investment securities, bank deposit accounts, and loans—which include 'assist[ing] prospective customers in selecting products that suit their needs, and ... provid[ing] additional customer services related to the maintenance, value, use, redemption, resale, or repayment,' do not fall under the CLRA.").

*7 The Court finds these state and federal cases persuasive. The CLRA defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished *in connection with the sale* or repair of *goods*." *Alborzian*, 185 Cal.Rptr.3d at 93 (citing Cal.

Civ. Code § 1761(b)) (emphasis added). For services "in connection with" the sale of goods to qualify under the CLRA, "goods" must themselves be covered by the CLRA. *See Gerbitz*, 967 F.Supp.2d at 1080. Since loans at their core are not "goods" or "services" under the CLRA, advertising related to selling such intangible financial goods are not "services furnished in connection with" any goods or services. *See Consumer Solutions Reo, LLC v. Hillery*, 658 F.Supp.2d 1002, 1016-17 (N.D. Cal. 2009) ("*Fairbanks* ... indicates that loans are intangible goods and that ancillary services provided in the sale of intangible goods do not bring these goods within the coverage of the CLRA."). It would seem wildly incongruous that the CLRA would apply to advertising or marketing of loans but not apply to the loans themselves. Indeed, bootstrapping the CLRA into this case in this manner would, as the Supreme Court of California explained, "defeat the apparent legislative intent in limiting the definition of" goods and services, *Fairbanks*, 92 Cal.Rptr.3d 279, 205 P.3d at 202; *see also Gerbitz*, 967 F.Supp.2d at 1080, by greatly expanding that definition.

The Court finds that Defendants' advertising or marketing of loans is an ancillary service that does not fall within the CLRA. Accordingly, Moser lacks standing under the CLRA, and Defendants are entitled to summary judgment on Claim Seven. [10]

### 3. Claims Nine (Trespass) and Ten (Conversion)

Defendants seek summary judgment on the ninth claim (trespass) and tenth claim (conversion) on the basis that Plaintiffs suffered no actual harm from Defendants' faxes or telemarketing calls. (Doc. No. 50 at 16-18.) Plaintiffs respond that they suffered harm in the form of the "tying up" of telephone lines and the use of Plaintiffs' "physical and electronic" resources. (Doc. No. 63 at 8.) Such nebulous "damages" are not sufficient for trespass and conversion claims under California law.

"Under California law, trespass to chattels lies where an intentional interference with the possession of personal property *has proximately caused injury.* In cases of interference with possession of personal property not amounting to conversion, the owner has a cause of action for trespass or case, and *may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use.*" *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1 Cal.Rptr.3d 32, 71 P.3d 296, 302 (Cal. 2003) (internal quotations and citation omitted) (emphasis in original). To

2017 WL 5138316

allege a plausible claim for trespass to a computer system or similar device, California law requires that plaintiffs plead with factual particularity that the purported trespass: (1) caused physical damage to the personal property, (2) impaired the condition, quality, or value of the personal property, or (3) deprived plaintiff of the use of personal property for a substantial time. *Id.*, 1 Cal.Rptr.3d 32, 71 P.3d at 306. The Supreme Court of California has emphasized that:

> [U]nder California law the tort [of trespass] does not encompass, *and should not be extended to encompass*, an electronic communication that neither damages the recipient computer system nor impairs its functioning. Such an electronic communication does not constitute an actionable trespass to personal property, i.e., the computer system, because it does not interfere with the possessor's use or possession of, or any other legally protected interest in, the personal property itself.

*Id.* at 300 (emphasis added).

In *Hamidi*, a computer company brought an action against a former employee and sought an injunction to prevent him from sending e-mails to the company's employees. The employee had used Intel's internal internet-connected e-mail system to send e-mails to between 8,000 and 35,000 employees on six occasions, and he refused to stop when Intel requested that he do so. *Id.* The trial court granted summary judgment for Intel and issued a permanent injunction on a theory of trespass to chattels. *Id.* at 301-02, 71 P.3d at 306. The appellate court affirmed, but the Supreme Court of California reversed on the grounds that the tort of trespass to chattels did not encompass, and should not be extended to encompass, electronic intrusions that neither damaged nor impaired the functioning of Intel's computer system. *Id.* at 300, 304, 71 P.3d at 306. In doing so, the court rejected the argument that the mere "unauthorized use of another chattel is actionable even without any showing of injury." *Id.* at 306, 71 P.3d at 306. In the context of cognizable injury, the court then explained that "*[a] mere momentary or theoretical deprivation of use is not sufficient* unless there is a dispossession...." *Id.* (internal quotations and citation omitted;

emphasis added). Thus, the Court held that in the absence of any actual damage or dispossession, a cause of action for trespass to chattels will not lie. *Id.* at 308, 311, 71 P.3d at 306.

**\*8** Cases where viable electronic intrusion-based trespass claims lay have involved more than the trifling interference with phone and fax lines evident in the instant case. *See, e.g., Thrifty-Tel, Inc. v. Bezenek*, 46 Cal.App.4th 1559, 54 Cal.Rptr.2d 468, 471 (Cal. Ct. App. 1996) (finding trespass claim actionable where the defendant's automated dialing system "*overburdened the system*, denying some subscribers access to phones lines") (emphasis added); *In re Lenovo Adware Litig.*, No. 15-MD-2624-RMW, 2016 WL 6277245 at \*9, 2016 U.S. Dist. LEXIS 149958 at \*35, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) (denying motion to dismiss where "Plaintiffs allege[d] that consumers complained that [software installed on computers] 'interfered with watching videos online, caused the computers to run slow, blocked or slowed connections to certain websites, and caused security issues.' "); *see also Sch. of Visual Arts v. Kuprewicz*, 3 Misc.3d 278, 771 N.Y.S.2d 804, 808 (N.Y. Sup. Ct. 2003) (finding sufficient plaintiffs' allegations that "large volumes" of unsolicited job applications and pornographic e-mails "depleted hard disk space, drained processing power, and adversely affected other system resources on SVA's computer system").

Consistent with the reasoning in *Hamidi*, courts have rejected trespass claims where the alleged injury was trifling and did not materially interfere with the computer system or resources. *See, e.g., In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1069 (N.D. Cal. 2012) (dismissing complaint with prejudice where alleged harm included consumption of bandwidth, storage space, memory and finding that "[w]hile these allegations conceivably constitute a harm, they do not plausibly establish a significant reduction in service constituting an interference with the intended functioning of the system, which is necessary to establish a cause of action for trespass."); *Fields v. Wise Media, LLC*, No. C12-05160-WHA, 2013 WL 5340490 at \*4, 2013 U.S. Dist. LEXIS 136914 at \*13 (N.D. Cal. Sep. 24, 2013) (dismissing complaint with prejudice and rejecting argument that the "defendants' interference with plaintiffs' phones by sending unsolicited text messages directly affects a 'legally protected interest' of plaintiffs, even if their phones are not physically damaged."); *see also Fields*, 2013 WL 5340490 at \*5, 2013 U.S. Dist. LEXIS 136914 at \*14-15 ("Allowing plaintiffs to assert a claim for trespass to chattels absent actual physical harm or impairment to their phones would vastly expand tort

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 141 of 233

Meyer v. Capital Alliance Group, Not Reported in Fed. Supp. (2017)

2017 WL 5138316

law and this order will not do so absent binding Ninth Circuit authority. This order denies plaintiffs leave to add trespass to chattels as a claim for relief based on the plain reading of *Hamidi*.").

Here, Plaintiffs' trespass claim is precisely the type of momentary, injury-lacking intrusion described in *Hamidi*. Beyond bare assertions that "the illegal facsimiles and calls tied up the phone lines and used the physical and electronic resources of Plaintiffs," (*see* Doc. No. 63 at 8), Plaintiffs have presented no competent evidence of meaningful interference with—or any dispossession of— their computers, telephone lines, or fax lines. Besides the general assertion that their telephone and fax lines were "tied up," they present no evidence of any measurable damage or impairment of functioning. Rather, the only evidence before the Court establishes that Plaintiffs sustained nothing more than momentary intrusions.

Additionally, Plaintiffs have not—and cannot—establish the cost of their alleged losses. First, had they had any such evidence, they surely would have presented it at this summary judgment phase. And second, Plaintiffs all testified in depositions that they could not quantify the amount of their losses. Such trifling intrusions are patently insufficient and plainly not actionable under California law. *See Hamidi*, 1 Cal.Rptr.3d 32, 71 P.3d at 306. Accordingly, because the only evidence before the Court establishes nothing more than a momentary intrusion upon Plaintiffs, their trespass claim fails. *Accord id.* at 306-07, 71 P.3d at 306 ("That Hamidi's messages temporarily used some portion of the Intel computers' processors or storage is, ... not enough; Intel must, but does not, demonstrate some measurable loss from the use of its computer system.")

**\*9** However, even if Plaintiffs had been able to quantify the amount of their losses, those amounts would nonetheless have been nominal given the small number of telephone calls and faxes they received. Indeed, Plaintiffs themselves acknowledge that they suffered nothing more than nominal damages. (SAC, Doc. No. 1-1 at ¶¶ 40, 61 ("*Given the nominal amount of actual damages*, Plaintiffs elect to pursue statutory damages....") (emphasis added).) The trespass claim would nonetheless fail for the simple and undisputed fact that Plaintiffs suffered nothing more than nominal damages, if any at all. *See Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 359 (4th Cir. 2006) ("[T]he courts that recognize trespass to chattels based upon computer intrusions *do not allow 'an action for nominal damages* for

harmless intermeddlings with the chattel.' ") (citing *Hamidi*, 1 Cal.Rptr.3d 32, 71 P.3d at 302) (emphasis added).

Plaintiffs' reliance on *Thrifty-Tel* is misplaced because that case involved a far greater intrusion upon telephone lines than Plaintiffs experienced. There, the defendants essentially hacked Thrifty-Tel's telephone lines, used software to perform "rapid-fire random number searches" four hours on end, made *thousands* of long-distance telephone calls, and "[b]ecause Thrifty-Tel is a small carrier with relatively few telephone lines, [the defendant's] automated calling overburdened the system, denying some subscribers access to phones lines." *Thrifty-Tel, Inc.*, 54 Cal.Rptr.2d at 471-72. The California Court of Appeal held that the trespass claim survived under these aggravated circumstances that demonstrated substantial interference with, occupation, and use of Thrifty-Tel's resources. Here, however, the totality of the evidence Plaintiffs muster is that their fax and telephone lines were momentarily "tied up" on a trivial number of occasions[11] and fail to present any evidence of any real harm they suffered as a result. [12] This case is therefore a far cry from *Thrifty-Tel*, which does not support Plaintiffs' analysis-lacking assertions claiming otherwise.

As for Claim Ten for conversion, under California law, Plaintiffs must prove an "ownership or right to possession of the property at the time of the conversion, the defendant's conversion by a wrongful act or disposition of property rights, and resulting damages." *Avidor v. Sutter's Place, Inc.*, 212 Cal.App.4th 1439, 151 Cal.Rptr.3d 804, 814 (Cal. Ct. App. 2013). Conversion requires a higher showing than trespass, which has been dubbed the "little brother of conversion." *Hamidi*, 1 Cal.Rptr.3d 32, 71 P.3d at 302 ("[T]he tort of trespass to chattels allows recovery for interferences with possession of personal property 'not sufficiently important to be classed as conversion.' "); *Plotnik v. Meihaus*, 208 Cal.App.4th 1590, 146 Cal.Rptr.3d 585, 600 (Cal. Ct. App. 2012) ("Trespass to personal property often arises in circumstances where a defendant's interference with another's property falls short of that required for a conversion cause of action."); *Thrifty-Tel, Inc.*, 54 Cal.Rptr.2d at 473. Because conversion claims require a higher showing, it follows that plaintiffs who cannot meet the lower trespass threshold will not be able to meet the higher conversion threshold.

**\*10** Defendants are entitled to summary judgment on both the trespass (claim 9) and conversion claims (claim ten).

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 142 of 233

Meyer v. Capital Alliance Group, Not Reported in Fed. Supp. (2017)

2017 WL 5138316

**4. Claim Eleven (Civil Conspiracy)**
In light of the Court's finding below dismissing Claim Eleven with prejudice, this portion of Defendants' summary judgment motion is DENIED as moot.

**B. Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 61)**

**1. Claims One (Junk Faxes, 47 U.S.C. § 227(b)(1)(C)) and Three (Telemarketing Calls, 47 U.S.C. § (b)(1)(B))**
In Claim One, Plaintiffs Meyer, Katz, and DCM Properties allege they received junk faxes in violation of 47 U.S.C. § 227(b)(1)(C). In Claim Three, Plaintiff Moser further alleges he received pre-recorded telemarketing calls on his home telephone on at least four occasions in violation of 47 U.S.C. § (b)(1)(B). Because a genuine dispute of material fact exists as to Defendants' third-party liability, Plaintiffs' motion for summary judgment on these claims is DENIED.

As an initial matter, "[u]nder the TCPA's implementing regulations, a fax 'sender' is defined as 'the person or entity *on whose behalf* a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement.' " *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 620 n.2 (S.D. Cal. 2015) (quoting 47 C.F.R. § 64.1200(f)(10)) (emphasis in original). "Thus, under this definition, a company can 'send' an unsolicited fax advertisement without directly participating in the physical transmission of such a fax." *Id.* Accordingly, Defendants are incorrect that they cannot be held liable because they did not personally send faxes or make telemarketing calls.

As for both Claims One and Three, the question is whether Defendants can be held liable for the fax transmissions or telemarketing calls of third-party vendors. This analysis requires Plaintiffs to prove there is an agency relationship between Capital Alliance and Absolute Fax for Claim One and Capital Alliance and Message Communications for Claim Three. If there is no legal agency relationship, then Message Communications and Absolute Fax are independent contractors under the law and Defendants cannot be held liable.

There are three different agency theories of liability under California law: actual authority, apparent authority, and ratification. *Id.* at n.3; *see also Henderson v. United Student Aid Funds, Inc.*, No. 13-CV-1845-JLS(BLM), 2017 WL 766548 at *6, 2017 U.S. Dist. LEXIS 28165 at *19 (S.D.

Cal. Feb. 27, 2017) (discuss all three agency theories in the context of the TCPA; granting defendants' summary judgment motion).

Under the "classical" or actual authority theory of agency, " '[t]o form an agency relationship, both the principal and the agent must manifest assent to the principal's right to control the agent.' " *Henderson*, 2017 WL 766548 at *6, 2017 U.S. Dist. LEXIS 28165 at *16 (quoting *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010)). "This in turn implicates 'the degree of control exercised by the principal over the activities of the agent.' " *Id.* (quoting *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091, 1099 (9th Cir. 1997)). "Agency is not established when 'control may be exercised only as to the result of the work and not the means by which it is accomplished[;]' " in such a case "an independent contractor relationship exists.' " *Id.* (same).

**\*11** Here, as to Claim One, Plaintiffs proffer that the evidence establishes that "Capital Alliance, though its CEO, Mr. Charanvattanakit, admits it hired a company called Absolute Fax to send fax ads on its behalf. Mr. Charanvattanakit agrees that he knew Absolute Fax would send fax advertisements for Capital Alliance Group. [He] admits Capital Alliance Group paid Absolute Fax to send the fax ads. [He] admits that Absolute Fax sent these fax ads. He also admits that he did not discuss TCPA compliance with Absolute Fax." (Doc. No. 61-1 at 9.) As to Claim Three, Plaintiffs proffer that the evidence establishes that "Capital Alliance, though its CEO, Mr. Charanvattanakit, admits it hired a company called Message Communications to make calls on its behalf. [He] agrees that he knew Message Communications would make prerecorded phone calls for Capital Alliance. [He] admits Capital Alliance paid Message Communications to make the calls. [He] admits that Message Communications made these calls." (Doc. No. 61-1 at 14-15.)

Even accepting all of the above as true, Plaintiffs have nonetheless failed to establish actual authority agency as a matter of law. [13] Plaintiffs have at most established Capital Alliance's control over the *result* of the work—not over the means by which it was accomplished. In other words, Plaintiffs have only established Defendants' hiring of third-party vendors to accomplish the ultimate goal of sending faxes and making telemarketing calls, but they have not established the requisite control over the methods and means the companies employed to accomplish these tasks. Plaintiffs inadvertently signal this lack of oversight and control when they argue that Capital Alliance "did not express to Message

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 143 of 233
Meyer v. Capital Alliance Group, Not Reported in Fed. Supp. (2017)

2017 WL 5138316

Communications any requirement of TCPA-compliance in transmitting its calls." (Doc. No. 61 at 16.) At this juncture, Plaintiffs have not shown as a matter of law that an actual authority agency relationship existed such that Capital Alliance is liable for the faxes Plaintiffs received and the telemarketing calls Moser received.

Next, "[a]pparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Makaron v. GE Sec. Mfg.*, No. CV-14-1274-GW(AGRx), 2015 WL 3526253 at *8, 2015 U.S. Dist. LEXIS 75240 at *20-21 (C.D. Cal. May 18, 2015) (internal quotations and citation omitted). Apparent authority "cannot be established merely by showing that [the alleged agent] claimed authority or purported to exercise it." *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997). Rather, it is only established "by proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied." *Id.* "The principal's manifestations giving rise to apparent authority may consist of direct statements to the third person, directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts ... under circumstances which create in him a reputation of authority...." *Mavrix Photographs, Ltd. Liab. Co. v. LiveJournal, Inc.*, 873 F.3d 1045, 1055 (9th Cir. 2017) (amended opinion) (quoting *Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*, 414 F.2d 750, 756 (9th Cir. 1969)).

Here, there is currently insufficient evidence for the Court to conclude that apparent authority agency exists as a matter of law. Plaintiffs argue that consumers who called the numbers listed on faxes pressed buttons, reached Capital Alliance, and had "no choice other than to believe Message Communications was acting on behalf of Capital Alliance Group since the third party would never even know during the call that anybody other than Capital Alliance Group was on the line." (Doc. 61 at 17.) But they cite no cases that support this argument. While there could be sufficient evidence for a jury to find Message Communications and Absolute Fax had apparent authority, there is insufficient evidence for the Court to so conclude as a matter of law. In sum, reasonable minds could differ, and Plaintiffs have not produced sufficient evidence. A triable issue of fact exists as to whether Defendants are liable for TCPA violations under the apparent authority theory of vicarious liability.

**\*12** Finally, under the ratification theory of agency, "[a]lthough a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003); *see also Henderson*, 2017 WL 766548 at *8, 2017 U.S. Dist. LEXIS 28165 at *23-24. Accordingly, the Court necessarily denies this portion of the MSJ as well because it is dependent on the existence of actual or apparent authority agency.

### 2. Claims Two, Three, and Six

Plaintiffs seeks entry of judgment in their favor on Claims Two, Three, and Six. However, in light of the Court's rulings on these claims in Defendants' favor elsewhere in this Order, these portions of Plaintiffs' motion are DENIED as moot.

### 3. Personal Liability of Narin Charanvattanakit and Mark Mendoza; Statutory Damages; and Entitlement to "Willful" or "Knowing" Trebled Damages

The TCPA imposes personal liability on companies' directors and officers who direct, authorize, or ratify violations of the TCPA. Plaintiffs seek summary judgment on the personal liability of Mark Mendoza and Narin Charanvattanakit, Capital Alliance's principals. However, because the Court has found Plaintiffs have not established a TCPA violation in the first place and thus denied their MSJ on Claims One and Three, the portion of the motion is also DENIED. Additionally, Plaintiffs' motion as to their entitlement of statutory damages is DENIED for the same reason. Finally, the motion as to whether Defendants wilfully or knowingly violated the TCPA is DENIED for the same reason. The fundamental determination that the TCPA has been violated must precede each of these inquiries, which cannot logically follow if there has been no TCPA violation in the first place.

### C. Defendants' Motion to Dismiss (Doc. Nos. 48, 49)

Defendants' motion to dismiss is based on (1) the lack of subject matter jurisdiction based on lack of standing and (2) failure to state a claim under Rule 12(b)(6). As a result of the rulings above on Defendants' MSJ, five portions of the motion to dismiss are moot. The Court GRANTS the motion in part and dismisses Claims Four, Five, Six, and Eleven with prejudice. The motion with respect to Claims One and Three is DENIED.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 144 of 233

Meyer v. Capital Alliance Group, Not Reported in Fed. Supp. (2017)

2017 WL 5138316

**1. Claim One: Telephone Consumer Protection Act, 47 U.S.C. §§ 227 et al.**

Defendants contend Plaintiffs lack standing to bring the TCPA Claim One. (Doc. No. 48 at 11-15.) As an initial matter, the Court finds this portion of the motion is timely, as it is a challenge to the Court's jurisdiction. However, Plaintiffs have properly alleged Article III standing, and the Court has jurisdiction over the TCPA claim as a result.

### a. Timeliness of the Motion to Dismiss

Under Article III § 2 of the Constitution, this Court's subject matter jurisdiction is limited to deciding "cases" or "controversies." *See, e.g., Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). No case or controversy exists if a plaintiff lacks standing or if a case is not ripe for adjudication, *see, e.g., Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc), and consequently a federal court lacks subject matter jurisdiction. *See, e.g., White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000) (reiterating that "standing ... pertain[s] to a federal court's subject-matter jurisdiction under Article III"); *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir. 1989) ("Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of article III of the federal Constitution.").

**\*13** Plaintiffs object that FRCP 12(g) prohibits Defendants from filing this motion to dismiss in its entirety because they failed to raise the jurisdictional challenge in their initial motion to dismiss. However, lack of subject matter jurisdiction may be raised by any party at any time, and it is never waived. *See United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). Thus, an exception to FRCP 12(g) applies here and permits Defendants to challenge the Court's jurisdiction based on Plaintiffs' lack of standing. *See* FRCP 12(h)(3) ("If the court determines *at any time* that it lacks subject matter jurisdiction, the court must dismiss the action.") (emphasis added). Accordingly, the motion to dismiss is timely.

### b. Plaintiffs Properly Allege Article III Standing for TCPA Purposes

In the context of the TCPA, unsolicited fax messages, like unsolicited telemarketing phone calls or text messages,

violate the consumer's privacy and disturb their solicitude. *See Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co.,* 847 F.3d 1037, 1043 (9th Cir. 2017). For TCPA purposes, these injuries are sufficient to confer Article III standing, and Plaintiffs need not allege any additional harm. *Id.*; *accord Gibbs v. SolarCity Corp.,* 239 F.Supp.3d 391 (D. Mass. 2017) (collecting cases); *Flores v. Access Ins. Co.,* No. 15-CV-2883-CAS(AGRx), 2017 WL 986516 at *4-5, 2017 U.S. Dist. LEXIS 36486 at *11-12 (C.D. Cal. Mar. 13, 2017) (rejecting economic harm argument); *see also Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.,* 781 F.3d 1245, 1252-53 (11th Cir. 2015) (holding that occupation of fax machine during junk fax transmission on its own sufficiently confers Article III standing); *Cordoba v. DIRECTV, LLC,* 320 F.R.D. 582, 595-596 (N.D. Ga. 2017) (same; collecting cases).

Here, Plaintiffs allege Defendants violated the TCPA by sending each of them unsolicited fax messages without their consent and without a pre-existing business relationship. (SAC ¶¶ 34-36.) Under the line of cases above, these allegations alone are sufficient to confer Article III standing on Plaintiffs, and they need not allege anything further.

Defendants primarily argue that Plaintiffs cannot "claim actual harm" in this case because each of the faxes contained a telephone number or website address where the recipient can ask to opt out. But this argument is misleading because it relies on what is essentially a defense to a TCPA claim that is jury-rigged into a standing argument. They cite *ARcare v. Qiagen N. Am. Holdings, Inc.,* No. CV-16-7638-PA( ), 2017 WL 449173, 2017 U.S. Dist. LEXIS 8344 (C.D. Cal. Jan. 19, 2017), and argue that faxes that contain opt-out notices render Plaintiffs "unable to show that their injuries are traceable or related to [Defendants'] alleged violations of the TCPA." (Doc. No. 48 at 15.) *ARcare* followed this same line of reasoning that Defendants now advance. However, *ARcare* is not persuasive for two reasons.

First, *ARcare* is an unpublished district court case that pre-dated *Van Patten*—a binding, published opinion by the Ninth Circuit, which requires nothing more than the transmission of an unsolicited fax to confer Article III standing. The Court declines to follow *ARcare* over *Van Patten.* So long as Plaintiffs allege they received unsolicited faxes, which they have done here, they have satisfied the standing pleading requirement and need not allege more.

Second, *ARcare* has been criticized as imposing "a heightened causation requirement that is not supported by case law on

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 145 of 233

Meyer v. Capital Alliance Group, Not Reported in Fed. Supp. (2017)

2017 WL 5138316

standing." *Horton v. Sw. Med. Consulting, LLC*, No. 17-CV-266-CVE-mjx, 2017 WL 2951922 at *5, 2017 U.S. Dist. LEXIS 105663 at *13 (N.D. Okla. July 10, 2017); *see also Gorss Motels, Inc. v. Sysco Guest Supply, LLC*, 2017 WL 3597880 at *6-7, 2017 U.S. Dist. LEXIS 133488 at *19-20 (D. Conn. Aug. 21, 2017) (criticizing *ARcare*; concurring with *Horton*); *Cordoba*, 320 F.R.D. at 595-596 ("[A]n overwhelming majority of courts ... have continued to hold that the mere receipt of faxes, telemarketing calls, and/or text messages in violation of the TCPA constitutes sufficient harm for purposes of Article III standing") (collecting cases; identifying *ARcare* as an outlier).

**\*14** Based on the foregoing, Defendants' motion to dismiss Claim One based on the lack of Article III standing is DENIED. [14]

### 2. Claims Two, Seven, Eight, Nine, and Ten

Defendants move to dismiss Claims Two, Seven Eight, Nine, and Ten. However, given that the Court has found they are entitled to summary judgment, the motion to dismiss these claims is DENIED as moot.

### 3. Claim Three (TCPA, 47 U.S.C. § 227(b)(1)(B)) [15]

Defendants contend Claim Three must be dismissed because Plaintiff Moser failed to provide "well pleaded factual allegations" with respect to the Claim's second element, which alleges Defendants used an automatic telephone dialing system in violation of 47 U.S.C. § 227(b)(1)(B). (Doc. No. 48 at 17.) Specifically, Moser alleges, "on information and belief ... that Defendants made many more calls to his telephone lines by prerecorded voice message containing [a prerecorded voice to deliver a message]." (SAC, Doc. No. 1 ¶ 71.) Defendants take issue that these allegations were made "on information and belief." However, in the preceding paragraph of the Second Amended Complaint, Moser alleges: "Defendants ... called Plaintiff MOSER'S residential telephone line, using a prerecorded voice to deliver a message, without Plaintiff MOSER'S express permission at least four (4) times within the last 4 years, the statutory period established by 28 U.S.C. § 1658. Plaintiff received the calls on 8/6/13, 8/29/13, 11/15/13, and 11/26/13." (*Id.* ¶ 70.) Ignoring these specific factual allegations, Defendants contend Claim Three contains "nothing more than a formulaic recitation of the second element...." (Doc. No. 48 at 17.) However, even assuming, without deciding, Defendants are correct that the allegations in paragraph 71 are insufficient, Claim Three

remains viably well-pled based on the specific allegations in paragraph 70. The latter paragraph contains specific facts and dates, complies with pleading requirements, and is not a mere formulaic recitation of elements. Accordingly, Defendants' motion to dismiss Claim Three is DENIED.

### 4. Claims Four (47 C.F.R. § 64.1200(b)(1)); Five (47 C.F.R. § 64.1200(b)(2)); and Six (47 C.F.R. § 64.1601(e))

**\*15** Next, Defendants contend Plaintiffs lack standing to bring the fourth, fifth, and sixth claims because the relevant subsections of 47 C.F.R. § 64.1200 and 47 C.F.R. § 64.1601(e) do not provide for a private right of action. As an initial matter, the Court finds this portion of the motion to dismiss is timely given that it is a challenge to the Court's jurisdiction. As for the merits, the Court finds none of the regulations in these claims confer a private right of action upon Plaintiffs.

#### a. Timeliness

As discussed above, standing bears on jurisdiction, and the Court can examine its jurisdiction at any time. Plaintiffs have standing to bring suit provided they satisfy constitutional and prudential requirements. *Nuclear Info. and Res. Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941, 950 (9th Cir. 2006). To meet the constitutional requirements for standing, a plaintiff must demonstrate it has "suffered an injury in fact," "the injury is fairly traceable to the challenged action," and "it is likely ... that the injury will be redressed by a favorable decision." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). To satisfy the prudential standing requirements, a plaintiff must have "been granted a right to sue by the statute." *Id.* Thus, whether a statute grants a private right of action bears on a plaintiff's standing and thus the Court's jurisdiction. *See id.* Accordingly, the motion to dismiss is timely under Rules 12(g)(2) and 12(h)(3).

#### b. Claims Four and Five are Dismissed

The FCC's TCPA-implementing regulations in 47 C.F.R. § 64.1200(b) require all prerecorded messages to state the identity of the entity responsible for the call at the beginning of the call and provide a contact number during the message for that entity. Defendants contend this regulation does not

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 146 of 233

Meyer v. Capital Alliance Group, Not Reported in Fed. Supp. (2017)

2017 WL 5138316

create a private right of action and accordingly seek dismissal of Claims Four and Five. Defendants are correct.

Only two provisions of the TCPA expressly create private rights of action. 27 U.S.C. §§ 227(b)(3), 227(c)(5). However, the regulations in section 64.1200(b) "flow directly from the directives in Section 227(d)(3)." *Hurley v. Wayne Cty. Bd. of Educ.*, No. 3:16-9949, 2017 WL 2454325 at *4-5, 2017 U.S. Dist. LEXIS 86345 at *10 (S.D. W. Va. June 6, 2017); *see also Lynn v. Monarch Recovery Mgmt.*, 953 F.Supp.2d 612, 620 n.26 (D. Md. 2013). Section 227(d), unlike sections 227(b) and 227(c), does not contain a provision that creates a private right of action. *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011) ("Technical and procedural standards specific to automated calls are included in § 227(d) and accompanying regulation 47 C.F.R. § 64.1200(b), which do not provide a private right of action or a statutory-damages provision."); *Boydston v. Asset Acceptance LLC*, 496 F.Supp.2d 1101, 1106 (N.D. Cal. 2007) ("In contrast to section 227(b)(3), the TCPA does not provide a private right of action for violations of the technical and procedural standards imposed by section 227(d)."); *Hurley*, 2017 WL 2454325 at *4-5, 2017 U.S. Dist. LEXIS 86345 at *10; *Gulden v. Consol. World Travel Inc.*, No. CV-16-1113-PHX-DJH, 2017 WL 3841491 at *3-4, 2017 U.S. Dist. LEXIS 23350 at *7-8 (D. Ariz. Feb. 15, 2017).

Based on the foregoing, the Court "is compelled to find that Congress did not intend private parties to enforce either section [227(d) ] or the regulations prescribed pursuant to that section," and "is unwilling to read a private cause of action into section [227(d) ] and its attendant regulations where Congress conspicuously omitted it but explicitly included it in adjacent subsections." *Hurley*, 2017 WL 2454325 at *4-5, 2017 U.S. Dist. LEXIS 86345 at *10. Accordingly Claims Four and Five are DISMISSED with prejudice.

### c. Claim Six is Dismissed

 **\*16** Defendants contend Plaintiffs lack standing to bring Claim Six because 47 C.F.R. § 64.1601(e) does not convey a private right of action. Plaintiffs recognize this lack of an express grant of a private right of action but nonetheless invite the Court to imply such a right when the statute and regulations have not expressly granted one. However, the Court finds section 64.1601(e) does not create a private right of action. In so finding, the Court is generally guided by the United States Supreme Court's jurisprudence on statutory

construction in the private right of action context and finds persuasive the only case in the country to address this issue.

Where a statutory scheme and its implementing regulations have expressly created a private right of action but have not expressly done so elsewhere in the same scheme, it is "highly improbable" that Congress—or here, the FCC —"absent mindedly forgot to mention an intended private action." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) (internal quotation and citation omitted); *see also Cannon v. Univ. of Chi.*, 441 U. S. 677, 717, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (stating that where Congress "intends private litigants to have a cause of action," the "far better course" is for Congress to confer that remedy in explicit terms). If the statute itself does not "displa[y] an intent" to create "a private remedy," then "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. 275, 286-87, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001); *see also Transamerica Mortg. Advisors, Inc.*, 444 U. S. at 15-16, 100 S.Ct. 242. The Supreme Court has held that the judicial task is instead "limited solely to determining whether Congress intended to create the private right of action asserted." *Touche Ross & Co. v. Redington*, 442 U. S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). "If the statute does not itself so provide, a private cause of action will not be created through judicial mandate." *Ziglar v. Abbasi*, 582 U.S. ——, 137 S.Ct. 1843, 1855-56, 198 L.Ed.2d 290 (2017). The Court keeps these principles in mind as it considers below the only case in the country to address whether section 64.1601(e) creates a private right of action.

The District of Maryland in *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, 2016 U.S. Dist. LEXIS 118774 (D. Md. Sept. 2, 2016), noted uncertainty about where in the TCPA scheme section 64.1601(e) fits:

> In recognition of the role played by Caller ID in helping consumers avoid unwanted calls, and in conjunction with other amendments to its TCPA regulations in § 64.1200 *et seq.*, the FCC specifically amended this set of regulations in 2003 by adding § 64.1601(e), which requires telemarketers to transmit caller identification information, including either calling party number ... or automatic number identification of the calling party's billing number ... and, when available by the telemarketer's carrier, the telemarketer's name; this regulation also prohibited telemarketers from blocking the transmission of caller identification information. However, it is not

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 147 of 233

Meyer v. Capital Alliance Group, Not Reported in Fed. Supp. (2017)

2017 WL 5138316

clear whether § 64.1601(e) is promulgated under either subsection b or subsection c of the TCPA[, which expressly grant private rights of action]. Caller ID technology does not fit neatly into the focus of either subsection, neither of which requires the use of such technology to accomplish their respective purposes. *Thus, it is also not clear whether a violation of § 64.1601(e) falls within the private right of action granted by subsection b or subsection c. It seems just as likely that the FCC may have only intended to ensure consistency between its preexisting Caller ID regulations and its revised TCPA regulations and/or the FTC's regulations pertaining to telemarketing when the FCC promulgated § 64.1601(e)*; those efforts all occurred at the same time, in 2003. Additionally, the FCC said, "Caller ID requirements will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers."

 **\*17** *Worsham*, 2016 WL 4592373 at 4-5, 2016 U.S. Dist. LEXIS 118774 at \*11-12 (emphasis added; citations omitted). Here, as Plaintiffs must concede, section 64.1601(e) does not expressly convey a private right of action. They nonetheless contend that the "genesis" of this section implies a private right of action was created because the section references TCPA subsection (c). However, as *Worsham* concluded, "the FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection c, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim." *Id.* at \*4-5, 2016 U.S. Dist. LEXIS 118774 at \*12 (emphasis in original).

The Court finds *Worsham* persuasive and—in conjunction with the Supreme Court's general guidance—finds section 64.1601(e) does not create a private right of action. The Court declines the invitation to infer a private right of action where section 64.1601(e) is silent on the matter. Accordingly, Claim Six is DISMISSED with prejudice.

### 5. Claim Eleven (Civil Conspiracy) [16]

Defendants contend Claim Eleven for "civil conspiracy" must be dismissed for failure to properly allege how Plaintiffs "were actually harmed" by Defendants' conduct and for failure to allege "what, if any, actual damage they suffered as a result." (Doc. No. 48 at 22.) Plaintiffs respond: "Of course the general conspiracy [sic] is not a cause of action." (Doc. No. 62 at 23.) The Court's analysis begins and ends with this concession. The purpose of the inclusion of claims in complaints is not, as Plaintiffs contend, "to highlight the agency relationships between the Defendants," and the Court

declines to allow the inclusion of an *admittedly improper* claim simply to "highlight[ ] the agency aspects of the case." (*Id.* at 23-24, 100 S.Ct. 242.) The law could not possibly be more clear that civil conspiracy is a legal theory of liability, not an independent, actionable claim. *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 28 Cal.Rptr.2d 475, 869 P.2d 454, 457 (Cal. 1994) (holding that conspiracy is not a legal cause of action independent of underlying tort); *see also FDIC v. Tarkanian*, No. 10-CV-980-WQH(BGS), 2012 WL 1570834 at \*4-5, 2012 U.S. Dist. LEXIS 62209 at \*12-13 (S.D. Cal. May 3, 2012); *Navarrete v. Meyer*, 237 Cal.App.4th 1276, 188 Cal.Rptr.3d 623, 636 (Cal. Ct. App. 2015). Claim Eleven is DISMISSED with prejudice. [17]

### III. CONCLUSION

1. Defendants' motion for partial summary judgment (Doc. No. 50) is GRANTED-IN-PART, and judgment shall be entered in Defendants' favor on the following claims:

   a. Claim Two ("Junk Fax Law," Cal. Bus. & Prof. Code § 1758.41);

   b. Claim Seven (Consumer Legal Remedies Act, Cal. Civ. Code §§ 1770 *et seq.*);

   c. Claim Eight (Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*);

   d. Claim Nine (Trespass); and

   e. Claim Ten (Conversion).

2. Defendants' motion to dismiss (Doc. No. 48) is GRANTED-IN-PART, and the following claims are DISMISSED with prejudice:

   a. Claim Four (47 C.F.R. § 64.1200(b)(1));

   b. Claim Five (47 C.F.R. § 64.1200(b)(2));

    **\*18** c. Claim Six (47 C.F.R. § 64.1601(e)); and

   d. Claim Eleven (Civil Conspiracy).

The remainder of the motion to dismiss is DENIED for the reasons explained herein.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 148 of 233

Meyer v. Capital Alliance Group, Not Reported in Fed. Supp. (2017)

2017 WL 5138316

3. Plaintiffs' motion for partial summary judgment (Doc. No. 61) is DENIED.

4. Defendants' request for judicial notice (Doc. No. 49) is DENIED as moot.

5. The Clerk of Court is directed to terminate docket entry 76, which was incorrectly filed as a motion.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 5138316

---

### Footnotes

1    Plaintiff DMC Properties, Inc. ("DCM"), is owned and operated by Meyer, and Plaintiff Venture Support Group, LLC ("Venture"), is owned and operated by Katz.

2    Defendants Mark Mendoza and Narin Charanvattanakit are Capital Alliance Group's principals.

3    The Junk Fax Law is part of the series of statutes that are commonly referred to as the "false advertising law" ("FAL"). *See People ex rel. Kennedy v. Beaumont Inv., Ltd.,* 111 Cal.App.4th 102, 3 Cal.Rptr.3d 429, 443 (Cal. Ct. App. 2003) ("Provisions ... directed at false advertising are contained in division 7, part 3, chapter 1, starting with section 17500, which prohibits false or misleading statements. For simplicity, we sometimes refer to these provisions as the 'false advertising law.' "). Section 17538.43—which appears in division 7, part 3, chapter 1, article 2 of the Business and Professions Code is contained within the FAL. This section specifically regulates the transmission of junk faxes.

4    All pin-cite references to documents filed on the Court's CM/ECF system are to the page numbers electronically-generated by the CM/ECF system, not to the documents' native pagination.

5    Because the UCL's economic injury requirement applies equally to the FAL, references to the only UCL or the FAL in this analysis apply equally to both.

6    "[F]or a [UCL] lawsuit properly to be allowed to continue, standing must exist at all times until judgment is entered and not just on the date the complaint is filed." *Troyk,* 90 Cal.Rptr.3d at 622 (citation and internal quotations omitted).

7    Under this conservative scenario that favors Meyer, seven faxes account for less than 1% of all faxes Meyer would have sent and received in 2013 and 2014. Of course, the reality is likely that DCM sent and received many more than only two faxes per day.

8    Katz also had a traditional, physical fax machine and testified at deposition that this machine had not required repair. (Defendants' Fact No. 26; Doc. No. 50-6 at 9.)

9    For the first time in their *reply brief,* Defendants also argue Moser was not a "consumer" under the CLRA because he never intended to purchase the goods and services they were trying to market through their telemarketing calls. If true, Moser lacks standing under the CLRA for this additional reason. However, the entire focus of Defendants' MSJ was on their contention that Moser has no standing based on the lack of actual economic damages. Given the Court's finding that the CLRA does not apply in this case in the first place, the Court does not resolve whether Moser qualifies as a "consumer" under the CLRA.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 149 of 233

Meyer v. Capital Alliance Group, Not Reported in Fed. Supp. (2017)

2017 WL 5138316

10    Given the Court's findings above, the Court need not resolve whether the CLRA requires actual economic damages or whether any damages satisfy CLRA standing. (*See* Doc. No. 50 at 15.) In light of the Court's grant of summary judgment, the portion of the motion to dismiss the CLRA claim is DENIED as moot.

11    Defendants Meyer and DCM Properties collectively received seven faxes and no telemarketing calls. (Doc. No. 63-2 at ¶ 6.) Defendant Moser received six faxes and four telemarketing calls. (Doc. No. 63-3 at ¶¶ 67, 11, 14, 15-16.) Defendant Katz received 41 faxes and no telemarketing calls. (Doc. No. 63-4 at ¶ 14.) Even Katz's 41 faxes pale in comparison to the thousands of calls the *Thrifty-Tel* defendants made using far more intrusive methods that essentially hijacked the company's telephone lines. Indeed, the *Thrifty-Tel* defendants' conduct was far more egregious, as it involved the intrusion into the company's computer systems and intrusive, rapid-fire searches using outside software that overburdened the systems for hours.

12    Any ink, paper, and electricity costs Katz and Moser incurred from printing the faxes are not attributable to Defendants. They admit that their computers did not automatically print the faxes and instead stored all of them digitally. Any costs related to printing the faxes were incurred by Katz and Moser's own affirmative actions and cannot be compared to *Thrifty-Tel*. Plaintiffs imposed the costs *upon themselves*. It utterly strains credulity to attribute any such costs to Defendants when Katz and Moser themselves chose to print digital faxes stored on their computers.

13    Defendants' objections to the expert report of Jeffrey Hansen are moot. Even accepting, for the sake of argument, all of Plaintiffs' proffered evidence, including Hansen's report, jury questions still remain.

14    Because *ARcare* is inapposite here, Defendants' request for judicial notice (Doc. No. 49) of the telephone numbers contained in the faxes attached to the Second Amended Complaint is DENIED as moot.

15    Although the motion to dismiss this claim is procedurally untimely under Federal Rule of Civil Procedure 12(g)(2), the Ninth Circuit recently joined two other Circuit Courts of Appeals in "forgiving of a district court's ruling on the merits of a late-filed Rule 12(b)(6) motion." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 319 (9th Cir. 2017). In doing so, the Court read section 12(g)(2) in conjunction with Rule 1 and concluded that "[d]enying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1." *Id.* at 318. Accordingly, with this guidance in mind, Plaintiffs' objections to the timeliness of the motion in this regard are OVERRULED, and the Court proceeds to the merits of this otherwise untimely portion of the motion to dismiss.

16    As with the motion to dismiss Claim Three, this portion of the motion is untimely. However, the Court proceeds to the merits of the claim in accordance with the Ninth Circuit's signaling guidance in *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 319 (9th Cir. 2017).

17    Of course, given that agency is a general theory of liability, the Court's finding does not preclude Plaintiffs from pursuing this legal theory if it is otherwise appropriate, a determination the Court does not make today.

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 4204398
Only the Westlaw citation is currently available.
United States District Court,
**S.D**. **Ohio**,
Western Division.

Terry **MURRAY**, individually and on behalf
of all others similarly situated, Plaintiff,
v.
**CHOICE ENERGY**, **LLC**, et al., Defendants.

No. 1:15–cv–60.
|
Signed **July 10**, **2015**.

**Attorneys and Law Firms**

William McAllum Harrelson, II, Troy, OH, Stefan L. Coleman, Miami, FL, for Plaintiff.

Christopher S. Williams, Calfee Halter & Griswold LLP, Kimberly Smith Rivera, McGlinchey Stafford PLLC, Cleveland, OH, David Thomas Bules, Jamie M. Ramsey, Calfee, Halter & Griswold LLP, Cincinnati, OH, Gabrielle A. Figueroa, **Murray** E. Bevan, Bevan, Mosca, Giuditta & Zarillo, P.C., Basking Ridge, NJ, for Defendants.

**ORDER GRANTING MOTION TO DISMISS OF DEFENDANT CHOICE ENERGY, LLC'S (Doc. 7)**

TIMOTHY S. BLACK, District Judge.

**\*1** This civil action is before the Court on Defendant **Choice Energy**, **LLC's** Motion to Dismiss (Doc. 7) and the parties' responsive memoranda (Docs.13, 17).

## I. STATEMENT OF THE CASE

Plaintiff Terry **Murray** brings this putative class action against Defendants **Choice Energy**, **LLC** and Premiere Business Solutions, **LLC** alleging violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.* (Doc. 1). **Choice Energy** filed a motion to dismiss Plaintiff's complaint and a crossclaim against Premiere for breach of contract. (Doc. **10**). Attached to the crossclaim complaint are a Services Agreement and Turnkey Telemarketing Sales Outsourcing Agreement ("Outsourcing

Agreement") entered into between **Choice Energy** and Premiere. (*Id* ., Exs. A, B). The Services Agreement provides that Premiere will provide telemarketing services for **Choice Energy** and sets forth other terms of the relationship between the parties. (*Id.,* Ex. A). The Outsourcing Agreement provides details of the specific services that Premiere provides. (*Id.,* Ex. B).

## II. FACTS ALLEGED BY PLAINTIFF

For purposes of this motion to dismiss, the Court must: (1) view the complaint in the light most favorable to Plaintiff; and (**2**) take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers,* 561 F.3d 478, 488 (6th Cir.2009).

**Choice Energy** and Premiere are limited liability companies organized in Iowa. (Doc. 1 at ¶¶ 7, 8, 16). Both entities' principal place of business is located at the same address and suite number in West Des Moines, Iowa. (*Id.* at ¶ 16). **Choice Energy** is a licensed electric supplier providing electric generation services for primarily residential customers and businesses. (*Id.* at ¶ 1). Premiere is a telemarketing company that actively sells **Choice Energy's** services, on **Choice Energy's** behalf, through widespread telemarketing. (*Id.* at ¶ **2**).

In addition to operating out of the same location, **Choice Energy's** and Premier's "officer and management personnel are intertwined." (Doc. 1 at ¶ 17). Specifically, Michael Needham is **Choice Energy's** registered agent in Iowa and also a managing partner and owner of Premiere. (*Id.* at ¶ 18). Brent Hood is a managing partner and cofounder of Premiere and is also listed as the registrant and administrator of a website associated with **Choice Energy**. (*Id.* at ¶ 19).

Plaintiff alleges that "Defendants acted in concert to solicit customers to use Defendant **Choice Energy's** electric **energy** supply services" and that "Defendants acted in a joint manner as a singular entity to solicit consumers to purchase electric supply services from **Choice Energy** through telemarketing." (Doc. 1 at ¶¶ 11, 22). Although the complaint often refers to actions undertaken by "Defendants," the complaint does specify that "Defendant Premiere makes outbound telemarketing calls on behalf of **Choice Energy** to consumers nationwide during which the telemarketers offer consumers savings on their electric bills" and "Defendant **Choice Energy** simply outsourced the telesales of its

products to Defendant Premiere for its benefit." (*Id.* at ¶¶ 15, 22).

**\*2** Plaintiff registered for the National Do Not Call Registry on March 14, 2014. (Doc. 1 at ¶ 25). Between August and November 12, 2014, Plaintiff received at least **ten** telephone calls to his landline telephone from the same telephone number. (*Id.* at ¶ 26). Plaintiff answered the call on more than one occasion and was informed that the call was from **Choice Energy**. (*Id.* at ¶ 27). On several occasions, Plaintiff expressly requested to be removed from the calling list and to no longer receive any calls from Defendants. (*Id.* at ¶ 28). However, Plaintiff continued to receive calls. (*Id.* at ¶ 29). Defendants placed calls to Plaintiff and others like him without prior consent and failed to honor requests to no longer receive such calls. (*Id.* at ¶ 21). Defendants also failed to check its calling list against numbers registered on the Do No Call Registry. (*Id.* at ¶ 20).

### III. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed.R.Civ.P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed.R.Civ.P. 8 "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Pleadings offering mere " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly,* 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " *Twombly,* 550 U.S. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,*

556 U .S. at 678 (quoting *Twombly,* 550 U.S. at 570). A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,' " and the complaint shall be dismissed. *Id.* (quoting Fed. Rule Civ. P. 8(a)(2)).

**\*3** In ruling on a Rule 12(b)(6) motion to dismiss, the Court may only consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir.2008).

### IV. ANALYSIS

The TCPA provides a private right of action to "[a] person who has received more than one telephone call within any 12–month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). Plaintiff alleges that Defendants violated **two** regulations. The first regulation makes it unlawful for any person or entity to "initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). Under the second regulation, it is unlawful for any person or entity to "initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." *Id.* § 64.1200(d).

In *In re DISH Network, **LLC**,* 28 FCC Rcd. 6574 (2013), the Federal Communications Commission issued a Declaratory Ruling interpreting these provisions of the TCPA and its accompanying regulations. Specifically, the FCC addressed whether a seller can be liable for violations of the do-not-call provisions of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c), (d) committed by a third-party telemarketer. [1] The FCC held

that a "seller is not directly liable for a violation of the TCPA unless it initiates a call, but may be held vicariously liable under federal common law principles of agency for TCPA violations committed by a third-party telemarketer." *Id.* at 6582.

### A. Direct Liability

Plaintiff first argues that the complaint pleads a plausible TCPA claim against **Choice Energy** under the direct liability theory. In the Declaratory Ruling, the FCC held that direct liability under § 64.1200(c)(2) or § 64.1200(d) arises if a person or entity "initiates" a call in violation of those regulations. *In re DISH Network, LLC,* 28 FCC Rcd. at 6583. Interpreting the term "initiate," the FCC held that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id.* The FCC reasoned that this interpretation reflected "a clear distinction between a call that is made by a seller and a call that is made by a telemarketer on the seller's behalf." *Id.* [2]

**\*4** Plaintiff argues that he has sufficiently pleaded that **Choice Energy** is directly liable for the alleged TCPA violations because "it is entirely plausible that **Choice** and Premiere are not really distinct entities" and because **Choice Energy** was "so involved" in placing the calls to him. (Doc. 13 at 5–6). [3] Plaintiff identifies **two** factual allegations from the complaint to support the argument that **Choice Energy** and Premiere are not distinct entities: the **two** entities operate out of the same office suite and their "officer and management personnel are intertwined." (Doc. 1 at ¶¶ 16–19).

First, citing factors employed in the doctrine of alter ego under Ohio law, [4] Plaintiff contends that the complaint sufficiently alleges that Premiere is the alter ego of **Choice Energy** such that **Choice Energy** can be held directly liable. However, despite alleging that "Defendants' officer and management personnel are intertwined," the complaint's factual allegations do not support this conclusion. Plaintiff alleges that Michael Needham is **Choice Energy's** registered agent in Iowa and a managing partner and owner of Premiere. (*Id.* at ¶ 18). Additionally, Brent Hood is a managing partner and cofounder of Premiere and is "listed as the registrant and administrator of the website: www.4choiceenergy.com which is the website provided to callers by Defendant **Choice**

**Energy**." (*Id.* at ¶ 19). Although the complaint alleges that Needham and Hood serve as officers or management of Premiere, it fails to plead that Needham or Hood had an equivalent role with **Choice Energy**. [5] Further, the bare fact that **Choice Energy** and Premiere operate out of the same location is not sufficient to lead to liability under the alter ego doctrine. The complaint's conclusory statements do not contain any other specific factual allegations that could plausibly demonstrate that Premiere is an alter ego of **Choice Energy**.

Second, Plaintiff invokes language from the Declaratory Ruling to argue that **Choice Energy** was "so involved" with Premiere's placing of the telephone calls that direct liability is appropriate. In the Declaratory Ruling, the FCC *indicated* that a seller could be held directly liable for a TCPA violation even if the call was placed by a third party:

> one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it —by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example. But a construction of the statute that concludes that a seller always initiates a call that is made by a third party on its behalf would entirely collapse the distinction, reflected in our current rules, between seller and telemarketer.

*In re DISH Network, LLC,* 28 FCC Rcd. at 6583. Regardless of whether this statement is dicta, the complaint fails to plead any specific factual allegations to support the legal conclusion that **Choice Energy** was "so involved" in placing the calls that direct liability could be proper. Plaintiff cites four paragraphs that allege "Defendants" placed the calls and failed to honor do-not-call requests, without indicating which particular Defendant took the action in question. (Doc. 1 at ¶¶ 20–23). However, the complaint makes clear that "Defendant Premiere makes outbound telemarketing calls on behalf of **Choice Energy**" and "Defendant **Choice Energy** simply outsourced the telesales of its products to Defendant Premiere for its benefit." (*Id.* at ¶¶ 15, 22). There are no factual allegations in the complaint that **Choice Energy** had

any active role or involvement in placing the calls, such as giving Premiere "specific and comprehensive instructions as to timing and the manner of the call." [6] Accordingly, Plaintiff fails to state a claim for which relief can be granted against **Choice Energy** under the theory of direct liability.

### B. Vicarious Liability

**\*5** Plaintiff also argues that the complaint plausibly alleges a TCPA claim under the theory of vicarious liability. The Declaratory Ruling held that a "seller may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers ..., including not only formal agency, but also principles of apparent authority and ratification." *In re DISH Network, LLC,* 28 FCC Rcd. at 6584.

### 1. Formal Agency

Agency is a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). "An essential element of agency is the principal's right to control the agent's actions." *Id.* § 1.01 cmt. f(1). In particular, "[t]he power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." *Id.* "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Id.* § **2**.01.

Plaintiff again relies heavily on contractual terms in the Services Agreement and Outsourcing Agreement, documents that the Court cannot consider in ruling on this motion to dismiss. The only **two** paragraphs of the complaint cited by Plaintiff provide that **Choice Energy** "outsourced" the telemarketing calls to Premiere. (Doc. 1 at ¶¶ 22–23). However, these allegations are devoid of specific factual allegations indicative of an agency relationship, including that **Choice Energy** had the right to control and the power to give interim instructions.

In *Toney v. Quality Resources Inc.,* No. 13–cv–42, 2014 **WL** 6757978 (N.D.Ill.Dec.1, 2014), the plaintiff adequately alleged an agency relationship between the seller and the third-party telemarketer based on a number of specific factual allegations that demonstrated the control the seller exercised over the third-party telemarketer's placement of the calls. *Id.* at **10**. Here, Plaintiff's complaint lacks any factual allegations that could plausibly show the existence of an agency relationship. The Declaratory Ruling held "we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under ... section 227(c)." *In re DISH Network, LLC,* 28 FCC Rcd. at 6593. Here, Plaintiff has not pled any factual allegations to support the "more" that is necessary to plausibly hold **Choice Energy** vicariously liable. Accordingly, Plaintiff has failed to plead a claim for relief against **Choice Energy** under a formal agency theory.

### 2. Apparent Agency

**\*6** "Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." Restatement (Third) of Agency § **2** .03 cmt. c. Plaintiff argues that he has pleaded facts sufficient to show apparent authority because "**Choice** [**Energy**] plausibly communicated indirectly with the third party—Plaintiff **Murray**—by expressly authorizing Premiere to make the calls and to inform consumers that the calls were being made by **Choice Energy**." (Doc. 13 at **10**). Plaintiff supports this argument by reference to the Services Agreement and Outsourcing Agreement, but not to factual allegations in the complaint.

Plaintiff also invokes several examples provided in the Declaratory Ruling as "guidance" for the existence of apparent authority. *In re DISH Network, LLC,* 28 FCC Rcd. at 6592–93. Several parties to the Declaratory Ruling petitioned the Court of Appeals for the District of Columbia Circuit for review of that "guidance," arguing that the FCC exceeded its authority and acted arbitrarily and capriciously. *DISH Networks, LLC v. FCC,* 552 F. App'x 1 (D.C.Cir.2014). The FCC conceded that the " ' guidance' has no binding effect on courts, that it is not entitled to deference under *Chevron* ..., and that its force is dependent entirely on its power to persuade." *Id.* at **2**. Several courts have subsequently found that the Declaratory Ruling's apparent authority "guidance" is not persuasive. *Toney,* 2014 **WL** 6757978, at \*12; *Bridgeview Health Care Ctr. Ltd. v. Clark,* No. 09 C 5601, 2014 **WL** 7717584, at \*5 n. 3 (N.D.Ill. Nov.21, 2014). This Court need not address that issue at this time because Plaintiff did not plead any allegations in the complaint that could plausibly support his apparent authority theory.

### 3. Ratification

Finally, Plaintiff argues that **Choice Energy** ratified the telephone calls placed by Premiere. Once again, Plaintiff relies only on the Services Agreement and Outsourcing Agreement to allege that **Choice Energy** had the requisite "knowledge of material facts" necessary for ratification. Restatement (Third) of Agency § 4.06. Additionally, Plaintiff has not plausibly pled an agency relationship between **Choice Energy** and Premiere, which is another necessary element for ratification. *See Thomas v. Taco Bell Corp.,* 582 F. App'x 678, 680 (9th Cir.2014) ("Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." (quoting *Batzel v. Smith,* 333 F.3d 1018, 1036 (9th Cir.2003))). Accordingly, Plaintiff has failed to state a claim for relief against **Choice Energy** under the theory of vicarious liability.

### C. Leave to Amend

In the alternative, Plaintiff requests leave to amend his complaint. (Doc. 13 at 11 n. 8). Courts are encouraged to freely grant leave to amend "when justice so requires." Fed.R.Civ.P. 15(a)(2). A motion to amend should be denied, however, "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane,* 53 F.3d 750, 753 (6th Cir.1995). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun County,* 408 F.3d 803, 817 (6th Cir.2005). Here, Plaintiff's reliance on provisions in the Services Agreement and Outsourcing Agreement, documents that were not previously available to him, creates a "reasonable probability that the complaint could [be] saved by an amendment." *Newberry v. Silverman,* —— F.3d ——, No. 14–3882, **2015 WL** 3422781, at *8 (6th Cir. May 29, **2015**). Accordingly, the Court will permit Plaintiff to file an amended complaint to cure the pleading deficiencies identified in this Order.

### V. CONCLUSION

**\*7** Wherefore, for these reasons, Defendant **Choice Energy, LLC's** Motion to Dismiss (Doc. 7) is **GRANTED** and Plaintiff's TCPA claim against **Choice Energy** is dismissed without prejudice. Plaintiff shall file an amended complaint within twenty-one days of the entry date of this Order.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 4204398

---

## Footnotes

1   The Declaratory Ruling also addressed liability for violations of 47 U.S.C. § 227(b). However, that provision is not at issue in this action.

2   The parties implicitly agree that **Choice Energy** is a "seller," which the regulations define as "the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(9).

3   Plaintiff's brief relies extensively on provisions of the Services Agreement and Outsourcing Agreement to argue that dismissal is not warranted. Although the Outsourcing Agreement and Services Agreement appear in the record, Plaintiff concedes that neither document is referred to in his complaint. (Doc. 13 at 11 n. 8). Accordingly, the Court cannot consider these documents in ruling on the motion to dismiss. *Bassett,* 528 F.3d at 430.

4   These factors are:

(1) grossly inadequate capitalization, (**2**) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

*Taylor Steel, Inc. v. Keeton,* 417 F.3d 598, 605 (6th Cir.2005) (quoting *LeRoux's Billyle Supper Club v. Ma,* 77 Ohio App.3d 417, 602 N.E.2d 685, 689 (Ohio App.1991)).

5   Attached to Plaintiff's memorandum contra is an online newspaper article that refers to Hood as the managing partner of **Choice Energy**. The Court is similarly unable to rely on this document when ruling on the motion to dismiss. *Bassett,* 528 F.3d at 430.

6   Plaintiff's brief relies extensively on provisions of the Outsourcing Agreement to demonstrate **Choice Energy's** involvement in the calls. (Doc. 13 at 6–7). However, the Court cannot consider this information because the document was not referred to in the complaint. *Bassett,* 528 F.3d at 430.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**H** KeyCite history available

2023 WL 5607594
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Joseph NELUMS, Plaintiff,
v.
MANDU WELLNESS, LLC, Aaron Mandujan, Brian Patrick Stickney, and 777 Brands, LLC, Defendants.

Civ. No. 2:22-828 KRS/GBW
|
Filed August 30, 2023

**Attorneys and Law Firms**

Sidney Childress, Santa Fe, NM, for Plaintiff.

Kenneth Ferguson, Gordon & Rees LLP, Austin, TX, for Defendants.

**MEMORANDUM OPINION AND ORDER**

KEVIN R. SWEAZEA, UNITED STATES MAGISTRATE JUDGE

**\*1** THIS MATTER is before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 4). Plaintiff filed a response to the Motion to Dismiss and Defendants have filed a reply. (Docs. 11 and 14). Also before the Court is Plaintiff's Motion to Exceed Page Limits, to which Defendant filed a response and Plaintiff filed a reply. (Docs. 12, 13, and 15). Pursuant to 28 U.S.C. § 636, the parties have consented to the undersigned to preside over this matter and enter final judgment. (Docs. 6, 9, and 10). Having considered the parties' briefing, record of the case, and relevant law, the Court grants Plaintiff's Motion to Exceed Page Limits, grants Defendant's Motion to Dismiss, dismisses Plaintiff's claims against Defendants 777 Brands, LLC, Stickney, and Mandujan without prejudice for lack of

jurisdiction, and dismisses Plaintiff's claims against Defendant Mandu Wellness, LLC with prejudice for failure to state a claim.

**I. Background**

Plaintiff alleges that Defendants are sellers of a male enhancement product and that Defendants "formulated, directed, controlled, had the authority to control, ratified and/or substantially participated in" sending him and others unlawful text messages. (Doc. 1-1) at 9. Plaintiff states he received text messages that "were indecent, obscene and designed to arouse the viewer's prurient interest in Defendants' 'Alpha State male enhancement support' product. *Id.* at 13. The text messages had a web-based internet link, and Plaintiff "followed the instructions in Defendants' text messages to Plaintiff to view more advertising." *Id.* at 14. Plaintiff states he purchased the product in order to identify the senders of the text messages and was able to link Defendants to the internet site and the customer-service call center phone number on the packaging of the product that he purchased. *Id.* at 15-16. Specifically, Plaintiff alleges that Defendant Mandu Wellness, LLC sold Plaintiff the product and collected the money from him, and that Defendant 777 Brands, LLC is the proprietor of the website where he bought the product as well as the "end-user assignee" of the customer-service phone number that Plaintiff called. (Doc. 11) at 12. Plaintiff states that Defendant Mandujan is the sole member and manager of Mandu Wellness LLC, and Defendant Stickney is the sole member and manager of 777 Brands LLC. *Id.*

Plaintiff brings three claims against Defendants: (1) violation of the New Mexico Unfair Practices Act ("NMUPA") because the text messages "cause confusion or misunderstanding as to the source of the goods offered in a manner that may, tends to or does deceive or mislead consumers," and because consumers must purchase the product being advertised in order to identify the parties engaging in the unlawful telemarketing; (2) violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), because the text messages were sent with an auto-dialer; and (3) violation of the TCPA, 47 U.S.C. § 227(c), because Defendants or Defendants' agents made telephone solicitations to Plaintiff more than once within 12 months despite the fact that Plaintiff's phone number is listed in the National Do-Not-Call Registry. (Doc. 1-1) at 18-21. Plaintiff brings his claims on behalf of himself and a proposed nationwide class of other persons who

received the telemarketing texts from or on behalf of Defendants. *Id.* at 21-23.

**\*2** Defendants move to dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction and for failure to state a claim. Defendants assert the Court lacks general or specific jurisdiction over out-of-state Defendants 777 Brands, Stickney, and Mandujan, because they have not made the necessary minimum contacts with New Mexico. (Doc. 4) at 10. Defendants further argue that they are not liable under the TCPA or NMUPA for sending the text messages and that Plaintiff fails to allege essential elements to state a claim under either the TCPA or NMUPA. *Id.*

In response, Plaintiff concedes the court does not have general jurisdiction over Defendants 777 Brands, Stickney, or Mandujan, but argues the Court has specific jurisdiction over these Defendants. (Doc. 11) at 5-6. In the alternative, Plaintiff asks the Court to allow him to conduct jurisdictional discovery to learn who sent the text messages. *Id.* at 7. Plaintiff further argues he has plead sufficient facts to support his claims and Defendants are either directly or vicariously liable under the TCPA and NMUPA because they have been deceptive about who sent the text messages. *Id.* at 7-35.

In reply, Defendants maintain that the Court does not have jurisdiction over the out-of-state Defendants because they lack sufficient minimum contacts with New Mexico. (Doc. 14) at 7-8. Defendants oppose Plaintiff's request for jurisdictional discovery because his allegations are unsupported, based on speculation, and do not controvert Defendants' specific denials of personal jurisdiction. *Id.* at 9-12. Defendants also maintain that Plaintiff fails to state a claim under the TCPA and NMUPA. *Id.* at 13-17.

## II. Plaintiff's Motion to Exceed Page Limitations

The Court first considers Plaintiff's Motion to Exceed Page Limits, in which Plaintiff seeks to file a 32-page response brief, in excess of the 24 pages allowed by Local Rule 7.5. (Doc. 12). Plaintiff states he needs the additional pages to address Defendants' jurisdictional argument and motion to dismiss for failure to state a claim. Defendants oppose the requested page extension because it is "excessive, unjustified, and prejudicial to Defendants." (Doc. 13) at 1. Defendants contend that Plaintiff's response brief does not demonstrate the need for the additional pages and the extension prejudices Defendants because they have to address Plaintiff's over-length response in their reply.

The Court finds Plaintiff has provided sufficient support for an extension of page limits because Plaintiff must address Defendants' jurisdictional arguments as well as their motion to dismiss Plaintiff's federal and state claims based on failure to state a claim. The Court finds that an additional eight pages for Plaintiff's response is not excessive, and Defendants could have requested an extension for their reply brief if they needed additional pages. Therefore, the Court grants Plaintiff's Motion to Exceed Page Limits.

## III. Defendants' Motion to Dismiss for Lack of Jurisdiction

Defendant Mandu Wellness is a New Mexico company, Defendant Mandujan is a California resident, Defendant 777 Brands is a Texas company, and Defendant Stickney is a Texas resident. (Doc. 1-1) at 9. Defendants first move to dismiss Plaintiff's claims against the out-of-state Defendants—777 Brands and the individual Defendants—for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). (Doc. 4) at 15. Defendants contend that Plaintiff fails to allege specific facts tying 777 Brands or the individual Defendants to the text messages allegedly received by Plaintiff, such as the contents of the text messages, the number(s) from which they were sent, the dates they were received, or other identifying information. *Id.* at 18. Defendants submit declarations stating they never spoke to Plaintiff, did not direct others to send text messages of the kind Plaintiff states he received, and were not otherwise involved in the creation of the messages. (Doc. 4-1). Defendants assert that Plaintiff's allegations regarding the text messages are speculative and do not support a finding of specific personal jurisdiction over the non-resident Defendants. (Doc. 4) at 18-21. Defendants further argue that Plaintiff's allegations against the entity Defendants cannot be imputed to the individual Defendants. *Id.* at 21-23.

**\*3** Plaintiff responds that he has sufficiently alleged that Defendants are vicariously liable for the text messages because the link in one of the text messages led to an internet site promoting the sale of a product that Plaintiff then bought from Defendants. (Doc. 11) at 7-10; 18-22. The text messages "never identified any seller or sponsor of the texts and never provided any means that Plaintiff noticed for a recipient of the texts to make a do-not-call request." *Id.* at 11. Nevertheless, because the product at the internet site was sold by Defendants, Plaintiff argues that "the actual senders of the text-messages at issue were agents of Defendants under Defendants' direction or

control." *Id.* at 13. Plaintiff submits declarations by Plaintiff and his counsel in support of his arguments. (Docs. 11-1, 11-2). In the alternative, Plaintiff asks the Court to allow him to conduct discovery regarding "who may be directly liable for the texts and who is in possession of the lead-lists of other phone numbers these texts were sent to." *Id.* at 8-9.

In their reply, Defendants maintain that Plaintiff has failed to identify any direct connection between Defendants and the challenged text messages, and Plaintiff's vicarious liability arguments are speculative. (Doc. 14) at 6-7. Defendants note that Plaintiff's affidavits do not contradict Defendants' affidavits regarding their lack of contacts with New Mexico, so Plaintiff has not met his duty to support a finding of jurisdiction. *Id.* at 7-9. Defendants oppose Plaintiff's request for jurisdictional discovery because he has not demonstrated a good-faith basis for asserting jurisdiction over the out-of-state Defendants or how additional discovery would support his jurisdiction argument. *Id.* at 9-10.

### A. Legal Standard

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Thus, a court may "exercise personal jurisdiction over an out-of-state defendant who has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe*, 326 U.S. at 316).

When faced with a motion to dismiss for lack of jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that jurisdiction exists. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). A plaintiff's burden is light in the early stages of litigation before discovery such that the plaintiff need only make a prima facie showing of personal jurisdiction. *Id.* The Court accepts as true all well-pleaded facts alleged by the plaintiff that are plausible, non-conclusory, and non-speculative, unless the defendant controverts those facts by affidavit. *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011). Additionally, the Court resolves factual disputes in the parties' affidavits in the plaintiff's

favor. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

Personal jurisdiction may exist in two ways—general jurisdiction and specific jurisdiction. A court has general jurisdiction over a defendant when the defendant's contacts with the state "are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919 (citation omitted). In contrast, "specific jurisdiction ... 'depends on an affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (citation omitted). Because Plaintiff here does not assert the existence of general jurisdiction, *see* (Doc. 11) at 5, the Court considers whether it has specific jurisdiction over the non-resident Defendants.

**\*4** Specific jurisdiction grows out of "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted). If the "controversy is related to or 'arises out of' the defendant's contacts with the forum," specific jurisdiction exists. *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 (1984) (citation omitted). The specific jurisdiction inquiry involves two steps. First, the Court must determine whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1979). The Tenth Circuit has framed the "minimum contacts" test in the context of specific jurisdiction as "encompass[ing] two distinct requirements: 'first, that the out-of-state defendant must have purposefully directed its activities at residents of the forum state, and second, that the plaintiff's injuries must arise out of defendant's forum-related activities.' " *Shrader*, 633 F.3d at 1239 (quoting *Dudnikov*, 514 F.3d at 1071). If a defendant's actions create sufficient minimum contacts, the second step of the specific jurisdiction inquiry is whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987).

### B. Analysis

The parties have presented competing affidavits to support their personal jurisdiction arguments. The out-of-state Defendants testify that they never called or texted Plaintiff, and they did not direct, control, or

otherwise authorize any third parties to send text messages to Plaintiff. (Doc. 4-1) at 3, ¶¶10-14; at 7, ¶¶10, 12-15; and at 10, ¶¶7-11. Specifically, Defendants state they never "approved, wrote, reviewed, or participated in developing the alleged text messages," they never "authorized any third parties to make outbound text messages," and "[i]n contracting with third parties to advertise the product at issue [they] contractually prohibited their use of SMS text messages." *Id.* In response, Plaintiff and his counsel offer their own declarations stating Plaintiff received text messages that included "indecent or obscene language" that included a link that led to an internet site where Plaintiff "was able to view indecent or obscene visual imagery promoting the sale of the Alpha State product [Plaintiff] bought from Defendants." (Doc. 11-1) at 1, ¶2. Plaintiff states that he was able to identify Defendants Mandu Wellness and 777 Brands after purchasing the product from the charges to his bank debit card and from calling a customer service phone number on the product's packaging. *Id.* at 1-2, ¶¶ 3-11; *see also* (Doc. 11-2).

Importantly, Plaintiff's declarations do not contradict Defendants' assertions that they did not send the text messages and did not direct someone else to send them. Indeed, Plaintiff states that the texts he received "never identified any seller or sponsor of the texts and never provided any means that I noticed for me to make a do-not-call request." (Doc. 11-1) at 2, ¶6. While the Court is required to resolve disputes in the parties' affidavits in favor of Plaintiff, it must only do so for "plausible, non-conclusory, and non-speculative facts" that are not controverted by Defendants by affidavit. *Shrader*, 633 F.3d at 1248. Plaintiff's assertions that Defendants sent or were responsible for the text messages are based on speculation and Plaintiff fails to allege any specific facts that show that Defendants texted Plaintiff or caused someone to text Plaintiff. The only connection Plaintiff provides between Defendants and the text messages is that one of the text messages contained a link that led to an internet site run by Defendant 777 Brands where Plaintiff purchased a product sold by Defendant Mandu Wellness. While Plaintiff speculates that these facts mean that Defendants were responsible for the text messages, he does not controvert Defendants' affidavits disavowing having sent or directed others to send the messages.

**\*5** This court has dismissed several similar complaints filed by Plaintiff's counsel for lack of personal jurisdiction. In *Childress v. Deering*, for example, the court found it lacked specific personal jurisdiction over the defendant based on the defendant's affidavit that he never called the plaintiff or directed anyone to make the alleged phone calls. 2019 WL 409825, at \*4-5 (D.N.M.) ("*Childress II*"). Even though the plaintiff submitted

information showing that the address linked to the number used to call the plaintiff was identical to the defendant's address, the court found this was insufficient because neither the financially responsible party nor the user of the number was the defendant himself. *See id.* at \*5 ("The fact that Deering's address is associated with the phone number from which Childress received calls is insufficient to contradict Deering's affidavit."). Likewise, in *Arnold v. BPCL Mgm't LLC*, the court found it lacked personal jurisdiction where the defendant's representative provided a declaration stating the defendant "did not direct or control the alleged telephone calls to Plaintiff and did not employ any third parties to make outbound telemarketing calls of the kind Plaintiff alleged he received." 2017 WL 3534996, at \*1-6 (D.N.M.). As is the case here, the plaintiff in *Arnold* did not identify a dispute or "specify any statement in his Declaration that contradicts [the] representations that Defendant BPCL did not direct or control the alleged telephone calls to Plaintiff and did not employ any third parties to make outbound telemarketing calls of the kind Plaintiff alleges he received." *Id.* at \*4.

Plaintiff relies on *Mestas v. CHW Group Inc.*, where the court found it had personal jurisdiction over defendants in a TCPA suit based on the plaintiff allegations that multiple calls he received were from phone numbers that were "assigned to and controlled by" the defendants. 508 F.Supp.3d 1011, 1017 (D.N.M. 2020). In denying the defendants' motion to dismiss for lack of personal jurisdiction, the court emphasized that the defendants "have not submitted an affidavit or other written materials to controvert any of the factual allegations in the Amended Complaint" and, thus, "the jurisdictional findings in ... *Childress*, and *Arnold* are of little persuasive value here." *Id.* at 1020. Accordingly, the court accepted as true the plaintiff's allegations that connected the defendants to the calls and construed them in the light most favorable to Plaintiff. *See id.* ("This is not a case where Plaintiff merely conclusorily alleged corporate officers' involvement in authorizing a telemarketing scheme, or only surmised that the caller and the defendant were connected.") (citations and internal quotation marks omitted).[1] In contrast, the out-of-state Defendants here submitted affidavits denying any involvement with the text messages. Accordingly, the facts of this case align with *Childress II* and *Arnold*—not *Mestas*.

Plaintiff also points the Court to *Miceli v. Spinnaker Resorts*, where the court found a factual dispute as to whether the defendant maintained an agency relationship with the parties who made the telemarketing calls. 2021 WL 1122658, at \*1, 5 (D.N.M.). The plaintiff in *Miceli* received telemarketing calls from persons who sold him a vacation package with defendant Spinnaker Resorts.

While the defendant denied making the calls or having control over those who did, the court found a sufficient showing of a possible agency relationship between the callers and defendant because the callers stated they represented Spinnaker Resorts and plaintiff provided evidence that the marketing vendors and defendant may be part of the same family of companies. *Id.* at *3-4. The court, therefore, allowed plaintiff to conduct jurisdictional discovery into the agency relationship between the marketers and defendant. Regardless, the *Miceli* holding is distinguishable because Plaintiff here acknowledges the text messages did not identify Defendants. Plaintiff presents nothing similar to the evidence in *Miceli* that suggested the defendant's agents made the calls. Indeed, the court in *Miceli* emphasized that a credit card charge by a merchant associated with the defendant and evidence that the defendant operated a website associated with the vacation package, were "not sufficient to establish minimum contacts." *Id.* at 4.

**\*6** Based on the foregoing, the Court finds that Plaintiff has failed to demonstrate that the out-of-state Defendants have sufficient minimum contacts with New Mexico for the Court to exercise jurisdiction over them. Because the Court finds that minimum contacts are lacking, it does not address whether exercising personal jurisdiction over these Defendants would offend traditional notions of fair play and substantial justice. *See Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 965 (10th Cir. 2022) ("Here, because we ultimately conclude that Mr. Jayson does not have the minimum contacts necessary to support the exercise of specific jurisdiction over him in Wyoming, we need not determine whether the exercise of personal jurisdiction over Mr. Jayson would 'offend traditional notions of fair play and substantial justice.' ") (citation and internal brackets omitted). The Court, therefore, dismisses Plaintiff's claims against Defendants 777 Brands, LLC, Stickney, and Mandujan without prejudice, pursuant to Rule 12(b)(2) for lack of personal jurisdiction. *See*, e.g., *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims.") (emphasis in original); *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216-17 (10th Cir. 2002) (stating that dismissal for lack of personal jurisdiction under Rule 12(b)(2) should be without prejudice).

**C. Jurisdictional Discovery**

The Court next considers Plaintiff's request "to conduct jurisdictional discovery so that a more satisfactory showing of the necessary facts can be made." (Doc. 11) at 7. "District courts are endowed with broad discretion over discovery, including whether to grant discovery requests with respect to jurisdictional issues." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1233 (10th Cir. 2020). The Tenth Circuit has made clear that "a district court does not abuse its discretion when it denies a general, unsupported motion for jurisdictional discovery." *World Wide Ass'n of Specialty Programs & Sch. v. Houlahan*, 138 Fed. Appx. 50, 52 (10th Cir. 2005). That is because "pure speculation as to the existence of helpful facts is insufficient, as a matter of law, to constitute the type of prejudice" required to justify jurisdictional discovery. *Dental Dynamics*, 946 F.3d at 1234. Plaintiff seeks discovery "about, for example, who may be directly liable for the texts and who is in possession of the lead-lists of other phone numbers these texts were sent to." (Doc. 11) at 8-9. However, Plaintiff does not explain how this additional discovery would support a finding of personal jurisdiction over the out-of-state Defendants, and Plaintiff merely speculates that Defendants even have this information. Accordingly, the Court denies Plaintiff's request for jurisdictional discovery. *See Arnold*, 2017 WL 3534996, at *4 ("Plaintiff's request for discovery illustrates the problem he has in demonstrating this Court's specific personal jurisdiction over Defendant BPCL, namely that Plaintiff does not know who called him ... ."); *G.A. Resort Condo. Assoc., Inc. v. ILG, LLC*, 2020 WL 5536361, at *9 (D. Colo.) (denying jurisdictional discovery request because the plaintiff failed "to present a sufficient factual predicate to support its argument that personal jurisdiction can be established through additional discovery"); *Sur-Tec, Inc. v. CovertTrack Grp., Inc.*, 2014 WL 1304909, at *3 (D. Kan.) (denying motion for jurisdictional discovery because the plaintiff's allegations "are speculative and conclusory"); *cf. Miceli*, 2021 WL 1122658, at *1, 5 (allowing jurisdictional discovery because the plaintiff offered evidence suggesting the defendant's subsidiaries were acting as its agents when they made the calls at issue, such as identifying themselves as representing the defendant).

**IV. Defendants' Motion to Dismiss for Failure to State a Claim**

Having found the Court lacks jurisdiction over the out-of-state Defendants, the Court next considers Defendants' Motion to Dismiss for failure to state a claim as to New Mexico Defendant Mandu Wellness, LLC.

Nelums v. Mandu Wellness, LLC, Not Reported in Fed. Supp. (2023)

Defendants ask the Court to find that Plaintiff failed to plausibly allege essential elements for his TCPA claims, such as that Defendants used an autodialer, that Defendants are directly or vicariously liable for the text messages, and that Plaintiff made an affirmative request to cease communications. (Doc. 4) at 10-33. Defendants contend Plaintiff's NMUPA claim fails for the same reasons as his TCPA claims. *Id.* at 33-35.

**\*7** In response, Plaintiff asks the Court to broadly apply the TCPA and NMUPA and find Defendants liable under these statutes for the text messages since they led to the website from which Plaintiff purchased Defendants' product. (Doc. 11) at 7-22. Plaintiff argues that Defendants are liable under the TCPA and NMUPA because they have been deceptive about who sent the text messages and how they are linked to the website from which they sell their product. *Id.* Plaintiff further states he has adequately plead all essential elements for his TCPA and NMUPA claims. *Id.* at 22-35.

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or speculative to plausible." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss. 556 U.S. at 678. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, Rule 8's pleading standard "does not unlock the doors of discovery for a

plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (citation omitted). In keeping with these two principles, the Court explained:

> A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.*

### B. Discussion

Plaintiff seeks to hold Defendants liable under the TCPA and NMUPA for an unspecified number of text messages sent from unidentified numbers by unidentified parties. Plaintiff alleges Defendants violated the TCPA, 47 U.S.C. § 227(b) and (c), because Defendants or Defendants' agents made telephone solicitations to Plaintiff using an auto-dialer despite the fact that Plaintiff's phone number is listed in the National Do-Not-Call Registry, and that Defendants violated the NMUPA, NMSA § 57-12-22(A), because the texts "cause confusion or misunderstanding as to the source of the goods offered in a manner that may, tends to or does deceive or mislead consumers." (Doc. 1-1) at 18-21. Section 227(b) of the TCPA forbids autodialed calls to a cellular phone without prior consent of the called party, and Section 227(c) prohibits calls to any subscriber on the do-not-call registry. 47 U.S.C. §§ 227(b)(1), (c)(3)(F). The NMUPA states in the relevant portion that: "A person shall not utilize an automated telephone dialing or push-button or tone-activated address signaling system with a prerecorded message to solicit persons to purchase goods or services unless there is an established business relationship between the persons and the person being called consents to hear the prerecorded message." NMSA 1978 § 57-12-22(A) (2003). "Without any guidance from New Mexico case law to interpret Sections 57-12-22(A) and (C), the Court uses the [TCPA] jurisprudence, as allowed under New Mexico law." *Dency v. Chartrand*, 2019 WL 719762, *4 (D.N.M.) (citing NMSA § 57-12-14, "It is the intent of the legislature that in construing Section 3 of the Unfair Practices Act the courts to the extent possible will be guided by the

interpretations given by the federal trade commission and the federal courts.").

**\*8** Defendants assert that Plaintiff's Amended Complaint fails at the very first elements of the TCPA and NMUPA—that it was Defendants who sent the offending text messages. Defendants argue that Plaintiff's Amended Complaint is devoid of allegations that Defendants are directly or vicariously liable for the text messages, either by sending the text messages or through an agency relationship with the entity that sent the messages. With regard to direct liability, the plain language of the TCPA "imposes liability upon persons that 'make' a telephone call or text." *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at \*2 (D.N.M.) ("*Childress I*") (citing *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at \*4 (S.D.N.Y.)). Courts interpreting this provision "have held that the verb 'make' imposes civil liability only on the party that places the call or text." *Id.* (citing *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 135 (E.D.N.Y. 2015) ("By its terms, 47 U.S.C. § 227(b)(1)(A)(iii), assigns civil liability only to the party who 'makes' a call."); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), aff'd, 582 Fed. Appx. 678 (9th Cir. 2014) ("The plain language of the TCPA assigns civil liability to the party who 'makes' a call" and '[d]irect liability is inapplicable here as the parties do not dispute that the actual sender of the text was ... a separate provider of text-message based services.")). Plaintiff's Amended Complaint contains no factual allegations that Defendant Mandu Wellness actually sent the text messages, and Plaintiff acknowledges he does not know who sent them. *See* (Doc. 11) at 11 ("The standardized texts Plaintiff received, prior to his purchase, never identified any seller or sponsor of the texts and never provided any means that Plaintiff noticed for a recipient of the texts to make a do-not-call request."). Accordingly, Plaintiff does not state a claim for direct liability against Defendant Mandu Wellness.

Regarding vicarious liability, "[a] defendant is vicariously liable for violations of the TCPA where common law principles of agency would impose it." *Childress I*, 2018 WL 4684209, at \*3 (citing *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) (actions under the TCPA "incorporate federal common law agency principles of vicarious liability" as derived from the Restatement (Third) of Agency)). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Id.* (quoting Restatement (Third) of Agency, § 1.01 (2006)).

"[T]o plead vicarious liability under the TCPA in accordance with traditional tort principles, Plaintiff must allege *some* facts regarding the relationship between an alleged principal and agent ... and cannot simply allege general control in a vacuum." *Id.* (citation omitted, emphasis in original); *see also Mohon v. Nat'l Cong. of Employers Inc.*, 2020 WL 1332376, at \*6 (D.N.M.) ("New Mexico Law recognizes vicarious liability and agency theory.") (citation omitted).

According to Plaintiff, the text messages he received did not identify who sent them but, instead, "were designed to arouse the viewer's prurient interest in Defendants' Alpha State 'male enhancement support' product." (Doc. 1-1) at 13. While Plaintiff states he followed a link sent in one of the text messages, which led to an internet site run by Defendant 777 Brands where he purchased a product sold by Defendant Mandu Wellness, Plaintiff does not allege any specific facts regarding a relationship between Defendant Mandu Wellness and any individual or entity allegedly responsible for sending the text messages. Plaintiff does not allege facts regarding a relationship between Defendant Mandu Wellness and an agent who sent the messages or that Defendant Mandu Wellness exerted control over the initiator of the messages. Instead, Plaintiff's statements regarding Defendants' vicarious liability and responsibility for the text messages are not factual allegations—they are legal conclusions that merely recite the elements required to demonstrate an agency relationship. *See*, *e.g.*, (Doc. 1-1) at 12 ("Defendants [...] direct, supervise and implement telemarketing including that unlawfully directed at Plaintiff" and "do not require any of their marketers ('affiliates') to subscribe to or comply with the Registry [and] consciously avoid knowing whether any affiliate subscribes to or complies with the Registry."). The case law is clear that such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice to state a claim and are insufficient to establish an agency relationship between the sender of the text messages and Defendants. *Iqbal*, 556 U.S. at 678.

**\*9** The Court finds instructive the holding in *Childress I*, where the court rejected the plaintiff's vicarious liability argument and dismissed the plaintiff's TCPA claims. 2018 WL 4684209, at \*4. There, the initial telemarketer transferred the plaintiff to the defendant's in-house representative to complete the purchase of a product. The court found these facts insufficient to establish that the defendant exerted control over the initiator of the call, supervised or controlled the initial call, or maintained any sort of relationship with the initiator of the call. *Id.* at \*4-5. Consequently, the court found no factual basis to support a finding that the defendant was vicariously liable

for the initial call, had the authority or responsibility to prevent or correct the unlawful telemarketing practices, or ratified the unlawful telemarketing. *Id.*

Again in *Barker v. Sunrun, Inc.*, the court granted the defendant's motion to dismiss under Rule 12(b)(6) where the plaintiff made "no factual allegation in the Complaint that connects or fairly traces the phone calls at issue to Sunrun," and instead the plaintiff "only states that he has sworn statements that connect the actions to Sunrun." 2019 WL 1983291, *3 (D.N.M.). The calls in *Barker* were made by various telemarketers who identified themselves as working for companies other than Sunrun. When the plaintiff finally agreed to a meeting at his home, a representative from Sunrun arrived at the appointed time. *Id.* at *2. Considering these facts and the alleged sworn statement (which the plaintiff did not attach to his complaint), the court found the plaintiff failed to sufficiently allege that it was Sunrun who made or directed the calls and, therefore, failed to state a claim under the TCPA or NMUPA. *See id.* at *3 ("Plaintiff's alleged connection, that the offending calls were directed by or at the behest of Sunrun and that these callers were in an alleged agency relationship with Sunrun, constitutes a legal conclusion. As such it cannot be presumed to be true under a 12(b)(6) analysis and, therefore, fails."); *see also Reo v. Carribbean Cruise Line, Inc.*, 2016 WL 1109042, at *5 (N.D. Ohio) (dismissing TCPA vicarious liability claim where "the sparse allegations made did not allege any facts that show that defendant had any authority to give interim instructions or otherwise had any control over the performance of" alleged third-party callers); *Bank v. Alliance Health Networks, LLC*, 2015 WL 4645317, at *1 (E.D.N.Y.), aff'd, 669 Fed. Appx. 584 (2d Cir. 2016) (complaint in which plaintiff "alleged merely that the calls at issue were made by, or on behalf of, or with the authorization of the defendants" was insufficient to state a vicarious liability claim); *Panacci v. A1 Solar Power, Inc.*, 2015 WL 3750112, at *7 (N.D. Cal.) (complaint dismissed for failure to state a TCPA vicarious liability claim where plaintiff did not allege that defendant "controlled, authorized, or even knew about [the third party's] phone calls, or that [defendant] had any control over" the third-party caller and had "virtually no allegations regarding the relationship between [the defendant] and [the third party]").

Plaintiff's Amended Complaint has the same defects as those in *Childress I* and *Barker* because he does not assert factual allegations regarding the relationship between Defendants and the unknown sender or senders of the text messages. Because Plaintiff fails to satisfy the first elements of the TCPA and NMUPA—that Defendants

were directly or vicariously liable for the text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements of the statutes. *See Barker*, 2019 WL 1983291, at *4 (declining to address other arguments for dismissal after finding plaintiff did not adequately plead defendant was liable for the phone calls). The Court, therefore, grants the Motion to Dismiss under Rule 12(b)(6) for failure to state a claim for relief as to Defendant Mandu Wellness, LLC. Since Plaintiff has already amended his complaint once, and does not ask for leave to amend a second time, the Court finds it is appropriate to dismiss Plaintiff's claims against Defendant Mandu Wellness with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."), citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir.1997); *see also Childress I*, 2018 WL 4684209, at *5 (dismissing case with prejudice for failure to state a claim).

### V. **Conclusion**

**\*10** For the reasons stated above, the Court finds that it does not have jurisdiction over the out-of-state Defendants 777 Brands, Stickney, and Mandujan, and that Plaintiff has not sufficiently alleged claims for relief against Defendant Mandu Wellness.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Exceed Page Limits, (Doc. 12), is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, (Doc. 4), is GRANTED. Plaintiff's claims against Defendants 777 Brands, LLC, Stickney, and Mandujan are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction, and Plaintiff's claims against Defendant Mandu Wellness, LLC are DISMISSED WITH PREJUDICE for failure to state a claim.

IT IS SO ORDERED.

### **All Citations**

Not Reported in Fed. Supp., 2023 WL 5607594

Footnotes

**Nelums v. Mandu Wellness, LLC, Not Reported in Fed. Supp. (2023)**

---

1    The facts in *Mestas* further differ from this case because the plaintiff there alleged he was transferred from a telemarketer to the in-house call center for the defendant and then received two subsequent calls in which the telemarketer "identified the seller or sponsor of the calls as [the defendant]." 508 F.Supp.3d at 1017.

---

**End of Document**                                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 165 of 233

Pascal v. Agentra, LLC, Not Reported in Fed. Supp. (2019)

C KeyCite citing references available

2019 WL 5212961
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Lawrence PASCAL, Plaintiff,
v.
AGENTRA, LLC, et al., Defendants.

Case No. 19-cv-02418-DMR
|
Signed 10/16/2019

**Attorneys and Law Firms**

Mark Louis Javitch, San Mateo, CA, for Plaintiff.

William Scott Richmond, Pro Hac Vice, Laura Elizabeth Brandt, Pro Hac Vice, Platt Cheema Richmond PLLC, Dallas, TX, Megan A. Shapiro, Radoslovich Krogh, PC, Sacramento, CA, for Defendant Agentra, LLC.

William Scott Richmond, Pro Hac Vice, Laura Elizabeth Brandt, Pro Hac Vice, Platt Cheema Richmond PLLC, Dallas, TX, for Defendant Data Partnership Group, LP.

David L. Emerzian, Timothy John Buchanan, McCormick Barstow Sheppard Wayte & Carruth, LLP, Fresno, CA, for Defendant I. Health and Life Insurance Services.

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 20

Donna M. Ryu, United States Magistrate Judge

**\*1** Defendants Agentra, LLC ("Agentra") and Data Partnership Group, LP ("DPG") move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Lawrence Pascal's first amended complaint. [Docket No. 20.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion is granted.

**I. BACKGROUND**

In this putative class action, Plaintiff challenges Defendants Agentra, DPG, and I Health and Life Insurance Services's ("IHL") alleged practice of making unauthorized phone calls to telephones of consumers nationwide and playing artificial or prerecorded voice messages. Plaintiff makes the following allegations in the first amended complaint ("FAC"), all of which are taken as true for purposes of this motion.[1]

Agentra is a Texas company that sells health insurance plans. DPG provides financing and/or administration services for Agentra's plans, and IHL is an authorized sales agent for Agentra and DPG's products and services. [Docket No. 17 (FAC) ¶¶ 20, 27-29.] Defendant Doe is a company that performs robocalls, or "artificial or prerecorded voice message telemarketing calls" to cellular and residential phones. Id. at ¶¶ 2, 3, 30. IHL hired Doe on behalf of Agentra and DPG to market their products and services. Id. at ¶ 31. Doe "placed robocalls on a mass scale to generate sales for IHL's health insurance products and services from Agentra and [DPG]" without the recipients' consent. Id. at ¶¶ 33, 37.

On April 4, 2019, Plaintiff received a call on his cell phone from Doe at the number 970-713-2254. Id. at ¶¶ 38-39. When he answered the call, he heard an artificial or prerecorded voice "advertising lower rates on health insurance" and instructing Plaintiff to "press one" to speak to a representative. After he "pressed one," Plaintiff was connected to a representative who hung up on him when he asked the name of the company calling. Id. at ¶¶ 40-41. In order to identify the caller, Plaintiff called 970-713-2254 and "heard a message indicating that the company was selling health insurance." Plaintiff then asked his attorney to investigate the call. Plaintiff's attorney called the number 970-713-2254 and spoke with a live representative who "solicited a health plan" and refused to disclose "the name of the company." Id. at ¶¶ 42-46. Plaintiff's attorney then purchased a health insurance policy from the representative, and "immediately received an email identifying Defendants Agentra and IHL, copying the email address 'support@ilifeandhealth.com' stating 'Welcome to Agentra Healthcare Solutions' and assigning" a member identification number. In a welcome letter, DPG "indicated it would be providing financing and/or

administration for billing purposes." *Id.* at ¶¶ 48, 49. Plaintiff never consented to receive calls from any of the defendants. *Id.* at ¶ 50. He alleges that "Agentra, IHL and [DPG] knowingly and actively accepted business that originated through the illegal telemarketing calls placed by John Doe 1." *Id.* at ¶ 64.

**\*2** Plaintiff brings two claims against Defendants on behalf of himself and a class and subclass of individuals: 1) violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; and 2) violation of the California Consumers Legal Remedies Act, California Civil Code section 1770(a)(22)(A).

Defendants Agentra and DPG now move to dismiss the TCPA claim.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

## III. DISCUSSION

### A. TCPA Claim

The TCPA makes it unlawful for any person in the United States

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call....

47 U.S.C. § 227(b)(1)(A)(iii). It also makes it unlawful for any person in the United States "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party," subject to certain exceptions. 47 U.S.C. § 227(b)(1)(B).

"The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)). "For a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, at \*4 (N.D. Cal. Jan. 4, 2018) (citing *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014)); *see Thomas v. Taco Bell Corp.*, 582 Fed. Appx. 678, 679 (9th Cir. 2014) ("[t]here are two potential theories of liability [for a section 227(b) violation]: (1) direct liability; and (2) vicarious liability.").

**\*3** Agentra and DPG move to dismiss the TCPA claim, arguing that the FAC does not allege that either of them made the calls in question and does not plausibly allege their liability for the calls under a vicarious liability theory. In response, Plaintiff concedes that Agentra and DPG did not make the calls in question and so are not directly liable under the TCPA. Instead, he contends that Agentra and DPG are vicariously liable for the calls.

"[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez*, 768 F.3d at 879. Three common law agency theories may provide a basis for vicarious liability for violations of section 227(b): actual authority, apparent authority, and ratification. *See Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 448-49 (9th Cir. 2018) (describing "bedrock theories of agency" through which "a principal can be held liable for the legal consequences of its agent's

conduct"); *Thomas*, 582 Fed. Appx. at 679 (citing *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6590 n.124 (2013)).

Plaintiff contends that Agentra and DPG face liability under each of those theories of vicarious liability. Opp'n 3-8.

## 1. Actual Authority

In order to establish that Doe had "actual authority" to place calls on behalf of Agentra and DPG, Plaintiff must establish both an agency relationship *and* "actual authority to place the unlawful calls." *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement (Third) of Agency § 1.01 (Am. Law Inst. 2006)); *see also United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010) ("To form an agency relationship, both the principal and the agent must manifest assent to the principal's right to control the agent."). For an agency relationship to exist, an agent must have authority to act on behalf of the principal and the principal must have the right to control the principal's and the agent's actions. *Mavrix*, 873 F.3d at 1054. Further, "[a]gency means more than mere passive permission; it involves request, instruction, or command." *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085 (C.D. Ca. 2012) (quoting *Klee v. United States*, 53 F.2d 58, 61 (9th Cir. 1931)). "Although the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014). As to "actual authority to place the unlawful calls," the Ninth Circuit has held that "[a]ctual authority is limited to actions 'specifically mentioned to be done in a written or oral communication' or 'consistent with' a principal's 'general statement of what the agent is supposed to do.' " *Jones*, 887 F.3d at 449.

The court concludes that the FAC does not sufficiently allege the existence of an agency relationship between Agentra and/or DPG on the one hand and Doe, the purported caller, on the other. Nor does the operative complaint allege facts supporting an inference that Doe had "actual authority" to make the robocalls on their behalf. In order to allege actual authority, Plaintiff must allege facts showing that Agentra and DPG controlled or had the right to control Doe; that Agentra, DPG, and Doe "manifest[ed] assent" to their right to control Doe, *see Mavrix*, 873 F.3d at 1054; and that Agentra and DPG either communicated a direction to Doe to engage in robocalls or the robocalls were "consistent with" Agentra and DPG's "general statement of what [Doe] [was] supposed to do." *See Jones*, 887 F.3d at 449. Here, the only allegations in the FAC connecting Agentra or DPG with Doe are that IHL, as Agentra and DPG's authorized sales agent, hired Doe "to market [Agentra and DPG's] products and services" by "call[ing] thousands of phones at a time using an artificial or prerecorded voice message." FAC ¶¶ 31-32. The FAC also contains the conclusory allegation that "Agentra, IHL, and [DPG] knowingly and actively accepted business that originated through the illegal telemarketing calls placed by John Doe 1." *Id.* at ¶ 64. These allegations are insufficient to support a theory of agency liability based on actual authority.

## 2. Apparent Authority

**\*4** Apparent authority is an agency theory by which "a principal can be held liable for the legal consequences of its agent's conduct" where the agent "act[s] with apparent authority in its dealings with a third party purportedly on behalf of the principal[.]" *Jones*, 887 F.3d at 449. "Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question." *N.L.R.B. v. Dist. Council of Iron Workers of the State of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997) (citing *N.L.R.B. v. Donkin's Inn*, 532 F.2d 138, 141 (9th Cir. 1976)); *see also* Restatement (Third) of Agency 2.03 (2006) ("[a]pparent authority is the power held by an agent ... to affect a principal's legal relations with third parties where a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."). The Ninth Circuit has explained that "[a]pparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have." *Donkin's Inn*, 532 F.2d at 141 (quoting *Hawaiian Paradise Park Corp. v. Friendly Broadcast Co.*, 414 F.2d 750, 756 (9th Cir. 1969)). Examples of manifestations that give rise to apparent authority include

[the principal's] direct statements to the third person,

directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts and conduct negotiations under circumstances which create in him a reputation of authority in the area which the agent acts and negotiates.

*Donkin's Inn*, 532 F.2d at 141 (quoting *Hawaiian Paradise*, 414 F.2d at 756).

Apparent authority "must be established by proof of something said or done by [the principal] on which [a third party] reasonably relied"; it "cannot be established merely by showing that [the purported agent] claimed authority or purported to exercise it." *Dist. Council*, 124 F.3d at 1099. "Apparent authority exists only as to those to whom the principal has manifested that an agent is authorized. There is, therefore, tort liability only if such a manifestation and its execution by the apparent agent results in harm." *Thomas*, 582 Fed. Appx. at 679 (quoting Restatement (Second) of Agency § 265 cmt. *a* (1958)).

Here, the FAC does not plead sufficient facts to support an apparent authority theory that Agentra and/or DPG is vicariously liable for the allegedly illegal telemarketing calls. *See Thomas*, 582 Fed. Appx. at 679-80; *see, e.g., Canary v. Youngevity Int'l, Inc.*, No. 5:18-cv-03261-EJD, 2019 WL 1275343, at *8 (N.D. Cal. Mar. 20, 2019) (holding plaintiff failed to plead apparent authority theory where he "does not allege that he reasonably relied upon something said or done by [defendant] to his detriment").[2]

### 3. Ratification

Finally, Plaintiff asserts a ratification theory of agency. Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting Restatement (Third) of Agency § 4.01(1)). "Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Thomas*, 582 Fed. Appx. at 680 (quoting *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003) (footnote omitted)). As discussed above, the FAC fails to sufficiently allege an agency relationship between Agentra and/or DPG on the one hand and Doe, the purported caller, on the other. It also fails to allege facts that support the affirmance by Agentra and/or DPG of a prior act done by Doe. Therefore, it does not state a ratification theory of agency.

**\*5** In sum, the TAC does not sufficiently allege facts giving rise to a plausible inference that Agentra and/or DPG "made" the calls under the meaning of the TCPA. Accordingly, Plaintiff's section 227(b) claims are dismissed without prejudice.

#### B. CRLA Claim
The CLRA makes unlawful:

> Disseminating an unsolicited prerecorded message by telephone without an unrecorded, natural voice first informing the person answering the telephone of the name of the caller or the organization being represented, and either the address or the telephone number of the caller, and without obtaining the consent of that person to listen to the prerecorded message.

Cal. Civ. Code § 1770(a)(22)(A).

In their opening brief, Defendants make no reference to Plaintiff's CLRA claim. On reply, they argue that the CLRA claim is premised on the same vicarious liability theory as the TCPA claim, and that the arguments in favor of dismissal of the TCPA claim apply to the CLRA claim. *See* Reply 7. While it is improper to raise arguments for the first time on reply, as noted above, Plaintiff does not allege that Agentra and/or DPG made the calls in question. Accordingly, Plaintiff's vicarious liability theory applies equally to the CLRA claim. For the same reasons discussed above, the FAC does not sufficiently state a vicarious liability theory as to Agentra and DPG. Accordingly, the CLRA claim is dismissed with leave to amend.

#### IV. CONCLUSION
For the foregoing reasons, Agentra and DPG's motion to dismiss the TCPA and CRLA claims is granted with leave to amend. Any amended complaint must be filed within 14 days of the date of this order.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5212961

Pascal v. Agentra, LLC, Not Reported in Fed. Supp. (2019)

---

Footnotes

1    When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

2    It is not clear whether a party seeking to plead an apparent authority theory of liability must also sufficiently allege an agency relationship. While the Ninth Circuit has expressly held that a party must establish an agency relationship in order to maintain theories of actual authority and ratification under the TCPA, *see Jones*, 887 F.3d at 449, and *Thomas*, 582 Fed. Appx. at 680 (quoting *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003)), the court's own research did not yield a definitive answer to this question with respect to apparent authority. The Restatement (Third) of Agency suggests that an agency relationship is not a requisite to establish apparent authority: "The definition in this section does not presuppose the present or prior existence of an agency relationship ... [t]he definition thus applies to actors who appear to be agents but are not, as well as to agents who act beyond the scope of their actual authority." Restatement (Third) of Agency § 2.03 (2006).

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Rogers v. Assurance IQ, LLC, Not Reported in Fed. Supp. (2023)

H KeyCite history available

2023 WL 2646468
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington,
at Seattle.

Joseph ROGERS, Debra Jones
Stevenson, Frank Garrido, Taylor
Armiger, and Gwendolyn Thompson, on
behalf of themselves and all others
similarly situated, Plaintiffs,
v.
ASSURANCE IQ, LLC and
Boomsourcing, LLC, Defendants.

Case No. 2:21-cv-00823-TL
|
Signed March 27, 2023

**Attorneys and Law Firms**

Andrew Heidarpour, Pro Hac Vice, Heidarpour Law Firm
PLLC, Washington, DC, Anthony Paronich, Pro Hac
Vice, Paronich Law PC, Hingham, MA, Timothy J.
Sostrin, Pro Hac Vice, Keogh Law Ltd, Chicago, IL,
Samuel J. Strauss, Turke & Strauss LLP, Madison, WI,
for Plaintiffs Gwendolyn Thompson, Joseph Rogers,
Debra Jones Stevenson, Taylor Armiger, Frank Garrido.

John David Du Wors, Newman Du Wors LLP, Seattle,
WA, Mark A. Silver, Pro Hac Vice, Nathan L. Garroway,
Pro Hac Vice, Dentons U.S. LLP, Atlanta, GA, for
Defendant Assurance IQ LLC.

John David Du Wors, Newman Du Wors LLP, Seattle,
WA, for Defendant Boomsourcing LLC.

Order Granting in Part and Denying in Part Motions to
Dismiss

Tana Lin, United States District Judge

**\*1** This matter comes before the Court on motions to
dismiss filed by Defendant Assurance IQ, LLC (Dkt. No.

55) and Defendant Boomsourcing, LLC (Dkt. No. 59),
respectively. Plaintiffs Joseph Rogers, Debra Jones
Stevenson, Frank Garrido, Taylor Armiger, and
Gwendolyn Thompson filed this putative class action
under the Telephone Consumer Protection Act ("TCPA"),
47 U.S.C. § 227, et seq., after having allegedly received
illegal telemarketing calls for Assurance IQ's insurance
services from Boomsourcing and another vendor. Having
considered the relevant record and governing law and
finding oral argument unnecessary (see LCR 7(b)(4)), the
Court grants the motions in part with leave to amend and
denies them in part.

**I. Background**

Plaintiffs filed their original complaint in June 2021 (Dkt.
No. 1) and filed the operative complaint ("Second
Amended Complaint") in April 2022 (Dkt. No. 48). Each
plaintiff alleges receiving, without consent, pre-recorded
telemarketing calls from insurance company Assurance
IQ on their cellphones or residential landlines between
late 2020 and mid-2021. Dkt. No. 48 ¶¶ 27, 33, 37–40,
43, 46–50, 54–55, 58–61, 64, 68–73, 75–82. Plaintiffs
Rogers and Thompson also allege that they received these
calls from Assurance IQ despite having their numbers
registered on the National Do Not Call Registry ("the
DNC list"). *Id.* ¶¶ 34, 65.

Plaintiffs claim that Defendant Boomsourcing contracted
with Assurance IQ and seek to hold it liable as a
vendor/platform provider that made calls on Assurance
IQ's behalf. *Id.* ¶¶ 9, 16. According to the complaint,
Boomsourcing "physically dialed th[e] calls" to Plaintiffs
Rogers, Stevenson, Thompson, and Armiger. *Id.* ¶¶ 39,
49, 72, 81. Plaintiffs further allege that Assurance IQ
hired non-defendant Torchlight Technology Group LLC
to generate new insurance leads and that a call center used
by Torchlight Technology placed a pre-recorded voice
call to Plaintiff Garrido. *Id.* ¶¶ 55–58, 96.

Plaintiffs seek to represent two nationwide classes. *Id.* ¶
102. Their proposed Robocall Class includes all persons
within the United States who received a pre-recorded
voice telemarketing call from Assurance IQ (or a third
party acting on Assurance IQ's behalf) to their residential
or cellular telephone numbers in the four years preceding
the complaint "after obtaining the telephone number from
the same source from which it obtained Plaintiff's phone
numbers." *Id.* ¶ 103. Their proposed National Do Not Call
Registry Class includes all persons within the United
States who received more than one telemarketing call

within a twelve-month period from Assurance IQ (or a third party acting on Assurance IQ's behalf) in the four years preceding the complaint "after obtaining the telephone number from the same source from which it obtained Plaintiff's phone numbers" even though their telephone numbers had been on the DNC list for at least thirty-one days. *Id.* ¶ 104.

## II. Legal Standards

### A. Motions to Dismiss

When a plaintiff "fails to state a claim upon which relief can be granted," the defendant may move for dismissal. *Fed. R. Civ. P. 12(b)(6)*. In reviewing a 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 672. "When reviewing a dismissal pursuant to Rule ... 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.' " *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

**\*2** A motion to dismiss may also be brought where subject matter jurisdiction is lacking. *See Fed. R. Civ. P. 12(b)(1)*. The Court must dismiss a case if it determines that it lacks subject matter jurisdiction "at any time." *Fed. R. Civ. P. 12(h)(3)*.

### B. The TCPA

Congress passed the TCPA to curb abusive telemarketing practices following the development of automated technology that could make calls using artificial or pre-recorded voices ("robocalls"). *See Facebook v.*

*Duguid*, 141 S. Ct. 1163, 1167 (2021). The Federal Communications Commission ("FCC") is authorized to issue regulations regarding the TCPA. As relevant here, the TCPA prohibits (1) use of a pre-recorded voice in telemarketing calls to residential phones without prior express consent of the called party, *47 U.S.C. § 227(b), and (2)* telemarketing calls to residential telephone subscribers on the DNC list, *47 U.S.C. § 227(c)*; *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2018). The TCPA provides individuals who receive prohibited calls a private right of action to sue for damages. *See 47 U.S.C. §§ 227(b)(3), (c)(5)*. Only the caller and individuals or entities in an agency relationship with the caller can be held liable. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014), *aff'd*, 577 U.S. 153, 168 (2016). Violators must pay $500 in damages—an amount that can be tripled at the court's discretion if the violation was knowing or willful—for each infringing call. *47 U.S.C. §§ 227(b)(3), (c)(5)*.

## III. Discussion

Defendants present seven independent arguments for dismissal.

### A. Use of a Pre-recorded Voice

Defendants seek dismissal of the first cause of action, a claim under *47 U.S.C. § 227(b)* for delivery of pre-recorded telemarketing messages to cellular and residential telephone numbers. Dkt. No. 55 at 6–7; Dkt. No. 59 at 20–22.

#### 1. Requests for Judicial Notice

As a preliminary matter, Plaintiffs ask the Court consider evidence not included in the complaint in assessing the adequacy of this claim. Dkt. No. 56 at 3; Dkt. No. 63 at 6–7.

Generally, a district court may only consider the pleadings when ruling on a 12(b)(6) motion to dismiss; otherwise, it must convert the motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, courts may properly consider the following extrinsic

Rogers v. Assurance IQ, LLC, Not Reported in Fed. Supp. (2023)

evidence when ruling on a 12(b)(6) motion: (1) "material which is properly submitted as part of the complaint"; (2) documents not physically attached to the complaint on which the complaint "necessarily relies" and whose authenticity is not contested; and (3) matters of public record. *Id.* at 688–89; *accord Allen v. Wilmington Trust, N.A.*, 735 F. App'x 422, 423 (9th Cir. 2018). A court may consider unattached documents on which a complaint "necessarily relies" where: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claims, and (3) no party questions the authenticity of the document." *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) (citations omitted). Matters of public record may be judicially noticed so long as they are not "subject to reasonable dispute." *Id.* (quoting Fed. R. Evid. 201(b) and *Lee v. City of Los Angeles*, 250 F.3d at 689). A fact is not subject to reasonable dispute if it is (1) "generally known" within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

**\*3** The Court declines to take judicial notice of "Assurance's own filings with the Federal Communications Commission" that apparently confirm Assurance IQ's strategy of marketing its insurance services through use of pre-recorded voice messages, as Plaintiffs urge in their response brief. *See* Dkt. No. 56 at 3. Such filings may be judicially noticed as matters of public record. However, Plaintiffs neither attached the relevant FCC filings nor adequately described them to enable the Court to locate them or gauge their significance. The Court is not required to do Plaintiffs' work for them. *See, e.g., Banks v. ACS Education*, 638 F. App'x 587, 589 n.1 (9th Cir. Jan. 4, 2016) (denying motion for judicial notice where appellant did not "identify or attach the documents or explain their relevance to his case").

Similarly, the Court declines to take judicial notice of a page of Boomsourcing's website that Plaintiffs argue confirms its use of pre-recorded calls merely because Boomsourcing purports to place calls using soundboard technology. *See* Dkt. No. 56 at 3. Not only have Plaintiffs failed to demonstrate that the webpage is an appropriate subject for judicial notice, but the Court is also unwilling to make the inferential leap that *any* use of soundboard technology necessarily entails placement of pre-recorded voice calls in violation of the TCPA.

## 2. Adequacy of the Factual Allegations

To plead a TCPA claim under § 227(b), Plaintiffs must allege the following elements: (1) a defendant called their cellular or residential phone numbers, (2) using an artificial or pre-recorded voice, (3) without their prior express consent. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). Defendants contend that Plaintiffs have merely made "naked assertions" regarding use of a pre-recorded voice. Dkt. No. 59 at 21; *see also* Dkt. No. 55 at 6–7. Specifically, Plaintiffs have alleged the following:

- "One of Assurance IQ's strategies for marketing its insurance services includes the use of prerecorded messages" (Dkt. No. 48 ¶ 28);

- "Assurance IQ engages in prerecorded calls to solicit new customers" (*id.* ¶ 29);

- "To send those pre-recorded calls, Assurance IQ uses third parties, such as Boomsourcing" (*id.* ¶ 30);

- Each plaintiff received at least one call that "used" or "began with a prerecorded message regarding the sale of insurance" (*id.* ¶¶ 40, 50, 58, 71, 79);

- The calls to Plaintiffs Stevenson, Thompson, and Armiger "advertise[d] healthinsurance.net, which is owned and operated by Assurance" (*id.* ¶¶ 51, 73, 82);

- In the call to Plaintiff Garrido, "[t]he company wasn't identified in the prerecorded message" (*id.* ¶ 59);

- "Other individuals have indicated that they have received similar unwanted calls" from Assurance, citing an online complaint by a non-plaintiff stating that "[t]he # that calls is a local # and the automated voice mail is considered not wanted and harassments" (*id.* ¶ 84); and

- "Assurance IQ has received multiple complaints about their prerecorded calling process, including from state attorneys general" (*id.* ¶ 86).

Even accepting all of these allegations as true, they do not provide insight into why Plaintiffs believe the calls made to them were pre-recorded beyond simply stating that they were. "In reviewing TCPA complaints which echo or recite the Act's statutory language, some courts have struggled with whether a particular allegation is a legal conclusion[,] a fact[,] or both." *Vaccaro v. CVS Pharmacy*, No. C13-174, 2013 WL 3776927, at *2 n.4 (S.D. Cal. July 16, 2013).

District courts within the Ninth Circuit have taken varied

approaches on what is required to properly allege a TCPA claim regarding pre-recorded calls. A minority have found barebones allegations of a pre-recorded call to be sufficient. *See, e.g., Vaccaro*, 2013 WL 3776927, at *2 ("That the calls were made using an artificial or prerecorded voice is a factual allegation rather than a legal conclusion."); *but see Rahimian v. Adriano*, No. C22-2189, 2022 WL 798371, at *2 (D. Nev. Mar. 16, 2022) (explaining that most courts in California have required specific facts to support the conclusion that defendants used a pre-recorded voice and calling a decision adopting *Vaccaro*'s reasoning "an outlier"). More recently, courts within the Ninth Circuit have required plaintiffs to plead "circumstances that could support an inference that the calls were placed with ... an artificial or prerecorded voice." *Caruso v. Cavalry Portfolio Servs.*, No. C19-1224, 2019 WL 4747679, at *4 (S.D. Cal. Sept. 30, 2019); *see also Rahimian*, 2022 WL 798371, at *3 (dismissing TCPA pre-recorded voice claim because "[w]ithout further specifics, Plaintiff's allegation is conclusory."); *Winters v. Quicken Loans*, No. C20-112, 2020 WL 592002, at *4 (S.D. Ariz. Sept. 4, 2020) (same); *Daniels v. ComUnity Lending, Inc.*, No. C13-488, 2015 WL 541299, at *7 (S.D. Cal. Feb. 9, 2015) (dismissing complaint alleging "that calls to Plaintiffs['] cellular telephones included prerecorded voice calls.... [without any] facts to make this allegation plausible").

**\*4** Even at this pre-discovery stage, Plaintiffs should be able to allege facts establishing that the calls were in-fact pre-recorded, such as the "tenor, nature, or circumstances of the alleged calls," *Manopla v. Sansone Jr.'s 66 Automall*, C17-16522, 2020 WL 1975834, at *2 (D.N.J. Jan. 10, 2020), or otherwise demonstrate that a live human was not speaking during the calls. This information is known to Plaintiffs without any discovery. For example, "[a] TCPA plaintiff could describe the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the 'person' calling him, the generic content of the message he received, or anything else about the circumstances of a call or message contributing to his belief it was pre-recorded." *Johansen v. Vivant, Inc.*, No. C12-7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012).

The Court holds that Plaintiffs have failed to state a claim under 47 U.S.C. § 227(b).

## B. The Do Not Call Claim

A National Do Not Call registry claim can be made by residential telephone subscribers who have registered their phone numbers on the DNC list. 47 U.S.C. § 227(c)(5). Defendants argue that Plaintiffs have failed to allege: (1) that their phone numbers are used for residential purposes; and (2) that they placed their own numbers on the DNC list (as opposed to someone else placing their numbers on the list). Dkt. No. 55 at 6–8; Dkt. No. 59 at 22–24.

The Court agrees with Defendants. Again, this information is known to Plaintiffs without any discovery and should be simple to include. "A plaintiff is the master of his complaint and responsible for articulating cognizable claims." *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021). Plaintiffs chose to use the passive voice to allege that both Plaintiffs Rogers' and Thompson's phone numbers were "registered on the National Do Not Call Registry." Dkt. No. 48 ¶¶ 34, 65. However, the numbers could have been registered by previous owners of those numbers rather than by Plaintiffs themselves. Plaintiffs further chose to describe that the telephone numbers were for "personal use" (*id.* ¶¶ 35, 66), which does not necessarily equate with residential use. The statute invoked by Plaintiffs specifically applies to subscribers of "residential" phones. 47 U.S.C. § 227(c)(5). These are facts that are easily within the knowledge of Plaintiffs and can be pleaded to remove any doubt about whether Plaintiffs Rogers and Thompson actually registered their own numbers on the DNC list and whether those numbers are for residential use. For example, Plaintiffs made such an allegation with respect to Plaintiff Stevenson, whose number they described as "a residential landline" (*see* Dkt. No. 48 ¶ 43) but failed to do the same for Plaintiffs Rogers and Thompson. While the Court construes all inferences in Plaintiffs' favor, the conclusory allegations simply require too many inferential leaps as currently drafted.

The Court holds that Plaintiffs have failed to state a claim under 47 U.S.C. § 227(c).

## C. Theories of Liability

### 1. Direct Liability

Defendant Boomsourcing contends that as a matter of law, as well as based on the facts pleaded, it cannot be held directly liable under the TCPA. Dkt. No. 59 at 6–11. Generally, " '[u]sers of [telecommunications] services, not the carriers providing the services, [are] held liable'

under the TCPA." *Kauffmann v. CallFire, Inc.*, 141 F. Supp. 3d 1044, 1047 (S.D. Cal. 2015) (citations omitted). This exemption does not apply where a carrier or calling service platform provider (1) "took the steps necessary to physically place the call" or (2) "was so involved in placing the call so as to be deemed to have initiated it." *In re Rules & Reguls. Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 7980 (2015) ("2015 FCC Order"), *set aside in part on other grounds*, *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).

**\*5** A platform provider may be held directly liable for a call that violates the TCPA where it controlled the messaging or timing of the message, controlled the recipient list, willfully enabled "fraudulent spoofing of telephone numbers," assisted its telemarketing customer in blocking caller ID, or knowingly allowed the telemarketer to violate the TCPA. *See Frank v. Cannabis & Glass*, No. C19-2502019 WL 4855378, at \*2 (E.D. Wash. Oct. 1, 2019) (citing 2015 FCC Order at 7980–84). None of those circumstances were pleaded in the present complaint.

As masters of their complaint, Plaintiffs merely pleaded that Boomsourcing "physically dialed" pre-recorded calls to Plaintiffs Rogers, Stevenson, Thompson, and Armiger (none of whom consented to receive those calls) on behalf of Assurance IQ. Dkt. No. 48 ¶¶ 28–31, 37–40, 46–50, 68–72, 76–81. Plaintiffs have not pleaded that Boomsourcing was aware that Assurance IQ was using its platform to send pre-recorded calls in violation of the TCPA. *See id.* Though Plaintiffs contend in their response to Boomsourcing's motion that Defendants had a contract requiring Boomsourcing to physically place calls on behalf of Assurance IQ, they did not state so in the complaint. *Compare* Dkt. No. 63 at 5 *with* Dkt. No. 48. Even if it had been properly pleaded, the Court is not satisfied the existence of such a contract term alone would suffice to establish direct liability.

Moreover, Plaintiffs have not pleaded any *facts* supporting their inference that Boomsourcing physically dialed the calls to four of the individual plaintiffs. *See* Dkt. No. 48. A TCPA plaintiff must allege facts to support their belief that the defendant placed the calls at issue, such as "how the caller identified itself, the substance of the calls," or other details revealing that the defendant actually took steps to place the calls. *See Aaronson v. CHW Grp., Inc.*, No. C18-1533, 2019 WL 8953349 (E.D. Va. Apr. 15, 2019); *see also Adzhikosyan v. Callfire, Inc.* No. C19-246, 2019 WL 7856759, at \*3 (C.D. Cal. Nov. 20, 2019) (dismissing TCPA complaint because plaintiff failed to explain how he knew defendant sent the texts at issue).

The Court therefore holds that Plaintiffs have failed to state a claim against Defendant Boomsourcing and grants the motion to dismiss the claims against it based on a theory of direct liability.

### 2. Vicarious Liability

The FCC has ruled that sellers can be held vicariously liable under federal common-law agency principles for their telemarketing agents' violations of TCPA Sections 227(b) or 227(c). *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013) ("2013 FCC Order"); *see also Campbell-Ewald Co.*, 768 F.3d at 878 (presuming that Congress intended to incorporate tort-related vicarious liability standards to the TCPA and finding that presumption consistent with the FCC's interpretations). The FCC also has indicated that consumers should not be required to develop all of the facts surrounding the agency relationship at the pleadings stage. *See id.* at 6592–93 (noting that evidence of vicarious liability should be discoverable and "nothing in this order requires a consumer to provide proof—at the time it files its complaint—that the seller should be held vicariously liable for the offending call"). Still, a TCPA complaint for vicarious liability should include allegations supporting the existence of an agency relationship. *See Fabricant v. Elavon, Inc.*, No. C20-2960, 2020 WL 11884505, at \*4–6 (C.D. Cal. Aug. 25, 2020) (dismissing TCPA complaint with leave to amend where plaintiff failed to plead the agency relationship necessary to support a vicarious liability claim); *Naiman v. TranzVia LLC*, No. C17-4813, 2017 WL 5992123, at \*10–13 (N.D. Cal. Dec. 4, 2017) (same).

**\*6** "An essential element of agency is the principal's right to control the agent's actions." Restatement (Third) of Agency § 1.01 cmt. f(1) (Am. L. Inst. 2006). To establish an agency relationship for TCPA purposes, "the plaintiff must show that the principal controlled the 'manner and means' of the allegedly violating phone call." *Fabricant*, 2020 WL 11884505, at \*4 (citing *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012)).

Defendant Assurance IQ claims that it cannot be held vicariously liable under the TCPA based on Plaintiffs' allegations. *See* Dkt. No. 57 at 5–8. Plaintiffs counter that Boomsourcing contracts with Assurance IQ and that Assurance IQ required Boomsourcing to place the calls. Dkt. No. 63 at 5. But these allegations needed to be made in the complaint, and they were not. The sole reference in the Second Amended Complaint with regard to any contract is that "Boomsourcing contracted with Assurance

in this District." Dkt. No. 48 ¶ 9. However, there is no information as to what was covered by the contract between Assurance and Boomsourcing or whether the contract required Boomsourcing to place pre-recorded calls. Nor does the complaint allege that Assurance IQ directed those vendors to call individuals on the DNC list. *Compare* Dkt. No. 63 (response brief making this allegation) *with* Dkt. No. 48 (complaint).

Plaintiffs further allege that Assurance IQ instructed Boomsourcing on who to call, provided the phone numbers to call, gave instructions to use pre-recorded voice messages, and approve a pre-recorded script for those calls. *Id.* ¶¶ 92–95. But these conclusory statements—which are more akin to a recitation of the factors for establishing vicarious liability—do not provide "any facts showing how [Assurance IQ] did those things or how it knew those things, or what facts the allegations are based on...." *Naiman*, 2017 WL 5992123, at *11. Plaintiffs may have this information, as they have a copy of the contract between Assurance IQ and Boomsourcing (*see* Dkt. No. 63 at 5); yet, they did not include the information in their complaint. Indeed, the contract was only mentioned in the complaint for the purpose of establishing venue. *See* Dkt. No. 48 ¶ 9 (stating "Boomsourcing contracted with Assurance in this District and in doing so, likely agreed to this District as a venue for disputes related to that agreement").

Plaintiffs present even less support with respect to Assurance IQ's relationship with Torchlight Technology, which allegedly physically dialed a pre-recorded call to Plaintiff Frank Garrido. Dkt. No. 48 ¶¶ 12, 56–57. Plaintiffs contend that "Assurance IQ only allowed Torchlight Technology to call (a) individuals who were insured with certain companies (b) lived in certain geographic regions and (c) [met] other criteria related to the type of insurance prospect that could be offered." *Id.* ¶ 97. Plaintiffs allege that Assurance IQ "maintained interim control over the actions of Torchlight Technology" by providing the dates and times on which to make the calls, as well as instructions "on how to consummate a transfer for an interested consumer." *Id.* ¶¶ 98–99. But Plaintiffs do not even allege that Assurance IQ instructed Torchlight Technology to make any pre-recorded calls. *See supra* Section III.A.2; *see also* Dkt. No. 48 ¶¶ 96–99.

**\*7** Again, there are simply too many leaps Plaintiffs request be made without any supporting facts, even at this early stage of the case. Thus, the Court holds that Plaintiffs have not sufficiently alleged that Assurance IQ is vicariously liable for the TCPA violations it contends were committed by Boomsourcing or Torchlight Technology. The Court grants the motion to dismiss the

claims against Assurance IQ based on a theory of vicarious liability.

**D. "Knowing" or "Willful" TCPA Violations**
Defendants argue that Plaintiffs' barebones conclusions that their violations of the TCPA were willful and knowing are insufficient to support a prayer for increased damages above the statutory $500 per infringing call. Dkt. No. 55 at 11; Dkt. No. 59 at 24–25. Plaintiffs have alleged that Assurance IQ explicitly instructed Boomsourcing to use pre-recorded messages and approved the script for that pre-recorded message and that it "maintained interim control" over Torchlight Technology's actions and provided the vendor with parameters regarding whom to call. Dkt. No. 48 ¶¶ 94–95, 97–99. They also allege "Defendants' violations [of § 227(c)] were knowing or willful." *Id.* ¶ 126.

Courts within this circuit have repeatedly found similarly conclusory allegations regarding the willful or knowing nature of TCPA violations to be sufficient to withstand a motion to dismiss. *See Keifer v. HOSOPO Corp.*, No. C18-1353, 2018 WL 5295011, at *5 (S.D. Cal. Oct. 25, 2018) (finding enough support in an allegation that "the foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA" to deny dismissal and collecting cases). While the complaint's allegations could be strengthened by inclusion of further facts, such as any requests Plaintiffs made to Defendants to stop the unwanted calls, *see Quicken Loans*, 2020 WL 5292002, at *5, further factual development is unnecessary at this stage in the litigation. The Court therefore denies the motion to dismiss with respect to Plaintiffs' request for treble damages.

**E. Lack of Subject Matter Jurisdiction**
To have standing to seek injunctive relief, a plaintiff must allege either "continuing, present adverse effects" due to exposure to the defendant's past illegal conduct, or "a sufficient likelihood [of being wronged again] in a similar way." *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1229 (9th Cir. 2017) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) and *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "When evaluating whether [the requisite injury for standing purposes] is present, we must look at the facts *as they exist at the time the complaint was filed*."

*Am. Civ. Liberties Union of Nev. v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006) (emphasis in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Here, Plaintiffs seek to prevent Defendants from "making telemarketing calls to any cellular or residential telephone numbers using an artificial or prerecorded voice in the future," and from advertising their goods and services on a non-emergency basis "to any number on the National Do Not Call Registry in the future." Dkt. No. 48 ¶¶ 122, 125. The most recent allegations of pre-recorded phone calls in the Second Amended Complaint date back to June 2021 (Dkt. No. 48 ¶¶ 56, 69), which is the month the original complaint was filed (*see* Dkt. No. 1). Defendants argue that Plaintiffs have not adequately alleged continuing or future injury and therefore cannot obtain an injunction under the TCPA. Dkt. No. 55 at 12; Dkt. No. 59 at 25–26.

**\*8** In *Campbell v. Facebook*, the Ninth Circuit upheld a settlement agreement in a class action alleging that Facebook had captured, read, and used website links in its users' private messages without their consent where a "combination of continuing harm plus likelihood of future harm was sufficient for Plaintiffs to have standing to seek injunctive relief." 951 F.3d 1106, 1111, 1119 (9th Cir. 2020). There, the court was satisfied that plaintiffs had shown continuing and future harm because the defendant was actively violating their privacy at the time they filed suit, the defendant never claimed to have ceased the challenged conduct, and the defendant's "ongoing retention of the data collected from private messages meant that there was a risk that it would resume [the challenged conduct]." *Id.* at 1119. Similarly, the instant action was filed around the time the TCPA violations allegedly occurred, Defendants have not claimed to have ceased the challenged conduct, and Defendants have made no representation that they have taken action to prevent continuance of the challenged conduct, such as deleting Plaintiffs' phone numbers from their records or ceasing their calls to Plaintiffs since the complained-of incidents. *See Miller v. Time Warner Cable, Inc.*, No. C16-329 2016 WL 7471302, at \*4 (9th Cir. Dec. 27, 2016) (finding plaintiff lacked standing to request injunctive relief under the TCPA where defendant presented evidence it had received and respected plaintiff's do-not-call request).

For these reasons, the Court holds that Plaintiffs have standing to pursue injunctive relief.

**F. Leave to Amend**

Defendants contend that Plaintiffs should be denied leave to amend their complaint because their previous amendments failed to cure its deficiencies. Dkt. No. 55 at 12–13; Dkt. No. 59 at 26. Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Rahimian*, 2022 WL 798371, at \*2 (granting motion to dismiss with leave to amend TCPA claims). Though Plaintiffs have already twice amended their complaint, there is no basis to infer that further amendment would be futile, as those amendments were not made in response to a motion to dismiss. Therefore, the Court GRANTS Plaintiffs one final opportunity to amend their complaint.

**G. Class Allegations Under Rule 12(f) and Rule 23**

As an alternative to dismissing the complaint in its entirety, Defendant Boomsourcing asks the Court to strike "faulty proposed class definitions ..., other class-related allegations ..., and 'superfluous historical' allegations" from the complaint under Rules 12(f) and 23. Dkt. No. 59 at 26. Courts have the power to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, "[m]otions to strike are disfavored, because they may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Chao Chen v. Geo Grp., Inc.*, 297 F. Supp. 3d 1130, 1132 (W.D. Wash. 2018) (citations and quotations omitted). This is especially true of motions to strike class action allegations, as "the shape and form of a class action evolves only through the process of discovery." *Hoffman v. Hearing Help Express, Inc.*, No. C19-5960, 2020 WL 4279176, at \*2 (W.D. Wash. Mar. 27, 2020) (citations omitted); *see also Dorian v. Amazon Web Servs., Inc.*, No. C22-269, 2022 WL 3155369, at \*2 n.1 (W.D. Wash. Aug. 8, 2022) (refusing to consider "premature" request to strike class allegations at the motion to dismiss stage).

Boomsourcing insists that paragraph 84 of the Second Amended Complaint contains an immaterial and prejudicial reference to anonymous online posts by disgruntled consumers. Dkt. No. 59 at 27. Specifically, Plaintiffs have alleged that others have indicated receipt of "similar unwanted calls" by quoting a post on the online forum 800notes.com regarding unwanted "automated" telemarketing messages from "Assurance Insurance." Dkt. No. 48 ¶ 84; *see also supra* Section

III.A.2. Though the relevance of this allegation as currently pleaded is questionable, the Court is not inclined to strike it at this time given Boomsourcing's failure to show prejudice due to its inclusion and because Plaintiffs are granted leave to amend their complaint. As for the class allegations, the Court shall reserve ruling on their propriety pending a potential motion for class certification.

**IV. Conclusion**

**\*9** For the reasons and to the extent specified above, the Court grants the motions to dismiss (Dkt. Nos. 55, 59) in part with leave to amend and denies them in part. Should Plaintiffs choose to amend, their third amended complaint must be filed within **thirty (30) days** of this Order.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2646468

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 178 of 233

🚩 KeyCite Yellow Flag

Distinguished by   Bryant v. Byron Udell & Associates Inc.,    E.D.Va.,
August 11, 2023

2020 WL 9348208
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Norfolk Division.

Jim SCRUGGS, Plaintiff,

v.

CHW GROUP, INC., and Home Warranty
Administrators, Inc., Defendants.

Action No. 2:20cv48
|
Signed 11/12/2020

**Attorneys and Law Firms**

Craig Carley Marchiando, Consumer Litigation Associates,
Newport News, VA, Kevin Anthony Dillon, Consumer
Litigation Associates, Richmond, VA, for Plaintiff.

Andrew Zimmitti, John William McGuinness, Pro Hac Vice,
Manatt Phelps & Phillips, LLP, Washington, DC, Aaron
Heeringa, Pro Hac Vice, Manatt, Phelps & Phillips LLP,
Chicago, IL, for Defendants.

### UNITED STATE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Robert J. Krask, United States Magistrate Judge

**\*1** On July 14, 2020, the defendant, CHW Group, Inc.
("CHW"), filed a motion to dismiss the first amended
complaint pursuant to Federal Rules of Civil Procedure 12(b)
(1) and 12(b)(6). ECF No. 27. The motion was referred to
the undersigned United States Magistrate Judge on September
2, 2020, pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal
Rule of Civil Procedure 72(b). ECF No. 34. For the reasons
discussed below, the undersigned **RECOMMENDS** that the
motion to dismiss be **GRANTED**.

### I. PROCEDURAL HISTORY

On June 30, 2020, plaintiff, Jim Scruggs ("Scruggs"), filed
a two-count amended complaint against defendant, CHW. [1]
Pl.'s First Am. Compl., ECF. No. 22. In count one, Scruggs
alleges that CHW made repeated unwanted telemarketing
calls in violation of the Telephone Consumer Protection
Act ("TCPA"), 47 U.S.C. § 227(c). Id. ¶¶ 32–40. In count
two, Scruggs alleges that CHW made repeated unwanted
telephone solicitation calls in violation of the Virginia
Telephone Privacy Protection Act ("VTPPA"), Va. Code Ann.
§ 59.1-514. Id. ¶¶ 41–47.

On July 14, 2020, CHW filed a motion to dismiss both counts
in the first amended complaint for lack of subject matter
jurisdiction pursuant to Rule 12(b)(1) and for failure to state
claims pursuant to Rule 12(b)(6). ECF No. 27. On August
11, 2020, Scruggs filed a response in opposition to CHW's
motion to dismiss. ECF No. 32. CHW filed a reply to Scruggs'
opposition on August 31, 2020. ECF No. 33. After review of
the parties' submissions, the Court concludes that a hearing is
unnecessary, and this matter is ready for a decision. See Local
Civil Rule 7(J).

### II. FACTUAL BACKGROUND [2]

On or around August 19, 2004, Scruggs registered his
cellphone number ending in 3953 ("the phone number") on
the national do-not-call registry. Pl.'s First Am. Compl. ¶ 12.
He has continuously owned the phone number, and he has
never changed the number, nor removed his number from the
registry list. Id. Scruggs does not own a landline telephone
and uses his cellphone for residential purposes. Id. 13.

On January 24, 2019, Scruggs received three unwanted phone
calls on his cellphone. Id. ¶¶ 14–17. During each call,
"the caller identified himself as associated with CHW and
attempted to sell Mr. Scruggs a home warranty" and "Scruggs
informed CHW that he did not want CHW to contact him
further." Id.

Scruggs also received three unwanted calls on his cellphone
the next day, January 25, 2019; an additional call on January
30, 2019; and another on January 31, 2019. Id. ¶¶ 18–22. Each
time "the caller identified himself as associated with CHW
and again attempted to sell a home warranty to Mr. Scruggs."
Id. And, each time "Mr. Scruggs answered and again told the
caller to stop contacting him." Id.

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 179 of 233

**\*2** Scruggs asserts that "[d]iscovery will confirm that CHW, or someone acting on CHW's behalf, initiated the above calls to Mr. Scruggs." *Id.* ¶ 23.

As a result of the eight calls, Scruggs experienced "anxiety and emotional distress." *Id.* ¶ 24. He "expended considerable time and energy to try to get CHW to stop calling him," and the calls "interrupted [his] life, harassed him, and caused him to unnecessarily expend time dealing with calls he reasonably expected would stop when he repeatedly instructed CHW's representatives to stop calling him." *Id.* ¶¶ 25–26.

CHW acted willfully in committing these acts in violation of the TCPA and the VTPPA. *Id.* ¶¶ 27–31. Specifically, CHW has had three decades, as well as the means and resources, to come into compliance with the TCPA, which was enacted in 1991. *Id.* ¶¶ 28–30.

### III. LEGAL STANDARDS

**A. Standards applicable to a motion to dismiss for failure to state a claim.**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) should be granted if a complaint fails to allege "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Accordingly, when reviewing a motion to dismiss, a court must "assume all [well-pled facts] to be true" and "draw all reasonable inferences in favor of the plaintiff," but it need not "accept the legal conclusions drawn from the facts, and [ ] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citations and internal quotation marks omitted). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

**B. Standards applicable to a motion to dismiss for lack of subject matter jurisdiction.**

Rule 12(b)(1) permits a defendant to move for dismissal of a claim based on a court's lack of subject-matter jurisdiction. *A. W. ex rel. Wilson v. Fairfax Cty. Sch. Bd.*, 548 F. Supp. 2d 219, 221 (E.D. Va. 2008). Specifically, "[a] defendant may challenge the court's subject matter jurisdiction in one of two ways: (1) the defendant may raise a 'facial challenge' by arguing that the facts alleged in a complaint are not sufficient to confer subject matter jurisdiction on the court or (2) the defendant may raise a 'factual challenge' by arguing that the jurisdictional allegations made in the complaint are not true." *Brunelle v. Norfolk S. Ry. Co.*, No. 2:18cv290, 2018 WL 4690904, at \*2 (E.D. Va. Sept. 28, 2018) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "In a facial challenge, the court evaluates the facts in a complaint using the same standard used for a Rule 12(b)(6) motion to dismiss,"—namely, "all alleged facts are taken as true and the motion must be denied if the complaint alleges facts that, if proven, would be sufficient to sustain jurisdiction." *Id.* (citing *Kerns*, 485 F.3d at 192). As noted above, however, such allegations are not taken as true with respect to legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

**\*3** In this case, the Court concludes that CHW has raised a facial challenge to subject matter jurisdiction. CHW raises its challenge to Scruggs' complaint pursuant to Rule 12(b)(1) by relying only on the allegations noted on the face of the complaint. *See* ECF No. 27 at 29 ("The Court should also dismiss the [first amended complaint] pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiff still *fails to plead sufficient facts* demonstrating the essential Article III standing elements of causation or redressability ....." (emphasis added)). Accordingly, aside from "mere conclusory statements" supporting a cause of action's elements or legal conclusions, *Iqbal*, 556 U.S. at 678, the Court "will accept as true all facts alleged in [Scruggs' first amended complaint] for the purposes of determining whether the court has subject matter jurisdiction over this claim," *Brunelle*, 2018 WL 4690904, at \*2.

### IV. DISCUSSION

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 180 of 233

**A. Count one warrants dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and, in the alternative, Rule 12(b)(6) for failure to state a claim.**

In count one, Scruggs alleges that CHW violated the TCPA, 47 U.S.C. § 227(c)(5). Pl.'s First Am. Compl. ¶¶ 32–40. Specifically, Scruggs alleges that CHW "made repeated telemarketing calls to Mr. Scruggs' residential phone despite Mr. Scruggs having registered the number on the National Do Not Call List"; continued to make such calls "after he informed CHW ... to stop contacting him"; "made these repeated calls without instituting procedures to maintain a do not call list in violation of 47 C.F.R. § 64.1200(d)"; "made [the calls] without Mr. Scruggs['] authorization[;] and disregarded Mr. Scruggs' designation of the Phone Number on the National Do Not Call List ... [in] violation of 47 C.F.R. § 64.1200(c)(2)." *Id.* ¶¶ 33–36. Scruggs asserts that violation of these regulations "constitute[s] violations of the TCPA." *Id.* ¶ 37 (citing 47 U.S.C. § 227(c)(5)). Further, he alleges that CHW acted "willfully and/or knowingly [in] violat[ing] these regulations," *id.* ¶ 38, which merits treble damages, *id.* ¶ 40 (citing 47 U.S.C. § 227(c)(5) (providing a right to receive up to $500.00 in damages for each violation and up to three times that amount "[i]f the court finds [in its discretion] that the defendant willfully or knowingly violated the regulations")).

Defendant seeks to dismiss the claim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. ECF No. 27 at 9. To support the former, defendant argues that Scruggs lacks standing to bring this suit, because the at-issue calls are not "fairly traceable" to CHW and cannot be redressed by CHW. *Id.* at 29–30. To support the latter, defendant advances three main arguments: (1) Scruggs has not pled facts supporting direct TCPA liability, (2) Scruggs has not pled facts supporting vicarious TCPA liability, and (3) the facts, as pled, do not amount to a violation of TCPA's do-not-call rules. *Id.* at 15–26.

Because standing is a "threshold question in every federal case," the Court begins its review of defendant's arguments there. *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

**1. This Court lacks subject matter jurisdiction over count one, because plaintiff lacks Article III standing.**

Rule 3(b)(1) permits a defendant to move for dismissal of a claim based on a court's lack of subject-matter jurisdiction. *Fairfax Cty. Sch. Bd.*, 548 F. Supp. 2d at 221. As provided by Article III of the Constitution, federal courts have subject-

matter jurisdiction over justiciable cases or controversies. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992). The doctrine of standing is one component of justiciability, "serv[ing] to identify those disputes which are appropriately resolved through the judicial process." *Id.* at 560 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). The standing issue—that is, "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf," *Warth*, 422 U.S. at 498-99 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962))—presents "a threshold question in every federal case," *id.* at 498.

**\*4** In order to satisfy the standing requirements of Article III of the Constitution, a plaintiff must demonstrate that: (1) [he] has suffered an injury in fact; (2) the asserted injury in fact is fairly traceable to, or caused by, the challenged action of the defendant; and (3) it is likely rather than just conjectural that the asserted injury in fact will be redressed by a decision in the plaintiff's favor.

*Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 480 (4th Cir. 2003) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000)).

CHW does not contest that Scruggs adequately pled the first requirement, that is, that he "suffered an injury in fact" related to harms from eight unwanted phone calls, but instead argues that Scruggs has failed to adequately plead the second and third requirements. *See* ECF No. 27 at 39–30.

**a. The plaintiff's injury is not fairly traceable to the defendant's conduct.**

The purpose of "[t]he 'fairly traceable' requirement [is to] ensure[ ] that there is a genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000) (citing *Lujan*, 504 U.S. at 560). This "standard is 'not equivalent to a requirement of tort causation.' " *Id.* (quoting *Pub. Int. Rsch. Grp. v. Powell*

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 181 of 233

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

*Duffryn Terminals, Inc.*, 913 F.2d 64, 72 (3rd Cir. 1990)). Nor do plaintiffs need to demonstrate causation with "scientific certainty." *Id.* (quoting *Nat. Res. Def. Council, Inc. v. Watkins*, 954 F.2d 974, 980 n.7 (4th Cir. 1992)). On the other hand, "[i]f 'the line of causation ... is too attenuated' or 'highly indirect,' the plaintiff's injury is not 'fairly traceable' to the defendant and the plaintiff will not have standing." *Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.*, No. JFM-08-62, 2011 WL 1557759, at *2 (D. Md. April 22, 2011) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). In addition, this "element of standing does not require the challenged action to be the sole or even immediate cause of the injury." *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018). The alleged conduct, however, cannot be wholly "the result of the independent action of some third party not before the court." *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

Consistent with the *Iqbal* pleading standards, courts have found that unwanted calls in the TCPA context were "fairly traceable" to defendants where the plaintiff alleged some factual context surrounding the contested calls that supported an inference that the defendant or its agent had made the call. For instance, in *Cordoba v. DIRECTV, LLC*, the complaint alleged that DIRECTV hired Telecel to make marketing calls; that Telecel placed numerous calls on behalf of DIRECTV to the named plaintiff Cordoba, who was listed on the national do-not-call registry; that Cordoba "repeatedly told Telecel that he did not want to be called," that "Telecel admitted that the company did not maintain an internal do-not-call list"; that Cordoba "wr[ote] to DIRECTV and request[ed] that they cease calling him"; that "DIRECTV responded and promised that they would no longer contact him"; and that "the calls continued." 942 F.3d 1259, 1265–66 (11th Cir. 2019). The Eleventh Circuit observed, "Cordoba, as the named plaintiff, has no problem meeting the traceability requirement: the complaint squarely alleges that he repeatedly asked Telecel and DIRECTV to stop calling him, Telecel didn't keep a list of all those who asked not to receive calls, and he later suffered the injury of receiving many phone calls, which would not have happened if Telecel had maintained an internal do-not-call list and abided by it." *Id.* at 1271. Therefore, pleading not only that defendant hired an agent who called the plaintiff, but also facts suggesting the defendant acknowledged making the call—here, by DIRECTV in writing—are contextual factors that might support a finding that a call was fairly traceable to the defendant.

**\*5** Similarly, in *Hurley v. Messer*, the plaintiff identified the specific phone numbers used to make the contested calls in the complaint and alleged that the phone numbers belonged to two defendant service providers. No. 3:16-9949, 2018 WL 4854082, at *4 (S.D.W. Va. Oct. 4, 2018). The court found that the contested calls were fairly traceable to the voice-over-internet service providers who were alleged to have "kn[own] about the illegal conduct, had a right to control the conduct but, nevertheless, permitted the robocalls to be broadcast through their assigned telephone numbers." *Id.* Therefore, allegations of control over the calls, knowledge of the calls, and ownership of the assigned telephone numbers are additional contextual factors that might contribute to a finding that the conduct is fairly traceable to the defendant.

On the other hand, courts have found that contested phone calls were not fairly traceable to a defendant where plaintiffs have failed to allege non-conclusory facts that support an inference linking the defendant to the calls. For example, in *Barker v. Sunrun Inc.*, the plaintiff alleged that the defendant "had an agency relationship with the individuals or entities who actually made the offending phone calls." No. CV 18-855 KG/LF, 2019 WL 1983291, at *3 (D.N.M. April 29, 2019). The court was unpersuaded. *Id.* It observed, "this allegation constitutes a legal conclusion, and so it is not entitled to a presumption of truth." *Id.* (citing *Iqbal*, 556 U.S. at 678). In addition, the plaintiff "state[d] he ha[d] sworn statements that connect the actions to [the defendant]," but this was insufficient as well, as those statements were not included in or attached to the complaint. *Id.* Ultimately, the court found standing lacking, noting that aside from these conclusory statements, "Plaintiff did not make factual allegations ... connecting the actions to [the defendant]." *Id.*

CHW argues that Scruggs's alleged injury is not fairly traceable to CHW. CHW states, "Plaintiff fails to allege sufficient non-conclusory facts by which one could trace his purported injury to CHW." ECF No. 27 at 29. Specifically, CHW observes that "Plaintiff ... provides virtually no detail about the calls at issue, let alone the identity of the caller(s), the duration, the number(s) from which they originated, the substance of the calls, or more importantly who *physically* placed any of the calls—*i.e.*, CHW or some third party who merely stated they were 'associated with' CHW somehow." *Id.* at 17. Further, CHW notes that Scruggs concedes this point in his first amended complaint by requiring discovery on the issue. *Id.* (citing Pl.'s First Am. Compl. ¶ 23 ("Discovery will confirm that CHW, or someone acting on CHW's behalf, initiated the [contested] calls to Mr. Scruggs.")).

Scruggs asserts that he has pled sufficient facts to show the unwanted calls are fairly traceable to CHW. ECF No. 32 at 7. He argues, "Mr. Scruggs has clearly pleaded that he received a series of phone calls from Defendant, and the callers identified themselves with Defendant and tried to sell Mr. Scruggs[ ] Defendant's product." *Id.* In short, he notes that "Mr. Scruggs has demonstrated that the offending conduct in his complaint is traceable to Defendant by alleging that Defendant is the one who called him. Nothing more is needed." *Id.* The Court disagrees.

Viewed in the light most favorable to Scruggs, the alleged facts are insufficient to show that the contested calls are "fairly traceable" to CHW for two principal reasons: (1) the conclusory statements in the first amended complaint do not provide a factual basis to trace the contested phone calls to CHW; and (2) the alleged conduct could be attributed to an unrelated third party not before the Court.

**\*6** As a preliminary matter, Scruggs mischaracterizes the factual allegations set forth in the first amended complaint. First, Scruggs now argues in his opposition to the motion to dismiss "that he received a series of phone calls from Defendant," and that "Defendant is the one who called him." *Id.* But the amended complaint does not reflect that. Instead, the facts section of the amended complaint notes that on eight occasions, "Scruggs received a phone call in which *the caller* identified himself *as associated with* CHW," and that "[d]iscovery will confirm that CHW, or someone acting on CHW's behalf, initiated the [eight contested] calls to Mr. Scruggs." Pl.'s First Am. Compl. ¶¶ 14, 16–23 (emphasis added). Although Scruggs indicates later in the "counts" section of the complaint that "CHW made repeated telemarketing calls to Mr. Scruggs' residential phone," *e.g., id.* ¶ 33, this type of threadbare recitation of an element of a cause of action is not an alleged fact that the court need accept as true, *see Iqbal*, 556 U.S. at 678, and, indeed, it is inconsistent with his factual assertion that he needs discovery to confirm who called him and how that person is related to CHW, Pl.'s First Am. Compl. ¶ 23. Contrary to his opposition memorandum, Scruggs did not plead that "Defendant is the one who called him," but rather suggested he does not know who called him and that he needs discovery on the issue. ECF No. 32 at 7. Second, Scruggs now argues that "the callers ... tried to sell Mr. Scruggs[ ] Defendant's product." *Id.* But nowhere in the amended complaint does Scruggs state that the alleged product being sold—"a home warranty"—is defendant's product. *See* Pl.'s First Am. Compl. ¶¶ 14, 16–23.

Instead, the allegations in the complaint are largely conclusory and the descriptions of the contested calls are devoid of context. With respect to the content of the calls, Scruggs states, "the caller identified himself as associated with CHW and attempted to sell Mr. Scruggs a home warranty," and Scruggs told the caller that "he did not want CHW to contact him further." *E.g., id.* ¶¶ 14–15. The solitary fact proffered to connect the call to CHW is that "the caller identified himself as associated with CHW." *E.g., id.* ¶ 14. But Scruggs was a party to the phone calls and should be able to provide greater detail. For instance, he might include the name of the caller or details of the sales pitch for the home warranty being sold. Or as in *Hurley*, he could have identified the phone numbers used to call him and allege those phone numbers belong to CHW. *See* 2018 WL 4854082, at *4. Scruggs states that "he repeatedly instructed CHW's representatives to stop calling him," and notes in his description of each call that he "told the caller to stop contacting him," but he does not describe how CHW responded to his requests. Pl.'s First Am. Compl. ¶¶ 15–22, 26. For instance, unlike in *Cordoba*, Scruggs did not allege that CHW has acknowledged making the calls. 942 F.3d at 1266.

These sample contextual factors—the defendant's acknowledgement of a call, the defendant's ownership of the phone number used to make the call, details of the specific content of calls—are not required in every case to support a finding that the alleged conduct is fairly traceable to the defendant, but they are illustrative of the types of factual allegations courts have found sufficient under the *Iqbal* pleading standards when conducting a standing analysis. *See Cordoba*, 942 F.3d at 1271; *Hurley*, 2018 WL 4854082, at *4; *see also Drake v. Firstkey Homes, LLC*, 439 F. Supp. 3d 1313, 1315–16, 1323–24 (N.D. Ga. 2020) (finding that an injury related to unwanted phone call was fairly traceable to a defendant where the defendant *admitted making the call* even though a third party gave defendant consent to contact the plaintiff). Here, Scruggs' allegations remain conclusory and lack the necessary factual context to support an inference linking the calls to CHW. In short, more is needed to render the calls "fairly traceable" to CHW.

Further, as pled, the injury here could be wholly "the result of the independent action of some third party not before the court," which is fatal to satisfying the traceability prong of a standing analysis. *Bennett*, 520 U.S. at 167; *see also Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755–56 (4th Cir.

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 183 of 233

2013). Again, Scruggs states, "the caller identified himself as associated with CHW and attempted to sell Mr. Scruggs a home warranty." Pl.'s First Am. Compl. ¶¶ 14, 16–22. Taken as true, as the Court must, this statement does not foreclose the possibility that a third party wholly unrelated to CHW made the call. The statement does not expressly state that CHW made the call and the complaint otherwise does not allege facts that would support an agency relationship between CHW and the caller. *See id.* ¶¶ 12–31.

**\*7** Rather than plead non-conclusory facts supporting an inference that CHW was responsible for the contested phone calls, Scruggs requests discovery on the matter. He states, "Discovery will confirm that CHW, or someone acting on CHW's behalf, initiated the [eight contested phone] calls to Mr. Scruggs." *Id.* ¶ 23. The caller said they were "associated with CHW," so Scruggs' logic is that CHW or its agent made the call. *See id.* ¶¶ 14, 23. Absent additional non-conclusory facts that link CHW to the call, however, "this assertion is speculative, and discovery to support it would amount to no more than a 'fishing expedition in hopes of discovering some basis of jurisdiction.' " *Gillison v. Lead Express, Inc.*, No. 3:16cv41, 2017 WL 1197821, at \*15 (E.D. Va. Mar. 30, 2017) (quoting *Base Metal Trading, Ltd. v. Ojsc Novokuznetsky Aluminum Factory*, 283 F.3d 208, 216 n.3 (4th Cir. 2002)).

Because Scruggs failed to plead non-conclusory facts linking CHW to his purported injury and because a third party not before the court could be responsible for such conduct, the Court finds that the plaintiff's injury is not "fairly traceable" to the defendant, as is required for Article III standing.

### b. The plaintiff's injury is not redressable.

The purpose of the redressability prong of a standing inquiry is to determine whether "a plaintiff 'personally would benefit in a tangible way from the court's intervention.' " *Friends of the Earth, Inc.*, 204 F.3d at 162 (quoting *Warth*, 422 U.S. at 508). This question is linked to the traceability inquiry, because for the Court to be able to redress the injury, that injury "must result from the actions of the [defendant], not from the actions of a third party beyond the Court's control." *Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009).

Having found that Scruggs failed to adequately allege facts that fairly trace his injury to CHW, the Court also finds that

his injury is not redressable, because the conduct could have been caused by a third party not before the Court.

Because Scruggs' injury is not fairly traceable to CHW or redressable, the Court finds that Scruggs does not have Article III standing to bring this claim. Therefore, this Court lacks subject matter jurisdiction over this matter, and, accordingly, the Court **RECOMMENDS** that defendant's motion to dismiss count one be **GRANTED**.

### 2. Dismissal of count one is also appropriate, because plaintiff fails to state a claim upon which relief can be granted. [3]

CHW also moves to dismiss count one under Rule 12(b)(6) for failure to state a claim by arguing that Scruggs has not pled facts supporting direct or vicarious TCPA liability. [4] ECF No. 27 at 16–22. To the extent Scruggs asserts that CHW is directly liable under the TCPA, CHW argues that "federal courts have routinely dismissed conclusory direct TCPA liability claims that, like Plaintiff's, lack sufficient factual allegations demonstrating that the defendant actually 'initiated' the phone calls at issue in the sense of 'tak[ing] the steps necessary to physically place' a call." *Id.* at 16 (quoting *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at \*2 (N.D. Cal. May 13, 2020)). To the extent Scruggs asserts that CHW is vicariously liable under the TCPA, CHW argues that Scruggs has not pled sufficient facts to support the finding of an agency relationship between CHW and the caller at issue or to support a finding that CHW exercised control over the caller, which is required for a finding of vicarious liability. *Id.* at 19–22.

**\*8** Scruggs counters that "[r]egardless of whether CHW is directly or vicariously liable, Mr. Scruggs has sufficiently pleaded liability." ECF No. 32 at 13. He argues that "it is nearly impossible for Mr. Scruggs to at this point know precisely what entity actually initiated the calls to him," and that "it is enough for Plaintiff to allege that either the Defendant or someone acting on its behalf placed the calls to Plaintiff to survive Defendant['s] Motion [to Dismiss]." *Id.* at 13–14. Specifically, he notes that "Mr. Scruggs need only allege facts which, when taken as true, indicate that it[']s plausible that Defendant made the unlawful calls," which he asserts is the case here. *Id.* at 15–16.

Having found that the contested calls are not fairly traceable to CHW in the context of standing, the Court also finds that Scruggs has not adequately pled facts under the *Iqbal*

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 184 of 233

pleading standards supporting direct or vicarious liability under the TCPA.

The telemarketing regulations under the TCPA are fairly straightforward. "If a person wishes to no longer receive telephone solicitations, he can add his number to the [do-not-call registry]," and "[t]he TCPA then restricts the telephone solicitations that can be made to that number." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019) (citing 47 C.F.R. § 64.1200(c)(2)). Specifically, the statute provides a private right of action for those who suffer telemarketing calls in violation of regulations promulgated under subsection (c) of the act, namely:

> A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may ... bring ... an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation.

47 U.S.C. § 227(c)(5). In addition, a defendant to such a claim may be liable under "theories of direct or vicarious liability." *Aaronson v. CHW Grp., Inc.*, No. 1:18cv1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019).

Scruggs alleges that CHW violated two provisions that may provide him relief, each of which requires CHW or its agent to have *made* or *initiated* phone calls to Scruggs. First, Scruggs alleges that CHW violated 47 C.F.R. § 64.1200(c)(2), which generally forbids a telemarketer from contacting persons who have registered on the national do-not-call registry. Pl.'s First Am. Compl. ¶ 36. That regulation provides that

(c) No person or entity shall *initiate* any telephone solicitation to:

...

(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

47 C.F.R. § 64.1200(c)(2) (emphasis added). Second, Scruggs alleges that CHW violated 47 C.F.R. § 64.1200(d), which in general terms, requires persons making telemarketing calls to maintain an internal do-not-call list and honor requests to be placed on such a list. Pl.'s First Am. Compl. ¶ 35. The provision states:

> If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities *making* calls for telemarketing purposes (or on whose behalf such calls are *made*) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request.

**\*9** 47 C.F.R. § 64.1200(d) (emphasis added). [5] Therefore, as a threshold matter and consistent with the *Iqbal* pleading standards, Scruggs must plead non-conclusory facts that indicate that CHW or its agent "initiate[d]" or "made" calls to Scruggs. 47 C.F.R. §§ 64.1200(c)(2), 64.1200(d).

Accordingly, to establish direct liability under the TCPA, "courts have concluded that the plaintiff must show that the defendant actually, physically initiated the telephone call at issue." *Aaronson*, 2019 WL 8953349, at *2. Therefore, "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff['s] cellular phone." *Id.* For instance, in *Aaronson v. CHW Grp., Inc.*, the court found that the "plaintiff fail[ed] to support his conclusory allegation that defendant called plaintiff['s] cellular phone." *Id.* Specifically, "[t]he lone *fact* marshalled in the Complaint that even c[ame] close to supporting plaintiff['s] conclusion that defendant was the party that called his cellular telephone is the

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 185 of 233

allegation that one of the calls made to plaintiff was from a telephone number that, according to the Complaint, 'is one of the Defendant's many telephone numbers.' " *Id.* (citation omitted). Accordingly, the court found that the allegations there lacked sufficient factual context to support an inference that the defendant made the contested phone calls. *Id.*

To establish vicarious liability under the TCPA, "courts have held that a plaintiff must show that the defendant would be vicariously liable under common law principles of agency." *Id.* at *3. Those principles provide that an agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006). Therefore, "at the pleadings stage, plaintiff 'must allege some facts regarding the relationship between an alleged principal and agent' that show defendant had the right to control the party making the calls; plaintiff 'cannot simply allege general control in a vacuum.' " *Aaronson*, 2019 WL 8953349, at *3 (quoting *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at *7 (S.D.N.Y. Nov. 30, 2015)). For instance, the court in *Aaronson* found that a "conclusory, boilerplate allegation" that "defendant 'acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers,' " was insufficient to show defendant was vicariously liable for contested calls. *Id.* The court there suggested that additional facts, such as "how the caller identified itself (*e.g.*, as defendant's employee), the substance of the call (*e.g.* a statement by the caller that he or she was marketing defendant's goods or services), or any other details from the telephone calls that would tend to demonstrate an agreement between the caller and defendant that the caller would act on the principal's behalf and subject to the principal's control" might change the calculus. *Id.*

 **\*10** This case is similar to *Aaronson*, as the alleged facts surrounding the contested calls are sparse. As noted earlier, Scruggs described each of the eight calls at issue in the following manner: "the caller identified himself as associated with CHW and attempted to sell a home warranty to Mr. Scruggs," and Scruggs "told the caller to stop contacting him." Pl.'s First Am. Compl. ¶¶ 14–22. That is the extent of the description of the content of the calls.

Scruggs is correct that he need not know for certain whether CHW or its agent placed the call, but there must still be sufficient, non-conclusory factual allegations linking the calls to CHW to render it liable under the TCPA. For instance, in *Desai v. ADT Sec. Servs., Inc.*, the court held that the "alleg[ation] that at-issue calls were made 'by or on behalf of ADT, and/or with ADT's knowledge, consent, approval and/or acquiescence,'" was sufficient at the pleadings stage. No. 11-c-1925, 2011 WL 2837435, at *1 (N.D. Ill. July 18, 2011). Importantly, however, the allegations there provided sufficient factual context to allow for an inference linking the defendant to the call. For instance, the plaintiffs described the content of the calls, "alleging that they received unsolicited pre-recorded telephone calls promoting ADT's products." *Id.* In other words, although a plaintiff need not always allege specifically whether they seek to hold the defendant accountable under a direct or vicarious liability theory at the pleadings stage, he must allege sufficient non-conclusory facts surrounding the context of the calls that support an inference of direct or vicarious liability.

The amended complaint fails to provide such a factual context. For instance, although he was a party to the eight contested phone calls, Scruggs did not allege facts indicating which phone numbers the caller used, details of the marketing pitch the caller made regarding the home warranty, or how CHW representatives reacted to Scruggs' request to not be contacted. *See* Pl.'s First Am. Compl. ¶¶ 12–31. The sole factual allegation linking CHW to the calls is that the caller identified himself as "associated with CHW." *Id.* ¶¶ 14, 16–22. That lone link to the defendant is insufficient under the *Iqbal* pleading standards. *See Aaronson*, 2019 WL 8953349, at *2; *see also Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015) ("[A] complaint must include 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.' " (quoting *Iqbal*, 556 U.S. at 678)). Allowing the TCPA claim to proceed beyond this stage would constitute an impermissible fishing expedition to determine if a factual basis exists to assert the claim against CHW. For these reasons and for the same reasons that the amended complaint failed to satisfy the traceability requirements explored in Part IV(A)(1)(a), the allegations of CHW's direct or vicarious liability under the TCPA are insufficient.

Because the amended complaint does not adequately allege direct or vicarious liability for CHW under the TCPA, the Court also finds that Scruggs has failed to state a claim upon which relief may be granted. Therefore, the Court **RECOMMENDS** that CHW's motion to dismiss count one be **GRANTED** on this alternative basis.

**B. Scruggs' state-law claim in count two should be dismissed without prejudice.**

In count two, Scruggs alleges that the same eight, telemarketing phone calls discussed above also violated the VTPPA—specifically, Va. Code Ann. § 59.1-514(A), and (B). Pl.'s First Am. Compl. ¶¶ 41–44. Further, he alleges that "[a]s a result of these unwanted telephone solicitation calls, Mr. Scruggs suffered actual damages including frustration, anger, stress, and other emotional and mental distress," and "[h]e was also forced to spend time and resources to try to stop CHW from contacting him." *Id.* ¶ 46. Scruggs asserts that "[he] is entitled to recover for $1,500 in statutory damages for each call in violation of the VTPPA, as well as reasonable attorney's fees and costs." *Id.* ¶ 47 (citing § 59.1-515).

**\*11**  CHW moves to dismiss Scruggs' VTPPA claim on three grounds: (1) "Plaintiff's VTPPA claim is based on the very same threadbare and conclusory allegations lacking in supporting facts as his TCPA claim, [and] ... should also be dismissed under Rule 12(b)(6) for not meeting federal pleading standards"; (2) plaintiff may not obtain double recovery for the same injury under different legal theories; and (3) CHW has an affirmative defense to the claim by virtue of its "reasonable practices and procedures to effectively prevent telephone solicitation calls," pursuant to Va. Code Ann. § 59.1-514(C). ECF No. 27 at 26-28.

"Because the Court has dismissed [Scrugg's TCPA claim] for lack of standing—the only claim within this Court's original jurisdiction—the Court declines to address [his] state law claim at this time ...." *Judson v. Bd. of Supervisors of Mathews Cty.*, No. 4:18cv121, 2019 WL 2558243, at *11 (E.D. Va. June 20, 2019). At the time of the filing of Scruggs' amended complaint, this Court had original, federal question jurisdiction over Scruggs' claim under 47 U.S.C. § 227(c)(5) (count one) as a "civil action[ ] arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2018). This Court also had supplemental jurisdiction over plaintiff's state-law claim for repeated unwanted telephone solicitation calls under Va. Code Ann. § 59.1-514 (count two), because the claim was "so related" to the federal question claim "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (2018). Indeed, both counts involved allegations related to the same eight telemarketing phone calls to the plaintiff. Pl.'s First Am. Compl. ¶¶ 32–47.

Notably, "[t]his supplemental jurisdiction [is] not lost when the federal-law claims [are] dismissed." *Johansson v. Prince*

*George's Cnty. Pub. Schs.*, No. CBD-13-2171, 2014 WL 7014430, at *2 (D. Md. Dec. 10, 2014). Instead, "this Court 'may' decline to exercise supplemental jurisdiction now that it 'has dismissed all claims over which it has original jurisdiction,' but it is not required to do so." *Id.* (citing 28 U.S.C. § 1367(c)); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is *purely discretionary*." (emphasis added)). Because this case was originally brought in federal court, the Court does not have the option of remanding the remaining claims to state court, leaving it only two options: hear the claims or dismiss the claims. *See* 14C Charles Alan Wright et al., Federal Practice and Procedure § 3739 (Rev. 4th ed. 2020) ("[F]ederal courts cannot remand an action that was originally filed in federal court." (citing *Wittner v. Banner Health*, 720 F.3d 770 (10th Cir. 2013))).

Dismissal of the claims without prejudice is appropriate in this case. As the Supreme Court has observed, "district courts [should] deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997). Here, "[i]t is early in the pre-trial period, therefore, the court is less concerned with fairness and judicial economy." *Village Builders on the Bay, Inc., v. Cowling*, 321 F. Supp. 3d 624, 630 (E.D. Va. 2018). In addition, "[t]he parties and the court have yet to expend significant resources on this case," mitigating any inconvenience caused by dismissal of the state-law claims without prejudice to refile in state court. *Id.* With respect to comity, "Virginia courts are better positioned to evaluate causes of action based upon Virginia law.... [as] 'the primary responsibility for developing and applying state law rests with state courts.' " *Id.* (citing *Dunlevy v. Coughlin*, No. 2:15cv347, 2016 WL 595300, at *4 (E.D. Va. Feb. 10, 2016)).

**\*12**  Accordingly, the Court **RECOMMENDS** that defendant's motion to dismiss count two be **GRANTED** without prejudice to proceeding in state court.

**V. RECOMMENDATION**

For the foregoing reasons, the Court **RECOMMENDS** that defendant's motion to dismiss, ECF No. 27, be **GRANTED** as follows:

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 187 of 233

(1) Defendant's motion to dismiss plaintiff's TCPA claim in count one should be **GRANTED** and count one should be **DISMISSED WITHOUT PREJUDICE**; and

(2) Defendant's motion to dismiss plaintiff's VTPPA claim in count two should be **GRANTED** and count two should be **DISMISSED WITHOUT PREJUDICE** pursuant to the Court's discretion under 28 U.S.C. § 1367(c). [6]

### VI. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil

Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

**All Citations**

Not Reported in Fed. Supp., 2020 WL 9348208

---

### Footnotes

1  Home Warranty Administrators, Inc., is no longer a party in this matter. On May 8, 2020, Scruggs filed a notice of dismissal of claims against Home Warranty Administrators, Inc., ECF No. 11, and Scruggs did not bring claims against Home Warranty Administrators, Inc., in his first amended complaint, ECF No. 22.

2  The facts detailed below are set forth in the first amended complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (observing that when addressing a Rule 12(b)(6) motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint").

3  Should the District Judge find that standing is lacking in this matter, then the Court would lack jurisdiction to analyze the merits of defendant's Rule 12(b)(6) arguments. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) ("[A] court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits."). For the purposes of this report and recommendation, however, the undersigned addresses defendant's Rule 12(b)(6) motion to aid the District Judge should she find that standing is present.

4  Because the Court agrees with defendant that plaintiff has not pled direct or vicarious TCPA liability, the Court finds it unnecessary to address the defendant's third argument contending that "Plaintiff ... fails to plead sufficient facts indicating a violation of the TCPA's [do-not-call] rules." ECF No. 27 at 22.

5  The parties dispute whether the private cause of action created by 47 U.S.C. § 227(c)(5) extends to the provisions of 47 C.F.R. § 64.1200(d). *See* ECF No. 27 at 23 (discussing cases that have recognized violations of § 64.1200(d) do not give rise to a private cause of action); ECF No. 32 at 20-22 (discussing cases that

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 188 of 233

have recognized a private cause of action for violations of 47 C.F.R. § 64.1200(d)); ECF No. 33 at 20–22. Recently, courts in the Fourth Circuit have found that the TCPA does not provide a private right of action for violations of 47 C.F.R. § 64.1200(d). *See Wilson v. PL Phase One Operations L. P.*, 422 F. Supp. 3d 971, 981–82 (D. Md. 2019) (observing that "the Fourth Circuit has not addressed whether 47 C.F.R. § 64.1200(d) provides a private right of action," but concluding that the section "appears to fall within subsection *d*'s scope, which does not provide a private right of action"); *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017) (observing that 47 C.F.R. § 64.1200(d) "appear[s] to fall under the aegis of subsection *d* of the TCPA" rather than under subsections *b* and *c*, which create private rights of action). The Court need not decide the issue, however, because Scruggs has not pled sufficient facts to allege that CHW is liable for the calls in question.

6    The Court declines to consider Scruggs' request for leave to amend his complaint should the Court grant the defendant's motion to dismiss. ECF No. 32 at 29. In general, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). In order "to determine whether 'justice so requires,' " however, "the court must have before it the substance of the proposed amendment." *Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 906 (6th Cir. 2002). Because Scruggs has not yet provided the Court with his proposed amendment(s), deciding his request at this stage would be premature. In order for the Court to consider such a request, Scruggs must file a motion seeking leave to amend the complaint with the proposed amendments attached.

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    11

KeyCite Yellow Flag - Negative Treatment

Declined to Extend by Abramson v. AP Gas & Electric (PA), LLC, W.D.Pa., February 6, 2023

2020 WL 2474241
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

David SHESKI, Plaintiff,
v.
SHOPIFY (USA) INC., et al., Defendants.

Case No. 19-cv-06858-HSG
|
Signed 05/13/2020

**Attorneys and Law Firms**

Jason Matthew Wucetich, Dimitrios Vasiliou Korovilas, Wucetich & Korovilas LLP, El Segundo, CA, for Plaintiff.

Christine Marie Reilly, Kristin Emily Haule, Manatt Phelps & Phillips LLP, Los Angeles, CA, John William McGuinness, Manatt, Phelps & Phillips, LLP, Washington, DC, for Defendants.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 15

HAYWOOD S. GILLIAM, JR., United States District Judge

**\*1** Pending before the Court is Defendants' motion to dismiss Plaintiff's class action complaint, for which briefing is complete. Dkt. No. 15 ("Mot."), 21 ("Opp."), 22 ("Reply"). For the reasons articulated below, the Court **GRANTS** Defendants' motion to dismiss, **WITH LEAVE TO AMEND**.

## I. BACKGROUND

On October 21, 2019, Plaintiff David Sheski filed a class action complaint on behalf of a putative nationwide class, alleging violations of the Telephone Consumer Protection Act ("TCPA"), and three state common law claims: negligence, invasion of privacy, and unlawful intrusion. Dkt. No. 1 ("Compl."). Plaintiff's claims are based on Defendant Shopify (USA) Inc. and Defendant Shopify Inc.'s (collectively, "Shopify" or "Defendants") alleged "unlawful practice of making, facilitating, and participating in unauthorized text message marketing campaigns en masse to consumers' cellular telephones." *Id.* ¶ 1. Shopify is an e-commerce company that "provides the infrastructure and software for online retailers to build their online presence, including their point-of-sale systems and specifically the tools to structure retailers' checkout webpages to collect consumers' personal identification information, including their cellular numbers." *Id.* ¶ 2.

Plaintiff purchased a product from the retailer Masorini, an online clothing store with no physical locations, whose website is "maintain[ed], operate[d], direct[ed] and/or otherwise control[led]" by Shopify. *Id.* ¶ 30. When processing the purchase on the website, Plaintiff used the online checkout form which "specifically brands it as a Shopify platform, labeling the online order form 'Shopify Checkout.' " *Id.* ¶ 30. It additionally included "a line item input field for consumers to provide their telephone number," where the form "indicates the telephone number is '(For shipping updates).' " *Id.* Specifically, "[t]here [was] no line item check-box on the checkout page for consumers to click to indicate their prior express written consent to have their phone number used for text advertisements." *Id.* After completing the purchase, Plaintiff "received two text messages to his cell phone," on or about November 26, 2018. *Id.* ¶ 31. Both messages read "Masorini: Hey David. Cyber Monday! 30% OFF – Code: "CM30" Shop here! [sic] – STOP 17908 to opt-out." *Id.* ¶¶ 31–32.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief

can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**\*2** In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citations and quotation marks omitted).

### III. ANALYSIS

Defendants argue that Plaintiff fails to state a TCPA claim since the complaint fails to sufficiently allege that Defendants were "directly involved" with, or vicariously liable for, placing the texts at issue. Mot. at 6–16. Defendants also argue that Plaintiff fails to state a claim for the three common law claims. *Id.* at 18–21. The Court addresses each argument in turn below.

#### A. TCPA

The TCPA makes it unlawful

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call....

47 U.S.C. § 227(b)(1)(A)(iii). To state a claim under the TCPA, a Plaintiff must allege that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system ["ATDS"]; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *see also* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). A text message constitutes a "call" for purposes of the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2012).

#### i. Direct Liability

Defendants first argue that Plaintiff has failed to plead sufficient facts to establish that Shopify sent or was directly involved with sending the text messages at issue. Defendants point to the FCC's guidance in a 2015 order to argue that they do not qualify as having made a call under the TCPA and therefore cannot be liable for any TCPA violation. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7980–84 (2015) (hereinafter, "2015 TCPA Declaratory Ruling"), *set aside in part by ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir. Mar. 16, 2018).

The TCPA and its implementing regulations do not define the term "make a call" to determine who may be liable under the statute. The FCC has concluded that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *In the Matter of the Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013). As for whether entities that provide software applications or platforms that facilitate calling can be liable, the FCC explained that it "look[s] to the totality of the facts and circumstances surrounding the

placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." 2015 TCPA Declaratory Ruling, 30 FCC Rcd. at 7980. Applying this standard, the FCC determined that the maker of an app called TextMe did not make or initiate calls when its app users used the TextMe app to send invitational text messages; rather it was the app user that initiated the text messages through "affirmative choices." *Id.* at 7983. Specifically, the FCC found it significant that the "app user [had to]: (1) tap a button that reads 'invite your friends'; (2) choose whether to 'invite all their friends or [ ] individually select contacts'; and (3) choose to send the invitational text message by selecting another button." *Id.* at 7983–84.

**\*3** Defendants argue that similar to TextMe, they only provide a platform that third-party retailers use to send text messages to consumers. Shopify points to numerous cases in support of its position, primarily relying on *Meeks v. Buffalo Wild Wings, Inc.*, No. 17-cv-07129-YGR, 2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) and *Frank v. Cannabis & Glass, LLC*, No. 19-cv-00250-SAB, 2019 WL 4855378 (E.D. Wash. Oct. 1, 2019). In *Meeks*, the plaintiff provided his cellphone number to a restaurant hostess so he could be notified when his table was ready, and later received texts from the restaurant that included links to the website of platform provider Yelp. 2018 WL 1524067 at *1–2. The *Meeks* court held that "[w]hile plaintiff allege[d] that the restaurants use Yelp's 'platform' to send the offending text messages ... he d[id] not allege that Yelp decided whether, when, or to whom to send the messages." *Id.* at *5. Instead, "his allegations regarding Yelp pertain[ed] to its purported business model and the general advertising and analytics services Yelp provides to restaurants." *Id.* Somewhat similarly, in *Frank* the court dismissed the complaint, finding "no allegations that Defendant Springbig exercised any discernible involvement in deciding whether, when, or to whom the text message is sent, or what the text message said." 2019 WL 4855378 at *2. Here, Defendants argue that Plaintiff fails to provide any factual allegations that Defendants "exerted any control over the recipient lists, timing, or content of the texts sent by the users of the Shopify platform." Mot. at 12.

In response, Plaintiff argues that none of Defendants' cited cases are on point based on the allegations in the Complaint. Opp. at 14–15. For example, unlike the platform providers at issue in the other cases, Plaintiff alleges that "Shopify continues to be actively involved in its retailers' businesses both directly and indirectly" even

after the retailers select their platform package, by providing "the creation of an online store, 24/7 support from dedicated Shopify employees, ongoing business counseling services, shipping services, and the creation of a point-of-sale software system, among other things." Compl. ¶ 18. Additionally, Plaintiff points to (1) Shopify's receipt of a percentage of retailers' revenues, *id.* ¶ 25, (2) the use of the same SMS short code by different retailers as evidence of "a common Shopify or Shopify-approved source," *id.* ¶ 26, (3) Shopify's awareness, "based on its participation in the creation and maintenance of retailers' checkout pages, whether a particular retailer has obtained express written consent form a consumer to use the consumer's cellular telephone number for text message marketing campaigns," *id.* ¶ 23, and (4) Shopify's "counsel[ to retailers] on best practices with respect to data collections and text message marketing, including the content and timing of te[x]t message marketing campaigns," *id.* ¶ 22.

Importantly, however, these allegations do not lead to the inference that Shopify sent or was directly involved in sending the text messages at issue in this case. That Shopify provides the template for the checkout form, offers a suite of apps (including texting apps) that can integrate into its platform, provides counseling on best practices for marketing, and takes a percentage of the retailer's revenue, does not indicate that Shopify has any control over a retailer's actual text marketing campaigns. Further, much like Yelp's platform in *Meeks* or the TextMe application in the 2015 TCPA Declaratory Ruling, the fact that Shopify provides a platform to send the text messages such that the SMS short code is the same for all of the retailers does not lead to the inference that Shopify, rather than the individual retailer identified in the text itself, controlled the content of and sent the message. Here, Plaintiff received only two text messages, which specifically identified Masorini as the sender. *See* Compl. at ¶ 26.[1]

**\*4** Thus, even making all inferences in Plaintiff's favor, the allegations provide no factual basis to establish that Shopify was directly involved in the procurement of consumers' phone numbers, stores those numbers, transfers the numbers to texting apps, or approves the messages to be sent to those numbers. While Shopify might provide additional resources beyond those provided by the platform provider in *Meeks*, these resources and features do not suggest that Shopify has any control over any individual retailer's marketing campaigns. Instead, the factual allegations suggest that Shopify provides a platform with a suite of capabilities and options for the retailer, which then sends text messages to numbers obtained when processing a direct sale to a consumer, such as Plaintiff.[2]

Because Plaintiff fails to plead sufficient facts to show that Defendant sent the text messages, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's TCPA claim.

#### ii. Vicarious Liability

Defendants next argue that Plaintiff fails to state a claim for vicarious liability under the TCPA. "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd*, 136 S. Ct. 663 (2016), as revised (Feb. 9, 2016). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement (Third) of Agency § 1.01 (Am. Law Inst. 2006)). "For an agency relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.' " *Id.* (quoting Restatement (Third) of Agency § 1.01 cmt. c).

Here, Plaintiff simply points to Shopify's relationship with its retailers as evidence of an agency relationship via explicit and implicit authorization. Opp. at 17–18. This is insufficient. There are no factual allegations that support any sort agency relationship outside of Plaintiff's conclusory statement that "Defendants and their agents transmit text messages." Compl. at ¶ 37. Instead, it appears (accepting the well-pleaded factual allegations as true, as the Court must at this stage) that Defendants provide a suite of software options for retailers, who then determine which options to utilize. "In order to allege a traditional agency relationship, Plaintiff would have to allege Defendant controlled or had the right to control [the entity responsible for the text messages] and, more specifically, the manner and means of the text message campaign they conducted." *Linlor v. Five9, Inc.*, No. 17-cv-218-MMA (BLM), 2017 WL 2972447, at *3 (S.D. Cal. July 12, 2017) (quotations omitted). The only semblance of an allegation suggesting that Masorini acted on Defendants' behalf is the claim that Defendants receive a percentage of retail sales by each retailer (ranging from 2% to 0.5% of sales depending on the plan selected). *See id.* at ¶ 18. But this in no way supports an inference that retailers act on Defendants' behalf or that Defendants have any sort of control over third-party retailers. The Complaint entirely fails to plausibly plead any sort of agency relationship.

**\*5** Accordingly, Plaintiff's vicarious liability claim is also **DISMISSED**.

### B. Common Law Claims

Defendants also argue that Plaintiff fails to state a claim for negligence, invasion of privacy or unlawful intrusion. Mot. at 18–21.

#### i. Negligence

"Under California law, "[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." " *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 70 Cal. Rptr. 3d 519 (Cal. Ct. App. 2008)). Defendants argue that Plaintiff failed to allege any duty owed by Defendants to consumers, any breach of a general duty of care (since no specific duty is alleged), or any actual damages, even if breach was alleged. Mot. at 18–19. The Court agrees.

"[T]here is generally no duty to protect others from the conduct of third parties." *Regents of Univ. of California v. Superior Court*, 413 P.3d 656, 669 (Cal. 2018). "[P]laintiffs alleging a defendant had a duty to protect them must establish: (1) that an exception to the general no-duty-to-protect rule applies and (2) that the *Rowland* factors support the imposition of the duty." *Brown v. USA Taekwondo*, 253 Cal. Rptr. 3d 708, 723 (Cal. Ct. App. 2019), *as modified on denial of reh'g* (Nov. 6, 2019) (citing *Rowland v. Christian*, 443 P.2d 561 (Cal. 1968)). The *Rowland* factors include "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability

for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Regents*, 413 P.3d at 670 (quoting *Rowland*, 443 F.2d at 564).

Plaintiff fails to establish that Defendants' owe any duty to Masorini's customers. Plaintiff alleges that Defendants "failed to comply with third-party vendor rules, which require Defendants to have consumers' prior express written consent prior to sharing their personal identification information with the vendors," suggesting that these rules created a duty owed to Plaintiff and other consumers. Compl. at ¶ 52. Plaintiff provides no further allegations.[3] This vague reference to third-party vendor rules does not establish that an exception to the general rule applies, or that any duty should be imposed under *Rowland*. Moreover, for the same reasons discussed above, Plaintiff has failed to adequately plead that Defendants themselves sent the texts. As pled, Plaintiff's negligence claim thus fails.

**\*6** Plaintiff further fails to allege any damages in this case. The TCPA provides specific statutory damages for unconsented marketing calls precisely because proving damages from a marketing phone call or a text is particularly difficult. Here, Plaintiff entered his phone number into the retail checkout and received two marketing texts afterwards. Plaintiff has not even alleged that he was charged for those texts or that he received other texts due the dissemination of the phone number outside of the retailer such that the conduct was particularly oppressive or a nuisance.

Because Plaintiff fails to adequately plead duty or damages, the Court dismisses the negligence cause of action for failure to state a claim.

### ii. Invasion of Privacy or Unlawful Intrusion

As Defendants note, it is not entirely clear what claim Plaintiff is attempting to state under the third and forth causes of action. "At common law there are four kinds of invasion of privacy actions which sound in tort ... (1) unreasonable intrusion upon solitude; (2) appropriation of name or likeness; (3) unreasonable publicity given to private life; and (4) publicity that unreasonably places one in a false light." *Alim v. Superior Court*, 229 Cal. Rptr. 599 (Cal. Ct. App. 1986). Plaintiff's third purported cause of action is invasion of privacy and his fourth purported cause of action is unlawful intrusion, but unlawful intrusion is simply one alternative means of stating an invasion of privacy claim. So the Court assumes that Plaintiff is claiming unreasonable intrusion upon solitude.

That tort subjects to liability "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ..., if the intrusion would be highly offensive to a reasonable person." *Taus v. Loftus*, 151 P.3d 1185, 1212 (Cal. 2007). Plaintiff does not allege any facts sufficient to support such a claim here. Even accepting Plaintiff's factual allegations, he voluntarily entered his phone number into the form, and even if he provided the number solely for "shipping updates," as a matter of law using that phone number to send two texts for other purposes related to the retailer does not rise to the level of being "highly offensive to a reasonable person." *See Folgelstrom v. Lamps Plus, Inc.*, 125 Cal. Rptr. 3d 260, 266 (Cal. Ct. App. 2011), *as modified* (June 7, 2011) (holding that defendant's "conduct of obtaining his ZIP code under false pretenses and using it for its own marketing purposes ... [did] not meet the standard of 'highly offensive.' "); *see also Marseglia v. JP Morgan Chase Bank*, 750 F. Supp. 2d 1171, 1178 (S.D. Cal. 2010) (dismissing an invasion of privacy claim where defendant placed 50 calls to plaintiff, but "there [were] no facts alleged upon which this Court could infer plaintiffs ever answered any of these calls or defendant ever made any direct contact with plaintiffs that might be construed as annoying or harassing conduct.").

Accordingly, the Court dismisses Plaintiff's third and fourth causes of action for failure to state a claim.

### IV. CONCLUSION
For the reasons noted above, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's Class Action Complaint for failure to state a claim **WITH LEAVE TO AMEND**.[4] Any amended complaint must be filed within twenty-eight (28) days of the date of this order, and Plaintiff may not add any new claims or defendants in any such complaint.

**\*7 IT IS SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2020 WL 2474421

Footnotes

1    The timing of the texts further belies Plaintiff's allegation that Defendant sent the text messages at issue. Similar to *Meeks*, the texts were sent after Plaintiff interacted with the retailer, providing his number for "shipping updates." *See* 2018 WL 1524067 at *4 ("[T]he complaint indicates that the timing of the text messages was linked to information in the [retailer's], not [Defendants'] possession.").

2    In his Opposition to Defendant's motion to dismiss, Plaintiff references facts not in the Complaint to support his argument that Defendant was directly involved in sending the text messages. *See* Opp. at 7–9. However, "[a] Complaint cannot be amended through allegations made in an opposition to a motion to dismiss." *Remington v. Mathson*, 42 F. Supp. 3d 1256, 1278 n.3 (N.D. Cal. 2012), *aff'd*, 575 F. App'x 808 (9th Cir. 2014). Accordingly, the Court does not consider these new facts. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

3    Again, Plaintiff attempts to add facts in his Opposition that are not in the Complaint to support its argument that Defendants owed a duty of care. *See* Opp. at 18–19. The Court will not consider these new allegations.

4    The Court need not address Defendants' motion to strike and it is **DENIED AS MOOT**. Depending on the nature of an amended complaint, if any, Defendants may raise the argument again.

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment

Declined to Extend by    Abramson v. AP Gas & Electric (PA), LLC,
W.D.Pa.,   February 6, 2023

2021 WL 4623275
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Stewart SMITH, individually and on behalf
of all others similarly situated, Plaintiff,
v.
DIRECT BUILDING SUPPLIES, LLC and Does 1
through 10, inclusive, and each of them, Defendants.

CIVIL ACTION No. 20-3583
|
Filed 10/07/2021

**Attorneys and Law Firms**

Cynthia Z. Levin, Law Offices of Todd M. Friedman PC, King
of Prussia, PA, for Plaintiff.

Brian J. Murren, Kevin L. Hall, Tucker Arensberg, P.C.,
Lemoyne, PA, for Defendant Direct Building Supplies LLC.

## MEMORANDUM

Schiller, District Judge

**\*1** Stewart Smith alleges that Direct Building Supplies,
LLC, its subsidiaries, and its agents (collectively, "Direct
Building Supplies"[1]) violated the Telephone Consumer
Protection Act ("TCPA"), 47 U.S.C. § 227, by unlawfully
contacting Smith and purported class members to solicit
them to purchase Direct Building Supplies' services without
their consent and while they were on the National Do-
Not-Call ("DNC") Registry. Before the Court is Direct
Building Supplies' Motion to Dismiss Smith's First Amended
Complaint ("FAC"), in which Direct Building Supplies
contends that Smith's factual allegations fail to state a claim
pursuant to Fed. R. Civ. P. 12(b)(6). Direct Building Supplies
also maintains that Smith's class allegations and definitions
are deficient as a matter of law and thus should be stricken
pursuant to Fed. R. Civ. P. 12(f).

This is not Smith's first trip to the courthouse alleging
violations of the TCPA. For example, in May 2020, Smith

filed a TCPA lawsuit in this District against renewable
energy company Vision Solar. Smith's claims here echo
his allegations against Vision Solar and the several other
companies he has sued. For its part, several portions of Direct
Building Supplies' Motion to Dismiss are virtually identical
to the defendant's motion to dismiss in the Vision Solar action.
It is as if the Court is receiving one of the robocalls Smith
disdains.

Nevertheless, the Court finds that the FAC's factual
allegations fail to state a claim under the TCPA. Accordingly,
the Court will grant Direct Building Supplies' Motion to
Dismiss without prejudice, and will also grant Smith leave to
file a second amended complaint.

## I. FACTUAL BACKGROUND

Direct Building Supplies is a construction and home
contracting company. (FAC ¶ 5.) Smith alleges that Direct
Building Supplies called Smith's cellular phone number
ending in -6860 five times within a four-month span at the
end of 2019 and beginning of 2020: on or around October
4, 2019; October 6, 2019; November 1, 2019; January 17,
2020; and January 21, 2020. (*Id.* ¶¶ 8-10.) During each of
these calls, there was a "noticeable pause and delay before
Defendant came on the line" and attempted to sell its services
to Smith. (*Id.* ¶¶ 8-9, 19.) The calls were of an "impersonal
nature." (*Id.* ¶¶ 9, 11.)

Smith never provided his consent to Direct Building Supplies
to receive calls on his cellular phone that were made using an
automatic telephone dialing system ("ATDS") or an artificial
or prerecorded voice. (*Id.* ¶ 13.) Smith and Direct Building
Supplies had no relationship prior to the October 4 call. (*Id.*
¶ 9.) Smith's cellular phone number ending in -6860 was
registered on the National DNC Registry on June 11, 2010.
(*Id.* ¶ 15.)

The FAC seeks to certify two classes. The first is the "ATDS
Class," defined as "[a]ll persons within the United States
who received any solicitation/telemarketing telephone calls
from Defendant or its agent to said person's cellular telephone
for whom Defendant has no record of prior express consent
for such calls within the four years prior to the filing of
this Complaint." (*Id.* ¶ 24.) The second is the "DNC Class,"
defined as "[a]ll persons within the United States registered
on the National Do-Not-Call Registry for at least 30 days
who received more than one call made by or on behalf of
Defendant that promoted Defendant's products or services,

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 196 of 233

Smith v. Direct Building Supplies, LLC, Not Reported in Fed. Supp. (2021)

within any twelve-month period, within four years prior to the filing of the complaint." (*Id.* ¶ 25.)

**\*2** The FAC contains four counts. Counts I and II, brought by Smith on behalf of the ATDS Class, allege that Direct Building Supplies violated TCPA § 227(b) by placing calls using an ATDS or pre-recorded voice without the class members' prior express consent. Counts III and IV, brought by Smith on behalf of the DNC class, allege that Direct Building Supplies violated TCPA § 227(c)(5) and related regulations by placing multiple calls to class members' phones registered on the National DNC Registry within a twelve-month span.

Direct Building Supplies moved to dismiss all counts on November 25, 2020. Smith filed a timely response in opposition on December 8, 2020. Smith also requested leave to amend his pleadings to address, *inter alia*, any "lack of sufficient allegations" in the event the Court granted Direct Building Supplies' Motion to Dismiss. (Pl.'s Opp'n to Def.'s Mot. to Dismiss ["Pl.'s Opp'n"] at 10.)

On March 15, 2021, counsel for Smith wrote a letter to the Court directing its attention to *Smith v. Vision Solar LLC*, Civ. A. No. 20-2185, 2020 WL 7230975 (E.D. Pa. Dec. 8, 2020) ("*Vision Solar II*"), an opinion in another TCPA case filed by Smith and a co-plaintiff in this District. Smith's counsel wrote that in *Vision Solar II*, "the Honorable Judge Michael Baylson issued an order denying in full that Motion to Dismiss on which [Direct Building Supplies' motion] is based" in this action. Counsel for Smith further pointed out that Direct Building Supplies' "Motion was an almost verbatim copy of a Motion to Dismiss filed and pending in" the Vision Solar action, written by attorneys at a different law firm. [2]

*Vision Solar II* came three months after *Smith v. Vision Solar LLC*, Civ. A. No. 20-2185, 2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) ("*Vision Solar I*"), in which Judge Baylson dismissed Smith and his co-plaintiff's First Amended Complaint for failure to state a claim. Judge Baylson also granted Smith and his co-plaintiff leave to amend the first amended complaint to address deficiencies both in their factual and class allegations, culminating in *Vision Solar II*.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint and make all reasonable inferences in favor of the non-moving

party. *Bd. of Trustees of Bricklayers & Allied Craftsmen Loc. 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 272 (3d Cir. 2001). Fed. R. Civ. P. 8(a)(2) provides that "a pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." This claim for relief must be "plausible on its face," containing "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* In other words, a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

## III. DISCUSSION

### A. Counts I and II: The ATDS Claims

To state a claim under TCPA § 227(b), a plaintiff must allege: "(1) the defendant called a cellular telephone number; (2) using an [ATDS or prerecorded or artificial voice]; (3) without the recipient's prior express consent." *Zemel v. CSC Holdings LLC*, Civ. A. No. 18-2340, 2018 WL 6242484, at \*3 (D.N.J. Nov. 29, 2018). Direct Building Supplies argues that the FAC does not state a cause of action under TCPA § 227(b) because it does not contain facts that support a finding that Direct Building Supplies called Smith using an ATDS. Direct Building Supplies also argues that the FAC does not include any factual allegations that plausibly suggest that Direct Building Supplies placed phone calls to Smith in the first instance, since it is bereft of allegations concerning the names and identities of the persons with whom Smith allegedly spoke on the phone, as well as the substance of his conversations with those persons.

**\*3** An ATDS is a piece of equipment with the capacity to "either to store a telephone number using a random or sequential number generator, or to produce a telephone number using a random or sequential number generator," and to dial such numbers. *Facebook, Inc. v. Duguid*, ––– U.S. ––––, 141 S. Ct. 1163, 1167, 209 L.Ed.2d 272 (2021). A plaintiff must provide "at least some [ ] detail regarding the content of the messages or calls, thereby rending the claim that an ATDS was used more plausible." *Camunas v. Nat'l Republican Senatorial Comm.*, Civ. A. No. 21-1005, 2021 WL 2144671 (E.D. Pa. 2021) (quoting *Zemel*, 2018 WL 6242484, at \*3). "[C]ourts in this district continue to find that an allegation of a brief pause at the beginning of a call is sufficient to plead the ATDS element." *Hazan v. Wells Fargo*

Case 1:25-cv-00927-KMN  Document 14-1  Filed 07/18/25  Page 197 of 233

**Smith v. Direct Building Supplies, LLC, Not Reported in Fed. Supp. (2021)**

*Home Mortg.*, Civ. A. No. 18-10228, 2020 WL 919183, at *3 (D.N.J. Feb. 26, 2020); *see also Vision Solar II*, 2020 WL 7230975, at *4 ("For Rule 12 purposes, the distinctive pause at the beginning of repeated marketing calls allows an inference that the caller was using an ATDS.")

Further, "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone." *Scruggs v. CHW Grp., Inc.*, Civ. A. No. 20-48, 2020 WL 9348208, at *10 (E.D. Va. Nov. 12, 2020); *see also Vision Solar I*, 2020 WL 5632653, at *3 (quoting *Aaronson v. CHW Group, Inc.*, Civ. A. No. 18-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019)) ("[W]ithout any facts to explain why plaintiff believes the identified phone number is owned by defendant, ... plaintiff has failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations do not show plausibly that defendant actually, physically initiated the telephone calls at issue.").

The Court finds that the FAC has sufficiently alleged the use of an ATDS by Direct Building Supplies, as it alleges that there was a "noticeable pause and delay before Defendant came on the line" during each of the five offending calls, as well as that Smith had no prior relationship with Direct Building Supplies prior to the October 4 call. (FAC ¶ 9.)

However, Smith has not pleaded facts sufficient to identify Direct Building Supplies as the initiator of the offending calls. The FAC merely states that "Defendant contacted Plaintiff on Plaintiff's cellular telephone number ending in -6860, in an attempt to solicit Plaintiff to purchase Defendant's services," "Defendant [ ] called Plaintiff," and that "Defendant placed multiple calls soliciting its business to Plaintiff." (*Id.* ¶¶ 8, 10, 18.) The FAC, however, provides no details specifying how Smith knew that Direct Building Supplies in fact placed these calls, such as that Direct Building Supplies' name appeared in the caller ID on Smith's cellular phone, the persons with whom Smith spoke identified themselves as representatives of Direct Building Supplies, or the services these persons attempted to sell were construction or home contracting services. Smith's opposition does not address Direct Building Supplies' arguments on this point; it merely puts forth that "Defendant sought to solicit its services to Plaintiff and thus the calls were solicitation calls" and that "[t]hese calls were from Defendant." (Pl.'s Opp'n at 7-10.) These circular, conclusory allegations constitute the "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that do not pass muster under the *Iqbal* pleading standard.

Further, Smith's allegations regarding the identity of the initiator of the calls are even more barren than those provided in *Vision Solar I*, *Aaronson*, and *Scruggs*, all of which featured TCPA claims that were dismissed because of a failure to plead details sufficient to identify the caller. *See Vision Solar I*, 2020 WL 5631653, at *3 (finding that plaintiffs did not sufficiently plead that the calls in question came from defendant when they only alleged that "Defendant contacted or attempted to contact [one of the Plaintiffs] from multiple telephone numbers confirmed to belong to Defendant"); *Scruggs*, 2020 WL 9348208, at *10 ("The sole factual allegation linking [Defendant] to the calls is that the caller identified himself as 'associated with [Defendant]' " which is "insufficient under the *Iqbal* pleading standards"); *Aaronson*, 2019 WL 8953349, at *2 ("The lone fact marshalled in the Complaint that even comes close to supporting plaintiff's conclusion that defendant was the party that called his cellular telephone is the allegation that one of the calls made to plaintiff was from a telephone number that, according to the Complaint, 'is one of the Defendant's many telephone numbers.' But without any facts to explain why plaintiff believes the identified phone number is owned by defendant, this allegation amounts to nothing more than another conclusory allegation that defendant made the calls to plaintiff's cellular phone.").

**\*4** Smith has therefore failed to plausibly allege that the five calls in question came from Direct Building Supplies, as TCPA § 227(b) claims require. The Court will dismiss the ATDS claims without prejudice and will permit Smith to amend the complaint to provide further relevant information.

**B. Counts III and IV: DNC Claims**

To establish a DNC claim under TCPA § 227(c)(5) and related regulations, a plaintiff must plead facts that plausibly demonstrate: (1) they received multiple calls within twelve months, (2) from the same entity, (3) to a phone number registered on the National DNC Registry. *See Huber v. Pro Custom Solar, LLC*, Civ. A. No. 19-1090, 2020 WL 2525971, at *2 (M.D. Pa. May 18, 2020) (citing 47 C.F.R. § 64.1200(c)(2)). Here too the Court agrees with Direct Building Supplies that Smith's DNC claims fail because the FAC does not contain facts sufficient to establish that Direct Building Supplies placed the offending phone calls. The Court will thus dismiss the DNC claims without prejudice and will permit Smith to amend the complaint to provide further relevant information.

## IV. CONCLUSION

For the reasons set forth above, Direct Building Supplies' Motion to Dismiss is granted, but Smith may file an amended complaint. Direct Building Supplies' Motion to Strike is denied as moot. An Order consistent with this Memorandum will be docketed separately.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 4623275

---

## Footnotes

1    Smith brings the FAC against Direct Building Supplies, LLC and ten unidentified Doe defendants, whom he alleges constitute Direct Building Supplies, LLC's subsidiaries and agents.

2    In the future, counsel would be wise to not lift much of the language in its papers word-for-word from other attorneys.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 199 of 233

Smith v. Vision Solar LLC, Not Reported in Fed. Supp. (2020)

2020 WL 5632653

KeyCite Yellow Flag

Distinguished by  Abramson v. AP Gas & Electric (PA), LLC,  W.D.Pa.,
March 30, 2023

2020 WL 5632653
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Stewart SMITH; Fred Civil Action
Heidarpour, Individually and on Behalf of
All Others No. 20-2185 Similarly Situated,

v.

VISION SOLAR LLC, and Does 1–10

CIVIL ACTION NO. 20-2185
|
Filed 09/21/2020

**Attorneys and Law Firms**

Cynthia Z. Levin, Law Offices of Todd M. Friedman PC, King
of Prussia, PA, for Stewart Smith, Fred Heidarpour.

Colin David Dougherty, Fox Rothschild LLP, Blue Bell, PA,
Brett Adam Berman, Fox Rothschild LLP, Samuel A. Haaz,
Haggerty Goldberg Schleifer & Kupersmith, Philadelphia,
PA, for Vision Solar LLC.

**MEMORANDUM**

Baylson, District Judge

**I. Introduction**

 **\*1**  Plaintiffs are suing over alleged violations of the
Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §
227. In their Amended Complaint, ECF 2, Plaintiffs allege
Vision Solar LLC and its unidentified agents Does 1–10
(collectively "Vision Solar") violated the TCPA's prohibitions
on use of automatic telephone dialing systems ("ATDS") and/
or contacting phone numbers on the National Do Not Call
Registry ("DNC List").

Before the Court now is Vision Solar's motion to dismiss. ECF
7. Vision Solar asks the Court to dismiss Plaintiffs' claims
and to strike Plaintiffs' class action allegations. In response
to Vision Solar's motion, Plaintiffs requested leave to amend
their complaint a second time to address several of Vision
Solar's arguments. For the reasons given below, the Court

will **GRANT** Vision Solar's motion, will dismiss Plaintiffs'
Amended Complaint without prejudice, and will **GRANT**
leave for Plaintiffs to file a second amended complaint within
14 days from the date of this Memorandum and Order.

**II. Factual and Procedural History**

Assuming as true Plaintiffs' allegations, Vision Solar LLC
is a solar and renewable energy company. Am. Compl. ¶
6. Beginning in or around September 2019, Vision Solar
attempted to contact named plaintiffs Stewart Smith, a
resident of Montgomery County, Pennsylvania, and Fred
Heidarpour, a resident of Maricopa County, Arizona, by
telephone. Id. ¶¶ 4, 5, 9, 10.

Vision Solar called each of the named plaintiffs repeatedly,
from at least four different telephone numbers that belong to
Vision Solar. Id. ¶¶ 12, 13. Smith received these calls on his
cell phone; Heidarpour received these calls on his landline.
Id. ¶¶ 9, 10. Vision Solar made these calls for the purpose
of soliciting its business. Id. ¶¶ 19, 20. Neither Smith nor
Heidarpour had given prior express consent to receive calls
from ATDS or using artificial or prerecorded voices. Id. ¶¶
15, 16.

These calls utilized an ATDS. Id. ¶ 11. Both Smith and
Heidarpour's phone numbers were on the DNC List at the
relevant time for each phone call. Id. ¶¶ 17, 18.

Plaintiffs further allege that Smith and Heidarpour represent
two different classes: the ATDS Class and the DNC Class. Id.
¶ 25.

The **ATDS Class** consists of:

> All persons within the United States who received any
> solicitation/telemarketing telephone calls from Defendant
> to said person's cellular telephone made through the use
> of any automatic telephone dialing system or an artificial
> or prerecorded voice and such person had not previously
> consented to receiving such calls within the four years prior
> to the filing of this Complaint.

> Id. ¶ 26.

The **DNC Class** consists of:

> All persons within the United States registered on the
> National Do-Not-Call Registry for at least 30 days, who
> had not granted Defendant prior express consent nor had

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 200 of 233
Smith v. Vision Solar LLC, Not Reported in Fed. Supp. (2020)

2020 WL 5632653

prior established business relationship, who received more than one call made by or on behalf of Defendant that promoted Defendant's products or services, within any twelve-month period, within four years prior to the filing of the complaint.

**\*2** Id. ¶ 27.

Plaintiffs filed suit against Vision Solar on May 6, 2020. ECF 1; Plaintiffs then filed the Amended Complaint on May 8, 2020. ECF 2. Vision Solar LLC moved to dismiss Plaintiffs' claims on July 17, 2020. ECF 7. Plaintiffs responded on July 31, 2020. ECF 8. Vision Solar LLC then replied on August 7, 2020. ECF 9.

Plaintiffs assert four causes of action against Vision Solar in the Amended Complaint on behalf of the named plaintiffs and the members of the respective classes:

I. Negligent violation of the TCPA under § 227(b)

II. Knowing and/or willful violation of the TCPA under § 227(b)

III. Negligent violation of the TCPA under § 227(c)

IV. Knowing and/or willful violation of the TCPA under § 227(c)

Counts I and II allege unlawful use of an ATDS to contact Plaintiffs. Counts II and IV allege unlawful violation of the DNC List's protections. Vision Solar's contentions against these claims, as well as the proposed class definitions, are discussed in more detail below.

### III. Legal Standard

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Although a court must accept all factual allegations contained in a complaint as true, that requirement does not apply to legal conclusions; therefore, pleadings must include factual

allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

### IV. Discussion

a. Class Definitions under Rule 12(f)
Vision Solar argues that "Plaintiffs' TCPA class allegations fail because, if granted as requested, [they] would create impermissible fail-safe classes." MtD at 7. Plaintiffs "do not dispute, at this point, that the Classes as proposed are likely fail-safe." Opp. to MtD at 3.

Instead, Plaintiffs request leave to amend the class definitions. Pursuant to the Federal Rules of Civil Procedure, "a party may amend its pleading once as a matter of course," and a court "should freely give leave [for subsequent amendments] when justice so requires." Fed. R. Civ. Pro. 15(a). "The district court may deny leave to amend only if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party." Adams v. Gould Inc., 739 F.2d 858, 864 (3d Cir. 1984). Therefore, the Court will dismiss the class definitions without prejudice and, seeing no reason to deny Plaintiffs' request, will permit Plaintiffs to amend their class definitions.[1]

b. Counts I and II: Violation of TCPA § 227(b) ("ATDS Claims")
**\*3** The Amended Complaint raises two related counts under 47 U.S.C. § 227(b); by using an ATDS to call the ATDS Class, Vision Solar either (Count I) negligently or (Count II) knowingly and/or willfully violated the TCPA by calling Plaintiffs with an ATDS, Am. Compl. at ¶¶ 43, 47. "To state a cause of action under [§ 227(b) of] the TCPA, a plaintiff must allege: '(1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express consent.' " Zemel v. CSC Holdings LLC, Civil Action No.

2020 WL 5632653

18-2340-BRM-DEA, 2018 WL 6242484, at *3 (D.N.J. Nov. 29, 2018) (citing Martinez v. TD Bank USA, No. 15-7712, 2017 WL 2829601, at *4 (D.N.J. June 30, 2017)).

Vision Solar argues that Plaintiffs failed to plead sufficient facts to satisfy the second prong — use of an ATDS calling system. MtD at 11. "The entirety of Plaintiffs' allegations in support of Defendant's alleged use of an ATDS consists of a single sentence: 'Defendant used an automatic telephone dialing system ... to place its call to Plaintiffs.' " Id. But Plaintiffs respond that they provided further facts of the alleged abuse of an ATDS: Vision Solar "called Smith multiple times from five different phone numbers [and t]he calls were to solicit Smith to purchase Defendant's services," despite "no prior business relationship" with Vision Solar. Opp. to MtD at 7.

A "bare allegation that defendants used an ATDS is not enough." Zemel, 2018 WL 6242484, at *3 (citing cases). "A plaintiff must provide 'at least some detail regarding the content of the messages or calls, thereby rending the claim that an ATDS was used more plausible.' " Id. (brackets omitted).

Plaintiffs' Second Amended Complaint must contain sufficient facts for the Court to conclude that Plaintiffs' claims are "plausible."

### c. Counts III and IV: Violation of TCPA § 227(c) ("DNC Claims")

The remaining two counts claim that Vision Solar repeatedly called Plaintiffs who had registered their phone numbers to the DNC List, constituting (Count III) negligent or (Count IV) knowing and/or willful violations of 47 U.S.C. § 227(c). To sustain the DNC Claims, Plaintiffs must plead that (1) they receive multiple calls within twelve months, (2) by or on behalf of the same entity, (3) on a residential phone registered on the DNC List. Huber v. Pro Custom Solar, LLC, No. 3:19-cv-01090, 2020 WL 2525971, at *2 (M.D. Pa. May 18, 2020) (citing 47 C.F.R. § 64.1200(c)(2)).

### i. Plaintiff Smith's DNC Claims

As a preliminary issue, Vision Solar notes that Plaintiffs never pleaded that Smith's cell phone line in question is his residential phone, as required for a claim under § 227(c). MtD at 17. Plaintiffs concede that they have not pleaded sufficient

facts for Smith's DNC Claims but request leave to amend the complaint to cure the defect. The Court will dismiss Smith's DNC Claims without prejudice and permit Plaintiffs to amend the pleadings anew to address this deficiency.

### ii. Plaintiff Heidarpour's DNC Claims

Vision Solar also contends that Plaintiffs' Amended Complaint "is devoid of factual content necessary to form a nexus between Defendant and the allegedly offending calls." MtD at 9. In the Amended Complaint, Plaintiffs state that "Defendant contacted or attempted to contact Heidarpour from multiple telephone numbers confirmed to belong to Defendant." Am. Compl. at ¶ 13. Plaintiffs' Opposition does not point to any further information in the pleadings to justify this conclusion.

In a TCPA case, the plaintiff must plead facts to justify that a call came from the defendant. Aaronson v. CHW Group, Inc., Case No. 1:18-cv-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) ("[W]ithout any facts to explain why plaintiff believes the identified phone number is owned by defendant, ... plaintiff has failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations do not show plausibly that defendant actually, physically initiated the telephone calls at issue."). In Aaronson, the plaintiff's "lone fact marshalled ... supporting plaintiff's conclusion that defendant was the party that called his cellular telephone" was that incoming telephone number was "one of the Defendant's many telephone numbers." Id. The court found this to be insufficient. Id. In light of Aaronson, the Court agrees with Vision Solar that Plaintiffs have not sufficiently pleaded that the calls in question came from Vision Solar. The Court will dismiss the DNC Claims for Heidarpour without prejudice but will permit Plaintiffs to amend the complaint to provide further relevant information.

### V. Conclusion

**\*4** For the reasons set forth above, Vision Solar's Motion to Dismiss is GRANTED, without prejudice and with leave to amend.

An appropriate Order follows.

### All Citations

Not Reported in Fed. Supp., 2020 WL 5632653

Smith v. Vision Solar LLC, Not Reported in Fed. Supp. (2020)

Case 1:25-cv-00927-KMN     Document 14-1     Filed 07/18/25     Page 202 of 233

2020 WL 5632653

---

### Footnotes

1      Vision Solar argues that the Court should not grant leave to amend without a formal motion, but the Court may grant leave to amend <u>sua sponte</u> where it is "conceivable that plaintiffs possess additional facts sufficient to cure those deficiencies" identified in a motion to dismiss. Magnesita Refractories Co. v. Tianjin New Centuries Refractories Co., Ltd., Civil Action No. 1:17-cv-1587, 2019 WL 1003623, at *11 (M.D. Pa. Feb. 28, 2019).

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4228149
Only the Westlaw citation is currently available.
United States District Court, **E.D**. **Pennsylvania**.

Leon **WEINGRAD**

v.

**TOP HEALTHCARE OPTIONS**
INSURANCE **AGENCY** CO.

CIVIL ACTION NO. 23-5114
|
Filed September **17**, **2024**

**Attorneys and Law Firms**

Andrew Roman Perrong, Perrong Law LLC, Glenside, PA, Anthony I. Paronich, Paronich Law, P.C., Hingham, MA, for Leon **Weingrad**.

Matthew E. Selmasska, Richard J. Perr, Monica M. Littman, Kaufman Dolowich Voluck LLP, Philadelphia, PA, Jeffrey B. Pertnoy, Akerman LLP, Miami, FL, for **Top** **Healthcare** **Options** Insurance **Agency** Inc.

**MEMORANDUM**

KEARNEY, District Judge

**\*1**  Our elected national and Pennsylvania representatives recognize the potential abuse from telemarketers calling persons to sell identified products. Congress allows offended call recipients who placed their phone numbers on the National Do Not Call Registry to sue telemarketers for more than one call seeking to sell a specific product or service. The Pennsylvania General Assembly requires telemarketers calling Pennsylvania phone numbers to register or face review by the Pennsylvania Attorney General. We today address a claim by a Pennsylvanian who placed his number on the Do Not Call Registry and then answered one call from an alleged Florida telemarketer on December 15, 2023. The Pennsylvanian claims the Florida telemarketer violated federal and state law. But the Pennsylvanian alleges he answered one call last December from the telemarketer seeking to sell "health insurance" with no further facts. We dismiss the federal claim with leave to amend as one answered call does not make a federal case and the call recipient needs to plead more facts about the call contents and to show willful conduct. We dismiss the Pennsylvania claim with prejudice as the General Assembly allows only the Attorney General to prosecute a claim for engaging in telemarketing calls in Pennsylvania without being registered here.

**I. Alleged Facts**

Leon **Weingrad** placed his residential telephone number on the National Do Not Call Registry sometime before December 2022. [1] A Florida health insurance marketer **Top** **Healthcare** **Options** Insurance **Agency** Co. still called him nine times on December 13, 2023 and December 15, 2023 from different phone numbers: [2]

| Date | Caller ID |
| --- | --- |
| 12/13/2023 | (267)282-3676 |
| 12/13/2023 | (267)413-8938 |
| 12/13/2023 | (267)313-6263 |
| 12/15/2023 | (267)429-8460 |
| 12/15/2023 | (267)465-5225 |
| 12/15/2023 | (267)465-5220 |
| 12/15/2023 | (267)313-6305 |
| 12/15/2023 | (267)200-9620 |
| 12/15/2023 | (267)465-5198 |

Mr. **Weingrad** answered one call from **Top Healthcare Options**, caller ID (267)465-5198, on December 15, 2023. [3] The caller claimed to work for "National Health Enrolment Centre" and "the purpose of the call was to sell [Mr. **Weingrad**] health insurance." [4] Mr. **Weingrad** considered the call unwanted. [5]

## II. Analysis

And he then decided to sue. He alleges **Top Healthcare Options** violated the Telephone Consumer Protection Act by making calls to his phone number on the national Do Not Call Registry. [6] Mr. **Weingrad** sues on behalf of a nationwide class of persons who had registered their telephone numbers on the Do Not Call Registry for at least thirty-one days, but who received more than one telemarketing call from or on behalf of **Top Healthcare Options**, within a twelve-month period in the previous four years. [7]

Mr. **Weingrad** also alleges **Top Healthcare Options** violated the Pennsylvania Telemarketer Registration Act by making telemarketing calls without registering with the Office of Attorney General at least thirty days prior to making the calls. [8] Mr. **Weingrad** sues on behalf of all Pennsylvanians who received a telephone call from or on behalf of **Top Healthcare Options** acting as a "telemarketer" but not licensed as a "telemarketer" with the Pennsylvania Office of Attorney General. Mr. **Weingrad** limits this class by a two-year cutoff. [9]

**\*2** **Top Healthcare Options** now moves to dismiss. [10] **Top Healthcare Options** argues (1) the Telephone Consumer Protection Act claim is deficient because Mr. **Weingrad** admits he is speculating about the content of all of the calls except for one, (2) there is no private cause of action under the Pennsylvania Telemarketer Registration Act, (3) the Pennsylvania Telemarketer Registration Act claim is deficient because Mr. **Weingrad** does not allege he "purchased or leased goods" as required by the Act and he has no allegations of harm, (4) Mr. **Weingrad** lacks standing to seek injunctive relief, and (5) Mr. **Weingrad** does not plead facts showing a "willful" or "knowing" violation of the Telephone Consumer Protection Act. [11]

We dismiss Mr. **Weingrad's** Telephone Consumer Protection Act claim without prejudice because he does not plead he received multiple telephone solicitations and does not

plead the contents of the calls he received. We dismiss Mr. **Weingrad's** claim for treble damages without prejudice as he does not plead a knowing or willful violation of the law. We dismiss Mr. **Weingrad's** Pennsylvania Telemarketer Registration Act claim with prejudice because there is no private right of action under the Act. And we dismiss Mr. **Weingrad's** claim for injunctive relief without prejudice as Mr. **Weingrad** does not plead threat of future harm.

### A. Mr. **Weingrad** does not state a claim under the Telephone Consumer Protection Act.

**\*3** We dismiss the Telephone Consumer Protection Act claim without prejudice. Mr. **Weingrad** did not plead multiple telephone solicitations and did not adequately allege the content of the calls.

### 1. Mr. **Weingrad** does not allege he received "more than one" telephone call.

**Top Healthcare Options** argues Mr. **Weingrad** does not allege he received more than one telephone solicitation from **Top Healthcare Options** in a twelve-month period, as he makes no allegations about the other eight phone calls he received. [12] Mr. **Weingrad** pleads he received nine calls from **Top Healthcare Options's** phone numbers and we must infer those calls were telephone solicitations at this stage. [13]

Congress enacted the Telephone Consumer Protection Act of 1991 in response to consumer complaints about telemarketing calls. [14] Congress through the Act prohibits and restricts violating a consumer's request to not receive calls. [15] Consumers who do not want to receive unsolicited telemarketing calls can register their numbers on the national Do Not Call Registry. [16] Companies engaged in telemarketing must have procedures in place to avoid calling numbers on the Do Not Call Registry. [17] Once a number is registered, businesses have thirty-one days to update their records. [18]

Congress through the Telephone Consumer Protection Act provides "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may assert a claim. [19] Congress provides "no person or entity shall initiate any telephone

solicitation to ... a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." [20] Mr. **Weingrad** must plead (1) he received more than one telephone solicitation call within twelve months, (2) by or on behalf of the same entity, (3) on a residential phone registered on the Do Not Call Registry. [21]

**Top Healthcare Options** claims he does not and cannot plead these facts. It relies on Judge Azrack's analysis in *Gillam v. Reliance First Cap., LLC.* [22] In *Gillam*, the call recipient alleged he had registered his cell phone number on the nationwide Do Not Call Registry in February 2017. [23] The call recipient alleged the home loan and refinancing plan marketing company called him **seventeen** times from the same number between January 2021 and August 2021. [24] The call recipient alleged he answered one call in August 2021 and the caller marketed refinancing products to the call recipient. [25] The home loan company moved to dismiss arguing the call recipient failed to sufficiently allege he received more than one telephone solicitation in the twelve-month period. [26] Judge Azrack agreed and found the call recipient did not "plausibly plead receipt of at least one additional telephone solicitation from [defendant] within the requisite 12-month period [wa]s fatal to his Section 227(c)(5) cause of action." [27] Judge Azrack rejected the call recipient's argument she should consider the other calls as "telephone solicitations" because they came from the same telephone number and close in time to the August 2021 call. [28] Judge Azrack dismissed the complaint with prejudice, reasoning the call recipient failed to plausibly state a claim because blocked, missed, or declined calls are not "telephone solicitations" under the Act. [29]

**\*4 Top Healthcare Options** placed nine calls to Mr. **Weingrad**. [30] But Mr. **Weingrad** only answered one of these calls. [31] Mr. **Weingrad** does not allege more than one telephone solicitation within a twelve-month period. He does not presently allege **Top Healthcare Options** violated the Telephone Consumer Protection Act.

### 2. Mr. Weingrad does not allege the contents of the one call.

**Top Healthcare Options** argues Mr. **Weingrad** pleads insufficient information about the single call he answered. [32] Mr. **Weingrad** argues we can infer the purpose of the call from the name **Top Healthcare Options** used, the "National Health Enrolment Centre," and the timing of the call falling in "ObamaCare's Open Enrolment period." [33]

A telephone solicitation violates the Telephone Consumer Protection Act if the purpose of the call encourages "the purchase or rental of, or investment in, property, goods, or services." [34] Call recipients must do more than allege the calls in question were telephone solicitations. Returning again to Judge Azrack's *Gillam* analysis, the call recipient "failed to allege sufficient facts regarding the content of the calls from which the Court could infer ... the purpose of the calls" because plaintiff only stated defendant solicited refinancing products. [35] Judge Azrack noted other courts considering similarly deficient pleadings dismiss with leave to amend. [36] Judge Humetewa reached a similar conclusion in *Gulden v. Consolidated World Travel Inc.* [37] The call recipient in *Gulden* alleged the telemarketer placed calls for the purpose of soliciting products and services but did not provide "factual support that would allow the court to draw a reasonable inference that this is true." [38] Judge Humetewa found the pleading to be "nothing more than a conclusion, which *Twombly* specifically prohibits." [39]

We reviewed Judge Vazquez's early 2023 decision in *Atkinson v. Choice Home Warranty* finding the call recipient sufficiently pleaded the call's contents by alleging "Defendant began calling Ms. Atkinson on her cellular telephone to sell Plaintiff a home warranty plan," the calls were made "for telemarketing purposes," and "Defendant placed calls to Ms. Atkinson on numerous occasions attempting to solicit Plaintiff a home warranty plan that Plaintiff had no interest in." [40] But Judge Vazquez reviewed allegations of further conversations which specifically identified the caller and provided Ms. Atkinson with a website to purchase Choice Home Warranty's products. [41] And our colleagues allow allegations with fulsome information about solicitation calls to proceed into discovery. [42]

Mr. **Weingrad** only pleads "the purpose of the call was to sell the Plaintiff health insurance." [43] He does not plead a statutory violation without "further factual enhancement." [44] He presently falls short of the required level.

### 3. Mr. **Weingrad** does not allege a "willful" or "knowing" violation.

**\*5** **Top** **Healthcare** **Options** argues Mr. **Weingrad** does not allege facts allowing us to plausibly infer **Top** **Healthcare** **Options** willfully violated the Telephone Consumer Protection Act.[45] Mr. **Weingrad** argues **Top** **Healthcare** **Options** made calls under an illegal fake name, "National Health Enrolment Centre," and used multiple phone numbers to contact Mr. **Weingrad** because the company knew its actions were illegal.[46]

We may triple the statutory damages if the fact-finder determines **Top Healthcare Options** "willfully or knowingly violated" the Telephone Consumer Protection Act.[47] **Top Healthcare** **Options** must know it performed violative conduct because "[i]f we interpreted the statute to require only that the violator knew he was making a 'call' or sending a fax, the statute would have almost no room for violations that are not 'willful or knowing.' "[48] Mr. **Weingrad** alleges only "Defendant's violations were negligent, willful or knowing" and **Top Healthcare Options** called under a false name.[49] This is insufficiently pleaded and Mr. **Weingrad**, without more, cannot seek trebled damages.[50]

We dismiss Mr. **Weingrad's** Telephone Consumer Protection Act claim without prejudice. He does not plead he received multiple telephone solicitations and does not plead the contents of the calls he received. We dismiss Mr. **Weingrad's** claim for treble damages without prejudice as he does not plead a knowing or willful violation of the law.

### B. Mr. **Weingrad** does not and cannot state a claim under the Pennsylvania Telemarketer Registration Act.

Mr. **Weingrad** sues **Top** **Healthcare** **Options** for engaging in telemarketing in Pennsylvania without registering in the Commonwealth. **Top** **Healthcare** **Options** moves to dismiss this claim arguing there is no private right of action under the Pennsylvania Telemarketer Registration Act.[51] Mr. **Weingrad** admits the Pennsylvania mandate. But he then suggests the alleged Pennsylvania Telemarketer Registration Act violation can constitute a predicate claim

under the Pennsylvania Unfair Trade Practices and Consumer Protection Law.[52]

The Pennsylvania General Assembly vested the authority to enforce the Pennsylvania Telemarketer Registration Act with Pennsylvania's Attorney General.[53] "[W]here the General Assembly commits the enforcement of a regulatory statute to a government body or official, this precludes enforcement by private individuals."[54] There is no private cause of action under the Pennsylvania Telephone Registration Act.[55]

**\*6** Mr. **Weingrad** cannot sidestep the General Assembly's policy by presenting his Pennsylvania Telemarketer Registration Act claim as a predicate claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law because "the UTPCPL's private action applies only to a 'person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal' as a result of covered unlawful practices."[56] Mr. **Weingrad** did not do so.[57]

We dismiss Mr. **Weingrad's** Pennsylvania Telemarketer Registration Act claim with prejudice because there is no private right of action under the Act.

### C. Mr. **Weingrad** cannot seek injunctive relief.[58]

Mr. **Weingrad** seeks injunctive relief even though there is no basis to find a call after December 2023 or risk of a call.[59] **Top Healthcare Options** argues Mr. **Weingrad** is not entitled to injunctive relief because he has not pleaded threat of future harm.[60] Mr. **Weingrad** argues he must only plead a statutory violation to establish standing to seek injunctive relief.[61]

Standing must be shown "for each claim ... and for each form of relief [sought] (for example, injunctive relief and damages)."[62] Mr. **Weingrad** must plead facts from which we can plausibly find he is "likely to suffer future injury" from **Top Healthcare Option's** conduct to have standing to seek injunctive relief.[63] He must plead "continuing, present adverse effects" and may not rely solely on "[p]ast exposure to illegal conduct."[64] And "[i]njunctive relief cannot automatically be granted upon a finding of statutory violation."[65]

**\*7**  Mr. **Weingrad** does not plead threat of future harm.[66] We dismiss Mr. **Weingrad's** claim for injunctive relief without prejudice.

### III. Conclusion

We grant **Top Healthcare Options's** motion. We dismiss the Telephone Consumer Protection Act claim, as well as a claim for injunctive relief, without prejudice to timely amend.

Mr. **Weingrad** may be able to plead facts under federal law but cannot allege a separate claim for injunctive relief. Equitable relief is part of a remedy for a violation. We dismiss the Pennsylvania Telemarketer Registration Act claim with prejudice as there is no private right of action under the Act.

### All Citations

Slip Copy, 2024 WL 4228149

---

### Footnotes

1    ECF 12 ¶ 20.

2    *Id.* ¶ 30. **Top Healthcare Options** is a Florida health insurance marketing corporation. *Id.* ¶¶ 6, 29. **Top Healthcare Options** is not registered as a telemarketer with the Attorney General of Pennsylvania. *Id.* ¶ 18.

3    *Id.* ¶ 32.

4    *Id.*

5    *Id.* ¶ 33.

6    *Id.* ¶¶ 56–60.

7    *Id.*¶ 41.

8    *Id.* ¶¶ 61–64.

9    *Id.* ¶ 41.

10   A complaint must state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6)*. The purpose of *Rule 12(b)(6)* is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,' " it does require the pleading show "more than a sheer possibility ... a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

     In determining whether to grant a *Rule 12(b)(6)* motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo,*

*Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we " 'tak[e] note of the elements a plaintiff must plead to state a claim' "; (2) we "identify allegations that ... 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]' "; and, (3) " '[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' ... in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations ... and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]' ..., we determine whether they 'plausibly give rise to an entitlement to relief.' " *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

11    ECF 24-1.

12    *Id.* at 4–8.

13    ECF 30 at 4–11.

14    Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227).

15    *Id.* at § 227(c)(3).

16    47 C.F.R. § 64.1200(c)(2).

17    *Id.* at § 64.1200(c)(2), (e), (f).

18    *Id.* at § 64.1200(c)(2)(i)(D).

19    47 U.S.C. § 227(c)(5).

20    47 C.F.R. § 64.1200(c)(2).

21    *Camunas v. Nat'l Republican Senatorial Comm.*, 541 F. Supp. 3d 595, 604 (E.D. Pa. 2021) (quoting *Smith v. Vision Solar LLC*, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020)).

22    No. 21-4774, 2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023).

23    *Id.* at *1.

24    *Id.*

25    *Id.*

26    *Id.* at *2–3.

27    *Id.* at *3 (citing 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(f)(15)).

28    *Id.*

29    *Id.* at *3–4; *see also Greene v. Select Funding, LLC*, No. 20-7333, 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) (emphasis in original) ("[W]hile [plaintiff] alleges that he received eight calls from Defendant's number within a one-year period, he only answered one of these calls—on April 10, 2020. Thus, at best, Plaintiff has only alleged *one* telephone solicitation ... [and] has not alleged the content of the other calls that would allow the Court to reasonably infer that these other calls were solicitations.").

Not all courts have reached the same conclusion, but on distinguishable facts. In *Whittaker v. Freeway Insurance Services Am., LLC*, Judge Campbell rejected telemarketer's argument the call recipient failed to allege more than one telephone solicitation reasoning "[m]ultiple calls from the same telephone number over the course of a few days suggests a common purpose in the calls, and the recorded voicemail clearly suggests the purpose of the calls." No. 22-8042, 2023 **WL** 167040, at *2 (D. Ariz. Jan. 12, 2023). But the call recipient before Judge Campbell not only received four calls and a voicemail from the same number; but also affirmatively called the company back and spoke with the company about the calls' purpose. *Id.* at *1. Mr. **Weingrad** received calls from nine different numbers allegedly associated with **Top Healthcare Options**. *Cf. Atkinson v. Choice Home Warranty*, No. 22-4464, 2023 **WL** 166168, at *5 (D.N.J. Jan. 11, 2023) (distinguishing *Greene*, 2021 **WL** 4926495) (call recipient answered three calls from company and received repeated calls from the same number); *Spurlark v. Dimension Serv. Corp.*, No. 21-3803, 2022 **WL** 2528098, at *1 (S.D. Ohio July 7, 2022) (call recipient received voicemails on ignored calls and ultimately answered an incoming call and spoke with a representative for the company); *Bird v. Pro Star Builders, Inc.*, No. 22-3610, 2022 **WL** 18216007, at *1 (C.D. Cal. Nov. 28, 2022) (all calls to call recipient, including the call the recipient answered, came from the same telephone number); *Chapman v. Nat'l Health Plans & Benefits **Agency**, LLC*, 619 F. Supp. 3d 788, 790 (E.D. Mich. 2022) (same); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 732 (N.D. Ill. 2014) (same).

30    ECF 12 ¶¶ 30–31.

31    *Id.* ¶ 32.

32    ECF 24-1 at 6 n.2.

33    ECF 30 at 4–5.

34    47 C.F.R. § 64.1200(f)(15).

35    *Gillam*, 2023 **WL** 2163775, at *3.

36    *Id.*

37    No. 16-01113, 2017 **WL** 3841491 (D. Ariz. Feb. 15, 2017).

38    *Id.* at *3.

39    *Id.* (citing *Twombly*, 550 U.S. at 555).

40    No. 22-4464, 2023 **WL** 166168, at *5 (D.N.J. Jan. 11, 2023).

41    *Id.* at *1.

42    *See, e.g., Dudley v. Vision Solar, LLC*, No. 21-659, 2021 **WL** 3077557, at *1 (**E.D**. **Pa**. July 21, 2021) (plaintiff pleading detailed allegations about the content of telephone solicitation calls).

43    ECF 12 ¶ 32.

44    *Twombly*, 550 U.S. at 557.

45    ECF 24-1 at 13–14.

46    ECF 30 at 13–15.

47    47 U.S.C. § 227(b)(3)(C).

48    *Lary v. Trinity Physician Fin. & **Ins**. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015).

49    ECF 12 ¶¶ 6, 58, 63.

50    *See, e.g., Blair v. Assurance IQ LLC*, No. 23-16, 2023 **WL** 6622415, at *4 (W.D. Wash. Oct. 11, 2023) (dismissing trebled damages from a Telephone Consumer Protection Act case for insufficient pleading); *Fania v. Verified Docu Serv., Inc.*, No. 22-2652, **2024 WL** 1012963, at *4–5 (M.D. Fla. Mar. 8, **2024**) (same).

51    ECF 24-1 at 8–10.

52    ECF 30 at 15–20.

53    73 PA. CONS. STAT. § 2245.2(k)(1).

54    *Shelton v. FCS Cap. LLC*, No. 18-3723, 2019 **WL** 6726404, at *3 (**E.D**. **Pa**. Dec. 11, 2019) (quoting *Lerro ex rel. Lerro v. Upper Darby Twp.*, 798 A.2d 817, 822 (Pa. Commw. Ct. 2002)).

55    *Id.* ("[T]he PTRA's language demonstrates the General Assembly's intent to commit enforcement of the PTRA to the Attorney General. Shelton therefore cannot maintain such a claim as a matter of law.").

56    *Perrong v. CMI Mktg. Rsch. Inc.*, No. 22-3733, 2023 **WL** 6277299, at *3 (**E.D**. **Pa**. **Sept**. 26, 2023) (quoting 73 PA. CONS. STAT. § 201-9.2(a)) (holding a violation of the Pennsylvania Telemarketer Registration Act could not serve as a predicate claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law).

57    Mr. **Weingrad** responds arguing he can show ascertainable loss by highlighting the battery power and data storage space he loses by receiving unwanted phone calls. ECF 30 at 15–20. But Mr. **Weingrad** ignores the General Assembly's requirement Unfair Trade Practices and Consumer Protection Law claimants must show ascertainable loss tied to "purchase[d] or lease[d] goods or services" as a result of the covered unlawful practice. 73 Pa. Stat. § 201-9.2. Mr. **Weingrad** does not allege that he purchased his phone, electricity, or phone data from **Top Healthcare Options**.

58    Mr. **Weingrad** argues **Top Healthcare Options** should have challenged standing under Federal Rule of Civil Procedure 12(b)(1). ECF 30 at 11. But we "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)).

59    ECF 12 at 12.

60    ECF 24-1 at 10–13.

61    ECF 30 at 11–13. Mr. **Weingrad** relies on *Abramson v. AP Gas & Elec. (PA), LLC*, No. 22-1299, 2023 **WL** 1782728 (W.D. Pa. Feb. 6, 2023). In *Abramson*, the defendant-caller was sued for using automated voice messages, not for a Do Not Call Registry violation, and defendant had been earlier sued for the same statutory violation. *Id.* at *4–5.

62    *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citations omitted).

63    *McNair v. Synapse Group Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

64    *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Weingrad v. Top Healthcare Options Insurance Agency Co., Slip Copy (2024)

65    *Int'l Union, United Auto. Aerospace & Agr. Implement Workers of Am., AFL-CIO v. Amerace Corp.*, 740 F. Supp. 1072, 1086 (D.N.J. 1990) (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982); *Natural Resources Defense Council, Inc. v. Texaco Refining and Marketing, Inc.*, 906 F.2d 934 (3d Cir. 1990)).

66    Our colleagues dismiss injunctive relief remedies for Telephone Consumer Protection Act claims where plaintiffs fail to plead future harm. *See, e.g., Zononi v. CHW Grp., Inc.*, No. 22-14358, 2023 **WL** 2667941, at *5 (S.D. Fla. Mar. 7, 2023) (dismissing injunctive relief from Telephone Consumer Protection Act claim); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1251–52 (S.D. Fla. 2019) (same).

---

**End of Document**                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Winner v. Kohl's Department Stores, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3535038

KeyCite Yellow Flag

Declined to Follow by   Montanez v. Future Vision Brain Bank, LLC, D.Colo.,   April 29, 2021

2017 WL 3535038

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

Lynne WINNER and Destiny Jennings, on their own behalf and on behalf of all others similarly situated

v.

KOHL'S DEPARTMENT STORES, INC.

CIVIL ACTION No. 16-1541

|

Filed 08/17/2017

**Attorneys and Law Firms**

Sergei Lemberg, Stephen F. Taylor, Lemberg Law LLC, Wilton, CT, for Lynne Winner and Destiny Jennings.

Edward J. Mullins, III, Edward J. Mullins III, Esq. LLC, Bayonne, NJ, Jeffrey S. Jacobson, Lauri A. Mazzuchetti, Kelley Drye & Warren LLP, Parsippany, NJ, for Kohl's Department Stores, Inc.

### **MEMORANDUM**

John R. Padova, District Judge

**\*1** Defendant, Kohl's Department Stores, Inc. ("Kohl's") moves to dismiss the First Amended Complaint ("FAC") filed by Lynne Winner and Destiny Jennings under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted or, in the alternative, under Rule 12(b)(1) for lack of standing/subject matter jurisdiction. The case is filed as a class action alleging that Kohl's sent unauthorized autodialed telemarketing text messages to Plaintiffs' cellular telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), and its implementing regulations. For the following reasons, the Motion is granted and the FAC is dismissed pursuant to Rule 12(b)(1).

### **I. FACTS**

   A. The FAC

In the FAC, Plaintiffs allege that Plaintiff Lynne Winner ("Winner") is a consumer residing in Collegeville, Pennsylvania. (FAC ¶ 6.) Plaintiff Destiny Jennings ("Jennings") is a consumer residing in Jacksonville, Florida. (Id. ¶ 7.) Kohl's is a Delaware corporation headquartered in Menomonee Falls, Wisconsin. (Id. ¶ 8.)

In the four years prior to the filing of Winner's and Jennings's initial Complaint, Kohl's began sending both Plaintiffs telemarketing text messages to their cellular telephones. (Id. ¶¶ 22, 27-28, 30-31, 46-51.) Kohl's had advertised to consumers the ability to earn frequent-shopper "points" by downloading its mobile application and texting the word "APP" to receive instructions regarding the application. (Id. ¶ 23.) The bottom of the advertisement contained a "disclaimer" which Plaintiffs characterize as "barely visible and unreadable." (Id. ¶ 26.)

Plaintiff Winner texted the "APP" message to Kohl's on October 24, 2014, and, within 15 minutes, Kohl's sent her a text message (1) advertising its mobile application and its "Yes2YouRewards" promotions program, and (2) directing her to click on a link in the text message "[t]o enroll in Yes2You." (Id. ¶ 27.) It then sent a separate text message advertising its "Mobile Sale Alerts" program, directing her to text "Save30" to participate in "saving sent straight to your phone!" (Id. ¶ 28.) Shortly thereafter, Kohl's received a text message from Winner's cellular telephone number stating "SAVE30." (Id. ¶ 29.) It then began sending Winner five to seven text messages a month stylized as "KohlALERTS." (Id. ¶¶ 30-31.) Winner alleges that she "repeatedly requested that Kohl's stop sending messages to her, but her requests went unheeded." (Id. ¶ 32.) She also visited a Kohl's store and asked an employee to get the text messages to stop, but the Kohl's employee was unable help make the text messages stop. (Id. ¶ 33.) On March 24, 2016, after receiving a "STOP" message from Winner's phone, Kohl's stopped sending her text messages. (Id. ¶ 34.) Winner alleges that she did not intentionally sign up to receive Defendant's autodialed telemarketing text messages, Kohl's never obtained her signed written consent to send her the texts, and Kohl's never provided her with any disclosures required for a valid electronic signature. (Id. ¶¶ 37-39.)

**\*2** On November 22, 2014, Kohl's received a message stating "SAVE07" from Plaintiff Jennings's cellular telephone number. (Id. ¶ 46.) "SAVE07" is one of Kohl's "calls to action" that initiates the sending of text messages to consumers. (Id. ¶ 47.) Plaintiffs allege that, as part of

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 213 of 233

Winner v. Kohl's Department Stores, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3535038

Defendant's corporate marketing strategy, it "routinely used such 'calls to action' that contained small print." (Id. ¶ 48.) After receiving the "SAVE07" message from Jennings's cellular telephone number, Kohl's sent Jennings a text message "Welcome to Kohl's Mobile Alerts! ... Get 7 msgs per month. Reply HELP for HELP. STOP to cancel." (Id. ¶ 49.) Kohl's then sent Jennings a separate text message advertising sales promotions on its website. (Id. ¶ 50.) Thereafter, Kohl's sent Jennings approximately seven messages a month advertising various sales promotions. (Id. ¶ 51.)

Plaintiffs allege that the text messages Kohl's sent them constituted telemarketing as they advertised sales and promotions available at its retail stores and on its website. (Id. ¶¶ 40, 57.) The messages were automated, part of Defendant's corporate direct marketing strategy, and were not individualized to the Plaintiffs. (Id. ¶¶ 41-43, 58-59.) The messages were sent using an automatic telephone dialing system, which has the capacity to store or produce telephone numbers to be texted, using a random or sequential generator, or from a database of numbers, and to text thousands of such numbers without human intervention. (Id. ¶¶ 44-45, 60, 64-68.) "Defendant acquired Plaintiffs' numbers, stored them in a databased connected to its telephonic or computer system, and then used its system to send identical text messages to Plaintiffs' and thousands of other consumers' cellular telephones automatically and without human intervention." (Id. ¶ 63.) No human was involved in the sending of Defendant's text messages to Plaintiffs, who received identical text messages which were the same messages received by thousands of other consumers who were enrolled in Defendant's telemarketing text messaging campaign. (Id. ¶ 64.)

Plaintiffs assert that they were annoyed by Defendant's messages and considered them spam. (Id. ¶¶ 35, 54.) They further allege they were never clearly and conspicuously informed that they were enrolling to receive automated telemarketing text messages to their cellular telephones. (Id. ¶¶ 36, 55.) Neither Plaintiff intentionally signed up for Defendant's telemarketing text messages, the messages came as a surprise and inconvenience, and became a concern to Plaintiffs. (Id. ¶¶ 37, 56.) They assert that Kohl's never obtained either Plaintiff's signed, written consent to receive telemarketing text messages, and never provided Plaintiffs with any disclosures required for a valid electronic signature. (Id. ¶¶ 38-39, 61.)

B. The Parties' Stipulation

Following Defendant's filing of a Motion and a supporting declaration to dismiss the original Complaint in this matter for lack of standing, and the scheduling of an evidentiary hearing thereon, the parties entered into a Stipulation of Facts (Docket Entry 25 ("Stipulation")) in which they agreed as follows:

1. On Oct. 24, 2014, at 2:05 PM, Kohl's received an incoming text message, containing the word "APP," from Ms. Winner's mobile phone number.

2. Kohl's had advertised to consumers the ability to earn frequent-shopper "points" by downloading Kohl's mobile application and requested that consumers text the word "APP" to Kohl's to receive instructions as to how to download the mobile application.

3. The following is a sample advertisement [1] from Kohl's that asked consumers to text the word "APP" to Kohl's to receive these instructions:



4. In response to the "APP" message from Ms. Winner's phone, within 15 minutes of receipt of that message, Kohl's transmitted two text messages to Ms. Winner's phone number, stating as follows:

**\*3** KOHLS: Thanks for texting! To enroll in Yes2You Rewards click the link download the Kohl's App then sign in or create an account. http://bit.ly/1CXVMLK

\* \* \*

KohlsALERTS: Get more savings sent straight to your phone! Text SAVE30 to opt in to our Mobile Sale Alerts. Receive 5-7 msgs/mon. Msg&Data Rates May Apply.

Winner v. Kohl's Department Stores, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3535038

5. Shortly after Kohl's sent the second message, Kohl's received from Ms. Winner's phone a text message reading "SAVE30."

6. After receiving that "SAVE30" message, Kohl's commenced sending text messages to Ms. Winner's phone at the rate of five to seven messages per month.

7. The messages sent to and received by Ms. Winner appeared as follows:





8. On at least one occasion, Ms. Winner redeemed a sales offer transmitted to her by text message, receiving $10 off of a $25 purchase on or about November 9, 2014.

Winner v. Kohl's Department Stores, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3535038

9. Ms. Winner contends that she had repeatedly requested that Kohl's stop sending messages to her, but her requests went unheeded.

10. On March 24, 2016, Kohl's received from Ms. Winner's phone a text message reading "STOP." Kohl's has no record of any other request allegedly made by Ms. Winner for Kohl's to stop sending text messages to her phone number.

11. Within minutes of receiving that message, Kohl's sent Ms. Winner's phone a final text message confirming that she had unsubscribed from the text message program.

12. Kohl's has sent Ms. Winner's phone no text messages since March 24, 2016.

13. Ms. Winner contends that she was annoyed at receiving the messages and considered them spam.

14. On November 22, 2014, at 11:49 AM, Kohl's received an incoming text message, containing the term "SAVE07," from Ms. Jennings mobile phone number.

15. "SAVE07" is one of Kohl's "calls to action" that initiates the sending of text messages.

16. The following are examples of calls to action that featured the keyword SAVE07:



17. In response to the "SAVE07" message from Ms. Jennings' phone, within 15 minutes of receipt of that message, Kohl's transmitted two text messages to Ms. Jennings' phone number, stating as follows (or substantially similar thereto):

KohlsAlerts: Welcome to Kohl's Mobile Alerts! Keep up w/ Kohl's savings. Msg&Data Rates May Apply. Get 7 msgs per month. Reply HELP for HELP. STOP to cancel.

*4

* * *

KohlsAlerts: Sign-up offer: Get 15% off at Kohls.com. Use code SMS2145 until 12/06. Terms: www.kohls.com/sms. Reply HELP for HELP STOP to cancel.

18. Kohl's commenced sending Ms. Jennings approximately seven messages per month. The messages were identical to or substantially similar to the messages received by Ms. Winner.

19. Kohl's never received a "STOP" message from Ms. Jennings' phone.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 216 of 233

Winner v. Kohl's Department Stores, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3535038

20. Kohl's ceased sending text messages to Ms. Jennings' phone on April 4, 2016, the date on which she filed the Complaint in this action.

21. Ms. Jennings contends that she was annoyed at receiving the messages and considered them spam.

(Stipulation ¶¶ 1-21.)

## II. STANDARD OF REVIEW

The jurisdictional portion of Kohl's Motion seeks dismissal of the FAC pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiffs lack standing. [2] " 'A motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.' " Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014) (alteration in original) (quoting Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007)). It is the plaintiffs' burden to prove standing. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). In order to survive a motion to dismiss, Plaintiffs must demonstrate that they possess the requisite stake in the outcome of their suits to have standing by showing they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (stating these three elements are the "irreducible constitutional minimum" of standing) (citing Lujan, 504 U.S. at 560-61); see also Hollingsworth v. Perry, 133 S. Ct. 2652, 2661 (2013); Constitution Party of Pa., 757 F.3d at 360. An injury-in-fact requires "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotation marks and citations omitted); Spokeo, 136 S. Ct. at 1545 ("[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both concrete *and* particularized." (emphasis in original).)

Whether a motion raises a "facial" attack or a "factual" attack on standing determines the burden of proof and standard of review. Constitution Party of Pa., 757 F.3d at 357-58 (citing In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)). A facial attack considers only "a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the courts" due to some jurisdictional defect. Id. at 358. This type of attack occurs prior to the filing of an answer or a challenge to the factual allegations of a complaint. Id. (citing Mortensen

v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 889-92 (3d Cir. 1977)). It is judged under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). Id. However, a factual attack concerns " 'the actual failure of a plaintiff's claims to comport [factually] with the jurisdictional prerequisites.' " Id. (alteration in original) (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)). In such a case, a court may weigh the alleged facts, and consider evidence outside the pleadings. Id. In deciding a factual attack, the non-moving party's allegations receive no presumption of truthfulness. Mortensen, 549 F.2d at 891. "[P]laintiff has the burden of persuasion to convince the court it has jurisdiction." Gould Elec., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000) (citation omitted).

## III. ANALYSIS

**\*5** Kohl's Motion asserts a factual attack. It argues, based on the FAC and the Stipulation, that Plaintiffs did not suffer an injury in fact as a result of receiving the autodialed telemarketing text messages from Kohls' because they asked Kohl's to send them the messages that they received. Defendant argues that its calls to action fully comply with the Federal Communications Commission's ("FCC") guidance on what constitutes written consent under the TCPA. Because Plaintiffs admit in the FAC and the Stipulation that they consented to receiving the messages, Kohl's argues they have suffered no injury-in-fact to support their standing to bring their claims.

Congress enacted the TCPA "to protect individual consumers from receiving intrusive and unwanted calls." Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 268 (3d Cir. 2013) (citing Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372-73 (2012)); see also Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009) (stating that "the TCPA was enacted in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls" (citing S. Rep. No. 102-178 at 2 (1991), reprinted in 1991 U.S.C.C.A.N. 1968)). The TCPA makes it unlawful for any person "to make any call ... using any automatic telephone dialing system ... to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service" without "the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). A text message has been held to be a "call" within the meaning of the TCPA. Gomez v. Campbell-Ewald Co., 768 F.3d 871, 874 (9th Cir. 2014) (citing Satterfield, 569 F.3d at 952.) Thus, to state a TCPA claim, plaintiff must allege that "(1)

Winner v. Kohl's Department Stores, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3535038

the defendant called [or texted] a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)).

"Congress authorized the [FCC] to implement rules and regulations enforcing the TCPA." Gager, 727 F.3d at 268 (citing 47 U.S.C. § 227(b)(2)). The implementing regulation defines the term "prior express written consent" as follows:

The term **prior express written consent means an agreement**, in writing, **bearing the signature of the person called that clearly authorizes** the seller to deliver or cause to be delivered to the person called **advertisements** or telemarketing messages **using an automatic telephone dialing system** or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

(i) The written agreement **shall include a clear and conspicuous disclosure** informing the person signing that:

(A) By executing the agreement, **such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system** or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

(ii) **The term "signature" shall include an electronic or digital form of signature**, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

47 C.F.R. § 64.1200(f)(8) (emphasis added).

The FCC issued a Report and Order on February 15, 2012 stating that the determination of whether proper consent is given to receive advertising text messages requires that (1) the consent was obtained following a clear and conspicuous disclosure of the consequences of providing consent; and (2) the consent was "obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service." In the Matter of

Rules and Regulations Implementing the TCPA of 1991, 27 FCC Rcd. 1830, 1844 ¶ 33 (F.C.C. Feb. 15, 2012) (quotation omitted). The Report and Order further provides that "consent obtained in compliance with the E-SIGN Act will satisfy the requirements of our revised rule, including permission obtained via an email, website form, text message, telephone keypress, or voice recording." Id. ¶ 34 (stating that "Allowing documentation of consent under the E-SIGN Act [15 U.S.C. § 7001] will minimize the costs and burdens of acquiring prior express written consent for autodialed or prerecorded telemarketing calls while protecting the privacy interests of consumers. Because it greatly minimizes the burdens of acquiring written consent, commenters generally support using electronic signatures consistent with the E-SIGN Act. We conclude that the E-SIGN Act significantly facilitates our written consent requirement, while minimizing any additional costs associated with implementing the requirement." (footnote omitted)). The FCC then reaffirmed, in a Report and Order dated July 10, 2015, that the disclosures necessary as a precursor to consent "must tell consumers the telemarketing will be done with autodialer equipment and that consent is not a condition of purchase." In the Matter of Rules and Regulations Implementing the TCPA of 1991, 30 FCC Rcd. 7961, 8012-13 ¶ 98 (F.C.C. July 10, 2015) ("FCC 2015 Order").

**\*6** The E-Sign Act provides that, for any transaction affecting interstate or foreign commerce, "a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form." 15 U.S.C. § 7001(a); see also Prudential Ins. Co. of Am. v. Prusky, 413 F. Supp. 2d 489, 494 (E.D. Pa. 2005) ("The purpose of the Act is to protect transactions from legal challenges that are solely based on the electronic form of the agreement."); Levy-Tatum v. Navient & Sallie Mae Bank, Civ. A. No. 15-3794, 2016 WL 75231, at \*5 (E.D. Pa. Jan. 7, 2016) ("The E-Sign Act simply establishes that contracts and signatures cannot be denied legal effect merely because they are in electronic form." (citation omitted)). The Act contains a provision detailing that, "if a statute, regulation, or other rule of law requires that information relating to a transaction" be provided to a consumer in writing:

the use of an electronic record to provide or make available (whichever is required) such information **satisfies the requirement that such information be in writing if—**

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 218 of 233
Winner v. Kohl's Department Stores, Inc., Not Reported in Fed. Supp. (2017)
2017 WL 3535038

(A) the **consumer has affirmatively consented** to such use and has not withdrawn such consent;

(B) **the consumer, prior to consenting, is provided with a clear and conspicuous statement—**

(i) **informing the consumer of** (I) any right or option of the consumer to have the record provided or made available on paper or in nonelectronic form, and (II) **the right of the consumer to withdraw the consent** to have the record provided or made available in an electronic form and of any conditions, consequences (which may include termination of the parties' relationship), or fees in the event of such withdrawal;

(ii) **informing the consumer of whether the consent applies (I) only to the particular transaction** which gave rise to the obligation to provide the record, or (II) to identified categories of records that may be provided or made available during the course of the parties' relationship;

(iii) **describing the procedures the consumer must use to withdraw consent** as provided in clause (i) and to update information needed to contact the consumer electronically; and

(iv) informing the consumer (I) how, after the consent, the consumer may, upon request, obtain a paper copy of an electronic record, and (II) whether any fee will be charged for such copy;

(C) **the consumer—**

(i) prior to consenting, is provided with a statement of the hardware and software requirements for access to and retention of the electronic records; and

(ii) **consents electronically, or confirms his or her consent electronically**, in a manner that reasonably demonstrates that the consumer can access information in the electronic form that will be used to provide the information that is the subject of the consent;

15 U.S.C. § 7001(c)(1) (emphasis added.)

We find that Plaintiff Winner and Plaintiff Jennings expressly consented to receive Defendant's autodialed calls to action telemarketing texts. The facts contained in the Stipulation

establish that both Winner and Jennings gave prior express consent under the TCPA through a method made permissible by the E-Sign Act. Because they consented to receiving the texts, Plaintiffs can show no concrete and particularized injury-in-fact and thus have not established that they have standing to pursue the claims asserted in the FAC.

The Stipulation establishes that Winner sent Kohl's a text message, containing the word "APP" from her mobile phone number. (Stip. ¶ 1.) Her text was sent in response to an advertisement directing customers to text "APP." (Id. ¶ 2.) The advertisement stated that, (1) by doing so, the customer "will receive two to three auto-dialed text messages" to set up their participation; [3] (2) "Participation is not required to make a purchase;" (3) customers could "Reply **HELP** for help, reply **STOP** to cancel;" (4) message and data rates may apply; and (5) the terms and conditions of the program were available on Kohl's website. (Id. ¶ 3.) The advertisement inviting her to text "APP" also directed Plaintiff to Kohl's website for the terms and conditions applicable to the program. (Id.) In response to Winner's "APP" text, Kohl's transmitted two text messages to Winner's phone number, one of which instructed her to text "SAVE30" if she wished to participate in the calls to action program, and Kohl's then received from Ms. Winner's phone a text message reading "SAVE30." (Id. ¶¶ 4-5.) Each telemarketing text Kohl's sent thereafter instructed her to text "STOP" if she wished to stop receiving the telemarketing texts. (Id. ¶ 7.)

**\*7** We conclude that Winner's actions enrolling in Defendant's calls to action program constituted prior express consent under the TCPA. The "written agreement," in the form of the text messages she received after she texted "APP," included a clear and conspicuous disclosure informing her that, by sending the authorizing "SAVE30" text she was authorizing Kohl's to deliver to her five to seven telemarketing texts each month by an automatic telephone dialing system. (Id. ¶ 4 ("Text SAVE30 to opt in to our Mobile Sale Alerts. Receive 5-7 msgs/mon.").) It also incorporated by reference the terms and conditions of the program. (Id. ¶ 3 ("See Kohls.com/mobile for mobile Terms and Conditions.").) These disclosures were sufficient to satisfy the requirement of the TCPA implementing regulation that there be "clear and conspicuous disclosure" that by "executing the agreement such person authorizes the seller to deliver ... telemarketing [texts] using an automatic telephone dialing system." 47 C.F.R. § 64.1200(f)(8)(i)(A). These disclosures also satisfied the requirement that there be a clear and conspicuous disclosure that a purchase was not necessary to

2017 WL 3535038

participate in the program. 47 C.F.R. § 64.1200(f)(8)(i)(B). (See Stip. ¶ 3.)

The sequence of the texts is important to our analysis. Defendant's response text was sent only after Winner's initial "APP" keyword text. Defendant's response text required that the consumer send the "Save30" text before Defendant began to sending autodialed telemarketing texts. We find that including the words "Terms and Conditions" and the link to the website in the ad, along with the disclosure in the responsive text that the consumer would receive five to seven texts per month, is sufficient to provide a consumer with "a clear and conspicuous statement" that the consumer has consented to receiving autodialed telemarketing texts. Moreover, Defendant's second text advised consumers to send the second "Save30" keyword text after the material that disclosed the terms and conditions were electronically made available to them. (Stip. ¶¶ 3-4.) Finally, those terms and conditions include a clear and conspicuous statement that consumers will receive autodialed telemarketing texts and provides instructions how to stop receiving them. (Id. ¶ 3.)

We conclude that the stipulated facts also establish that Winner "signed" the express written consent agreement in a manner permissible under the E-Sign Act. Winner's texting "SAVE30" constituted her electronic signature affirmatively consenting to such use, and was sent after she was notified of the terms and conditions of the program, including her right to withdraw the consent and the procedures the consumer must use to do so, i.e., text the word "STOP." 15 U.S.C. § 7001(c) (1)(B)-(C).

Although Winner asserts that she repeatedly asked Defendant to stop sending messages to her phone, and that those requests went unheeded, she does not specify how she made these requests other than one visit she made to a Kohl's store in which she asked an employee to get the text messages to stop. This action did not comply with the terms and conditions of the program and is thus insufficient to create an injury-in-fact based on Defendant's failure to stop the texts. The parties stipulate that Defendant received a "STOP" text from Winner's phone on March 24, 2016, and that Kohl's has no record of any other request made by Winner for Defendant to stop sending text messages to her phone number. (Stip. ¶ 10.) They further stipulate that (1) when Winner followed the prescribed method for stopping the telemarketing texts, the only additional text she received was a confirmation that she had unsubscribed from the program and (2) Defendant has sent Winner no other texts. (Id. ¶¶ 11-12.) Accordingly, we

find that Winner's alleged "repeated" attempts to stop the texts by efforts other than those prescribed by the program to which she consented are insufficient to establish that she suffered an injury-in-fact.

Plaintiff Jennings' experience was similar to that of Winner. Like Winner, she opted into a Kohl's text message program by texting a keyword, "SAVE07," to Kohl's in November 2014. (Stip. ¶ 14.) After she texted "SAVE07" to Kohl's, Kohl's sent her a confirmation stating that she would begin receiving seven messages per month, and referring her to the terms and conditions on Kohl's website. (Id. ¶ 17.) All messages that Kohl's sent to Jennings told her she could "Text 'STOP' to stop," but the parties stipulate that Kohl's never received a "stop" message from Ms. Jennings. (Id. ¶¶ 17, 19.) Accordingly, we find that Jennings has failed to meet her burden to show injury-in-fact since she too consented to receiving the telemarketing texts in a manner that complied with the TCPA and E-Sign Act and never asked Defendant to stop sending her texts in the manner required by Defendant's terms and conditions. [4]

**\*8** Plaintiffs argue that, under the FCC 2015 Order, Defendant never obtained their express written consent to send them autodialed telemarketing texts. They assert that the Order permits a telemarketer to send only **one** text in response to a customer's response to a call to action. See FCC 2015 Order ¶ 106 n.363. [5] Plaintiffs argue that they did not consent to any messages beyond the first one. They further contend that the first message "did not disclose that (1) subsequent messages would be automated or (2) that Winner was not required to sign or agree as a condition of purchasing any of the property, goods, or services." (Pls.' Mem. at 11.) They also argue that the first message did not contain disclosures sufficient to transform any response thereto "into a signature for purposes of the E-Sign Act" because there "was no notice that the consumer was affirmatively consenting to an electronic signature, no notice that the consumer could obtain a paper copy of such consent and whether there would be a charge, and no notice that the consumer could withdraw her electronic signature." (Id. at 12 (citation omitted).)

Plaintiffs' reliance on the FCC 2015 Order is misplaced because the events in this case occurred before that Order was promulgated. The Winner calls to action text was initiated by that Plaintiff on October 24, 2014. (Stipulation ¶ 1.) The Jennings calls to action text was initiated by that Plaintiff on November 22, 2014. (Id. ¶ 14.) Plaintiffs offer no explanation of how Defendant could be bound by an FCC Order that was

Case 1:25-cv-00927-KMN   Document 14-1   Filed 07/18/25   Page 220 of 233

Winner v. Kohl's Department Stores, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3535038

not in existence at the time Plaintiffs consented to receive the autodialed telemarketing texts. Moreover, the FCC 2015 Order clearly permits subsequent autodialed telemarketing texts after the initial text where businesses obtain the required "prior express written consent with the specified disclosures." FCC 2015 Order, at ¶ 106 n.363. As Plaintiffs concede in the Stipulation that they received the disclosures, they have failed to meet their burden to show they suffered an injury-in-fact even if the FCC 2015 Order applies. We conclude, accordingly, that Winner and Jennings have failed to satisfy their burden of showing that they have standing because each suffered an injury-in-fact as a result of Defendant's actions that is likely to be redressed by a favorable judicial decision. See Spokeo, 136 S.Ct. at 1547. Consequently, we grant Defendant's Motion to dismiss for lack of subject matter jurisdiction. [6]

## IV. CONCLUSION

Plaintiffs' claims for violation of the TCPA are dismissed under Rule 12(b)(1) because they have failed to meet their burden to show they have standing to bring their claims. Since Plaintiffs have already had a full opportunity to amend their pleading to attempt to establish standing, and have stipulated to the facts relevant to standing, we find that any further amendment would be futile. Defendant's alternative request to strike the class allegations in the FAC is dismissed as moot.

**\*9** An appropriate order will be entered granting Defendant's Motion to Dismiss.

## All Citations

Not Reported in Fed. Supp., 2017 WL 3535038

---

## Footnotes

1    The small print at the bottom of the advertisement states:

> "You will receive two to three auto-dialed text messages sent to your mobile number. Participation not required to make a purchase. You must be 18 years or older to text Kohl's. Reply HELP for help, reply STOP to cancel. Msg&Data Rates May Apply. See Kohl's.com/mobile for mobile Terms and Conditions."

The Stipulation does not state the original font size of the advertisement.

2    We review Defendant's Rule 12(b)(1) argument first. See Curtis v. Unionville-Chadds Ford Sch. Dist., Civ. A. No. 12-4786, 2013 WL 1874919, at *3 (E.D. Pa. May 1, 2013) ("When a motion under Rule 12 is 'based on more than one ground, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.' ") (quoting Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc., 619 F. Supp. 998, 1001 n.7 (D. Md. 1985)).

3    We note that Plaintiffs argue in their Response that "[t]he APP message from Ms. Winner authorized Kohl's to send one (1) response message.... However, Kohl's did not send one message; it sent two." (Pls. Resp. at 9) (citing FCC 2015 Order at ¶ 106 n.363). Plaintiffs argue that Winner did not consent to receiving the second message. This argument contradicts the Stipulation and is rejected. The parties stipulated that the "APP" message informed the customer that she would "receive two to three auto-dialed text messages." (Stip. ¶ 3.)

4    Because both Plaintiffs consented to receiving the text messages, the United States Court of Appeals for the Third Circuit's recent decision in Susinno v. Work Out World Inc., No. 16-3277, 2017 WL 2925432 (3d Cir. July 10, 2017), is inapposite. There, plaintiff brought suit under the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii),

2017 WL 3535038

after allegedly receiving a single, unsolicited cell phone call. Id., at *1. The court held that the allegation was sufficient to state a concrete, if intangible, harm. Id. at *5. Here, Plaintiffs' consent requires the opposite conclusion.

5       The footnote cited by Plaintiffs states:

        We note that some businesses include, in their call-to-action displays for on-demand texting programs, the small amount of wording necessary to make the disclosures required by the Commission's rules concerning prior express written consent for autodialed or prerecorded telemarketing calls. *See, e.g.*, http://www1.macys.com/shop/couponsdeals (visited Feb. 10, 2015) (disclosures under "get texts details": "By texting COUPON from my mobile number, I agree to receive marketing text messages generated by an automated dialer from Macy's to this number. I understand that consent is not required to make a purchase."). Our ruling today allows businesses to voluntarily provide these simple disclosures to consumers in a call-to-action before sending a single on-demand text in response to a consumer's request. **If the business sends more than a single text as a response to the consumer, however, our rules require prior express written consent with the specified disclosures**.

        FCC 2015 Order ¶ 106 n.363 (emphasis added).

6       Because we grant Defendant's Motion on this basis, we need not address its Rule 12(b)(6) arguments.

---

**End of Document**                                           © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 222 of 233

Woodard v. Health Insurance Alliance, Not Reported in Fed. Supp. (2024)

2024 WL 942629
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Antoinette WOODARD, Plaintiff,

v.

HEALTH INSURANCE ALLIANCE, Defendants.

Case No. 23 C 2630
|
Signed March 5, 2024

**Attorneys and Law Firms**

Anthony Paronich, Paronich Law, P.C., Hingham, MA, for Plaintiff.

Tyler A. Mamone, Pro Hac Vice, Yetian Wang, Pro Hac Vice, Mamone Villalon, Miami, FL, Donald J. Morrison, Kelleher + Holland, LLC, Waukegan, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

Harry D. Leinenweber, Judge

**\*1** Before the Court is Defendant Health Insurance Alliance's Motion to Dismiss [10] Plaintiff Antionette Woodard's class action lawsuit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, and Florida's Telephone Solicitation Act, Fla. Stat. § 501.059. Because the Court GRANTS the Defendant's Motion to Dismiss, Defendant's Motion to Strike Plaintiff's Class [9] is denied as not ripe and moot.

## I. BACKGROUND

For purposes of deciding Defendant's Motion to Dismiss, the Court accepts the factual allegations set in the Complaint as true. Here, Plaintiff Antoinette Woodard ("Woodard") – an Illinois resident – alleges that she received two telemarketing calls, one on March 6, 2023, and the other on March 13, 2023, from Defendant Health Insurance Alliance ("HIA"), a business incorporated and principally operated out of Florida, despite having registered her number on the National Do Not Call Registry and being uninterested in an insurance plan.

On the one hand, Woodard alleges that both calls were directly from HIA "as part of its calling for HIA." (Dkt. No. 1; Complaint ("Compl.") ¶ 20). This would be a viable basis to state a claim under the Telephone Consumers Protection Act ("TCPA"), which generally prohibits making multiple telemarketing calls to a residential telephone number without consent. 47 U.S.C. § 227(c)(5). But immediately after Woodard claims HIA called her directly, Woodard also alleges that the call that she received on March 13, 2023, was from a third-party rather than HIA itself. On that call, she claims that a person named Ryan "promoted" HIA's health insurance services and that another individual, a "Mr. Kelly," "identified *his* company was calling *for* Health Insurance Alliance and provided the Defendant's website." (*Id.* ¶¶ 25-26) (emphasis added). Mr. Kelly then provided Plaintiff with a call back number: 855-219-2957. (*Id.* ¶ 27). The parties dispute who this telephone number belongs to, but Woodard's complaint contains no allegation that she ever called or received a call from this number, anyway. Thus, the thrust of Woodard's TCPA Complaint against HIA is predicated on following sentence: "the Plaintiff received telemarketing calls from Health Insurance Alliance as part of its calling for Health Insurance Alliance, including on March 6 and 13, 2023." (*Id.* ¶ 20). On these same facts, Woodard adds a supplementary claim under the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, which prohibits mostly the same conduct as the TCPA, except that it applies only to businesses sending inbound texts or calls into Florida, even if the business is not organized under Florida law and has no physical presence in Florida. *See* FTSA § 501.059(e).

HIA moved to dismiss Woodard's complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), arguing that Woodard's Complaint lacks sufficient factual allegations to establish standing. As explained below, the Court agrees with HIA. Woodard's complaint is deficient for several reasons, all of which can be remedied in an amended pleading. But because she has failed to state a claim, the Court must and does dismiss the action, without prejudice.

## II. LEGAL STANDARD

**\*2** " ' To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level.' " *Elaihor v. Primerica Life Ins. Co.*, 2023 WL 3947617, \*2 (date N.D. Ill. 2023) (quoting *Haywood v. Massage Envy Franchising,*

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 223 of 233

Woodard v. Health Insurance Alliance, Not Reported in Fed. Supp. (2024)

*LLC*, 887 F.3d 329, 333 (7th Cir. 2018)). " 'While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.' " *Id., at *2.* (quoting *Sevugan v. Direct Energy Servs., LLC,* 931 F.3d 610, 614 (7th Cir. 2019)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

To state a claim under the TCPA, a plaintiff must allege that she "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under" the statute. 47 U.S.C. § 227(c)(5). Complaints which plead facts that are merely consistent with a defendant's liability "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal,* 556 U.S. at 678 (citation omitted). The plausibility of a complaint is context-specific to each legal claim. *Johansen v. Vivant, Inc.,* 2012 WL 6590551, at *2 (N.D. Ill., Dec. 18, 2012).

As HIA points out and as is elaborated in the following section, Woodard's complaint contains several conclusory and contradictory allegations that fail to nudge her TCPA allegations claim from merely possible to plausible.

### III. ANALYSIS

The most immediate problem with Woodard's Complaint is that it contradicts itself: Woodard alleges that HIA called her on March 13 in the same breath that she alleges a third party called her on March 13. (Compl. ¶¶ 20-26). Unexplained contradictory statements are afforded no weight in federal courts. *Atkins v. City of Chi.,* 631 F.3d 823, 831-32 (7th Cir. 2011) ("when a complaint is dismissed for failure to state a claim the reviewing court is to assume that the factual allegations made in the complaint (unless fantastic, or contradicted in the complaint itself or in documents attached to it) are true."); *Bahiraei v. Blinken,* 2024 WL 640801, at *9 (N.D. Ill., Feb. 15, 2024) ("Considering the inconsistent nature of these allegations, plaintiffs have at best failed to plausibly assert that consular officers refused to accept documents.").

Despite this contradiction, Woodard claims that her allegations go "far beyond" the pleading requirements, arguing that the caselaw relied on by HIA is "inapposite" and encouraging the Court to "infer" that HIA was responsible for the calls that Woodard received. (Dkt. No. 13; Pl. Mot. in Opp., at 4-5). The Court disagrees and finds *Johansen v. Vivant, Inc.,* especially instructive. 2012 WL 6590551. The *Vivant* court was concerned with whether the plaintiff sufficiently pled that the defendant used an automatic dialing system in violation of the TCPA. In his complaint, the *Vivant* plaintiff claimed that the defendant used at automatic dialing system to deliver a pre-recorded message to the plaintiff's cellphone, which the court conceded to be "facts," and "not legal conclusions." *Id.,* at *3. But the plaintiff omitted any other information about the "circumstances surrounding [the call] to establish his belief that the messages were pre-recorded or delivered via the ATDS," leading the court to conclude that the plaintiff provided "only a threadbare, 'formulaic recitation of the elements' of a TCPA cause of action." *Id.* (quoting *Iqbal,* 556 U.S. 678, 680). Here, while Woodard does sufficiently state that the calls were made using an automatic dialer that made a "click and pause" sound, (Compl. ¶ 33), *see, e.g., Amrabmson v. AP Gas & Electric (PA) LLC,* 2023 WL 1782728 (W.D. Penn, Feb. 6, 2023), she provides no additional, independent facts to raise a reasonable expectation that discovery will reveal evidence of HIA's liability. *Id.,* at * 3 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). As the *Vivant* court instructs, "it is not unreasonable to require a plaintiff to describe the phone messages he received in laymen's terms or provide the *circumstances surrounding them to establish his belief*" that the defendant used an automatic dialer in violation of the TCPA. *Id.,* at *3 (cleaned up) (emphasis added). Under the same rationale, it is not unreasonable to require Woodard to provide the circumstances surrounding her belief that HIA is responsible for the calls that she received. Otherwise, Woodard's Complaint would survive dismissal despite being nothing more than a formulaic recitation of the elements of a TCPA cause of action.

 **\*3** Woodard relies on cases that allege at least one or two independent, additional factual allegations that the defendant placed the calls at issue, which Woodard fails to allege here. In *Abramson v. AP Gas & Electric (PA), LLC,* the plaintiff received two calls and alleged that, in one of the calls, a man named Christopher identified himself as an employee of the defendant. 2023 WL 1782728, at *3. This allegation created an inference that the defendant AP Gas & Electric (PA), LLC, did indeed initiate the calls. *Id.* In *Stemke v.*

*Marc Jones Construction, LLC*, the plaintiff alleged "several" times that she or her attorneys "confirmed" that the defendant placed the calls by calling the number back, and the complaint also included an allegation that the plaintiff received a phone call directly from the defendant's number. 2021 WL 4340424, at *1, *3 (M.D. Fla. 2021). Woodard's Complaint is comparatively thin, as the representatives Woodard interacted with represented themselves as promoters of Defendant HIA, not employees, and Woodard never claims that she interacted with nor received a call from HIA at all. In other words, Woodard articulates no circumstances to establish her belief that HIA was the party responsible for the calls that she received aside from the fact that their services were promoted.

Woodard's Complaint also fails to the extent that she intends to plead a principal-agent theory of liability against HIA. For instance, in *Toney v. Quality Resources, Inc.*, a court in this District partially dismissed the plaintiff's complaint, which impermissibly lumped the three defendants together – Sempris, LLC ("Sempris"), Provell, Inc. ("Provell"), and Quality Resources, Inc. ("Quality Resources"). 75 F.Supp. 3d 727, 733 (N.D. Ill. 2014). The *Toney* plaintiff never alleged that she received any phone calls from defendant Sempris; she alleged that defendant Quality Resources made all of the calls at issue, on behalf of Sempris. *Id.* at 741. The court dismissed the relevant count against Sempris because the plaintiff did not argue outright that she stated a claim under a direct liability theory against Sempris, but "simply direct[ed] the court's attention to the" statutory language of 47 U.S.C. § 227(c)(5) that provides a cause of action for TCPA violations made "*by or on behalf of the same entity.*" *Id.* (emphasis in original). This is precisely what Woodard does in her Complaint: Woodard attempts to attribute the promoters' calls to Defendant with no allegation of direct Defendant liability. (*See* Compl. ¶¶ 20, 62, 64). For the *Toney* counts that did survive dismissal, the plaintiff relied on additional, independent facts, like a contract which showed a business relationship between the defendants related to telemarketing. *Id.* There are no such factual allegations of any telemarketing contract – or any formal relationship – between the promoters and Defendant present here.

In sum, TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal. *See Moore v. CHW Group*, 2019 WL 3216029, at *2 (N.D. Ill., Jul. 17, 2019) ("repeating an element of the cause of action without additional factual allegations is not sufficient to state a claim under the TCPA."). In its current iteration,

Woodard's Complaint contains no factual allegations of liability which are distinguishable from the language of the TCPA. Hence, the Court must speculate, rather than reasonably infer, that HIA (or any party for that matter) called more than once – a requisite element to successfully state a claim under 47 U.S.C. § 227(c). The speculation required of the Court is only heightened in light of the fact that "spoofing" is on the rise, where scammers attempt to obtain sensitive information by deliberately falsifying the information sent to a caller's ID to disguise their identity. *Caller ID Spoofing*, FEDERAL COMMUNICATIONS COMMISSION, Mar. 7, 2022, *https://www.fcc.gov/spoofing* (last accessed 2/25/2024); *Brownlee v. Allstate Ins. Co.*, 2021 WL 4306160, at *2 (N.D. Ill., Sept. 22, 2021) ("Further, spoofing is not unique; it is entirely possible that another car insurance company similarly engaged in spoofing to contact the plaintiff. Plaintiff's complaint does not allow the Court to reasonably infer that defendant is liable for each call."). The Court is not authorized to speculate as such, so Woodard's TCPA count is dismissed. *Elaihor*, 2023 WL 3947617, at *2.

**\*4** But Woodard's Complaint remains salvageable. The Court has attempted to provide a roadmap of the information required to cure it, should Woodard choose to file an Amended Complaint.

\*\*\*

The Court holds that Woodard failed to state a claim under TCPA. When a federal district court dismisses federal law claims that originated in federal court such that only the state law claims remain, the usual practice is to relinquish supplemental jurisdiction by dismissing the state law claims without prejudice. *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 428 (2010); *see also Fields v. Wharrie*, 672 F.3d 505, 518–19 (7th Cir. 2012). Thus, the Court also relinquishes its supplemental jurisdiction over Count I of Woodard's Complaint under the Florida's FTSA. Defendant's Motion to Strike is denied because the Court's holding renders disputes about Plaintiff's purported class both not ripe and moot.

### IV. CONCLUSION

For the reasons stated herein, the Court GRANTS Defendant's Motion to Dismiss [10] and DENIES Defendant's Motion to Strike [9].

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 942629

---

**End of Document**                                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 226 of 233

Worsham v. Travel Options, Inc., Not Reported in Fed. Supp. (2016)

2016 WL 4592373

🚩 KeyCite Yellow Flag

Disagreed With by Dobronski v. Selectquote Insurance Services, E.D.Mich., March 25, 2025

2016 WL 4592373
Only the Westlaw citation is currently available.
United States District Court, D. Maryland.

Michael C. WORSHAM, Plaintiff

v.

TRAVEL OPTIONS, INC., et al., Defendants.

CIVIL NO. JKB-14-2749
|
Signed September 1, 2016
|
Filed 09/02/2016

**Attorneys and Law Firms**

Michael C. Worsham, Forest Hill, MD, pro se.

**MEMORANDUM**

James K. Bredar, United States District Judge

**\*1** Plaintiff Michael C. Worsham filed this lawsuit against Travel Options, Inc., and Clifford Shannon, alleging violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), codified at 47 U.S.C. § 227, and the Maryland Telephone Consumer Protection Act ("MTCPA"), codified at Md. Code Ann., Com. Law §§ 14-3201 and 14-3202 (LexisNexis 2013). (Compl., ECF No. 1.) He asked for total damages of $64,000 and injunctive relief. Service was made on the two Defendants (ECF No. 6), but neither one appeared or filed an answer. At Worsham's request, the Clerk entered defaults against both Defendants. (ECF Nos. 9, 10.) Now pending before the Court is Worsham's motion for default judgment. (ECF Nos. 18, 19.) In his motion, Worsham asks for total statutory damages of $18,000 ($8,000 under the TCPA and $10,000 under the MTCPA) to be awarded jointly and severally against both Defendants and for injunctive relief. [1] As will be explained below, default judgment will be entered against Travel Options, Inc., only; judgment will be entered for Defendant Shannon.

*I. Standard for Default Judgment*

The Supreme Court has opined that a default judgment may be lawfully entered only "according to what is proper to be decreed upon the statements of the bill, assumed to be true." Thomson v. Wooster, 114 U.S. 104, 113 (1884). " 'The defendant, by his default, admits the plaintiff's well pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established....The defendant is not held...to admit conclusions of law.' " Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). It is the court's task, therefore, to "determine whether the well-pleaded allegations in [plaintiff's] complaint support the relief sought...." Ryan, 253 F.3d at 780. Mere default "does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." Nishimatsu, 515 F.2d at 1206; see also DirecTV, Inc. v. Pernites, 200 Fed.Appx. 257, 258 (4th Cir. 2006) (per curiam).

The Court surmises that "well-pleaded allegations of fact" sufficient to support a default judgment are equal in quality and character to those factual allegations sufficient for a complaint to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Compare Ryan, 253 F.3d at 780 ("well-pleaded allegations" in complaint must support relief sought), with Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Under Rule 8(a)(2), a plaintiff must "show" he is entitled to relief, and that "requires more than labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). See also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The principle that a court must accept as true all of the complaint's allegations only applies to factual allegations; legal conclusions couched as factual allegations need not be accepted as binding. Iqbal, 556 U.S. at 678. Further, a court need not accept "unwarranted inferences, unreasonable conclusions, or arguments." United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014).

*II. Allegations of the Complaint*

**\*2** Worsham alleges he resides in Harford County, Maryland, and that he "has continuously subscribed to and used his phone number 410-557-6192, which has been on

Worsham v. Travel Options, Inc., Not Reported in Fed. Supp. (2016)

2016 WL 4592373

the National Do Not Call list over 8 years since July 15, 2006, and is a Verizon Wireless cell phone number." (Compl. ¶ 1.) The two Defendants are Travel Options, Inc., which "is a Florida for-profit corporation incorporated in October 2010 with an address" in Boca Raton, Florida, and Clifford Shannon, described by Worsham as "an individual who lives in Florida, and who has been President and registered agent for Travel Options, Inc. at all times relevant to this suit." (*Id.* ¶¶ 2, 3.)

Through the use of "Caller ID," Worsham identified four calls to his number from the same Florida number, 954-656-4091, which were made July 16-18, 2014. (*Id.* ¶ 9.) During the first three calls, no message was left. (*Id.* ¶ 10.) It is reasonable to infer that the first three calls went to an answering machine or to voicemail in Worsham's home, although he does not so state, and that the caller hung up without leaving a message. Worsham says he answered the fourth call and spoke with a man who said he was Jim Allison with Travel Options. (*Id.* ¶ 11.) Allison allegedly told Worsham that he had an unused travel credit of $750 from attending a timeshare presentation in either Florida or Las Vegas in the preceding two to four years, and then Allison offered to sell a travel package to Worsham that would incorporate the unused travel credit. (*Id.*) Allison indicated the travel package had a Florida part, a Las Vegas part, and a cruise, all of which was worth over $4,000, but Worsham's cost after applying the credit would only be $697 if he agreed to participate in a ninety-minute timeshare presentation. (*Id.*) Allison further indicated the travel package was essentially a tax write-off for the timeshare companies "and a way to keep rooms occupied that would otherwise be empty." (*Id.*) Worsham did not attend a timeshare presentation anywhere in the two to four years preceding the telephone conversation. (*Id.* ¶ 13.) Additionally, Worsham has no business relationship of any kind with Defendant, its affiliates, agents, contractors, or partners, and he never gave any prior permission for any of them to call him. (*Id.* ¶ 24.)

Worsham makes many other allegations, but these amount to his conclusions with no supporting factual basis. For example, he alleges Shannon exercised decision-making control over Travel Options's policies, procedures, and business practices and, as well, Shannon made the decisions causing the calls and violations. (*Id.* ¶ 16.) He also alleges the name of the telemarketer is available for transmission via Caller ID by Defendants' carrier. (*Id.* ¶¶ 22, 23.) In addition, Worsham alleges Travel Options has no policy or procedures pertaining to the Do Not Call ("DNC") registry, as required by the TCPA

and by rules promulgated by the Federal Communications Commission ("FCC"). (*Id.* ¶ 27.) Also, Worsham alleges "Defendants' calls used an '*automatic telephone dialing system*' (ATDS) as defined by 47 U.S.C. § 227(a)(1) and 47 C.F.R. § 64.1200(f)(2)." (*Id.* ¶ 29.) He further alleges, "Defendants are all aware and know about, and approve of, the telemarketing calling patterns and practices used in their calling centers and/or used by of [*sic*] their agents or contractors" (*id.* ¶ 38), "Defendants all ratified the acts and conduct of all person [*sic*] involve [*sic*] in the Scam..." (*id.* ¶ 40), and "Defendants failed to pay the annual fee for access to telephone numbers within Plaintiff's area code 410 that are included on the National DNC list registry maintained by the FTC" (*id.* ¶ 44). None of these additional allegations rests on facts logically within the knowledge of Worsham, and he provides no supporting factual allegations for them.

**\*3** Worsham's complaint includes twenty-four counts based on alleged violations of the TCPA, FCC rules, Federal Trade Commission ("FTC") rules, and the MTCPA:

- Count 1: Each call violated the TCPA's and FCC's prohibition on initiating calls to a telephone number on the DNC list.

- Count 2: Each call violated the TCPA's and FCC's prohibition on initiating any telephone call using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service.

- Count 3: Each call violated the TCPA's and FCC's requirement to identify the caller, the person or entity on behalf of whom the call is made, and a telephone number or address at which the person or entity may be contacted.

- Count 4: Each call violated the TCPA's and FCC's requirement to transmit caller identification and to include the calling number and the name of the telemarketer if the name is available by the telemarketer's carrier.

- Count 5: The TCPA and/or FCC rule violation in Count 1 violated the MTCPA.

- Count 6: The TCPA and/or FCC rule violation in Count 2 violated the MTCPA.

- Count 7: The TCPA and/or FCC rule violation in Count 3 violated the MTCPA.

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 228 of 233
Worsham v. Travel Options, Inc., Not Reported in Fed. Supp. (2016)
2016 WL 4592373

• Count 8: The TCPA and/or FCC rule violation in Count 4 violated the MTCPA.

• Counts 9 through 12: The four calls violated the FTC's Telemarketing Sales Rule and, therefore, also violate the MTCPA.

• Counts 13 through 16: The four calls violated the FTC regulation mandating that a telemarketer pay an annual fee for access to telephone numbers on the DNC list and, therefore, violated the MTCPA.

• Counts 17 through 20: The four calls violated the FTC regulation requiring that a telemarketer disclose the seller's identity, the call's purpose to sell goods or services, and the nature of the goods or services and, therefore, violated the MTCPA.

• Counts 21 through 24: The four calls violated the FTC regulation prohibiting a failure to transmit or cause to transmit the telephone number and, when made available by the telemarketer's carrier, the telemarketer's name to any caller identification service used by the call's recipient and, therefore, violated the MTCPA.

## III. Applicable Law

The TCPA was passed in response to numerous complaints from both consumers and businesses about telemarketing calls, *i.e.*, telephone calls to market goods and services. Pub. L. 102-243, § 2. The Act is codified in section 227, Title 47, United States Code. The TCPA "was enacted to protect consumer privacy interests" and "seeks primarily to protect subscribers from unrestricted commercial telemarketing calls." Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 Fed. Reg. 44,144, 44,150, 44,165 (July 25, 2003). Relevant to the instant case, subsection *b* prohibits unconsented-to, nonemergency calls using any automatic telephone dialing system or an artificial or prerecorded voice to certain telephone lines, including any telephone number assigned to a cellular service; subsection *c* directed the FCC to promulgate regulations aimed at establishment and operation of a national database of telephone numbers of residential subscribers who object to receiving telephone solicitations and, further, permitted the FCC to prohibit telephone solicitations to any number in the database; and subsection *d* makes it unlawful, *inter alia*, for anyone to make a telephone call using an automatic telephone dialing system that does not comply with the technical and procedural standards prescribed by the FCC.

**\*4** The TCPA permits a person to institute a private action based on a violation of subsection *b* and the regulations prescribed under that subsection "to enjoin such violation [and/or] ...to receive $500 in damages for each such violation," § 227(b)(3); as well, subsection *c* grants a right of private action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [subsection *c*]...to enjoin such violation [and/or]...to receive up to $500 in damages for each such violation," § 227(c)(5). No private right of action is granted under any other subsection of § 227.

The FCC is charged with the responsibility of prescribing regulations to implement the requirements of the TCPA's various subsections and, accordingly, has promulgated regulations codified at 47 C.F.R. § 64.1200. The FCC has addressed the specific concerns expressed in subsection *b* within § 64.1200(a), and it has addressed those expressed in subsection *c* within § 64.1200(c). What the FCC has prescribed in § 64.1200(b) implements subsection *d* of the TCPA, which mandates regulations for technical and procedural standards for telephone calls initiated by an automatic telephone dialing system or calls using an artificial or prerecorded voice system; likewise, the requirements of § 64.1200(d) set forth the procedural standards for telemarketers to maintain their own, company-specific, do-not-call lists and, consequently, appear to fall under the aegis of subsection *d* of the TCPA.

The regulations published by the FCC as §§ 64.1600 through 64.1605, referred to in Worsham's motion for default judgment, p. 10, are mostly in furtherance of the FCC's duty to regulate services of telephone carriers, in particular, "to establish federal policies and rules governing calling number identification service (caller ID) on an interstate basis" made necessary by new telephone switching technology that "has fostered new telephone services for both business and residential use." Calling Number Identification, 56 Fed. Reg. 57,300 (Nov. 8, 1991). *See also* Calling Number Identification, 59 Fed. Reg. 18,318 (Apr. 18, 1994) (publishing final rule pertaining to Caller ID services; noting addition of new Subpart P to Part 64 of Title 47, Code of Federal Regulations). In recognition of the role played by Caller ID in helping consumers avoid unwanted calls, and in conjunction with other amendments to its TCPA regulations in § 64.1200 *et seq.*, the FCC specifically amended this set of regulations in 2003 by adding §

Worsham v. Travel Options, Inc., Not Reported in Fed. Supp. (2016)

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 229 of 233

2016 WL 4592373

64.1601(e), which requires telemarketers to transmit caller identification information, including either calling party number ("CPN") or automatic number identification of the calling party's billing number ("ANI") and, when available by the telemarketer's carrier, the telemarketer's name; this regulation also prohibited telemarketers from blocking the transmission of caller identification information. Rules and Regulations Implementing...(TCPA), 68 Fed. Reg. at 44,179. However, it is not clear whether § 64.1601(e) is promulgated under either subsection *b* or subsection *c* of the TCPA. Caller ID technology does not fit neatly into the focus of either subsection, neither of which requires the use of such technology to accomplish their respective purposes. Thus, it is also not clear whether a violation of § 64.1601(e) falls within the private right of action granted by subsection *b* or subsection *c*. It seems just as likely that the FCC may have only intended to ensure consistency between its preexisting Caller ID regulations and its revised TCPA regulations and/or the FTC's regulations pertaining to telemarketing when the FCC promulgated § 64.1601(e); those efforts all occurred at the same time, in 2003. Additionally, the FCC said, "Caller ID requirements will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers." 68 Fed. Reg. at 44,156. Therefore, the FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection *c*, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim.

**\*5** The FTC has enacted its Telemarketing Sales Rule ("TSR") in Title 16, Part 310, of the Code of Federal Regulations pursuant to its responsibilities mandated in 15 U.S.C. § 6102. Telemarketing Sales Rule, 68 Fed. Reg. 4580 (Jan. 29, 2003). Worsham's complaint relies upon § 310.4(a)(8), § 310.4(b)(1)(iii)(B), § 310.4(d)(1),[2] and § 310.8a. Section 310.4(a)(8) prohibits abusive conduct in telemarketing by the caller's "[f]ailing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call."[3] Section 310.4(b)(1)(iii)(B) prohibits initiation of a telemarketing call to a person when that person's telephone number is on the DNC list. Section 310.4(d)(1) prohibits a telemarketer's failure "to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call...[t]he identity of the seller." Last, § 310.8(a) prohibits any seller from initiating or causing a telemarketer to initiate a call "to any person whose telephone number is within a given area code" unless the

seller, directly or indirectly, "first has paid the annual fee" for access to numbers within that area code that are included in the DNC list.

Under the MTCPA, a violation of either the Telemarketing and Consumer Fraud and Abuse Prevention Act, as implemented by the FTC's Telemarketing Sales Rule, or the TCPA, as implemented by 47 U.S.C. § 64.1200, is also considered an unfair or deceptive trade practice under Maryland statutory law. Md. Code Ann., Com. Law § 14-3202(a). However, only a violation of the TCPA that is subject to a private right of action, *i.e.*, one arising under either 47 U.S.C. § 227(b) or (c), is actionable under the MTCPA. *Worsham v. Ehrlich*, 957 A.2d 161, 171-72 (Md. Ct. Spec. App. 2008). *See also Worsham v. Accts. Receivable Mgmt., Inc.*, 497 Fed.Appx. 274, 278 (4th Cir. 2012) (*per curiam*) (agreeing with holding in *Worsham v. Ehrlich* that violation of 47 C.F.R. § 64.1200(b) did not state claim under MTCPA).

## *IV. Analysis*

Preliminarily, the Court addresses the issue of vicarious liability, which seems to be the basis for Worsham's suit against Clifford Shannon, the president and registered agent of Defendant Travel Options. The FCC has ruled that vicarious liability for TCPA violations may exist under federal common-law principles of agency. *In re DISH Network, LLC*, 28 FCC Rcd. 6574 (2013). *See also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016) (finding "no cause to question" FCC's ruling on vicarious liability under TCPA). However, "in the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents." *Meyer v. Holley*, 537 U.S. 280, 286 (2003) (applying trust principle of vicarious liability to violation of Fair Housing Act). Under general rules of agency law, a corporate officer or director's personal liability "must be 'founded upon specific acts by the individual director or officer.' " *Roylance v. ALG Real Estate Servs., Inc.*, Case No. 5:14-cv-02445-PSG, 2015 U.S. Dist. LEXIS 44930, at \*19, 2015 WL 1522244 (N.D. Cal. Mar. 16, 2015) (citation omitted), *report and recommendation modified in part on other grounds and adopted as modified by* 2015 U.S. Dist. LEXIS 44933, 2015 WL 1544229 (N.D. Cal. Apr. 3, 2015). Thus, " 'courts have declined to find personal liability [when] there has been little evidence of the corporate officer's direct participation in the wrongdoing.' " *Id.* (alteration in original) (citation omitted) (declining to recommend the entry of default judgment against corporate officer under TCPA because

Case 1:25-cv-00927-KMN    Document 14-1    Filed 07/18/25    Page 230 of 233

Worsham v. Travel Options, Inc., Not Reported in Fed. Supp. (2016)

2016 WL 4592373

of inadequate factual allegations). Worsham's complaint makes "naked assertion[s]," *see Twombly*, 550 U.S. at 557, regarding Shannon, but those conclusions, couched as factual allegations, are insufficient to nudge the complaint against Shannon "across the line from conceivable to plausible," *id.* at 570. Consequently, the Court will enter judgment for Shannon.

### A. Count 1

**\*6** In § 64.1200(c), the FCC prohibited the initiation of any telephone solicitation to a residential telephone subscriber who has registered his telephone number on the national DNC registry. Further, in § 64.1200(e), the FCC applied the prohibition in § 64.1200(c) to wireless telephone numbers. As earlier noted, Worsham has alleged that his cellular telephone number has been listed on the DNC registry since 2006, well before the four calls from Travel Options in 2014. In addition, Worsham has made factual allegations regarding the content of the fourth call that clearly lead to the conclusion that the calls were made for telemarketing purposes. Those allegations are sufficient to establish Worsham's entitlement to statutory damages under the TCPA of $500 per call. *See Dores v. One Main Financial*, Civ. No. 1:15-cv-1609-LO-MSN, 2016 U.S. Dist. LEXIS 81913, at \*5, 2016 WL 3511744 (E.D. Va. June 1, 2016) (agreeing with courts holding "that each call made in contravention of the TCPA constitutes an independent violation entitling the plaintiff to statutory damages"), *report and recommendation adopted by* 2016 U.S. Dist. LEXIS 81348, 2016 WL 3538370 (E.D. Va. June 21, 2016).

### B. Count 2

As it pertains to Worsham's case, the TCPA, in 47 U.S.C. § 227(b)(1)(A)(iii), prohibits any person from making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system...to any telephone number assigned to a...cellular telephone service." Thus, the elements of this TCPA violation, as alleged in Count 2, are (1) a call (other than one made for emergency purposes or made with the called party's prior express consent), (2) using any automatic telephone dialing system, and (3) to any telephone number assigned to a cellular telephone service.

Worsham's complaint suffices as to the first and third elements; he has provided sufficient factual basis as to the four telephone calls (the first element) and as to his telephone number being assigned to a cellular telephone

service (the third element). However, he has not provided "well pleaded factual allegations" as to the second element. He has, instead, made bare, conclusory allegations: the calls were made "using an automatic telephone dialing system (ATDS)" (Compl. ¶ 5); "Defendants used an ATDS to call Plaintiff's number, using a predictive dialer" (*id.* ¶ 6); "Defendants initiated and conspired to initiate at least 4 telephone solicitation calls using an automatic telephone dialing system (ATDS)" (*id.* ¶ 9); and Defendants' calls used an '*automatic telephone dialing system*' (ATDS) as defined by 47 U.S.C. § 227(a)(1) and 47 C.F.R. § 64.1200(f)(2)" (*id.* ¶ 29). These allegations are nothing more than "a formulaic recitation" of the second element of his cause of action in Count 2. "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 686. *See also Dominguez v. Yahoo, Inc.*, 629 Fed.Appx. 369, 373 (3d Cir. 2015) (unpublished) (finding assertion in affidavit that merely restated TCPA's statutory definition of automatic telephone dialing system "nothing more than a legal conclusion couched as a factual assertion"); *Williams v. T-Mobile USA, Inc.*, Case No. 15-cv-03384-JSW, 2015 U.S. Dist. LEXIS 140077, at \*4-5, 2015 WL 5962270 (N.D. Cal. Oct. 14, 2015) (plaintiff's allegations as to ATDS "no more than legal conclusions couched as fact"). As a result, Worsham has failed to show an entitlement to relief in Count 2. [4]

### C. Count 3

**\*7** Worsham alleges in Count 3 that the four calls violated 47 C.F.R. § 64.1200(d)(4), which requires a telemarketer "to provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." As the Court earlier observed, § 64.1200(d)(4) is more appropriately viewed as setting procedural standards and, therefore, within the realm of the TCPA's subsection *d*, for which no private right of action exists. The Court has considered the analysis on this point in the case of *Burdge v. Assn. Health Care Mgmt., Inc.*, No. 1:10-CV-00100, 2011 U.S. Dist. LEXIS 9879, at \*7-10, 2011 WL 379159 (S.D. Ohio Feb. 2, 2011), and has found it persuasive; thus, the Court concludes Worsham does not possess a private right of action as to an alleged violation of 47 C.F.R. § 64.1200(d)(4). *See also Nat'l Fed'n of the Blind v. FTC*, 303 F. Supp. 2d 707, 718 (D. Md. 2004) (noting § 64.1200(d)(4) included in TCPA rules by FCC to ensure that commercial entities, including those outside FTC's jurisdiction, are similarly regulated as to provisions

Case 1:25-cv-00927-KMN     Document 14-1     Filed 07/18/25     Page 231 of 233

Worsham v. Travel Options, Inc., Not Reported in Fed. Supp. (2016)

2016 WL 4592373

included in FTC's Telemarketing Sales Rule), *aff'd,* 420 F.3d 331 (4th Cir. 2005). *But see Charvat v. NMP, LLC,* 656 F.3d 440, 448 (6th Cir. 2011) (indicating, without analysis, that TCPA's subsection *c* was implemented in 47 C.F.R. § 64.1200(d)); *Drew v. Lexington Consumer Advocacy, LLC,* Case No. 16-cv-00200-LB, 2016 U.S. Dist. LEXIS 52385, at *16, 2016 WL 1559717 (N.D. Cal. Apr. 18, 2016) (same). Consequently, Count 3 fails to state a claim for relief.

### D. Count 4

Worsham's next count asserts a violation of the TCPA by a violation of 47 C.F.R. § 64.1601(e)(1), based on a failure to transmit certain information via Caller ID. He additionally says the conduct of Travel Options violates the FTC's similar provision at 16 C.F.R. § 310(a)(7). A violation of the latter provision, of course, would not be considered a violation of the TCPA. Any cognizable violation of § 310(a)(7) would only be remediable, in this case, under the MTCPA; Worsham has made no claim under federal law on this point. The MTCPA counts are pled later in the complaint.

As previously concluded, an asserted violation of 47 C.F.R. § 64.1601(e)(1) is not properly brought under either the TCPA's subsection *b* or subsection *c.* Any violation of § 64.1601(e)(1) is a violation of technical and procedural standards under subsection *d,* and as earlier noted, no private right of action exists under the latter subsection of the TCPA. Count 4, consequently, fails to state a claim for relief.

### E. Count 5

In the next count, Worsham claims the violation of the TCPA in Count 1 is also a violation of the MTCPA. The conduct at issue, making four calls to a telephone number on the DNC list, constitutes four, separate violations of the TCPA's subsection *b* and, therefore, constitutes four, separate violations of the MTCPA. As a result, Worsham has established his entitlement to $500 per call in statutory damages. Md. Code Ann., Com. L. § 14-3202(b)(2)(i), (c).

### F. Count 6

In this count, Worsham seeks MTCPA damages based on the violation of 47 U.S.C. § 227(b)(1)(A)(iii), as asserted in Count 1, for using an automatic telephone dialing system to make the four calls. Having previously found that Worsham has failed to provide well-pleaded allegations of fact in support of Count 1, the Court concludes Count 6 fails to state a claim for relief.

### G. Count 7

Next, Worsham seeks statutory MTCPA damages for the conduct on which Count 3 was based, that is, a violation of 47 C.F.R. § 64.1200(d)(4). The Court previously determined that Count 3 failed to state a claim for relief. For the same reason, Count 7 fails to state a claim for relief.

### H. Count 8

This count under the MTCPA is premised upon the conduct alleged in Count 4 to have been in violation of 47 C.F.R. § 64.1601(e)(1). Because Count 4 was found deficient for the reason that a violation of that regulation may not be asserted in a private right of action, Count 8 is similarly deficient. An additional reason for denying relief on this count is that § 64.1601(e) is in Subpart P of Part 64, and the MTCPA only permits statutory damages for actions claiming violations of Subpart L of Part 64. Md. Code Ann., Com. L. § 14-3201(2).

### I. Count 9 through Count 12

**\*8** Worsham has pleaded each of the four calls in separate counts as violations of the FTC's TSR rule prohibiting initiation of a telephone call to a person whose telephone number is on the DNC registry. He seeks statutory damages under the MTCPA for each call. His complaint adequately sets forth a claim for relief in these four counts, and Worsham will be awarded $500 per count.

### J. Count 13 through Count 16

These four counts, seeking damages under the MTCPA, are based upon each of the four calls allegedly violating 16 C.F.R. § 310.8(a), prohibiting a telemarketing call to anyone within a given area code unless the seller has first paid the annual fee for access to the DNC list for that area code. Worsham's allegation that Travel Options did not pay the required annual fee is a bald conclusion with no supporting, well-pleaded factual allegations. Counts 13 through 16 fail to state a claim for relief.

### K. Count 17 through Count 20

Each of these four counts asking for MTCPA statutory damages is premised upon an alleged failure to comply with 16 C.F.R. § 310.4(d)(1), which requires a telemarketer to "disclose truthfully, promptly, and in a clear and conspicuous manner" to the called party three things: the seller's identity; that the call's purpose is to sell goods or services; and the

Worsham v. Travel Options, Inc., Not Reported in Fed. Supp. (2016)

2016 WL 4592373

nature of the goods or services. Worsham asserts that each of the four calls violated this regulation—the first three because the caller left no message at all (the Court presumes these calls went to an answering machine or to voicemail) and the fourth for reasons Worsham does not adequately allege. With regard to the first three calls, the FTC has stated that "telemarketers are not required to leave a recorded message on the answering machines of consumers who are not home to answer the telemarketer's call." Telemarketing Sales Rule, 68 Fed. Reg. at 4645. *See also* Rules and Regulations Implementing...(TCPA), 68 Fed. Reg. at 44,164 (FCC stating, "Calls that reach voicemail or an answering machine will not be considered 'answered' by the called party."). With that guidance from the relevant agencies, the Court concludes that the caller was not required to leave any message on Worsham's answering machine or voicemail for the first three calls and, therefore, not in violation of § 310.4(d)(1). As to the fourth call, Worsham alleged the caller identified himself as Jim Allison with Travel Options and then tried to sell a travel package to Worsham. The caller thus complied with § 310.4(d)(1). Worsham has failed to show he is entitled to relief in Counts 17 through 20.

### L. Count 21 through Count 24

Worsham's last four counts, also brought under the MTCPA, allege the four calls violated 16 C.F.R. § 310.4(a)(8) by failing to transmit to Worsham's Caller ID the caller's telephone number "and, when made available by the telemarketer's carrier, the name of the telemarketer." Certainly, Worsham has brought this case because his Caller ID *did* capture the caller's number on each of the four calls; so, the asserted violation based on a failure to transmit the caller's number clearly fails. As to the telemarketer's name, "when made available by the telemarketer's carrier," Worsham has made another bald allegation that the carrier for Travel Options made the caller's name available for Caller ID. Having failed to support Counts 21 through 24 with well-pleaded facts, Worsham's complaint fails to support his claimed entitlement to relief in those counts.

### M. Injunctive Relief

*9 In his complaint's prayer for relief, Worsham requests "an injunction prohibiting the Defendants or any person under their control from calling or assisting with calling any persons in Maryland in violation of the TCPA or FCC regulations." Both subsections *b* and *c* of the TCPA permit the award of injunctive relief "to enjoin such violation" of either subsection *b* or the regulations prescribed under subsection *b* or the regulations prescribed under subsection *c*. Because the authority for awarding injunctive relief in this case is statutory rather than common law, Worsham "need not plead and prove irreparable injury." *Envtl. Def. Fund, Inc. v. Lamphier*, 714 F.2d 331, 338 (4th Cir. 1983) (applying general rule to violations of 42 U.S.C. § 6901 *et seq.*).

The only "such violation[s]" of the TCPA established by Worsham's complaint are those pertaining to the four calls made to Worsham's number on the DNC list. So, injunctive relief will be awarded against Travel Options to bar any future violations of 47 C.F.R. § 64.1200(c) by it or anyone acting at its behest as to Worsham's numbers on the DNC list. Worsham's request for injunctive relief is aimed at calls by Travel Options to "any persons in Maryland." He has not, however, established an entitlement to serve in a representative capacity for "any persons in Maryland." Thus, the award will only be in regard to telephone numbers placed on the DNC list by Worsham.

### V. Conclusion

Worsham has established his entitlement to $6,000 in statutory damages, broken down as follows: $2,000 ($500 x 4 calls) for Count 1; $2,000 ($500 x 4 calls) for Count 5; and $2,000 ($500 per count) for Counts 9 through 12. A separate order will be entered awarding damages and injunctive relief and closing the case.

DATED this 1 $^{st}$ day of September, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4592373

---

**Footnotes**

2016 WL 4592373

1    In his motion, Worsham only pursues the statutory compensatory damages and does not seek the enhanced statutory damages for willful or knowing violation of the TCPA or FCC regulations.

2    Incorrectly cited as § 16.310.5(d)(1) in the complaint.

3    The Court notes the similarity between this part of the TSR and the FCC's rule in 47 C.F.R. § 64.1601(e), *see supra.*

4    One district court ruled the kind of allegations at issue here, which were made in that case "on information and belief," to be sufficient under Rule 8(a)(2). *Jackson v. Caribbean Cruise Line, Inc.,* 88 F. Supp. 3d 129, 139-40 (E.D.N.Y. 2015). The Court observes that the allegations made in *Twombly* "upon information and belief," which were comparable in alleging the elements of a cause of action, were judged by the Supreme Court to be insufficient under Rule 8(a)(2). 550 U.S. at 551, 564-65. Although "upon information and belief" may still be a legitimate form of pleading, it seems clear after *Twombly* that stating mere conclusions upon information and belief does not pass muster.

---

**End of Document**                                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.