IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VIASAT, INC.,<br><br>Defendant. | Civil Action No. 1:25-cv-00927-KMN<br>(Hon. Keli M. Neary) |

## JOINT CASE MANAGEMENT PLAN

    Plaintiff Asher Bronstin ("Plaintiff") and Defendant Viasat, Inc. ("Defendant" or "Viasat") (collectively, the "Parties"), by and through their respective undersigned counsel, respectfully submit this Joint Case Management Plan.

**1.   Principal Issues**

    **1.1   Separately for each party, please give a statement summarizing this case:**

        **By plaintiff(s):**

Plaintiff contends that the Defendant, Viasat, Inc., placed at least two calls to his cell phone on the National Do Not Call Registry, using spoofed or inaccurate caller ID information, in violation of multiple provisions of the TCPA. Plaintiff denies that he called Viasat and further confirms that the call lasted twenty five minutes and twenty three seconds, as confirmed by the Plaintiff's very own telephone records, from his *phone company*, which confirm that the subject call on which he attempted to purchase Viasat's services, was an *inbound* call, that is, a call that was placed to the Plaintiff, not the other way around. Defendant's contention that the call was just 23-minute long and placed to Viasat is belied by the Plaintiff's own

1

telephone records from a telephone company. Plaintiff notes that the Defendant's apparent ability to "spoof" caller IDs to appear to come from bogus telephone numbers is further probative of the fact that the Defendant has submitted altered or forged telephone records in support of its motion to dismiss. Moreover, during the subject call (which the Plaintiff received from Viasat), the Plaintiff was attempted to be sold Viasat's internet services, as confirmed by the email and attempted credit card charge that he subsequently received, as reproduced in the Complaint. For that matter, the Plaintiff's telephone records do not and will not show that any call, supposedly to Viasat's toll free telephone number, was placed by the Plaintiff, let alone at the time alleged. Based on the foregoing conduct, the Plaintiff pleads two classes:

National DNC Class: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase of Viasat's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

Telemarketing Caller ID Class: All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) without the transmission of caller identification information that included either CPN or ANI and the Defendant or telemarketer's name, (4) within the four years prior to the filing of the Complaint.

      **By defendant(s):**

For the reasons stated in Defendant's pending Motion to Dismiss (*see* Dkt. 11) and accompanying brief and other supporting documents (*see* Dkts. 11-1 and 11-2), and for other reasons, Defendant disputes all of Plaintiff's allegations in this matter, contends that Plaintiff's claims are without merit (both legally and factually), contends that Plaintiff's Complaint is fatally and factually deficient, and denies that it violated the TCPA or any laws. Defendant further disputes that the summary provided by Plaintiff above, and the allegations therein, and states that the foregoing summary is not accurate recitation of the facts in this case. Defendant also disputes whether Plaintiff has Article III standing to bring his claims, or if this case is appropriate for or capable of class treatment under Rule 23. In particular, neither Viasat nor any third party acting on its behalf called

Plaintiff. Viasat does not have a telemarketing program, does not place outbound telemarketing calls, and contractually prohibits third Parties from making telemarketing calls on its behalf. The evidence will show that Plaintiff placed an inbound call, expressed interest in Viasat's internet services, and then voluntarily purchased those services.

**1.2    The facts the Parties <u>dispute</u> are as follows:**

All of the facts stated above and the allegations in the Complaint are in dispute. Primarily, the Parties dispute whether Defendant or any third party acting on its behalf called Plaintiff, whether there was an inbound or outbound call and who placed said call or calls, or whether Viasat "spoofed" any Caller ID information.

**The facts the Parties <u>agree</u> upon are as follows:**

None.

**1.3    The legal issues the Parties <u>dispute</u> are as follows:**

- Whether Defendant is directly or vicariously liable under the TCPA for the alleged calls.
- Whether Plaintiff has Article III standing to bring his asserted TCPA claims or to seek injunctive relief.
- Whether Plaintiff received more than one "telephone solicitation" within the meaning of the TCPA in a 12-month period by or on behalf of Defendant.
- Whether Plaintiff qualifies as a "residential telephone subscriber" within the meaning of the TCPA.
- Whether the TCPA's Caller ID regulations (47 C.F.R. § 64.1601(e)) afford litigants a private cause of action.
- Whether this case is capable of or appropriate for class treatment under Fed. R. Civ. P. 23
- Whether any violation was "willful" or "knowing" for treble damages purposes

**The legal issues the Parties <u>agree</u> upon are as follows:**

None.

**1.4  Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:**

For the reasons stated above and in its Motion to Dismiss and accompanying documents Defendant disputes whether the Court has federal subject matter jurisdiction to the extent that Plaintiff lacks Article III standing.  *See* Dkt. 11.  Though Defendant does not agree that personal jurisdiction or venue are proper, Defendant is not challenging those issues.

**1.5  Identify any named Parties that have not yet been served:**

None.

**1.6  Identify any additional Parties that:**

plaintiff(s) intends to join:

None at this time.

defendant(s) intends to join:

None at this time.

**1.7  Identify any additional claims that:**

plaintiff(s) intends to add:

None at this time.

defendant(s) intends to add:

None at this time.  Defendant reserves all rights.

**2.0    Disclosures**

**The undersigned counsel certify that they have made the initial disclosures required by Federal Rule of Civil Procedure 26(a)(1) or that they will do so within the time provided by that rule.**

The Parties have not yet exchanged Rule 26(a)(1) initial disclosures and will do so within the time provided under the Rule, which would be 14 days after the Parties' Rule 26(f) conference on July 18, 2024.

**2.1    Separately for each party, list by name and title/position each person whose identity has been disclosed.**

Disclosed by Plaintiff:

| Name | Title/Position |
|---|---|
| Asher Bronstin | Plaintiff |
| TMobile/Google Fi | Plaintiff's telephone carrier |
| IP Horizon/downstream carriers | Carrier for spoofed numbers |
| Various Employees of Defendant | Knowledge of calls. |

Disclosed by Defendant:

| Name | Title/Position |
|---|---|
| Asher Bronstin | Plaintiff |
| Gregory Henderson | Associate Director of Sales Performance |

**3.0    Early Motions**

**Identify any motion(s) whose early resolution would likely have a significant effect either on the scope of discovery or other aspects of the litigation:**

5

| Nature of Motion | Moving Party | Anticipated Filing Date |
|---|---|---|
| Motion to Dismiss | Defendant | On File |
| Motion for Class Certification | Plaintiff | 6/3/2026 |
| Motion for Summary Judgment | Defendant | See Section 6. |

**4.0   Discovery**

    **4.1   Briefly describe any discovery that has been completed or is in progress:**

    By plaintiff(s):

Plaintiff has served his initial discovery to the Defendant.

    By defendant(s):

Defendant has served its initial discovery requests to Plaintiff.

    **4.2   Describe any discovery that all Parties agree should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it (e.g., "plaintiff will depose Mr. Jones, defendant's controller, to learn what defendant's revenue recognition policies were and how they were applied to the kinds of contracts in this case"):**

The Parties disagree on how to conduct discovery (including parties and third party discovery). Defendant would like to bifurcate discovery on issues relevant to Plaintiff and his individual TCPA claims. Defendant does not agree to conduct class discovery at this time. Plaintiff responds that, if bifurcation is requested by the Defendant, Defendant should request the same in another motion. Otherwise, it is Plaintiff's contention that discovery is open for all purposes, including class claims.

    **4.3   Describe any discovery that one or more Parties want(s) to conduct but to which another party objects, indicating for each such discovery undertaking its purpose or what kinds of**

**information would be developed through it:**

The Parties do not agree on whether discovery should be bifurcated, such that discovery on Plaintiff's individual claims would proceed class discovery. See Section 6 below. Defendant intends to file a motion to bifurcate discovery in this regard, and requests that no schedule be set until after that motion is decided. Plaintiff intends to oppose said motion and desires to take classwide discovery, including as to the nature of classwide discovery. Plaintiff further believes that such bifurcation would be inappropriate because the Plaintiff's own telephone records, form a telephone company, belie the Defendant's motion to dismiss theory, which is a factual issue in any event inappropriate for resolution now.

    **4.4    Identify any <u>subject area limitations on discovery</u> that one or more Parties would like imposed, at the first stage of or throughout the litigation:**

See above and section 6 below with respect to bifurcated discovery.

    **4.5    For each of the following discovery tools, <u>recommend the per-party or per-side limitation</u> (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the Parties cannot agree, set forth separately the limits recommended by plaintiff(s) and by defendant(s)):**

    4.5.1 depositions (excluding experts) to be taken by:

        plaintiff(s): <u>7</u>    defendant(s):<u>10</u>

    4.5.2 interrogatories to be served by:

        plaintiff(s): <u>20</u>    defendant(s): <u>25</u>

    4.5.3  document production requests to be served by:

        plaintiff(s):<u>50</u>    defendant(s): <u>50</u>

    4.5.4  requests for admission to be served by:

        plaintiff(s):<u>75</u>        defendant(s):<u>  25</u>

**4.6**    **Discovery of Electronically Stored Information**

    9 Counsel certify that they have conferred about the matters addressed in M.D. Pa. LR 26.1 and that they are in agreement about how those matters will be addressed in discovery with the following exceptions:

*Plaintiff's statement:*

When Plaintiff's counsel asked the Defendant's Counsel, A. Paul Heeringa, if he had reviewed Local Rule 26.1, Mr. Heeringa indicated that he did. Plaintiff's counsel then inquired as to the computerized information-management systems used by the Defendant, particularly the system attached as an exhibit to the Declaration of Gregory Henderson submitted as part of the Defendant's motion to dismiss. Plaintiff's counsel noted that such information was necessary to be examined and disclosed, particularly insofar as the system screenshot contradicted the Plaintiff's own telephone records and those which are in the possession of his telephone carrier. Plaintiff's counsel also inquired as to the telephone systems and carriers used by the Defendant, particularly due to the spoofed nature of the telephone numbers at issue. Plaintiff's counsel also attempted to discuss the provisions in Local Rule 26.1(c)(1)-(6). In response, Mr. Heeringa responded that he did not have any clue as to any of the systems used by the Defendant, did not discuss the same with the Defendant, and stated that he is disclosing "Windows," and that's what Plaintiff's counsel can put down. Mr. Heeringa refused to tell counsel for Plaintiff how such telephone systems operated, how the information was stored or could be retrieved, and questioned the Plaintiff why he was taking so long to discuss the matter and stated that in other cases, his Rule 26(f) conferences last 5 minutes.

*Defendant's statement:*

Defendant submits the foregoing statement is inappropriate and completely inaccurate.  As Plaintiff's counsel was informed, as Defendant does not have a telemarketing program and did not call Plaintiff, there would be no telephone "systems" or "carriers" to disclose. Defendant has complied with LR 26.1.

8

**5.0    Protective Order**

    **5.1    If entry of a protective order is sought, attach to this statement a copy of the proposed order.  Include a statement justifying the propriety of such a protective order under existing Third Circuit precedent.**

The Parties anticipate that a standard Rule 26(c) protective order governing the confidentiality of documents and information produced in discovery in this case may be necessary. The Parties intend to confer in good faith about such an order, and will submit it for the Court's consideration.

    **5.2    If there is a dispute about whether a protective order should be entered, or about certain terms of the proposed order, briefly summarize each party's position below:**

See Section 6 below with respect to bifurcation.

**6.0    Scheduling**

The Parties have not agreed on a case schedule.

*Plaintiff's Scheduling Proposal:*

Plaintiff proposes the following dates:

    6.1    Final date for joining additional Parties:

        <u>12/22/2025</u>

    6.2    Final date for amending pleadings:

        <u>12/22/2025</u>

6.3 All fact discovery commenced in time to be completed by: 3/4/2026

6.4 All potentially dispositive motions should be filed by 6/3/2026

6.5 Reports from retained experts due:

from plaintiff(s) by 4/1/2026

from defendant(s) by 5/6/2026

6.6 Supplementations due 5/20/2026

6.7 All expert discovery commenced in time to be completed by 5/20/2026

6.8 This case may be appropriate for trial in approximately:

540 Days from the filing of the action in this court

6.9 Suggested Date for the final Pretrial Conference:

October 2026 (month/year)

6.10 Trial

6.10.1 Suggested Date for Trial:

November 2026 (month/year)

*Defendant's Scheduling Proposal:*

Defendant respectfully submits a phased/bifurcated discovery schedule—where the parties would focus for a short period on the merits of Plaintiff's individual TCPA claim before moving to class discovery (if at all)—would be more efficient for all.

Defendant contends that, as is reflected in its pending motion to dismiss, there are narrow case-dispositive issues unique to Plaintiff in this case (e.g., if Plaintiff

10

received any calls from Defendant, if Plaintiff has Article III standing, who physically made the subject call(s) for direct or vicarious liability purposes, if Plaintiff received a "telephone solicitation" or qualifies as a "residential" subscriber within the meaning of the TCPA, whether the subject phone number was properly registered on the National DNC Registry, or whether Plaintiff would be an adequate class representative) that can be efficiently resolved at the outset, which may obviate the need for class discovery. *See* Dkt. 11-1. Courts have often bifurcated discovery in TCPA class actions like this case for the sake of judicial and party economy for this reason. *See, e.g. Moore v. Demand Science Grp, LLC*, 2024 WL 175743, at *1 (N.D. Ill. Jan. 4, 2024) (bifurcating discovery in a similar putative TCPA class action involving the same counsel alleging violations of the he TCPA's "Do Not Call" provisions, with the initial phase to focus on the merits of Plaintiff's individual claim, holding: "The Court is concerned about wholly unnecessary discovery, so it grants the motion for bifurcation … because it is more efficient to proceed with the limited and targeted discovery as proposed by Defendant given that the overlap between the proposed initial discovery and merits discovery is minimal"); *Paul Sapan v. Fin. of Am. Reverse LLC*, 2025 WL 1932935, at *1 (C.D. Cal. July 14, 2025) (ruling similarly); *Harris v. Shore Funding Sols. Inc.*, 2023 WL 3440077, at *5 (E.D.N.Y. Apr. 21, 2023) (finding "good cause" in a TCPA case for "limited [bifurcated] discovery related to Plaintiff's individual claim" because "such discovery would not result in duplication of efforts or substantially overlap with class discovery" and would better serve the purposes of Fed. R. Civ. P. 1). As such, Defendant intends to file a formal motion to bifurcate discovery shortly, which will provide more detail on why bifurcation is appropriate here, and thus respectfully requests that the Court refrain from setting a discovery schedule at this time until the Court rules on said motion.

If the Court does not wish to confer formal briefing in this regard, Defendant respectfully offers the following additional legal authority for the Court's consideration: *Fania v. Kin Ins., Inc.*, 2024 WL 2607303, at *2 (E.D. Mich. May 24, 2024); *Pavelka v. Paul Moss Ins. Agency, LLC,* 2023 WL 3728199, at *2 (N.D. Ohio May 30, 2023); *Osidi v. Assurance IQ, LLC,* 2022 WL 623733, at *2 (D. Mass. Mar. 3, 2022); *Akselrod v. MarketPro Homebuyers LLC*, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021); *Newell v. Aliera Healthcare, Inc.,* 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020); *Katz v. Liberty Power Corp., LLC*, 2019 WL 957129, at *2 (D. Mass. Feb. 27, 2019); *Scoma Chiropractic, P.A. v. Jackson Hewitt Inc.*, 2017 WL 2733758, at *1–3 (M.D. Fla. June 26, 2017); *Leschinsky v. Inter-Continental Hotels Corp.,* 2015 WL 6150888, at *2 (M.D. Fla. Oct. 15,

2015); *Degutis v. Fin. Freedom, LLC*, 2013 WL 10207621, at *1–2 (M.D. Fla. Oct. 18, 2013); *Physicians Healthsource, Inc. v. Anda, Inc.*, 2012 WL 7856269, at *2 (S.D. Fla. 2012); *Mitchell v. Indus. Credit Corp.*, 898 F. Supp. 1518, 1521 (N.D. Ala. 1995) (all bifurcating discovery in TCPA cases, per schedule similar to as proposed below, recognizing doing so is often more efficient and not prejudicial).

In accordance with the foregoing authorities, Defendant proposes that the Court should enter the following bifurcated discovery schedule:

- Discovery as to the merits of Plaintiff's individual claims to proceed for a period of ninety (90) to one hundred twenty (120) days after entry of the Court's scheduling order (no class discovery allowed during this period);
- Opening summary judgment motions as to the merits of Plaintiff's individual claims be due no later than thirty (30) days thereafter (though summary judgment motions may be filed at any point prior to this deadline);
- Oppositions to summary judgment due thirty (30) days after service of opening motions; and
- Reply briefs in support of summary judgment due fifteen (15) days after service of oppositions.

Defendant further proposes that either (i) class discovery resume only after the initial discovery period on Plaintiff's individual claim, or (ii) the Court set a further case management conference, at the Court's convenience, after the Court has ruled on summary judgment motions relating to Plaintiff's individual TCPA claims to order to set (if necessary and should this case proceed) a schedule for class claim discovery and all other case management deadlines. Defendant submits the latter is what courts have typically done when bifurcating discovery in TCPA cases.

*Plaintiff's Scheduling Proposal*:

The basis for the Defendant's request to focus on discovery as to whether it placed the calls at issue rests on the fundamentally flawed premise that the question will be more easily answered on an individualized, as opposed to a classwide, basis. It will not. As such, there is no basis to bifurcate based on whether the calls at issue were placed because there is no indication that the Defendant's marketing and telecommunications strategy operated in a materially different way with respect to

12

other class members as opposed to the Plaintiff, such as alleged here, by spoofing caller IDs and presenting demonstrably false evidence that is belied by the Plainitff's telephone company records. In other words, the individualized merits discovery, and its answers will look at the *same evidence* with respect to Plaintiff and the entire class.

As such, the questions and evidence surrounding whether the Defendant placed the calls at issue and the details as to the marketing strategy at issue, including whether Defendant is presenting falsified telephone records, will apply as equally to all other class members as the Plaintiff. *See, e.g.*, *Grippo v. Sugared + Bronzed, LLC*, No. SA CV 24-01792-AB (DFMX), 2025 WL 596095, at *2 (C.D. Cal. Feb. 24, 2025) (relying on several TCPA cases in rejecting a bifurcation of discovery holding, "the distinction between merits discovery and class discovery is not always clear, and many courts are, for this reason, reluctant to bifurcate class and merits discovery."); *Blair v. Assurance IQ LLC*, No. 23-16, 2023 WL 6622415, at *6 (W.D. Wash. Oct. 11, 2023); *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. 15-2057, 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018) ("[T]he distinction between class certification and merits discovery is murky at best and impossible to determine at worst."). As another federal court held earlier this year when denying a motion to bifurcate discovery in a TCPA case: "[b]ecause individual and class discovery overlaps, the difficulty of drawing the line between the two is likely to cause further discovery disputes and place greater demands on the Court's time. This result also implicates the third factor, judicial economy, and weighs against bifurcation." *Nock v. PalmCo Admin., LLC*, No. 24-CV-00662-RDB, 2025 WL 100894, at *3 (D. Md. Jan. 15, 2025).

It further bears mentioning that this Court has already ruled on this very issue in a TCPA case well known to Defendant's counsel. In *Hartley-Culp v. Credit Mgmt. Co.*, this Court observed that "bifurcation of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions." No. 3:CV-14-0282, 2014 WL 4630852, at *4 (M.D. Pa. Sept. 15, 2014).

Indeed, as another Court in Texas held recently while rejecting a substantially similar bifurcation request from a TCPA defendant highlighting the signification overlap between merits and class certification discovery in a TCPA case while providing an overview of relevant case law, noting that bifurcation is often contrary to judicial economy and promotes needless discovery disputes:

13

As to class certification under Rule 23, the Supreme Court has instructed that "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).

And "[f]requently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim" because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 351 (cleaned up).

Considering *Dukes* and the "rigorous analysis" requirement for class certification, district courts have been reluctant to bifurcate class-related discovery from discovery on the merits. *See Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. EDCV152057FMOSPX, 2018 U.S. Dist. LEXIS 2286, 2018 WL 501413 (C.D. Cal. Jan. 5, 2018) (declining to bifurcate discovery in TCPA case and stating that "the distinction between class certification and merits discovery is murky at best and impossible to determine at worst"); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012) (collecting cases).

In another TCPA case, *Cardenas v. Resort Sales by Spinnaker, Inc.*, No. 9:20-cv-00376-RMG, 2021 U.S. Dist. LEXIS 34923, 2021 WL 733393 (D.S.C. Feb. 24, 2021), the Court found that bifurcation would not serve the interests of judicial economy given the plaintiff's "persuasive argument that the evidence needed to determine whether [they] have a claim substantially overlaps with [their] ability to represent a class under [Rule] 23." *Cardenas*, 2021 U.S. Dist. LEXIS 34923, 2021 WL 733393, at *3.

Similarly, here, the undersigned already found that Folsom "may not avoid appropriate classwide discovery that is — as Bond persuasively argues — necessary for a future class certification motion." Dkt. No. 28. And, so, the Court agrees with Bond that bifurcation would not promote efficiency because there is considerable overlap between discovery relevant to the merits of his individual claims and issues of class certification. *Accord True Health Chiropractic, Inc. v. McKesson Corp.*, 2015 WL 273188, *2-3 (N.D. Cal. 2015) (declining to bifurcate a TCPA class action and noting that

14

> individual and class discovery claims typically overlap).
>
> And, in light of the bulk of authority discussing the lack of a "bright line" distinction between merits and class discovery, bifurcation could lead to avoidable, future disputes over whether a particular discovery request relates to the merits or to class certification. *See Quinn v. Specialized Loan Servs., LLC*, 321 F.R.D. 324, 327-28 (N.D. Ill. 2017); *see also City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc.*, 2015 U.S. Dist. LEXIS 79392, 2015 WL 11120408, *1-2 (W.D. Ark. 2015) (bifurcation may force the court to resolve "endless discovery disputes"); *True* Health, 2015 U.S. Dist. LEXIS 7015, 2015 WL 273188, at *3 (finding that bifurcation "raise[s] a slew of issues as to what discovery relates to the class, as opposed to the named plaintiffs, thereby causing additional litigation regarding the distinction between the two.").
>
> And, so, considering the binding law from *Dukes* and persuasive authority from other district courts, the Court declines to bifurcate discovery in this case.

*Bond v. Folsom Ins. Agency LLC*, No. 3:24-CV-2551-L-BN, 2025 WL 863469, at *2-3 (N.D. Tex. Mar. 19, 2025). This Court should hold the same.

## 7.0 Certification of Settlement Authority (All Parties Shall Complete the Certification)

I hereby certify that the following individual(s) have settlement authority.

Asher Bronstin c/o Andrew Roman Perrong, Esq.
Plaintiff
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529

Colin Ward (on behalf of Defendant), c/o A. Paul Heeringa
Vice President and Chief Litigation Counsel for Viasat, Inc.
Manatt, Phelps, & Phillips, LLP
151 N. Frankin Street, Suite 2600
Chicago, Illinois 60606
312-529-6300

**8.0 Alternative Dispute Resolution ("ADR")**

    **8.1**    **Identify any ADR procedure to which this case already has been assigned or which the Parties have agreed to use.**

        ADR procedure <u>Private</u>

        Date ADR to be commenced <u>6/3/2026</u>
        Date ADR to be completed <u>10/15/2026</u>

    **8.2**    **If the Parties have been unable to agree on an ADR procedure, but one or more Parties believe that the case is appropriate for such a procedure, identify the party or Parties that recommend ADR and the specific ADR process recommended:**

        N/A

    **8.3**    **If all Parties share the view that no ADR procedure should be used in this case, set forth the basis for that view:**

        N/A

**9.0    Consent to Jurisdiction by a Magistrate Judge**

**Indicate whether all Parties agree, pursuant to 28 U.S.C. 636(c)(1), to have a magistrate judge preside as the judge of the case with appeal lying to the United States Court of Appeals for the Third Circuit:**

All Parties agree to jurisdiction by a magistrate judge of this court: <u>No</u>.

If Parties agree to proceed before a magistrate judge, please indicate below

which location is desired for the proceedings:

    ___ Scranton/Wilkes-Barre
    ___ Harrisburg
    ___ Williamsport

## 10.0   Other Matters

Make any other suggestions for the case development process, settlement, or trial that may be useful or necessary to the efficient and just resolution of the dispute.

Defendant contends that discovery should be bifurcated for the sake of judicial and party economy (see Section 6), and intends to submit a motion in that regard for the Court's consideration. Plaintiff intends to oppose said motion.

## 11.0   Identification of Counsel

Counsel shall be registered users of the court's Electronic Case Files System (ECF) and shall file documents electronically in accordance with the Local Rules of Court and the Standing Order RE: Electronic Case Filing Policies and Procedures. Electronic filing is required unless good cause is shown to the Chief Judge why counsel cannot comply with this policy. Any request for waiver of electronic filing must be filed with the Clerk=s Office prior to the case management conference. The Chief Judge may grant or deny such request.

Identify by name, address, and telephone number lead counsel for each party. Also please indicate ECF User status below.

Dated:      7/25/2025   Andrew Roman Perrong
                              Attorney(s) for Plaintiff(s)
                 X   ECF User(s)
                 G   Waiver requested (as separate document)
                 G   Fed.R.Civ.P.7.1 (statement filed if necessary)*

Dated:		7/25/2025  A. Paul Heeringa
				Attorneys(s) for Defendant(s)
		X	ECF User(s)
		G	Waiver requested (as separate document)
		X	Fed.R.Civ.P.7.1 (statement filed if necessary)*

* Fed.R.Civ.P.7.1 requires a nongovernmental corporate party to file a statement with the initial pleading, first entry of appearance, etc., that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock, or state there is no such corporation.

Dated: July 26, 2025                    Respectfully submitted,

*/s/ Andrew Roman Perrong*
ANDREW ROMAN PERRONG
(PA Bar # 333687)
PERRONG LAW, LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
Phone: 215-225-5529
Fax: 888-329-0305
a@perronglaw.com

*Counsel for Plaintiff*

*/s/ A. Paul Heeringa (with permission)*
JOHN W. MCGUINNESS
(*Pro Hac Vice* to be requested)
A. PAUL HEERINGA
(Admitted *Pro Hac Vice*)
MANATT, PHELPS & PHILLIP, LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, D.C. 20036
Telephone: 202-585-6500
Facsimile: 202-585-6600
jmcguinness@manatt.com
pheeringa@manatt.com

FREDERICK P. SANTARELLI (PA 53901)
STEVEN C. TOLLIVER, JR. (PA 327165)
ELLIOTT GREENLEAF, P.C.
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000 (phone)
(215) 977-1099 (fax)
FPSantarelli@elliottgreenleaf.com
sct@elliottgreenleaf.com

*Counsel for Defendant Viasat, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I am causing the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon all counsel of record.

Dated: July 26, 2025                                  */s/ Andrew Roman Perrong*