# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all other similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> VIASAT, INC., <br><br> Defendant. | Civil Action No. 1:25-cv-00927-KMN (Hon. Keli M. Neary) |

## SUPPLEMENTAL TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (APPENDIX OF UNPUBLISHED CASE CITATIONS)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that I am causing the foregoing and all attachments to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon all counsel of record.

Dated: August 29, 2025                    */s/ A. Paul Heeringa*
                                          A. PAUL HEERINGA

# APPENDIX

Aaronson v. CHW Group, Inc., Not Reported in Fed. Supp. (2019)

KeyCite Yellow Flag - Negative Treatment
Distinguished by Atkinson v. Choice Home Warranty, D.N.J., January 11, 2023

2019 WL 8953349
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Alexandria Division.

Adam AARONSON, Plaintiff,

v.

CHW GROUP, INC., d/b/a Choice Home
Warranty, Defendant.

Case No. 1:18-cv-1533
|
Signed 04/15/2019

**Attorneys and Law Firms**

Richard William Ferris, FerrisWinder PLLC, Richmond, VA, for Plaintiff.

Kyle Reese Elliott, Ogletree Deakins Nash Smoak & Stewart PC, Richmond, VA, for Defendant.

**ORDER**

T. S. Ellis, III, United States District Judge

**\*1** Before the Court in this "robocall" case, brought under the Telephone Consumer Protection Act[1] ("TCPA"), is defendant's motion for judgment on the pleadings filed pursuant to Rule 12(c), Fed. R. Civ. P. The question presented by the motion is whether plaintiff's Complaint alleges facts sufficient to show plausibly that defendant made calls to plaintiff's cellular telephone using an automatic telephone dialing system or an artificial or prerecorded voice, in violation of 47 U.S.C. § 227(b)(1)(A)(iii). Because the Complaint alleges almost no facts concerning the substance or details of the calls at issue, and thus does not raise the probability above a speculative level that defendant made the calls or that defendant did so using automated telephone equipment,

defendant is entitled to judgment on the pleadings.

**I.**

Rule 12(c) provides that "[a]fter the pleadings are closed ... a party may move for judgment on the pleadings." The standard of review for Rule 12(c) motions is the same as the "plausibility standard" governing Rule 12(b)(6) motions. *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014); *Travelers Indem. Co. of Connecticut v. Lessard Design, Inc.*, 321 F. Supp. 3d 631, 635 (E.D. Va. 2018).[2] Thus, "a motion for judgment on the pleadings should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Id.*

**II.**

Plaintiff claims in the Complaint that defendant violated 47 U.S.C. § 227(b)(1)(A)(iii), the provision of the TCPA that prohibits the use of automated telephone equipment to make calls to a cellular telephone. In pertinent part, § 227(b)(1)(A)(iii) states:

> It shall be unlawful for any person within the United States ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service....

The TCPA also provides a private right of action to recover statutory damages for violations of this provision. *Id.* § 227(b)(3)(B). Accordingly, to state a claim under the TCPA, a plaintiff must allege (i) defendant made one or more calls (ii) to plaintiff's cellular phone (iii) using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice. The parties do not dispute that the calls at issue were made to plaintiff's cellular phone. Analysis thus proceeds to examine whether the Complaint alleges sufficient facts to show that defendant made the calls and that defendant did so using one of the statutorily prohibited automated devices.

Aaronson v. CHW Group, Inc., Not Reported in Fed. Supp. (2019)

## III.

**\*2** Defendant first argues that plaintiff failed to allege facts that show defendant made the telephone calls at issue. A TCPA plaintiff can establish that the defendant "made" a call through theories of direct or vicarious liability. *See Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at \*3 (D.N.M. Sept. 28, 2018).

In order to establish that a defendant is directly liable under the TCPA, courts have concluded that the plaintiff must show that the defendant actually, physically initiated the telephone call at issue. *Id.* (collecting cases).[3] Accordingly, at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone. *See id.*; *Gulden v. Consol. World Travel Inc.*, No. CV-16-01113-PHX-DJH, 2017 WL 3841491, at \*3 (D. Ariz. Feb. 15, 2017); *Sepehry-Fard v. Dep't Stores Nat'l Bank*, 15 F. Supp. 3d 984, 987 (N.D. Cal. 2014), *aff'd in part*, 670 F. App'x 573 (9th Cir. 2016); *Wallace v. Mercantile Adjustments Bureau, Inc.*, No. 14-10387, 2014 WL 1515852, at \*3 (E.D. Mich. Apr. 18, 2014).

In this respect, plaintiff fails to plead facts to support his conclusory allegation that defendant called plaintiff's cellular phone. The Complaint is devoid of facts such as how the caller identified itself, the substance of the calls, or any other details from the telephone calls that would tend to identify defendant as the party that actually, physically took the steps to place the calls to plaintiff's phone. The lone *fact* marshalled in the Complaint that even comes close to supporting plaintiff's conclusion that defendant was the party that called his cellular telephone is the allegation that one of the calls made to plaintiff was from a telephone number that, according to the Complaint, "is one of the Defendant's many telephone numbers." Compl. ¶ 11. But without any facts to explain why plaintiff believes the identified phone number is owned by defendant,[4] this allegation amounts to nothing more than another conclusory allegation that defendant made the calls to plaintiff's cellular phone. Therefore, plaintiff has failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations do not show plausibly that defendant actually, physically initiated the telephone calls at issue.

**\*3** On the other hand, to demonstrate that a defendant is vicariously liabile under the TCPA for calls made by an agent or other third party, courts have held that a plaintiff must show that the defendant would be vicariously liable under common law principles of agency. *See, e.g., Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018); *Childress*, 2018 WL 4684209, at \*3; *In re:*

*Monitronics Int'l, Inc.*, 223 F. Supp. 3d at 520. It is well-established under such common law principles that an agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at \*6 (S.D.N.Y. Nov. 30, 2015) (quoting Restatement (Third) of Agency, § 1.01 (2006)). Thus, at the pleadings stage, plaintiff "must allege *some* facts regarding the relationship between an alleged principal and agent" that show defendant had the right to control the party making the calls; plaintiff "cannot simply allege general control in a vacuum." *Id.* at \*7 (emphasis in original).

These principles, applied here, confirm that plaintiff has failed to allege facts to show defendant was vicariously liable for the calls at issue. After repeatedly alleging that defendant itself made the calls to plaintiff's cellular telephone, the Complaint further alleges that, in placing the calls, defendant "acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers." Compl. ¶ 9. This conclusory, boilerplate allegation plainly fails to provide any *facts* to demonstrate an agency relationship between defendant and the party who physically initiated the call. *See Melito*, 2015 WL 7736547, at \*7 (stating that "mere conclusory allegations that [the caller] was [the defendant's] agent ... fails to plead an agency relationship ... sufficient to allege vicarious liability under section 227(b)(1)(A)(iii) of the TCPA"). Indeed, the Complaint fails to allege any facts that reflect how the caller identified itself (*e.g.*, as defendant's employee), the substance of the call (*e.g.* a statement by the caller that he or she was marketing defendant's goods or services), or any other details from the telephone calls that would tend to demonstrate an agreement between the caller and defendant that the caller would act on the principal's behalf and subject to the principal's control. Accordingly, it is clear that plaintiff has failed to plead facts sufficient to support a theory of vicarious liability under the TCPA because plaintiff's allegations do not show plausibly that the party who actually, physically initiated the telephone calls at issue was subject to defendant's control in an agency relationship.

## IV.

Defendant next argues that even assuming *arguendo* that the Complaint alleges facts sufficient to show that

Aaronson v. CHW Group, Inc., Not Reported in Fed. Supp. (2019)

defendant made the calls at issue, plaintiff has nonetheless failed to plead facts to show plausibly that defendant did so using an ATDS or an artificial or prerecorded voice.

As an initial matter, it is clear that there is no basis in the Complaint on which to conclude that the calls at issue used an artificial or prerecorded voice. In fact, the Complaint alleges that after plaintiff answered the calls, he was greeted by a live, human representative. Compl. ¶¶ 24, 32. Thus, because plaintiff has not pled "factual allegations suggesting that the voice on the other end of the line was prerecorded" or artificial, plaintiff must instead demonstrate that the calls were made using ATDS. *See Trumper v. GE Capital Retail Bank*, 79 F. Supp. 3d 511, 513 (D.N.J. 2014).

The TCPA defines an ATDS as "equipment which has the capacity ... to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1). As courts have explained, the defining characteristic of an ATDS is the ability to "dial numbers without human intervention." *ACA Int'l v. FCC*, 885 F.3d 687, 695, 703 (D.C. Cir. 2018); *Herrick v. GoDaddy.com LLC*, 312 F. Supp. 3d 792, 801 (D. Ariz. 2018).

**\*4** At the pleadings stage, to demonstrate that a call was made using an ATDS, plaintiff must allege facts to show "why they believe[ ] that an ATDS was used." *Reo v. Caribbean Cruise Line*, Inc., 2016 WL 1109042, at \*4 (N.D. Ohio Mar. 18, 2016).[5] In this respect, given "the difficulty a plaintiff faces in knowing the type of calling system used ... courts can rely on details about the call to infer the use of an ATDS." *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1129–30 (W.D. Wash. 2012). But without more, merely alleging, in a conclusory fashion, that defendant used an ATDS or parroting the statutory definition of an ATDS to describe the equipment used is insufficient to show plausibly that the telephone calls were made to plaintiff's cellular phone via an ATDS. *Baranski v. NCO Fin. Sys., Inc.*, 2014 WL 1155304, at \*6 (E.D.N.Y. Mar. 21, 2014) (holding that "[p]laintiffs must do more than simply parrot the statutory language" defining ATDS and noting that the "vast majority of courts to have considered the issue have found that "a bare allegation that defendants used an ATDS is not enough")

In this respect, plaintiff fails to plead facts to support his conclusory allegation that defendant called plaintiff's cellular phone using an ATDS. Indeed, the majority of the allegations in the complaint amount to nothing more than a formulaic recitation of the statutory definition of an ATDS. *See* Compl. ¶¶ 25–31. The only factual detail alleged by plaintiff with respect to the content or nature of

the calls at issue that could support plaintiff's belief that the call had been made using ATDS is that plaintiff was "*sometimes* greeted with 'dead air' whereby no person was on the other end of the line"; then after "several seconds, an agent was connected" to the call. *Id.* ¶ 24 (emphasis added). Plaintiff also alleges that "the dead air that the Plaintiff *may have experienced* on the calls that he received is indicative of the use of an ATDS." *Id.* ¶ 32 (emphasis added). Putting aside the equivocal nature of these factual allegations, courts have routinely held that a plaintiff cannot support a belief that an ATDS was being used by alleging only that plaintiff experienced "dead air" during the calls at issue. *See, e.g., Norman v. AllianceOne Receivables Mgmt., Inc.*, 637 Fed. Appx. 214, 215 (7th Cir. 2015) (finding that "dead air" was insufficient to create an issue of material fact even though auto dialers frequently result in "dead air"); *Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1308 (S.D. Fla. 2016); *Estrella v. Ltd. Fin. Servs.*, LP, No. 14-cv-2624, 2015 WL 6742062, at \*3 (M.D. Fla. Nov. 2, 2015). Therefore, plaintiff has failed to plead facts sufficient to support his conclusion that defendant made the calls at issue using an ATDS, as is required in order to state a claim under the TCPA.

## V.

Seeking to avoid dismissal, plaintiff advances two arguments that attempt to show defendant's motion for judgment on the pleadings is inappropriate on procedural grounds.

First, plaintiff argues that defendant's motion was filed in bad faith and that the motion unreasonably increases the proceedings. In this regard, plaintiff emphasizes that in a joint motion to vacate the entry of default against defendant in this matter, defendant "agreed to file its answer and affirmative defenses to the Complaint, rather than a Rule 12(b) motion, as its responsive pleading on or before February 15, 2019." Joint Mot. to Vacate, Dkt. 12, ¶ 12. But it appears that defendant did in fact file its Answer on February 15, 2019, as required by this agreement. *See* Answer, Dkt. 13. Moreover, the joint motion to vacate makes clear that neither side "waivi[es] any rights, defenses, objections, or arguments that may be raised later during the course of this litigation," *see* Joint Mot. to Vacate, Dkt. 12, ¶ 12, and specifically recognized that defendant intended to raise the defense of "failure to state a claim under the TCPA," *see id.* ¶ 11. Thus, it does not appear that defendant violated any agreement between the parties or otherwise acted in bad faith by filing its answer, as required, and then later bringing the instant

Rule 12(c) motion.

**\*5** Second, plaintiff argues that defendant's motion for judgment on the pleadings is inappropriate because defendant, in its Answer, has denied the central allegations of the Complaint. This argument fails because the fact that a defendant, in its answer, has denied allegations in the plaintiff's complaint does not bar the defendant from seeking judgment on the pleadings. *See, e.g., Chalif v. Spitzer*, No. 9:05-CV-1355, 2008 WL 1848650, at \*3, \*14(N.D.N.Y. Apr. 23, 2008) (granting the defendants' motion for judgment on the pleadings, notwithstanding the fact that the defendants, in their answer had "generally denied the material allegations of plaintiff's complaint and asserted various affirmative defenses"). This is so because "when a party moves for judgment on the pleadings pursuant to Rule 12(c), the well-pled factual allegations in the complaint are taken as true, whereas those of the answer are taken as true only to the extent that they have not been denied or do not conflict with the complaint." *Shelton v. Safeway, Inc.*, No. CIV. PJM 10-2358, 2011 WL 1869827, at \*3 (D. Md. May 16, 2011). Accordingly, because resolution

of a motion for judgment on the pleadings turns on whether the factual allegations in the Complaint state a claim to relief that is plausible on its face, it is immaterial whether the defendant has admitted or denied certain allegations in the Complaint. *Meyer Nat. Foods, LLC v. Liberty Mut. Fire Ins. Co.*, 218 F. Supp. 3d 1034, 1037 (D. Neb. 2016).

**VI.**

Accordingly, for the reasons stated above,

It is hereby **ORDERED** that defendant's motion for judgment on the pleadings (Doc. 21) is **GRANTED**.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 8953349

Footnotes

1    47 U.S.C. § 227.

2    As the Supreme Court famously held in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007), to state a claim under Fed. R. Civ. P. 12(b)(6), the allegations of the Complaint "must be enough to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face."

3    *See also, e.g. Hurley v. Messer*, No. CV 3:16-9949, 2018 WL 4854082, at \*3 (S.D.W. Va. Oct. 4, 2018); *Vessal v. Alarm.com*, No. 17 C 2188, 2017 WL 4682736, at \*2 (N.D. Ill. Oct. 18, 2017); *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 519 (N.D.W. Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018); *Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at \*5 (M.D. Tenn. Nov. 19, 2014), *report and recommendation approved*, No. 3:14-CV-01574, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015); *Golan v. Veritas Entm't, LLC*, 2014 WL 2095310, at \*4 (E.D. Mo. May 20, 2014).

4    Plaintiff does not allege, for example, that the caller identification feature on his telephone informed him that the phone number belonged to defendant. *Cf. Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 916 (9th Cir. 2012).

5    *See also, e.g., Sprye v. Ace Motor Acceptance Corp.*, No. CV PX 16-3064, 2017 WL 1684619, at \*5 (D. Md. May 3, 2017); *Aikens v. Synchrony Financial*, 2015 WL 5818911, \*3 (E.D. Mich. 2015) report and recommendation adopted, 15 CV 10058, 2015 WL 5818860 (E.D Mich. 2015); Johansen v. Vivant, Inc., 2012 WL 6590551, \*3 (N-D. Ill. Dec. 18, 2012).

**Aaronson v. CHW Group, Inc., Not Reported in Fed. Supp. (2019)**

**End of Document**                           © 2025 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag

Distinguished by   Nater v. State Farm Mutual Automobile Insurance Co.,
C.D.Ill.,   May 14, 2024

2022 WL 3213839
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Anthony BACCARI, on behalf of himself
and others similarly situated, Plaintiff,
v.
CARGUARD ADMINISTRATION, INC., Defendants.

CIVIL ACTION NO. 22-CV-1952
|
Filed August 8, 2022

**Attorneys and Law Firms**

Alex M. Washkowitz, CW Law Group, P.C., Framingham, MA, Anthony Paronich, Paronich Law, P.C., Hingham, MA, Jeremy C. Jackson, Bower Law Associates, PLLC, State College, PA, for Plaintiff.

Brittany A. Andres, Eric J. Troutman, Troutman Firm, Irvine, CA, Corey M. Scher, Fox Rothschild LLP, Philadelphia, PA, Stephanie B. Fineman, Fox Rothschild LLP, Warrington, PA, for Defendants.

## MEMORANDUM OPINION

WENDY BEETLESTONE, District Judge

**\*1** Plaintiff Anthony Baccari brings this putative class action against Carguard Administration, Inc. ("Carguard") for violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, ("TCPA"), after he received telemarketing calls from an entity which is not part of this litigation but which he alleges made the calls on behalf of Carguard. Carguard has filed, in successive order (as shown on the ECF docket): (1) a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); (2) a motion to strike pursuant to Fed. R. Civ. P. 12(f); and, (3) a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

## I. FACTUAL ALLEGATIONS

As pled in Baccari's complaint, the facts are plain. Baccari had placed his cell phone number on the National Do Not Call Registry. Despite his registration, he began receiving telemarketing calls in late September 2021 about auto warranties. During one of the calls, Baccari asked the person on the other end of the line to identify who he worked for—and was told it was A-List Marketing Solutions, Inc. ("A-List"). In the call, the representative tried to sell to Baccari Carguard's warranty services. Following the call, Baccari received a proposed service contract from Carguard.

Baccari alleges that Carguard and A-List had a marketing agreement, and pursuant to that agreement, "A-List Marketing was contractually required to promote CarGuard products on their telemarketing calls." He alleges CarGuard had "day-to-day control over A-List Marketing's actions," including by instructing A-List about the number of calls it should make and the geographies in which it should make them. Baccari further alleges that Carguard had previously received complaints about its telemarketing calls and that, in a statement to the Better Business Bureau, it acknowledged that it had the power to tell companies like A-List to stop making its calls.

## II. DISCUSSION

### A. Motion to Strike

As an initial matter, Carguard's Motion to Strike pursuant to Federal Rule of Civil Procedure is untimely because it falls afoul of Federal Rule of Civil Procedure 12(g)(2), which provides that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes *a motion under this rule* must not make *another motion under this rule* raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12 (emphasis added); *see also Jaroslawicz v. M&T Bank Corp.*, 912 F.3d 96, 105 n.4 (3d Cir. 2018), *reh'g granted, judgment vacated on other grounds*, 925 F.3d 605 (3d Cir. 2019) (stating that Rule 12(g) "prohibits a party from making a successive motion to dismiss if that motion 'rais[es] a defense or objection that was available to the party but omitted from its earlier motion' " (quoting Fed. R. Civ. P. 12(g)(2))). The purpose of the Rule is "to prevent [ ] dilatory motion practice ... a course of conduct that was pursued often for the sole purpose of delay." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1384 (3d ed. 2022); *see also Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 n.2 (9th Cir. 1988) (noting

Baccari v. Carguard Administration, Inc., Not Reported in Fed. Supp. (2022)

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 10 of 158

that the purpose of Rule 12(g) is "simple and basic: a series of motions should not be permitted because that results in delay and encourages dilatory tactics"). Consequently, "the right to raise [Rule 12] defenses [and objections] by preliminary motion is lost when the defendant neglects to consolidate them in his initial motion." Wright & Miller, *supra* at § 1385.

**\*2** A motion to strike is "a motion under" Rule 12; specifically, a motion to strike is one made under Rule 12(f). *See* Fed. R. Civ. P. 12(f); *see also* Wright & Miller, *supra* at § 1388 ("Motions to strike ... are motions under Rule 12 and thus clearly are within the language of subdivision (g).").
Because Carguard filed a separate motion to strike *after* it already filed a motion to dismiss pursuant to Rule 12(b)(6), it has failed to comply with Rule 12(g)'s mandate to consolidate all motions "available to [it]" into a single motion.

### B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A reading of Rule 12(g) would also suggest that Carguard should have consolidated this motion for lack of subject matter jurisdiction with its two other motions. But "a challenge to the court's subject matter jurisdiction may be raised at any time and is not subject to the consolidation and waiver provisions [of Rule 12]." Wright & Miller, *supra* at § 1385. Accordingly, the Court will consider Carguard's only argument, which is that Baccari lacks standing to bring this case. *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) ("A motion to dismiss for want of standing is [ ] properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.") To establish standing, a plaintiff must show three elements: injury-in-fact, causation, and redressability. *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014).

Before delving into the standing analysis, however, a determination must first be made as to whether the motion presents a "facial" or "factual" attack on the claims at issue, because that distinction determines how the pleading must be reviewed. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). A facial attack "contests the sufficiency of the pleadings," *id.*, "whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (internal quotation marks omitted) (alterations in original). In

other words, a "facial attack ... is an argument that considers a claim *on its face* and asserts that it is insufficient to invoke the subject matter jurisdiction," while "[a] factual attack ... is an argument that there is no subject matter jurisdiction because *the facts of the case* ... do not support the asserted jurisdiction." *Aichele*, 757 F.3d at 358 (3d Cir. 2014) (emphasis added). To make a factual attack, a challenger must raise "a factual dispute" by "present[ing] competing facts" about the basis for jurisdiction. *Id.; see also Mortensen*, 549 F.2d at 892 n.17 ("A factual jurisdictional [attack] cannot occur until plaintiff's allegations have been controverted.")

When reviewing a facial challenge, "the same standard as on review of a motion to dismiss under Rule 12(b)(6)" is applied; that is, only the allegations in the complaint are examined, and are done so in the light most favorable to the plaintiff. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). When reviewing a factual challenge, on the other hand, evidence outside of the pleadings may be weighed and considered, and "no presumptive truthfulness attaches" to the facts pled in the complaint. *Mortensen*, 549 F.2d at 891.

**\*3** Here, Carguard raises a factual attack, because it presents evidence directly contradicting the bases for Baccari's standing. In particular, Carguard disputes facts in the complaint tending to show that it caused Baccari's injury. The complaint alleges, for example, that "A-list Marketing was contractually required to promote Carguard's products on their telemarketing calls in order to potentially generate new customers." Carguard's CEO, however, attests in a declaration that A-List was "contractually *prohibited* from engaging in any form of telemarketing to market Carguard's products" (emphasis added). The CEO's statement is confirmed by the marketing agreement between Carguard and A-List, (attached as an exhibit to the motion), and the Exclusivity Agreement, (also attached), which clearly states that "[A-List] will not use any form of telemarketing to market the products."

Carguard's declaration raises further factual disputes concerning whether it caused Baccari's injury. For example, the complaint alleges that "Carguard has previously received complaints regarding the telemarketing conduct of its third-party vendors," and that "Carguard was knowingly and actively accepting the business that originated through the illegal telemarketing calls through the issuance of vehicle service contracts." In contrast, Carguard's declaration states that "Carguard was unaware that A-List was making any sort

Baccari v. Carguard Administration, Inc., Not Reported in Fed. Supp. (2022)

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 11 of 158

of prerecorded calls during the timeframes at issue in the Complaint. It would not have accepted any contracts from A-List had it been aware of those facts at the time it accepted the contracts."

When a "defendant contests the jurisdictional allegations ... under oath, then it is incumbent upon the plaintiff to respond to the defendant's sworn factual assertions. In doing so, a conclusory response will not suffice." *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.,* 673 F.2d 700, 711-12 (3d Cir. 1982). Instead, the plaintiff must present proof of jurisdiction countering the defendant's facts "by affidavits or other sworn proofs." *Id.* Here, Baccari has failed to do just that. In response to the evidence Carguard presented to break the factual link between itself and Baccari's harm, Baccari only provides a lengthy discussion about the law concerning principles of agency, and restates allegations

in the complaint. For example, Baccari merely re-asserts that A-List was "contractually require[d]" to use telemarketing practices to reach customers like himself. Because Baccari has not met his burden to produce evidence responding to Carguard's factual attack, Carguard's motion for lack of subject matter jurisdiction will be granted, and the Complaint will be dismissed without prejudice. Further, as Baccari's complaint is being dismissed for lack of subject matter jurisdiction, Carguard's motion to dismiss it for failure to state a claim will be denied as moot.

An appropriate order follows.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3213839

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1332635
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Todd C. **BANK**, Plaintiff,
v.
**ALLEVIATE TAX**, **LLC**, Defendant.

23-CV-5457 (PKC) (PK)
|
Signed March **28**, **2024**

**Attorneys and Law Firms**

Todd C. **Bank**, Law Office of Todd C. **Bank**, Kew Gardens, NY, for Plaintiff.

Jenniffer Cabrera, Pro Hac Vice, Troutman Amin LLP, Boca Raton, FL, Philip Langer, Fox Rothschild LLP, New York, NY, for Defendant.

### MEMORANDUM & ORDER

PAMELA K. CHEN, United States District Judge:

**\*1** Plaintiff Todd C. **Bank** ("Plaintiff"), an attorney proceeding *pro se*, brings this action individually and on behalf of three proposed classes against **Alleviate Tax**, **LLC** ("Defendant" or "**Alleviate**"), alleging a violation of Section 227(b)(1) of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1); a violation of the TCPA's Federal Do-Not-Call Registry ("DNCR") regulation, 47 U.S.C. § 227(c)(5), 47 C.F.R. § 64.1200(c)(2); and New York's General Business Law ("GBL") § 399-p.[1] Before the Court is Defendant's motion to dismiss Plaintiff's First Amended Complaint ("FAC"). For the reasons discussed below, Defendant's motion is granted.

### BACKGROUND

#### I. Relevant Facts[2]

In the present action, Plaintiff alleges that he received three automated calls from Defendant—two on or about June 23, 2023 (FAC ¶¶ 20, 32), and one on or about June 29, 2023 (*id.* ¶ 45). These calls were all made to a residential phone number for which Plaintiff "was a regular user." (*Id.* ¶¶ 21–22; 33–34; 46–47.) "Upon [ ] answering [the call,] ... a message was

played that sounded robotic ...." (*Id.* ¶¶ 23, 35, 48.) All three calls "advertised **tax**-debt services," "included and introduced an advertisement," and "constituted telemarketing." (*Id.* ¶¶ 24–26, 36–38, 49–51.)[3] Neither the name or address of the person on whose behalf the message was being transmitted was disclosed at the beginning or the end of the call. (*Id.* ¶¶ 29–31; 40–41; 53–54.) Plaintiff pressed a button on his telephone during the first call he received, on or about June 23, that allegedly "transferred [him] to an employee of **Alleviate** named Jack Patnoe." (*Id.* ¶ 27.) After receiving the second call on or about June 23, Plaintiff called the telephone number provided during the call and an alleged "employee of **Alleviate** came onto the line." (*Id.* ¶¶ 42–44.)

**\*2** Plaintiff did not give "prior express written consent" to receive any of these three calls. (*Id.* ¶¶ **28**, 39, 52.) The three calls "temporarily caused the receiving telephone line to be unavailable for other uses." (*Id.* ¶ 56.) Further, these calls not only "annoyed and frustrated" Plaintiff, but they also "disturbed [his] peace, solitude, and tranquility ...." (*Id.* ¶¶ 57–58.)

#### II. Relevant Procedural History

Plaintiff filed his original complaint on July 19, 2023. (*See generally* Compl., Dkt. 1.) On August 9, 2023, Defendant requested a pre-motion conference ("PMC") on its anticipated motion to dismiss the Complaint and also moved for a stay of discovery pending the resolution of a motion to dismiss. (*See* Dkts. 10, 11.) The Honorable Peggy Kuo granted **Alleviate's** motion to stay discovery the next day. (*See* 8/10/2023 Docket Order.) On August 11, 2023, Plaintiff amended his complaint,[4] which is the operative pleading in this case. (*See* Dkt. 12.) Defendant then filed an amended PMC request on August 25, 2023. (*See* Dkt. 15.)

After reviewing both the amended PMC request and Plaintiff's response letter (Dkt. 16), the Court determined and advised the parties that it would construe Defendant's amended PMC request as the operative motion to dismiss and Plaintiff's response as his opposition. (*See* 9/**5**/2023 Docket Order.) The Court allowed additional letter briefing to supplement the original amended PMC filings, which were submitted to the Court on September 19, 2023. (*See* Dkts. 18, 19.)

### LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Hogan*, 738 F.3d at 514. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guardian Corp.*, 712 F.3d at 718. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In considering a motion to dismiss for failure to state a claim, courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guardian Corp.*, 712 F.3d at 717 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks and citations omitted)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Pension Benefit Guardian Corp.*, 712 F.3d at 717 (quoting *Iqbal*, 556 U.S. at 679).

**\*3** "Although allegations drafted by *pro se* plaintiffs are generally held to less stringent standards than formal pleadings drafted by lawyers, ... *pro se* attorneys cannot claim the special consideration, ... customarily grant[ed] to *pro se* parties." *Appel v. Hayut*, No. 20-CV-6265 (JPC), 2021 **WL** 2689059, at \*8 (S.D.N.Y. June 30, 2021), *aff'd sub nom. Appel v. Cohen*, No. 22-170, 2023 **WL** 1431691 (2d Cir. Feb. 1, 2023) (internal quotation marks and citations omitted). "[T]his is because attorneys have knowledge of the law[.]" *Este-Green v. Meta Platform, Inc.*, No. 24-CV-35 (NJC) (AYS), 2024 **WL** 99487, at \*1 (**E.D.N.Y**. Jan. 8, **2024**) (citing

*Fenner v. City of N.Y.*, No. 08-CV-2355 (BMC) (LB), 2009 **WL** 5066810, at \*3 (**E.D.N.Y**. Dec. 21, 2009)).

### DISCUSSION

Defendant argues that the FAC fails to state a claim for the three causes of action Plaintiff brings—one count under Section 227(b)(1) of the TCPA, one count related to the DNCR regulation, and one count under the GBL. The Court finds that Plaintiff has failed to sufficiently plead his TCPA and DNCR claims against **Alleviate** and that these claims must be dismissed. The Court is also denying Plaintiff's request to file an amended complaint to cure the deficiencies in his TCPA and DNCR claims. Because the Court is dismissing the federal claims in this action without leave to amend, it declines to exercise supplemental jurisdiction over Plaintiff's GBL claim.

### I. Plaintiff's TCPA Claims

#### A. Section 227(b) of the TCPA ("TCPA Claim")

Section 227(b)(1)(B) of the TCPA makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States ... *to initiate* any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party[.]" 47 U.S.C. § 227(b)(1)(B) (emphasis added). "In order to state a plausible claim for direct liability under [S]ection 227(b) (1) of the TCPA, 'a plaintiff must allege that a defendant initiated an unlawful call.' " *Bank v. Vivint Solar, Inc.*, No. 18-CV-2555 (MKB), 2019 **WL** 2280731, at \*2 (**E.D.N.Y**. Feb. 25, 2019) (quoting *Bank[ ] v. Pro Custom Solar*, 17-CV-613 (LDH) (JO), 2018 **WL** 3637960, at \*2 (**E.D.N.Y**. July 31, 2018)), *R. & R. adopted*, No. 18-CV-2555 (MKB) (RLM), 2019 **WL** 1306604 (**E.D.N.Y**. **Mar**. 22, 2019). In order for a plaintiff to assert a TCPA violation under a theory of vicarious liability, "a plaintiff ... must allege an agency relationship between the maker of the call, such as a marketing company, and the defendant.... The existence of *some* connections between the defendant and the maker of the call will not suffice[.]" *Id.* at \*3 (internal quotation marks and citation omitted). "[C]laims based on alleged violations of the TCPA need not be pled with particularity." *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 138 (**E.D.N.Y**. 2015) (citations omitted).

Defendant argues that Plaintiff's "barebones" FAC fails to state a violation of the TCPA because it does not allege facts from which it can be plausibly inferred that **Alleviate** initiated the three calls, "such as the dialing number, or how Plaintiff knows each call came from **Alleviate**." (Def.'s Letter Mot., Dkt. 15 (hereinafter "Def.'s Mot."), at 2.) Plaintiff counters that Defendant's argument "ignores" the FAC's "allegation that, with respect to the telephone call that I answered, ... I 'was transferred to an employee of **Alleviate** named Jack Patno[e]'[,]" referring to the first call that was placed on June 23, 2023. (Pl.'s Letter Opp'n, Dkt. 16 (hereinafter "Pl.'s Opp'n"), at 1 (internal citation omitted); *see also* FAC ¶ 27.) The Court agrees with Defendant that the FAC fails to allege sufficient facts to state a TCPA claim against **Alleviate**.

**\*4** In support of its argument, Defendant cites several authorities, including *Vivint Solar* (notably one of Plaintiff's other TCPA lawsuits), for the proposition that Plaintiff has still failed to state a claim because, even if Plaintiff was eventually transferred to an **Alleviate** representative (i.e., Jack Patnoe), "Plaintiff was contacted by a third-party who transferred the call to **Alleviate**" and for TCPA liability to attach, "there must be a 'direct connection' between the person or entity and the making of the call." (Def.'s Supp. Letter Mot., Dkt. 18 (hereinafter "Def.'s Supp. Mot."), at 2 (quoting *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015) ("*2015 FCC Ruling*"))); *see also Vivint Solar, Inc.*, 2019 **WL** 2280731, at \*4–**5**.

In *Vivint Solar*, Plaintiff pressed a button on his telephone during an automated call that transferred him to an individual who then, in turn, told Plaintiff he would receive a follow-up call in approximately 30 minutes. *Vivint Solar*, 2019 **WL** 2280731, at \*1. Plaintiff received a follow-up call at the designated time, and the caller identified himself as a Vivint employee, who stated during their conversation that, "Vivint regularly uses telephone calls with prerecorded material advertising Vivint's services." *Id.* Other than these details, Plaintiff in *Vivint Solar* did not include the number of the initial caller and stated only that the defendant "placed, or directed to be placed," the prerecorded call. *Id.* at \*2. Based on these facts, the court concluded that Plaintiff had failed to establish Vivint's direct liability for the offending call because the Vivint employee's comment was "an insufficient basis upon which to infer that Vivint *made* the specific Preordered Call ...." *Id.* at \*3 (emphasis added). The *Vivint Solar* court went on to address Plaintiff's allegation that Vivint was vicariously liable for the automated call and found that

Plaintiff had failed to sufficiently allege this theory of liability because he did not plead an agency relationship between the initiator of the call and Vivint. *Id.* In conducting its vicarious liability analysis, the *Vivint Solar* court noted that Plaintiff had provided "no details as to the content of the Prerecorded Call from which he could have inferred that it was placed by an agent of Vivint." *Id.* at \*4. Additionally, Plaintiff did "not identif[y] any statements made by [Vivint] that would have led [plaintiff] to reasonably believe that the maker of the Prerecorded Call had authority to act on Vivint's behalf." *Id.* The court further noted that "**Bank** [also did not] allege that following the Prerecorded Call, he was transferred to a live person who informed him that he was a representative of defendant or was promoting defendant's goods and services." *Id.* In a footnote attached to this sentence, the *Vivint Solar* court added: "Even had [a direct transferal] happened, at least one court has held that '[t]he transfer of the call [to the defendant] does not establish that Defendant exerted control over the initiator of the call, supervised or controlled the initial call, or maintained any sort of relationship with the initiator of the call, and thus is insufficient to establish an agency relationship between the transferor and [the defendant].' " *Id.* at \*4 n.7 (quoting *Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051 (MV) (KBM), 2018 **WL** 4684209, at \*4 (D.N.M. Sept. **28**, 2018)).

Here, just as in *Vivint Solar*, Plaintiff asserts, "in conclusory fashion, that [Defendant] 'placed, or directed to be placed,' " the calls at issue. 2019 **WL** 2280731, at \*2. Plaintiff concedes that while the calls "advertised **tax**-debt services" (FAC ¶¶ 24, 36, 49), the calls "did not state" at the beginning or end of the messages "the name of the person or on whose behalf the message was being transmitted." (*Id.* ¶¶ 29–31; 40–41; 53–54.) And, as to the other two calls, Plaintiff's description of them utterly fails to connect them to Defendant or even to each other. (*Id.* ¶¶ 37–38, 50–51 (describing the second and third calls simply as having "included and introduced an advertisement" and "constituted telemarketing," respectively).) [5] Further, the FAC "is silent as to the caller ID displayed" during these calls. *Vivint Solar*, 2019 **WL** 2280731, at \*2. And despite Plaintiff alleging that he was directly transferred to an **Alleviate** employee—a fact that was not present in *Vivint Solar*—his pleadings still shed no light on who initiated the offending call, which is necessary to allege direct liability under the TCPA. *Id.*

**\*5** Nor do the facts alleged for the second of the three calls adequately set out a TCPA violation. During that call, which also occurred on June 23, 2023, the message

"requested that the listener of the message call a particular telephone number ...." (FAC ¶ 42.) The FAC alleges that when Plaintiff called that number, the call "was answered with the playing of pre-recorded material, following which an [alleged] employee of **Alleviate** came onto the line." (*Id.* ¶ 44.) But the FAC provides absolutely no factual basis for its assertion that the person who answered the call "was an employee of **Alleviate**." [6] Because there is even less of a nexus between Defendant and the second call as alleged in the FAC, Plaintiff has failed to adequately plead a TCPA violation for this call as well.

Plaintiff neither alleges in the FAC nor argues in his papers a violation of the TCPA under a theory of vicarious liability. Nor could he. Plaintiff simply states in conclusory fashion that Jack Patnoe was an **Alleviate** employee. There are no other details of the call with Patnoe in the FAC, such as, for example, details about how Plaintiff was informed that the representative at the other end of line worked for Defendant, or further context regarding whether the initiator of the call contracted to sell Defendant's services. *Cf. Bank[ ] v. Pro Custom Solar*, 416 F. Supp. 3d 171, 174 (**E.D.N.Y**. 2018) (finding Plaintiff had sufficiently pleaded a TCPA violation because Plaintiff alleged that he was directly transferred to a live representative of the purported agent who stated the phone call was placed to "promote the goods and services of [the defendant]").

Instructive to the Court in assessing the sufficiency of the pleadings is the 2015 Declaratory Ruling and Order issued by the Federal Communications Commission ("FCC"), which has authority to promulgate regulations implementing the TCPA. In that Order, the FCC attempted to clarify what is needed to establish a "direct connection between a person or entity and the making of a call," and explained that the FCC looks "to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it." *2015 FCC Ruling*, 30 F.C.C. Rcd. at 7980. As the Court has noted, there is precious little information with which it can assess the totality of the circumstances surrounding the first June 23 call. Nevertheless, applying the FCC's first factor, the FAC is silent as to who took the steps necessary to place the call, as the automated message did not mention **Alleviate**, and Plaintiff has not included the caller ID of the originating number or provided any details about the three calls' contents. Applying the FCC's second factor, the FAC provides no

detail regarding who was involved in placing the call. Indeed, the Court has not even been presented with details of the alleged conversation Plaintiff had with Jack Patnoe to determine that he was working at the direction of Defendant or that Defendant regularly used calling schemes to advertise its services. *Cf. Vivint Solar*, 2019 **WL** 2280731, at *3 (describing allegation that Plaintiff spoke to an employee of the defendant, who stated that the defendant "regularly utilizes telephone calls in which ... prerecorded material advertises Vivint's services"). Therefore, the Court is still left with no factual allegations connecting Defendant with the initiator of the call so as to establish either direct or vicarious liability under the TCPA.

**\*6** Despite Plaintiff's argument to the contrary, this conclusion is not inconsistent with this Court's determination in one of Plaintiff's other TCPA actions, *Bank v. Spark Energy, LLC*. (*See* Pl.'s Supp. Opp'n, Dkt. 19, at 1); *see also Bank v. Spark Energy, LLC* ("*Spark Energy II*"), No. 19-CV-4478 (PKC) (LB), 2020 **WL** 6873436, at *2 (**E.D.N.Y** Nov. 23, 2020) (denying Plaintiff leave to file an amended complaint after previously dismissing his case without prejudice). In that case, the Court, upon reviewing Plaintiff's proposed amended complaint, noted that it "appear[ed] to correct the[ ] deficiencies" regarding the alleged connection between Defendant and the offending calls. *Spark Energy II*, 2020 **WL** 6873436, at *2. However, there, Plaintiff's proposed amended complaint provided substantially more detail than is present in the FAC, including the phone number from which Plaintiff was called, [7] details of Plaintiff's conversations with the defendant's representatives, and allegations that Plaintiff was given the defendant's name as the provider of the service at issue. *Id.* (citing 33 paragraphs of new information regarding the details of Plaintiff's conversation with the representative). Furthermore, the original complaint in that case, which the Court had found deficient, was far more similar to the barebones FAC in this case, and, on appeal, the Second Circuit found on *de novo* review that the original complaint in *Spark Energy, LLC* was insufficient to state a TCPA claim against Spark Energy. *See Bank v. Spark Energy, LLC*, 860 F. App'x 205, 206 (2d Cir. 2021) (summary order).

Because of the lack of information in the FAC connecting Defendant to the initiator of any of the three calls, the Court finds that Plaintiff has failed to adequately plead a TCPA claim against Defendant and dismisses this cause of action under Rule 12(b)(6).

### B. Section 227(c)(5) of the TCPA ("DNCR Claim")

Section 227(c)(5) of the TCPA provides a private right of action for violations of 47 C.F.R. § 64.1200(c)(2), which prohibits telephone solicitation to telephone numbers on the national DNCR. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). Defendant points to the fact that there is no allegation that the residential land line on which Plaintiff received the three calls was listed on the national DNCR. (Def.'s Mot., at 2.) Plaintiff simply responds that he would "respectfully [ ] request permission to file an amended complaint that would correct this oversight." (Pl.'s Opp'n, at 2.)

This Court has unfortunately been at this very juncture before with Plaintiff. In *Spark Energy*, the Court dismissed Plaintiff's DNCR claim where he similarly failed to allege that his residential telephone number was on the national DNCR. *Bank v. Spark Energy, LLC* ("*Spark Energy I*"), No. 19-CV-4478 (PKC) (LB), 2020 WL 5752185, at *5 (E.D.N.Y. Sept. 24, 2020), *aff'd*, 860 F. App'x 205 (2d Cir. 2021) (summary order). In that case, the Court rejected Plaintiff's invitation to "take judicial notice of the fact that his residential telephone number is on the [DNCR]" because the Court cannot "use such records to establish the truth of the matter asserted therein." *Id.* Here, Plaintiff does not try a similar tactic but acknowledges the insufficiency of his pleading and, without even attempting to articulate good cause, seeks permission to amend his complaint a second time to cure this deficiency. (Pl.'s Opp'n, at 2 ("**Alleviate** notes that ... 'the FAC is silent as to whether either of the alleged residential numbers were actually on the Do-Not-Call Registry or whether Plaintiff placed said numbers on the Do-Not-Call Registry.' Def. Ltr. at 2. I respectfully would request permission to file an amended complaint that would correct this oversight.").) The Court therefore has no trouble dismissing this claim under 12(b)(6).

### C. Leave to Amend TCPA and DNCR Claims

Plaintiff seeks leave to amend his complaint, for a second time, but only as to his DNCR claims. (*Id.*)

**\*7** Rule 15(a)(1) allows a party to amend its complaint once as a matter of course within 21 days after serving the complaint or within 21 days after a responsive pleading has been served. *See* Fed. R. Civ. P. 15(a)(1). Where, as here, the time for amendment as a matter of course has passed, a party may amend its pleading with the opposing party's written consent or with leave of the court. Fed. R. Civ. P.

15(a)(2). "The court should freely give leave [to amend] when justice so requires." *Id.* Nevertheless, "it is within the sound discretion of the [court] to grant or deny leave to amend." *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) (quotation marks omitted).

Certain factors, "such as undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party[,] ... [and] futility of amendment," may justify a district court's decision to deny leave to amend. *Williams v. Citigroup, Inc.*, 659 F.3d 208, 213–14 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). As relevant here, a court may deny a motion to amend where the movant knew or should have known facts upon which the amendment is based, especially where the movant does not explain the delay. *See Hutter v. Countrywide **Bank**, N.A.*, 41 F. Supp. 3d 363, 371 (S.D.N.Y. 2014), *vacated in part on other grounds*, 710 F. App'x 25 (2d Cir. 2018).

As this Court has concluded before in Plaintiff's *Spark Energy* case:

> Based on both the volume of, and rulings in, the TCPA cases Plaintiff has filed, it is plain that he specializes in this area, and the Court rejects any suggestion that Plaintiff did not know what facts had to be alleged for his [ ] TCPA claims in this case. Whatever tactical reason Plaintiff may have had for knowingly omitting essential facts in this case, the circumstances here justify a finding of bad faith and the denial of leave to amend.

*Spark Energy II*, 2020 WL 6873436, at *3 (denying Plaintiff leave to amend). It is clear from Plaintiff's litigation history —nearly a decade of bringing TCPA claims in the Eastern District of New York—that he knew or should have known the requirements to adequately plead a violation of both provisions of the TCPA he invokes in this case. Indeed, Plaintiff appears to not have learned from past pleading deficiencies for adequately alleging liability for violations of Section 227(b) and Section 227(c)(5)—even before this very Court. *See, e.g., Spark Energy I*, 2020 WL 5752185; *Spark Energy II*, 2020 WL 6873436. The Court is further compelled to deny Plaintiff leave to further amend his pleadings because

he has already done so once in this case—the day after Defendant filed its first PMC letter seeking leave to file a motion to dismiss. Plaintiff therefore had the benefit of a preview of Defendant's arguments for dismissal, at least as to the first cause of action for a violation of Section 227(b)(1). In the case of his DNCR claim under Section 227(c)(5) of the TCPA, he openly admits to his "oversight" in failing to plead adequate facts and does not even attempt to show good cause for this oversight.

Therefore, the Court finds that Plaintiff's barebones—and ultimately deficient—pleadings do not merit a third chance. See *Spark Energy, **LLC**,* 860 F. App'x at 206 (finding that the Court did not abuse its discretion in denying Plaintiff **Bank** leave to amend in *Spark Energy II*).

### II. Plaintiff's GBL Claim

Section 1367(c) provides, in relevant part, that "district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." **28** U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Benefit Guardian Corp.,* 712 F.3d at 727 (internal quotation marks omitted).

**\*8** Because the Court has dismissed both of Plaintiff's federal causes of action and because the Court finds that judicial economy would be served in so doing, the Court declines to exercise supplemental jurisdiction over this GBL claim. See *Bank v. Philips Elecs. N. Am. Corp.,* No. 14-CV-5312 (JG) (VMS), 2015 **WL** 1650926, at \*3 (**E.D.N.Y**. Apr. 14, 2015) (dismissing Plaintiff's TCPA claim and declining to exercise supplemental jurisdiction over Plaintiff's GBL claim); *see also Spark Energy **LLC**,* 860 F. App'x at 207 ("[H]aving properly dismissed **Bank's** federal claims and denied leave to amend, the District Court did not abuse its discretion in declining to exercise supplemental jurisdiction over his state-law claim.").

### CONCLUSION

For the reasons stated herein, Defendant's motion is granted and this case is dismissed.

### All Citations

Slip Copy, 2024 WL 1332635

---

### Footnotes

1   Plaintiff is no stranger to this Court, as he has initiated numerous lawsuits on his own behalf in the Eastern District of New York. *See, e.g., **Bank** v. Spark Energy, **LLC**,* No. 19-CV-4478 (PKC) (LB); ***Bank** v. CreditGuard of Am., Inc.,* No. 18-CV-1311 (PKC) (RML); ***Bank** v. Am. Renewable Energy Inc.,* No. 18-CV-43 (PKC) (LB); ***Bank** v. Am. Home Shield Corp.,* No. 10-CV-4014 (PKC) (RER); *see also **Bank** v. Dimension Serv. Corp.,* No. 23-CV-2467 (AMD) (JAM); ***Bank** v. Consumer **Tax** Advoc., **LLC**,* No. 23-CV-9229 (HG) (CLP); ***Bank** v. Cogint, Inc.,* No. 18-CV-3307 (WFK) (PK); ***Bank** v. All. Sec. Inc.,* No. 19-CV-3970 (EK) (LB). The vast majority of the actions that Plaintiff has brought in this District, especially for the last nine years, are for violations of the TCPA and GBL.

2   The Court "must take all of the factual allegations in the complaint as true, ... [but is] not bound to accept as true a legal conclusion couched as a factual allegation." *Pension Benefit Guardian Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.,* 712 F.3d 705, 717 (2d Cir. 2013) (internal quotation marks and citations omitted); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true.") (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)); *id.* ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Where the Court finds, as discussed *infra,*

that a factual allegation in the FAC is, in reality, a legal conclusion, the Court has prefaced the statement with "Plaintiff alleges" or "allegedly."

3   This is the entire description of each of the three calls' contents in the FAC. (*Id.*)

4   The Court notes that Plaintiff filed the FAC 23 days after serving his original complaint without leave of the Court. (*See* Summons, Dkt. 4.) Therefore, the FAC falls outside of Rule 15(a)(1)(A)'s 21-day window for amending pleadings as a matter of right. *See* Fed. R. Civ. P. 15(a)(1)(A). However, because leave to amend should be freely granted when justice so requires, and in the absence of any challenge by Defendant, the Court accepts the FAC as his operative pleading. *See U.S. Flour Corp. v. Certified Bakery, Inc.*, No. 10-CV-2522 (JS) (WDW), 2012 **WL** 728227, at *1 n.1 (**E.D.N.Y**. **Mar**. 6, 2012) (adopting same approach).

5   Indeed, the Court is skeptical that none of the three calls identified a specific person or entity, since they are described in the FAC as either "advertisements" or "telemarketing." Yet the FAC is devoid of any details about the contents of those calls. *Compare* Am Compl., *Bank v. CreditGuard of Am., Inc.*, 18-CV-1311 (PKC) (RLM) (**E.D.N.Y**. Jun. 11, 2018), ECF No. 20, ¶¶ 18–19, 27 (Plaintiff **Bank** providing verbatim recitation of allegedly pre-recorded call from which Plaintiff was transferred to one of the defendants' representatives, which led to a live conversation with transferee-defendant's representative indicating that the pre-recorded call likely came from the other defendant).

6   This attempted sleight of hand is emblematic of Plaintiff's FAC, throughout which Plaintiff simply asserts in conclusory, unsupported fashion that **Alleviate** was behind the alleged conduct. (*See, e.g.*, FAC ¶ 20 ("**Alleviate** made, or caused to be made, a telephone call ('**Bank's** First **Alleviate** Call')."), ¶ 23 (labeling first call message "**Bank's** First **Alleviate** Call Message"), ¶¶ 32, 35, 45, 48 (asserting that second and third calls were made or caused to be made by "**Alleviate**" and labeling them and the related messages as such), ¶ 27 (alleging that **Bank** "was transferred to an employee of **Alleviate** named Jack Patnoe"), ¶ 42 (labeling the phone number provided during the second call as the "**Alleviate** Telephone Number").) However, simply asserting a purported fact does not make it one, where there are no factual allegations to support the asserted conclusion.

7   However, the proposed amended complaint did not allege that the phone number from which the recorded call was made belonged to Spark Energy. Rather, it asserted that it was a non-real number because it consisted of only 8 digits, including the area code. *See* Proposed Am. Compl., *Bank v. Spark Energy, LLC*, No. 19-CV-4478 (**E.D.N.Y**. Oct. 2, 2020), ECF No. 24, ¶ 41.

---

**End of Document**                                           © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 19 of 158

Bank v. Vivint Solar, Inc., Not Reported in Fed. Supp. (2019)

KeyCite Yellow Flag - Negative Treatment

Distinguished by    Bank v. GoHealth, LLC,    E.D.N.Y.,    March 8, 2021

2019 WL 2280731

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Todd C. BANK, Plaintiff,

v.

VIVINT SOLAR, INC., Defendant.

18-CV-2555 (MKB)

|

Signed 02/25/2019

**Attorneys and Law Firms**

Todd C. Bank, Law Office of Todd C. Bank, Kew Gardens, NY, for Plaintiff.

Kelly Jones Howell, Ross B. Hofherr, Harris Beach PLLC, New York, NY, for Defendant.

## REPORT AND RECOMMENDATION

ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:

**\*1** Plaintiff Todd C. Bank ("Bank" or "plaintiff"), an attorney proceeding *pro se*, brings this action against defendant Vivint Solar, Inc. ("Vivint" or "defendant"), alleging individual and class claims based on unauthorized "robocalls" in violation of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, and New York General Business Law (the "GBL") § 399-p. See Amended Complaint (June 27, 2018) ("Am. Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") #12. Currently before this Court, on a referral from the Honorable Margo K. Brodie, is defendant's motion to dismiss the Amended Complaint in its entirety pursuant to Rules 12(b)(6) and 12(b)(2) of the Federal Rules of Civil Procedure (the "FRCP"). See Memorandum in Support of Motion to Dismiss (Aug. 10, 2018) ("Def. Mem."), DE #14-1; Order Referring Motion (Oct. 9, 2018). For the reasons that follow, this Court recommends that defendant's motion to dismiss be granted.

## BACKGROUND

The following facts are drawn from plaintiff's Amended Complaint and those that are non-conclusory are accepted as true for purposes of this motion.

On or about March 17, 2018, Bank received an unsolicited phone call to his cellular telephone (the "Prerecorded Call"). See Am. Compl. ¶ 16. Upon answering the telephone call, a prerecorded voice on the other end promoted residential solar-energy services. See id. ¶ 18. Following the playing of the prerecorded material, Bank was transferred to a live person (the "Transferee"). See id. ¶ 19. Bank provided an (unspecified) alias to the Transferee, who told Bank that, approximately 30 minutes later, someone would call him. See id. ¶¶ 20-21. Approximately 30 minutes later, the same cellular telephone utilized by Bank received a telephone call from Joshua Lilly, an employee of defendant, who stated that he was calling to speak with the alias that Bank had provided to the Transferee. See id. ¶¶ 22-23. During the conversation between Bank and Lilly, Lilly stated that Vivint regularly uses telephone calls with prerecorded material advertising Vivint's services. See id. ¶ 24. According to the Amended Complaint, defendant placed, or directed to be placed, the Prerecorded Call. See id. ¶ 32.

Plaintiff brings his lawsuit on behalf of a nationwide class of persons who have received similar prerecorded telephone calls in their home states, as well as on behalf of a class of New York residents who have received such calls on New York telephone numbers. See id. ¶¶ 2, 3.

## PROCEDURAL HISTORY

Plaintiff commenced this action on April 30, 2018. See Complaint (Apr. 30, 2018) ("Compl."), DE #1. Following the filing of defendant's request for a premotion conference in contemplation of moving to dismiss, see Motion for Pre Motion Conference (June 22, 2018), DE #10, plaintiff filed the Amended Complaint, which contains two causes of action: the first, for violations of section 227(b) of the TCPA, and the second, for violations of section 399-p(3)(a) of the GBL, see Am. Compl. The Amended Complaint does not, however, address the alleged deficiencies raised by defendant in its premotion letter with regard to the individual claim brought under section 227(b) of the TCPA, and that claim

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 20 of 158

**Bank v. Vivint Solar, Inc., Not Reported in Fed. Supp. (2019)**

is reasserted in the First Cause of Action in the Amended Complaint. [1]

**\*2** Defendant now moves to dismiss the remaining TCPA cause of action for failure to state a claim, the GBL state law claim for lack of subject matter jurisdiction, and the class claims of non-New York residents for lack of personal jurisdiction.

## DISCUSSION

### I. The Legal Standard Under Rule 12(b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the FRCP, a court must accept the complaint's factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. See, e.g., Sherman v. Town of Chester, 752 F.3d 554, 560 (2d Cir. 2014). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff need not allege "detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 70 (2d Cir. 2014). Nevertheless, "a formulaic recitation of the elements of a cause of action will not do": the claim must set forth "more than labels and conclusions[.]" Twombly, 550 U.S. at 555.

### II. The TCPA Claim

Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful for any person:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned ... to a cellular telephone service....

47 U.S.C. § 227(b)(1)(A)(iii).

Defendant argues that Bank's TCPA claim should be dismissed for failure to state a claim. Specifically, defendant contends that Bank failed to allege facts demonstrating that the Prerecorded Call was made either by Vivint, or by an agent of Vivint for which Vivint would be vicariously liable. See Def. Mem. at 4-8.

Plaintiff counters that his amended pleading sufficiently alleges (1) that defendant is directly liable for the Prerecorded Call, and (2) that defendant is vicariously liable for that robocall under a variety of legal theories, addressed below. See Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's Individual Federal Claims (Aug. 31, 2018) ("Pl. Opp.") at 18-23, DE #15.

#### A. Direct Liability

In order to state a plausible claim for direct liability under section 227(b)(1) of the TCPA, "a plaintiff must allege that a defendant initiated an unlawful call[.]" Bank[ ] v. Pro Custom Solar, 17-CV-613 (LDH) (JO), 2018 WL 3637960, at \*2 (E.D.N.Y. July 31, 2018). Here, the Amended Complaint asserts, in conclusory fashion, that Vivint "placed, or directed to be placed," the Prerecorded Call. See Am. Compl. ¶ 32. The pleading nevertheless acknowledges that, while promoting "residential solar-energy services," id. ¶ 18, the Prerecorded Call did not disclose the name, address or telephone number of any entity (or entities) on whose behalf the call was being made, see id. ¶¶ 27-29. Further, the Amended Complaint is silent as to the caller ID displayed during the Prerecorded Call. Likewise absent from the pleading are any specifics as to the statements made by the Transferee (the live person to whom the robocall was forwarded) regarding the source of the Prerecorded Call or the entity or entities whose business was being promoted.

**\*3** In support of his theory of direct liability, Bank points to the telephone call placed by Lilly to Bank's cellphone 30 minutes after Bank's conversation with the Transferee. See Pl. Opp. at 18; Am. Compl. ¶ 24 (alleging that Lilly stated that Vivint "regularly utilizes telephone calls in which ... prerecorded material advertises Vivint's services"). Lilly's comment is, however, an insufficient basis upon which to infer that Vivint made the specific Prerecorded Call that is the subject of plaintiff's First Cause of Action. See Pro Custom Solar, 2018 WL 3637960, at \*2 (ruling that Bank failed to state a plausible claim for direct liability under section

Bank v. Vivint Solar, Inc., Not Reported in Fed. Supp. (2019)

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 21 of 158

227(b) of the TCPA, despite his allegation that in two calls occurring after the challenged prerecorded call, defendant's agents acknowledged that defendant utilized robocalls); Cunningham v. Channer, LLC, Case # 17-CV-1305-FPG, 2018 WL 4620391, at *6 (W.D.N.Y. Sept. 26, 2018) (denying motion for default judgment where plaintiff failed to allege facts from which the court could infer that defendant, which processed payments on behalf of collection agency that robocall instructed plaintiff to call, was either directly or vicariously liable for violating the TCPA); see also Bank v. Philips Elecs. N. Am. Corp., No. 14-CV-5312 (JG)(VMS), 2015 WL 1650926, at *1-2 (E.D.N.Y. Apr. 14, 2015) (Bank's allegation that prerecorded "calls were 'made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]' " were "too conclusory to state a plausible claim against [defendant]," despite allegation that defendant's product was referenced in the robocall). [2]

**B. Vicarious Liability**

As defendant concedes, see Reply in Support (Sept. 10, 2018) at 1, DE #17, a TCPA defendant may also be held liable under a theory of vicarious liability, see Pro Custom Solar, 2018 WL 3637960, at *2; Cummingham, 2018 WL 4620391, at *6; Jenkins v. National Grid USA, 15-CV-1219(JS)(GRB), 2017 WL 1208445, at *7 (E.D.N.Y. Mar. 31, 2017). In opposing defendant's motion, plaintiff proffers several theories of vicarious liability -- apparent authority, ratification, and aiding and abetting, see Pl. Opp. at 19-21 [3] -- all of which are unavailing for the reasons discussed below. [4]

As a preliminary matter, and as recognized by a series of decisions issued out of this District, in order to withstand a motion to dismiss, a plaintiff asserting vicarious liability in a TCPA action "must allege an agency relationship between the maker of the call, such as a marketing company, and the defendant. See Philips Elecs., 2015 WL 1650926, at *3 (citing Jackson v. Caribbean Cruise Line, Inc., 88 F.Supp.3d 129 (E.D.N.Y. 2015)); accord Alliance Health, 2015 WL 464513, at *2. [5] The existence of *some* connections between the defendant and the maker of the call will not suffice: Vicarious liability will not be found in the absence of "allegations of fact that establish an agency relationship between [the defendant] and [the maker of the robocalls] or any control by [the defendant] over [that entity]." Philips Elecs., 2015 WL 1650923, at *3; see Jackson, 88 F.Supp.3d at 138-39 (granting motion to dismiss TCPA claim; even if a contract existed between the defendant and the sender of automated calls, the pleading contained no "non-conclusory

suggestion of 'direction' or 'control' by [the defendant] of [the robocaller]"); Melito v. Am. Eagle Outfitters, Inc., 14-CV-02440 (VEC), 2015 WL 7736547, at *6-7 (S.D.N.Y. Nov. 30, 2015). As detailed more fully below, the absence of non-conclusory allegations of such an agency relationship and/or control is a fatal flaw in each of plaintiff's various theories of vicarious liability.

*1. Apparent Authority*

**\*4** "Apparent authority exists when a principal, either intentionally or by lack of ordinary care, induces [a third party] to believe that an individual has been authorized to act on its behalf." Highland Capital Mgmt. LP v. Schneider, 607 F.3d 322, 328 (2d Cir. 2010) (internal quotation marks omitted); see Dinaco, Inc. v. Time Warner, Inc., 346 F.3d 64, 69 (2d Cir. 2003). Apparent authority is created "through the words and conduct of the principal as they are interpreted by a third party, and cannot be established by the actions or representations of the agent." Minskoff v. Am. Express Travel Related Servs. Co., Inc., 98 F.3d 703, 708 (2d Cir. 1996) (citing Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989)).

In support of his theory of apparent authority, Bank relies principally on Bank[ ] v. Pro Custom Solar, 2018 WL 3637960, at *3, wherein Judge LaShann DeArcy Hall concluded that Bank had adequately alleged that the defendant was vicariously liable for violations of the TCPA by its purported agent. See Pl. Opp. at 19; see also id. at 15-18. There, however, Bank alleged that after receiving a telephone call with a prerecorded message, he was *directly transferred* to a live representative of the purported agent who stated that the phone call was placed "to 'promote the goods and services of [Defendant].' " See Pro Custom Solar, 2018 WL 3637960, at *3 (brackets in original). A representative of the defendant thereafter confirmed that the purported agent "was its operating service." See id. [6]

Bank's Amended Complaint in the instant action contains no similar factual allegations. Bank provides no details as to the content of the Prerecorded Call from which he could have inferred that it was placed by an agent of Vivint. More importantly, Bank has not identified any statements made by the purported principal (Vivint) that would have led Bank to reasonably believe that the maker of the Prerecorded Call had authority to act on Vivint's behalf. See Thomas v. Taco Bell Corp., 582 F.App'x 678, 679-80 (9th Cir. 2014) (affirming

dismissal of TCPA complaint where plaintiff failed to allege that defendant manifested that agent was authorized); Avola v. Louisiana-Pac. Corp., 991 F.Supp.2d 381, 398 (E.D.N.Y. 2013); see also Keating v. Peterson's Nelnet, LLC, 615 F.App'x 365, 373-74 (6th Cir. 2015) ("[N]othing in the record before this court reasonably can be construed to indicate that the defendants held out to third parties, or to anyone else, that [the marketing company] was authorized to send text messages to individuals who had not agreed to receive them."). Nor does Bank allege that following the Prerecorded Call, he was transferred to a live person who informed him that he was a representative of defendant [7] or was promoting defendant's goods and services. [8]

**\*5** The Amended Complaint does not allege that Bank believed that the Prerecorded Call was placed by an agent of Vivint, let alone that such a belief was reasonable. See Thomas, 582 F.App'x at 679-80 (finding that plaintiff "has not shown that she reasonably relied, much less to her detriment, on any apparent authority"); Smith v. State Farm Mut. Auto. Ins. Co., 30 F.Supp.3d 765, 777-78 (N.D. Ill. 2014). Plaintiff's allegation that, in a subsequent communication, Vivint's representative (Lilly) acknowledged that Vivint uses prerecorded material to advertise its services does not plausibly show that Vivint authorized the Prerecorded Call. See Naiman v. Tranzvia LLC, Case No. 17-cv-4813-PJH, 2017 WL 5992123, at \*7, \*12 (N.D. Cal. Dec. 4, 2017) (plaintiff failed to allege facts sufficient to sustain theory of apparent authority, despite allegation that shortly after plaintiff left a voicemail message in response to telemarketer's robocalls requesting additional information, a representative of defendant called him). [9]

### 2. *Ratification*

Plaintiff additionally argues that in his conversation with Bank, Lilly, acting on behalf of defendant, ratified the Prerecorded Call. See Pl. Opp. at 19. "Ratification requires acceptance by the principal of the benefits of an agent's acts, with full knowledge of the facts, in circumstances indicating an intention to adopt the unauthorized [conduct]." Monarch Ins. Co. of Ohio v. Ins. Corp. of Ireland Ltd., 835 F.2d 32, 36 (2d Cir. 1987); see Hamm v. United States, 483 F.3d 135, 140 (2d Cir. 2007); Davis v. Carroll, 937 F.Supp.2d 390, 427 (S.D.N.Y. 2013); A. Terzi Prods., Inc. v. Theatrical Protective Union, 2 F.Supp.2d 485, 492 (S.D.N.Y. 1998). First, as shown above, see *supra* pp.7-10, plaintiff has failed to allege

any nonconclusory facts to establish an agency relationship between defendant and the maker of the Prerecorded Call. See Thomas, 582 F.App'x at 679, 680 (no ratification of sending of text message absent a principal-agent relationship); Childress, 2018 WL 4684209, at \*4 (no ratification of robocall where plaintiff failed to allege facts to show agency relationship between maker of robocall and defendant, to whom the call was transferred); Murray v. Choice Energy LLC, No. 1:15-cv-60, 2015 WL 4204398, at \*6 (S.D. Ohio July 10, 2015) (dismissing TCPA claim where plaintiff failed to plausibly allege an agency relationship, which is a necessary element of ratification); see also Kristensen v. Credit Payment Servs. Inc., 879 F.3d 1010, 1014-15 (9th Cir. 2018) (where telemarketer was not agent or purported agent of defendant, its conduct was not ratifiable act). Furthermore, the Amended Complaint fails to allege that defendant had any knowledge, let alone "full knowledge," of the material facts surrounding the Prerecorded Call. See Naiman, 2017 WL 5992123, at \*7, \*12, \*13 (rejecting ratification theory and dismissing TCPA complaint despite allegation that live representative of defendant called plaintiff shortly after plaintiff left messages in response to two robocalls); A. Terzi Prods., 2 F.Supp.2d at 492 (Sotomayor, J.) (dismissing claims that were based on conclusory allegations of ratification); see also Hodgin v. UTC Fire & Sec. Ams. Corp., Inc., 885 F.3d 243, 254 (4th Cir. 2018). Therefore, Bank's Amended Complaint does not state a TCPA claim against Vivint based on a ratification theory.

### 3. *Aiding and Abetting*

**\*6** Plaintiff additionally contends that a defendant may be held liable under the TCPA for aiding and abetting a statutory violation. See Pl. Opp. at 19-20. Although defendants may be held vicariously liable for TCPA violations under federal common-law principles of agency, see, e.g., Campbell-Ewald Co. v. Gomez, 136 S.Ct. 663, 674 (2016), plaintiff does not cite a single case, nor has this Court located one, where secondary liability for aiding and abetting was extended to the TCPA. [10] "[W]hen Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors." Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 182 (1994) (construing the Securities Exchange Act). In fact, the Supreme Court has declared that "[i]f ... Congress intended to impose aiding and abetting liability [for violation of a civil statute], we presume it would have used the words 'aid' and 'abet' in the statutory

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 23 of 158

**Bank v. Vivint Solar, Inc., Not Reported in Fed. Supp. (2019)**

text. But it did not." Id. at 177; see Rich v. BAC Home Loans Servicing LP, No. CV-11-00511-PHX-SRB, 2013 WL 10104612, at *5 (D. Ariz. Dec. 13, 2013) (citing Central Bank and dismissing claim for aiding and abetting violations of the FDCPA).

Even assuming *arguendo* that a claim for aiding and abetting a violation of the TCPA were cognizable, plaintiff has not pled facts sufficient to state such a claim. Under federal common law, a plaintiff asserting a cause of action for aiding and abetting a tortfeasor must allege "(1) the existence of a violation by the primary wrongdoer; (2) knowledge of this violation on the part of the aider and abettor; [and] (3) substantial assistance by the aider and abettor in the achievement of the primary violation." Stutts v. De Dietrich Grp., No. 03-CV-4058 (ILG), 2006 WL 1867060, at *12 (E.D.N.Y. June 30, 2006) (internal quotation marks and citation omitted). Bank contends that his allegation that Lilly told him that defendant regularly uses prerecorded phone calls establishes that defendant aided and abetted the statutory violation. See Pl. Opp. at 20. But plaintiff has not identified any substantial assistance that defendant provided to the unidentified party making the Prerecorded Call. See Pan American World Airways, Inc. v. Vetements, Inc., No. 08 Civ. 5480(RJH), 2010 WL 3632732, at *6 (S.D.N.Y. Sept. 16, 2010); Mastafa v. Australian Wheat Bd. Ltd., No. 07 Civ. 7955(GEL), 2008 WL 4378443, at *4 (S.D.N.Y. Sept. 25, 2008) (Lynch, J.); Stutts, 2006 WL 1867060, at *14 n.24. In the absence of such an allegation, the Amended Complaint does not state a claim based on a theory of aiding and abetting liability. The District Court should dismiss the TCPA claim.

### III. New York General Business Law Claim

Plaintiff relies on the Court's exercise of supplemental jurisdiction in connection with his claims brought under New York's GBL. See Am. Compl. ¶ 14. Where, however, a "district court has dismissed all claims over which it has original jurisdiction," it may decline to exercise supplemental jurisdiction over a state claim. See 28 U.S.C. § 1367(c). Having recommended dismissal of the claim over which the Court has original jurisdiction, this Court further recommends that the District Court, in its discretion, decline to exercise supplemental jurisdiction over the remaining state law claims. See Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994) ("exercise of supplemental jurisdiction is left to the discretion of the district court"); see also Philips Elecs., 2015 WL 1650926, at *3 (dismissing Bank's TCPA claim and declining to exercise supplemental jurisdiction over GBL claim); Letter in Response to Defendant's [Premotion] Letter (June

25, 2018) at 2, DE #11 ("Bank does not disagree" that supplemental jurisdiction should be declined if his TCPA claim is dismissed).

### IV. Personal Jurisdiction Over Claims of Out-of-State Class Members

**\*7** This Court briefly discusses defendant's motion to dismiss for lack of personal jurisdiction, which will be rendered moot unless the District Court rejects this Court's recommendation to dismiss plaintiff's federal cause of action for failure to state a claim.

Defendant contends that this Court lacks personal jurisdiction over putative out-of-state class members. See Def. Mem. at 9-15. "Under New York law, 'for a plaintiff to demonstrate personal jurisdiction over a defendant ... the plaintiff must show either that the defendant was present and doing business in New York within the meaning of C.P.L.R. § 301,' known as general jurisdiction, 'or that the defendant committed acts within the scope of New York's long-arm statute, C.P.L.R. § 302,' known as specific jurisdiction." Stroud v. Tyson Foods, Inc., 91 F.Supp.3d 381, 385 (E.D.N.Y. 2015) (quoting Reich v. Lopez, 38 F.Supp.3d 436, 454 (S.D.N.Y. 2014)) (alteration omitted).

First, defendant correctly argues that the Court lacks general jurisdiction over the claims of out-of-state class members because New York is neither defendant's principal place of business nor its state of incorporation. See Def. Mem. at 9-10; Am. Compl. ¶ 8. Thus, defendant is not "at home" in New York so as to invoke either of those two bases for establishing general jurisdiction. See Daimler AG v. Bauman, 571 U.S. 117, 137-39 (2014).

Second, defendant contends that the Supreme Court's decision in Bristol-Myers Squibb Co. v. Superior Court of California, 137 S.Ct. 1773 (2017), compels the conclusion that the Court lacks specific jurisdiction over the claims of out-of-state class members. In Bristol-Myers, 600 individual plaintiffs, only some of whom were California residents, brought a mass-tort action in California state court. See id. at 1778. The Supreme Court concluded that the state courts lacked personal jurisdiction over claims brought by out-of-state plaintiffs against an out-of-state defendant, since neither the conduct nor injuries alleged had occurred in California. See id. at 1781-82. In her dissent, Justice Sotomayor noted that the majority failed to address whether its opinion applied to federal class actions "in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not

**Bank v. Vivint Solar, Inc., Not Reported in Fed. Supp. (2019)**

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 24 of 158

all of whom were injured there." Bristol-Myers, 137 S.Ct. at 1789 n.4. In the wake of the Bristol-Myers decision, lower federal courts have split on whether its rationale applies to federal court nationwide class actions. See, e.g., Gazzillo v. Ply Gem Indus., Inc., 1:17-CV-1077 (MAD/CFH), 2018 WL 5253050, at *7 (N.D.N.Y. Oct. 22, 2018) (applying Bristol-Myers and dismissing non-resident plaintiffs' claims for lack of specific jurisdiction); Molock v. Wholefoods Market, Inc., 297 F.Supp.3d 114, 124-27 (D.D.C. 2018) (concluding that Bristol-Myers did not apply to claims of putative class members); Sloan v. General Motors LLC, 287 F.Supp.3d 840, 858-59 (N.D. Cal. 2018) (holding that Bristol-Myers does not preclude jurisdiction over out-of-state plaintiffs in class action); see also 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 6.26 (5th ed. 2018) (noting split in federal courts).

Here, as Bank notes, he has not yet filed a motion to certify a nationwide class. See Memorandum in Opposition to Defendant's Motion to Dismiss Class Claims (Aug. 31, 2018) ("Pl. Opp. Class") at 5-7, DE #16 (arguing that defendant's motion is premature). Given the unsettled and constantly developing caselaw regarding the application of Bristol-Myers to nationwide class actions, the more prudent course would be to follow the lead of other decisions in this and other districts and to defer the Bristol-Myers issue until such time as plaintiff moves for class certification. See, e.g., Campbell v. Freshbev LLC, 322 F.Supp.3d 330, 337 (E.D.N.Y. 2018); Gonzalez v. Costco Wholesale Corp., No. 16 Civ. 2590 (NGG) (JO), 2018 WL 4783962, at *7 (E.D.N.Y. Sept. 29, 2018).

**V. Plaintiff's Request for Sanctions**

**\*8** Plaintiff requests that sanctions be imposed against defendant for its "flagrantly ... dece[ptive]" arguments regarding specific jurisdiction. See Pl. Opp. Class at 10. This Court does not find defendant's arguments, or its characterization of the cases on which it relies, deceptive. Accordingly, plaintiff's request for sanctions should be denied.

### CONCLUSION

For the foregoing reasons, this Court respectfully recommends that defendant's motion to dismiss under Rule 12(b)(6) of the FRCP be granted and that the District Court decline to exercise supplemental jurisdiction over plaintiff's New York state law claim. In the alternative, this Court recommends deferring ruling on defendant's motion to dismiss the out-of-state putative class members' claims for lack of personal jurisdiction until plaintiff moves for class certification. Finally, plaintiff's request for sanctions should be denied.

Any objections to the recommendations contained herein must be filed with Judge Brodie on or before March 11, 2019. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2280731

---

### Footnotes

1      In amending his pleading, plaintiff did drop his claim under section 227(c)(5) of the TCPA, which was set forth in the Second Cause of Action of the original Complaint.

2      Indeed, as a frequent filer of TCPA claims, on behalf of himself and others, Bank is well versed in how to identify an unauthorized caller. See, e.g., Pro Custom Solar, 2018 WL 3637960, at *1 (describing investigation conducted by Bank); Philips Elecs., 2015 WL 1650926, at *1 (identifying caller by information in caller ID); Bank v. Alliance Health Networks, LLC, No. 15-CV-213 (JG)(VMS), 2015 WL 4645317, at *1 (E.D.N.Y. Aug. 4, 2015) (same), aff'd, 669 F.App'x 584 (2d Cir. 2016).

Bank v. Vivint Solar, Inc., Not Reported in Fed. Supp. (2019)

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 25 of 158

3  Notably, Bank does not argue that the maker of the Prerecorded Call acted with *actual authority* from defendant to do so. See Pl. Opp. at 19-21; cf. Pro Custom Solar, 2018 WL 3637960, at *2 (noting that Bank "advance[d] the theory of actual authority").

4  Plaintiff's purported theory of "Approval After the Tortious Act" is not distinct from his aiding and abetting and/or ratification theories. See generally Semon v. Rock of Ages Corp., Case No. 5:10-cv-143, 2011 WL 13112212, at *13 (D. Vt. Dec. 23, 2011) ("all who aid in the commission of a tort by another, or who approve of it after it is done, if done for their benefit, are liable in the same manner as they would be if they had done it with their own hands") (citation, internal quotation marks, and alteration omitted).

5  In Alliance Health, a case brought by Bank, Judge John Gleeson distinguished his earlier decision in another Bank case, McCabe v. Caribbean Cruise Line, Inc., No. 13-CV-6131 (JG), 2014 WL 301487, at *3 (E.D.N.Y. July 3, 2014), in which robocalls were alleged to have been made pursuant to a contract with one of the defendants. See 2015 WL 4645317, at *1.

6  Bank also relies upon unreported rulings in two related TCPA cases brought by him in this District, in which Judge Carol B. Amon denied the defendants' motions for summary judgment. See Pl. Opp. at 14 (citing DE #107 in Bank v. Lifewatch Inc., 15cv2278 (CBA), and DE #62 in Bank v. Lifewatch Inc. 15cv5708 (CBA)). An unreported ruling on the record has no precedential value, see Bd. of Managers of Soho Int'l Arts Condo. v. City of New York, No. 01 Civ.1226 (DAB), 2003 WL 21403333, at *15 & n.20 (S.D.N.Y. June 17, 2003), and the court transcript upon which Bank purports to rely, see Pl. Opp. at 14, has not even been made part of the record in this case. Moreover, the facts alleged in the two Lifewatch complaints bear no resemblance to the facts pled in the instant case: There, at the conclusion of the challenged robocalls, Bank was transferred either to the defendant's representative, see Amended Complaint ¶ 11, DE #37 in Lifewatch, 15-cv-5708, or to a live person who identified the defendant as the maker of the robocall, see Amended Complaint && 22-28, DE #48 in Lifewatch, 15cv2278.

7  Even had that happened, at least one court has held that "[t]he transfer of the call [to the defendant] does not establish that Defendant exerted control over the initiator of the call, supervised or controlled the initial call, or maintained any sort of relationship with the initiator of the call, and thus is insufficient to establish an agency relationship between the transferor and Defendant." Childress v. Liberty Mut. Ins. Co., No. 17-CV-1051 (MV/KBM), 2018 WL 4684209, at *4 (D.N.M. Sept. 28, 2018).

8  Plaintiff's reliance on Pro Customer Solar is therefore misplaced, as Bank alleged in that case that upon receiving the prerecorded calls, he was transferred to a live person who stated that the calls were being made to promote the defendant's goods and services. See 2018 WL 3637960, at *1. And in Charvat v. Allstate Corp., 29 F.Supp.3d 1147, 1150 (N.D. Ill. 2014), the defendant was specifically referenced in the robocalls.

9  The facts in Naiman are most closely analogous to those in the instant case, and Bank's cursory dismissal of the Naiman decision is unpersuasive. See Pl. Opp. at 23. Bank discusses at length two earlier decisions out of the same district, see id. at 10-12 -- Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc., Case No. 16-cv-05486–JCS, 2017 WL 733123 (N.D. Cal. Feb. 24, 2017), and Morris v. SolarCity Corp., Case No. 15-cv-05107-RS, 2016 WL 1359378 (N.D. Cal. Apr. 6, 2016) -- a couple of outliers that have never been cited by any federal courts in New York and that are at odds with decisions from this District.

10  Bank appears to conflate aiding and abetting liability with vicarious liability. See Pl. Opp. at 19 (listing "Aiding and Abetting" as subheading under "Vicarious Liability"). In fact, an aiding and abetting theory imposes liability on a defendant for its own acts while vicarious liability imposes liability on a defendant for the acts of its agents. See Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 194 (2d Cir. 2010).

Bank v. Vivint Solar, Inc., Not Reported in Fed. Supp. (2019)

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 26 of 158

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite citing references available

2023 WL 2592371
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Trevor BARNES, et al., Plaintiffs,
v.
SUNPOWER CORPORATION,
Defendant.

Case No. 22-cv-04299-TLT
|
Signed March 16, 2023

### Attorneys and Law Firms

Adam J. Schwartz, Adam J. Schwartz, Attorney at Law, Beverly Hills, CA, Anthony I. Paronich, Pro Hac Vice, Paronich Law, P.C., Hingham, MA, Edward A. Broderick, Pro Hac Vice, Broderick Law, P.C., Boston, MA, for Plaintiffs.

Alexandra Nicole Krasovec, Christine Marie Reilly, Erin Gilmore, Manatt, Phelps & Phillips, LLP, Los Angeles, CA, for Defendant.

### ORDER GRANTING MOTION TO DISMISS

Re: ECF No. 24

TRINA L. THOMPSON, United States District Judge

**\*1** Plaintiffs Trevor Barnes and Stephanie Brown ("Plaintiffs") bring this proposed putative class action against Defendant SunPower Corporation ("Defendant") for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq. See Pls.['] Compl., ECF No. 1. Before the Court now is Defendant's motion to dismiss the entire complaint under Rule 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, or in the alternative or in addition, Defendant

seeks an order striking Plaintiffs' class allegations under Rule 12(f) and Rule 23 of the Federal Rules of Civil Procedure. Def. ['s] Mot. to Dismiss, ECF No. 24.

In its discretion, the Court finds this motion suitable for determination without oral argument. Civ. L.R. 7-1(b). Having carefully considered the parties' briefs, the relevant legal authority, and for the reasons below, the Court hereby **GRANTS** Defendant's motion to dismiss.

### I. BACKGROUND

#### A. Plaintiff Barnes's Allegations

Plaintiff Barnes is an individual residing in Hawthorne, California. Compl. ¶ 5. He has a residential telephone number that has "been on the National Do Not Call Registry [("DNC")] for more than 31 days prior to June 2, 2022 and it has not been removed from the [DNC] since that time." Id. ¶ 21.

Plaintiff Barnes alleges that on June 2, 2022, he received two calls from Defendant "offering its good[s] or services." Id. ¶ 27. Plaintiff Barnes answered the first call and said he was not interested. Id. ¶ 28. The first call was from caller ID 385-398-XXXX, and a "later return call to that number to an entity that identified itself as Green Energy Solutions." Id. ¶¶ 29-30. Plaintiff Barnes alleges that because he was "annoyed that he was receiving a second illegal call after expressing his lack of interest, he played along in order to learn who was behind the calls and whose goods or services were being offered." Id. ¶ 31. Plaintiff Barnes claims he "spoke to a woman named Lia Smith, who identified herself as working for [Defendant]." Id. ¶ 31.

#### B. Plaintiff Brown's Allegations

Plaintiff Brown is an individual residing in Lakeland, Florida. Compl. ¶ 6. She does not allege to have her cellular number on the DNC. See Compl. Plaintiff Brown alleges that on May 31, 2022, she received "a prerecorded phone call on her cellular telephone. Before the message played there was a pause and a click, which is indicative of an autodialed call." Id. ¶ 38. "The prerecorded message stated that it was Brian Lee from 'solar project' and stated

if interested in solar panels, press a number." *Id.* ¶ 39.

"In order to find our who was behind the illegal prerecorded call to her cell phone, Ms. Brown pressed the number and spoke with a woman named Sarah who gave her a call back number of 817-813-XXXX and made an appointment for June 1, 2022." Compl. ¶ 40. Plaintiff Brown alleges she "additionally received a confirmatory text from 510-426-XXXX and a confirmatory email from solaradvisors@sunpower.com." *Id.* ¶ 41. According to Plaintiff Brown, the ability of the caller to transfer her directly to ... Sarah at [Defendant] indicates that the caller either worked at [Defendant] or was previously authorized to the place the call by [Defendant], as did the confirmatory text and email." *Id.* ¶ 42.

## II. LEGAL STANDARD

**\*2** Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to " 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.' " *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, " 'a plaintiff may plead herself out of court' " if she "pleads] facts which establish that [s]he cannot prevail on h[er] ... claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

## III. DISCUSSION

Under the TCPA, it is "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States ... to make any call ... using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call...." 47 U.S.C. § 227(b)(1)(A)(iii). An automatic telephone dialing system is "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers." *Id.* at § 227(a)(1).

To properly plead a TCPA claim, a plaintiff must allege that (1) the defendant called or texted a cellular telephone number (2) using an automatic telephone dialing system (3) without the recipient's prior express consent. *See Meyer v. Portfolio Recovery Assocs.*, LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) ("[A] text message is a 'call' within the TCPA.").

Defendant argues that Plaintiffs fail to plausibly plead that Defendant is directly or vicariously liable for the alleged violations of the TCPA. The Court agrees with Defendant.

### A. Direct or Vicarious Liability

"To 'make' a call under the TCPA," and thus become liable, "the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Ewing v. Encor Solar, LLC*, No. 18-CV-2247-CAB-MDD, 2019 WL 277386, at \*6 (S.D. Cal. Jan. 22, 2019) (citing *Gomez v. Campbell-Ewald, Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014)).

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to so act." *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2008) (discussing agency in the context of a TCPA lawsuit) (quoting *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017)). "For an agency relationship to exist, an agent must have authority to act

on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.' " *Mavrix*, 873 F.3d at 1054 (quotation omitted).

**\*3** Here, Plaintiffs make only conclusory allegations that Defendant was directly or vicariously involved in transmitting the May 31, 2022, and June 2, 2022 telephone calls and text. For example, Plaintiff Barnes alleges that the first call he received was from caller ID 385-398-XXXX, but he does not allege this call originated directly from Defendant. Compl. ¶ 29. In fact, Plaintiff Barnes alleges that a "later return call to that number to an entity that identified itself as Green Energy Solutions." *Id.* ¶ 30. Plaintiff Barnes also claims he "spoke to a woman named Lia Smith, who identified herself as working for [Defendant]." *Id.* ¶ 31. However, no facts he has alleged support a plausible inference that Defendant itself made the two alleged calls or that Defendant has an agency relationship with "Green Energy Solutions."

Similarly, Plaintiff Brown alleges that she received "a prerecorded phone call on her cellular telephone" with a message stating it was Brian Lee from "solar project." Compl. ¶ 38. Plaintiff Brown does not allege that this initial call originated from Defendant. Instead, she alleges that she pressed a button as instructed and spoke with a woman named "Sarah who gave her a call back number of 817-813-XXXX," and she "additionally received a confirmatory text from 510-426-XXXX and a confirmatory email from solaradvisors@sunpower.com." *Id.* ¶ 41.

However, no facts she alleges support a plausible inference that Defendant itself made the original call or that Defendant has an agency relationship with "solar project." In addition, Plaintiff Brown does not allege that her number is placed on the DNC, and she only received the alleged confirmatory email from solaradvisors@sunpower.com after she voluntarily pressed a button to speak with someone. According to Plaintiff Brown, the ability of the caller to transfer her directly to ... Sarah at [Defendant] indicates that the caller either worked at [Defendant] or was previously authorized to the place the call by [Defendant], as did the confirmatory text and email," *id.* ¶ 42, but this allegation is conclusory and insufficient to establish that Defendant directly made the call or that Defendant has an agency relationship with "solar project" who made the initial call.

In other words, Plaintiffs here do not plausibly allege that Defendant directly made the alleged calls, nor do they plausibly allege what relationship, if any, they believe "Green Energy Solutions" and "solar project" had with Defendant and what, if any, control Defendant had over

the persons who made the alleged calls. "In determining whether vicarious liability may be imposed, the 'extent of control exercised by the [principal]' is the 'essential ingredient.' " *Jones*, 887 F.3d at 450 (quoting *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010)). A plaintiff "must also establish actual authority to place the unlawful calls." *Jones*, 887 F.3d at 449.

Accordingly, the Court finds Plaintiffs have failed to plausibly allege a TCPA claim. *See, e.g., Canary v. Youngevity Int'l, Inc.*, No. 5:18-cv-03261-EJD, 2019 WL 1275343, at \*6 (N.D. Cal. Mar. 20, 2019) ("Lacking, however, are sufficient factual allegations to plead that [defendant] exercised control over the specific contents of the March 15 call.... Even if [plaintiff] had alleged such facts, control over the content of an advertising call, without more, is insufficient to plead vicarious liability."); *see also Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014) ("To succeed on this [TCPA] vicarious liability theory, [plaintiff] must demonstrate that these entities acted as an agent of [defendant]: that [defendant] controlled or had the right to control them and, more specifically, the manner and means of the text message campaign they conducted.") (citing *Bonds*, 608 F.3d at 506).

### B. Leave to Amend
**\*4** Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 is to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). Leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

Despite the above deficiencies, the Court cannot say at this stage that amending Plaintiffs' complaint would be futile. Plaintiffs may still be able to allege sufficient facts to state a TCPA claim. Accordingly, dismissal of Plaintiffs' complaint is with leave to amend.

**Barnes v. SunPower Corporation, Not Reported in Fed. Supp. (2023)**

---

**IV. CONCLUSION**

For the above reasons, Defendant's motion to dismiss is **GRANTED** with leave to amend.[1] Any amended complaint must be filed no later than within 14 days of the date of this Order. No new claims or parties may be added without leave of court or stipulation of Defendant. Any response to an amended complaint is due 14 days after Plaintiff's filing. In any such response, Defendant may not move to dismiss based on arguments that should have been raised previously.

This Order terminates docket number 24.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2592371

Footnotes

1    Because the Court finds Plaintiffs have failed to plausibly allege a TCPA violation under Rule 12(b)(6), the Court **GRANTS** Defendant's motion to dismiss on this ground. As such, the Court need not reach the question of whether Plaintiffs claims are subject to dismissal under Rule 12(b)(1) or whether Plaintiffs' class allegations should be stricken under Rule 12(f) and Rule 23.

---

**End of Document**                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 31 of 158

**Bennett v. Celtic Insurance Company, Not Reported in Fed. Supp. (2022)**

2022 WL 865837

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.

Tawni BENNETT, individually and on
behalf of all other similarly situated, Plaintiff,

v.

CELTIC INSURANCE COMPANY, CR
Insurance Group, LLC, and Joel Ortiz, Defendants.

Case No. 20-cv-06172

|

Signed 03/23/2022

**Attorneys and Law Firms**

Joshua Harris Eggnatz, Eggnatz Pascucci, P.A., Davie, FL, Jordan Richards, Jordan Richards PLLC, Fort Lauderdale, FL, for Plaintiff Tawni Bennett.

Phillip Russell Perdew, William Patrick Conlon, Locke Lord LLP, Chicago, IL, for Defendant Celtic Insurance Company.

Vincent B. Lynch, ELP Global, Orlando, FL, Adrian Mendoza, Jr., Angela Marie Iaria, Ms., Lillig & Thorsness, Ltd., Oak Brook, IL, for Defendant CR Insurance Group, LLC.

**MEMORANDUM OPINION AND ORDER**

John Robert Blakey, United States District Judge

**\*1** Plaintiff Tawni Bennett brings putative class-action claims against Defendants Celtic Insurance Company, CR Insurance Group, LLC, and Joel Ortiz for violating the Telephone Consumer Protection Act (TCPA) and the Illinois Automatic Telephone Dialers Act (IATDA). [15]. She alleges that Defendants "placed thousands of nonconsensual automated or prerecorded calls to consumers' cellphones," including hers, using an "automatic telephone dialing system." *See id.* at ¶¶ 1–3. This Court previously dismissed Plaintiff's claims against Defendants CR and Ortiz for lack of personal jurisdiction. *See* [40]. Defendant Celtic now moves to dismiss Plaintiff's TCPA and IATDA claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). [25]. For the reasons explained below, this Court grants Celtic's motion.

**I. The Complaint's Allegations**

In December 2019, Plaintiff began receiving telemarketing calls on her cellular phone trying to sell her health insurance. [15] at ¶¶ 10, 19. These unsolicited calls continued through October 2020, even though Plaintiff registered her cellphone number on the National Do-Not-Call Registry in 2014. *See id.* at ¶¶ 39–40, 54. Plaintiff incurred charges for the calls. *Id.* at ¶ 52.

Plaintiff claims that the calls were made using an automatic telephone dialing system (ATDS). *Id.* at ¶ 28. She knew this because the calls were prerecorded, "sounded the same," and "had the same or substantially similar" generic message that "the caller had a 'very important call to help you' with 'renewal of your insurance.' " *Id.* at ¶¶ 24–29. Plaintiff additionally alleges, based on "information and belief," that the ATDS at issue can "store or produce telephone numbers ... using a random or sequential number generator" and "dial numbers without human intervention." *Id.* at ¶¶ 44–45. She states that the caller used "spoofed" phone numbers because most calls she received "displayed a different number." *Id.* at ¶¶ 21, 41.

While investigating the source of the calls, Plaintiff connected with the caller's live operators on two occasions. *Id.* at ¶ 31. The live operators "identified themselves as sales agents who worked with Ambetter to sell an Ambetter plan." *Id.* One of them referred to the insurance product as "our plans" and stated that she was calling "with Ambetter" from "the call center." *Id.* Ambetter, the only policy offered in the calls, is a product of Defendant Celtic. *Id.* at ¶¶ 31–32, 35. Upon agreeing to purchase "the health insurance product offered in the calls," Plaintiff received a copy of the insurance policy, which "confirmed" that the "calls and product sold were from, or on behalf of Celtic." *Id.* at ¶ 34.

Plaintiff alleges that "Defendants promote and market Celtic services and products" through unlawful telemarketing. *Id.* at ¶ 15. In her second amended complaint, she names as Defendants CR and Ortiz, "licensed and authorized Celtic insurance broker and/or sales agent[s]," and Celtic, a company that "hires, authorizes, and pays third-party brokers and sales agents, including but not limited to CR and Ortiz," to sell its products via telemarketing. *Id.* at ¶¶ 11–13.

**\*2** Plaintiff also alleges that "Celtic and/or CR" provided "interim instructions" to "CR and/or Ortiz regarding the calls" and specified "the geographic location and/or volume of the calls." *Id.* at ¶¶ 73–75. Additionally, "Defendants specified

the criteria of potential customers," allowed their marketers to access "records and data concerning the persons called," and "had access to the sales and customers generated by the illegal robocalling. *Id.* at ¶¶ 77–79. Finally, Plaintiff claims that she reasonably believed "the telemarketers who called her had received permission, authority, and instruction to conduct activity on behalf of Defendant Celtic." *Id.* at ¶ 82.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) tests the factual sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so the defendant could have "fair notice" of the claim and "the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The plaintiff is not required to provide "detailed factual allegations" at the pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The alleged facts, however, must be enough to raise a facially plausible right to relief. *Twombly*, 550 U.S. at 569. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Warcik v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678).

When deciding a Rule 12(b)(6) motion, this Court accepts "all well-pleaded allegations of the complaint as true," and draws all reasonable inferences in favor of the plaintiff. *Iqbal*, 556 U.S. at 678. This Court, however, need not accept a complaint's legal conclusions and "threadbare recitals of the elements of a cause of action." *Id.*; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## III. Analysis

In its motion, Celtic seeks to dismiss both of Plaintiff's claims for failure to state a claim. This Court considers the sufficiency of the allegations as to each claim in turn.

### A. The Sufficiency of Plaintiff's TCPA Allegations

The TCPA makes it "unlawful to use an automatic telephone dialing system or an artificial or prerecorded voice message, without the prior express consent of the called party, to call any ... cellular telephone ... for which the receiver is charged for the call." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368,

373 (2012); *see also* 47 U.S.C. § 227(b)(1)(A)(iii). An entity violates the TCPA and may be held directly liable if it initiates the unlawful calls to the plaintiff; an entity may also be liable vicariously, under common law agency principles, if third parties make calls on its behalf. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771–73 (N.D. Ill. 2014) (citing *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Red. 6574 (2013)).

Plaintiff claims that Celtic is directly or vicariously liable for the unlawful calls at issue in this case. [15]. She alleges that she received calls from "Defendants," CR, Ortiz, or an unknown telemarketer. *See id.* at ¶¶ 11, 19, 57, 63, 68. She further claims that Celtic is liable as part of a joint enterprise with CR and Ortiz for the alleged TCPA violations. *Id.* at ¶¶ 104–15. Celtic argues that Plaintiff's claims fail for various reasons, including that she did not allege facts showing that Celtic itself physically placed the calls and did not allege facts to demonstrate any agency relationship between Celtic and the individuals or entities that called her. [25].

### 1. Liability Based upon CR and Ortiz's Actions

**\*3** As a preliminary matter, this Court dismissed Plaintiff's joint enterprise allegations based upon its prior dismissal of CR and Ortiz for lack of personal jurisdiction. *See* [40]. For the same reasons, this Court dismisses Plaintiff's allegations seeking to hold Celtic vicariously liable for the actions of its purported agents CR and Ortiz. Although Plaintiff claims that CR and Ortiz have engaged in unlawful telemarketing, *see, e.g.*, [15] ¶ 85, her complaint does not plausibly link their conduct to the calls *she* received. She never spoke to either of them and does not allege any connection between them and the live operators with whom she spoke.

### 2. Liability Based Upon the Ambetter Representative

Plaintiff also seeks to hold Celtic liable for the calls that wound up connecting her to the Ambetter call center representative. But, again, Plaintiff failed to allege facts that would provide a substantive basis to hold Celtic either directly or vicariously liable for the calls that connected her to Ambetter's call center.

### a. Direct Liability

Direct liability exists when a defendant "initiates" the disputed phone call. *Smith*, 30 F. Supp. 3d at 771. Initiation occurs when the defendant physically places the calls or is "so involved in" their placement that it essentially made them itself. *Warciak v. Subway Rests., Inc.*, No. 1:16-CV-08694, 2019 WL 978666, at *2 (N.D. Ill. Feb. 29, 2019), *aff'd*, 949 F.3d 354 (7th Cir. 2020). The "so involved" standard is demanding; a defendant "generally does not 'initiate' calls placed by third-party telemarketers," even if the third party had acted on its behalf. *Smith*, 30 F. Supp. 3d at 771.

Plaintiff does not claim that Celtic made the calls. Instead, she alleges that "Defendants utilized a systematic telemarketing campaign whereby robocalls were placed in a seamless process to make it appear to Plaintiff and Class Members that Defendant, Celtic, was calling them directly, or that they were being called on Defendant Celtic's behalf, from Defendants' telemarketing department or call center." [15] at ¶ 68; [32]. But her allegations do not demonstrate that Celtic was "so involved" in placing the calls at issue.

The allegations relating to her conversations with the live operators show at best that the calls originated from *Ambetter*'s call center. But Plaintiff does not plausibly tie Ambetter to Celtic. Plaintiff does allege that the Ambetter plan is a product promoted and sold by Celtic, *id.* at ¶ 35, but she does not allege, for example, that Ambetter is sold exclusively by Celtic, that Ambetter is otherwise synonymous with Celtic, or that anyone selling Ambetter necessarily worked for Celtic. Plaintiff alleges that the insurance policy she received after talking with the live operators "further confirmed that the calls and product sold were from, or on behalf of Celtic." *Id.* at ¶ 34. But she alleges no facts to suggest anything more than the identification of the Ambetter product; certainly she alleges nothing about the actual content of the policy, or any facts to tie Celtic (as opposed to Ambetter) to its issuance. In short, this allegation is conclusory, and the Court need not accept it as true.

*Smith* and *Warciak* are dispositive. In both *Smith* and *Warciak*, the court dismissed the direct liability claim because the plaintiff acknowledged that a third party was responsible for the disputed telemarketing activities. *See Smith*, 30 F. Supp. 3d at 771; *Warciak*, 2019 WL 978666, at *2. Here, although Plaintiff did not explicitly acknowledge the point, she did not allege facts affirmatively raising a plausible right to relief. Plaintiff has not alleged facts that plausibly establish that Ambetter is Celtic; nor has she alleged facts showing that a call from a person selling Ambetter necessarily equates with

Celtic. This Court therefore finds that Plaintiff's allegations fail to state a claim against Celtic for direct liability under the TCPA.

### b. Vicarious Liability

**\*4** The TCPA additionally holds a defendant vicariously liable for the unlawful telemarketing activities conducted by its third-party agents. *Warciak*, 949 F.3d at 356. Parties create an agency relationship "when a person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act." Restatement (Third) of Agency § 1.01 (2006). Plaintiff here argues that an agency relationship exists between Celtic and the telemarketers from Ambetter's call center, and she bases her argument on her allegation that the caller never advised her that it was not an Ambetter/Celtic representative or that it was not an authorized agent of Ambetter/Celtic. [15] at ¶ 33. But the failure to disclose a non-connection does not necessarily create an agency relationship; indeed, by that purported standard, almost anyone could be liable.

Agency is "typically a factual issue" that warrants discovery. *See Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016) (citing *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014)). At the motion to dismiss stage, a plaintiff need not identify the third-party telemarketer responsible for her injury or "what arrangement that third party had" with the defendant, *see id.*, because only the defendant "can reasonably be expected to know these facts," *Charvat*, 29 F. Supp. 3d at 1151. The complaint must, however, allege facts sufficient to support an inference that the defendant acknowledges the telemarketer's activities.

In *Charvat*, the court found the plaintiff's allegation that the prerecorded call stated it was *backed by* the defendant sufficient to establish a substantive basis for vicarious liability. 29 F. Supp. 3d at 1150–51. Likewise, in *Vessal v. Alarm.com*, the court denied dismissal of the plaintiff's agency claims because she asserted that her callers used the named defendant's website. No. 17 C 2188, 2017 WL 4682736, at *3 (N.D. Ill. Oct. 18, 2017). And, in *Mauer*, the court found a plausible connection between a telemarketer and the defendant when, minutes after the telemarketer received the plaintiff's investigator's phone number, the

defendants called the investigator via the same number. 2016 WL 4651395, at *2.

Conversely, courts have dismissed complaints that only allege a contractual relationship between the telemarketer and the defendant, *see* Warciak, 949 F.3d at 356, or the telemarketer's one-sided namedropping of the defendant's product, *see* Cunningham v. Health Plan Intermediaries Holdings, LLC, No. 17-CV-1216, 2018 WL 835222, at *6 (N.D. Ill. Feb. 13, 2018) (dismissing the plaintiff's apparent authority claim because he based it solely upon the telemarketer's mentioning the defendant's name and product).

Here, Plaintiff's complaint only alleges the live operators' one-sided namedropping of Ambetter, a product available from Celtic and possibly others. She does not allege facts suggesting that Celtic actively interacted with the live operators by "backing" them or allowing them to use or sell its exclusive products. She also does not claim that she has interacted with Celtic at all, let alone immediately after connecting with the telemarketer. Because Plaintiff's allegations do not support the existence of active interactions between the telemarketer and the defendant, this Court dismisses her vicarious liability claims against Celtic based upon the Ambetter caller.

### B. The Sufficiency of Plaintiff's IATDA Allegations

The IATDA makes it unlawful for a person to "operate an autodialer in this State except in accordance with this Act." 815 Ill. Comp. Stat. 305/10. To state a claim under the IATDA, a plaintiff must allege that: "(1) she is a telephone customer; (2) the defendant placed a call using an autodialer; (3) the defendant played a prerecorded message; (4) the call was not made with her consent; and (5) she was injured by the defendant's alleged violation." Thrasher-Lyon v. Ill. Farmers

Ins. Co., 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012); 815 Ill. Comp. Stat. 305/30(b)–(c).

**\*5** Plaintiff alleges that Celtic violated the IATDA because Celtic "caused calls to be made to the phones of Plaintiff" using an autodialer that played a prerecorded message. [15] at ¶ 158. As discussed above, however, Plaintiff has not plausibly alleged that either Celtic or its third-party agent placed the calls she received. This Court, therefore, finds that Plaintiff's allegations fail to state a claim under the IATDA and dismisses her IATDA claims against Celtic.

### IV. Conclusion

For the reasons explained more fully above, this Court grants Defendant Celtic's Rule 12(b)(6) motion to dismiss [25] and dismisses Counts I through VI of Plaintiff's second amended complaint. The Court notes that Plaintiff has already amended her complaint twice, including once in response to Celtic's Rule 12(b)(6) arguments. Yet, given Rule 15(a)(2)'s mandate to freely give leave to amend, the Court will give Plaintiff one last chance to cure the deficiencies noted above. *E.g.*, Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana, 786 F.3d 510, 519 (7th Cir. 2015) ("a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). If, consistent with Rule 11, Plaintiff can allege facts to support her claims against Celtic, she may amend her complaint by April 15, 2022. If Plaintiff fails to file an amended complaint by this date, the Court will dismiss this case.

### All Citations

Not Reported in Fed. Supp., 2022 WL 865837

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite citing references available

2024 WL 3367536
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

Stephanie BROWN, individually and on behalf of others similarly situated, Plaintiff,
v.
NANO HEARING TECH OPCO, LLC d/b/a Nano Hearing Aids, Defendant.

Case No.: 3:24-cv-00221-BTM-JLB
|
Signed July 9, 2024

**Attorneys and Law Firms**

Aryanna Yvette Young, Ryan Lee McBride, Kazerouni Law Group, APC, San Diego, CA, for Plaintiff.

Kenneth M. Fitzgerald, Fitzgerald Knaier LLP, San Diego, CA, Michael L. Simes, Pro Hac Vice, Simes Law P.C., New York, NY, for Defendant.

**ORDER GRANTING DEFENDANT NANO HEARING AIDS' MOTION TO DISMISS**

**[ECF NO. 6]**

Barry Ted. Moskowitz, United States District Judge

**\*1** Defendant Nano Hearing Tech Opco, LLC doing business as Nano Hearing Aids ("Nano") has filed a Motion to Dismiss Plaintiff's Complaint. (ECF No. 6 ("Def.'s MTD").) In response, Plaintiff Stephanie Brown ("Brown") filed an opposition. (ECF No. 7 ("Pls.' Opp'n").) Nano then filed a reply. (ECF No. 10 ("Def.'s Reply").) For the reasons discussed below, the Court

**grants** Nano's Motion to Dismiss and Motion to Strike.

**I. BACKGROUND**

Brown, on behalf of herself and a potential class, filed suit against Nano alleging unsolicited marketing that constitutes negligent and willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5). (ECF No. 1 ("Complaint").) Brown alleges she "has been on the National Do Not Call Registry since approximately June 12, 2009," and that she has never consented to contact from Nano. (Id. at ¶¶ 28, 35.) Brown alleges that despite the above, she received two phone calls on or around January 19, 2023 from the phone numbers 727-431-6059 and 727-413-6449, both of which she alleges "[u]pon information and belief ... belong[ ] to Defendant and/or Defendant's agent." (Id. at ¶¶ 30–31.) She alleges the callers both promoted Nano Hearing Aids to her. (Id.) Next, Brown alleges she received another phone call on or around February 15, 2023 from the phone number 727-373-1759, during which she "spoke to Daniel Houston who said he was with Life Care." (Id. at ¶ 32.) Mr. Houston then transferred the call to someone named Ken, who gave Brown a callback number of 619-348-6968 x 21. (Id.) Brown alleges this call was also made by Defendant's agent who also spoke to her about Nano Hearing Aids, and that "[w]hen called back, this number goes to Nano Hearing." (Id.)

Brown's Complaint asks for declaratory and injunctive relief and damages under section 277 of the TCPA. (Id. at 14.) Brown seeks to represent a putative class of similarly situated individuals, called a "Federal TCPA DNC Class," which she defines in her Complaint as:

> All persons within the United States who received two phone calls within a 12-month period from Defendant to said person's telephone, and such person had previously included their name on the National Do Not Call Registry at least 31 days prior to receiving Defendant [sic] first call, within the four years prior to the filing of this Complaint.

(Id. at ¶ 41.)

**II. STANDARD**

Nano moves to dismiss Brown's Complaint under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) for failure to

state a claim and 12(b)(1) for lack of subject matter jurisdiction. (ECF No. 6.) In the alternative or in addition, Nano moves to strike the class allegations under FRCP 12(f) and 23. (Id.) For the reasons discussed below, the Court grants Nano's Motion to Dismiss and Motion to Strike.

### A. Motion to Dismiss for failure to state a claim under 12(b)(6)

A motion to dismiss under FRCP 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id.*

### B. Motion to Dismiss for lack of subject matter jurisdiction under 12(b)(1)

**\*2** Nano challenges the Complaint, in part, on the ground that Brown lacks Article III standing. (ECF No. 6.) Standing is an element of subject matter jurisdiction. Therefore, Nano moves to dismiss Brown's Complaint for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1).

A Rule 12(b)(1) jurisdictional attack may be facial or factual. Fed. R. Civ. P. 12(b)(1). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Generally, on a 12(b)(1) motion regarding subject matter jurisdiction, unlike a 12(b)(6) motion, a court need not defer to a plaintiff's factual allegations. *Id.* But the Supreme Court has held that where a 12(b)(1) motion to dismiss is based on lack of standing, the court must defer to the plaintiff's factual allegations and must "presum[e] that general allegations embrace those specific facts that are necessary to support

the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Therefore, to show standing "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The party invoking federal subject matter jurisdiction has the burden of establishing standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).

### C. Motion to Strike class allegations under 12(f) and 23

Rule 12(f) authorizes courts to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Before a motion to strike is granted, the court must be convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (citing *RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005)). "When considering a motion to strike, a court must view the pleadings in a light most favorable to the non-moving party." *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 888 (N.D. Cal. 2012) (citation omitted).

Plaintiffs bear the burden of pleading, and ultimately demonstrating, compliance with Rule 23's requirements. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). Though "[i]n general, the appropriateness of proceeding as a class action is not tested at the pleading stage," *Hernandez v. State Farm Fire & Cas. Co.*, No. 16CV200-LAB (JLB), 2017 WL 932198, at \*2 (S.D. Cal. Mar. 9, 2017), "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). "In the Ninth Circuit, motions to strike are proper, even if the material is not prejudicial to the moving party, if granting the motion would make trial less complicated or otherwise streamline the ultimate resolution of the action." *Brown*, 913 F. Supp. 2d at 888 (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)).

### III. DISCUSSION

### A. Motion to Dismiss for failure to state a claim under 12(b)(6)

**\*3** Brown seeks relief under the TCPA for three phone calls allegedly placed to her cellular telephone. There are two potential theories of liability under the TCPA: (1) direct liability and (2) vicarious liability. *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014). In other words, "[f]or a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Pascal v. Agentra, LLC*, No. 19-CV-02418-DMR, 2019 WL 5212961, at \*2 (N.D. Cal. Oct. 16, 2019) (citation omitted).

### I. Direct TCPA Liability

First, Nano argues Brown's Complaint does not plausibly allege that Nano, rather than some third party, physically placed the alleged calls. (ECF No. 6, 8–10.) In response, Brown argues the Complaint plausibly alleges direct liability because it alleges all three calls promoted Nano's products and that "an individual associated with the final call gave a callback number (with an extension) that is directly associated with Nano Hearing." (ECF No. 7, 10–11.)

Direct liability under the TCPA applies only to persons or entities that directly "make" or "initiate" calls, which requires "tak[ing] the steps necessary to physically place" the call. *Sheski v. Shopify (USA) Inc.*, No. 19-CV-06446-HSG, 2020 WL 2474421, at \*2 (N.D. Cal. May 13, 2020) (analyzing claim under section 227(b) of TCPA) (citing *In re Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6583 ¶ 26 (2013)); *see Naiman v. Freedom Forever, LLC*, No. 19-CV-00256-JSC, 2019 WL 1790471, at \*4 (N.D. Cal. Apr. 24, 2019) (applying substantially similar rule to claims asserted under TCPA section 227(c)).

Here, Brown merely alleges "on information and belief" that these phone numbers belonged to Nano or Nano's agent. (ECF No. 1, ¶¶ 30–32.) The Complaint does not explain the reasons behind this belief. In her Opposition, Brown explains that she believed these numbers belonged to Nano or its agent because the callers promoted Nano Hearing Aids to her and because one of the calls was transferred to a phone number that connects to Nano. (ECF No. 7, 11.) Brown does not allege that any of the callers identified themselves as representatives of Nano.

These allegations are insufficient to establish that Nano directly made the calls. *See Canary v. Youngevity Int'l, Inc.*, No. 5:18-CV-03261-EJD, 2019 WL 1275343, at \*3 (N.D. Cal. Mar. 20, 2019) (holding "the Complaint lacks sufficient facts to support a plausible inference that [the defendant] dialed [the plaintiff's] telephone number" where plaintiff only alleged the calls were made by defendant's agent based on "understanding and belief" and a callback number which reached an individual who may have been employed by defendant); *Naiman*, No. 19-CV-00256-JSC, 2019 WL 1790471, at \*4 (finding allegations that "Defendant made the calls in question" without "further details (i.e., how the caller identified itself or what entity it was calling on behalf of)" did not show direct liability for DNC claim).

Further, the only caller whose identity Brown describes in the Complaint identified himself as an employee of Life Care, not Nano. (ECF No. 1, ¶ 32.) Brown does not allege that "Life Care" is Nano or affiliated with Nano. In addition, the only phone number which Brown alleges she called is the alleged callback number, 619-348-6968 ("619 Number"). (Id.) Even if the Court takes Brown's allegation that the 619 Number belongs to Nano as true, the Complaint indicates that no call was placed *from* the 619 Number. The allegation that, after being transferred from a representative of Life Care, someone identified only as "Ken" gave Brown a callback number that reaches Nano is insufficient to show that Nano made any of the calls to Brown. (See id.)

### II. Vicarious TCPA Liability

**\*4** "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd but criticized on other grounds*, 577 U.S. 153 (2016), *as revised* (Feb. 9, 2016). "To determine whether a plaintiff has established an agency relationship, the Ninth Circuit 'relies on the Restatement (Third) of Agency.' " *Ewing v. Freedom Forever, LLC*, No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at \*7 (S.D. Cal. Jan. 19, 2024) (quoting *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018)). Common law agency under the Restatement requires a consensual relationship between an alleged principal and agent. Restatement (Third) of Agency, § 1.01, cmt. C. This is "more than mere passive permission; it involves request, instruction, or command." *Klee v. United States*, 53 F.2d 58, 61 (9th Cir. 1931). "For an agency

Brown v. Nano Hearing Tech Opco, LLC, Slip Copy (2024)

relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.' " *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement (Third) Of Agency § 1.01, cmt. C). "Though 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed.' " *Ewing*, No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at *7 (quoting *Kristensen*, 12 F. Supp. 3d at 1301).

"Three theories of agency could support vicarious liability: (1) actual authority; (2) apparent authority; and (3) ratification." *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018) (citing *Thomas*, 582 Fed. App'x at 679).

### i. Actual Authority

Nano argues Brown failed to allege sufficient facts to establish that Nano had an agency relationship with any third parties who allegedly placed the calls. (ECF No. 6, 12–13.) In response, Brown argues the Complaint plausibly alleges actual authority because it alleges all three calls promoted Nano's products and Nano's phone number was provided as a callback number in the last call. (ECF No. 7, 12–14.)

To allege actual authority, a plaintiff must allege facts showing that (1) the principal "controlled or had the right to control" the agent; (2) the principal " 'manifest[ed] assent' to their right to control" the agent; and (3) the principal "either communicated a direction to" the agent to make the calls or the calls were "consistent with" the principal's "general statement of what [the agent] [was] supposed to do." *Pascal*, No. 19-CV-02418-DMR, 2019 WL 5212961, at *3 (quoting *Mavrix*, 873 F.3d at 1054).

Here, Brown's conclusory allegations are also insufficient to show actual authority. Brown does not allege that any of the callers identified themselves as Nano's agents or had any interactions with Nano. Brown's allegations that "[u]pon information and belief, [each] number belongs to Defendant and/or Defendant's agent" are conclusory and insufficient to plead vicarious liability. (ECF No. 1, ¶¶30–32); *see Naiman*, No. 19-CV-00256-JSC, 2019 WL 1790471, at *4 (finding "boilerplate allegation asserting the existence of an agency relationship" that "each and every Defendant was acting as an agent and/or employee of each of the other Defendants" "is wholly conclusory" and insufficient to plead vicarious liability).

Further, even if Brown had sufficiently alleged Life Care made the third call on Nano's behalf, she still fails to allege facts showing the three prongs necessary for actual authority. There are no allegations supporting the existence of an agency relationship between the two companies, any "request, instruction, or command," *Klee*, 53 F.2d at 61, or that Nano demonstrated "a right to control the actions of [an] agent." Restatement (Third) Of Agency § 1.01, cmt. C. Since Brown has failed to allege "sufficient facts ... to support a reasonable inference that an agency relationship existed," *Ewing*, No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at *7, she cannot hold Nano liable under vicarious liability through actual authority. *See Panacci v. A1 Solar Power, Inc.*, No. 15-CV-00532-JCS, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015) (finding no vicarious liability where plaintiff did not allege that defendant "controlled, authorized, or even knew about [third party's] phone calls or that [defendant] had any control over" the caller, and where plaintiff pleaded "virtually no [factual] allegations regarding the relationship" between defendant and the caller). Finally, Brown also fails to allege any facts that connect Life Care or Nano to the first two calls she received, as the calls came from different phone numbers, and Brown does not allege any identifying information of either caller.

**\*5** Brown made nearly identical arguments in *Barnes v. SunPower Corp.*, No. 22-CV-04299-TLT, 2023 WL 2592371 (N.D. Cal. Mar. 16, 2023), and the Northern District of California rejected them for the same reasons. The *Barnes* court explained, "[a]ccording to Plaintiff Brown, the ability of the caller to transfer her directly to ... [']Sarah at [Defendant] indicates that the caller either worked at [Defendant] or was previously authorized to the place the call by [Defendant], as did the confirmatory text and email,' but this allegation is conclusory and insufficient to establish that Defendant directly made the call or that Defendant has an agency relationship with 'solar project' being the initial call." No. 22-CV-04299-TLT, 2023 WL 2592371, at *3 (citation omitted). Similarly here, even if the 619 Number belongs to Nano, this allegation is insufficient to establish that Nano made or authorized any of the calls through an agent.

This case is unlike *Ewing*, where this Court found the plaintiff alleged actual authority by pleading "each of the [ ] callers indicated that they were acting on behalf of Freedom Forever, either by introducing themselves as a 'master dealer' for Freedom Forever, indicating that they refer leads to Freedom Forever, or emailing links to

Brown v. Nano Hearing Tech Opco, LLC, Slip Copy (2024)

websites associated with Freedom Forever." No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at *7. The *Ewing* Court also relied on the facts of *Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021), where the Seventh Circuit "determined that the plaintiff had met his burden by pleading that: (1) the defendant authorized the callers to make calls using its approved scripts, tradename, and proprietary information; (2) the callers quoted him the defendant's health insurance[;] and (3) the defendant provided said callers those quotes and permitted said callers to enter information into its system." *Id.* (citing 8 F.4th at 587–88). Unlike the plaintiffs in *Ewing* and *Bilek*, Brown failed to plead concrete facts meeting the elements of actual authority. *See id.*; 8 F.4th at 589.

## ii. Apparent Authority

Brown argues she also sufficiently alleged apparent authority because it is "obvious that some agreement existed between Defendant and its agents regarding the placing of calls, the promotion of Defendant's products, and the transfer of that call to Defendant." (ECF No. 7, 15.) In response, Nano argues Brown failed to plead apparent authority because the allegations do not sufficiently connect Nano to the callers, and the caselaw she relies on was overruled. (ECF No. 10, 3–5.)

An agency relationship may also be created through apparent authority. *Mavrix Photographs, LLC*, 873 F.3d at 1054 (citation omitted). "Apparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have." *Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*, 414 F.2d 750, 756 (9th Cir. 1969). "The principal's manifestations giving rise to apparent authority may consist of direct statements to the third person, directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts and conduct negotiations under circumstances which create in him a reputation of authority." *Id.* (citation omitted). Apparent authority can "only 'be established by proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied.' " *Thomas*, 582 F. App'x at 679 (quoting *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997)).

Here, Brown's apparent authority theory fails because Brown fails to allege any facts of interaction between Nano and Brown or Nano and the callers that could support a belief that the callers had authority to make calls

on Nano's behalf. *See Thomas*, 582 F. App'x at 679. Allegations of the alleged agents' statements alone are insufficient. *See Hawaiian Paradise Park Corp.*, 414 F.2d at 756; *Hanson v. Am. W. Airlines, Inc.*, 544 F. Supp. 2d 1038, 1043 (C.D. Cal. 2008) ("Only the acts of the principal, not of the agent, give rise to apparent authority.") (citing *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 479 (9th Cir. 2000)).

**\*6** Brown's arguments in her Opposition also fail. Brown relies on a single case to support an apparent authority theory based entirely on the actions of the callers, but the case was overruled on the exact ground for which Brown relies on it. (ECF No. 7, 16); *see Mey v. Monitronics Int'l, Inc.*, 959 F. Supp. 2d 927 (N.D.W. Va. 2013), *subsequently rev'd sub nom. In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 527 (N.D.W. Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018) ("This Court is well aware that in so ruling, I am rejecting the prior decision of this Court in this case[:] *Mey v. Monitronics International, Inc.*, 959 F.Supwp.2d 927 (N.D.W. Va. 2013)."). Brown argues, "[s]imilarly to *Mey*, Plaintiff here has clearly pled that the representatives on the calls were holding themselves out as representatives of Defendant." (ECF No. 7, 16.) In overruling *Mey*, the *Monitronics* court held that "the fact that entities were permitted to hold themselves out as authorized dealers or some similar description is insufficient" to hold a defendant vicariously liable. *In re: Monitronics International, Inc., Telephone Consumer Protection Act Litigation*, 223 F. Supp. 3d at 527–28; *see also Makaron v. GE Sec. Mfg., Inc.*, No. CV-14-1274-GW AGRX, 2015 WL 3526253, at *10 (C.D. Cal. May 18, 2015) (disagreeing generally with the conclusion reached in *Mey*, 959 F. Supp. 2d, that an agreement allowing an entity to hold itself out as an authorized dealer of another's products was sufficient to establish apparent authority. The court explained this is because "the mere fact that a dealer uses a supplier[']s name does not render it an agent of the supplier, just as every bar which advertises that they sell a particular brand of beer is not the agent of the brewery whose name they advertise." *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d at 527–28.

## iii. Ratification

In response to Nano's arguments that Brown failed to plead vicarious liability, Brown argues the Complaint also alleges vicarious liability through a theory of ratification

because Nano "ratified its agent's actions through accepting the benefits of their telemarketing services." (ECF No. 7, 16–17.) Nano responds that the Complaint never mentions ratification, and that a vicarious liability theory based on ratification fails regardless because it still requires proof of an agency relationship. (ECF No. 10, 6–7.)

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) Of Agency § 4.01. "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." *Id.* "The set of effects that ratification creates are the consequences of actual authority." *Id.*, cmt. B. "Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003), *superseded in part by statute on other grounds as stated in Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766–67 (9th Cir. 2017).

Here, Brown's ratification theory fails for the same reasons her other vicarious liability theories fail: she has not sufficiently pleaded an agency relationship. The Complaint lacks facts alleging that Nano acted as a principle or that it ratified any of the alleged conduct. Brown "cannot show [Nano] is liable under a ratification theory because 'the principal-agent relationship is still a requisite.' " *Abante Rooter & Plumbing*, No. 17-CV-03315-PJH, 2018 WL 288055, at *6 (quoting *Batzel*, 333 F.3d at 1036).

Accordingly, the Court **GRANTS** Nano's FRCP 12(b)(6) Motion to Dismiss with leave to amend.

### B. Motion to Dismiss for lack of subject matter jurisdiction under 12(b)(1)

### I. Article III Standing

Next, Nano argues that Brown's Complaint should be dismissed for lack of subject matter jurisdiction under FRCP 12(b)(1) because it fails to meet the causation and redressability elements of Article III standing.

Standing is a necessary element of federal court jurisdiction under Article III of the U.S. Constitution.

*Warth v. Seldin*, 422 U.S. 490, 498 (1975). Accordingly, standing is a "threshold question in every federal case." *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009) (citing *Warth*, 422 U.S. at 498.). To establish standing, (i) a plaintiff must have suffered a "concrete and particularized" "injury in fact"; (ii) "there must be a causal connection between the injury and the conduct complained of" ("causation"); and (iii) the injury must be capable of being "redressed by a favorable decision" ("redressability"). *Lujan*, 504 U.S. at 560–61. "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007).

**\*7** For causation, "the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.' " *Lujan*, 504 U.S. at 560–61 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)). In order to establish causation under a theory of vicarious liability, the plaintiff must show a causal relationship between the agent making the calls and the actions of the principle. *Freidman v. Massage Envy Franchising, LCC*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, at *4 (S.D. Cal. June 13, 2013). For redressability, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43).

Here, Nano argues Brown's complaint fails for many of the reasons discussed above. First, the Complaint fails to plead causation. As explained above, the Complaint does not establish direct or vicarious liability because Brown fails to allege facts showing that Nano or an agent of Nano placed any of the calls. *See, e.g., Freidman*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, at *4 (finding no Article III standing where plaintiff did not plead direct or vicarious liability); *Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399, 414 (N.D. Cal. 2009) (finding allegations that "all of the named Defendants engaged in the conduct alleged and caused each of them injury" and that one defendant "is an 'agent, subsidiary, parent, joint venturer or predecessor' " of another are insufficient for standing). Accordingly, Brown's injury is not fairly traceable to Nano. *Lujan*, 504 U.S. at 560–61 (citation omitted). Further, the absence of facts establishing this connection to Nano leaves room for a substantial possibility that any injury was "th[e] result [of] the independent action of some third party not before the court." *Id.* (citation omitted).

Second, the Complaint also fails to plead redressability. Since the injury may have been caused by someone other

Brown v. Nano Hearing Tech Opco, LLC, Slip Copy (2024)

than Nano, a decision favorable to Brown and against Nano would not necessarily redress the injury. *See Simon, 426 U.S. at 41.*

Since causation and redressability are speculative at best, Brown lacks standing.

## II. Injunctive Relief

Nano also argues Brown's Complaint lacks standing to seek injunctive relief. (ECF No. 6, 14–15.) In response, Brown argues the Complaint plausibly alleged future harm for purposes of injunctive relief. (ECF No. 7, 17–18.)

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citations omitted). For injunctive relief, the threat of injury must be "actual and imminent," or "*certainly impending*," not merely conjectural or hypothetical." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). "Allegations of possible future injury do not satisfy the requirements." *Whitmore*, 495 U.S. at 158. "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.' " *Davidson*, 889 F.3d at 967 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (citing *Lujan*, 504 U.S. at 560).

**\*8** Here, Brown requests injunctive relief in her Complaint. (ECF No. 1, 14, ¶ 60 ("Plaintiff and the class are also entitled to an injunction against future calls.").) However, Brown fails to allege any likelihood of future injury. The Complaint does not allege any facts regarding potential future calls. In addition, Brown alleges she received three calls within one month in 2023 and does not allege she has received any additional calls since then. (ECF No. 1, ¶¶ 30–32.) The timing and number of calls do not show "a sufficient likelihood that [s]he will again be wronged in a similar way." *Lyons*, 461 U.S. at 111; *see Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1079 (9th Cir. 2017) ("The fact that a class member was a target of collection efforts sometime between 2008 and 2011,

however, does without more establish that he or she would likely be contacted by ARS again after October 2013."); *Miller v. Time Warner Cable Inc.*, No. 816CV00329CASASX, 2016 WL 7471302, at \*4 (C.D. Cal. Dec. 27, 2016) (granting motion to dismiss plaintiff's claims for injunctive relief because, without evidence to the contrary, "the risk [defendant] will continue to make unsolicited phone calls to plaintiff's phone is too speculative to establish a real or immediate threat of repeated injury." Brown's conclusory argument in her Opposition that the Complaint "demonstrated a pattern of unlawful behavior that will not cease without court intervention" does not resolve the lack of any facts alleging that this pattern would continue. (ECF No. 7, 17.) Thus, Brown lacks standing to seek injunctive relief.

Accordingly, the Court **GRANTS** Nano's FRCP 12(b)(1) Motion to Dismiss with leave to amend.

## C. Motion to Strike class allegations under 12(f) and 23

Next, Nano moves to strike class allegations from the Complaint on two grounds. First, Nano argues Brown's class allegations should be stricken as overbroad. (ECF No. 6, 15–17.) Second, Nano argues Brown's class allegations should be stricken because Brown is not a member of the class she seeks to represent. (Id. at 17–18.) Brown responds to both arguments that "the class allegations have been sufficiently pled," "the proposed class may evolve throughout discovery," and regardless, the Court should not rule on class issues prior to a motion for class certification. (ECF No. 7, 18–19.)

## I. Sufficiency of Class Definition

A defendant may move to strike class allegations before discovery when the complaint shows a class action could not be maintained on the facts alleged. *Sanders*, 672 F. Supp. 2d at 990. "[N]o class may be certified that contains members lacking Article III standing." *Id.* at 991 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)). In *Sanders*, the court granted a motion to dismiss and struck class allegations under FRCP 12(f) because the class definition "include[d] all persons within the United States who own a 20–inch Aluminum iMac," which "necessarily include[d] individuals who did not purchase their 20–inch Aluminum iMac, individuals who either did not see or were not deceived by advertisements, and

individuals who suffered no damages." *Id.* The court explained that "[s]uch individuals would lack standing to bring these claims." *Id.*

Here, the class definition is overly broad because it fails to exclude any members who may have consented to receiving phone calls from Nano. The TCPA expressly precludes claims made by individuals who consented to be called. 47 U.S.C. § 227(b)(1)(A) (excluding from liability any call "made with the prior express consent of the called party.") Brown's class definition necessarily includes any individuals who have consented to calls from Nano. (*See* ECF No. 1, ¶ 41.) Like in *Sanders*, these individuals would also lack standing. 672 F. Supp. 2d at 991; *see Hernandez*, No. 16CV200-LAB (JLB), 2017 WL 932198, at *6 (striking class allegations in part "[b]ecause the class definition includes insureds who were not injured at all.").

## II. Typicality

Rule 23(a)(3) requires that an individual plaintiff's claims be typical of those that the proposed class would advance. Fed. R. Civ. P. 23(a)(3). The test for Rule 23(a) typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).

**\*9** Here, Brown has not alleged that she falls into her own class definition. For the reasons discussed above, Brown failed to plead she was injured by Nano because the Complaint does not sufficiently allege the calls were made by Nano or its agent. As a result, her claims cannot be typical of those that the proposed class would advance, and other class members cannot "have been injured by the same course of conduct." *Ellis*, 657 F.3d at 984. Since the Complaint does not name any other plaintiffs, the purported class lacks typicality. *See Galan Segura v. CRST Van Expedited, Inc.*, No. EDCV1201901TJHSPX, 2014 WL 12567799, at *2 (C.D. Cal. June 16, 2014) (denying class certification in part for lack of typicality because the named plaintiff "has not suffered any injuries under the alleged [ ] violations ... and, therefore, is not a class member.").

Accordingly, the Court **GRANTS** Nano's FRCP 12(f) Motion to Strike class allegations with leave to amend.

## IV. CONCLUSION

For the reasons discussed above, Nano's Motion to Dismiss Brown's Complaint under FRCP 12(b)(6) and 12(b)(1) is **GRANTED.** Nano's Motion to Strike class allegations from the Complaint under FRCP 12(f) and 23 is also **GRANTED**. Brown has leave to file an amended complaint by August 6, 2024.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 3367536

---

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 43 of 158

Brownlee v. Allstate Insurance Company, Not Reported in Fed. Supp. (2021)

2021 WL 4306160
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Rita BROWNLEE, individually and on behalf
of all similarly situated individuals, Plaintiff,
v.
ALLSTATE INSURANCE COMPANY, Defendant.

Case No. 21-cv-1428
|
Signed 09/22/2021

**Attorneys and Law Firms**

Patrick Peluso, Steven Lezell Woodrow, Woodrow & Peluso, LLC, Denver, CO, for Plaintiff.

Aaron Stenzler Weiss, Carlton Fields, P.A., Miami, FL, Lewis S. Wiener, Eversheds Sutherland (US) LLP, Washington, DC, Christopher W. Carmichael, Henderson Parks, LLC, Timothy J. McCaffrey, Eversheds Sutherland (US) LLP, Chicago, IL, for Defendant.

**ORDER**

SHARON JOHNSON COLEMAN, United States District Court Judge

 **\*1** This case arises out of defendant Allstate's alleged violations of the Telephone Consumer Protection Act ("TCPA") by repeatedly calling plaintiff to sell her car insurance. Plaintiff purports to represent a class of plaintiffs that defendant has called to sell insurance. Before the Court is defendant's motion to dismiss [16]. For the reasons set forth below, the motion is granted without prejudice.

**I. Background**

The following facts are taken from plaintiff's complaint, as the Court must for purposes of a motion to dismiss. Plaintiff registered her cellphone number on the National Do Not Call registry on May 23, 2008. Despite being on the registry, plaintiff began receiving calls in May 2020 from salespeople attempting to sell her car insurance. During the first call on May 27, 2020, plaintiff told the salesperson to stop calling. She received another call that same day from another car insurance salesperson and she again told them to stop calling. On June 15, 2020, plaintiff received another car insurance

sales call from a salesperson who identified themselves as an Allstate representative. Plaintiff told them to stop calling. After that, plaintiff received two other calls on behalf of defendant; one on June 18, 2020 in which the salesperson identified themselves as calling from Allstate and another on June 22, 2020 in which the salesperson gave plaintiff an Allstate email address to contact. Plaintiff also claims that she received a sales call from a car insurance salesperson on July 25, 2020, but she did not specify what company the salesperson was calling on behalf of. Plaintiff brings this suit against defendant for violating the TCPA with these calls. Defendant moves to dismiss for failure to state a claim and under *Barr v. Am. Ass'n of Political Consultants*, 140 S.Ct. 2235, 207 L. Ed. 2d 784 (2020).

**II. Analysis**

When considering a Rule 12(b)(6) motion, the Court accepts all the plaintiff's allegations as true and views them in the light most favorable to the plaintiff. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). A complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The plaintiff does not need to plead particularized facts, but the allegations in the complaint must be more than speculative. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Formulaic" recitations of the elements of a cause of action are insufficient. *Id.* at 555.

The Court first addresses defendant's argument that plaintiff has not sufficiently alleged a TCPA claim because she does not name defendant for three of the six calls. Plaintiff claims that the similarity of the numbers that called her and the fact that each caller tried to sell her car insurance could lead the Court to reasonably infer that defendant was responsible for each call. The Court disagrees. Defendant is not the sole seller of car insurance. Numerous other companies sell car insurance. Further, spoofing is not unique; it is entirely possible that another car insurance company similarly engaged in spoofing to contact the plaintiff. Plaintiff's complaint does not allow the Court to reasonably infer that defendant is liable for each call. At the very minimum, plaintiff must allege in her complaint that defendant made each call that she seeks to hold it liable for. This defect can be easily remedied. It is also not clear whether Brownlee is suing under the internal do-not-call list or the national Do Not Call registry, or both. Because plaintiff has failed to sufficiently

Brownlee v. Allstate Insurance Company, Not Reported in Fed. Supp. (2021)

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 44 of 158

allege a TCPA claim, the Court dismisses the complaint without prejudice. Plaintiff should specify in her amended complaint which sections of the TCPA she is suing under (with separate counts for each section, rather than as one whole TCPA claim) and precisely which calls are violations for each of those sections.

**\*2** Since the Court dismisses the complaint without prejudice based on failure to allege, it does not address defendant's remaining arguments. Defendant may move to dismiss plaintiff's amended complaint within 28 days after it is filed.

### III. Conclusion

The Court grants defendant's motion to dismiss [16] without prejudice. Plaintiff has 21 days to file an amended complaint. **IT IS SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2021 WL 4306160

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by Van Baalen v. Mutual of Omaha Insurance Company, D.N.M., April 11, 2024

2018 WL 4684209
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Sid CHILDRESS, on behalf of herself and
others similarly situated, Plaintiff,
v.
LIBERTY MUTUAL INSURANCE
COMPANY, Defendant.

No. 17-CV-1051 MV/KBM
|
Signed 09/28/2018

**Attorneys and Law Firms**

Clayton Ewing Crowley, Crowley & Gribble PC, Albuquerque, NM, Anthony Paronich, Broderick & Paronich, PC, Boston, MA, for Plaintiff.

Meena H. Allen, Allen Law Firm, LLC, Albuquerque, NM, Brian J. Spano, Jessica L. Fuller, Lewis Roca Rothgerber LLP, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

MARTHA VÁZQUEZ, United States District Judge

**\*1** THIS MATTER comes before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice [Doc. 6]. The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the motion is well-taken and will be granted.

## BACKGROUND

The facts as alleged in the Amended Complaint are as follows. On August 14, 2017, at approximately 10:22 a.m. MT, Plaintiff Sid Childress received a telephone call on his cellular phone, which is listed on the national do-not-call registry. Doc. 1-1 at ¶ 10. According to Plaintiff's caller identification, the telephone call came from telephone number 505-780-9813. Id. When Plaintiff answered the call, "he was greeted by a machine that played a pre-recorded message." *Id.* The message indicated that the caller was "Jason" from "Cheap Insurance Experts." *Id.* at ¶ 12. After listening to the prerecorded message and answering questions, Plaintiff was transferred to a "live person telemarketer employed by Defendant [Liberty Mutual Insurance Company] who identified himself as "Steve Ross" and indicated that he was located at a call center in Dallas, Texas. *Id.* at ¶ 11. Plaintiff began asking "Steve Ross" "questions related to Plaintiff's interest in why he was being robo-called" and who the telemarketer was. *Id.* at ¶ 14. "Steve Ross" then "hung up the phone on Plaintiff." *Id.*

An hour later, Plaintiff filed in state court his *pro se* Complaint for Violations of the Telephone Consumer Protection Act, the Unfair Practices Act and Torts against Defendant. Plaintiff amended the complaint once as a matter of right on September 13, 2017, to correctly name Defendant and to add conduct by "lead generators" for his claim of vicarious liability. Defendant removed the case to this Court on October 19, 2017.

On November 20, 2017, Defendant filed the instant motion to dismiss Plaintiff's Amended Complaint in its entirety. Doc. 6. Thereafter, Plaintiff retained counsel, who entered an appearance on December 7, 2017. Doc. 14. On December 8, 2017, Plaintiff filed both a response in opposition to Defendant's motion, Doc. 19, and a motion for leave to file a second amended complaint. Doc. 17.

This Court referred Plaintiff's motion for leave to amend to Magistrate Judge Karen B. Molzen. On May 1, 2018, Judge Molzen entered her Proposed Findings and Recommended Disposition ("PFRD"). Doc. 36. In the PFRD, the Court found that "Plaintiff's untimely proposed Second Amended Complaint represents the type of 'moving target' that would introduce undue delay." *Id.* at 6. The Court noted that Plaintiff – who "is not the typical pro se litigant", but rather is "well-versed in pursuing claims involving the TCPA" – "clearly knew all of the information – factual and legal – on which the proposed changes [were] based." *Id.* Further, the Court found that Defendant has already expended considerable fees and cost in pursuing its motion to dismiss, and that "the proposed expansion of this lawsuit from a single,

offending phone call to potential nationwide class action, would require even greater resources to bring the case to a conclusion." *Id.* No objections were filed to the PFRD, and on June 4, 2018, this Court entered an Order adopting the PFRD. Doc. 38. Thereafter, Defendant filed its reply in further support of its motion to dismiss. Doc. 40.

## LEGAL STANDARD

**\*2** Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ).

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *see Twombly*, 550 U.S. at 570 (holding that a plaintiff must "nudge" her claims "across the line from conceivable to plausible"). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the

pleader is entitled to relief." *Id.* (citation omitted).

In keeping with these two principles, the Court explained,

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Id.* at 679.

## DISCUSSION

In the Amended Complaint, Plaintiff alleges claims under the Telephone Consumer Protection Act ("TCPA"), claims under the New Mexico Unfair Practices Act ("UPA"), and three state common law claims. In response to Defendant's motion to dismiss all of these claims, Plaintiff indicates that he does not intend to pursue his claims under the UPA or his state law causes of action, and thus "seeks to dismiss such claims at this time." Doc. 19 at 4. Accordingly, the only claims Plaintiff wishes to pursue are those alleged under the TCPA. As set forth herein, the Court agrees with Defendant that Plaintiff's TCPA claims are subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim.

Plaintiff seeks to hold Defendant liable under the TCPA for the telemarketing call that he received on August 14, 2017. Specifically, in the Amended Complaint, Plaintiff asserts that he "brings this action pursuant to 47 U.S.C. § 227 to enjoin Defendant's unlawful behavior and require compliance with federal law regarding auto-dialers and robo-calls to wireless or cell phones." Doc. 1-1 at 29. In relevant part, the TCPA makes it unlawful for anyone "to make any call ... using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a cellular telephone service ... or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).

**\*3** Defendant argues that Plaintiff has failed to adequately plead that Defendant has any direct or vicarious liability under Section 227(b)(1)(A)(iii), because the Amended Complaint is devoid of allegations either that Defendant made the telephone call at issue, or that Defendant was in an agency relationship with whoever did make that call. The Court agrees.

First, with regard to direct liability, "[t]he plain language

of section 227(b)(1)(A)(iii) imposes liability upon persons that 'make' a telephone call or text." *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-02440, 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 39, 2015). Courts interpreting this provision "have held that the verb 'make' imposes civil liability only on the party that places the call or text." *Id.* (citing *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 135 (E.D.N.Y. 2015) ("By its terms, 47 U.S.C. § 227(b)(1)(A)(iii), assigns civil liability only to the party who 'makes' a call."); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301-02 (D. Nev. 2014) (associating the party who 'made' the call with 'the party who actually sent the text message to Plaintiff'); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014) ("The plain language of the TCPA assigns civil liability to the party who 'makes' a call" and '[d]irect liability is inapplicable here as the parties do not dispute that the actual sender of the text message ... a separate provider of text-message based services ...") ).

In the Amended Complaint, there are no factual allegations that Defendant actually made the telephone call at issue. Instead, Plaintiff alleges that the caller was someone named "Jason" from "Cheap Insurance Experts." Doc. 1-1 at ¶ 12. Plaintiff asserts in an entirely conclusory fashion that "Jason" was a "fake name" and that the call was made by "Defendant's pre-recorded message robot machine." *Id.* at ¶¶ 11-12. There are no factual allegations, however, to support Plaintiff's conclusory assertions that the call was made by *Defendant's* "robot machine." The mere conclusion that the "robot machine" responsible for the call belonged to Defendant, without any factual allegations to support that conclusion, does not constitute a factual allegation that, if proven, would establish that Defendant "made," or "physically placed" the call to Plaintiff's cell phone. *Melito*, 2015 WL 7736547, at *4. Accordingly, the Amended Complaint is insufficient to state a claim that is plausible on its face under Section 227(b)(1)(A)(iii).

Next, with regard to vicarious liability, "[a] defendant is vicariously liable for violations of the TCPA where common law principles of agency would impose it." *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) (citing *Kristensen*, 879 F.3d at 1014 (actions under the TCPA "incorporate federal common law agency principles of vicarious liability" as derived from the Restatement (Third) of Agency) ). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Melito*, 2015 WL 7736547, at *6 (quoting Restatement (Third) of

Agency, § 1.01 (2006) ). "[T]o plead vicarious liability under the TCPA in accordance with traditional tort principles, Plaintiff[ ] must allege *some* facts regarding the relationship between an alleged principal and agent ... and cannot simply allege general control in a vacuum." *Id.* at *7 (emphasis in original).

**\*4** The Amended Complaint fails to allege any agency relationship between Defendant and any individual or entity allegedly responsible for making the telephone call at issue. Plaintiff alleges that he received a call from a "machine that played a pre-recorded message," during which the caller identified himself as "Jason" from "Cheap Insurance Experts." Doc. 1-1 at ¶ 12. While Plaintiff makes the unsupported conclusion that the pre-recorded message actually came from Defendant's "robot machine," he alleges no facts to support this conclusion. Indeed, to the contrary, he alleges that the voice on the recorded message "never accurately identified themselves, their employer or the sponsor of the call." *Id.* Thus, even by Plaintiff's own account, there is no factual basis to support the theory that Defendant is vicariously liable for the initial call made to Plaintiff.

Plaintiff's arguments to the contrary are unavailing. First, in support of his claim that Defendant is vicariously liable under the TCPA, Plaintiff contends that his allegations sufficiently "link[ ] [Defendant] to the call to Plaintiff." Doc. 19 at 5-6. The only "link" alleged in the Amended Complaint, however, is that Plaintiff was transferred from the initial recorded message to Defendant's in-house telemarketer. The transfer of the call, however, does not establish that Defendant exerted control over the initiator of the call, supervised or controlled the initial call, or maintained any sort of relationship with the initiator of the call, and thus is insufficient to establish an agency relationship between the transferor and Defendant. *See Jones*, 887 F.3d at 450. In further support of his vicarious liability theory, Plaintiff notes that the Amended Complaint alleges that "Defendant is vicariously liable for the conduct of its telemarketers," "had the authority and responsibility to prevent or correct the unlawful telemarketing practices," and "ratified, directed and/or authorized the unlawful telemarketing practices." Doc. 19 at 5-6. These statements, however, are not factual allegations but rather legal conclusions that merely recite the elements required to show an agency relationship. The case law is clear that such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice to state a claim. *Iqbal*, 556 U.S. at 678.

Absent from the Amended Complaint is any factual content regarding the relationship between the initial caller and Defendant. Mere conclusory allegations that the

Childress v. Liberty Mutual Insurance Company, Not Reported in Fed. Supp. (2018)

"robot machine" belonged to Defendant, coupled with allegations that the initial call was transferred to Defendant's in-house telemarketer, are insufficient to establish that Defendant had the right to control the initiation of the telephone call to Plaintiff. Accordingly, Plaintiff's allegations fail to plead any relationship, let alone an *agency* relationship, between Defendant and any other individual or entity sufficient to allege vicarious liability under Section 227(b)(1)(A)(iii). *See Panacci v. A1 Solar Power, Inc.*, No. 15-CV-532, 2015 WL 3750112, at \*7 (N.D. Cal. June 15, 2015) (complaint dismissed for failure to state a TCPA vicarious liability claim where plaintiff did not allege that defendant "controlled, authorized, or even knew about [third party's] phone calls or that [defendant] had any control over" the third-party caller and had "virtually no allegations regarding the relationship between [the defendant] and [the third party]"); *Bank v. Alliance Health Networks, LLC*, No. 13-CV-213, 2015 WL 4645317, at \*1 (E.D.N.Y. Aug. 4, 2-15), *aff'd*, 669 F. App'x 584 (2d Cir. 2016) (complaint in which plaintiff "allege[d] merely that the calls at issue were made 'by, or on behalf of, or with the authorization of [the defendants]' " was insufficient to state a vicarious liability claim); *Reo v. Carribean Cruise Line, Inc.*, No. 14-CV-1374, 2016 WL 1109042, at \*5 (N.D. Ohio Mar. 18, 2016)

(dismissing TCPA vicarious liability claim where "the sparse allegations made d[id] not allege any facts that show that [defendant] had any power to give interim instructions or otherwise had any control over the performance of" alleged third-party callers).

**CONCLUSION**

**\*5** Plaintiff has consented to dismissal of all of his claims save those under the TCPA. As set forth herein, Plaintiff has failed to state a claim of direct or vicarious liability under the TCPA. Accordingly, Plaintiff's Amended Complaint is subject to dismissal in its entirety.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice [Doc. 6] is **GRANTED** and Plaintiff's claims are dismissed with prejudice.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4684209

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 49 of 158

Cunningham v. Daybreak Solar Power, LLC, Not Reported in Fed. Supp. (2023)

2023 WL 3985245
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Fort Worth Division.

Craig CUNNINGHAM, Plaintiff,
v.
DAYBREAK SOLAR POWER, LLC, Defendant.

Civil Case No. 4:22-cv-00599-O
|
Signed June 13, 2023

**Attorneys and Law Firms**

Anthony I. Paronich, Paronich Law PC, Hingham, MA, Karl S. Gwaltney, Pro Hac Vice, Maginnis Howard, Raleigh, NC, Katherine Hendler Fayne, Katherine Fayne Law PLLC, Dallas, TX, for Plaintiff.

Michael P. Hutchens, William Brent Shellhorse, Whitaker Chalk Swindle & Sawyer, Fort Worth, TX, John D. Boutwell, Charlotte, NC, for Defendant.

## ORDER AND OPINION

Reed O'Connor, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court are Defendant's Motion to Dismiss (ECF No. 38), filed February 23, 2023; Plaintiff's Response and Objection (ECF No. 39), filed March 9, 2023; and Defendant's Reply (ECF No. 41), filed March 23, 2023. Defendant's Motion is hereby **GRANTED**.

### I. Factual Background [1]

On December 23, 2021, Plaintiff Craig Cunningham alleges he received a pre-recorded call from Defendant Daybreak Solar Power, LLC. Plaintiff states that the message started off saying "Hi, this is Brian Lee calling on behalf of The-Solar-Project.com." [2] Plaintiff describes The-Solar-Project.com as not being linked to any "specific entity," and therefore, Plaintiff alleges that it is a "trade or marketing name" used by Defendant. [3] Plaintiff states the call then continued through Defendant's alleged employee "Yesenia." [4]

In subsequent calls with Defendant's employees, Plaintiff claims that "at no point did [they] deny [calling him]." [5] As Defendant did not deny calling him, Plaintiff concludes that "Daybreak called him directly." [6] Plaintiff did not consent to receiving such calls.

Plaintiff initially filed this lawsuit on January 7, 2022 in the United States District Court for the Western District of North Carolina. [7] The case was transferred to this Court on July 14, 2022. [8] Defendant filed its original Motion to Dismiss on August 4, 2022. [9] The Court granted the motion and granted Plaintiff leave to amend his original complaint. [10]

Plaintiff filed his Amended Complaint on February 9, 2023. [11] Plaintiff brings a class action on behalf of the "Robocall Class," which includes "[a]ll persons within the United States: (1) to whose cellular telephone number or other number for which they are charged for the call (2) Defendant (or an agent acting on behalf of Defendant) placed a telemarketing call (3) within the four years prior to the filing of the Complaint (4) using an identical or substantially similar pre-recorded message used to place telephone calls to Plaintiff." [12] He also brings claims on behalf of the "NCTSA Class," which includes "[a]ll North Carolina Telephone Subscribers whose (1) telephone numbers received calls using a recorded message player (2) from or on behalf of Defendant (3) from four years prior to the filing of the Complaint." [13] Plaintiff alleges Defendant violated § 227(b) and § 227(c) of the Telephone Consumer Protection Act ("TCPA") and § 75-100 of the North Carolina Telephone Solicitations Act ("NCTSA"). [14]

**\*2** Defendant filed the present Motion to Dismiss on February 23, 2023. [15] Plaintiff filed his Response on March 9, 2023. [16] Defendant filed its Reply on March 23, 2023. [17] The Motion is now ripe for the Court's review.

### II. Legal Standard

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 50 of 158

Cunningham v. Daybreak Solar Power, LLC, Not Reported in Fed. Supp. (2023)

may file a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (cleaned up). A court may not accept legal conclusions as true. *Id.* at 678–79. When well-pleaded factual allegations are present, a court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III. Analysis

The Court turns first to Plaintiff's TCPA claims. Under the TCPA, a plaintiff must establish that a defendant is either directly or vicariously liable for any violations. *See Cunningham v. Politi*, No. 4:18-CV-00362-ALM-CAN, 2019 WL 2519568, at *5 (E.D. Tex. Apr. 30, 2019) ("Theories of direct and vicarious liability are both cognizable under the TCPA."). Direct liability is found when an entity "initiates" a phone call. *Hunsinger v. Dynata LLC*, No. 3:22-cv-00136-G-BT, 2023 WL 2377481, at *5 (N.D. Tex. Feb. 7, 2023). Initiating a phone call is recognized to mean that the Defendant "takes the steps necessary to physically place a telephone call." *Cunningham v. Lifestyles Dev., LLC*, No. 4:19-CV-00006-ALM-CAN, 2019 WL 4282039, at *3 (E.D. Tex. Aug. 8, 2019). At the pleading stage, the plaintiff must allege facts to support claim that the defendant is the party that initiated the phone calls. *See id.*

In this case, Defendant contends Plaintiff fails to sufficiently plead direct liability. [18] Plaintiff states that he received a pre-recorded message that started with "Hi, this is Brian Lee calling on behalf of The-Solar-Project.com." [19] Plaintiff alleges that "[t]he solicitation for Daybreak Solar continued through Defendant's employee 'Yesenia.' " [20] In ruling on Defendant's initial motion to dismiss, this Court found that those same facts failed to show "whether Defendant physically initiated the phone call or whether the call was instead placed by a third-party telemarketer." [21] The Court

concluded from the pleadings that Plaintiff did "not know who actually placed the offending call." [22] In an attempt to cure this defect Plaintiff now alleges that The-Solar-Project.com is a "trade or marketing name used by the Defendant for its pre-recorded telemarketing." [23] Yet, at the same time, Plaintiff alleges that The-Solar-Project.com "doesn't appear to be linked to any specific entity." [24] The Plaintiff fails to provide any facts in support of the assertion that The-Solar-Project is simply a "trade or marketing" name used by the Defendant. Thus, this Court finds that such conclusory assertions fail to plausibly show that Defendant physically initiated the phone call.

**\*3** Furthermore, Plaintiff states in his Amended Complaint that Defendant called him directly. [25] He points to the fact that he eventually spoke with Defendant's employee "Yesenia," and, in subsequent calls, Defendant never denied calling him. [26] However, like in his original complaint, Plaintiff fails to allege how "Yesenia" came to be on the other end of the call. [27] Accordingly, this Court again finds that Plaintiff has not sufficiently pled facts indicating Defendant is directly liable for any alleged TCPA violation.

Regarding vicarious liability, the Court finds that Plaintiff in his Amended Complaint still does not make any allegation that Defendant was vicariously liable. Even if Plaintiff's assertions that The-Solar-Project.com is simply a "trade or marketing name" can be taken as alleging vicarious liability, they fall short. A seller "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020) (citation omitted). To prove the existence of an agency relationship, the principal must have "both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task." *Id.* (quoting *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008)). Here, Plaintiff alleges no facts indicating that Defendant had any sort of control over The-Solar-Project.com. Therefore, the Court again finds that Defendant is not vicariously liable for any TCPA violation.

Turning to Plaintiff's NCTSA claim, the Court, for the reasons discussed above, likewise finds Plaintiff fails to plead facts sufficiently showing Defendant's liability.

Cunningham v. Daybreak Solar Power, LLC, Not Reported in Fed. Supp. (2023)

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 51 of 158

### IV. Conclusion

As Plaintiff has failed to sufficiently plead facts to support his claims under the TCPA and NCTSA, Plaintiff's Amended Complaint is hereby **DISMISSED with prejudice.**

**SO ORDERED** on this **13th day** of **June, 2023**.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3985245

---

### Footnotes

1    This Court previously provided extensive recitation of the facts in the prior Order (ECF No. 27) on the Defendant's initial Motion to Dismiss. Here, the Court offers a brief summation of those facts with careful attention to newly pleaded facts in the Plaintiff's Amended Complaint. *See* Pl.'s Am. Compl., ECF No. 28. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to the plaintiff. *See Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

2    *Id.* at 5.

3    *Id.*

4    *Id.*

5    Pl.'s Am. Compl. 6, ECF No. 28.

6    *Id.*

7    Pl.'s Orig. Compl., ECF No. 1.

8    *See* ECF No. 17.

9    Def.'s Orig. Mot. to Dismiss, ECF No. 23.

10   *See* Order Granting Mot. to Dismiss, ECF No. 27.

11   *See* Pls. Am. Compl., ECF No. 28.

12   *Id.* at 7.

13   *Id.*

14   *Id.* at 8-9.

15   Def.'s Mot. to Dismiss, ECF No. 38.

16   Pl.'s Resp., ECF No. 39.

17   Def.'s Reply, ECF No. 41.

18   Def.'s Mot. to Dismiss 5, ECF No. 38.

19   Pl.'s Am. Compl. 5, ECF No. 28.

20   *Id.*

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 52 of 158

Cunningham v. Daybreak Solar Power, LLC, Not Reported in Fed. Supp. (2023)

21    Order Granting Mot. to Dismiss 11, ECF No. 27.

22    *Id.*

23    Pl.'s Am. Compl. 5, ECF No. 28.

24    *Id.*

25    *Id.* at 6.

26    *Id.* at 5.

27    *Id.* at 5–6.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

2024 WL 4363118
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Mark W. DOBRONSKI, Plaintiff,

v.

ANTHONY J. RUSSO, JR., PA, et al. Defendants.

Case No. 2:23-cv-12288
|
Signed September 30, 2024

**Attorneys and Law Firms**

Mark W. Dobronski, Dexter, MI, Pro Se.

Samantha L. Southall, Buchanan Ingersoll & Rooney PC, Philadelphia, PA, for Defendants Anthony J. Russo, Jr., PA, Anthony John Russo Jr., Matthew A. Dolman, TorHoerman Law LLC, Saddle Rock Legal Group LLC, Thomas Lowe Young, Tyler Joseph Schneider.

Amy Sabbota Gottlieb, Dickinson Wright PLLC, Troy, MI, Jared Alexander Christensen, Dickinson Wright PLLC, Detroit, MI, for Defendants Spring Investments, Inc., Jeffrey Steven Fishman, Rochelle Marissa Adler.

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS (ECF Nos. 28 & 42)**

SUSAN K. DeCLERCQ, United States District Judge

**\*1** Plaintiff Mark W. Dobronski, like many Americans, is tired of telemarketing calls—especially unsolicited robocalls. Indeed, such calls are so pervasively annoying that Congress enacted the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227, et seq., that, along with its implementing regulations, 47 CFR 64.1200(a), restricts the use of sophisticated telemarketing equipment and practices that can target millions of consumers *en masse.* In an attempt to fight back against companies that continue such practices in violation of the TCPA, Dobronski has become a frequent self-represented litigant in this district.

In this case, Dobronski has sued four law firms: Anthony J. Russo, Jr. P.A., Matthew A. Dolman P.A., TorHoerman Law LLC, Saddle Rock Legal Group LLC; two other entities: Spring Investments, Inc., Intake On Demand, LLC;

two "non-registered fictitious business name[s]": Injury Claims Service, Consumer Enrollments Center; and five individuals. [1] Dobronski alleges that all Defendants violated various provisions of the TCPA. [2] Two motions to dismiss were filed by ten of the defendants. [3]

For the reasons that follow, the motions will be granted.

**I. BACKGROUND**

**A. Alleged Scheme**

In his First Amended Complaint ("complaint"), Dobronski alleges that Defendants are all engaged in "soliciting members of the public to be represented by Defendants in filing claims and lawsuits" related to potential exposure to contaminated drinking water at Camp Lejeune in North Carolina from 1953 to 1987. ECF No. 25 at PageID.137. He alleges that they are doing so by "engaging in mass telemarking and robocalling campaigns to broad swathes of the United States ...." *Id.* Specifically, Dobronski alleges that Defendants Anthony J. Russo, Jr. P.A., and Matthew A. Dolman P.A., are the lead law firms representing "consumers injured by toxic water at Camp Lejeune," and that they are "partnering with other law firms and lawyers," including Defendants TorHoerman Law LLC and Saddle Rock Legal Group LLC. *Id.* Defendants Anthony Russo, Tyler Schneider, and Thomas Young are alleged to be leading the "Camp Lejeune water contamination lawsuit consumer marketing" on behalf of their respective law firms. *Id.* at PageID.137–38.

**\*2** Dobronski alleges that to solicit potential plaintiffs, Defendants "utilize third-party telemarketers to initiate telephone calls *en masse* using automated telephone dialing systems." *Id.* at PageID.139, 142. When a call is answered, the telemarketers will ask questions to determine if they might qualify as a plaintiff in the Camp Lejeune litigation. *Id.* If so, they will "transfer the call to a 'verifier' to make a further determination of their qualifications, and then if verified, will transfer the call to "an agent who will further discuss legal representation of the consumer and seek to have the consumer agree to legal representation" in the Camp Lejeune litigation. *Id.* at PageID.139–40. A representation agreement is then sent to the consumer, which is the first time that the attorney or law firm name is disclosed. *Id.* Any inquiry into identification of the caller results in the telemarketer hanging up or failing to provide the information. *Id.* at PageID.140.

If the consumer does not qualify or makes "a do-not-call demand," the telemarketer will terminate the call. *Id.* at PageID.139–40.

Dobronski further alleges that "Defendants are engaged in a concert of action ... designed to conceal the identity" of the entities and people involved. *Id.* at PageID.138. In order to "conceal identities, the third-party telemarketers will falsify or 'spoof' their caller identification numbers information" so the recipient will not know who called. *Id.* at PageID.141. Dobronski therefore engages in conduct that he terms "a canary trap," which means that in response to the telemarketer's call, he provides a false, unique name, so that if the name resurfaces, he will be able to tie it to a certain telephone call. *Id.* at PageID.142.

Although Dobronski admits that the identities of the third-party telemarketers allegedly utilized by Defendants currently are unknown, *id.* at PageID.142–43, he attributes many of the calls involved in this case to Defendant Consumer Enrollment Center, based on the caller ID display—"CONSUMER ENROLL"—during the calls. *See id.* at PageID.146–54. Dobronski also alleges involvement with these calls to Defendants Intake On Demand, Injury Claims Center, and Spring Investments, Inc., based on links between them and individual Defendants Fishman and Adler. *Id.* at PageID.154–56.

### B. Subject Telephone Calls

Dobronski claims that prior to August 16, 2023, he "received dozens of telephone solicitation calls to his "residential telephone line (321) ***-0911 where the caller [was] attempting to ascertain whether [he] or 'any loved ones' ... worked or served at Camp Lejeune between 1953 and 1987." ECF No. 25 at PageID.143. Despite demanding that they no longer call him, the telephone solicitations continued. *Id.*

Although Dobronski's telephone number has a Florida area code, he asserts in his motion papers that he "subscribes to a telephone which uses Voice Over Internet Protocol" (VoIP), so when his number is called, it appears at both his Florida and Michigan residences. ECF No. 32 at PageID.227–29. In his complaint, Dobronski specifically states that at the time he received all the relevant calls, he "was located at his residence in Michigan." ECF No. 25 at PageID.131.

The claims at issue in this case involve 18 specific calls received on that line between August 16 and August 29, 2023, that allegedly violate the TCPA ("Subject Calls"). *Id.* at PageID.143–54.

Dobronski received Call #1 on August 16, 2023, at approximately 10:48 a.m. *Id.* at PageID.143–44. Upon saying hello, he "heard a 'bonk' sound," which Dobronski states "is indicative of an automatic telephone dialing system being used," and two to three seconds later, "a male individual began speaking and identified himself as 'Michael ... with Injury Claims Services ... on a recorded line." *Id.* at PageID.144. The caller asked Dobronski if "you or anyone else in your family ever served at Camp Lejeune," to which he replied, "yes." *Id.* Dobronski then gave false answers to a number of identification questions, including giving his name as Lester Clarke. *Id.* The caller noted that Dobronski's telephone number "shows on the do not call list" and asked if he had an alternate telephone number. *Id.* Dobronski responded that he did not. *Id.*

**\*3** The call was then transferred to a different telemarketer who identified herself as "Tony ... with the Camp Lejeune Compensation Center" and asked the same questions as the prior telemarketer. *Id.* at PageID.144–45. Tony thereafter sent Dobronski an email addressed to Lester Clarke at the false email address Dobronski had provided, which attached "a contingency fee retainer agreement on Russo Firm letterhead" and identified "Russo Firm, RP Law LLC, and Dolman" as the law firms providing representation. *Id.* at PageID.145. The agreement was pre-filled with the false Lester Clarke information Dobronski had provided. *Id.* Although Tony attempted to get Dobronski to electronically sign the retainer agreement, she hung up when Dobronski asked her what company she worked for and where she was located. *Id.*

Shortly thereafter, at 11:40 a.m., Tony called back (Call #2) asking for Lester; she told him that the "the contract was already sent out" to him and to tell any future callers that he had already signed up. *Id.* at PageID.146. Tony called again asking for Lester later that day at 2:43 p.m. (Call #5).

On August 17, 2023, Dobronski received another call asking for Lester (Call #7). *Id.* at PageID.148. The caller identification displayed CONSUMER ENROLL. *Id.* Upon answering, the caller identified himself as being from "the Enrollment Center" and want to confirm that Dobronski had "done the intake yesterday with Tony with the law firm Russo Dolman." *Id.*

On August 23, 2023, Dobronski received another call asking for Lester. *Id.* at PageID.150–51. The female caller identified herself as "Tony ... with the Enrollment Center" and asked if Dobronski had "ever been at Camp Lejeune, to which [he] responded 'yes.' " *Id.* at PageID.151. Like what occurred during the call on August 16, Tony thereafter sent Dobronski an email addressed to Lester Clarke at the false email address Dobronski had provided, which attached "a contingency fee retainer agreement," this time on "TorHoerman and Saddle Road letterhead" and identified "TorHoerman and Saddle Road" as the law firms providing representation. *Id.* at PageID.145. The agreement was pre-filled with the false Lester Clarke information Dobronski had provided. *Id.* The email also included "an introductory letter on behalf of Saddle Rock" signed by Defendant Young and "an introductory letter on behalf of TorHoerman" signed by Defendant Schneider. *Id.*

In addition, between August 16 and August 29, 2023, Dobronski received 13 calls (Calls # 3–4, 6, 8–11,13–18), all of which displayed CONSUMER ENROLL on the caller identification screen, but when Dobronski answered the calls, the caller hung up. *Id.* at PageID.146–48.

### C. Claims

Dobronski alleges the following claims against all Defendants:

1. Count I: TPCA regulation 47 CFR § 64.1200(a)(1)(iii) – Autodialer – calls #1–18

2. Count II: TPCA regulation 47 CFR § 64.1200(a)(6) – Hang up – calls # 4, 8, 14, 18

3. Count III: TPCA regulation 47 CFR § 64.1200(a)(7) – Abandoned – calls # 3, 6, 8–11, 13-18

4. Count IV: TPCA regulation 47 CFR § 64.1200(d)(3) – Do Not Call – calls #1–18

5. Count V: TPCA regulation 47 CFR § 64.1200(d)(4) – Failure to Identify – calls #1–18

6. Count VI: TPCA regulation 47 CFR § 64.1601(e) – Spoofed Caller ID – calls #1–18

Dobronski alleges that these violations were knowing and willful.

### II. ANALYSIS

Defendants move to dismiss the complaint for three reasons: (1) improper venue under Civil Rule 12(b)(3); (2) failure to provide them with adequate notice of the claims against them and the grounds upon which they rest under Civil Rule 8(a)(2); and (3) failure to state a claim upon which relief may be granted under Civil Rule 12(b)(6).

### A. Venue [4]

**\*4** This Court must dismiss " 'a case laying venue in the wrong division or district,' unless [this Court] finds 'in the interest of justice' that the case should be transferred 'to [the district] in which it could have been brought,' rather than dismissed." *Stanifer v. Brannan*, 564 F.3d 455, 456 (6th Cir. 2009) (second alteration in original) (quoting 28 U.S.C. § 1406(a)). Venue for civil cases is governed by 28 U.S.C. § 1392, which provides, *inter alia*, that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1392(b).

Defendants contend that venue is not proper in this judicial district because Dobronski received the telephone calls at issue on a residential number with a Florida area code. ECF Nos. 28 at PageID.193; 42 at PageID.381. Defendants argue that the Court should focus its analysis on the dialed number and that any call that Dobronski may have received in Michigan from that number was because he had the calls forwarded there. *Id.*, citing *Thompson v. Branch Banking & Trust Co.*, No. 19-cv-60108, 2020 WL 3316092 at *1 (S.D. Fla. May 1, 2020). However, Dobronski's complaint specifically alleges that when he received the Subject Calls, he was at his residence in Washtenaw County, Michigan. ECF No. 25 at PageID.131. This occurred not because Dobronski forwarded calls from Florida to Michigan, but because he utilizes a Voice Over Internet Protocol (VoIP) so calls to his number appear at his residences both in Florida and Michigan. ECF No. 32 at PageID.229. Accordingly, this situation is distinguishable from *Thompson*.

Given that Dobronski received the Subject Calls while in Washtenaw County, Michigan, this district is where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1392(b). Accordingly, venue is proper.

**B. Notice of Claims**

Defendants argue that Dobronski's complaint "fails to delineate the necessary allegations between each of the named Defendants and, instead, takes the 'shotgun' approach, which is not sufficient to state a claim." ECF No. 42 at PageID.379. Defendants take issue with the fact that "none of the Amended Complaint's [ ] causes of action are clearly directed at any specific Defendant." ECF No. 28 at PageID.195.

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff also must "provide the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392–93 (6th Cir. 2020) (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)).

In this case, although Dobronski's complaint sets forth specific factual allegations that delineate the specific roles and relationships of the Defendants, *see* ECF No. 25 at PageID.137–143, 154–172, it fails to "connect specific facts or events with the various causes of action [he] asserted." *Lee*, 951 F.3d at 392 (quoting *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013)).

Under the TCPA, a defendant who "initiates" a call is "directly" liable for telephone violations that occurred during the call. *In re DISH Network*, 28 FCC Rcd. 6574, 6582–84 (2013). Alternatively, a defendant who did not initiate a call "may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer." *Id.* at 6582. Applicable agency principles embrace "not only formal agency, but also principles of apparent authority and ratification" *Lucas v. Telemarketer Calling from (407) 476-5680*, No. 18-3633, 2019 WL 3021233, at *5 (6th Cir. May 29, 2019) (quoting *In re DISH Network*, 28 FCC Rcd. at 6584, ¶ 28). As explained by the Sixth Circuit in *Lucas*,

**\*5** In determining that vicarious liability *could* be applied to claims for relief under the TCPA, the FCC noted that "[t]he classical definition of 'agency' contemplates 'the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and

subject to the principal's control," and extends to situations where a "third party has apparent (if not actual) authority" to act as a principal's agent. Dish Network, 28 FCC Rcd. at 6586, ¶ 34. Finally, ratification occurs when an agent acts for the principal's benefit and the principal does not repudiate the agent's actions. Sphere Drake Ins. v. Am. Gen. Life Ins., 376 F.3d 664, 677 (7th Cir. 2004).

*Lucas*, 2019 WL 3021233, at *5.

Here, Dobronski concedes that he does not know the identity of the telemarketers who initiated the Subject Calls. ECF No. 25 at PageID.142. So for each claim, he simply alleges that "Defendants or Defendants' agent" initiated calls that violated a particular section of the TCPA. *Id.* at PageID.156–60. However, these allegations could mean that all 13 Defendants collectively initiated the calls. It could also mean that all 13 are jointly liable under a theory of vicarious liability under the TCPA because they mutually authorized third parties to initiate the calls, or they ratified a benefit derived from the third parties' actions. Other statements in the complaint, such as "Defendants engaged in a concert of action" or that the Defendants acted "in partnership" with other Defendants, imply that Dobronski may be asserting concerted-action or partnership liability. These are just a few examples of how one could interpret the Dobronski's claims in light of the agency law principals available. Given that the complaint fails to connect specific facts or specific defendants to any of these theories of liability, it fails to give Defendants adequate notice of the grounds upon which Dobronski's claims rest.

Although there are cases where a complaint that asserts identical claims against multiple defendants can adequately give notice to the defendants as to the claims against them, *see e.g., Johnson v. The Berkely Group*, 2013 WL 12130296 at *1, *5 (2013), here, given that the third-party telemarketers are unknown, there are 13 defendants whose involvement vastly differs, several of the defendants are simply "fictitious business names," and not every call necessarily involves every defendant, this Court finds that the complaint fails to connect specific facts to any of the numerous theories of liability it raises.

In addition, Dobronski's contention that all Defendants could be held jointly liable for all 18 Subject Calls based on a civil conspiracy theory is unpersuasive when the complaint itself states that "*numerous* entities, *including* Defendants, are engaging in mass telemarketing and robocalling campaigns to broad swathes of the United States" relating to mass tort matters. ECF No.25 at PageID.137 (emphasis added).

Thus, many of the Subject Calls, especially those that were terminated immediately upon being answered so no information was exchanged, could be the result of efforts by entities apart from these Defendants and outside of the alleged conspiracy.

Because the complaint improperly groups Defendants together, the remaining claims will be dismissed for failing to provide Defendants with proper notice of the basis of the individual claims against each one.

### C. Failure to State a Claim

In light of this Court's decision on the notice issue, it need not address Defendants' arguments that the complaint fails to state a claim.

### III. CONCLUSION

**\*6** Accordingly, it is **ORDERED** that:

1. Defendants Anthony J. Russo, Jr. P.A. d/b/a The Russo Firm, Anthony John Russo, Jr. d/b/a RP Law LLC, Matthew A. Dolman, P.A. d/b/a Dolman Law Group, TorHoerman Law LLC, Saddle Rock Legal Group LLC, Thomas Lowe Young, and Tyler Joseph Schneider's Motion to Dismiss, ECF No. 28, is **GRANTED**;

2. Defendants Spring Investment, Inc. d/b/a Media Merchants Group, Jeffrey Steven Fishman and Rochelle Marissa Adler's Motion to Dismiss, ECF No. 42, is **GRANTED**;

3. Counts I through IV are **DISMISSED WITHOUT PREJUDICE**.

### All Citations

Slip Copy, 2024 WL 4363118

---

### Footnotes

1    The individuals are Anthony John Russo Jr., Thomas Lowe Young, and Tyler Joseph Schneider, Jeffrey Steven Fishman, and Rochelle Marissa Adler.

2    Dobronski also claimed violations of the Florida Telemarketing Sales Act, Fla. Stat. § 501.059, but the Court previously declined to exercise supplemental jurisdiction over these claims. ECF No. 30.

3    Defendants Intake On Demand, Injury Claims Service, and Consumer Enrollments Center have not appeared in the case or filed any motions. A default was entered by the Clerk against Defendant Intake On Demand on February 8, 2024. ECF No. 35. And in the motion filed by Spring Investments, Inc., Jeffrey Steven Fishman, and Rochelle Marissa Adler, ECF No. 42, it asserts (in a footnote) that Defendant Injury Claims Service has not been served with process, but that the motion similarly applies to it, presumably since Defendants Adler and Fishman are alleged to be the owners and partners of Injury Claim Service. *See* ECF No. 25, PageID.119.

Because the complaint, motions, and responses do not factually distinguish the non-moving Defendants from the moving Defendant, this Court sua sponte considers the claims against all of the Defendants in this opinion. *Silverton v. Dept. of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.") (collecting cases).

4    In his response, Dobronski disputes that concurrence was sought before the Russo Defendants filed their motion. ECF No. 32 at PageID.225; E.D. Mich. L.R. 7.1. He states that had concurrence been properly sought, he would have consented to transferring this case to the Middle District of Florida. *Id.* Even assuming that

to be true, given the Court's analysis of the venue issue, the court deems the transgression harmless in this particular instance only.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Doyle v. GoHealth, LLC, Not Reported in Fed. Supp. (2023)

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 59 of 158

2023 WL 3984951
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Robert DOYLE, et al.

v.

GOHEALTH, LLC

Civil Action No. 22-04291
|
Signed March 30, 2023

**Attorneys and Law Firms**

Ross H. Schmierer, Kazerouni Law Group, APC, Mount Laurel, NJ, for Robert Doyle, et al.

Matthew F. Bruno, Manatt, Phelps & Phillips, LLP, New York, NY, for GoHealth, LLC.

**LETTER ORDER**

MADELINE COX ARLEO, United States District Judge

 **\*1**  Dear Litigants:

Before the Court is Defendant GoHealth, LLC's ("Defendant") Motion to Dismiss the First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 8. Plaintiff Robert Doyle ("Plaintiff"), individually and on behalf of all others similarly situated, opposes the Motion. ECF No. 16. For the reasons set forth below, the Motion is **GRANTED**.

**I. BACKGROUND** [1]

This case arises out of an unsolicited telemarketing phone call Plaintiff received to his cell phone on November 4, 2021. FAC ¶¶ 24-29, ECF No. 4. The call came from an unknown number, (689) 209-1190, and a "pre-recorded voice" identified the caller as "Sarah, a Medicare Specialist." Id. ¶¶ 29-30. Plaintiff was able to determine that he was not speaking to a live representative at the outset of the call, and that the message was prerecorded because of the "generic content ... [and] the tone, cadence and inflection of the voice message." Id. ¶¶ 42-43. A live person, Jason, then began speaking, and told Plaintiff he was a "licensed Medicare specialist." Jason told Plaintiff that "GoHealth" and "GoMedicare" are the same company, and that he wanted to

speak with Plaintiff about their program. Id. ¶¶ 32-33. Jason read Plaintiff "some type of disclaimer," and told Plaintiff that "their website was GoHealth.com" before he transferred Plaintiff to a woman named Jocelyn. Id. ¶¶ 34-36.

Jocelyn explained that she "works for GoHealth," and "listed a bunch of insurance companies that her company works with." Id. ¶¶ 36-37. After Jocelyn, an individual Dennis Hunter began speaking, and told Plaintiff his phone number was (855) 673-3578, extension 4363. Id. ¶¶ 38-39. Dennis Hunter also emailed Plaintiff to confirm that he was calling from GoHealth. Id. ¶ 40. The call was not for emergency purposes, and Plaintiff did not provide any express written consent to receive the call to his cell phone. Id. ¶¶ 46-47.

Plaintiff seeks to represent the following class of persons pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3):

> All persons within the United States who received any telephone call/s from Defendant, its employees and/ or agents, for the purpose promoting Defendant's goods or services, to said person's cellular telephone made through the use of an artificial or prerecorded voice and such person had not previously consented in writing to receiving such calls within the four years prior to the filing of this action.

FAC ¶ 54. Plaintiff maintains that Defendant "has called thousands of wireless telephone customers" without their consent, and he corroborates this allegation by asserting that Defendant is the subject of "several TCPA lawsuits and class actions complaining of unsolicited marketing calls." Id. ¶¶ 50-51.

Plaintiff argues the phone call invaded his privacy and expressly violated 47 U.S.C. § 227(b)(1). He filed his first Complaint in this Court on June 27, 2022. ECF No. 1. He later filed the FAC on July 18, 2022, alleging two counts: (1) negligent violations of the Telephone Consumer Protection Act (the "TCPA") 47 U.S.C. § 227, et seq. (Count I), and (2) knowing and/or willful violations of the TCPA, 47 U.S.C. § 227, et seq. (Count II). See FAC ¶¶ 70-82. The instant Motion followed.

## II. STANDARD OF REVIEW

**\*2** Under Rule 12(b)(1), Plaintiff bears the burden of persuading the Court that subject matter jurisdiction exists. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). In resolving a Rule 12(b)(1) motion, a court must first determine whether the motion presents a "facial" or "factual" attack. See Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack argues that a claim on its face "is insufficient to invoke the subject matter jurisdiction of the court," id. at 358, and "does not dispute the facts alleged in the complaint," Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016). A court reviewing a facial attack must "consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Constitution Party of Pa., 757 F.3d at 358. Here, Defendant's motion to dismiss is a facial attack because it asserts Plaintiff lacks Article III standing, and thus the Court lacks subject matter jurisdiction over the matter. See Society Hill Towers Owners' Ass'n v. Rendell, 210 F.3d 168, 175 (3d Cir. 2000). "Although 'general factual allegations of injury resulting from the defendant's conduct may suffice,' the complaint must still 'clearly and specifically set forth facts sufficient to satisfy' Article III." Reilly v. Ceridian Corp., 664 F.3d 38, 41 (3d Cir. 2011).

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citations omitted). To survive a motion to dismiss, the claims must be facially plausible, meaning that the pleaded facts "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## III. ANALYSIS

Defendant moves to dismiss the FAC on several grounds. Defendant first alleges that Plaintiff's FAC must be dismissed under Rule 12(b)(1) because Plaintiff lacks Article III standing. Def. Mem. at 5-9. Second, Defendant argues the FAC should be dismissed under Rule 12(b)(6) for failure to state a claim, as Plaintiff fails to plead facts supporting

direct or vicarious liability under the TCPA, and he does not establish any willful or knowing violation of the TCPA. Def. Mem. at 9-22. The Court addresses each in turn, after a brief background on the relevant portions of the TCPA.

The TCPA restricts certain telemarketing and robocalls. Specifically, the statute prohibits making: "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ["ADTS"] or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). To state a claim under the TCPA, a plaintiff must plead that the defendant "(1) made a non-emergency call without prior express consent, (2) using an ATDS or artificial or prerecorded voice, (3) to a cell phone." Johnson v. Comodo Grp., Inc., No. 16-4469, 2020 WL 525898, at \*5 (D.N.J. Jan. 31, 2020) (emphasis removed).

### A. Article III Standing

Defendant moves to dismiss Plaintiff's FAC for lack of Article III standing, arguing that Plaintiff has failed to plead facts establishing his injury is fairly traceable to Defendant, and therefore cannot be redressed by Defendant. See Def. Mem. at 5-8. Plaintiff counters that he has plausibly alleged his injury is traceable to Defendant because two agents with whom he spoke indicated they were working for or calling on behalf of Defendant. Pl. Opp. at 5. The Court agrees with Plaintiff.

**\*3** To establish Article III standing, the plaintiff has the burden of establishing three elements: "(1) [he] suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). The Third Circuit addressed the "injury in fact" component of Article III standing in this context in Susinno v. Work Out World, Inc., 862 F.3d 346, 350-51 (3d Cir. 2017). There, the Court held that the "nuisance and invasion of privacy resulting from a single prerecorded telephone call" qualify as "the very harm that Congress sought to prevent." Id. (internal quotation marks omitted).

Defendant challenges the second element of standing, traceability, and argues Plaintiff's FAC fails to establish any link between the prerecorded call Plaintiff received and Defendant's business. Def. Mem. at 6. To show traceability, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... traceable to the challenged action of the defendant and not ...

th[e] result [of] the independent action of some third party not before the court." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42 (1976) (alterations in original)). Defendant maintains Plaintiff has failed to plead that the initial call from "Sarah, a Medicare Specialist" had any connection to Defendant, and that the subsequent transfers to live agents are insufficient to tie Defendant to the initial prerecorded call. Def. Mem. at 6.

Plaintiff relies on Bank v. GoHealth, No. 19-5459, 2021 WL 2323282 (E.D.N.Y. May 11, 2021). Pl. Opp. at 5-6. There, the plaintiff received a similar prerecorded call claiming to offer discounts for Medicare Supplement plans, and after being transferred to two live agents, the third live person with whom he spoke identified himself as a "licensed agent of [the defendant]." Bank, 2021 WL 2323282, at *1. Although, like here, the plaintiff did not allege that the initial call identified defendant, the Court concluded that the facts pled "suffice[d] to allege that plaintiff's injury is traceable to the defendant and, if proven, make it likely that the injury would be redressable if there were a favorable outcome in the case." Id. at *6.

The Court sees no reason to depart from Bank's logic with respect to Article III standing and traceability. Here, the FAC alleges that "[u]pon information and belief ... Defendant called Plaintiff using a pre-recorded message," FAC ¶ 41. The FAC also alleges that the first live person with whom Plaintiff spoke named the Defendant business – a closer connection than the third live person in Bank. Although the allegations may not be sufficient to eventually establish liability, they are enough to support standing. See Bank, 2021 WL 2323282, at *10-12 (finding the plaintiff failed to allege plausible facts to support liability under the TCPA); Perrong v. Quotewizard.com, LLC, No. 20-2506, 2020 WL 5039445, at *4 (E.D. Pa. Aug. 26, 2020) (finding plaintiff pled sufficient facts to establish Article III standing even though he could not directly connect the initial prerecorded call to the defendant).

## B. Liability Under the TCPA
Defendant next argues that Plaintiff fails to plead facts to support direct or vicarious liability under the TCPA. Def. Mem. at 9-20. Plaintiff, on the other hand, maintains that he has alleged facts plausibly supporting a reasonable inference that Defendant is either directly or vicariously responsible for the robocall he received. Pl. Opp. at 11-23. The Court agrees with Defendant.

*4 Under the TCPA, a plaintiff establishes direct liability by showing that the defendant was the person or entity that "initiated" the telemarketing call. [2] A person or entity "initiates" a telephone call when "it takes the steps necessary to physically place a telephone call." In re Joint Petition filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6583 ¶ 26 (2013). Accordingly, an entity "is not directly liable for a violation of the TCPA unless it initiates a call." Id. at 6582 ¶ 24. In addition to direct liability, the TCPA " 'creates a form of vicarious liability making an entity liable when a third party sends unsolicited communications on its behalf in violation of the Act.' " City Select Auto Sales, Inc. v. David/ Randall Assocs., Inc., 96 F. Supp. 3d 403, 419 (D.N.J. 2015) (quoting Brodsky v. HumanaDental Ins. Co., No. 10–C–3233, 2014 WL 2780089, at *6 (N.D. Ill. June 12, 2014)). Federal common law principles of vicarious liability are applicable where the plaintiff establishes an agency relationship between the defendant and a third-party caller. See Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 168 (2016); Cunningham v. Cap. Advance Sols., LLC, No. 17-13050, 2018 WL 6061405, at *6 (D.N.J. Nov. 20, 2018).

It is well established that vicarious liability may be established under three agency theories: actual authority, apparent authority, and ratification. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 120 (3d Cir. 2013) (citation and quotations omitted). Apparent authority, on the other hand, can be shown "in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship." Id. (citation and quotations omitted). Finally, "[r]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement Third of Agency, § 4.01 (2006).

Here, the Court is not convinced that Plaintiff has alleged direct liability under the TCPA. Plaintiff acknowledges that the initial telemarketing call he received only identified the caller as "Sarah, a Medicare Specialist," and he does not allege that the number associated with the call – 629-209-1190 – belonged to Defendant. FAC ¶¶ 29-30; see also Camunas v. Nat'l Republican Senatorial Comm., 541 F. Supp. 3d 595, 602 (E.D. Pa. 2021) (dismissing the plaintiff's claims on direct liability grounds where plaintiff did not allege

**Doyle v. GoHealth, LLC, Not Reported in Fed. Supp. (2023)**

Case 1:25-cv-00927-KMN   Document 23-9   Filed 08/29/25   Page 62 of 158

the number that sent unsolicited text messages was owned or operated by the defendant); Smith v. Vision Solar LLC, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (dismissing plaintiff's claims as insufficient to support direct liability under the TCPA where the plaintiff did " 'not show plausibly that defendant actually, physically initiated the telephone calls at issue' ") (quoting Aaronson v. CHW Group, Inc., No. 18-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019)). As such, direct liability is not established because there are no facts to support the conclusion that Defendant "physically placed" the call. In re Dish Network, LLC, 28 F.C.C.R. at 6583 ¶ 26.

**\*5** Neither has Plaintiff pled sufficient facts to allow the Court to "draw the reasonable inference" that Defendant is vicariously liable for the telemarketing call Plaintiff received. See Iqbal, 556 U.S. at 678. Plaintiff relies upon Landy v. Nat. Power Sources, LLC, in which an unidentified operator utilizing ADTS called the plaintiff's cell phone and made a generic solicitation regarding solar panels. No. 3:21-00425, 2022 WL 797967, at *1 (D.N.J. Mar. 16, 2022) (hereinafter, "Landy II"). The plaintiff was then transferred to a live agent associated with a third-party named "US Home Solar," before a second live agent identified herself as the defendant's agent. Id. There, the Court held that the plaintiff had pled sufficient facts to plausibly plead vicarious liability on the part of the defendant. Id. at *3. The Court determined that the "description of the process of the call" established "circumstantial evidence that by accepting the call, and following up with an e-mail after the call, [defendant] demonstrated consent to the use of ATDS." Id. (internal quotation marks omitted). The Court further reasoned that "an agency relationship [could] be inferred from ... the smooth transfer from the initial ATDS contact to" the two live agents, which showed "a cooperative relationship from which one may infer authority or apparent authority of [defendant] to the initial contact by ATDS." Id.

In Landy II, however, the plaintiff amended his complaint after an initial dismissal for failure to state a claim, to include new factual allegations regarding the "nature of the services" initially offered to plaintiff, and specifically "allege[d] that the initial ATDS contact was made to market [defendant's] products." Id. at *1. The amended complaint further supplemented the original by adding that "the initial call was made at the direction of [defendant], and that [defendant] knew the initial caller utilized an ATDS to generate customers for [defendant]." Id. at *3. Plaintiff here has not alleged any such facts.

First, Plaintiff does not provide any details regarding Defendant's relationship to Sarah and Jason, and he does not explain Jason's relationship to Jocelyn.[3] While the FAC states that Jason, the first live agent with whom Plaintiff spoke, indicated that "GoHealth and GoMedicare are the same company," FAC ¶ 33, Plaintiff does not allege any agency relationship between GoHealth and Jason, nor whether and how GoMedicare is related to Defendant. See Landy v. Nat. Power Sources, LLC, No. 3:21-00425, 2021 WL 3634162, at *4 (D.N.J. Aug. 17, 2021) ("Landy I") (dismissing the plaintiff's TCPA claims where he did "not allege that the initial caller referenced [defendant], t[ell] him to expect contact from [defendant], or otherwise indicate[ ] a relationship with [defendant]"); Klein v. Just Energy Grp., Inc., No. CV 14-1050, 2016 WL 3539137, at *9-13 (W.D. Pa. June 29, 2016) (rejecting plaintiff's vicarious liability allegations as based on speculation that the defendant "accepted or received any benefit" from the call, and where plaintiff offered no evidence of defendant's affirmance, assent, or consent to the call).

Moreover, Plaintiff failed to allege that Sarah and Jason were attempting to sell him GoHealth-specific Medicare services, and "the purported interrelatedness" of GoHealth to Medicare is not explained anywhere in the Complaint. See Doyle v. Matrix Warranty Sols., Inc., No. 22-3198, 2023 WL 1794838, at *5 (D.N.J. Feb. 6, 2023). While Plaintiff presented proofs demonstrating GoHealth's Medicare business for the first time when he opposed Defendant's Motion to Dismiss, those exhibits are "not appropriately considered as part of the Court's Rule 12(b)(6) analysis." Id. Plaintiff may not attempt to make such a connection via his briefing, as "the Complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. v. Zimmerman v. Pepsico, 836 F.2d 173, 181 (3d Cir. 1988).[4]

**\*6** Accordingly, the FAC makes insufficient allegations for this Court to infer that Defendant bears responsibility for the initial telemarketing call.[5]

## IV. CONCLUSION

Defendant's Motion to Dismiss pursuant to Rule 12(b)(6), ECF No. 8, is accordingly **GRANTED**. Plaintiff may amend his Complaint within 30 days of this Order to cure any deficiencies identified herein.

**Doyle v. GoHealth, LLC, Not Reported in Fed. Supp. (2023)**

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 63 of 158

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3984951

---

## Footnotes

1    These facts are principally drawn from the FAC.

2    Plaintiff has satisfied the TCPA requirement that the caller use an artificial or prerecorded voice, and the parties do not dispute this. See Pl. Opp. at 9-10; Somogyi v. Freedom Mortg. Corp., No. 17-6546, 2018 WL 3656158, at *7 (D.N.J. Aug. 2, 2018) (The "complaint must include some factual allegations beyond "the call had a prerecorded voice," such as descriptions of the voice's "clarity and cadence" or "the absence of anything specific" to a live person such as saying "the name of the person being called.").

3    Plaintiff's attempts to explain that the use of the word "their" website indicates that Jason was associated with GoHealth are unavailing, and as noted below, are after-the-fact explanations that were not included in Plaintiff's pleadings, and will therefore not be considered at this stage. Pl. Opp. at 15-17.

4    The Court similarly rejects Plaintiff's request for judicial notice of Defendant's website, as "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" at the motion to dismiss stage. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

5    At this stage, the Court also declines to issue an order certifying the matter as a class action with Plaintiff as Class Representative, FAC ¶ 82(a). Plaintiff may bring a formal motion to certify the class if he so chooses.

---

**End of Document**                                                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by Bottoms v. Block, Inc., W.D.Wash., May 2, 2024

2019 WL 4855378

Only the Westlaw citation is currently available.

United States District Court, E.D. Washington.

Roberta FRANK, an individual, and all others similarly situated, Plaintiff,

v.

CANNABIS & GLASS, LLC, a Washington limited liability company; NXNW Retail, LLC, a Washington limited liability company; Springbig, Inc., a Delaware Corporation; and Tate Kapple and his marital community, Defendants.

No. 2:19-cv-00250-SAB
|
Signed 10/01/2019

**Attorneys and Law Firms**

Brian Cameron, Cameron Sutherland PLLC, Kirk D. Miller, Kirk D. Miller PS, Spokane, WA, for Plaintiff.

John S. Devlin, III, Taylor Washburn, Lane Powell PC, Seattle, WA, for Defendants Cannabis & Glass LLC, NXNW Retail LLC, Tate Kapple.

David S. Almeida, Pro Hac Vice, Mark S. Eisen, Pro Hac Vice, Suzanne M. Alton de Eraso, Pro Hac Vice, Benesch Friedlander Coplan & Aronoff LLP, Chicago, IL, Medora A. Marisseau, Karr Tuttle & Campbell, Seattle, WA, for Defendant Springbig Inc.

**ORDER GRANTING DEFENDANT SPRINGBIG'S MOTION TO DISMISS; GRANTING LEAVE TO AMEND**

Stanley A. Bastian, United States District Judge

**\*1** Before the Court is Defendant's Springbig's Motion to Dismiss Under Rule 12(b)(6), ECF No. 14. A hearing on the motion was held on September 26, 2019 in Spokane, Washington. Plaintiff was represented by Kirk D. Miller and Brian Cameron. Defendant Springbig was represented by Mark S. Eisen.

**Background Facts**

Plaintiff is bringing a putative class action against Defendants Cannabis & Glass, LLC, NXNW Retail, LLC, and Tate Kapple ("Retail Defendants") and Defendant Springbig, Inc., for their various respective roles in sending unauthorized text messages to her cell phone. More specifically, in October of 2018, Plaintiff visited the Retail Defendants' store. At the point of sale, she gave the sales associate her cell phone number so she could be part of their loyalty program. She was not told that by giving her number she would start receiving text messages from the Retail Defendants that notified her of sales and discounts. Rather, she was told by the employee that her phone number and first name were required before she could enroll in the loyalty program. She visited a second store and was told that she did not have to enroll in a separate rewards program because the two were linked. The next day, she began to receive daily text messages from the Retail Defendants that were sent using Defendant Springbig's SMS short codes.

Plaintiff is bringing claims under the federal Telephone Consumer Protection Act (TCPA), 47 U.C.S. 227, *et seq.* and the Washington Consumer Protection Act, RCW 19.86, *et seq.*, which is based on an alleged violation of the Washington Commercial Electronic Mail Act (CEMA), RCW 19.190, *et seq.*

**Motion Standard**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the Complaint. *Navarro v. Block*, 250 F.3d 729, 732 (2001). In order to survive a Rule 12(b)(6) Motion to Dismiss, the Complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twobly*, 555 U.S. 544, 570 (2007)). Thus, in deciding whether Plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.* This presumption,

however, does not apply to legal conclusions. *Id.*

The U.S. Supreme Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted lawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> *Id.* (quotations omitted).

Further, it instructed that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* The Complaint must do more than tender "naked assertions devoid of further enhancement." *Id.* (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### Telephone Consumer Protection Act ("TCPA")

**\*2** Under the Telephone Consumer Protection Act, ("TCPA"), it is unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice.... to any telephone number assigned to a ... cellular telephone service," *47 U.S.C. § 227(b)(1)(A)(iii)*. A text message is a "call" under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, *569 F.3d 946, 951-52 (9th Cir. 2009)*. Prior express consent must be in writing if the message is telemarketing but can be either oral or written if the call is informational. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 1830, 1838-44 (2012)*.

Congress has delegated to the Federal Communications Commission (FCC), the authority to make rules and regulations to implement the TCPA. *47 U.S.C. § 227(b)(2)*. Because of this, courts should defer to the FCC's interpretation of a term in the TCPA, so long as the term is not defined by the TCPA and the FCC's interpretation is reasonable. *Satterfield, 569 F.3d at 953*.

According to the FCC, generally, common carriers providing telecommunication services are not liable under the TCPA. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 FCC Rcd. 8752, 8776 n.83 (1992)* (concluding that common carriers are not liable under the TCPA absent "a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmission"). A carrier is not entitled to this exemption if it "was so involved in placing the call as to be deemed to have initiated it." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7980 (2015)*. In its 2015 Ruling, the FCC clarified that "application providers that play a minimal role in sending text messages are not *per se* liable for unwanted robocalls." *Id. at 7965*. It noted the term "make" is not defined by the TCPA. *Id.* In determining whether an app or user is the maker of the call, the FCC explained that it looks to the "totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purpose of the TCPA." *Id.*

Some of the factors used to evaluate an entity's involvement in placing the call include:

–the extent to which the provider/host controls the messaging

–the extent to which the provider/host controls the timing or sending of the message;

–the extent to which the provider/host controls the recipient list;

–the extent to which the provider/host "willfully enables fraudulent spoofing of telephone numbers;"

–the extent to which the provider/host assists customers in blocking Caller ID;

–whether the provider/host knowingly allows its customers to use the platform in a way that violates the TCPA;

–whether the service or platform is purely reactive in nature, sending messages as proscribed and arranged by the customer.

2015 TCPA Ruling, *30 FCC Rcd. at 7980-84*.

### Analysis

Plaintiff has not argued the Court should disregard the 2015 Ruling, or that the necessary factors identified by the FCC in that ruling before an application provider can be held liable should not apply to this case. Instead, Plaintiff argues that the allegations in her complaint are sufficient to get past a 12(b)(6) Motion. Her Amended Complaint, however, does not provide any allegations that Defendant Springbig took steps physically necessary to place the call or that it was so involved in the placing of the call as to be deemed to have initiated it. Merely alleging that Defendant Springbig "made" or "initiated" the call is not sufficient to allege a TCPA claim against Defendant Springbig. There are no allegations that Defendant Springbig exercised any discernible involvement in deciding whether, when, or to whom the text message is sent, or what the text message said. It appears Plaintiff is attempting to meet this requirement by including in the Amended Complaint the content of sample text messages found on their website. These allegations and examples are not sufficient to establish liability on the part of Defendant Springbig, given that there are no allegations stating the retail Defendants used Defendant Springbig's suggested content.

**\*3** Taken as true, Plaintiff's allegations in the Amended Complaint allege that Defendant Springbig had some role, albeit a minor one, in the causal chain that resulted in the sending of the text. According to the guidance provided by the FCC, however, this is not enough to survive a 12(b)(6) motion. Because Plaintiff's allegations do not allege that Springbig controlled the recipients, timing or content, the Amended Complaint does not allege that Defendant Springbig was the maker or initiator of the text message. Consequently, Plaintiff has failed to state a TCPA claim against Defendant Springbig.

## Washington's Commercial Electronic Mail Act (CEMA)

The Washington legislature originally enacted the Commercial Electronic Mail Act ("CEMA"), Wash. Rev. Code § 19.190.010 *et seq.*, to deal with unwanted commercial email messages. *Wright v Lyft, Inc.*, 189 Wash.2d 718, 724 (2017). In 2003, CEMA was amended to include prohibitions on initiating or assisting the transmission of electronic commercial text messages to cell phones. Wash. Rev. Code § 19.190.060; *Wright*, 189 Wash.2d at 724.

"Assisting the transmission" of a text message requires providing "substantial assistance or support which enables any person to formulate, compose, send, originate,

initiate, or transmit a commercial electronic mail message," with knowledge that the initiator is violating or intends to violate consumer protections, and expressly excludes electronic mail service providers who provide intermediary transmission services. Wash. Rev. Code § 19.190.100(1). "Initiate the transmission" refers to the action by the original sender of an electronic mail message or an electronic text message but excludes an intervening interactive computer service, unless the service knows, or actively avoids knowing, that the person initiating the transmission is violating consumer protections. *Id.* § (7).

## Analysis

In order for Defendant Springbig to be liable under CEMA, Plaintiff must allege that either it initiated the transmission or assisted in the transmission. Plaintiff has not alleged that Defendant Springbig was the original sender of the test message. Moreover, Plaintiff's conclusory allegations that Defendant Springbig violated CEMA are not sufficient, given that Plaintiff has also alleged that Defendant Springbig's role in the alleged violation was providing a programmable platform from which the Retail Defendants initiate the message. Similar to the TCPA, while Plaintiff has alleged facts that suggest that Defendant provided some form of assistance, *i.e.* the software application used to send the text messages, Plaintiff has not alleged facts to suggest that Defendant Springbig provided *substantial* assistance to the retail Defendants in the sending of the alleged text message, which is required by the statute. Additionally, Plaintiff has not alleged any facts that Defendant Springbig knew or consciously avoided knowing the Retail Defendants were violating or intending to violate the law. Because the Amended Complaint fails to allege adequate facts to show that Defendant Springbig initiated the transmission or assisted in the transmission of the text message as contemplated by the statute, Plaintiff has failed to state a CEMA/CPA claim upon which relief may be granted.[1]

## Leave to Amend

Plaintiff is granted leave to file a Second Amended Complaint if she believes she can remedy the pleading and legal deficiencies identified above.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Springbig's Motion to Dismiss Under Rule 12(b)(6), ECF No. 14, is **GRANTED**.

**\*4** 2. Within 2 (two) weeks from the date of this Order, Plaintiff shall file a Second Amended Complaint if she believes she can remedy the pleading to address the legal deficiencies identified above.

**IT IS SO ORDERED.** The Clerk of Court is directed to enter this Order and forward copies to counsel.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4855378

Footnotes

1    Plaintiff relies on the alleged violation of CEMA to allege a *per se* violation of the Washington Consumer Protection Act.

---

**End of Document**                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 4854082
Only the Westlaw citation is currently available.
United States District Court, S.D. West Virginia,
Huntington Division.

Joann HURLEY, on behalf of herself and
all others similarly situated, Plaintiffs,

v.

Thomas MESSER, a W.Va. citizen, Sandra Pertee, a
W. Va. citizen, Wayne County Board of Education,
a West Virginia Political Subdivision, RingCentral,
Inc., a Delaware Corp., Callcentric, Inc., a New York
Corp., Fiverr, Inc., a Delaware Corp., and Voicent
Communications, Inc., a California Corp., Defendants.

CIVIL ACTION NO. 3:16-9949
|
Signed 10/04/2018

**Attorneys and Law Firms**

Anthony J. Majestro, Powell & Majestro, J. Ryan Stewart, Bucci Javins & Carter, Timothy C. Bailey, Bailey Javins & Carter, Charleston, WV, for Plaintiffs.

Bernard S. Vallejos, Farrell Farrell & Farrell, Michael J. Farrell, Farrell White & Legg, Huntington, WV, Edward P. Tiffey, Tiffey Law Practice, John R. McGhee, Jr., Kay Casto & Chaney, Michael W. Carey, David R. Pogue, Carey Scott Douglas & Kessler, Robert R. Rodecker, Jared M. Tully, Charleston, WV, Mary Ann L. Wymore, Greensfelder Hemker & Gale, St. Louis, MO, Michael P. Donahue, Marashlian & Donahue the Commlaw Group, Tysons, VA, Bonnie L. Jarrett, Jordan Romanoff, Kirkland & Ellis, New York, NY, Jeffrey A. Backman, Lauren Shoemake, Greenspoon Marder, Fort Lauderdale, FL, for Defendants.

Thomas Messer, Fort Gay, WV, pro se.

## MEMORANDUM OPINION AND ORDER

ROBERT C. CHAMBERS, UNITED STATES DISTRICT JUDGE

**\*1** Pending before the Court are Motions to Dismiss Plaintiff's Second Amended Complaint by Callcentric, Inc. (ECF NO. 73), RingCentral, Inc. (ECF No. 99), and Fiverr, Inc. ECF No. 89. In the Second Amended Complaint,

Plaintiff Joann Hurley alleges that these Defendants violated the Telephone Consumer Protection Act ("TCPA") and the related federal regulations with respect to certain alleged improper political calls. Defendants Callcentric, RingCentral, and Fiverr argue Plaintiff's claims must be dismissed for a variety of reasons. [1] For the following reasons, the Court **DENIES, in part,** and **GRANTS, in part,** the motions of Callcentric and RingCentral and **GRANTS** the motion of Fiverr.

### I. Background

As more fully set forth in this Court's early Memorandum Opinion and Order entered on June 6, 2017 (ECF No. 34), this case involves certain prerecorded political robocalls that were made against Plaintiff in her bid to be re-elected to the Wayne County Board of Education (BoE). In the original Complaint filed on October 21, 2016, Plaintiff, on behalf of herself and all others similarly situated, alleged Defendants Thomas Messer and the BoE violated the TCPA and the Federal Communications Commission's regulations implementing the TCPA ("FCC Rules") by initiating these telephone calls. In the Memorandum Opinion and Order, the Court dismissed the BoE due to Plaintiff's failure to state a claim under either a theory of direct liability or vicarious liability, but it permitted Plaintiff to file an Amended Complaint and proceed against Defendant Messer. A corrected version of the Amended Complaint was filed on June 12, 2017. ECF No. 37.

Thereafter, the parties proceeded with discovery. In light of that discovery, Plaintiff filed a motion on October 10, 2017, seeking Leave to File Second Amended Complaint to add Sandra Pertee, the Superintendent of the BoE during the relevant time, to readd the BoE, and to add Callcentric, RingCentral, Fiverr, and Voicent Communications, Inc. as Defendants. ECF No. 50. The Court granted the motion on November 17, 2017. ECF No. 58. Thereafter, Defendants Callcentric, RingCentral, Fiverr, and Voicent all filed separate motions to dismiss. Defendants Callcentric and Fiverr argue the claims against it should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Defendant RingCentral argues the claims against it should be dismissed under both Rule 12(b)(6) and Rule 12(b)(1).

### II. Legal Standard

Hurley v. Messer, Not Reported in Fed. Supp. (2018)

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 69 of 158

With respect to Rule 12(b)(6), the United States Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), that courts must look for "plausibility" in the complaint. 550 U.S. at 557. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotation marks and citations omitted).

**\*2** In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id.* at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2) ). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide

the framework of a complaint, they must be supported by factual allegations." *Id.*

With respect to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it can follow two tracks. Under the first track, a party asserts a "factual attack," claiming that the jurisdictional allegations made in the complaint are inaccurate. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Under the second track, a party asserts a "facial attack," claiming that the jurisdictional facts contained within the complaint, taken as true, fail to support a court's subject matter jurisdiction over the action. *See id.*; *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986). When considering a "facial attack," a court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns*, 585 F.3d at 192 (internal quotation marks and citation omitted). Defendant RingCentral has asserted a facial attack. Therefore, the Court will proceed under the Rule 12(b)(6) procedural framework. [2]

### III. Discussion

#### A. Direct Liability

In the Second Amended Complaint, Plaintiff alleges that all "Defendants initiated and made ... illegal prerecorded messages from an automatic dialing system utilizing the Wayne County Schools master call list, which is maintained by defendants WVBOE, Thomas Messer and Sandra Pertee[.]" *Second Am. Compl.*, at ¶ 21, in part. In addition, Plaintiff asserts "[D]efendants planned, created, caused, broadcasted and initiated thousands of illegal, misleading, defamatory and false prerecorded telephone messages regarding plaintiff Joann Hurley to be made to members of the prospective class." *Id.* at ¶ 33. Plaintiff further alleges that "Defendants' actions, conduct and omissions, in making and broadcasting the subject prerecorded messages/calls from an automatic telephone dialing system to cellular and paging services, directly violated" 47 U.S.C. § 227(b) of the TCPA (Count I) and 47 C.F.R. 64.1200(a) of the FCC Rules (Count II). *Id.* at ¶¶ 45, 49.

Section 227(b) of the TCPA provides, in relevant part:

It shall be unlawful for any person ... --

(A) to make any call ... using any automatic telephone dialing system or an artificial or prerecorded voice—

\* \* \*

(iii) to any telephone number assigned to a paging service, cellular telephone service, ... or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]"

47 U.S.C. § 227(b)(3), in part. Similarly, 47 C.F.R. § 64.1200(a) provides, in part:

No person or entity may:

(1) ... initiate any telephone call ... using an automatic telephone dialing system or an artificial or prerecorded voice;

**\*3**

\* \* \*

(iii) To any telephone number assigned to a paging service, cellular telephone service, ... or any service for which the called party is charged for the call.

47 C.F.R. § 64.1200(a)(1)(iii). In *In re Dish Network, LLC*, 28 FCC Rcd. 6574 (2013), the FCC recognized that neither the statute nor the rules define the term "initiate." 28 FCC Rcd. at 6583, ¶ 26. In delineating the term, the FCC concluded "a person or entity 'initiate[s]' a telephone call" by taking "the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id.*

In a subsequent ruling, the FCC further stated initiating a telephone call can mean either the person or entity that "take[s] the steps necessary to physically place a telephone call" or that is "so involved in the placing of a specific telephone call as to be deemed to have initiated it." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act 1991*, 30 FCC Rcd. 7961, 7980, ¶ 30 (2015) ("Omnibus Order") (internal quotation marks and citations omitted). The FCC explained it will

> look to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was

> so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA.

*Id.* (citation omitted). With respect to the second prong for those that offer calling platform services for others to use, the FCC stated it also will consider as a factor whether they "knowingly allowed [their] client(s) to use that platform for unlawful purposes[.]" *Id.* (citation omitted).

In its motion, Defendant Fiverr argues it cannot be held liable under either the TCPA or the FCC Rules because the Second Amended Complaint is devoid of any factual allegations that it made or initiated the calls as contemplated therein. In the Second Amended Complaint, Plaintiff only mentions Defendant Fiverr by name in two paragraphs. Specifically, Plaintiff alleges that Defendant Fiverr "is a Delaware corporation with its principal place of business in New York, New York. At all times relevant hereto, defendant Fiverr, through its actors, did the voiceovers for the subject messages." *Second Am. Compl.*, at ¶ 7. Additionally, Plaintiff alleges:

> Defendant Messer also hired/retained voice actors from defendant Fiverr, who would read the prepared script for the subject prerecorded message. Defendant Fiverr directly participated in, had knowledge and the right to control the illegal conduct alleged herein, as the "voice" of the subject prerecorded message. As the "voice", defendant Fiverr would have direct knowledge that the subject prerecorded messages were in violation of the TCPA.

*Id.* at ¶ 30.

Upon review, the Court finds that, even if true, these allegations are insufficient to show Defendant Fiverr initiated the telephone calls as contemplated by the statute or the FCC Rules. First, there are simply no facts suggesting that Defendant Fiverr physically placed the telephone calls at issue. Second, the Court finds that the facts alleged also are

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 71 of 158

Hurley v. Messer, Not Reported in Fed. Supp. (2018)

insufficient to support an argument that Defendant Fiverr was so involved in placing the calls that it could be deemed to have initiated them. Plaintiff's factual allegations against Defendant Fiverr is that Defendant Messer "hired/retained voice actors from defendant Fiverr, who would read the prepared script for the prerecorded message." *Id.* By virtue of being the voice, Plaintiff claims Defendant Fiverr "directly participated in, had knowledge and the right to control the illegal conduct alleged[.]" *Id.*

**\*4** However, providing an actor to read the content of an illegal message is not the equivalent of being "so involved in *the placing* of a specific telephone call as to be deemed *to have initiated it.*" *Omnibus Order*, 30 FCC Rcd. at 7980, ¶ 30 (italics added). [3] Additionally, there are no allegations that Defendant Fiverr contributed to the content, timing, or manner the calls were made. Simply put, although Plaintiff has alleged facts suggesting Defendant Fiverr had some role in the recording of the content of the message, and creating the message was part of the chain of events before the call was made, there is nothing supporting a claim Defendant Fiverr was involved in initiating or placing the call. With respect to Defendant Fiverr, Plaintiff's allegation that "Defendants initiated and made these illegal prerecorded messages from an automated dialing system," *Second Am. Compl.*, at ¶ 21, and that "[D]efendants planned, created, broadcasted and initiated" the telephone calls, *Id.* at ¶ 33, are merely legal conclusions that are unsupported by any factual allegations. Therefore, under *Iqbal* and *Twombly*, the Court finds Counts I and II against Defendant Fiverr must be dismissed.

Perhaps realizing her claims against Defendant Fiverr stand on shaky grounds, Plaintiff asks this Court to allow her to conduct discovery on those claims if the Court finds her pleadings insufficient. However, allowing discovery where Plaintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly.* Therefore, the Court denies Plaintiff's request.

Turning to the claims of direct liability in Counts I and II against Defendants Callcentric and RingCentral, the Court reaches a different result. Plaintiff alleges Callcentric and RingCentral are companies that provide Voice-Over-Internet-Protocol (VoIP) services. *Second Am. Compl.*, at ¶¶ 5, 6. Plaintiff claims she received the telephone calls at issue from the phone numbers 877-205-4603 and 631-542-1867, which she eventually learned were the numbers of RingCentral and Callcentric. *Id.* at ¶¶ 11, 14. Plaintiff also learned that similar prerecorded messages were being sent and autodialed

to the cellular phones and paging services of members of the community. *Id.* at ¶¶ 15, 20. In addition, Plaintiff alleges that:

> RingCentral and Callcentric were hired/retained, and both knowingly provided defendants Messer, Pertee and the WCBOE an avenue and means, through a direct telephone number, to broadcast the subject illegal prerecorded messages to members of the class. Defendants RingCentral and Callcentric have direct knowledge of and the right of control over the illegal conduct alleged herein, as the subject of the prerecorded messages and robocalls were broadcasted by defendants RingCentral and Callcentric themselves through their own assigned telephone numbers ..., and both defendants maintain records of the subject robocalls being initiated.

*Id.* at ¶ 28, in part.

As with Defendant Fiverr, Defendants RingCentral and Callcentric both argue that they cannot be directly liable under the TCPA or the FCC Rules because they did not "initiate" or make the subject calls. Instead, they assert they are nothing but "passive conduit[s]." *Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, ECF No. 100, at 2; *see Mem. in Supp. of Def. Callcentric's Mot. to Dismiss*, ECF No. 74, at 9. However, unlike Fiverr, Plaintiff claims Callcentric and RingCentral are the VoIP providers and, thus, offered a calling platform for others to use. Additionally, Plaintiff alleges these Defendants knew about the illegal conduct, had a right to control the conduct but, nevertheless, permitted the robocalls to be broadcast through their assigned telephone numbers. Although Callcentric and RingCentral insist they were just a conduit, the Court finds these allegations, at the very least, are sufficient to state a plausible claim that Callcentric and RingCentral offered a calling platform and "knowingly allowed its client(s) to use that platform for unlawful purposes[.]" *Omnibus Order*, 30 FCC Rcd. at 7980, ¶ 30 (citation omitted). Therefore, the Court denies Callcentric and RingCentral's argument.

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 72 of 158

Hurley v. Messer, Not Reported in Fed. Supp. (2018)

### B. Standing

**\*5** In its motion to dismiss, Defendant RingCentral also argues that Plaintiff lacks standing to assert the above claims because Plaintiff "fails to establish that [she] suffered a concrete injury-in-fact that is fairly traceable to RingCentral's alleged conduct." *Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, at 15. The Court disagrees.

To bring any action in federal court, a plaintiff must have standing—that is, a plaintiff must have a sufficient personal stake in the outcome of the matter being litigated to make it justiciable under Article III of the Constitution. *See Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 153 (4th Cir. 2000); *see also* U.S. Const. art. III (restricting federal courts to adjudicating "cases" and "controversies"). In order to satisfy the minimum constitutional requirements for standing, an individual plaintiff must demonstrate:

> (1) [she] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) ).

Defendant RingCentral first argues that Plaintiff does not have standing because she has not and cannot allege the first requirement of standing: an injury in fact. *See Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, at 16. However, Supreme Court precedent clearly holds that, when a private cause of action is asserted under the TCPA, the constitutional requirement of an injury in fact is met. *See Mims v. Arrow Financial Services, LLC*, 565 U.S. 368, 370–72 (2012) (holding that a federal district court has jurisdiction to hear a private right of action brought pursuant to the TCPA).

Second, Defendant RingCentral argues that Plaintiff does not have standing because she cannot assert that her injury was *caused* by RingCentral. *Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, at 18. However, this argument is actually no different from the above argument that RingCentral did not "initiate" the calls under the TCPA. In fact, as support for the proposition that Plaintiff does not have standing, Defendant RingCentral implicitly admits it is a repetitive issue when it states "Plaintiff [arguably] concedes in her [Second Amended Complaint] that Defendant Messer ... *initiated* the calls; not RingCentral." *Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, at 19 (emphasis added). Thus, for the same reasons why the Court finds Plaintiff sufficiently pled that RingCentral "initiated" the telephone calls, the Court finds that Plaintiff's injury can be said to be caused by RingCentral, and standing is met.

### c. Residential Phone Numbers

Finally, Defendants RingCentral and Callcentric both argue that because the FCC "has created an exemption for non-commercial robocalls made to residential telephone" numbers, the Court should "dismiss Plaintiff's TCPA claims relating to residential telephones." *Mem. in Supp. of Def. RingCentral's Mot. to Dismiss*, at 19-20; *see Mem. in Supp. of Def. Callcentric's Mot. to Dismiss*, at 17-18. However, despite mention that some of the telephone calls were made to landlines, the Second Amended Complaint, as Plaintiff points out, does not actually assert any specific claim related to calls made to landlines. *See Mem. in Opp. to Def. RingCentral's Mot. to Dismiss*, ECF No. 105, at 19; *Mem. in Supp. of Def. Callcentric's Mot. to Dismiss*, at 18. Thus, Defendants' argument is moot.

### d. Vicarious Liability

**\*6** Turning to Count III, Plaintiff alleges liability under a theory of vicarious liability. *Second Am. Compl.*, at ¶¶ 50–54. Claims of vicarious liability exist under the TCPA and arise under federal common-law principles of agency. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016), *as revised* (Feb. 9, 2016) (citing *In re Dish Network* ). The FCC identified three types of relationships giving rise to vicarious liability under the TCPA: classic agency relationships, apparent authority, and ratification. *In re Dish Network*, 28 FCC Rcd. at 6586-87, ¶ 34.

"Agency requires more than mere authorization to assert a particular interest. 'An essential element of agency is the principal's right to control the agent's actions.' "

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 73 of 158

Hurley v. Messer, Not Reported in Fed. Supp. (2018)

*Hollingsworth v. Perry*, 570 U.S. 693, 713 (2013) (quoting 1 Restatement (Third) of Agency § 1.01, Comment *f* (Am. Law Inst. 2005) ). "Vicarious liability, however, does not require proof of a formal agency relationship; instead, a plaintiff may use principles of apparent authority and ratification to establish such liability." *In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, No. 5:11-CV-90, 2014 WL 316476, at *6 (N.D. W. Va. Jan. 28, 2014) (citing *In re Dish Network*, 28 F.C.C. Rcd. at 6584).

Generally, to establish apparent authority, a plaintiff must show some representation or permission by the alleged principal to be represented by the alleged agent, and that there was some reliance by the plaintiff on the actions of the alleged agent. *See Hawkspere Shipping Co. v. Intamex, S.A.*, 330 F.3d 225, 235–36 (4th Cir. 2003); *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 166 (4th Cir. 1988) (applying North Carolina law). With regard to ratification, "a [principal] would be responsible under the TCPA for the unauthorized conduct of a[n alleged agent] that is otherwise authorized to market on the [alleged principal's] behalf if the [principal] knew (or reasonably should have known) that the [agent] was violating the TCPA on the [principal's] behalf and the [principal] failed to take effective steps within its power to force the [agent] to cease that conduct." *In re Dish Network*, 28 F.C.C. Rcd. at 6592, ¶ 46 (footnote omitted).

In relevant portions, Plaintiff identifies Callcentric, RingCentral, and Fiverr as having the "right to exercise, control over defendant Messer," and further allege that Defendant Messer was their "agent." *Second Am. Compl.*, at ¶¶ 51–52. Plaintiff also generally alleges Callcentric, RingCentral, and Fiverr held Defendant Messer out "as their agent" and "ratified" Defendant Messer's actions. *Id.* at ¶¶ 53–54. Beyond these conclusory statements, Plaintiff has not alleged a single fact, disputed or otherwise, identifying how Callcentric, RingCentral, and Fiverr exerted any control or authority over Defendant Messer. Nor has Plaintiff identified

any actions Defendant Messer performed at their behest. In fact, the Complaint cuts in the other direction, alleging Defendant Messer "hired/retained" Callcentric, RingCentral, and Fiverr. *Id.* at ¶¶ 28, 30.

Furthermore, the Second Amended Complaint does not indicate any facts where agency may have been established by apparent authority or ratification, as there are no statements indicating any reliance on Callcentric, RingCentral, and Fiverr based on the actions of Defendant Messer. Even construing liberally, the closest Plaintiff comes to alleging non-formal agency leads to a non-sensical hodgepodge of facts. Plaintiff claims, through some sort of temporal and logical loop, that Callcentric, RingCentral, and Fiverr had authorized Defendant Messer's behavior and failed to cease his conduct. Plaintiff implies that before Callcentric, RingCentral, and Fiverr ever met Defendant Messer, they directed him to hire them, thus making the man who "hired" them their agent. However, as stated, Plaintiff has made no more than conclusory allegations and failed to allege a claim for vicarious liability. Therefore, the Court dismisses Count III against Callcentric, RingCentral, and Fiverr.

### IV. Conclusion

**\*7** Accordingly, for the foregoing reasons, the Court **GRANTS** Defendant Fiverr's Motion to Dismiss, and **GRANTS, in part,** and **DENIES, in part,** Defendants Callcentric and RingCentral's Motions to Dismiss. Specifically, the Court **DISMISSES** Count III against Defendants Callcentric and RingCentral, but not Counts I and II.

### All Citations

Not Reported in Fed. Supp., 2018 WL 4854082

---

### Footnotes

1    Defendant Voicent also filed a Motion to Dismiss. The Court will address Defendant Voicent's motion in a separate Memorandum Opinion and Order.

**Hurley v. Messer, Not Reported in Fed. Supp. (2018)**

2    Although the parties have submitted documents outside the pleadings, the Court has not considered those documents in ruling on the present motions. Therefore, the Court will not convert these motions into ones for summary judgment.

3    Defendant Fiverr denies the actors are its affiliates or employees. *Mem. in Supp. of Def. Fiverr's Mot. to Dismiss*, ECF No. 74, at 11.

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Katz v. Caliber Home Loans, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 5311488

2023 WL 5311488
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

Samuel KATZ, Individually and on
Behalf of All Others Similarly Situated

v.

CALIBER HOME LOANS, INC.

CIVIL ACTION NO. 3:23-CV-0145-S
|
Signed August 17, 2023

**Attorneys and Law Firms**

Anthony I. Paronich, Pro Hac Vice, Paronich Law PC, Hingham, MA, Adam J. Schwartz, Adam J. Schwartz, Attorney at Law, Beverly Hills, CA, Chris R. Miltenberger, The Law Office of Chris R. Miltenberger PLLC, Southlake, TX, for Samuel Katz.

Thomas Nathaniel Abbott, Pro Hac Vice, Perkins Coie LLP, Portland, OR, David T. Biderman, Kristine Elizabeth Kruger, Simon M. Feng, Perkins Coie LLP, San Francisco, CA, Elizabeth Gardner, Perkins Coie LLP, Dallas, TX, Skyler Michelle Howton, Rogge Dunn Group PC, Dallas, TX, for Caliber Home Loans Inc.

## MEMORANDUM OPINION AND ORDER

KAREN GREN SCHOLER, UNITED STATES DISTRICT JUDGE

**\*1** This Memorandum Opinion and Order addresses Defendant Caliber Home Loans, Inc.'s Motion to Dismiss ("Motion") [ECF No. 33]. The Court has reviewed the Motion, Plaintiff Samuel Katz's Opposition to the Motion to Dismiss ("Response") [ECF No. 35], Defendant's Reply Brief in Support of Its Motion to Dismiss [ECF No. 38], and the applicable law. For the following reasons, the Court **GRANTS** the Motion.

## I. BACKGROUND

This putative class action arises out of Plaintiff's receipt of unwanted telemarketing calls. Compl. for Inj. and Damages ("Compl.") [ECF No. I] ¶ 3. Plaintiff's residential phone number is on the National Do Not Call Registry. *Id.* ¶ 17. Plaintiff uses his residential phone number "for personal, residential, and household reasons." *Id.* ¶ 18. In 2022, Plaintiff received multiple phone calls from the phone number (207) 203-7685. *Id.* ¶¶ 21-22. Plaintiff did not answer the first phone calls in May and June 2022; however, he did answer the last phone call from this phone number on July 5, 2022. *Id.* ¶¶ 23-24.

When Plaintiff answered the July 5, 2022, phone call, the caller allegedly offered a "VA, conventional or FHA loan," asked Plaintiff if he had a recent bankruptcy, and asked about Plaintiff's credit score and debt. *Id.* ¶¶ 26-28. The caller then allegedly offered services from the Caliber Home Loan Mortgage Refinance Team. *Id.* ¶ 29. Plaintiff states that he did not consent to receive phone calls from Defendant, did not do business with Defendant, and did not request these phone calls. *Id.* ¶¶ 19-20, 31.

Based on the foregoing, Plaintiff brings a single cause of action for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), and 47 C.F.R. § 64.1200(c). *Id.* ¶¶ 48-52. Plaintiff brings this claim on behalf of himself and a putative class of persons in the United States who, at any time in the period from four years before the Complaint's filing to trial, "received more than one telemarketing call from or on behalf of Defendant[ ] within a 12-month period" despite their phone numbers being on the Do Not Call Registry for at least 31 days. *Id.* ¶ 33. Defendant moved to dismiss, arguing that Plaintiff has failed to plausibly allege that Defendant is either directly or vicariously liable for the alleged TCPA violations and that Plaintiff has failed to plausibly allege that he received more than one telemarketing call.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff.

Katz v. Caliber Home Loans, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 5311488

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 76 of 158

*Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

**\*2** In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the Court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### III. ANALYSIS

To state a claim under 47 U.S.C. § 227(c)(5), Plaintiff must plausibly allege that he received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of regulations promulgated under Section 227(c). Plaintiff claims that the regulation Defendant violated is 47 C.F.R. § 64.1200(c). In relevant part, that regulation prohibits an entity from "initiat[ing] a telephone solicitation to ... a residential telephone subscriber who has registered [his] telephone number on that national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

#### A. *Defendant's Liability*

"Theories of direct and vicarious liability are both cognizable under the TCPA." *Hunsinger v. Dynata LLC*, No. 3:22-CV-00136-G-BT, 2023 WL 2377481, at \*5 (N.D. Tex. Feb. 7, 2023) (citation omitted), *report and recommendation adopted by* 2023 WL 2386710 (N.D. Tex. Mar. 4, 2023). Based on Plaintiff's Response, Plaintiff is relying solely on a direct

liability theory; however, Plaintiff does not adequately allege that Defendant is directly liable for placing the challenged phone calls.

#### i. *Direct Liability*

For Defendant to be directly liable for the alleged TCPA violations, Defendant must have "initiated" the phone calls. *Id.* (citing *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C. Red. at 6582 ¶ 24 (2013)). Initiating a phone call, in turn, "means that the entity takes the steps necessary to physically place a telephone call." *Id.* (internal quotation marks and citation omitted). "[A] seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA[.]" *Cunningham v. Politi*, No. 4:18-CV-00362-ALM-CAN, 2019 WL 2519568, at \*6 (E.D. Tex. Apr. 30, 2019) (quoting *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1255 (11th Cir. 2015)), *report and recommendation adopted by* 2019 WL 2524736 (E.D. Tex. June 19, 2019).

Plaintiff argues that he has pleaded sufficient facts to support a direct liability theory because he alleged that Defendant made the phone calls at issue. *See* Resp. 3. Plaintiff points to the portions of the Complaint in which he alleges that Defendant "ma[de] telemarketing calls to numbers on the National Do Not Call Registry," and that "Plaintiff got calls from the Defendant in 2022, including on May 26, June 4, 20, 22, and July 5, 2022." *Id.* (emphases omitted) (citing Compl. ¶¶ 3, 21). But conclusory allegations such as these are insufficient. "[A]t the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone." *Aaronson v. CHW Grp., Inc.*, No. 1:18-CV-1533, 2019 WL 8953349, at \*2 (E.D. Va. Apr. 15, 2019) (citations omitted).

**\*3** The only fact Plaintiff alleges in support of his conclusion that Defendant initiated the challenged phone calls is that at some point during the July 5, 2022, phone call, the unidentified caller "offered the Defendant's services from the Caliber Home Loan Mortgage Refinance Team." Compl. ¶ 29. Plaintiff does not allege any facts regarding, for example, the identity of the caller or the nature of the phone number connected to the phone calls (such as whether it belonged to Defendant or was a fictitious phone number), and the facts Plaintiff does provide about the content of the phone call are vague. Without more, Plaintiff's solitary allegation is insufficient to plausibly allege that Defendant took the steps

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 77 of 158

Katz v. Caliber Home Loans, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 5311488

necessary to physically place the phone call. *See, e.g., Horton v. Nat'l Republican Senatorial Comm.*, No. 3:22-CV-1000-G-BK, 2023 WL 372066, at *5 (N.D. Tex. Jan. 23, 2023) ("Merely stating that he received a message which included a link to a website that solicits donations for [defendant] is not enough to nudge [plaintiff's] argument across the line from conceivable to plausible.").

The lack of factual allegations supporting the notion that Defendant initiated the call distinguishes this case from others in which courts have found a basis for direct liability, including the cases cited by Plaintiff in his Response. For example, in *Stemke v. Marc Jones Construction, LLC*, the plaintiff and her attorneys called several of the phone numbers from which the plaintiff received phone calls and confirmed they belonged to the defendant. No. 5:21-CV-274-30PRL, 2021 WL 4340424, at *1, *3 (M.D. Fla. Sept. 23, 2021). And in *Smith v. American-Amicable Life Insurance Co. of Texas*, a case in which the plaintiff relied on theories of both direct and vicarious liability, the court found a plausible basis for liability because: (1) the plaintiff was informed that he was speaking with the defendant; (2) the plaintiff was directed to the defendant's website; (3) the callback number provided to the plaintiff had an area code from the same state in which the defendant was based; and (4) the phone calls concerned insurance benefits, the defendant's area of business. No. 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 24, 2022). In both cases, the plaintiffs pleaded facts that suggested the defendant itself—as opposed to a third party—initiated the phone calls. *See also, e.g., Whittaker v. Freeway Ins. Servs. Am., LLC*, No. CV-22-8042-PCT-DGC, 2023 WL 167040, at *5 (D. Ariz. Jan. 12, 2023) (holding that plaintiff stated theory of direct liability where: (1) defendant allegedly operated call center, conducted telemarketing campaign, and repeatedly sent unsolicited telemarketing calls; (2) plaintiff called phone number to confirm defendant initiated unwanted calls; and (3) defendant's in-house counsel confirmed defendant placed calls); *Atkinson v. Choice Home Warranty*, No. 22-04464, 2023 WL 166168, at *3 (D.N.J. Jan. 11, 2023) (holding that plaintiff stated theory of direct liability where plaintiff "asked if *the company making the calls* had a website" and was provided with defendant's website). Unlike in these cases, Plaintiff's Complaint in this case lacks factual allegations sufficient to support a theory of direct liability.

Because Plaintiff has not adequately pleaded "that [D]efendant actually, physically initiated the telephone calls at issue," the Court concludes that Plaintiff has failed to state a

TCPA claim under a theory of direct liability. *Aaronson*, 2019 WL 8953349, at *2.

### ii. *Vicarious Liability*

Even if Plaintiff cannot plausibly allege direct liability, "[a] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship ... between the defendant and a third-party caller." *Hunsinger*, 2023 WL 2377481, at *5 (citation omitted). The Court expresses no opinion on whether Plaintiff's allegations could state a claim for vicarious liability, as Plaintiff does not appear to advance such a theory. Plaintiff only makes conclusory statements suggesting vicarious liability in his Complaint. *See, e.g.*, Compl. ¶ 49 ("The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute ... violations of the TCPA ...."). Further, Plaintiff does not address vicarious liability in his Response and instead reaffirms that he is pursuing a theory of direct liability. *See, e.g.*, Resp. 1 ("[Plaintiff] plainly alleges that [Defendant] is directly liable for the calls it made to him ...."); *id.* at 4 ("[T]he only party alleged to have any involvement in the calls [is] [Defendant] ...."). As such, the Court will not analyze whether Plaintiff stated a claim for TCPA violations under a vicarious liability theory at this time.

### B. *More Than One Phone Call*

**\*4** Defendant also moves to dismiss on the ground that Plaintiff has not alleged that he received more than one phone call in violation of regulations promulgated under Section 227(c). Plaintiff allegedly received at least five phone calls from the same phone number in less than two months beginning on May 26, 2022. *See* Compl. ¶ 21. On July 5, 2022, he answered a phone call from that phone number and was offered services from the Caliber Home Loan Mortgage Refinance Team. *Id.* ¶ 29. The Court recognizes that district courts have reached differing conclusions regarding whether a plaintiff states a claim when he only answers one of the allegedly violative phone calls. *Compare Moore v. Healthcare Sols., Inc.*, No. 21-CV-4919, 2022 WL 17487823, at *3 (N.D. Ill. Dec. 7, 2022) ("[T]he content and timing of an answered call can allow the court to draw the reasonable inference that unanswered calls were sales solicitations from the defendant." (cleaned up)), *with Greene v. Select Funding, LLC*, No. 2:20-CV-07333-RGK-KS, 2021 WL 4926495, at

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 78 of 158
Katz v. Caliber Home Loans, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 5311488

*5 (C.D. Cal. Feb. 5, 2021) ("And while [plaintiff] alleges that he received eight calls from [d]efendant's number within a one-year period, he only answered one of these calls—on April 10, 2020. Thus, at best, Plaintiff has only alleged *one* telephone solicitation.").

In the absence of binding authority to the contrary, the Court agrees that "[i]t is a reasonable inference that the [five] phone calls from the same number" within the span of less than two months "were about the same thing." *Moore*, 2022 WL 17487823, at *3. Viewing the Complaint in the light most favorable to Plaintiff, as it must, the Court declines to dismiss Plaintiff's claim on this basis at this time. [1] However, the ultimate resolution of this question will rely on whether Plaintiff plausibly alleges that Defendant is liable for the challenged phone calls.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion to Dismiss [ECF No. 33]. Given the Federal Rules of Civil Procedure's liberal policy of allowing amendments to pleadings, the Court sua sponte **GRANTS** Plaintiff leave to amend his Complaint. Plaintiff must file an amended complaint by **August 30, 2023.** If an amended complaint is not filed within such time, Plaintiff's claims will be dismissed with prejudice.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 5311488

## Footnotes

1    Although it is unclear, it does not appear that Defendant challenges whether the call Plaintiff answered constituted a "solicitation" within the meaning of the TCPA. *See, e.g.*, Mot. 8-9 ("Indeed, [Plaintiff] admits that he answered only one call.... This fact alone makes it impossible for [Plaintiff] to establish that at least two calls were 'telephone solicitations.' "). Therefore, the Court will not analyze that issue.

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 79 of 158

Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)

2021 WL 3634162

🚩 KeyCite Yellow Flag

Distinguished by    Atkinson v. Choice Home Warranty,    D.N.J.,    January 11, 2023

2021 WL 3634162
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Brennan LANDY, Plaintiff,
v.
NATURAL POWER SOURCES,
LLC d/b/a Suntuity, Defendant.

Case No. 3:21-cv-00425
|
Filed 08/17/2021

**Attorneys and Law Firms**

Jeffrey Steven Arons, Arons & Arons LLC, South Orange, NJ, for Plaintiff.

Adlai J.J. Small, Spiro LLC, Short Hills, NJ, for Defendant.

**MEMORANDUM AND ORDER GRANTING
MOTION TO DISMISS AND ALLOWING
PLAINTIFF TO AMEND COMPLAINT**

PETER G. SHERIDAN, U.S.D.J.

### I. Introduction

*1 This matter comes before the Court on Defendant Natural Power Sources, LLC d/b/a Suntuity's ("Suntuity" or "Defendant") motion to dismiss Brennan Landy's ("Plaintiff" or "Landy") class action complaint under the Telephone Consumer Protection Act ("TCPA"), 42 U.S.C. § 227. (ECF No. 7.) The Court heard oral argument on July 20, 2021. For the reasons that follow, Defendant's motion to dismiss is granted without prejudice.

### II. Background

On or around October 29, 2020, Landy received a call on his cell phone from an unknown caller who solicited him to purchase green energy products. (Compl. ¶¶ 18-20, ECF No. 1.) Landy heard a pause and click before an operator came on the line, which allegedly indicates the use of an automatic telephone dialing system ("ATDS"). (Compl. ¶ 19.)

Then, Landy was transferred to an operator named Steve who identified himself as working for US Home Solar. (Compl. ¶ 21.) Landy alleges he heard a beep – but not a pause or click – before being connected with Steve. (*Id.*) Steve also solicited Landy to purchase green energy products. (*Id.*)

After speaking with Steve, Landy alleged he was transferred via a "warm transfer"[1] to a third operator named Evelyn, from Suntuity, who solicited Landy to purchase Suntuity's solar energy products. (Compl. ¶¶ 7, 22.) Landy does not allege that he heard a pause and click before being connected to Evelyn. After the call with Evelyn concluded, Landy received a follow-up email from Brendan McGrane, another Suntuity representative, who solicited Suntuity's products. (Compl. ¶ 23.)

Landy claims he never consented to the initial call and, therefore, it was made in violation of the TCPA. (Compl. ¶¶ 24-26.) He alleges Suntuity is vicariously liable for that violation because it "knew about the calls, received the benefits of the calls, directed the calls to be placed, and ratified the calls." (Compl. ¶ 16.)

Landy asserts that he and the proposed class members sustained injuries in the form of aggravation, nuisance, invasion of privacy, monies paid to the wireless caller for the receipt of unwanted calls, interference with the use and enjoyment of their phones, depletion of battery life, and wear and tear on their phones. (Compl. ¶¶ 27, 42.) He defines the proposed class as follows:

> **No Consent Class:** All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the Class; (2) received at least one call from Defendant, or a third person acting on behalf of Defendant; (3) on the person's cellular telephone; (4) for the purpose of selling Defendant's solar products and services; (5) using the same equipment that was used to call the Plaintiffs; and (6) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 80 of 158

Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)

2021 WL 3634162

claims it obtained prior express written
consent to call the Plaintiffs.

(Compl. ¶ 29.) Landy alleges that his claims are typical of the
class members, he can adequately represent the class, there
are common questions of law and fact, Defendant's conduct
is common to all class members, and the class members are
too numerous to be individually joined. (Compl. ¶¶ 31-35.)

**\*2** Landy timely filed his complaint on January 8, 2021.
*See* 28 U.S.C. § 1658; *Weitzner v. Sanofi Pasteur Inc.*, 909
F.3d 604, 608 (3d Cir. 2018). He seeks an injunction against
further unauthorized calls, as well as statutory damages and
attorneys' fees for class members under the TCPA's private
right of action provision, 47 U.S.C. § 227(b)(3)(B). (Compl.
¶¶ 28, 42.)

### III. Jurisdiction & Venue

This Court has original jurisdiction over this matter pursuant
to the Class Action Fairness Act, 28 U.S.C. § 1332, "because
each of the alleged Classes consists of over 100 persons, there
is minimal diversity, and the claims of the class members
when aggregated together exceeds $5 million." (Compl. ¶ 5.)
Venue is proper under 28 U.S.C. § 1391(b) because Suntuity's
headquarters are in New Jersey. (Compl. ¶ 7.)

### IV. Legal Standard

Under Fed. R. Civ. P. 8(a)(2), a complaint "requires only a
short and plain statement of the claim showing that the pleader
is entitled to relief." A motion to dismiss asserts a "failure to
state a claim upon which relief can be granted." Fed. R. Civ. P.
12(b)(6). To survive a motion to dismiss, the complaint must
allege "enough facts to state a claim to relief that is plausible
on its face." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220
(3d. Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550
U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A
claim has facial plausibility when the pleaded factual content
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Ashcroft v.
Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868
(2009). This standard requires showing more than just the
possibility that the defendant acted unlawfully. *Id.*

In reviewing a motion to dismiss, the Court "accept[s] as
true all allegations in the plaintiff's complaint as well as all
reasonable inferences that can be drawn from them, and we
construe them in a light most favorable to the non-movant."

*Monroe v. Beard*, 536 F.3d 198, 205 (3d. Cir. 2008). The
court should disregard legal conclusions and "recitals of the
elements of a cause of action, supported by mere conclusory
statements." *Santiago v. Warminster Township*, 629 F.3d 121,
128 (3d. Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct.
1937).

The Third Circuit set forth a three-part test for determining
whether or not a complaint may survive a motion to dismiss
for failure to state a claim:

> First, the court must "tak[e] note of the elements a plaintiff
> must plead to state a claim." Second, the court should
> identify allegations that, "because they are no more than
> conclusions, are not entitled to the assumption of truth."
> Finally, "where there are well-pleaded factual allegations,
> a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for
> relief."

*Id.* at 130 (alteration in original) (quoting *Iqbal*, 556 U.S. at
675, 679, 129 S.Ct. 1937).

### V. Discussion

#### A. TCPA Claim

"To assert a claim under the TCPA's autodialer provision,
47 U.S.C. § 227(b)(1)(A)(iii), a plaintiff must show that the
defendant: (1) called her cell phone; (2) using an automatic
telephone dialing system ("ATDS"); (3) without her prior
express consent." *Valdes v. Century 21 Real Estate, LLC*,
No. CV 2:19-05411, 2019 WL 5388162, at \*2 (D.N.J. Oct.
22, 2019). Pursuant to the TCPA's restrictions on use of
automated telephone equipment:

> **\*3** (1) Prohibitions. It shall be unlawful for any person
> within the United States, or any person outside the United
> States if the recipient is within the United States
> —

> (A) to make any call (other than a call made for emergency
> purposes or made with the prior express consent of
> the called party) using any automatic telephone dialing
> system or an artificial or prerecorded voice—

> [...]

> (iii) to any telephone number assigned to a paging
> service, cellular telephone service, specialized mobile
> radio service, or other radio common carrier service, or

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 81 of 158

Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)

2021 WL 3634162

any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

U.S.C. § 227(b)(1)(A)(iii).

Landy alleges that he was called on his cell phone without his consent. (Compl. ¶¶ 10-11.) The identity of the initial caller is unknown. (Compl. ¶ 18-20.) However, Landy alleges that because he was eventually transferred to Suntuity, the previous callers acted on Suntuity's behalf and at its direction, thereby establishing vicarious liability. (Compl. ¶ 16.)

### 1. Direct Liability

Courts have held that under the TCPA, 47 U.S.C. § 277(b)(1)(A)(iii), liability is imposed on the party that places the call or text. *See Klein v. Just Energy Grp., Inc.*, No. CV 14-1050, 2016 WL 3539137, at *8 (W.D. Pa. June 29, 2016) (citing *Melito v. Am. Eagle Outfitters, Inc.*, Civ. Act. Nos. 14-02240, 15-39, and Nos. 15-2370, 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015)). Here, Landy does not allege that Suntuity placed the initial call to Landy; he only alleges the initial caller used an ATDS to call him without his consent. Once that call was initiated, he was transferred to US Home Solar and Suntuity. Therefore, Landy can only pursue a TCPA claim against Suntuity on a vicarious liability theory.

### 2. Vicarious Liability

An entity cannot be held liable under the TCPA "merely because they stand to benefit from the call." *Id.* at *8; *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6593 (F.C.C. 2013). Instead, a defendant that is not the initial caller can be held vicariously liable under the TCPA based on common law agency principles. *Klein v. Com. Energy, Inc.*, 256 F. Supp. 3d 563, 584 (W.D. Pa. 2017). Vicarious liability can be established through actual authority, apparent authority, or ratification. *Cunningham v. Cap. Advance Sols., LLC*, Civil Action No. 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590, at *6, 2018 WL 6061405 (D.N.J. Nov. 20, 2018). The following subsections will discuss each of those theories.

#### i. Actual Authority

Landy does not allege facts that establish an agency theory through actual authority. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the

principal wishes the agent so to act." *Cunningham* 2018 WL 6061405, at *17 (quoting *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 120 (3d Cir. 2013)).

A plaintiff sufficiently pleads actual authority when the allegations establish that the defendant consented to or directed the agent to act on its behalf. *Cunningham,* 2018 WL 6061405, at *18. In *Cunningham*, the plaintiff alleged that, pursuant to a contract, Capital Advance Solutions, LLC ("Capital"), placed telemarketing calls on behalf of the bank defendants and received a commission for each successful loan solicitation. *Id.* at *7. Further, Capital allegedly facilitated the submission of loan applications to the bank defendants, as acknowledged in the approval and rejection letters the defendants sent to loan applicants. *Id.* Based on those allegations, the court could "reasonably infer that the Bank Defendants exercised a certain level of control over, or, at a minimum, were aware of, Capital's telemarketing efforts." *Id.*

 **\*4**  Landy does not allege any facts that establish the initial caller had actual authority to make telemarketing calls on Suntuity's behalf. Unlike *Cunningham*, in which the plaintiff alleged specific facts indicating the defendants directed or consented to solicitation via Capital, Landy simply alleges that because he was transferred to Suntuity, the initial caller was acting at Suntuity's direction. He does not plead facts to support his argument that Suntuity authorized the initial caller, directed them, or was aware of their conduct. As such, the complaint does not sufficiently allege an actual authority relationship between Suntuity and the initial caller.

#### ii. Apparent Authority

Landy does not allege enough facts to establish vicarious liability under apparent authority. "[A]pparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship." *Cunningham,* 2018 WL 6061405, at *6 (quoting *Covington,* 710 F.3d at 120). In a declaratory ruling, the Federal Communications Commission stated that:

> Apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive

Case 1:25-cv-00927-KMN   Document 23-9   Filed 08/29/25   Page 82 of 158

Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)

2021 WL 3634162

control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote, or reviewed the outside entity's telemarketing scripts.

*In re Dish Network, LLC*, 28 F.C.C. Rcd. at 6593.

A plaintiff sufficiently pleads apparent authority "when a third party reasonably believes that the ... agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations." *Valdes*, 2019 WL 5388162 at *4 (omission in original) (quoting *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167–68 (D. Idaho 2011)). In *Valdes*, the plaintiff alleged that defendant Century 21 was "heavily involved in realtors' unsolicited calls," including directing and training realtors on how to make solicitation calls and what to say. *Id.* Further, the defendant allegedly told callers "to identify themselves as calling on behalf of Century 21, to offer the Century 21 pledge," and it "facilitated realtors' access to lead lists and autodialers." *Id.* Those allegations were sufficient for the court to hold that a third party could reasonably believe that the realtors had authority to act on behalf of Century 21, thereby establishing apparent authority. *Id.*

Unlike the plaintiff in *Valdes*, Landy does not plead any facts that indicate Suntuity's conduct led him to reasonably believe the initial caller had authority to act on Suntuity's behalf. He merely alleges that, because he was transferred to Suntuity and was solicited to buy green energy products, Suntuity must have directed the initial call and known about the initial caller's TCPA violation. Landy's complaint, however, does not assert facts that suggest the initial caller had any relationship with Suntuity, or that would lead a reasonable person to believe the initial caller had authority to act on Suntuity's behalf.

Further, Landy's allegation that Suntuity sent a follow-up email to solicit its products does not support an apparent authority theory. In *Smith v. Vision Solar*, the plaintiffs received telemarketing calls from an Exchange Energy representative, who attempted to sell solar products and stated that Vision Solar would contact them to follow up. *Smith v. Vision Solar LLC*, No. CV 20-2185, 2020 WL 7230975, at *1-2 (E.D. Pa. Dec. 8, 2020). After the initial call from Exchange Energy, Vision Solar called at least one plaintiff to follow up about the solar products. *Id.* Apparent authority was established because the plaintiff alleged that the "purported principal followed-up with the plaintiff after she provided information to the telemarketer, thereby demonstrating that the principal knew of and benefited from the marketing calls." *Id.* at *3. By contrast, Landy does not allege that the initial caller referenced Suntuity, told him to expect contact from Suntuity, or otherwise indicated a relationship with Suntuity.

### iii. Ratification

**\*5** Finally, Landy does not plead facts that support an agency theory based on ratification.

(1) Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.

(2) A person ratifies an act by

(a) manifesting assent that the act shall affect the person's legal relations, or

(b) conduct that justifies a reasonable assumption that the person so consents.

Restatement (Third) Of Agency § 4.01 (2006).

A plaintiff must plead facts that indicate the defendant consented to the initial caller making calls on the defendant's behalf. *Just Energy*, 2016 WL 3539137, at *12. In *Just Energy*, the plaintiff alleged that the defendant ratified telemarketing and debt collection calls made by Collectcents employees, who identified themselves as "Just Energy" during the phone calls. *Id.* at *4, 12. The court rejected the plaintiff's argument that the defendant consented to Collectcents' conduct simply because it might have received a benefit from the calls. *Id.* at *12. Because the plaintiff's allegation was based on speculation that the defendants could be receiving a benefit, and there was no evidence of defendant's affirmance, assent, or consent, the facts pleaded were insufficient to support a ratification theory. *Id.*

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 83 of 158

Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)

2021 WL 3634162

Similarly, Landy's complaint does not include facts that show Suntuity manifested assent to the initial caller calling on its behalf. Like the plaintiff in Just Energy, Landy speculates that because he was eventually transferred to Suntuity and solicited to buy green energy products, Suntuity must have assented to and received a benefit from the prior callers' actions. Such speculative allegations are insufficient to allege an agency relationship based on ratification.

In sum, Landy's complaint does not allege enough facts to indicate that there was an agency relationship between the initial caller and Suntuity. As such, he has failed to allege that Suntuity can be held vicariously liable for the initial caller's TCPA violations.

### B. ATDS

To support a claim under the TCPA, the plaintiff must demonstrate the nonconsensual call was made using an ATDS. *See* 47 U.S.C § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In the Third Circuit, pleading that there was a brief pause or silence before the operator speaks is sufficient to allege the use of an ATDS. *Hazan v. Wells Fargo Home Mortg.*, No. CV1810228 (MAS/TJB), 2020 WL 919183, at *3 (D.N.J. Feb. 26, 2020). Thus, Landy's allegation that he heard a pause before the operator of the initial call came on the line is sufficient to allege that an ATDS was used. (*See* Compl. ¶ 19.)

### C. Consent

To allege a violation under the TCPA, the call must be made without the called party's prior express consent. 47 U.S.C. § 227(b)(1)(A); *Valdes*, 2019 WL 5388162 at *2. Suntuity argues that, because Landy admitted he was transferred to Evelyn via a "warm transfer," he consented to speak to Suntuity. However, neither party defines the term "warm transfer." A warm transfer occurs when the first operator stays on the line with the called party during a transfer

until the second operator answers. *See, e.g.*, *Reeves v. Nuvox Commc'ns*, No. C.A.6:08-4031(HMH/WMC), 2009 WL 4016617, at *5 (D.S.C. Nov. 18, 2009), *aff'd sub nom. Reeves v. Nuvox Commc'ns, Inc.*, 384 F. App'x 255 (4th Cir. 2010); *Tate v. Washington Mut.*, No. 02 C 5853, 2004 WL 1794924, at *1 (N.D. Ill. Aug. 10, 2004). That definition does not imply that the called party consented to speak to either operator.

### VI. Conclusion

**\*6** Because Landy does not provide enough facts to plausibly allege a claim against Suntuity under the TCPA, Defendant's motion to dismiss shall be granted without prejudice. Landy shall have 30 days to file an amended complaint if he wishes to do so. Defendant may move to dismiss the amended complaint in accordance with the timeframes set forth in the Federal Rules of Civil Procedure.

### ORDER

**THIS MATTER** having come before the Court on a motion to dismiss filed by Defendant Natural Power Sources, LLC d/b/a Suntuity (ECF No. 7); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons,

**IT IS** on this 16 [th] day of August, 2021,

**ORDERED** that Defendants' motion to dismiss is **granted without prejudice**, and it is further

**ORDERED** that Landy will have 30 days to file an amended complaint.

#### All Citations

Not Reported in Fed. Supp., 2021 WL 3634162

---

**Footnotes**

---

2021 WL 3634162

1    Neither Plaintiff nor Defendant defines this term. Its significance will be discussed in Section V.C.

---

**End of Document**                                        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1181789
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Alexandria Division.

Thomas MATTHEWS, on behalf of himself
and others similarly situated, Plaintiff,
v.
SENIOR LIFE INSURANCE COMPANY, Defendant.

No. 1:24-cv-1550-MSN-LRV
|
Signed April 22, 2025

**Attorneys and Law Firms**

Anthony Ilo Paronich, Pro Hac Vice, Paronich Law, P.C., Hingham, MA, William Peter Robinson III, William Robinson, Esq, Vienna, VA, for Plaintiff.

David Mitchell Ross Jr., Wilson Elser Moskowitz Edelman & Dicker LLP, Washington, DC, for Defendant.

**MEMORANDUM OPINION AND ORDER**

Michael S. Nachmanoff, United States District Judge

**\*1** This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint under Rule 12(b)(1) and 12(b)(6) (ECF 12). Upon consideration of the pleadings and for the reasons set forth below, the Court will GRANT the motion and dismiss Plaintiff's claim against Senior Life Insurance Company without prejudice.

**I. BACKGROUND** [1]

This action stems from Plaintiff's receipt of three unwanted phone calls telemarketing life insurance by Senior Life Insurance Company ("SLIC"). Since August 31, 2021, Plaintiff's personal phone number has been registered with the National Do Not Call Registry. ECF 1 ("Compl.") ¶ 14. Plaintiff has never solicited information from SLIC prior to receiving these three calls. *Id.* ¶ 18. On August 26, 27, and 28, 2024, Plaintiff received scripted telemarketing calls from the number 239-359-5582. *Id.* ¶¶ 20-21. The calls asked Plaintiff qualifying questions for SLIC's life insurance. *Id.* ¶ 23. During one of the calls, Plaintiff spoke with Daniel Swisa, an employee of SLIC. *Id.* ¶ 24. SLIC continued to call Plaintiff

despite the fact that he indicated he was not interested. *Id.* ¶ 25. Plaintiff alleges he was harmed by these calls through the violation of his privacy, and that he was annoyed and harassed. *Id.* ¶ 27.

Plaintiff brings a single class action claim against SLIC for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *Id.* ¶¶ 46-50. He seeks injunctive relief prohibiting SLIC from calling telephone numbers on the National Do Not Call Registry or using an automated dialer, statutory damages, and other relief as the Court deems just and proper. *Id.* at 8-9. SLIC moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim. ECF 12 at 1.

**II. LEGAL STANDARD**

"Article III of the Constitution requires a litigant to possess standing to sue in order for a lawsuit to proceed in federal court." *Ali v. Hogan*, 26 F.4th 587, 595 (4th Cir. 2022) (citation omitted). Without Article III standing, the Court is left without subject matter jurisdiction. *Id.* at 595-96 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) ("Standing is an 'irreducible constitutional minimum' that must be satisfied in all cases."). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Federal Rule of Civil Procedure 12(b)(1) allows a moving party to challenge the court's jurisdiction over the subject matter of the complaint. The moving party may either attack the complaint on its face, asserting that the complaint "fails to allege facts upon which subject matter jurisdiction can be based," or may challenge "the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *White v. CMA Const. Co.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (internal citations omitted). When analyzing a motion made pursuant to Fed. R. Civ. P. 12(b)(1), the court may resolve factual questions to determine whether it has subject matter jurisdiction. *Thigpen v. United States*, 800 F.2d 393, 396 (4th Cir. 1986), *overruled on other grounds, Sheridan v. United States*, 487 U.S. 392 (1988). The court may consider evidence extrinsic to the complaint in resolving such factual questions. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The court also may regard the pleadings as "mere evidence." *Kuntze v. Josh Enterprises, Inc.*, 365 F. Supp. 3d 630, 636 (E.D. Va. 2019) (citation omitted). The plaintiff bears the burden

of establishing the court's subject matter jurisdiction. *Trinity Outdoor, L.L.C. v. City of Rockville*, 123 F. App'x 101, 105 (4th Cir. 2005) (per curiam).

**\*2** Alternatively, a court may dismiss a claim when the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss should be granted unless the plaintiff has "set forth 'enough facts to state a claim to relief that is plausible on its face.' " *Taylor v. First Premier Bank*, 841 F. Supp. 2d 931, 932 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, the court must construe the complaint, read as a whole, in the light most favorable to the plaintiff and take the facts asserted therein as true. *LeSueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012). The general pleading standard requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief ... [and that] give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007) (quotations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

The TCPA provides: "It shall be unlawful for any person ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). And, the TCPA provides a private right of action for individuals to receive $500 in damages for each violation, plus treble damages if the violation was willful or knowing. 47 U.S.C. § 227(b)(3).

### III. ANALYSIS

**A. Defendant's Rule 12(b)(1) Challenge.**

SLIC makes a factual challenge to Plaintiff's standing. *See* ECF 13 at 3 ("[I]n support of its factual challenge of Plaintiff's standing...."); ECF 21 at 2 ("...SLIC made a factual challenge to Plaintiff's standing based on his inability to establish traceability or redressability."). Indeed, SLIC includes a declaration providing facts in support of its motion to dismiss for lack of traceability and redressability. *See* ECF 13-1. SLIC argues that Plaintiff's factual allegations in support of liability against SLIC are "incorrect" because SLIC did not initiate the calls to Plaintiff. ECF 13 at 3-4. Such an attack is a factual challenge. *Kuntze v. Josh Enterprises, Inc.*, 365 F. Supp. 3d 630, 645 (E.D. Va. 2019) (explaining that challenging the

"accuracy" of jurisdictional allegations is a factual challenge). SLIC does not attack the injury in fact prong of standing, and the Court finds that Plaintiff has sufficiently alleged an injury in fact based on purported privacy violations, annoyance, and harassment. *See Bryant v. Byron Udell & Assocs. Inc.*, No. 123CV00414AJTLRV, 2023 WL 5180351, at \*3 (E.D. Va. Aug. 11, 2023).

When assessing jurisdictional facts, the court must determine whether the facts are intertwined with the merits. If the facts are not intertwined with the merits, the court is "permitted to weigh evidence and resolve factual disputes to determine jurisdiction[.]" *Kuntze*, 365 F. Supp. 3d at 638. Alternatively, the facts are intertwined with the merits when the "facts [are] necessary to prove the merits of the case such that a 12(b)(1) motion is, essentially, an indirect attack on the plaintiff's alleged factual merits." *Id.* In that case, the court must proceed with the case on the merits, "which entails either denying the 12(b)(1) motion and proceeding with the case, or converting the 12(b)(1) motion into a motion for summary judgment on the merits[.]" *Id.* The court will not "[weigh] the evidence and [resolve] factual disputes," instead, it will proceed with discovery either after the denial of the 12(b)(1) motion or by treating it as a motion for summary judgment and taking it "under advisement until the parties have conducted adequate discovery." *Id.*

**\*3** As such, this Court must evaluate whether the facts dispositive of Plaintiff's claim are intertwined with the facts dispositive of SLIC's jurisdictional challenge. The Court finds the facts are intertwined. Plaintiff's TCPA claim requires that he "show that the defendant actually, physically initiated the telephone call at issue." *Aaronson v. CHW Grp., Inc.*, No. 1:18-cv-1533, 2019 WL 8953349, at \*2 (E.D. Va. Apr. 15, 2019). In challenging Plaintiff's standing, SLIC argues that SLIC in fact did not initiate the calls. *See* ECF 13 at 1 ("As demonstrated in the Declaration submitted herewith as part of SLIC's factual challenge to Plaintiff's Article III standing, this information is incorrect, as SLIC did not initiate or make any calls to Plaintiff."). Whether or not SLIC is the caller will be determinative of both jurisdiction and the merits of Plaintiff's claim; therefore, this question is not suited for resolution in the context of a motion to dismiss for lack of subject matter jurisdiction. *Ackerman v. Maximus Educ., LLC*, No. 1:24-CV-00975-MSN-WBP, 2025 WL 51476, at \*3 (E.D. Va. Jan. 8, 2025) (finding whether Defendant caused Plaintiff harm through statutory violations was intertwined with the merits of the claim); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL 2718439, at \*8

(D.S.C. Jul. 1, 2021). Because SLIC's factual challenge to the traceability and redressability of Article III standing involves facts that are intertwined with the merits of Plaintiff's claim, the Court must reject Defendant's challenge. Accordingly, SLIC's motion to dismiss pursuant to Rule 12(b)(1) is denied.

**B. Defendant's Rule 12(b)(6) Challenge.**

SLIC argues that Plaintiff failed to plead facts that state a claim as to Defendant's direct and vicarious liability, under Rule 12(b)(6). SLIC argues Plaintiff did not allege SLIC actually, physically initiated the calls at issue, meaning that Plaintiff failed to plead facts linking SLIC to the calls. *See* ECF 13 at 5-6. SLIC is correct that the Complaint does not include facts—other than those which are conclusory —linking SLIC to the phone calls. Therefore, Plaintiff's complaint will be dismissed without prejudice.

"[T]o state a claim under the TCPA, a plaintiff must allege (i) defendant made one or more calls (ii) to plaintiff's cellular phone (iii) using an automatic telephone dialing system ('ATDS') or an artificial or prerecorded voice." *Aaronson, 2019 WL 8953349, at \*1*. A TCPA plaintiff can establish that the defendant "made" a call through theories of direct or vicarious liability. *Id.* at \*2 (citing *Childress v. Liberty Mut. Ins. Co., 2018 WL 4684209, at \*3 (D.N.M. Sept. 28, 2018)*). TCPA direct liability requires the plaintiff "show that the defendant actually, physically initiated the telephone call at issue." *Id.* (collecting cases). "Accordingly, at the pleading stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone." *Id.* To establish vicarious liability under the TCPA, "courts have held that a plaintiff must show that the defendant would be vicariously liable under common law principles of agency." *Id.*

Plaintiff's Complaint [2] fails to satisfy both standards. Plaintiff makes no allegations related to vicarious liability. *See generally* Compl. As to direct liability, the Complaint contains conclusory statements that Plaintiff "repeatedly received calls from [SLIC]," and that all three calls were "solicitations from [SLIC]." Compl. ¶¶ 19, 20, 22. The Court need not accept this threadbare recitation of an element of the TCPA claim. *Scruggs, 2020 WL 9348208, at \*6.* Although Plaintiff identifies the phone number the calls were placed from, he does not link that phone number to SLIC. Compl. ¶ 21. Plaintiff further makes the conclusory allegation that one of the callers, Daniel Swisa, was "an employe of the

Defendant." *Id.* at ¶ 24. However, Plaintiff does not plead any facts to substantiate that claim. Finally, although Plaintiff pleads that during the calls he was asked questions regarding qualifying for SLIC life insurance, that singular fact alone is not sufficient to identify SLIC as the caller. *Smith, v. Direct Building Supplies, LLC, et al., No. CV 20-3583, 2021 WL 4623275, at \*3 (E.D. Pa. Oct. 7, 2021)* (finding the mere allegation that Defendant "attempted to solicit Plaintiff to purchase Defendant's services" was insufficient); *Aaronson, 2019 WL 8953349, at \*2* (explaining "without any facts to explain why plaintiff believes the identified phone number is owned by defendant, this allegation amounts to nothing more than another conclusory allegation that defendant made the calls to plaintiff's cellular phone."); *Scruggs, 2020 WL 9348208, at \*10* ("The sole factual allegation linking [Defendant] to the calls is that the caller identified himself as 'associated with [Defendant]'" which is "insufficient under the *Iqbal* pleading standards"). As a party to these calls, Plaintiff "should be able to provide greater detail." *Scruggs, 2020 WL 9348208, at \*6.* Instead, Plaintiff's conclusory allegations fail to establish direct or vicarious liability.

**\*4** Because the Complaint does not adequate allege liability for SLIC under the TCPA, the Court finds that Plaintiff failed to state a claim upon which relief may be granted. Therefore, the Court grants SLIC's motion to dismiss without prejudice.

## IV. CONCLUSION

For the foregoing reasons it is hereby

**ORDERED** that Defendant Senior Life Insurance Company's Motion to Dismiss Plaintiff's Complaint (ECF 12) is **GRANTED**; and it is further

**ORDERED** that the claim against Senior Life Insurance Company in Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE.** Plaintiff shall file any amended complaint within ten (10) days of the date of this Order.

It is **SO ORDERED.**

**SO ORDERED.**

## All Citations

Slip Copy, 2025 WL 1181789

---

### Footnotes

1    The Court assumes the truth of Plaintiff's factual allegations and draws all reasonable factual inferences in Plaintiff's favor for purposes of Defendant's Motion to Dismiss. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002).

2    The Court does not rely on any extrinsic evidence provided by the parties for its review of the 12(b)(6) argument. Courts may consider extrinsic evidence attached to a motion to dismiss only when the "evidence is 'integral to and explicitly relied on in the complaint,' and 'the plaintiffs do not challenge its authenticity.' " *Byers v. City of Richmond*, 746 F. Supp. 3d 275, 300 (E.D. Va. 2024) (citations omitted). None of the declarations were explicitly relied on in the complaint, therefore, the factual support developed in those attachments will not be considered in this analysis.

---

**End of Document**                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Metzler v. Pure Energy USA LLC, Not Reported in Fed. Supp. (2023)

KeyCite citing references available

2023 WL 1779631
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Mark **METZLER**, individually and on behalf of all others similarly situated, Plaintiff,
v.
PURE ENERGY USA LLC, Defendant.

21-CV-9798 (VEC)
|
Signed February 6, 2023

**Attorneys and Law Firms**

Christopher Chagas Gold, Edelsberg Law PA, Aventura, FL, Garrett Berg, Andrew Shamis, Shamis & Gentile, P.A., Miami, FL, for Plaintiff.

John William McGuinness, Manatt, Phelps and Phillips, Washington, DC, Paul Heeringa, Manatt, Phelps & Phillips, LLP, Chicago, IL, for Defendant.

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

**\*1** Plaintiff Mark Metzler brings this putative class action against Defendant Pure Energy USA LLC ("Pure Energy") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). In the First Amended Complaint ("FAC"), Plaintiff, individually and on behalf of a potential class, alleges that Defendant violated the TCPA by making unsolicited calls to Plaintiff's and potential class members' mobile phones using an artificial or prerecorded voice without permission. *See* FAC ¶ 4, Dkt. 23.[1] Defendant moves to dismiss the FAC under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. *See generally* Mot., Dkt. 25. For the following

reasons, Pure Energy's Motion to Dismiss is GRANTED.

**I. BACKGROUND**[2]
Plaintiff, a resident of Philadelphia, Pennsylvania, brings this purported class action complaint against Defendant Pure Energy LLC, a solar energy company that converts homes and businesses to solar energy and other types of alternative energy. FAC ¶ 5. Plaintiff's claims arise from Defendant's alleged telemarketing campaign that involved the transmission of "ringless voicemails" to persuade energy customers to switch energy providers. *Id.* ¶¶ 3–5, 32.

On September 23, 2021, Plaintiff received a voicemail on his cell phone. *Id.* ¶ 29. According to the FAC, the voicemail was a "ringless voicemail," meaning a voice message that was transmitted directly to Plaintiff's voicemail box without the telephone ringing, *see id.*; according to the original complaint, the telephone rang but the call went to voicemail when Plaintiff did not answer, Compl. ¶¶ 25–26, Dkt. 1. "When Plaintiff listened to the voicemail, he was easily able to determine that it was a prerecorded message." FAC ¶ 33. Plaintiff provided the following transcription of the message:

Yes, this is Angela Coleman, I have your account information here indicating that the customer choice program is expiring on your PECO[3] account, since we haven't received a response to the correspondence. Please give me a call at 610-673-0477. Thank you.

*Id.* ¶ 30.

**\*2** According to Plaintiff, the call to him originated from telephone number 267-553-6297, which Plaintiff alleges is "owned and/or operated by or on behalf of Defendant." *Id.* ¶ 42. Several days after receiving the call, Plaintiff called the number provided in the voicemail "to ascertain the identity of the spam caller." *Id.* ¶ 34. Plaintiff was then connected to an agent who identified herself as a Pure Energy USA representative; the agent "began enrolling Plaintiff" in Defendant's services and informed Plaintiff that "his new energy supplier will be Pure Energy USA." *Id.* ¶¶ 34–36.

Plaintiff, the sole user and subscriber of the cell telephone that received the alleged "unsolicited prerecorded call," never consented to be contacted by Defendant. *Id.* ¶¶ 45–46. Plaintiff alleges that the ringless voicemail caused him "actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass,

and conversion." *Id.* ¶ 47. Plaintiff allegedly spent "fifteen minutes reviewing Defendant's unwanted message" because he "had to stop what he was doing to either retrieve his phone and/or look down at the phone to review the message." *Id.* ¶ 48. The voicemail "took up memory on Plaintiff's cellular phone," the "cumulative effect" of which "poses a real risk of ultimately rendering the phone unusable for voice messaging purposes" and "slow[ing] cell phone performance" by consuming space on the phone's memory. *Id.* ¶¶ 49–50.[4]

According to Plaintiff, Defendant has a "practice of placing unsolicited ringless voicemails," like the one Plaintiff received, "to many individuals that [*sic*] never consented to be contacted on their telephone." *Id.* ¶ 40. Plaintiff alleges, upon information and belief, that Defendant "has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent." *Id.* ¶ 54. To corroborate these factually bare conclusions, the FAC directs the Court to a website on which, according to Plaintiff, other individuals "voiced their frustration" over having received "unwanted, unconsented to, and harassing calls" from Defendant that were associated with the telephone number 610-673-0477.[5] *Id.* ¶ 41.

Plaintiff alleges violations of Section 227(b)(1)(A) of the TCPA (Count 1), *id.* ¶¶ 63–70, and for "knowing and/or willful" violations of Section 227(b)(3) of the TCPA (Count 2), *id.* ¶¶ 71–75. Plaintiff seeks actual and statutory damages as well as declaratory and injunctive relief. *See id.* And, because Defendant "knew that it did not have prior express consent to make these calls, and knew or should have known that it was using an artificial or prerecorded voice," *id.* ¶ 68, Plaintiff alleges that he and the putative class are entitled to treble damages, in addition to actual and statutory damages, *id.* ¶¶ 69–70, 72–75.

**\*3** Defendant moves to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and for failure to allege Article III standing pursuant to 12(b)(1). Def. Mem. of Law at 6–8.

## II. DISCUSSION

### A. Defendant's Motion to Dismiss for Failure to Allege Subject Matter Jurisdiction Is Denied[6]

Defendant moves to dismiss on the grounds that Plaintiff has failed to "plead sufficient facts demonstrating the essential elements of causation (a.k.a. 'traceability') and redressability for Article III standing purposes." Def. Mem. of Law at 20. Defendant also contends that Plaintiff lacks standing to pursue injunctive relief. *Id.* at 21–22; Def. Reply at 10. "Article III standing requires plaintiffs to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.' " *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

### 1. Plaintiff Has Standing to Seek Damages

Defendant primarily argues that Plaintiff has failed to establish a causal connection between the voicemail and Pure Energy, as opposed to some other third party, and thus lacks Article III standing. Def. Mem. of Law at 20–21. The threshold for establishing causation at the pleading stage is modest, as there need only be a "substantial likelihood" that Defendant caused Plaintiff's harm. *Gorss Motels, Inc. v. Sysco Guest Supply, LLC*, 2017 WL 3597880, at \*6 (D. Conn. Aug. 21, 2017) (quoting *DMJ Assocs., L.L.C. v. Capasso*, 288 F. Supp. 2d 262, 272 (E.D.N.Y. 2003)); *see also Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013) ("The requirement that a complaint allege an injury that is fairly traceable to defendants' conduct for purposes of constitutional standing is a lesser burden than the requirement that it show proximate cause."); *Barbour v. Haley*, 471 F.3d 1222, 1226 (11th Cir. 2006) ("Even harms that flow indirectly from the action in question can be said to be fairly traceable to that action for standing purposes.").

As more fully discussed below, drawing all reasonable inferences from well-pled facts in Plaintiff's favor, Plaintiff has adequately alleged an injury that is fairly traceable to Defendant: namely, that he received an unsolicited telephone call from Defendant, and upon returning that call, reached a representative purporting to sell the services of Pure Energy. FAC ¶¶ 29–36. Those facts are more than sufficient to show causation for Article III standing purposes. *See, e.g., Bank v. GoHealth, LLC*, 2021 WL 1884671, at \*9 (E.D.N.Y. May 11, 2021) ("Plaintiff plausibly alleges that his injury is fairly traceable to Defendant's conduct because Plaintiff was eventually transferred to a licensed agent of Defendant and while Plaintiff was on hold to be transferred to Defendant's agent, an automated message instructed

Metzler v. Pure Energy USA LLC, Not Reported in Fed. Supp. (2023)

Plaintiff to call a phone number associated with Defendant to be placed on Defendant's do-not-call list."), *aff'd*, 2022 WL 1132503 (2d Cir. Apr. 18, 2022).

**\*4** Raising the same arguments as in its challenge to causation, Defendant also argues that Plaintiff has failed to show how "his claim can be adequately redressed by Pure Energy." Def. Mem. of Law at 21. To satisfy the redressability prong of Article III standing, Plaintiff must establish that it is likely, and not merely speculative, that his "injury will be remedied by the relief [he] seeks in bringing suit." *Sprint Comms. Co. v. APCC Servs., Inc.,* 554 U.S. 269, 273–74 (2008) (citation omitted); *see Maddox,* 19 F.4th at 62. Defendant's argument that Plaintiff has failed to "explain how monetary or injunctive relief ... will redress alleged injuries caused to him by unidentified third parties," Def. Mem. of Law at 3, 20–21, is unavailing: as discussed above, Plaintiff has adequately alleged that his injury was caused by a call from or on behalf of Pure Energy. Thus, the imposition of statutory damages against Pure Energy will adequately redress his injury.

## 2. Plaintiff Has Standing to Seek Injunctive Relief

Defendant also argues that Plaintiff lacks standing to obtain an injunction against Defendant, as injunctive relief requires Plaintiff to establish "continuing, present adverse effects" and that Plaintiff "is likely to be harmed again in the future in a similar way." *See* Def. Mem. of Law at 21–22. Because Plaintiff only alleges that he received a single call, Defendant argues that Plaintiff has not shown a "continuing or possible future injury" sufficient to confer standing to seek injunctive relief. *Id.* at 22. Plaintiff argues that he does not seek injunctive relief as a standalone cause of action, but rather as a remedy that is expressly provided by the TCPA, thus distinguishing this case from those cited by Defendant. *See* Pl. Opp. at 14–15.

Although the standard for awarding injunctive relief under the TCPA has not been firmly decided in this circuit,[7] assuming the truth of Plaintiff's allegations that others have complained about having received similar unsolicited calls from Defendant, the Court is satisfied that Plaintiff has sufficiently alleged that he and the putative class members are "likely to be harmed again in the future in a similar way." *See* Def. Mem. of Law at 22 (quoting *Nicosia v. Amazon,* 834 F.3d 220, 239 (2d Cir. 2016)). In any event, at this stage of the litigation, dismissing Plaintiff's request for injunctive relief would be premature. *See, e.g., Gutierrez v. Fla. Advert. & Mktg.*

*Corp.,* 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019) ("[A] claim for a statutory violation[ ] ... is all that is required to request injunctive relief in a complaint," but, "of course, the Court can revisit the issue at summary judgment ...."). Accordingly, Plaintiff has adequately alleged that he has Article III standing to seek an injunction.[8]

## B. Defendant's Motion to Dismiss for Failure to State a Claim Is Granted

**\*5** To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Inc.,* 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). Similarly, a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557) (alteration in *Iqbal*). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679.

## 1. Plaintiff Has Not Adequately Pled that Pure Energy Is Directly Liable Under Section 227(b)(1)(A)(iii) of the TCPA

In relevant part, the TCPA makes it unlawful for anyone to make any call using an artificial or prerecorded voice to a cellular telephone without prior consent. 47 U.S.C. §

Metzler v. Pure Energy USA LLC, Not Reported in Fed. Supp. (2023)

227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls made in violation of 47 U.S.C. § 227(b). 47 U.S.C. § 227(b)(3).

Defendant argues that Plaintiff has failed adequately to plead that Pure Energy is directly liable under the TCPA because Plaintiff "does <u>not</u> allege with any factual basis that Pure Energy itself—as opposed to some third party—<u>physically</u> placed the call at issue." Def. Mem. of Law at 11 (emphases in original); *see also* Def. Reply at 1–2. More specifically, Defendant argues that the FAC fails plausibly to allege that Pure Energy initiated the call because the voicemail message Plaintiff received only identified "PECO," not Pure Energy, and did not "offer[ ] him any Pure Energy products or services." Def. Mem. of Law at 11. The Court agrees that Plaintiff has not adequately alleged that Pure Energy placed the call.[9]

Plaintiff alleges that Defendant owns or operates the telephone number from which the offending call originated. FAC ¶¶ 42–43. That allegation is entirely conclusory. The screen shot of Plaintiff's telephone, *id.* ¶ 29, adequately documents that the voicemail originated from 267-553-6297, but there are no further allegations that associate that number with any subscriber, let alone with Pure Energy. The FAC simply contains no factual allegations supporting Plaintiff's bald conclusion that the number from which the voicemail originated is "owned/operated by or on behalf of Defendant."

Plaintiff further alleges that, although the voicemail message did not identify Pure Energy by name, Pure Energy has, at least on its website, referred its services in Pennsylvania (where Plaintiff resides) as "PECO." *Id.* ¶ 38.[10] As discussed in note 3, *supra*, that allegation is not supported by the website. *See Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 410 (S.D.N.Y. 2018) (noting that a website cited in an amended complaint is "effectively incorporated into it"), *aff'd*, 757 F. App'x 35 (2d Cir. 2018); *D'Amato v. Starr*, 2007 WL 895787, *1 (E.D.N.Y. Mar. 22, 2007) (rejecting allegations purportedly supported by "the websites cited [in the complaint]," and which are therefore incorporated in the complaint," as the websites "do not bear out the allegations"). There is no indication on the website that Defendant is referring to itself as PECO as opposed to referring to an energy company, like Con Edison, to which it supplies electricity.

**\*6** The only non-conclusory allegations that even come close to alleging that Defendant initiated the offending telephone call are the allegations that Plaintiff called the number provided in the message and reached a person who identified herself as a representative of Pure Energy. FAC ¶¶ 34–36. The representative confirmed that she was

a representative for Pure Energy, began enrolling Plaintiff in Pure Energy's services, and the call included a message stating, "Thank you for choosing Pure Energy USA." *Id.* ¶¶ 36–37; Pl. Opp. at 6–7. Those facts confirm that the voicemail related to Defendant, but they do not allow the Court to infer that Defendant—as opposed to a telemarketer working to drum up business for Defendant—made the call at issue.

Although Plaintiff does not have to "definitively connect" Defendant to the call, he does have to allege facts from which the Court can plausibly infer that Defendant has direct liability, even if it is also plausible that a third party made the call. *Zeitlin v. Palumbo*, 532 F. Supp. 3d 64, 71 (E.D.N.Y. 2021). In this case, accepting all of the well-pled allegations and drawing all reasonable inferences in Plaintiff's favor, no well-pled fact in the FAC allows the Court plausibly to infer that the message to Plaintiff came directly from Defendant.

### 2. Plaintiff Has Not Adequately Alleged that the Message Contained a Prerecorded Voice

Defendant further argues that Plaintiff has failed to allege adequately that the voicemail he received was placed using "an artificial or prerecorded voice," as required for a private cause of action under the TCPA. *See* Def. Mem. of Law at 18–20. The Court agrees.

Plaintiff has not alleged sufficient facts to support an inference that the message was prerecorded. Plaintiff has merely alleged that he received a "ringless voicemail," which "he was easily able to determine ... was a prerecorded message." FAC ¶¶ 29, 33.[11] But Plaintiff has not alleged any additional facts from which the Court can infer that the message was prerecorded rather than, say, the product of a live person reading from a script.[12] Although a ringless voicemail could be evidence of a prerecorded message, *see, e.g.*, *Rose v. New TSI Holdings, Inc.*, 2022 WL 912967, *2 (S.D.N.Y. Mar. 28, 2022), standing alone, it fails to meet the requisite plausibility mark. Plaintiff does not allege, for example, that the voice in the message sounded artificial, nor does he allege having received multiple messages that sounded identical. *See, e.g.*, *id.* ("Beyond alleging that he received prerecorded messages, [plaintiff] also alleges that at least two of the prerecorded messages were identical and includes a transcript of those two messages."). Although Plaintiff claims that "the same exact prerecorded message was sent to other consumers," Pl. Opp. at 4 (citing FAC ¶ 41), the other complaints on the website Plaintiff references in the FAC do not support that allegation.[13]

Metzler v. Pure Energy USA LLC, Not Reported in Fed. Supp. (2023)

**\*7** In short, Plaintiff has not alleged adequately that he received a prerecorded voice message in violation of the TCPA.

### C. Amendment[14]

Rule 15 requires courts to freely grant leave when justice requires unless there is: (1) undue delay or prejudice; (2) bad faith; (3) dilatory motive; (4) failure to cure deficiencies through previous amendment; or (5) futility. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiff has already amended his complaint once after Defendant moved to dismiss on 12(b)(6) grounds. On December 16, 2022, the Court heard oral argument and pressed Plaintiff on whether he had additional facts that could shore up his allegations regarding Defendant's alleged control of the telephone number 267-553-6297 and that the call was a prerecorded voicemail. *See* Hearing Tr. 6:7–8:23. Plaintiff indicated that there were no additional facts on either point. *Id.* Plaintiff's counsel insisted that, in his experience, the party who initiated this call was using ringless voicemail technology. *Id.* 10:23–11:15. But counsel's speculation, even if well-founded, does not turn a possible allegation into a plausible one. In short, granting leave for Plaintiff to amend the complaint would be futile.[15]

## III. CONCLUSION

For the foregoing reasons, Pure Energy's Motion to Dismiss is GRANTED. Plaintiff's First Amended Complaint is hereby DISMISSED with prejudice. The Clerk of Court is respectfully directed to terminate all open motions and deadlines and to close this case.

**SO ORDERED.**

## All Citations

Not Reported in Fed. Supp., 2023 WL 1779631

Footnotes

1    Plaintiff originally filed the Complaint on November 23, 2021. Dkt. 1. On February 2, 2022, Defendant moved to dismiss. Dkt. 20. Plaintiff amended the complaint on February 7, 2022, and the Court denied Defendant's motion to dismiss as moot. Dkt. 24. Defendant then moved to dismiss the FAC. *See* Dkt. 25. The Court heard oral argument on Defendant's Motion on December 16, 2022. *See* Order, Dkt. 31. Discovery has been stayed since Defendant filed its first motion to dismiss. *See* Dkt. 22.

2    The facts are taken from the FAC. At this stage in the litigation, the Court assumes that all well-pled facts alleged in the FAC are true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

3    Plaintiff alleges that Defendant Pure Energy "refers to its utility services as 'PECO' in Pennsylvania." FAC ¶ 38. Defendant disclaims any connection to "PECO." *See* Def. Mem. of Law at 11. The Court agrees with Defendant that Plaintiff has "gross[ly] mischaracteriz[ed]" the information on Defendant's website; the term PECO appears on Defendant's website in a column that lists utilities to whom Defendant appears to supply electricity, a list that also includes Con Edison and Duke Power. Other basic research confirms that PECO is a utility company, formerly known as Philadelphia Energy Company, that is currently a subsidiary of Exelon. *See* www.peco.com/aboutus/pages/companyinformation.

4    Although the FAC repeatedly references "voice messages," *see* FAC ¶ 48–50, it alleges only a single unsolicited voicemail from Defendant, the memory requirements for which would be negligible.

5    The URL provided in the FAC (https://www.numberguru.com/phone/610/673/0477) links to a website that includes various posts purportedly complaining about the receipt of unsolicited voicemails from the call-back number that was provided in the voicemail Plaintiff received. *See* FAC ¶ 41. The FAC provides a sample of such comments, several of which identify an "Angela Coleman" as having left a message regarding PECO (sometimes spelled "pico"); other comments describe a message identical to the one

transcribed in the FAC, down to the inclusion of two "um"s. *See id.* As of December 2, 2022, there were 27 comments posted at the URL provided in the FAC. While that figure reflects more complaints than just Plaintiff's, it does not provide support for his allegations that there have been "thousands" of unsolicited calls. *See* FAC ¶ 53.

6    Although Defendant's 12(b)(1) motion relies almost exclusively on the arguments made in its 12(b)(6) motion—*i.e.*, that Plaintiff has failed adequately to state a claim that Defendant is directly liable for violating the TCPA—this opinion first addresses the issue of standing given the Court's "independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend,* 559 U.S. 77, 94 (2010) (citation omitted).

7    At least one court in this circuit has held that a request for an injunction under the TCPA should be denied absent "a showing that there is a reasonable likelihood" of future violations, even though the TCPA provides a private right of action to enjoin violations. *See Bank v. Caribbean Cruise Line, Inc.,* 2014 WL 1883586, at *2 (E.D.N.Y. May 12, 2014), *vacated and remanded on other grounds,* 606 F. App'x 28 (2d Cir. 2015) (summary order). In declining to issue an injunction, the district court in *Bank* stated that the Second Circuit requires a showing of "a reasonable likelihood" of a future violation even "in the context of a statutory injunction." *Id.* (quoting *S.E.C. v. Mgmt. Dynamics, Inc.,* 515 F.2d 801, 807 (2d Cir. 1975)). On appeal, the Second Circuit found that the standard articulated by the district court was not subject to review because a settlement between the parties had mooted the case. *Bank,* 606 F. App'x at 30 ("Accordingly, the interesting question Bank now raises about the proper standard for awarding injunctive relief under the TCPA has been rendered purely academic and thus not subject to our review.").

8    Notwithstanding Defendant's reservation of rights to dispute whether Plaintiff has sufficiently alleged an injury, *see* Def. Mem. of Law at 3 n.3, for the avoidance of doubt the Court also finds that, at this stage, the FAC meets the injury-in-fact prong of Article III standing. The Second Circuit has held that the " 'nuisance and privacy invasion' of receiving unsolicited text messages is a sufficient injury to allege standing under the TCPA." *Gorss Motels, Inc. v. Lands' End, Inc.,* 997 F.3d 470, 476 (2d Cir. 2021) (citing *Melito v. Experian Mktg. Sols., Inc.,* 923 F.3d 85, 93 (2d Cir. 2019) ("[T]he nuisance and privacy invasion attendant on spam texts are the very harms with which Congress was concerned when enacting the TCPA[, and] history confirms that causes of action to remedy such injuries were traditionally regarded as providing bases for lawsuits in English or American courts.")); *see also Mejia v. Time Warner Cable, Inc.,* 2017 WL 3278926, *7 (S.D.N.Y. Aug. 1, 2017) (noting that the Second Circuit has held that a plaintiff asserting a TCPA claim had adequately alleged standing by alleging that "the defendant 'left a prerecorded voicemail message, to which plaintiff later listened, on an answering device in the place where plaintiff resided and to which he had legitimate access' ") (quoting *Leyse v. Lifetime Entertain. Svcs., LLC,* 2017 WL 659894, *1 (2d Cir. 2017) (summary order))). The Court finds that the "nuisance and privacy invasion" of unsolicited telephone calls is likewise a sufficient injury under the TCPA; Plaintiff alleges that unsolicited voicemails can clog voicemail space and drain cell phone resources. *See* FAC ¶¶ 47–49. Plaintiff has thus alleged adequately an injury-in-fact.

That said, and not to minimize the annoyance of unwanted telephone calls, the Court finds implausible Plaintiff's allegation that he "wasted fifteen minutes reviewing Defendant's unwanted message." FAC ¶ 48. The message contained 43 words (counting "um" twice). Even if Plaintiff decided to both read the voicemail transcript and then listen to it, he could not possibly have spent more than a few minutes in total "reviewing" the unwanted message.

9    Plaintiff has expressly disclaimed that he is pursuing a claim of vicarious liability. Pl. Opp. at 9; Tr. 5:9-10. The Court obtained a copy of the hearing transcript for purposes of this Opinion. Because neither party ordered a copy, the transcript has not been docketed.

10    Plaintiff's Opposition brief also cites to what Plaintiff describes as a 2020 quarterly filing made by Pure Energy to a Pennsylvania regulatory agency in which Defendant purportedly listed PECO Energy Co. as an "Electric Distribution Company (EDC) applicable to [the] company's retail sales." *See* Pl. Opp. at 4. That allegation is not in the FAC and therefore cannot be considered. Even if it were, alleging that Pure Energy has reported in regulatory filings that it has a relationship with PECO would not allow the Court reasonably to infer that PECO and Pure Energy are the same company.

11    Defendant correctly points out that Plaintiff's allegations in the FAC "contradict" allegations that were made in his initial complaint—specifically, that Plaintiff received a "ringless voicemail" as opposed to having received a voicemail after his telephone rang, as Plaintiff alleged in the initial complaint. *See* Def. Mem. of Law at 12, 18. Plaintiff asserts that the FAC is a product of a further unspecified "investigation," after which he amended the allegations to conform to the details learned. Pl. Opp. at 4, 10. The Court declines the invitation to strike any portion of the FAC, but notes that during oral argument on Defendant's Motion to Dismiss, Plaintiff's counsel represented that the telephone briefly rang before the call went to Plaintiff's voicemail; counsel further represented that, in his experience, a brief ring followed by a voicemail is evidence of the use of ringless voicemail technology. *See* Hearing Tr. 5:13–6:25. It is, however, equally plausible that the call simply rolled over to voicemail for some other reason; moreover, the FAC omits (and, to the extent it alleges that Plaintiff's phone never rang, directly contradicts) Plaintiff's counsel's representations during oral argument.

12    At Plaintiff's urging during oral argument, the Court listened to a copy of the voicemail that Plaintiff produced. Although Plaintiff argued that listening to the message would prove that it was obviously prerecorded, *see* Hearing Tr. 10:23–11:15, the Court disagrees. The voicemail itself provides no indication that it was prerecorded as opposed to having been left by a caller reading from a script.

13    The only complaint on the website that comes close to bearing out Plaintiff's allegation that other users received an identical voicemail was not identical, based on the transcription provided, and purportedly originated from an entirely different telephone number. *Compare* FAC ¶ 29 (screenshot of voicemail originating from 267-553-6297 with transcribed message from "Angela Coleman" containing two "ums"), *with id.* ¶ 41 (describing a "consumer complaint" with a similar script from "Angela Coleman" containing a single "um," which purportedly originated from 610-418-4329).

14    Plaintiff did not formally seek leave to amend his complaint but requested that "[i]f the Court grants the Motion [to Dismiss], it should also grant Plaintiff leave to amend." Pl. Opp. at 16.

15    Because the Court finds that leave to amend would be futile, it need not determine whether Plaintiff adequately pled that any violation of TCPA was knowing or willful.

---

**End of Document**          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

2015 WL 4204398
Only the Westlaw citation is currently available.
United States District Court,
**S.D**. **Ohio**,
Western Division.

Terry **MURRAY**, individually and on behalf
of all others similarly situated, Plaintiff,
v.
**CHOICE ENERGY**, **LLC**, et al., Defendants.

No. 1:15–cv–60.
|
Signed **July 10**, **2015**.

**Attorneys and Law Firms**

William McAllum Harrelson, II, Troy, OH, Stefan L. Coleman, Miami, FL, for Plaintiff.

Christopher S. Williams, Calfee Halter & Griswold LLP, Kimberly Smith Rivera, McGlinchey Stafford PLLC, Cleveland, OH, David Thomas Bules, Jamie M. Ramsey, Calfee, Halter & Griswold LLP, Cincinnati, OH, Gabrielle A. Figueroa, **Murray** E. Bevan, Bevan, Mosca, Giuditta & Zarillo, P.C., Basking Ridge, NJ, for Defendants.

**ORDER GRANTING MOTION TO DISMISS OF DEFENDANT CHOICE ENERGY, LLC'S (Doc. 7)**

TIMOTHY S. BLACK, District Judge.

**\*1** This civil action is before the Court on Defendant **Choice Energy**, **LLC's** Motion to Dismiss (Doc. 7) and the parties' responsive memoranda (Docs.13, 17).

**I. STATEMENT OF THE CASE**

Plaintiff Terry **Murray** brings this putative class action against Defendants **Choice Energy**, **LLC** and Premiere Business Solutions, **LLC** alleging violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.* (Doc. 1). **Choice Energy** filed a motion to dismiss Plaintiff's complaint and a crossclaim against Premiere for breach of contract. (Doc. **10**). Attached to the crossclaim complaint are a Services Agreement and Turnkey Telemarketing Sales Outsourcing Agreement ("Outsourcing

Agreement") entered into between **Choice Energy** and Premiere. (*Id* ., Exs. A, B). The Services Agreement provides that Premiere will provide telemarketing services for **Choice Energy** and sets forth other terms of the relationship between the parties. (*Id.,* Ex. A). The Outsourcing Agreement provides details of the specific services that Premiere provides. (*Id.,* Ex. B).

**II. FACTS ALLEGED BY PLAINTIFF**

For purposes of this motion to dismiss, the Court must: (1) view the complaint in the light most favorable to Plaintiff; and (**2**) take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers,* 561 F.3d 478, 488 (6th Cir.2009).

**Choice Energy** and Premiere are limited liability companies organized in Iowa. (Doc. 1 at ¶¶ 7, 8, 16). Both entities' principal place of business is located at the same address and suite number in West Des Moines, Iowa. (*Id.* at ¶ 16). **Choice Energy** is a licensed electric supplier providing electric generation services for primarily residential customers and businesses. (*Id.* at ¶ 1). Premiere is a telemarketing company that actively sells **Choice Energy's** services, on **Choice Energy's** behalf, through widespread telemarketing. (*Id.* at ¶ **2**).

In addition to operating out of the same location, **Choice Energy's** and Premier's "officer and management personnel are intertwined." (Doc. 1 at ¶ 17). Specifically, Michael Needham is **Choice Energy's** registered agent in Iowa and also a managing partner and owner of Premiere. (*Id.* at ¶ 18). Brent Hood is a managing partner and cofounder of Premiere and is also listed as the registrant and administrator of a website associated with **Choice Energy**. (*Id.* at ¶ 19).

Plaintiff alleges that "Defendants acted in concert to solicit customers to use Defendant **Choice Energy's** electric **energy** supply services" and that "Defendants acted in a joint manner as a singular entity to solicit consumers to purchase electric supply services from **Choice Energy** through telemarketing." (Doc. 1 at ¶¶ 11, 22). Although the complaint often refers to actions undertaken by "Defendants," the complaint does specify that "Defendant Premiere makes outbound telemarketing calls on behalf of **Choice Energy** to consumers nationwide during which the telemarketers offer consumers savings on their electric bills" and "Defendant **Choice Energy** simply outsourced the telesales of its

products to Defendant Premiere for its benefit." (*Id.* at ¶¶ 15, 22).

**\*2** Plaintiff registered for the National Do Not Call Registry on March 14, 2014. (Doc. 1 at ¶ 25). Between August and November 12, 2014, Plaintiff received at least **ten** telephone calls to his landline telephone from the same telephone number. (*Id.* at ¶ 26). Plaintiff answered the call on more than one occasion and was informed that the call was from **Choice Energy**. (*Id.* at ¶ 27). On several occasions, Plaintiff expressly requested to be removed from the calling list and to no longer receive any calls from Defendants. (*Id.* at ¶ 28). However, Plaintiff continued to receive calls. (*Id.* at ¶ 29). Defendants placed calls to Plaintiff and others like him without prior consent and failed to honor requests to no longer receive such calls. (*Id.* at ¶ 21). Defendants also failed to check its calling list against numbers registered on the Do No Call Registry. (*Id.* at ¶ 20).

### III. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed.R.Civ.P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed.R.Civ.P. 8 "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Pleadings offering mere " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly,* 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " *Twombly,* 550 U.S. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,*

556 U .S. at 678 (quoting *Twombly,* 550 U.S. at 570). A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,' " and the complaint shall be dismissed. *Id.* (quoting Fed. Rule Civ. P. 8(a)(2)).

**\*3** In ruling on a Rule 12(b)(6) motion to dismiss, the Court may only consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir.2008).

### IV. ANALYSIS

The TCPA provides a private right of action to "[a] person who has received more than one telephone call within any 12–month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). Plaintiff alleges that Defendants violated **two** regulations. The first regulation makes it unlawful for any person or entity to "initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). Under the second regulation, it is unlawful for any person or entity to "initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." *Id.* § 64.1200(d).

In *In re DISH Network, **LLC**,* 28 FCC Rcd. 6574 (2013), the Federal Communications Commission issued a Declaratory Ruling interpreting these provisions of the TCPA and its accompanying regulations. Specifically, the FCC addressed whether a seller can be liable for violations of the do-not-call provisions of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c), (d) committed by a third-party telemarketer. [1] The FCC held

that a "seller is not directly liable for a violation of the TCPA unless it initiates a call, but may be held vicariously liable under federal common law principles of agency for TCPA violations committed by a third-party telemarketer." *Id.* at 6582.

### A. Direct Liability

Plaintiff first argues that the complaint pleads a plausible TCPA claim against **Choice Energy** under the direct liability theory. In the Declaratory Ruling, the FCC held that direct liability under § 64.1200(c)(2) or § 64.1200(d) arises if a person or entity "initiates" a call in violation of those regulations. *In re DISH Network, **LLC**, 28 FCC Rcd. at 6583.* Interpreting the term "initiate," the FCC held that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id.* The FCC reasoned that this interpretation reflected "a clear distinction between a call that is made by a seller and a call that is made by a telemarketer on the seller's behalf." *Id.* [2]

**\*4** Plaintiff argues that he has sufficiently pleaded that **Choice Energy** is directly liable for the alleged TCPA violations because "it is entirely plausible that **Choice** and Premiere are not really distinct entities" and because **Choice Energy** was "so involved" in placing the calls to him. (Doc. 13 at 5–6). [3] Plaintiff identifies **two** factual allegations from the complaint to support the argument that **Choice Energy** and Premiere are not distinct entities: the **two** entities operate out of the same office suite and their "officer and management personnel are intertwined." (Doc. 1 at ¶¶ 16–19).

First, citing factors employed in the doctrine of alter ego under Ohio law, [4] Plaintiff contends that the complaint sufficiently alleges that Premiere is the alter ego of **Choice Energy** such that **Choice Energy** can be held directly liable. However, despite alleging that "Defendants' officer and management personnel are intertwined," the complaint's factual allegations do not support this conclusion. Plaintiff alleges that Michael Needham is **Choice Energy's** registered agent in Iowa and a managing partner and owner of Premiere. (*Id.* at ¶ 18). Additionally, Brent Hood is a managing partner and cofounder of Premiere and is "listed as the registrant and administrator of the website: www.4choiceenergy.com which is the website provided to callers by Defendant **Choice**

**Energy**." (*Id.* at ¶ 19). Although the complaint alleges that Needham and Hood serve as officers or management of Premiere, it fails to plead that Needham or Hood had an equivalent role with **Choice Energy**. [5] Further, the bare fact that **Choice Energy** and Premiere operate out of the same location is not sufficient to lead to liability under the alter ego doctrine. The complaint's conclusory statements do not contain any other specific factual allegations that could plausibly demonstrate that Premiere is an alter ego of **Choice Energy**.

Second, Plaintiff invokes language from the Declaratory Ruling to argue that **Choice Energy** was "so involved" with Premiere's placing of the telephone calls that direct liability is appropriate. In the Declaratory Ruling, the FCC *indicated* that a seller could be held directly liable for a TCPA violation even if the call was placed by a third party:

> one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it —by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example. But a construction of the statute that concludes that a seller always initiates a call that is made by a third party on its behalf would entirely collapse the distinction, reflected in our current rules, between seller and telemarketer.

*In re DISH Network, **LLC**, 28 FCC Rcd. at 6583.* Regardless of whether this statement is dicta, the complaint fails to plead any specific factual allegations to support the legal conclusion that **Choice Energy** was "so involved" in placing the calls that direct liability could be proper. Plaintiff cites four paragraphs that allege "Defendants" placed the calls and failed to honor do-not-call requests, without indicating which particular Defendant took the action in question. (Doc. 1 at ¶¶ 20–23). However, the complaint makes clear that "Defendant Premiere makes outbound telemarketing calls on behalf of **Choice Energy**" and "Defendant **Choice Energy** simply outsourced the telesales of its products to Defendant Premiere for its benefit." (*Id.* at ¶¶ 15, 22). There are no factual allegations in the complaint that **Choice Energy** had

any active role or involvement in placing the calls, such as giving Premiere "specific and comprehensive instructions as to timing and the manner of the call." [6] Accordingly, Plaintiff fails to state a claim for which relief can be granted against **Choice Energy** under the theory of direct liability.

### B. Vicarious Liability

**\*5** Plaintiff also argues that the complaint plausibly alleges a TCPA claim under the theory of vicarious liability. The Declaratory Ruling held that a "seller may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers ..., including not only formal agency, but also principles of apparent authority and ratification." *In re DISH Network, LLC*, 28 FCC Rcd. at 6584.

### 1. Formal Agency

Agency is a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). "An essential element of agency is the principal's right to control the agent's actions." *Id.* § 1.01 cmt. f(1). In particular, "[t]he power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." *Id.* "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Id.* § **2**.01.

Plaintiff again relies heavily on contractual terms in the Services Agreement and Outsourcing Agreement, documents that the Court cannot consider in ruling on this motion to dismiss. The only **two** paragraphs of the complaint cited by Plaintiff provide that **Choice Energy** "outsourced" the telemarketing calls to Premiere. (Doc. 1 at ¶¶ 22–23). However, these allegations are devoid of specific factual allegations indicative of an agency relationship, including that **Choice Energy** had the right to control and the power to give interim instructions.

In *Toney v. Quality Resources Inc.,* No. 13–cv–42, 2014 WL 6757978 (N.D.Ill.Dec.1, 2014), the plaintiff adequately alleged an agency relationship between the seller and the third-party telemarketer based on a number of specific

factual allegations that demonstrated the control the seller exercised over the third-party telemarketer's placement of the calls. *Id.* at **10**. Here, Plaintiff's complaint lacks any factual allegations that could plausibly show the existence of an agency relationship. The Declaratory Ruling held "we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under ... section 227(c)." *In re DISH Network, LLC*, 28 FCC Rcd. at 6593. Here, Plaintiff has not pled any factual allegations to support the "more" that is necessary to plausibly hold **Choice Energy** vicariously liable. Accordingly, Plaintiff has failed to plead a claim for relief against **Choice Energy** under a formal agency theory.

### 2. Apparent Agency

**\*6** "Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." Restatement (Third) of Agency § **2** .03 cmt. c. Plaintiff argues that he has pleaded facts sufficient to show apparent authority because "**Choice** [**Energy**] plausibly communicated indirectly with the third party—Plaintiff **Murray**—by expressly authorizing Premiere to make the calls and to inform consumers that the calls were being made by **Choice Energy**." (Doc. 13 at **10**). Plaintiff supports this argument by reference to the Services Agreement and Outsourcing Agreement, but not to factual allegations in the complaint.

Plaintiff also invokes several examples provided in the Declaratory Ruling as "guidance" for the existence of apparent authority. *In re DISH Network, LLC*, 28 FCC Rcd. at 6592–93. Several parties to the Declaratory Ruling petitioned the Court of Appeals for the District of Columbia Circuit for review of that "guidance," arguing that the FCC exceeded its authority and acted arbitrarily and capriciously. *DISH Networks, LLC v. FCC*, 552 F. App'x 1 (D.C.Cir.2014). The FCC conceded that the " ' 'guidance' has no binding effect on courts, that it is not entitled to deference under *Chevron* ..., and that its force is dependent entirely on its power to persuade." *Id.* at **2**. Several courts have subsequently found that the Declaratory Ruling's apparent authority "guidance" is not persuasive. *Toney,* 2014 WL 6757978, at \*12; *Bridgeview Health Care Ctr. Ltd. v. Clark,* No. 09 C 5601, 2014 WL 7717584, at \*5 n. 3 (N.D.Ill. Nov.21, 2014). This Court need not address that issue at this time because Plaintiff did not plead any allegations in the complaint that could plausibly support his apparent authority theory.

### 3. Ratification

Finally, Plaintiff argues that **Choice Energy** ratified the telephone calls placed by Premiere. Once again, Plaintiff relies only on the Services Agreement and Outsourcing Agreement to allege that **Choice Energy** had the requisite "knowledge of material facts" necessary for ratification. Restatement (Third) of Agency § 4.06. Additionally, Plaintiff has not plausibly pled an agency relationship between **Choice Energy** and Premiere, which is another necessary element for ratification. *See Thomas v. Taco Bell Corp.,* 582 F. App'x 678, 680 (9th Cir.2014) ("Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." (quoting *Batzel v. Smith,* 333 F.3d 1018, 1036 (9th Cir.2003))). Accordingly, Plaintiff has failed to state a claim for relief against **Choice Energy** under the theory of vicarious liability.

### C. Leave to Amend

In the alternative, Plaintiff requests leave to amend his complaint. (Doc. 13 at 11 n. 8.) Courts are encouraged to freely grant leave to amend "when justice so requires." Fed.R.Civ.P. 15(a)(2). A motion to amend should be denied, however, "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane,* 53 F.3d 750, 753 (6th Cir.1995). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun County,* 408 F.3d 803, 817 (6th Cir.2005). Here, Plaintiff's reliance on provisions in the Services Agreement and Outsourcing Agreement, documents that were not previously available to him, creates a "reasonable probability that the complaint could [be] saved by an amendment." *Newberry v. Silverman,* — F.3d ——, No. 14–3882, **2015 WL** 3422781, at *8 (6th Cir. May 29, **2015**). Accordingly, the Court will permit Plaintiff to file an amended complaint to cure the pleading deficiencies identified in this Order.

### V. CONCLUSION

**\*7** Wherefore, for these reasons, Defendant **Choice Energy, LLC's** Motion to Dismiss (Doc. 7) is **GRANTED** and Plaintiff's TCPA claim against **Choice Energy** is dismissed without prejudice. Plaintiff shall file an amended complaint within twenty-one days of the entry date of this Order.

**IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.3d, 2015 WL 4204398

---

## Footnotes

1    The Declaratory Ruling also addressed liability for violations of 47 U.S.C. § 227(b). However, that provision is not at issue in this action.

2    The parties implicitly agree that **Choice Energy** is a "seller," which the regulations define as "the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(9).

3    Plaintiff's brief relies extensively on provisions of the Services Agreement and Outsourcing Agreement to argue that dismissal is not warranted. Although the Outsourcing Agreement and Services Agreement appear in the record, Plaintiff concedes that neither document is referred to in his complaint. (Doc. 13 at 11 n. 8). Accordingly, the Court cannot consider these documents in ruling on the motion to dismiss. *Bassett,* 528 F.3d at 430.

4    These factors are:

(1) grossly inadequate capitalization, (**2**) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

*Taylor Steel, Inc. v. Keeton,* 417 F.3d 598, 605 (6th Cir.2005) (quoting *LeRoux's Billyle Supper Club v. Ma,* 77 Ohio App.3d 417, 602 N.E.2d 685, 689 (Ohio App.1991)).

5    Attached to Plaintiff's memorandum contra is an online newspaper article that refers to Hood as the managing partner of **Choice Energy**. The Court is similarly unable to rely on this document when ruling on the motion to dismiss. *Bassett,* 528 F.3d at 430.

6    Plaintiff's brief relies extensively on provisions of the Outsourcing Agreement to demonstrate **Choice Energy's** involvement in the calls. (Doc. 13 at 6–7). However, the Court cannot consider this information because the document was not referred to in the complaint. *Bassett,* 528 F.3d at 430.

---

**End of Document**                        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**H** KeyCite history available

2023 WL 5607594
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Joseph NELUMS, Plaintiff,
v.
MANDU WELLNESS, LLC, Aaron
Mandujan, Brian Patrick Stickney, and
777 Brands, LLC, Defendants.

Civ. No. 2:22-828 KRS/GBW
|
Filed August 30, 2023

**Attorneys and Law Firms**

Sidney Childress, Santa Fe, NM, for Plaintiff.

Kenneth Ferguson, Gordon & Rees LLP, Austin, TX, for
Defendants.

**MEMORANDUM OPINION AND ORDER**

KEVIN R. SWEAZEA, UNITED STATES
MAGISTRATE JUDGE

**\*1** THIS MATTER is before the Court on Defendants'
Motion to Dismiss Plaintiff's First Amended Complaint.
(Doc. 4). Plaintiff filed a response to the Motion to
Dismiss and Defendants have filed a reply. (Docs. 11 and
14). Also before the Court is Plaintiff's Motion to Exceed
Page Limits, to which Defendant filed a response and
Plaintiff filed a reply. (Docs. 12, 13, and 15). Pursuant to
28 U.S.C. § 636, the parties have consented to the
undersigned to preside over this matter and enter final
judgment. (Docs. 6, 9, and 10). Having considered the
parties' briefing, record of the case, and relevant law, the
Court grants Plaintiff's Motion to Exceed Page Limits,
grants Defendant's Motion to Dismiss, dismisses
Plaintiff's claims against Defendants 777 Brands, LLC,
Stickney, and Mandujan without prejudice for lack of
jurisdiction, and dismisses Plaintiff's claims against
Defendant Mandu Wellness, LLC with prejudice for
failure to state a claim.

**I. Background**

Plaintiff alleges that Defendants are sellers of a male
enhancement product and that Defendants "formulated,
directed, controlled, had the authority to control, ratified
and/or substantially participated in" sending him and
others unlawful text messages. (Doc. 1-1) at 9. Plaintiff
states he received text messages that "were indecent,
obscene and designed to arouse the viewer's prurient
interest in Defendants' 'Alpha State male enhancement
support' product. *Id.* at 13. The text messages had a
web-based internet link, and Plaintiff "followed the
instructions in Defendants' text messages to Plaintiff to
view more advertising." *Id.* at 14. Plaintiff states he
purchased the product in order to identify the senders of
the text messages and was able to link Defendants to the
internet site and the customer-service call center phone
number on the packaging of the product that he
purchased. *Id.* at 15-16. Specifically, Plaintiff alleges that
Defendant Mandu Wellness, LLC sold Plaintiff the
product and collected the money from him, and that
Defendant 777 Brands, LLC is the proprietor of the
website where he bought the product as well as the
"end-user assignee" of the customer-service phone
number that Plaintiff called. (Doc. 11) at 12. Plaintiff
states that Defendant Mandujan is the sole member and
manager of Mandu Wellness LLC, and Defendant
Stickney is the sole member and manager of 777 Brands
LLC. *Id.*

Plaintiff brings three claims against Defendants: (1)
violation of the New Mexico Unfair Practices Act
("NMUPA") because the text messages "cause confusion
or misunderstanding as to the source of the goods offered
in a manner that may, tends to or does deceive or mislead
consumers," and because consumers must purchase the
product being advertised in order to identify the parties
engaging in the unlawful telemarketing; (2) violation of
the Telephone Consumer Protection Act ("TCPA"), 47
U.S.C. § 227(b), because the text messages were sent with
an auto-dialer; and (3) violation of the TCPA, 47 U.S.C. §
227(c), because Defendants or Defendants' agents made
telephone solicitations to Plaintiff more than once within
12 months despite the fact that Plaintiff's phone number
is listed in the National Do-Not-Call Registry. (Doc. 1-1)
at 18-21. Plaintiff brings his claims on behalf of himself
and a proposed nationwide class of other persons who

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

received the telemarketing texts from or on behalf of Defendants. *Id.* at 21-23.

**\*2** Defendants move to dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction and for failure to state a claim. Defendants assert the Court lacks general or specific jurisdiction over out-of-state Defendants 777 Brands, Stickney, and Mandujan, because they have not made the necessary minimum contacts with New Mexico. (Doc. 4) at 10. Defendants further argue that they are not liable under the TCPA or NMUPA for sending the text messages and that Plaintiff fails to allege essential elements to state a claim under either the TCPA or NMUPA. *Id.*

In response, Plaintiff concedes the court does not have general jurisdiction over Defendants 777 Brands, Stickney, or Mandujan, but argues the Court has specific jurisdiction over these Defendants. (Doc. 11) at 5-6. In the alternative, Plaintiff asks the Court to allow him to conduct jurisdictional discovery to learn who sent the text messages. *Id.* at 7. Plaintiff further argues he has plead sufficient facts to support his claims and Defendants are either directly or vicariously liable under the TCPA and NMUPA because they have been deceptive about who sent the text messages. *Id.* at 7-35.

In reply, Defendants maintain that the Court does not have jurisdiction over the out-of-state Defendants because they lack sufficient minimum contacts with New Mexico. (Doc. 14) at 7-8. Defendants oppose Plaintiff's request for jurisdictional discovery because his allegations are unsupported, based on speculation, and do not controvert Defendants' specific denials of personal jurisdiction. *Id.* at 9-12. Defendants also maintain that Plaintiff fails to state a claim under the TCPA and NMUPA. *Id.* at 13-17.

## II. Plaintiff's Motion to Exceed Page Limitations

The Court first considers Plaintiff's Motion to Exceed Page Limits, in which Plaintiff seeks to file a 32-page response brief, in excess of the 24 pages allowed by Local Rule 7.5. (Doc. 12). Plaintiff states he needs the additional pages to address Defendants' jurisdictional argument and motion to dismiss for failure to state a claim. Defendants oppose the requested page extension because it is "excessive, unjustified, and prejudicial to Defendants." (Doc. 13) at 1. Defendants contend that Plaintiff's response brief does not demonstrate the need for the additional pages and the extension prejudices Defendants because they have to address Plaintiff's over-length response in their reply.

The Court finds Plaintiff has provided sufficient support for an extension of page limits because Plaintiff must address Defendants' jurisdictional arguments as well as their motion to dismiss Plaintiff's federal and state claims based on failure to state a claim. The Court finds that an additional eight pages for Plaintiff's response is not excessive, and Defendants could have requested an extension for their reply brief if they needed additional pages. Therefore, the Court grants Plaintiff's Motion to Exceed Page Limits.

## III. Defendants' Motion to Dismiss for Lack of Jurisdiction

Defendant Mandu Wellness is a New Mexico company, Defendant Mandujan is a California resident, Defendant 777 Brands is a Texas company, and Defendant Stickney is a Texas resident. (Doc. 1-1) at 9. Defendants first move to dismiss Plaintiff's claims against the out-of-state Defendants—777 Brands and the individual Defendants—for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). (Doc. 4) at 15. Defendants contend that Plaintiff fails to allege specific facts tying 777 Brands or the individual Defendants to the text messages allegedly received by Plaintiff, such as the contents of the text messages, the number(s) from which they were sent, the dates they were received, or other identifying information. *Id.* at 18. Defendants submit declarations stating they never spoke to Plaintiff, did not direct others to send text messages of the kind Plaintiff states he received, and were not otherwise involved in the creation of the messages. (Doc. 4-1). Defendants assert that Plaintiff's allegations regarding the text messages are speculative and do not support a finding of specific personal jurisdiction over the non-resident Defendants. (Doc. 4) at 18-21. Defendants further argue that Plaintiff's allegations against the entity Defendants cannot be imputed to the individual Defendants. *Id.* at 21-23.

**\*3** Plaintiff responds that he has sufficiently alleged that Defendants are vicariously liable for the text messages because the link in one of the text messages led to an internet site promoting the sale of a product that Plaintiff then bought from Defendants. (Doc. 11) at 7-10; 18-22. The text messages "never identified any seller or sponsor of the texts and never provided any means that Plaintiff noticed for a recipient of the texts to make a do-not-call request." *Id.* at 11. Nevertheless, because the product at the internet site was sold by Defendants, Plaintiff argues that "the actual senders of the text-messages at issue were agents of Defendants under Defendants' direction or

control." *Id.* at 13. Plaintiff submits declarations by Plaintiff and his counsel in support of his arguments. (Docs. 11-1, 11-2). In the alternative, Plaintiff asks the Court to allow him to conduct discovery regarding "who may be directly liable for the texts and who is in possession of the lead-lists or other phone numbers these texts were sent to." *Id.* at 8-9.

In their reply, Defendants maintain that Plaintiff has failed to identify any direct connection between Defendants and the challenged text messages, and Plaintiff's vicarious liability arguments are speculative. (Doc. 14) at 6-7. Defendants note that Plaintiff's affidavits do not contradict Defendants' affidavits regarding their lack of contacts with New Mexico, so Plaintiff has not met his duty to support a finding of jurisdiction. *Id.* at 7-9. Defendants oppose Plaintiff's request for jurisdictional discovery because he has not demonstrated a good-faith basis for asserting jurisdiction over the out-of-state Defendants or how additional discovery would support his jurisdiction argument. *Id.* at 9-10.

### A. Legal Standard

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Thus, a court may "exercise personal jurisdiction over an out-of-state defendant who has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe*, 326 U.S. at 316).

When faced with a motion to dismiss for lack of jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that jurisdiction exists. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). A plaintiff's burden is light in the early stages of litigation before discovery such that the plaintiff need only make a prima facie showing of personal jurisdiction. *Id.* The Court accepts as true all well-pleaded facts alleged by the plaintiff that are plausible, non-conclusory, and non-speculative, unless the defendant controverts those facts by affidavit. *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011). Additionally, the Court resolves factual disputes in the parties' affidavits in the plaintiff's

favor. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

Personal jurisdiction may exist in two ways—general jurisdiction and specific jurisdiction. A court has general jurisdiction over a defendant when the defendant's contacts with the state "are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919 (citation omitted). In contrast, "specific jurisdiction ... 'depends on an affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (citation omitted). Because Plaintiff here does not assert the existence of general jurisdiction, *see* (Doc. 11) at 5, the Court considers whether it has specific jurisdiction over the non-resident Defendants.

**\*4** Specific jurisdiction grows out of "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted). If the "controversy is related to or 'arises out of' the defendant's contacts with the forum," specific jurisdiction exists. *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 (1984) (citation omitted). The specific jurisdiction inquiry involves two steps. First, the Court must determine whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1979). The Tenth Circuit has framed the "minimum contacts" test in the context of specific jurisdiction as "encompass[ing] two distinct requirements: 'first, that the out-of-state defendant must have purposefully directed its activities at residents of the forum state, and second, that the plaintiff's injuries must arise out of defendant's forum-related activities.' " *Shrader*, 633 F.3d at 1239 (quoting *Dudnikov*, 514 F.3d at 1071). If a defendant's actions create sufficient minimum contacts, the second step of the specific jurisdiction inquiry is whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987).

### B. Analysis

The parties have presented competing affidavits to support their personal jurisdiction arguments. The out-of-state Defendants testify that they never called or texted Plaintiff, and they did not direct, control, or

Nelums v. Mandu Wellness, LLC, Not Reported in Fed. Supp. (2023)

otherwise authorize any third parties to send text messages to Plaintiff. (Doc. 4-1) at 3, ¶¶10-14; at 7, ¶¶10, 12-15; and at 10, ¶¶7-11. Specifically, Defendants state they never "approved, wrote, reviewed, or participated in developing the alleged text messages," they never "authorized any third parties to make outbound text messages," and "[i]n contracting with third parties to advertise the product at issue [they] contractually prohibited their use of SMS text messages." *Id.* In response, Plaintiff and his counsel offer their own declarations stating Plaintiff received text messages that included "indecent or obscene language" that included a link that led to an internet site where Plaintiff "was able to view indecent or obscene visual imagery promoting the sale of the Alpha State product [Plaintiff] bought from Defendants." (Doc. 11-1) at 1, ¶2. Plaintiff states that he was able to identify Defendants Mandu Wellness and 777 Brands after purchasing the product from the charges to his bank debit card and from calling a customer service phone number on the product's packaging. *Id.* at 1-2, ¶¶ 3-11; *see also* (Doc. 11-2).

Importantly, Plaintiff's declarations do not contradict Defendants' assertions that they did not send the text messages and did not direct someone else to send them. Indeed, Plaintiff states that the texts he received "never identified any seller or sponsor of the texts and never provided any means that I noticed for me to make a do-not-call request." (Doc. 11-1) at 2, ¶6. While the Court is required to resolve disputes in the parties' affidavits in favor of Plaintiff, it must only do so for "plausible, non-conclusory, and non-speculative facts" that are not controverted by Defendants by affidavit. *Shrader*, 633 F.3d at 1248. Plaintiff's assertions that Defendants sent or were responsible for the text messages are based on speculation and Plaintiff fails to allege any specific facts that show that Defendants texted Plaintiff or caused someone to text Plaintiff. The only connection Plaintiff provides between Defendants and the text messages is that one of the text messages contained a link that led to an internet site run by Defendant 777 Brands where Plaintiff purchased a product sold by Defendant Mandu Wellness. While Plaintiff speculates that these facts mean that Defendants were responsible for the text messages, he does not controvert Defendants' affidavits disavowing having sent or directed others to send the messages.

**\*5** This court has dismissed several similar complaints filed by Plaintiff's counsel for lack of personal jurisdiction. In *Childress v. Deering*, for example, the court found it lacked specific personal jurisdiction over the defendant based on the defendant's affidavit that he never called the plaintiff or directed anyone to make the alleged phone calls. 2019 WL 409825, at \*4-5 (D.N.M.) ("*Childress II*"). Even though the plaintiff submitted

information showing that the address linked to the number used to call the plaintiff was identical to the defendant's address, the court found this was insufficient because neither the financially responsible party nor the user of the number was the defendant himself. *See id.* at \*5 ("The fact that Deering's address is associated with the phone number from which Childress received calls is insufficient to contradict Deering's affidavit."). Likewise, in *Arnold v. BPCL Mgm't LLC*, the court found it lacked personal jurisdiction where the defendant's representative provided a declaration stating the defendant "did not direct or control the alleged telephone calls to Plaintiff and did not employ any third parties to make outbound telemarketing calls of the kind Plaintiff alleged he received." 2017 WL 3534996, at \*1-6 (D.N.M.). As is the case here, the plaintiff in *Arnold* did not identify a dispute or "specify any statement in his Declaration that contradicts [the] representations that Defendant BPCL did not direct or control the alleged telephone calls to Plaintiff and did not employ any third parties to make outbound telemarketing calls of the kind Plaintiff alleges he received." *Id.* at \*4.

Plaintiff relies on *Mestas v. CHW Group Inc.*, where the court found it had personal jurisdiction over defendants in a TCPA suit based on the plaintiff allegations that multiple calls he received were from phone numbers that were "assigned to and controlled by" the defendants. 508 F.Supp.3d 1011, 1017 (D.N.M. 2020). In denying the defendants' motion to dismiss for lack of personal jurisdiction, the court emphasized that the defendants "have not submitted an affidavit or other written materials to controvert any of the factual allegations in the Amended Complaint" and, thus, "the jurisdictional findings in ... *Childress*, and *Arnold* are of little persuasive value here." *Id.* at 1020. Accordingly, the court accepted as true the plaintiff's allegations that connected the defendants to the calls and construed them in the light most favorable to Plaintiff. *See id.* ("This is not a case where Plaintiff merely conclusorily alleged corporate officers' involvement in authorizing a telemarketing scheme, or only surmised that the caller and the defendant were connected.") (citations and internal quotation marks omitted).[1] In contrast, the out-of-state Defendants here submitted affidavits denying any involvement with the text messages. Accordingly, the facts of this case align with *Childress II* and *Arnold*—not *Mestas*.

Plaintiff also points the Court to *Miceli v. Spinnaker Resorts*, where the court found a factual dispute as to whether the defendant maintained an agency relationship with the parties who made the telemarketing calls. 2021 WL 1122658, at \*1, 5 (D.N.M.). The plaintiff in *Miceli* received telemarketing calls from persons who sold him a vacation package with defendant Spinnaker Resorts.

Nelums v. Mandu Wellness, LLC, Not Reported in Fed. Supp. (2023)

While the defendant denied making the calls or having control over those who did, the court found a sufficient showing of a possible agency relationship between the callers and defendant because the callers stated they represented Spinnaker Resorts and plaintiff provided evidence that the marketing vendors and defendant may be part of the same family of companies. *Id.* at *3-4. The court, therefore, allowed plaintiff to conduct jurisdictional discovery into the agency relationship between the marketers and defendant. Regardless, the *Miceli* holding is distinguishable because Plaintiff here acknowledges the text messages did not identify Defendants. Plaintiff presents nothing similar to the evidence in *Miceli* that suggested the defendant's agents made the calls. Indeed, the court in *Miceli* emphasized that a credit card charge by a merchant associated with the defendant and evidence that the defendant operated a website associated with the vacation package, were "not sufficient to establish minimum contacts." *Id.* at 4.

**\*6** Based on the foregoing, the Court finds that Plaintiff has failed to demonstrate that the out-of-state Defendants have sufficient minimum contacts with New Mexico for the Court to exercise jurisdiction over them. Because the Court finds that minimum contacts are lacking, it does not address whether exercising personal jurisdiction over these Defendants would offend traditional notions of fair play and substantial justice. *See Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 965 (10th Cir. 2022) ("Here, because we ultimately conclude that Mr. Jayson does not have the minimum contacts necessary to support the exercise of specific jurisdiction over him in Wyoming, we need not determine whether the exercise of personal jurisdiction over Mr. Jayson would 'offend traditional notions of fair play and substantial justice.' ") (citation and internal brackets omitted). The Court, therefore, dismisses Plaintiff's claims against Defendants 777 Brands, LLC, Stickney, and Mandujan without prejudice, pursuant to Rule 12(b)(2) for lack of personal jurisdiction. *See*, *e.g.*, *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims.") (emphasis in original); *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216-17 (10th Cir. 2002) (stating that dismissal for lack of personal jurisdiction under Rule 12(b)(2) should be without prejudice).

**C. Jurisdictional Discovery**

The Court next considers Plaintiff's request "to conduct jurisdictional discovery so that a more satisfactory showing of the necessary facts can be made." (Doc. 11) at 7. "District courts are endowed with broad discretion over discovery, including whether to grant discovery requests with respect to jurisdictional issues." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1233 (10th Cir. 2020). The Tenth Circuit has made clear that "a district court does not abuse its discretion when it denies a general, unsupported motion for jurisdictional discovery." *World Wide Ass'n of Specialty Programs & Sch. v. Houlahan*, 138 Fed. Appx. 50, 52 (10th Cir. 2005). That is because "pure speculation as to the existence of helpful facts is insufficient, as a matter of law, to constitute the type of prejudice" required to justify jurisdictional discovery. *Dental Dynamics*, 946 F.3d at 1234. Plaintiff seeks discovery "about, for example, who may be directly liable for the texts and who is in possession of the lead-lists of other phone numbers these texts were sent to." (Doc. 11) at 8-9. However, Plaintiff does not explain how this additional discovery would support a finding of personal jurisdiction over the out-of-state Defendants, and Plaintiff merely speculates that Defendants even have this information. Accordingly, the Court denies Plaintiff's request for jurisdictional discovery. *See Arnold*, 2017 WL 3534996, at \*4 ("Plaintiff's request for discovery illustrates the problem he has in demonstrating this Court's specific personal jurisdiction over Defendant BPCL, namely that Plaintiff does not know who called him ... ."); *G.A. Resort Condo. Assoc., Inc. v. ILG, LLC*, 2020 WL 5536361, at \*9 (D. Colo.) (denying jurisdictional discovery request because the plaintiff failed "to present a sufficient factual predicate to support its argument that personal jurisdiction can be established through additional discovery"); *Sur-Tec, Inc. v. CovertTrack Grp., Inc.*, 2014 WL 1304909, at \*3 (D. Kan.) (denying motion for jurisdictional discovery because the plaintiff's allegations are "speculative and conclusory"); *cf. Miceli*, 2021 WL 1122658, at \*1, 5 (allowing jurisdictional discovery because the plaintiff offered evidence suggesting the defendant's subsidiaries were acting as its agents when they made the calls at issue, such as identifying themselves as representing the defendant).

**IV. Defendants' Motion to Dismiss for Failure to State a Claim**

Having found the Court lacks jurisdiction over the out-of-state Defendants, the Court next considers Defendants' Motion to Dismiss for failure to state a claim as to New Mexico Defendant Mandu Wellness, LLC.

Defendants ask the Court to find that Plaintiff failed to plausibly allege essential elements for his TCPA claims, such as that Defendants used an autodialer, that Defendants are directly or vicariously liable for the text messages, and that Plaintiff made an affirmative request to cease communications. (Doc. 4) at 10-33. Defendants contend Plaintiff's NMUPA claim fails for the same reasons as his TCPA claims. *Id.* at 33-35.

**\*7** In response, Plaintiff asks the Court to broadly apply the TCPA and NMUPA and find Defendants liable under these statutes for the text messages since they led to the website from which Plaintiff purchased Defendants' product. (Doc. 11) at 7-22. Plaintiff argues that Defendants are liable under the TCPA and NMUPA because they have been deceptive about who sent the text messages and how they are linked to the website from which they sell their product. *Id.* Plaintiff further states he has adequately plead all essential elements for his TCPA and NMUPA claims. *Id.* at 22-35.

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or speculative to plausible." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss. 556 U.S. at 678. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, Rule 8's pleading standard "does not unlock the doors of discovery for a

plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (citation omitted). In keeping with these two principles, the Court explained:

> A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.*

### B. Discussion

Plaintiff seeks to hold Defendants liable under the TCPA and NMUPA for an unspecified number of text messages sent from unidentified numbers by unidentified parties. Plaintiff alleges Defendants violated the TCPA, 47 U.S.C. § 227(b) and (c), because Defendants or Defendants' agents made telephone solicitations to Plaintiff using an auto-dialer despite the fact that Plaintiff's phone number is listed in the National Do-Not-Call Registry, and that Defendants violated the NMUPA, NMSA § 57-12-2(A), because the texts "cause confusion or misunderstanding as to the source of the goods offered in a manner that may, tends to or does deceive or mislead consumers." (Doc. 1-1) at 18-21. Section 227(b) of the TCPA forbids autodialed calls to a cellular phone without prior consent of the called party, and Section 227(c) prohibits calls to any subscriber on the do-not-call registry. 47 U.S.C. §§ 227(b)(1), (c)(3)(F). The NMUPA states in the relevant portion that: "A person shall not utilize an automated telephone dialing or push-button or tone-activated address signaling system with a prerecorded message to solicit persons to purchase goods or services unless there is an established business relationship between the persons and the person being called consents to hear the prerecorded message." NMSA 1978 § 57-12-22(A) "Without any guidance from New Mexico case law to interpret Sections 57-12-22(A) and (C), the Court uses the [TCPA] jurisprudence, as allowed under New Mexico law." *Dency v. Chartrand*, 2019 WL 719762, \*4 (D.N.M.) (citing NMSA § 57-12-14, "It is the intent of the legislature that in construing Section 3 of the Unfair Practices Act the courts to the extent possible will be guided by the

Nelums v. Mandu Wellness, LLC, Not Reported in Fed. Supp. (2023)

interpretations given by the federal trade commission and the federal courts.").

**\*8** Defendants assert that Plaintiff's Amended Complaint fails at the very first elements of the TCPA and NMUPA—that it was Defendants who sent the offending text messages. Defendants argue that Plaintiff's Amended Complaint is devoid of allegations that Defendants are directly or vicariously liable for the text messages, either by sending the text messages or through an agency relationship with the entity that sent the messages. With regard to direct liability, the plain language of the TCPA "imposes liability upon persons that 'make' a telephone call or text." *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at \*2 (D.N.M.) ("*Childress I*") (citing *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at \*4 (S.D.N.Y.)). Courts interpreting this provision "have held that the verb 'make' imposes civil liability only on the party that places the call or text." *Id.* (citing *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 135 (E.D.N.Y. 2015) ("By its terms, 47 U.S.C. § 227(b)(1)(A)(iii), assigns civil liability only to the party who 'makes' a call."); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), aff'd, 582 Fed. Appx. 678 (9th Cir. 2014) ("The plain language of the TCPA assigns civil liability to the party who 'makes' a call" and '[d]irect liability is inapplicable here as the parties do not dispute that the actual sender of the text was ... a separate provider of text-message based services.")). Plaintiff's Amended Complaint contains no factual allegations that Defendant Mandu Wellness actually sent the text messages, and Plaintiff acknowledges he does not know who sent them. *See* (Doc. 11) at 11 ("The standardized texts Plaintiff received, prior to his purchase, never identified any seller or sponsor of the texts and never provided any means that Plaintiff noticed for a recipient of the texts to make a do-not-call request."). Accordingly, Plaintiff does not state a claim for direct liability against Defendant Mandu Wellness.

Regarding vicarious liability, "[a] defendant is vicariously liable for violations of the TCPA where common law principles of agency would impose it." *Childress I*, 2018 WL 4684209, at \*3 (citing *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) (actions under the TCPA "incorporate federal common law agency principles of vicarious liability" as derived from the Restatement (Third) of Agency)). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Id.* (quoting Restatement (Third) of Agency, § 1.01 (2006)).

"[T]o plead vicarious liability under the TCPA in accordance with traditional tort principles, Plaintiff must allege *some* facts regarding the relationship between an alleged principal and agent ... and cannot simply allege general control in a vacuum." *Id.* (citation omitted, emphasis in original); *see also Mohon v. Nat'l Cong. of Employers Inc.*, 2020 WL 1332376, at \*6 (D.N.M.) ("New Mexico Law recognizes vicarious liability and agency theory.") (citation omitted).

According to Plaintiff, the text messages he received did not identify who sent them but, instead, "were designed to arouse the viewer's prurient interest in Defendants' Alpha State 'male enhancement support' product." (Doc. 1-1) at 13. While Plaintiff states he followed a link sent in one of the text messages, which led to an internet site run by Defendant 777 Brands where he purchased a product sold by Defendant Mandu Wellness, Plaintiff does not allege any specific facts regarding a relationship between Defendant Mandu Wellness and any individual or entity allegedly responsible for sending the text messages. Plaintiff does not allege facts regarding a relationship between Defendant Mandu Wellness and an agent who sent the messages or that Defendant Mandu Wellness exerted control over the initiator of the messages. Instead, Plaintiff's statements regarding Defendants' vicarious liability and responsibility for the text messages are not factual allegations—they are legal conclusions that merely recite the elements required to demonstrate an agency relationship. *See, e.g.*, (Doc. 1-1) at 12 ("Defendants [...] direct, supervise and implement telemarketing including that unlawfully directed at Plaintiff" and "do not require any of their marketers ('affiliates') to subscribe to or comply with the Registry [and] consciously avoid knowing whether any affiliate subscribes to or complies with the Registry."). The case law is clear that such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice to state a claim and are insufficient to establish an agency relationship between the sender of the text messages and Defendants. *Iqbal*, 556 U.S. at 678.

**\*9** The Court finds instructive the holding in *Childress I*, where the court rejected the plaintiff's vicarious liability argument and dismissed the plaintiff's TCPA claims. 2018 WL 4684209, at \*4. There, the initial telemarketer transferred the plaintiff to the defendant's in-house representative to complete the purchase of a product. The court found these facts insufficient to establish that the defendant exerted control over the initiator of the call, supervised or controlled the initial call, or maintained any sort of relationship with the initiator of the call. *Id.* at \*4-5. Consequently, the court found no factual basis to support a finding that the defendant was vicariously liable

for the initial call, had the authority or responsibility to prevent or correct the unlawful telemarketing practices, or ratified the unlawful telemarketing. *Id.*

Again in *Barker v. Sunrun, Inc.*, the court granted the defendant's motion to dismiss under Rule 12(b)(6) where the plaintiff made "no factual allegation in the Complaint that connects or fairly traces the phone calls at issue to Sunrun," and instead the plaintiff "only states that he has sworn statements that connect the actions to Sunrun." 2019 WL 1983291, *3 (D.N.M.). The calls in *Barker* were made by various telemarketers who identified themselves as working for companies other than Sunrun. When the plaintiff finally agreed to a meeting at his home, a representative from Sunrun arrived at the appointed time. *Id.* at *2. Considering these facts and the alleged sworn statement (which the plaintiff did not attach to his complaint), the court found the plaintiff failed to sufficiently allege that it was Sunrun who made or directed the calls and, therefore, failed to state a claim under the TCPA or NMUPA. *See id.* at *3 ("Plaintiff's alleged connection, that the offending calls were directed by or at the behest of Sunrun and that these callers were in an alleged agency relationship with Sunrun, constitutes a legal conclusion. As such it cannot be presumed to be true under a 12(b)(6) analysis and, therefore, fails."); *see also Reo v. Carribbean Cruise Line, Inc.*, 2016 WL 1109042, at *5 (N.D. Ohio) (dismissing TCPA vicarious liability claim where "the sparse allegations made did not allege any facts that show that defendant had any power to give interim instructions or otherwise had any control over the performance of" alleged third-party callers); *Bank v. Alliance Health Networks, LLC*, 2015 WL 4645317, at *1 (E.D.N.Y.), aff'd, 669 Fed. Appx. 584 (2d Cir. 2016) (complaint in which plaintiff "alleged merely that the calls at issue were made by, or on behalf of, or with the authorization of the defendants" was insufficient to state a vicarious liability claim); *Panacci v. A1 Solar Power, Inc.*, 2015 WL 3750112, at *7 (N.D. Cal.) (complaint dismissed for failure to state a TCPA vicarious liability claim where plaintiff did not allege that defendant "controlled, authorized, or even knew about [the third party's] phone calls, or that [defendant] had any control over" the third-party caller and had "virtually no allegations regarding the relationship between [the defendant] and [the third party]").

Plaintiff's Amended Complaint has the same defects as those in *Childress I* and *Barker* because he does not assert factual allegations regarding the relationship between Defendants and the unknown sender or senders of the text messages. Because Plaintiff fails to satisfy the first elements of the TCPA and NMUPA—that Defendants

were directly or vicariously liable for the text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements of the statutes. *See Barker*, 2019 WL 1983291, at *4 (declining to address other arguments for dismissal after finding plaintiff did not adequately plead defendant was liable for the phone calls). The Court, therefore, grants the Motion to Dismiss under Rule 12(b)(6) for failure to state a claim for relief as to Defendant Mandu Wellness, LLC. Since Plaintiff has already amended his complaint once, and does not ask for leave to amend a second time, the Court finds it is appropriate to dismiss Plaintiff's claims against Defendant Mandu Wellness with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."), citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir.1997); *see also Childress I*, 2018 WL 4684209, at *5 (dismissing case with prejudice for failure to state a claim).

### V. **Conclusion**

**\*10** For the reasons stated above, the Court finds that it does not have jurisdiction over the out-of-state Defendants 777 Brands, Stickney, and Mandujan, and that Plaintiff has not sufficiently alleged claims for relief against Defendant Mandu Wellness.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Exceed Page Limits, (Doc. 12), is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, (Doc. 4), is GRANTED. Plaintiff's claims against Defendants 777 Brands, LLC, Stickney, and Mandujan are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction, and Plaintiff's claims against Defendant Mandu Wellness, LLC are DISMISSED WITH PREJUDICE for failure to state a claim.

IT IS SO ORDERED.

### **All Citations**

Not Reported in Fed. Supp., 2023 WL 5607594

Footnotes

**Nelums v. Mandu Wellness, LLC, Not Reported in Fed. Supp. (2023)**

---

1    The facts in *Mestas* further differ from this case because the plaintiff there alleged he was transferred from a telemarketer to the in-house call center for the defendant and then received two subsequent calls in which the telemarketer "identified the seller or sponsor of the calls as [the defendant]." 508 F.Supp.3d at 1017.

---

**End of Document**                                         © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

KeyCite citing references available
2019 WL 5212961
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Lawrence PASCAL, Plaintiff,
v.
AGENTRA, LLC, et al., Defendants.

Case No. 19-cv-02418-DMR
|
Signed 10/16/2019

**Attorneys and Law Firms**

Mark Louis Javitch, San Mateo, CA, for Plaintiff.

William Scott Richmond, Pro Hac Vice, Laura Elizabeth Brandt, Pro Hac Vice, Platt Cheema Richmond PLLC, Dallas, TX, Megan A. Shapiro, Radoslovich Krogh, PC, Sacramento, CA, for Defendant Agentra, LLC.

William Scott Richmond, Pro Hac Vice, Laura Elizabeth Brandt, Pro Hac Vice, Platt Cheema Richmond PLLC, Dallas, TX, for Defendant Data Partnership Group, LP.

David L. Emerzian, Timothy John Buchanan, McCormick Barstow Sheppard Wayte & Carruth, LLP, Fresno, CA, for Defendant I. Health and Life Insurance Services.

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 20

Donna M. Ryu, United States Magistrate Judge

**\*1** Defendants Agentra, LLC ("Agentra") and Data Partnership Group, LP ("DPG") move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Lawrence Pascal's first amended complaint. [Docket No. 20.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion is granted.

**I. BACKGROUND**

In this putative class action, Plaintiff challenges Defendants Agentra, DPG, and I Health and Life Insurance Services's ("IHL") alleged practice of making unauthorized phone calls to telephones of consumers nationwide and playing artificial or prerecorded voice messages. Plaintiff makes the following allegations in the first amended complaint ("FAC"), all of which are taken as true for purposes of this motion.[1]

Agentra is a Texas company that sells health insurance plans. DPG provides financing and/or administration services for Agentra's plans, and IHL is an authorized sales agent for Agentra and DPG's products and services. [Docket No. 17 (FAC) ¶¶ 20, 27-29.] Defendant Doe is a company that performs robocalls, or "artificial or prerecorded voice message telemarketing calls" to cellular and residential phones. Id. at ¶¶ 2, 3, 30. IHL hired Doe on behalf of Agentra and DPG to market their products and services. Id. at ¶ 31. Doe "placed robocalls on a mass scale to generate sales for IHL's health insurance products and services from Agentra and [DPG]" without the recipients' consent. Id. at ¶¶ 33, 37.

On April 4, 2019, Plaintiff received a call on his cell phone from Doe at the number 970-713-2254. Id. at ¶¶ 38-39. When he answered the call, he heard an artificial or prerecorded voice "advertising lower rates on health insurance" and instructing Plaintiff to "press one" to speak to a representative. After he "pressed one," Plaintiff was connected to a representative who hung up on him when he asked the name of the company calling. Id. at ¶¶ 40-41. In order to identify the caller, Plaintiff called 970-713-2254 and "heard a message indicating that the company was selling health insurance." Plaintiff then asked his attorney to investigate the call. Plaintiff's attorney called the number 970-713-2254 and spoke with a live representative who "solicited a health plan" and refused to disclose "the name of the company." Id. at ¶¶ 42-46. Plaintiff's attorney then purchased a health insurance policy from the representative, and "immediately received an email identifying Defendants Agentra and IHL, copying the email address 'support@ilifeandhealth.com' stating 'Welcome to Agentra Healthcare Solutions' and assigning" a member identification number. In a welcome letter, DPG "indicated it would be providing financing and/or

administration for billing purposes." *Id.* at ¶¶ 48, 49. Plaintiff never consented to receive calls from any of the defendants. *Id.* at ¶ 50. He alleges that "Agentra, IHL and [DPG] knowingly and actively accepted business that originated through the illegal telemarketing calls placed by John Doe 1." *Id.* at ¶ 64.

**\*2** Plaintiff brings two claims against Defendants on behalf of himself and a class and subclass of individuals: 1) violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; and 2) violation of the California Consumers Legal Remedies Act, California Civil Code section 1770(a)(22)(A).

Defendants Agentra and DPG now move to dismiss the TCPA claim.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

## III. DISCUSSION

### A. TCPA Claim

The TCPA makes it unlawful for any person in the United States

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call....

47 U.S.C. § 227(b)(1)(A)(iii). It also makes it unlawful for any person in the United States "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party," subject to certain exceptions. 47 U.S.C. § 227(b)(1)(B).

"The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)). "For a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, at \*4 (N.D. Cal. Jan. 4, 2018) (citing *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014)); *see Thomas v. Taco Bell Corp.*, 582 Fed. Appx. 678, 679 (9th Cir. 2014) ("[t]here are two potential theories of liability [for a section 227(b) violation]: (1) direct liability; and (2) vicarious liability.").

**\*3** Agentra and DPG move to dismiss the TCPA claim, arguing that the FAC does not allege that either of them made the calls in question and does not plausibly allege their liability for the calls under a vicarious liability theory. In response, Plaintiff concedes that Agentra and DPG did not make the calls in question and so are not directly liable under the TCPA. Instead, he contends that Agentra and DPG are vicariously liable for the calls.

"[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez*, 768 F.3d at 879. Three common law agency theories may provide a basis for vicarious liability for violations of section 227(b): actual authority, apparent authority, and ratification. *See Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 448-49 (9th Cir. 2018) (describing "bedrock theories of agency" through which "a principal can be held liable for the legal consequences of its agent's

conduct"); *Thomas*, 582 Fed. Appx. at 679 (citing *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6590 n.124 (2013)).

Plaintiff contends that Agentra and DPG face liability under each of those theories of vicarious liability. Opp'n 3-8.

## 1. Actual Authority

In order to establish that Doe had "actual authority" to place calls on behalf of Agentra and DPG, Plaintiff must establish both an agency relationship *and* "actual authority to place the unlawful calls." *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement (Third) of Agency § 1.01 (Am. Law Inst. 2006)); *see also United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010) ("To form an agency relationship, both the principal and the agent must manifest assent to the principal's right to control the agent."). For an agency relationship to exist, an agent must have authority to act on behalf of the principal and the principal must have the right to control the principal and the principal must have the right to control the agent's actions. *Mavrix*, 873 F.3d at 1054. Further, "[a]gency means more than mere passive permission; it involves request, instruction, or command." *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085 (C.D. Ca. 2012) (quoting *Klee v. United States*, 53 F.2d 58, 61 (9th Cir. 1931)). "Although the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014). As to "actual authority to place the unlawful calls," the Ninth Circuit has held that "[a]ctual authority is limited to actions 'specifically mentioned to be done in a written or oral communication' or 'consistent with' a principal's 'general statement of what the agent is supposed to do.'" *Jones*, 887 F.3d at 449.

The court concludes that the FAC does not sufficiently allege the existence of an agency relationship between Agentra and/or DPG on the one hand and Doe, the purported caller, on the other. Nor does the operative complaint allege facts supporting an inference that Doe had "actual authority" to make the robocalls on their behalf. In order to allege actual authority, Plaintiff must allege facts showing that Agentra and DPG controlled or had the right to control Doe; that Agentra, DPG, and Doe "manifest[ed] assent" to their right to control Doe, *see Mavrix*, 873 F.3d at 1054; and that Agentra and DPG either communicated a direction to Doe to engage in robocalls or the robocalls were "consistent with" Agentra and DPG's "general statement of what [Doe] [was] supposed to do." *See Jones*, 887 F.3d at 449. Here, the only allegations in the FAC connecting Agentra or DPG with Doe are that IHL, as Agentra and DPG's authorized sales agent, hired Doe "to market [Agentra and DPG's] products and services" by "call[ing] thousands of phones at a time using an artificial or prerecorded voice message." FAC ¶¶ 31-32. The FAC also contains the conclusory allegation that "Agentra, IHL, and [DPG] knowingly and actively accepted business that originated through the illegal telemarketing calls placed by John Doe 1." *Id.* at ¶ 64. These allegations are insufficient to support a theory of agency liability based on actual authority.

## 2. Apparent Authority

**\*4** Apparent authority is an agency theory by which "a principal can be held liable for the legal consequences of its agent's conduct" where the agent "act[s] with apparent authority in its dealings with a third party purportedly on behalf of the principal[.]" *Jones*, 887 F.3d at 449. "Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question." *N.L.R.B. v. Dist. Council of Iron Workers of the State of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997) (citing *N.L.R.B. v. Donkin's Inn*, 532 F.2d 138, 141 (9th Cir. 1976)); *see also* Restatement (Third) of Agency 2.03 (2006) ("[a]pparent authority is the power held by an agent ... to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."). The Ninth Circuit has explained that "[a]pparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have." *Donkin's Inn*, 532 F.2d at 141 (quoting *Hawaiian Paradise Park Corp. v. Friendly Broadcast Co.*, 414 F.2d 750, 756 (9th Cir. 1969)). Examples of manifestations that give rise to apparent authority include

[the principal's] direct statements to the third person,

directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts and conduct negotiations under circumstances which create in him a reputation of authority in the area which the agent acts and negotiates.

*Donkin's Inn*, 532 F.2d at 141 (quoting *Hawaiian Paradise*, 414 F.2d at 756).

Apparent authority "must be established by proof of something said or done by [the principal] on which [a third party] reasonably relied"; it "cannot be established merely by showing that [the purported agent] claimed authority or purported to exercise it." *Dist. Council*, 124 F.3d at 1099. "Apparent authority exists only as to those to whom the principal has manifested that an agent is authorized. There is, therefore, tort liability only if such a manifestation and its execution by the apparent agent results in harm." *Thomas*, 582 Fed. Appx. at 679 (quoting Restatement (Second) of Agency § 265 cmt. *a* (1958)).

Here, the FAC does not plead sufficient facts to support an apparent authority theory that Agentra and/or DPG is vicariously liable for the allegedly illegal telemarketing calls. *See Thomas*, 582 Fed. Appx. at 679-80; *see, e.g., Canary v. Youngevity Int'l, Inc.*, No. 5:18-cv-03261-EJD, 2019 WL 1275343, at *8 (N.D. Cal. Mar. 20, 2019) (holding plaintiff failed to plead apparent authority theory where he "does not allege that he reasonably relied upon something said or done by [defendant] to his detriment").[2]

### 3. Ratification

Finally, Plaintiff asserts a ratification theory of agency. Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting Restatement (Third) of Agency § 4.01(1)). "Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Thomas*, 582 Fed. Appx. at 680 (quoting *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003) (footnote omitted)). As discussed above, the FAC fails to sufficiently allege an agency relationship between Agentra and/or DPG on the one hand and Doe, the purported caller, on the other. It also fails to allege facts that support the affirmance by Agentra and/or DPG of a prior act done by Doe. Therefore, it does not state a ratification theory of agency.

**\*5** In sum, the TAC does not sufficiently allege facts giving rise to a plausible inference that Agentra and/or DPG "made" the calls under the meaning of the TCPA. Accordingly, Plaintiff's section 227(b) claims are dismissed without prejudice.

### B. CRLA Claim

The CLRA makes unlawful:

Disseminating an unsolicited prerecorded message by telephone without an unrecorded, natural voice first informing the person answering the telephone of the name of the caller or the organization being represented, and either the address or the telephone number of the caller, and without obtaining the consent of that person to listen to the prerecorded message.

Cal. Civ. Code § 1770(a)(22)(A).

In their opening brief, Defendants make no reference to Plaintiff's CLRA claim. On reply, they argue that the CLRA claim is premised on the same vicarious liability theory as the TCPA claim, and that the arguments in favor of dismissal of the TCPA claim apply to the CLRA claim. *See* Reply 7. While it is improper to raise arguments for the first time on reply, as noted above, Plaintiff does not allege that Agentra and/or DPG made the calls in question. Accordingly, Plaintiff's vicarious liability theory applies equally to the CLRA claim. For the same reasons discussed above, the FAC does not sufficiently state a vicarious liability theory as to Agentra and DPG. Accordingly, the CLRA claim is dismissed with leave to amend.

### IV. CONCLUSION

For the foregoing reasons, Agentra and DPG's motion to dismiss the TCPA and CRLA claims is granted with leave to amend. Any amended complaint must be filed within 14 days of the date of this order.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5212961

Pascal v. Agentra, LLC, Not Reported in Fed. Supp. (2019)

---

Footnotes

1    When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

2    It is not clear whether a party seeking to plead an apparent authority theory of liability must also sufficiently allege an agency relationship. While the Ninth Circuit has expressly held that a party must establish an agency relationship in order to maintain theories of actual authority and ratification under the TCPA, *see Jones*, 887 F.3d at 449, and *Thomas*, 582 Fed. Appx. at 680 (quoting *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003)), the court's own research did not yield a definitive answer to this question with respect to apparent authority. The Restatement (Third) of Agency suggests that an agency relationship is not a requisite to establish apparent authority: "The definition in this section does not presuppose the present or prior existence of an agency relationship ... [t]he definition thus applies to actors who appear to be agents but are not, as well as to agents who act beyond the scope of their actual authority." Restatement (Third) of Agency § 2.03 (2006).

---

**End of Document**                                  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Rogers v. Assurance IQ, LLC, Not Reported in Fed. Supp. (2023)

**H** KeyCite history available

2023 WL 2646468
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington,
at Seattle.

Joseph ROGERS, Debra Jones
Stevenson, Frank Garrido, Taylor
Armiger, and Gwendolyn Thompson, on
behalf of themselves and all others
similarly situated, Plaintiffs,
v.
ASSURANCE IQ, LLC and
Boomsourcing, LLC, Defendants.

Case No. 2:21-cv-00823-TL
|
Signed March 27, 2023

**Attorneys and Law Firms**

Andrew Heidarpour, Pro Hac Vice, Heidarpour Law Firm
PLLC, Washington, DC, Anthony Paronich, Pro Hac
Vice, Paronich Law PC, Hingham, MA, Timothy J.
Sostrin, Pro Hac Vice, Keogh Law Ltd, Chicago, IL,
Samuel J. Strauss, Turke & Strauss LLP, Madison, WI,
for Plaintiffs Gwendolyn Thompson, Joseph Rogers,
Debra Jones Stevenson, Taylor Armiger, Frank Garrido.

John David Du Wors, Newman Du Wors LLP, Seattle,
WA, Mark A. Silver, Pro Hac Vice, Nathan L. Garroway,
Pro Hac Vice, Dentons U.S. LLP, Atlanta, GA, for
Defendant Assurance IQ LLC.

John David Du Wors, Newman Du Wors LLP, Seattle,
WA, for Defendant Boomsourcing LLC.

Order Granting in Part and Denying in Part Motions to
Dismiss

Tana Lin, United States District Judge

**\*1** This matter comes before the Court on motions to
dismiss filed by Defendant Assurance IQ, LLC (Dkt. No.

55) and Defendant Boomsourcing, LLC (Dkt. No. 59),
respectively. Plaintiffs Joseph Rogers, Debra Jones
Stevenson, Frank Garrido, Taylor Armiger, and
Gwendolyn Thompson filed this putative class action
under the Telephone Consumer Protection Act ("TCPA"),
47 U.S.C. § 227, et seq., after having allegedly received
illegal telemarketing calls for Assurance IQ's insurance
services from Boomsourcing and another vendor. Having
considered the relevant record and governing law and
finding oral argument unnecessary (see LCR 7(b)(4)), the
Court grants the motions in part with leave to amend and
denies them in part.

**I. Background**

Plaintiffs filed their original complaint in June 2021 (Dkt.
No. 1) and filed the operative complaint ("Second
Amended Complaint") in April 2022 (Dkt. No. 48). Each
plaintiff alleges receiving, without consent, pre-recorded
telemarketing calls from insurance company Assurance
IQ on their cellphones or residential landlines between
late 2020 and mid-2021. Dkt. No. 48 ¶¶ 27, 33, 37–40,
43, 46–50, 54–55, 58–61, 64, 68–73, 75–82. Plaintiffs
Rogers and Thompson also allege that they received these
calls from Assurance IQ despite having their numbers
registered on the National Do Not Call Registry ("the
DNC list"). Id. ¶¶ 34, 65.

Plaintiffs claim that Defendant Boomsourcing contracted
with Assurance IQ and seek to hold it liable as a
vendor/platform provider that made calls on Assurance
IQ's behalf. Id. ¶¶ 9, 16. According to the complaint,
Boomsourcing "physically dialed th[e] calls" to Plaintiffs
Rogers, Stevenson, Thompson, and Armiger. Id. ¶¶ 39,
49, 72, 81. Plaintiffs further allege that Assurance IQ
hired non-defendant Torchlight Technology Group LLC
to generate new insurance leads and that a call center used
by Torchlight Technology placed a pre-recorded voice
call to Plaintiff Garrido. Id. ¶¶ 55–58, 96.

Plaintiffs seek to represent two nationwide classes. Id. ¶
102. Their proposed Robocall Class includes all persons
within the United States who received a pre-recorded
voice telemarketing call from Assurance IQ (or a third
party acting on Assurance IQ's behalf) to their residential
or cellular telephone numbers in the four years preceding
the complaint "after obtaining the telephone number from
the same source from which it obtained Plaintiff's phone
numbers." Id. ¶ 103. Their proposed National Do Not Call
Registry Class includes all persons within the United
States who received more than one telemarketing call

within a twelve-month period from Assurance IQ (or a third party acting on Assurance IQ's behalf) in the four years preceding the complaint "after obtaining the telephone number from the same source from which it obtained Plaintiff's phone numbers" even though their telephone numbers had been on the DNC list for at least thirty-one days. *Id.* ¶ 104.

## II. Legal Standards

### A. Motions to Dismiss

When a plaintiff "fails to state a claim upon which relief can be granted," the defendant may move for dismissal. Fed. R. Civ. P. 12(b)(6). In reviewing a 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 672. "When reviewing a dismissal pursuant to Rule ... 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.' " *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

**\*2** A motion to dismiss may also be brought where subject matter jurisdiction is lacking. *See* Fed. R. Civ. P. 12(b)(1). The Court must dismiss a case if it determines that it lacks subject matter jurisdiction "at any time." Fed. R. Civ. P. 12(h)(3).

### B. The TCPA

Congress passed the TCPA to curb abusive telemarketing practices following the development of automated technology that could make calls using artificial or pre-recorded voices ("robocalls"). *See Facebook v.*
*Duguid*, 141 S. Ct. 1163, 1167 (2021). The Federal Communications Commission ("FCC") is authorized to issue regulations regarding the TCPA. As relevant here, the TCPA prohibits (1) use of a pre-recorded voice in telemarketing calls to residential phones without prior express consent of the called party, 47 U.S.C. § 227(b), and (2) telemarketing calls to residential telephone subscribers on the DNC list, 47 U.S.C. § 227(c); *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2018). The TCPA provides individuals who receive prohibited calls a private right of action to sue for damages. *See* 47 U.S.C. §§ 227(b)(3), (c)(5). Only the caller and individuals or entities in an agency relationship with the caller can be held liable. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014), *aff'd*, 577 U.S. 153, 168 (2016). Violators must pay $500 in damages—an amount that can be tripled at the court's discretion if the violation was knowing or willful—for each infringing call. 47 U.S.C. §§ 227(b)(3), (c)(5).

## III. Discussion

Defendants present seven independent arguments for dismissal.

### A. Use of a Pre-recorded Voice

Defendants seek dismissal of the first cause of action, a claim under 47 U.S.C. § 227(b) for delivery of pre-recorded telemarketing messages to cellular and residential telephone numbers. Dkt. No. 55 at 6–7; Dkt. No. 59 at 20–22.

#### 1. Requests for Judicial Notice

As a preliminary matter, Plaintiffs ask the Court consider evidence not included in the complaint in assessing the adequacy of this claim. Dkt. No. 56 at 3; Dkt. No. 63 at 6–7.

Generally, a district court may only consider the pleadings when ruling on a 12(b)(6) motion to dismiss; otherwise, it must convert the motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, courts may properly consider the following extrinsic

evidence when ruling on a 12(b)(6) motion: (1) "material which is properly submitted as part of the complaint"; (2) documents not physically attached to the complaint on which the complaint "necessarily relies" and whose authenticity is not contested; and (3) matters of public record. *Id.* at 688–89; *accord Allen v. Wilmington Trust, N.A.*, 735 F. App'x 422, 423 (9th Cir. 2018). A court may consider unattached documents on which a complaint "necessarily relies" where: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claims, and (3) no party questions the authenticity of the document." *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) (citations omitted). Matters of public record may be judicially noticed so long as they are not "subject to reasonable dispute." *Id.* (quoting Fed. R. Evid. 201(b) and *Lee v. City of Los Angeles*, 250 F.3d at 689). A fact is not subject to reasonable dispute if it is (1) "generally known" within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

**\*3** The Court declines to take judicial notice of "Assurance's own filings with the Federal Communications Commission" that apparently confirm Assurance IQ's strategy of marketing its insurance services through use of pre-recorded voice messages, as Plaintiffs urge in their response brief. *See* Dkt. No. 56 at 3. Such filings may be judicially noticed as matters of public record. However, Plaintiffs neither attached the relevant FCC filings nor adequately described them to enable the Court to locate them or gauge their significance. The Court is not required to do Plaintiffs' work for them. *See, e.g., Banks v. ACS Education*, 638 F. App'x 587, 589 n.1 (9th Cir. Jan. 4, 2016) (denying motion for judicial notice where appellant did not "identify or attach the documents or explain their relevance to his case").

Similarly, the Court declines to take judicial notice of a page of Boomsourcing's website that Plaintiffs argue confirms its use of pre-recorded calls merely because Boomsourcing purports to place calls using soundboard technology. *See* Dkt. No. 56 at 3. Not only have Plaintiffs failed to demonstrate that the webpage is an appropriate subject for judicial notice, but the Court is also unwilling to make the inferential leap that *any* use of soundboard technology necessarily entails placement of pre-recorded voice calls in violation of the TCPA.

## 2. Adequacy of the Factual Allegations

To plead a TCPA claim under § 227(b), Plaintiffs must allege the following elements: (1) a defendant called their cellular or residential phone numbers, (2) using an artificial or pre-recorded voice, (3) without their prior express consent. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). Defendants contend that Plaintiffs have merely made "naked assertions" regarding use of a pre-recorded voice. Dkt. No. 59 at 21; *see also* Dkt. No. 55 at 6–7. Specifically, Plaintiffs have alleged the following:

- "One of Assurance IQ's strategies for marketing its insurance services includes the use of prerecorded messages" (Dkt. No. 48 ¶ 28);

- "Assurance IQ engages in prerecorded calls to solicit new customers" (*id.* ¶ 29);

- "To send those pre-recorded calls, Assurance IQ uses third parties, such as Boomsourcing" (*id.* ¶ 30);

- Each plaintiff received at least one call that "used" or "began with a prerecorded message regarding the sale of insurance" (*id.* ¶¶ 40, 50, 58, 71, 79);

- The calls to Plaintiffs Stevenson, Thompson, and Armiger "advertise[d] healthinsurance.net, which is owned and operated by Assurance" (*id.* ¶¶ 51, 73, 82);

- In the call to Plaintiff Garrido, "[t]he company wasn't identified in the prerecorded message" (*id.* ¶ 59);

- "Other individuals have indicated that they have received similar unwanted calls" from Assurance, citing an online complaint by a non-plaintiff stating that "[t]he # that calls is a local # and the automated voice mail is considered not wanted and harassments" (*id.* ¶ 84); and

- "Assurance IQ has received multiple complaints about their prerecorded calling process, including from state attorneys general" (*id.* ¶ 86).

Even accepting all of these allegations as true, they do not provide insight into why Plaintiffs believe the calls made to them were pre-recorded beyond simply stating that they were. "In reviewing TCPA complaints which echo or recite the Act's statutory language, some courts have struggled with whether a particular allegation is a legal conclusion[,] a fact[,] or both." *Vaccaro v. CVS Pharmacy*, No. C13-174, 2013 WL 3776927, at *2 n.4 (S.D. Cal. July 16, 2013).

District courts within the Ninth Circuit have taken varied

approaches on what is required to properly allege a TCPA claim regarding pre-recorded calls. A minority have found barebones allegations of a pre-recorded call to be sufficient. *See, e.g., Vaccaro*, 2013 WL 3776927, at *2 ("That the calls were made using an artificial or prerecorded voice is a factual allegation rather than a legal conclusion."); *but see Rahimian v. Adriano*, No. C22-2189, 2022 WL 798371, at *2 (D. Nev. Mar. 16, 2022) (explaining that most courts in California have required specific facts to support the conclusion that defendants used a pre-recorded voice and calling a decision adopting *Vaccaro*'s reasoning "an outlier"). More recently, courts within the Ninth Circuit have required plaintiffs to plead "circumstances that could support an inference that the calls were placed with ... an artificial or prerecorded voice." *Caruso v. Cavalry Portfolio Servs.*, No. C19-1224, 2019 WL 4747679, at *4 (S.D. Cal. Sept. 30, 2019); *see also Rahimian*, 2022 WL 798371, at *3 (dismissing TCPA pre-recorded voice claim because "[w]ithout further specifics, Plaintiff's allegation is conclusory."); *Winters v. Quicken Loans*, No. C20-112, 2020 WL 592002, at *4 (S.D. Ariz. Sept. 4, 2020) (same); *Daniels v. ComUnity Lending, Inc.*, No. C13-488, 2015 WL 541299, at *7 (S.D. Cal. Feb. 9, 2015) (dismissing complaint alleging "that calls to Plaintiffs['] cellular telephones included prerecorded voice calls.... [without any] facts to make this allegation plausible").

**\*4** Even at this pre-discovery stage, Plaintiffs should be able to allege facts establishing that the calls were in-fact pre-recorded, such as the "tenor, nature, or circumstances of the alleged calls," *Manopla v. Sansone Jr.'s 66 Automall*, C17-16522, 2020 WL 1975834, at *2 (D.N.J. Jan. 10, 2020), or otherwise demonstrate that a live human was not speaking during the calls. This information is known to Plaintiffs without any discovery. For example, "[a] TCPA plaintiff could describe the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the 'person' calling him, the generic content of the message he received, or anything else about the circumstances of a call or message contributing to his belief it was pre-recorded." *Johansen v. Vivant, Inc.*, No. C12-7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012).

The Court holds that Plaintiffs have failed to state a claim under 47 U.S.C. § 227(b).

## B. The Do Not Call Claim

A National Do Not Call registry claim can be made by residential telephone subscribers who have registered their phone numbers on the DNC list. 47 U.S.C. § 227(c)(5). Defendants argue that Plaintiffs have failed to allege: (1) that their phone numbers are used for residential purposes; and (2) that they placed their own numbers on the DNC list (as opposed to someone else placing their numbers on the list). Dkt. No. 55 at 6–8; Dkt. No. 59 at 22–24.

The Court agrees with Defendants. Again, this information is known to Plaintiffs without any discovery and should be simple to include. "A plaintiff is the master of his complaint and responsible for articulating cognizable claims." *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021). Plaintiffs chose to use the passive voice to allege that both Plaintiffs Rogers' and Thompson's phone numbers were "registered on the National Do Not Call Registry." Dkt. No. 48 ¶¶ 34, 65. However, the numbers could have been registered by previous owners of those numbers rather than by Plaintiffs themselves. Plaintiffs further chose to describe that the telephone numbers were for "personal use" (*id.* ¶¶ 35, 66), which does not necessarily equate with residential use. The statute invoked by Plaintiffs specifically applies to subscribers of "residential" phones. 47 U.S.C. § 227(c)(5). These are facts that are easily within the knowledge of Plaintiffs and can be pleaded to remove any doubt about whether Plaintiffs Rogers and Thompson actually registered their own numbers on the DNC list and whether those numbers are for residential use. For example, Plaintiffs made such an allegation with respect to Plaintiff Stevenson, whose number they described as "a residential landline" (*see* Dkt. No. 48 ¶ 43) but failed to do the same for Plaintiffs Rogers and Thompson. While the Court construes all inferences in Plaintiffs' favor, the conclusory allegations simply require too many inferential leaps as currently drafted.

The Court holds that Plaintiffs have failed to state a claim under 47 U.S.C. § 227(c).

## C. Theories of Liability

### 1. Direct Liability

Defendant Boomsourcing contends that as a matter of law, as well as based on the facts pleaded, it cannot be held directly liable under the TCPA. Dkt. No. 59 at 6–11. Generally, " '[u]sers of [telecommunications] services, not the carriers providing the services, [are] held liable'

under the TCPA." *Kauffmann v. CallFire, Inc.*, 141 F. Supp. 3d 1044, 1047 (S.D. Cal. 2015) (citations omitted). This exemption does not apply where a carrier or calling service platform provider (1) "took the steps necessary to physically place the call" or (2) "was so involved in placing the call so as to be deemed to have initiated it." *In re Rules & Reguls. Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 7980 (2015) ("2015 FCC Order"), *set aside in part on other grounds*, *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).

**\*5** A platform provider may be held directly liable for a call that violates the TCPA where it controlled the messaging or timing of the message, controlled the recipient list, willfully enabled "fraudulent spoofing of telephone numbers," assisted its telemarketing customer in blocking caller ID, or knowingly allowed the telemarketer to violate the TCPA. *See Frank v. Cannabis & Glass*, No. C19-2502019 WL 4855378, at \*2 (E.D. Wash. Oct. 1, 2019) (citing 2015 FCC Order at 7980–84). None of those circumstances were pleaded in the present complaint.

As masters of their complaint, Plaintiffs merely pleaded that Boomsourcing "physically dialed" pre-recorded calls to Plaintiffs Rogers, Stevenson, Thompson, and Armiger (none of whom consented to receive those calls) on behalf of Assurance IQ. Dkt. No. 48 ¶¶ 28–31, 37–40, 46–50, 68–72, 76–81. Plaintiffs have not pleaded that Boomsourcing was aware that Assurance IQ was using its platform to send pre-recorded calls in violation of the TCPA. *See id.* Though Plaintiffs contend in their response to Boomsourcing's motion that Defendants had a contract requiring Boomsourcing to physically place calls on behalf of Assurance IQ, they did not state so in the complaint. *Compare* Dkt. No. 63 at 5 *with* Dkt. No. 48. Even if it had been properly pleaded, the Court is not satisfied the existence of such a contract term alone would suffice to establish direct liability.

Moreover, Plaintiffs have not pleaded any *facts* supporting their inference that Boomsourcing physically dialed the calls to four of the individual plaintiffs. *See* Dkt. No. 48. A TCPA plaintiff must allege facts to support their belief that the defendant placed the calls at issue, such as "how the caller identified itself, the substance of the calls," or other details revealing that the defendant actually took steps to place the calls. *See Aaronson v. CHW Grp., Inc.*, No. C18-1533, 2019 WL 8953349 (E.D. Va. Apr. 15, 2019); *see also Adzhikosyan v. Callfire, Inc.* No. C19-246, 2019 WL 7856759, at \*3 (C.D. Cal. Nov. 20, 2019) (dismissing TCPA complaint because plaintiff failed to explain how he knew defendant sent the texts at issue).

The Court therefore holds that Plaintiffs have failed to state a claim against Defendant Boomsourcing and grants the motion to dismiss the claims against it based on a theory of direct liability.

### 2. Vicarious Liability

The FCC has ruled that sellers can be held vicariously liable under federal common-law agency principles for their telemarketing agents' violations of TCPA Sections 227(b) or 227(c). *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013) ("2013 FCC Order"); *see also Campbell-Ewald Co.*, 768 F.3d at 878 (presuming that Congress intended to incorporate tort-related vicarious liability standards to the TCPA and finding that presumption consistent with the FCC's interpretations). The FCC also has indicated that consumers should not be required to develop all of the facts surrounding the agency relationship at the pleadings stage. *See id.* at 6592–93 (noting that evidence of vicarious liability should be discoverable and "nothing in this order requires a consumer to provide proof—at the time it files its complaint—that the seller should be held vicariously liable for the offending call"). Still, a TCPA complaint for vicarious liability should include allegations supporting the existence of an agency relationship. *See Fabricant v. Elavon, Inc.*, No. C20-2960, 2020 WL 11884505, at \*4–6 (C.D. Cal. Aug. 25, 2020) (dismissing TCPA complaint with leave to amend where plaintiff failed to plead the agency relationship necessary to support a vicarious liability claim); *Naiman v. TranzVia LLC*, No. C17-4813, 2017 WL 5992123, at \*10–13 (N.D. Cal. Dec. 4, 2017) (same).

**\*6** "An essential element of agency is the principal's right to control the agent's actions." Restatement (Third) of Agency § 1.01 cmt. f(1) (Am. L. Inst. 2006). To establish an agency relationship for TCPA purposes, "the plaintiff must show that the principal controlled the 'manner and means' of the allegedly violating phone call." *Fabricant*, 2020 WL 11884505, at \*4 (citing *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012)).

Defendant Assurance IQ claims that it cannot be held vicariously liable under the TCPA based on Plaintiffs' allegations. *See* Dkt. No. 57 at 5–8. Plaintiffs counter that Boomsourcing contracts with Assurance IQ and that Assurance IQ required Boomsourcing to place the calls. Dkt. No. 63 at 5. But these allegations needed to be made in the complaint, and they were not. The sole reference in the Second Amended Complaint with regard to any contract is that "Boomsourcing contracted with Assurance

in this District." Dkt. No. 48 ¶ 9. However, there is no information as to what was covered by the contract between Assurance and Boomsourcing or whether the contract required Boomsourcing to place pre-recorded calls. Nor does the complaint allege that Assurance IQ directed those vendors to call individuals on the DNC list. *Compare* Dkt. No. 63 (response brief making this allegation) *with* Dkt. No. 48 (complaint).

Plaintiffs further allege that Assurance IQ instructed Boomsourcing on who to call, provided the phone numbers to call, gave instructions to use pre-recorded voice messages, and approve a pre-recorded script for those calls. *Id.* ¶¶ 92–95. But these conclusory statements—which are more akin to a recitation of the factors for establishing vicarious liability—do not provide "any facts showing how [Assurance IQ] did those things or how it knew those things, or what facts the allegations are based on...." Naiman, 2017 WL 5992123, at *11. Plaintiffs may have this information, as they have a copy of the contract between Assurance IQ and Boomsourcing (*see* Dkt. No. 63 at 5); yet, they did not include the information in their complaint. Indeed, the contract was only mentioned in the complaint for the purpose of establishing venue. *See* Dkt. No. 48 ¶ 9 (stating "Boomsourcing contracted with Assurance in this District and in doing so, likely agreed to this District as a venue for disputes related to that agreement").

Plaintiffs present even less support with respect to Assurance IQ's relationship with Torchlight Technology, which allegedly physically dialed a pre-recorded call to Plaintiff Frank Garrido. Dkt. No. 48 ¶¶ 12, 56–57. Plaintiffs contend that "Assurance IQ only allowed Torchlight Technology to call (a) individuals who were insured with certain companies (b) lived in certain geographic regions and (c) [met] other criteria related to the type of insurance prospect that could be offered." *Id.* ¶ 97. Plaintiffs allege that Assurance IQ "maintained interim control over the actions of Torchlight Technology" by providing the dates and times on which to make the calls, as well as instructions "on how to consummate a transfer for an interested consumer." *Id.* ¶¶ 98–99. But Plaintiffs do not even allege that Assurance IQ instructed Torchlight Technology to make any pre-recorded calls. *See supra* Section III.A.2; *see also* Dkt. No. 48 ¶¶ 96–99.

**\*7** Again, there are simply too many leaps Plaintiffs request be made without any supporting facts, even at this early stage of the case. Thus, the Court holds that Plaintiffs have not sufficiently alleged that Assurance IQ is vicariously liable for the TCPA violations it contends were committed by Boomsourcing or Torchlight Technology. The Court grants the motion to dismiss the

claims against Assurance IQ based on a theory of vicarious liability.

**D. "Knowing" or "Willful" TCPA Violations**
Defendants argue that Plaintiffs' barebones conclusions that their violations of the TCPA were willful and knowing are insufficient to support a prayer for increased damages above the statutory $500 per infringing call. Dkt. No. 55 at 11; Dkt. No. 59 at 24–25. Plaintiffs have alleged that Assurance IQ explicitly instructed Boomsourcing to use pre-recorded messages and approved the script for that pre-recorded message and that it "maintained interim control" over Torchlight Technology's actions and provided the vendor with parameters regarding whom to call. Dkt. No. 48 ¶¶ 94–95, 97–99. They also allege "Defendants' violations [of § 227(c)] were knowing or willful." *Id.* ¶ 126.

Courts within this circuit have repeatedly found similarly conclusory allegations regarding the willful or knowing nature of TCPA violations to be sufficient to withstand a motion to dismiss. *See* Keifer v. HOSOPO Corp., No. C18-1353, 2018 WL 5295011, at *5 (S.D. Cal. Oct. 25, 2018) (finding enough support in an allegation that "the foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA" to deny dismissal and collecting cases). While the complaint's allegations could be strengthened by inclusion of further facts, such as any requests Plaintiffs made to Defendants to stop the unwanted calls, *see Quicken Loans*, 2020 WL 5292002, at *5, further factual development is unnecessary at this stage in the litigation. The Court therefore denies the motion to dismiss with respect to Plaintiffs' request for treble damages.

**E. Lack of Subject Matter Jurisdiction**
To have standing to seek injunctive relief, a plaintiff must allege either "continuing, present adverse effects" due to exposure to the defendant's past illegal conduct, or "a sufficient likelihood [of being wronged again] in a similar way." *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1229 (9th Cir. 2017) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) and *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "When evaluating whether [the requisite injury for standing purposes] is present, we must look at the facts *as they exist at the time the complaint was filed.*"

Rogers v. Assurance IQ, LLC, Not Reported in Fed. Supp. (2023)

*Am. Civ. Liberties Union of Nev. v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006) (emphasis in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Here, Plaintiffs seek to prevent Defendants from "making telemarketing calls to any cellular or residential telephone numbers using an artificial or prerecorded voice in the future," and from advertising their goods and services on a non-emergency basis "to any number on the National Do Not Call Registry in the future." Dkt. No. 48 ¶¶ 122, 125. The most recent allegations of pre-recorded phone calls in the Second Amended Complaint date back to June 2021 (Dkt. No. 48 ¶¶ 56, 69), which is the month the original complaint was filed (*see* Dkt. No. 1). Defendants argue that Plaintiffs have not adequately alleged continuing or future injury and therefore cannot obtain an injunction under the TCPA. Dkt. No. 55 at 12; Dkt. No. 59 at 25–26.

**\*8** In *Campbell v. Facebook*, the Ninth Circuit upheld a settlement agreement in a class action alleging that Facebook had captured, read, and used website links in its users' private messages without their consent where a "combination of continuing harm plus likelihood of future harm was sufficient for Plaintiffs to have standing to seek injunctive relief." 951 F.3d 1106, 1111, 1119 (9th Cir. 2020). There, the court was satisfied that plaintiffs had shown continuing and future harm because the defendant was actively violating their privacy at the time they filed suit, the defendant never claimed to have ceased the challenged conduct, and the defendant's "ongoing retention of the data collected from private messages meant that there was a risk that it would resume [the challenged conduct]." *Id.* at 1119. Similarly, the instant action was filed around the time the TCPA violations allegedly occurred, Defendants have not claimed to have ceased the challenged conduct, and Defendants have made no representation that they have taken action to prevent continuance of the challenged conduct, such as deleting Plaintiffs' phone numbers from their records or ceasing their calls to Plaintiffs since the complained-of incidents. *See Miller v. Time Warner Cable, Inc.*, No. C16-329 2016 WL 7471302, at \*4 (9th Cir. Dec. 27, 2016) (finding plaintiff lacked standing to request injunctive relief under the TCPA where defendant presented evidence it had received and respected plaintiff's do-not-call request).

For these reasons, the Court holds that Plaintiffs have standing to pursue injunctive relief.

**F. Leave to Amend**

Defendants contend that Plaintiffs should be denied leave to amend their complaint because their previous amendments failed to cure its deficiencies. Dkt. No. 55 at 12–13; Dkt. No. 59 at 26. Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Rahimian*, 2022 WL 798371, at \*2 (granting motion to dismiss with leave to amend TCPA claims). Though Plaintiffs have already twice amended their complaint, there is no basis to infer that further amendment would be futile, as those amendments were not made in response to a motion to dismiss. Therefore, the Court GRANTS Plaintiffs one final opportunity to amend their complaint.

**G. Class Allegations Under Rule 12(f) and Rule 23**

As an alternative to dismissing the complaint in its entirety, Defendant Boomsourcing asks the Court to strike "faulty proposed class definitions ..., other class-related allegations ..., and 'superfluous historical' allegations" from the complaint under Rules 12(f) and 23. Dkt. No. 59 at 26. Courts have the power to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, "[m]otions to strike are disfavored, because they may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Chao Chen v. Geo Grp., Inc.*, 297 F. Supp. 3d 1130, 1132 (W.D. Wash. 2018) (citations and quotations omitted). This is especially true of motions to strike class action allegations, as "the shape and form of a class action evolves only through the process of discovery." *Hoffman v. Hearing Help Express, Inc.*, No. C19-5960, 2020 WL 4279176, at \*2 (W.D. Wash. Mar. 27, 2020) (citations omitted); *see also Dorian v. Amazon Web Servs., Inc.*, No. C22-269, 2022 WL 3155369, at \*2 n.1 (W.D. Wash. Aug. 8, 2022) (refusing to consider "premature" request to strike class allegations at the motion to dismiss stage).

Boomsourcing insists that paragraph 84 of the Second Amended Complaint contains an immaterial and prejudicial reference to anonymous online posts by disgruntled consumers. Dkt. No. 59 at 27. Specifically, Plaintiffs have alleged that others have indicated receipt of "similar unwanted calls" by quoting a post on the online forum 800notes.com regarding unwanted "automated" telemarketing messages from "Assurance Insurance." Dkt. No. 48 ¶ 84; *see also supra* Section

**Rogers v. Assurance IQ, LLC, Not Reported in Fed. Supp. (2023)**

III.A.2. Though the relevance of this allegation as currently pleaded is questionable, the Court is not inclined to strike it at this time given Boomsourcing's failure to show prejudice due to its inclusion and because Plaintiffs are granted leave to amend their complaint. As for the class allegations, the Court shall reserve ruling on their propriety pending a potential motion for class certification.

**IV. Conclusion**

**\*9** For the reasons and to the extent specified above, the Court grants the motions to dismiss (Dkt. Nos. 55, 59) in part with leave to amend and denies them in part. Should Plaintiffs choose to amend, their third amended complaint must be filed within **thirty (30) days** of this Order.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2646468

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 124 of 158

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

🚩 KeyCite Yellow Flag

Distinguished by   Bryant v. Byron Udell & Associates Inc.,   E.D.Va.,
August 11, 2023

2020 WL 9348208
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Norfolk Division.

Jim SCRUGGS, Plaintiff,
v.
CHW GROUP, INC., and Home Warranty
Administrators, Inc., Defendants.

Action No. 2:20cv48
|
Signed 11/12/2020

**Attorneys and Law Firms**

Craig Carley Marchiando, Consumer Litigation Associates,
Newport News, VA, Kevin Anthony Dillon, Consumer
Litigation Associates, Richmond, VA, for Plaintiff.

Andrew Zimmitti, John William McGuinness, Pro Hac Vice,
Manatt Phelps & Phillips, LLP, Washington, DC, Aaron
Heeringa, Pro Hac Vice, Manatt, Phelps & Phillips LLP,
Chicago, IL, for Defendants.

**UNITED STATE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

Robert J. Krask, United States Magistrate Judge

**\*1**  On July 14, 2020, the defendant, CHW Group, Inc.
("CHW"), filed a motion to dismiss the first amended
complaint pursuant to Federal Rules of Civil Procedure 12(b)
(1) and 12(b)(6). ECF No. 27. The motion was referred to
the undersigned United States Magistrate Judge on September
2, 2020, pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal
Rule of Civil Procedure 72(b). ECF No. 34. For the reasons
discussed below, the undersigned **RECOMMENDS** that the
motion to dismiss be **GRANTED**.

**I. PROCEDURAL HISTORY**

On June 30, 2020, plaintiff, Jim Scruggs ("Scruggs"), filed
a two-count amended complaint against defendant, CHW. [1]
Pl.'s First Am. Compl., ECF. No. 22. In count one, Scruggs
alleges that CHW made repeated unwanted telemarketing
calls in violation of the Telephone Consumer Protection
Act ("TCPA"), 47 U.S.C. § 227(c). Id. ¶¶ 32–40. In count
two, Scruggs alleges that CHW made repeated unwanted
telephone solicitation calls in violation of the Virginia
Telephone Privacy Protection Act ("VTPPA"), Va. Code Ann.
§ 59.1-514. Id. ¶¶ 41–47.

On July 14, 2020, CHW filed a motion to dismiss both counts
in the first amended complaint for lack of subject matter
jurisdiction pursuant to Rule 12(b)(1) and for failure to state
claims pursuant to Rule 12(b)(6). ECF No. 27. On August
11, 2020, Scruggs filed a response in opposition to CHW's
motion to dismiss. ECF No. 32. CHW filed a reply to Scruggs'
opposition on August 31, 2020. ECF No. 33. After review of
the parties' submissions, the Court concludes that a hearing is
unnecessary, and this matter is ready for a decision. See Local
Civil Rule 7(J).

**II. FACTUAL BACKGROUND** [2]

On or around August 19, 2004, Scruggs registered his
cellphone number ending in 3953 ("the phone number") on
the national do-not-call registry. Pl.'s First Am. Compl. ¶ 12.
He has continuously owned the phone number, and he has
never changed the number, nor removed his number from the
registry list. Id. Scruggs does not own a landline telephone
and uses his cellphone for residential purposes. Id. 13.

On January 24, 2019, Scruggs received three unwanted phone
calls on his cellphone. Id. ¶¶ 14–17. During each call,
"the caller identified himself as associated with CHW and
attempted to sell Mr. Scruggs a home warranty" and "Scruggs
informed CHW that he did not want CHW to contact him
further." Id.

Scruggs also received three unwanted calls on his cellphone
the next day, January 25, 2019; an additional call on January
30, 2019; and another on January 31, 2019. Id. ¶¶ 18–22. Each
time "the caller identified himself as associated with CHW
and again attempted to sell a home warranty to Mr. Scruggs."
Id. And, each time "Mr. Scruggs answered and again told the
caller to stop contacting him." Id.

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 125 of 158

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

**\*2** Scruggs asserts that "[d]iscovery will confirm that CHW, or someone acting on CHW's behalf, initiated the above calls to Mr. Scruggs." *Id.* ¶ 23.

As a result of the eight calls, Scruggs experienced "anxiety and emotional distress." *Id.* ¶ 24. He "expended considerable time and energy to try to get CHW to stop calling him," and the calls "interrupted [his] life, harassed him, and caused him to unnecessarily expend time dealing with calls he reasonably expected would stop when he repeatedly instructed CHW's representatives to stop calling him." *Id.* ¶¶ 25–26.

CHW acted willfully in committing these acts in violation of the TCPA and the VTPPA. *Id.* ¶¶ 27–31. Specifically, CHW has had three decades, as well as the means and resources, to come into compliance with the TCPA, which was enacted in 1991. *Id.* ¶¶ 28–30.

### III. LEGAL STANDARDS

**A. Standards applicable to a motion to dismiss for failure to state a claim.**
A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) should be granted if a complaint fails to allege "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Accordingly, when reviewing a motion to dismiss, a court must "assume all [well-pled facts] to be true" and "draw all reasonable inferences in favor of the plaintiff," but it need not "accept the legal conclusions drawn from the facts, and [ ] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citations and internal quotation marks omitted). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

**B. Standards applicable to a motion to dismiss for lack of subject matter jurisdiction.**
Rule 12(b)(1) permits a defendant to move for dismissal of a claim based on a court's lack of subject-matter jurisdiction. *A. W. ex rel. Wilson v. Fairfax Cty. Sch. Bd.*, 548 F. Supp. 2d 219, 221 (E.D. Va. 2008). Specifically, "[a] defendant may challenge the court's subject matter jurisdiction in one of two ways: (1) the defendant may raise a 'facial challenge' by arguing that the facts alleged in a complaint are not sufficient to confer subject matter jurisdiction on the court or (2) the defendant may raise a 'factual challenge' by arguing that the jurisdictional allegations made in the complaint are not true." *Brunelle v. Norfolk S. Ry. Co.*, No. 2:18cv290, 2018 WL 4690904, at \*2 (E.D. Va. Sept. 28, 2018) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "In a facial challenge, the court evaluates the facts in a complaint using the same standard used for a Rule 12(b)(6) motion to dismiss,"—namely, "all alleged facts are taken as true and the motion must be denied if the complaint alleges facts that, if proven, would be sufficient to sustain jurisdiction." *Id.* (citing *Kerns*, 485 F.3d at 192). As noted above, however, such allegations are not taken as true with respect to legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

**\*3** In this case, the Court concludes that CHW has raised a facial challenge to subject matter jurisdiction. CHW raises its challenge to Scruggs' complaint pursuant to Rule 12(b)(1) by relying only on the allegations noted on the face of the complaint. *See* ECF No. 27 at 29 ("The Court should also dismiss the [first amended complaint] pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiff still *fails to plead sufficient facts* demonstrating the essential Article III standing elements of causation or redressability ...." (emphasis added)). Accordingly, aside from "mere conclusory statements" supporting a cause of action's elements or legal conclusions, *Iqbal*, 556 U.S. at 678, the Court "will accept as true all facts alleged in [Scruggs' first amended complaint] for the purposes of determining whether the court has subject matter jurisdiction over this claim," *Brunelle*, 2018 WL 4690904, at \*2.

### IV. DISCUSSION

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 126 of 158

**A. Count one warrants dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and, in the alternative, Rule 12(b)(6) for failure to state a claim.**

In count one, Scruggs alleges that CHW violated the TCPA, 47 U.S.C. § 227(c)(5). Pl.'s First Am. Compl. ¶¶ 32–40. Specifically, Scruggs alleges that CHW "made repeated telemarketing calls to Mr. Scruggs' residential phone despite Mr. Scruggs having registered the number on the National Do Not Call List"; continued to make such calls "after he informed CHW ... to stop contacting him"; "made these repeated calls without instituting procedures to maintain a do not call list in violation of 47 C.F.R. § 64.1200(d)"; "made [the calls] without Mr. Scruggs['] authorization[;] and disregarded Mr. Scruggs' designation of the Phone Number on the National Do Not Call List ... [in] violation of 47 C.F.R. § 64.1200(c)(2)." *Id.* ¶¶ 33–36. Scruggs asserts that violation of these regulations "constitute[s] violations of the TCPA." *Id.* ¶ 37 (citing 47 U.S.C. § 227(c)(5)). Further, he alleges that CHW acted "willfully and/or knowingly [in] violat[ing] these regulations," *id.* ¶ 38, which merits treble damages, *id.* ¶ 40 (citing 47 U.S.C. § 227(c)(5) (providing a right to receive up to $500.00 in damages for each violation and up to three times that amount "[i]f the court finds [in its discretion] that the defendant willfully or knowingly violated the regulations")).

Defendant seeks to dismiss the claim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. ECF No. 27 at 9. To support the former, defendant argues that Scruggs lacks standing to bring this suit, because the at-issue calls are not "fairly traceable" to CHW and cannot be redressed by CHW. *Id.* at 29–30. To support the latter, defendant advances three main arguments: (1) Scruggs has not pled facts supporting direct TCPA liability, (2) Scruggs has not pled facts supporting vicarious TCPA liability, and (3) the facts, as pled, do not amount to a violation of TCPA's do-not-call rules. *Id.* at 15–26.

Because standing is a "threshold question in every federal case," the Court begins its review of defendant's arguments there. *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

**1. This Court lacks subject matter jurisdiction over count one, because plaintiff lacks Article III standing.**
Rule 3(b)(1) permits a defendant to move for dismissal of a claim based on a court's lack of subject-matter jurisdiction. *Fairfax Cty. Sch. Bd.*, 548 F. Supp. 2d at 221. As provided by Article III of the Constitution, federal courts have subject-

matter jurisdiction over justiciable cases or controversies. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992). The doctrine of standing is one component of justiciability, "serv[ing] to identify those disputes which are appropriately resolved through the judicial process." *Id.* at 560 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). The standing issue—that is, "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf," *Warth*, 422 U.S. at 498-99 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962))—presents "a threshold question in every federal case," *id.* at 498.

> **\*4** In order to satisfy the standing requirements of Article III of the Constitution, a plaintiff must demonstrate that: (1) [he] has suffered an injury in fact; (2) the asserted injury in fact is fairly traceable to, or caused by, the challenged action of the defendant; and (3) it is likely rather than just conjectural that the asserted injury in fact will be redressed by a decision in the plaintiff's favor.

*Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 480 (4th Cir. 2003) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000)).

CHW does not contest that Scruggs adequately pled the first requirement, that is, that he "suffered an injury in fact" related to harms from eight unwanted phone calls, but instead argues that Scruggs has failed to adequately plead the second and third requirements. *See* ECF No. 27 at 39–30.

**a. The plaintiff's injury is not fairly traceable to the defendant's conduct.**

The purpose of "[t]he 'fairly traceable' requirement [is to] ensure[ ] that there is a genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000) (citing *Lujan*, 504 U.S. at 560). This "standard is 'not equivalent to a requirement of tort causation.' " *Id.* (quoting *Pub. Int. Rsch. Grp. v. Powell*

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 127 of 158

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

*Duffryn Terminals, Inc.*, 913 F.2d 64, 72 (3rd Cir. 1990)). Nor do plaintiffs need to demonstrate causation with "scientific certainty." *Id.* (quoting *Nat. Res. Def. Council, Inc. v. Watkins*, 954 F.2d 974, 980 n.7 (4th Cir. 1992)). On the other hand, "[i]f 'the line of causation ... is too attenuated' or 'highly indirect,' the plaintiff's injury is not 'fairly traceable' to the defendant and the plaintiff will not have standing." *Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.*, No. JFM-08-62, 2011 WL 1557759, at *2 (D. Md. April 22, 2011) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). In addition, this "element of standing does not require the challenged action to be the sole or even immediate cause of the injury." *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018). The alleged conduct, however, cannot be wholly "the result of the independent action of some third party not before the court." *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

Consistent with the *Iqbal* pleading standards, courts have found that unwanted calls in the TCPA context were "fairly traceable" to defendants where the plaintiff alleged some factual context surrounding the contested calls that supported an inference that the defendant or its agent had made the call. For instance, in *Cordoba v. DIRECTV, LLC*, the complaint alleged that DIRECTV hired Telecel to make marketing calls; that Telecel placed numerous calls on behalf of DIRECTV to the named plaintiff Cordoba, who was listed on the national do-not-call registry; that Cordoba "repeatedly told Telecel that he did not want to be called," that "Telecel admitted that the company did not maintain an internal do-not-call list"; that Cordoba "wr[ote] to DIRECTV and request[ed] that they cease calling him"; that "DIRECTV responded and promised that they would no longer contact him"; and that "the calls continued." 942 F.3d 1259, 1265–66 (11th Cir. 2019). The Eleventh Circuit observed, "Cordoba, as the named plaintiff, has no problem meeting the traceability requirement: the complaint squarely alleges that he repeatedly asked Telecel and DIRECTV to stop calling him, Telecel didn't keep a list of all those who asked not to receive calls, and he later suffered the injury of receiving many phone calls, which would not have happened if Telecel had maintained an internal do-not-call list and abided by it." *Id.* at 1271. Therefore, pleading not only that defendant hired an agent who called the plaintiff, but also facts suggesting the defendant acknowledged making the call—here, by DIRECTV in writing—are contextual factors that might support a finding that a call was fairly traceable to the defendant.

**\*5** Similarly, in *Hurley v. Messer*, the plaintiff identified the specific phone numbers used to make the contested calls in the complaint and alleged that the phone numbers belonged to two defendant service providers. No. 3:16-9949, 2018 WL 4854082, at *4 (S.D.W. Va. Oct. 4, 2018). The court found that the contested calls were fairly traceable to the voice-over-internet service providers who were alleged to have "kn[own] about the illegal conduct, had a right to control the conduct but, nevertheless, permitted the robocalls to be broadcast through their assigned telephone numbers." *Id.* Therefore, allegations of control over the calls, knowledge of the calls, and ownership of the assigned telephone numbers are additional contextual factors that might contribute to a finding that the conduct is fairly traceable to the defendant.

On the other hand, courts have found that contested phone calls were not fairly traceable to a defendant where plaintiffs have failed to allege non-conclusory facts that support an inference linking the defendant to the calls. For example, in *Barker v. Sunrun Inc.*, the plaintiff alleged that the defendant "had an agency relationship with the individuals or entities who actually made the offending phone calls." No. CV 18-855 KG/LF, 2019 WL 1983291, at *3 (D.N.M. April 29, 2019). The court was unpersuaded. *Id.* It observed, "this allegation constitutes a legal conclusion, and so it is not entitled to a presumption of truth." *Id.* (citing *Iqbal*, 556 U.S. at 678). In addition, the plaintiff "state[d] he ha[d] sworn statements that connect the actions to [the defendant]," but this was insufficient as well, as those statements were not included in or attached to the complaint. *Id.* Ultimately, the court found standing lacking, noting that aside from these conclusory statements, "Plaintiff did not make factual allegations ... connecting the actions to [the defendant]." *Id.*

CHW argues that Scruggs's alleged injury is not fairly traceable to CHW. CHW states, "Plaintiff fails to allege sufficient non-conclusory facts by which one could trace his purported injury to CHW." ECF No. 27 at 29. Specifically, CHW observes that "Plaintiff ... provides virtually no detail about the calls at issue, let alone the identity of the caller(s), the duration, the number(s) from which they originated, the substance of the calls, or more importantly who *physically* placed any of the calls—*i.e.*, CHW or some third party who merely stated they were 'associated with' CHW somehow." *Id.* at 17. Further, CHW notes that Scruggs concedes this point in his first amended complaint by requiring discovery on the issue. *Id.* (citing Pl.'s First Am. Compl. ¶ 23 ("Discovery will confirm that CHW, or someone acting on CHW's behalf, initiated the [contested] calls to Mr. Scruggs.")).

Scruggs asserts that he has pled sufficient facts to show the unwanted calls are fairly traceable to CHW. ECF No. 32 at 7. He argues, "Mr. Scruggs has clearly pleaded that he received a series of phone calls from Defendant, and the callers identified themselves with Defendant and tried to sell Mr. Scruggs[ ] Defendant's product." *Id.* In short, he notes that "Mr. Scruggs has demonstrated that the offending conduct in his complaint is traceable to Defendant by alleging that Defendant is the one who called him. Nothing more is needed." *Id.* The Court disagrees.

Viewed in the light most favorable to Scruggs, the alleged facts are insufficient to show that the contested calls are "fairly traceable" to CHW for two principal reasons: (1) the conclusory statements in the first amended complaint do not provide a factual basis to trace the contested phone calls to CHW; and (2) the alleged conduct could be attributed to an unrelated third party not before the Court.

**\*6** As a preliminary matter, Scruggs mischaracterizes the factual allegations set forth in the first amended complaint. First, Scruggs now argues in his opposition to the motion to dismiss "that he received a series of phone calls from Defendant," and that "Defendant is the one who called him." *Id.* But the amended complaint does not reflect that. Instead, the facts section of the amended complaint notes that on eight occasions, "Scruggs received a phone call in which *the caller* identified himself *as associated with* CHW," and that "[d]iscovery will confirm that CHW, or someone acting on CHW's behalf, initiated the [eight contested] calls to Mr. Scruggs." Pl.'s First Am. Compl. ¶¶ 14, 16–23 (emphasis added). Although Scruggs indicates later in the "counts" section of the complaint that "CHW made repeated telemarketing calls to Mr. Scruggs' residential phone," *e.g.*, *id.* ¶ 33, this type of threadbare recitation of an element of a cause of action is not an alleged fact that the court need accept as true, *see Iqbal*, 556 U.S. at 678, and, indeed, it is inconsistent with his factual assertion that he needs discovery to confirm who called him and how that person is related to CHW, Pl.'s First Am. Compl. ¶ 23. Contrary to his opposition memorandum, Scruggs did not plead that "Defendant is the one who called him," but rather suggested he does not know who called him and that he needs discovery on the issue. ECF No. 32 at 7. Second, Scruggs now argues that "the callers ... tried to sell Mr. Scruggs[ ] Defendant's product." *Id.* But nowhere in the amended complaint does Scruggs state that the alleged product being sold—"a home warranty"—is defendant's product. *See* Pl.'s First Am. Compl. ¶¶ 14, 16–23.

Instead, the allegations in the complaint are largely conclusory and the descriptions of the contested calls are devoid of context. With respect to the content of the calls, Scruggs states, "the caller identified himself as associated with CHW and attempted to sell Mr. Scruggs a home warranty," and Scruggs told the caller that "he did not want CHW to contact him further." *E.g., id.* ¶¶ 14–15. The solitary fact proffered to connect the call to CHW is that "the caller identified himself as associated with CHW." *E.g., id.* ¶ 14. But Scruggs was a party to the phone calls and should be able to provide greater detail. For instance, he might include the name of the caller or details of the sales pitch for the home warranty being sold. Or as in *Hurley*, he could have identified the phone numbers used to call him and allege those phone numbers belong to CHW. *See* 2018 WL 4854082, at *4. Scruggs states that "he repeatedly instructed CHW's representatives to stop calling him," and notes in his description of each call that he "told the caller to stop contacting him," but he does not describe how CHW responded to his requests. Pl.'s First Am. Compl. ¶¶ 15–22, 26. For instance, unlike in *Cordoba*, Scruggs did not allege that CHW has acknowledged making the calls. 942 F.3d at 1266.

These sample contextual factors—the defendant's acknowledgement of a call, the defendant's ownership of the phone number used to make the call, details of the specific content of calls—are not required in every case to support a finding that the alleged conduct is fairly traceable to the defendant, but they are illustrative of the types of factual allegations courts have found sufficient under the *Iqbal* pleading standards when conducting a standing analysis. *See Cordoba*, 942 F.3d at 1271; *Hurley*, 2018 WL 4854082, at *4*; *see also Drake v. Firstkey Homes, LLC*, 439 F. Supp. 3d 1313, 1315–16, 1323–24 (N.D. Ga. 2020) (finding that an injury related to unwanted phone call was fairly traceable to a defendant where the defendant *admitted making the call* even though a third party gave the defendant consent to contact the plaintiff). Here, Scruggs' allegations remain conclusory and lack the necessary factual context to support an inference linking the calls to CHW. In short, more is needed to render the calls "fairly traceable" to CHW.

Further, as pled, the injury here could be wholly "the result of the independent action of some third party not before the court," which is fatal to satisfying the traceability prong of a standing analysis. *Bennett*, 520 U.S. at 167; *see also Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755–56 (4th Cir.

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 129 of 158

2013). Again, Scruggs states, "the caller identified himself as associated with CHW and attempted to sell Mr. Scruggs a home warranty." Pl.'s First Am. Compl. ¶¶ 14, 16–22. Taken as true, as the Court must, this statement does not foreclose the possibility that a third party wholly unrelated to CHW made the call. The statement does not expressly state that CHW made the call and the complaint otherwise does not allege facts that would support an agency relationship between CHW and the caller. *See id.* ¶¶ 12–31.

**\*7** Rather than plead non-conclusory facts supporting an inference that CHW was responsible for the contested phone calls, Scruggs requests discovery on the matter. He states, "Discovery will confirm that CHW, or someone acting on CHW's behalf, initiated the [eight contested phone] calls to Mr. Scruggs." *Id.* ¶ 23. The caller said they were "associated with CHW," so Scruggs' logic is that CHW or its agent made the call. *See id.* ¶¶ 14, 23. Absent additional non-conclusory facts that link CHW to the call, however, "this assertion is speculative, and discovery to support it would amount to no more than a 'fishing expedition in hopes of discovering some basis of jurisdiction.' " *Gillison v. Lead Express, Inc.*, No. 3:16cv41, 2017 WL 1197821, at \*15 (E.D. Va. Mar. 30, 2017) (quoting *Base Metal Trading, Ltd. v. Ojsc Novokuznetsky Aluminum Factory*, 283 F.3d 208, 216 n.3 (4th Cir. 2002)).

Because Scruggs failed to plead non-conclusory facts linking CHW to his purported injury and because a third party not before the court could be responsible for such conduct, the Court finds that the plaintiff's injury is not "fairly traceable" to the defendant, as is required for Article III standing.

### b. The plaintiff's injury is not redressable.

The purpose of the redressability prong of a standing inquiry is to determine whether "a plaintiff 'personally would benefit in a tangible way from the court's intervention.' " *Friends of the Earth, Inc.*, 204 F.3d at 162 (quoting *Warth*, 422 U.S. at 508). This question is linked to the traceability inquiry, because for the Court to be able to redress the injury, that injury "must result from the actions of the [defendant], not from the actions of a third party beyond the Court's control." *Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009).

Having found that Scruggs failed to adequately allege facts that fairly trace his injury to CHW, the Court also finds that

his injury is not redressable, because the conduct could have been caused by a third party not before the Court.

Because Scruggs' injury is not fairly traceable to CHW or redressable, the Court finds that Scruggs does not have Article III standing to bring this claim. Therefore, this Court lacks subject matter jurisdiction over this matter, and, accordingly, the Court **RECOMMENDS** that defendant's motion to dismiss count one be **GRANTED**.

### 2. Dismissal of count one is also appropriate, because plaintiff fails to state a claim upon which relief can be granted. [3]

CHW also moves to dismiss count one under Rule 12(b) (6) for failure to state a claim by arguing that Scruggs has not pled facts supporting direct or vicarious TCPA liability. [4] ECF No. 27 at 16–22. To the extent Scruggs asserts that CHW is directly liable under the TCPA, CHW argues that "federal courts have routinely dismissed conclusory direct TCPA liability claims that, like Plaintiff's, lack sufficient factual allegations demonstrating that the defendant actually 'initiated' the phone calls at issue in the sense of 'tak[ing] the steps necessary to physically place' a call." *Id.* at 16 (quoting *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at \*2 (N.D. Cal. May 13, 2020)). To the extent Scruggs asserts that CHW is vicariously liable under the TCPA, CHW argues that Scruggs has not pled sufficient facts to support the finding of an agency relationship between CHW and the caller at issue or to support a finding that CHW exercised control over the caller, which is required for a finding of vicarious liability. *Id.* at 19–22.

**\*8** Scruggs counters that "[r]egardless of whether CHW is directly or vicariously liable, Mr. Scruggs has sufficiently pleaded liability." ECF No. 32 at 13. He argues that "it is nearly impossible for Mr. Scruggs to at this point know precisely what entity actually initiated the calls to him," and that "it is enough for Plaintiff to allege that either the Defendant or someone acting on its behalf placed the calls to Plaintiff to survive Defendant['s] Motion [to Dismiss]." *Id.* at 13– 14. Specifically, he notes that "Mr. Scruggs need only allege facts which, when taken as true, indicate that it[']s plausible that Defendant made the unlawful calls," which he asserts is the case here. *Id.* at 15–16.

Having found that the contested calls are not fairly traceable to CHW in the context of standing, the Court also finds that Scruggs has not adequately pled facts under the *Iqbal*

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 130 of 158

pleading standards supporting direct or vicarious liability under the TCPA.

The telemarketing regulations under the TCPA are fairly straightforward. "If a person wishes to no longer receive telephone solicitations, he can add his number to the [do-not-call registry]," and "[t]he TCPA then restricts the telephone solicitations that can be made to that number." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019) (citing 47 C.F.R. § 64.1200(c)(2)). Specifically, the statute provides a private right of action for those who suffer telemarketing calls in violation of regulations promulgated under subsection (c) of the act, namely:

> A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may ... bring ... an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation.

47 U.S.C. § 227(c)(5). In addition, a defendant to such a claim may be liable under "theories of direct or vicarious liability." *Aaronson v. CHW Grp., Inc.*, No. 1:18cv1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019).

Scruggs alleges that CHW violated two provisions that may provide him relief, each of which requires CHW or its agent to have *made* or *initiated* phone calls to Scruggs. First, Scruggs alleges that CHW violated 47 C.F.R. § 64.1200(c)(2), which generally forbids a telemarketer from contacting persons who have registered on the national do-not-call registry. Pl.'s First Am. Compl. ¶ 36. That regulation provides that

(c) No person or entity shall *initiate* any telephone solicitation to:

...

(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

47 C.F.R. § 64.1200(c)(2) (emphasis added). Second, Scruggs alleges that CHW violated 47 C.F.R. § 64.1200(d), which in general terms, requires persons making telemarketing calls to maintain an internal do-not-call list and honor requests to be placed on such a list. Pl.'s First Am. Compl. ¶ 35. The provision states:

> If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities *making* calls for telemarketing purposes (or on whose behalf such calls are *made*) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request.

**\*9**  47 C.F.R. § 64.1200(d) (emphasis added). [5] Therefore, as a threshold matter and consistent with the *Iqbal* pleading standards, Scruggs must plead non-conclusory facts that indicate that CHW or its agent "initiate[d]" or "made" calls to Scruggs. 47 C.F.R. §§ 64.1200(c)(2), 64.1200(d).

Accordingly, to establish direct liability under the TCPA, "courts have concluded that the plaintiff must show that the defendant actually, physically initiated the telephone call at issue." *Aaronson*, 2019 WL 8953349, at *2. Therefore, "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff['s] cellular phone." *Id.* For instance, in *Aaronson v. CHW Grp., Inc.*, the court found that the "plaintiff fail[ed] to support his conclusory allegation that defendant called plaintiff['s] cellular phone." *Id.* Specifically, "[t]he lone *fact* marshalled in the Complaint that even c[ame] close to supporting plaintiff['s] conclusion that defendant was the party that called his cellular telephone is the

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 131 of 158

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

allegation that one of the calls made to plaintiff was from a telephone number that, according to the Complaint, 'is one of the Defendant's many telephone numbers.' " *Id.* (citation omitted). Accordingly, the court found that the allegations there lacked sufficient factual context to support an inference that the defendant made the contested phone calls. *Id.*

To establish vicarious liability under the TCPA, "courts have held that a plaintiff must show that the defendant would be vicariously liable under common law principles of agency." *Id.* at *3. Those principles provide that an agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006). Therefore, "at the pleadings stage, plaintiff 'must allege some facts regarding the relationship between an alleged principal and agent' that show defendant had the right to control the party making the calls; plaintiff 'cannot simply allege general control in a vacuum.' " *Aaronson*, 2019 WL 8953349, at *3 (quoting *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at *7 (S.D.N.Y. Nov. 30, 2015)). For instance, the court in *Aaronson* found that a "conclusory, boilerplate allegation" that "defendant 'acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers,' " was insufficient to show defendant was vicariously liable for contested calls. *Id.* The court there suggested that additional facts, such as "how the caller identified itself (*e.g.*, as defendant's employee), the substance of the call (*e.g.* a statement by the caller that he or she was marketing defendant's goods or services), or any other details from the telephone calls that would tend to demonstrate an agreement between the caller and defendant that the caller would act on the principal's behalf and subject to the principal's control" might change the calculus. *Id.*

**\*10** This case is similar to *Aaronson*, as the alleged facts surrounding the contested calls are sparse. As noted earlier, Scruggs described each of the eight calls at issue in the following manner: "the caller identified himself as associated with CHW and attempted to sell a home warranty to Mr. Scruggs," and Scruggs "told the caller to stop contacting him." Pl.'s First Am. Compl. ¶¶ 14–22. That is the extent of the description of the content of the calls.

Scruggs is correct that he need not know for certain whether CHW or its agent placed the call, but there must still be sufficient, non-conclusory factual allegations linking the calls to CHW to render it liable under the TCPA. For instance, in *Desai v. ADT Sec. Servs., Inc.*, the court held that the "alleg[ation] that at-issue calls were made 'by or on behalf of ADT, and/or with ADT's knowledge, consent, approval and/or acquiescence,' " was sufficient at the pleadings stage. No. 11-c-1925, 2011 WL 2837435, at *1 (N.D. Ill. July 18, 2011). Importantly, however, the allegations there provided sufficient factual context to allow for an inference linking the defendant to the call. For instance, the plaintiffs described the content of the calls, "alleging that they received unsolicited pre-recorded telephone calls promoting ADT's products." *Id.* In other words, although a plaintiff need not always allege specifically whether they seek to hold the defendant accountable under a direct or vicarious liability theory at the pleadings stage, he must allege sufficient non-conclusory facts surrounding the context of the calls that support an inference of direct or vicarious liability.

The amended complaint fails to provide such a factual context. For instance, although he was a party to the eight contested phone calls, Scruggs did not allege facts indicating which phone numbers the caller used, details of the marketing pitch the caller made regarding the home warranty, or how CHW representatives reacted to Scruggs' request to not be contacted. *See* Pl.'s First Am. Compl. ¶¶ 12–31. The sole factual allegation linking CHW to the calls is that the caller identified himself as "associated with CHW." *Id.* ¶¶ 14, 16–22. That lone link to the defendant is insufficient under the *Iqbal* pleading standards. *See Aaronson*, 2019 WL 8953349, at *2; *see also Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015) ("[A] complaint must include 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.' " (quoting *Iqbal*, 556 U.S. at 678)). Allowing the TCPA claim to proceed beyond this stage would constitute an impermissible fishing expedition to determine if a factual basis exists to assert the claim against CHW. For these reasons and for the same reasons that the amended complaint failed to satisfy the traceability requirements explored in Part IV(A)(1)(a), the allegations of CHW's direct or vicarious liability under the TCPA are insufficient.

Because the amended complaint does not adequately allege direct or vicarious liability for CHW under the TCPA, the Court also finds that Scruggs has failed to state a claim upon which relief may be granted. Therefore, the Court **RECOMMENDS** that CHW's motion to dismiss count one be **GRANTED** on this alternative basis.

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 132 of 158

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

**B. Scruggs' state-law claim in count two should be dismissed without prejudice.**

In count two, Scruggs alleges that the same eight, telemarketing phone calls discussed above also violated the VTPPA—specifically, Va. Code Ann. § 59.1-514(A), and (B). Pl.'s First Am. Compl. ¶¶ 41–44. Further, he alleges that "[a]s a result of these unwanted telephone solicitation calls, Mr. Scruggs suffered actual damages including frustration, anger, stress, and other emotional and mental distress," and "[h]e was also forced to spend time and resources to try to stop CHW from contacting him." *Id.* ¶ 46. Scruggs asserts that "[he] is entitled to recover for $1,500 in statutory damages for each call in violation of the VTPPA, as well as reasonable attorney's fees and costs." *Id.* ¶ 47 (citing § 59.1-515).

**\*11**  CHW moves to dismiss Scruggs' VTPPA claim on three grounds: (1) "Plaintiff's VTPPA claim is based on the very same threadbare and conclusory allegations lacking in supporting facts as his TCPA claim, [and] ... should also be dismissed under Rule 12(b)(6) for not meeting federal pleading standards"; (2) plaintiff may not obtain double recovery for the same injury under different legal theories; and (3) CHW has an affirmative defense to the claim by virtue of its "reasonable practices and procedures to effectively prevent telephone solicitation calls," pursuant to Va. Code Ann. § 59.1-514(C). ECF No. 27 at 26-28.

"Because the Court has dismissed [Scrugg's TCPA claim] for lack of standing—the only claim within this Court's original jurisdiction—the Court declines to address [his] state law claim at this time ...." *Judson v. Bd. of Supervisors of Mathews Cty.*, No. 4:18cv121, 2019 WL 2558243, at \*11 (E.D. Va. June 20, 2019). At the time of the filing of Scruggs' amended complaint, this Court had original, federal question jurisdiction over Scruggs' claim under 47 U.S.C. § 227(c)(5) (count one) as a "civil action[ ] arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2018). This Court also had supplemental jurisdiction over plaintiff's state-law claim for repeated unwanted telephone solicitation calls under Va. Code Ann. § 59.1-514 (count two), because the claim was "so related" to the federal question claim "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (2018). Indeed, both counts involved allegations related to the same eight telemarketing phone calls to the plaintiff. Pl.'s First Am. Compl. ¶¶ 32–47.

Notably, "[t]his supplemental jurisdiction [is] not lost when the federal-law claims [are] dismissed." *Johansson v. Prince*

*George's Cnty. Pub. Schs.*, No. CBD-13-2171, 2014 WL 7014430, at \*2 (D. Md. Dec. 10, 2014). Instead, "this Court 'may' decline to exercise supplemental jurisdiction now that it 'has dismissed all claims over which it has original jurisdiction,' but it is not required to do so." *Id.* (citing 28 U.S.C. § 1367(c)); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is *purely discretionary.*" (emphasis added)). Because this case was originally brought in federal court, the Court does not have the option of remanding the remaining claims to state court, leaving it only two options: hear the claims or dismiss the claims. *See* 14C Charles Alan Wright et al., Federal Practice and Procedure § 3739 (Rev. 4th ed. 2020) ("[F]ederal courts cannot remand an action that was originally filed in federal court." (citing *Wittner v. Banner Health*, 720 F.3d 770 (10th Cir. 2013))).

Dismissal of the claims without prejudice is appropriate in this case. As the Supreme Court has observed, "district courts [should] deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997). Here, "[i]t is early in the pre-trial period, therefore, the court is less concerned with fairness and judicial economy." *Village Builders on the Bay, Inc., v. Cowling*, 321 F. Supp. 3d 624, 630 (E.D. Va. 2018). In addition, "[t]he parties and the court have yet to expend significant resources on this case," mitigating any inconvenience caused by dismissal of the state-law claims without prejudice to refile in state court. *Id.* With respect to comity, "Virginia courts are better positioned to evaluate causes of action based upon Virginia law.... [as] 'the primary responsibility for developing and applying state law rests with state courts.' " *Id.* (citing *Dunlevy v. Coughlin*, No. 2:15cv347, 2016 WL 595300, at \*4 (E.D. Va. Feb. 10, 2016)).

**\*12**  Accordingly, the Court **RECOMMENDS** that defendant's motion to dismiss count two be **GRANTED** without prejudice to proceeding in state court.

## V. RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that defendant's motion to dismiss, ECF No. 27, be **GRANTED** as follows:

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 133 of 158

(1) Defendant's motion to dismiss plaintiff's TCPA claim in count one should be **GRANTED** and count one should be **DISMISSED WITHOUT PREJUDICE**; and

(2) Defendant's motion to dismiss plaintiff's VTPPA claim in count two should be **GRANTED** and count two should be **DISMISSED WITHOUT PREJUDICE** pursuant to the Court's discretion under 28 U.S.C. § 1367(c). [6]

### VI. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *See Thomas v. Arn,* 474 U.S. 140 (1985); *Carr v. Hutto,* 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce,* 727 F.2d 91 (4th Cir. 1984).

### All Citations

Not Reported in Fed. Supp., 2020 WL 9348208

---

### Footnotes

1    Home Warranty Administrators, Inc., is no longer a party in this matter. On May 8, 2020, Scruggs filed a notice of dismissal of claims against Home Warranty Administrators, Inc., ECF No. 11, and Scruggs did not bring claims against Home Warranty Administrators, Inc., in his first amended complaint, ECF No. 22.

2    The facts detailed below are set forth in the first amended complaint. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (observing that when addressing a Rule 12(b)(6) motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint").

3    Should the District Judge find that standing is lacking in this matter, then the Court would lack jurisdiction to analyze the merits of defendant's Rule 12(b)(6) arguments. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC,* 713 F.3d 175, 185 (4th Cir. 2013) ("[A] court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits."). For the purposes of this report and recommendation, however, the undersigned addresses defendant's Rule 12(b)(6) motion to aid the District Judge should she find that standing is present.

4    Because the Court agrees with defendant that plaintiff has not pled direct or vicarious TCPA liability, the Court finds it unnecessary to address the defendant's third argument contending that "Plaintiff ... fails to plead sufficient facts indicating a violation of the TCPA's [do-not-call] rules." ECF No. 27 at 22.

5    The parties dispute whether the private cause of action created by 47 U.S.C. § 227(c)(5) extends to the provisions of 47 C.F.R. § 64.1200(d). *See* ECF No. 27 at 23 (discussing cases that have recognized violations of § 64.1200(d) do not give rise to a private cause of action); ECF No. 32 at 20-22 (discussing cases that

Scruggs v. CHW Group, Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 134 of 158

have recognized a private cause of action for violations of 47 C.F.R. § 64.1200(d)); ECF No. 33 at 20–22. Recently, courts in the Fourth Circuit have found that the TCPA does not provide a private right of action for violations of 47 C.F.R. § 64.1200(d). *See Wilson v. PL Phase One Operations L. P.*, 422 F. Supp. 3d 971, 981–82 (D. Md. 2019) (observing that "the Fourth Circuit has not addressed whether 47 C.F.R. § 64.1200(d) provides a private right of action," but concluding that the section "appears to fall within subsection *d*'s scope, which does not provide a private right of action"); *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017) (observing that 47 C.F.R. § 64.1200(d) "appear[s] to fall under the aegis of subsection *d* of the TCPA" rather than under subsections *b* and *c*, which create private rights of action). The Court need not decide the issue, however, because Scruggs has not pled sufficient facts to allege that CHW is liable for the calls in question.

6    The Court declines to consider Scruggs' request for leave to amend his complaint should the Court grant the defendant's motion to dismiss. ECF No. 32 at 29. In general, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). In order "to determine whether 'justice so requires,' " however, "the court must have before it the substance of the proposed amendment." *Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 906 (6th Cir. 2002). Because Scruggs has not yet provided the Court with his proposed amendment(s), deciding his request at this stage would be premature. In order for the Court to consider such a request, Scruggs must file a motion seeking leave to amend the complaint with the proposed amendments attached.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Declined to Extend by Abramson v. AP Gas & Electric (PA), LLC, W.D.Pa., February 6, 2023

2020 WL 2474421

Only the Westlaw citation is currently available.

United States District Court, N.D. California.

David SHESKI, Plaintiff,

v.

SHOPIFY (USA) INC., et al., Defendants.

Case No. 19-cv-06858-HSG

|

Signed 05/13/2020

**Attorneys and Law Firms**

Jason Matthew Wucetich, Dimitrios Vasiliou Korovilas, Wucetich & Korovilas LLP, El Segundo, CA, for Plaintiff.

Christine Marie Reilly, Kristin Emily Haule, Manatt Phelps & Phillips LLP, Los Angeles, CA, John William McGuinness, Manatt, Phelps & Phillips, LLP, Washington, DC, for Defendants.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 15

HAYWOOD S. GILLIAM, JR., United States District Judge

**\*1** Pending before the Court is Defendants' motion to dismiss Plaintiff's class action complaint, for which briefing is complete. Dkt. No. 15 ("Mot."), 21 ("Opp."), 22 ("Reply"). For the reasons articulated below, the Court **GRANTS** Defendants' motion to dismiss, **WITH LEAVE TO AMEND**.

## I. BACKGROUND

On October 21, 2019, Plaintiff David Sheski filed a class action complaint on behalf of a putative nationwide class, alleging violations of the Telephone Consumer Protection Act ("TCPA"), and three state common law claims: negligence, invasion of privacy, and unlawful intrusion. Dkt. No. 1 ("Compl."). Plaintiff's claims are based on Defendant Shopify (USA) Inc. and Defendant Shopify Inc.'s (collectively, "Shopify" or "Defendants") alleged "unlawful practice of making, facilitating, and participating in unauthorized text message marketing campaigns en masse to consumers' cellular telephones." *Id.* ¶ 1. Shopify is an e-commerce company that "provides the infrastructure and software for online retailers to build their online presence, including their point-of-sale systems and specifically the tools to structure retailers' checkout webpages to collect consumers' personal identification information, including their cellular numbers." *Id.* ¶ 2.

Plaintiff purchased a product from the retailer Masorini, an online clothing store with no physical locations, whose website is "maintain[ed], operate[d], direct[ed] and/or otherwise control[led]" by Shopify. *Id.* ¶ 30. When processing the purchase on the website, Plaintiff used the online checkout form which "specifically brands it as a Shopify platform, labeling the online order form 'Shopify Checkout.' " *Id.* ¶ 30. It additionally included "a line item input field for consumers to provide their telephone number," where the form "indicates the telephone number is '(For shipping updates).' " *Id.* Specifically, "[t]here [was] no line item check-box on the checkout page for consumers to click to indicate their prior express written consent to have their phone number used for text advertisements." *Id.* After completing the purchase, Plaintiff "received two text messages to his cell phone," on or about November 26, 2018. *Id.* ¶ 31. Both messages read "Masorini: Hey David. Cyber Monday! 30% OFF – Code: "CM30" Shop here! [sic] – STOP 17908 to opt-out." *Id.* ¶¶ 31–32.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief

can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**\*2** In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citations and quotation marks omitted).

**III. ANALYSIS**
Defendants argue that Plaintiff fails to state a TCPA claim since the complaint fails to sufficiently allege that Defendants were "directly involved" with, or vicariously liable for, placing the texts at issue. Mot. at 6–16. Defendants also argue that Plaintiff fails to state a claim for the three common law claims. *Id.* at 18–21. The Court addresses each argument in turn below.

**A. TCPA**

The TCPA makes it unlawful

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call....

47 U.S.C. § 227(b)(1)(A)(iii). To state a claim under the TCPA, a Plaintiff must allege that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system ["ATDS"]; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *see also* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). A text message constitutes a "call" for purposes of the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2012).

**i. Direct Liability**

Defendants first argue that Plaintiff has failed to plead sufficient facts to establish that Shopify sent or was directly involved with sending the text messages at issue. Defendants point to the FCC's guidance in a 2015 order to argue that they do not qualify as having made a call under the TCPA and therefore cannot be liable for any TCPA violation. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7980–84 (2015) (hereinafter, "2015 TCPA Declaratory Ruling"), *set aside in part by ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir. Mar. 16, 2018).

The TCPA and its implementing regulations do not define the term "make a call" to determine who may be liable under the statute. The FCC has concluded that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *In the Matter of the Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013). As for whether entities that provide software applications or platforms that facilitate calling can be liable, the FCC explained that it "look[s] to the totality of the facts and circumstances surrounding the

placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." 2015 TCPA Declaratory Ruling, 30 FCC Rcd. at 7980. Applying this standard, the FCC determined that the maker of an app called TextMe did not make or initiate calls when its app users used the TextMe app to send invitational text messages; rather it was the app user that initiated the text messages through "affirmative choices." *Id.* at 7983. Specifically, the FCC found it significant that the "app user [had to]: (1) tap a button that reads 'invite your friends'; (2) choose whether to 'invite all their friends or [ ] individually select contacts'; and (3) choose to send the invitational text message by selecting another button." *Id.* at 7983–84.

**\*3** Defendants argue that similar to TextMe, they only provide a platform that third-party retailers use to send text messages to consumers. Shopify points to numerous cases in support of its position, primarily relying on *Meeks v. Buffalo Wild Wings, Inc.,* No. 17-cv-07129-YGR, 2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) and *Frank v. Cannabis & Glass, LLC,* No. 19-cv-00250-SAB, 2019 WL 4855378 (E.D. Wash. Oct. 1, 2019). In *Meeks,* the plaintiff provided his cellphone number to a restaurant hostess so he could be notified when his table was ready, and later received texts from the restaurant that included links to the website of platform provider Yelp. 2018 WL 1524067 at *1–2. The *Meeks* court held that "[w]hile plaintiff allege[d] that the restaurants use Yelp's 'platform' to send the offending text messages ... he d[id] not allege that Yelp decided whether, when, or to whom to send the messages." *Id.* at *5. Instead, "his allegations regarding Yelp pertain[ed] to its purported business model and the general advertising and analytics services Yelp provides to restaurants." *Id.* Somewhat similarly, in *Frank* the court dismissed the complaint, finding "no allegations that Defendant Springbig exercised any discernible involvement in deciding whether, when, or to whom the text message is sent, or what the text message said." 2019 WL 4855378 at *2. Here, Defendants argue that Plaintiff fails to provide any factual allegations that Defendants "exerted any control over the recipient lists, timing, or content of the texts sent by the users of the Shopify platform." Mot. at 12.

In response, Plaintiff argues that none of Defendants' cited cases are on point based on the allegations in the Complaint. Opp. at 14–15. For example, unlike the platform providers at issue in the other cases, Plaintiff alleges that "Shopify continues to be actively involved in its retailers' businesses both directly and indirectly" even

after the retailers select their platform package, by providing "the creation of an online store, 24/7 support from dedicated Shopify employees, ongoing business counseling services, shipping services, and the creation of a point-of-sale software system, among other things." Compl. ¶ 18. Additionally, Plaintiff points to (1) Shopify's receipt of a percentage of retailers' revenues, *id.* ¶ 25, (2) the use of the same SMS short code by different retailers as evidence of "a common Shopify or Shopify-approved source," *id.* ¶ 26, (3) Shopify's awareness, "based on its participation in the creation and maintenance of retailers' checkout pages, whether a particular retailer has obtained express written consent form a consumer to use the consumer's cellular telephone number for text message marketing campaigns," *id.* ¶ 23, and (4) Shopify's "counsel[ to retailers] on best practices with respect to data collections and text message marketing, including the content and timing of te[x]t message marketing campaigns," *id.* ¶ 22.

Importantly, however, these allegations do not lead to the inference that Shopify sent or was directly involved in sending the text messages at issue in this case. That Shopify provides the template for the checkout form, offers a suite of apps (including texting apps) that can integrate into its platform, provides counseling on best practices for marketing, and takes a percentage of the retailer's revenue, does not indicate that Shopify has any control over a retailer's actual text marketing campaigns. Further, much like Yelp's platform in *Meeks* or the TextMe application in the 2015 TCPA Declaratory Ruling, the fact that Shopify provides a platform to send the text messages such that the SMS short code is the same for all of the retailers does not lead to the inference that Shopify, rather than the individual retailer identified in the text itself, controlled the content of and sent the message. Here, Plaintiff received only two text messages, which specifically identified Masorini as the sender. *See* Compl. at ¶ 26.[1]

**\*4** Thus, even making all inferences in Plaintiff's favor, the allegations provide no factual basis to establish that Shopify was directly involved in the procurement of consumers' phone numbers, stores those numbers, transfers the numbers to texting apps, or approves the messages to be sent to those numbers. While Shopify might provide additional resources beyond those provided by the platform provider in *Meeks,* these resources and features do not suggest that Shopify has any control over any individual retailer's marketing campaigns. Instead, the factual allegations suggest that Shopify provides a platform with a suite of capabilities and options for the retailer, which then sends text messages to numbers obtained when processing a direct sale to a consumer, such as Plaintiff.[2]

Because Plaintiff fails to plead sufficient facts to show that Defendant sent the text messages, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's TCPA claim.

### ii. Vicarious Liability

Defendants next argue that Plaintiff fails to state a claim for vicarious liability under the TCPA. "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd*, 136 S. Ct. 663 (2016), as revised (Feb. 9, 2016). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement (Third) of Agency § 1.01 (Am. Law Inst. 2006)). "For an agency relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.' " *Id.* (quoting Restatement (Third) of Agency § 1.01 cmt. c).

Here, Plaintiff simply points to Shopify's relationship with its retailers as evidence of an agency relationship via explicit and implicit authorization. Opp. at 17–18. This is insufficient. There are no factual allegations that support any sort agency relationship outside of Plaintiff's conclusory statement that "Defendants and their agents transmit text messages." Compl. at ¶ 37. Instead, it appears (accepting the well-pleaded factual allegations as true, as the Court must at this stage) that Defendants provide a suite of software options for retailers, who then determine which options to utilize. "In order to allege a traditional agency relationship, Plaintiff would have to allege Defendant controlled or had the right to control [the entity responsible for the text messages] and, more specifically, the manner and means of the text message campaign they conducted." *Linlor v. Five9, Inc.*, No. 17-cv-218-MMA (BLM), 2017 WL 2972447, at *3 (S.D. Cal. July 12, 2017) (quotations omitted). The only semblance of an allegation suggesting that Masorini acted on Defendants' behalf is the claim that Defendants receive a percentage of retail sales by each retailer (ranging from 2% to 0.5% of sales depending on the plan selected). *See id.* at ¶ 18. But this in no way supports an inference that retailers act on Defendants' behalf or that Defendants have any sort of control over third-party retailers. The Complaint entirely fails to plausibly plead any sort of agency relationship.

**\*5** Accordingly, Plaintiff's vicarious liability claim is also **DISMISSED**.

### B. Common Law Claims

Defendants also argue that Plaintiff fails to state a claim for negligence, invasion of privacy or unlawful intrusion. Mot. at 18–21.

### i. Negligence

"Under California law, "[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." " *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 70 Cal. Rptr. 3d 519 (Cal. Ct. App. 2008)). Defendants argue that Plaintiff failed to allege any duty owed by Defendants to consumers, any breach of a general duty of care (since no specific duty is alleged), or any actual damages, even if breach was alleged. Mot. at 18–19. The Court agrees.

"[T]here is generally no duty to protect others from the conduct of third parties." *Regents of Univ. of California v. Superior Court*, 413 P.3d 656, 669 (Cal. 2018). "[P]laintiffs alleging a defendant had a duty to protect them must establish: (1) that an exception to the general no-duty-to-protect rule applies and (2) that the *Rowland* factors support the imposition of the duty." *Brown v. USA Taekwondo*, 253 Cal. Rptr. 3d 708, 723 (Cal. Ct. App. 2019), *as modified on denial of reh'g* (Nov. 6, 2019) (citing *Rowland v. Christian*, 443 P.2d 561 (Cal. 1968)). The *Rowland* factors include "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability

for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Regents*, 413 P.3d at 670 (quoting *Rowland*, 443 F.2d at 564).

Plaintiff fails to establish that Defendants' owe any duty to Masorini's customers. Plaintiff alleges that Defendants "failed to comply with third-party vendor rules, which require Defendants to have consumers' prior express written consent prior to sharing their personal identification information with the vendors," suggesting that these rules created a duty owed to Plaintiff and other consumers. Compl. at ¶ 52. Plaintiff provides no further allegations.[3] This vague reference to third-party vendor rules does not establish that an exception to the general rule applies, or that any duty should be imposed under *Rowland*. Moreover, for the same reasons discussed above, Plaintiff has failed to adequately plead that Defendants themselves sent the texts. As pled, Plaintiff's negligence claim thus fails.

**6** Plaintiff further fails to allege any damages in this case. The TCPA provides specific statutory damages for unconsented marketing calls precisely because proving damages from a marketing phone call or a text is particularly difficult. Here, Plaintiff entered his phone number into the retail checkout and received two marketing texts afterwards. Plaintiff has not even alleged that he was charged for those texts or that he received other texts due the dissemination of the phone number outside of the retailer such that the conduct was particularly oppressive or a nuisance.

Because Plaintiff fails to adequately plead duty or damages, the Court dismisses the negligence cause of action for failure to state a claim.

### ii. Invasion of Privacy or Unlawful Intrusion

As Defendants note, it is not entirely clear what claim Plaintiff is attempting to state under the third and forth causes of action. "At common law there are four kinds of invasion of privacy actions which sound in tort ... (1) unreasonable intrusion upon solitude; (2) appropriation of name or likeness; (3) unreasonable publicity given to private life; and (4) publicity that unreasonably places one in a false light." *Alim v. Superior Court*, 229 Cal. Rptr. 599 (Cal. Ct. App. 1986). Plaintiff's third purported cause of action is invasion of privacy and his fourth purported cause of action is unlawful intrusion, but unlawful intrusion is simply one alternative means of stating an invasion of privacy claim. So the Court assumes that Plaintiff is claiming unreasonable intrusion upon solitude.

That tort subjects to liability "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ..., if the intrusion would be highly offensive to a reasonable person." *Taus v. Loftus*, 151 P.3d 1185, 1212 (Cal. 2007). Plaintiff does not allege any facts sufficient to support such a claim here. Even accepting Plaintiff's factual allegations, he voluntarily entered his phone number into the form, and even if he provided the number solely for "shipping updates," as a matter of law using that phone number to send two texts for other purposes related to the retailer does not rise to the level of being "highly offensive to a reasonable person." *See Folgelstrom v. Lamps Plus, Inc.*, 125 Cal. Rptr. 3d 260, 266 (Cal. Ct. App. 2011), *as modified* (June 7, 2011) (holding that defendant's "conduct of obtaining his ZIP code under false pretenses and using it for its own marketing purposes ... [did] not meet the standard of 'highly offensive.' "); *see also Marseglia v. JP Morgan Chase Bank*, 750 F. Supp. 2d 1171, 1178 (S.D. Cal. 2010) (dismissing an invasion of privacy claim where defendant placed 50 calls to plaintiff, but "there [were] no facts alleged upon which this Court could infer plaintiffs ever answered any of these calls or defendant ever made any direct contact with plaintiffs that might be construed as annoying or harassing conduct.").

Accordingly, the Court dismisses Plaintiff's third and fourth causes of action for failure to state a claim.

### IV. CONCLUSION

For the reasons noted above, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's Class Action Complaint for failure to state a claim **WITH LEAVE TO AMEND**.[4] Any amended complaint must be filed within twenty-eight (28) days of the date of this order, and Plaintiff may not add any new claims or defendants in any such complaint.

**7 IT IS SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2020 WL 2474421

Footnotes

Sheski v. Shopify (USA) Inc., Not Reported in Fed. Supp. (2020)

1     The timing of the texts further belies Plaintiff's allegation that Defendant sent the text messages at issue. Similar to *Meeks*, the texts were sent after Plaintiff interacted with the retailer, providing his number for "shipping updates." *See* 2018 WL 1524067 at *4 ("[T]he complaint indicates that the timing of the text messages was linked to information in the [retailer's], not [Defendants'] possession.").

2     In his Opposition to Defendant's motion to dismiss, Plaintiff references facts not in the Complaint to support his argument that Defendant was directly involved in sending the text messages. *See* Opp. at 7–9. However, "[a] Complaint cannot be amended through allegations made in an opposition to a motion to dismiss." *Remington v. Mathson*, 42 F. Supp. 3d 1256, 1278 n.3 (N.D. Cal. 2012), *aff'd*, 575 F. App'x 808 (9th Cir. 2014). Accordingly, the Court does not consider these new facts. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

3     Again, Plaintiff attempts to add facts in his Opposition that are not in the Complaint to support its argument that Defendants owed a duty of care. *See* Opp. at 18–19. The Court will not consider these new allegations.

4     The Court need not address Defendants' motion to strike and it is **DENIED AS MOOT**. Depending on the nature of an amended complaint, if any, Defendants may raise the argument again.

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Smith v. Direct Building Supplies, LLC, Not Reported in Fed. Supp. (2021)

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 141 of 158

KeyCite Yellow Flag - Negative Treatment

Declined to Extend by    Abramson v. AP Gas & Electric (PA), LLC, W.D.Pa.,   February 6, 2023

2021 WL 4623275

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

Stewart SMITH, individually and on behalf
of all others similarly situated, Plaintiff,

v.

DIRECT BUILDING SUPPLIES, LLC and Does 1
through 10, inclusive, and each of them, Defendants.

CIVIL ACTION No. 20-3583
|
Filed 10/07/2021

**Attorneys and Law Firms**

Cynthia Z. Levin, Law Offices of Todd M. Friedman PC, King of Prussia, PA, for Plaintiff.

Brian J. Murren, Kevin L. Hall, Tucker Arensberg, P.C., Lemoyne, PA, for Defendant Direct Building Supplies LLC.

## MEMORANDUM

Schiller, District Judge

**\*1** Stewart Smith alleges that Direct Building Supplies, LLC, its subsidiaries, and its agents (collectively, "Direct Building Supplies"[1]) violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by unlawfully contacting Smith and purported class members to solicit them to purchase Direct Building Supplies' services without their consent and while they were on the National Do-Not-Call ("DNC") Registry. Before the Court is Direct Building Supplies' Motion to Dismiss Smith's First Amended Complaint ("FAC"), in which Direct Building Supplies contends that Smith's factual allegations fail to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Direct Building Supplies also maintains that Smith's class allegations and definitions are deficient as a matter of law and thus should be stricken pursuant to Fed. R. Civ. P. 12(f).

This is not Smith's first trip to the courthouse alleging violations of the TCPA. For example, in May 2020, Smith

filed a TCPA lawsuit in this District against renewable energy company Vision Solar. Smith's claims here echo his allegations against Vision Solar and the several other companies he has sued. For its part, several portions of Direct Building Supplies' Motion to Dismiss are virtually identical to the defendant's motion to dismiss in the Vision Solar action. It is as if the Court is receiving one of the robocalls Smith disdains.

Nevertheless, the Court finds that the FAC's factual allegations fail to state a claim under the TCPA. Accordingly, the Court will grant Direct Building Supplies' Motion to Dismiss without prejudice, and will also grant Smith leave to file a second amended complaint.

## I. FACTUAL BACKGROUND

Direct Building Supplies is a construction and home contracting company. (FAC ¶ 5.) Smith alleges that Direct Building Supplies called Smith's cellular phone number ending in -6860 five times within a four-month span at the end of 2019 and beginning of 2020: on or around October 4, 2019; October 6, 2019; November 1, 2019; January 17, 2020; and January 21, 2020. (*Id.* ¶¶ 8-10.) During each of these calls, there was a "noticeable pause and delay before Defendant came on the line" and attempted to sell its services to Smith. (*Id.* ¶¶ 8-9, 19.) The calls were of an "impersonal nature." (*Id.* ¶¶ 9, 11.)

Smith never provided his consent to Direct Building Supplies to receive calls on his cellular phone that were made using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice. (*Id.* ¶ 13.) Smith and Direct Building Supplies had no relationship prior to the October 4 call. (*Id.* ¶ 9.) Smith's cellular phone number ending in -6860 was registered on the National DNC Registry on June 11, 2010. (*Id.* ¶ 15.)

The FAC seeks to certify two classes. The first is the "ATDS Class," defined as "[a]ll persons within the United States who received any solicitation/telemarketing telephone calls from Defendant or its agent to said person's cellular telephone for whom Defendant has no record of prior express consent for such calls within the four years prior to the filing of this Complaint." (*Id.* ¶ 24.) The second is the "DNC Class," defined as "[a]ll persons within the United States registered on the National Do-Not-Call Registry for at least 30 days who received more than one call made by or on behalf of Defendant that promoted Defendant's products or services,

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 142 of 158

Smith v. Direct Building Supplies, LLC, Not Reported in Fed. Supp. (2021)

within any twelve-month period, within four years prior to the filing of the complaint." (*Id.* ¶ 25.)

**\*2** The FAC contains four counts. Counts I and II, brought by Smith on behalf of the ATDS Class, allege that Direct Building Supplies violated TCPA § 227(b) by placing calls using an ATDS or pre-recorded voice without the class members' prior express consent. Counts III and IV, brought by Smith on behalf of the DNC class, allege that Direct Building Supplies violated TCPA § 227(c)(5) and related regulations by placing multiple calls to class members' phones registered on the National DNC Registry within a twelve-month span.

Direct Building Supplies moved to dismiss all counts on November 25, 2020. Smith filed a timely response in opposition on December 8, 2020. Smith also requested leave to amend his pleadings to address, *inter alia*, any "lack of sufficient allegations" in the event the Court granted Direct Building Supplies' Motion to Dismiss. (Pl.'s Opp'n to Def.'s Mot. to Dismiss ["Pl.'s Opp'n"] at 10.)

On March 15, 2021, counsel for Smith wrote a letter to the Court directing its attention to *Smith v. Vision Solar LLC*, Civ. A. No. 20-2185, 2020 WL 7230975 (E.D. Pa. Dec. 8, 2020) ("*Vision Solar II*"), an opinion in another TCPA case filed by Smith and a co-plaintiff in this District. Smith's counsel wrote that in *Vision Solar II*, "the Honorable Judge Michael Baylson issued an order denying in full that Motion to Dismiss on which [Direct Building Supplies' motion] is based" in this action. Counsel for Smith further pointed out that Direct Building Supplies' "Motion was an almost verbatim copy of a Motion to Dismiss filed and pending in" the Vision Solar action, written by attorneys at a different law firm. [2]

*Vision Solar II* came three months after *Smith v. Vision Solar LLC*, Civ. A. No. 20-2185, 2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) ("*Vision Solar I*"), in which Judge Baylson dismissed Smith and his co-plaintiff's First Amended Complaint for failure to state a claim. Judge Baylson also granted Smith and his co-plaintiff leave to amend the first amended complaint to address deficiencies both in their factual and class allegations, culminating in *Vision Solar II*.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint and make all reasonable inferences in favor of the non-moving

party. *Bd. of Trustees of Bricklayers & Allied Craftsmen Loc. 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 272 (3d Cir. 2001). Fed. R. Civ. P. 8(a)(2) provides that "a pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." This claim for relief must be "plausible on its face," containing "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* In other words, a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

## III. DISCUSSION

### A. Counts I and II: The ATDS Claims

To state a claim under TCPA § 227(b), a plaintiff must allege: "(1) the defendant called a cellular telephone number; (2) using an [ATDS or prerecorded or artificial voice]; (3) without the recipient's prior express consent." *Zemel v. CSC Holdings LLC*, Civ. A. No. 18-2340, 2018 WL 6242484, at \*3 (D.N.J. Nov. 29, 2018). Direct Building Supplies argues that the FAC does not state a cause of action under TCPA § 227(b) because it does not contain facts that support a finding that Direct Building Supplies called Smith using an ATDS. Direct Building Supplies also argues that the FAC does not include any factual allegations that plausibly suggest that Direct Building Supplies placed phone calls to Smith in the first instance, since it is bereft of allegations concerning the names and identities of the persons with whom Smith allegedly spoke on the phone, as well as the substance of his conversations with those persons.

**\*3** An ATDS is a piece of equipment with the capacity to "either to store a telephone number using a random or sequential number generator, or to produce a telephone number using a random or sequential number generator," and to dial such numbers. *Facebook, Inc. v. Duguid*, ––– U.S. ––––, 141 S. Ct. 1163, 1167, 209 L.Ed.2d 272 (2021). A plaintiff must provide "at least some [ ] detail regarding the content of the messages or calls, thereby rending the claim that an ATDS was used more plausible." *Camunas v. Nat'l Republican Senatorial Comm.*, Civ. A. No. 21-1005, 2021 WL 2144671 (E.D. Pa. 2021) (quoting *Zemel*, 2018 WL 6242484, at \*3). "[C]ourts in this district continue to find that an allegation of a brief pause at the beginning of a call is sufficient to plead the ATDS element." *Hazan v. Wells Fargo*

Case 1:25-cv-00927-KMN     Document 23-9     Filed 08/29/25     Page 143 of 158

Smith v. Direct Building Supplies, LLC, Not Reported in Fed. Supp. (2021)

*Home Mortg.*, Civ. A. No. 18-10228, 2020 WL 919183, at *3 (D.N.J. Feb. 26, 2020); *see also Vision Solar II*, 2020 WL 7230975, at *4 ("For Rule 12 purposes, the distinctive pause at the beginning of repeated marketing calls allows an inference that the caller was using an ATDS.")

Further, "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone." *Scruggs v. CHW Grp., Inc.*, Civ. A. No. 20-48, 2020 WL 9348208, at *10 (E.D. Va. Nov. 12, 2020); *see also Vision Solar I*, 2020 WL 5632653, at *3 (quoting *Aaronson v. CHW Group, Inc.*, Civ. A. No. 18-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019)) ("[W]ithout any facts to explain why plaintiff believes the identified phone number is owned by defendant, ... plaintiff has failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations do not show plausibly that defendant actually, physically initiated the telephone calls at issue.").

The Court finds that the FAC has sufficiently alleged the use of an ATDS by Direct Building Supplies, as it alleges that there was a "noticeable pause and delay before Defendant came on the line" during each of the five offending calls, as well as that Smith had no prior relationship with Direct Building Supplies prior to the October 4 call. (FAC ¶ 9.)

However, Smith has not pleaded facts sufficient to identify Direct Building Supplies as the initiator of the offending calls. The FAC merely states that "Defendant contacted Plaintiff on Plaintiff's cellular telephone number ending in -6860, in an attempt to solicit Plaintiff to purchase Defendant's services," "Defendant [ ] called Plaintiff," and that "Defendant placed multiple calls soliciting its business to Plaintiff." (*Id.* ¶¶ 8, 10, 18.) The FAC, however, provides no details specifying how Smith knew that Direct Building Supplies in fact placed these calls, such as that Direct Building Supplies' name appeared in the caller ID on Smith's cellular phone, the persons with whom Smith spoke identified themselves as representatives of Direct Building Supplies, or the services these persons attempted to sell were construction or home contracting services. Smith's opposition does not address Direct Building Supplies' arguments on this point; it merely puts forth that "Defendant sought to solicit its services to Plaintiff and thus the calls were solicitation calls" and that "[t]hese calls were from Defendant." (Pl.'s Opp'n at 7-10.) These circular, conclusory allegations constitute the "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that do not pass muster under the *Iqbal* pleading standard.

Further, Smith's allegations regarding the identity of the initiator of the calls are even more barren than those provided in *Vision Solar I*, *Aaronson*, and *Scruggs*, all of which featured TCPA claims that were dismissed because of a failure to plead details sufficient to identify the caller. *See Vision Solar I*, 2020 WL 5631653, at *3 (finding that plaintiffs did not sufficiently plead that the calls in question came from defendant when they only alleged that "Defendant contacted or attempted to contact [one of the Plaintiffs] from multiple telephone numbers confirmed to belong to Defendant"); *Scruggs*, 2020 WL 9348208, at *10 ("The sole factual allegation linking [Defendant] to the calls is that the caller identified himself as 'associated with [Defendant]' " which is "insufficient under the *Iqbal* pleading standards"); *Aaronson*, 2019 WL 8953349, at *2 ("The lone fact marshaled in the Complaint that even comes close to supporting plaintiff's conclusion that defendant was the party that called his cellular telephone is the allegation that one of the calls made to plaintiff was from a telephone number that, according to the Complaint, 'is one of the Defendant's many telephone numbers.' But without any facts to explain why plaintiff believes the identified phone number is owned by defendant, this allegation amounts to nothing more than another conclusory allegation that defendant made the calls to plaintiff's cellular phone.").

**\*4** Smith has therefore failed to plausibly allege that the five calls in question came from Direct Building Supplies, as TCPA § 227(b) claims require. The Court will dismiss the ATDS claims without prejudice and will permit Smith to amend the complaint to provide further relevant information.

### B. Counts III and IV: DNC Claims
To establish a DNC claim under TCPA § 227(c)(5) and related regulations, a plaintiff must plead facts that plausibly demonstrate: (1) they received multiple calls within twelve months, (2) from the same entity, (3) to a phone number registered on the National DNC Registry. *See Huber v. Pro Custom Solar, LLC*, Civ. A. No. 19-1090, 2020 WL 2525971, at *2 (M.D. Pa. May 18, 2020) (citing 47 C.F.R. § 64.1200(c)(2)). Here too the Court agrees with Direct Building Supplies that Smith's DNC claims fail because the FAC does not contain facts sufficient to establish that Direct Building Supplies placed the offending phone calls. The Court will thus dismiss the DNC claims without prejudice and will permit Smith to amend the complaint to provide further relevant information.

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 144 of 158

**Smith v. Direct Building Supplies, LLC, Not Reported in Fed. Supp. (2021)**

## IV. CONCLUSION

For the reasons set forth above, Direct Building Supplies' Motion to Dismiss is granted, but Smith may file an amended complaint. Direct Building Supplies' Motion to Strike is denied as moot. An Order consistent with this Memorandum will be docketed separately.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 4623275

---

## Footnotes

1    Smith brings the FAC against Direct Building Supplies, LLC and ten unidentified Doe defendants, whom he alleges constitute Direct Building Supplies, LLC's subsidiaries and agents.

2    In the future, counsel would be wise to not lift much of the language in its papers word-for-word from other attorneys.

---

**End of Document**                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN   Document 23-9   Filed 08/29/25   Page 145 of 158

Smith v. Vision Solar LLC, Not Reported in Fed. Supp. (2020)

2020 WL 5632653

KeyCite Yellow Flag
Distinguished by   Abramson v. AP Gas & Electric (PA), LLC,   W.D.Pa.,
March 30, 2023

2020 WL 5632653
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Stewart SMITH; Fred Civil Action
Heidarpour, Individually and on Behalf of
All Others No. 20-2185 Similarly Situated,
v.
VISION SOLAR LLC, and Does 1–10

CIVIL ACTION NO. 20-2185
|
Filed 09/21/2020

**Attorneys and Law Firms**

Cynthia Z. Levin, Law Offices of Todd M. Friedman PC, King
of Prussia, PA, for Stewart Smith, Fred Heidarpour.

Colin David Dougherty, Fox Rothschild LLP, Blue Bell, PA,
Brett Adam Berman, Fox Rothschild LLP, Samuel A. Haaz,
Haggerty Goldberg Schleifer & Kupersmith, Philadelphia,
PA, for Vision Solar LLC.

**MEMORANDUM**

Baylson, District Judge

**I. Introduction**

**\*1**  Plaintiffs are suing over alleged violations of the
Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §
227. In their Amended Complaint, ECF 2, Plaintiffs allege
Vision Solar LLC and its unidentified agents Does 1–10
(collectively "Vision Solar") violated the TCPA's prohibitions
on use of automatic telephone dialing systems ("ATDS") and/
or contacting phone numbers on the National Do Not Call
Registry ("DNC List").

Before the Court now is Vision Solar's motion to dismiss. ECF
7. Vision Solar asks the Court to dismiss Plaintiffs' claims
and to strike Plaintiffs' class action allegations. In response
to Vision Solar's motion, Plaintiffs requested leave to amend
their complaint a second time to address several of Vision
Solar's arguments. For the reasons given below, the Court

will **GRANT** Vision Solar's motion, will dismiss Plaintiffs'
Amended Complaint without prejudice, and will **GRANT**
leave for Plaintiffs to file a second amended complaint within
14 days from the date of this Memorandum and Order.

**II. Factual and Procedural History**

Assuming as true Plaintiffs' allegations, Vision Solar LLC
is a solar and renewable energy company. Am. Compl. ¶
6. Beginning in or around September 2019, Vision Solar
attempted to contact named plaintiffs Stewart Smith, a
resident of Montgomery County, Pennsylvania, and Fred
Heidarpour, a resident of Maricopa County, Arizona, by
telephone. Id. ¶¶ 4, 5, 9, 10.

Vision Solar called each of the named plaintiffs repeatedly,
from at least four different telephone numbers that belong to
Vision Solar. Id. ¶¶ 12, 13. Smith received these calls on his
cell phone; Heidarpour received these calls on his landline.
Id. ¶¶ 9, 10. Vision Solar made these calls for the purpose
of soliciting its business. Id. ¶¶ 19, 20. Neither Smith nor
Heidarpour had given prior express consent to receive calls
from ATDS or using artificial or prerecorded voices. Id. ¶¶
15, 16.

These calls utilized an ATDS. Id. ¶ 11. Both Smith and
Heidarpour's phone numbers were on the DNC List at the
relevant time for each phone call. Id. ¶¶ 17, 18.

Plaintiffs further allege that Smith and Heidarpour represent
two different classes: the ATDS Class and the DNC Class. Id.
¶ 25.

The **ATDS Class** consists of:

> All persons within the United States who received any
> solicitation/telemarketing telephone calls from Defendant
> to said person's cellular telephone made through the use
> of any automatic telephone dialing system or an artificial
> or prerecorded voice and such person had not previously
> consented to receiving such calls within the four years prior
> to the filing of this Complaint.
>
> Id. ¶ 26.

The **DNC Class** consists of:

> All persons within the United States registered on the
> National Do-Not-Call Registry for at least 30 days, who
> had not granted Defendant prior express consent nor had

Smith v. Vision Solar LLC, Not Reported in Fed. Supp. (2020)

2020 WL 5632653

a prior established business relationship, who received more than one call made by or on behalf of Defendant that promoted Defendant's products or services, within any twelve-month period, within four years prior to the filing of the complaint.

**\*2** Id. ¶ 27.

Plaintiffs filed suit against Vision Solar on May 6, 2020. ECF 1; Plaintiffs then filed the Amended Complaint on May 8, 2020. ECF 2. Vision Solar LLC moved to dismiss Plaintiffs' claims on July 17, 2020. ECF 7. Plaintiffs responded on July 31, 2020. ECF 8. Vision Solar LLC then replied on August 7, 2020. ECF 9.

Plaintiffs assert four causes of action against Vision Solar in the Amended Complaint on behalf of the named plaintiffs and the members of the respective classes:

I. Negligent violation of the TCPA under § 227(b)

II. Knowing and/or willful violation of the TCPA under § 227(b)

III. Negligent violation of the TCPA under § 227(c)

IV. Knowing and/or willful violation of the TCPA under § 227(c)

Counts I and II allege unlawful use of an ATDS to contact Plaintiffs. Counts II and IV allege unlawful violation of the DNC List's protections. Vision Solar's contentions against these claims, as well as the proposed class definitions, are discussed in more detail below.

### III. **Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Although a court must accept all factual allegations contained in a complaint as true, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

### IV. **Discussion**

a. Class Definitions under Rule 12(f)

Vision Solar argues that "Plaintiffs' TCPA class allegations fail because, if granted as requested, [they] would create impermissible fail-safe classes." MtD at 7. Plaintiffs "do not dispute, at this point, that the Classes as proposed are likely fail-safe." Opp. to MtD at 3.

Instead, Plaintiffs request leave to amend the class definitions. Pursuant to the Federal Rules of Civil Procedure, "a party may amend its pleading once as a matter of course," and a court "should freely give leave [for subsequent amendments] when justice so requires." Fed. R. Civ. Pro. 15(a). "The district court may deny leave to amend only if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party." Adams v. Gould Inc., 739 F.2d 858, 864 (3d Cir. 1984). Therefore, the Court will dismiss the class definitions without prejudice and, seeing no reason to deny Plaintiffs' request, will permit Plaintiffs to amend their class definitions. [1]

b. Counts I and II: Violation of TCPA § 227(b) ("ATDS Claims")

**\*3** The Amended Complaint raises two related counts under 47 U.S.C. § 227(b); by using an ATDS to call the ATDS Class, Vision Solar either (Count I) negligently or (Count II) knowingly and/or willfully violated the TCPA by calling Plaintiffs with an ATDS, Am. Compl. at ¶¶ 43, 47. "To state a cause of action under [§ 227(b) of] the TCPA, a plaintiff must allege: '(1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express consent.' " Zemel v. CSC Holdings LLC, Civil Action No.

Case 1:25-cv-00927-KMN   Document 23-9   Filed 08/29/25   Page 147 of 158

18-2340-BRM-DEA, 2018 WL 6242484, at *3 (D.N.J. Nov. 29, 2018) (citing Martinez v. TD Bank USA, No. 15-7712, 2017 WL 2829601, at *4 (D.N.J. June 30, 2017)).

Vision Solar argues that Plaintiffs failed to plead sufficient facts to satisfy the second prong — use of an ATDS calling system. MtD at 11. "The entirety of Plaintiffs' allegations in support of Defendant's alleged use of an ATDS consists of a single sentence: 'Defendant used an automatic telephone dialing system ... to place its call to Plaintiffs.' " Id. But Plaintiffs respond that they provided further facts of the alleged abuse of an ATDS: Vision Solar "called Smith multiple times from five different phone numbers [and t]he calls were to solicit Smith to purchase Defendant's services," despite "no prior business relationship" with Vision Solar. Opp. to MtD at 7.

A "bare allegation that defendants used an ATDS is not enough." Zemel, 2018 WL 6242484, at *3 (citing cases). "A plaintiff must provide 'at least some detail regarding the content of the messages or calls, thereby rending the claim that an ATDS was used more plausible.' " Id. (brackets omitted).

Plaintiffs' Second Amended Complaint must contain sufficient facts for the Court to conclude that Plaintiffs' claims are "plausible."

### c. Counts III and IV: Violation of TCPA § 227(c) ("DNC Claims")

The remaining two counts claim that Vision Solar repeatedly called Plaintiffs who had registered their phone numbers to the DNC List, constituting (Count III) negligent or (Count IV) knowing and/or willful violations of 47 U.S.C. § 227(c). To sustain the DNC Claims, Plaintiffs must plead that (1) they receive multiple calls within twelve months, (2) by or on behalf of the same entity, (3) on a residential phone registered on the DNC List. Huber v. Pro Custom Solar, LLC, No. 3:19-cv-01090, 2020 WL 2525971, at *2 (M.D. Pa. May 18, 2020) (citing 47 C.F.R. § 64.1200(c)(2)).

#### i. Plaintiff Smith's DNC Claims

As a preliminary issue, Vision Solar notes that Plaintiffs never pleaded that Smith's cell phone line in question is his residential phone, as required for a claim under § 227(c). MtD at 17. Plaintiffs concede that they have not pleaded sufficient

facts for Smith's DNC Claims but request leave to amend the complaint to cure the defect. The Court will dismiss Smith's DNC Claims without prejudice and permit Plaintiffs to amend the pleadings anew to address this deficiency.

#### ii. Plaintiff Heidarpour's DNC Claims

Vision Solar also contends that Plaintiffs' Amended Complaint "is devoid of factual content necessary to form a nexus between Defendant and the allegedly offending calls." MtD at 9. In the Amended Complaint, Plaintiffs state that "Defendant contacted or attempted to contact Heidarpour from multiple telephone numbers confirmed to belong to Defendant." Am. Compl. at ¶ 13. Plaintiffs' Opposition does not point to any further information in the pleadings to justify this conclusion.

In a TCPA case, the plaintiff must plead facts to justify that a call came from the defendant. Aaronson v. CHW Group, Inc., Case No. 1:18-cv-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) ("[W]ithout any facts to explain why plaintiff believes the identified phone number is owned by defendant, ... plaintiff has failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations do not show plausibly that defendant actually, physically initiated the telephone calls at issue."). In Aaronson, the plaintiff's "lone fact marshalled ... supporting plaintiff's conclusion that defendant was the party that called his cellular telephone" was that incoming telephone number was "one of the Defendant's many telephone numbers." Id. The court found this to be insufficient. Id. In light of Aaronson, the Court agrees with Vision Solar that Plaintiffs have not sufficiently pleaded that the calls in question came from Vision Solar. The Court will dismiss the DNC Claims for Heidarpour without prejudice but will permit Plaintiffs to amend the complaint to provide further relevant information.

### V. Conclusion

**\*4** For the reasons set forth above, Vision Solar's Motion to Dismiss is GRANTED, without prejudice and with leave to amend.

An appropriate Order follows.

### All Citations

Not Reported in Fed. Supp., 2020 WL 5632653

2020 WL 5632653

---

## Footnotes

1    Vision Solar argues that the Court should not grant leave to amend without a formal motion, but the Court may grant leave to amend <u>sua sponte</u> where it is "conceivable that plaintiffs possess additional facts sufficient to cure those deficiencies" identified in a motion to dismiss. <u>Magnesita Refractories Co. v. Tianjin New Centuries Refractories Co., Ltd.,</u> Civil Action No. 1:17-cv-1587, 2019 WL 1003623, at *11 (M.D. Pa. Feb. 28, 2019).

---

**End of Document**                               © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Winner v. Kohl's Department Stores, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3535038

🚩 KeyCite Yellow Flag

Declined to Follow by    Montanez v. Future Vision Brain Bank, LLC,
D.Colo.,    April 29, 2021

2017 WL 3535038
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Lynne WINNER and Destiny Jennings, on their own
behalf and on behalf of all others similarly situated

v.

KOHL'S DEPARTMENT STORES, INC.

CIVIL ACTION No. 16-1541
|
Filed 08/17/2017

**Attorneys and Law Firms**

Sergei Lemberg, Stephen F. Taylor, Lemberg Law LLC,
Wilton, CT, for Lynne Winner and Destiny Jennings.

Edward J. Mullins, III, Edward J. Mullins III, Esq. LLC,
Bayonne, NJ, Jeffrey S. Jacobson, Lauri A. Mazzuchetti,
Kelley Drye & Warren LLP, Parsippany, NJ, for Kohl's
Department Stores, Inc.

**MEMORANDUM**

John R. Padova, District Judge

 **\*1** Defendant, Kohl's Department Stores, Inc. ("Kohl's")
moves to dismiss the First Amended Complaint ("FAC")
filed by Lynne Winner and Destiny Jennings under Federal
Rule of Civil Procedure 12(b)(6) for failure to state a claim
upon which relief may be granted or, in the alternative, under
Rule 12(b)(1) for lack of standing/subject matter jurisdiction.
The case is filed as a class action alleging that Kohl's
sent unauthorized autodialed telemarketing text messages to
Plaintiffs' cellular telephones in violation of the Telephone
Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), and
its implementing regulations. For the following reasons, the
Motion is granted and the FAC is dismissed pursuant to Rule
12(b)(1).

**I. FACTS**

A. The FAC

In the FAC, Plaintiffs allege that Plaintiff Lynne Winner
("Winner") is a consumer residing in Collegeville,
Pennsylvania. (FAC ¶ 6.) Plaintiff Destiny Jennings
("Jennings") is a consumer residing in Jacksonville, Florida.
(Id. ¶ 7.) Kohl's is a Delaware corporation headquartered in
Menomonee Falls, Wisconsin. (Id. ¶ 8.)

In the four years prior to the filing of Winner's and Jennings's
initial Complaint, Kohl's began sending both Plaintiffs
telemarketing text messages to their cellular telephones.
(Id. ¶¶ 22, 27-28, 30-31, 46-51.) Kohl's had advertised to
consumers the ability to earn frequent-shopper "points" by
downloading its mobile application and texting the word
"APP" to receive instructions regarding the application.
(Id. ¶ 23.) The bottom of the advertisement contained a
"disclaimer" which Plaintiffs characterize as "barely visible
and unreadable." (Id. ¶ 26.)

Plaintiff Winner texted the "APP" message to Kohl's on
October 24, 2014, and, within 15 minutes, Kohl's sent her
a text message (1) advertising its mobile application and its
"Yes2YouRewards" promotions program, and (2) directing
her to click on a link in the text message "[t]o enroll in
Yes2You." (Id. ¶ 27.) It then sent a separate text message
advertising its "Mobile Sale Alerts" program, directing her
to text "Save30" to participate in "saving sent straight to
your phone!" (Id. ¶ 28.) Shortly thereafter, Kohl's received a
text message from Winner's cellular telephone number stating
"SAVE30." (Id. ¶ 29.) It then began sending Winner five to
seven text messages a month stylized as "KohlALERTS." (Id.
¶¶ 30-31.) Winner alleges that she "repeatedly requested
that Kohl's stop sending messages to her, but her requests
went unheeded." (Id. ¶ 32.) She also visited a Kohl's store
and asked an employee to get the text messages to stop,
but the Kohl's employee was unable help make the text
messages stop. (Id. ¶ 33.) On March 24, 2016, after receiving
a "STOP" message from Winner's phone, Kohl's stopped
sending her text messages. (Id. ¶ 34.) Winner alleges that she
did not intentionally sign up to receive Defendant's autodialed
telemarketing text messages, Kohl's never obtained her signed
written consent to send her the texts, and Kohl's never
provided her with any disclosures required for a valid
electronic signature. (Id. ¶¶ 37-39.)

 **\*2** On November 22, 2014, Kohl's received a message
stating "SAVE07" from Plaintiff Jennings's cellular telephone
number. (Id. ¶ 46.) "SAVE07" is one of Kohl's "calls
to action" that initiates the sending of text messages to
consumers. (Id. ¶ 47.) Plaintiffs allege that, as part of

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 150 of 158
Winner v. Kohl's Department Stores, Inc., Not Reported in Fed. Supp. (2017)
2017 WL 3535038

Defendant's corporate marketing strategy, it "routinely used such 'calls to action' that contained small print." (Id. ¶ 48.) After receiving the "SAVE07" message from Jennings's cellular telephone number, Kohl's sent Jennings a text message "Welcome to Kohl's Mobile Alerts! ... Get 7 msgs per month. Reply HELP for HELP. STOP to cancel." (Id. ¶ 49.) Kohl's then sent Jennings a separate text message advertising sales promotions on its website. (Id. ¶ 50.) Thereafter, Kohl's sent Jennings approximately seven messages a month advertising various sales promotions. (Id. ¶ 51.)

Plaintiffs allege that the text messages Kohl's sent them constituted telemarketing as they advertised sales and promotions available at its retail stores and on its website. (Id. ¶¶ 40, 57.) The messages were automated, part of Defendant's corporate direct marketing strategy, and were not individualized to the Plaintiffs. (Id. ¶¶ 41-43, 58-59.) The messages were sent using an automatic telephone dialing system, which has the capacity to store or produce telephone numbers to be texted, using a random or sequential generator, or from a database of numbers, and to text thousands of such numbers without human intervention. (Id. ¶¶ 44-45, 60, 64-68.) "Defendant acquired Plaintiffs' numbers, stored them in a databased connected to its telephonic or computer system, and then used its system to send identical text messages to Plaintiffs' and thousands of other consumers' cellular telephones automatically and without human intervention." (Id. ¶ 63.) No human was involved in the sending of Defendant's text messages to Plaintiffs, who received identical text messages which were the same messages received by thousands of other consumers who were enrolled in Defendant's telemarketing text messaging campaign. (Id. ¶ 64.)

Plaintiffs assert that they were annoyed by Defendant's messages and considered them spam. (Id. ¶¶ 35, 54.) They further allege they were never clearly and conspicuously informed that they were enrolling to receive automated telemarketing text messages to their cellular telephones. (Id. ¶¶ 36, 55.) Neither Plaintiff intentionally signed up for Defendant's telemarketing text messages, the messages came as a surprise and inconvenience, and became a concern to Plaintiffs. (Id. ¶¶ 37, 56.) They assert that Kohl's never obtained either Plaintiff's signed, written consent to receive telemarketing text messages, and never provided Plaintiffs with any disclosures required for a valid electronic signature. (Id. ¶¶ 38-39, 61.)

B. The Parties' Stipulation

Following Defendant's filing of a Motion and a supporting declaration to dismiss the original Complaint in this matter for lack of standing, and the scheduling of an evidentiary hearing thereon, the parties entered into a Stipulation of Facts (Docket Entry 25 ("Stipulation")) in which they agreed as follows:

1. On Oct. 24, 2014, at 2:05 PM, Kohl's received an incoming text message, containing the word "APP," from Ms. Winner's mobile phone number.

2. Kohl's had advertised to consumers the ability to earn frequent-shopper "points" by downloading Kohl's mobile application and requested that consumers text the word "APP" to Kohl's to receive instructions as to how to download the mobile application.

3. The following is a sample advertisement [1] from Kohl's that asked consumers to text the word "APP" to Kohl's to receive these instructions:



4. In response to the "APP" message from Ms. Winner's phone, within 15 minutes of receipt of that message, Kohl's transmitted two text messages to Ms. Winner's phone number, stating as follows:

 **\*3** KOHLS: Thanks for texting! To enroll in Yes2You Rewards click the link download the Kohl's App then sign in or create an account. http://bit.ly/1CXVMLK

\* \* \*

KohlsALERTS: Get more savings sent straight to your phone! Text SAVE30 to opt in to our Mobile Sale Alerts. Receive 5-7 msgs/mon. Msg&Data Rates May Apply.

Case 1:25-cv-00927-KMN   Document 23-9   Filed 08/29/25   Page 151 of 158

Winner v. Kohl's Department Stores, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3535038

5. Shortly after Kohl's sent the second message, Kohl's received from Ms. Winner's phone a text message reading "SAVE30."

6. After receiving that "SAVE30" message, Kohl's commenced sending text messages to Ms. Winner's phone at the rate of five to seven messages per month.

7. The messages sent to and received by Ms. Winner appeared as follows:





8. On at least one occasion, Ms. Winner redeemed a sales offer transmitted to her by text message, receiving $10 off of a $25 purchase on or about November 9, 2014.

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 152 of 158

Winner v. Kohl's Department Stores, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3535038

9. Ms. Winner contends that she had repeatedly requested that Kohl's stop sending messages to her, but her requests went unheeded.

10. On March 24, 2016, Kohl's received from Ms. Winner's phone a text message reading "STOP." Kohl's has no record of any other request allegedly made by Ms. Winner for Kohl's to stop sending text messages to her phone number.

11. Within minutes of receiving that message, Kohl's sent Ms. Winner's phone a final text message confirming that she had unsubscribed from the text message program.

12. Kohl's has sent Ms. Winner's phone no text messages since March 24, 2016.

13. Ms. Winner contends that she was annoyed at receiving the messages and considered them spam.

14. On November 22, 2014, at 11:49 AM, Kohl's received an incoming text message, containing the term "SAVE07," from Ms. Jennings mobile phone number.

15. "SAVE07" is one of Kohl's "calls to action" that initiates the sending of text messages.

16. The following are examples of calls to action that featured the keyword SAVE07:



17. In response to the "SAVE07" message from Ms. Jennings' phone, within 15 minutes of receipt of that message, Kohl's transmitted two text messages to Ms. Jennings' phone number, stating as follows (or substantially similar thereto):

KohlsAlerts: Welcome to Kohl's Mobile Alerts! Keep up w/ Kohl's savings. Msg&Data Rates May Apply. Get 7 msgs per month. Reply HELP for HELP. STOP to cancel.

 **\*4**

* * *

KohlsAlerts: Sign-up offer: Get 15% off at Kohls.com. Use code SMS2145 until 12/06. Terms: www.kohls.com/sms. Reply HELP for HELP STOP to cancel.

18. Kohl's commenced sending Ms. Jennings approximately seven messages per month. The messages were identical to or substantially similar to the messages received by Ms. Winner.

19. Kohl's never received a "STOP" message from Ms. Jennings' phone.

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 153 of 158
Winner v. Kohl's Department Stores, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3535038

20. Kohl's ceased sending text messages to Ms. Jennings' phone on April 4, 2016, the date on which she filed the Complaint in this action.

21. Ms. Jennings contends that she was annoyed at receiving the messages and considered them spam.

(Stipulation ¶¶ 1-21.)

## II. STANDARD OF REVIEW

The jurisdictional portion of Kohl's Motion seeks dismissal of the FAC pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiffs lack standing. [2] " 'A motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.' " Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014) (alteration in original) (quoting Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007)). It is the plaintiffs' burden to prove standing. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). In order to survive a motion to dismiss, Plaintiffs must demonstrate that they possess the requisite stake in the outcome of their suits to have standing by showing they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (stating three elements are the "irreducible constitutional minimum" of standing) (citing Lujan, 504 U.S. at 560-61); see also Hollingsworth v. Perry, 133 S. Ct. 2652, 2661 (2013); Constitution Party of Pa., 757 F.3d at 360. An injury-in-fact requires "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotation marks and citations omitted); Spokeo, 136 S. Ct. at 1545 ("[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both concrete *and* particularized." (emphasis in original).)

Whether a motion raises a "facial" attack or a "factual" attack on standing determines the burden of proof and standard of review. Constitution Party of Pa., 757 F.3d at 357-58 (citing In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)). A facial attack considers only "a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the courts" due to some jurisdictional defect. Id. at 358. This type of attack occurs prior to the filing of an answer or a challenge to the factual allegations of a complaint. Id. (citing Mortensen

v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 889-92 (3d Cir. 1977)). It is judged under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). Id. However, a factual attack concerns " 'the actual failure of a plaintiff's claims to comport [factually] with the jurisdictional prerequisites.' " Id. (alteration in original) (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)). In such a case, a court may weigh the alleged facts, and consider evidence outside the pleadings. Id. In deciding a factual attack, the non-moving party's allegations receive no presumption of truthfulness. Mortensen, 549 F.2d at 891. "[P]laintiff has the burden of persuasion to convince the court it has jurisdiction." Gould Elec., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000) (citation omitted).

## III. ANALYSIS

**\*5** Kohl's Motion asserts a factual attack. It argues, based on the FAC and the Stipulation, that Plaintiffs did not suffer an injury in fact as a result of receiving the autodialed telemarketing text messages from Kohls' because they asked Kohl's to send them the messages that they received. Defendant argues that its calls to action fully comply with the Federal Communications Commission's ("FCC") guidance on what constitutes written consent under the TCPA. Because Plaintiffs admit in the FAC and in the Stipulation that they consented to receiving the messages, Kohl's argues they have suffered no injury-in-fact to support their standing to bring their claims.

Congress enacted the TCPA "to protect individual consumers from receiving intrusive and unwanted calls." Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 268 (3d Cir. 2013) (citing Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372-73 (2012)); see also Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009) (stating that "the TCPA was enacted in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls" (citing S. Rep. No. 102-178 at 2 (1991), reprinted in 1991 U.S.C.C.A.N. 1968)). The TCPA makes it unlawful for any person "to make any call ... using any automatic telephone dialing system ... to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service" without "the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). A text message has been held to be a "call" within the meaning of the TCPA. Gomez v. Campbell-Ewald Co., 768 F.3d 871, 874 (9th Cir. 2014) (citing Satterfield, 569 F.3d at 952.) Thus, to state a TCPA claim, plaintiff must allege that "(1)

Winner v. Kohl's Department Stores, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3535038

the defendant called [or texted] a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)).

"Congress authorized the [FCC] to implement rules and regulations enforcing the TCPA." Gager, 727 F.3d at 268 (citing 47 U.S.C. § 227(b)(2)). The implementing regulation defines the term "prior express written consent" as follows:

> The term **prior express written consent means an agreement**, in writing, **bearing the signature of the person called that clearly authorizes** the seller to deliver or cause to be delivered to the person called **advertisements** or telemarketing messages **using an automatic telephone dialing system** or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
>
> (i) The written agreement **shall include a clear and conspicuous disclosure** informing the person signing that:
>
> > (A) By executing the agreement, **such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system** or an artificial or prerecorded voice; and
> >
> > (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
>
> (ii) **The term "signature" shall include an electronic or digital form of signature**, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

47 C.F.R. § 64.1200(f)(8) (emphasis added).

The FCC issued a Report and Order on February 15, 2012 stating that the determination of whether proper consent is given to receive advertising text messages requires that (1) the consent was obtained following a clear and conspicuous disclosure of the consequences of providing consent; and (2) the consent was "obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service." In the Matter of

Rules and Regulations Implementing the TCPA of 1991, 27 FCC Rcd. 1830, 1844 ¶ 33 (F.C.C. Feb. 15, 2012) (quotation omitted). The Report and Order further provides that "consent obtained in compliance with the E-SIGN Act will satisfy the requirements of our revised rule, including permission obtained via an email, website form, text message, telephone keypress, or voice recording." Id. ¶ 34 (stating that "Allowing documentation of consent under the E-SIGN Act [15 U.S.C. § 7001] will minimize the costs and burdens of acquiring prior express written consent for autodialed or prerecorded telemarketing calls while protecting the privacy interests of consumers. Because it greatly minimizes the burdens of acquiring written consent, commenters generally support using electronic signatures consistent with the E-SIGN Act. We conclude that the E-SIGN Act significantly facilitates our written consent requirement, while minimizing any additional costs associated with implementing the requirement." (footnote omitted)). The FCC then reaffirmed, in a Report and Order dated July 10, 2015, that the disclosures necessary as a precursor to consent "must tell consumers the telemarketing will be done with autodialer equipment and that consent is not a condition of purchase." In the Matter of Rules and Regulations Implementing the TCPA of 1991, 30 FCC Rcd. 7961, 8012-13 ¶ 98 (F.C.C. July 10, 2015) ("FCC 2015 Order").

**\*6** The E-Sign Act provides that, for any transaction affecting interstate or foreign commerce, "a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form." 15 U.S.C. § 7001(a); see also Prudential Ins. Co. of Am. v. Prusky, 413 F. Supp. 2d 489, 494 (E.D. Pa. 2005) ("The purpose of the Act is to protect transactions from legal challenges that are solely based on the electronic form of the agreement."); Levy-Tatum v. Navient & Sallie Mae Bank, Civ. A. No. 15-3794, 2016 WL 75231, at *5 (E.D. Pa. Jan. 7, 2016) ("The E-Sign Act simply establishes that contracts and signatures cannot be denied legal effect merely because they are in electronic form." (citation omitted)). The Act contains a provision detailing that, "if a statute, regulation, or other rule of law requires that information relating to a transaction" be provided to a consumer in writing:

> **the use of an electronic record** to provide or make available (whichever is required) such information **satisfies the requirement that such information be in writing if—**

Case 1:25-cv-00927-KMN    Document 23-9    Filed 08/29/25    Page 155 of 158

Winner v. Kohl's Department Stores, Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3535038

(A) the **consumer has affirmatively consented** to such use and has not withdrawn such consent;

(B) **the consumer, prior to consenting, is provided with a clear and conspicuous statement—**

(i) **informing the consumer of** (I) any right or option of the consumer to have the record provided or made available on paper or in nonelectronic form, and (II) **the right of the consumer to withdraw the consent** to have the record provided or made available in an electronic form and of any conditions, consequences (which may include termination of the parties' relationship), or fees in the event of such withdrawal;

(ii) **informing the consumer of whether the consent applies (I) only to the particular transaction** which gave rise to the obligation to provide the record, or (II) to identified categories of records that may be provided or made available during the course of the parties' relationship;

(iii) **describing the procedures the consumer must use to withdraw consent** as provided in clause (i) and to update information needed to contact the consumer electronically; and

(iv) informing the consumer (I) how, after the consent, the consumer may, upon request, obtain a paper copy of an electronic record, and (II) whether any fee will be charged for such copy;

(C) **the consumer—**

(i) prior to consenting, is provided with a statement of the hardware and software requirements for access to and retention of the electronic records; and

(ii) **consents electronically, or confirms his or her consent electronically**, in a manner that reasonably demonstrates that the consumer can access information in the electronic form that will be used to provide the information that is the subject of the consent;

15 U.S.C. § 7001(c)(1) (emphasis added.)

We find that Plaintiff Winner and Plaintiff Jennings expressly consented to receive Defendant's autodialed calls to action telemarketing texts. The facts contained in the Stipulation

establish that both Winner and Jennings gave prior express consent under the TCPA through a method made permissible by the E-Sign Act. Because they consented to receiving the texts, Plaintiffs can show no concrete and particularized injury-in-fact and thus have not established that they have standing to pursue the claims asserted in the FAC.

The Stipulation establishes that Winner sent Kohl's a text message, containing the word "APP" from her mobile phone number. (Stip. ¶ 1.) Her text was sent in response to an advertisement directing customers to text "APP." (Id. ¶ 2.) The advertisement stated that, (1) by doing so, the customer "will receive two to three auto-dialed text messages" to set up their participation;[3] (2) "Participation is not required to make a purchase;" (3) customers could "Reply **HELP** for help, reply **STOP** to cancel;" (4) message and data rates may apply; and (5) the terms and conditions of the program were available on Kohl's website. (Id. ¶ 3.) The advertisement inviting her to text "APP" also directed Plaintiff to Kohl's website for the terms and conditions applicable to the program. (Id.) In response to Winner's "APP" text, Kohl's transmitted two text messages to Winner's phone number, one of which instructed her to text "SAVE30" if she wished to participate in the calls to action program, and Kohl's then received from Ms. Winner's phone a text message reading "SAVE30." (Id. ¶¶ 4-5.) Each telemarketing text Kohl's sent thereafter instructed her to text "STOP" if she wished to stop receiving the telemarketing texts. (Id. ¶ 7.)

**\*7** We conclude that Winner's actions enrolling in Defendant's calls to action program constituted prior express consent under the TCPA. The "written agreement," in the form of the text messages she received after she texted "APP," included a clear and conspicuous disclosure informing her that, by sending the authorizing "SAVE30" text she was authorizing Kohl's to deliver to her five to seven telemarketing texts each month by an automatic telephone dialing system. (Id. ¶ 4 ("Text SAVE30 to opt in to our Mobile Sale Alerts. Receive 5-7 msgs/mon.").) It also incorporated by reference the terms and conditions of the program. (Id. ¶ 3 ("See Kohls.com/mobile for mobile Terms and Conditions.").) These disclosures were sufficient to satisfy the requirement of the TCPA implementing regulation that there be "clear and conspicuous disclosure" that by "executing the agreement such person authorizes the seller to deliver ... telemarketing [texts] using an automatic telephone dialing system." 47 C.F.R. § 64.1200(f)(8)(i)(A). These disclosures also satisfied the requirement that there be a clear and conspicuous disclosure that a purchase was not necessary to

2017 WL 3535038

participate in the program. 47 C.F.R. § 64.1200(f)(8)(i)(B). (See Stip. ¶ 3.)

The sequence of the texts is important to our analysis. Defendant's response text was sent only after Winner's initial "APP" keyword text. Defendant's response text required that the consumer send the "Save30" text before Defendant began to sending autodialed telemarketing texts. We find that including the words "Terms and Conditions" and the link to the website in the ad, along with the disclosure in the responsive text that the consumer would receive five to seven texts per month, is sufficient to provide a consumer with "a clear and conspicuous statement" that the consumer has consented to receiving autodialed telemarketing texts. Moreover, Defendant's second text advised consumers to send the second "Save30" keyword text after the material that disclosed the terms and conditions were electronically made available to them. (Stip. ¶¶ 3-4.) Finally, those terms and conditions include a clear and conspicuous statement that consumers will receive autodialed telemarketing texts and provides instructions how to stop receiving them. (Id. ¶ 3.)

We conclude that the stipulated facts also establish that Winner "signed" the express written consent agreement in a manner permissible under the E-Sign Act. Winner's texting "SAVE30" constituted her electronic signature affirmatively consenting to such use, and was sent after she was notified of the terms and conditions of the program, including her right to withdraw the consent and the procedures the consumer must use to do so, i.e., text the word "STOP." 15 U.S.C. § 7001(c)(1)(B)-(C).

Although Winner asserts that she repeatedly asked Defendant to stop sending messages to her phone, and that those requests went unheeded, she does not specify how she made these requests other than one visit she made to a Kohl's store in which she asked an employee to get the text messages to stop. This action did not comply with the terms and conditions of the program and is thus insufficient to create an injury-in-fact based on Defendant's failure to stop the texts. The parties stipulate that Defendant received a "STOP" text from Winner's phone on March 24, 2016, and that Kohl's has no record of any other request made by Winner for Defendant to stop sending text messages to her phone number. (Stip. ¶ 10.) They further stipulate that (1) when Winner followed the prescribed method for stopping the telemarketing texts, the only additional text she received was a confirmation that she had unsubscribed from the program and (2) Defendant has sent Winner no other texts. (Id. ¶¶ 11-12.) Accordingly, we

find that Winner's alleged "repeated" attempts to stop the texts by efforts other than those prescribed by the program to which she consented are insufficient to establish that she suffered an injury-in-fact.

Plaintiff Jennings' experience was similar to that of Winner. Like Winner, she opted into a Kohl's text message program by texting a keyword, "SAVE07," to Kohl's in November 2014. (Stip. ¶ 14.) After she texted "SAVE07" to Kohl's, Kohl's sent her a confirmation stating that she would begin receiving seven messages per month, and referring her to the terms and conditions on Kohl's website. (Id. ¶ 17.) All messages that Kohl's sent to Jennings told her she could "Text 'STOP' to stop," but the parties stipulate that Kohl's never received a "stop" message from Ms. Jennings. (Id. ¶¶ 17, 19.) Accordingly, we find that Jennings has failed to meet her burden to show injury-in-fact since she too consented to receiving the telemarketing texts in a manner that complied with the TCPA and E-Sign Act and never asked Defendant to stop sending her texts in the manner required by Defendant's terms and conditions. [4]

**\*8** Plaintiffs argue that, under the FCC 2015 Order, Defendant never obtained their express written consent to send them autodialed telemarketing texts. They assert that the Order permits a telemarketer to send only **one** text in response to a customer's response to a call to action. See FCC 2015 Order ¶ 106 n.363. [5] Plaintiffs argue that they did not consent to any messages beyond the first one. They further contend that the first message "did not disclose that (1) subsequent messages would be automated or (2) that Winner was not required to sign or agree as a condition of purchasing any of the property, goods, or services." (Pls.' Mem. at 11.) They also argue that the first message did not contain disclosures sufficient to transform any response thereto "into a signature for purposes of the E-Sign Act" because there "was no notice that the consumer was affirmatively consenting to an electronic signature, no notice that the consumer could obtain a paper copy of such consent and whether there would be a charge, and no notice that the consumer could withdraw her electronic signature." (Id. at 12 (citation omitted).)

Plaintiffs' reliance on the FCC 2015 Order is misplaced because the events in this case occurred before that Order was promulgated. The Winner calls to action text was initiated by that Plaintiff on October 24, 2014. (Stipulation ¶ 1.) The Jennings calls to action text was initiated by that Plaintiff on November 22, 2014. (Id. ¶ 14.) Plaintiffs offer no explanation of how Defendant could be bound by an FCC Order that was

2017 WL 3535038

not in existence at the time Plaintiffs consented to receive the autodialed telemarketing texts. Moreover, the FCC 2015 Order clearly permits subsequent autodialed telemarketing texts after the initial text where businesses obtain the required "prior express written consent with the specified disclosures." FCC 2015 Order, at ¶ 106 n.363. As Plaintiffs concede in the Stipulation that they received the disclosures, they have failed to meet their burden to show they suffered an injury-in-fact even if the FCC 2015 Order applies. We conclude, accordingly, that Winner and Jennings have failed to satisfy their burden of showing that they have standing because each suffered an injury-in-fact as a result of Defendant's actions that is likely to be redressed by a favorable judicial decision. See Spokeo, 136 S.Ct. at 1547. Consequently, we grant Defendant's Motion to dismiss for lack of subject matter jurisdiction. [6]

## IV. CONCLUSION

Plaintiffs' claims for violation of the TCPA are dismissed under Rule 12(b)(1) because they have failed to meet their burden to show they have standing to bring their claims. Since Plaintiffs have already had a full opportunity to amend their pleading to attempt to establish standing, and have stipulated to the facts relevant to standing, we find that any further amendment would be futile. Defendant's alternative request to strike the class allegations in the FAC is dismissed as moot.

**\*9** An appropriate order will be entered granting Defendant's Motion to Dismiss.

## All Citations

Not Reported in Fed. Supp., 2017 WL 3535038

---

### Footnotes

1      The small print at the bottom of the advertisement states:

"You will receive two to three auto-dialed text messages sent to your mobile number. Participation not required to make a purchase. You must be 18 years or older to text Kohl's. Reply HELP for help, reply STOP to cancel. Msg&Data Rates May Apply. See Kohl's.com/mobile for mobile Terms and Conditions."

The Stipulation does not state the original font size of the advertisement.

2      We review Defendant's Rule 12(b)(1) argument first. See Curtis v. Unionville-Chadds Ford Sch. Dist., Civ. A. No. 12-4786, 2013 WL 1874919, at *3 (E.D. Pa. May 1, 2013) ("When a motion under Rule 12 is 'based on more than one ground, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.' ") (quoting Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc., 619 F. Supp. 998, 1001 n.7 (D. Md. 1985)).

3      We note that Plaintiffs argue in their Response that "[t]he APP message from Ms. Winner authorized Kohl's to send one (1) response message.... However, Kohl's did not send one message; it sent two." (Pls. Resp. at 9) (citing FCC 2015 Order at ¶ 106 n.363). Plaintiffs argue that Winner did not consent to receiving the second message. This argument contradicts the Stipulation and is rejected. The parties stipulated that the "APP" message informed the customer that she would "receive two to three auto-dialed text messages." (Stip. ¶ 3.)

4      Because both Plaintiffs consented to receiving the text messages, the United States Court of Appeals for the Third Circuit's recent decision in Susinno v. Work Out World Inc., No. 16-3277, 2017 WL 2925432 (3d Cir. July 10, 2017), is inapposite. There, plaintiff brought suit under the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii),

2017 WL 3535038

after allegedly receiving a single, unsolicited cell phone call. Id., at *1. The court held that the allegation was sufficient to state a concrete, if intangible, harm. Id. at *5. Here, Plaintiffs' consent requires the opposite conclusion.

5    The footnote cited by Plaintiffs states:

> We note that some businesses include, in their call-to-action displays for on-demand texting programs, the small amount of wording necessary to make the disclosures required by the Commission's rules concerning prior express written consent for autodialed or prerecorded telemarketing calls. *See, e.g.*, http://www1.macys.com/shop/couponsdeals (visited Feb. 10, 2015) (disclosures under "get texts details": "By texting COUPON from my mobile number, I agree to receive marketing text messages generated by an automated dialer from Macy's to this number. I understand that consent is not required to make a purchase."). Our ruling today allows businesses to voluntarily provide these simple disclosures to consumers in a call-to-action before sending a single on-demand text in response to a consumer's request. **If the business sends more than a single text as a response to the consumer, however, our rules require prior express written consent with the specified disclosures**.

FCC 2015 Order ¶ 106 n.363 (emphasis added).

6    Because we grant Defendant's Motion on this basis, we need not address its Rule 12(b)(6) arguments.

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---