## IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all other similarly situated,<br><br> Plaintiff,<br><br>v.<br><br>VIASAT, INC.,<br><br> Defendant. | Civil Action No. 1:25-cv-00927-KMN<br>(Hon. Keli M. Neary) |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

RELEVANT ALLEGATIONS AND FACTS ..........................................................2

I.      The "Factual" Allegations in the FAC ...........................................................2

II.     Viasat's Extrinsic Evidence ...........................................................................4

APPLICABLE LEGAL STANDARDS...................................................................5

I.      Rule 12(b)(1) – Lack of Standing / Subject Matter Jurisdiction......................5

II.     Rule 12(b)(6) – Failure to State a Claim for Relief .........................................6

ARGUMENT ........................................................................................................7

I.      The Entire FAC Should Be Dismissed Under Rule 12(b)(1) Because Extrinsic
        Evidence Shows That Plaintiff Lacks Article III Standing. ............................7

II.     In the Alternative, The Entire FAC Should Be Dismissed Under Rule 12(b)(6)
        For Failure to Plausible Allege a Theory of TCPA Liability. .........................10

III.    Any Dismissal Should Be With Prejudice. ....................................................19

CONCLUSION ...................................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Aaronson v. CHW Grp., Inc.*,
   2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ...................................10, 11, 12, 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................7, 17

*Baccari v. Carguard Admin., Inc.*,
   2022 WL 3213839 (E.D. Pa. Aug. 8, 2022) ..................................................passim

*Ballentine v. U.S.*,
   486 F.3d 806 (3d Cir. 2007) ...............................................................................5

*Bank v. Alleviate Tax, LLC*,
   2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024).......................................15, 16, 18

*Bank v. Vivint Solar, Inc.*,
   2019 WL 2280731 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*,
   2019 WL 1306064 (Mar. 22, 2019).....................................................................16

*Barnes v. SunPower Corp.*,
   2023 WL 2592371 (N.D. Cal. Mar. 16, 2023) ............................................14, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................6

*Bennett v. Celtic Ins. Co.*,
   2022 WL 865837 (N.D. Ill. Mar. 23, 2022) ......................................................12

*Bridges v. Torres*,
   809 F.App'x 69 (3d Cir. 2020).............................................................................7

*Brown v. Nano Hearing Tech OPCP, LLC*,
   2024 WL 3367536 (S.D. Cal. July 9, 2024) .......................................................15

*Brownlee v. Allstate Ins. Co.*,
   2021 WL 4306160 (N.D. Ill. Sept. 22, 2021)....................................................17

*Childress v. Liberty Mut. Ins. Co.*,
   2018 WL 4684209. (D.N.M. Sept. 28, 2018)....................................................18

*CNA v. U.S.*,
   535 F.3d 132 (3d Cir. 2008) ................................................................................6

*Constitution Party of Pennsylvania v. Aichele*,
   757 F.3d 347 (3d Cir. 2014) ................................................................................6

*Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*,
   450 F.3d 130 (3d Cir. 2006) ...................................................................7

*Cunningham v. Daybreak Solar Power, LLC*,
   2023 WL 3985245 (N.D. Tex. June 13, 2023) ............................14, 18

*Dobronski v. Russo*,
   2024 WL 4363118 (E.D. Mich. Sept. 30, 2024) ................................15

*Doyle v. GoHealth, LLC*,
   2023 WL 3984951 (D.N.J. Mar. 30, 2023) ................................passim

*Frame v. Cal-W. Reconveyance Corp.*,
   2011 WL 3876012 (D. Ariz. Sept. 2, 2011) ......................................19

*Frank v. Cannabis & Glass, LLC*,
   2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ...................................12

*Hall v. Xanadu Mktg., Inc.*,
   682 F. Supp. 3d 1278 (N.D. Ga. 2023)................................................8

*Hurley v. Messer*,
   2018 WL 4854082 (S.D.W.Va. Oct. 4, 2018) ...................................18

*In re Dish Network, LLC*,
   2013 WL 1934349, 28 FCC Rcd. 6574 (2013) ..................................11

*In re Rules & Regs. Implementing the TCPA*,
   30 FCC Rcd. 7961 (2015)................................................................7, 12

*Katz v. Caliber Home Loans, Inc.*,
   2023 WL 5311488 (N.D. Tex. Aug. 17, 2023) ..................................13

*Landy v. Nat. Power Sources, LLC*,
   2021 WL 3634162 (D.N.J. Aug. 17, 2021) ................................10, 18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)..............................................................................6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..........................................................................6, 9

*Matthews v. Senior Life Ins. Co.*,
   2025 WL 1181789 (E.D. Va. Apr. 22, 2025) ....................................16

*Metzler v. Pure Energy USA LLC*,
   2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023) ......................................14

*Morse v. Lower Merion Sch. Dist.*,
   132 F.3d 902 (3d Cir. 1997) ................................................................7

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
   549 F.2d 884 (3d Cir. 1977) ................................................................6

*Murray v. Choice Energy, LLC*,
   2015 WL 4204398 (S.D. Ohio July 10, 2015)...................................................13

*Nelums v. Mandu Wellness, LLC*,
   2023 WL 5607594 (D.N.M. Aug. 30, 2023) ......................................................11

*Pascal v. Agentra, LLC*,
   2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) ....................................................10

*Rogers v. Assurance IQ, LLC*,
   2023 WL 2646468 (W.D. Wash. Mar. 27, 2023).........................................13, 18

*Santiago v. Warminster Township*,
   629 F.3d 121 (3d. Cir. 2010) ...............................................................................7

*Scruggs v. CHW Grp., Inc.*,
   2020 WL 9348208 (E.D. Va. Nov. 12, 2020) .......................................12, 16, 17

*Sheski v. Shopify (USA) Inc.*,
   2020 WL 2474421 (N.D. Cal. May 13, 2020)....................................................11

*Simon v. Eastern Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976).................................................................................................9

*Smith v. Direct Building Supplies, LLC*,
   2021 WL 4623275 (E.D. Pa. Oct. 7, 2021) .....................................10, 11, 12, 16

*Smith v. Vision Solar LLC*,
   2020 WL 5632653 (E.D. Pa. Sept. 21, 2020).............................................10, 11

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)...............................................................................................6

*Stewart v. Network Cap. Funding Corp.*,
   549 F. Supp. 3d 1058 (C.D. Cal. 2021) ...............................................................8

*Warden v. Woods Servs.*,
   2020 WL 1289194 (E.D. Pa. Mar. 17, 2020) ....................................................19

*Winner v. Kohl's Dept. Stores, Inc.*,
   2017 WL 3535038 (E.D. Pa. Aug. 17, 2017) ......................................................8

*Zarichny v. Complete Payment Recovery Servs., Inc.*,
   80 F. Supp. 3d 610 (E.D. Pa. 2015)..................................................................18

## STATUTES

47 U.S.C. § 227(c)(5)................................................................................................1

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(c)(2).........................................................................................1

47 C.F.R. § 64.1601(e)..............................................................................................1

United States Constitution, Article III ..........................................................5, 8, 9, 10

**RULES**

Fed. R. Civ. P. 12(b)(1).........................................................................................passim

Fed. R. Civ. P. 12(b)(6).........................................................................................passim

## **INTRODUCTION**

Like its faulty predecessor, Plaintiff's First Amended Complaint (Dkt. 21, "FAC") conclusorily alleges that Viasat, Inc. violated certain provisions of the Telephone Consumer Protection Act ("TCPA") by placing or causing others to place two calls to his cell phone. *See generally* Dkt. 21.[1] However, extrinsic evidence submitted herewith proves that ***Plaintiff did <u>not</u> receive <u>any</u> calls from or on behalf of Viasat***, and thus lacks Article III standing to pursue this action.[2] At bottom, Plaintiff's alleged "injuries" are ***non-existent*** and not attributable to Viasat even at the most basic level per this evidence, let alone "fairly traceable" to Viasat as required for Article III standing. Consequently, Plaintiff's entire FAC should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of federal subject matter jurisdiction. *See Baccari v. Carguard Admin., Inc*., 2022 WL 3213839, at *2–3 (E.D. Pa. Aug. 8, 2022) (granting defendant's 12(b)(1) factual standing challenge in similar TCPA case).

Alternatively, Plaintiff's FAC remains facially defective despite his scant amendments, and thus it should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Indeed, it is well-accepted that all TCPA plaintiffs must first plausibly allege a theory of TCPA liability (direct or vicarious liability) to avoid dismissal at the

---

[1] Count I (¶¶ 59-63) invokes the National "Do Not Call" ("DNC") Registry rules. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). Count II (¶¶ 65-79) invokes 47 C.F.R. § 64.1601(e), containing technical regulations on Caller ID requirements.

[2] *See generally* Declaration of Greg Henderson ("Henderson Decl.") and Declaration of A. Paul Heeringa ("Heeringa Decl."), and exhibits, attached hereto.

1

pleadings stage in any case, regardless of whether they have pled facts supporting other elements of their claims. Here, even after amending, Plaintiff's FAC still takes the same flawed "either/or" pleading approach that has been rejected by myriad federal courts as insufficient for this purpose, and contradictorily alleges that the subject calls were placed <u>either</u> by Viasat <u>or</u> by unidentified third-party "affiliates, agents, or other persons or entities acting on [its] behalf." Dkt. 21, ¶¶ 51, 60, 62, 67, 69. All this underscores that Plaintiff is merely throwing darts at a proverbial dart board here, hoping to limp his way into discovery and find a viable liability theory eventually, and not pleading actual facts in accordance with federal pleading standards as required. Thus, for the reasons outlined above and discussed below, Plaintiff's entire FAC should be dismissed <u>with prejudice</u> under Rules 12(b)(1) or 12(b)(6).

<b><u>RELEVANT ALLEGATIONS AND FACTS</u></b>

### I.    <u>The "Factual" Allegations in the FAC</u>

In pertinent part, the FAC concludes Plaintiff "received at least two telemarketing calls from the Defendant on April 19, 2024" made to his purported "residential" cell phone number, which has supposedly been on the National DNC Registry since February 23, 2021. Dkt. 21, ¶¶ 20, 24, 26. The first call allegedly occurred at 2:12 p.m. and originated from someone using the number (931) 413-8533, which he now concludes is a "spoofed" (*i.e.*, fake) number. *Id.* ¶ 27. "During this call, the Plaintiff spoke with an [unidentified] individual who was attempting to sell

Viasat's internet services in Plaintiff's local area." *Id.* ¶ 28. Yet, Plaintiff does <u>not</u> allege this caller indicated he/she was a Viasat <u>employee</u>. *Id.* Plaintiff hung up to "indicat[e] that he was not interested." *Id.* ¶ 29.

The second call at issue allegedly occurred two minutes later and originated from someone using a different phone number, (530) 235-8385, which Plaintiff also now concludes is a "spoofed" number. *Id.* ¶ 31. This second call supposedly "had the same representative as the first call" and that this person stated to him: "'[Y]our call was declined. I'm sorry. I have my verifier on line. He will assess more information.'" *Id.* This supposed "verifier" (who is likewise not identified) purportedly "asked various questions about the Plaintiff's existing internet services" generally. *Id.* ¶ 32. But this unknown person apparently did <u>not</u> mention Viasat. *Id.*

Plaintiff now avers he was subsequently "transferred to a sales specialist" on the second call. *Id.* ¶ 33. This unidentified person somehow "confirmed they were calling from Viasat," "quoted a monthly price of $94.99 for Viasat's internet services," and stated he "would need to provide a $300 down payment in advance." *Id.* Plaintiff does <u>not</u> allege this person indicated he/she was a Viasat employee, either. *Id.*

Plaintiff's FAC also now includes what appears to be partial "screenshots" of the subject calls, neither of which identify Viasat. *Id.* ¶ 35. And as before, Plaintiff vaguely avers his counsel has the ability to query "the Caller ID database of the calling carrier" to show what caller ID information would have been displayed, and concludes

that "Defendant's calling carrier" ("IP Horizon") was "transmitting a geographic location instead of the caller's name." *Id.* ¶ 40. However, Plaintiff still provides no factual support for his conclusion that IP Horizon has any connection to Viasat. *Id.*

Nevertheless, based on these threadbare allegations, and in a transparent attempt to avoid dismissal on direct and vicarious liability grounds in response to Viasat's original dispositive motion on those points (*see* Dkt. 11 at 9-16), Plaintiff states he only "alleges direct liability here" based solely on the alleged content of the subject calls. Dkt 21, ¶ 39. Yet, Plaintiff then quickly proceeds to contradict the foregoing pronouncement and makes plain that he is not just alleging a direct liability theory. In fact, like his original pleading, Plaintiff's FAC still baldly concludes, with no supporting facts, that <u>either</u> "Defendant" <u>or</u> "***any possible other affiliates, agents, or other persons or entities acting on Defendant's behalf, as discovery may reveal***" violated the TCPA. *Id.* ¶¶ 60, 62, 67, 69 (emphasis added); *see also id.* ¶ 51 (proposed class definitions, referring to calls "from or on behalf of Defendant").

## II.    <u>Viasat's Extrinsic Evidence</u>

Extrinsic evidence tells a much different story and contradicts the foregoing. In reality, Plaintiff did <u>not</u> receive <u>any</u> calls from or on behalf of Viasat, as alleged. *See* Henderson Decl., ¶¶ 8-14. Indeed, Viasat (i) does <u>not</u> own, use, or have any connection with the numbers allegedly used to call him, (ii) has <u>no</u> records of any calls being made to Plaintiff's alleged number on its behalf, (iii) does <u>not</u> make any outbound

marketing calls at all (and in fact does not have a telemarketing program), and (iv) even contractually <u>forbids</u> others from making such calls on its behalf. *Id*.

Records produced in discovery by third parties—the "carrier" that Plaintiff's counsel "queried" (IP Horizon) and the carrier for Plaintiff's alleged cell phone number (T-Mobile)—further confirm that Viasat has no meaningful connection to the phone calls of which Plaintiff complains in this case. *See* Heeringa Decl., ¶¶ 6-10 and Exs. A-F thereto. These records show, *inter alia*, that (i) Viasat does not own or use the two numbers purportedly used to call Plaintiff ((931) 413-8533 and (530) 235-8385), and (ii) those numbers were not used to call Plaintiff's alleged cell number, either on the date on question (April 19, 2024) or at all. *See id*. **In short, this evidence shows that the two alleged calls in the FAC simply did not occur.**

## APPLICABLE LEGAL STANDARDS

### I.   Rule 12(b)(1) – Lack of Standing / Subject Matter Jurisdiction

Rule 12(b)(1) mandates dismissal of a complaint for lack of federal subject matter jurisdiction where a plaintiff fails to establish his or her standing under Article III of the United States Constitution. *See, e.g., Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007). To show Article III standing and avoid dismissal under Rule 12(b)(1), Plaintiff bears the sole burden of demonstrating that: (1) he suffered a concrete and particularized "injury in fact," (2) there is a causal connection between the injury and the alleged unlawful conduct complained of (*a.k.a.* "causation" or "traceability"), and

(3) the injury is capable of being redressed via a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Relevant here, the second element requires that the alleged injury be "fairly traceable" only to the defendant's conduct. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014).

Further, a defendant can raise either a "facial" or a "factual" challenge to a plaintiff's standing. *Baccari*, 2022 WL 3213839, at *2 (citations omitted). A factual challenge, as Viasat makes here, "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *CNA v. U.S.,* 535 F.3d 132, 139 (3d Cir. 2008) (cleaned up). Put differently, a factual challenge argues "that there is no subject matter jurisdiction because the facts of the case … do not support the asserted jurisdiction." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). In evaluating a factual challenge, "evidence outside of the pleadings may be weighed and considered, and 'no presumptive truthfulness attaches' to the facts pled in the [plaintiff's] complaint." *Baccari*, 2022 WL 3213839, at *2 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

## II.    <u>Rule 12(b)(6) – Failure to State a Claim for Relief</u>

It is axiomatic bare assertions or conclusory allegations cannot avoid a dismissal under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "formulaic recitation of the elements" of a claim also fails to meet the

requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While this Court must accept well-pled facts as true under Rule 12(b)(6), it need not accept conclusory allegations or naked legal conclusions, nor draw unwarranted or unreasonable inferences from the FAC. *See, e.g., Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 133 (3d Cir. 2006); *Bridges v. Torres*, 809 F.App'x 69, 71 (3d Cir. 2020); *Santiago v. Warminster Township,* 629 F.3d 121, 128 (3d. Cir. 2010); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

## ARGUMENT

As the FCC noted, the TCPA unwittingly spawned a cottage industry of class action litigation in this country, "has strayed far from its original purpose" as a beneficial remedial statute, and has "become the poster child for lawsuit abuse" ever since its enactment. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015). Given this potential for abuse by profit-seeking plaintiffs and their counsel, federal courts across the country (particularly in this Circuit) have strictly held TCPA plaintiffs to applicable pleadings standards. Plaintiff here fails to satisfy those standards and, more fundamentally, lacks standing as a factual matter.

## I.    The Entire FAC Should Be Dismissed Under Rule 12(b)(1) Because Extrinsic Evidence Shows That Plaintiff Lacks Article III Standing.

As a threshold matter, Plaintiff's FAC must be dismissed under Rule 12(b)(1) because extrinsic evidence shows that that Plaintiff did not suffer any injury <u>at all</u>, let alone one "traceable" to Viasat. Plaintiff therefore lacks standing to pursue this action.

The *Baccari* case cited above is highly instructive on this point, as the facts are closely analogous to those here. There, the plaintiff filed a TCPA complaint claiming a third-party made certain calls on behalf of the defendant. Like in this case, those claims were supported by a variety of purely conclusory allegations. *See* 2022 WL 3213839, at *3. The defendant asserted an Article III factual standing challenge under Rule 12(b)(1), and submitted extrinsic evidence, including a sworn declaration from a corporate officer, "directly contradicting the bases for [plaintiff's] standing." *Id*. This evidence showed that the defendant had no connection to the alleged calls. In fact, just like Viasat does, the *Baccari* defendant "contractually prohibited" the alleged third-party caller from making telemarketing calls, thereby "break[ing] the factual link" between the defendant and the plaintiff's alleged harm. *Id*. Accordingly, the *Baccari* court dismissed the entire complaint there under Rule 12(b)(1). *Id*.[3]

Here, Viasat's extrinsic evidence is far stronger than that in *Baccari*. Like *Baccari*, Viasat has shown it has no relevant connection with the two alleged calls in this case, and thus that Plaintiff did not suffer any injury-in-fact at all, let alone an injury traceable to Viasat as required for standing. *See* Henderson Decl., ¶¶ 8-14. To the contrary, the plain reality is that Viasat (i) does <u>not</u> own, use, or have any

---

[3] *Baccari* does not stand alone here, and other district courts in this Circuit and nationally have dismissed TCPA cases in response to factual standing challenges under Rule 12(b)(1) where, as here, evidence showed the plaintiff lacked an injury traceable to the defendant. *See, e.g., Winner v. Kohl's Dept. Stores, Inc.,* 2017 WL 3535038, at *7-8 (E.D. Pa. Aug. 17, 2017); *Stewart v. Network Cap. Funding Corp*., 549 F. Supp. 3d 1058, 1059 (C.D. Cal. 2021); *Hall v. Xanadu Mktg., Inc.,* 682 F. Supp. 3d 1278, 1285-1286 (N.D. Ga. 2023). This Court should rule similarly in this case.

connection with the two numbers used to call Plaintiff, (ii) has <u>no</u> records of any calls being made to Plaintiff by or on behalf of Viasat, (iii) does <u>not</u> make any outbound marketing calls at all (indeed, its marketing program is consumer-initiated, whereby consumers must make *inbound* calls to buy its services), and (iv) contractually <u>forbids</u> others from making such calls on its behalf, like the defendant in *Baccari*. *Id.*

Evidence obtained from key third parties here goes even beyond *Baccari*, and puts the final nail in the proverbial coffin on Plaintiff's standing. This evidence not only confirms Viasat has no connection with either of the alleged callers' numbers, but also shows ***Plaintiff did not actually receive the two subject calls on his cell phone***. *See* Heeringa Decl., ¶¶ 6-10 & Exs. A-F. In short, ***they simply did not happen***.

Even if the calls had happened and Plaintiff was offered Viasat's services by a third party (which is not conceded), that would not change the result. The bottom line per the evidence is that Viasat did not make, cause, authorize, direct, control, or even know about (and indeed expressly forbade) such calls. *See* Henderson Decl., ¶¶ 8-14. In all, therefore, Plaintiff's alleged harm (if any) from the calls at issue is not traceable to any conduct by Viasat. *See Lujan*, 504 U.S. at 560-61 (an injury not fairly traceable to the defendant for Article III standing purposes if it is "'th[e] result [of] the ***independent action of some third party*** not before the court'") (emphasis added) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

All told, this evidence firmly "break[s] the factual link" between Viasat and Plaintiff's alleged injury. *Baccari*, 2022 WL 3213839, at *3. Consequently, Plaintiff lacks Article III standing as a factual matter, which deprives this Court of federal subject matter jurisdiction. The FAC should thus be dismissed under Rule 12(b)(1).

## II.    In the Alternative, The Entire FAC Should Be Dismissed Under Rule 12(b)(6) For Failure to Plausible Allege a Theory of TCPA Liability.

While the Court need not reach the point given Plaintiff's clear lack of standing, Plaintiff's entire FAC is also subject to dismissal on its face under Rule 12(b)(6) because Plaintiff fails to plead plausible facts supporting a theory of TCPA liability.

As myriad district courts in and beyond this Circuit have recognized, there are only two potential theories of TCPA liability that must be adequately plead in <u>all</u> cases to avoid a dismissal under Rule 12(b)(6): direct liability and vicarious liability. *See, e.g., Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021); *Smith v. Vision Solar LLC*, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (citing *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019)); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023); *Landy v. Nat. Power Sources, LLC,* 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021) (each dismissing). Thus, "for a person to 'make' [or 'initiate'] a call under the TCPA [and thus be subject to liability], the person must either (1) directly make the call, or (2) have [a common law] agency relationship with the person who made the call." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019).

Further, it is also well-settled that failure to allege facts, pled in accordance with *Iqbal*/*Twombly*, supporting such theories warrants a <u>complete</u> dismissal of <u>any</u> TCPA claim at the pleadings stage regardless of whether there are facts pled supporting other essential elements of their claims. *See, e.g., Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the [subject communications]—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims.). Here, Plaintiff's FAC fails to allege either theory.

As to direct liability, federal law is clear that the TCPA applies <u>only</u> to persons or entities that "initiate" or "make" telemarketing calls, which means to actually "***physically place***" the calls at issue directly to the plaintiff. *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)) (emphasis added). *Accord Direct Building Supplies*, 2021 WL 4623275, at *3 (dismissing on this basis and citing, *inter alia*, *Aaronson*); *Vision Solar*, 2020 WL 5632653, at *3 (same).

But it is not enough to allege that a third party placed calls on the defendant's behalf to state a direct TCPA liability theory, which "generally does not include persons or entities … that might merely have some [indirect] role, however minor, in the causal chain that results in the making of a telephone call." *In re Dish Network,*

*LLC*, 28 FCC Rcd. at 6583; *see also Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (dismissing on this basis, holding "a [TCPA] defendant 'generally does not [physically] initiate calls placed by third-party telemarketers,' even if the third party had acted on its behalf"). In short, there must be a "direct connection between a person or entity and the making of a call" for direct liability. 30 FCC Rcd. at 7980. An <u>indirect</u> connection, logically and legally, is not direct liability.

Here, Plaintiff concludes he "received at least two telemarketing calls from the Defendant on April 19, 2024" that were "made" by Viasat. Dkt. 21, ¶¶ 26-34. When properly applying federal pleading standards in TCPA cases, however, courts have correctly found that "[m]erely alleging that [a defendant or an agent] 'made' or 'initiated' [a] call" without further factual enhancement "is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal on this basis under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019).

Courts in and beyond this Circuit have consistently reached the same sound conclusion and have often dismissed such faulty claims at the pleadings stage on this basis. *See, e.g., Direct Building Supplies,* 2021 WL 4623275, at *3 ("'[A]t the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that [physically] made the calls to plaintiff's cellular phone.'") (quoting *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *10 (E.D. Va. Nov. 12, 2020)); *Aaronson,* 2019 WL 8953349, at *2 ( "at the pleadings stage, plaintiff must

allege facts to support his conclusion or belief that defendant is the party that made the calls" and dismissing where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue" as required); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing where "[p]laintiffs have not pleaded any *facts* supporting their inference that [said defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)). This Court should do the same.

In fact, federal courts have widely recognized that even a call allegedly "from" the defendant, as Plaintiff avers here, alone is not enough to plead a direct TCPA liability theory. *See, e.g., Doyle,* 2023 WL 3984951, at *4–6 (dismissing, holding allegations the alleged calls were "from Defendant, its employees and/or agents" were insufficient for directly liability); *Katz v. Caliber Home Loans, Inc.,* 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023) (dismissing where plaintiff alleged an "unidentified caller 'offered the Defendant's services from the Caliber Home Loan Mortgage Refinance Team'"); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing, even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls").

That the caller mentioned the defendant's name or products, or that the defendant sent a follow up communication, also does not plausibly establish direct TCPA liability alone. *See, e.g., Cunningham v. Daybreak Solar Power, LLC,* 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) (dismissing, use of defendant's name in voicemail insufficient); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (dismissing, even though one plaintiff spoke to someone "who identified herself as working for" defendant, and the other received an email from defendant); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *5-6 (S.D.N.Y. Feb. 6, 2023) (dismissing where plaintiff alleged facts suggesting the call was "related to the Defendant" without further factual enhancement, which "did not allow the Court to infer that Defendant—as opposed to a telemarketer working to drum up business for Defendant—[physically] made the call at issue."). That is because courts recognize companies often hire third parties to handle their outbound communications. Calls from a vendor would naturally identify the defendant by name, and may result in subsequent communications (emails) identifying the defendant, as Plaintiff claims. Such calls are not "physically placed" by the defendant itself directly and thus cannot support "direct" TCPA liability. In sum, these cases show how the call content alone is not dispositive of direct TCPA liability at the pleadings stage.

As applied here, it is readily apparent that Plaintiff tries to skirt the issue by adopting a flawed "either/or" pleading approach, showing that he is not just alleging

"direct liability" as he suggests. *See, e.g.,* Dkt. 21, ¶¶ 51, 60, 62, 67, 69 (concluding the subject calls were placed either by Viasat itself "and/or" by unidentified third party "affiliates, agents, or other persons or entities acting on [its] behalf."). But it is well established that allegations of this type—"defendant or its agent called me"—are insufficient to plausibly allege <u>any</u> TCPA liability theory. *See*, *e.g.*, *Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing where plaintiff concluded the caller's "numbers belonged to [defendant] Nano or Nano's agent," without supporting facts suggesting the defendant physically placed each call directly to plaintiff); *Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (dismissing, holding that plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" was insufficient to plead any theory of TCPA liability); *Doyle,* 2023 WL 3984951, at *4–6 (ruling similarly).

As these cases and many others show, the precise identity of the caller is the critical threshold element for establishing direct TCPA liability and, at the pleadings stage, this requires factual allegations (not conclusions) plausibly suggesting the defendant itself placed the subject calls. As one court noted, "simply asserting a purported fact does not make it one, where there are no factual allegations to support the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024) (dismissing on this basis). Plaintiff here has done no better.

Moreover, with respect to direct liability, Plaintiff's FAC remains more notable for what facts it still <u>omits</u> on this front. For example, even after amending, Plaintiff does <u>not</u> allege any facts indicating, *inter alia*, that (i) Viasat owns or uses the alleged callers' numbers, (ii) he called those numbers back and reached Viasat, (iii) he ever spoke to a Viasat employee, or (iv) Viasat's name appeared on his Caller ID (in fact, he pleads none was displayed). Such facts, if pled, could support an inference of direct TCPA liability, as other courts have recognized. *See, e.g., Direct Building Supplies,* 2021 WL 4623275, at *3; *Doyle*, 2023 WL 3984951, at *4–6; *Aaronson*, 2019 WL 8953349, at *2; *Bank v. Vivint Solar, Inc.*, 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (each dismissing on this basis where complaint lacked such identifying facts). That Plaintiff did not plead such facts in this case after amending, which should be within his knowledge if they exist, leads to the inescapable conclusion that such facts do not exist and further warrants dismissal of his FAC on direct liability grounds. *See also Matthews v. Senior Life Ins. Co.*, 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025) (holding "[a]s a party to these calls, [p]laintiff[s] 'should be able to provide greater detail" in their complaints) (quoting *Scruggs,* 2020 WL 9348208, at *3).

Plaintiff's unsupported conclusion that "Defendant appears to have spoofed the numbers" used to "hide its identity" (Dkt. 21, ¶ 42) is of no moment, does not meet federal pleading standards, and does not save him from dismissal on this front. *See,*

*e.g., Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (dismissing on this basis where caller sold the same type of product as the defendant, noting: "Defendant is not the sole seller of car insurance. Numerous other companies sell car insurance. Further, spoofing is not unique; it is entirely possible that another car insurance company similarly engaged in spoofing to contact the plaintiff.").

The "death knell" to Plaintiff's attempt to plausibly allege a direct TCPA liability theory against Viasat here are his new allegations that: (a) he needs "discovery" to confirm who actually called him (*i.e.*, either Viasat or a third party "agent" or the like); and (b) the second alleged call was "transferred" by the initial unidentified caller to someone else "who confirmed they were calling from Viasat." Dkt. 21, ¶¶ 33, 60; *see also id.* ¶¶ 42, 62, 67, 69 (additional "discovery" references).

On the one hand, Plaintiff's multiple pled suggestions that he "needs discovery to confirm who called him and how that person is related to" Viasat simply shows he is "on an impermissible fishing expedition" and not pleading facts in accordance with federal pleading standards; and it further confirms he actually does "not know who called" him and thus has not adequately pled a direct TCPA liability theory. *Scruggs,* 2020 WL 9348208, at *6-7, 10 (dismissing TCPA claim under 12(b)(6) for this reason). In short, the Federal Rules do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. *See also*

*Hurley v. Messer*, 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (recognizing plaintiffs must plead TCPA liability theories without the benefit of discovery).

On the other hand, even if the Court takes these conclusory allegations as true (it should not), it is well accepted that ***transferring*** an initial call ***to*** the defendant— which is all Plaintiff alleges occurred here, at best—is not the functional equivalent of the defendant itself physically placing a call directly, as many courts have found; rather, it is the defendant ***receiving*** the call in such cases. *See, e.g., Landy,* 2021 WL 3634162, at *3; *Bank*, 2024 WL 1332635, at *4; *Barnes,* 2023 WL 2592371, at *3; *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209. At *4 (D.N.M. Sept. 28, 2018) (each dismissing TCPA claims on direct liability grounds, among others, under Rule 12(b)(6) where the initial calls were allegedly transferred).

Lastly, beyond legal buzzwords suggestive of agency (which are not facts), Plaintiff does not plead anything supporting an inference Viasat had any "control" over any third party "agent" and its call campaign, which is the touchstone of agency (and thus vicarious liability) under the TCPA and must also be pled to avoid dismissal. *See, e.g., Doyle.,* 2023 WL 4188313, at *4; *Cunningham,* 2023 WL 3985245, at *3; *Rogers*, 2023 WL 2646468, at *6 (each dismissing for same reasons). Absent such facts, dismissal of the FAC on vicarious liability grounds is required. *See Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 619 (E.D. Pa. 2015) (dismissing where plaintiff did not plead facts supporting agency theories.).

### III.    <u>Any Dismissal Should Be With Prejudice.</u>

Finally, courts in this Circuit and elsewhere routinely dismiss complaints with prejudice pursuant to Rule 12(b)(6) where a plaintiff already had a chance to amend and amendment failed to cure the complaint's deficiencies. *See, e.g., Warden v. Woods Servs.,* 2020 WL 1289194, at *3 (E.D. Pa. Mar. 17, 2020); *Frame v. Cal-W. Reconveyance Corp.,* 2011 WL 3876012, at *3 (D. Ariz. Sept. 2, 2011) (dismissing with prejudice where "despite the benefit and existence of fully-briefed motions to dismiss, [p]laintiff's First Amended Complaint fail[ed] to cure the deficiencies noticed in [d]efendants' prior motions"). Here, Plaintiff already amended. But despite being represented by counsel and having had the benefit of Viasat's prior dispositive motion, he did not cure all the fatal defects Viasat identified when amending, and in some ways made those defects worse by adding more inconsistent allegations to his FAC that undermine his conclusions. Nor can Plaintiff amend around the fact that the evidence here confirms Viasat did not call him and therefore he lacks standing for his claims. In short, Plaintiff has already had two bites at the apple. A third should not be permitted, and Plaintiff's FAC should be dismissed with prejudice.

### <u>CONCLUSION</u>

For these reasons, Plaintiff's entire FAC should be dismissed with prejudice.

Dated: August 29, 2025

Respectfully submitted,

By: */s/ A. Paul Heeringa*

JOHN W. MCGUINNESS
(*Pro Hac Vice* to be requested)
A. PAUL HEERINGA
(Admitted *Pro Hac Vice*)
MANATT, PHELPS & PHILLIP, LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, D.C. 20036
Telephone: 202-585-6500
Facsimile: 202-585-6600
jmcguinness@manatt.com
pheeringa@manatt.com

FREDERICK P. SANTARELLI (PA 53901)
STEVEN C. TOLLIVER, JR. (PA 327165)
ELLIOTT GREENLEAF, P.C.
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000 (phone)
(215) 977-1099 (fax)
FPSantarelli@elliottgreenleaf.com
sct@elliottgreenleaf.com

*Counsel for Defendant Viasat, Inc.*

## <u>LOCAL RULE 7.1 CERTIFICATE</u>

The undersigned hereby certifies that Defendant's counsel conferred with Plaintiff's counsel on the foregoing Motion on August 26, 2025, and Plaintiff's counsel indicated in writing that Plaintiff does not concur with the relief sought herein.

Dated: August 29, 2025         */s/ A. Paul Heeringa*
                                 A. PAUL HEERINGA

## <u>CERTIFICATE OF COMPLIANCE WITH LR 7.8</u>

I hereby certify that, pursuant to M.D.Pa. Local Rule 7.8(b)(2), this Brief complies with the word-count limitation of Local Rule 7.8, as the Brief contains **4,999 words** (including headings and footnotes but not including the cover page, tables, signature block, or certificates) in 14-point Times New Roman font. This calculation was provided by the word count feature in Microsoft Word.

Dated: August 29, 2025         */s/ A. Paul Heeringa*
                                 A. PAUL HEERINGA

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I am causing the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon all counsel of record.

Dated: August 29, 2025               */s/ A. Paul Heeringa*
                                                      A. PAUL HEERINGA