# EXHIBIT A

Adam v. CHW Group, Inc., Not Reported in Fed. Supp. (2021)

2021 WL 7285904

2021 WL 7285904
Only the Westlaw citation is currently available.
United States District Court, N.D.
Iowa, Cedar Rapids Division.

William ADAM, Individually and on behalf
of all others similarly situated, Plaintiff,

v.

CHW GROUP, INC., d/b/a Choice
Home Warranty, Defendant,

No. 21-cv-0019-LRR-MAR
|
Signed 06/29/2021

**Attorneys and Law Firms**

Eric David Puryear, Puryear Law, PC, Davenport, IA, Ignacio Javier Hiraldo, Pro Hac Vice, IJH Law, Miami, FL, Manuel Hiraldo, Pro Hac Vice, Hiraldo PA, Ft. Lauderdale, FL, for Plaintiff.

Teresa K. Baumann, Samuel E. Jones, Shuttleworth & Ingersoll PLC, Cedar Rapids, IA, Paul Heeringa, Pro Hac Vice, Manatt Phelps & Phillips LLP, Chicago, IL, for Defendant.

## ORDER REGARDING DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Mark A. Roberts, United States Magistrate Judge

**\*1** Before the Court is a Motion for Protective Order to Temporarily Stay or Bifurcate Discovery by Defendant CHW Group, Inc. ("CHW"). (Doc. 18.) Plaintiff William Adam ("Adam"), filed a timely Resistance to the Motion. (Doc. 22.) CHW filed a timely Reply. (Doc. 24.) Neither party has requested a hearing and none is necessary.

## I. BACKGROUND

Adam's Complaint seeks, among other things, to certify a class of persons who received unwelcome calls or texts, allegedly in violation of the Telephone Consumer Protection Act ("TCPA"). (Doc. 1.) CHW moved to dismiss the Complaint. (Doc. 17.) Before the Court could rule on the Motion to Dismiss, Adam filed an Amended Complaint,

rendering the Motion to Dismiss moot. (Docs. 21, 23.) CHW has now filed a Motion to Dismiss the Amended Complaint. (Doc. 25.) CHW contends that its pending Motion to Dismiss contains arguments "that could entirely dispose of the case and raises pure legal questions that do not require discovery prior to ruling on the motion." (Doc. 18-1 at 3.) According to CHW, these arguments make costly discovery at this early stage of the litigation burdensome. (*Id.*) Adam, on the other hand, argues that the First Amended Complaint renders the arguments contained in CHW's Motion to Dismiss moot. (Doc. 22.) I conclude the instant motion for protective order is not mooted by the First Amended Complaint because the issues presented by the pending Motion to Dismiss are not resolved.

## II. DISCUSSION

### A. The Parties' Arguments

CHW contends the motion to dismiss will likely dispose of the case or at least narrow the scope of discovery. Thus, CHW asserts a stay will obviate the need for expensive and burdensome discovery. CHW contends all the factors the Court is to weigh, as discussed below, favor a stay. Finally, CHW argues that if discovery is not stayed, the Court should bifurcate discovery to first address plaintiff-specific discovery before addressing class certification issues.

Not surprisingly, Adam's resistance disagrees on all of these points, arguing that all of the factors instead weigh against a stay and bifurcation.

### B. Applicable Standard for Protective Order

Rule 26(c) authorizes the entry of a protective order for good cause limiting or otherwise controlling discovery. District courts have broad discretion to stay discovery under Rule 26(c). *Steinbuch v. Cutler*, 518 F.3d 580, 588 (8th Cir. 2008) (citing *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 713 (8th Cir. 2003)); *see also Maune v. Int'l Bhd. of Elec. Workers*, 83 F.3d 959, 963 (8th Cir. 1996) (upholding request to stay); *Blair v. Douglas Cnty*, No. 8:11CV349, 2013 WL 2443819, at *1 (D. Neb. June 4, 2013) (noting broad discretion and inherent power to stay pending outcome of dispositive motions). "The grant of a stay is a matter of judicial discretion, which is 'dependent upon the circumstances of the particular case,' and '[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.' " *United Fire & Cas. Co. v. Illinois Constructors*

Adam v. CHW Group, Inc., Not Reported in Fed. Supp. (2021)

2021 WL 7285904

*Corp.*, No. 16-CV-0055-EJM, 2017 WL 11452040, at *1 (N.D. Iowa Feb. 1, 2017) (alteration in original) (quoting *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)) (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).

**\*2**  As this Court has noted:

> Courts have used various standards in determining whether to stay discovery, including: (1) whether there is a strong showing that a claim is unmeritorious; (2) the breadth of discovery and burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay. *Chesney v. Valley Stream Union Free Sch. Dist.*, 236 F.R.D. 113, 116 (E.D. N.Y. 2006). Courts may also consider the complexity of the action and the stage of litigation. *Chesney*, 236 F.R.D. at 116. *See also Benge v. Eli Lilly & Co.*, 553 F. Supp. 2d 1049, 1050 (N.D. Ind. 2008) (identifying three factors in determining whether a stay is appropriate: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the matter is not stayed; and (3) economy of judicial resources.").

*Allen v. Agreliant Genetics, LLC*, No. 15-CV-3172-LTS, 2016 WL 5416418, at *2 (N.D. Iowa Sept. 26, 2016); *see also United States ex rel. Donegan v. Anesthesia Assocs. of Kansas City, PC*, No. 4:12-CV-0876-DGK, 2014 WL 12618074, at *1 (W.D. Mo. Jan. 7, 2014) ("In determining whether to grant a motion to stay discovery pending the outcome of a dispositive motion, a court considers a variety of factors, including the movant's likelihood of success on the underlying motion; whether the movant will be irreparably harmed absent a stay; the breadth of the pending discovery; the balance of harms in delaying discovery against the possibility that the underlying motion will dispose of the case; the public interest; and judicial economy.") (citations omitted).

I turn now to the application of these factors.

### 1. Whether There is a Strong Showing that a Claim is Unmeritorious

CHW's motion to dismiss is not before me and I decline to make a definitive prediction regarding the outcome of that motion. Nevertheless, I have considered whether the parties' arguments regarding the motion will result in dismissal or limiting the remaining issues. On balance, I find this factor weighs in favor of a brief stay.

### 2. The Breadth of Discovery and Burden of Responding to It

I agree with CHW that the discovery requests are broad. However, CHW offers only conclusory allegations regarding the burden these requests would impose. I find this factor weighs against a stay.

### 3. The Risk of Unfair Prejudice to the Party Opposing the Stay

A brief stay of discovery to permit the Court to consider the Motion to Dismiss will not cause prejudice to Adam. I make no prediction of when the Court will rule on the Motion to Dismiss and this order in no way limits the scope or timing of that ruling. If the stay expires prior to the Court's ruling on the Motion to Dismiss, it will still have had some salutary effect. This factor weighs in favor of a stay. I also find that a brief stay at this early stage of discovery would conserve the Court's and the parties' resources.

### C. Motion to Bifurcate

"The standards applicable to motions to bifurcate discovery appear to be the same as those addressed under Fed. R. Civ. P. 42(b) governing separate trials, namely, the motion may be granted "[f]or convenience, to avoid prejudice, or to expedite and economize." *Charvat v. Plymouth Rock Energy, LLC*, 15-CV-4106(JMA)(SIL), 2016 WL 207677, at *1 (E.D.N.Y. Jan. 12, 2016) (citing *Koch v. Pechota*, No. 10 Civ. 9152, 2012 WL 2402577, at *6 (S.D.N.Y. June 26, 2012) (denying motion to bifurcate and noting that the inquiry is not actually governed by Rule 42(b))); *Hartley–Culp v. Credit Mgmt. Co.*, No. CV–14–0282, 2014 WL 4630852, at *2 (M.D. Pa. Sept. 15, 2014) (applying the TCPA and holding "There is no question that the Court, in its discretion, can bifurcate discovery under Fed. R. Civ. P. 42.")).

**\*3**  Adam cites a number of TCPA cases where courts have ordered the discovery be bifurcated. *See, e.g., Larson v. Burlington N. and Santa Fe Ry. Co.*, 210 F.R.D. 663 (D. Minn. 2002). *Larson* held:

> Here, we conclude that the mandate of Rule 1, Federal Rules of Civil Procedure, is best implemented by bifurcated discovery—that is, by completing discovery as to the claims of the four named-Plaintiffs, prior to

2021 WL 7285904

extensive discovery on the merits of the "class claims." In practical effect, as the parties implicitly concede, merits discovery, and class discovery, could well overlap as to the claims of the named-Plaintiffs.

*Id.* at 665.

I conclude that this case may well benefit from some more moderate form of bifurcation. Unlike *Larson*, I do not envision completion of discovery regarding the named-plaintiff prior to discovery on the class claims. I contemplate a brief period during which discovery is limited to Adam's claims and is then opened to all issues. Rather than set that schedule now, I will reserve that issue to discuss at the scheduling conference. In the meantime, the parties are urged to meet and confer regarding an appropriate schedule consistent with this order.

### III. CONCLUSION

For the reasons set forth herein, Defendants' Motion for Protective Order to Temporarily Stay or Bifurcate Discovery by Defendant CHW Group, Inc. **(Doc. 18) is GRANTED in part and DENIED in part**. Discovery is stayed until the scheduling conference on July 21, 2021. The request to bifurcate **is held in abeyance** until completion of the scheduling conference.

**IT IS SO ORDERED** this 29th day of June, 2021.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 7285904

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Akselrod v. MarketPro Homebuyers LLC, Not Reported in Fed. Supp. (2021)

2021 WL 100666

2021 WL 100666
Only the Westlaw citation is currently available.
United States District Court, D. Maryland.

Gustave AKSELROD

v.

MARKETPRO HOMEBUYERS LLC

Civil No. CCB-20-2966
|
Signed 01/11/2021
|
Filed 01/12/2021

**Attorneys and Law Firms**

John Thomas McGowan, Jr., Kinner & McGowan PLLC, Washington, DC, Anthony I. Paronich, Pro Hac Vice, Paronich Law PC, Hingham, MA, for Gustave Akselrod.

Eric M. Hurwitz, Stradley Ronon Stevens & Young LLP, Cherry Hill, NJ, Thomas Francis Lucchesi, III, Stradley Ronon, Washington, DC, for MarketPro Homebuyers LLC.

**MEMORANDUM & ORDER**

Catherine C. Blake, United States District Judge

*1 In this action, plaintiff Gustave Akselrod brings a class action complaint alleging two claims under the TCPA, 47 U.S.C. § 227, et seq., against defendant MarketPro Homebuyers ("MarketPro")—(1) a violation of the TCPA's prohibitions on autodialing the telephones of individuals without their consent, and (2) making telephone solicitations to individuals who are registered on the National Do-Not-Call Registry. Before the court is MarketPro's proposed modification (ECF 13) to the court's proposed scheduling order. MarketPro seeks to stay this case pending a decision from the United States Supreme Court in *Facebook v. Duguid*, No. 19-511, or, in the alternative, to bifurcate liability and class discovery and limit discovery at this time to potentially dispositive issues. Akselrod opposes both requests. (ECF 14). The court, having considered the parties' submissions and their arguments during a scheduling conference call on December 29, 2020, will deny the request to stay the case, but will grant the request to bifurcate discovery. Discovery may be taken as to (1) the capabilities of the system used to make the communications at issue in this case; and (2) whether

the communications sent to the plaintiff were "telephone solicitations" under the TCPA.

A stay of the case is not warranted. In considering whether the court should exercise its inherent authority to stay a proceeding, three factors are relevant: (1) whether the stay will promote judicial economy, measured by whether a stay would simplify or complicate the issues in the case; (2) the hardship to the moving party if the case is not stayed; and (3) the potential prejudice to the non-moving party if the stay is granted. *See Int'l Refugee Assistance Project v. Trump*, 323 F. Supp. 3d 726, 730–31 (D. Md. 2018). As to prejudice, it appears that any hardship to MarketPro from denying a stay is evenly balanced with the possibility of prejudice to Akselrod if a stay is granted. As to the ability of a stay to simplify the issues in the case, the court agrees with Akselrod that a complete stay while *Facebook v. Duguid* remains pending is likely to delay and further complicate rather than simplify this litigation.

In order to succeed on its autodialing claim, Akselrod must prove that the communications he received were made using an automated telephone dialing system ("ATDS"). The issue in *Duguid* is whether an ATDS includes technology that simply has the capacity to store numbers to be dialed automatically, as the Ninth Circuit has held, *Duguid v. Facebook*, 926 F.3d 1146, 1151 (9th Cir. 2019), or whether the technology must also use a random or sequential number generator in order to fall within the definition, as the Third and Eleventh Circuits have held, *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018); *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306–08 (11th Cir. 2020). It appears to the court from Akselrod's complaint that the system MarketPro used to send messages to Akselrod could fall within either (or neither) of the contested definitions of an ATDS. This raises the possibility that if the case is stayed until the Supreme Court resolves the definition of an ATDS, discovery and briefing regarding whether MarketPro's system qualifies as an ATDS would still be necessary. But if the case proceeds now, the parties will be able to take targeted discovery so that when *Duguid* is decided, the case may be resolved more quickly based on the Court's definition of an ATDS and the parties' knowledge of the system's capabilities. Additionally, a stay would delay the resolution of Akselrod's Do-Not-Call Registry claim, which is distinct from the autodialing claim. Thus, the more efficient approach, as other courts have held in TCPA cases where discovery on the ATDS would be necessary regardless of the outcome of *Duguid* or where a stay would delay additional unrelated

Case 1:25-cv-00927-KMN    Document 28-1    Filed 09/16/25    Page 6 of 75

Akselrod v. MarketPro Homebuyers LLC, Not Reported in Fed. Supp. (2021)

2021 WL 100666

claims, is to allow at least some discovery to proceed. *See, e.g.*, *Lacy v. Comcast Cable Commc'ns, LLC*, Case No. 3:19-cv-05007-RBL, 2020 WL 4698646, *2 (W.D. Wash. Aug. 13, 2020); *Pittenger v. First Nat'l Bank of Omaha*, No. 20-CV-10606, 2020 WL 5596162, at *3 (E.D. Mich. Sept. 18, 2020). [1]

**\*2**  As to the bifurcation of liability and class discovery, the court considers (1) the overlap between individual and class discovery, (2) whether bifurcation will promote Federal Rule of Civil Procedure 23's requirement that certification be decided at "an early practicable time," (3) judicial economy, and (4) any prejudice reasonably likely to flow from the grant or denial of a stay of class discovery. *See* 1 McLaughlin on Class Actions § 3:10 (11th ed. 2014). MarketPro argues that whether the system used in this case was an ATDS and whether the messages sent were telephone solicitations are potentially dispositive and that limited discovery on these issues would save the parties the time and expense of class discovery. Akselrod disagrees, arguing that class issues and liability issues substantially overlap, that bifurcation will lead to additional, time-consuming disputes regarding whether discovery relates to class issues or individual issues, and that a delay in class discovery poses a risk that the third-party MarketPro used to send the messages at issue will destroy relevant call records before Akselrod can obtain them. The court concludes that whether an ATDS was used and whether messages were telephone solicitations are issues of liability largely distinct from class certification issues (e.g., numerosity, commonality, typicality, and adequacy of representation). *See* Fed. R. Civ. P. 23. Limited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive, *see, e.g.*, *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, No. CIV.A. 12-2132 FLW, 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014) (granting motion to bifurcate discovery in TCPA case where bifurcation would promote efficiency by permitting discovery on potentially dispositive issues that did not overlap with class issues), and at any rate, it may not be practicable to determine class certification until after *Duguid* is resolved. To prevent the possibility of evidence spoliation, Akselrod may subpoena the third party at issue or take some other action to ensure the preservation of records.

During the conference call with the court, the parties raised an additional question regarding the extent of discovery that should be permitted into whether the messages at issue are telephone solicitations. Akselrod contends that discovery into MarketPro's subjective purpose in sending the messages is relevant, and MarketPro argues that the issue turns on an objective analysis of the content of the messages to determine their purpose. *See* 47 U.S.C. § 227(a)(4) (defining "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, ..."). The court does not find it necessary at this time to determine how much discovery is needed as to the "purpose" of the messages. It appears that some courts have focused on the content of the message in determining their purpose, *see, e.g.*, *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-CV-1459-ORL, 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013), *aff'd* on other grounds 797 F.3d 1302 (11th Cir. 2015), but this issue can be more fully briefed at a later time.

Accordingly, it is hereby ORDERED that:

1. MarketPro's request to stay the case is DENIED;

2. MarketPro's request to bifurcate liability and class discovery is GRANTED;

3. Limited discovery will be permitted into (1) the capabilities of the system used to make the communications at issue in this case; and (2) whether the communications sent to the plaintiff were "telephone solicitations" under the TCPA;

4. To prevent the possibility of evidence spoliation, Akselrod may subpoena the third party at issue or take some other action to ensure the preservation of records;

5. Initially the courts sets a deadline for the limited discovery to be complete by April 15, 2021, with a status report due the same day; and

6. Counsel shall notify the court when an opinion has been issued in *Facebook v. Duguid*.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 100666

**Akselrod v. MarketPro Homebuyers LLC, Not Reported in Fed. Supp. (2021)**

2021 WL 100666

---

## Footnotes

1    Unpublished opinions are cited for the persuasiveness of their reasoning and not for any precedential value.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

America's Health and Resource Center, Ltd. v. Promologics, Inc., Not Reported in Fed....

2018 WL 3474444

KeyCite Yellow Flag
Disagreed With by  *Sotomayor v. Bank of America, N.A.,*  C.D.Cal.,  May 3, 2019

2018 WL 3474444
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

AMERICA'S HEALTH AND RESOURCE CENTER,
LTD.; Affiliated Health Group, Ltd., Plaintiffs,

v.

PROMOLOGICS, INC.; Janssen
Pharmaceuticals, Inc., Defendants.

Case No. 16 C 9281
|
Signed 07/19/2018

**Attorneys and Law Firms**

Phillip A. Bock, James Michael Smith, Tod Allen Lewis, Daniel J. Cohen, Molly Stemper Gantman, Bock Law Firm, LLC dba Bock, Hatch, Lewis & Oppenheim, LLC, Christopher Phillip Taylor Tourek, Cafferty Clobes Meriwether & Sprengel, LLP, Julia Lynn Mohan, Roetzel & Andress LPA, Chicago, IL, Kimberly M. Watt, Sb2 Inc., Harrisburg, PA, for Plaintiffs.

Avanti Bakane, Brian H. Myers, Christina Rose Spiezia, Gordon Rees Scully Mansukhani LLP, David Luther Hartsell, Susan E. Groh, McGuireWoods LLP, Bradley Joseph Andreozzi, Iman N. Boundaoui, Drinker Biddle & Reath LLP, Chicago, IL, Elizabeth Z. Timmermans, McGuireWoods LLP, Raleigh, NC, Robert A. Muckenfuss, McGuireWoods LLP, Charlotte, NC, Marsha J. Indych, Drinker Biddle & Reath LLP, New York, NY, for Defendants.

## AMENDED MEMORANDUM OPINION AND ORDER

Harry D. Leinenweber, Judge

*\*1* Defendant Janssen moves to strike the class allegations asserted by Plaintiffs America's Health & Resource Center, Ltd. and Affiliated Health Group, Ltd., and to bifurcate discovery. (Dkts. 75, 78.) Defendant Promologics has joined in those Motions. (Dkts. 87, 89.) For the reasons stated herein, the Court grants in part and denies in part the Motion to Strike the class allegations and grants the Motion to Bifurcate.

## I. BACKGROUND

The Court has previously summarized the facts of this case in an earlier ruling. *See, Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.,* No. 16 CV 9281, 2017 WL 5001284, at *\*1 (N.D. Ill. Nov. 2, 2017).* All that is relevant for now is that Plaintiffs allege Defendants sent them, and each member of their proposed class, a fax in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. (Am. Compl. ¶¶ 1-10, Dkt. 21.) Defendants contend that this class action is incurably defective, however, and so they move to strike those allegations. Beyond that, Defendants take issue with what they see as a shortage of proof to back up the viability of the named Plaintiffs' individual claims. Defendants accordingly move to bifurcate discovery so they and the Court can first ascertain whether the named Plaintiffs have individual claims before contending, if still necessary, with the proposed class allegations.

## II. ANALYSIS

### A. Motion to Strike Class Allegations

According to Defendants, the Court should strike the class allegations in part or in whole for three reasons: (1) Under the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California,* 137 S. Ct. 1773, 1783-84 (2017), this Court lacks personal jurisdiction over the Defendants as to the claims of the non-Illinois-resident class members; (2) due to an imprecise class definition, the named Plaintiffs' claims are not typical of the claims of the other class members; and (3) individualized issues of consent predominate over common questions of law or fact, so the class fails to clear Federal Rule of Civil Procedure 23(b) (3), as required here. The Court finds only the first of these arguments convincing.

### 1. Personal Jurisdiction under Bristol-Myers Squibb

Personal jurisdiction may be "general" or "specific." General jurisdiction lies only where the defendant has "continuous and systematic" contacts with the forum state. *See, Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415-16 (1984). In all but the most exceptional cases, general

Case 1:25-cv-00927-KMN    Document 28-1    Filed 09/16/25    Page 9 of 75

America's Health and Resource Center, Ltd. v. Promologics, Inc., Not Reported in Fed....

2018 WL 3474444

jurisdiction over a corporation is limited to its place of incorporation and/or principal place of business. *Leibovitch v. Islamic Republic of Iran*, 188 F. Supp. 3d 734, 746 (N.D. Ill. 2016) (citing *Daimler AG v. Bauman*, 134 S Ct. 746, 761 n.19 (2014) ), *aff'd*, 852 F.3d 687 (7th Cir. 2017). In contrast, "[s]pecific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) ). In either case, the plaintiff must also demonstrate that the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).

**\*2** Despite contending in their Complaint that Defendant Janssen is subject to this Court's general jurisdiction (Am. Compl. ¶ 18, Dkt. 21), Plaintiffs make no general jurisdiction arguments in their present briefing as to either Defendant, both of which are incorporated and have their principal places of business outside of Illinois. *See, Daimler*, 134 S. Ct. at 761 n.19. As such, the remaining jurisdictional inquiry is specific. Here, that inquiry depends on the Supreme Court's ruling in *Bristol-Myers Squibb*. 137 S. Ct. at 1783-84. That case began as a mass tort action in California state court involving hundreds of individual plaintiffs, most of whom were not California residents. *Id.* at 1777. On review, the Supreme Court considered the compatibility of the state court's exercise of jurisdiction with the Fourteenth Amendment's due process clause and concluded that the state court lacked specific jurisdiction over the defendant as to the claims of the nonresident plaintiffs. *Id.* at 1779, 1783-84. In so holding, the Court clearly limited its ruling to state court jurisdiction, thus "leav[ing] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784 (citation omitted). That limitation is no barrier to the rule's application here, however, where this Court sits in diversity jurisdiction and accordingly looks to Illinois state law. *See, LDGP, LLC v. Cynosure, Inc.*, No. 15 CV 50148, 2018 WL 439122, at \*2 (N.D. Ill. Jan. 16, 2018) (applying *Bristol-Myers Squibb* holding in case of diversity jurisdiction); *McDonnell v. Nature's Way Prods., LLC*, No. 16 CV 5011, 2017 WL 4864910, at \*4 n.7 (N.D. Ill. Oct. 26, 2017) (same).

But that is not the only possible barrier to *Bristol-Myers Squibb*'s application to this case. What remains is whether that case applies with equal force to class actions as to mass torts and, if so, whether the Defendants' personal-jurisdiction objection predicated on that case is either timely or, if untimely, excusable. The precise membership of the proposed class is still unclear, but the allegations suggest that the proposed nationwide class contains members who neither reside, nor were harmed in, Illinois. It is this group of plaintiffs whose claims Defendants seek to shear from the case, and if the Court answers the questions presented above in the affirmative, Defendants' efforts will prevail.

As for the first question: *Bristol-Myers Squibb* left open whether its jurisdictional rule applies in the class action context. *See* 137 S. Ct. at 1789 n.4 (Sotomayor, J., dissenting) ("The Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there."). District court rulings have begun to fill that vacuum, though with contradictory results. *Compare Casso's Wellness Store & Gym, LLC v. Spectrum Lab. Prods., Inc.*, No. 17 CV 2161, 2018 WL 1377608 (E.D. La. Mar. 19, 2018); *In re Morning Song Bird Food Litig.*, No. 12 CV 01592, 2018 WL 1382746, at \*5 (S.D. Cal. Mar. 19, 2018); *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360, 1365-66 (N.D. Ga. 2018); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. MDL 09-2047, 2017 WL 5971622, at \*12 (E.D. La. Nov. 30, 2017) (cases finding *Bristol-Myers Squibb* inapplicable to class actions), *with Maclin v. Reliable Reports of Tex., Inc.*, No. 17 CV 2612, 2018 WL 1468821, at \*4 (N.D. Ohio Mar. 26, 2018); *Wenokur v. AXA Equitable Life Ins. Co.*, No. 17 CV 00165, 2017 WL 4357916, at \*4 n.4 (D. Ariz. Oct. 2, 2017); *In re Dental Supplies Antitrust Litig.*, No. 16 CV 696, 2017 WL 4217115, at \*9 (E.D.N.Y. Sept. 20, 2017) (finding the opposite). This Court has also weighed in and agreed with those courts finding *Bristol-Myers Squibb* applicable to class actions. *See, DeBernadis v. NBTY, Inc.*, No. 17 CV 6125, 2018 WL 461228, at \*2 (N.D. Ill. Jan. 18, 2018). That ruling comports with the position taken by the other courts in this District which have answered this question. *See, McDonnell*, 2017 WL 4864910, at \*4; *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 874 (N.D. Ill. 2017).

Those decisions finding *Bristol-Myers Squibb* applicable to class actions have generally observed that due process requirements do not differ between class and non-class actions. In either event, as the Supreme Court articulated,

America's Health and Resource Center, Ltd. v. Promologics, Inc., Not Reported in Fed....

2018 WL 3474444

due process requires "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb*, 137 S. Ct. at 1781; *see, Greene*, 289 F. Supp. 3d at 874 (stating same); *Maclin*, 2018 WL 1468821, at *4 (remarking that the respective due process protections of the Fifth and Fourteenth Amendments engender the same effects as far as personal jurisdiction are concerned); *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *9 ("The constitutional requirements of due process do[ ] not wax and wane when the complaint is individual or on behalf of a class."). This Court agrees with that observation and now endorses it once again, reflecting this Court's belief that *Bristol-Myers Squibb* applies in equal measure to class actions.

**\*3** But answering this first question in the affirmative does not yet give Defendants a victory in their quest to cut down the proposed class. There is also the question of timeliness. Plaintiffs contend that even if this Court believes *Bristol-Myers Squibb* applies with equal force to class actions, Defendants' Motion still fails because, by challenging this Court's personal jurisdiction, Defendants' filing is nothing more than a 12(b)(2) motion in disguise. And as such, it is susceptible to the same timeliness requirements—and the attendant waiver penalties for tardiness—as any other challenge to personal jurisdiction.

Ordinarily, defendants must assert personal jurisdiction challenges in their first responsive pleading, or else waive them. FED. R. CIV. P. 12(b)(2), (h)(1); *see, Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705 (1982) (explaining failure to object timely to personal jurisdiction constitutes waiver of said objection). Defendants suggest they should not be held to that standard here, however, where they moved to dismiss the Amended Complaint on May 25, 2017—roughly one month before the Supreme Court issued *Bristol-Myers Squibb*. According to Defendants, that opinion signified an intervening change in the law, and so they cannot be held to account for having failed, pre-*Bristol-Myers,* to raise the new defense that decision made available to them. This Court is not convinced.

First, the Supreme Court admonished that the result in *Bristol-Myers Squibb* represented a "straightforward application" of "settled principles regarding specific jurisdiction." 137 S. Ct. at 1782-83. This was an odd characterization for the Court to deploy if it intended its decision to be interpreted as a change in controlling law. Second, it is not clear that pre-*Bristol-Myers* authority precluded Defendants from raising their personal jurisdiction challenge when they filed

their first responsive pleadings in May 2017, meaning Defendants should not be excused for failing to do so. *Cf. Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009) (remarking that personal jurisdiction defense is not waived where, prior to the time it was raised, it would have been "contrary to controlling precedent"). The First Circuit has explained that a party may be excused for failing to raise a then-unavailable defense, *i.e.*, a defense that, "if asserted, would have been futile under binding precedent." *Bennett v. City of Holyoke*, 362 F.3d 1, 7 (1st Cir. 2004); *accord Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 862 (N.D. Ill. 2018) (quoting and applying same). The problem for Defendants, who filed their first responsive pleadings over a year ago (Dkts. 44, 46), is that this Court is not aware of any pre-*Bristol-Myers*, Seventh-Circuit authority that would have rendered futile a challenge to personal jurisdiction as to the non-resident, proposed class members. *Accord Greene*, 289 F. Supp. 3d at 876 (reciting that pre-*Bristol-Myers* Seventh Circuit precedent "did not foreclose [defendants] from pressing [the *Bristol-Myers*] theory" as an affirmative defense). Without an intervening change in the law and without an earlier, controlling authority blockading such efforts, the Defendants' failure to mount a timely challenge to personal jurisdiction constitutes forfeiture of that challenge.

However, though the Defendants forfeited their personal-jurisdiction challenge by failing to raise it earlier, the Court will excuse the forfeiture. In a similar ruling, Judge Gary Feinerman remarked that under Supreme Court guidance, lower courts " 'retain [ ] the independent power to identify and apply the proper construction of governing law,' even where the parties 'fail[ ] to advert' to the applicable rule in their own briefing." *Greene*, 289 F. Supp. 3d at 877 (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ) (excusing forfeiture of *Bristol-Myers* jurisdiction challenge); *see also, ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001) (excusing forfeiture and remarking that "[f]ederal courts are entitled to apply the right body of law, whether the parties name it or not"), *as amended* (July 2, 2001). The Supreme Court made clear in *Bristol-Myers* what standard to apply in scrutinizing personal jurisdiction as to the claims of nonresident plaintiffs, and this Court will follow that direction. *See, Practice Mgmt.*, 301 F. Supp. 3d at 864 (endorsing *Greene*'s forfeiture reasoning).

**\*4** In this class action, the *Bristol Myers* opinion is applicable and its import clear: The Court lacks jurisdiction over the Defendants as to the claims of the nonresident,

Case 1:25-cv-00927-KMN    Document 28-1    Filed 09/16/25    Page 11 of 75

America's Health and Resource Center, Ltd. v. Promologics, Inc., Not Reported in Fed....

2018 WL 3474444

proposed class members. As such, the Defendants' Motion is granted in relevant part, and those class members who are not Illinois residents and who allegedly received the fax outside of this state's borders may not be part of this case. To the extent that the proposed class allegations comprise any such unnamed plaintiffs, they are stricken. Subtracting those proposed class members shrinks the class but might not destroy it; the Complaint is unclear as to how many of the proposed plaintiffs are Illinois residents, so the Court cannot yet say whether the remaining balance is sufficiently numerous to satisfy Rule 23. Given that uncertainty, the Court will address the rest of Defendants' Motion-to-Strike arguments lest any of them succeeds in further reducing the proposed class.

### 2. Typicality Challenge

Beyond their jurisdictional assault, Defendants also attack the proposed class under Federal Rule of Civil Procedure 23. To do so, Defendants cite to this Court's reasoning in another TCPA case, *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 CV 2513, 2018 WL 488257, at *4 (N.D. Ill. Jan. 18, 2018). There, the Court found that because the proposed class definition failed to distinguish between those members who received unsolicited faxes and those members who received solicited faxes, the claims of the named plaintiffs—who allegedly received only the former variety—were not typical of the claims of the class. *Id.* at *4 (remarking upon absence of congruence between those claims given that the class members who received only solicited faxes would not have a valid TCPA claim at all). However, the *Kabbage* opinion did not take into account that this typicality critique cannot hold if the solution is to add a consent requirement to the class definition. If the instant class were defined by a legal parameter such as consent of the recipient class member, the result would be an impermissible "fail-safe" class in which "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015) (citation omitted). Such classes are non-ascertainable and cannot be certified. *See, e.g.*, *G.M. Sign Inc. v. Stealth Sec. Sys., Inc.*, No. 14 CV 09249, 2017 WL 3581160, at *3 (N.D. Ill. Aug. 18, 2017) (citing *Mullins*, 795 F.3d at 660). Accordingly, Defendants' typicality objection carries no weight.

There is one other aspect of the *Kabbage* case that bears on the instant litigation, however. *Kabbage* detailed the history of the now-defunct Solicited Fax Rule, which once mandated that under the TCPA, all faxes, whether solicited or not, were required to include an opt-out notice. *Id.* at *2. A consolidated Hobbs Act appeal decided by the D.C. Circuit invalidated that rule in a decision which is binding on this Court. *See, id.* (citing *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1083 (D.C. Cir. 2017), *cert. denied*, 138 S. Ct. 1043 (2018)). The Defendants point out that the Amended Complaint, which predates *Yaakov*, frames the proposed class in terms of the Solicited Fax Rule's opt-out requirement which *Yaakov* invalidated. The proposed class is:

> Each person that was sent one or more facsimiles from [Defendants] inviting them to participate in a promotional educational program *that did not state on its first page that the fax recipient may request that the sender not send any future fax and that the failure to comply with such a request within 30 days would be unlawful.*

(Am. Compl. ¶ 50 (emphasis added).) Because this class definition rests upon abrogated authority, it does not properly describe a class of TCPA plaintiffs. The Court accordingly grants Defendants' Motion to Strike this definition, but allows Plaintiffs leave to amend.

### 3. Predominance Challenge

**\*5** As their final argument, Defendants charge that individualized issues of consent predominate over common questions of law or fact and thus confound class certification. FED. R. CIV. P. 23(b)(3). But "where the defendant's objection to class certification fails to set forth specific evidence 'and instead only makes vague assertions about consent,' individualized issues regarding consent will not predominate over common questions of law or fact." *Karpilovsky v. All Web Leads, Inc.*, No. 17 CV 1307, 2018 WL 3108884, at *5 (N.D. Ill. June 25, 2018) (quoting *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 587 (N.D. Ill. 2018) (citation omitted) ). Though the Defendants assert in their papers that the proposed class includes members "who provided consent and/or had an ongoing business relationship with Defendants," the Defendants have not produced any evidence whatsoever to back up that assertion. (Mem. in

Supp. of Mot. to Strike at 10, Dkt. 76.) Supposition alone does not create a meritorious consent objection in this context. *See, Savanna Group, Inc. v. Trynex, Inc.*, No. 10 CV 7995, 2013 WL 66181, at *3-4 (N.D. Ill. Jan. 4, 2013) (St. Eve, J.) (rejecting defendant's consent-inquiry-based predominance objection to class definition because defendant failed to offer specific evidence of consent). Defendants' predominance objection thus fails.

## B. Defendants' Motion to Bifurcate

In their second Motion, Defendants seek to bifurcate discovery and thus exchange, first, information related to the named Plaintiffs' individual claims, and thereafter, information related to the claims of the proposed class as a whole. According to Defendants, this will help the parties quickly determine whether the named Plaintiffs have viable claims. If they do not, perhaps the parties can entirely forgo class-wide discovery, saving resources and expense on all sides. *See, Chavez v. Ill. State Police*, 251 F.3d 612, 630 (7th Cir. 2001)* ("[If] the court determines that the named plaintiffs' claims lack merit, such a decision ordinarily, though not invariably, disqualifies the named plaintiffs as proper representatives, thus resolving the issue of class certification." (citation and internal quotation omitted) ). Whether to bifurcate discovery is a determination that rests within the discretion of the trial court. *See, Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02 CV 2523, 2004 WL 609326, at *2 (N.D. Ill. Mar. 23, 2004) (citations omitted); *cf. Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998)* ("[D]istrict courts have broad discretion in matters related to discovery.").

The present litigation is poised to cross the two-year mark, and yet Plaintiffs have not produced basic, requested discovery which would prove up their individual claims. They attached the allegedly unlawful fax to their Amended Complaint, but that document does not identify the telephone number(s) of the fax machine(s) that received it nor does it explain in any other way how Plaintiffs came to obtain it. (Copy of Fax, Dkt. 21-1.) To date, Plaintiffs have not provided verified interrogatory responses. After Defendants filed their Motion to Bifurcate, Plaintiffs made good on one of their promises to supplement their discovery responses by providing a fax number for the machine that allegedly received the unlawful communique. (*See,* Pls.' Resps. to Defs.' First Set of Interrogatories, Dkt. 80-1, -2 (Plaintiffs responding simply, "will supplement" in response to request for the telephone number that received the fax).) But as it happens, this disclosure confounds, rather than clarifies, matters: Defendants respond by filing a declaration stating that they have no record of sending any fax to that number. (Wurtsbaugh Decl. ¶ 4, Dkt. 103-1.)

**\*6** Bifurcation is not always warranted in TCPA class actions, nor is it universally appropriate or helpful. But in the circumstances presented here, where some limited, first-stage production could stave off substantial wasted efforts, the Court believes bifurcation is appropriate. *See,* FED. R. CIV. P. 1 (stating that the Federal Rules of Civil Procedure should be administered "to secure the just, speedy, and inexpensive determination of every action and proceeding"). The Motion to Bifurcate Discovery is granted.

## III. CONCLUSION

For the reasons stated herein, Defendants' Motion to Strike Class Allegations is granted in part and denied in part, and their Motion to Bifurcate Discovery is granted.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3474444

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Babare v. Sigue Corporation, Not Reported in Fed. Supp. (2020)

Case 1:25-cv-00927-KMN    Document 28-1    Filed 09/16/25    Page 13 of 75

2020 WL 8617424
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington,
at Seattle.

Daniel BABARE, individually and on behalf
of all others similarly situated, Plaintiff,
v.
SIGUE CORPORATION, Defendant.

CASE NO. C20-0894-JCC
|
Signed 09/30/2020

**Attorneys and Law Firms**

Manuel Hiraldo, Pro Hac Vice, Hiraldo PA, Michael
Eisenband, Pro Hac Vice, Eisenband Law, P.A., Fort
Lauderdale, FL, Kira M. Rubel, The Harbor Law Group, Gig
Harbor, WA, for Plaintiff.

Evelyn Crystal Lopez, Pro Hac Vice, Joshua Briones, Pro Hac
Vice, Mintz Levin Cohn Ferris Glovsky & Popeo PC, Los
Angeles, CA, Rogelio Omar Riojas, Goldfarb & Huck Roth
Riojas, PLLC, Seattle, WA, for Defendant.

ORDER

John C. Coughenour, UNITED STATES DISTRICT JUDGE

**\*1** This matter comes before the Court on Defendant
Babare Corporation's motion to stay (Dkt. No. 19). Having
thoroughly considered the parties' briefing and the relevant
record, the Court finds oral argument unnecessary and hereby
GRANTS the motion for the reasons explained herein.

**I. BACKGROUND**
In June, Plaintiff Daniel Babare filed a complaint alleging that
Defendant Sigue Corporation used an automatic telephone
dialing system ("ATDS") to send Mr. Babare six text
messages without his written consent in violation of the
Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.
§ 227(b). (*See* Dkt. No. 1 at 5–7, 10.) Mr. Babare seeks
a declaration that Sigue Corporation used an ATDS to
send the messages, statutory damages of at least $500 for
each violation, and a permanent injunction prohibiting Sigue
Corporation from violating the TCPA in the future. (*See id.*
at 10.)

Sigue Corporation denies that it used an ATDS to send the
messages, (*see* Dkt. No. 17 at 4–5, 7–8), and moves to stay
this action until the United States Supreme Court decides
*Facebook, Inc. v. Duguid*, No. 19-511, a case in which the
Court will resolve a circuit split about what constitutes an
ATDS under the TCPA, (*see generally* Dkt. No. 19). Sigue
Corporation argues that staying the case will conserve judicial
resources and spare the parties the expense of engaging in
costly discovery and motions practice that could be mooted
by the Supreme Court's decision. (*See* Dkt. No. 19 at 1, 16.)
Specifically, Sigue Corporation argues that the device it used
to send the text messages does not qualify as an ATDS under
the narrower definition adopted by the Third, Seventh, and
Eleventh Circuits, so if the Supreme Court were to adopt that
definition, this case could be resolved by an early summary
judgment motion. (*See* Dkt. Nos. 19 at 9, 23 at 10.)

Mr. Babare argues that the Court should not stay the case
because "the same discovery and briefing will have to take
place" regardless of how the Supreme Court rules, (Dkt. No.
21 at 11), Sigue Corporation's proposed stay is "indefinite,"
and "a prolonged stay could result in the irretrievable loss of
critical evidence," (*id.* at 13–14). Alternatively, Mr. Babare
argues that if the Court does grant a stay, the stay should
be limited to whether Sigue Corporation used an ATDS to
send the messages and discovery and briefing regarding class
certification should proceed. (*See id.* at 16–17.)

**II. DISCUSSION**
The Court has inherent authority to manage its docket "in
a manner which will promote economy of time and effort
for itself, for counsel, and for litigants." *CMAX, Inc. v.
Hall*, 300 F.2d 265, 268 (9th Cir. 1962). This includes the
power to stay an action "pending resolution of independent
proceedings which bear upon the case." *Levya v. Certified
Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). When
considering whether to stay an action, the Court must weigh
"the possible damage which may result from the granting
of a stay, the hardship or inequity which a party may suffer
in being required to go forward, and the orderly course of
justice measured in terms of the simplifying or complicating
of issues, proof, and questions of law which could be expected
to result from a stay." *CMAX*, 300 F.2d at 268.

**\*2** The Court concludes that the *CMAX* factors weigh in
favor of a stay. First, a stay will promote the orderly course
of justice because it will allow the Supreme Court to settle
a question of law that is central to this litigation. The text

Babare v. Sigue Corporation, Not Reported in Fed. Supp. (2020)

Case 1:25-cv-00927-KMN    Document 28-1    Filed 09/16/25    Page 14 of 75

messages Sigue Corporation sent to Mr. Babare are covered by the TCPA only if Sigue Corporation sent them using an ATDS. *See* 47 U.S.C. § 227(b). Thus, whether Sigue Corporation used an ATDS to send the messages is one of the key issues to be decided in this case. The parties appear to disagree about the proper definition of an ATDS, (*see* Dkt. Nos. 19 at 10–12, 21 at 6, 9–10), and it makes little sense for the parties to spend more time and effort briefing that issue (and for the Court to spend time and effort resolving it) when the Supreme Court is likely to provide a conclusive answer in a few months. Thus, entering a stay will promote the orderly course of justice by allowing the Supreme Court to resolve a question of law that is central to this case.

Next, Mr. Babare is likely to suffer little, if any, harm from a stay. Mr. Babare does not allege that the text messages have continued or that he is suffering any ongoing harm, and a delay in collecting potential damages is not a particularly severe hardship. *See CMAX*, 300 F.2d at 268–69. Indeed, in that regard, Mr. Babare is likely to suffer even less harm than the plaintiff in *CMAX*. In *CMAX*, the plaintiff sought to recover nearly $13,000 in fees allegedly owed for services rendered. *See* 300 F.2d at 266. Here, by contrast, Mr. Babare seeks to recover only statutory damages. (*See* Dkt. 1 at 10.) Therefore, delaying resolution of the lawsuit, standing alone, will not significantly harm Mr. Babare.

Mr. Babare next argues that a stay could result in "the irretrievable loss of critical evidence" because "[m]emories fade with the passage of time, documents and data can be lost," and "Defendant has offered no guarantees that" it has preserved evidence. (*See* Dkt. No. 21 at 14–15.) But, contrary to Mr. Babare's argument, Sigue Corporation *has* confirmed that it has implemented a litigation hold, (*see* Dkt. No. 19 at 15), and Mr. Babare can address any alleged spoliation by resorting to the ordinary remedies that are available to any litigant, *see, e.g.*, *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ("[A] trial court also has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation [of evidence].").

Finally, Mr. Babare argues that the Court should deny the stay because it is "indefinite." (*See* Dkt. No. 21 at 13.) This argument is not well taken. *Duguid* is scheduled for oral argument on December 8, 2020, and absent unusual circumstances the Supreme Court generally decides the cases it schedules for argument by the end of its term (in June or July).

While a stay is likely to impose minimal costs on Mr. Babare, proceeding is likely to impose significant costs on Sigue Corporation. It is well-recognized that discovery in class actions is expensive and asymmetric, with defendants bearing most of the burdens. *See, e.g.*, *Am. Bank v. City of Menasha*, 627 F.3d 261, 266 (7th Cir. 2010) (observing that class action plaintiffs sometimes "us[e] discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit"). Mr. Babare argues that "the same discovery and briefing will have to take place" regardless of how the Supreme Court rules, (Dkt. No. 21 at 11), but that is not necessarily true. If the Supreme Court adopts the narrower definition of ATDS and Sigue Corporation is correct that it did not use an ATDS under the narrower definition, Sigue Corporation could choose to bring an early summary judgment motion thereby avoiding the need to "expend resources on extensive discovery or class certification briefing." (Dkt. No. 23 at 10); *see also Cowen v. Bank United of Tex., FSB*, 70 F.3d 937, 941 (7th Cir. 1995) ("Class actions are expensive to defend. One way to try to knock one off at low cost is to seek summary judgment before the suit is certified as a class action."). The hardship Sigue Corporation would endure by proceeding is not just the need to defend the case; it is the burden of engaging in costly discovery and motions practice that could be unnecessary if the Supreme Court adopts the narrower definition of ATDS. *Cf. Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*, 781 F. App'x 666, 667 (9th Cir. 2019) (holding stay was justified because proceeding would expose the defendant to "extensive and likely redundant discovery demands"). Thus, Mr. Babare's suggestion that the parties proceed with discovery and briefing related to class certification until *Duguid* is decided does little to remedy the problem. That discovery and briefing is the very burden Sigue Corporation seeks to avoid.

**\*3** In addition to the burdens on the parties, it is not an efficient use of the Court's time and effort to police discovery and address a class certification motion that could turn out to be unnecessary.

In sum, the balance of the hardships tilts strongly in favor of a stay here. If the Court were to enter a stay and the Supreme Court were to affirm the Ninth Circuit's opinion in *Duguid*, Mr. Babare will have been delayed by a few months in pursuing his claim. If the case were to proceed and the Supreme Court were to adopt the narrower definition of ATDS, Sigue Corporation will have

been required to participate in unnecessary yet costly and burdensome discovery and class certification briefing.

**III. CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant Sigue Corporation's motion to stay (Dkt. No. 19). The Court STAYS this case pending the Supreme Court's opinion in

*Facebook, Inc. v. Duguid*, No. 19-511, and ORDERS the parties to file a joint status report that proposes a new case schedule within 14 days of the date the Supreme Court issues its opinion in *Duguid.*

**All Citations**

Not Reported in Fed. Supp., 2020 WL 8617424

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 28-1    Filed 09/16/25    Page 16 of 75
Jordan Cameron, on behalf of himself and others similarly..., Slip Copy (2025)

2025 WL 2336513

2025 WL 2336513
Only the Westlaw citation is currently available.
United States District Court, D. Utah.

Jordan Cameron, on behalf of himself
and others similarly situated, Plaintiff,
v.
CHW Group, Inc. a New Jersey corporation doing
business as Choice Home Warranty, Defendant.

Case No. 2:23-cv-00320-HCN-DBP
|
Filed 08/13/2025

District Judge Howard C. Nielson, Jr

MEMORANDUM DECISION AND ORDER

Dustin B. Pead United States Magistrate Judge

**\*1** Before the court are two related motions. First the parties
move the court for a scheduling conference because the
parties have been unable to reach agreement on all the issues
discussed in their Fed. R. Civ. P. 26(f) conference. [1] Second,
Defendant moves the court for an order bifurcating discovery
between the individual claim of Plaintiff Jordan Cameron
and the putative class members' claims. [2] Bifurcation of
discovery is one issue upon which the parties could not
agree during the Rule 26(f) conference. Having carefully
considered the parties' written memoranda and proposed
scheduling orders, along with relevant case law, the court
orders as follows. [3]

## BACKGROUND

In their scheduling conference the parties could not reach
agreement on the following issues:

1. Defendant requests discovery be bifurcated. Plaintiff
opposes these requests.

2. Defendant wants to limit each side to 5 depositions each.
Plaintiff wants to limit each side to 10 depositions each.

3. Defendant does not want to limit the number of requests
for admissions. Plaintiff wants to limit each side to 50
requests.

4. Defendant does not want to limit the number of requests
for production. Plaintiff wants to limit each side to 50
requests.

5. Plaintiff is requesting that the deadline to file a motion
for class certification occur approximately one month after
the fact discovery deadline. Defendant requests this court
set the deadline for class certification to occur after the
close of expert discovery. [4]

The court resolves these issues in the scheduling order that
is entered contemporaneously with this order. Therefore, the
parties' request for a scheduling conference to consider these
issues is GRANTED. The court further addresses the Motion
to Bifurcate in this order. [5]

This is a putative class action. Plaintiff alleges Defendant
violated the Telephone Consumer Protection Act, 47 U.S.C.
§ 227, et seq. (TCPA) by calling Plaintiff and putative
class members with solicitations despite having their phone
numbers registered on the National Do-Not-Call Registry.
Plaintiff alleges Defendant utilized a campaign to "market
its home warranty services through the use of unsolicited
calls, pre-recorded text messages, and other deceptive
practice in plain violation" of the TCPA. [6] This case was
before District Judge Bruce Jenkins before he passed away.
Defendant sought to dismiss this case and following the
denial of that motion, and the denial of a Motion to
Reconsider Interlocutory Order, the parties held their Rule
26(f) scheduling conference earlier this year. As noted above
the parties failed to reach agreement on all discovery issues
and the present motion followed.

## DISCUSSION

**\*2** In considering whether to bifurcate discovery in a
putative class action, courts look to both Federal Rules
of Civil Procedure 23 and 42(b). [7] Rule 42(b) provides
a trial court with wide discretion to bifurcate proceedings
for "convenience, to avoid prejudice, or to expedite and
economize." [8] When considering whether to bifurcate class
discovery and a plaintiff's individual claims, courts consider
" '(1) [the] overlap between individual and class discovery,

(2) whether bifurcation will promote [Fed. R. Civ. P. 23's] requirement that certification be decided at 'an early practicable time,'(3) judicial economy, and (4) any prejudice likely to flow from the grant or denial of a stay of class discovery.' "[9] As this court has noted, "[b]ifurcation under Rule 42 is not the norm or even a common occurrence."[10] However, in the context of TCPA putative class actions, courts have bifurcated discovery, and Defendant cites to a number of cases from other circuits,[11] where courts have recognized the efficiencies of bifurcated discovery in TCPA class actions.[12] Courts granting such motions have acknowledged the well-recognized fact that "discovery in class actions is expensive and asymmetric, with defendants bearing most of the burdens."[13] And Federal Rule 1's guiding directive "to secure the just, speedy, and inexpensive determination of every action and proceeding."[14]

**\*3** "The decision to bifurcate discovery in putative class actions prior to certification is committed to the discretion of the trial court."[15] Class certification requires the court to be "satisfied, after a rigorous analysis, that the pre-requisites of Rule 23(a) have been satisfied."[16] To certify a class, a plaintiff must establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[17] As noted by this court, often, "the class determination 'involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' "[18] Courts are therefore "reluctant to bifurcate class-related discovery from discovery on the merits."[19] "This is because the distinction between class certification and merits discovery is murky at best and impossible to determine at worst"[20] and can result in "petty [ ] fights over what constitutes merits discovery versus class discovery."[21] Turning to the factors outlined in *Klassen*[22] and applied by this court in *Dillard*[23], the court finds that bifurcation is warranted here.

Defendant argues that while bifurcated discovery may not be appropriate in all cases, it is appropriate here because this is not a routine merits versus class bifurcation request. Instead, Defendant's focus is on "narrow issues that are unique to Plaintiff's individual TCPA claim (e.g., whether he consented, is a "residential telephone subscriber," received a "telephone solicitation") for which no class discovery would

be necessary for a short period before proceeding to broader discovery."[24]

First, in contrast to *Dillard*, there is enough separation between class discovery and individual discovery to warrant bifurcation. This includes discovery concerning whether Plaintiff consented to the calls, whether his particular number is registered on the National DNC Registry, whether Plaintiff is a "residential telephone subscriber", and whether Plaintiff received telephone solicitations that fall within the TCPA. As noted by other courts, these narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery. TCPA cases, in the court's view, present a unique opportunity that warrants bifurcated discovery due to those cost savings.

In closely related fashion, the court agrees with Defendant that Rule 23 requires certification be decided at "an early practicable time" not for "the earliest practicable class certification" as advanced by Plaintiff. Rule 23 must be balanced with Rule 1's requirements and limited discovery that may ultimately preclude costly class discovery serves Rule 1's purposes. There is nothing in limited individual focused discovery that prevents class certification at "an early practicable time."

As to the third factor, the court is persuaded that counsel here are of a sophisticated enough nature to not disintegrate into childish "petty discovery fights over what constitutes merits discovery versus class discovery."[25] Counsel in the authority relied on by Defendant were able to manage this divide and the court is confident counsel can do so here. The court finds judicial economy is promoted by an efficient narrow focus on Plaintiff before proceeding to class discovery. If the case can be resolved on those narrow dispositive issues relevant to Plaintiff and his individual claims, the limited resources of the court will be preserved. And, if Plaintiff moves forward past such discovery, he will be better positioned to represent the needs of the class.

**\*4** The prejudice identified by Defendant does not appear to be unique and mostly cost based. However, in taking all the factors together, along with the reasoning found in the authority cited to by Defendant that is persuasive, discovery should be bifurcated in this case. Plaintiff's allegations of prejudice focus on alleged discovery disputes and additional delays and costs. As noted above, there is the potential for cost savings for all parties and the court is persuaded that some discovery that focuses on Plaintiff will be utilized in making

a class certification decision later. For example, the typicality requirement will benefit from discovery into Plaintiff.

Finally, the court is not persuaded by Plaintiff's arguments to the contrary. There is no request to stay discovery such as in *Dillard*, and Defendant's discovery requests that appear to be class-related do not amount to waiver. Moreover, the "more than two years later"[26] request to bifurcate discovery does not preclude such a request given what happened procedurally in this case and with the unfortunate passing of Judge Jenkins.

**ORDER**

For the foregoing reasons, Defendant's Motion to Bifurcate Discovery is GRANTED. Defendant may conduct discovery focusing on Plaintiff's individual TCPA claims, and this will be followed by class discovery.

DATED this 13 August 2025.

**All Citations**

Slip Copy, 2025 WL 2336513

---

**Footnotes**

1       ECF No. 51.

2       ECF No. 52.

3       District Judge Howard Nilson referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A). Under DUCivR 7-1(g), the court concludes that oral argument is not necessary and, therefore, decides the motion on the written memoranda.

4       Joint Motion for Scheduling Conference at 2, ECF No. 51.

5       Plaintiff filed a Motion to Strike the Motion to Bifurcate. The court denied this motion. ECF No. 56.

6       Complaint at ¶ 2, ECF No. 1.

7       *Klassen v. SolidQuote LLC*, No. 23-cv-00318-GPG-NRN, 2023 WL 5497865, at *2 (D. Colo. Aug. 23, 2023).

8       Fed. R. Civ. P. 42(b).

9       *Dillard v. Maverik, Inc.*, No. 2:24-CV-00285-TS-JCB, 2024 WL 4145162, at *2 (D. Utah Sept. 11, 2024), objections overruled, No. 2:24-CV-285-TS-JCB, 2024 WL 4534694 (D. Utah Oct. 21, 2024) (quoting *Klassen*, 2023 WL 5497865, at *2.

10      *Gadd v. S. Jordan City*, No. 2:15-CV-00667, 2018 WL 6441763, at *1 (D. Utah Dec. 7, 2018) (citation and quotations omitted).

11      *See Sapan v. Fin. of Am. Reverse LLC*, No. 8:24-CV-01213-FWS-KES, 2025 WL 1932935, at *3 (C.D. Cal. July 14, 2025) (bifurcating discovery between the plaintiff's individual claim and class discovery); *Moore v. Demand Science Grp, LLC*, 2024 WL 175743, at *1 (N.D. Ill. Jan. 4, 2024) ("The Court is concerned about wholly unnecessary discovery, so it grants the motion for bifurcation ... because it is more efficient to proceed with the limited and targeted discovery as proposed by Defendant given that the overlap between the proposed initial discovery and merits discovery is minimal"); *Pavelka v. Paul Moss Ins. Agency, LLC*, 2023 WL 3728199, at *3 (N.D. Ohio May 30, 2023) ("In cases asserting both individual liability and potential 'class action' claims under the TCPA, courts have often approved bifurcating discovery in such cases where

narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery.") (collecting cases); *Osidi v. Assurance IQ*, LLC, 2022 WL 623733, at *2 (D. Mass. Mar. 3, 2022) (bifurcating discovery in TCPA case, finding "the need for class discovery may be eliminated if [d]efendant is able to demonstrate that the [n]amed [p]laintiff lacks viable individual claims"); *Akselrod v. MarketPro Homebuyers LLC*, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021) (granting defendant's motion to bifurcate discovery in TCPA case and finding "[l]imited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive"); *Newell v. Aliera Healthcare, Inc.*, 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020) (reasoning that the limited discovery into the individual plaintiff "has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery") (quotation and citation omitted); *Katz v. Liberty Power Corp., LLC*, 2019 WL 957129, at *2 (D. Mass. Feb. 27, 2019) ("[C]lass discovery is not necessary to address certain issues that may be dispositive of Plaintiffs' individual claims or ability to bring the asserted class claims, including whether the phone numbers at issue are within the TCPA, whether named [p]laintiffs' are within the classes they purport to represent, and whether any named [p]laintiffs with a viable claim can demonstrate the Court's jurisdiction to resolve that claim."); *Leschinsky v. Inter-Continental Hotels Corp.*, 2015 WL 6150888, at *2 (M.D. Fla. Oct. 15, 2015) (granting bifurcated discovery in a TCPA case).

12   *See, e.g., Fania v. Kin Ins., Inc.*, No. 22-12354, 2024 WL 2607303, at *2 (E.D. Mich. May 24, 2024) ("In the Court's view, bifurcating discovery into plaintiff specific and class wide phases is the most efficient way to proceed with this litigation. In cases asserting both individual liability and potential class action claims under the TCPA, courts have bifurcated discovery 'where narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery.') (quoting *Pavelka v. Paul Moss Ins. Agency, LLC*, No. 1:22 CV 02226, 2023 WL 3728199, at *2 (N.D. Ohio May 30, 2023) (collecting cases).

13   *Babare v. Sigue Corp.*, 2020 WL 8617424, at *2 (W.D. Wash. Sept. 30, 2020).

14   Fed. R. Civ. P. 1.

15   *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-JST, 2015 WL 273188, at *1 (N.D. Cal. Jan. 20, 2015); *see also Crawford-El v. Britton*, 523 U.S. 574, 598–99 (1998) (noting district courts have broad discretion to control discovery and to dictate the sequence of discovery)

16   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (citation omitted).

17   Fed. R. Civ. P. 23(b)(3).

18   *Dillard*, 2024 WL 4145162, at *3 (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 351 (quotation and citation omitted)).

19   *Klassen*, 2023 WL 5497865, at *2 (quotation and citation omitted).

20   *Id.*

21   *Id.* at 3.

22   2023 WL 5497865.

23   2024 WL 4145162.

24   Motion at 11.

25   *Klassen*, 2023 WL 5497865, at *3.

2025 WL 2336513

26    Plaintiff's Opposition Memorandum at 2.

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Chenault v. Beiersdorf, Inc., Not Reported in Fed. Supp. (2020)

2020 WL 5016795

2020 WL 5016795
Only the Westlaw citation is currently available.
United States District Court, S.D. Ohio, Western Division.

Travis CHENAULT, Plaintiff,
v.
BEIERSDORF, INC., Defendant.

Case No. 1:20-cv-174
|
Signed 08/24/2020

**Attorneys and Law Firms**

Robb S. Stokar, Christian A. Jenkins, Minnillo & Jenkins Co.,
LPA, Cincinnati, OH, for Plaintiff.

David Kirsten Montgomery, Jamie Marie Goetz-Anderson,
Jackson Lewis LLP, Cincinnati, OH, for Defendant.

**ORDER GRANTING DEFENDANT'S
MOTION TO BIFURCATE DISCOVERY**

Timothy S. Black, United States District Judge

**\*1** This civil action is before the Court on Defendant
Beiersdorf, Inc.'s motion to bifurcate discovery (Doc. 9), and
the parties' responsive memoranda (Docs. 10, 11).

**I. BACKGROUND**

On February 28, 2020, Plaintiff filed this proposed class
action lawsuit on behalf of himself and others similarly
situated alleging that Defendant violated the Fair Labor
Standards Act ("FLSA") and Ohio law. (Doc. 1). Plaintiff
alleges that he and other Beiersdorf employees worked in
excess of 40 hours per workweek and were not paid overtime
pay. (*Id.* at ¶ 29). Defendant filed its answer on May 26, 2020.
(Doc. 5).

The Court held a Preliminary Pretrial Conference ("PPTC")
by telephone with the parties on June 23, 2020. During
the PPTC, the parties informed the Court that they dispute
whether bifurcated discovery is appropriate, and the Court set
an expedited briefing schedule. (June 23, 2020 Minute Entry
and Notation Order).

On July 6, 2020, Defendant filed the present motion
to bifurcate discovery. (Doc. 9). Defendant proposes that
discovery be conducted in two phases. The first proposed
phase of discovery would be focused on class/collective
action issues under the FLSA and/or Rule 23. Defendant
proposes limiting the first phase of discovery to 25
interrogatories, 25 requests for production, 25 requests for
admission, and up to five depositions for each party. (*Id.*
at 1). Under Defendant's proposed plan, expert witness
disclosures and discovery would be deferred until the second
phase of discovery, unless either party requires expert
witness testimony in connection to certification issues. If
either party requires expert testimony related to certification
issues, Defendant proposes an October 1, 2020 deadline
for primary expert designations and a November 15, 2020
deadline for any rebuttal expert designations. (*Id.* at 2).
Defendant's proposed deadline for the first phase of discovery
is December 15, 2020, one month before Plaintiff's deadline
to file a motion for conditional certification and/or motion for
class action. (*Id.* at 1).

Defendant proposes that the second phase of discovery
—which would occur after the Court's decision on any
motion for class and/or conditional certification—would
focus on merits-based discovery and final certification and
decertification issues. (*Id.* at 1–2). After the Court rules on any
motion for class and/or conditional certification, Defendant
suggests holding a status conference to establish a calendar
for the second phase of discovery. (*Id.* at 2).

Plaintiff opposes Defendant's proposed discovery plan and
contends he needs discovery beyond what is proposed in
Defendant's bifurcation plan in order to support his motion
for conditional certification. (Doc. 10 at 2). Alternatively, if
the Court grant's Defendant's motion to bifurcate, Plaintiff
requests that Defendant be required to produce materials
"reasonably necessary for plaintiff to seek conditional
certification." (*Id.* at 5–6).

**\*2** Defendant's motion to bifurcate discovery is ripe for
review.

**II. STANDARD OF REVIEW**

"Whether to bifurcate class certification and merits discovery
is within the discretion of the court." *McCluskey v. Belford
High School*, 2011 WL 13225278, at \*3 (E.D. Mich. Mar. 10,

Chenault v. Beiersdorf, Inc., Not Reported in Fed. Supp. (2020)

2020 WL 5016795

2011); *In re Copper Tubing Litig.*, 2006 WL 8434911, at *5 (W.D. Tenn. Oct. 3, 2006).

To determine whether bifurcation of discovery is appropriate, courts consider "the benefits and detriments to each party's interest," as well as "the Court's interest in reaching a just, speedy and efficient resolution of the issues raised by the pleadings." *Woods v. State Farm Fire & Casu. Co.*, 2010 WL 1032018, at *3 (S.D. Ohio Mar. 16, 2010); *see Johnson v. Gulfport Energy Corp.*, 2020 WL 4528824, at *5 (S.D. Ohio Aug. 5, 2020). Courts may bifurcate discovery "if it serves judicial economy and does not unfairly prejudice any party." *Galloway v. Nationwide Mut. Fire Ins. Co.*, No. 3:09-CV-491-JDM, 2010 WL 3927815, at *1 (W.D. Ky. Oct. 5, 2010) (citing *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1153 (6th Cir. 1988)).

## III. ANALYSIS

Defendant's motion requests that the Court bifurcate discovery into two phases: discovery related to class-certification and discovery on the merits. Defendant contends that bifurcated discovery "will allow Plaintiff and Defendant to discovery any evidence needed to support their respective positions regarding class and/or conditional certification, while preserving the parties' time and resources by delaying class-wide discovery unless and until a class or collective is certified." (Doc. 9 at 2).

Plaintiff opposes bifurcation because he contends that he would be denied the opportunity to obtain the materials necessary to prosecute his case. (Doc. 10 at 5). Moreover, Plaintiff argues that the information he seeks will not be burdensome or costly for Defendant to produce. (*Id.* at 4–5).

Although there is not a well-delineated test to determine whether to bifurcate class certification and merit-based issues, courts have looked to three factors in considering whether bifurcation is appropriate:

(1) expediency, meaning whether bifurcated discovery will aid the court in making a timely determination on the class certification motion; (2) economy, meaning "the potential impact a grant or denial of certification would have upon the pending litigation," and whether the definition of the class would "help determine the limits of discovery on the merits;" and (3) severability, meaning whether class certification and merits issues are closely enmeshed.

*Ballard v. Kenan Advantage Grp., Inc.*, 2020 WL 4187815, at *1 (N.D. Ohio July 20, 2020) (quoting 3 Newberg on Class Actions § 7:17 (5th ed.) (citing *Harris v. comScore, Inc.*, 2012 WL 686709, *3 (N.D. Ill. March 2, 2012))).

Here, the Court finds that bifurcation of discovery is appropriate.

The first and second factors favor bifurcation. First, prioritizing certification related discovery before addressing merits discovery will help this Court issue a timely ruling on any motion for class and/or conditional certification. Second, bifurcation should promote judicial economy because defining any potential class may limit or focus discovery on the merits and prevent potentially unnecessary discovery costs.

**\*3** The third factor is thornier. The Court recognizes that courts within the Sixth Circuit have denied motions to bifurcate discovery where there was considerable amount of overlap between class certification and merits-based discovery. *Johnson*, 2020 WL 4528824, at *5 (finding that bifurcation would not promote judicial economy because class certification and merits-based discovery overlapped); *Shah v. Metro. Life Ins. Co.*, 2017 WL 4772870, at *3 (S.D. Ohio Oct. 19, 2017) (denying bifurcated discovery because it would not promote judicial economy); *McCluskey v. Belford High Sch.*, 2011 WL 13225278, at *3 (E.D. Mich. Mar. 10, 2011) (finding that bifurcating discovery would "likely lead to disputes over what is 'merit' discovery as opposed to 'class' discovery, resulting in needless motion practice" and noting that "the discovery relative to class issues and merits discovery will significantly overlap, thereby creating inefficiencies were the Court to bifurcate discovery"). But the fact that class and merits-based discovery will be inevitably be intertwined to some extent does not necessitate denying a motion to bifurcate. Here, the Court finds that—while class issues and merit-based discovery may be somewhat enmeshed—there should not be considerable overlap.

Because efficiency and judicial economy favor bifurcation, Defendant's motion is well-taken. Therefore, discovery relating to class certification and discovery relating to merits should be bifurcated as much as practicable. Accordingly, the Court adopts Defendant's timeline and plan for the first phase of discovery (*see* Doc. 9 at 1–2). The timeline for the second phase of discovery will be set after the Court issues its decision on any motion for class and/or conditional certification.

2020 WL 5016795

Nevertheless, while the Court agrees with Defendant that bifurcated discovery is appropriate, the Court wants to make clear that Defendant is required to produce materials necessary for Plaintiff to seek conditional certification. If discovery disputes arise over whether a discovery issue is class or merit related, the Court anticipates permitting discovery on the issue.

In that vein, the parties already dispute whether Plaintiff should be provided with a list of class member names and contact information during the first phase of discovery. Defendant contends that production of such a list is premature. (Doc. 9 at 2). Defendant has offered to produce a redacted employee list (including first name, last initial, and dates of employment), yet Plaintiff argues that a redacted list is insufficient. The Court agrees with Plaintiff.

As courts have recognized, "[g]iven the Supreme Court's direction that the broad remedial goal of the FLSA should be enforced to the full extent of its terms, pre-certification discovery is appropriate to enable the plaintiff to define the class and identify similarly situated employees." *Boice v. M +W U.S., Inc.*, 130 F. Supp. 3d 677, 698 (N.D.N.Y. 2015)

(quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 2010 WL 2362981, at *2 (S.D.N.Y. June 14, 2010)) (internal quotation marks and alterations omitted). Here, the Court finds that Defendant's production of an unredacted employee list is appropriate to enable Plaintiff to identify similarly situated employees, which is permissible discovery for Plaintiff during the first pre-certification phase of discovery.

Nevertheless, other discovery materials requested by Plaintiff in his opposition brief—such as pay stubs and copies of gift cards—are merit-based discovery and will not need to be produced by Defendant until the second phase of discovery.

## IV. CONCLUSION

Accordingly, as outlined above, Defendant's motion to bifurcate discovery (Doc. 9) is **GRANTED**.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5016795

---

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 2607303

2024 WL 2607303
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Anthony FANIA, on Behalf of Himself
and Others Similarly Situated, Plaintiff,
v.
KIN INSURANCE, INC., Defendant.

Case No. 22-12354
|
Signed May 24, 2024

**Attorneys and Law Firms**

Alex Phillips, Strauss Borrelli PLLC, Chicago, IL, David H.
Fink, Nathan J. Fink, Fink Bressack PLLC, Bloomfield Hills,
MI, Anthony I. Paronich, Broderick Law P.C., Boston, MA,
for Plaintiff.

Dane Michael Lepola, Jonathan F. Karmo, Howard & Howard
Attorneys PLLC, Royal Oak, MI, Paul Heeringa, Manatt,
Phelps & Phillips, LLP, Chicago, IL, for Defendant.

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION TO BIFURCATE DISCOVERY**

GERSHWIN A. DRAIN, United States District Judge

**I. Introduction**

 *1 Plaintiff Anthony Fania ("Fania" or "Plaintiff") filed
this lawsuit in October 2022 on behalf of himself and others
similarly situated. [ECF No. 1]. The class action complaint
accuses Defendant Kin insurance ("Kin" or "Defendant") of
violating the Telephone Consumer Protection Act, 47 U.S.C.
§ 227 (b) (the "TCPA"). ECF No. 1, PageID.9. Plaintiff's
claim is based on an alleged "pre-recorded" call to his cell
phone on August 29, 2022.

Before the Court is Defendant Kin's Motion to Bifurcate
Discovery. It was filed on October 23, 2023. Plaintiff
responded on November 7, 2023, and Defendant replied on
November 9, 2023. The motion is fully briefed.

Upon review of the parties' briefing and applicable authority,
the Court concludes oral argument will not aid in the
resolution of this matter. Accordingly, the Court will resolve

Defendant's Motion for Bifurcation on the briefs. *See* E.D.
Mich. L.R. 7.1(f)(2). For the reasons set forth below,
Defendant's Motion is **GRANTED**.

**II. Factual and Procedural Background**

Kin sells insurance products in multiple states and consumers
may request an insurance quote from Kin through various
websites. It alleges that, on August 29, 2022, Fania visited
www.dailyinsurancedeals.com (the "subject website"), to
request an insurance quote.

On the other hand, Plaintiff alleges that he "received a pre-
recorded telemarketing call from the Defendant on August
29, 2022," and during that call, a "recorded message asked
if the call recipient was looking for home insurance." ECF
No. 1, PageID.5. Plaintiff says he "recognized" that "he was
speaking to a robot, so he interrupted the recorded message
asked the robot a question" and did not receive a response.
*Id.* He was then told by a live agent that they were calling
from Kin Insurance. *Id.* Plaintiff "then received another call
from Tamely Jobs, who was following up on the pre-recorded
call that the Plaintiff received and continued to promote the
Defendant's services." *Id.*

Fania subsequently commenced the instant action. Kin filed a
Motion to Compel Arbitration, arguing that Fania had signed
an arbitration agreement. Because Fania denied signing the
agreement, the Court determined that Fania had "sufficiently
put[ ] 'in issue' the formation of the agreement and its alleged
signing by him." ECF No. 16, PageID.209. And the Court
stated that, "as required by [the Federal Arbitration Act, 9
U.S.C.] § 4, the Court will 'proceed summarily to the trial'
on the disputed question." *Id.* Accordingly, the Court set a
trial date and ordered the parties to conduct discovery "for the
limited purpose of addressing the contract formation issue[.]"
*Id.* at PageID.211.

Before the trial date, however, Defendant voluntarily
withdrew the Motion to Compel Arbitration and raised
the issue of bifurcation. *See* ECF No. 22. And the Court
subsequently ruled, by stipulation of the parties, that "merits
discovery may proceed generally while and until the Court
decides the bifurcation issue, provided that (a) Kin will
not need to respond to any classwide discovery issued
by Plaintiff until thirty (30) days after the Court rules
on bifurcation, and (b) Plaintiff shall not serve discovery
regarding classwide issues on third-parties while the Court
considers the bifurcation issue." ECF No. 26, PageID.256.

Fania v. Kin Insurance, Inc., Not Reported in Fed. Supp. (2024)
2024 WL 2607303

### III. Applicable Law and Analysis

**\*2** Fania is the sole named Plaintiff in this action. Defendant asserts that "[i]f a live person indeed initiated and conducted the call(s) at issue here or if Kin is not legally responsible for any supposed 'pre-recorded' calls that Plaintiff did receive (as discovery on these narrow issues will prove), there will be no need for invasive and burdensome additional discovery, let alone class discovery, because this entire case will be over on its merits and for lack of standing." ECF No. 28, PageID.266. Accordingly, Defendant argues that bifurcation is necessary to resolve "the narrow case-dispositive questions of[:] (1) whether Plaintiff himself received a pre-recorded call (and therefore could even attempt to bring a claim on behalf of the putative class)[,] and (2) whether Kin is legally responsible for such calls." *Id.*, at PageID.268.

District courts possess "inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). Additionally, Fed. R. Civ. P. 42 (b) permits a district court to "bifurcate trial on separate issues in furtherance of convenience, to avoid prejudice, or when separate trials will be conducive to expedition and economy." *Marchese v. Milestone Sys., Inc.*, No. 12-12276, 2013 WL 12183618, at \*2 (E.D. Mich. Dec. 3, 2013). Again, "[w]hether to try issues separately under Rule 42(b) is within the district court's discretion." *See Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1152 (6th Cir. 1988) (noting that a bifurcation of claims is permissible if it serves judicial economy and does not unfairly prejudice any party). However, "[t]he party seeking bifurcation has the burden of demonstrating judicial economy would be promoted and that no party will be prejudiced by separate trials." *Id.*, (quoting *K.W. Muth Co. v. Bing-Lear Mfg. Group*, No. 01-CV-71925, 2002 WL 1879943, \*3 (E.D. Mich. July 16, 2002)) (quotation marks and citation omitted). The decision to bifurcate is made "on a case-by-case basis" and is "[u]ltimately" a practical decision. *Id.* (quotation marks and citations omitted).

Under § 227 (b)(1)(A), it is unlawful for any person to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party)" to a recipient in the United States "using any automatic telephone dialing system or an artificial or prerecorded voice." Thus, the dispositive issue for Fania turns on the question of whether he received a call that was made using prerecorded voice. *See, e.g., Ashland Hosp. Corp. v. Serv. Emps. Int'l Union*, 708 F.3d 737, 743 (6th Cir. 2013) (affirming dismissal of TCPA claims because plaintiff did not receive any prerecorded calls).

In the Court's view, bifurcating discovery into plaintiff specific and class wide phases is the most efficient way to proceed with this litigation. In cases asserting both individual liability and potential class action claims under the TCPA, courts have bifurcated discovery "where narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery." *Pavelka v. Paul Moss Ins. Agency, LLC*, No. 1:22 CV 02226, 2023 WL 3728199, at \*2 (N.D. Ohio May 30, 2023); *see e.g., Akselrod v. MarketPro Homebuyers LLC*, No. CV CCB-20-2966, 2021 WL 100666, at \*2 (D. Md. Jan. 12, 2021) (bifurcating discovery in TCPA case after determining that whether an automatic dialing system was used was an issue of liability distinct from class certification, and "[l]imited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive");

**\*3** Here, the need for class discovery may be eliminated if Kin is able to demonstrate that Fania, the sole named Plaintiff, lacks a viable individual claim. *See Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir. 2001) ("Despite the fact that a case is brought as a putative class action, it ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved."). Further, class discovery regarding potential class members, the number of which is "likely at least in the thousands[,]" ECF No. 1, PageID.7, is not necessary to address certain issues that may be dispositive of Fania's individual claim and ability to represent the purported class. This includes whether the phone call was pre-recorded.

Additionally, the evidence so far discovered with respect to Fania has revealed a vigorous dispute regarding a purportedly fraudulent lead that resulted in Fania's information being entered on www.dailyinsurancedeals.com. It was either Fania, or someone pretending to be Fania, that consented to receive insurance quotes and arbitrate potential issues resulting from this transaction. In these circumstances, the Court finds that this narrow and potentially dispositive issue is distinct from issues of liability to be determined in this case on a class-wide basis. Accordingly, and for purposes of efficiency, the Court will review evidence and make a determination with regard to Fania's plaintiff-specific claim prior to costly and time-consuming class discovery.

Fania v. Kin Insurance, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 2607303

Proceeding in this manner serves the interests of justice and efficiency. *See Physicians Healthsource, Inc. v. Janssen Pharm, Inc.*, Civil Action No. 12-2132 (FLW), 2014 WL 413534, at *4-5 (D.N.J. Feb. 4, 2014) (bifurcating discovery in TCPA fax case based on a narrow, potentially dispositive issue that was distinct from class issues, and recognizing that bifurcation had the potential to "save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery"); *see also Katz v. Liberty Power Corp., LLC*, No. 18-CV-10506-ADB, 2019 WL 957129, at *2 (D. Mass. Feb. 27, 2019) ("[C]lass discovery is not necessary to address certain issues that may be dispositive of Plaintiffs' individual claims or ability to bring the asserted class claims, including whether the phone numbers at issue are within the TCPA, whether named [p]laintiffs' are within the classes they purport to represent, and whether any named [p]laintiffs with a viable claim can demonstrate the Court's jurisdiction to resolve that claim."). Further, the distinctions between the narrow and potentially dispositive issue with respect to Fania, and the issues of liability to be determined on a class-wide basis render this case distinguishable from *McClusky*. There, the Court determined, in a non-TCPA case, that bifurcation was inappropriate because, *inter alia*, "the discovery relative to class issues and merits discovery will significantly overlap, thereby creating inefficiencies were the Court to bifurcate discovery." *McCluskey v. Belford High Sch.*, No. 09-CV-14345, 2011 WL 13225278, at *3 (E.D. Mich. Mar. 10, 2011).

Plaintiff argues that bifurcating discovery would defeat efficiency and thereby prejudice him. He says he has previously made discovery requests for Kin to produce messages between it and dailyinsurancedeals.com, including on the process for verifying leads. Plaintiff believes that this information "affects Mr. Fania just as much as it does the class." ECF No. 32, PageID.321. His argument also suggests that bifurcation would engender additional motion practice about the distinction between merits discovery and class wide discovery. *Id.* And he says that:

> **\*4** Kin forecasted it will withhold documents like this if the Court bifurcates discovery because it believes they relate only to "classwide" issues. In other words, Kin does not intend to produce "merits" discovery no matter how the

Court defines it, meaning Mr. Fania will be back in Court to demand documents. That is not "efficient."

ECF No. 32, PageID.315.

Plaintiff's argument is not well taken. As stated *infra*, it was nearly seven months ago when the Court ordered the parties to conduct merits discovery regarding Plaintiff's claims and barred the parties from engaging in class-wide discovery. Class-wide discovery has been off limits, and merits discovery as to Fania is ongoing. Yet, Fania has not raised an issue or filed a discovery motion regarding any unsatisfied discovery requests, which belies his assertion that bifurcating this case "will lead to litigation over what 'bifurcation' means and delay this yet-to-start [class-wide discovery period] again." *Id.* However, Fania is permitted to file a motion if Kin wrongfully denies him discovery to which he is entitled given his individual claim.

In the Court's view, requiring the parties to continue down the path of Plaintiff specific discovery—rather than setting a new discovery schedule for class wide issues at this juncture—is the most efficient way to assure an expeditious resolution to this case. And it is the most efficient use of the Court's resources.

### IV. Conclusion

For the reasons stated above, the Court orders the following:

1. Defendant's Motion for Bifurcation is **GRANTED**.

2. Discovery will be phased/bifurcated according to the following schedule:

   a. Discovery as to the merits of Plaintiff's individual TCPA claim against Defendant shall proceed for **thirty (30) days** after entry of this order, subject to any extensions granted by the court;

   b. Opening summary judgment motions as to the merits of Plaintiff's individual TCPA claim shall be due **thirty (30) days** after the close of the initial phase of individual discovery;

   c. Oppositions to summary judgment due **thirty (30) days** after service of opening motions; and

Fania v. Kin Insurance, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 2607303

d. Reply briefs in support of summary judgment due **fifteen (15) days** after service of oppositions.

3. Discovery during this initial period shall be limited to issues relevant to determining the merits of Plaintiff's individual TCPA claim.

4. The Parties may issue third party discovery requests during this initial period as needed, but class related discovery shall not be allowed. To the extent Plaintiff has already issued any class discovery, Defendant need not respond to same.

5. If necessary, the Court will set a case management status conference and schedule for class wide discovery after it has ruled on summary judgment motion(s) relating to Plaintiff's individual claim.

**IT IS ORDERED**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 2607303

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Guido v. Travelers Companies Inc., Not Reported in Fed. Supp. (2023)

2023 WL 5658920

KeyCite Yellow Flag

Distinguished by Garcia v. Travco Insurance Company, S.D.Ohio, December 6, 2023

2023 WL 5658920
Only the Westlaw citation is currently available.
United States District Court, E.D. Kentucky,
Northern Division.
(at Covington).

Dominic GUIDO and Jessica Guido, Plaintiff,
v.
The TRAVELERS COMPANIES INC. and the
Travelers Indemnity Company, Defendants.

Civil Action No. 2: 23-083-DCR
|
Signed August 31, 2023

**Attorneys and Law Firms**

Blake R. Maislin, Law Offices of Blake R. Maislin, LLC, Cincinnati, OH, Stephanie L. Collins, Independence, KY, for Plaintiff.

Stephen Keller, Barnes Maloney PLLC, Louisville, KY, for Defendants.

**MEMORANDUM OPINION AND ORDER**

Danny C. Reeves, Chief Judge

**\*1** This matter is pending for consideration of Defendants The Travelers Company and The Travelers Indemnity Company ("Travelers") motion to bifurcate the plaintiffs' extracontractual claims from their breach of contract claim for the purpose of discovery and trial. The defendants also seeks an order staying discovery of the plaintiffs' extracontractual claims until the breach of contract claim has been resolved. The motion for bifurcation will be granted because the breach of contract claim could obviate the need to resolve the extracontractual claims. Discovery also will be stayed on the plaintiffs' extracontractual claims to prevent potential prejudicial disclosure of sensitive documents and information.[1]

**I.**

The plaintiffs allege that the defendants breached their homeowner's insurance policy after they pursued a claim for coverage for roof damage following a wind and hail event in April 2023. The plaintiffs provided timely notification before filing a claim under their homeowner's insurance policy which was in effect on the date the storm damage occurred. Travelers sent an adjustor to inspect the damage but the adjustor "determined that the claimed damage fell within the policy's deductible." [Record 13-1] Therefore, Travelers declined to provide any compensation under the policy for repairs to the roof. *Id.*

The plaintiffs filed this lawsuit in response, alleging violations of Kentucky's Consumer Protection Act and Unfair Claims Settlement Act, as well as claims for breach of contract, negligence, and common-law bad faith. [Record No. 1] Travelers removed the matter based on this Court's diversity jurisdiction. The defendants now seek to bifurcate discovery and trial of the breach of contract claim from the remaining claims. However, the plaintiffs oppose the requested relief.

**II.**

Trial courts often confront the issue of bifurcation in cases that present both insurance coverage and extracontractual claims. Rule 42(b) of the Federal Rules of Civil Procedure allows lower courts to order separate trials of issues and claims "for convenience, to avoid prejudice, or to expedite and economize." *See Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1152 (6th Cir. 1988) (noting that a bifurcation of claims is permissible if it serves judicial economy and does not unfairly prejudice any party); *Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (emphasizing that a district court's decision to bifurcate a trial is reviewed for abuse of discretion). When considering bifurcation motions under this rule, district courts weigh "the potential prejudice, potential confusion to the jury, and the relative convenience and economy which would result." *Id.*; *see also In re Beverly Hills Fire Litig.*, 695 F.2d 207, 216 (6th Cir. 1982).

Consideration of judicial economy presents a threshold issue. Under state law in Kentucky—which governs insurance claims like this one—extracontractual claims may arise after a plaintiff succeeds on a contractual insurance coverage claim

under a homeowner's policy. *See, e.g., Sandlin v. CSAA Fire & Cas. Ins. Co.*, No. 3:22-CV-00013-GFVT, 2022 WL 1309075, at *1 (E.D. Ky. May 2, 2022) The defendants correctly contends that, "unless plaintiffs can prove that the Defendants were obligated to pay their claim, there is no viable claim for bad faith." *See Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000) ("Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute.") This means that resolution of a breach of contract claim may dispose of other inextricably related issues that depend on the existence of a valid contractual claim in the first place.

**\*2** Aside from advancing judicial economy, the defendants also contend that failure to bifurcate the breach of contract claim could be prejudicial by requiring expenditure of time and resources litigating claims that may never arise. *Holloway v. Ohio Sec. Ins. Co.*, 2015 WL 6870141, at *1 (W.D. Ky. Nov. 6, 2015). Conversely, the plaintiffs would not appear to suffer prejudice if the motion to bifurcate is granted. But if the plaintiffs prevail on their breach of contract claim, they preserve the ability thereafter to litigate the remaining claims. *See, e.g., Holloway*, 2015 WL 6870141, at *1.

The potential for jury confusion is a further issue of concern if the claims are not bifurcated. In insurance coverage cases like the present, "[i]ntroducing at trial evidence related to the bad-faith claims could likely confuse the jury and potentially unfairly prejudice the jury against the Defendant." *Rowlett v. LM Ins. Corp.*, 2021 WL 8998926, at *3 (E.D. Ky. Aug. 13, 2021). Here, the evidence relating to one claim has a significant potential to adversely impact others, which presents a significant risk of juror confusion.

The Sixth Circuit has long observed that the purpose of Rule 42(b) is to enable courts to resolve a case in a way that advances judicial economy without sacrificing fairness.

*See In re Bendectin Litig.*, 857 F.2d 290, 307 (6th Cir. 1988). On balance, the Defendant has properly demonstrated that bifurcation would be conducive to expeditious litigation and efficient judicial administration in a way that does not prejudice either side.

### III.

The defendants also seek a stay on discovery for the extracontractual claims. In addition to the power to bifurcate, district courts maintain discretion "to stay discovery until preliminary questions that may dispose of the case are determined." *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999). Here, defendants claim that a stay of discovery would prevent the unnecessary expenditure of time and resources required to disclose evidence relevant to an extracontractual claim that may never arise, as well as the premature disclosure of documents for that claim that would likely implicate work product and attorney-client privileges. Indeed, the defendants point to documents and other potential evidence, including communications and mental impressions from Defendant's damage inspector, whose premature disclosure could be prejudicial should its motion fail.

### IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that the Defendant's motion to bifurcate and stay discovery [Record No. 13-1] is **GRANTED**.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 5658920

---

### Footnotes

1    The undersigned concludes that a reply is not necessary to resolve the pending motions.

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 3440077

2023 WL 3440077
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Tiffany HARRIS, individually and on behalf
of all others similarly situated, Plaintiff,

v.

SHORE FUNDING SOLUTIONS INC., Defendant.

23-CV-00789 (JMA) (JMW)
|
Signed April 21, 2023

**Attorneys and Law Firms**

Anthony Paronich, Esq., Paronich Law, P.C., Massachusetts, 350 Lincoln St., Suite 2400, Hingham, MA 02043, Attorney for Plaintiff.

Clifford B. Olshaker, Esq., Law Offices of Clifford B. Olshaker, 98-19 37th Avenue 2nd Fl., Corona, NY 11368, Attorney for Defendant.

**ORDER**

WICKS, Magistrate Judge:

**\*1** Plaintiff Tiffany Harris commenced this case as a class action alleging a violation of the Telephone Consumer Protection Act ("TCPA"). (DE 1). The TCPA bars companies from making calls using automatic telephone dialing systems or using an artificial or pre-recorded voice to cell numbers. *See* 47 U.S.C. § 227 *et seq.* Plaintiff alleges that on April 19, 2022, Defendant Shore Funding Solutions Inc. made an unsolicited pre-recorded telemarketing call to Plaintiff's number -- (205) 503-XXXX. [1] (DE 1 at ¶¶ 19-20.) Plaintiff then spoke to someone who said they were an employee of the Defendant who promoted a loan and sent a follow up email to her. (*Id.* ¶¶ 20-27.) Plaintiff's Complaint describes a proposed "Robocall Class" consisting of all persons within the United States whose cellular telephone numbers received a call from Defendant or a third-party on its behalf using pre-recorded messages within the four years preceding the complaint. (*Id.* at ¶ 30.) Before the Court now is the Defendant's contested motion for bifurcation of discovery.

The case is in its infancy. At the initial conference, the Court entered a Scheduling Order and set a briefing schedule for Defendant's motion to bifurcate discovery as to Plaintiff's individual claim and the proposed class. (DE 13.) Plaintiff has served discovery requests, but Defendant has not served any. The contested bifurcation motion was subsequently filed. (DE 16.) Oral argument was held on April 21, 2023. [2]

Having considered the parties' arguments, and for the reasons stated herein, Defendant's motion to bifurcate discovery is GRANTED.

**I. LEGAL STANDARD**

Bifurcation "is properly understood as a stay of class discovery pending resolution of plaintiff's individual claim." *Chow v. SentosaCare, LLC*, No. 19-CV-2541 (FR), 2020 WL 559704, at *1 (E.D.N.Y. Jan. 23, 2020). A district court has "considerable discretion to stay discovery" under Federal Rule of Procedure 26(c), with the moving party having the burden of establishing good cause. *See Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of N.Y.*, No. 18-CV-4476 (LJL) (SLC), 2020 WL 1166047, at *5 (S.D.N.Y. Mar. 11, 2020); *Mohammed Thani A.T. Al Thani v. Hanke*, 20-CV-4765 (JPC), 2021 U.S. Dist. LEXIS 395, 2021 WL 23312, at *1 (S.D.N.Y. Jan. 4, 2021) ("Upon a showing of good cause[,] a district court has considerable discretion to stay discovery pursuant to Rule 26(c)" (alteration in original) (quoting *Rep. of Turk. v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018)); *Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, No. 12-CV-2132, 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014) (noting that the district court enjoys "broad discretion" in terms of bifurcating discovery).

**\*2** Good cause may exist "where the 'resolution of a single issue may resolve the case and render trial on the other issue[s] unnecessary,' " *Charvat*, 2016 WL 207677, at *2 (quoting *Tabor v. N.Y. City*, No. 11-CV-0195, 2012 WL 603561, at *10 (E.D.N.Y. Feb. 23, 2012)), or where "a narrow, potentially dispositive issue," being "totally distinct from class issues," has the potential render Plaintiff's TCPA claim baseless, *id.* (quoting *Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, No. 12-CV-2132, 2014 WL 413534, at *2 (D.N.J. Feb. 4, 2014)).

The Federal Rules of Civil Procedure do not squarely address the bifurcation of discovery. *Cunningham v. Big Think Cap. Inc.*, No. 21-CV-02162 (DRH) (JMW), 2021 WL 4407749, at *4 (E.D.N.Y. Sept. 27, 2021) (noting that the Rules "do not specifically address the issue of discovery bifurcation");

Case 1:25-cv-00927-KMN    Document 28-1    Filed 09/16/25    Page 31 of 75

Harris v. Shore Funding Solutions Inc., Not Reported in Fed. Supp. (2023)

2023 WL 3440077

*see also* Alexa Ashworth, et al., *Bifurcation of discovery*, 10 Fed. Proc., L. Ed. § 26:88 (Mar. 2023) (noting that the court may bifurcate discovery, for example, "in class actions into sections related to the claims of the named plaintiffs and the class claims"). Rather, when confronted with the issue, courts turn to Rule 42(b), which sets forth the standard to be applied when considering consolidation and separation of cases for trial. *See id.* (citing Fed. Civ. P. 42(b)). Borrowing from Rule 42, courts contemplate bifurcating discovery "[f]or convenience, to avoid prejudice, or to expedite and economize" the proceedings. Fed. Civ. P. 42(b); *see Charvat v. Plymouth Rock Energy, LLC*, No. 15-CV-4106 (JMA) (SIL), 2016 WL 207677, at *1 (E.D.N.Y. June 5, 2013) ("The standards applicable to motions to bifurcate discovery appear to be the same as those addressed under Fed. R. Civ. P. 42(b).").

However, a survey of past cases within this Circuit suggests that bifurcation is the exception, not the rule. Indeed, courts are likely to deny bifurcation "where discovery relating to class issues overlaps substantially with merits discovery" given that, in such circumstances, "bifurcation will result in duplication of efforts and needless line-drawing disputes." *Id.* at *1 (quoting *Hines v. Overstock.com, Inc.*, No. 09-CV-991, 2010 WL 2775921, at *1 (E.D.N.Y. July 13, 2020)). Moreover, courts will not bifurcate if bifurcation will simply delay class certification or obfuscate the issue of what discovery relates to the class as opposed to the named plaintiff. *Id.* (citing *True Health Chiropractic Inc. v. McKession Corp.*, No. 13-CV-2219 (JST), 2015 WL 273188, at *2–3 (N.D. Cal. Jan. 20, 2015)).

## II. DISCUSSION

Defendant seeks to bifurcate individual and class discovery to explore the threshold issue of whether Plaintiff received a call from Defendant at the (205) 503-XXXX number on April 19, 2022, and whether Plaintiff owns the phone to which the number is assigned. (DE 16 at 6.) Defendant requests a 90-day period for this limited discovery. Plaintiff prefers the status quo, with all discovery – as to the Plaintiff and Class – proceeding concomitantly.

Defendant relies on the following to establish good cause: (1) the limited discovery sought is distinct from class issues, (2) bifurcation would avoid unnecessary expensive and time-consuming class-discovery, (3) Plaintiff did not attach any evidence of a phone call to her Complaint and provides no

evidence that the call actually took place, and (4) in another case involving the same Plaintiff, the defendant's counsel identified the (205) 503-XXXX number as being advertised in connection with a custom home building business rather than with Plaintiff. (DE 16 at 5.) Plaintiff, on the other hand, resists bifurcation on the basis that: (1) there is evidence that Plaintiff received the phone call and owns the number, and (2) it is atypical to bifurcate discovery. (DE 17 at 2-3.)

**\*3** Defendant's request for limited discovery as to (1) whether Plaintiff received a phone call on April 19, 2022, and (2) whether she owns the phone number -- because Plaintiff has not offered any evidence to support either allegation. Plaintiff in response attached a phone bill (DE 17-2) that reflects that the (205) 503-XXXX number belongs to her and copy of the email she received after the alleged phone call (DE 17-3). Defendant contends that Plaintiff has not laid a foundation for the phone bill as a business record. As to the email, Defendant notes that it is addressed to a "William," not Plaintiff. (DE 17-3.) Additionally, the email does not reference a phone call. (DE 17-3.)

Plaintiff also provided an affidavit that states that she owns the phone number (205) 503-XXXX, received a pre-recorded call on April 19, 2022, from Defendant and after speaking with someone named "Dan Katz" identifying themselves as an employee of Defendant, received an email from Dan Katz consistent with the offer made on the call. (DE 17-1.) Plaintiff further states that she has produced a redacted copy of her phone bill to show she owns the number at issue and that she has no affiliation with the person or business that Defendant's counsel appears to be associated with the number. (DE 17-1.)

Defendant argues that the affidavit is null and void because it does not conform to the requirements for an unsworn declaration under 28 U.S.C. § 1746 and can be given no weight. (DE 16-2 at 2.) However, section 1746(2) permits submission of an unsworn declaration to the court if it includes a statement substantially in the following form as required: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." *See* 28 U.S.C. § 1746(2). The affidavit provides that it was "Executed under the pains and penalties of perjury at warrior Alabama this 28th day of March, 2023." (DE 17-1.) This is sufficient. *See LeBoeuf, Lamb, Greene MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999) (finding a signed and dated affidavit stating "[u]nder penalty of perjurys, I make the statements contained

Case 1:25-cv-00927-KMN    Document 28-1    Filed 09/16/25    Page 32 of 75

Harris v. Shore Funding Solutions Inc., Not Reported in Fed. Supp. (2023)

2023 WL 3440077

herein" substantially complied with § 1746(2) even though it did not state the exact language or that the contents were "true and correct").

Considering all the above, limiting discovery for a certain period as to whether Defendant in fact even called Plaintiff at that number would be efficient and avoids costly and potentially unnecessary class discovery in this matter. Defendant maintains that it has no record whatsoever of a call made to (205) 503-XXXX on April 19, 2022. (DE 16 at 4.) Defendant's counsel even candidly states that this is the first TCPA case where his client has no such record. (DE 16 at 4.) Defendant also points to the fact that Plaintiff subpoenaed her own cellphone carrier to obtain evidence regarding the call, that subpoena was returnable April 6, 2023, yet Plaintiff has not indicated what response, if any, was received from the carrier. (DE 16-2 at 2.)

First, limited discovery regarding whether Defendant called Plaintiff would not overlap with and is distinct from class issues. In *Charvat*, the court found much of the discovery sought was relevant not only to the individual claims but also to the class claims including documents related to "telemarketing scripts, policies, contracts, practices and procedures, complaints received, investigations of those complaints and audits of third-party providers" and more. *Id.* at *2. Presumably, Defendant's proposed discovery would involve Plaintiff's cellphone records, Defendant's call records for April 19, 2022, and other categories that do not specifically relate to the larger proposed class of individuals who received calls within the four years predating the complaint. This would also include Defendant's records as they relate to outgoing calls to Plaintiff.

 **\*4** Thus, this is not an instance where the proposed limited discovery "overlaps substantially" with class discovery and where "bifurcation will result in duplication of efforts and needless line-drawing disputes." *Charvat*, 2016 WL 207677, at *1. *Cf. Physicians Healthsource, Inc.*, 2014 WL 413534, at *4 (finding the issue of whether the faxes sent to Plaintiff were informational, and thus, actionable under the TCPA, to be totally distinct from class issues); *see also Leschinsky v. Inter–Continental Hotels Corp.,* No. 8:15-cv-1470-T-30 (MAP), 2015 WL 6150888, at *1 (M.D. Fla. Oct. 15, 2015) (granting limited discovery for 90 days in a TCPA case to whether the named plaintiff received the calls manually and how many calls were made) (cited in *Charvat*, 2016 WL 207677, at *2).

Second, resolution of this "narrow, potentially dispositive issue" has the potential to render Plaintiff's TCPA claim baseless and may resolve the case since Defendant intends to initiate dispositive motion practice following discovery as to whether Plaintiff received a phone call from Defendant on April 19, 2022. (DE 16 at 4). *See Charvat*, 2016 WL 207677, at *1. Moreover, unlike in *Charvat*, where the complaint identified two other individuals that the Court noted could serve as class representatives if Plaintiff's claim was defeated, here no one else is specifically identified, and thus, resolution of Plaintiff's claim can lead to a "prompt, efficient resolution of this litigation." *Charvat*, 2016 WL 207677, at *3.

Third, limited discovery here has the potential to save the parties from the costs resulting from class action discovery, which can involve "hefty litigation expenses and an extensive use of judicial resources...." *Physicians Healthsource, Inc.,* 2014 WL 413534, at *4. Those costs can be particularly unforgiving for defendants. *See id.* For example, here Defendant notes that Plaintiff has already propounded discovery requests that include a document demand for Defendant to "produce all documents containing ... information for each outbound telemarketing call sent by you or your vendors" in the last four years. (DE 16 at 4; DE 16-1). Again, compare with *Charvat* where the court noted that defendant had submitted no information suggesting that the discovery requests would be voluminous, unduly burdensome to produce or disproportionate to the needs of the case. *See Charvat*, 2016 WL 207677, at *2. Defendant there did not identify which discovery requests could be objectionable as class based. *See id.*

Plaintiff relies heavily on *Charvat*, 2016 WL 207677, at *6-7, *Reisman v. Northeastern Power and Gas LLC*, No. 23-CV-620 (S.D.N.Y. Mar. 3, 2023) (memo endorsement) (DE 12), and *Katz v. Allied First Bank, SB, Civil Action*, No. 22-CV-5277 (N.D. Ill. Jan. 3, 2023) (electronic order) (DE 14). However, each of those cases denied motions to bifurcate because of the substantial overlap of discovery identified between Plaintiff's claim and the anticipated class discovery. That is not the case here. Plaintiff also points to *Naiman v. Big Think Capital Inc.*, No. 22-cv-2531 (WFK) (JMW) (E.D.N.Y. filed May 3, 2023) as an example of a TCPA case where parties have proceeded without bifurcated discovery. The simple fact that parties in one other case did not seek to bifurcate discovery holds no persuasive value with respect to the propriety of bifurcation here where, *inter alia*, the proposed discovery does not substantially overlap with class discovery. *Cf. Cunningham*, 2021 WL 4407749, at *4

2023 WL 3440077

(defendant sought bifurcation though the motion was denied because of the substantial overlap between merits and class discovery as to the question of consent).

**\*5** In sum, Defendant has established good cause for limited discovery related to Plaintiff's individual claim -- specifically as to the issue of whether Defendant made a call to Plaintiff on April 19, 2022 at the (205) 503-XXXX number. Given that such discovery would not result in duplication of efforts or substantially overlap with class discovery, it would be practical and would ensure the "just, speedy, and inexpensive determination" of the action. Fed. R. Civ. P. 1. Moreover, granting Defendant's motion will not cause undue burden and expense to Plaintiff nor would it prejudice Plaintiff because this case is in the nascent stages. Defendant conceded at oral argument a 90-day period was not necessary to complete limited discovery. As such, the limited discovery shall conclude on or before June 30, 2023.

## CONCLUSION

Defendant's motion for bifurcation of individual and class discovery is therefore GRANTED as follows: discovery is limited to whether on April 19, 2022 Plaintiff received a call from Defendant at the (205) 503-XXXX number and ownership of the subject phone. This also includes discovery of Defendant as to calls made to Plaintiff. This limited discovery shall be complete on or before June 30, 2023. On or before June 23, 2023, the parties are directed to file a joint status report with a proposed schedule for remaining discovery following the limited discovery ordered herein.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3440077

---

## Footnotes

1      The parties have informally agreed to keep the phone number confidential and have referred to it throughout their papers in this redacted format.

2      Counsel for Plaintiff failed to appear but notified chambers following the argument of the circumstances which the Court finds excusable.

---

End of Document      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Katz v. Liberty Power Corp., LLC, Not Reported in Fed. Supp. (2019)

2019 WL 957129

Case 1:25-cv-00927-KMN    Document 28-1    Filed 09/16/25    Page 34 of 75

2019 WL 957129
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Samuel KATZ et al., Plaintiffs,
v.
LIBERTY POWER CORP., LLC et al., Defendants.

Civil Action No. 18-cv-10506-ADB
|
Signed 02/27/2019

**Attorneys and Law Firms**

David Christopher Parisi, Pro Hac Vice, Suzanne L. Havens Beckman, Pro Hac Vice, Parisi & Havens LLP, Santa Monica, CA, Ethan Mark Preston, Pro Hac Vice, Preston Law Offices, Dallas, TX, Grace Parasmo, Pro Hac Vice, Yitzchak H. Lieberman, Pro Hac Vice, Parasmo Lieberman Law, Los Angeles, CA, John L. Fink, Sims and Sims LLP, Brockton, MA, Matthew R. Mendelsohn, Pro Hac Vice, Mazie Slater Katz & Freeman, LLC, Roseland, NJ, for Plaintiff Samuel Katz.

Ethan Mark Preston, Preston Law Offices, Dallas, TX, David Christopher Parisi, Parisi & Havens LLP, Santa Monica, CA, Grace Parasmo, Parasmo Lieberman Law, Los Angeles, CA, John L. Fink, Fink Law, Westborough, MA, Matthew R. Mendelsohn, Pro Hac Vice, Mazie Slater Katz & Freeman, LLC, Roseland, NJ, for Plaintiff Alexander Braurman.

David Christopher Parisi, Parisi & Havens LLP, Santa Monica, CA, Ethan Mark Preston, Preston Law Offices, Dallas, TX, Grace Parasmo, Parasmo Lieberman Law, Los Angeles, CA, John L. Fink, Sims and Sims LLP, Brockton, MA, Matthew R. Mendelsohn, Pro Hac Vice, Mazie Slater Katz & Freeman, LLC, Roseland, NJ, for Plaintiff Lynne Rhodes.

Charles A. Zdebski, Pro Hac Vice, Jeffrey P. Brundage, Pro Hac Vice, Eckert Seamans Cherin & Mellott, LLC, Washington, DC, Pamela C. Rutkowski, Craig R. Waksler, Rachel E. Moynihan, Eckert Seamans Cherin & Mellott LLC, Boston, MA, for Defendant Liberty Power Corp., LLC.

Charles A. Zdebski, Pro Hac Vice, Jeffrey P. Brundage, Pro Hac Vice, Eckert Seamans Cherin & Mellott, LLC, Washington, DC, Craig R. Waksler, Pamela C. Rutkowski, Rachel E. Moynihan, Eckert Seamans Cherin & Mellott,

LLC, Boston, MA, for Defendant Liberty Power Holdings, LLC.

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO BIFURCATE CLASS DISCOVERY AND PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER**

ALLISON D. BURROUGHS, U.S. DISTRICT JUDGE

**\*1** Plaintiffs Samuel Katz, Alexander Braurman, and Lynne Rhodes allege violations of the Telephone Consumer Protection Act of 1991 ("TPCA") and fraudulent transfers to the detriment of four putative nationwide classes of persons who received telemarketing calls on behalf of Defendants Liberty Power Corp, LLC and Liberty Power Holdings, LLC (together "Liberty Power"). Before the Court are Liberty Power's Motion to Bifurcate Class Discovery, [ECF No. 66], and Plaintiffs' Motion for a Protective Order regarding certain third-party subpoenas, [ECF No. 88]. For the reasons explained herein, individual and class discovery are bifurcated, and the Motion for a Protective Order is GRANTED in part and DENIED in part.

**I. DISCUSSION**

This action was filed on March 16, 2018. [ECF No. 1]. The complaint has been amended twice, most recently on November 14, 2018. [ECF No. 109]. On January 9, 2019, Liberty Power filed a motion to dismiss the Second Amended Complaint. [ECF No. 118]. Although the Court has not yet ruled on that motion, the parties have—quite appropriately—engaged in considerable discovery. As a result, Liberty Power has identified several perceived weaknesses in the named Plaintiffs' claims and argues that it may be able to show, after limited additional individual discovery, that the named Plaintiffs lack viable claims. [See ECF No. 67]. Liberty Power requests that the Court bifurcate discovery and permit a dispositive motion on the named Plaintiffs' claims before class discovery.

As part of Liberty Power's efforts to secure discovery to support its arguments that the named Plaintiffs do not have viable claims, it issued third-party subpoenas to Verizon, Cellco Parnership, Vonage, and Google, providers of telephone and email services used by Plaintiffs. Plaintiffs move for a protective order prohibiting enforcement of those third-party subpoenas, or alternatively narrowing their scope. [ECF No. 88].

Case 1:25-cv-00927-KMN    Document 28-1    Filed 09/16/25    Page 35 of 75

Katz v. Liberty Power Corp., LLC, Not Reported in Fed. Supp. (2019)

2019 WL 957129

#### A. Bifurcation of Discovery

District courts possess "inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " Dietz v. Bouldin, 136 S. Ct. 1885, 1891 (2016) (quoting Link v. Wabash R. Co., 370 U.S. 626, 630–31 (1962) ). A district court's exercise of its "inherent power must be a 'reasonable response to the problems and needs' confronting the court's fair administration of justice" and "cannot be contrary to any express grant of, or limitation on, the district court's power contained in a rule or statute." Id. at 1892 (quoting Degen v. United States, 517 U.S. 820, 823–24 (1996) ). District courts "enjoy broad discretion in managing the pace of pretrial proceedings, including the timing of discovery." Vineberg v. Bissonnette, 548 F.3d 50, 54 (1st Cir. 2008). Controlling the scope of discovery is particularly appropriate where discovery will impose considerable expense and the claims may be resolved on issues that require only limited or targeted discovery. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007) (emphasizing the requirement of plausibility at the motion to dismiss stage, in part because "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching" summary judgment or trial); see also L.R. 16.3(a)(3)(B) (noting that a judicial officer may sequence discovery into two or more stages at a case management conference).

**\*2** Courts in this district have bifurcated individual merits and class discovery where doing so served the interests of justice given the allegations and circumstances of particular cases. E.g. O'Connell v. Sterling Jewelers, Inc., No. 13-cv-13165-DPW (D. Mass. Dec 14, 2013), ECF No. 61 (denying motion to strike class claims, but allowing merit discovery and summary judgment motions as to named plaintiffs' claims before class discovery); Huzarsky v. Little Kids, Inc., No. 15-cv-13613-DJC (D. Mass. Feb. 22, 2016), ECF No. 22 (allowing summary judgment motions on individual claims before addressing class issues).

Here, the need for class discovery may be eliminated if Liberty Power is able to demonstrate that all of the named Plaintiffs lack viable individual claims. See Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001) ("Despite the fact that a case is brought as a putative class action, it ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved.").

But see S. Orange Chiropractic Ctr., LLC v. Cayan LLC, No. 15-cv-13069-PBS, 2016 WL 1441791, at \*7 (D. Mass. Apr. 12, 2016) (holding that tendering complete relief of named representative's individual claim under Rule 68 did not moot TCPA class claims because class claims fell within "inherently transitory" exception). Further, class discovery is not necessary to address certain issues that may be dispositive of Plaintiffs' individual claims or ability to bring the asserted class claims, including whether the phone numbers at issue are within the TCPA, whether named Plaintiffs' are within the classes [1] they purport to represent, and whether any named Plaintiffs with a viable claim can demonstrate the Court's jurisdiction to resolve that claim. [See ECF No. 67 at 5–10]. The parties shall complete discovery relevant to the alleged TCPA violations committed against the named Plaintiffs by May 22, 2019. Class discovery is stayed until further order of the Court, and the parties shall file a joint letter setting forth their respective positions concerning class discovery by May 31, 2019. Liberty Power shall file any motion for summary judgment based on the named Plaintiffs' individual claims by June 21, 2019. Plaintiffs shall respond in accordance with the local rules.

#### B. Third-Party Subpoenas for Emails

Liberty Power has issued a subpoena to Google that demands all emails and attachments from Mr. Katz's Gmail account with the words "liberty," "garrison," or "TCPA," excluding emails with a limited set of Mr. Katz's attorneys. [ECF No. 89-6]. The subpoena requests that those emails be produced to Liberty Power's counsel in the District of Columbia. [Id. at 2]. Plaintiffs move for a protective order, which they have standing to pursue because of Mr. Katz's interest in avoiding the disclosure of personal information and privileged materials that may be contained in the emails sought from Google. See Wright & Miller, 9A Federal Practice & Procedure § 2459 (3d ed. 2018) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.").

**\*3** Federal Rule of Civil Procedure 45 allows third-party subpoenas in connection with civil litigation but requires parties to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Although the subpoena at issue requests the production of emails in the District of Columbia and a motion to quash or modify the subpoena would be

Katz v. Liberty Power Corp., LLC, Not Reported in Fed. Supp. (2019)

2019 WL 957129

more properly filed in the United States District Court where performance is required, see Fed. R. Civ. P. 45(d)(3), this Court retains jurisdiction to restrict the scope of discovery and issue protective orders in accordance with Rule 26, see Fed. F. Civ. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that ... the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.").

Google email is an electronic communication service within the meaning of the Stored Communications Act, and Google is generally not permitted and cannot be compelled to respond to civil subpoenas that seek email communications. See 18 U.S.C. § 2701(c)(1); Bower v. Bower, 808 F. Supp. 2d 348, 350 (D. Mass. 2011) ("[C]ourts have repeatedly held that providers such as Yahoo! and Google may not produce emails in response to civil discovery subpoenas."); see also In re Facebook, Inc., 923 F. Supp. 2d 1204, 1206 (N.D. Cal. 2012) (quashing subpoena issued pursuant to 28 U.S.C. § 1782 because "civil subpoenas may not compel production of records from providers like Facebook"); In re Subpoena Duces Tecum to AOL, LLC, 550 F. Supp. 2d 606, 609 (E.D. Va. 2008) ("[T]he plain language of the [Stored Communications Act] prohibits AOL from producing the [plaintiff's] e-mails, and the issuance of a civil discovery subpoena is not an exception to the provisions of the [Stored Communications Act.]"); Viacom Int'l Inc. v. YouTube Inc., 253 F.R.D. 256, 264 (S.D.N.Y. 2008) (granting protective order and denying motion to compel production from YouTube).

Therefore, Plaintiffs' Motion for a Protective Order with respect to the subpoena of Mr. Katz's emails from Google is granted. [2] Given the absolute clarity of the law in this area, Defendants are warned that similar subpoenas could result in sanctions.

### C. Third-Party Subpoenas for Telephone Records

Liberty Power has issued subpoenas seeking "all contracts, inbound and outbound phone call and fax logs, billing statements, features, and payment history" for relevant periods related to the telephone accounts at issue from the companies that provided the telephone lines that were allegedly illegally called. [ECF Nos. 89-2, 89-3, 89-4, 89-7, 89-8]. In addition to reflecting the calls at issue here, Plaintiffs' account records may be relevant to defenses,

including that the calls in question were consented to or that certain phone lines were not "residential telephone line[s]" within the meaning of the TCPA. See 47 U.S.C. § 227(b)(1); see also Bank v. Indep. Energy Grp., No. 12-CV-1369 JG VMS, 2015 WL 4488070, at *2 (E.D.N.Y. July 23, 2015) ("[W]hile a telephone subscriber can have a telephone number registered as 'residential' with the telephone company, 'if the subscriber holds out such a telephone number to the general public as a business line, the line should not be considered "residential" for the purposes of the TCPA—even if it is registered as "residential" with the telephone company.' " (quoting Bank v. Indep. Energy Grp., No. 12-cv-1369, 2014 WL 4954618(JG), at *1 (E.D.N.Y. Oct. 2, 2014) ) ); [ECF No. 100 at 6-9]. [3]

**\*4** In addition to subpoenaing account records for the telephone numbers that were allegedly called in violation of the TCPA, Liberty Power has subpoenaed "[f]or 2016 and 2017, all contracts, phone call logs (inbound and outbound), billing statements, invoices, features, and payment history" related to a Google Voice account that Liberty Power claims is Mr. Katz's true residential number, but which is not the phone number that Mr. Katz alleges Liberty Power illegally called. [ECF No. 89-5]. Liberty Power claims that Mr. Katz uses that Google Voice number as his actual residential number and forwards calls from his purported residential line to his Google Voice number to track telemarketing calls for the purpose of filing lawsuits. [ECF No. 67 at 7]. The Google Voice records may therefore contain relevant information bearing on the telemarketing calls at issue and whether Mr. Katz's purported residential number falls within the provisions of the TCPA.

Courts often permit discovery of records related to the telephone numbers at issue in TCPA cases. See Molnar v. NCO Fin. Sys., Inc., No. 13CV131-BAS (JLB), 2014 WL 3371414, at *3 (S.D. Cal. July 8, 2014) (granting defendant complete and unredacted telephone records, including records of irrelevant calls where plaintiff acknowledged some of calls at issue might not appear on telephone records); Lucas v. Telemarketer Calling From (407) 476-5670 & Other Tel. Numbers, No. 1:12-CV-630, 2014 WL 12656102, at *2 (S.D. Ohio May 22, 2014) (granting motion to compel production of all of defendant's call records from a relevant month). Here, given the uncertainty as to how some of the Plaintiffs' phone numbers were being used, the subpoenaed account records are potentially relevant and do not impose an undue burden on the named Plaintiffs. See Mintz v. Mark Bartelstein & Assocs., Inc., 885 F.Supp.2d 987, 1001 (C.D. Cal. 2012) ( "[T]he

Katz v. Liberty Power Corp., LLC, Not Reported in Fed. Supp. (2019)

2019 WL 957129

disclosure of telephone numbers, as well as the date, time, and duration of calls does not represent a significant intrusion of [p]laintiff's privacy."). Plaintiffs' Motion for a Protective Order concerning subpoenas of telephone account records is therefore denied.

Defendants shall treat the records produced in response as "Confidential" under the Protective Order, [ECF No. 20], and shall not inquire at any deposition as to the content of calls that Plaintiffs concede do not concern Defendants, their agents, or TCPA claims. Defendants may inquire whether calls are of a business or personal nature but may not go beyond that for calls that do not relate to TCPA violations alleged here or elsewhere.

## II. CONCLUSION

Accordingly, discovery in this case is <u>BIFURCATED</u>. Discovery relevant to the merits of the named Plaintiffs' individual claims shall conclude by May 22, 2019. Class discovery is stayed until further order by the Court, and the parties shall file a joint letter stating their positions on class discovery by May 31, 2019. Defendants shall file a status report on or before May 31, 2019 to inform the Court as to whether they intend to move for summary judgment for some or all of the named Plaintiffs' claims.[4] Defendant may then move for summary judgment with respect to some or all of the named Plaintiffs' claims by June 21, 2019.

Plaintiffs' Motion for a Protective Order is <u>GRANTED</u> with respect to Liberty Power's subpoena of emails, but <u>DENIED</u> with respect to the subpoenas of telephone account records, including call logs and other requested information.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 957129

---

## Footnotes

1    Plaintiffs bring claims on behalf of four putative classes: (1) the Robocall Class, (2) the Residential Class, (3) the National Do Not Call Class, and (4) the Internal Do Not Call Class. Plaintiff Rhodes is the sole representative of the Robocall Class, while the other three classes are represented by all three named plaintiffs. Given the multiple putative classes, individual discovery may curtail the scope of class discovery, even if Defendants are unsuccessful in resolving all claims brought by the named plaintiffs.

2    Even assuming the communications could be produced by Google without violating Title 18, the Court would issue a protective order given that the subpoena would be entirely duplicative of discovery that could be obtained from Plaintiffs without the risk of obtaining privileged communications.

3    In holding that discovery of call logs and other account information is appropriate, the Court does not express a view as to whether a "residential" line that is used for business purposes can be considered a "residential telephone line" under the TCPA.

4    If Defendants do not move for summary judgment sufficient to eliminate all class claims, the Court will likely open class discovery as to at least the class claims that will remain regardless of its summary judgment ruling, assuming the pending motion to dismiss [ECF No. 118] has not been granted.

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3633333
Only the Westlaw citation is currently available.
United States District Court, S.D. Ohio, Western Division.

Susan KEMEN, Plaintiff,

v.

CINCINNATI BELL TELEPHONE
COMPANY LLC, Defendant.

Case No. 1:22-cv-152
|
Signed August 2, 2024

**Attorneys and Law Firms**

Brian T. Giles, Giles & Harper, LLC, Cincinnati, OH, Avi R. Kaufman, Pro Hac Vice, Kaufman P.A., Coral Gables, FL, for Plaintiff.

Douglas Edward Hart, Douglas E. Hart, Cincinnati, OH, Aaron Paul Heeringa, Pro Hac Vice, Manatt, Phelps & Phillips, LLP, Chicago, IL, John W. McGuinness, Pro Hac Vice, Manatt, Phelps & Phillips, LLP, Los Angeles, CA, for Defendant.

**OPINION AND ORDER**

DOUGLAS R. COLE, UNITED STATES DISTRICT JUDGE

 **\*1**  Plaintiff Susan Kemen alleges that Defendant Cincinnati Bell Telephone Company LLC, (Cincinnati Bell), violated the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227, by making unwanted telemarketing calls to her cell phone. (*See* Second Am. Compl., Doc. 19). The matter is now before the Court on Cincinnati Bell's Motion to Bifurcate Discovery (Doc. 32). For the reasons briefly discussed below, the Court **GRANTS** the Motion. [1]

Because the Court recounted the factual and procedural background of this case in detail in its previous Opinions and Orders, (Doc. 12, #149–53; Doc. 29, #308–15), it does not do so here. At a high level, Kemen alleges that, after she filled out a quote request form on Cincinnati Bell's website, Cincinnati Bell repeatedly called and emailed her to solicit her to buy its "products and services" despite her multiple requests that it stop contacting her. (Doc. 19, #222–25). She allegedly received four phone calls and one email in 12 days.

(*Id.* at #223–24). So she sued, alleging violations of the TCPA. (Compl., Doc. 1). After several rounds of motions practice, the operative complaint is the Second Amended Complaint. (Doc. 19). It raises a single claim under subsection (c)(5) of the TCPA, 47 U.S.C. § 227(c)(5), for breaching the requirements of 47 C.F.R. § 64.1200(d). (Doc. 19, #227–29).

Cincinnati Bell has now moved to bifurcate discovery. (Doc. 32). Citing a desire to avoid costly, resource-intensive putative-class-based discovery, Cincinnati Bell seeks a 90-day limited discovery period during which the parties will focus solely on discovery relating to the merits of Kemen's individual claim. (*Id.* at #347). According to Cincinnati Bell, those relevant issues are: (1) "whether [it] ha[d] the requisite minimum procedures in place at the time of the alleged calls"; (2) whether Kemen made a legally effective do-not-call (DNC) request, and whether her request was honored in a "reasonable" amount of time; (3) whether Kemen is a "residential telephone subscriber"; and (iv) whether she has standing. (*Id.* at #354). Kemen responds that all class members' claims (including her own) will depend on whether Cincinnati Bell had adequate procedures in place. (Doc. 34, #363). And she says answering that question "necessarily requires discovery regarding who, other than Plaintiff, may have requested to not be called, and whether their requests were properly recorded and timely honored." (*Id.* at #364). As discussed below, Cincinnati Bell has the better argument.

The decision to bifurcate discovery "is within the discretion of the court. To determine whether bifurcating discovery is appropriate, courts consider the benefits and detriments to each party's interest, as well as the Court's interest in reaching a just, speedy, and efficient resolution of the issues raised by the pleadings." *Chenault v. Beiersdorf, Inc.*, No. 1:20-cv-174, 2020 WL 5016795, at \*2 (S.D. Ohio Aug. 24, 2020) (cleaned up); *Garcia v. Travco Ins. Co.*, No. 1:23-cv-439, 2023 WL 11116754, at \*1 (S.D. Ohio Dec. 6, 2023) ("Federal Rule of Civil Procedure 42(b) permits the Court in its discretion to bifurcate claims for convenience, to avoid prejudice, or to expedite and to economize." (cleaned up)). In line with those principles, bifurcation "is permissible if it serves judicial economy and does not unfairly prejudice any party." *Galloway v. Nationwide Mut. Fire Ins. Co.*, No. 3:09-cv-491, 2010 WL 3927815, at \*1 (W.D. Ky. Oct. 5, 2010) (citing *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1152 (6th Cir. 1988)). When evaluating prejudice, the Court considers whether bifurcation will create substantial costs or delays. *See Brown v. Toscano*, 630 F. Supp. 2d 1342, 1347 (S.D. Fla. 2008) ("An unreasonable delay in a case's resolution amounts

to prejudice the one opposing separation." (cleaned up));
*Blankenship v. Jordan*, No. 3:19-cv-372, 2019 WL 4197115,
at *4 (S.D.W. Va. Sept. 3, 2019) ("[C]osts and delays are
strong evidence that an insured will be unduly prejudiced
by bifurcated discovery."). As this description suggests, "a
decision ordering bifurcation is dependent on the facts and
circumstances of each case." *Garcia*, 2023 WL 11116754, at
*2.

**\*2** Kemen brings a single claim for violating the TCPA and
related regulations. And on that front, the Court reads the
Second Amended Complaint as alleging that Cincinnati Bell
had no policies in place at all, or that the *content* of those
policies was inadequate, rather than alleging that Cincinnati
Bell had adopted policies as a formal matter but disregarded
them in practice. Indeed, in its previous Opinion and Order
in this matter, the Court referred to the claimed lack of a
policy (or at least one that met the minimum regulatory
requirements) as the plausible inference arising from Kemen's
factual allegations that would allow Kemen's case to move
forward. (Doc. 17, #213 ("[P]erhaps on a fuller understanding
of the record, the Court (or a jury) will conclude Cincinnati
Bell had a policy in place designed to honor Kemen's request
within a reasonable time. But for now, ... a twelve-day delay
is long enough to support a plausible inference Cincinnati
Bell *lacked the requisite minimum procedures*." (emphasis
added)); *see also* Doc. 29, #318 (noting that the Court's denial
of Cincinnati Bell's dismissal was premised on Kemen's
plausibly alleging that Cincinnati Bell did not have "the
requisite minimum internal procedures in place")). That
allegation remains the crux of her sole claim, as she has
framed it.

So then, to prevail on her claim as pleaded, Kemen must
prove that: (1) she is a residential phone subscriber, (2) who
received a call made for telemarketing purposes, (3) from an
entity that has not instituted the minimum procedures required
by 47 C.F.R. § 64.1200(d) (either because the policies did
not exist or because their contents fell below the minimum
requirements), (4) more than one time in a twelve-month
period. *See* TCPA, 47 U.S.C. § 227(a), (c)(5); 47 C.F.R.
§ 64.1200(d), (f)(13). As to third element, the "minimum
standards" for procedures the entity "institute[s]" require
those procedures to include provisions calling for the entity:
(1) to have "a written policy, available upon demand, for
maintaining a do-not-call list"; (2) to train all "[p]ersonnel ...
who are engaged in any aspect of telemarketing" on the
existence and use of that DNC list; (3) to record DNC
requests and "honor" them "within a reasonable time"; (4) to

have employees engaged in telemarketing activities identify
themselves when making calls; (5) to apply DNC requests to
affiliated entities if "the consumer reasonably would expect
them to be included"; and (6) to maintain a DNC list and
to honor DNC requests for 5 years from the request. 47
C.F.R. § 64.1200(d)(1)–(6). So here, Kemen is claiming that
Cincinnati Bell has no policy for internal DNC lists at all,
or that the policy Cincinnati Bell has does not include these
required component parts.

Given that understanding of the claim, coupled with the other
individualized defenses that Cincinnati Bell asserts relating
to Kemen and the calls Kemen alleges she received, the
Court concludes bifurcating discovery is appropriate. Class
discovery is expensive and resource intensive. *Babare v.
Sigue Corp.*, No. C20-0894, 2020 WL 8617424, at *2 (W.D.
Wash. Sept. 30, 2020) ("It is well-recognized that discovery
in class actions is expensive and asymmetric, with defendants
bearing most of the burdens."); *cf. Bais Yaakov of Spring
Valley v. Peterson's Nelnet, LLC*, Civ. No. 11-11, 2013 WL
663301, at *5 (D.N.J. Feb. 21, 2013) (noting that a TCPA class
action involved "the potential for hefty litigation expenses
and an extensive use of judicial resources"). And "the need
for class discovery may be eliminated if Defendant is able to
demonstrate that the Named Plaintiff lacks viable individual
claims." *Osidi v. Assurance IQ, LLC*, No. 21-cv-11320, 2022
WL 623733, at *2 (D. Mass. Mar. 3, 2022). Especially
given the nature of the allegations here, it is reasonable for
Cincinnati Bell to seek to test Kemen's personal claims before
engaging in extensive class discovery.

The limited discovery necessary to test Kemen's claims would
focus on (1) her standing, (2) whether she is a residential
subscriber within the meaning of the TCPA's regulations, (3)
whether she made a legally effective DNC request, and (4)
the existence and contents of Cincinnati Bell's policies. If the
facts obtained through the limited discovery show she fails on
any of the first three fronts, presumably that would be the end
of the matter.

**\*3** But as to the fourth issue (and assuming Cincinnati Bell
does not prevail, based on the limited discovery, as to any
of the first three), the Court acknowledges that discovery
relating to the existence and contents of Cincinnati Bell's
policies may not fully answer the question. After all, even if
Cincinnati Bell had a policy in place that met the minimum
requirements as written, Kemen presumably still could seek
to show she received "more than one telephone call within
any 12-month period by or on behalf of the same entity in

violation of" the terms of the written policy itself. 47 U.S.C. § 227(c)(5). That in turn could raise questions as to whether Cincinnati Bell had actually "instituted" the policy as the regulations require. 47 C.F.R. § 64.1200(d). Or perhaps to put it a little differently, at that point, the statutorily provided "affirmative defense"—"that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations"—would come into play. 47 U.S.C. § 227(c)(5). Should the parties need to explore that affirmative defense, questions of how well Cincinnati Bell followed its own policies and how much oversight it exercised over its employees on that front—both of which would likely require broader discovery—could come to the fore given they are relevant to the "due care" element of that defense. But as things stand Kemen is not alleging (and has pleaded no facts suggesting) that Cincinnati Bell has a regulatorily-compliant policy that it is failing to follow. So the Court declines to borrow trouble now by discussing the potential need for broader discovery on such issues down the road. In short, even as to this fourth issue, because Kemen has framed her claim as whether Cincinnati Bell even *has* policies that reflect the requirements set forth in 47 C.F.R. § 64.1200(d), the amount of discovery needed to answer *that* question should be comparatively modest.

Taken altogether, Cincinnati Bell has identified various threshold issues that both require little discovery and could be dispositive of Kemen's individual claim. So bifurcating discovery has the potential to promote the "speedy" and "efficient" resolution of this matter. *Chenault*, 2020 WL 5016795, at *2. Doing so therefore avoids potential prejudice to Cincinnati Bell (in the form of substantial, unnecessary costs) and "serves judicial economy." *Galloway*, 2010 WL 3927815, at *1.

On the other side of the scale, bifurcation will require Kemen to produce only a comparatively modest amount of discovery, much of which (a) is likely already in her possession or easily obtainable and (b) she would need to produce in any event even absent bifurcation. Moreover, a 90-day discovery period will not substantially delay this case. So the Court concludes that bifurcating discovery will not unduly prejudice Kemen. *See Brown*, 630 F. Supp. 2d at 1347; *Blankenship*, 2019 WL 4197115, at *4.

## CONCLUSION

For the reasons discussed above, Court **GRANTS** the Motion to Bifurcate Discovery (Doc. 32). The parties **SHALL** conduct 90 days of discovery limited to the following topics: (1) Kemen's standing; (2) whether she is a residential subscriber within the meaning of the TCPA regulations; (3) whether she made a legally effective DNC request; and (4) the existence and contents of Cincinnati Bell's internal DNC policies. Absent a future order of the Court to the contrary, the limited discovery period will close 90 days from the date of the entry of this Order. Until then, the parties **SHALL NOT** engage in discovery on other topics (absent mutual agreement). Any discovery previously issued on topics other than those set forth above is hereby **STAYED** (again, absent mutual agreement).

**SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 3633333

---

## Footnotes

1    Because the Court is granting this Motion, it also notes that it **DENIES AS MOOT** Cincinnati Bell's request for oral argument on the Motion, (Doc. 35, #367).

---

Case 1:25-cv-00927-KMN    Document 28-1    Filed 09/16/25    Page 41 of 75

**Klassen v. SolidQuote LLC, Not Reported in Fed. Supp. (2023)**

2023 WL 5497865

2023 WL 5497865
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.

Ronda KLASSEN, individually and on behalf
of all others similarly situated, Plaintiff,

v.

SOLIDQUOTE LLC and Digital Media Solutions,
LLC f/k/a Underground Elephant, Defendants.

Civil Action No. 23-cv-00318-GPG-NRN
|
Signed August 23, 2023

**Attorneys and Law Firms**

Jacob U. Ginsburg, Kimmel & Silverman P.C., Ambler, PA, Ryan Lee McBride, Kazerouni Law Group APC, Phoenix, AZ, for Plaintiff.

John Chrisman Hawk, IV, Fox Rothschild LLP, Denver, CO, Paul A. Rosenthal, Fox Rothschild LLP, Morristown, NJ, for Defendant SolidQuote LLC.

Robert Harlan Scott, Jr., Akerman LLP, Salt Lake City, UT, for Defendant Digital Media Solutions LLC.

### ORDER DENYING DEFENDANTS' JOINT MOTION TO BIFURCATE DISCOVERY (Dkt. #36)

N. Reid Neureiter, United States Magistrate Judge

**\*1** This matter is before the Court upon an Order (Dkt. #37) entered by Judge Gordon P. Gallagher referring Defendants' Motion to Bifurcate Discovery. (Dkt. #36.) Plaintiff, Rhonda Klassen, filed her response on July 24, 2023. (Dkt. #42.) Defendants filed their reply on July 31, 2023. (Dkt. #42.)

The Court heard oral argument on August 2, 2023. (Dkt. #43.) The Court has taken judicial notice of the Court's file and considered the applicable Federal Rules of Procedure and case law. Now, being fully informed and for the reasons discussed below, the Court **ORDERS** that the Motion to Bifurcate Discovery (Dkt. #36) is **DENIED.**

### DISCUSSION

Plaintiff seeks to hold Defendants liable under the Telephone Consumer Protection Act ("TCPA"), 42 U.S.C. § 227, for telemarketing calls allegedly made by Digital Medial Solutions, LLC ("DMS") and transferred to SolidQuote. In addition to her individual claims, Plaintiff also seeks to represent a class of similarly situated individuals.

Defendants contend that Plaintiff cannot properly represent a class because there are unique legal and factual issues related to Plaintiff's individual claims. Defendants also suggest that initial discovery indicates only one call with Plaintiff. They argue that Plaintiff actually initiated the call with DMS that was transferred to SolidQuote. If true, Defendants argue, Plaintiff does not have a valid TCPA claim against Defendants because the TCPA does not support claims for calls initiated by consumers. Further, 47 U.S.C. § 227(c), the statute upon which Plaintiff's claim is premised, requires the receipt of two or more calls.

Defendants also argue that even if DMS initiated a call to Plaintiff and subsequently transferred the call to SolidQuote, such call would have exceeded the parameters of the campaign SolidQuote approved, which undercuts a vicarious liability claim against SolidQuote.

Because of these issues, Defendants request that the Court bifurcate discovery in this case and limit the initial phase of discovery to Plaintiff's individual claims. Specifically, Defendants request an order limiting phase one of discovery to questions of (1) whether Plaintiff received two or more outbound calls from or on behalf of Defendants; and (2) if so, whether Plaintiff had provided express, written consent for such calls. Though Defendants attempt to distinguish their request for limited, phased discovery from a request to bifurcate discovery into "merit" versus "class discovery", their proposed phased discovery necessarily requires a stay of class discovery while Defendants' proposed phase one is completed. Indeed, at oral argument, Defendants stated their position that, after the proposed phase one discovery is complete and if the record supports it, they would move for summary judgment. Then, only after an adverse ruling on the dispositive motion, would there be a need to proceed to class-related discovery. If the motion were granted, then the case would be over.

For her part, Plaintiff argues that the Defendants misrepresent the facts of the case and that Plaintiff never called DMS or consented to receive calls from them. She further contends that bifurcation is imprudent given the inherent overlap

Case 1:25-cv-00927-KMN   Document 28-1   Filed 09/16/25   Page 42 of 75

Klassen v. Solidquote LLC, Not Reported in Fed. Supp. (2023)

2023 WL 5497865

between class discovery and merits discovery, and it would require needless duplication of discovery efforts and delay the case. She also notes that courts routinely reject requests to bifurcate.

**\*2** The Court analyzes a request to bifurcate discovery in a putative class action with both Rule 42(b) and Rule 23 of the Federal Rules of Civil Procedure in mind. Rule 42(b) grants the Court broad discretion to bifurcate proceedings "([f]or convenience, to avoid prejudice, or to expedite and economize." "The decision to bifurcate discovery in putative class actions prior to certification is committed to the discretion of the trial court." *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-JST, 2015 WL 273188, at \*1 (N.D. Cal. Jan. 20, 2015); *see also Crawford-El v. Britton*, 523 U.S. 574, 598–99 (1998) (stating that district courts have broad discretion to control discovery and to dictate the sequence of discovery).

The United States Supreme Court has instructed that class certification is proper only if the trial court is satisfied, after a rigorous analysis, that the pre-requisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 565 U.S. 338, 350–51 (2011) (citation omitted). Frequently, the class determination "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 351 (quotation and citation omitted). For this reason, "courts are reluctant to bifurcate class-related discovery from discovery on the merits." *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012). This is because the distinction between class certification and merits discovery is murky at best and impossible to determine at worst. *See Quinn v. Specialized Loan Servs., LLC*, 321 F.R.D. 324, 327–28 (N.D. Ill. 2017) (observing that bifurcation "may give rise to disputes over whether a particular discovery request relates to the merits or to class certification"); *Munoz v. PHH Corp.*, No. 1:08-CV-0759-DAD-BAM, 2016 WL 10077139, \*4 (E.D. Cal. 2016) ("Courts have repeatedly acknowledged that there is no clear-cut division between discovery that relates to class certification and discovery that relates to the merits.").

"As to the bifurcation of liability and class discovery, the court considers (1) overlap between individual and class discovery, (2) whether bifurcation will promote Federal Rule of Civil Procedure 23's requirement that certification be decided at 'an early practicable time,' (3) judicial economy, and (4) any prejudice likely to flow from the grant or denial of a stay

of class discovery." *Pavelka v. Paul Moss Ins. Agency, LLC*, 2023 WL 3728199, at \*2 (N.D. Ohio May 30, 2023).

The Court finds that bifurcation of discovery in this case is inappropriate. First, discovery relating to class certification is closely intertwined with merits discovery. To certify the class, Plaintiff must establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff outlines several categories of discovery where class certification and merit-based inquiries intertwine and would be impractical to separate, including: Defendants' acquisition of leads and the validity of purported "consent" that vendors and lead generators obtain, whether the purported violations in this case were negligent or willful, and facts supporting or refuting vicarious liability. Further, whether Plaintiff made or received the offending calls is relevant to both her statutory standing (an individual, merits issue) and whether she is a member of the class she seeks to represent (a class issue). The Court agrees with this analysis.

**\*3** Because of this overlap, if the Court were to bifurcate discovery, it would likely be forced to spend time and resources resolving petty discovery fights over what constitutes merits discovery versus class discovery. Accordingly, bifurcation does not promote judicial economy. Relatedly, because of the delays that would attend bifurcated discovery in this matter, bifurcation will not result in prompt certification under Rule 23. This is especially true where Defendants propose waiting for a dispositive ruling on the individual issues before proceeding to class discovery. If a dispositive motion is ultimately denied, the case would be delayed by more than a year. Such delays are unacceptable to this Court.

Finally, Defendants have not identified any unique prejudice they would suffer if discovery is not bifurcated and class discovery is not stayed. Nothing about this case is so unusual that it requires bifurcation. Moreover, there is nothing to stop Defendants from targeting their discovery to issues related to whether Plaintiff made or received the calls or somehow consented to the calls and filing an early dispositive motion on that basis.

### All Citations

Not Reported in Fed. Supp., 2023 WL 5497865

2023 WL 5497865

---

**End of Document**                                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 1:25-cv-00927-KMN   Document 28-1   Filed 09/16/25   Page 44 of 75

Leschinsky v. Inter-Continental Hotels Corporation, Not Reported in Fed. Supp. (2015)

2015 WL 6150888
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Tampa Division.

Tracey LESCHINSKY, individually and on
behalf of all others similarly situated, Plaintiff,

v.

INTER-CONTINENTAL HOTELS CORPORATION
and Orange Lake Country Club, Inc., Defendants.

Case No. 8:15–cv–1470–T–30MAP
|
Signed 10/15/2015

**Attorneys and Law Firms**

Benjamin Hans Crumley, Crumley & Wolfe, PA, Jacksonville, FL, Jarrett L. Ellzey, William Craft Hughes, Hughes Ellzey, LLP, Houston, TX, for Plaintiff.

Andrew J. Patch, Greenberg Traurig, P.A., Tampa, FL, David Barnett Weinstein, Greenberg Traurig, LLP, Tampa, FL, Ian C. Ballon, Greenberg Traurig, LLP, Los Angeles, CA, for Defendants.

### ORDER

JAMES S. MOODY, JR., UNITED STATES DISTRICT JUDGE

**\*1** THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment (Dkt.16), Plaintiff's Response thereto (Dkt. 22), and Defendants' Motion to Bifurcate Discovery and Establish Briefing Schedule (Dkt. 21). The Court, upon review of the filings, and being otherwise advised in the premises, concludes that Defendants' motion for summary judgment should be denied without prejudice as premature and Defendants' motion to bifurcate discovery and establish a briefing schedule should be granted under the conditions outlined below.

### DISCUSSION

Plaintiff Tracey Leschinsky filed the instant case under the Telephone Consumer Protection Act ("TCPA"). Leschinsky's claims arise from telephone calls that Defendants or third-parties acting on their behalf allegedly made to her cell phone; specifically, she alleges that the calls were made using an automatic telephone dialing system ("ATDS"). She also claims that the calls were telephone solicitations made to a telephone number on the National Do Not Call Registry ("NDNCR").

Defendants filed their motion for summary judgment extremely early in this litigation—the motion was filed fourteen days after Defendants filed their answer. The motion relies on seven declarations and argues, in relevant part, the following: (1) the calls at issue were dialed manually on an ordinary desktop telephone that does not constitute an ATDS; and (2) Leschinsky did not receive more than one call made by Defendants or third parties acting on their behalf, as required to state a "Do–Not–Call" claim under the TCPA.

Leschinsky's response in opposition argues that Defendants' motion is premature because the parties are not permitted to conduct discovery in this case until they conduct their case management meeting as stated in Local Rule 3.05. Leschinsky points out that she is entitled to discovery on Defendants' contentions.

Defendants, essentially admitting that their motion is premature, request that the Court bifurcate discovery so that it is limited to the two threshold issues raised in their motion for summary judgment and establish a briefing schedule for dispositive motions. The Court agrees that a more tailored discovery process is appropriate under these circumstances.

As an initial point, the Court agrees that Defendants' motion for summary judgment is premature. As stated in *Blumel v. Mylander,* 919 F.Supp. 423, 428 (M.D.Fla. 1996), Rule 56 of the Federal Rules of Civil Procedure "implies [that] district courts should not grant summary judgment until the non-movant has had an adequate opportunity for discovery." Furthermore, the Eleventh Circuit has decisively determined that "summary judgment may only be decided upon an adequate record." *Snook v. Trust Co. of Ga. Bank,* 859 F.2d 865, 870 (11th Cir. 1988). The Eleventh Circuit expounded:

> [S]ummary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery. The party opposing a motion for summary judgment has a right to challenge the

affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery so as to enable him to determine whether he can furnish opposing affidavits. If the documents or other discovery sought would be relevant to the issues presented by the motion for summary judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials. Generally summary judgment is inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests.

**\*2** *Id.* at 870 (internal citations omitted).

At this stage in the litigation, Leschinsky has been deprived of conducting any discovery because a case management scheduling order is not in place and the parties have not even conducted their case management meeting. That being said, Defendants' arguments in favor of a bifurcated discovery process are well-taken. Defendants have presented evidence suggesting that Leschinsky's TCPA claims are without merit as a matter of law. As such, the Court concludes that the following discovery plan is appropriate:

1. The parties have ninety (90) days from the date of this Order to conduct limited discovery on the ATDS issue and the Number of Calls Issue as discussed further in Defendants' motion for summary judgment;

2. Within fourteen (14) days of the conclusion of the discovery phase, either party may file a motion for summary judgment;

3. If the Court denies summary judgment, the parties shall submit a Joint Case Management Report within fourteen (14) days of the Court's denial.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendants' Motion for Summary Judgment (Dkt. 16) is denied without prejudice as premature.

2. Defendants' Motion to Bifurcate Discovery and Establish Briefing Schedule (Dkt. 21) is granted to the extent discussed herein.

**DONE** and **ORDERED** in Tampa, Florida on October 15, 2015.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 6150888

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag

Declined to Extend by Quinn v. Specialized Loan Servicing, LLC, N.D.Ill., February 9, 2017

2015 WL 5032052
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Logan LOREAUX, et al., Plaintiffs,
v.
ACB RECEIVABLES MANAGEMENT,
INC., et al., Defendants.

Civil Action No. 14–710 (MAS).
|
Signed Aug. 25, 2015.

**Attorneys and Law Firms**

Joseph K. Jones, Law Offices of Joseph K. Jones, LLC, Fairfield, NJ, Benjamin Jarret Wolf, Law Offices of Joseph K. Jones LLC, New York, NY, for Plaintiffs.

Jonathan S. Ziss, Goldberg Segalla LLP, Philadelphia, PA, for Defendants.

MEMORANDUM OPINION

BONGIOVANNI, United States Magistrate Judge.

**\*1** This matter comes before the Court upon Defendant ACB Receivables Management, Inc.'s ("ACB") motion to bifurcate discovery. [Docket Entry No. 24]. Plaintiffs Logan Loreaux, an infant by parent and natural guardian Katelyn Jones, and Katelyn Jones ("Plaintiffs") oppose ACB's motion. The Court has fully reviewed and considered all of the arguments made in support of and in opposition to ACB's motion. The Court considers same without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, ACB's motion is GRANTED.

**I. Background and Procedural History**

In light of the parties' familiarity with the facts of this matter, they shall not be restated at length herein. Instead, the Court shall recount only those facts necessary for the resolution of ACB's motion to bifurcate. This case concerns whether the debt collection correspondence sent by ACB to Plaintiffs allegedly listing an "Amount Due" different

than the "Amount Owed" was false, deceptive or misleading within the meaning of the Fair Debt Collection Practices Act (the "FDCPA"). Plaintiff alleges that the correspondence sent out was deceptive and false in violation of the FDCPA. In contrast, ACB argues that the correspondence did not warrant any plausible misleading or incorrect interpretation and, therefore, does not violate the FDCPA.

Through this motion, ACB asks that discovery be initially limited to Plaintiffs' claims that the debt collection correspondence sent to them by ACB, listing an "Amount Due" different than the "Amount Owed," was false, deceptive or misleading. (ACB Br. at 1; Docket Entry 24). ACB believes Plaintiffs' individual claims regarding the correspondence involve a narrow, potentially dispositive issue that is isolated and distinct from class discovery. (*Id.* at 2). After conducting the aforementioned limited discovery, ACB anticipates filing a motion for summary judgment with regard to Plaintiffs' individual claims that ACB's correspondence to them violated the FDCPA because it was deceptive and false. (ACB Reply Br. at 1; Docket Entry No. 29).

ACB contends that bifurcating discovery in this manner represents the most efficient and effective approach to this litigation. Specifically, ACB claims that bifurcating discovery would allow the parties to expeditiously reach potentially case dispositive motion practice. In this regard, ACB notes that if its anticipated motion for summary judgment is granted, said motion would dispose of the entire action, maximizing efficiencies and cost savings by rendering class discovery entirely unnecessary. (ACB Br. at 2). Further, ACB claims that even if its summary judgment motion is denied, the case will not have been derailed because complete class discovery can still occur without any prejudice to Plaintiffs.

Relying on *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.,* No. 3:12–cv–02132 FLW–TJB, Docket Entry No. 52–1 (D.N.J. Sept. 13, 2013), ACB argues that bifurcation is appropriate given the narrow, potentially case dispositive issue to be addressed by the Court coupled with the fact that class wide discovery creates significant costs and burdens it and the Court. (*Id.* at 3). ACB notes that in *Physicians Healthsource,* the Court granted a motion to bifurcate where there was a limited and potentially dispositive issue involving the plaintiff's Telephone Consumer Protection Act ("TCPA") claim. In so doing, the Court took note of the costs associated with class discovery as well as the fact that the defendant's anticipated summary judgment motion could render said discovery unnecessary.

**\*2** With respect to the discovery already sought by Plaintiffs, ACB argues that several of the class discovery demands propounded are unduly burdensome on their face. ACB notes that it uses a third party vendor to generate its debt collection correspondence and that the production of the information requested would require ACB to review private information and medical claim information with regards to members of the proposed class and family members of the class insured under their guarantor's healthcare policy. (*Id.* at 2–3). Thus, ACB anticipates dealing with HIPAA issues in the course of providing the information requested by Plaintiffs. (*Id.* at 3).

ACB notes that pursuant to FED.R.CIV.P. ("Rule") 42(b), it is within a trial court's discretion to bifurcate discovery and courts consider judicial economy and expedition when making such a decision. (*Id.*) ACB argues that because there is no significant overlap between the individual discovery relevant to Plaintiffs' specific claims and class-wide discovery, there is no danger of duplication or of increase in litigation costs if discovery is done in two steps. (ACB Reply Br. at 6). ACB claims that conducting discovery in two phases will neither be protracted nor unduly delay these proceedings because key, pertinent facts relevant to the individual claims are already in the record as well as the Rule 26 disclosures served by the parties. Further, ACB notes that initial written individual discovery is well underway, including ACB's document production, interrogatory responses, and responses to Plaintiffs' requests for admissions. (*Id.* at 7).

Further, ACB argues that the earlier denial of its motion to dismiss does not constitute a determination that Plaintiffs' individual FDCPA claims are meritorious because the applicable standard for a motion to dismiss is highly deferential; whereas, the applicable standard for a motion for summary judgment requires Plaintiffs to present more facts and evidence to establish their claims. (ACB Br. at 4). ACB contends that the Court has yet to consider the meaning of the two amounts listed on the debt collection correspondence and, thus, has not made a decision on whether Plaintiffs have legally viable claims. (*Id.*) ACB argues that discovery should be bifurcated to address this narrow issue first so that ACB can file a motion for summary judgment on same. ACB argues that doing so would allow the Court to address the merits of this issue before determining class certification, a costly and time consuming undertaking. (*Id.* at 4–5). As a result, ACB claims that bifurcating discovery would preserve judicial resources and the litigants' resources as well. Lastly, ACB argues that denying bifurcation would

prevent an early and efficient determination regarding the merits of Plaintiffs' individual claims and, therefore, would go against the principles embodied in Rule. 1. (*Id.* at 5–6).

In response to Plaintiffs' arguments asserting that their requested class discovery only entails production of debt collection correspondence to all class members, ACB points out that Plaintiffs have yet to withdraw their other class-based discovery requests or their discovery requests directed to Defendants' net worth information. (ACB Reply Br. at 5). Because Plaintiffs have failed to offer any explanation regarding their additional class-based discovery requests and have, likewise, failed to have withdrawn same, ACB claims bifurcation is necessary. Further, ACB contends that even providing only debt collection correspondence to all class members would prove burdensome to it for the reasons described above.

**\*3** Plaintiffs, however, claim that the requested bifurcation should be denied because ACB cannot meet the legal standard for it in part because the requested discovery is neither overly complicated nor unduly burdensome. As such, Plaintiffs argue that ACB's motion should be denied. (Pl. Opp. Br. at 2; Docket Entry 28). With respect to the discovery requests they have served, Plaintiffs suggest entering into Stipulation/ Consent Order limiting same. (*Id* .) Plaintiffs argue that really the only class discovery at issue is directed to the sole issue of how many letters similar to that sent to Plaintiffs were mailed by ACB to other New Jersey consumers during the class period. (*Id.*) Plaintiffs contend that medical information, including sensitive HIPAA information, will not be needed in the course of discovery. Indeed, Plaintiffs assert that they only request the debt collection letters sent by ACB. (*Id.* at 3).

Further, Plaintiffs contend that ACB's arguments regarding the burdensomeness and cost of not bifurcating discovery are totally conclusory in nature and should be afforded no weight. In this regard, Plaintiffs argue that ACB's claims amount to nothing more than blanket generalizations without any evidence of the approximate costs associated with discovery, name of the third party vendor alluded to by ACB or the business relationship between ACB and that vendor. (*Id.* at 3–4). Plaintiffs distinguish this matter from the *Physicians Healthsource* case, noting that that matter involved a TCPA violation, not a FDCPA violation. (*Id.* at 5).

Relying on Rule 42(b), Plaintiffs argue that ACB has failed to sustain its burden because it has yet to prove that bifurcation would best serve the interests of judicial economy and that

it would not unduly prejudice Plaintiffs. Further, Plaintiffs argue that here there is no need to divide discovery as to liability and damages. (*Id.* at 6–7). Again, Plaintiffs claim that it would not be burdensome for ACB to provide Plaintiffs with the form debt collection letters, similar to the debt collection letter ACB mailed them, which were sent to New Jersey consumers that stated different monetary amounts for "Amount Owed" and "Amount Due." For these reasons, Plaintiffs argue that ACB's motion to bifurcate discovery should be denied.

## II. Analysis

Federal Rule of Civil Procedure 42(b) governs requests to bifurcate. According to Rule 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Under Rule 42(b), "a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." *Medpointe Healthcare, Inc. v. Hi-Tech Pharmacal Co., Inc.,* Civil Action No. 03–555(MLC), Civil Action No. 04–1686(MLC), 2007 U.S. Dist. LEXIS 4652, at *12–13, 2007 WL 188285 (D.N.J. Jan. 22, 2007) (internal quotation marks and citation omitted). Further, the broad discretion afforded courts in handling discovery disputes extends to decisions over bifurcating discovery. *See Weiss v. First Unum Life Ins. Co.,* Civil Action No. 02–4249(GEB), 2008 WL 755958, *1 (D.N.J. March 19, 2008); *see also Bandai America Inc. v. Bally Midway Mfg. Co.,* 775 F.2d 70, 74 (3d Cir.1985) (holding that bifurcation orders and orders controlling order of discovery are reviewed for abuse of discretion).

**\*4** Here, the Court finds that bifurcating discovery as proposed by ACB is warranted under Rule 42(b). In this regard, the Court agrees with ACB that a narrow, potentially dispositive issue exists concerning whether ACB's correspondence to Plaintiffs violated the FDCPA's prohibition against deceptive and false communications. Further, the Court is not persuaded by Plaintiffs' argument that the denial of ACB's Motion to Dismiss precludes summary judgment being granted in ACB's favor. The District Court never determined whether the existence of the two conflicting amounts on the debt correspondence does, in fact, represent a violation of the FDCPA as argued by Plaintiffs. As a result, depending on what evidence is ultimately presented,

the District Court may determine that summary judgment is warranted.

In addition, the Court finds that whether ACB's correspondence to Plaintiffs is deceptive and false is a narrow and distinct issue that does not implicate class wide discovery. Further, the Court finds that there will be no significant overlap between the two and therefore no real danger of a duplication of efforts or corresponding increase in litigation costs. Moreover, the Court finds that bifurcating the two issues has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery. While Plaintiffs fault ACB for not supporting their claims concerning the burdens and costs associated with class action discovery, it is generally recognized that class actions involve the potential "for hefty litigation expenses and an extensive use of judicial resources in the resolution of these claims[.]" *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC,* Civ. No. 11–00011, 2013 WL 663301, at *5 (D.N.J. Feb.21, 2013). It is also generally understood that the costs can be particularly "enormous" for defendants. *Id.* Furthermore, while the Court agrees with Plaintiffs that medical information, including sensitive HIPAA information, will likely not be needed in the course of discovery, the Court finds that bifurcating discovery and, as a result, providing ACB with an opportunity to file a motion for summary judgment, will best serve the interests of judicial economy and promote efficiency.

For the reasons stated above, the Court finds that bifurcating discovery into two phases will promote the efficient resolution of this matter. It will allow the Court to address a narrow, potentially dispositive issue in a timely and cost effective manner with no significant prejudice to Plaintiffs. Consequently, the Court hereby bifurcates discovery as requested by ACB. The parties are therefore directed to meet and confer to submit a proposed schedule for the first phase of discovery. This schedule shall be submitted no later than ***September 14, 2015.***

## III. Conclusion

For the reasons set forth above, ACB's motion to bifurcate discovery is GRANTED. An appropriate Order follows.

## All Citations

Not Reported in F.Supp.3d, 2015 WL 5032052

2015 WL 5032052

---

Case 1:25-cv-00927-KMN     Document 28-1     Filed 09/16/25     Page 50 of 75

Moore v. Demand Science Group, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 175743

2024 WL 175743
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

George MOORE, Plaintiff,

v.

DEMAND SCIENCE GROUP, LLC, Defendant.

Case No.: 1:22-cv-01539
|
Filed: January 4, 2024

**Attorneys and Law Firms**

Anthony Paronich, Paronich Law, P.C., Hingham, MA, for
Plaintiff.

Aaron Paul Heeringa, Manatt, Phelps & Phillips, LLP,
Chicago, IL, for Defendant.

**NOTIFICATION OF DOCKET ENTRY**

Franklin U. Valderrama, District Judge

 **\*1** This docket entry was made by the Clerk on Thursday,
January 4, 2024:
MINUTE entry before the Honorable M. David Weisman:
Magistrate Status/Motion hearing held. Plaintiff appeared by
phone and defense counsel appeared in person. Discussion
held regarding Defendant's motion to bifurcate and issue of
standing. Defendant stated the standing issues are whether the
relevant phone line is residential or business and whether the
line is registered on the Do Not Call registry. Court noted
that whether Plaintiff is an appropriate class representative is
a class certification issue. Plaintiff argued that the proposed
initial discovery overlaps with class certification discovery
and that he will need an expert as to whether a line is
residential or not. According to Plaintiff, he needs expert
testimony to be able to access the databases as to whether
the relevant phone number is residential or business and
that a report can be run just as easily for many phone
numbers versus one number. Defendant stated it would likely
not need an expert. The Court is concerned about wholly
unnecessary discovery, so it grants the motion for bifurcation
[23] because it is more efficient to proceed with the limited
and targeted discovery as proposed by Defendant given that
the overlap between the proposed initial discovery and merits
discovery is minimal. The parties' counsel indicated they
have worked together previously. Plaintiff stated he has issued
written discovery. Defendant may issue 15 interrogatories
and 20 document requests and no more than 5 third-party
subpoenas. Plaintiff raised his concern about non-compliance
by third parties regarding preservation of evidence; Court
indicated that Plaintiff should file any motions on this issue
or any related issues promptly, as necessary. Initial limited
fact discovery regarding whether the relevant phone line is
residential or business and whether the line is registered on the
Do Not Call registry shall close 4/3/24. Status hearing set for
4/16/24 at 9:15 a.m. Joint status report due 4/12/24 addressing
the status of the initial limited fact discovery and whether
Defendant believes summary judgment is appropriate; any
third-party discovery issues; whether the parties are interested
in a settlement conference; and any other issues the parties
wish to raise. Mailed notice (ao,)

**All Citations**

Not Reported in Fed. Supp., 2024 WL 175743

---

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Newell v. Aliera Healthcare, Inc., Not Reported in Fed. Supp. (2020)

2020 WL 13568762

Case 1:25-cv-00927-KMN    Document 28-1    Filed 09/16/25    Page 51 of 75

2020 WL 13568762
Only the Westlaw citation is currently available.
United States District Court,
N.D. Georgia, Atlanta Division.

Jourey NEWELL, on behalf of himself
and others similarly situated, Plaintiff,
v.
ALIERA HEALTHCARE, INC. and
Insurance Care Now, LLC, Defendants.

CIVIL ACTION FILE No. 1:19-cv-01489-SCJ
|
Signed April 6, 2020

**Attorneys and Law Firms**

Anthony Paronich, Broderick & Paronich, P.C., Hingham, MA, Brian K. Murphy, Pro Hac Vice, Jonathan P. Misny, Pro Hac Vice, Murray Murphy Moul + Basil LLP, Columbus, OH, Steven Howard Koval, The Koval Firm, LLC, Atlanta, GA, for Plaintiff.

Brent David Hitson, Matthew T. Mitchell, Pro Hac Vice, Burr & Forman LLP, Birmingham, AL, Sarah Craig, Burr and Forman LLP, Tampa, FL, Eric Joseph Breithaupt, Stites & Harbison, PLLC, Atlanta, GA, Louis G. Fiorilla, Burr & Forman, LLP, Atlanta, GA, for Defendant Aliera Healthcare, Inc.

Todd I. Stone, The Stone Law Group, Fort Lauderdale, FL, Benjamin S. Klehr, Gustav H. Small, Jr., Small Herrin, LLP, Atlanta, GA, for Defendant Insurance Care Now, LLC.

### ORDER

STEVE C. JONES, UNITED STATES DISTRICT JUDGE

**\*1** This matter appears before the Court on Aliera Healthcare, Inc.'s ("Aliera") Motion to Bifurcate Discovery. Doc. No. [35]. [1]

## I. BACKGROUND

### A. Facts

Plaintiff Jourey Newell ("Plaintiff") filed this putative class action against Aliera and Insurance Care Now, LLC ("Insurance Care Now") (collectively, "Defendants") on

April 2, 2019, alleging a violation of the Telephone Consumer and Protection Act, 47 U.S.C. § 227 ("TCPA"). Doc. No. [1]. In his Complaint, Plaintiff alleges that Aliera "commissioned automated telemarketing calls to [Plaintiff] and other putative class members without their prior express written consent." Id. ¶ 2. Plaintiff further alleges that said calls were made pursuant to an arrangement between Aliera and its telemarketer, Insurance Care Now. Id. ¶ 3. More specifically, Plaintiff claims that on March 26, 2019, he received a call on his cell phone from Insurance Care Now. Id. ¶ 27. When Plaintiff answered the call, he heard a "distinctive click and a pause," which is "a telltale sign of a predictive dialer." [2] Id. ¶¶ 28–32. Because of the predictive dialer, Plaintiff claims that he was greeted with "dead air" until a live person came on the line. Id. ¶ 33. Eventually, "Sean" of Insurance Care Now, using a scripted sales pitch, asked Plaintiff about insurance and promoted "Carewell by Aliera," an Aliera insurance product. Id. ¶ 34. Plaintiff alleges that he received this call from Insurance Care Now even though he had previously placed his cellphone number on the National Do Not Call Registry. Id. ¶ 26.

### B. Definition of ATDS

The TCPA makes it illegal to "make any call ... using any automatic telephone dialing system ["ATDS"] or an artificial or prerecorded voice "to "any telephone number assigned to a paging service[ ] or cellular telephone service" without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). It further defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. § 227(a)(1).

In 2003, the Federal Communications Commission ("FCC") issued an order stating that "predictive dialers" [3] fell within the meaning and statutory definition of an ATDS and thus were subject to the TCPA's restrictions on the use of autodialers. See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14,014, 14,093 (2003). The FCC subsequently affirmed this definition in 2008. See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559 (2008).

**\*2** In Glasser v. Hilton Grand Vacations Co., LLC, 948 F.3d 1301, 1306 (11th Cir. 2020), the Eleventh Circuit weighed in on the definition of an ATDS, holding that only those devices that dial randomly or sequentially generated numbers

Case 1:25-cv-00927-KMN    Document 28-1    Filed 09/16/25    Page 52 of 75

Newell v. Aliera Healthcare, Inc., Not Reported in Fed. Supp. (2020)

2020 WL 13568762

(without any human intervention whatsoever) constitute an ATDS. [4] Conversely, "predictive dialers", which the Eleventh Circuit defined as devices "that call a list of pre-determined potential customers"—are not an ATDS under the TCPA. Id. at 1308–09. This is because predictive dialers do not "randomly or sequentially" dial numbers, but instead dial previously identified numbers from a stored list. Id.

### C. Motion to Bifurcate Discovery

In light of the Eleventh Circuit's decision in Glasser, Aliera moves the Court to bifurcate discovery into two distinct segments: (1) limited discovery into the merits of Plaintiff's individual TCPA claim, followed by (2) class-wide discovery, if Plaintiff's individual claim survives. [5] Doc. No. [35]. Aliera specifically contends that limited discovery will confirm that Plaintiff was not called with an ATDS as defined under the TCPA. Id. at p. 5. Aliera further asserts that limited discovery will demonstrate that Plaintiff consented to be called on his cell phone and that suffered no "injury in fact" that could confer standing upon him to pursue his TCPA claim. Id. Ultimately, Aliera suggests that "[t]argeted discovery at the outset into these discreet, individual issues will spare the parties, their counsel, and this Court an unnecessary and burdensome foray into class-wide discovery." Id.

Plaintiff has since filed a response in opposition to Aliera's motion. Doc. No. [41]. This matter is now ripe for review, [6] and the Court rules as follows.

### II. LEGAL STANDARD

Aliera fails to cite to any legal authority in support of its request to bifurcate discovery in this matter. See Doc. No. [35]. Nevertheless, the Court independently notes that Federal Rule of Civil Procedure 42 governs requests to bifurcate. More specifically, Rule 42(b) provides that trial courts may hold separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). See also Hartley-Culp v. Credit Mgmt. Co., No. CV-14-0282, 2014 WL 4630852, at *2 (M.D. Pa. Sept. 15, 2014) (applying the TCPA) ("There is no question that the Court, in its discretion, can bifurcate discovery under Fed. R. C. P. 42(b).").

Trials courts have broad discretion in determining whether bifurcation is appropriate. See Griffin v. City of Opa-Locka, 261 F.3d 1295, 1301 (11th Cir. 2001). Bifurcation may be appropriate where the "resolution of a single issue may resolve the case and render trial on the other issue[s]

unnecessary." Tabor v. New York City, 11–CV–0195, 2012 WL 603561, at *10 (E.D.N.Y. Feb. 23, 2012) (Report and Recommendation), adopted by, 2012 WL 869424 (E.D.N.Y. Mar. 14, 2012) (bifurcating discovery in the context of a Monell claim). This reasoning also applies in the TCPA context. See, e.g. Leschinsky v. Inter–Continental Hotels Corp., No. 8:15–cv–1470–T–30MAP, 2015 WL 6150888, at *1 (M.D. Fla. Oct. 15, 2015) (granting motion to bifurcate and initially limiting discovery to whether the calls the named plaintiff received were dialed manually and how many calls she received); Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc., No. 12-2132, 2014 WL 413534, at *2 (D.N.J. Feb. 4, 2014) (granting motion to bifurcate where "a narrow, potentially dispositive issue exist[ed] concerning whether the faxes sent [were] informational and therefore not actionable under the TCPA," and this issue was "totally distinct from class issues"). The moving party bears the burden of establishing that bifurcation is appropriate. See Response of Carolina, Inc. v. Leasco Response, Inc., 537 F.2d 1307, 1323–24 (5th Cir. 1976). [7]

### III. DISCUSSION

**\*3** Upon review, the Court finds that bifurcating discovery as proposed by Aliera is warranted under Rule 42(b). In this regard, the Court agrees with Aliera that a narrow, potentially dispositive issue exists concerning whether Plaintiff was called by an ATDS as defined under binding Eleventh Circuit precedent. Specifically, Plaintiff alleges in his Complaint that he was called with a "predictive dialer," and Glasser has since confirmed that such a device is not an ATDS for purposes of creating liability under the TCPA. Consequently, depending on what evidence is ultimately presented, the Court may determine that Plaintiff's individual TCPA claim fails as a matter of law.

For similar reasons, the Court also finds that targeted discovery on the issue of consent is also warranted. [8] As Aliera correctly points out, prior express consent to receive the calls at issue is a complete defense to a TCPA claim. See, e.g., Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110, 1126 (11th Cir. 2014). Because consent is a dispositive issue, as with the ATDS issue, limited discovery on how Aliera or Insurance Care Now acquired Plaintiff's contact information and whether that acquisition constitutes consent under the TCPA "has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery." Physicians Healthsource, Inc., 2014 WL 413534, at *4.

Newell v. Aliera Healthcare, Inc., Not Reported in Fed. Supp. (2020)

2020 WL 13568762

Finally, the Court is not convinced that Plaintiff will be prejudiced by bifurcation. While Plaintiff raises concern over delay and the possibility that evidence will be lost or destroyed, these concerns are not overly persuasive. As parties to this lawsuit, both Aliera and Insurance Care Now are on notice to preserve evidence pertaining to this matter. [9] Furthermore, any prejudice to Plaintiff is significantly outweighed by the potential burdens and costs associated with unnecessary class action discovery. See, e.g., Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC, Civ. No. 11-00111, 2013 WL 663301, at *5 (D.N.J. Feb. 21, 2013) (holding that it is generally recognized that class actions involve the potential "for hefty litigation expenses and an extensive use of judicial resources in the resolution of these claims[.].").

Everything considered, the Court finds that bifurcating discovery into two phases (i.e., limited discovery into the merits of Plaintiff's individual TCPA claim followed by class-wide discovery if Plaintiff's individual TCPA complaint survives) will promote the efficient resolution of this matter. It will allow the Court to address a narrow, potentially dispositive issue in a timely and cost-effective manner with no significant prejudice to Plaintiff.

### IV. CONCLUSION

Accordingly, Aliera's Motion to Bifurcate Discovery is **GRANTED**. Doc. No. [35]. The parties are **ORDERED** to submit a proposed amended scheduling order consistent with this Order **no later than Monday, April 13, 2020.**

**IT IS SO ORDERED** this 6th day of April, 2020.

### All Citations

Not Reported in Fed. Supp., 2020 WL 13568762

---

## Footnotes

1    Insurance Care Now, LLC has also joined in this motion. Doc. No. [47].

2    In his Complaint, Plaintiff defines a "predicative dialer" as an automated dialing system that "dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line." Doc. No. [1], ¶ 30.

3    The FCC specifically defined a "predictive dialer" as an "automated dialing system that uses a complex set of algorithms to automatically dials' consumers telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call." In re TCPA Rules & Regulations, 18 FCC Rcd. 14,014, 14,022 n.31 (2003).

4    The Eleventh Circuit joined several other courts in adopting this ATDS interpretation. See, e.g., Dominguez v. Yahoo, Inc., 894 F.3d 116, 119 (3rd Cir. 2018); DeNova v. Ocwen Loan Servicing, No. 8:17-cv-2204-T-23AAS, 2019 WL 463552 at *3–4 (M.D. Fla. Sept. 24, 2019); Adams v. Safe Home Sec. Inc., No. 3:18-cv-03098-M, 2019 WL 3428776, at *3–4 (N.D. Tex. July 30, 2019); Keyes v. Ocwen Loan Servicing, LLC, 335 F. Supp. 3d 951, 962–63 (E.D. Mic. 2018).

5    Aliera states that it intends to file a motion for judgment on the pleadings as soon as practicable. Doc. No. [35], p. 8 n.9.

6    The Court did not allow a reply. Doc. No. [40], p. 2.

7    In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions rendered prior to the close of business on September 30, 1981 by the United States Court of Appeals for the Fifth Circuit.

2020 WL 13568762

8    The Court agrees with Plaintiff that discovery on the issue of standing is not warranted. Namely, the fact that Plaintiff has previously filed TCPA lawsuits (with nothing more) is insufficient to warrant targeted discovery on the issue of whether Plaintiff suffered a concrete injury such that his individual claim can proceed.

9    The Court set aside the entry of default against Insurance Care Now on March 26, 2020. Doc. No. [46].

---

**End of Document**                                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 623733
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Francess OSIDI, individually and on behalf
of all others similarly situated, Plaintiff,
v.
ASSURANCE IQ, LLC, Defendant.

Civil Action No. 21-cv-11320-ADB
|
Signed 03/03/2022

**Attorneys and Law Firms**

Jason R. Campbell, Charlestown, MA, Ignacio Javier Hiraldo, Ijh Law, Miami, FL, for Plaintiff.

Nathan L Garroway, Mark A. Silver, Dentons US LLP, Atlanta, GA, Philip A. O'Connell, Jr., Tony K. Lu, Dentons US LLP, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

**\*1** Plaintiff Francess Osidi ("Plaintiff" or "Named Plaintiff") alleges violations of the Telephone Consumer Protection Act of 1991 ("TCPA") to the detriment of a putative nationwide class of persons who received unsolicited telemarketing calls from Assurance IQ, LLC ("Defendant"). [ECF No. 1]. This action was filed on August 13, 2021. [Id.]. Defendant answered on November 12, 2021. [ECF No. 13]. Defendant argues that it may be able to show that the Named Plaintiff lacks viable claims and, therefore, requests the Court to bifurcate discovery and permit summary judgment briefing on the Named Plaintiff's claims before class discovery. [ECF No. 27 at 6–10]. Plaintiff opposes bifurcation, asserting: (1) that it would prolong litigation, increase costs, and duplicate discovery; (2) that bifurcation would severely disadvantage her more than denying the request would prejudice the Defendant; and (3) that the issues Defendant seeks to address through an individual summary judgment motion should be resolved on a class-wide basis. [Id. at 2–4].

For the reasons explained herein, Defendant's request is GRANTED and individual and class discovery are bifurcated.

## I. DISCUSSION

District courts possess "inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " Dietz v. Bouldin, 579 U.S. 40, 45 (2016) (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630–31 (1962)). A district court's exercise of its "inherent power must be a 'reasonable response to the problems and needs' confronting the court's fair administration of justice" and "cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." Id. at 46 (quoting Degen v. United States, 517 U.S. 820, 823–24 (1996)). District courts "enjoy broad discretion in managing the pace of pretrial proceedings, including the timing of discovery." Vineberg v. Bissonnette, 548 F.3d 50, 54 (1st Cir. 2008). Controlling the scope of discovery is particularly appropriate where discovery will impose considerable expense and the claims may be resolved on issues that require only limited or targeted discovery. Cf. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007) (emphasizing the requirement of plausibility at the motion to dismiss stage, in part because "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching" summary judgment or trial). Courts in this district have bifurcated individual merits and class discovery where doing so served the interests of justice given the allegations and circumstances of particular cases. See L.R. 16.3(a)(3)(B) (noting that a judicial officer may sequence discovery into two or more stages at a case management conference); see also, e.g., Katz v. Liberty Power Corp., LLC, No. 18-cv-10506, 2019 WL 957129 (D. Mass. Feb. 27, 2019) (bifurcating discovery and allowing opportunity for summary judgment motion on individual claims where class discovery is not necessary to address issues potentially dispositive of individual claims and where, if granted, class discovery could be avoided entirely); O'Connell v. Sterling Jewelers, Inc., No. 13-cv-13165 (D. Mass. Dec 4, 2014), ECF No. 61 (denying motion to strike class claims, but allowing merit discovery and summary judgment motions as to named plaintiffs' claims before class discovery); Huzarsky v. Little Kids, Inc., No. 15-cv-13613 (D. Mass. Feb. 22, 2016), ECF No. 22 (allowing summary judgment motions on individual claims before addressing class issues).

**\*2** Here, the need for class discovery may be eliminated if Defendant is able to demonstrate that the Named Plaintiff lacks viable individual claims. See Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001) ("Despite the fact that a case

Case 1:25-cv-00927-KMN   Document 28-1   Filed 09/16/25   Page 56 of 75

Osidi v. Assurance IQ, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 623733

is brought as a putative class action, it ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved."). But see *S. Orange Chiropractic Ctr., LLC v. Cayan LLC,* No. 15-cv-13069, 2016 WL 1441791, at *7 (D. Mass. Apr. 12, 2016) (holding that tendering complete relief of named representative's individual claim under Rule 68 did not moot TCPA class claims because they fell within "inherently transitory" exception). Further, class discovery is not necessary to address certain issues that may be dispositive of Plaintiff's individual claims or ability to bring the asserted class claims, including whether the Named Plaintiff specifically consented to receive telephone calls regarding insurance quotations, whether that request came from the phone number identified in the complaint, and whether the website's consent language was generally compliant with the TCPA. See [ECF No. 27 at 6–10]. The Court agrees that, in this matter where Defendant has raised potentially dispositive issues, it would be prudent to "test[ ] the merits of Plaintiff['s] allegations before engaging in costly class discovery." [Id. at 9].

## II. CONCLUSION

Accordingly, discovery in this case is BIFURCATED. Discovery relevant to the merits of the Named Plaintiff's individual claims shall conclude by June 1, 2022. Class discovery is stayed until further order by the Court, and the parties shall file a joint letter stating their positions on class discovery by June 10, 2022. Defendant shall file a status report on or before June 10, 2022 to inform the Court as to whether it intends to move for summary judgment for some or all of the Named Plaintiff's claims. [1] Defendant may then move for summary judgment with respect to some or all of the Named Plaintiff's claims by July 22, 2022. Plaintiff shall respond to any motion for summary judgment in accordance with the local rules.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 623733

---

## Footnotes

1    If Defendant does not move for summary judgment on all class claims, the Court will likely open class discovery as to at least the class claims that will remain regardless of its summary judgment ruling.

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Pavelka v. Paul Moss Insurance Agency, LLC, Not Reported in Fed. Supp. (2023)

2023 WL 3728199

2023 WL 3728199
Only the Westlaw citation is currently available.
United States District Court, N.D. Ohio, Eastern Division.

Jackson PAVELKA and Kaylee Pavelka, Plaintiffs,

v.

PAUL MOSS INSURANCE AGENCY,
LLC dba Epiq Insurance Agency, Defendant.

CASE NO. 1:22 CV 02226
|
Signed May 29, 2023
|
Filed May 30, 2023

**Attorneys and Law Firms**

Taylor True Smith, Woodrow & Peluso, Denver, CO, Scott
D. Simpkins, Climaco, Wilcox, Peca, Tarantino & Garofoli,
Cleveland, OH, for Plaintiffs.

Matthew N. Foree, Freeman Mathis & Gary, Atlanta, GA,
Steven J. Forbes, Freeman Mathis & Gary, Cleveland, OH,
for Defendant.

**MEMORANDUM OF OPINION AND ORDER**

DONALD C. NUGENT, United States District Judge

**\*1**  This case is now before the Court on *Defendant's
Motion for Determination That Plaintiffs Are Not Proper
Parties and to Dismiss the Complaint* (ECF #20) ("*Motion to
Dismiss*"), filed by Defendant Paul Moss Insurance Agency
("Defendant" or "Paul Moss Insurance") on March 31, 2023.
Plaintiffs Jackson Pavelka and Kaylee Pavelka ("Plaintiffs")
filed their opposition to Defendant's motion on April 18, 2023
(ECF #22), and Defendant filed a reply on May 12, 2023 (ECF
#24). For the reasons set forth below, Defendant's *Motion to
Dismiss* (ECF #20) is DENIED.

**I. BACKGROUND FACTS**

On December 9, 2022, Plaintiffs filed this action against
Defendant under the Telephone Consumer Protection Act,
47 U.S.C. § 227, *et seq.* ("TCPA"), alleging two claims
of violation of the TCPA. The first claim alleges that
Defendant Paul Moss Insurance made calls to Plaintiffs using

an automatic telephone dialing system ("ATDS") without
Plaintiffs' consent (ECF #1 [*Complaint*], ¶ 36-43). The
second claim alleges that Defendant made calls to Plaintiffs
using a prerecorded voice without Plaintiffs' consent (ECF
#1, ¶¶ 44-50). Plaintiffs' *Complaint* also seeks to raise these
claims as a class action "individually and on behalf of all
others similarly situated" (ECF #1, Caption & ¶¶ 17, 28-35)
on behalf of two putative nationwide classes.

The gist of Defendant's *Motion to Dismiss* are assertions
that: (1) Paul Moss Insurance did not initiate *any* call with
Plaintiffs, but rather that it received a "warm transfer" (in
effect, that Paul Moss Insurance received the transfer of
an initial call from another entity, Datalot, with Plaintiff
Kaylee Pavelka on the line, based on the direction or consent
of Kaylee Pavelka after she received the initial call from
Datalot), and that Paul Moss Insurance does not utilize an
ATDS system; (2) Paul Moss Insurance (again) did not make
any telephone calls to Plaintiffs, and that it does not use a
prerecorded voice in its communications; (3) Plaintiffs have
not identified any "harm" caused by Defendant, based on the
fact that Paul Moss Insurance did not initiate any calls with
Plaintiffs (effectively, that Plaintiffs "lack standing" for their
claims); and (4) Plaintiffs have not identified any facts that
Paul Moss Insurance could be held "vicariously liable" for
any calls made by third parties, including Datalot (effectively,
that no "agency" existed between Paul Moss Insurance and
any third party).

Among the items submitted in support of Defendant's motion
are copies of texts between Paul Moss Insurance and Kaylee
Pavelka indicating that Ms. Pavelka consented to receiving
the texts from Paul Moss Insurance, and that the texts were
in fact responsive to information provided by Ms. Pavelka,
as well as recordings of two telephone conversations Ms.
Pavelka had, first, with Datalot, and then with Paul Moss
Insurance, each of which last a number of minutes long and
evidence a consensual exchange of information between the
caller and Ms. Pavelka. There is no dispute that the only
Plaintiff who had *any* interaction with Defendant Paul Moss
Insurance (or Datalot) was Plaintiff Kaylee Pavelka, who is
the "primary and customary user" of the cellular phone at
issue in this case (ECF #1, ¶ 18).[1]

**II. APPLICABLE LAW**

**\*2**  The TCPA makes it illegal to "make any call (other
than a call made for emergency purposes or made with the

Pavelka v. Paul Moss Insurance Agency, LLC, Not Reported in Fed. Supp. (2023)

2023 WL 3728199

prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice ... to any telephone assigned to a paging service [or] cellular service[.]" 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The Supreme Court has further held that to qualify as an "automatic telephone dialing system" within the meaning of the TCPA, a device must have the "capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Facebook Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021).

### III. ANALYSIS

Defendant's motion raises a number of factual issues that make the granting of a motion to dismiss premature at this time. Both Plaintiffs and Defendant, in their briefing on Defendant's motion, present a number of matters that are outside the Pleadings, including various contract provisions between Defendant Paul Moss Insurance and Datalot, affidavits, copies of text messages, and recordings of the telephone conversations between Plaintiff Kaylee Pavelka and Datalot and between Plaintiff Kaylee Pavelka and Defendant Paul Moss Insurance. While FED. R. CIV. P. 12(d) permits a court to then treat a motion to dismiss under FED. R. CIV. P. 12(b) or a motion for judgment on the pleadings under FED. R. CIV. P. 12(c) as one for summary judgment under FED. R. CIV. P. 56, [2] the rule also requires that "[a]ll parties must be given a reasonable opportunity to present all material that is pertinent to the motion." FED. R. CIV. P. 12(d).

This case is still in its preliminary stages and discovery is ongoing. At the Case Management Conference, held on February 27, 2023, Defendant (following the position it raised in the FED. R. CIV. P. 26(f) and LR 16.3(b) *Planning Report of the Parties*, ECF #14) suggested that the Court bifurcate discovery, under Fed. R. Civ. P. 42(b), to first address the liability claims under the TCPA related to Plaintiffs individually, and to accept summary briefing and rule upon such individual liability issues first, before expanding the scope of discovery to encompass Plaintiffs' asserted "class action" claims, as the individual liability claims would likely be dispositive of whether the case should thereafter proceed as a "class action." (ECF #14, PageID #64-66).

Federal Rule of Civil Procedure 42(b) provides, in pertinent part: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third party claims." FED. R. CIV. P. 42(b). "As to the bifurcation of liability and class discovery, the court considers (1) the overlap between individual and class discovery, (2) whether bifurcation will promote Federal Rule of Civil Procedure 23's requirement that certification be decided at 'an early practicable time,' (3) judicial economy, and (4) any prejudice likely to flow from the grant or denial of a stay of class discovery." *Akselrod v. MarketPro Homebuyers LLC*, Civil No. CCB-20-2966, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021) (citing 1 McLaughlin on Class Actions § 3:10 (11th ed. 2014)).

In cases asserting both individual liability and potential "class action" claims under the TCPA, courts have often approved bifurcating discovery in such cases where narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery. *See, e.g., Akselrod*, 2021 WL 100666, at *2 (bifurcating discovery in TCPA case after determining that whether an ATDS was used was an issue of liability distinct from class certification, and "[l]imited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive"); *Physicians Healthsource, Inc. v. Janssen Pharm, Inc.*, Civil Action No. 12-2132 (FLW), 2014 WL 413534, at *4-5 (D.N.J. Feb. 4, 2014) (bifurcating discovery in TCPA fax case based on a narrow, potentially dispositive issue that was distinct from class issues, and recognizing that bifurcation had the potential to "save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery").

**\*3** In another case, similar to this one, where the issue of the plaintiff's consent was a key dispositive issue, the court highlighted the appropriateness of bifurcating the individual liability and class discovery:

> Upon review, the Court finds that bifurcating discovery as proposed by [Defendant] is warranted under Rule 42(b). In this regard, the Court agrees with [Defendant] that a narrow, potentially dispositive issue exists concerning whether Plaintiff was called by an ATDS[.] Specifically, Plaintiff alleges in his complaint that he was called with a "predictive dialer." ... [D]epending on what evidence is ultimately presented, the Court may determine that Plaintiff's individual TCPA claim fails as a matter of law.

Pavelka v. Paul Moss Insurance Agency, LLC, Not Reported in Fed. Supp. (2023)

2023 WL 3728199

For similar reasons, the Court also finds that targeted discovery on the issue of consent is also warranted. As [Defendant] correctly points out, prior express consent to receive the calls at issue is a complete defense to TCPA claims. Because consent is a dispositive issue, as with the ATDS issue, limited discovery on how [Defendant] acquired Plaintiff's contact information and whether that acquisition constitutes consent under the TCPA "has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery."

* * *

Everything considered, the Court finds that bifurcating discovery into two phases (*i.e.*, limited discovery into the merits of Plaintiff's individual TCPA claim followed by class-wide discovery if Plaintiff's individual TCPA complaint survives) will promote the efficient resolution of this matter. It will allow the Court to address a narrow, potentially dispositive issue in a timely and cost-effective manner with no significant prejudice to Plaintiff.

*Newell v. Aliera Healthcare, Inc.*, Civil Action No. 1:19-CV-01489-SCJ (N.D. Ga. Apr. 6, 2020) (citations omitted, bracketed inserts provided, parenthetical insert in original).

The Court finds that bifurcation of discovery to first address the individual liability claims, and then to entertain possible summary judgment motion practice on Plaintiffs' individual

claims, prior to class action discovery, is appropriate under FED. R. CIV. P. 42(b). The Court also finds that the parties should be given an opportunity to complete discovery on Plaintiffs' individual liability claims prior to any summary judgment motion practice that may be initiated on those individual claims at a later date.

Accordingly, *Defendant's Motion for Determination That Plaintiffs Are Not Proper Parties and to Dismiss the Complaint* (ECF #20) is premature, and is not in a posture to rule upon at this time.

## IV. CONCLUSION

For each of the reasons stated above, *Defendant's Motion for Determination That Plaintiffs Are Not Proper Parties and to Dismiss the Complaint* (ECF #20) is DENIED.

The parties are directed to continue discovery on Plaintiffs' individual liability claims, with the intention of addressing and briefing these potentially dispositive claims first, before undertaking class action discovery and any related briefing in connection with Plaintiffs' class action claims.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3728199

---

**Footnotes**

1    Plaintiff Jackson Pavelka (Kaylee Pavelka's husband) is named as a Plaintiff solely because he is the "subscriber" for the subject phone's cellular account (ECF #1, ¶ 19).

2    Defendant's motion, while captioned *Defendant's Motion for Determination That Plaintiffs Are Not Proper Parties and to Dismiss the Complaint*, does not cite any of the provisions of FED. R. CIV. P. 12(b) (grounds for motions to dismiss) or 12(c) (motion for judgment on the pleadings).

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag
Distinguished by   Kerswill v. Modern Brokers of America, LLC,   M.D.Fla.,
June 9, 2023

2012 WL 7856269
Only the Westlaw citation is currently available.
United States District Court,
S.D. Florida.

PHYSICIANS HEALTHSOURCE, INC., Plaintiff,

v.

ANDA, INC., Defendant.

No. 12–60798–CIV.
|
Nov. 27, 2012.

**Attorneys and Law Firms**

Brian J. Wanca, Ryan Michael Kelly, Anderson & Wanca
Rolling Meadows, IL, Daniel Allen Thomas, Leopold Law,
P.A., Palm Beach Gardens, FL, Max G. Margulis, Margulis
Law Group, Chesterfield, MO, Phillip A. Bock, Bock &
Hatch, LLC, Chicago, IL, for Plaintiff.

Albert Bower, Eric L. Samore, Yesha Sutaria,
SmithAmundsen, LLC, Chicago, IL, Ellen Marcie
Leibovitch, Assouline & Berlow, P.A., Boca Raton, FL, for
Defendant.

*ORDER ON BIFURCATION OF*
*DISCOVERY AND SCHEDULING*

ROBIN S. ROSENBAUM, District Judge.

 **\*1** This matter is before the Court on Defendant's Motion
for Bifurcation of Discovery Pursuant to Federal Rules
of Civil Procedure 1 and 26 [D.E. 33]. The Court has
reviewed Defendant's Motion, the briefs, and the record and
is otherwise fully advised in the premises. For the reasons
stated below, the Court grants Defendant's Motion to conduct
discovery as to Plaintiff's individual claims before resolving
the class-certification issue.

Plaintiff Physicians Healthsource, Inc., filed its purported
class-action Complaint against Defendant Anda, Inc., on
May 1, 2012, alleging violations of the Telephone Consumer
Protection Act ("TCPA"). At the same time, Plaintiff filed

a "bare bones" placeholder Motion for Class Certification
[D.E. 4] asking this Court to certify this case as a class
action. As acknowledged by both parties, however, the class-
certification motion is premature and requires discovery
before it can be fully briefed and resolved by this Court. D.E.
35; D.E. 36; D.E. 37.

Although the parties agree that discovery is required before
resolving the class-certification issue, they disagree on
how best to organize the process. Defendant seeks first
to conduct discovery on and file a dispositive motion as
to Plaintiff's individual claims. According to Defendant,
Plaintiff's individual claims are time-barred. If Plaintiff's
individual claims are barred, Defendant argues, Plaintiff
would not qualify as an adequate class representative, and
the class action would be dismissed. D.E. 33 at 2. If
Plaintiff's claims survived, discovery would proceed to class
certification and the merits. *Id.* Plaintiff, on the other hand,
seeks to conduct discovery limited to its class-certification
motion, and once that motion is resolved, to proceed to
discovery and briefing on the merits. D.E. 36 at 1–2.

In addition to proposing its own discovery plan, Plaintiff
objects to Defendant's plan by denying the merit of
Defendant's dispositive arguments, by asserting that any delay
to resolve the individual claims "runs a substantial risk of loss
of evidence or memory loss of witnesses," and by opining
that witnesses will have to be deposed twice, first regarding
the individual claims and later on the class-certification and
merits issues. D.E. 36 at 4–7.

*DISCUSSION*

Courts have "broad discretion over the management of pre-
trial activities, including discovery and scheduling." *Johnson
v. Bd. of Regents of Univ. of Ga.,* 263 F.3d 1234, 1269 (11th
Cir.2001). In the class-action context, the Court may, in the
interests of fairness and efficiency, order discovery on issues
of class certification while postponing class-wide discovery
on the merits. *See Washington v. Brown & Williamson
Tobacco Corp.,* 959 F.2d 1566, 1570–71 (11th Cir.1992). The
drafters of the Federal Rules of Civil Procedure similarly
recognized that certification of a class may be delayed in
order to conduct discovery on and dispose of a purported class
representative's individual claims. Fed.R.Civ.P. 23 advisory
committee's note (2003) ("The party opposing the class may
prefer to win dismissal or summary judgment as to the
individual plaintiffs without certification and without binding

the class that might have been certified."). In this case, Defendant has made a plausible argument that it may be able to prevail on the merits against Plaintiff's individual claims. To be clear, the Court is not making any decision at this point as to the merits of Defendant's dispositive arguments. But if the Court resolves the individual claims in Defendant's favor, that ruling would likely significantly impact the Court's decision on class certification.

**\*2** Plaintiff's arguments against bifurcation are unconvincing. Although Plaintiff contests the merits of Defendant's arguments—and is free to do so more thoroughly in response to Defendant's anticipated dispositive motion—Plaintiff has not shown those arguments to be implausible on their face, and Defendant has demonstrated why discovery is necessary to support these arguments. *See* D.E. 39 at 6. Further, since Plaintiff itself points out that this case is "focused on the time frame of 2006 through 2009," D.E. 36 at 5, but did not file its Complaint until 2012, it seems unlikely that an additional few months to resolve the individual claims will prejudice the Plaintiff in any substantial way. Finally, although a handful of witness may need to be interviewed twice should this case proceed to class-wide discovery on the merits, that inconvenience is insufficient to outweigh the advantages potentially gained by resolving the individual claims at an early stage.

Accordingly, the Court agrees that in the interests of efficiency, Defendant should be allowed to conduct discovery on and submit a dispositive motion as to Plaintiff's individual claims. This discovery must be completed and any dispositive motion Defendant wishes to file must be filed within sixty (60) days of this Order. A schedule for class-certification briefing will be set after Defendant's dispositive motion is resolved.

Additionally, because both parties have agreed that Plaintiff's current class-certification motion is premature, the Court will deny the current certification motion without prejudice to renew. To the extent that Plaintiff is concerned that Defendant may attempt to "pick off" Plaintiff's claims with an offer of judgment, the Court acknowledges Defendant's stipulation "that it will not make a tender of relief or an offer under Fed.R.Civ.P. 68 or otherwise or argue or contend

that Plaintiff's lawsuit is moot or that class certification should be denied prior to Plaintiff's filing a motion for class certification, on such grounds." D.E. 37, ¶ 3. Furthermore, the Court recognizes that Plaintiff has pursued class certification from the time it filed its Complaint, and the Court is postponing the certification issue so that issues necessary to resolving certification can be more fully developed by the parties. *See Bishop's Prop. & Invs., LLC v. Protective Life Ins. Co.,* 463 F.Supp.2d 1375, 1382 (M.D.Ga.2006) (finding that a plaintiff had standing to pursue class certification even after the defendant "picked off" plaintiff's individual claim).

## *CONCLUSION*

For the reasons discussed above, it is **ORDERED and ADJUDGED** as follows:

1. Defendant's Motion for Bifurcation of Discovery Pursuant to Federal Rules of Civil Procedure 1 and 26 [D.E. 33] is **GRANTED.** The parties may conduct discovery related to Plaintiff's individual claims against Defendant. By **no later than January 25, 2013,** the parties must complete this discovery and file any dispositive motion relating to Plaintiff's individual claims against Defendant.

**\*3** 2. Plaintiff's Motion for Class Certification [D.E. 4] is **DENIED without prejudice** and may be renewed at a later date. The Court will enter a briefing schedule for a renewed class certification motion after ruling on any dispositive motion regarding Plaintiff's individual claims, or if no dispositive motion is filed, after the time for filing such a dispositive motion has expired.

3. In light of the above, Defendant's Request for Suspension of Briefing on Motion for Class Certification [D.E. 25] is **DENIED AS MOOT.**

**DONE** and **ORDERED** at Fort Lauderdale, Florida, this 26th day of November 2012.

## All Citations

Not Reported in F.Supp.2d, 2012 WL 7856269

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 28-1    Filed 09/16/25    Page 62 of 75

Raimo v. Washington University in St. Louis, Not Reported in Fed. Supp. (2021)

2021 WL 243559

🚩 KeyCite Yellow Flag

Distinguished by   Dixon v. Edward D. Jones & Co., L.P.,   E.D.Mo.,
September 15, 2022

2021 WL 243559
Only the Westlaw citation is currently available.
United States District Court,
E.D. Missouri, Eastern Division.

Alexander RAIMO, individually and on
behalf of all others similarly situated, Plaintiff,

v.

WASHINGTON UNIVERSITY
IN ST. LOUIS, Defendant.

Case No. 4:20-cv-00634-SEP
|
Signed 01/25/2021

**Attorneys and Law Firms**

David L. Grebel, Michael S. Kruse, Niemeyer and Grebel,
St. Louis, MO, Steve Berman, Hagens Berman Sobol Shapiro
LLP, Seattle, WA, Daniel J. Kurowski, Whitney K. Siehl,
Hagens Berman Sobol, Chicago, IL, for Plaintiff.

Alan E. Schoenfeld, Wilmer Hale LLP, New York, NY,
Winthrop B. Reed, III, R. Taylor Matthews, III, Sarah Anne
Milunski, Lewis Rice LLC, St. Louis, MO, for Defendant.

## MEMORANDUM AND ORDER

SARAH E. PITLYK, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is Defendant Washington University
in St. Louis's ("Washington University") Motion to Stay and
Bifurcate Discovery. Doc. [32]. This matter is fully briefed.
For the reasons set forth below, the Motion is granted in part
and denied in part.

## LEGAL STANDARD

In resolving a motion to stay discovery pending disposition of
a motion to dismiss, a court considers four factors, including:

(1) whether the movant has a shown a likelihood of success
on the merits of the dispositive motion;

(2) hardship or inequality to the moving party if the matter
is not stayed;

(3) prejudice to the non-moving party [if the matter is
stayed]; and

(4) the conservation of judicial resources.

*Physicians Home Health Infusion, P.C. v. UnitedHealthcare
of the Midwest, Inc.,* No., 2019 WL 4644021, at *3 (E.D. Mo.
Sept. 24, 2019). The decision to stay discovery is "generally
practical and ... left largely to the court's discretion."
*Id.* (quoting *Dufrene v. ConAgra Foods, Inc.,* 2016 WL
10651947, at *2 (D. Minn. Apr. 7, 2016)).

## DISCUSSION

The balance of those factors favors granting a stay of
discovery in this case. In evaluating the likelihood of success
on the merits, Washington University " 'must show more than
the mere possibility' of success on its motion to dismiss, but
'is not required to demonstrate a greater than fifty percent
probability' that the motion to dismiss will be successful." *Id.*
(quoting *Dufrene,* 2016 WL 10651947, at *3). Washington
University's arguments for dismissal are colorable, and for
purposes of the motion to stay, Washington University has
established more than a mere possibility that the motion to
dismiss will be successful.

The Court must also consider potential hardship to
Washington University if the motion to stay is not granted
and the prejudice to Plaintiffs if it is granted. Given the
large proposed class size—potentially thousands of students
—and the lack of a central repository containing Washington
University's relevant documents, it would be a substantial
hardship for Washington University to engage in discovery at
this stage. While no discovery requests had been served when
this motion was filed, the hardship is not speculative, because
"the burden of simply gathering documents" for the thousands
of students will be immense and expensive. Doc. [35] at 3.
Furthermore, the risk of prejudice to Raimo and other class
members is low. Raimo argues that "prompt resolution is vital
here given the hardship faced by students" and the increased
risk of losing evidence, including inability of witnesses to
recall specific facts. Doc. [34] at 5. But Raimo and the class
members seek refunds of money already paid, Doc. [1] at 23;
therefore, a stay of discovery will not increase their financial
hardship, even if they ultimately prevail. The risk of lost

2021 WL 243559

evidence or diminished witness recall is also relatively low in a case based on events that took place so recently. A stay will cause Plaintiffs no unfair prejudice.

The fourth factor—conservation of judicial resources—also weighs in favor of granting the stay. In determining whether the stay would conserve judicial resources, "a court examines the breadth of any pending discovery and whether the pending dispositive motion has the potential to resolve the litigation." *Physicians Home Health Infusion*, 2019 WL 4644021, at *6 (quoting *Dufrene* 2016 WL 10651947, at *4). Because the proposed class size is so large, the breadth of the pending discovery is likely substantial. Moreover, if the motion to dismiss is granted in full, it will resolve "all of the issues to which the currently pending discovery in relevant." *Id.* (quoting *Dufrene*, 2016 WL 10651947, at *4).

**\*2**  The Court concludes that the four factors involved in evaluating a stay of discovery pending resolution of a motion to dismiss all weigh in favor of staying discovery until the disposition of Defendant's Motion to Dismiss (Doc. [25]). *See McClanahan v. Webster Univ.*, No. 4:20-cv-00907-MTS (E.D. Mo. filed July 10, 2020), Doc. [46] (granting a motion to stay discovery). The Court will deny the request to bifurcate discovery at this time, but Defendant may file another motion to bifurcate discovery if the Court denies the motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Stay and Bifurcate Discovery (Doc. [32]) is **GRANTED** with respect to the stay of discovery and **DENIED without prejudice** with respect to the bifurcation of discovery.

### All Citations

Not Reported in Fed. Supp., 2021 WL 243559

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1932935
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Paul SAPAN

v.

FINANCE OF AMERICA REVERSE LLC

Case No. 8:24-cv-00213-FWS-KES

|

Filed July 14, 2025

**Attorneys and Law Firms**

Christopher J. Reichman, Justin Prato, Prato and Reichman
APC, San Diego, CA, for Paul Sapan.

**PROCEEDINGS: ORDER GRANTING
DEFENDANT'S MOTION TO
BIFURCATE DISCOVERY [44]**

FRED W. SLAUGHTER, UNITED STATES DISTRICT
JUDGE

**\*1** Before the court is Defendant's Motion for Order
Amending Scheduling Order to Bifurcate Discovery. (Dkt. 44
("Motion" or "Mot.").) Plaintiff opposes the Motion. (Dkt. 45
("Opposition" or "Opp.").) Defendant filed a reply in support
of the Motion. (Dkt. 46 ("Reply").) The court finds this matter
appropriate for resolution without oral argument. *See* Fed.
R. Civ. P. 78(b) ("By rule or order, the court may provide
for submitting and determining motions on briefs, without
oral hearings."); C.D. Cal. L.R. 7-15 (authorizing courts to
"dispense with oral argument on any motion except where an
oral hearing is required by statute"). Based on the state of the
record, as applied to the applicable law, the court **GRANTS**
the Motion. Accordingly, the hearing currently set for **July
17, 2025**, is **VACATED** and off calendar.

Plaintiff alleges that Defendant violated the Telephone
Consumer Protection Act, 47 U.S.C. § 227, et seq., ("TCPA")
by calling Plaintiff and the putative class members with
solicitations despite their phone numbers being registered
on the National Do-Not-Call Registry. (*See* Dkt. 25 ¶¶
5-10.) Defendant argues that Plaintiff's individual claim fails
because Plaintiff cannot meet the elements of the TCPA,
namely that Plaintiff is not a residential telephone subscriber
within the meaning of the TCPA, or the call was made with

Plaintiff's assent or pursuant to a prior business relationship.
(*See* Mot. at 2.) Alternatively, Defendant argues that Plaintiff's
status as a "serial TCPA litigant" means Plaintiff lacks
standing under the TCPA because the calls Plaintiff received
were not unwanted. (*Id.* at 4.) Defendant asserts that it would
be more efficient to first target discovery at the merits of
Plaintiff's individual claim before proceeding to costly class
discovery. (*Id.* at 4-5.)

Federal Rule of Civil Procedure 42(b) gives the court broad
discretion to bifurcate proceedings "[f]or convenience or to
avoid prejudice, or to expedite and economize." Fed. R. Civ.
P. 42(b). Under Rule 42(b), courts have the "power to limit
discovery to the segregated issues ... One of the purposes
of Rule 42(b) is to permit deferral of costly and possibly
unnecessary discovery proceedings pending resolution of
potentially dispositive preliminary issues." *Ellingson Timber
Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970); *see
also* Fed. R. Civ. P. 1 (the Federal Rules of Civil Procedure
"should be construed and administered to secure the just,
speedy, and inexpensive determination of every action and
proceeding"); *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
200 F.3d 795, 803-04 (Fed. Cir. 1999) ("A district court
has broad powers of case management, including the power
to limit discovery to relevant subject matter and to adjust
discovery as appropriate to each phase of litigation."). "The
decision to bifurcate discovery in putative class actions prior
to certification is committed to the discretion of the trial
court." *True Health Chiropractic Inc v. McKesson Corp.*,
2015 WL 273188, at \*1 (N.D. Cal. Jan. 20, 2015) (citation
omitted).

**\*2** Among the factors courts consider in deciding whether to
bifurcate discovery are: "(1) the overlap between individual
and class discovery; (2) whether bifurcation will promote
Rule 23's requirement that certification be decided at 'an early
practicable time'; (3) judicial economy; and (4) any prejudice
reasonably likely to flow from the grant or denial of a stay
of class discovery." *True Health Chiropractic, Inc.*, 2015 WL
273188, at \*1. The moving party bears "the burden of proving
that bifurcation is justified given the facts in [the] case."
*Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D.
99, 101 (N.D. Cal. 1992).

First, the court finds the overlap between individual and class
discovery does not weigh against bifurcation of discovery in
this case. Defendant argues that there are several "narrow
and potentially case-dispositive issues unique to the merits
of [Plaintiff's] individual TCPA claim." (Reply at 4.) Many

"courts are reluctant to bifurcate class-related discovery from discovery on the merits" because "the distinction between class certification and merits discovery is murky at best and impossible to determine at worst." *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018) (collecting cases). This distinction is important because separating discovery between the individual plaintiff and the class may "raise a slew of issues as to what discovery relates to the class, as opposed to the named plaintiffs, thereby causing additional litigation regarding the distinction between the two." *True Health Chiropractic Inc. v. McKesson Corp.*, 2015 WL 273188, *3 (N.D. Cal. 2015). However, the court agrees with Defendant that the overlap between Plaintiff's individual claim and class discovery is likely to be less murky in this case. *Katz v. Liberty Power Corp., LLC*, 2019 WL 957129, at *2 (D. Mass. Feb. 27, 2019) (finding "class discovery [was] not necessary to address certain issues that may" have been dispositive "of Plaintiffs' individual claims or ability to bring the asserted class claims, including whether the phone numbers at issue are within the TCPA" and "whether named Plaintiffs' are within the classes they purport to represent"); *see Fania v. Kin Ins., Inc.*, 2024 WL 2607303, at *3 (E.D. Mich. May 24, 2024) (bifurcating discovery in TCPA case to address a "narrow and potentially dispositive issue" that was distinct from issues relevant to the class).

And the court finds second factor also does not weigh against bifurcation in this case. Federal Rule of Civil Procedure 23 specifies that class certification should occur "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). Here, the record shows that bifurcation is not inconsistent with early class certification. For instance, Defendant demonstrates that Plaintiff has filed close to one hundred putative TCPA class actions, none of which has been certified as a class. (*See* Mot. at 3 n.2; Reply at 1 n.1.) Therefore, the court finds that establishing whether Plaintiff is a typical and adequate class representative as early as possible could help this case move more expeditiously. *See generally Newell v. Aliera Healthcare, Inc.*, 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020) ("Because consent is a dispositive issue, as with the ATDS issue, limited discovery on how Aliera or Insurance Care Now acquired Plaintiff's contact information and whether that acquisition constitutes consent under the TCPA has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery.") (citation modified); *see also Sapan v. Veritas Funding, LLC*, 2023 WL 6370223, at *4 (C.D. Cal. July 28, 2023) (same) (denying class certification and

determining that Plaintiff was not a typical or adequate class representative); *Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019, 1034 (D. Nev. 2018) (finding typicality not met when there were unique defenses and issues related to the plaintiff's TCPA claim); *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) (explaining that a named plaintiff "who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative"); *Sherman v. Yahoo! Inc.*, 2015 WL 5604400, at **8-9 (S.D. Cal. Sept. 23, 2015) ("Plaintiff will not be a typical or adequate class representative because the manner in which she provided consent will only coincide with a select group of members of the putative class" and she may therefore "be incentivized to litigate the case in a manner favorable to her consent profile or to settle to the detriment of other class members.").

**\*3** Next, the court finds that the third factor of judicial economy weighs heavily in favor of bifurcating this case. The distinct question of Plaintiff's suitability to represent a class is the sort of discrete threshold issue that can support bifurcation. *See Pavelka v. Paul Moss Ins. Agency, LLC*, 2023 WL 3728199 (N.D. Ohio May 30, 2023) (bifurcating discovery to first address individual liability claims); *Fania*, 2024 WL 2607303, at *2 (bifurcating discovery to address the "case-dispositive questions" of whether plaintiff received a pre-recorded call and whether defendant was legally responsible for such calls); *Newell v. Aliera Healthcare, Inc.*, 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020) (bifurcating discovery to determine whether plaintiff was called by an ATDS and consent). The court finds that makes this case unlike those that have declined bifurcation where the purported threshold questions overlap with class discovery. *Cf. Grippo v. Sugared + Bronzed, LLC*, 2025 WL 596095, at *3 (C.D. Cal. Feb. 24, 2025) (finding judicial economy would not be served by bifurcation where the dispositive question may be informed by class discovery).

Fourth and finally, as to prejudice, the court finds that the potential prejudice to Defendant weighs in favor of bifurcation. Plaintiff seeks to certify the following class:

> All persons and entities located within
> the United States of America who
> claim to be able to provide a phone
> bill or statement showing they were
> a residential telephone subscriber and
> that their number was registered on

the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an "existing business relationship" at any time from June 10, 2020 to the present, including up to and through trial.

(Dkt. 25 ¶ 70.) "It is well-recognized that discovery in class actions is expensive and asymmetric, with defendants bearing most of the burdens." *Babare v. Sigue Corp.*, 2020 WL 8617424, at *2 (W.D. Wash. Sept. 30, 2020). And discovery might be particularly difficult in this case because Defendant no longer operates as an ongoing business so it may have difficulty marshalling discovery materials. (*See* Dkt. 46-1 ¶ 7.) Accordingly, the court finds that bifurcated discovery would serve the "just, speedy, and inexpensive determination" of this case. Fed. R. Civ. P. 1. By contrast, the court finds Plaintiff's argument that they would be prejudiced by a delay in reaching class certification is outweighed by the costs of class discovery in this case. *Newell*, 2020 WL 13568762, at *3 ("any prejudice to Plaintiff is significantly outweighed by the potential burdens and costs associated with unnecessary class action discovery").

In sum, the court finds that the first and second factors are neutral, and the third and fourth factors weigh heavily in favor of bifurcation. Therefore, on balance, the court finds that the record of this case supports bifurcating discovery to first address the merits of Plaintiff's individual claim. Accordingly, the court **GRANTS** the Motion.

Discovery in this case is **BIFURCATED**. Discovery relevant to the merits of Plaintiff's individual claim shall conclude by **October 7, 2025**. Class discovery is **STAYED** until further order by the Court. Defendant shall file a status report on or before **October 10, 2025**, to inform the court as to whether it intends to move for summary judgment on Plaintiff's claim. Defendant may then move for summary judgment with respect to Plaintiff's claim by **October 31, 2025**. Plaintiff shall respond to any motion for summary judgment in accordance with the court's Civil Standing Order and the Central District's Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 1932935

---

   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Scoma Chiropractic, P.A. v. Jackson Hewitt Inc., Not Reported in Fed. Supp. (2017)

2017 WL 2733758

2017 WL 2733758
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Fort Myers Division.

SCOMA CHIROPRACTIC, P.A., a Florida
corporation, individually and as the representative
of a class of similarly-situated persons Plaintiff,
v.

JACKSON HEWITT INC., Jackson Hewitt
Technology Services LLC, Astro Tax Services LLC,
John Does 1–5 and Naveen Mathur, Defendants.

Case No: 2:17–cv–24–FtM–38CM
|
Signed 06/26/2017

**Attorneys and Law Firms**

Ross M. Good, Pro Hac Vice, Ryan M. Kelly, Anderson &
Wanca, Rolling Meadows, IL, for Plaintiff.

Dale A. Evans, Jr., Michael Peter De Simone, Thomas
Justin Cunningham, Locke Lord, LLP, West Palm Beach,
FL, Joseph E. Hopkins, Locke Lord LLP, Morristown, NJ,
Gregory William Goetz, Goetz & Goetz, Ft. Myers, FL, for
Defendants.

Astro Tax Services LLC, Fort Myers, FL, pro se.

Naveen Mathur, pro se.

ORDER

CAROL MIRANDO, United States Magistrate Judge

**\*1** This matter comes before the Court upon review of: (1)
the Unopposed Motion for Relief from Local Rule 4.04(b)
(Doc. 32) filed on March 8, 2017; (2) Defendants Jackson
Hewitt Inc. and Jackson Hewitt Technology Services LLC's
Motion for Rule 16(a) Pretrial Conference (Doc. 37) filed
on March 20, 2017; (3) and Defendant Jackson Hewitt Inc.
and Jackson Hewitt Technology Services LLC's Amended
Motion to Stay and Bifurcate Discovery and Incorporated
Memorandum of Law (Doc. 42) filed on April 5, 2017.

Plaintiff filed a class action complaint against Jackson Hewitt
Inc., Jackson Hewitt Technology Services LLC, Astro Tax
Services LLC, John Does 1–5, and Naveen Mathur pursuant

to the Telephone Consumer Protection Act ("TCPA") and the
Junk Fax Prevention Act ("JFPA"). Doc. 22 ¶ 2. Plaintiff's
operative complaint, filed on February 10, 2017, alleges that
he received an unsolicited facsimile from Defendants on or
about December 23, 2016. Id. ¶ 14. Plaintiff also alleges
that the facsimile did not display a proper opt-out notice
as required by 47 C.F.R. § 64.1200. Id. ¶ 19. Moreover,
Plaintiff alleges that "[o]n information and belief, Defendants
faxed the same and other unsolicited facsimiles without the
required opt-out language to Plaintiff and at least 40 other
recipients or sent the same and other advertisements by fax
with the required opt-out language but without first receiving
the recipients' express invitation or permission ..." Id. ¶ 17.

On March 20, 2017, Defendants Jackson Hewitt Inc. and
Jackson Hewitt Technology Services LLC (collectively, the
"Jackson Hewitt Defendants") filed a motion to dismiss
Plaintiff's amended complaint pursuant to Rule 12(b)(6),
Federal Rules of Civil Procedure. Doc. 36. In their motion
to dismiss, the Jackson Hewitt Defendants argue, among
other things, that Plaintiff's amended complaint fails to allege
facts related to each of the Defendants that would establish
the individual liability of each or how one might be liable
for a violation of the TCPA by another. Doc. 36 at 4–7.
For instance, the amended complaint does not distinguish
which of the Defendants sent the single facsimile but instead
alleges all Defendants sent it. Id. Thus, the Jackson Hewitt
Defendants argue that Plaintiff fails to allege that the Jackson
Hewitt Defendants were the "sender" of the alleged facsimile
or that the facsimile was sent on Jackson Hewitt's behalf. Id.
at 10–15. Additionally, the Jackson Hewitt Defendants argue
that Plaintiff fails to provide any factual allegations to support
its allegations that this case is appropriate for class treatment;
instead, it merely recites the statute. Id. at 7–9.

The Jackson Hewitt Defendants request an order staying
discovery pending a resolution of their motion to dismiss,
and if Plaintiff's complaint survives the motion, bifurcating
discovery into two phases: merits and class discovery. Doc. 42
at 1. In phase one, they propose that the parties have 90 days
to conduct the limited discovery relevant to testing Plaintiff's
claims—likely focusing on Jackson Hewitt's relationship to
the facsimile—after which the Jackson Hewitt Defendants
would move for summary judgment. Doc. 42 at 3. Then,
if Plaintiff's claims survive summary judgment, the Jackson
Hewitt Defendants propose that the case move to phase two,
where the parties conduct all other discovery, including class
discovery. Id.

2017 WL 2733758

 **\*2** In addition to arguing the sufficiency of its amended complaint, Plaintiff argues that bifurcation would unduly prejudice Plaintiff by prohibiting it from obtaining discovery on the allegation that the Jackson Hewitt Defendants sent more unsolicited faxes to it than just the facsimile attached to its amended complaint. Doc. 50 at 13. Plaintiff also argues that bifurcation would increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including depositions. Id. Moreover, Plaintiff asserts that bifurcation would needlessly extend the time in which Plaintiff could pursue class certification, which should be decided at the earliest practicable time. Id. (citing Fed. R. Civ. P. 23 (c)).

District courts have broad discretion when managing their cases in order to ensure that the cases move to a timely and orderly conclusion. Chrysler Int'l Corp. v. Chemaly, 280 F.3d 1358, 1360 (11th Cir. 2002). The Eleventh Circuit has noted that "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should ... be resolved before discovery begins. Chudasama v. Mazda Motor Corp., 123 F. 3d 1353 (11th Cir. 1983). Such a dispute always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true." Id. at 1367 (footnote omitted). "Therefore, neither the parties nor the court have any need for discovery before the court rules on the motion." Id.; Horsley v. Feldt, 304 F. 3d 1125, 1131 n.2 (11th Cir. 2002). Chudasama, however, does not stand for the proposition that all discovery in every circumstance should be stayed pending a decision on a motion to dismiss. Koock v. Sugar & Felsenthal, LLP, 2009 WL 2579307, at \*2 (M.D. Fla. Aug. 19, 2009). "Instead, Chudasama and its progeny 'stand for the much narrower proposition that courts should not delay ruling on a likely meritorious motion to dismiss while undue discovery costs mount." Id. (citing In re Winn Dixie Stores, Inc., 2007 WL 1877887, at \*1 (M.D. Fla. June 28, 2007)).

In deciding whether to stay discovery pending resolution of a motion to dismiss, the court must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery. McCabe v. Foley, 233 F.R.D. 683, 685 (M.D. Fla. 2006) (citation omitted). To this end, the court must take a "preliminary peek" at the merits of the dispositive motion to see if it "appears to be clearly meritorious and truly case dispositive." Id. (citation and internal quotation marks omitted).

Because there is a pending motion by the Jackson Hewitt Defendants challenging the legal sufficiency of Plaintiff's amended complaint, [1] which after taking a "preliminary peek" the Court finds meritorious, the Court will stay discovery pending a ruling on the motion to dismiss. To be clear, the Court is not making a determination at this time on the merits of the Jackson Hewitt Defendants' dispositive arguments. But, under the circumstances of this case, delaying discovery until the Court rules on whether Plaintiff has stated a viable cause of action will cause Plaintiff little harm.

Within a district court's discretion in managing its cases in order to ensure that the cases move to a timely and orderly conclusion falls the discretion to bifurcate discovery. See Chrysler Int'l Corp. v. Chemaly, 280 F.3d 1358, 1360 (11th Cir. 2002); Degutis v. Fin. Freedom, LLC, No. 2:12–cv–319–FTM–38, 2013 WL 10207621, at \*1 (M.D. Fla. Oct. 18, 2013) (citation omitted); Physicians Healthsource, Inc. v. Anda, Inc., No. 12–60798–CIV, 2012 WL 7856269, at \*1 (S.D. Fla. Nov. 27, 2012) (citing Johnson v. Bd. of Regents of Univ. of Ga., 263 F.3d 1234, 1269 (11th Cir.2001). There are several factors that the Court may consider. See Fed. Deposit Ins. Corp. v. Stewart Title Guar. Co., No. 8:12–CV–2244–T–17TBM, 2013 WL 12155010, at \*2 (M.D. Fla. June 25, 2013) (holding that prevention of undue burden and expense, convenience, the need to avoid prejudice, or to expedite and economize are appropriate factors for consideration in a motion to bifurcate discovery). The Court, however, declines to make a bifurcation determination at this time pending a ruling on the Jackson Hewitt Defendants' motion to dismiss the amended complaint. Accordingly, the Court exercises its discretion in staying discovery pending a ruling on the Jackson Hewitt Defendants' motion to dismiss the amended complaint, and will deny without prejudice the motion to bifurcate discovery until the Court rules on the motion to dismiss. For the same reasons, the Court grants Jackson Hewitt's Motion for Rule 16(a) Pretrial Conference, and will schedule same upon the Court's ruling on the pending motion to dismiss. Plaintiff's Unopposed Motion for Relief from Local Rule 4.04(b) also is due to be granted. The Court will address the new filing deadline for a motion for class certification at the scheduling conference.

 **\*3** ACCORDINGLY, it is hereby

**ORDERED:**

Scoma Chiropractic, P.A. v. Jackson Hewitt Inc., Not Reported in Fed. Supp. (2017)

2017 WL 2733758

1. Unopposed Motion for Relief from Local Rule 4.04(b) (Doc. 32) is **GRANTED**.

2. Defendants Jackson Hewitt Inc. and Jackson Hewitt Technology Services LLC's Motion for Rule 16(a) Pretrial Conference (Doc. 37) is **GRANTED**. The Court will separately notice a preliminary pretrial conference.

3. Defendant Jackson Hewitt Inc. and Jackson Hewitt Technology Services LLC's Amended Motion to Stay and Bifurcate Discovery and Incorporated Memorandum of Law (Doc. 42) is **GRANTED** in part in that all discovery is STAYED pending a determination of the Jackson Hewitt Defendants' Motion to Dismiss Amended Class Action Complaint and Incorporated Memorandum of Law (Doc. 36), and the motion to bifurcate is **DENIED without prejudice.**

**DONE** and **ORDERED** in Fort Myers, Florida on this 26th day of June, 2017.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2733758

---

## Footnotes

1    Defendants Astro Tax Services LLC and Naveen Mathur also have filed a motion to dismiss. Doc. 45.

---

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 5438297
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

Gerald A. WEST, Plaintiff

v.

Officer SHULTZ, et al., Defendants.

No. 1:12–cv–1004.
|
Sept. 27, 2013.

**Attorneys and Law Firms**

Gerald A. West, Lewisburg, PA, pro se.

Timothy Judge, U.S. Attorney's Office, Scranton, PA, for Defendants.

*MEMORANDUM*

YVETTE KANE, District Judge.

**\*1** Before the Court are Plaintiff Gerald A. West's motion to amend his complaint (Doc. No. 20), motion for injunctive relief (Doc. Nos.29, 37), and motion to deny or to continue Defendants' motions to dismiss and for summary judgment (Doc. No. 44). For the reasons that follow, the Court will deny Plaintiff's motion to amend his complaint and motion for injunctive relief. In addition, the Court will deny Plaintiff's motion to deny or to continue Defendants' motions to dismiss and for summary judgment.

**I. BACKGROUND**

On May 29, 2012, Plaintiff Gerald A. West, an inmate at the United States Penitentiary at Lewisburg ("USP–Lewisburg"), filed a combined *Bivens* [1] and Federal Tort Claims Act [2] ("FTCA") action against the United States of America and several federal employees setting forth claims of deliberate indifference, failure to protect, retaliatory tactics, and denial of food and water. (Doc. No. 1.) Plaintiff named as Defendants the United States of America, and the following current or former employees at USP–Lewisburg: B.A. Bledsoe, retired Warden; K. Bahre, D. Young, and D. Hudson, Associate Wardens; K. Whittener, Lieutenant; J. Adami, Unit

Manager; M. Edinger, Counselor; and C. Shultz and B. Shade, Correctional Officers. (*Id.* at 2.)

On September 20, 2012, Defendants filed a motion to dismiss the complaint and for summary judgment in their favor. (Doc. No. 16.) Defendants argued that the Court should grant summary judgment with regard to all *Bivens* claims except the claims against Defendants Shade and Shultz because Plaintiff failed to exhaust administrative remedies, and urged the Court to enter judgment in their favor on Plaintiff's FTCA claims because Plaintiff failed to properly exhaust his administrative tort claim. (Doc. No. 17.) Defendants further argued that the Court should dismiss Plaintiff's claims against Defendants Shade, Edinger, Adami, Whittaker, Bahre, Bledsoe, Hudson, and Young for Plaintiff's failure to state a constitutional violation; and should dismiss the deliberate indifference claim against Defendant Shultz because Plaintiff failed to sufficiently allege personal involvement. (*Id.*) Finally, Defendants argued that they are entitled to qualified immunity from suit. (*Id.*)

On October 19, 2012, Plaintiff filed a motion to amend his complaint to arrange his claims in a more understandable fashion and to clarify the identity of one of the Defendants as Officer Spade, not Officer Shade. [3] (Doc. No. 21.) Defendants filed a brief in opposition to Plaintiff's motion to amend, arguing that the proposed amended complaint is deficient, and asserting that Defendants interpreted all allegations in the original complaint concerning Officer Spade or Officer Shade to be the same allegations and responded accordingly. (Doc. No. 22 at 8.) Thus, Defendants argue, any proposed amendment on the basis of clarifying the identity of Officer Spade is futile. (*Id.*) Defendants further argue that a comparison of Plaintiff's original and proposed amended complaints reveals that the allegations remain essentially the same with the prayer for relief as the only significant difference. [4] (*Id.* at 6.)

**\*2** On June 5, 2013, Plaintiff filed a motion for a preliminary injunction and for a temporary restraining order to prevent Defendants from: (1) refusing to copy legal documents for him; (2) freezing money in Plaintiff's account to prevent him from buying stamps; and (3) threatening and physically abusing Plaintiff. (Doc. No. 37.) On July 1, 2013, Plaintiff filed a motion to deny or to continue Defendants' motions to dismiss or for summary judgment until Plaintiff has the opportunity to conduct discovery. (Doc. No. 44.) Defendants have filed briefs in opposition to Plaintiff's motion for a

preliminary injunction and his motion for continuance. (Doc. Nos.42, 49.)

### A. Allegations in the Complaint

In his complaint, Plaintiff enumerates multiple claims of abuse, neglect, and threatening tactics by current and former employees of USP–Lewisburg. First, Plaintiff claims that on August 10, 2010, after reporting to an officer at USP–Lewisburg that his cell-mate threatened to stab him to death if he did not move out, the officer ignored his report, and Plaintiff was sexually assaulted by his cell-mate. (Doc. No.1 at 3.) Plaintiff further claims that on August 11, 2010, after he notified a physician's assistant that he had been assaulted, Defendant Schultz told his cell-mate that Plaintiff had reported the incident. (*Id.*) Plaintiff claims that after Defendant Schultz left, Plaintiff was sexually assaulted a second time. (Doc. No. 1 at 4.) After this incident, Plaintiff alleges that he refused to give back his food tray until a Lieutenant was notified of the assault. (*Id.*) Consequently, Plaintiff claims he was removed from his cell by a Lieutenant and by Defendant Adami, who threatened Plaintiff by saying that he was to remain quiet about the incident or he would not be able to leave the Special Management Unit. (*Id.*) Thereafter, Plaintiff claims that Defendant Adami moved Plaintiff back to his cell block and told him to find a cell-mate or he would be placed in restraints. (Doc. No. 1 at 5.) Plaintiff indicates that on March 23, 2011, he filed a complaint against Defendant Adami with respect to this threat. (*Id.*)

Plaintiff alleges that another incident took place on March 28, 2011, stating that Defendant Spade falsified a misconduct report so that Plaintiff would be placed in hand restraints and taken to a cell with another inmate in restraints. (Doc. No. 1 at 5.) Plaintiff claims that he was thrown on top of the other inmate, and then kicked to the floor by said inmate. (*Id.*) Plaintiff alleges that after this incident, he had to sleep on the floor for two days with no restroom or food, and that during this two-day period, he complained that his restraints were too tight and that he needed medical attention. (Doc. No. 1 at 6.) Plaintiff claims that his complaints of numbness in his hands were ignored by a physician's assistant and the symptoms were not reflected in Plaintiff's medical record. (*Id.*)

In his complaint, Plaintiff also alleges that he was subjected to retaliatory tactics for engaging in hunger strikes. (Doc. No. 1 at 7, 8.) Plaintiff claims that after he went on a hunger strike on May 12, 2011, he was stripped of all his property and provided with paper clothing by individuals not named as defendants in this action. (Doc. No. 1 at 7.) Plaintiff further alleges that he

told Defendants Edinger and Whittener that he did not want to live with a particular inmate because that inmate had stated he would assault anyone housed with him. (*Id.*) Plaintiff claims that Defendants Edinger and Whittener told him that he would get a cell-mate regardless of whether he was on a hunger strike or not, and that Plaintiff would go in the cell with his cell-mate or he would be placed in restraints. (*Id.*) Plaintiff alleges that after he was placed in the cell, he was kicked by the inmate in the ribs and chest. (Doc. No. 1 at 8.) Plaintiff claims that after this incident, he was placed in an empty cell and denied mail, hygiene items, clean clothes, and toilet paper. (*Id.*) Plaintiff also alleges that Defendants Hudson, Bahre, and Young told Plaintiff that he was not getting any personal or institutional property back until he ended his hunger strike. (*Id.*)

## II. DISCUSSION

### A. Motion to Amend

**\*3** In Plaintiff's motion for leave to file an amended complaint, Plaintiff seeks to clarify the identity of one of the defendants and to arrange his claims in a more understandable fashion. Plaintiff's proposed amended complaint is not identical to the original complaint, but it does set forth the same claims against the same defendants with few changes from the original complaint besides the prayer for relief.

Rule 15 of the Federal Rules of Civil Procedure governs amendments and supplementation of pleadings. Fed.R.Civ.P. 15. Rule 15(a) authorizes a party to amend his pleading once as a matter of course within 21 days after service, or, if the pleading is one to which a responsive pleading is required, within 21 days after service of the responsive pleading or within 21 days after service of a dispositive motion under Rule 12, whichever is earlier. Fed.R.Civ.P. 15(a)(1)(A) and (B). "In all other cases, a party may amend its pleading only with the opposing party's written consent, or with the court's leave," which courts are to give freely "when justice so requires." Fed.R.Civ.P. 15(a)(2). Leave to amend may be denied if the court finds "undue delay, bad faith or dilatory motive on the part of the movant, failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, or futility of the amendment." *Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also Oran v. Safford,* 226 F.3d 275, 291 (3d Cir.2000).

Additionally, "amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand

a renewed motion to dismiss." *Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir.1988) (citing *Massarsky v. General Motors Corp. .,* 706 F.2d 111, 125 (3d Cir.1983)). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997) (citing *Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir.1996)). In assessing "futility," the district court applies the same standard of legal sufficiency as it applies under Rule 12(b)(6). *Id.*

Besides the relief sought, there are no other discernable changes in Plaintiff's proposed amended complaint. The defendants named and the claims set forth against them remain the same. As such, Defendants' motions to dismiss and for summary judgment, if successful, would make the proposed change to relief sought futile. The proposed changes to the relief sought do not cure the deficiencies in the original complaint in light of the arguments raised in Defendants' pending motion to dismiss, which include the failure to exhaust and the lack of personal involvement. For these reasons, Plaintiff's motion to amend his complaint is futile and the motion will be denied.

### B. Motions for Injunctive Relief

**\*4** In a letter addressed to the Court and filed on April 16, 2013, Plaintiff alleges that since the filing of this lawsuit, he has experienced threats and physical abuse from the staff at USPLewisburg. (Doc. No. 29.) The concerns raised by Plaintiff are with respect to Defendant Edinger and two others not named as defendants in this matter. Plaintiff claims that these individuals threatened to kill him if he did not drop his complaint. (*Id.*) Plaintiff further claims that he has not received any food since April 8, 2013, and that prison officials have cut off his water supply for days at a time, and that his weight has dropped from 170*l*bs to 140lbs. (*Id.*) On June 5, 2013, Plaintiff filed a motion for injunctive relief seeking a temporary restraining order or a preliminary injunction. (Doc. No. 37.)

In the motion for injunction relief, Plaintiff claims that on May 14, 2013, he was on a "declared hunger strike" and that he had to be taken from his cell to have his vital signs checked. (Doc. No. 38.) Plaintiff alleges that the officers involved in this incident instructed Plaintiff to eat the food they gave him or the officer would "beat the shit out of him." (*Id.*) Plaintiff further alleges that when he refused the food, the officers came into his cell and assaulted him and thereafter place him in steel restraints that cut off the circulation to his hands and

legs. (*Id.*) In support of his motion, Plaintiff filed a copy of an incident report describing Plaintiff assaulting a prison officer and refusing to obey an order. (*Id.*)

A court should issue an injunction only if the movant produces evidence sufficient to convince a trial judge that these factors favor preliminary relief. *Opticians,* 920 F.2d at 192 (citing *ECRI v. McGraw Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987)). "The purpose of the preliminary injunction is to preserve the status quo until the rights of the parties can be fairly and fully litigated and determined by strictly legal proofs and according to the principles of equity." *Wetzel v. Edwards,* 635 F.2d 283, 286 (4th Cir.1980) (citing *Meiselman v. Paramount Film Distributing Corp.,* 180 F.2d 94, 97 (4th Cir.1950)). Thus, the grant of injunctive relief is an "extraordinary remedy which should be granted only in limited circumstances." *American Telephone & Telegraph Co. V. Winback and Conserve Program, Inc.,* 42 F.3d 1421 (3d Cir.1994) (quoting *Frank's GMC Truck Center, Inc. v. General Motor Corp.,* 847 F.2d 100, 102 (3d Cir.1988)). The party seeking a temporary restraining order or preliminary injunctive relief has the burden of demonstrating: (1) a reasonable probability of success on the merits; (2) irreparable harm if the injunction is denied; (3) that the issuance of an injunction will not result in greater harm to the non-moving party; and (4) that the public interest would best be served by granting the injunction. *Council of Alternative Political Parties v. Hooks,* 121 F.3d 876, 879 (3d Cir.1997); *Clean Ocean Action v. York,* 57 F.3d 328, 331 (3d Cir.1995); *Opticians Ass'n of America v. Independent Opticians of America,* 920 F.2d 187, 191–92 (3d Cir.1990). The facts must support a finding that immediate and irreparable injury will result to the movant if the request for preliminary relief is denied. *United States v. Stazola,* 893 F.2d 34, 37 n. 3 (3d Cir.1990). The plaintiff bears the burden of establishing a "clear showing of irreparable injury." *Hohe v. Casey,*868 F.2d 69, 72 (3d Cir.1989); *ECRI,* 809 F.2d at 226 ("It is not enough to merely show irreparable harm. The plaintiff has the burden of showing immediate irreparable injury, which is more than merely serious or substantial harm and which cannot be redressed with money damages.). Absent a showing of immediate irreparable injury, the court should deny preliminary injunctive relief. *Acierno v. New Castle County,* 40 F.3d 645, 655 (3d Cir.1994).

**\*5** Moreover, in the prison context, a request for injunctive relief "must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'

" *Goff v. Harper,* 60 F.3d 518, 520 (8th Cir.1995) (quoting *Rogers v. Scurr,* 676 F.2d 1211, 1214 (8th Cir.1982)). When a plaintiff requests an injunction that would require a court to interfere with the administration of a prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode,* 423 U.S. 362, 379, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Accordingly, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *Beard v. Banks,* 548 U.S. 521, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006); *Bell v. Wolfish,* 441 U.S. 520, 527, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). With these considerations in mind the Court finds that neither preliminary injunctive relief nor a temporary restraining order is warranted in this case.

In opposition to Plaintiff's motion, Defendants submitted the Declaration of S. Heath, a Special Investigative Agent ("SIA") employed by the Bureau of Prisons, who conducted an investigation in Plaintiff's allegations of threats to his life by Defendant Edinger and other individuals. (Doc. No. 31, Ex. A at ¶ 1.) SIA Heath concluded that the allegations were without merit, and that Plaintiff was not at risk of being harmed by Defendant Edinger or other employees of USP–Lewisburg. (*Id.*) The Defendants also submitted the Declaration of J. Treibley, a correctional officer at USP–Lewisburg, who has access to inmates' records. (Doc. No. 31, Ex. B.) Officer Treibley is assigned to the same floor as Plaintiff and states that all inmates in the Special Management Unit are fed in their cells and that weekly records are kept with respect to whether an inmate accepts or refuses any of his three meals a day. (*Id.* at 3.) Records from April 7, 2013 through April 22, 2013 reveal that Plaintiff refused his breakfast meal from April 9–11 and April 14–15; he refused his supper meal on April 9 and April 13, 2013; and he accepted all of his other meals during that period of time. (*Id.*) Treibly further states that Plaintiff is able to access water in his current cell assignment through the running water that is accessible to the inmates by depressing a button in the sink. (*Id.*)

Defendants also submitted the Declaration of K. Pigos, Clinical Director of the medical department at USP–Lewisburg, who has access to inmate records. (Doc. No. 31,

Ex. C.) Pigos notes that Plaintiff's medical records reveal that since the time of Plaintiff's arrival at USPLewisburg on February 16, 2010, he has declared hunger strikes on four occasions. (*Id.*) Plaintiff declared the first strike on May 16, 2011 after he had missed twelve meals; he was medically assessed at the time and weighed 150*l*bs. (*Id.*) The strike ended on June 3, 2011 and no intravenous feedings occurred during this hunger strike. (*Id.* at ¶ 2) The second hunger strike was declared by Plaintiff on October 23, 2011 after he missed his ninth meal. (*Id.*) Plaintiff's weight was 137lbs, and the potential consequences of a hunger strike were explained to him. (*Id.*) On November 2, 2011, Plaintiff continued on his hunger strike and missed his 39th meal as of breakfast on said date. (*Id.*) His weight was 143lbs and intravenous fluids were administered to prevent dehydration. (*Id.*) On November 9, 2011, Plaintiff continued on his hunger strike. (*Id.*) It was noted that involuntary feeding was not clinically indicated at that time. (*Id.*) Plaintiff ended his hunger strike on November 14, 2011.(*Id.*)

**\*6** Medical records indicate that a third hunger strike was declared on December 11, 2011 after Plaintiff missed eleven meals. (Doc. 31, Ex. C, Pigos Decl. ¶ 4; Att. 8, Med. Record.) Plaintiff's weight was 135*l*bs and once again, the consequences of a hunger strike were explained to him. (*Id.*) Although the medical records do not indicate with certainty when this strike ended, the Chronic Care Clinic saw Plaintiff on December 23, 2011, and the record notes that he was feeling better and his appetite was good. (*Id.*) Plaintiff declared a fourth hunger strike on June 2, 2012 after he missed eight meals. (*Id.,* Ex. C ¶ 6; Att. 10.) The strike ended the following day. (*Id,* Att.11.) The Chronic Care Clinic saw Plaintiff again on June 22, 2012, and his weight was 161lbs. (*Id.*) His medical records further indicate that when the medical staff saw Plaintiff on April 23, 2013, Plaintiff indicated that he had just finished another hunger strike that had not been reported to anyone. (*Id.*) His weight at the time was 158lbs. (*Id.,* Ex. C, Att.13.)

Based on the foregoing, the Court finds that injunctive relief is not warranted with respect to Plaintiff's motion for a temporary restraining order. First, Plaintiff asks the Court to issue a restraining order against three BOP employees who are not parties to this action. Federal Rule of Civil Procedure 65 provides that a restraining order is binding only upon the parties to the action, their "officers, agents, servants, employees, and attorneys" and "other persons who are in active concert or participation" with them. Fed.R.Civ.P. 65(d)(2). "A non-party cannot be bound by the terms of

an injunction unless the non-party is found to be acting 'in active concert or participation' with the party against whom injunctive relief is sought." *Elliot v. Kiesewetter,* 98 F.3d 47, 56 (3d Cir.1996) (quoting Fed. R. Civ. Pro. 65). Plaintiff has not presented any evidence indicating that the non-parties named in his motion for injunctive relief are in any way in "active concert or participation" with the Defendants listed in the original complaint.

Additionally, Plaintiff seeks to obtain relief with respect to events that are totally unrelated to the events that serve as the basis of the underlying complaint in this action. *See Devose v. Herrington,* 42 F.3d 470, 471 (8th Cir.1994) (finding that a motion based on new assertions of mistreatment different from those raised in plaintiff's lawsuit cannot provide the basis for a preliminary injunction). Plaintiff's motion contains allegations which appear to have no connection to the allegations of his complaint. Even if the basis of the motion directly relates to the allegations in the complaint, Plaintiff fails to demonstrate that he is likely to prevail on the merits of his claims in light of the arguments set forth in Defendants' pending motion to dismiss. The only evidence Plaintiff submits in support of his motion is a copy of an Incident Report charging him with committing the prohibited acts of assaulting any person and refusing to obey an order. (Doc. No. 38–2.) If anything, this document undermines, rather than supports, Plaintiff's argument with respect to what took place on May 14, 2013.

**\*7** Further, Plaintiff has not made any showing that the denial of his motion would result in irreparable harm, particularly in light of the evidence submitted by Defendants. Plaintiff does not specify any injury that he is currently suffering, and he does not indicate whether he has utilized the BOP's grievance procedures. More importantly, the Special Investigative Agent's investigation conducted with respect to Plaintiff's allegations revealed that he was not in any danger. To the extent that Plaintiff claims that water and food are being withheld from him, the records submitted by Defendants reveal that Plaintiff has running water at his disposal in his cell, and that food is provided to him three times per day. The records further document that Plaintiff has declared several hunger strikes and that he has refused meals provided to him on numerous occasions. Plaintiff offers nothing to dispute the evidence submitted by the Defendants except the unsupported, conclusory statements that the Special Investigative Agent's investigation was incomplete or that persons submitting declarations had no knowledge of the events. Finally, Plaintiff can pursue relief in a new lawsuit with respect to any new claims. For these reasons, the first motion for injunctive relief will be denied.

### C. Motion to Deny or Order a Continuance

In his motion requesting that the Court either deny or grant a continuance of Defendants' motions to dismiss and for summary judgment, Plaintiff claims that Defendants have not responded to his requests for the production of documents. (Doc. No. 44.) Defendants have not submitted a motion to stay discovery, but they have filed a "Brief in Opposition to Plaintiff's First Request for Production of Documents." (Doc. No. 43.) For the reasons that follow, Plaintiff's motion will be denied.

The Court has broad discretion to stay discovery pending a dispositive motion. *Panola Land Buyers Ass'n v. Shuman,* 762 F.2d 1550, 1560 (11th Cir.1985). A stay is proper when the likelihood that a motion to dismiss may result in a narrowing or outright elimination of discovery outweighs any likely harm from the delay. *Nineteenth St. Baptist Church v. St. Peters Episcopal Church,* 190 F.R.D. 345, 349 (E.D.Pa.2000). In *Mann v. Brenner,* 375 F.App'x 232, 239–40 (3d Cir.2010), the Third Circuit stated that staying discovery while evaluating a motion to dismiss may be appropriate in certain circumstances. For instance, staying discovery would be appropriate while evaluating a motion dismiss where, if the motion to dismiss is granted, discovery would be futile. *Id.* The Third Circuit further stated that:

> A Motion to Dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and therefore need not be decided on its face without extensive factual development. *See Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (stating the purpose of Rule 12(b)(6) is to "streamline [ ] litigation by dispensing with needless discovery and factfinding); *Chudasama v. Mazda Motor Corp .,* 12 F.3d 1353, 1367 (11th Cir.1997) ("A motion to dismiss based on failure to state a claim for relief should ... be resolved before discovery begins."); *Rutman Wine Co. V.E. & J. Gallo Winery,* 829 F.2d 729, 738 (9th Cir.1987) (stating that the idea that discovery should be permitted before deciding a motion to dismiss "is unsupported and defied common sense [because] the purpose of Fed.R.Civ.P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.").

**\*8** *Mann,* 375 F.App'x at 239.

In Defendants' motions to dismiss or for summary judgment, they seek to dismiss the majority of Plaintiff's claims on the basis of failure to exhaust administrative remedies. With respect to any remaining claims, they seek dismissal due to Plaintiff's failure to allege personal involvement or failure to set forth a viable violation of a constitutional right. Plaintiff need not conduct discovery in order to respond to these arguments. If the Court finds Defendants arguments meritorious, then discovery would be futile. To the extent any of the arguments set forth in support of dismissal of the complaint are found to be without merit, the issues would be narrowed, the surviving claims would proceed, and a discovery period would be imposed. As such, Plaintiff's motion to deny or continue Defendants' motions to dismiss and for summary judgment is denied, and Plaintiff will be afforded twenty-one days from the date of this order within which to respond to Defendants' motion. An appropriate order follows.

*ORDER*

**AND NOW,** this 27th day of September, 2013, in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's motion to amend the complaint (Doc. No. 20) is **denied.**

2. Plaintiff's motions for injunctive relief (Docs. No. 29, 37) are **denied.**

3. Plaintiff's motion to deny or to continue Defendants' motion to dismiss and for summary judgment (Doc. No. 44) is **denied.**

4. Within twenty-one (21) days from the date of this order, Plaintiff shall file his opposition to Defendants' motion to dismiss and for summary judgment.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 5438297

---

## Footnotes

1    *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 288 (1971).

2    Federal Tort Claims Act, 28 U.S.C. § 2671.

3    In both the original and proposed amended complaints, Plaintiff names as a defendant Officer Spade. In Defendants' motions to dismiss and for summary judgment, Defendants refer to this defendant as Officer Shade. Plaintiff contends that there are two employees at the prison-Officer Spade and Officer Shade. He states that he names and refers to Spade as a defendant in the complaint, and only mentions Shade, who is not a named defendant in this action. (Doc. No. 21.)

4    In the proposed amended complaint, Plaintiff seeks the same amount of compensatory damages, plus one hundred thousand dollars in punitive damages, restoration of "all of Plaintiff invested and non-invested good time," and he requests "immediately arrange for medical treatment for Plaintiff." (Doc. No. 20–1 at 3.)

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.