**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| |
|---|
| ASHER BRONSTIN, individually and on behalf of all other similarly situated, |
| Plaintiff, |
| v. |
| VIASAT, INC., |
| Defendant. |

Civil Action No. 1:25-cv-00927-KMN

(Hon. Keli M. Neary)

### BRIEF IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR PROTECTIVE ORDER TO BIFURCATE DISCOVERY

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..............................................................................................1

II. ARGUMENT....................................................................................................2

    A.  Courts Have Broad Discretion to Control Their Dockets and to Order Bifurcated Discovery for "Good Cause" Under Rule 26(c)..............................................................................................................2

    B.  Courts Routinely Bifurcate Discovery In Similar Cases, Serving the Goals of Justice, Expediency, and Judicial and Party Economy.......................................................................................................3

    C.  Plaintiff's Individual Claims Present Narrow Case- and Class-Dispositive Threshold Issues, Warranting Bifurcated Discovery........7

    D.  There Is Minimal (If Any) Risk of Overlap Between Discovery Into Plaintiff's Individual Claims and Class Discovery.....................10

    E.  Bifurcated Discovery Is and Would Not Be Prejudicial to Anyone .........................................................................................................12

    F.  Viasat Proposes a 90- to 120-Day "Phase 1" For Initial Discovery Focused on Plaintiff's Individual TCPA Claim ...............14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adam v. CHW Grp., Inc.*,
2021 WL 7285904 (N.D. Iowa June 29, 2021) ...................................................10

*Akselrod v. MarketPro Homebuyers LLC*,
2021 WL 100666 (D. Md. Jan. 12, 2021)............................................6, 7, 14, 15

*Babare v. Sigue Corp.*,
2020 WL 8617424 (W.D. Wash. Sept. 30, 2020) .............................................13

*Bank v. City of Menasha*,
627 F.3d 261 (7th Cir. 2010) .............................................................................13

*Cameron v. CHW Group, Inc.*,
2025 WL 2336513 (D. Utah Aug. 13, 2025)..................................................passim

*Canady v. Bridgecrest Acceptance Corp.*,
2020 WL 5249263 (D. Ariz. Sept. 3, 2020) ......................................................12

*Chenault v. Beiersdorf, Inc.*,
2020 WL 5016795 (S.D. Ohio, Aug. 24, 2020) ................................................11

*Clinton v. Jones*,
520 U.S. 681 (1997)...............................................................................................3

*Fania v. Kin Ins., Inc.*,
2024 WL 2607303 (E.D. Mich. May 24, 2024) ...........................................7, 15

*Guido v. Travelers Cos. Inc.*,
2023 WL 5658920 (E.D. Ky. Aug. 31, 2023) ......................................................3

*Harman v. Datte*,
427 F. App'x 240 (3d Cir. 2011)...........................................................................3

*Harris v. Shore Funding Sols. Inc.*,
2023 WL 3440077 (E.D.N.Y. Apr. 21, 2023) ............................................10, 13

*Health & Res. Ctr., Ltd. v. Promologics, Inc.*,
2018 WL 3474444 (N.D. Ill. July 19, 2018) ......................................................3

*Katz v. Liberty Power Corp., LLC*,
2019 WL 957129 (D. Mass. Feb. 27, 2019).......................................................15

*Kemen v. Cincinnati Bell Tel. Co. LLC*,
2024 WL 3633333 (S.D. Ohio Aug. 2, 2024) ...............................................4, 11

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Klassen v. SolidQuote LLC*,
  2023 WL 5497865 (D. Colo. Aug. 23, 2023).....................................12

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)............................................................3

*Leschinsky v. Inter-Cont'l Hotels Corp.*,
  2015 WL 6150888 (M.D. Fla. Oct. 15, 2015)............................6, 9, 15

*Loreaux v. ACB Receivables Mgmt., Inc.*,
  2015 WL 5032052 ...........................................................7, 14

*Mantha v. QuoteWizard.com, LLC*,
  2020 WL 4369701 (D. Mass. July 30, 2020) ...................................15

*Moore v. Demand Science Grp, LLC*,
  2024 WL 175743 (N.D. Ill. Jan. 4, 2024)................................passim

*Newell v. Aliera Healthcare, Inc.*,
  2020 WL 13568762 (N.D. Ga. Apr. 6, 2020).........................6, 7, 9, 13

*Osidi v. Assurance IQ, LLC*,
  2022 WL 623733 (D. Mass. Mar. 3, 2022) ....................................7, 9

*Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*,
  2014 WL 413534 (D.N.J. Feb. 4, 2014) .........................................6

*Raimo v. Washington Univ. in St. Louis*,
  2021 WL 243559 (E.D. Mo. Jan. 25, 2021) .....................................12

*Sapan v. Fin. of Am. Reverse LLC*,
  2025 WL 1932935 (C.D. Cal. July 14, 2025)..............................passim

*Scoma Chiropractic, P.A. v. Jackson Hewitt Inc.*,
  2017 WL 2733758 (M.D. Fla. June 26, 2017) ....................................3

*West v. Shultz*,
  2013 WL 5438297 (M.D. Pa. Sept. 27, 2013)....................................3

## STATUTES

## RULES

Fed. R. Civ. P. 1 ........................................................2, 10, 11

Fed. R. Civ. P. 12(b)(1)....................................................1

Fed. R. Civ. P. 23 ........................................................10

## TABLE OF AUTHORITIES
### (continued)

**Page**

Fed. R. Civ. P. 26(c)..........................................................................................1, 2, 3

Fed. R. Civ. P. 26(c)(1)...........................................................................................3

Pursuant to Fed. R. Civ. P. 26(c) and the Court's August 19, 2025 order (Dkt. 22), Defendant Viasat Inc. ("Viasat") hereby renews its motion for a protective order, and requests that the Court enter an order bifurcating discovery between the merits of Plaintiff's individual claim and the putative class members' claims.

## I.    <u>INTRODUCTION</u>

This putative class action is a <u>prime</u> candidate for bifurcated discovery, where the parties would initially focus discovery for a short period (*e.g.*, 90 to 120 days) on issues relevant to the merits of Plaintiff's individual claims against Viasat under the Telephone Consumer Protection Act ("TCPA"), before conducting broader and more costly class discovery if necessary. As explained in Viasat's pending Motion to Dismiss (*see* Dkt. 23 and 24, the "Motion") the First Amended Complaint (*see* Dkt. 21, "FAC"), Plaintiff's individual claims have significant factual flaws that should lead to the early resolution of this matter. Most notably, extrinsic evidence submitted in support of Viasat's Rule 12(b)(1) factual standing challenge—including but not limited to records obtained from third parties (T-Mobile and IP Horizon) relating to Plaintiff's cell and the alleged callers' phone numbers—not only confirms that Viasat has no connection with either of the alleged caller's phone numbers, but also shows Plaintiff did not actually receive the two subject calls on his cell phone. *See* Dkt. 23-1 (Henderson Declaration) and Dkt. 23-2 through Dkt. 23-8 (Heeringa Declaration and Exhibits A-F thereto.). In other words, this evidence indicates ***Plaintiff did not***

***receive either call alleged in the FAC, let alone <u>any</u> call from or on behalf of Viasat***
and, thus, that he lacks Article III standing to pursue this case. *See* Dkt. 24 at 1-2, 4-
5, 7-10 (citing *Baccari*). If borne out further during the initial individual discovery
phase (as it will be), it would be the death knell to this whole case, as Plaintiff would
obviously need to have received a call for which Viasat could be deemed legally
responsible to even have a TCPA claim in the first instance. No calls, no TCPA claim.

At bottom, it is readily apparent that bifurcated discovery and related summary
judgment briefing to first resolve dispositive individual issues would be much more
efficient here, conserve judicial and party resources, best promote the edicts of Rule
1 of the Federal Rules of Civil Procedure (*i.e.*, "the just, speedy, and inexpensive
determination of every action"), and potentially lead to a swift resolution of this case
without prejudicing either party. As demonstrated below, many federal district courts
have ordered bifurcated discovery in similar putative TCPA class action cases in such
fashion for these reasons, as doing so benefits all concerned and is not prejudicial to
anyone. This Court should do the same and order bifurcated discovery in the present
case, per the schedule Viasat has proposed below. *See* Section II.F., *infra*.

## II.    <u>ARGUMENT</u>

### A.    **Courts Have Broad Discretion to Control Their Dockets and to Order Bifurcated Discovery for "Good Cause" Under Rule 26(c).**

This Court has broad discretion to control its own docket, including to enter
protective orders limiting or governing the timing of discovery (including bifurcation

of discovery) under Rule 26(c) for "good cause." *See, e.g., Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936); *Harman v. Datte*, 427 F. App'x 240, 243 (3d Cir. 2011); *West v. Shultz*, 2013 WL 5438297, at *7 (M.D. Pa. Sept. 27, 2013); *see also* Fed. R. Civ. P. 26(c)(1) (courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). Courts have found that exercising this broad discretion to bifurcate discovery is especially appropriate in putative class action cases where, as here, (i) "some limited, first-stage [discovery] could stave off substantial wasted efforts" (*Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*, 2018 WL 3474444, at *6 (N.D. Ill. July 19, 2018)), and/or (ii) bifurcation "serves judicial economy and does not unfairly prejudice any party" (*Guido v. Travelers Cos. Inc.*, 2023 WL 5658920, at *1 (E.D. Ky. Aug. 31, 2023)). *See also Scoma Chiropractic, P.A. v. Jackson Hewitt Inc.*, 2017 WL 2733758, at *1–3 (M.D. Fla. June 26, 2017) ("Within a district court's discretion in managing its cases in order to ensure that the cases move to a timely and orderly conclusion falls the discretion to bifurcate discovery.") (collecting cases). This is especially true in TCPA class actions.

**B.  Courts Routinely Bifurcate Discovery In Similar Cases, Serving the Goals of Justice, Expediency, and Judicial and Party Economy.**

In fact, federal district courts across the country have frequently bifurcated discovery in putative TCPA class actions like this one, focusing discovery first on the narrow issues relevant to named plaintiff's individual claims followed by summary

judgment briefing, recognizing the many benefits to the parties and courts in doing so.

For example, in *Kemen v. Cincinnati Bell Tel. Co. LLC*, 2024 WL 3633333 (S.D. Ohio Aug. 2, 2024), the court entered a bifurcated discovery schedule in putative class action involving alleged violations of certain of the TCPA's DNC provisions. In doing so, the court noted there were various narrow case-dispositive issues relating to the merits of the plaintiff's individual claim there that could be explored efficiently through bifurcated discovery, including *inter alia* the plaintiff's Article III standing and "whether she is a residential subscriber within the meaning of the TCPA's regulations." *Id*. at *2. The court noted that these threshold issues "require little discovery and could be dispositive of [plaintiff's] individual claim" and, thus, held that "bifurcating discovery has the potential to promote the 'speedy' and 'efficient' resolution" of the entire case. *Id*. at *3 (citation omitted). The court also noted that, "[o]n the other side of the scale, bifurcation will require [plaintiff] to produce only a comparatively modest amount of discovery, much of which (a) is likely already in her possession or easily obtainable and (b) she would need to produce in any event even absent bifurcation" and further noted that "a 90-day discovery period will not substantially delay this case" and would "not unduly prejudice" the plaintiff. *Id*.

In *Moore v. Demand Science Grp, LLC*, 2024 WL 175743 (N.D. Ill. Jan. 4, 2024), the court bifurcated discovery in putative TCPA class action involving some of the same counsel and a similar complaint alleging violations of the TCPA's DNC

provisions. The court expressed "concern" about possible prejudice to the defendant and the inefficiency in conducting "wholly unnecessary discovery" (*i.e.,* class discovery), should targeted individual discovery show plaintiff had no viable claim, lacked standing, or would be an inappropriate class representative. *Id*. at \*1. Thus, the court granted the motion to bifurcate, finding "it is more efficient to proceed with the limited and targeted discovery as proposed by Defendant given that the overlap between the proposed initial discovery and merits discovery is minimal." *Id*.

Similarly, in *Sapan v. Fin. of Am. Reverse LLC*, 2025 WL 1932935 (C.D. Cal. July 14, 2025), the court granted a motion to bifurcate in a DNC case involving a serial litigant (like Plaintiff is here), finding bifurcation more efficient. The *Sapan* court reasoned, *inter alia,* (i) "establishing whether Plaintiff is a typical and adequate class representative as early as possible could help this case move more expeditiously", and (ii) the case at bar was not like those cases where courts "declined bifurcation where the purported threshold questions overlap with class discovery." *Id*. at \*1-3.

The recent ruling in *Cameron v. CHW Group, Inc.,* 2025 WL 2336513 (D. Utah Aug. 13, 2025), is also instructive. There, the court likewise noted that TCPA class actions, like this case, "present a unique opportunity that warrants bifurcated discovery due to th[e] cost savings" that can be realized. *Id*. at \*3. In granting the defendant's bifurcation motion, the *Cameron* court noted that individualized issues as to the merits of the named plaintiff's claims (which are also at play in this case)—

including "whether Plaintiff consented to the calls, whether his particular number is registered on the National DNC Registry, whether Plaintiff is a 'residential telephone subscriber', and whether Plaintiff received telephone solicitations that fall within the TCPA"—are "narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery" through a bifurcated discovery schedule. *Id.*

Many other courts (including in this Circuit) have reached the same sound conclusions, and thus have recognized the efficiencies to be gained and resources to be saved by all concerned in bifurcating discovery in TCPA class actions. *See, e.g., Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, 2014 WL 413534, at *5 (D.N.J. Feb. 4, 2014) (bifurcating discovery in TCPA class action case where it would "allow the Court to address a narrow, potentially dispositive issue in a timely and cost effective manner with no significant prejudice to Plaintiff"); *Newell v. Aliera Healthcare, Inc.,* 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020) (ruling similarly); *Akselrod v. MarketPro Homebuyers LLC*, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021) (bifurcating discovery in TCPA class action case, noting that "[l]imited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive."); *Leschinsky v. Inter-Cont'l Hotels Corp.,* 2015 WL 6150888, at *1 (M.D. Fla. Oct. 15, 2015) (bifurcating discovery in TCPA class action where, as here, "Defendants ha[d] presented evidence suggesting that [plaintiff's] TCPA claims are without merit as a

matter of law" and, thus, finding that "Defendants' arguments in favor of a bifurcated discovery process [we]re well-taken").[1] All this rings particularly true in this case.

In sum, as these courts and many others have found, there are often narrow case-dispositive issues in TCPA class cases unique to the named plaintiff—for example, if the plaintiff has standing or an actionable TCPA claim—that can be efficiently and quickly resolved through early focused individual discovery. *See, e.g., Osidi v. Assurance IQ, LLC,* 2022 WL 623733, at *2 (D. Mass. Mar. 3, 2022) (bifurcating discovery in TCPA case, recognizing that broad class discovery is not relevant or "necessary to address certain issues that may be dispositive of Plaintiff's individual claims or [his] ability to bring the asserted class claims."); *Newell*, 2020 WL 13568762, at *3 (ruling similarly); *Fania v. Kin Ins., Inc.*, 2024 WL 2607303, at *2 (E.D. Mich. May 24, 2024) (same); *Akselrod*, 2021 WL 100666, at *2 (bifurcating discovery in TCPA class action after determining there were narrow issues of liability unique to the plaintiff that could be addressed early in the case, without prejudicing anyone). Applying these authorities shows bifurcated discovery is appropriate here.

### C. Plaintiff's Individual Claims Present Narrow Case- and Class-Dispositive Threshold Issues, Warranting Bifurcated Discovery.

Like in the many well-reasoned applicable decisions above, Plaintiff's

---

[1] *See also Loreaux v. ACB Receivables Mgmt., Inc.*, 2015 WL 5032052, at *4 D.N.J. Aug. 25, 2015) (bifurcating discovery in non-TCPA case where, as here, "bifurcating the two issues ha[d] the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery").

individual TCPA claim against Viasat here presents narrow case- and class-dispositive issues that can be explored and resolved efficiently at the outset of the case, without the need for costly class discovery, demonstrating bifurcated discovery would be beneficial for all concerned. As discussed at length in the Motion and above, the evidence adduced relating to Plaintiff's individual claim in discovery thus far shows he lacks Article III standing. *See* Dkt. 24 at 1-2, 4-5, 7-10; Dkts. 23-1 to 23-8.

More specifically, the evidence submitted with the Motion shows that Plaintiff did <u>not</u> receive <u>any</u> calls from or on behalf of Viasat, as alleged in the FAC. *See* Dkt. 23-1, ¶¶ 8-14. This is because, *inter alia,* Viasat (i) does <u>not</u> own, use, or have any connection with the numbers allegedly used to call him, (ii) has <u>no</u> records of any calls being made to Plaintiff's alleged number on its behalf, (iii) does <u>not</u> make any outbound marketing calls at all (and in fact does not have a telemarketing program), and (iv) even contractually <u>forbids</u> others from making such calls on its behalf. *Id*. Moreover, records produced in discovery by third parties—the carrier that Plaintiff associates with the callers' phone numbers (IP Horizon) and the carrier for Plaintiff's alleged cell number (T-Mobile)— show, *inter alia*, (i) Viasat does not own or use the two numbers purportedly used to call Plaintiff ((931) 413-8533 and (530) 235-8385), and (ii) those numbers were not used to call Plaintiff's alleged cell number. *See* Dkts. 23-1 to 23-8. In short, this evidence indicates that the two alleged calls in the FAC <u>simply did not occur</u>. This alone justifies bifurcated discovery here, as it shows

Plaintiff's claims are without merit. *See, e.g., Leschinsky,* 2015 WL 6150888, at *1 (bifurcating discovery in TCPA case where "Defendants ha[d] presented evidence suggesting that [plaintiff's] TCPA claims are without merit as a matter of law").

If the additional targeted individual discovery Viasat proposes conducting further confirms that Plaintiff does not have a valid claim or lacks standing, despite what he alleges, this entire case will be swiftly resolved early; and if his individual claims fail, he obviously cannot represent the proposed class. This is why courts often grant bifurcated discovery in TCPA cases. *See, e.g.*, *Osidi*, 2022 WL 623733, at *2; *Newell*, 2020 WL 13568762, at *3; *Cameron,* 2025 WL 2336513, at *3.

Such targeted discovery the parties could explore during the initial bifurcated phase here would include, for example, whether Plaintiff has standing, who physically placed the subject calls (which is relevant to direct or vicarious liability), whether Plaintiff received an actionable "telephone solicitation" or is a "residential" subscriber within the meaning of the TCPA, and/or would be an adequate class representative. These narrow threshold individual issues, as to which no class discovery is needed to resolve, are prime candidates for bifurcated discovery, as several other courts have recognized. *See Cameron,* 2025 WL 2336513, at *3; *Sapan*, 2025 WL 1932935, at *1-3; *Moore*, 2024 WL 175743, at *1. This Court should rule similarly.

In sum, resolution of these (and other) narrow questions surrounding Plaintiff's individual TCPA issues, as enabled by an appropriate bifurcated discovery schedule,

could dispose of this entire case more quickly, efficiently, and still at a fairly early stage—all without the need for additional expense or burden on the parties or this Court. All this shows why bifurcating discovery is appropriate here, as many other federal district courts have found, as shown above; and it is entirely consistent with the bedrock principles of the Federal Rules of Civil Procedure to do so. *See* Fed. R. Civ. P. 1 ("[These rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."); *see also Cameron,* 2025 WL 2336513, at *3 (noting that Rule 23's mandate that class certification be decided at an "early practicable time" necessarily "must be balanced with Rule 1's requirements" and "limited discovery that may ultimately preclude costly class discovery serves Rule 1's purposes"); *Adam v. CHW Grp., Inc.*, 2021 WL 7285904, at *3 (N.D. Iowa June 29, 2021) (noting that bifurcated discovery in a TCPA case "best implement[s]" the goals of Rule 1).

## D.    There Is Minimal (If Any) Risk of Overlap Between Discovery Into Plaintiff's Individual Claims and Class Discovery.

Bifurcation is also appropriate because there is minimal likelihood of overlap between discovery into Plaintiff's individual claims and class discovery; and even then, any slight overlap does not justify denying this Motion or outweigh the inherent prejudice Viasat would suffer by conducting broader, more costly, and potentially wasteful class discovery at this time. *See, e.g., Harris v. Shore Funding Sols. Inc.,* 2023 WL 3440077, at *5 (E.D.N.Y. Apr. 21, 2023) (finding "good cause" for "limited

10

[bifurcated] discovery related to Plaintiff's individual [TCPA] claim" because "such discovery would not result in duplication of efforts or substantially overlap with class discovery" and would better serve the purposes of Fed. R. Civ. P. 1); *Sapan*, 2025 WL 1932935, at *2 (rejecting plaintiff's "overlap" argument in DNC case); *Moore*, 2024 WL 175743, at *1 (same); *Kemen*, 2024 WL 3633333, at *3 (same, citing *Chenault v. Beiersdorf, Inc.*, 2020 WL 5016795, at *3 (S.D. Ohio, Aug. 24, 2020) (ruling in non-TCPA case "[t]hat class and merits-based discovery will … inevitably be intertwined to some extent does not necessitate denying a motion to bifurcate…")).

As discussed above, Viasat has identified several narrow threshold issues, each of which have the potential to bar Plaintiff's individual claims and thus this entire action—*e.g.*, whether he has standing, Viasat's direct or vicarious liability, whether he received an actionable "telephone solicitation", etc. Discovery on these issues is easily ascertainable, including via Plaintiff's own records and testimony, and/or additional records and testimony of third parties in specific reference to Plaintiff and/or his phone number (*e.g.*, from his phone or internet carriers or other relevant third parties). *See also Kemen*, 2024 WL 3633333, at *3 (noting "bifurcation will require [plaintiff] to produce only a comparatively modest amount of discovery, much of which (a) is likely already in her possession or easily obtainable and (b) she would need to produce in any event even absent bifurcation" and thus that bifurcation "will not substantially delay this case"). In short, these are narrow questions unique to

Plaintiff, and they do not bear on the putative class. As such, there is little, if any, risk of individual and class discovery "overlap" in this case.[2]

###   E.    Bifurcated Discovery Is and Would Not Be Prejudicial to Anyone.

Plaintiff and the putative class members will suffer no prejudice if the Court bifurcates discovery here. *See, e.g., Sapan,* 2025 WL 1932935, at *3 (finding that efficiency and lack of prejudice to the plaintiff weighed heavily in favor bifurcation).

Viasat anticipates Plaintiff may argue otherwise, and specifically cite the risk of losing evidence with the passage of time. Such an argument would be specious. As an initial matter, Viasat is under a preservation obligation which it takes seriously. *See Canady v. Bridgecrest Acceptance Corp.*, 2020 WL 5249263, at *4 (D. Ariz. Sept. 3, 2020) (noting the legal obligation to preserve evidence reduces the risk of evidence being destroyed, lost, corrupted, or forgotten); *Raimo v. Washington Univ. in St. Louis,* 2021 WL 243559, at *1 (E.D. Mo. Jan. 25, 2021) ("The risk of lost evidence or diminished witness recall is … relatively low in a case based on events that took place so recently."). And the "delay" in question (90 to 120 days) is sufficiently short to itself ameliorate any risk of evidence loss. What is more, even hypothetical

---

[2] Nor is there any significant risk that the Court will have to resolve discovery disputes between the parties on the differences between "merits" discovery and "class" discovery. *See Cameron,* 2025 WL 2336513, at *3 ("[T]he court is persuaded that counsel here are of a sophisticated enough nature to not disintegrate into childish 'petty discovery fights over what constitutes merits discovery versus class discovery.' Counsel in the authority relied on by Defendant were able to manage this divide and the court is confident counsel can do so here.") (quoting *Klassen v. SolidQuote LLC*, 2023 WL 5497865, at *3 (D. Colo. Aug. 23, 2023)).

"prejudice to Plaintiff [because of bifurcated discovery] is significantly outweighed by the potential burdens and costs associated with unnecessary class action discovery" that Viasat will face should individualized discovery further prove Plaintiff has no valid claim or lacks standing. *Newell*, 2020 WL 13568762, at *3. *See also id.* ("While Plaintiff raises concern over delay and the possibility that evidence will be lost or destroyed, these concerns are not overly persuasive. As parties to this lawsuit, both [defendants] are on notice to preserve evidence pertaining to this matter."); *Harris*, 2023 WL 3440077, at *5 (ordering bifurcation and rejecting plaintiff's similar prejudice argument); *Sapan*, 2025 WL 1932935, at *2 (same, DNC case); *Cameron*, 2025 WL 2336513, at *3 (same). At bottom, Plaintiff will suffer no harm from a short "delay" of class discovery focus first on case-dispositive individual discovery.

In contrast, moving directly to broader discovery in this case will inherently prejudice Viasat. As one court aptly noted in a putative TCPA class action, "[i]t is well-recognized that discovery in class actions is expensive and asymmetric, with ***defendants bearing most of the burdens***." *Babare v. Sigue Corp.*, 2020 WL 8617424, at *2 (W.D. Wash. Sept. 30, 2020) (emphasis added). *See also Sapan*, 2025 WL 1932935, at *2 (citing *Barbare*). This is presumably why TCPA plaintiffs seemingly always oppose bifurcated discovery—not because it is prejudicial to them or inefficient, but because of a desire to leverage the threat of costly class discovery for settlement purposes. *See Bank v. City of Menasha*, 627 F.3d 261, 266 (7th Cir. 2010)

(noting plaintiffs can "us[e] discovery to impose asymmetric costs on Defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit"); *Loreaux*, 2015 WL 5032052, at *3 (noting "substantial costs and burdens associated with whole scale class action discovery"). This makes bifurcated discovery in TCPA class cases all the more appropriate, as courts have found. *See Akselrod*, 2021 WL 100666, at *2 (bifurcating discovery, noting TCPA class discovery "can be particularly resource intensive"). This Court should hold similarly in the present case.

Here, Plaintiff seeks to represent two nationwide proposed classes (*see* Dkt. 21, ¶ 51), which undoubtedly increases the scope of discovery and thus will lead to potentially unnecessary costs and wasted party resources. Forcing Viasat to engage in broad class discovery at this time (especially with Plaintiff's standing in serious doubt) would be and is inherently and highly prejudicial to Viasat, because that discovery is likely to be rendered moot if individual discovery disposes of Plaintiff's individual claims, either on the merits or standing grounds. The validity of his claims can be determined and confirmed quickly, efficiently, and cost-effectively by focusing the short initial discovery phase on the merits of Plaintiff's individual TCPA claims.

### F.    Viasat Proposes a 90- to 120-Day "Phase 1" For Initial Discovery Focused on Plaintiff's Individual TCPA Claim.

Consistent with the foregoing well-reasoned authorities, Viasat proposes that the Court enter the following bifurcated discovery schedule in this case:

14

- Discovery as to the merits of Plaintiff's individual claims to proceed for a period of ninety (90) or one hundred twenty (120) days after entry of the Court's scheduling order (no class discovery would be allowed);

- Opening summary judgment motions as to the merits of Plaintiff's individual claims be due no later than thirty (30) days thereafter (though summary judgment motions may be filed at any point prior to this deadline);

- Oppositions to summary judgment due thirty (30) days after service of opening motions; and

- Reply briefs in support of summary judgment due fifteen (15) days after service of oppositions.

Viasat further proposes that, if necessary, the Court set a case management conference for either after the initial discovery period or after the Court has ruled on summary judgment motions relating to Plaintiff's individual TCPA claims, and set a schedule for class discovery and all other case management deadlines at that time.

Courts have often entered similar bifurcated schedules in TCPA class actions (*e.g.,* 90 to 120 days of individual discovery followed by individual summary judgment briefing) for efficiency purposes. *See, e.g., Sapan*, 2025 WL 1932935, at *1-3; *Moore,* 2024 WL 175743, at *1; *Fania,* 2024 WL 2607303, at *4; *Leschinsky,* 2015 WL 6150888, at *1; *Akselrod,* 2021 WL 100666, at *2; *Katz v. Liberty Power Corp., LLC*, 2019 WL 957129, at *2 (D. Mass. Feb. 27, 2019); *Mantha v. QuoteWizard.com, LLC*, 2020 WL 4369701, at *3 (D. Mass. July 30, 2020). This Court follow these authorities here and enter the proposed schedule above, or a substantially similar bifurcated schedule, for the sake of judicial and party economy.

15

Dated: September 16, 2025                Respectfully submitted,

                                        By: */s/ A. Paul Heeringa*

                                        JOHN W. MCGUINNESS
                                        (*Pro Hac Vice* to be requested)
                                        A. PAUL HEERINGA
                                        (Admitted *Pro Hac Vice*)
                                        MANATT, PHELPS & PHILLIP, LLP
                                        1050 Connecticut Avenue, NW, Suite 600
                                        Washington, D.C. 20036
                                        Telephone: 202-585-6500
                                        jmcguinness@manatt.com
                                        pheeringa@manatt.com

                                        FREDERICK P. SANTARELLI (PA 53901)
                                        STEVEN C. TOLLIVER, JR. (PA 327165)
                                        ELLIOTT GREENLEAF, P.C.
                                        Union Meeting Corporate Center V
                                        925 Harvest Drive, Suite 300
                                        Blue Bell, PA 19422
                                        (215) 977-1000 (phone)
                                        FPSantarelli@elliottgreenleaf.com
                                        sct@elliottgreenleaf.com

                                        *Counsel for Defendant Viasat, Inc.*

16

## LOCAL RULE 7.1 CERTIFICATE

The undersigned hereby certifies that Defendant's counsel conferred with Plaintiff's counsel on the foregoing Motion on August 26, 2025 via email, and Plaintiff's counsel indicated in writing Plaintiff does not concur with the relief sought.

Dated: September 16, 2025                    */s/ A. Paul Heeringa*
                                             A. PAUL HEERINGA

## CERTIFICATE OF COMPLIANCE WITH LR 7.8

I hereby certify that, pursuant to M.D. Pa. Local Rule 7.8(b)(2), this Brief complies with the word-count limitation of Local Rule 7.8, as the Brief contains **3,977 words** (including headings and footnotes but not including the cover page, tables, signature block, or certificates) in 14-point Times New Roman font. This calculation was provided by the word count feature in Microsoft Word.

Dated: September 16, 2025                    */s/ A. Paul Heeringa*
                                             A. PAUL HEERINGA

## CERTIFICATE OF SERVICE

The undersigned certifies that I am causing the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice constituting service of the filed document upon all counsel of record.

Dated: September 16, 2025                    */s/ A. Paul Heeringa*
                                             A. PAUL HEERINGA

17