# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**ASHER BRONSTIN,** individually and on behalf of all others similarly situated,

    *Plaintiff,*

*v.*

**VIASAT INC.**

    *Defendant.*

Case No.
1:25−CV−00927−KMN

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

i

I.    CONTENTS

**II.    Introduction** ................................................................................ ii

**III.    Factual Background** ....................................................................2

**IV.    Legal Standard** ...........................................................................3

**V.    Argument** ....................................................................................4

    A.    ViaSat's Rule 12(b)(1) attack fails because the jurisdictional facts are intertwined with the merits. ........................................................................4

    B.    Plaintiff adequately pleads direct TCPA liability. ........................................13

    C.    Dismissal must not be with prejudice. ........................................................20

**VI.    Conclusion** ................................................................................21

## Table of Authorities

**Cases**

*Aaronson v. CHW Grp., Inc.*, No. 1:18-CV-1533, 2019 WL 8953349 (E.D. Va. Apr. 15, 2019) .......................................... 16

*Abramson v. AP Gas & Elec. (PA), LLC*, No. CV 22-1299, 2023 WL 2714340 (W.D. Pa. Mar. 30, 2023) .......................................... 18

*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) .......................................... 1

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................... 4

*Atkinson v. Choice Home Warranty*, No. 2:22-cv04464, 2023 WL 166168 (D.N.J. Jan. 11, 2023) .......................................... 18

*Baccari v. Carguard Admin., Inc.*, No. 22-CV-1952, 2022 WL 3213839 (E.D. Pa. Aug. 8, 2022) .......................................... 10–11

*Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-CV-03309-JD, 2022 WL 867256 (N.D. Cal. Mar. 23, 2022) .......................................... 14

*Callier v. Unified Health, LLC*, No. EP-23-CV-375-KC, 2024 WL 3418778 (W.D. Tex. July 15, 2024) …..................................... 9

*Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2021 WL 1375837 (N.D. Cal. Apr. 12, 2021) …..................................... 14

*Clough v. Highway Auto. Pros LLC*, No. SACV2300107CJCJDEX, 2023 WL 4291826 (C.D. Cal. May 23, 2023) …..................................... 9

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) …..................................... 4

*Cunningham v. Wallace & Graham*, No. 1:24-CV-00221, 2024 WL 4826798 (M.D.N.C. Nov. 19, 2024) …..................................... 14

*Davis v. Reliance First Cap., LLC*, No. 7:22-CV-00018, 2023 WL 1982354 (E.D.N.C. Feb. 13, 2023) …..................................... 18

*Davis v. Wells Fargo*, 824 F.3d 333 (3d Cir. 2016) …..................................... 1, 6

*Direct Building Supplies*, No. CV 20-3583, 2021 WL 4623275 (E.D. Pa. Oct. 7, 2021) …..................................... 15

*Doyle v. GoHealth, LLC*, No. CV 22-04291, 2023 WL 3984951 (D.N.J. Mar. 30, 2023) …..................................... 16

*Hall v. Xanadu Mktg., Inc.*, 682 F. Supp. 3d 1278 (N.D. Ga. 2023) …..................................... 12

*Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046 (M.D.N.C. July 22, 2020) …..................................... 15

*Huertas v. Bayer US LLC*, 120 F.4th 1169 (3d Cir. 2024) …..................................... 3

*Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 1721144 (M.D. Pa. Apr. 22, 2024) …..................................... 7–8

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991) …..................................... 3, 6

*Lucas v. Telemarketer Calling From (407) 476-5670 & Other Tel. Numbers*, No. 1:12-CV-630, 2014 WL 1119594 (S.D. Ohio Mar. 20, 2014) …..................................... 19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) …..................................... 5

*Maryland v. Universal Elections, Inc.*, 729 F.3d 370 (4th Cir. 2013) …..................................... 19

*McMorrow v. Core Properties, LLC*, No. 4:23-CV-00126-JAR, 2023 WL 8697795 (E.D. Mo. Dec. 15, 2023) …..................................... 15

*Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884 (3d Cir. 1977) …..................................... 3, 6

*Scofield v. Alleviate Tax LLC*, No. 1:24-cv-03231-DDD-KAS, ECF No. 42 (D. Colo. Sep. 18, 2025) …..................................... 17

*Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 WL 1003762 (E.D. Pa. Apr. 4, 2022) …..................................... 15

*Smith v. Direct Building Supplies*, No. CV 20-3583, 2021 WL 4623275 (E.D. Pa. Oct. 7, 2021) …..................................... 15

*Smith v. Vision Solar LLC*, No. CV 20-2185, 2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) …..................................... 15

*Stewart v. Network Cap. Funding Corp.*, 549 F. Supp. 3d 1058 (C.D. Cal. 2021) …..................................... 12

*Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879 (3d Cir. 2020) …..................................... 21

*Twombly v. Iqbal*, 550 U.S. 544 (2007) …..................................... 4

*Winner v. Kohl's Dept. Stores, Inc.*,
2017 WL 3535038 (E.D. Pa. Aug. 17,
2017) ….................................... 12

**Statutes**

47 U.S.C. § 227 ….................................... passim
Fed. R. Civ. P. 8(d)(2), (3) ….................................... 20
Fed. R. Civ. P. 15(a)(2) ….................................... 21
U.S. Const. art. III, § 2, cl. 1 ….................................... 5

**Other Authorities**

*In re Dialing Servs., LLC*, 29 F.C.C.
Rcd. 5537 (2014) ….................................... 19
*In re Dish Network*, 28 F.C.C. Rcd.
6574 (2013) ….................................... 19

## II.    INTRODUCTION

ViaSat's motion rests on a familiar but flawed premise: transforming a factual dispute into a jurisdictional challenge by filing a self-serving affidavit claiming "we didn't do it." That tactic has been rejected by courts in this Circuit and elsewhere. *Davis v. Wells Fargo*, 824 F.3d 333, 347 (3d Cir. 2016). Despite the Plaintiff's evidence contradicting ViaSat's assertions, ViaSat urges this Court to make a drive-by jurisdictional ruling seeking to dismiss a claim for lack of jurisdiction when some threshold fact has not been established; the Supreme Court has held this to be impermissible. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006). ViaSat asks the Court to credit a self-serving declaration and a subpoena response from an unrelated entity over Plaintiff's detailed allegations, his own evidence and sworn testimony, to weigh competing evidence, and to shut the courthouse doors before any discovery is taken. That is not the law in the Third Circuit, and it is not how TCPA cases are adjudicated.

The premise of ViaSat's motion is simple, but simply wrong. Plaintiff alleges two sales calls to his number on the DNC, during which the callers expressly identified ViaSat and attempted to sell ViaSat's services. Plaintiff's phone records confirm this, as does an attempted credit card charge and email. All those facts were pled in the Plaintiff's Complaints. ViaSat replies with affidavits and faulty record evidence of its own that purports to say the opposite: that it

1

makes no outbound marketing, made no calls to Plaintiff, and, somehow, now has no record of interacting with Plaintiff, despite previously claiming an inbound phone call from Plaintiff. But at the pleadings stage, even with a jurisdictional challenge, courts do not pick sides in a swearing contest. They apply the well-settled rule that where jurisdictional facts are intertwined with the merits, a 12(b)(1) motion must be denied and the case allowed to proceed to discovery.

Even under Rule 12(b)(6), the Complaint easily clears the plausibility bar. It alleges specific dates and times, two distinct originating numbers from spoofed caller IDs that were *inbound* calls to Plaintiff, self-identification as "ViaSat," and verifiable attempts to consummate the transaction with ViaSat in the form of an email and a credit card charge. Those facts state claims for direct liability under the TCPA. They also plausibly allege a violation of the TCPA's Caller ID rules. ViaSat's contrary authorities are out-of-circuit, procedurally distinct, or deal with threadbare pleadings, unlike those here. The motion should be denied in full.

## III.    FACTUAL BACKGROUND

On April 19, 2024, Plaintiff's residential cellular number, registered continuously on the National DNC Registry for over three years, rang twice within minutes. The first call arrived at approximately 2:12 PM from the spoofed caller ID 931-413-8533. The caller attempted to sell the Plaintiff ViaSat's internet services. The Plaintiff hung up as he was not interested. Despite that, ViaSat called

the Plaintiff again minutes later. To ensure that the Plaintiff was speaking with ViaSat, the Plaintiff investigated the caller's sales pitch and provided his credit card. Immediately, the Plaintiff received an email confirming "ready when you are" and with an attempted charge for ViaSat's service. In response to those well-pled allegations, ViaSat has moved to dismiss on the theory that the Plaintiff called ViaSat, not the other way around, and supports these assertions with a declaration from an employee asserting that ViaSat does not conduct outbound telemarketing, that it has no records of calls to Plaintiff, and that Plaintiff supposedly placed an inbound call to ViaSat several minutes after second unlawful call was received.

## IV.    LEGAL STANDARD

The standards for 12(b)(1) challenges for a lack of subject matter jurisdiction are well-settled. The exist two types of 12(b)(1) challenges: facial and factual challenges. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In evaluating either 12(b)(1) challenge, the Court applies the Rule 12(b)(6) standard. *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024). To the extent that the motion does not properly address jurisdiction but instead sounds in the factual merits, such motion also ought to be denied and the case proceed. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. The Rules demand only a "short and plain statement of the

3

claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests," drawing on "judicial experience and common sense." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint may be dismissed where it appears that there are not "enough facts to state a claim that is plausible on its face," not because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

## V.    ARGUMENT

*A.    ViaSat's Rule 12(b)(1) attack fails because the jurisdictional facts are intertwined with the merits.*

The Defendant's motion mounts a factual jurisdictional challenge to the Plaintiff's complaint. In a factual challenge, the Plaintiff can submit evidence showing facts supporting the exercise of subject matter jurisdiction. (Bronstin Dec.). The factual challenge can be easily resolved because it relies on a contested issue. In support of its motion, the Defendant presented an affidavit of Gregory Henderson, stating that, based on some unspecified "review" of its records that ViaSat did not place any calls and that the Plaintiff allegedly placed an "*inbound* call.*" As the Third Circuit has cautioned, to the extent that the merits of a case are

4

intertwined with the jurisdictional allegations, the matter should unquestionably proceed to discovery. But even so, the Plaintiff has provided a counter-affidavit that applies with equal, if not greater force: since the Plaintiff *has* adequately pled that he *received* a call, the case also passes muster for an injury and the case must be permitted to proceed. (Bronstin Dec. ¶ 8, 24).

This Court's subject matter jurisdiction derives from Article III of the Constitution, which limits this Court to adjudicating "cases" and "controversies." U.S. CONST. art. III, § 2, cl. 1. In *Lujan v. Defenders of Wildlife*, the Supreme Court distilled the constitutional limits of Article III standing into three distinct elements: injury, traceability, and redressability. 504 U.S. 555, 560 (1992). Defendant challenges only the second, reasoning Plaintiff did not receive illegal calls from it and therefore suffered no cognizable injury in fact. But that allegation is contradicted by the complaint's allegations, Plaintiff's affidavit, and evidence, which shows he received a call from ViaSat. (Bronstin Dec. ¶ 8). Plaintiff was injured. (Bronstin Dec. ¶ 24).

Defendant's jurisdictional challenge must fail because Plaintiff has alleged Defendant called him, as alleged in the Complaints and confirmed through Plaintiff's declaration and telephone screenshots, not the other way around. (Bronstin Dec. ¶ 8-18). And were there any question that the Plaintiff interacted with the Defendant's employees during the call, Defendant's subsequent attempt to

5

charge the Plaintiff's credit card and email to Plaintiff should readily dispel those notions. Nothing more is required to plead traceability to the Defendant. Nobody else was named or mentioned on the calls, and the Defendant's carefully-worded self-serving affidavit is insufficient to show that there isn't traceability at the pleadings stage. Variations of the same strategy have been rejected by federal courts. "While that argument has some superficial appeal, it is wrong. [Defendant's] argument is better understood as a well-disguised challenge to the legal merits of [Plainitff's] case, not as a challenge to his standing to pursue it." *Davis v. Wells Fargo*, 824 F.3d 333, 347 (3d Cir. 2016).

*Davis* is controlling. There, the Third Circuit reversed a jurisdictional dismissal that decided the merits under the guise of standing, exactly as Defendant attempts. When jurisdiction is "intertwined" with the merits, the proper course is to deny the Rule 12(b)(1) motion. The question of whether the calls were made "by" or "on behalf of" ViaSat as outbound calls to the Plaintiff or by some unspecified calls by Plaintiff to spoofed caller IDs (which by definition cannot receive calls) is the central merits question here. The Third Circuit's holdings in *Kehr Packages* and *Mortensen*, *supra*, articulate the same principle. *Kehr* instructs that a district court should not dismiss for want of jurisdiction where "the jurisdictional facts are intertwined with the merits of the case." 926 F.2d at 1409. *Mortensen* likewise

recognizes that the courts cannot dismiss when factual disputes masquerade as jurisdictional disputes. 549 F.2d at 891.

This Court's decision in *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 1721144, at *3 (M.D. Pa. Apr. 22, 2024)[1], is instructive. There, a TCPA plaintiff facing counterclaims for fraud because he allegedly signed up on a website challenged the traceability of the website's sign up to him because the information allegedly submitted did not match. *Id.* at *2-*3. The plaintiff challenged through a declaration, as Defendant here, the traceability of the challenged conduct to him because the website visit records contained incorrect information and he denied doing so or authorizing anyone to do so. In refusing to dismiss the case, Court reasoned that "there is conduct that is traceable to him when the factual allegations are accepted as true, as required under Rule 12(b)(6)" because the counterclaim alleged that "Jackson 'consented to being contacted by submitting 'opt-in' data requesting a phone call to a third-party vendor.'" *Id.* at *5. Court held that challenging the traceability of this assertion raised "facts that go to the core of the merits," which made the dispute inappropriate for resolution, even when, as here, Mr. Jackson denied the conduct through affidavit.

Plaintiff's assertion here that he *received* illegal calls from spoofed caller IDs, allegations of the call's contents, and the subsequent credit card charge and

---

[1] A copy of this unpublished opinion is attached herein as Exhibit 1.

email from ViaSat, are just like the counterclaiming defendant's assertions in
*Jackson*. Just as in that case, Defendant points to alleged inconsistencies in
extrinsic evidence to undercut the Plaintiff's plain allegations of direct liability.
Defendant's attempts to challenge these well-pled and presumptively true through
contradictory extrinsic evidence does not suffice to demonstrate a lack of
traceability. *Jackson* counsels that factual traceability disputes based on
contradictory evidence *cannot* be resolved at the pleadings stage. Here, the
conflicting evidence weighs the core merits question here: was the call an inbound
call to the Plaintiff, or vice-versa?

But even considering Defendant's evidence, it is not as contradictory, let
alone dispositive, as Defendant makes out. Start with the T-Mobile subpoena. That
subpoena is probative of nothing because Plaintiff's service provider at the time
was Google Fi. Plaintiff's own subpoena and response obtained from T-Mobile,
which Defendant curiously omits, confirms that the Plaintiff was *not a T-Mobile
customer during the time of the alleged calls*. (Exhibit A). So, it makes sense that
T-Mobile has no records of calls placed by the Google Fi platform; as T-Mobile's
own subpoena response makes clear, T-Mobile didn't service the Plaintiff's
number. Similarly, the IP Horizon subpoena in fact *proves* that the numbers from
which the Plaintiff received calls were both spoofed. Specifically, the subpoena
responses confirms one of the numbers, the -8385 number, was not even assigned

8

to *any customer* on April 19, 2024, and the -8533 number was assigned to another customer located in Canada at the time. Particularly given that the -8385 number wasn't even assigned to anyone (and thus also could not have been called by the Plaintiff), the only logical conclusion is that the number was "spoofed" to hide ViaSat's identity.

At the end of the day, all this evidence the parties present simply faces the Court with a textbook swearing contest. A court cannot, at Rule 12(b)(1), weigh one affidavit against another and decide who is truthful. The intertwined-merits doctrine prevents exactly that. What's more, this approach of attempting to bootstrap a "we didn't do it" defense into a jurisdictional motion is one that has been uniformly rejected by federal courts in the TCPA context. "[W]hen the issue of jurisdiction is intertwined with the merits, district courts should deal with the objection as a direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56. . . This is one such case. If Callier received unwanted phone calls from Unified Health, then he suffered an injury sufficient for standing purposes." *Callier v. Unified Health, LLC*, No. EP-23-CV-375-KC, 2024 WL 3418778, at *5 (W.D. Tex. July 15, 2024) (cleaned up)[2]; *Clough v. Highway Auto. Pros LLC*, No. SACV2300107CJCJDEX, 2023 WL 4291826, at *3 (C.D. Cal.

---

[2] A copy of this unpublished opinion is attached herein as Exhibit 2.

May 23, 2023)[3] (rejecting telemarketer's standing challenge on traceability grounds for calls allegedly placed by a third party). In such cases, the correct approach is to deny the Rule 12(b)(1) motion and proceed to discovery so the merits and jurisdictional allegations can be tested on a proper record.

The Defendant asks this Court to frustrate judicial economy by asking it to make factual determinations without a full record, without procedural safeguards, and on contradictory "evidence." Nothing in the Constitution requires a plaintiff to plead more than the basic allegations of injury; plaintiffs are not required to prove a complaint's allegations, nor can defendants use Rule 12(b)(1) as a way of forcing the plaintiff to do so. The Plaintiff nevertheless does so. (Bronstin Dec.). The constitutional requirement for an injury-in-fact sounding in federal jurisdiction is pleading federally proscribed conduct that is fairly traceable to a defendant. *Lujan* at 452–53. Pleading exact evidence at the pleadings stage cannot be a constitutional requirement for jurisdiction. The Plaintiff's declaration demonstrates that there is a plausible factual dispute of who called who.

ViaSat's authorities are not contrary or dictate a different result. The *Baccari* court dismissed based on facts pled in the complaint that contradicted claims of direct liability, and there, the plaintiff submitted *no affidavit of plaintiff's own*. There, the plaintiff received calls from "A-List Marketing Solutions, Inc." *Baccari*

---

[3] A copy of this unpublished opinion is attached herein as Exhibit 3.

*v. Carguard Admin., Inc.*, No. 22-CV-1952, 2022 WL 3213839, at *1 (E.D. Pa. Aug. 8, 2022)[4]. And the Court was limited in its standing analysis, unlike here, because the plaintiff provided *no affidavits or other evidence* to rebut Carguard's evidence, and dismissed the case without prejudice. *Id.* at *3. *Baccari* doesn't stand for the proposition that Rule 12(b)(1) empowers a defendant to defeat jurisdiction by offering a self-serving affidavit that contradicts detailed allegations and the Plaintiff's own evidence on a core merits issue. Unlike *Baccari*, Plaintiff has pled that he spoke with representatives who were attempting to sell ViaSat's internet services, who "confirmed they were calling from ViaSat," and then received a credit card charge and email from ViaSat. Unlike in *Baccari*, nobody stated they were calling from a third party. Defendant's own evidence is internally contradictory and Defendant now flip-flops positions. In its original motion, Defendant averred that it *did* speak to the Plaintiff, but that Plaintiff called the Defendant. It now denies any involvement in the subject conduct at all. At best, Defendant's motion presents this Court with a textbook "intertwined with the merits" dispute barred from resolution on a jurisdictional motion.

Defendant's other authorities do not stand for their stated propositions because they deal with circumstances where the Plaintiff consented, not where the parties dispute, as here, who called who. *Winner v. Kohl's Dept. Stores, Inc.*, 2017

---

[4] A copy of this unpublished opinion is attached herein as Exhibit 4.

WL 3535038, at *7-8 (E.D. Pa. Aug. 17, 2017)[5], said nothing about traceability; there, the dispute was over whether the plaintiff was injured when the plaintiff consented to the subject messages. In *Stewart v. Network Cap. Funding Corp.*, 549 F. Supp. 3d 1058, 1059 (C.D. Cal. 2021), the court dismissed when the plaintiff did not plead a sufficient revocation. In *Hall v. Xanadu Mktg., Inc.*, 682 F. Supp. 3d 1278, 1285 (N.D. Ga. 2023), the court dismissed when defendant produced "uncontroverted evidence" that the plaintiff submitted her information. Here, Defendant pleads no facts showing that it had consent, so its reliance on these authorities, holding that plaintiffs were not injured when they consented, is peculiar and unwarranted.

And though Plaintiff has submits evidence supporting his version of events, he is not required to do so from a constitutional angle. No part of Article III requires the Plaintiff to allege what Defendant claims is required, submitting merits-based evidence supporting his injury at the pleadings stage. That would transform notice pleading to effectively require evidence pleading. As a result, at this stage it is plausible to infer that Defendant itself called Plaintiff, and that Plaintiff was injured because he *received* illegal calls from the Defendant. And because factual disputes exist, this matter should proceed to discovery. Plaintiff's

---

[5] A copy of this unpublished opinion is attached herein as Exhibit 5.

declaration and evidence confirms that he suffered a legally cognizable injury in receiving the calls to his phone on the DNC without consent.

B.    *Plaintiff adequately pleads direct TCPA liability.*

Defendant simply recasts its 12(b)(1) standing defence as a challenge to the Plaintiff's pleading of direct TPCA liability, adopting the same classic "we didn't do it" defense by disguising it as a challenge to the Plaintiff's allegations of direct liability. Like Defendant's 12(b)(1) motion, Rule 12(b)(6) isn't an appropriate device for truth-testing or evidence weighing. The Plaintiff has pled facts giving rise to the inference that Defendant placed the calls.

Plaintiff's complaint gives adequate notice of the Plaintiff's claims and their grounds. Defendant knew as much when it previously stated, under penalty of perjury, that "ViaSat's records reflect an individual using the Subject Number made an inbound call to 855-478-5112 on April 19, 2024, at 2:17 pm Pacific Time" and attached an exhibit. (ECF No. 11-2). The new Henderson declaration to curiously omits these facts previously sworn to, presumably because those facts would be inconsistent with its argument that the Plaintiff didn't even speak with ViaSat. (ECF 23-1). Defendant cannot claw back the facts it swore to in a previous declaration, specifically, that it has a record of speaking with Plaintiff *at the exact same time of the second call*, but merely disputes whether it placed the call or whether the Plaintiff placed "an *inbound* call to [ViaSat's number.]" Defendant has

13

admitted to facts directly contradictory to those it now advances. Defendant's position is contradicted by the email it sent Plaintiff, as well as the credit card charge. Given that evidence, Defendant's complete denial is perplexing.

The Defendant's "we didn't do it" argument is more properly the subject of a jury trial. Other courts have agreed and applied similar reasoning in applying direct liability to even more attenuated circumstances. *See, e.g.*, *Cunningham v. Wallace & Graham*, No. 1:24-CV-00221, 2024 WL 4826798, at *3 (M.D.N.C. Nov. 19, 2024)[6] ("The complaint alleges that Sokolove partnered with Wallace & Graham to solicit Camp Lejeune claimants through telemarketing efforts.… These allegations, which must be accepted as true, provide a sufficient basis for 'draw[ing] the reasonable inference that the defendant[s] [are] liable for the misconduct alleged.'"); *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-CV-03309-JD, 2022 WL 867256, at *7 (N.D. Cal. Mar. 23, 2022)[7] (certifying TCPA class against brokerage for actions of purportedly independent agents); *Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2021 WL 1375837, at *5 (N.D. Cal. Apr. 12, 2021)[8] ("The Court finds that Defendant is vicariously liable for calls made by its corporate sales associates and agents based on apparent authority."); *McMorrow v. Core Properties, LLC*, No. 4:23-CV-00126-JAR, 2023 WL

---

[6] A copy of this unpublished opinion is attached herein as Exhibit 6.
[7] A copy of this unpublished opinion is attached herein as Exhibit 7.
[8] A copy of this unpublished opinion is attached herein as Exhibit 8.

8697795, at *13 (E.D. Mo. Dec. 15, 2023)[9] ("[T]he Court finds that Plaintiff has established that Core Properties provided apparent authority to 1000 CAD to send the text messages to Plaintiff."); *Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046, at *6 (M.D.N.C. July 22, 2020)[10] ("At this stage of the proceedings, Hayhurst has sufficiently alleged an agency relationship between Keller Williams and the individuals who called him.").

Defendant's contrary authorities are distinguishable, because Plaintiff provides further factual enhancement not present there. The Court in *Smith v. Vision Solar LLC*, No. CV 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020)[11], for example, dismissed claims without prejudice when plaintiff made the conclusory allegation that the telephone number was "confirmed to belong to Defendant." Plaintiff pleads more than what the *Vision Solar* court held was lacking, and granted leave to amend on. This case is also unlike the allegations in *Direct Building.* There, plaintiff received a call, called the number back, and provided "no details specifying how Smith knew that Direct Building Supplies in fact placed these calls." *Smith v. Direct Building Supplies*, No. CV 20-3583, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021)[12]. In *Direct Building*, Court explicitly

---

[9] A copy of this unpublished opinion is attached herein as Exhibit 9.

[10] A copy of this unpublished opinion is attached herein as Exhibit 10.

[11] A copy of this unpublished opinion is attached herein as Exhibit 11.

[12] A copy of this unpublished opinion is attached herein as Exhibit 12.

held that the same facts Plaintiff pleads here, such as that "the persons with whom Smith spoke identified themselves as representatives of Direct Building Supplies, or the services these persons attempted to sell were construction or home contracting services," *would* be sufficient to state a claim. *Id.* Indeed, the same Court recently rejected *a nearly identical motion filed by Defendant's counsel here* on the basis of these two cases. *Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022)[13]. This Court should reach the same conclusion with respect to the same attorney's motion in holding sufficient allegations that plaintiff was told that he was "speaking with American-Amicable" and that the calls "concerned insurance benefits–American-Amicable's area of business." *Id.* So too here, where Defendant admits that its area of business is internet, the agent confirmed he was calling from ViaSat, and sold ViaSat's services.

The other authorities cited by Defendant are similarly distinguishable. In *Aaronson v. CHW Grp., Inc.*, the complaint was "devoid of facts such as how the caller identified itself, the substance of the calls, or any other details from the telephone calls." No. 1:18-CV-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019)[14]. And in *Doyle v. GoHealth, LLC*, Court held insufficient allegations of

---

[13] A copy of this unpublished opinion is attached herein as Exhibit 13.
[14] A copy of this unpublished opinion is attached herein as Exhibit 14.

direct liability when an agent stated that she worked for GoHealth but in the same breath "stated a bunch of insurance companies that her company works with." No. CV 22-04291, 2023 WL 3984951, at *1 (D.N.J. Mar. 30, 2023)[15].

Although Plaintiff must allege either a direct or vicarious liability theory of TCPA liability, the bar for the Plaintiff is not as high as the Defendant makes out. As the District of Colorado recently held:

> Alleviate is right about the legal requirement, but wrong that the complaint is insufficient to satisfy it at the motion-to-dismiss stage. The complaint alleges that Mr. Scofield received a call and a resulting voicemail that urged him to call a number, and that the person who answered that number identified "his company" as Alleviate. Doc. 1 ¶¶ 22-27. Taking these allegations as true, as I must at this stage, and making all reasonable inferences in favor of Mr. Scofield, as I also must at this stage, this is sufficient to allow a reasonable juror to infer that Alleviate was responsible for—that is, made or initiated—the call. . . . Phone numbers are easily spoofed, and making a call appear to come from a number other than the one belonging to the actual caller is hardly unheard-of, especially in the robocalling world. Likewise, the argument that there is nothing to support the claim that the call was made by an agent of Alleviate is unpersuasive. The allegation is that the person who answered the number left in the robocall's voicemail said that he was doing so on Alleviate's behalf.

*Scofield v. Alleviate Tax LLC*, No. 1:24-cv-03231-DDD-KAS, ECF No. 42 (D. Colo. Sep. 18, 2025).[16]

Defendant prefers to spin a narrative of its own by ignoring the facts Plaintiff has pled and then attempts to shoehorn that faulty narrative into other

---

[15] A copy of this unpublished opinion is attached herein as Exhibit 15.
[16] A copy of this unpublished opinion is attached herein as Exhibit 16.

distinguishable it mischaracterizes, as its counsel has done in the past. *See, e.g.*,

*Abramson v. AP Gas & Elec. (PA), LLC*, No. CV 22-1299, 2023 WL 2714340, at

*3 (W.D. Pa. Mar. 30, 2023)[17] (chiding Defendant's counsel for citing to

"nonbinding cases that are readily distinguishable from the facts alleged in

Abramson's Complaint"); *Davis v. Reliance First Cap., LLC*, No. 7:22-CV-00018,

2023 WL 1982354, at *4 n.2 (E.D.N.C. Feb. 13, 2023)[18] (noting that Defendant's

counsel's "legal authority is from cases in a vastly different procedural posture

then the one here"); *Atkinson v. Choice Home Warranty*, No. 2:22-cv04464, 2023

WL 166168, at *3 (D.N.J. Jan. 11, 2023)[19] ("Defendant cites to various non-

binding decisions in search of a contrary result."). Each of the Defendant's myriad

other selective quotations, including the other cases it cites, all rely on similar

faulty reasoning.

Defendant advances the same faulty legal standard as the defendant in

*Scofield*, reasoning that the Plaintiff's well-pled allegations connecting the caller,

calls, and their stated and admitted purpose are insufficient to demonstrate a theory

of direct liability at the pleadings stage. If the Defendant has contrary evidence

showing it had nothing to do the calls (which it does not because it admitted to the

contrary in its previous Declaration), it should present that evidence at trial. The

---

[17] A copy of this unpublished opinion is attached herein as Exhibit 17.
[18] A copy of this unpublished opinion is attached herein as Exhibit 18.
[19] A copy of this unpublished opinion is attached herein as Exhibit 19.

solution is not to resolve what is at best a merits dispute at the pleadings stage. If what Plaintiff has pled, including a credit card charge, email, and the Defendant's own assertion that the Plaintiff called Defendant is not sufficient to establish direct liability, then nothing is.

For all its sabre-rattling about pleading physical initiation of a call under the TCPA, the relevant case law also makes clear that a person need not physically initiate or dial a call in order to be directly liable for the call; indeed, a caller can initiate the call through another if they "take the steps necessary to physically place a telephone call." *In re Dish Network*, 28 F.C.C. Rcd. 6574, 6583 (2013). An employee placing a call for a company's behalf, together with several other even more remote types of conduct, including securing a telephone connection, providing reports, and contracting for call center services, are all actions which are sufficient to "initiate" a call and impose direct liability. *In re Dialing Servs., LLC*, 29 F.C.C. Rcd. 5537 (2014) (citing *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 377 (4th Cir. 2013) and *Lucas v. Telemarketer Calling From (407) 476-5670 & Other Tel. Numbers*, No. 1:12-CV-630, 2014 WL 1119594, at *10 (S.D. Ohio Mar. 20, 2014)[20] for the proposition that "in evaluating the TCPA liability of third parties who engage robocalling services, courts have assumed liability of the latter for any illegal calls made using the service, explaining that 'the language of the

---

[20] A copy of this unpublished opinion is attached herein as Exhibit 20.

Act indicates that it is intended to apply to the individuals who use the autodialing systems that place calls, and not just to the autodialing services themselves.'").

Plaintiff's complaint doesn't adopt a flawed either/or pleading approach, either. (MTD at 23). All the Plaintiff has pled, consistent with case law on direct liability TCPA matters, is that discovery *might* reveal third parties who could also be directly liable. For example, Defendant's employee may be personally liable under the TCPA, still consistent with direct liability. Defendant's related argument that Plaintiff insufficiently pleads direct liability by pleading in the alternative, as discovery may reveal, is unavailing, as it is permitted by the Rules. FED R. CIV. P. 8(d)(2), (3). Pleading in the alternative in no way undermines the well-pled allegations in the complaint and evidence, as well as the Defendant's own admission, that the Defendant directly was involved in the calls.

Plaintiff has plausibly pled a case for direct liability under the TCPA. The allegations in the Plaintiff's amended complaint support no other logical conclusion. This Court can infer Defendant is directly liable. Given that the Plaintiff here has pled precisely what the Courts in *Direct Building* and *American Amicable* have held is sufficient, and provided the very "factual enhancement" which was not pled Defendant's cases, Plaintiff has stated a claim.

C.   *Dismissal must not be with prejudice.*

Should this Court Mr. Bronstin's allegations lacking, it should provide leave

to amend. *See* Fed. R. Civ. P. 15(a)(2). Plaintiff respectfully observes that, to the extent that the Court dismisses on 12(b)(1) grounds, such dismissal must be without prejudice. *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 896 (3d Cir. 2020).

## VI.    CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety or permit the Plaintiff to amend.

Dated: September 26, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
M.D. Pa. Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.8(b)(2), I hereby certify that this brief contains 4,994 words.

DATED this September 26, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

September 26, 2025

<u>*/s/ Andrew Roman Perrong*</u>
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com