# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ASHER BRONSTIN,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**VIASAT INC.**<br><br>*Defendant.* | Case No.<br>1:25−CV−00927−KMN<br><br><br>**CLASS ACTION**<br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO VIASAT'S MOTION TO BIFURCATE DISCOVERY

## I.    INTRODUCTION

The Court should deny Defendant's motion to bifurcate discovery in all respects because bifurcating the discovery in this case will be inefficient and prejudicial, as this Court has already held. Defendant's proposal rests entirely on a fundamentally flawed premise, as more fully outlined in the Plaintiff's opposition to the Defendant's motion to dismiss: that the Plaintiff received no calls from Defendant ViaSat but rather that he called ViaSat. To demonstrate its entitlement to this extraordinary relief, ViaSat relies on subpoena responses, one of which proves ViaSat used a "spoofed," unassigned telephone number, and a subpoena to an entity which is *not the Plaintiff's telephone company*, but which ViaSat says is. In any event, because currently pending discovery will disprove ViaSat's theory and demonstrate the necessity of class discovery, this Court should decline ViaSat's invitation, as it recently did in another case.

## II.    ARGUMENT

District courts have broad discretion to control discovery. *Crawford—El v. Britton*, 523 U.S. 574, 598-99 (1998). Requests to bifurcate discovery are controlled by Rule 42(b), *not* Rule 26(c), as Defendant claims. *SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 568 (D. Del. 2013). In any event, it is incumbent on ViaSat as the moving party to bear the burden of showing "good cause" for a protective order with specific facts of undue burden or expense under

1

Rule 26(c)'s protective order standard. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 195 (D.N.J. 2010). The Third Circuit has "condemned the district court's practice of bifurcating [discovery] as a general rule." *Barr Lab., Inc. v. Abbott Lab.*, 978 F.2d 98, 115 (3d Cir. 1992). Reliance on Rule 1 will not suffice, particularly as "bifurcation is the exception and the moving party bears the burden of demonstrating that bifurcation is needed... As a practical matter, bifurcation of discovery...is extremely rare, since bifurcation often delays cases and leads to serial motion practice." *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 2016 WL 4541870, at *2 (D.N.J. Aug. 31, 2016)[1].

Bifurcation of discovery is often "counterproductive." Manual For Complex Litigation (Fourth) ("MCL 4th") § 21.15 (2015). That is readily apparent here, especially because the Defendant seeks to bifurcate discovery on the basis of a single subpoena it issued to an entity that is *not the Plaintiff's telephone company*, but which it claims is. As such, the proposed bifurcation guarantees that the parties will need to duplicate their work. First, the parties would undertake "individual merits" discovery and all that entails: written discovery requests, depositions, and then expert disclosures and expert depositions, all limited just to the individual claim of the Plaintiff. Then, Defendant would file a dispositive motion to Plaintiff's

---

[1] A copy of this unpublished decision is attached herein as Exhibit 1.

*individual claims*. And then, should the Court deny that motion, the parties have to start all over again, serving discovery requests and taking depositions of the same witnesses a second time, but this time focusing on *class certification* issues, as well as the remaining issues on the class claims. And after that, there would be a second round of dispositive motions, including class certification and summary judgment, on the class claims. All told, this means at least *two* rounds of written discovery relating to individual liability and class liability, *two* rounds of depositions (with the same witnesses being deposed two times), and then *two* rounds of summary judgment briefing, all on the same critical issue: did ViaSat use spoofed caller ID numbers to call Plaintiff and other class members to sell their services? This is the opposite of judicial economy. Indeed, as this very same Court has observed, "bifurcation of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions." *Hartley-Culp v. Credit Mgmt. Co.*, No. 3:CV-14-0282, 2014 WL 4630852, at *4 (M.D. Pa. Sept. 15, 2014)[2]. Defendant raises no defenses unique to Plaintiff's individual claims, only defenses common across the classes. *Friel v. Line 5, LLC*, No. 3:24CV1866, 2025 WL 2422617, at *8 (M.D. Pa. Aug. 21, 2025)[3].

The Court should deny Defendant's motion to bifurcate for this reason *alone*.

---

[2] A copy of this unpublished decision is attached herein as Exhibit 2.
[3] A copy of this unpublished decision is attached herein as Exhibit 3.

*See id.* (denying similar motions to bifurcate merits and class discovery in TCPA cases); *EQT Prod. Co. v. Terra Servs., LLC*, No. CV 14-1053, 2014 WL 12838677, at *1 (W.D. Pa. Oct. 22, 2014)[4] ("Terra's proposal would likely result in deposing the same witnesses twice—once in the liability phase, and again in the damages phase. This is the definition of inconvenience, and the additional cost of duplicative depositions and document review combine to counsel against bifurcation.").

Apart from the duplication of discovery outlined above, Defendant's proposal is bound to lead to additional discovery disputes and proceedings that would be completely unnecessary without bifurcation. There is significant overlap between discovery relevant to the merits of Plaintiff's individual claims and issues of class certification.  Indeed, "[class certification] analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . .  because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (internal citations and quotations omitted); *Charvat v. Plymouth Rock Energy, LLC*, No. 15CV4106JMASIL, 2016 WL 207677, at *2 (E.D.N.Y. Jan. 12, 2016)[5] (denying motion to bifurcate merits and class discovery in TCPA action and explaining that "bifurcation would have the opposite effect [of "promot[ing] judicial

---

[4] A copy of this unpublished decision is attached herein as Exhibit 4.
[5] A copy of this unpublished decision is attached herein as Exhibit 5.

efficiency or a prompt resolution of the case"].")); Notes of Advisory Committee on 2003 Amendments to Fed. R. Civ. Pro. 23(c)(1)(A) ("Active judicial supervision may be required" to avoid "an artificial and ultimately wasteful decision between 'certification discovery' and 'merits discovery.'"). This is evident in the very "threshold" issues ViaSat lists, which are merits questions that overlap with Rule 23's. As another Court ruled when denying a motion to bifurcate in a TCPA case:

> The Court has reviewed the parties' joint status report. The Court does not see a need to bifurcate discovery in this case. There will be some overlap in discovery here. Discovery as to commonality and typicality under Rule 23 will also apply to the merits of the claim. Moreover, the Supreme Court in *Walmart v Dukes* has said the district court must conduct a rigorous analysis in determining class certification and that will often require some evaluation about facts that go to the merits of a plaintiff's underlying claims. Thus, bifurcating discovery often does not make sense as the lines between "class discovery" and "merits discovery" are significantly blurred.

*Katz v. Allied First Bank, SB*, No. 22-cv-5277, ECF No. 14 (N.D. Ill. Jan. 3, 2023)[6].

Other courts have agreed. *See, e.g.*, *Grippo v. Sugared + Bronzed, LLC*, No. SA CV 24-01792-AB (DFMX), 2025 WL 596095, at *2 (C.D. Cal. Feb. 24, 2025)[7] (citing cases and rejecting bifurcation, noting "the distinction between merits discovery and class discovery is not always clear, and many courts are, for this reason, reluctant to bifurcate class and merits discovery."); *Blair v. Assurance IQ LLC*, No. 23-16, 2023 WL 6622415, at *6 (W.D. Wash. Oct. 11, 2023)[8]; *Ahmed v.*

---

[6] A copy of this unpublished decision is attached herein as Exhibit 6.
[7] A copy of this unpublished decision is attached herein as Exhibit 7.
[8] A copy of this unpublished decision is attached herein as Exhibit 8.

*HSBC Bank USA, Nat'l Ass'n*, No. 15-2057, 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018)[9] ("[T]he distinction between class certification and merits discovery is murky at best and impossible to determine at worst."); *Nock v. PalmCo Admin., LLC*, No. 24-CV-00662, 2025 WL 100894, at *3 (D. Md. Jan. 15, 2025)[10] ("Because individual and class discovery overlaps, the difficulty of drawing the line between the two is likely to cause further discovery disputes [and demand Court time].").

Here, Defendant's contested contention is that it did not call the Plaintiff or any other class member. Thus, class discovery will be no more burdensome or involved than individual discovery. ViaSat either placed calls to the Plaintiff and every other class member (including using highly-illegal spoofed, non-existent caller IDs), or it did not. ViaSat identifies *no* discovery that it will need or intends to seek that would not apply equally to the entire class. Whether ViaSat sent the calls at issue or not will be readily ascertainable from telephone company records and depositions as to ViaSat's strategy across the entire class. All ViaSat does is manufacture an issue of its own by relying on a subpoena to the wrong party, T-Mobile, which was not the Plaintiff's telephone service provider, and then using that wrongly-issued subpoena as a basis to seek bifurcation, and not on uncontested third party records.

Not only that, but ViaSat's motion to bifurcate is couched on its contention in

---

[9] A copy of this unpublished decision is attached herein as Exhibit 9.
[10] A copy of this unpublished decision is attached herein as Exhibit 10.

it motion to dismiss that it is not liable for any of the alleged phone calls made to the Plaintiff because it (allegedly) did not place any of the calls. That simply does not follow. A defendant is not entitled to escape discovery in this or any other case simply because they deny liability. But *even if* it is the case that ViaSat cannot be liable for the conduct here because the Plaintiff called ViaSat (a contention which is untrue and one that ViaSat confusingly seems to have abandoned in its second Motion to Dismiss but still advances here), that denial of liability would be just as easily proven in discovery with respect to the class claims as the individual ones, particularly inasmuch as it pertains to class certification issues. In other words, if the distinction as to liability in general is clear (which it would be if each class member called ViaSat as ViaSat claims), class discovery would impose no additional burden on the Defendant. However, if the Defendant is liable (such as by having a secret program of spoofing caller IDs using a different telephone system), bifurcation of discovery will lead to needless waste of resources, disputes, and duplicated effort.

Indeed, as another Court held while rejecting a substantially similar bifurcation request from a TCPA defendant highlighting the signification overlap between merits and class certification discovery in a TCPA case:

> As to class certification under Rule 23, the Supreme Court has instructed that "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)). And "[f]requently that 'rigorous analysis' will entail some

7

overlap with the merits of the plaintiff's underlying claim" because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 351 (cleaned up).

Considering *Dukes* and the "rigorous analysis" requirement for class certification, district courts have been reluctant to bifurcate class-related discovery from discovery on the merits. *See Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. EDCV152057FMOSPX, 2018 U.S. Dist. LEXIS 2286, 2018 WL 501413 (C.D. Cal. Jan. 5, 2018) (declining to bifurcate discovery in TCPA case and stating that "the distinction between class certification and merits discovery is murky at best and impossible to determine at worst"); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012) (collecting cases).

In another TCPA case, *Cardenas v. Resort Sales by Spinnaker, Inc.*, No. 9:20-cv-00376-RMG, 2021 U.S. Dist. LEXIS 34923, 2021 WL 733393 (D.S.C. Feb. 24, 2021), the Court found that bifurcation would not serve the interests of judicial economy given the plaintiff's "persuasive argument that the evidence needed to determine whether [they] have a claim substantially overlaps with [their] ability to represent a class under [Rule] 23."

Similarly, here, the undersigned already found that Folsom "may not avoid appropriate classwide discovery that is — as Bond persuasively argues — necessary for a future class certification motion." Dkt. No. 28. And, so, the Court agrees with Bond that bifurcation would not promote efficiency because there is considerable overlap between discovery relevant to the merits of his individual claims and issues of class certification. *Accord True Health Chiropractic, Inc. v. McKesson Corp.*, 2015 WL 273188, *2-3 (N.D. Cal. 2015) (declining to bifurcate a TCPA class action and noting that individual and class [claims overlap]).

And, in light of the bulk of authority discussing the lack of a "bright line" distinction between merits and class discovery, bifurcation could lead to avoidable, future disputes over whether a particular discovery request relates to the merits or to class certification. *See Quinn v. Specialized Loan Servs., LLC*, 321 F.R.D. 324, 327-28 (N.D. Ill. 2017); *see also City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc.*, 2015 U.S. Dist. LEXIS 79392, 2015 WL 11120408, *1-2 (W.D. Ark. 2015) (bifurcation may force the court to resolve "endless discovery disputes"); *True* Health, 2015 U.S. Dist. LEXIS 7015, 2015 WL 273188, at *3 (finding that bifurcation "raise[s] a slew of issues as to what discovery relates to the class, as opposed to the named plaintiffs, thereby causing additional litigation regarding the distinction between the two.").

And, so, considering the binding law from *Dukes* and persuasive authority from

other district courts, the Court declines to bifurcate discovery in this case. *Bond v. Folsom Ins. Agency LLC*, No. 3:24-CV-2551-L-BN, 2025 WL 863469, at *2-3 (N.D. Tex. Mar. 19, 2025) (cleaned up)[11].

Given this overlap, bifurcation would "belie principles of judicial economy, as the Court may be forced to spend time and resources resolving discovery disputes over what is 'merit' discovery as compared to 'class' discovery." *In re Plastics Additives Antitrust Litig.*, No. CIV.A. 03-2038, 2004 WL 2743591, at *3 (E.D. Pa. Nov. 29, 2004)[12]. Furthermore, as alluded to above, the Defendant has not highlighted any aspect of the Plaintiff's individual claim that is unique to support its position. For this reason *alone*, courts in TCPA cases have rejected bifurcation requests, just as the court in *Simmons v. Author Reputation Press LLC*, No. CV 24-12330-BEM, 2025 WL 863601, at *2 (D. Mass. Mar. 18, 2025)[13] held:

> Defendant has provided the Court no specific basis on which to conclude that Plaintiff's individual claims are particularly vulnerable to early defeasance. Rather, Defendant has merely pointed out that individual claims are subject to individual defenses, but that is true for all putative class-action plaintiffs.

In distinguishing other TCPA cases in which discovery was bifurcated, the *Simmons* court noted in those cases, "the court was presented with a clear, documented deficiency in the plaintiff's individual claim." *Id.* That is plainly not the case here, and this Court should follow the reasoning of the *Simmons* court, as Defendant's second Motion to Dismiss is contradictory and based on faulty

---

[11] A copy of this unpublished decision is attached herein as Exhibit 11.
[12] A copy of this unpublished decision is attached herein as Exhibit 12.
[13] A copy of this unpublished decision is attached herein as Exhibit 13.

evidence, not a demonstrated deficiency. Defendant urges the Court to take the significant step of bifurcating discovery even when, by the Defendant's own admission, and even if the Defendant's contentions are proven true, the class issues here will be identical to the individual issues: whether the telephone calls came from ViaSat or the other way around. The ESI and calling records in this case are just as readily obtainable for the Plaintiff as other class members. Defendant's threshold argument is simply a distraction that makes little practical or logical sense. If the Defendant truly had no involvement in any of the "spoofed" calls, as it claims throughout its motion, it could just as easily respond with that response as to all class members. There is no reason to bifurcate on the basis that discovery should first be directed to individualized issues of who called who: who was involved in the calls and their placement is a uniform question common to all class members. Answering that question and others on a class basis would impose little to no additional burden on Defendant. Contrary to the Defendant's claims, therefore, the overlap between individual and class discovery is far from minimal; there is significant overlap between what happened here with respect to the Plaintiff as other class members, in addition to a relatively minimal additional burden attendant to classwide discovery.

Plaintiff's theory is that ViaSat called him, and all other class members, using spoofed caller IDs, but which investigation subsequently confirmed were calling from the Defendant. This is systemic conduct that impacted the entire class in the

same way, and there is little to no additional burden which will be attendant to discovery into those issues on a classwide, rather than an individualized, issue. Indeed, rather than being a narrow issue that is distinct from class issues rendering bifurcation appropriate, it is *the* class issue. Nor would bifurcation uncover any issues that would resolve the entire case: even if discovery revealed some purportedly individualized issue (it will not), the Plaintiff may still amend his Complaint and allege class liability consistent with any evidence adduced.

Bifurcation here would prejudice the Plaintiff, be inconvenient, and would neither expedite nor economize this dispute. Defendant's strategy appears to be to issue subpoenas to incorrect parties and then use the understandable lack of response as "evidence" that the calls did not happen. Another Court recently rejected a similar tactic on similar circumstances to here. In *Carter v. Health Insurance King Agency, LLC*, the plaintiff filed a complaint in which he alleged that he directly received calls from the defendant. No. 3:25-cv-00005-SHL-WPK, ECF No. 31 (S.D. Iowa Aug. 18, 2025) (cleaned up)[14]. Defendant there filed, and the court denied, a motion to dismiss, similar to here, premised on the contention that the plaintiff inadequately pled facts of direct liability. *Id.* In rejecting that argument, the Court noted:

> Defendant did answer the question in part by stating it has no campaign to make outbound calls to potential customers. However, it believes information about "vendors" who are companies or individuals that are somehow involved in making or generating calls for it is irrelevant. The question of agency creates a factual issue

---

[14] A copy of this unpublished decision is attached herein as Exhibit 14.

that warrants discovery. Here, the Court highlights the broad scope of discovery. "The scope of permissible discovery is broader than the scope of admissibility," and "[d]iscovery requests are typically deemed relevant if there is any possibility that the information sought is relevant to any issue in the case." The threshold showing of relevance was made by Plaintiff regarding whether third parties (vendors) are making calls on Defendant's behalf. Once that threshold was met, the burden shifted to Defendant in resisting discovery to show specific facts demonstrating that the discovery is not relevant or how it is privileged or otherwise protected from discovery. The Court concludes Defendant did not meet its burden with regard to this Interrogatory. Plaintiff needs to know whether any third parties are involved and has the right to seek discovery about a possible agency relationship, which may also shed light on the calls Plaintiff alleges he received.

The Court went on to explain why pleading direct liability in the complaint

did not foreclose a potential finding and amendment to allege vicarious liability:

Defendant opposes the extension [to the deadline to amend pleadings], arguing that information about third parties or vendors is not relevant to Plaintiff's claims of direct liability against it based on the current pleadings and facts asserted by both parties. It contends such information might only be relevant to a vicarious liability claim, which Plaintiff has not pleaded.

The Court concludes that good cause exists to extend the Deadline to Add Parties. While Plaintiff's current Complaint focuses on direct liability, the discovery sought about vendors and third parties is relevant to the claims and defenses in this case as detailed above in the Court's analysis regarding Plaintiff's Motion to Compel. . . . At this stage, without full disclosure of the potential involvement of vendors or third parties, it would be premature to foreclose Plaintiff's ability to amend based on newly discovered information. Therefore, the Deadline to Add Parties is extended to thirty days after Defendant provides complete responses to the discovery requests consistent with this Order. This extension balances the need for Plaintiff to have an opportunity to evaluate the information provided with the interest in moving the litigation forward efficiently.

Moreover, as in *Carter*, bifurcation would delay discovery necessary to

demonstrate the class claims, it would prejudice Plaintiff and other class members

by amplifying the risk that evidence will be lost or destroyed. Indeed, in this sense

the requested relief is akin to a motion to stay, since the Defendant is seeking to avoid all class discovery for an indefinite period of time. A stay-related delay would prejudice Plaintiff and other class members by amplifying the risk that evidence will be lost or destroyed. *Saleh v. Crunch, LLC*, No. 17-62416-CIV, 2018 WL 11264884, at *2 (S.D. Fla. Feb. 28, 2018)[15] ("a stay would prolong this matter on the Court's docket and could conceivably prejudice Plaintiff by the fading memory of any witnesses"); *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016)[16] (holding that plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend," among other reasons).

Defendant's motion to bifurcate rests on at least two faulty premises. First, Defendant's motion seems to seek to limit discovery only to that individualized evidence which may be probative of *direct* liability. As *Carter* counsels, however, the Plaintiff is at least entitled to know if there were or were not additional parties or vendors involved in making the calls at issue. Not allowing Plaintiff to test his assertions and claims, as well as possible alternative theories of liability, would prejudice him. If discovery uncovers evidence that is probative of vicarious liability, in addition to or in lieu of direct liability, then the Plaintiff is entitled to amend: the case isn't over simply because discovery does not uncover evidence of direct liability

---

[15] A copy of this unpublished decision is attached herein as Exhibit 15.
[16] A copy of this unpublished decision is attached herein as Exhibit 16.

pled at the pleadings stage. If additional entities are or were involved, including in caller ID spoofing to mask ViaSat's identity, the Plaintiff is entitled to know their identity and amend to add them once their roles are ascertained. *Second*, whether the Defendant did what the complaint alleges is a question that can be just as easily answered with respect to all class members. The potentially dispositive issue of liability here is not an individualized one distinct from the class issues. Defendant certainly has not identified how limiting discovery in the manner it proposes would be more convenient, expedite the claims, or economize the proceedings other than hypothesizing various arguments it intends to make at summary judgment.

There is also a substantial risk of prejudice. The risk to the putative class members' interests is not merely hypothetical.  Multiple decisions in TCPA class action cases have turned on the destruction of records necessary to identify class members, which is all the more concerning given the apparent evidentiary struggles starting to creep up here. *E.g., Levitt v. Fax.com*, No. CIV. WMN-05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007)[17] (denying class certification in a TCPA case because "critical information regarding the identity of those who received the facsimile transmissions" was not available); *Pasco v. Protus IP Solutions, Inc.,* 826 F. Supp. 2d 825, 831 (D. Md. 2011) (similarly granting summary judgment). As a result, courts regularly permit plaintiffs to commence discovery prior to a Fed. R.

---

[17] A copy of this unpublished decision is attached herein as Exhibit 17.

Civ. P. 26(f) conference, let alone refuse bifurcation, as in *Carter*. There are also other prejudices not associated with calling records that the Plaintiff will face from a stay. *See Sanaah v. Howell*, No. CIVA.08CV02117REBKLM, 2009 WL 980383, at *1 (D. Colo. Apr. 9, 2009)[18] ("with the passage of time, the memories of the parties and other witnesses may fade, . . . or documents may become lost."). Here, the Plaintiff is simply seeking to proceed in the ordinary course with discovery. In denying a motion to stay, another federal court considered this issue in a TCPA case:

> In addition, Orangetheory has not demonstrated irreparable injury; it notes only that it is potentially on the hook for substantial damages, given the putative nationwide class. Monetary damages, of course, do not by themselves constitute irreparable injury. Simon, on the other hand, persuasively argues that she would be injured by a stay, particularly because discovery has yet to commence, and evidence is at risk of being lost. This injury, which is both likely and irreparable, far outweighs the injury posed by a potential future judgment for money damages. . . . . In the meantime, it is clear that critical evidence, including records from any third parties that Orangetheory may have contracted with for its telephone marketing, may be lost or destroyed.

*Simon v. Ultimate Fitness Grp., LLC*, No. 19 CIV. 890 (CM), 2019 WL 4382204, at *7 (S.D.N.Y. Aug. 19, 2019)[19]. By contrast to *Cameron*, "[d]efendant has not demonstrated significant prejudice by its simple assertion that discovery costs money." *Grippo*, 2025 WL 596095, at *2.

## CONCLUSION

Bifurcation is not warranted here. The Defendant's motion should be denied.

---

[18] A copy of this unpublished decision is attached herein as Exhibit 18.
[19] A copy of this unpublished decision is attached herein as Exhibit 19.

RESPECTFULLY SUBMITTED AND DATED this September 29, 2025.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> M.D. Pa. Bar #333687
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

September 29, 2025

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.8(b)(2), this brief does not exceed 15 pages.

DATED this September 29, 2025.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.