# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all other similarly situated,<br><br> Plaintiff,<br><br> v.<br><br>VIASAT, INC.,<br><br> Defendant. | Civil Action No. 1:25-cv-00927-KMN<br><br>(Hon. Keli M. Neary) |

# DEFENDANT'S REPLY IN SUPPORT OF ITS RENEWED MOTION
# FOR A PROTECTIVE ORDER TO BIFURCATE DISCOVERY

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................... 1
II.   ARGUMENT ............................................................................................. 2
III.  CONCLUSION ........................................................................................ 14

## TABLE OF AUTHORITIES

Page

### CASES

*Bond v. Folsom Ins. Agency, LLC*,
   2025 WL 863469 (N.D. Tex. Mar. 19, 2025)......................................................................6

*Cameron v. CHW Group, Inc.*,
   2025 WL 2336513 (D. Utah Aug. 13, 2025)................................................................passim

*Charvat v. Plymouth Rock Energy, LLC*,
   2016 WL 207677 (E.D.N.Y. Jan. 12, 2016).....................................................................6

*Chenault v. Beiersdorf, Inc.*,
   2020 WL 5016795 (S.D. Ohio, Aug. 24, 2020) .................................................................4

*EQT Prod. Co. v. Terra Servs., LLC*,
   2014 WL 12838677 (W.D. Pa. Oct. 22, 2014)...............................................................4, 5

*Fania v. Kin Ins., Inc.*,
   2024 WL 2607303 (E.D. Mich. May 24, 2024) ...........................................................2, 12

*Friel v. Line 5, LLC*,
   2025 WL 2422617 (M.D. Pa. Aug. 21, 2025).................................................................4, 5

*Hartley-Culp v. Credit Mgmt. Co.*,
   2014 WL 4630852 (M.D. Pa. Sept. 15, 2014)................................................................4, 5

*Lathrop v. Uber Techs., Inc.*,
   2016 WL 97511 (N.D. Cal. Jan. 8, 2016)....................................................................12, 13

*Levitt v. Fax.com*,
   2007 WL 3169078 (D. Md. May 25, 2007).......................................................................13

*Pasco v. Protus IP Sols., Inc.*,
   826 F. Supp. 2d 825 (D. Md. 2011)..................................................................................13

*Pavelka v. Paul Moss Ins. Agency, LLC*,
   2023 WL 3728199 (N.D. Ohio May 30, 2023) ..................................................................2

*Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*,
   2014 WL 413534 (D.N.J. Feb. 4, 2014) .............................................................................3

*Saleh v. Crunch, LLC*,
   2018 WL 11264884 (S.D. Fla. Feb. 28, 2018) .................................................................12

*Simmons v. Author Reputation Press LLC*,
   2025 WL 863601 (D. Mass. Mar. 18, 2025) ......................................................................8

*Simon v. Ultimate Fitness Group LLC*,
    2019 WL 4382204 (S.D.N.Y. Aug. 19, 2019) ...................................................... 13

## OTHER AUTHORITIES

www.phonevalidator.com ................................................................................................ 9

## RULES

Fed. R. Civ. P. 1 ..................................................................................................... 1, 11
Fed. R. Civ. P. 12(b) ..................................................................................................... 1
Fed. R. Civ. P. 26(f) ..................................................................................................... 9

Defendant Viasat Inc. ("Viasat") respectfully submits this reply brief in support of its Renewed Motion for a Protective Order to Bifurcate Discovery (the "Motion"). For all the reasons discussed therein and further below, the Motion should be granted.

I.   **INTRODUCTION**

As the Motion shows, federal courts across the country have routinely bifurcated discovery in putative TCPA class actions like this one for efficiency purposes, initially focusing discovery on narrow and potentially case-dispositive individual issues for a short period before moving on to broader issues. *See* Dkt. 29 at 3-14. That is because myriad courts have correctly found that bifurcation in the form Viasat proposes here is beneficial for all concerned in such cases, causes no prejudice, and is consistent with the core edicts of Rule 1 of the Federal Rules of Civil Procedure—"the just, speedy, and inexpensive determination of every action." *Id*.

This TCPA case presents just such narrow and potentially dispositive individual issues, showing why bifurcated discovery is appropriate. As explained in both the Motion and Viasat's pending Rule 12(b) motion, *see* Dkts. 23 & 24, the evidence to date indicates ***Viasat did not call Plaintiff*** and thus he lacks standing to pursue this action, in either an individual or representative capacity. *See* Dkt. 29 at 7-10. These issues, and others identified in the Motion, are prototypical individualized issues that should be resolved before engaging in the cost of class discovery. As discussed below, Plaintiff's Response to the Motion (*see* Dkt. 31) does not demonstrate otherwise.

1

Indeed, Plaintiff's main argument against bifurcation seems to be that, because certain class members might also have claims that lack merit (and are demonstrably false), in the same way as Plaintiff's claims, individual and class discovery is "overlapping" and thus that bifurcation would somehow be inefficient here. *See* Dkt. 31 at 6-7. This non-sensical position ignores the whole point of the Motion. Viasat has already submitted evidence showing Plaintiff's claims lack merit. If targeted individual discovery further confirms he has no valid claim, *there is no need for any class discovery* (of which Viasat would bear the most burden and expense), and the entire case ends early, efficiently, and in one fell swoop. *See* Dkt. 29 at 7 (citing TCPA cases granting similar motions to bifurcate discovery for this reason and others). One cannot fathom a more just, speedy, and inexpensive determination to any case. Therefore, for the reasons in the Motion and below, the Court should enter Viasat's proposed (or a similarly appropriate) bifurcated discovery schedule. *See* Dkt. 27-2.

## II.     ARGUMENT

It is well accepted that often "'narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery'" in putative TCPA class actions like this one. *Fania v. Kin Ins., Inc.,* 2024 WL 2607303, at *2 (E.D. Mich. May 24, 2024) (quoting *Pavelka v. Paul Moss Ins. Agency, LLC,* 2023 WL 3728199, at *2 (N.D. Ohio May 30, 2023)) (granting motion to bifurcate). As such, myriad courts have recognized that TCPA class actions "present a unique opportunity that warrants

2

bifurcated discovery due to th[e] cost savings" that can be realized and the prejudice that can be avoided by wasting time early on costly class discovery—unlike other types of class actions where perhaps bifurcation may not be as beneficial. *Cameron v. CHW Group, Inc.,* 2025 WL 2336513, at *3 (D. Utah Aug. 13, 2025) (bifurcating discovery in similar DNC case).[1] All this rings true in this case, given that individual discovery adduced to date shows that Viasat did not call Plaintiff, let alone violate the TCPA. *See* Dkt. 29 at 7-10. *See also* Dkt. 24 at 1-2, 4-5, 7-10; Dkts. 23-1 to 23-8.

Despite this evidence and the fact that bifurcation is frequently ordered in TCPA class actions, Plaintiff argues it is inappropriate here because, *inter alia*, that: (1) the parties would have to "duplicate" discovery efforts should his individual claims proceed after the initial period (*i.e.,* there could be "overlap" in individual and class issues); (2) "pending discovery will disprove Viasat's theory and demonstrate the necessity of class discovery"; (3) "class discovery will be no more burdensome or involved than individual discovery"; and (4) he or class members could be prejudiced due to potential evidence loss. Dkt. 31 at 1-3, 6-7, 14. All of these arguments fail.

**First**, as the Motion shows, numerous courts have rejected such "duplication" arguments when granting bifurcated discovery in similar TCPA cases. *See* Dkt. 29 at

---

[1] *See also Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, 2014 WL 413534, at *5 (D.N.J. Feb. 4, 2014) (granting a similar motion to bifurcate in a TCPA case, holding that "[bifurcation] will allow the Court to address a narrow, potentially dispositive issue in a timely and cost effective manner with no significant prejudice to Plaintiff"); *see also* Dkt. 29 at 6-11 (collecting TCPA cases, ruling similarly).

3

10-11 (citing *Harris, Sapan, Moore, Kemen*). These courts, and many others, have correctly recognized that potential discovery "duplication" or "overlap" alone is insufficient to overcome the important efficiencies bifurcated discovery provides in TCPA class actions, and it does not outweigh the inherent prejudice that defendants suffer by conducting costly and potentially wasteful class discovery. *Id.*[2] Plaintiff's Response ignores the numerous authorities in the Motion holding that federal courts across the country often bifurcate discovery in TCPA cases in the form Viasat has proposed, notwithstanding the potential for some "overlap" between individual and class issues. *See id.* at 3-11. This Court should follow those cases and not Plaintiff's.

Specifically, Plaintiff's Response relies on three decisions from other courts in this Circuit to support his position that bifurcated discovery would be somehow less efficient in this case. *See* Dkt 31 at 3-4 (citing *Hartley-Culp v. Credit Mgmt. Co.*, 2014 WL 4630852, at *3 (M.D. Pa. Sept. 15, 2014); *Friel v. Line 5, LLC*, 2025 WL 2422617, at *8 (M.D. Pa. Aug. 21, 2025); *EQT Prod. Co. v. Terra Servs., LLC*, 2014 WL 12838677, at *1 (W.D. Pa. Oct. 22, 2014)). These cases are inapposite and should not be followed. Most significantly, none of these three cases—which provide scant reasoning for their holdings on bifurcation—involved pending motions to dismiss challenging the plaintiff's individual claims on Article III standing grounds, like

---

[2] *See also Chenault v. Beiersdorf, Inc.*, 2020 WL 5016795, at *3 (S.D. Ohio, Aug. 24, 2020) (solely because "class and merits-based discovery will … inevitably be intertwined to some extent does not necessitate denying a motion to bifurcate…").

4

Viasat's here. *See generally* Dkts. 23 and 24. They also involved proposed bifurcated discovery plans spanning multiple years (unlike the short 90- to 120-day initial period Viasat envisions, *see* Dkt. 29 at 14-15) and/or broader areas of inquiry, where the "overlap" between individual and class issues could perhaps be significant (unlike the narrow issues at bar here, *see id.* at 8-9, 11).[3] In short, these case are distinguishable because they did not involve the same narrow plaintiff-specific dispositive issues here.

Plaintiff's other cases on this issue fare no better. *See* Dkt 31 at 4-5, 7-11. *In re Plastics Additives* and *Comcast* are not TCPA cases and thus have limited relevance in this case. And in several cases (*e.g.*, *Charvet*, *Grippo*, *Blair, Nock, Katz*), the courts appeared concerned with potential overlap where defendants sought to bifurcate all merits discovery from class discovery (*i.e.,* bifurcating discovery into whether the defendant was liable to the named plaintiff(s) *and* to the putative class members from class discovery). Viasat's request is different—it seeks to focus discovery first on narrow dispositive issues unique to the named plaintiff's claims, *i.e.,* whether **Plaintiff** has standing, received a "telephone solicitation," or is a "residential" subscriber. *See*

---

[3] For example, the issue in *Hartley-Culp* was whether the plaintiff consented to the calls, the defendant did not move to dismiss, and it was undisputed that the defendant called the plaintiff (unlike here). *See* 2014 WL 4630852, at *2. In *Friel*, the defendant moved to *trifurcate* discovery—"that is, 1) discovery into [the plaintiff]'s individual claims; 2) discovery into the appropriateness of class certification if [the plaintiff's] claims proceed; and 3) if any class is ultimately certified, merits discovery for the class or classes." 2025 WL 2422617, at *8. And not only is *EQT* not even a TCPA case, and thus irrelevant, but also the court noted that the events at issue took place in 2012, whereas the defendant's proposed schedule would prolong the case until at least 2018, and thus there was a risk of fading memories or unavailable witnesses. *See* 2014 WL 12838677, at *1. None of these cases are similar to the present case.

*also* Dkt. 29 at 3-5, 10-11 (citing *Kemen*, *Moore*, *Sapan*, *Cameron* (bifurcating discovery in similar cases, rejecting same "overlap" argument)). Finally, in several cases (*e.g., Charvet, Bond, Ahmed*, *Nock*), the bifurcation request came late, after the pleadings stage and/or well into discovery, and thus there was a significant possibility of delay (and of prejudice to the plaintiff). That is not true here. *See* Dkt. 27 at 10-11.

Plaintiff's reliance on *Charvat v. Plymouth Rock Energy, LLC* is misplaced for another reason. In denying bifurcation there, the court noted that "even if the named [p]laintiff's claim were defeated, there is no reason to think that this case would likely end" because the complaint at bar specifically identified two other persons who had received similarly violative calls and could step in as named plaintiffs; thus, there was nothing suggesting the "[d]efendant's success as to [p]laintiff's individual claim would necessarily result in a prompt, efficient resolution of this litigation." 2016 WL 207677, at *3 (E.D.N.Y. Jan. 12, 2016). By contrast, here, Plaintiff has identified no one else who allegedly received illegal calls from Viasat; so, if his claim fails, the case ends.

Plaintiff also relies heavily on *Bond v. Folsom Ins. Agency, LLC* for his "overlap" argument. *See* Dkt. 31 at 7-8. However, *Bond* is distinguishable not only for the reasons above but also because the defendant there challenged only the single legal issue of whether the plaintiff adequately alleged he received a "call" within the meaning of the TCPA (specifically, whether a "ringless voicemail" was a "call"), and the court found his pled allegations sufficient for this purpose. *See* 2025 WL 863469,

6

at *2-3 (N.D. Tex. Mar. 19, 2025). Such is not true here, as Viasat has identified numerous, narrow potentially case-dispositive factual issues impacting Plaintiff's standing (among other things) that it seeks to explore during the proposed initial discovery period that have not yet been addressed by this Court on the pleadings. *See* Dkt. 29 at Section II.C. In sum, none of these cases has any persuasive value here.

Plaintiff further suggests that Viasat's "proposal is bound to lead to additional discovery disputes and proceedings that would be completely unnecessary without bifurcation." Dkt. 31 at 4. It is hard to see why bifurcation here would lead to any increase in discovery disputes. That is because it will not. Indeed, counsel here are of a "sophisticated enough nature to not disintegrate into childish petty discovery fights over what constitutes merits discovery versus class discovery. Counsel in the authority relied on by [Viasat] were able to manage this divide" and this Court should be "confident counsel can do so here." *Cameron*, 2025 WL 2336513, at *3 (cleaned up).

Lastly, the parties would not need "two rounds of discovery" if the Motion is granted, as Plaintiff suggests. Dkt 31 at 3. Viasat either called Plaintiff or it did not. He is either a "residential" subscriber or he is not. He either received a "telephone solicitation" or he did not. These are effectively "yes or no" questions that can be answered through targeted individual discovery. No depositions or experts are needed to address such simple factual questions. Nor is class discovery. If Viasat did not call Plaintiff (or if he is not a residential subscriber or did not receive a telephone

7

solicitation), as will be easily determinable after one round of individual discovery, the entire case is over without any need to consider Plaintiff's class allegations.

**Second**, Plaintiff's argument that "currently pending discovery will disprove Viasat's theory and demonstrate the necessity of class discovery" (Dkt. 31 at 1) is unavailing. On this point, Plaintiff argues that Viasat has provided "no specific basis on which to conclude that Plaintiff's individual claims are particularly vulnerable to early defeasance." Dkt 31 at 9 (quoting *Simmons v. Author Reputation Press LLC*, 2025 WL 863601, at *2 (D. Mass. Mar. 18, 2025)). Plaintiff is incorrect.

Indeed, as noted above and as the Motion demonstrates, discovery to date relating to Plaintiff's individual claims shows that he lacks standing to maintain a TCPA claim or to serve as a class representative in this case—*e.g.*, Viasat did not call him, does not make telemarketing calls, contractually forbids others from doing so on its behalf, and has no relevant connection with the alleged callers or calls. *See* Dkt. 29 at 7-9. *See also* Dkt. 24 at 1-2, 4-5, 7-10; Dkts. 23-1 to 23-8. Attempting to sidestep all this evidence, Plaintiff asserts that Viasat's argument on this point relies on "a single subpoena it issued to an entity that is not the Plaintiff's telephone company," and falsely suggests that Viasat intentionally issued subpoenas to incorrect entities to support its standing argument. Dkt. 31 at 2, 6. Again, Plaintiff is wrong.

As an initial matter, Viasat's standing challenge does not depend solely on the aforementioned carrier subpoena. *See, e.g.*, Dkt. 23-1, 23-6, 23-7, 23-8. But that

8

subpoena was proper and is highly probative evidence that counsels in favor of bifurcation (and also dismissal) here. Viasat subpoenaed T-Mobile because Plaintiff alleged that he was called on a cellular phone and public records show that his alleged cell number is a T-Mobile number.[4] Indeed, ***Plaintiff himself*** subsequently identified "T-Mobile/Google Fi" as his "telephone carrier" in the parties' Rule 26(f) report (*see* Dkt. 17, § 2.1) and served his own subpoena to T-Mobile (*see* Dkt. 30-3).

Moreover, Plaintiff omits that Viasat received ***authenticated*** call records from T-Mobile in response to its subpoena showing calls and texts to and from Plaintiff's alleged cell phone number before, on, and after the date of the calls at issue (April 19, 2024). *See* Dkt. 23-2, ¶ 8, 23-4, 23-5. In other words, these records suggest that T-Mobile was indeed his carrier at the time and, importantly, do not show either of the calls alleged in the operative Complaint. And Plaintiff has not provided any credible evidence from ***any*** source to date connecting Viasat to the subject calls or showing that he even received them in the first place. The parties should get to the bottom of that critical factual discrepancy promptly before spending any time on class discovery.

Simply, if Plaintiff believes records from another carrier will show he received the subject calls or that Viasat is responsible for them, contrary to all relevant evidence to date, the parties should get those records now through targeted individual discovery, and he could use this information (if it exists) to address his lack of standing.

---

[4] *See* www.phonevalidator.com (a commonly-used phone number search engine).

9

Lastly, Plaintiff's argument on this front myopically focuses on the issue of TCPA liability—*i.e.,* whether Viasat is directly or vicariously liable for the subject calls, or more simply did Viasat call Plaintiff or not. *See* Dkt. 31 at 11-14.[5] However, Plaintiff's Response ignores the other narrow potentially case-dispositive issues the Motion identifies as grounds for bifurcated discovery—*e.g.,* whether Plaintiff received a "telephone solicitation" or is a "residential" subscriber, as is also required to establish his DNC claim. *See* Dkt. 29 at 7, 9, 11. As the *Cameron* court correctly observed, all of "these [same] narrow, potentially dispositive, issues can be decided at the outset of [this] case prior to costly class discovery" as well, with no delay or prejudice to Plaintiff. 2025 WL 2336513, at *3. This Court should rule similarly here.

**Third**, instead of addressing the substance of Viasat's argument that early resolution of the narrow case-dispositive individual issues identified in the Motion and above might obviate the need for costly and time-consuming class discovery, Plaintiff merely argues these same questions can *also* be examined through class discovery. *See* Dkt. 31 at 6-7, 9-10, 14. This, however, ignores the efficiency and judicial economy considerations central to Viasat's Motion. Indeed, though it is generally true that individualized issues *can* sometimes also be resolved through class

---

[5] Plaintiff relies heavily on *Carter v. Health Insurance King Agency, LLC*, Case No. 3:25-cv-00005-SHL-WPK, ECF No. 31 (S.D. Iowa Aug. 18, 2025) on this issue, but that court was not faced with a bifurcation motion nor with the question of whether individual discovery could disprove (and thus resolve) plaintiff's entire theory of liability. As such, *Carter* is of no moment in this case.

10

discovery, this is classically-flawed circular logic. If Plaintiff's individual claims are addressed first and are found baseless (as Viasat believes them to be), no class discovery would be required at all. This saves judicial and party resources, in accord with Rule 1. Notably, Plaintiff does not identify how producing records specific to his individual claims first would result in prejudice to *him* or the putative class members. That is because Plaintiff cannot credibly argue that focusing discovery for a short period on the narrow dispositive issues unique to his own claims would prolong the case or be less efficient or more burdensome than the much broader discovery that he seeks. *See* Dkt. 29 at 10-11 (citing cases rejecting similar prejudice arguments).

Moreover, the Motion identifies numerous ways in which Viasat would be severely prejudiced by having to engage in class discovery first, which the Response ignores. *See* Dkt. 29 at 10-11, 13-14. Plaintiff is wrong to suggest Viasat would incur only "little to no additional burden" if bifurcation is denied. Dkt. 31 at 10. Class discovery is inherently more costly and burdensome than individual discovery. And if Plaintiff's own phone or internet records show that Plaintiff himself has no viable TCPA claims against Viasat, then the search for and production of significantly more information will have been entirely unnecessary and a complete waste of judicial and party resources. This is why federal courts have often found bifurcation is appropriate in TCPA class action cases, as the Motion shows. *See* Dkt. 29 at 6-7 (collecting cases). Plaintiff gives this Court no valid reason to rule differently in this case.

In short, "bifurcating discovery into plaintiff specific and class wide phases [in this TCPA case] is the most efficient way to proceed with this litigation" because "the need for class discovery may be eliminated if [Viasat] is able to demonstrate that [Mr. Bronstin], the sole named Plaintiff, lacks a viable individual claim." *Fania*, 2024 WL 2607303, at *2. Plaintiff's Response does not demonstrate otherwise.

**Fourth**, as Viasat anticipated in the Motion, Plaintiff's unsupported suggestion that bifurcation may lead to evidence being "lost or destroyed" is not well taken. *See* Dkt. 31 at 12-13. Courts have consistently found that the mere *theoretical* risk of lost evidence does not weigh heavily (if at all) against bifurcation. *See* Dkt. 29 at 12-13 (citing *Newell*, *Harris, Sapan, Cameron*). And there is no such risk in this case. Viasat takes its obligation to ensure the preservation of evidence for litigation with the utmost seriousness and has fully complied with all such obligations here. It is simply not credible to suggest that evidence could or will be lost should the Court allow the parties to engage solely in individual discovery for a short 90 to 120 day period.

Plaintiff's cited cases on this point are distinguishable and do not compel a different result. In *Saleh v. Crunch, LLC*, the court declined to stay the entire case pending a decision from the Ninth Circuit Court of Appeals because the Ninth Circuit's decision would not be binding on the court and would not automatically moot the case. *See* 2018 WL 11264884, at *1 (S.D. Fla. Feb. 28, 2018). Here, Viasat is not asking for a stay and seeks at most 120 days to conduct individual discovery.

12

*Lathrop v. Uber Techs., Inc.* also involved a stay request rather than a bifurcation motion. There, the defendant moved to stay two separate proceedings pending before different courts. *See* 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016). The *Lathrop* court found the plaintiffs would suffer prejudice because the cases "would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate," given one of those court's opinions was unlikely to be the final step in the litigation, and the other's opinion was unlikely to render the instant case moot. *Id.* But again, Viasat does not seek a stay here and instead only seeks an initial individual discovery period of 90 to 120 days, which is sufficiently short to mitigate any hypothetical risk of evidence loss.

Finally, *Levitt v. Fax.com*, 2007 WL 3169078, at *2 (D. Md. May 25, 2007) and *Pasco v. Protus IP Sols., Inc.*, 826 F. Supp. 2d 825, 831 (D. Md. 2011), do not support the proposition that a brief delay of discovery will increase risk to the putative class members. In fact, neither *Levitt* nor *Pasco* concerned destruction of evidence on account of a brief delay. And the defendant in *Simon v. Ultimate Fitness Group LLC* requested an indefinite stay, pending the outcome of a potential FCC ruling. 2019 WL 4382204, at *8 (S.D.N.Y. Aug. 19, 2019). The bottom line is that, in contrast to all of Plaintiff's cited authorities in the Response, this case is still in its very early stages. Viasat is not asking for a stay or indefinite delay, there is no reason to think any evidence will be lost or that any party or third party is not properly preserving evidence

(and Plaintiff has not shown otherwise), there is no appeal at play, and any "delay" is likely to be short. In all, bifurcation presents no downside to *anyone* in this case.

## III. CONCLUSION

All told, the Motion demonstrates bifurcated discovery is warranted here for many reasons. Plaintiff's Response does not show otherwise. Thus, for the reasons in the Motion and above, the Motion should be granted and discovery bifurcated.

Dated: October 13, 2025

Respectfully submitted,

By: */s/ A. Paul Heeringa*

John W. McGuinness
(*Pro Hac Vice* to be Requested)
A. Paul Heeringa
(Admitted *Pro Hac Vice*)
MANATT, PHELPS & PHILLIP, LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, D.C. 20036
Telephone: 202-585-6500
jmcguinness@manatt.com
pheeringa@manatt.com

FREDERICK P. SANTARELLI (PA 53901)
STEVEN C. TOLLIVER, JR. (PA 327165)
ELLIOTT GREENLEAF, P.C.
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000 (phone)
FPSantarelli@elliottgreenleaf.com
sct@elliottgreenleaf.com

*Counsel for Defendant Viasat, Inc.*

## CERTIFICATE OF COMPLIANCE WITH LR 7.8

I hereby certify that, pursuant to M.D.Pa. Local Rule 7.8(b)(2), this Brief complies with the word-count limitation of Local Rule 7.8, as the Brief is less than 15 pages (including headings and footnotes but not including the cover page, tables, signature block, or certificates) in 14-point Times New Roman font.

Dated: October 13, 2025   　　　　　　/s/ A. Paul Heeringa
　　　　　　　　　　　　　　　　　　A. PAUL HEERINGA


## CERTIFICATE OF SERVICE

I hereby certify that, on October 13, 2025, I filed the foregoing electronically through the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

　　　　　　　　　　　　　　　　By: /s/ A. Paul Heeringa