# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all other similarly situated,<br><br> Plaintiff,<br><br>v.<br><br>VIASAT, INC.,<br><br> Defendant. | Civil Action No. 1:25-cv-00927-KMN<br>(Hon. Keli M. Neary) |

## MOTION FOR PROTECTIVE ORDER TO BIFURCATE

## DISCOVERY (DEFENDANT'S REPLY BRIEF)

## (UNPUBLISHED AUTHORITIES)

2025 WL 863469
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

Joseph BOND, on behalf of himself and
all others similarly situated, Plaintiff,

v.

FOLSOM INSURANCE AGENCY
LLC and Cody Folsom, Defendants.

No. 3:24-cv-2551-L-BN
|
Signed March 19, 2025

**Attorneys and Law Firms**

Anthony I. Paronich, Paronich Law PC, Hingham, MA,
Andrew Roman Perrong, Perrong Law LLC, Glenside, PA,
Sharon K. Campbell, Law Office of Sharon K. Campbell,
Dallas, TX, for Plaintiff.

Jason Ray Jobe, Yesha Prakashcha Patel, Thompson Coe
Cousins & Irons LLP, Dallas, TX, Haley S. Grissom, Dentons
U.S. LLP, Dallas, TX, for Defendants.

**MEMORANDUM OPINION AND ORDER**

DAVID L. HORAN, UNITED STATES MAGISTRATE
JUDGE

**\*1**  Defendants Folsom Insurance Agency, LLC and Cody
Folsom (collectively, "Folsom") have filed a Motion to
Bifurcate Discovery. *See* Dkt. No. 30.

Plaintiff Joseph Bond filed a response. *See* Dkt. No. 31.

This case has been referred to the undersigned United States
magistrate judge for pretrial management under 28 U.S.C. §
636(b) and an order of reference from United States District
Judge Sam A. Lindsay. *See* Dkt. No. 32.

For the reasons explained below, the Court denies Folsom's
Motion to Bifurcate Discovery [Dkt. No. 30].

**Background**

This case concerns a class action lawsuit alleging violations of
the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.
§ 227.

Plaintiff Joseph Bond alleges that Defendants placed at least
one prerecorded telemarketing call to his cellular phone
without his prior express written consent in violation of the
TCPA. *See* Dkt. No. 6.

Bond alleges the following putative class:

> **Robocall Class:** All persons within
> the United States: (1) to whose cellular
> telephone number or other number
> for which they are charged for the
> call (2) Defendants (or an agent
> acting on behalf of Defendants) placed
> a telemarketing call (3) within the
> four years prior to the filing of
> the Complaint (4) using an identical
> or substantially similar pre-recorded
> message used to place telephone calls
> to Plaintiff (5) from four years prior
> to the filing of the Complaint through
> trial.

*Id.* at 9 (emphasis in original).

Folsom denies TCPA liability and contends that Bond cannot
maintain his lawsuit as a class action because it fails to meet
the requirements of Federal Rule of Civil Procedure 23.

The Parties have begun discovery and filed a joint status
report to assist the Court in entering a scheduling order under
Federal Rule of Civil Procedure 16(b). *See* Dkt. No. 29.

In the joint status report and this subsequent motion, Folsom
asks the Court to bifurcate and limit discovery into two phases
– individual and class-based discovery – and allow for class-
based discovery only if Bond's individual claims survive
dispositive motions. *See* Dkt. No.29 at 4-5; Dkt. No. 30 at 1.

**Legal Standards & Analysis**

"Under [Federal Rule of Civil Procedure] 42(b), district
courts have discretion to bifurcate trials '[f]or convenience, to

avoid prejudice, or to expedite and economize.' " *Pharmerica Corp. v. Advanced HCA LLC*, No. 2:17-cv-00180-JRG, 2018 WL 3326822, at *1 (E.D. Tex. May 1, 2018) (quoting Fed. R. Civ. P. 42(b)). "The decision to bifurcate 'is a matter within the sole discretion of the trial court.' " *Id.* (quoting *First Tex. Sav. Ass'n v. Reliance Ins. Co.*, 950 F.2d 1171, 1174 n.2 (5th Cir. 1992)).

And Federal Rule of Civil Procedure "26 affords trial courts ample authority to control the sequence and timing of discovery." *E.E.O.C. v. Lawler Foods, Inc.*, 128 F. Supp. 3d 972 (S.D. Tex. 2015).

The issue before the Court is whether it should bifurcate and limit discovery into two phases – individual and class-based discovery,

Folsom contends that discovery should be bifurcated because rulings on Bond's individual claims will determine the validity of his class-based claims. *See* Dkt. No. 1 at 1. And it asserts that "bifurcation will be expedient and economical because it will help determine whether [Bond] is a proper class representative before broader discovery is taken." *Id.*

 **\*2** Bond contends that Folsom's bifurcation proposal is an "end-run" around the Court's Order granting in part Bond's motion to compel, which involved classwide discovery. *See* Dkt. No. 31 at 2-3; Dkt. No. 28.

In the order that Bond references, the Court stated:

> As to Interrogatory Nos. 6 and 7, "[t]he Court will not engage in a preemptive merits analysis to determine whether [Bond] is entitled to discovery on the claim that [he] has pleaded and is pursuing. *Firebirds Intl, LLC v. Firebird Rest. Grp., LLC*, No. 3:17-cv-2719-B, 2018 WL 3655574, at *16 (N.D. Tex. July 16, 2018). "The Court will not prematurely assess the balance of the evidence on the merits of [Bond's] claim[s] against [Folsom Insurance] and will not credit [Folsom Insurance's] assessment to cut off [Bond] from seeking relevant evidence from this named party before discovery has closed and any summary judgment motion has been filed." *Velazquez v. El Pollo Regio LP, LLC*, No. 3:15-cv-3170-M, 2017 WL 2289185, at *6 (N.D. Tex. May 25, 2017). On the Court's reading, Bond has pleaded "call" broadly enough to include ringless voicemails, and, although the Court need not now determine whether a ringless voicemail can support liability as a matter of law under the statute, Folsom Insurance's answer is incomplete as to what Bond is asking

based on what he has pleaded and is pursuing. And Folsom Insurance has not supported its other boilerplate objections and may not avoid appropriate classwide discovery that is – as Bond persuasively argues – necessary for a future class certification motion.

Dkt. No. 28.

Bond also asserts that there is "significant overlap" between discovery relevant to the merits of his individual claims and issues of class certification Dkt. No. 31 at 6. And, so, Bond argues that bifurcation would lead to duplication of discovery and may result in further discovery disputes regarding the distinction between merits and class discovery. *See id.* at 6-7. In Bond's view, bifurcation of discovery in this case would lead to the "opposite of judicial economy." *Id.* at 6.

As to class certification under Rule 23, the Supreme Court has instructed that "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' " *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

And "[f]requently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim" because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 351 (cleaned up).

Considering *Dukes* and the "rigorous analysis" requirement for class certification, district courts have been reluctant to bifurcate class-related discovery from discovery on the merits. *See Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. EDCV152057FMOSPX, 2018 WL 501413 (C.D. Cal. Jan. 5, 2018) (declining to bifurcate discovery in TCPA case and stating that "the distinction between class certification and merits discovery is murky at best and impossible to determine at worst"); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012) (collecting cases).

 **\*3** In another TCPA case, *Cardenas v. Resort Sales by Spinnaker, Inc.*, No. 9:20-cv-00376-RMG, 2021 WL 733393 (D.S.C. Feb. 24, 2021), the Court found that bifurcation would not serve the interests of judicial economy given the plaintiff's "persuasive argument that the evidence needed to determine whether [they] have a claim substantially overlaps with [their] ability to represent a class under [Rule] 23." *Cardenas*, 2021 WL 733393, at *3.

Similarly, here, the undersigned already found that Folsom "may not avoid appropriate classwide discovery that is – as Bond persuasively argues – necessary for a future class certification motion." Dkt. No. 28. And, so, the Court agrees with Bond that bifurcation would not promote efficiency because there is considerable overlap between discovery relevant to the merits of his individual claims and issues of class certification. *Accord True Health Chiropractic Inc. v. McKesson Corp.*, 2015 WL 273188, *2-3 (N.D. Cal. 2015) (declining to bifurcate a TCPA class action and noting that individual and class discovery claims typically overlap).

And, in light of the bulk of authority discussing the lack of a "bright line" distinction between merits and class discovery, bifurcation could lead to avoidable, future disputes over whether a particular discovery request relates to the merits or to class certification. *See Quinn v. Specialized Loan Servs., LLC*, 321 F.R.D. 324, 327–28 (N.D. Ill. 2017); *see also City of Pontiac General Employees' Retirement System v. Wal–Mart Stores, Inc.*, 2015 WL 11120408, *1–2 (W.D. Ark. 2015) (bifurcation may force the court to resolve "endless discovery disputes"); *True Health*, 2015 WL 273188, at *3 (finding that

bifurcation "raise[s] a slew of issues as to what discovery relates to the class, as opposed to the named plaintiffs, thereby causing additional litigation regarding the distinction between the two.").

And, so, considering the binding law from *Dukes* and persuasive authority from other district courts, the Court declines to bifurcate discovery in this case.

### Conclusion

For the reasons explained above, the Court denies Folsom's Motion to Bifurcate Discovery [Dkt. No. 30]. The Court will separately enter a scheduling order under Federal Rule of Civil Procedure 16(b) in accordance with this Memorandum Opinion and Order.

SO ORDERED.

### All Citations

Slip Copy, 2025 WL 863469

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2336513
Only the Westlaw citation is currently available.
United States District Court, D. Utah.

Jordan Cameron, on behalf of himself
and others similarly situated, Plaintiff,

v.

CHW Group, Inc. a New Jersey corporation doing
business as Choice Home Warranty, Defendant.

Case No. 2:23-cv-00320-HCN-DBP
|
Filed 08/13/2025

District Judge Howard C. Nielson, Jr

MEMORANDUM DECISION AND ORDER

Dustin B. Pead United States Magistrate Judge

**\*1** Before the court are two related motions. First the parties move the court for a scheduling conference because the parties have been unable to reach agreement on all the issues discussed in their Fed. R. Civ. P. 26(f) conference. [1] Second, Defendant moves the court for an order bifurcating discovery between the individual claim of Plaintiff Jordan Cameron and the putative class members' claims. [2] Bifurcation of discovery is one issue upon which the parties could not agree during the Rule 26(f) conference. Having carefully considered the parties' written memoranda and proposed scheduling orders, along with relevant case law, the court orders as follows. [3]

## BACKGROUND

In their scheduling conference the parties could not reach agreement on the following issues:

1. Defendant requests discovery be bifurcated. Plaintiff opposes these requests.

2. Defendant wants to limit each side to 5 depositions each. Plaintiff wants to limit each side to 10 depositions each.

3. Defendant does not want to limit the number of requests for admissions. Plaintiff wants to limit each side to 50 requests.

4. Defendant does not want to limit the number of requests for production. Plaintiff wants to limit each side to 50 requests.

5. Plaintiff is requesting that the deadline to file a motion for class certification occur approximately one month after the fact discovery deadline. Defendant requests this court set the deadline for class certification to occur after the close of expert discovery. [4]

The court resolves these issues in the scheduling order that is entered contemporaneously with this order. Therefore, the parties' request for a scheduling conference to consider these issues is GRANTED. The court further addresses the Motion to Bifurcate in this order. [5]

This is a putative class action. Plaintiff alleges Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (TCPA) by calling Plaintiff and putative class members with solicitations despite having their phone numbers registered on the National Do-Not-Call Registry. Plaintiff alleges Defendant utilized a campaign to "market its home warranty services through the use of unsolicited calls, pre-recorded text messages, and other deceptive practice in plain violation" of the TCPA. [6] This case was before District Judge Bruce Jenkins before he passed away. Defendant sought to dismiss this case and following the denial of that motion, and the denial of a Motion to Reconsider Interlocutory Order, the parties held their Rule 26(f) scheduling conference earlier this year. As noted above the parties failed to reach agreement on all discovery issues and the present motion followed.

## DISCUSSION

**\*2** In considering whether to bifurcate discovery in a putative class action, courts look to both Federal Rules of Civil Procedure 23 and 42(b). [7] Rule 42(b) provides a trial court with wide discretion to bifurcate proceedings for "convenience, to avoid prejudice, or to expedite and economize." [8] When considering whether to bifurcate class discovery and a plaintiff's individual claims, courts consider " '(1) [the] overlap between individual and class discovery,

(2) whether bifurcation will promote [Fed. R. Civ. P. 23's] requirement that certification be decided at 'an early practicable time,'(3) judicial economy, and (4) any prejudice likely to flow from the grant or denial of a stay of class discovery.' "[9] As this court has noted, "[b]ifurcation under Rule 42 is not the norm or even a common occurrence."[10] However, in the context of TCPA putative class actions, courts have bifurcated discovery, and Defendant cites to a number of cases from other circuits,[11] where courts have recognized the efficiencies of bifurcated discovery in TCPA class actions.[12] Courts granting such motions have acknowledged the well-recognized fact that "discovery in class actions is expensive and asymmetric, with defendants bearing most of the burdens."[13] And Federal Rule 1's guiding directive "to secure the just, speedy, and inexpensive determination of every action and proceeding."[14]

**\*3** "The decision to bifurcate discovery in putative class actions prior to certification is committed to the discretion of the trial court."[15] Class certification requires the court to be "satisfied, after a rigorous analysis, that the pre-requisites of Rule 23(a) have been satisfied."[16] To certify a class, a plaintiff must establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[17] As noted by this court, often, "the class determination 'involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' "[18] Courts are therefore "reluctant to bifurcate class-related discovery from discovery on the merits."[19] "This is because the distinction between class certification and merits discovery is murky at best and impossible to determine at worst"[20] and can result in "petty [ ] fights over what constitutes merits discovery versus class discovery."[21] Turning to the factors outlined in *Klassen*[22] and applied by this court in *Dillard*[23], the court finds that bifurcation is warranted here.

Defendant argues that while bifurcated discovery may not be appropriate in all cases, it is appropriate here because this is not a routine merits versus class bifurcation request. Instead, Defendant's focus is on "narrow issues that are unique to Plaintiff's individual TCPA claim (e.g., whether he consented, is a "residential telephone subscriber," received a "telephone solicitation") for which no class discovery would

be necessary for a short period before proceeding to broader discovery."[24]

First, in contrast to *Dillard*, there is enough separation between class discovery and individual discovery to warrant bifurcation. This includes discovery concerning whether Plaintiff consented to the calls, whether his particular number is registered on the National DNC Registry, whether Plaintiff is a "residential telephone subscriber", and whether Plaintiff received telephone solicitations that fall within the TCPA. As noted by other courts, these narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery. TCPA cases, in the court's view, present a unique opportunity that warrants bifurcated discovery due to those cost savings.

In closely related fashion, the court agrees with Defendant that Rule 23 requires certification be decided at "an early practicable time" not for "the earliest practicable class certification" as advanced by Plaintiff. Rule 23 must be balanced with Rule 1's requirements and limited discovery that may ultimately preclude costly class discovery serves Rule 1's purposes. There is nothing in limited individual focused discovery that prevents class certification at "an early practicable time."

As to the third factor, the court is persuaded that counsel here are of a sophisticated enough nature to not disintegrate into childish "petty discovery fights over what constitutes merits discovery versus class discovery."[25] Counsel in the authority relied on by Defendant were able to manage this divide and the court is confident counsel can do so here. The court finds judicial economy is promoted by an efficient narrow focus on Plaintiff before proceeding to class discovery. If the case can be resolved on those narrow dispositive issues relevant to Plaintiff and his individual claims, the limited resources of the court will be preserved. And, if Plaintiff moves forward past such discovery, he will be better positioned to represent the needs of the class.

**\*4** The prejudice identified by Defendant does not appear to be unique and mostly cost based. However, in taking all the factors together, along with the reasoning found in the authority cited to by Defendant that is persuasive, discovery should be bifurcated in this case. Plaintiff's allegations of prejudice focus on alleged discovery disputes and additional delays and costs. As noted above, there is the potential for cost savings for all parties and the court is persuaded that some discovery that focuses on Plaintiff will be utilized in making

a class certification decision later. For example, the typicality requirement will benefit from discovery into Plaintiff.

Finally, the court is not persuaded by Plaintiff's arguments to the contrary. There is no request to stay discovery such as in *Dillard*, and Defendant's discovery requests that appear to be class-related do not amount to waiver. Moreover, the "more than two years later"[26] request to bifurcate discovery does not preclude such a request given what happened procedurally in this case and with the unfortunate passing of Judge Jenkins.

**ORDER**

For the foregoing reasons, Defendant's Motion to Bifurcate Discovery is GRANTED. Defendant may conduct discovery focusing on Plaintiff's individual TCPA claims, and this will be followed by class discovery.

DATED this 13 August 2025.

**All Citations**

Slip Copy, 2025 WL 2336513

---

**Footnotes**

1    ECF No. 51.

2    ECF No. 52.

3    District Judge Howard Nilson referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A). Under DUCivR 7-1(g), the court concludes that oral argument is not necessary and, therefore, decides the motion on the written memoranda.

4    Joint Motion for Scheduling Conference at 2, ECF No. 51.

5    Plaintiff filed a Motion to Strike the Motion to Bifurcate. The court denied this motion. ECF No. 56.

6    Complaint at ¶ 2, ECF No. 1.

7    *Klassen v. SolidQuote LLC*, No. 23-cv-00318-GPG-NRN, 2023 WL 5497865, at *2 (D. Colo. Aug. 23, 2023).

8    Fed. R. Civ. P. 42(b).

9    *Dillard v. Maverik, Inc.*, No. 2:24-CV-00285-TS-JCB, 2024 WL 4145162, at *2 (D. Utah Sept. 11, 2024), objections overruled, No. 2:24-CV-285-TS-JCB, 2024 WL 4534694 (D. Utah Oct. 21, 2024) (quoting *Klassen*, 2023 WL 5497865, at *2.

10   *Gadd v. S. Jordan City*, No. 2:15-CV-00667, 2018 WL 6441763, at *1 (D. Utah Dec. 7, 2018) (citation and quotations omitted).

11   *See Sapan v. Fin. of Am. Reverse LLC*, No. 8:24-CV-01213-FWS-KES, 2025 WL 1932935, at *3 (C.D. Cal. July 14, 2025) (bifurcating discovery between the plaintiff's individual claim and class discovery); *Moore v. Demand Science Grp, LLC*, 2024 WL 175743, at *1 (N.D. Ill. Jan. 4, 2024) ("The Court is concerned about wholly unnecessary discovery, so it grants the motion for bifurcation ... because it is more efficient to proceed with the limited and targeted discovery as proposed by Defendant given that the overlap between the proposed initial discovery and merits discovery is minimal"); *Pavelka v. Paul Moss Ins. Agency, LLC*, 2023 WL 3728199, at *3 (N.D. Ohio May 30, 2023) ("In cases asserting both individual liability and potential 'class action' claims under the TCPA, courts have often approved bifurcating discovery in such cases where

narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery.") (collecting cases); *Osidi v. Assurance IQ*, LLC, 2022 WL 623733, at *2 (D. Mass. Mar. 3, 2022) (bifurcating discovery in TCPA case, finding "the need for class discovery may be eliminated if [d]efendant is able to demonstrate that the [n]amed [p]laintiff lacks viable individual claims"); *Akselrod v. MarketPro Homebuyers LLC*, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021) (granting defendant's motion to bifurcate discovery in TCPA case and finding "[l]imited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive"); *Newell v. Aliera Healthcare, Inc.*, 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020) (reasoning that the limited discovery into the individual plaintiff "has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery") (quotation and citation omitted); *Katz v. Liberty Power Corp., LLC*, 2019 WL 957129, at *2 (D. Mass. Feb. 27, 2019) ("[C]lass discovery is not necessary to address certain issues that may be dispositive of Plaintiffs' individual claims or ability to bring the asserted class claims, including whether the phone numbers at issue are within the TCPA, whether named [p]laintiffs' are within the classes they purport to represent, and whether any named [p]laintiffs with a viable claim can demonstrate the Court's jurisdiction to resolve that claim."); *Leschinsky v. Inter-Continental Hotels Corp.*, 2015 WL 6150888, at *2 (M.D. Fla. Oct. 15, 2015) (granting bifurcated discovery in a TCPA case).

12    *See, e.g., Fania v. Kin Ins., Inc.*, No. 22-12354, 2024 WL 2607303, at *2 (E.D. Mich. May 24, 2024) ("In the Court's view, bifurcating discovery into plaintiff specific and class wide phases is the most efficient way to proceed with this litigation. In cases asserting both individual liability and potential class action claims under the TCPA, courts have bifurcated discovery 'where narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery.') (quoting *Pavelka v. Paul Moss Ins. Agency, LLC*, No. 1:22 CV 02226, 2023 WL 3728199, at *2 (N.D. Ohio May 30, 2023) (collecting cases).

13    *Babare v. Sigue Corp.*, 2020 WL 8617424, at *2 (W.D. Wash. Sept. 30, 2020).

14    Fed. R. Civ. P. 1.

15    *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-JST, 2015 WL 273188, at *1 (N.D. Cal. Jan. 20, 2015); *see also Crawford-El v. Britton*, 523 U.S. 574, 598–99 (1998) (noting district courts have broad discretion to control discovery and to dictate the sequence of discovery)

16    *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (citation omitted).

17    Fed. R. Civ. P. 23(b)(3).

18    *Dillard*, 2024 WL 4145162, at *3 (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 351 (quotation and citation omitted)).

19    *Klassen*, 2023 WL 5497865, at *2 (quotation and citation omitted).

20    *Id.*

21    *Id.* at 3.

22    2023 WL 5497865.

23    2024 WL 4145162.

24    Motion at 11.

25    *Klassen*, 2023 WL 5497865, at *3.

2025 WL 2336513

26    Plaintiff's Opposition Memorandum at 2.

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Charvat v. Plymouth Rock Energy, LLC, Not Reported in Fed. Supp. (2016)

Case 1:25-cv-00927-KMN    Document 35    Filed 10/13/25    Page 10 of 51

KeyCite Yellow Flag
Distinguished by Harris v. Shore Funding Solutions Inc., E.D.N.Y., April 21, 2023

2016 WL 207677
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Philip J. CHARVAT, individually and on behalf of all others similarly situated, Plaintiff,

v.

PLYMOUTH ROCK ENERGY, LLC, Defendant.

15-CV-4106 (JMA) (SIL)
|
Signed January 12, 2016

**Attorneys and Law Firms**

Kim Richman, The Richman Law Group, Brooklyn, NY, Beth E. Terrell, Jennifer R. Murray, Mary B. Reiten, Terrell Marshall Law Group PLLC, Seattle, WA, Anthony Paronich, Boston, MA, for Plaintiff.

Simon Fleischmann, Locke Lord LLP, Chicago, IL, Samantha Anne Ingram, Locke Lord LLP, Casey Brian Howard , Locke Lord Bissell and Liddell LLP, New York, NY, for Defendant.

### ORDER

LOCKE, United States Magistrate Judge

**\*1** Presently before the Court in this putative class action brought pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., is Defendant Plymouth Rock Energy, LLC's ("Defendant" or "Plymouth"), motion to bifurcate discovery. *See* Docket Entry ("DE") [25]. For the reasons set forth below, the motion is denied.

### I. Background

Plaintiff Philip Charvat's ("Plaintiff" or "Charvat") Complaint sets forth the following allegations germane to Defendant's motion. *See* DE [1] ("Compl."). On September 12, 2011, Plaintiff registered for the "National Do–Not–Call Registry" under the TCPA. Compl. ¶ 16. As a result, he was entitled not to be called by entities such as Plymouth more than once every twelve months. *Id.* ¶ 8. Nevertheless, Charvat received calls from someone marketing Plymouth's services on April 15,

2015 and May 4, 2015. *See id.* ¶¶ 17–22. Moreover, Plaintiff's experience is not unique. According to the Complaint, it appears that at least two other individuals received multiple calls from Plymouth in violation of the TCPA, one receiving seven calls in two days and the other receiving six calls in two days. *See id.* ¶ 26.

Based on these allegations, Plaintiff brings this case for violation of the TCPA as a class action on behalf of:

> All persons in the United States to whom: (a) Defendant and/or any person or entity acting on Defendant's behalf initiated more than one telephone solicitation call; (b) promoting Defendant's goods or services; (c) in a 12–month period; (d) on their cellular telephone line or residential telephone line; (e) whose cellular or telephone line number(s) appear on the National Do–Not–Call registry; and (f) at any time in the period that begins four years before the date of filing of this Complaint to trial.

*Id.* ¶ 31. The class excludes certain entities and individuals not relevant to the present application.

By letter motion dated December 14, 2015, *see* DE [25], Defendant moves to bifurcate discovery so that it can attack Plaintiff's individual claim with a summary judgment motion seeking dismissal of the case prior to engaging in class discovery. According to Plymouth, bifurcation will promote "proportionality, economy and efficiency." Plaintiff opposes the motion. *See* DE [26].

### II. Discussion

For the reasons set forth below, Defendant's motion to bifurcate is denied. The standards applicable to motions to bifurcate discovery appear to be the same as those addressed under Fed.R.Civ.P. 42(b) governing separate trials, namely, the motion may be granted "[f]or convenience, to avoid prejudice, or to expedite and economize." *See Koch v. Pechota*, No. 10 Civ. 9152, 2012 WL 2402577, at *6 (S.D.N.Y. June 26, 2012) (denying motion to bifurcate and noting that the inquiry is not actually governed by Rule

Case 1:25-cv-00927-KMN    Document 35    Filed 10/13/25    Page 11 of 51

Charvat v. Plymouth Rock Energy, LLC, Not Reported in Fed. Supp. (2016)

42(b)); *see also Hartley–Culp v. Credit Mgmt. Co.,* No. CV–14–0282, 2014 WL 4630852, at *2 (M.D.Pa. Sept. 15, 2014) (applying the TCPA) ("There is no question that the Court, in its discretion, can bifurcate discovery under Fed.R.Civ.P. 42."). This standard applies to the issue of whether class-and merits-based discovery should proceed together, including in the TCPA context. *See, e.g., True Health Chiropractic Inc. v. McKession Corp.,* No. 13–cv–2219–JST, 2015 WL 273188, at *2–3 (N.D.Cal. Jan. 20, 2015) (denying motion to bifurcate in a TCPA case where the court found: (1) a likelihood of overlap between class and individual discovery; (2) that bifurcation would result in a delay in filing motions for certification; and (3) the potential for complication of issues caused by disputes and subsequent motions as to what discovery relates to the class, as opposed to the named plaintiffs); *Hines v. Overstock.com, Inc.,* No. 09–CV–991, 2010 WL 2775921, at *1 (E.D.N.Y. July 13, 2010) ("[W]here discovery relating to class issues overlaps substantially with merits discovery, bifurcation will result in duplication of efforts and needless line-drawing disputes.").

  **\*2** Bifurcation may be appropriate however, where the "resolution of a single issue may resolve the case and render trial on the other issue[s] unnecessary." *Tabor v. New York City,* 11–CV–0195, 2012 WL 603561, at *10 (E.D.N.Y. Feb. 23, 2012) (Report and Recommendation), *adopted by,* 2012 WL 869424 (E.D.N.Y. Mar. 14, 2012) (bifurcating discovery in the context of a *Monell* claim). This reasoning applies in the TCPA context as well. *See Leschinsky v. Inter–Continental Hotels Corp.,* No. 8:15–cv–1470–T–30MAP, 2015 WL 6150888, at *1 (M.D.Fla. Oct. 15, 2015) (granting motion to bifurcate and initially limiting discovery to whether the calls the named plaintiff received were dialed manually and how many calls she received); *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.,* No. 12–2132, 2014 WL 413534, at *2 (D.N.J. Feb. 4, 2014) (granting motion to bifurcate where "a narrow, potentially dispositive issue exist[ed] concerning whether the faxes sent [were] informational and therefore not actionable under the TCPA," and this issue was "totally distinct from class issues"). The moving party bears the burden of establishing that bifurcation is appropriate, and the decision to bifurcate is left to the Court's discretion. *Hartley–Culp,* 2014 WL 4630852, at *2–3.

Applying these standards, Plymouth has failed to carry its burden of establishing that bifurcation is appropriate. Much of the moving papers are devoted to arguments that Defendant's "potential exposure may be ruinous," and that Plymouth has "strong defenses." DE [25] at 1–2. Although

Plymouth claims that the "class discovery contemplated by Mr. Charvat will not impact the Court's ability to fairly and expediently resolve the individual claim," Defendant identifies the discovery it characterizes as class-related only in general terms as including topics such as TCPA compliance, regulatory activity, computer systems and statistics, without referring in any way to Plaintiff's actual discovery requests, which it attaches. *Id.* at 3. Plymouth then complains about a subpoena to a third-party call center as seeking "extensive documentation and ESI" relating to Plymouth.

Defendant's argument fails for several reasons. Initially, the Court notes that Plaintiff served only 36 document requests and 18 interrogatories, neither of which can be characterized as voluminous. Further, Plymouth submits nothing to demonstrate that the information sought would be unduly burdensome to produce or disproportionate to the needs of the case. *See* Fed.R.Civ.P. 26(a)(1) (setting forth standard). There is also no indication as to which discovery requests Defendant believes would be objectionable as class-based and which requests it is willing to respond to. Accordingly, Defendant has left the Court to either parse its moving papers and attachments to determine the contours of discovery it would be deem permissible, or it simply seeks to leave that issue for future motion practice and resolution by the Court, neither of which promotes judicial efficiency or a prompt resolution of the case. *See True Health Chiropractic,* 2015 WL 273188, at *2 (recognizing the "slew of issues" that would arise from bifurcation regarding what discovery concerns the class as opposed to the named plaintiff).

In fact, bifurcation would have the opposite effect. Much of the discovery sought appears relevant to both the class and individual claims, including documents concerning Plymouth's telemarketing scripts, policies, contracts, practices and procedures, complaints received, investigations of those complaints and audits of third-party providers, as this information is relevant to the issues of both vicarious liability for third-party conduct and willfulness. *Accord* DE [25] (Defendant arguing that it has a "strong defense" because it cannot be held "vicariously liable" for the conduct at issue as it relates to Plaintiff and recognizing the difference in recovery for a "willful" violation of the statute).

  **\*3** Moreover, even if the named Plaintiff's claim were defeated, there is no reason to think that this case would likely end. The Complaint identifies complaints by two other individuals involving Plymouth. Both claim to have received more harassing calls than Plaintiff, and either one could

**Charvat v. Plymouth Rock Energy, LLC, Not Reported in Fed. Supp. (2016)**

Case 1:25-cv-00927-KMN    Document 35    Filed 10/13/25    Page 12 of 51

replace Plaintiff as a class representative. Accordingly, there is no indication from the motion papers that Defendant's success as to Plaintiff's individual claim would necessarily result in a prompt, efficient resolution of this litigation.

As to the third-party subpoena, regardless of how Plymouth characterizes the information it seeks, the Court notes that this third-party has not objected to the subpoena or moved to quash. In any event, it is unclear how such a motion would impact the Court's analysis.

Finally, the Court notes that absent bifurcation, Defendant is still free to seek discovery on the limited issues it believes will result in a prompt resolution of the case and make the appropriate motion at the earliest juncture it chooses.

Based on the foregoing, Defendant's motion to bifurcate discovery is denied.

### III. Conclusion

For the reasons set forth above, Defendant's motion to bifurcate discovery, DE [25], is denied.

**SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2016 WL 207677

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Chenault v. Beiersdorf, Inc., Not Reported in Fed. Supp. (2020)

2020 WL 5016795

2020 WL 5016795
Only the Westlaw citation is currently available.
United States District Court, S.D. Ohio, Western Division.

Travis CHENAULT, Plaintiff,

v.

BEIERSDORF, INC., Defendant.

Case No. 1:20-cv-174
|
Signed 08/24/2020

**Attorneys and Law Firms**

Robb S. Stokar, Christian A. Jenkins, Minnillo & Jenkins Co., LPA, Cincinnati, OH, for Plaintiff.

David Kirsten Montgomery, Jamie Marie Goetz-Anderson, Jackson Lewis LLP, Cincinnati, OH, for Defendant.

**ORDER GRANTING DEFENDANT'S
MOTION TO BIFURCATE DISCOVERY**

Timothy S. Black, United States District Judge

**\*1** This civil action is before the Court on Defendant Beiersdorf, Inc.'s motion to bifurcate discovery (Doc. 9), and the parties' responsive memoranda (Docs. 10, 11).

## I. BACKGROUND

On February 28, 2020, Plaintiff filed this proposed class action lawsuit on behalf of himself and others similarly situated alleging that Defendant violated the Fair Labor Standards Act ("FLSA") and Ohio law. (Doc. 1). Plaintiff alleges that he and other Beiersdorf employees worked in excess of 40 hours per workweek and were not paid overtime pay. (Id. at ¶ 29). Defendant filed its answer on May 26, 2020. (Doc. 5).

The Court held a Preliminary Pretrial Conference ("PPTC") by telephone with the parties on June 23, 2020. During the PPTC, the parties informed the Court that they dispute whether bifurcated discovery is appropriate, and the Court set an expedited briefing schedule. (June 23, 2020 Minute Entry and Notation Order).

On July 6, 2020, Defendant filed the present motion to bifurcate discovery. (Doc. 9). Defendant proposes that discovery be conducted in two phases. The first proposed phase of discovery would be focused on class/collective action issues under the FLSA and/or Rule 23. Defendant proposes limiting the first phase of discovery to 25 interrogatories, 25 requests for production, 25 requests for admission, and up to five depositions for each party. (Id. at 1). Under Defendant's proposed plan, expert witness disclosures and discovery would be deferred until the second phase of discovery, unless either party requires expert witness testimony in connection to certification issues. If either party requires expert testimony related to certification issues, Defendant proposes an October 1, 2020 deadline for primary expert designations and a November 15, 2020 deadline for any rebuttal expert designations. (Id. at 2). Defendant's proposed deadline for the first phase of discovery is December 15, 2020, one month before Plaintiff's deadline to file a motion for conditional certification and/or motion for class action. (Id. at 1).

Defendant proposes that the second phase of discovery —which would occur after the Court's decision on any motion for class and/or conditional certification—would focus on merits-based discovery and final certification and decertification issues. (Id. at 1–2). After the Court rules on any motion for class and/or conditional certification, Defendant suggests holding a status conference to establish a calendar for the second phase of discovery. (Id. at 2).

Plaintiff opposes Defendant's proposed discovery plan and contends he needs discovery beyond what is proposed in Defendant's bifurcation plan in order to support his motion for conditional certification. (Doc. 10 at 2). Alternatively, if the Court grant's Defendant's motion to bifurcate, Plaintiff requests that Defendant be required to produce materials "reasonably necessary for plaintiff to seek conditional certification." (Id. at 5–6).

**\*2** Defendant's motion to bifurcate discovery is ripe for review.

## II. STANDARD OF REVIEW

"Whether to bifurcate class certification and merits discovery is within the discretion of the court." McCluskey v. Belford High School, 2011 WL 13225278, at \*3 (E.D. Mich. Mar. 10,

Chenault v. Beiersdorf, Inc., Not Reported in Fed. Supp. (2020)
2020 WL 5016795

2011); *In re Copper Tubing Litig.*, 2006 WL 8434911, at *5 (W.D. Tenn. Oct. 3, 2006).

To determine whether bifurcating discovery is appropriate, courts consider "the benefits and detriments to each party's interest," as well as "the Court's interest in reaching a just, speedy and efficient resolution of the issues raised by the pleadings." *Woods v. State Farm Fire & Casu. Co.*, 2010 WL 1032018, at *3 (S.D. Ohio Mar. 16, 2010); *see Johnson v. Gulfport Energy Corp.*, 2020 WL 4528824, at *5 (S.D. Ohio Aug. 5, 2020). Courts may bifurcate discovery "if it serves judicial economy and does not unfairly prejudice any party." *Galloway v. Nationwide Mut. Fire Ins. Co.*, No. 3:09-CV-491-JDM, 2010 WL 3927815, at *1 (W.D. Ky. Oct. 5, 2010) (citing *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1153 (6th Cir. 1988)).

### III. ANALYSIS

Defendant's motion requests that the Court bifurcate discovery into two phases: discovery related to class-certification and discovery on the merits. Defendant contends that bifurcated discovery "will allow Plaintiff and Defendant to discovery any evidence needed to support their respective positions regarding class and/or conditional certification, while preserving the parties' time and resources by delaying class-wide discovery unless and until a class or collective is certified." (Doc. 9 at 2).

Plaintiff opposes bifurcation because he contends that he would be denied the opportunity to obtain the materials necessary to prosecute his case. (Doc. 10 at 5). Moreover, Plaintiff argues that the information he seeks will not be burdensome or costly for Defendant to produce. (*Id.* at 4–5).

Although there is not a well-delineated test to determine whether to bifurcate class certification and merit-based issues, courts have looked to three factors in considering whether bifurcation is appropriate:

> (1) expediency, meaning whether bifurcated discovery will aid the court in making a timely determination on the class certification motion; (2) economy, meaning "the potential impact a grant or denial of certification would have upon the pending litigation," and whether the definition of the class would "help determine the limits of discovery on the merits;" and (3) severability, meaning whether class certification and merits issues are closely enmeshed.

*Ballard v. Kenan Advantage Grp., Inc.*, 2020 WL 4187815, at *1 (N.D. Ohio July 20, 2020) (quoting 3 Newberg on Class Actions § 7:17 (5th ed.) (citing *Harris v. comScore, Inc.*, 2012 WL 686709, *3 (N.D. Ill. March 2, 2012))).

Here, the Court finds that bifurcation of discovery is appropriate.

The first and second factors favor bifurcation. First, prioritizing certification related discovery before addressing merits discovery will help this Court issue a timely ruling on any motion for class and/or conditional certification. Second, bifurcation should promote judicial economy because defining any potential class may limit or focus discovery on the merits and prevent potentially unnecessary discovery costs.

**\*3** The third factor is thornier. The Court recognizes that courts within the Sixth Circuit have denied motions to bifurcate discovery where there would be considerable amount of overlap between class certification and merits-based discovery. *Johnson*, 2020 WL 4528824, at *5 (finding that bifurcation would not promote judicial economy because class certification and merits-based discovery overlapped); *Shah v. Metro. Life Ins. Co.*, 2017 WL 4772870, at *3 (S.D. Ohio Oct. 19, 2017) (denying bifurcated discovery because it would not promote judicial economy); *McCluskey v. Belford High Sch.*, 2011 WL 13225278, at *3 (E.D. Mich. Mar. 10, 2011) (finding that bifurcating discovery would "likely lead to disputes over what is 'merit' discovery as opposed to 'class' discovery, resulting in needless motion practice" and noting that "the discovery relative to class issues and merits discovery will significantly overlap, thereby creating inefficiencies were the Court to bifurcate discovery"). But the fact that class and merits-based discovery will be inevitably be intertwined to some extent does not necessitate denying a motion to bifurcate. Here, the Court finds that—while class issues and merit-based discovery may be somewhat enmeshed—there should not be considerable overlap.

Because efficiency and judicial economy favor bifurcation, Defendant's motion is well-taken. Therefore, discovery relating to class certification and discovery relating to merits should be bifurcated as much as practicable. Accordingly, the Court adopts Defendant's timeline and plan for the first phase of discovery (*see* Doc. 9 at 1–2). The timeline for the second phase of discovery will be set after the Court issues its decision on any motion for class and/or conditional certification.

Nevertheless, while the Court agrees with Defendant that bifurcated discovery is appropriate, the Court wants to make clear that Defendant is required to produce materials necessary for Plaintiff to seek conditional certification. If discovery disputes arise over whether a discovery issue is class or merit related, the Court anticipates permitting discovery on the issue.

In that vein, the parties already dispute whether Plaintiff should be provided with a list of class member names and contact information during the first phase of discovery. Defendant contends that production of such a list is premature. (Doc. 9 at 2). Defendant has offered to produce a redacted employee list (including first name, last initial, and dates of employment), yet Plaintiff argues that a redacted list is insufficient. The Court agrees with Plaintiff.

As courts have recognized, "[g]iven the Supreme Court's direction that the broad remedial goal of the FLSA should be enforced to the full extent of its terms, pre-certification discovery is appropriate to enable the plaintiff to define the class and identify similarly situated employees." *Boice v. M +W U.S., Inc.*, 130 F. Supp. 3d 677, 698 (N.D.N.Y. 2015)

(quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 2010 WL 2362981, at *2 (S.D.N.Y. June 14, 2010)) (internal quotation marks and alterations omitted). Here, the Court finds that Defendant's production of an unredacted employee list is appropriate to enable Plaintiff to identify similarly situated employees, which is permissible discovery for Plaintiff during the first pre-certification phase of discovery.

Nevertheless, other discovery materials requested by Plaintiff in his opposition brief—such as pay stubs and copies of gift cards—are merit-based discovery and will not need to be produced by Defendant until the second phase of discovery.

## IV. CONCLUSION

Accordingly, as outlined above, Defendant's motion to bifurcate discovery (Doc. 9) is **GRANTED**.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5016795

---

   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2025 Thomson Reuters. No claim to original U.S. Government Works.   3

Case 1:25-cv-00927-KMN    Document 35    Filed 10/13/25    Page 16 of 51

Fania v. Kin Insurance, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 2607303

2024 WL 2607303
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Anthony FANIA, on Behalf of Himself
and Others Similarly Situated, Plaintiff,
v.
KIN INSURANCE, INC., Defendant.

Case No. 22-12354
|
Signed May 24, 2024

**Attorneys and Law Firms**

Alex Phillips, Strauss Borrelli PLLC, Chicago, IL, David H. Fink, Nathan J. Fink, Fink Bressack PLLC, Bloomfield Hills, MI, Anthony I. Paronich, Broderick Law P.C., Boston, MA, for Plaintiff.

Dane Michael Lepola, Jonathan F. Karmo, Howard & Howard Attorneys PLLC, Royal Oak, MI, Paul Heeringa, Manatt, Phelps & Phillips, LLP, Chicago, IL, for Defendant.

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO BIFURCATE DISCOVERY**

GERSHWIN A. DRAIN, United States District Judge

### I. Introduction

**\*1** Plaintiff Anthony Fania ("Fania" or "Plaintiff") filed this lawsuit in October 2022 on behalf of himself and others similarly situated. [ECF No. 1]. The class action complaint accuses Defendant Kin insurance ("Kin" or "Defendant") of violating the Telephone Consumer Protection Act, 47 U.S.C. § 227 (b) (the "TCPA"). ECF No. 1, PageID.9. Plaintiff's claim is based on an alleged "pre-recorded" call to his cell phone on August 29, 2022.

Before the Court is Defendant Kin's Motion to Bifurcate Discovery. It was filed on October 23, 2023. Plaintiff responded on November 7, 2023, and Defendant replied on November 9, 2023. The motion is fully briefed.

Upon review of the parties' briefing and applicable authority, the Court concludes oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve Defendant's Motion for Bifurcation on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons set forth below, Defendant's Motion is **GRANTED**.

### II. Factual and Procedural Background

Kin sells insurance products in multiple states and consumers may request an insurance quote from Kin through various websites. It alleges that, on August 29, 2022, Fania visited www.dailyinsurancedeals.com (the "subject website"), to request an insurance quote.

On the other hand, Plaintiff alleges that he "received a pre-recorded telemarketing call from the Defendant on August 29, 2022," and during that call, a "recorded message asked if the call recipient was looking for home insurance." ECF No. 1, PageID.5. Plaintiff says he "recognized" that "he was speaking to a robot, so he interrupted the recorded message asked the robot a question" and did not receive a response. *Id.* He was then told by a live agent that they were calling from Kin Insurance. *Id.* Plaintiff "then received another call from Tamely Jobs, who was following up on the pre-recorded call that the Plaintiff received and continued to promote the Defendant's services." *Id.*

Fania subsequently commenced the instant action. Kin filed a Motion to Compel Arbitration, arguing that Fania had signed an arbitration agreement. Because Fania denied signing the agreement, the Court determined that Fania had "sufficiently put[ ] 'in issue' the formation of the agreement and its alleged signing by him." ECF No. 16, PageID.209. And the Court stated that, "as required by [the Federal Arbitration Act, 9 U.S.C.] § 4, the Court will 'proceed summarily to the trial' on the disputed question." *Id.* Accordingly, the Court set a trial date and ordered the parties to conduct discovery "for the limited purpose of addressing the contract formation issue[.]" *Id.* at PageID.211.

Before the trial date, however, Defendant voluntarily withdrew the Motion to Compel Arbitration and raised the issue of bifurcation. *See* ECF No. 22. And the Court subsequently ruled, by stipulation of the parties, that "merits discovery may proceed generally while and until the Court decides the bifurcation issue, provided that (a) Kin will not need to respond to any classwide discovery issued by Plaintiff until thirty (30) days after the Court rules on bifurcation, and (b) Plaintiff shall not serve discovery regarding classwide issues on third-parties while the Court considers the bifurcation issue." ECF No. 26, PageID.256.

### III. Applicable Law and Analysis

**\*2** Fania is the sole named Plaintiff in this action. Defendant asserts that "[i]f a live person indeed initiated and conducted the call(s) at issue here or if Kin is not legally responsible for any supposed 'pre-recorded' calls that Plaintiff did receive (as discovery on these narrow issues will prove), there will be no need for invasive and burdensome additional discovery, let alone class discovery, because this entire case will be over (on its merits and for lack of standing)." ECF No. 28, PageID.266. Accordingly, Defendant argues that bifurcation is necessary to resolve "the narrow case-dispositive questions of[:] (1) whether Plaintiff himself received a pre-recorded call (and therefore could even attempt to bring a claim on behalf of the putative class)[,] and (2) whether Kin is legally responsible for such calls." *Id.*, at PageID.268.

District courts possess "inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). Additionally, *Fed. R. Civ. P. 42 (b)* permits a district court to "bifurcate trial on separate issues in furtherance of convenience, to avoid prejudice, or when separate trials will be conducive to expedition and economy." *Marchese v. Milestone Sys., Inc.*, No. 12-12276, 2013 WL 12183618, at \*2 (E.D. Mich. Dec. 3, 2013). Again, "[w]hether to try issues separately under *Rule 42(b)* is within the district court's discretion." *See Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1152 (6th Cir. 1988) (noting that a bifurcation of claims is permissible if it serves judicial economy and does not unfairly prejudice any party). However, "[t]he party seeking bifurcation has the burden of demonstrating judicial economy would be promoted and that no party be prejudiced by separate trials." *Id.*, (quoting *K.W. Muth Co. v. Bing-Lear Mfg. Group*, No. 01-CV-71925, 2002 WL 1879943, \*3 (E.D. Mich. July 16, 2002)) (quotation marks and citation omitted). The decision to bifurcate is made "on a case-by-case basis" and is "[u]ltimately" a practical decision. *Id.* (quotation marks and citations omitted).

Under *§ 227 (b)(1)(A)*, it is unlawful for any person to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party)" to a recipient in the United States "using any automatic telephone dialing system or an artificial or prerecorded voice." Thus, the dispositive issue for Fania turns on the question of whether he received a call that was made using prerecorded voice. *See, e.g., Ashland Hosp. Corp. v. Serv. Emps. Int'l Union*, 708 F.3d

737, 743 (6th Cir. 2013) (affirming dismissal of TCPA claims because plaintiff did not receive any prerecorded calls).

In the Court's view, bifurcating discovery into plaintiff specific and class wide phases is the most efficient way to proceed with this litigation. In cases asserting both individual liability and potential class action claims under the TCPA, courts have bifurcated discovery "where narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery." *Pavelka v. Paul Moss Ins. Agency, LLC*, No. 1:22 CV 02226, 2023 WL 3728199, at \*2 (N.D. Ohio May 30, 2023); *see e.g., Akselrod v. MarketPro Homebuyers LLC*, No. CV CCB-20-2966, 2021 WL 100666, at \*2 (D. Md. Jan. 12, 2021) (bifurcating discovery in TCPA case after determining that whether an automatic dialing system was used was an issue of liability distinct from class certification, and "[l]imited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive");

**\*3** Here, the need for class discovery may be eliminated if Kin is able to demonstrate that Fania, the sole named Plaintiff, lacks a viable individual claim. *See Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir. 2001) ("Despite the fact that a case is brought as a putative class action, it ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved."). Further, class discovery regarding potential class members, the number of which is "likely at least in the thousands[,]" ECF No. 1, PageID.7, is not necessary to address certain issues that may be dispositive of Fania's individual claim and ability to represent the purpoted class. This includes whether the phone call was pre-recorded.

Additionally, the evidence so far discovered with respect to Fania has revealed a vigorous dispute regarding a purportedly fraudulent lead that resulted in Fania's information being entered on www.dailyinsurancedeals.com. It was either Fania, or someone pretending to be Fania, that consented to receive insurance quotes and arbitrate potential issues resulting from this transaction. In these circumstances, the Court finds that this narrow and potentially dispositive issue is distinct from issues of liability to be determined in this case on a class-wide basis. Accordingly, and for purposes of efficiency, the Court will review evidence and make a determination with regard to Fania's plaintiff-specific claim prior to costly and time-consuming class discovery.

Proceeding in this manner serves the interests of justice and efficiency. *See Physicians Healthsource, Inc. v. Janssen Pharm, Inc.*, Civil Action No. 12-2132 (FLW), 2014 WL 413534, at *4-5 (D.N.J. Feb. 4, 2014) (bifurcating discovery in TCPA fax case around a narrow, potentially dispositive issue that was distinct from class issues, and recognizing that bifurcation had the potential to "save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery"); *see also Katz v. Liberty Power Corp., LLC*, No. 18-CV-10506-ADB, 2019 WL 957129, at *2 (D. Mass. Feb. 27, 2019) ("[C]lass discovery is not necessary to address certain issues that may be dispositive of Plaintiffs' individual claims or ability to bring the asserted class claims, including whether the phone numbers at issue are within the TCPA, whether named [p]laintiffs' are within the classes they purport to represent, and whether any named [p]laintiffs with a viable claim can demonstrate the Court's jurisdiction to resolve that claim."). Further, the distinctions between the narrow and potentially dispositive issue with respect to Fania, and the issues of liability to be determined on a class-wide basis render this case distinguishable from *McClusky*. There, the Court determined, in a non-TCPA case, that bifurcation was inappropriate because, *inter alia*, "the discovery relative to class issues and merits discovery will significantly overlap, thereby creating inefficiencies were the Court to bifurcate discovery." *McCluskey v. Belford High Sch.*, No. 09-CV-14345, 2011 WL 13225278, at *3 (E.D. Mich. Mar. 10, 2011).

Plaintiff argues that bifurcating discovery would defeat efficiency and thereby prejudice him. He says he has previously made discovery requests for Kin to produce messages between it and dailyinsurancedeals.com, including on the process for verifying leads. Plaintiff believes that this information "affects Mr. Fania just as much as it does the class." ECF No. 32, PageID.321. His argument also suggests that bifurcation would engender additional motion practice about the distinction between merits discovery and class wide discovery. *Id.* And he says that:

> **\*4** Kin forecasted it will withhold documents like this if the Court bifurcates discovery because it believes they relate only to "classwide" issues. In other words, Kin does not intend to produce "merits" discovery no matter how the

> Court defines it, meaning Mr. Fania will be back in Court to demand documents. That is not "efficient."

ECF No. 32, PageID.315.

Plaintiff's argument is not well taken. As stated *infra*, it was nearly seven months ago when the Court ordered the parties to conduct merits discovery regarding Plaintiff's claims and barred the parties from engaging in class-wide discovery. Class-wide discovery has been off limits, and merits discovery as to Fania is ongoing. Yet, Fania has not raised an issue or filed a discovery motion regarding any unsatisfied discovery requests, which belies his assertion that bifurcating this case "will lead to litigation over what 'bifurcation' means and delay this yet-to-start [class-wide discovery period] again." *Id.* However, Fania is permitted to file a motion if Kin wrongfully denies him discovery to which he is entitled given his individual claim.

In the Court's view, requiring the parties to continue down the path of Plaintiff specific discovery—rather than setting a new discovery schedule for class wide issues at this juncture—is the most efficient way to assure an expeditious resolution to this case. And it is the most efficient use of the Court's resources.

### IV. Conclusion

For the reasons stated above, the Court orders the following:

1. Defendant's Motion for Bifurcation is **GRANTED**.

2. Discovery will be phased/bifurcated according to the following schedule:

   a. Discovery as to the merits of Plaintiff's individual TCPA claim against Defendant shall proceed for **thirty (30) days** after entry of this order, subject to any extensions granted by the court;

   b. Opening summary judgment motions as to the merits of Plaintiff's individual TCPA claim shall be due **thirty (30) days** after the close of the initial phase of individual discovery;

   c. Oppositions to summary judgment due **thirty (30) days** after service of opening motions; and

**Fania v. Kin Insurance, Inc., Not Reported in Fed. Supp. (2024)**

2024 WL 2607303

d. Reply briefs in support of summary judgment due **fifteen (15) days** after service of oppositions.

3. Discovery during this initial period shall be limited to issues relevant to determining the merits of Plaintiff's individual TCPA claim.

4. The Parties may issue third party discovery requests during this initial period as needed, but class related discovery shall not be allowed. To the extent Plaintiff has already issued any class discovery, Defendant need not respond to same.

5. If necessary, the Court will set a case management status conference and schedule for class wide discovery after it has ruled on summary judgment motion(s) relating to Plaintiff's individual claim.

**IT IS ORDERED**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 2607303

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2422617
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Joseph FRIEL, individually and on behalf
of others similarly situated, Plaintiff
v.
LINE 5, LLC and Headstart
Warranty Group, LLC, Defendants

No. 3:24cv1866
|
Signed August 21, 2025

**Attorneys and Law Firms**

Anthony I. Paronich, Pro Hac Vice, Paronich Law, P.C., Hingham, MA, Jeremy C. Jackson, Bower Law Associates, PLLC, State College, PA, Andrew Roman Perrong, Perrong Law LLC, Glenside, PA, for Plaintiff.

Brit J. Suttell, Barron & Newburger, P.C., Media, PA, for Defendant Line 5, LLC.

Andrew Michael Schwartz, Messer Strickler Burnette, Ltd., Downingtown, PA, Barry Guaglardi, Pro Hac Vice, Guaglardi & Meliti, LLP, Rochelle Park, NJ, for Defendant Headstart Warranty Group LLC.

**MEMORANDUM**

JULIA K. MUNLEY, JUDGE

**\*1** This putative class action case involves automated telephone calls allegedly sent by companies selling, guaranteeing, and/or financing vehicle service contracts, otherwise known as extended car warranties. After receiving numerous unsolicited extended-warranty calls over a two-month period, Plaintiff Joseph Friel filed this action pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, ("TCPA"), seeking to represent a nationwide class of robocall recipients and a class of recipients on the National Do Not Call Registry ("DNCR"). Before the court is a motion to strike the class allegations from Friel's complaint prior to discovery. Also pending is a motion to bifurcate discovery, which actually requests that discovery be conducted in three separate phases. Both motions are ripe for disposition.

**Background** [1]

Friel's TCPA complaint alleges that former defendant JEA Management Services d/b/a Covered Auto ("JEA") sent prerecorded telemarketing calls on behalf of Defendants Headstart Warranty Group, LLC ("Headstart") and Line 5, LLC ("Line5"), including to recipients on the DNCR without the call recipient's express written consent. (Doc. 1, Compl. ¶ 5).

As for the extended car warranties involved in this TCPA litigation, Friel's complaint details a joint enterprise among the JEA, Headstart, and Line5 entities. Id. ¶ 17. As alleged, JEA and Headstart sell vehicle service contracts with JEA acting as a sales agent and Headstart acting as the guarantor of the contracts. id. ¶¶ 14–15. Line5 handles customer management, payment processing, and provides financing for the contracts sold by JEA and guaranteed by Headstart. Id. ¶ 16. To generate business, JEA places telemarketing calls, some of which are prerecorded, on behalf of Headstart and Line5. Id. ¶ 17.

Friel further alleges that he maintains a personal residential telephone number, which has been on the DNCR since 2011. Id. ¶¶ 18–20. According to the plaintiff, he has never been a customer of JEA, Headstart, or Line5 and never inquired into being a customer of these entities. Id. ¶ 21. Nevertheless, Friel received at least fourteen (14) telemarketing calls from JEA between August 8, 2024 and September 27, 2024. Id. ¶ 22. The caller IDs from these incoming calls reflected different phone numbers from area codes associated with the Philadelphia, Allentown-Bethlehem-Easton, and Scranton-Wilkes-Barre metropolitan areas. Id. ¶¶ 22, 27.

Friel answered the calls. They all began with a prerecorded voice message with fake typing and office background noise. Id. ¶¶ 23, 24. A robotic voice greeted Friel by name, identified that it was calling on behalf of the "vehicle service department," and asked how the plaintiff was doing. Id. ¶ 24. Friel hung up on most of the calls. Id. ¶ 26.

Friel answered one of the calls on September 27, 2024. Id. ¶ 27. Plaintiff heard the above prerecorded message, responded to questions posed by the artificial intelligence agent, and was then transferred to a human representative. Id. ¶¶ 23–32. Next, Friel listened to that representative's sales speech about a vehicle service contract and the financing program offered by Defendant Line5. Id. ¶¶ 32–33. Subsequently, Friel received various emails and text messages from Line5 and a

copy of a vehicle service contract for signature. Id. ¶ 36. From these communications, Friel discerned JEA, Headstart, and Line5's roles in the telephone calls. Id. ¶¶ 37–39.

**\*2** Approximately one month later, on October 29, 2024, Friel initiated this putative class action against JEA, Headstart, and Line5 under 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c)(5) seeking to represent himself and other similarly situated individuals. (Doc. 1, Compl. ¶¶ 90–99). JEA responded by filing three motions: 1) a motion to strike class allegations, (Doc. 29); 2) a motion to dismiss for failure to state a claim, (Doc. 31), and 3) a motion to trifurcate discovery, (Doc. 33). JEA filed briefs in support of each motion. (Docs. 30, 32, 34). Defendant Line5 joined JEA's motion to strike and motion to trifurcate discovery. (Docs. 45–46).

On March 25, 2025, Friel filed a notice of voluntary dismissal regarding JEA. (Doc. 50). JEA's dismissal rendered the motion to dismiss moot. (Doc. 51). The court determined that Line5's joinder to the other motions required oppositional briefing. Id. Friel subsequently filed his briefs in opposition as ordered. (Docs. 52–53). Line5 then filed a reply brief regarding the motion to trifurcate discovery, (Doc. 54), but not the motion to strike. Based on the briefs of JEA and Friel, the motion to strike plaintiff's TCPA class allegations is ripe for disposition. Similarly, the motion seeking phased discovery is ready for a decision based upon the briefs of JEA, Friel, and Line5.

**Jurisdiction**

Because Friel brings suit under a federal statute, the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 387 (2012) (holding that nothing in the text, structure, or legislative history of the TCPA calls for displacement of federal question jurisdiction).

**Analysis**

**1. The TCPA and the Proposed Classes**

This putative class action concerns alleged violations of the TCPA. "The TCPA protects businesses and consumers from intrusive telemarketing communications." McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146, 149 (2025). The TCPA "makes it unlawful to use an automatic telephone dialing system or an artificial or prerecorded voice message, without the prior express consent of the called

party, to call any... cellular telephone, or other service for which the receiver is charged for the call." Mims, 565 U.S. at 373 (citing 47 U.S.C. § 227(b)(1)(A)). The TCPA also "forbids using artificial or prerecorded voice messages to call residential telephone lines without prior express consent. Id. (citing 47 U.S.C. § 227(b)(1)(B)). "In plain English, the TCPA prohibited almost all robocalls to cell phones." Barr v. Am. Ass'n of Pol. Consultants, Inc., 591 U.S. 610, 615 (2020) (footnote omitted).

Additionally, Section 227(b) contains a private right of action based on violations of that subsection or the regulations prescribed under that subsection. 47 U.S.C. § 227(b)(3). Under Section 227(b)(3), a person or entity may: 1) obtain injunctive relief; 2) recover actual monetary loss or receive $500 in damages, whichever is greater; or 3) both. See 47 U.S.C. § 227(b)(3)(A)–(C). "The TCPA imposes tough penalties for violating the robocall restriction," including trebling the above damages for willful or knowing violations, "which can add up quickly in a class action." Barr, 591 U.S. at 616.

Section 227(c) concerns further protections of residential telephone subscribers' privacy rights and directs the Federal Communications Commission ("FCC") to prescribe regulations regarding do-not-call systems. See 47 U.S.C. § 227(c)(1)–(4). Section 227(c) "authorizes a private right of action for violation of the FCC's implementing regulations[ ]" related to do-not-call. See 47 U.S.C. § 227(c)(5); Mims, 565 U.S. at 375 & n.5. Section 227(c)(5) permits a civil action by "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations[.]" 47 U.S.C. § 227(c)(5).[2] Under Section 227(c)(5), a person or entity may: 1) obtain injunctive relief; 2) recover actual monetary loss or receive $500 in damages, whichever is greater; or 3) both. See 47 U.S.C. § 227(c)(5)(A)–(C). A plaintiff may also seek treble damages for willful or knowing violations of the do-not-call regulations. Id.

**\*3** These statutory provisions and attendant regulations form the basis of Friel's complaint against the defendants. They also form the basis of his two proposed classes. The proposed Robocall Class stems from the alleged Section 227(b) and related regulatory violations, while the proposed National Do Not Call Registry Class ("DNCR Class") derives from the alleged Section 227(c) and related regulatory violations.

**2. Motion to Strike Class Allegations**

There are two motions presently pending before the court. First, as mentioned above, Line5 joined in JEA's motion to strike the class allegations from Friel's complaint. The motion to strike is partly premised upon Rule 12(f) of the Federal Rules of Civil Procedure. Rule 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Rule 12(f) motions are designed to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters. Goode v. LexisNexis Risk & Info. Analytics Grp., Inc., 284 F.R.D. 238, 243 (E. D. Pa. 2012) (citations omitted); see also McInerney v. Moyer Lumber and Hardware, Inc., 244 F.Supp.2d 393, 402 (E.D. Pa. 2002). Providing relief under Rule 12(f) is largely disfavored and such motions are typically denied "unless the material bears no possible relation to the matter at issue and may result in prejudice to the moving party." Miller v. Group Voyagers, Inc., 912 F.Supp. 164, 168 (E.D. Pa. 1996). In the class action context, however, it is unlikely that a defendant can show that a plaintiff's class allegations constitute matters usually contemplated by Rule 12(f). See In re Ry. Indus. Emp. No-Poach Antitrust Litig., 395 F. Supp. 3d 464, 496 (W.D. Pa. 2019) (citations omitted).

The motion to strike is also premised upon Federal Rule of Civil Procedure 23, which governs the administration of class actions in federal courts. See Perrigo Institutional Inv. Grp. v. Papa, No. 22-2861, —— F.4th ——, 2025 WL 2315977, at *4 (3d Cir. Aug. 12, 2025). Although "an ingenious procedural innovationM" Eubank v. Pella Corp., 753 F.3d 718, 719 (7th Cir. 2014), "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' " Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700–701 (1979)). Thus, to ensure that named plaintiffs are appropriate representatives of the class whose claims they wish to litigate, Rule 23(a) contains four requirements: numerosity, commonality, typicality, and adequacy of representation. See id. at 348–49. Additionally, for a class to be certified, the requirements of Rule 23(b)(1), (2), or (3) must also be met. Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 590 (3d Cir. 2012).

Friel brings this putative TCPA class action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3). (Doc. 1, Compl. ¶ 73). Rule 23(b)(2) is used to pursue injunctions in class actions. See In re: Google Inc. Cookie Placement Consumer Priv. Litig., 934 F.3d 316, 323 (3d Cir. 2019). The complaint requests injunctive relief to prohibit defendants from using prerecorded voices in the future and from making telemarketing calls to telephone numbers on the DNCR. (Doc. 1, Compl. ¶¶ 94, 99). Friel, however, also seeks statutory damages on behalf of himself and the putative classes. Id. ¶¶ 92-93, 98. Rule 23(b)(2) certification is not authorized when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant, or when each class member would be entitled to individualized award of monetary damages. Wal-Mart Stores, Inc., 564 U.S. at 360. Rather, "individualized monetary claims belong in Rule 23(b)(3)." Id. at 362. Under Rule 23(b)(3), a class action may be maintained if the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a) are satisfied and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." [3] FED. R. CIV. P. 23(b)(3).

**\*4** Rule 23(c) further provides that "[a]t an early practicable time after a person sues... as a class representative, the court must determine by order whether to certify the action as a class action." FED. R. CIV. P. 23(c)(1)(A). Additionally, Rule 23(d) permits the court to issue orders that: 1) "determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument[,]" FED. R. CIV. P. 23(d)(1)(A), and/or 2) "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly[,]" FED. R. CIV. P. 23(d)(1)(D). Consequently, where the goal of the motion to strike is to eliminate class allegations prior to discovery, other district courts have concluded that such motions should be considered under the above provisions of Rule 23, not under Rule 12(f). See In re Ry. Indus. Emp. No-Poach Antitrust Litig., 395 F. Supp. 3d at 496; see also Johnson v. Ally Fin. Inc., No. 1:16-CV-1100, 2017 WL 3433689, at *2 (M.D. Pa. Aug. 10, 2017) (Conner, J.) (concluding that a motion to strike class allegations is not an improper procedural device).

To determine whether the requirements of Rule 23 have been satisfied, "a district court must conduct a 'rigorous analysis.' " Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 (3d Cir. 2011) (quoting In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3d Cir. 2008)). [4] There are "rare few" instances in which "the complaint itself demonstrates that the requirements for maintaining

a class action cannot be met." Id. at 93, n.30. Thus, "delving into the propriety of class certification" can be "the wrong focus" at an early stage of a proceeding where there has been no motion for class certification and no discovery. Id. at 93–94. After all, "[a]n order striking class allegations is functionally equivalent to an order denying class certification[.]" Microsoft Corp. v. Baker, 582 U.S. 23, 34, n.7 (2017).

One of the "rare few" instances where an early motion to strike class allegations may be granted is where the class definitions create impermissible fail-safe classes. See Zarichny v. Complete Payment Recovery Servs., Inc., 80 F. Supp. 3d 610, 624 (E.D. Pa. 2015). "A fail-safe class is 'one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.' " Id. (quoting Messner v. Northshore University HealthSystem, 669 F.3d 802, 825 (7th Cir .2012)).

Friel's Robocall Class is defined as:

> All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their cellular telephone or any other protected telephone service (3) from or on behalf of JEA Management Services d/b/a Covered Auto, Headstart Warranty Group LLC, or Line 5, LLC, (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff.

(Doc. 1, Compl. ¶ 74).

Friel's DNCR Class is defined as:

> All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendants or a third party acting on

Defendants' behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

Id.

The motion to strike asserts that the proposed class definitions are facially uncertifiable. Line5 has adopted JEA's arguments that the proposed class definitions are overbroad, lack commonality, and are defined vaguely. There are no specific arguments that the proposed classes are fail-safe, yet this consideration hangs over the analysis.

### a. Overbreadth Arguments

**\*5** Defendant Line5 has joined in former defendant JEA's argument that both the proposed Robocall Class and the DNCR Class are overbroad. The Robocall Class definition is challenged as overbroad because it fails to exclude calls to individuals who consented to their receipt. [5] Similarly, the DNCR Class is challenged because this proposed class may include calls made to individuals with an established business relationship ("EBR") with the defendants and may include individuals who did not personally place their number on the DNCR. [6]

After careful consideration, however, Friel appears to be in a situation where he is forced to choose between two vulnerable alternatives in proposing class definitions at the outset of the litigation. On one hand, Friel must define his classes with reference to objective criteria. See Lewis v. Gov't Emps. Ins. Co., 98 F.4th 452, 462 (3d Cir. 2024) (citing Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015)). On the other hand, if Friel uses certain qualifiers, his proposed definitions could be deemed to advance improper fail-safe classes. [7]

As indicated above, "[a] fail-safe class bases its membership upon the validity of putative members' legal claims, meaning that 'a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment.' " Jackson, 2023 WL 2472606, at \*3 (quoting Messner, 669 F.3d at 825). More simply stated, fail-safe classes preclude membership in the class unless a putative member would prevail on the merits. See Orduno v. Pietrzak, 932 F.3d 710, 716 (8th Cir. 2019).

**\*6** Fail-safe classes cannot satisfy the ascertainability requirement of some class actions. See Zarichny, 80 F. Supp.

3d at 625 (citation omitted); see also Byrd, 784 F.3d at 163 & n.7 (explaining that a plaintiff seeking certification under Rule 23(b)(3) must prove by a preponderance that the class is ascertainable, but that ascertainability is not a requisite of a Rule 23(b)(2) class). The ascertainability standard requires a plaintiff to show that: (1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. Byrd, 784 F.3d at 163 (citations omitted).

In Zarichny, the Honorable Stewart R. Dalzell in the Eastern District of Pennsylvania determined that a putative TCPA class was defined in a fail-safe manner and granted a motion to strike. 80 F.Supp. 3d at 623-26. The proposed TCPA class was comprised of "those people 'who received one or more telephone calls from [d]efendants on the individual's cellular telephone that was initiated using an automatic telephone dialing system' without prior con[s]ent[.]" Id. at 623. Because the class was defined in a manner which only would include those who did not provide the defendant with prior consent, the court determined that "there is no way to provide notice to that putative class without the sort of extensive fact-finding that class actions should avoid," and "at the conclusion of the litigation, should [the defendant] prevail against [the plaintiff], any other putative class recipient would be free to litigate the same claim against [the defendant]." Id. at 625–26. In other words, the TCPA class could not be certified as defined in the initial pleading because the issue of consent was central to the merits of the underlying dispute.

Accordingly, many district courts within the Third Circuit have determined that TCPA class definitions avoid fail-safe concerns by omitting the issue of consent or other merits-based criteria. See Jackson v. Direct Bldg. Supplies LLC, No. 4:23-CV-01569, 2024 WL 184449, at *9 & n.101 (M.D. Pa. Jan. 17, 2024) (Brann, C.J.) (collecting cases); see also Abella v. Student Aid Ctr., Inc., No. CV 15-3067, 2015 WL 6599747, at *4 (E.D. Pa. Oct. 30, 2015) (noting the lack of reference to an automatic telephone dialing system in the proposed class definition since that is a required element of a Section 227(b)(1)(A) claim). [8] Consequently, to avoid fail-safe issues with his proposed Robocall Class in this case, Friel asserts that he intentionally did not include consent language in his class definition. (Doc. 53, Pl. Br. in Opp. at 13).

As indicated above, Line5 has adopted arguments challenging the proposed Robocall Class definition because it fails to exclude calls made with consent. In joining the motion to strike, Line5 also finds fault in the proposed DNCR Class definition because it fails to exclude calls to individuals with an EBR. Adding these qualifiers to the class definitions would incorporate more elements of liability into the definitions. That would then arguably require all putative class members to have winning TCPA claims before being included in the class. Although non-binding, the above cases discussing fail-safe classes would provide defendants with different arguments to strike the class allegations if Friel included reference to a lack of consent or an EBR in his proposed definitions. The court cannot fault Friel for choosing to define his classes around TCPA merits-based criteria.

*7 As for authority binding on this court, "in the specific context of claims filed under the TCPA statute, it is difficult to resolve without discovery whether there are factual issues regarding class members' business relationships with defendants or whether they consented to the receipt of [automated phone calls]." Landsman, 640 F.3d at 93–94. Friel's complaint alleges that the proposed classes are identifiable as presently defined through defendants' dialer records, other phone records, and phone number databases. (Doc. 1, Compl. ¶ 79). In the absence of discovery into these records, the court is unwilling to determine whether Friel's classes are defined too broadly or whether they fall short of ascertainability. Line5 thus has not demonstrated a valid reason to strike Friel's class allegations based on the potential breadth of the proposed classes.

### b. Commonality Arguments

Line5 has also adopted JEA's arguments that Friel's proposed classes lack commonality, that is, "the rule requiring a plaintiff to show that "there are questions of law or fact common to the class." Wal-Mart Stores, Inc., 564 U.S. at 349 (citing FED. R. CIV. P. 23(a)). Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury, not merely that they have all suffered violation of the same provision of law. See id. (citations omitted). The claims "must depend upon a common contention[,]" which "must be of such a nature that is capable of classwide resolution[,]" meaning that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. As observed, "[t]he commonality requirement is not especially arduous." Johnson, 2017 WL 3433689, at *4.

For his part, Friel's complaint alleges that he received calls related to some extended-warranty sales effort using an artificial or prerecorded voice without his consent in violation

of the TCPA. (Doc. 1, Compl. ¶¶ 18–31). Only discovery will reveal whether Friel's proposed classes sustained the same injuries from those sales efforts. Accordingly, the court also rejects arguments that the proposed classes are facially uncertifiable based on a lack of commonality.

### c. Vagueness Arguments

Lastly, Line5 has adopted JEA's arguments that the Robocall Class must be stricken for vagueness because that proposed definition uses the phrase "same, or substantially similar" when describing the prerecorded messages allegedly sent by the defendants. In support, the motion to strike argues that, as presently defined, there would be no way for defendants to know which putative class members received the exact message that Friel received, and which putative class members received a "substantially similar" message. (Doc. 30, JEA Br. in Supp. at 20–21). Furthermore, per the arguments advanced in the motion to strike, the "substantially similar" definition uses improper subjective criteria and is improperly imprecise for a class action. Id.

Friel counters that such a definition is not vague under the circumstances because it essentially contemplates that defendants could have violated the TCPA as to other putative class members through the same sales efforts, but by using a different robotic voice, for example, or the same voice with a different script. (Doc. 53, PI. Br. in Opp. at 21). Moreover, Friel explains that, even with this definition, his proposed Robocall Class is limited to calls that presumably had the same factual predicate for being sent, i.e., sales calls. Id. at 22.

Friel's argument signals that he is open to adding more qualifiers to his class definitions as this case moves forward. The court, however, will not strike the definitions or adjust any portion *sua sponte*. Discovery has not yet commenced and no motion to certify the class has been filed. To the extent that there are critical vagueness issues with Friel's proposed Robocall Class definition, those issues would be more easily understood following a period of discovery. Accordingly, the motion to strike Friel's class allegations will be denied.

### 3. Motion to Trifurcate Discovery

**\*8** On the issue of discovery, Defendant Line5 also joined in JEA's motion seeking to conduct discovery in three separate stages, that is, 1) discovery into Friel's individual claims; 2) discovery into the appropriateness of class certification if Friel's claims proceed; and 3) if any class is ultimately certified, merits discovery for the class or classes. (Doc. 34, JEA Br. in Supp.; Doc. 45, Line5 Joinder Notice). Friel opposes, arguing that, if this TCPA action has merit, a trifurcated course of discovery will lead to three rounds of written discovery, three rounds of depositions (with the same witnesses being deposed three times), three rounds of potential discovery disputes, and then three rounds of dispositive motions. [9] (Doc. 52, PI. Br. in Opp. at 1-3).

Unlike JEA, which has been dismissed, Defendant Line5 filed an answer to Friel's complaint. (Doc. 20). Line5's answer does not raise any defenses unique to Friel's individual claims, only defenses common across the putative TCPA classes. (See Doc. 20, Affirmative and Other Defenses, ¶ 1 ("Line5 did not make or authorize any calls on its behalf."), ¶ 3 ("Upon information and belief, the alleged calls were not selling Line5's services, but rather the calls were made for the purpose of selling an extended car warranty provided by another of the defendants.")). Line5 has not otherwise demonstrated why Friel's specific TCPA claims would be any different from the claims of the putative class members. The court thus sees no reason to bifurcate, trifurcate, or otherwise order that discovery be conducted in phases at this time. Accordingly, the discovery motion will be denied, and this case will be scheduled for a case management conference.

### Conclusion

For the reasons set forth above, JEA's motion to strike class plaintiff's allegations and motion to trifurcate discovery will be denied. An appropriate order follows.

### All Citations

Slip Copy, 2025 WL 2422617

---

**Footnotes**

1    This background section derives from the facts alleged in plaintiff's complaint. The court makes no
     determination as to the veracity of these allegations.

2    Pursuant to FCC regulations, "[n]o person or entity shall initiate any telephone solicitation to: ... A residential
     telephone subscriber who has registered his or her telephone number on the national do-not-call registry of
     persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."
     47 C.F.R. § 64.1200(c)(2).

3    At this juncture, it is unknown how Friel will proceed if this matter reaches a motion for class certification.
     Given the availability of statutory damages of up to $1500 per class member under the TCPA, it may be
     later determined that this case is more driven by money damages than equitable relief, which would make
     certification under Rule 23(b)(2) inappropriate. See e.g. Jackson v. Locust Med., LLC, No. 4:22-CV-00424,
     2024 WL 2701695, at *5 (M.D. Pa. May 24, 2024) (Brann, C.J.) (denying a plaintiff's motion to certify a class
     under Rule 23(b)(2) where the complaint included a request for statutory damages under the TCPA).

4    Landsman is an opinion that has been reinstated in part, to the extent it is consistent with Mims. See No.
     09-3105, 2012 WL 2052685 (3d Cir. Apr. 17, 2012).

5    To succeed with a cause of action under 47 U.S.C. § 227(b)(1) under the circumstances alleged in the
     complaint, Friel must show that defendants: 1) made "any call...using any automatic telephone dialing system
     or an artificial or prerecorded voice[;]" 2) to "any telephone number assigned to a...cellular telephone service[;]
     3) without "the prior express consent of the called party[.]" 47 U.S.C. § 227(b)(1)(A)(iii).

6    There are certain regulatory defenses to TCPA actions premised upon 47 U.S.C § 227(c) and the do-not-
     call regulations. Pursuant to the regulations, a "telephone solicitation" does not include a call to any person
     with whom the caller has an EBR. 47 C.F.R. § 64.1200(f)(15)(ii). EBR is separately defined in 47 C.F.R. §
     64.1200(f)(5). Furthermore, pursuant to the do-not-call regulations, "[n]o person or entity shall initiate any
     telephone solicitation to...[a] residential subscriber who has registered his or her telephone on the national
     do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the
     Federal Government." 47 C.F.R. § 64.1200(c)(2). Defendant Line5 adopts JEA's argument that this requires
     individuals to personally register their phones on the DNCR. Friel counters that personal registration is not
     required and would be impossible to prove in any case. (Doc. 53, Pl. Br. in Opp. at 15–17.) The court need
     not reach this issue in disposing of the motion to strike.

7    "Although the United States Court of Appeals for the Third Circuit has not explicitly considered whether fail-
     safe classes are permissible, it has approvingly cited rulings by other circuits that categorically disallow fail-
     safe classes." Jackson v. Meadowbrook Fin. Mortg. Bankers Corp., No. 4:22-CV-01659, 2023 WL 2472606,
     at *3 (M.D. Pa. Mar. 10, 2023) (Brann, C.J.) (citing Byrd, 784 F.3d at 167; In re Nexium Antitrust Litig., 777
     F.3d 9, 22 (1st Cir. 2015); Messner, 669 F.3d at 825).

8    On the other hand, the Honorable Christopher C. Conner reached a slightly different result when faced with
     this issue on a motion to strike in Johnson. 2017 WL 3433689 at *2–*3. Although the proposed TCPA class
     in Johnson included reference to consent, Judge Conner determined that it was not a facially uncertifiable
     fail-safe class because the proposed class definition contained reference to business records, which, with
     discovery, could reveal an ascertainable class. Id. at *1, *4.

9    Defendant Line5 indicates in its reply brief (filed after JEA's dismissal) that it only wishes to *bifurcate*, not
     *trifurcate* discovery. (Doc. 54). After review of Line5's reply brief, Line5 proposes a course of discovery that
     has no discernable distinction from the one proposed by JEA in the motion as initially filed.

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 35    Filed 10/13/25    Page 28 of 51
Hartley-Culp v. Credit Management Co., Not Reported in Fed. Supp. (2014)

2014 WL 4630852

2014 WL 4630852
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Dawn HARTLEY–CULP, individually and on
behalf of all others similarly situated, Plaintiff
v.
CREDIT MANAGEMENT COMPANY, Defendant.

Civil Action No. 3:CV–14–0282.
|
Signed Sept. 15, 2014.

**Attorneys and Law Firms**

Cynthia Levin, Law Offices of Todd M. Friedman, PC., King
of Prussia, PA, for Plaintiff.

James McNally, Justin M. Tuskan, Metz Lewis Brodman
Must O'Keefe LLC, Pittsburgh, PA, for Defendant.

*MEMORANDUM AND ORDER*

THOMAS M. BLEWITT, United States Magistrate Judge.

**I. BACKGROUND.**

 *1  This putative class action case was instituted, through
counsel, on February 17, 2014, by Plaintiff Dawn Hartley–
Culp, individually and on behalf of all others similarly
situated. (Doc. 1). Named as sole Defendant is Credit
Management Company ("CMC"). Plaintiff alleges that
Defendant CMC began placing a series of calls to her cellular
telephone ("cell phone") beginning in November of 2013.
Plaintiff alleges that the calls made by Defendant CMC to
her cell phone violated the Telephone Consumer Protection
Act ("TCPA"), 47 U.S.C. §§ 227, *et seq.,* since the calls were
placed by an automated telephone dialing system ("ATDS")
or, by an artificial or recorded voice without her prior
express consent. Plaintiff also alleges that Defendant CMC
left numerous pre-recorded messages on her cell phone.

This Court has jurisdiction over this case pursuant to 28
U.S.C. § 1331. [1]

On April 8, 2014, after being granted an extension of time,
Defendant CMC filed its Answer to the Complaint with
Affirmative Defenses. (Doc. 8). Defendant CMC admitted
that it contacted Plaintiff for the purpose of collecting a debt

which Plaintiff allegedly owed. In its Affirmative Defenses,
Defendant CMC asserted that Plaintiff gave express consent
to CMC's client to whom Plaintiff allegedly owed the debt,
and that the calls made to Plaintiff were not placed via an
ATDS. [2]

Subsequently, the Court issued a scheduling order and set case
deadlines, and then extended the deadlines on two occasions.
(Docs. 19, 22 & 26). The current discovery deadline is
November 28, 2014. Plaintiff's Motion for Class Certification
is due December 12, 2014.

Pursuant to 28 U.S.C. § 636(c), the parties consented to
proceed before the undersigned for all matters. (Doc. 17).

The parties are currently engaged in discovery. Plaintiff
indicates that on July 26, 2014, she served written discovery
on Defendant and scheduled a Rule 30(b)(6) deposition for
August 26, 2014.

On August 12, 2014, Defendant CMC filed a Motion
to Bifurcate Discovery, or in the alternative, to Stay
Proceedings. (Doc. 23). Defendant CMC simultaneously filed
its support brief with Exhibits. (Docs. 24 & 24–1 to 24–4).
Plaintiff filed her opposition brief on August 28, 2014. (Doc.
28). Defendant filed its reply brief on September 9, 2014, with
Exhibits. (Docs. 29, 29–1 & 29–2).

Defendant CMC seeks the Court to bifurcate discovery into
two phases with the first phase limited to the issue of whether
Plaintiff expressly consented to receiving calls on her cell
phone. Defendant CMC maintains that if it proves Plaintiff
provided her express consent, then the calls it placed to her do
not violate the TCPA. Defendant CMC then states that if it can
show the calls placed to Plaintiff did not violate the TCPA,
then Plaintiff will not be able to proceed as the representative
of the purported class.

In the alternative, Defendant CMC moves the Court to
stay all proceedings in this case since it contends that
many of Plaintiff's allegations in her Complaint turn on
issues currently pending before the Federal Communication
Commission ("FCC"). Defendant CMC states that the FCC
has primary jurisdiction to determine the issues raised by
Plaintiff in this case.

**II. DISCUSSION.**

Case 1:25-cv-00927-KMN    Document 35    Filed 10/13/25    Page 29 of 51

Hartley-Culp v. Credit Management Co., Not Reported in Fed. Supp. (2014)

2014 WL 4630852

**\*2** Initially, based on the very recent Middle District of Pennsylvania case of *Fenescey v. Diversified Consultants, Inc.,* 2014 WL 2526571 (M.D. Pa. June 4, 2014, J. Conaboy), which is directly on point with our case, as well as *Gager v. Dell Financail Services, LLC,* 727 F.3d 265, 2013 WL 4463305 (3d Cir.2013), and based on the well-reasoned decision of Judge Conaboy, with which we completely concur, we will deny Defendant CMC's alternative Motion to Stay all Proceedings in this case under the primary jurisdiction doctrine. This Court in *Fenescey* largely relied upon the Third Circuit's decision in *Gager v. Dell Financail Services, LLC,* 727 F.3d 265, 2013 WL 4463305 (3d Cir.2013). This Court in *Fenescey* stated that "[g]iven the force and clarity of the [*Gager* ] precedential opinion, we have no need to further evaluate the doctrine of primary jurisdiction on the question of whether the TCPA applies to debt collection calls made to cellular phones." 2014 WL 2526571, \*2. This Court in *Fenescey* also found that based on *Gager,* there was no basis to stay its case on the ATDS issue. *Id.,* \*3. [3]

Since we concur entirely with the Court in *Fenescey,* we do not repeat its decision herein, and shall deny Defendant CMC's alternative Motion to Stay Proceedings in this case.

Next, we turn to Defendant CMC's primary Motion to Bifurcate Discovery.

As mentioned, Plaintiff alleged in her Complaint that Defendant CMC violated the TCPA by placing calls to her cellular telephone number without her prior express consent using an automatic telephone dialing system, and by leaving serval voice mail messages. The TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Also, as stated, the TCPA applies to debt collection calls made to cellular phones. *Fenescey,* 2014 WL 2526571, \*2 (citing *Gager, supra* ). "Prior express consent is deemed to be granted only if the wireless number is provided by the consumer to the creditor, and the number was provided during the transaction that resulted in the debt owed." *Wattie–Bey v. Step hen and Michaels Assoc., Inc.,* 2014 WL 123597, \*2 (M.D.Pa. Jan.14, 2014) (citation omitted). Also, the burden is on the creditor regarding the issue of whether express consent was provided and the creditor must show that the required prior express consent was obtained. *Id.* (citation omitted).

There is no question that the Court, in its discretion, can bifurcate discovery under Fed.R.Civ.P. 42. In *Stemrich v. Zabiyaka,* 2014 WL 931069, \*1 (M.D.Pa. March 10, 2014), the Court stated:

> Under Federal Rule of Civil Procedure 42, a trial court may, in its discretion, bifurcate a trial. The rule provides as follows:
>
> > **\*3** For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed.R.Civ.P. 42(b). The decision to bifurcate, and the manner in which bifurcation should be ordered, is left to the trial court's informed discretion and must be decided on a case by case basis. *See Idzojtic v. Pennsylvania R.R. Co.,* 456 F.2d 1228, 1230 (3d Cir.1972) ("The district court is given broad discretion in reaching its decision whether to separate the issues of liability and damages."). In exercising its discretion, the court "must weigh the various considerations of convenience, prejudice to the parties, expedition, and economy of resources." *Emerick v. U.S. Suzuki Motor Corp.,* 750 F.2d 19, 22 (3d Cir.1984). The moving party bears the burden of establishing that bifurcation is appropriate. *See Innovative Office Prods., Inc. v. Spaceco, Inc.,* Civ. No. 05–cv–4037, 2006 WL 1340865, \*1 (E.D.Pa. May 15, 2006).

We disagree with Defendant CMC and its contentions in its briefs that discovery at this stage of the case, *i.e.,* before Plaintiff files her Motion for Class Certification, should be limited to the issue of whether its calls to Plaintiff fall within the "prior express consent" exception. As stated, the burden is on the creditor (in this case Defendant CMC) regarding the issue of whether prior express consent was provided. Also, as stated, the burden is on Defendant CMC to demonstrate that it did not use an automated telephone service when it contacted Plaintiff. If Defendant CMC can meet either of its burdens, Defendant CMC will be entitled to summary judgment on Plaintiff's TCPA claim. On the other hand, if genuine disputes of material fact exist as to whether Defendant obtained Plaintiff's prior express consent, then Defendant will not be entitled to summary judgment on Plaintiff's TCPA claim. *Wattie–Bey v. Step hen and Michaels Assoc., Inc.,* 2014 WL 123597, \*3. Likewise, if disputed issues of fact remain

Case 1:25-cv-00927-KMN    Document 35    Filed 10/13/25    Page 30 of 51

Hartley-Culp v. Credit Management Co., Not Reported in Fed. Supp. (2014)

2014 WL 4630852

as to whether Defendant CMC used automated telephone services in its contacts with Plaintiff, then summary judgment will not be appropriate. *Id.,* \*6(citations omitted). However, we concur with Plaintiff that "whether or not [Defendant] CMC had [prior express consent] to contact Plaintiff is not a threshold question that must be resolved at this stage, before the parties have had an opportunity to conduct class-wide discovery." (Doc. 28–1, p. 6, citing *Grant v. Capital Mgmt. Servs., L.P.,* 449 Fed.Appx. 598, 600 (9th Cir.2011) (" 'express consent' is not an element of a TCPA Plaintiff's prima face case, but rather is an affirmative defense for which the Defendant bears the burden of proof.").

We also agree with Plaintiff that despite Defendant CMC's contention and its Exhibits, that it would not be unduly burdensome on Defendant at this point of the case to respond to Plaintiff's discovery requests, including requests regarding the putative class action. Also, we find prejudice to Plaintiff if discovery was bifurcated as Plaintiff maintains. As Plaintiff points out, she "primarily seeks documents that are ordinarily maintained as business records, and to the extent that CMC will be burdened by having to produce any such documents, CMC can respond with the appropriate objections and substantiate them during the meet and confer process." (Doc. 28–1, p. 5). Defendant CMC will still be able to conduct any discovery it deems necessary to try and meet its burden as to its affirmative defenses, and it will be able to file a dispositive motion at the conclusion of discovery. Moreover, we agree with Plaintiff that she should have the benefit of discovery before she has to file her Motion for Class Certification, especially since Plaintiff has the burden of class certification. *See Hawk Valley, Inc. v. Taylor,* —— F.R.D. ——, 2014 WL1302097 (E.D.Pa. March 31, 2014) (citation omitted) (court granted Plaintiff's motion for class

certification in a TCPA unsolicited-fax case since it found, in part, common issues of law and fact predominated).

**\*4** Finally, we concur with Plaintiff that bifurcation of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions.

### III. CONCLUSION.

Accordingly, the Court will deny entirely Defendant CMC's Motion to Bifurcate Discovery, or in the alternative, to Stay Proceedings (**Doc.23**). [4]

An appropriate Order will be issued.

### *ORDER*

**AND NOW,** this *15* day of **September, 2014,** based on the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendant CMC's Motion to Bifurcate Discovery, or in the alternative, to Stay Proceedings (**Doc.23**) is **DENIED IN ITS ENTIRETY.**

2. The discovery deadline in this case is extended to **December 29, 2014,** and the deadline for Plaintiff's Motion for Class Certification is extended to **January 12, 2015.**

### All Citations

Not Reported in Fed. Supp., 2014 WL 4630852

---

### Footnotes

1    Jurisdiction of this Court is properly based on federal question, 28 U.S.C. § 1331, pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq. See Fenescey v. Diversified Consultants, Inc.,* 2014 WL 2526571 (M.D.Pa. June 4, 2014).

2    According to Defendant CMC's Doc. 24 brief, p. 3 n. 2, Plaintiff allegedly owed a debt to Defendant CMC's client Extendicare Health Services, Inc. Defendant CMC notes that it is presently pursuing discovery to try and show that Plaintiff voluntarily provided her cell phone number to Extendicare staff during her intake interview upon becoming a patient of Extendicare's rehabilitation division.

**WESTLAW**  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4630852

3   *See Gager v. Dell Financail Services, LLC,* 727 F.3d 265, 2013 WL 4463305 (3d Cir. Aug.22, 2013) (Third Circuit Court reversed dismissal of case alleging violations of 47 U.S.C. § 227(b) (1)(A)(iii), "the TCPA's provision banning certain automated calls to cellular phones."). In *Gager,* Plaintiff alleged that Defendant was obliged under the TCPA to stop autodialed calls to her cellular phone since she withdrew her prior express consent to be called on said phone via an automatic dialing system. The District Court granted Defendant's Rule 12(b)(6) Motion to Dismiss since it found that Plaintiff could not revoke her prior express consent. *See Gager v. Dell Financail Services, LLC,* 2012 WL 1942079 (M.D.Pa. May 29, 2012). The Third Circuit Court reversed the dismissal and found that "(1) the TCPA affords [Plaintiff] the right to revoke her prior express consent to be contacted on her cellular phone via an autodialing system and (2) there is no temporal limitation on that right." 727 F.3d 265, 2013 WL 4463305, *2.

4   The Court notes that it will, sua sponte, extend the discovery deadline and the deadline for Plaintiff to file her Motion for Class Certification. The discovery deadline will be extended to December 29, 2014, and Plaintiff's Motion for Class Certification will be extended to January 12,2015.

---

**End of Document**                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.   4

🚩 KeyCite Yellow Flag

Disagreed With by   A Fast Sign Co., Inc. v. American Home Services, Inc.,
Ga.,   November 5, 2012

2007 WL 3169078
Only the Westlaw citation is currently available.
United States District Court, D. Maryland.

Bruce LEVITT, et al.

v.

FAX.COM, et al.

Civil No. WMN–05–949.
|
May 25, 2007.

**Attorneys and Law Firms**

Michael Craig Worsham, Law Office of Michael Craig Worsham, Forest Hill, MD, Stephen Howard Ring, Stephen H. Ring PC, Germantown, MD, for Bruce Levitt, et al.

Rodney E. Gould, Rubin Hay and Gould PC, Framingham, MA, Thomas S. Hood, Hood and Scholnick PA, Towson, MD, for Fax.Com, et al.

### *MEMORANDUM*

WILLIAM M. NICKERSON, United States Senior District Judge.

 **\*1**  This suit arises out of three facsimile transmissions sent to Plaintiff Bruce Levitt in January and February of 2001. These transmissions advertised vacation packages offered by Defendant JD & T Enterprises, Inc. d/b/a Travel to Go (JD & T) and it is alleged that identical transmissions were sent, unsolicited, to thousands of Maryland residents. It is undisputed that the fax transmissions were actually sent by Defendant Fax.com. Furthermore, it is also undisputed that Fax.com was hired to send the faxes, not by JD & T directly, but by Creative Marketing Concepts (CMC), an independent marketing company hired by Defendant JD & T to market its vacation packages.

Plaintiff filed this action in the Circuit Court for Baltimore City on May 7, 2001, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA). The TCPA makes it generally unlawful "to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 42 U.S.C. § 227(b)(1)(C). Plaintiff initially named only Fax.com and JD & T as defendants.

On December 24, 2002, Judge Marcella Holland of the Baltimore City Circuit Court certified this suit as a class action. The class of plaintiffs was defined as:

> All persons, including business entities of any form, in Maryland, who received unsolicited advertisements transmitted by Fax .com, Inc, via facsimile promoting products and services offered for sale by or through JD & T Enterprises, Inc.

Order dated Dec. 24, 2002. Shortly thereafter, the Baltimore City Circuit Court granted a motion for summary judgment in favor of all defendants and dismissed the case. This dismissal was subsequently reversed by the Maryland Court of Appeals. *Levitt v. Fax.com, Inc ., 857 A.2d 1089 (Md.2004).* After the case was remanded to the Circuit Court, Plaintiff filed a "Second Amended Class Action Complaint" on February 23, 2005. This pleading added new defendants, including Creative Marketing Concepts, LLC and several individuals. Two of the newly added individual defendants, [1] Matthew Buecler and Jeanette Bunn, removed the action to this Court on April 7, 2005, pursuant to provisions of the then recently enacted "Class Action Fairness Act of 2005," 28 U.S.C. 1332(d) (CAFA). On October 12, 2005, this Court denied Plaintiff's motion to remand and on December 1, 2005, this Court granted a motion to dismiss Buecler and Bunn.

During the period of time between the certification of the class action and the denial of Plaintiff's motion to remand, *Fax.com* apparently went out of business and ceased its participation in this litigation. Thus, the only remaining active defendant is Defendant JD & T. On January 12, 2007, Defendant JD & T filed a motion to decertify the class action. Paper No. 40. That motion is now ripe.

"Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *General Tel. Co. of the Southwest v. Falcon, 457 U .S. 147, 160 (1982).* In fact, a court "is duty bound to monitor [the] class decision and, where certification proves

improvident, to decertify, subclassify, alter, or otherwise amend its class certification." *Chisolm v. TranSouth Financial Corp.* 194 F.R.D. 538, 544 (E.D.Va.2000). Like the decision to initially certify a class, a decision to decertify a class is left to the court's discretion. *Doe v. Lally,* 467 F.Supp. 1339 (D.Md.1979).

**\*2** Defendant JD & T raises three arguments as to why this Court should decertify the class. First, it argues that, now that the case is in a federal court, certification must be re-evaluated under the federal class certification rule. Although Maryland's class certification rule, Md. R. 2–231, is patterned after federal rule, Fed.R.Civ.P. 23, Defendant contends that the presumptions and burdens applied in interpreting the two rules are not identical. Second, Defendant contends that changes in the posture of the case, specifically, the fact that Fax.com is no longer actively participating in the litigation, have rendered continued treatment of this case as a class action unmanageable. Fax.com, according to JD & T, was the only source of critical information regarding the identity of those who received the facsimile transmissions, as well as those that may have consented to the transmissions. Finally, JD & T argues that the state court's certification decision was simply wrong.

For the reasons explained below, the Court finds JD & T's second argument compelling. Under the current posture of this litigation, class certification is no longer appropriate under Rule 23. Thus, the Court need not reach the issue of whether the state court's certification decision was flawed or whether it would have been different under the federal rule.

Rule 23(a) sets out four threshold requirements that must be satisfied by the putative class before a class action can be certified. The class representative must establish that

> 1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These four prerequisites are frequently referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively.

Once these four prerequisites are established, the plaintiff must still satisfy one of the three criteria of section (b) of Rule 23 before a class can be certified. Under 23(b) the potential class representative must show either that: 1) separate actions would result in inconsistent adjudications or the interests of non-parties would be substantially impaired; 2) final injunctive or declaratory relief is appropriate to the class as a whole; or 3) common questions of law or fact predominate over any questions affected only individual members and a class action is the superior method of fairly and efficiently adjudicating the controversy. Here, Plaintiff asserted, and the state court found, that class certification was appropriate under the state rule equivalent of the third subparagraph of Rule 23(b). *See* Second Amend. Compl. ¶ 21 (citing Md. Rule 2–231(b)(3)). Defendant argues, and this Court agrees, that Plaintiff simply cannot establish the prerequisites of commonality or typicality, nor can he demonstrate that common questions predominate over questions affecting the individual class members.

**\*3** Commonality, by definition, requires that there are questions of law or fact that are "common" to the class. "A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees. A question is not common, by contrast, if its resolution turns on a consideration of the individual circumstances of each class member." *Thorn v. Jefferson–Pilot Life Ins. Co.,* 445 F.3d 311, 319 (4th Cir.2006) (internal quotations and citations omitted). The need for a case-by-case determination of a material issue for each class member's claim also denotes that the claims of the class representative are not "typical" of the claims of the individual class members. *See Stott v. Haworth,* 916 F.2d 134, 145 (4th Cir.1990).

In order to establish a claim under the TCPA, a plaintiff must have received a facsimile transmission that was "unsolicited." Under the statute, "unsolicited" means transmitted without the recipient's "prior express invitation or permission." 47 U.S.C. § 227(a)(5). The recipient's prior invitation or permission could have been given orally or in writing. *Id.* (stating that invitation or permission can be given "in writing or otherwise"); *see also Carnett's Inc. v. Hammond,* 610 S.E.2d 529, 531 (Ga.2005).

Under the Federal Communications Commission's (FCC's) TCPA implementing regulations in effect at the time Plaintiff received the fax transmissions from JD & T, "express permission [was] also deemed given by those recipients having an 'established business relationship' " with the sender of the fax transmission. [2] *Carnett,* 610 S.E.2d at 531. An "established business relationship" is defined as "a prior or existing relationship formed by a voluntary two-way communication ... with or without an exchange of consideration...." 47 C.F.R. § 64.1200(f)(3). "The FCC has opined that the established business relationship exemption is broad and that you have an established business relationship with a person or entity if you have made an inquiry, application, purchase, or transaction regarding products of services offered by such person or entity." *Carnett,* 610 S.E.2d at 531–32 (internal citations omitted). [3]

It is this need to make a determination for each class member as to whether the facsimile transmission was unsolicited, both by the lack of express permission and by the absence of a prior business relationship, that makes class treatment of this action inappropriate and unmanageable. This determination of whether invitation or permission was given is, of necessity, highly individualized and would require a separate inquiry for each individual class member in light of their particular relationship or lack of relationship with each of the defendants. Under the current posture of this case, there is simply no available method for class-wide determination of this issue.

**\*4** Numerous courts, citing the lack of commonality, typicality and predominance of common issues, have determined that TCPA claims cannot be brought as a class action. *See, e.g., Forman v. Data Transfer, Inc.,* 164 F.R.D. 400, 403–04 (E.D.Pa.1995)(observing that "the essential question of fact that each potential plaintiff must prove is whether a specific transmission to its machine was without express invitation or permission on its part."); *Kenro, Inc. v. Fax Daily, Inc.,* 962 F.Supp. 1162, 1169–70 (S.D.Ind.1997) (noting that it would be required "to conduct individual inquiries with regard to each potential class member in order to determine whether each potential class member had invited or given permission for transmission of the challenged fax advertisements."); *Blitz v. Xpress Image, Inc.,* Civ. No. 05–679, 2006 WL 2425573 (N.C.Super.Aug.23, 2006) (denying class certification upon the conclusion that "there is no avoiding an individualized inquiry into the facts and circumstances of each recipient's 'invitation and

permission' should this matter proceed as a class action," as well as need for individualized determination of applicability of "established business relationship"); *Carnett's Inc. v. Hammond,* 610 S.E.2d 529, 532 (Ga.2005) (noting that while the predominate *question* of whether facsimiles were unsolicited was common to all class members, "a common question is not enough when the *answer* may vary with each class member and is determinative of whether the member is properly part of the class."); *Rondos v. Lincoln Prop. Co.,* 110 S.W.3d 716, 721–22 (Tex.Ct.App.2003) (reversing certification of class upon concluding that the predominant issue for litigation would be whether individual fax owners gave permission to receive advertisements); *Livingston v. U .S. Bank, N.A.,* 58 P.3d 1088, 1091 (Colo.App.2002) (upholding trial court's determination that "the question whether any particular fax recipient gave 'prior express invitation or permission' would have to be decided on an individual basis and therefore would overwhelm, let alone predominate over, the common issues").

It is conceivable, while the actual transmitter of the facsimiles in question, Fax.com, was available to actively participate in this litigation, that these issues could have been resolved in some more global fashion. In moving to certify the class in the state court and in his pleadings opposing this motion to decertify, Plaintiff averred that Fax.com had a database and log of the transmissions at issue in this matter. *See* Aug. 7, 2002, Mem. in Support of Class Cert.; [4] Opp. at 14. Information that Fax.com might have as to the source of its databases might be instructive as to issues of consent: was the database constructed from customer lists provided by CMC, lists purchased from some third party, numbers generated by Fax.com computers randomly dialing and hunting for fax machines, or some combination thereof? Regardless of what insight *Fax.com* might have been able to provide, however, there is no evidence in the record that JD & T has, or ever had, any information regarding the content or construction of the databases used by Fax.com.

**\*5** This absence of available information about the database renders this case, in its present posture, readily distinguishable from at least some of the cases relied upon by Plaintiff where class certification of TCPA claims was found appropriate. For example, in *Kavu, Inc. v. Omnipak Corp.,* Civ. No. 06–109, 2007 WL 201093, (W .D.Wash. Jan. 23, 2007), the record before the certifying court included the identity of the specific third party supplier of the database that was used to send the offending faxes as well as an explanation of the particular method used by that third party to construct

the database. The defendant, in fact, asserted in the litigation that the recipients' inclusion in that database demonstrated consent to receive facsimiles. *Id.* at *3. Because the validity of that assertion could be tested on a class-wide basis, the Court distinguished the case before it from the more typical TCPA case: "whether the facsimile was 'unsolicited' appears to be more of a common issue in this case than in the cases that denied class certification .... [where] the issue of whether each potential class member gave permission to receive the facsimiles was key." *Id.; see also, Gene & Gene, LLC v. Biopay, LLC,* Civ. No. 05–121, 2006 WL 3933312 at *2 (M.D.La. Dec. 20, 2006)* (record before the court contained database with names and contact information for the alleged unlawful facsimile transmissions). [5]

Implicitly acknowledging the importance of some means by which to identify those who received the offending facsimiles and those who may have consented to that receipt, Plaintiff devotes much of his opposition to an attempt to show that JD & T has or had possession of this information, or at least should have had possession of this information. In this attempt, however, Plaintiff seriously misconstrues the record. For example, Plaintiff declares that Jeannette Bunn, JD & T's president, "selected the geographic areas to be targeted" by the facsimile advertisements. Opp. at 6. This statement is presumably based upon a series of emails from JD & T to individuals associated with Fax.com and CMC. While Bunn makes geographic suggestions in these emails as to the *content* of the facsimile advertisements, *i.e.,* recommending the addition of particular vacation destinations, [6] there is nothing in these emails or elsewhere in the record to suggest that she had any input into the geographic areas to which those advertisement were to be sent.

Similarly, Plaintiff cites to a series of emails where complaints about the receipt of facsimiles are forwarded to Bunn and Bunn contacts the marketing company to have the telephone numbers removed from the call list. Plaintiff argues that these emails show that "JD & T thus helped 'maintain' the fax list" and "Bunn thus carelessly and recklessly proceeded to help in the deletion process, without taking the extra step of ascertaining whether prior consents were being obtained, and without implementing a policy to be sure they were obtained where needed." Opp. at 8, 9. While these emails might have relevance to issues of liability, they do not shed light on the propriety of class certification. If anything, they reinforce the fact that JD & T did not have immediate access to the database and thus had to relay the complaints elsewhere.

**\*6** In his opposition, Plaintiff asserts that he is attaching what he claims to be "3 representative pages" of "[t]he Fax.com database [which he] obtained through a former employee." Opp. at 8. Given the undisputed significance of this database, it is remarkable that Plaintiff mentions that it has come into his possession almost in passing. The Court surmises that Plaintiff's nonchalance with regard to this "evidence" is explained by Plaintiff's apparent inability to render it admissible. As JD & T observes, Plaintiff makes no effort, whatsoever, to authenticate this evidence. Furthermore, from the dates on the "representative pages," it appears this list is from a time period three years after the time relevant to this action. Finally, there is nothing about these pages indicating that they contain telephone numbers to which JD & T advertisements were sent. As evidence in this action, these pages as presented are essentially worthless and the Court suspects from the offhanded way that they were introduced that Plaintiff's counsel realizes as much.

Plaintiff also cites a January 28, 2003, letter from counsel for JD & T to Plaintiff's counsel in which it is stated that 36,877 transmissions of the specific advertisement at issue in this action were sent to Maryland fax numbers during the relevant time period. Pl.'s Ex. 7. This letter, Plaintiff claims, demonstrates that JD & T "had a method to determine Maryland recipients of the specific unsolicited travel faxes at issue." Opp. at 12. The value of this letter as evidence relevant to issues of class certification, however, is also highly suspect. First, the letter clearly states that it is a "***CONFIDENTIAL SETTLEMENT COMMUNICATION PER JUDGE HOLLAND—NOT TO BE USED IN LITIGATION.***" That aside, the letter also clearly relates that the information is coming from Fax.com, not JD & T. [7] Furthermore, the letter explains that, because of the way that the database was encrypted to protect its contents from theft, there is no way to obtain the individual numbers that comprise the database.

Unable to provide any evidence that JD & T actually had access to the database used by Fax.com to send the advertisement, Plaintiff argues, in the alternative, that JD & T *should* have had that access. Plaintiff opines that "[i]f Fax.com represented that it had obtained prior consents, one would expect that JD & T would want to confirm this fact, and see some kind of evidence in support." Opp. at 16. Plaintiff argues that, based upon JD & T's inability to prove that consent was given, a finding of lack of consent "should apply uniformly, across the board, as to all class members." *Id.* at 15.

Case 1:25-cv-00927-KMN    Document 35    Filed 10/13/25    Page 36 of 51
Levitt v. Fax.com, Not Reported in F.Supp.2d (2007)
2007 WL 3169078

This argument is based upon an interpretation of the statute not supported by the language of the statute itself or by the case law. Plaintiff contends, without citation, that "[e]ven if a member of the class had given permission to Fax.com to send faxes ... any such permission would not extend to JD & T." Opp. at 17. If, hypothetically, a consumer requested that Fax.com send information about travel packages and Fax.com then sent that consumer a facsimile about travel packages offered by JD & T, it is hard to imagine how that transmission could be deemed "unsolicited." Under the statute, the term " 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). The statute does not designate to whom the permission must be given. If permission is given to the transmitter of the facsimile, the marketing company, or the provider of the advertized product or services, the statute would not be violated.

**\*7** Once all the smoke is blown away, it appears that Plaintiff's true position is that this action is amenable to class treatment because the class members do not actually need to prove that the facsimiles in question were "unsolicited" in order to make out a claim under the TCPA. In Plaintiff's "common sense" view, "[i]t is unfathomable that anyone would actually give consent to receive via facsimile a barrage of ads like those at issue in this action." Opp. at 15 n. 7. [8] Thus, it can simply be presumed, according to Plaintiff, that the transmissions were unsolicited.

The Court has no doubt that this assumption would hold true for a majority of consumers. Most consumers do not wish for their facsimile machines to be tied up or their toner and paper wasted receiving and printing faxed advertisements. Just because that is true of most, however, does not permit the Court to adopt a presumption that it is true of all. Again, if Fax.com had remained involved in this litigation, information regarding the sources of telephone numbers in its database might have allowed some global determinations of consent. But without Fax.com's participation, that is simply not possible. [9]

Plaintiff raises one additional argument that warrants brief mention. Plaintiff argues that CAFA, the Class Action Fairness Act, somehow "weighs in favor of certification." Opp. at 2. Plaintiff correctly observes that this Court has

already held that, because CAFA allows for the aggregating of class member claims, " 'there is no dispute that the instant suit satisfies' " CAFA's jurisdictional criteria. Opp. at 17 (quoting Oct. 12, 2005 Mem. at 2). Because Plaintiff's individual damages would be below the requisite amount in controversy for diversity jurisdiction, Plaintiff opines that decertification would divest this Court of subject matter jurisdiction of his claims. Id. at 18.

In the context of post-removal reduction of the amount in controversy under the general diversity jurisdiction statute, courts have uniformly held that "diversity jurisdiction is determined at the time the action commences, and a federal court is not divested of jurisdiction ... if the amount in controversy subsequently drops below the minimum jurisdictional level." Hill v. Blind Indus. & Serv. of Md., 179 F.3d 754, 757 (9th Cir.1991). Because of the recentness of CAFA's enactment, few courts have considered the effect of post-removal certification or decertification decisions on continued federal jurisdiction. In the one decision of which this Court is aware that reached the issue, Davis v. Homecomings Financial, Civ. No. 05–1466, 2007 WL 905939 (W.D.Wash. March 22, 2007), the court held that a similar "time of removal" principle would apply.

In Davis, the plaintiff proposed a nation-wide class. After removal to federal court, the class was certified as state-wide class only which brought the amount in controversy under CAFA's requisite $5 million threshold. Nonetheless, following the principle that the amount in controversy is determined as of the time of the removal, the court concluded that it could retain jurisdiction over the now diminished class action. The court reasoned that Congress is presumed to be aware of the legal context in which it is legislating and, despite this presumed knowledge, "there is no indication that Congress intended to alter the established authority regarding subsequent changes to the amount in controversy." Id. at \* 1. This Court agrees with that reasoning and concludes that decertification of the class will not divest this Court of jurisdiction over Plaintiff's now lone claim.

**\*8** For the above stated reasons, the Court concludes that the class should be decertified. A separate order will issue.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 3169078

---

## Footnotes

1    There is no indication in the record that any of the other defendants added in the Second Amended Complaint were ever served with process.

2    Congress subsequently amended the TCPA to codify the "established business relationship" exception to TCPA liability in the facsimile context. 47 U.S.C. § 227(b)(1)(C)(i).

3    When Congress codified the "established business relationship" exception, it adopted by reference the FCC's definition of the term. 47 U.S.C. 227(a)(2) ("[t]he term 'established business relationship' for the purposes only of [47 U.S.C. § 227(b)(1)(C)(i) ] shall have the meaning given the term in [47 C.F.R. 64.1200]").

4    Defendant included quoted text from this memorandum in its motion, Mot. at 9, but the memorandum itself is not a part of record in this Court and Defendant did not supply it with its motion. As Plaintiff did not challenge Defendant's citation, the Court assumes its accuracy.

5    The court in *Gene & Gene,* did not base its decision on the availability of that database. Instead, after acknowledging that "federal courts have consistently denied class certification," 240 F.R.D. at 242, the court proceeded to examine "Fifth Circuit precedent in order to ascertain how a federal court within the Fifth Circuit should decide this matter." *Id.* Under its view of Fifth Circuit precedent, the court opined that the requirements of commonality and typically are "not demanding." *Id.* at 244. In contrast, the Fourth Circuit has held that, "in class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(b)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." *Lienhart v. Dryvit Systems, Inc.,* 255 F.3d 138, 147 n. 4 (4th Cir.2001) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 609 (1997)). Thus, in the Fourth Circuit, "[t]he common questions must be dispositive and overshadow other issues." *Lienhart,* 255 F.3d at 146.

In addition to distinguishable facts and law, all three of the cases relied upon by Plaintiff—*Kavu, Gene & Gene;* and *Lampkin v. GGH,* 146 P.3d 847 (Okla.Civ.App.2006), a recent decision from the intermediate appellate court of Oklahoma—endorsed what this Court views as a flawed class definition. The class definitions in all three actions, like the class definition approved by the state court in the instant action, required a determination of the merits in that all the definitions limit class membership to those who received "unsolicited" facsimiles. *Kavu,* 2007 WL 201093 at * 2 (defining class as "[a]ll persons who received an unsolicited advertisement ..."); *Gene & Gene,* 240 F.R.D. at 241 (defining class as "all recipients of unsolicited telefacsimile messages and/ or advertisements ..."); *Lampkin,* 146 P.3d at 851 (defining class as "[h]imself and all entities and persons ... who received unsolicited fax advertisements ..."); Dec. 24, 2002, Order (defining class as "[a]ll persons, including business entities of any form, in Maryland, who received unsolicited advertisements transmitted by Fax.com, Inc...."). Deciding the merits of individuals' claims in order to determine the members of the class is not appropriate. *See Eisen v. Carlisle v. Jacquelin,* 417 U.S. 156, 177 (1974); *See also, Forman,* 164 F.R .D. at 403; *Intratex Gas Co. v. Beeson,* 22 S.W.3d 398, 404–06 (Tex.2000) (collecting cases and explaining why a "fail-safe class," *i.e.,* a class whose definition includes a determination of the merits, is untenable).

6    *See, e.g.,* Opp. at 10 (" '... regarding adding some areas to the fax piece? I asked if you could add Sun Valley, ID as it is a popular destination for skiing and we have inventory there that is not moving at all.' ") (quoting Oct. 6, 2001 email from Bunn to Robin Posser).

7    For a brief period of time, early in this litigation, counsel for Fax.com also represented JD & T. At the time this letter was sent, Fax.com was clearly the main target of this litigation as evidenced by the fact that JD & T is mentioned nowhere in the letter.

8    Annoying as unsolicited facsimiles might be, the Court questions if three facsimiles can be fairly deemed "a barrage."

9    In an effort to compensate for Fax.com's absence from this litigation, Plaintiff submitted materials from other proceedings related to Fax.com. For example, Plaintiff submitted a portion of the testimony of Thomas Roth, one of Fax.com's officers, given in a January 31, 2003, hearing before the Securities and Exchange Commission. In his testimony, Mr. Roth states that some of the numbers in Fax.com's database were obtained by having computers randomly dial phone numbers fishing for facsimile machines. Faxes to these numbers, Roth acknowledged, would be unsolicited. But Roth also testified that *Fax.com* would purchase some numbers from list brokers. He made no representation in the testimony provided by Plaintiff that faxes sent to numbers on those purchased lists would be unsolicited. There is no testimony regarding the source of the database used to fax the JD & T material. Furthermore, as JD & T had no opportunity to cross examine Roth, this testimony is likely inadmissible in this action.

---

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag
Distinguished by  Kerswill v. Modern Brokers of America, LLC,  M.D.Fla.,
June 9, 2023

2012 WL 7856269
Only the Westlaw citation is currently available.
United States District Court,
S.D. Florida.

PHYSICIANS HEALTHSOURCE, INC., Plaintiff,
v.
ANDA, INC., Defendant.

No. 12–60798–CIV.
|
Nov. 27, 2012.

**Attorneys and Law Firms**

Brian J. Wanca, Ryan Michael Kelly, Anderson & Wanca
Rolling Meadows, IL, Daniel Allen Thomas, Leopold Law,
P.A., Palm Beach Gardens, FL, Max G. Margulis, Margulis
Law Group, Chesterfield, MO, Phillip A. Bock, Bock &
Hatch, LLC, Chicago, IL, for Plaintiff.

Albert Bower, Eric L. Samore, Yesha Sutaria,
SmithAmundsen, LLC, Chicago, IL, Ellen Marcie
Leibovitch, Assouline & Berlow, P.A., Boca Raton, FL, for
Defendant.

*ORDER ON BIFURCATION OF
DISCOVERY AND SCHEDULING*

ROBIN S. ROSENBAUM, District Judge.

**\*1** This matter is before the Court on Defendant's Motion
for Bifurcation of Discovery Pursuant to Federal Rules
of Civil Procedure 1 and 26 [D.E. 33]. The Court has
reviewed Defendant's Motion, the briefs, and the record and
is otherwise fully advised in the premises. For the reasons
stated below, the Court grants Defendant's Motion to conduct
discovery as to Plaintiff's individual claims before resolving
the class-certification issue.

Plaintiff Physicians Healthsource, Inc., filed its purported
class-action Complaint against Defendant Anda, Inc., on
May 1, 2012, alleging violations of the Telephone Consumer
Protection Act ("TCPA"). At the same time, Plaintiff filed

a "bare bones" placeholder Motion for Class Certification
[D.E. 4] asking this Court to certify this case as a class
action. As acknowledged by both parties, however, the class-
certification motion is premature and requires discovery
before it can be fully briefed and resolved by this Court. D.E.
35; D.E. 36; D.E. 37.

Although the parties agree that discovery is required before
resolving the class-certification issue, they disagree on
how best to organize the process. Defendant seeks first
to conduct discovery on and file a dispositive motion as
to Plaintiff's individual claims. According to Defendant,
Plaintiff's individual claims are time-barred. If Plaintiff's
individual claims are barred, Defendant argues, Plaintiff
would not qualify as an adequate class representative, and
the class action would be dismissed. D.E. 33 at 2. If
Plaintiff's claims survived, discovery would proceed to class
certification and the merits. *Id.* Plaintiff, on the other hand,
seeks to conduct discovery limited to its class-certification
motion, and once that motion is resolved, to proceed to
discovery and briefing on the merits. D.E. 36 at 1–2.

In addition to proposing its own discovery plan, Plaintiff
objects to Defendant's plan by denying the merit of
Defendant's dispositive arguments, by asserting that any delay
to resolve the individual claims "runs a substantial risk of loss
of evidence or memory loss of witnesses," and by opining
that witnesses will have to be deposed twice, first regarding
the individual claims and later on the class-certification and
merits issues. D.E. 36 at 4–7.

*DISCUSSION*

Courts have "broad discretion over the management of pre-
trial activities, including discovery and scheduling." *Johnson
v. Bd. of Regents of Univ. of Ga.,* 263 F.3d 1234, 1269 (11th
Cir.2001). In the class-action context, the Court may, in the
interests of fairness and efficiency, order discovery on issues
of class certification while postponing class-wide discovery
on the merits. *See Washington v. Brown & Williamson
Tobacco Corp.,* 959 F.2d 1566, 1570–71 (11th Cir.1992). The
drafters of the Federal Rules of Civil Procedure similarly
recognized that certification of a class may be delayed in
order to conduct discovery on and dispose of a purported class
representative's individual claims. Fed.R.Civ.P. 23 advisory
committee's note (2003) ("The party opposing the class may
prefer to win dismissal or summary judgment as to the
individual plaintiffs without certification and without binding

the class that might have been certified."). In this case, Defendant has made a plausible argument that it may be able to prevail on the merits against Plaintiff's individual claims. To be clear, the Court is not making any decision at this point as to the merits of Defendant's dispositive arguments. But if the Court resolves the individual claims in Defendant's favor, that ruling would likely significantly impact the Court's decision on class certification.

**\*2** Plaintiff's arguments against bifurcation are unconvincing. Although Plaintiff contests the merits of Defendant's arguments—and is free to do so more thoroughly in response to Defendant's anticipated dispositive motion—Plaintiff has not shown those arguments to be implausible on their face, and Defendant has demonstrated why discovery is necessary to support these arguments. *See* D.E. 39 at 6. Further, since Plaintiff itself points out that this case is "focused on the time frame of 2006 through 2009," D.E. 36 at 5, but did not file its Complaint until 2012, it seems unlikely that an additional few months to resolve the individual claims will prejudice the Plaintiff in any substantial way. Finally, although a handful of witness may need to be interviewed twice should this case proceed to class-wide discovery on the merits, that inconvenience is insufficient to outweigh the advantages potentially gained by resolving the individual claims at an early stage.

Accordingly, the Court agrees that in the interests of efficiency, Defendant should be allowed to conduct discovery on and submit a dispositive motion as to Plaintiff's individual claims. This discovery must be completed and any dispositive motion Defendant wishes to file must be filed within sixty (60) days of this Order. A schedule for class-certification briefing will be set after Defendant's dispositive motion is resolved.

Additionally, because both parties have agreed that Plaintiff's current class-certification motion is premature, the Court will deny the current certification motion without prejudice to renew. To the extent that Plaintiff is concerned that Defendant may attempt to "pick off" Plaintiff's claims with an offer of judgment, the Court acknowledges Defendant's stipulation "that it will not make a tender of relief or an offer under Fed.R.Civ.P. 68 or otherwise or argue or contend

that Plaintiff's lawsuit is moot or that class certification should be denied prior to Plaintiff's filing a motion for class certification, on such grounds." D.E. 37, ¶ 3. Furthermore, the Court recognizes that Plaintiff has pursued class certification from the time it filed its Complaint, and the Court is postponing the certification issue so that issues necessary to resolving certification can be more fully developed by the parties. *See Bishop's Prop. & Invs., LLC v. Protective Life Ins. Co.,* 463 F.Supp.2d 1375, 1382 (M.D.Ga.2006) (finding that a plaintiff had standing to pursue class certification even after the defendant "picked off" plaintiff's individual claim).

## *CONCLUSION*

For the reasons discussed above, it is **ORDERED and ADJUDGED** as follows:

1. Defendant's Motion for Bifurcation of Discovery Pursuant to Federal Rules of Civil Procedure 1 and 26 [D.E. 33] is **GRANTED.** The parties may conduct discovery related to Plaintiff's individual claims against Defendant. By **no later than January 25, 2013,** the parties must complete this discovery and file any dispositive motion relating to Plaintiff's individual claims against Defendant.

**\*3** 2. Plaintiff's Motion for Class Certification [D.E. 4] is **DENIED without prejudice** and may be renewed at a later date. The Court will enter a briefing schedule for a renewed class certification motion after ruling on any dispositive motion regarding Plaintiff's individual claims, or if no dispositive motion is filed, after the time for filing such a dispositive motion has expired.

3. In light of the above, Defendant's Request for Suspension of Briefing on Motion for Class Certification [D.E. 25] is **DENIED AS MOOT.**

**DONE** and **ORDERED** at Fort Lauderdale, Florida, this 26th day of November 2012.

## All Citations

Not Reported in F.Supp.2d, 2012 WL 7856269

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Saleh v. Crunch, LLC, Not Reported in Fed. Supp. (2018)

2018 WL 11264884

2018 WL 11264884
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

Bilal SALEH, individually and on behalf of
a class of others similarly situated, Plaintiff,

v.

CRUNCH, LLC, a Delaware limited liability
company, Crunch Franchising, LLC, a Delaware
limited liability company and DeLiu, LLC, a
Delaware limited liability company doing business
as Crunch Fitness Oakland Park, Defendants.

Case No. 17-62416-Civ-COOKE/HUNT
|
Signed 02/28/2018

### Attorneys and Law Firms

Jibrael Jarallah Said Hindi, The Law Offices of Jibrael S. Hindi, Fort Lauderdale, FL, Bret Leon Lusskin, Jr., Bret Lusskin, P.A., Aventura, FL, Sean Martin Holas, Scott David Owens, Scott D. Owens, P.A., Hollywood, FL, for Plaintiff.

Ian C. Ballon, Pro Hac Vice, Lori Chang, Pro Hac Vice, Valerie W. Ho, Pro Hac Vice, Greenberg Traurig LLP, Los Angeles, CA, Ian M. Ross, Stumphauzer Foslid Sloman Ross & Kolaya, PLLC, Miami, FL, Paul K. Silverberg, Silverberg & Weiss, P.A., Weston, FL, for Defendants Crunch, LLC, Crunch Franchising, LLC.

David K. Markarian, Markarian & Hayes, Palm Beach Gardens, FL, Paul K. Silverberg, Silverberg & Weiss, P.A., Weston, FL, for Defendant DeLiu, LLC c/o Marc Delisle, Managing Member 4801 Peregrine Point Circle West Sarasota, FL 34231.

### ORDER DENYING MOTION TO STAY PROCEEDINGS

MARCIA G. COOKE, United States District Judge

**\*1** THIS CAUSE came before the Court on Defendants Crunch, LLC's and Crunch Franchising, LLC's Motion to Stay Proceedings Pending a Decision by the Ninth Circuit Court of Appeals (ECF No. 35), which Defendant DeLiu, LLC has since joined. *See* Notice of Adoption/Joinder, ECF No. 40. Plaintiff filed a Response in Opposition (ECF No. 43),

and Defendants subsequently filed a Reply (ECF No. 45). I have reviewed the pertinent portions of the record, and am otherwise fully advised in the premises. For the reasons stated below, Defendants Motion to Stay is denied.

Defendants move to stay the instant proceedings pending a decision by the Ninth Circuit Court of Appeals in *Marks v. Crunch San Diego, LLC*, Appeal No. 14-56834 (9th Cir.). According to Defendants, the Ninth Circuit in *Marks* is set to rule on whether the Texmunication platform is an automatic telephone dialing system ("ATDS") within the meaning of the Telephone Consumer Protection Act ("TCPA"),[1] an appeal from a district court ruling in *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014) which found that Textmunication did not constitute an ATDS. In Plaintiff's Complaint (ECF No. 1), Plaintiff alleges Defendants sent texts through the Textmunication platform; Defendants therefore argue this case should be stayed pending the Ninth Circuit's decision because "an affirmance of that case would be authoritative of Crunch's liability in this case." Motion, 2.

A district court has broad discretion in determining whether a stay is appropriate. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). A stay is "based on a balancing test in which the movant bears the burden of showing either 'a clear case of hardship or inequity' if the case proceeds, or little possibility the stay will harm others." *Dunn v. Air Line Pilots Ass'n*, 836 F. Supp. 1574, 1584 (S.D. Fla. 1993), *aff'd*, 193 F.3d 1185 (11th Cir. 1999) (citing *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936)). "The proponent of a stay bears the burden of establishing its need." *Clinton*, 520 U.S. at 708. I find that a stay in this matter is not appropriate at this time.

First, a decision in *Marks v. Crunch San Diego, LLC*, Appeal No. 14-56834 (9th Cir.) would not necessarily be authoritative. The ruling on appeal in *Marks* was made on a motion for summary judgment, after the parties had developed a factual record. While the texting platform at issue may be the same in both cases, it is possible that the Plaintiff in the instant case may discover or present different facts than the parties in *Marks*. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Further, a decision in *Marks* will not define the rights of both parties nor will it automatically moot this case. While the Ninth Circuit's affirmance or rejection of the district court's finding might be persuasive in the instant matter, it

Saleh v. Crunch, LLC, Not Reported in Fed. Supp. (2018)

Case 1:25-cv-00927-KMN    Document 35    Filed 10/13/25    Page 42 of 51

2018 WL 11264884

is not binding on this Court. *See McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) ("A circuit court's decision binds the district courts sitting within its jurisdiction...."). Nor would there be a preclusive effect, as "[Plaintiff] was not a party to the [California] action, [his] interests were not adequately represented, and [he] did not have the opportunity to litigate the issues presented in the [California] action." *Int'l Ship Repair & Marine Servs., Inc. v. N. Assur. Co. of Am.*, 503 F. App'x 681, 683 (11th Cir. 2013). After a ruling by the Ninth Circuit, the parties would still need to litigate the applicability of the *Marks* decision to the facts of the instant case. As such, Plaintiff should be allowed to litigate this matter and develop his own factual record. Defendants can argue the correctness and applicability of the Ninth Circuit's ruling once it has been made.

**\*2** Second, if the D.C. Circuit's and Ninth Circuit's decisions are imminent, as Defendants argue, then there is a good chance the decisions will be issued in time to shape the parties' discovery and/or any motions for summary judgment.

Third, and last, Defendants have not shown that a denial of the stay will result in any undue prejudice to them other than that they *may* have more favorable caselaw to bolster their position at a later date. These are not sufficient reasons to warrant a stay of this matter, especially where a stay would prolong this matter on the Court's docket and could conceivably prejudice Plaintiff by the fading memory of any witnesses. *See Yong v. Peraza*, 2015 WL 4639736, \*2 (S.D. Fla. Aug. 4, 2015).

For the foregoing reasons, it is hereby **ORDERED and ADJUDGED** that Defendant's Motion to Stay Proceedings (ECF No. 35) is **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, this 28th day of February 2018.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 11264884

---

## Footnotes

1    The Ninth Circuit is, in turn, awaiting a ruling from the D.C. Circuit in *ACA Int'l v. F.C.C.*, Appeal No. 15-1211 (D.C. Cir.) on the validity of the Federal Communication Commission's 2015 Regulations, which, the petitioners in the case argue, expanded the statutory definition of an ATDS impermissibly. *See Marks v. Crunch San Diego, LLC*, No. 14-56834 (9th Cir.) ECF No. 62.

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 863601
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Margo SIMMONS, individually and on behalf
of all others similarly situated, Plaintiff,

v.

AUTHOR REPUTATION PRESS LLC, Defendant.

Civil Action No. 24-12330-BEM
|
Signed March 18, 2025

**Attorneys and Law Firms**

Anthony I. Paronich, Paronich Law, P.C., Hingham, MA, for Plaintiff.

Andrew M. Schneiderman, O'Hagan Meyer, Needham, MA, for Defendant.

**MEMORANDUM AND ORDER**

MURPHY, Judge

**\*1** For the reasons stated herein, the Court DENIES Defendant Author Reputation Press LLC's request to bifurcate and ADOPTS Plaintiff Margo Simmons's proposed case schedule.

**I. Introduction**

Plaintiff Margo Simmons alleges that Defendant Author Reputation Press LLC violated the Telephone Consumer Protection Act of 1991 ("TCPA") by telemarketing to phone numbers on the National Do Not Call Registry. Dkt. 1 ¶ 3. Plaintiff makes these allegations individually and on behalf of a putative class of other individuals similarly situated. *Id.* ¶¶ 31–38.

Defendant asks the Court to bifurcate the issues in this case so that it can "address the viability of Plaintiff's individual TCPA claim before engaging in costly and time-consuming class discovery." Dkt. 15 at 5–6. In its briefing, Defendant identifies a non-exhaustive list of seven defense-related "issues" to be explored during the first phase of litigation. *See id.* at 6. Defendant's proposed schedule contemplates that this phase will take approximately four months, with motions for summary judgment and trial to follow on the individual claim. *Id.* at 9–10.

**II. Legal Standard**

Federal Rule of Civil Procedure 26 affords district courts "broad discretion" in managing the timing and sequencing of discovery. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *see also* Local Rule 16.3(a)(3)(B) (providing for courts' ability to "sequence discovery into two or more stages"). Likewise, the decision to segregate certain claims for separate disposition under Federal Rule of Civil Procedure 42 "is a matter peculiarly within the discretion of the trial court." *Gonzalez-Marin v. Equitable Life Assur. Soc. of U.S.*, 845 F.2d 1140, 1145 (1st Cir. 1988). [1]

Notwithstanding this authority, "[b]ifurcation is ordinarily the exception and not the rule." *Hewlett-Packard Co. v. Genrad, Inc.*, 882 F. Supp. 1141, 1158 (D. Mass. 1995); *see also Wilson v. Quest Diagnostics, Inc.*, 2019 WL 7560932, at \*4 (D.N.J. Aug. 22, 2019) (highlighting potential unfairness and inefficiency of bifurcation).

**\*2** Faced with similar requests, "[c]ourts in this district have bifurcated individual merits and class discovery where doing so served the interests of justice given the allegations and circumstances of particular cases." *Katz v. Liberty Power Corp., LLC*, 2019 WL 957129, at \*2 (D. Mass. Feb. 27, 2019) (granting bifurcation in TCPA case); *Osidi v. Assurance IQ, LLC*, 2022 WL 623733, at \*1 (D. Mass. Mar. 3, 2022) (same).

**III. Discussion**

Defendant has not shown here that bifurcation would "serve[ ] the interests of justice." *Katz*, 2019 WL 957129, at \*2; *Osidi*, 2022 WL 623733, at \*1. *Katz* and *Osidi*—two cases wherein the court granted bifurcation of individual TCPA claims—are both distinguishable. In each of those cases, the court was presented with a clear, documented deficiency in the plaintiff's individual claim. [2] *See* Defendants' Memorandum in Support of Motion to Bifurcate Individual and Class Discovery at 5–7, *Katz*, Civ. No. 18-10506 (demonstrating, with record evidence, reasonable suspicion that the plaintiff's phone number would not qualify for TCPA protection); Local Rule 16.1(d) Joint Statement at 6–7, *Osidi*, Civ. No. 21-11320 (highlighting "pure legal" issue of TCPA consent, made salient and relevant by the defendant's record evidence, requiring "minimal, if any, additional discovery" before summary judgment).

Here, by contrast, Defendant has provided the Court no specific basis on which to conclude that Plaintiff's individual claims are particularly vulnerable to early defeasance. Rather, Defendant has merely pointed out that individual claims are subject to individual defenses, but that is true for all putative class-action plaintiffs.

**IV. Conclusion**

For these reasons, Defendant's request for bifurcation is DENIED. The Court ADOPTS Plaintiff's proposed pretrial schedule. *See* Dkt. 15 at 7–8.

**So Ordered.**

**All Citations**

Slip Copy, 2025 WL 863601

---

**Footnotes**

1    Defendant frames its proposal as a plan for discovery, Dkt. 15 at 5–6, but that plan also contemplates separate summary judgment briefings and trials on the individual claims, Dkt. 15 at 9–10, implicating Rule 42. *See Wilson v. Quest Diagnostics, Inc.*, 2019 WL 7560932, at \*2 (D.N.J. Aug. 22, 2019) (framing a similar dispute under Rule 42); *cf. DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 678–82 (N.D. Ga. 2007) (ordering pure sequencing of discovery in a trade secret case). At bottom, both rules place the decision squarely within the discretion of the trial court. *See Crawford-El*, 523 U.S. at 598; *Gonzalez-Marin*, 845 F.2d at 1145. However, courts have expressed particular concern against "routine[ ] order[ing]" of separate trials. *Abbott Biotechnology Ltd. v. Centocor Ortho Biotech, Inc.*, 55 F. Supp. 3d 221, 222 (D. Mass. 2014) (quoting *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 795 F. Supp. 501, 503 (D. Mass. 1992), *aff'd*, 36 F.3d 1147 (1st Cir. 1994), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)); *see also Chapman ex rel. Est. of Chapman v. Bernard's Inc.*, 167 F. Supp. 2d 406, 417 (D. Mass. 2001) (placing burden on party seeking bifurcation under Rule 42).

2    The Court does not intend to suggest that a "clear, documented deficiency" is either a necessary or sufficient condition for bifurcation, only that the circumstances here are unlike those in *Katz* or *Osidi*.

---

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Simon v. Ultimate Fitness Group, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 4382204

KeyCite Yellow Flag

Disagreed With by Wiggins v. Bank of America, North America, S.D.Ohio, September 22, 2020

2019 WL 4382204
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Caroline SIMON, individually and on behalf
of all others similarly situated, Plaintiff,
v.
ULTIMATE FITNESS GROUP, LLC d/b/
a Orangetheory Fitness, and Does 1 Through
10, inclusive, and each of them, Defendants.

No. 19 Civ. 890 (CM)
|
Signed 08/19/2019

**Attorneys and Law Firms**

Todd Friedman, Law Offices of Todd M. Friedman, Woodland Hills, CA, for Plaintiff.

Cary Brian Samowitz, Rachael C. Kessler, Cassandra Beckman Widay, DLA Piper US LLP, New York, NY, Edward Dean Totino, Baker & McKenzie LLP, Los Angeles, CA, for Defendants.

**MEMORANDUM DECISION AND ORDER
DENYING MOTIONS TO DISMISS OR STAY**

McMahon, C.J.:

\*1 Plaintiff Caroline Simon brings this class action against Ultimate Fitness Group, LLC d/b/a Orangetheory Fitness ("Defendant" or "Orangetheory") and ten unnamed employees or agents of Orangetheory, alleging violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"). The TCPA prohibits the making and sending of telemarketing calls and texts through an automated telephone dialing system ("ATDS" or "autodialer") without the consent of the recipient.

Orangetheory now moves to dismiss the Class Action Complaint (hereinafter referred to as the "Complaint") for lack of personal jurisdiction and for failure to state a claim. In the event that the motion to dismiss is denied, Defendant

also moves to stay the proceedings while awaiting the Federal Communications Commission's ("FCC's") release of the revised definition of an ATDS.

For the reasons set forth below, all of Orangetheory's motions are denied.

**I. Factual Background**

The following facts are drawn from the allegations in the Complaint, which are presumed true for the purposes of these motions.

Plaintiff Caroline Simon ("Plaintiff" or "Simon") is a resident of New York. (Compl. dated Jan. 31, 2019, Dkt. No. 11 ("Compl.") ¶ 4.)

The Complaint originally stated in error that Orangetheory had its principal place of business in New York City. (Compl. ¶ 5.) However, Plaintiff now agrees that Orangetheory is a Delaware corporation with its principal place of business and headquarters in Florida. (See Pl.'s Mem. of Law in Opp. Mot. to Dismiss, Dkt. No. 36 ("PL MTD Opp.") at 4 n.2; Def.'s Mem. of Law in Supp. of Mot. to Dismiss, Dkt. No. 32 ("Def. MTD Br.") at 1; see also Decl. of Charlene Barone in Supp. of Def.'s Mot. to Dismiss, Dkt. No. 33 ("Barone Decl.") ¶¶ 2–3.)

In or about May 2018, Simon received an unsolicited text message from Defendant on her cell phone. (Compl. ¶ 8.) The last four digits of the sender's number were "5443." (Id.) In or about June 2018, Simon continued to receive unsolicited text messages from Defendant, sent from Defendant's "text number" 797-979. (Id. ¶ 9.) Defendant allegedly contacted or attempted to contact Simon from telephone numbers confirmed to belong to Defendant, including but not limited to 797-979. (Id. ¶ 11.)

Although Simon does not allege what the text messages said, she alleges Defendant sent her "spam advertisements and/or promotional offers." (Id. ¶ 9.) She alleges the text messages were sent via Defendant's "SMS blasting platform," which she alleges is classified as a prohibited "automatic telephone dialing system" (ATDS) under the Telephone Consumer Protection Act ("TCPA"). (Id. ¶ 10.)

Simon was never a customer of Orangetheory, and never provided her cellular telephone number to it. (Id. ¶ 14.) Defendant and its agents never received Simon's prior express consent to receive unsolicited text messages, pursuant to 47 U.S.C. § 227(b)(1)(A). (Id.) Defendant's texts were not for

2019 WL 4382204

emergency purposes, as defined by 47 U.S.C. § 227(b)(1)(A). (*Id.* ¶ 12.)

**\*2** Simon now brings this action on behalf of a putative class of individuals within the United States who also received unsolicited text messages from Defendant within four years of the date of Simon's filing of her Complaint. (*Id.* ¶ 16.) While Simon is not sure exactly how large the putative class is, she believes the class could contain hundreds of thousands of people. (*Id.* ¶ 18.)

With respect to injury, Simon alleges that she and members of the putative class were harmed by Defendant's acts because the unsolicited text messages caused the class members to "incur certain telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invad[ed] the privacy of said Plaintiff and the Class members." (*Id.* ¶ 19.)

## II. Procedural History

In her Complaint filed on January 31, 2019, Simon asserts two causes of action on behalf of herself and the class: first, for negligent violations of the TCPA (Count 1), and, second, for knowing and/or willful violations of the TCPA (Count 2). (*Id.* ¶¶ 28–37.) The Complaint seeks $500 in statutory damages for each of Defendant's negligent violations of the TCPA (*Id.* ¶¶ 28–31), and up to $1,500 in statutory damages for each of Defendant's knowing and/or willful violations of the TCPA. (*Id.* at 6.)

Orangetheory now moves to dismiss the Complaint against it for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Dkt. No. 31.) Should those motions fail, Orangetheory asks the Court to stay Simon's action pending new FCC rules that might affect the definition of an autodialer under the TCPA. (Dkt. No. 34.)

## III. Discussion

### A. Defendant's Motion to Dismiss Under Rule 12(b)(2) for Lack of Personal Jurisdiction Is Denied

#### 1. Applicable Legal Standard

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendants. *In re Magnetic*

*Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003); *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). The plaintiff's burden of proof "depends upon the procedural context in which the jurisdictional challenge is raised." *Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 373 (S.D.N.Y. 2009). Where, as here, no evidentiary hearing has been held, plaintiffs "need only make a *prima facie* showing of personal jurisdiction." *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (citation omitted). "This showing may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Id.* The pleadings, affidavits, and other supporting materials are construed in a light most favorable to plaintiffs, and all doubts are resolved in their favor. *Id.*

Because Simon's claim is based on the TCPA, which is silent about service of process, state law informs whether the court has personal jurisdiction over Orangetheory. *Sea Tow Servs. Int'l, Inc. v. Pontin*, 472 F. Supp. 2d 349, 358 (E.D.N.Y. 2007) (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990)).

To determine whether personal jurisdiction exists over a non-domiciliary, the court engages in a two-step inquiry. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007)). The court first applies the long-arm statute of the forum state, to see whether it permits the exercise of personal jurisdiction over the defendants. If the laws of the forum state permit jurisdiction, the court then considers whether the exercise of such jurisdiction comports with constitutional due process. *See Best Van Lines*, 490 F.3d at 244.

**\*3** Because the Court is located in New York, the Court applies New York law. *See Chloe*, 616 F.3d at 163. Under New York's long-arm statute, there are two ways to establish personal jurisdiction over a defendant: (1) "general jurisdiction" under N.Y. C.P.L.R. § 301; and (2) "specific jurisdiction" under N.Y. C.P.L.R. § 302. As will be discussed, only the latter constitutes a possible basis for asserting personal jurisdiction over Orangetheory in this case.

#### 2. The Court Has Specific Jurisdiction over Orangetheory with Respect to Simon's Claim

Case 1:25-cv-00927-KMN   Document 35   Filed 10/13/25   Page 47 of 51

Simon v. Ultimate Fitness Group, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 4382204

Simon originally plead in error that Defendant's principal place of business was in New York City. (Compl. ¶ 5.) If that were true, there would be no question that Defendant is "at home" in New York and is thus subject to the general jurisdiction of this Court. *Daimler AG v. Bauman*, 571 U.S. 117, 136–37 (2014). However, because Orangetheory is actually a Delaware corporation with its principal place of business in Florida, the Court can only exercise specific jurisdiction over it—that is, jurisdiction that arises out Simon's and the putative class members' claims with respect to Defendant's conduct alleged in the suit. (Pl. MTD Opp. at 4); *see Daimler*, 571 U.S. at 137.

Defendant does not challenge that this Court has specific jurisdiction over Defendant with respect to Simon's claim and the claims of any New York residents who may be in the putative class. (Def. MFD Br. at 4 ("... the Court presumably has specific jurisdiction over [Plaintiff's] claim against Defendant....").) Defendant argues, however, that Supreme Court's recent decision in *Bristol-Myers Squibb v. Superior Court of California*, 137 S. Ct. 1773 (2017), prevents the Court from exercising personal jurisdiction over Defendant with respect to the claims of putative class members who are not New York residents.

### 3. The *Bristol-Myers Squibb* Decision

Defendant argues that *Bristol-Myers Squibb v. Superior Court of California*, 137 S. Ct. 1773 (2017), requires this Court to dismiss the claims of absent, non-New York class members, because the Court lacks specific jurisdiction over Orangetheory with respect to those claims. (Def. MTD Br. at 4.)

In *Bristol-Myers Squibb*, a group of 678 plaintiffs filed a mass action, under eight identical complaints, against Bristol-Myers Squibb in California state court, for injuries caused by one of Bristol-Myers Squibb's drugs, Plavix. *Bristol-Myers Squibb*, 137 S. Ct. at 1778. Only 86 of the plaintiffs were California residents. *Id.* The other 592 plaintiffs were residents of other States, and so had not suffered their injuries within California. *Id.* The California Supreme Court found that the lower courts had personal jurisdiction over Bristol-Myers Squibb, given the company's extensive contacts with California and the similarities between the claims of the California plaintiffs and the non-California plaintiffs. *Id.* at 1779. The Supreme Court reversed: without an actual connection between the out-of-state plaintiffs' claims and the

defendant's activities in California, California state courts' exercise of personal jurisdiction over Bristol-Myers Squibb with respect to the non-California plaintiffs' claims would violate the Due Process Clause of the Fourteenth Amendment. *Id.* at 1781, 1783.

The Supreme Court explicitly "[left] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784. The Supreme Court therefore left it to the lower courts to determine whether *Bristol-Myers Squibb*'s holding applies to nationwide class actions brought pursuant to Fed. R. Civ. P. 23. In practice, this question has fallen to the district courts; as far as this Court is aware, no circuit court has yet to weigh in on the matter. *See Suarez v. Cal. Nat. Living, Inc.*, 17-cv-9847, 2019 WL 1046662, at *6 (S.D.N.Y. Mar. 5, 2019).

**\*4** District courts generally take one of three approaches.

First, many courts hold that *Bristol-Myers Squibb* does not apply outside of the context of mass tort cases. *See, e.g., Sanchez v. Launch Tech. Workforce Solutions, LLC*, 297 F. Supp. 3d 1360, 1365 (N.D. Ga. 2018); *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 126 (D.D.C. 2018); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-md-2047, 2017 WL 5971622, at *12–*14 (E.D. La. Nov. 30, 2017); *Cabrera v. Bayer Healthcare, LLC*, LA 17-cv-8525, 2019 WL 1146828, at *8 (C.D. Cal. Mar. 6, 2019); *Gress v. Freedom Mortg. Corp.*, No. 1:19-cv-375, 2019 WL2612733, at *6–*7 (M.D. Pa. June, 26, 2019); *Hicks v. Rous. Baptist Univ.*, 17-cv-629, 2019 WL 96219, at *5–*6 (E.D.N.C. Jan. 3, 2019). Under this view, there is no constitutional unfairness in subjecting a defendant to the class claims of out-of-state plaintiffs in Rule 23 class actions, as long as a court has jurisdiction over the class representative's claims. *Sanchez*, 297 F. Supp. 3d at 1366. The due process issue is avoided because Rule 23 class certification already protects a defendant's due process rights. *Id.* at 1365–66 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)).

Another set of district courts holds the opposite: the same due process concerns that animated *Bristol-Myers Squibb* necessarily apply to nationwide class actions in federal courts. They hold there is no principled way to distinguish between the strictures of the Fourteenth Amendment Due Process Clause and the Fifth Amendment Due Process Clause. *See, e.g., Gazzillo v. Ply Gem Indus., Inc.*, 17-cv-1077, 2018 WL 5253050, at *7 (N.D.N.Y. Oct. 22, 2018); *DeBernardis v. NBTY, Inc.*, No. 17 C 6125, 2018 WL 461228, at *2 (N.D. Ill.

Case 1:25-cv-00927-KMN    Document 35    Filed 10/13/25    Page 48 of 51
Simon v. Ultimate Fitness Group, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 4382204

Jan. 18, 2018); *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 874–75 (N.D. Ill. 2017); *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 850–51 (N.D. Ohio 2018).

A third set of district courts opts to defer this issue until class certification: since unnamed plaintiffs are merely *potential* class members who may never actually be joined to this action, it would be premature for a court to decide whether there is specific jurisdiction over the defendant(s) with respect to their claims. *See Suarez*, 2019 WL 1046662, at *6 (citing *Gonzalez v. Costco Wholesale Corp.*, 16-cv-2590, 2018 WL 4783962, at *8 (E.D.N.Y. Sept. 29, 2018)); *Chernus v. Logitech, Inc.*, No. 17-cv-673, 2018 WL 1981481, at *7–*8 (D.N.J. Apr. 27, 2018); *see also Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 337 (E.D.N.Y. 2018) (citing the "unsettled nature of the law following *Bristol-Myers*" as another reason to defer on personal jurisdiction).

### 4. The Court Defers This Question Until Class Certification

Orangetheory "believes that it would be preferable to make this argument at the time that Plaintiff moves to certify a class." (Def. MTD Br. at 4 n.2.) Orangetheory represents that it made its motion now only to preserve the issue of personal jurisdiction, which is waived if not raised in a responsive pleading or motion to dismiss. (*Id.*; *see also* Reply in Supp. of Def.'s Mot. to Dismiss Pl.'s Class Action Compl., Dkt. No. 38 ("Def. MTD Reply") at 2.)

**\*5** The Court agrees that it is appropriate to defer questions regarding the class claims until class certification. *See Campbell*, 322 F. Supp. 3d at 337; *Gonzalez*, 2018 WL 4783962, at *8. "[I]n contrast to *Bristol-Meyers*, there are no actual 'non-forum state plaintiffs' or putative class members to speak of yet in this case, making Defendants' motion to dismiss or strike patently premature." *Bank v. CreditGuard of Am.*, No. 18-cv-1311, 2019 WL 1316966, at *12 (E.D.N.Y. Mar. 22, 2019). The Court will consider this issue when and if Plaintiff moves for class certification. The Court notes that the issue is preserved.

### B. Defendant's Motion to Dismiss Count 1 (Negligent Violation of the TCPA) and Count 2 (Knowing or Willful Violation of the TCPA) for Failure to State a Claim under Rule 12(b)(6) Is Denied

### 1. Applicable Legal Standard

When a party moves to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), the Court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal citation omitted). The claims will survive the motion to dismiss as long as they contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The plaintiff must do more, however, than merely attach "labels and conclusions" to bald factual assertions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### 2. The Telephone Consumer Protection Act (TCPA)

Congress enacted the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, ("TCPA") to hold telemarketers accountable for spamming customers with intrusive nuisance calls. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370–71 (2012). The TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any *automatic telephone dialing system* ... to any telephone number assigned to a ... cellular telephone service ... unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]" 47 U.S.C. § 227(b)(1)(a)(iii) (emphasis added).

The TCPA defines an "automatic telephone dialing system," or "ATDS," as "equipment which has the *capacity*—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added).

The definition of an "automatic telephone dialing system"—and the attendant concept of "capacity"—are central to the statute.

"The FCC has the authority to promulgate regulations implementing the TCPA." *King v. Time Warner Cable Inc.*, 894 F.3d 473, 474 (2d Cir. 2018) (citing 47 U.S.C. § 227(b)(2)). "In 2015, the FCC issued a Declaratory Ruling and Order that, among other things, attempted to clarify the TCPA's requirement that, to qualify as an autodialer

Simon v. Ultimate Fitness Group, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 4382204

Case 1:25-cv-00927-KMN    Document 35    Filed 10/13/25    Page 49 of 51

under the statute, a device must have the 'capacity' to dial random and sequential numbers." *Id.* (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Red. 7961, 7973–74 (2015) (the "2015 Ruling")). "The Commission asserted that an expansive interpretation of the term 'capacity' was consistent with both Congress's intent that the TCPA have a broad protective reach, and with the Commission's previous orders. Accordingly, the FCC 'declined to define a device's "capacity" in a manner confined to its "present capacity." Instead, the agency construed a device's "capacity" to encompass its "potential functionalities" with modifications such as software changes.' " *Id.* (quoting *ACA Int'l v. FCC*, 885 F.3d 687, 693–94 (D.C. Cir. 2018) (in turn quoting 2015 Ruling)).

**\*6** In 2018, the 2015 Ruling was struck down by the D.C. Circuit in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). The D.C. Circuit held that, per the text of the statute, the ATDS' *present* functions must include the ability to generate random or sequential numbers, even if that function was turned off when the system sent the offending calls or text messages in question. *Id.* at 699.

After the D.C. Circuit vacated the 2015 Ruling, the FCC sought public comment on the meaning of "capacity" under the TCPA's definition of an autodialer. *See* Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's *ACA International* Decision, 83 Fed. Reg. 26,284 (June 6, 2018). The notice stated that the agency would take comments until October 24, 2018. The FCC has taken no further action.

In the meantime, on June 29, 2018, the Second Circuit published a decision adopting the definition of "capacity" articulated by the D.C. Circuit in *ACA International*:

> In sum, we conclude that the term "capacity" in the TCPA's definition of a qualifying autodialer should be interpreted to refer to a device's current functions, absent any modifications to the device's hardware or software. That definition does not include every smartphone or computer that might be turned into an autodialer if properly reprogrammed, but does include devices whose auto dialing features can be activated, as the D.C. Circuit suggested, by the equivalent of "the simple flipping of a switch."

*King*, 894 F.3d at 481 (citing *ACA Int'l*, 885 F.3d at 696).

At present—in the absence of any valid agency rule interpreting "capacity"—the Second Circuit's decision in *King* is binding on this Court.

### 3. Simon Has Plausibly Plead that Orangetheory Used an ATDS

To state either a negligent violation or willful violation claim under the TCPA, a plaintiff must allege the following basic elements: "(1) [a defendant] called her on her cell phone; (2) using an automated dialing system or pre-recorded voice; (3) without her consent." *King v. Time Warner Cable*, 113 F. Supp. 3d 718, 725 (S.D.N.Y. 2015), *rev'd on other grounds*, 894 F.3d 473 (2d Cir. 2018); *see also Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 474 (S.D.N.Y. 2018).

The parties agree that Simon has pleaded the first and third elements. Simon alleges that she received text messages from Defendant on multiple occasions between May and June 2018. (Compl. ¶ 9.) Since a text message is the same as a "call" under the TCPA, Simon has shown the first element of her claim. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666–67 (2016). In addition, Simon also alleges that she has never been a customer of Defendant's and that she has never given Defendant her cell phone number. (Compl. ¶ 14.) This allows the Court to draw a direct inference that Defendant never received Simon's "prior express consent." 47 U.S.C. § 227(b)(1)(A)(iii).

Defendant instead moves to dismiss both TCPA claims (Counts 1 and 2) on the ground that Simon has not plausibly plead enough facts suggesting the use of an ATDS.

I find that she has.

Courts find that the use of a "short code telephone number" plausibly indicates that the Defendant used an ATDS. *Rotberg*, 345 F. Supp. 3d at 476–77; *see also Krady v. Eleven Salon Spa*, No. 16-cv-5999, 2017 WL 6541443, at \*4 (E.D.N.Y. July 28, 2017), *report and recommendation adopted*, 2017 WL 6542462 (E.D.N.Y. Dec. 21, 2017) (collecting cases on short codes and other indicia of ATDS). In addition, courts have found that if the texts are of an "impersonal, generic nature," they plausibly indicate the use of an ATDS. See *Krady*, 2017 WL 6541443, at \*4; *see also Unchageri v. YuppTV USA, Inc.*, No. 17-CV-3862, 2018 WL 1184737, at \*3 (N.D. Ill. Mar. 7, 2018).

Simon v. Ultimate Fitness Group, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 4382204

**\*7** Here, Simon asserts that she received the text message via "Defendant's SMS blasting platform," which plausibly alleges that the text messages were sent widely and to multiple numbers. (Compl. ¶ 10.) Although Simon does not allege the specific contents of the text messages, she alleges Defendant sent her "spam advertisements and/or promotional offers"—which plausibly suggest impersonal, generic messages. Most persuasively, Simon claims to have received several unsolicited text messages over a period of two months from a variety of numbers, including the short code text number "797-979," which, as other courts have held, is plausible indicia of an ATDS. (*Id.* ¶ 9.) At this stage, Plaintiff has done all she must to plead this element of her claim.

Defendant's motion to dismiss Counts 1 and 2 of the Complaint for failure to state a claim under Rule 12(b)(6) is, therefore, DENIED.

### C. Defendant's Motion to Stay Is Denied

Defendant has filed a separate motion asking the Court stay the case until the FCC promulgates a new final rule, or issues a new declaratory ruling, defining "autodialer" and "capacity." Defendant identifies two grounds for such a stay: *first*, the Court's inherent power to issue stays to control its docket, and, *second*, the Court's authority to issue a stay under the doctrine of primary jurisdiction.

For the following reasons, Orangetheory's motion is denied without prejudice to renewal at a later stage of the litigation.

### 1. Defendant Has Not Shown It Is Entitled to a Stay

In deciding whether to grant a stay under its inherent powers, the Court must consider: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).

Defendant fails to make the required showing on any of these factors. Orangetheory has not made *any* showing—let alone a strong one—that any ruling by the FCC would likely exclude the device used by Orangetheory to spam Simon, so as to enable it to succeed on the merits. In addition, Orangetheory has not demonstrated irreparable injury; it notes only that it is potentially on the hook for substantial damages, given the putative nationwide class. Monetary damages, of course, do not by themselves constitute irreparable injury.

Simon, on the other hand, persuasively argues that she would be injured by a stay, particularly because discovery has yet to commence, and evidence is at risk of being lost. This injury, which is both likely and irreparable, far outweighs the injury posed by a potential future judgment for money damages.

Finally, Orangetheory argues that the public interest favors issuing a stay, because of the "risk of disparate interpretations of the TCPA in the absence of clear guidance from the FCC." (Mem. of Law in Supp. of Def.'s Mot. to Stay, Dkt. No. 35 ("Def. Stay Br.") at 15.) However, the Second Circuit's interpretation of "capacity" in *King*, according to Orangetheory, is in line with nearly all other circuits that have reached the issue. (*See id.* at 12–14.) The risk seems small. If and when the FCC rules, we will deal with it.

### 2. The Primary Jurisdiction Doctrine Does Not Mandate a Stay

Defendant also argues that the abstention doctrine of primary jurisdiction requires staying the case.

"The doctrine of primary jurisdiction allows a federal court to 'refer' or stay "a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight." *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 222–23 (2d Cir. 1995). In the Second Circuit, the "inquiry has generally focused on four factors:

**\*8** (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;

(2) whether the question at issue is particularly within the agency's discretion;

(3) whether there exists a substantial danger of inconsistent rulings; and

Case 1:25-cv-00927-KMN    Document 35    Filed 10/13/25    Page 51 of 51

Simon v. Ultimate Fitness Group, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 4382204

(4) whether a prior application to the agency has been made.

*Ellis v. Tribune Television Co.*, 443 F.3d 71, 82–83 (2d Cir. 2006). Courts "must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Id.* at 83 (internal quotation omitted).

Defendant argues that "the FCC is currently considering the precise questions at issue here," because, in its June 2018 request for comments, it asked the following questions: "What constitutes an [ATDS]? How "automatic" must dialing be for equipment to qualify as an [ATDS]? Must such a system dial numbers without human intervention? If equipment cannot itself dial random or sequential numbers, can that equipment be an [ATDS]?" (Def. Stay Br. at 3.)

Putting aside for the moment that agency requests for comment are often broader than the scope of the final rule, the takeaway from Defendant's brief is that degree of human interaction with the purported autodialer lies at the heart of this lawsuit. But neither Simon nor this Court knows anything about the system that was allegedly used to send text messages on behalf of Orangetheory. The Court certainly does not know if "human intervention" is what will tip the scales in favor of either plaintiff or defendant, and therefore whether this case is susceptible of resolution by the FCC's rulemaking —if that is even what the FCC intends to do. *See Gould v. Farmers Ins. Exch.*, 326 F.R.D. 530, 531 (E.D. Mo. 2018) ("[T]he FCC has not indicated whether it will pursue a formal rulemaking or some other proceeding following the collection of comments on this issue" of what constitutes "capacity."). Put differently, "a stay is not prudent at this time because, at a minimum, discovery of the nature of [Defendant's] calling system and [Defendant's] contacts with Plaintiffs is required before any definitive legal standard under the TCPA can be applied to [Defendant's] conduct herein." *Somogyi v. Freedom Mortg. Corp.*, No. 17-cv-6546, 2018 WL 3656158, at *1 (D.N.J. Aug. 2, 2018).

Finally, even if Orangetheory had identified the specific question at issue and the Court were convinced that the FCC was taking action would resolve it—I am not—delay and prejudice would still justify denying the motion. It is well known that, "If the FCC does proceed with a formal rulemaking, such a process will likely take years[.]" *Gould*, 326 F.R.D. at 532. Further, any final rule promulgated by the FCC would almost certainly be subject to a pre-enforcement challenge—and would likely be stayed pending the resolution of that challenge, which could also take years. In the meantime, it is clear that critical evidence, including records from any third parties that Orangetheory may have contracted with for its telephone marketing, may be lost or destroyed.

That said, it is possible that the regulatory landscape will have changed significantly once discovery concludes. Therefore, while the Court denies Orangetheory's motion to stay the case now, that ruling is without prejudice to Orangetheory's renewal of its motion, if and when: (1) the issues for trial are narrowed; (2) the scope and timeline of the FCC's action becomes clearer; and (3) a stay would not pose irreparable harm to Plaintiff and the putative class.

### IV. Conclusion

**\*9** For the aforementioned reasons, Defendant's motion to dismiss for lack of personal jurisdiction is denied; the motion to dismiss for failure to state a claim is denied; and the motion to stay is denied.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 31 and 34.

This constitutes the written decision and order of the Court.

### All Citations

Not Reported in Fed. Supp., 2019 WL 4382204

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.