## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VIASAT, INC.,<br><br>Defendant. | Civil Action No. 1:25-cv-00927-KMN<br><br>(Hon. Keli M. Neary) |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I.     INTRODUCTION ...............................................................................................1

II.    ARGUMENT......................................................................................................2

    A.     Plaintiff Fails to Rebut Viasat's Factual Standing Challenge. ..............2

        1.     Plaintiff Did Not Carry His Burden To Show Standing. ............2

        2.     The "Intertwinement" Rule Does Not Apply In This Case. .......7

    B.     Plaintiff Fails to Plausibly Allege a Theory of TCPA Liability...........13

    C.     Any Dismissal Should Be With Prejudice. .........................................18

III.   CONCLUSION.................................................................................................19

TABLE OF AUTHORITIES

## CASES

*Abramson v. AP Gas & Elec. (PA), LLC*,
2023 WL 1782728 (W.D. Pa. Feb. 6, 2023)........................................................15

*Anderson v. Gannett Co.*,
2023 WL 3604656 (D.N.J. May 23, 2023)..............................................9, 10, 11

*Anderson v. Gannett Co.*,
2024 WL 3361394 (D.N.J. July 10, 2024) .......................................................10

*Atkinson v. Choice Home Warranty*,
2023 WL 166168 (D.N.J. Jan. 11, 2023)...........................................................16

*Baccari v. Carguard Admin., Inc.*,
2022 WL 3213839 (E.D. Pa. Aug. 8, 2022) ................................................passim

*Bank v. GoHealth, LLC*,
2021 WL 2323282 (E.D.N.Y. Mar. 8, 2021).....................................................15

*Bordoni v. Chase Home Fin. LLC*,
374 F. Supp. 3d 378 (E.D. Pa. 2019)..................................................14, 15, 19

*Bridges v. Astrue*,
2014 WL 1281158 (E.D. Pa. Mar. 28, 2014) ....................................................14

*Callier v. Unified Health, LLC*,
2024 WL 3418778 (W.D. Tex. July 15, 2024)........................................7, 11, 12

*Charlton v. Comm'r*,
611 F.App'x 91 (3d Cir. 2015) ..............................................................................8

*Clough v. Highway Auto. Pros LLC*,
2023 WL 4291826 (C.D. Cal. May 23, 2023)........................................7, 11, 12

*Cottrell v. Alcon Labs.*,
874 F.3d 154 (3d Cir. 2017) ..................................................................................8

*Davis v. Wells Fargo*,
824 F.3d 333 (3d Cir. 2016) ..................................................................................9

*De Cavalcante v. C.I.R.*,
620 F.2d 23 (3d Cir. 1980) ....................................................................................3

*Dolison v. SavaSeniorCare Admin. Servs., LLC*,
2019 WL 588699 (E.D. Pa. Feb. 13, 2019).......................................................10

*Goodell v. BH Auto., LLC,*
2023 WL 2691452 (D. Ariz. Mar. 29, 2023) ..................................................8, 9

*Gould Elecs. Inc. v. U.S,*
220 F.3d 169 (3d Cir. 2000) .................................................................2

*Harris v. Kellogg Brown & Root Servs., Inc.,*
724 F.3d 458 (3d Cir. 2013) ..............................................................3, 7

*Hertz Corp. v. Friend,*
559 U.S. 77 (2010)..............................................................................3

*Jackson v. Direct Bldg. Supplies LLC,*
2024 WL 1721144 (M.D. Pa. Apr. 22, 2024)..........................................7, 11, 12

*Kehr Packages, Inc. v. Fidelcor, Inc.,*
926 F.2d 1406, 1409 (3d Cir. 1991) ...................................................11

*Kwan v. Schlein,*
246 F.R.D. 447 (S.D.N.Y. 2007) ........................................................18

*Mann v. Brenner,*
375 F.App'x 232 (3d Cir. 2010).........................................................17

*Mortensen v. First Fed. Sav. & Loan Ass'n,*
549 F.2d 884 (3d Cir. 1977) ......................................................passim

*Myslivecek v. FCA US LLC,*
2022 WL 17904526 (E.D. Mich. Dec. 23, 2022) ..................................8

*Scofield v. Alleviate Tax LLC,*
1:24-cv-03231-DDD-KAS, ECF No. 42 (D. Colo. Sep. 18, 2025)...................16

*Smith v. Am.-Amicable Life Ins. Co. of Texas,*
2022 WL 1003762 (E.D. Pa. Apr. 4, 2022)........................................14, 15

*Thorne v. Pep Boys Manny Moe & Jack Inc.,*
980 F.3d 879 (3d Cir. 2020) .............................................................18

*Top v. Ocean Petroleum, LLC,*
2010 WL 3087385 (D.N.J. Aug. 3, 2010) .........................................17

*U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.,*
769 F.3d 837 (3d Cir. 2014) .............................................................18

*Warth v. Seldin,*
422 U.S. 490 (1975).............................................................................7

*Washington v. Hovensa LLC,*
652 F.3d 340 (3d Cir. 2011) ...............................................................3

*Winner v. Kohl's Dept. Stores, Inc.*,
    2017 WL 3535038 (E.D. Pa. Aug. 17, 2017) .......................................8, 9, 10, 13

*Yoder v. Morrow*,
    671 F.App'x 27 (3d Cir. 2016)............................................................................18

## RULES

Fed. R. Civ. P. 8 ....................................................................................................17

Fed. R. Civ. P. 12(b)(1)...................................................................................passim

Fed. R. Civ. P. 12(b)(6)...................................................................................passim

## I. <u>INTRODUCTION</u>

Jurisdiction in this Court is only proper if Plaintiff suffered an injury-in-fact traceable to Viasat. *See* Dkt. 24 at 1, 5-6, 7-10. As the Court recognized when granting Viasat's motion to bifurcate, at the minimum Plaintiff must have received calls from Viasat to have Article III standing to prosecute this TCPA action. *See* Dkt. 36 at 2. However, the evidence demonstrates that ***Plaintiff received no such calls***.

Specifically, as discussed in Viasat's Motion to Dismiss and further below, authenticated records from Plaintiff's cell carrier, T-Mobile, do <u>not</u> show the receipt of either alleged call. Records from IP Horizon, the carrier Plaintiff identified as responsible for the numbers used to call him, demonstrate Viasat was <u>not</u> connected with either number. Viasat also submitted unrebutted evidence that it does not telemarket and contractually forbids others from doing so on its behalf. *See* Dkt. 23-1 to Dkt. 23-8. Nothing in Plaintiff's Response (Dkt. 30) to the Motion demonstrates otherwise. As such, Plaintiff lacks an injury traceable to Viasat, depriving him of standing and this Court of jurisdiction. The Court should therefore dismiss Plaintiff's entire First Amended Complaint (Dkt. 21) with prejudice under Rule 12(b)(1).

Should the Court reach Viasat's Rule 12(b)(6) arguments, dismissal of the FAC with prejudice is also appropriate under that Rule. That is because Plaintiff failed to plead any non-conclusory facts in his FAC supporting a viable theory of TCPA liability. *See* Dkt. 24 at 11-18. Nothing in his Response compels a contrary result.

## II.    ARGUMENT

### A.    Plaintiff Fails to Rebut Viasat's Factual Standing Challenge.

As the Motion shows, Viasat did not call Plaintiff, does not telemarket, contractually forbids others from doing so on its behalf, and does not have any connection with the numbers allegedly used to call him. *See* Dkt. 24 at 4-5, 7-10; Dkt. 23-1 to Dkt. 23-8. The <u>undisputed</u> evidence confirming all this includes not only a sworn declaration from Viasat but also records obtained in discovery from key third parties, including Plaintiff's self-identified cell carrier (T-Mobile) and the carrier for the callers' numbers (IP Horizon). *See* Dkt. 23-1; Dkts. 23-3 to 23-8. *See also* Dkt. 17, § 2.1 (Plaintiff identifying "T-Mobile/Google Fi" as his "telephone carrier" and "IP Horizon"); Dkt. 36 at 2 (discussing IP Horizon records). Without an injury traceable to Viasat, Plaintiff has no standing, this Court lacks jurisdiction, and the entire FAC is subject to dismissal under Rule 12(b)(1) on this basis alone. *See* Dkt. 24 at 1, 7-10 (analyzing, *inter alia, Baccari v. Carguard Admin., Inc.,* 2022 WL 3213839, at *2–3 (E.D. Pa. Aug. 8, 2022)). Plaintiff's Response does not refute any of this.

### 1.    Plaintiff Did Not Carry His Burden To Show Standing.

To rebut Viasat's factual standing challenge, Plaintiff bears the sole burden to demonstrate that federal subject matter jurisdiction exists here. *See Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977) and *Gould Elecs. Inc. v. U.S,* 220 F.3d 169, 176 (3d Cir. 2000). Plaintiff has not met his burden.

Plaintiff first argues that simply because he alleges in his FAC and declaration that Viasat called him Viasat's standing challenge fails. *See* Dkt. 30 at 5 (citing Dkt. 30-2) (arguing Viasat's challenge "must fail because Plaintiff has alleged [Viasat] called him, as alleged in the [FAC] and confirmed through Plaintiff's declaration and telephone screenshots" of the alleged calls). That is not the law. It is well-settled that, when resolving factual standing challenges under Rule 12(b)(1), "no presumptive truthfulness attaches to plaintiff's [pled] allegations." *Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 464 (3d Cir. 2013) (citing *Mortensen*, 549 F.2d at 891). Rather, as the U.S. Supreme Court held, when the defendant raises a factual standing attack, plaintiffs must support their jurisdictional allegations with "competent proof." *Hertz Corp. v. Friend,* 559 U.S. 77, 96-97 (2010).[1] Hence in *Baccari*, the Court found that simply restating the allegations in the complaint was insufficient to overcome defendant's evidence that the plaintiff lacked standing. *See* 2022 WL 3213839, at *3.

Despite discovery having commenced in July, Plaintiff here does no better than in *Baccari*. The only "evidence" offered in opposition to Viasat's standing challenge are two screenshots in Plaintiff's self-serving declaration (reproduced from his FAC) that are undated, unauthenticated, and ***neither of which identify Viasat*** as the alleged

---

[1] The Court also need not give deference to the unsupported averments in Plaintiff's declaration. *See Washington v. Hovensa LLC,* 652 F.3d 340, 346-47 (3d Cir. 2011) (discussing the appropriate amount of "consideration to be given to an admittedly self-serving affidavit"); *De Cavalcante v. C.I.R.,* 620 F.2d 23, 26-27 (3d Cir. 1980) (when charged with making evidentiary determinations, district courts may find that self-serving affidavits absent evidentiary support are insufficiently probative).

caller in any event. *See* Dkt. 30-2, ¶ 8. That Plaintiff failed to provide ***any*** competent evidence even showing he received the alleged calls after ***months*** of discovery underscores the baselessness of his claims and the futility of further proceedings.

By contrast, Viasat's unrebutted evidence includes records from the carrier Plaintiff himself identified as responsible for the numbers that called him (*see* Dkt. 17, § 2.1), IP Horizon, which the Court recognized do <u>not</u> show "Viasat being associated with the numbers for the relevant time period in this case." Dkt. 36 at 2.[2] Viasat's evidence also includes <u>authenticated</u> call records from T-Mobile showing other calls and text messages to and from Plaintiff's number before, on, and after the date of the calls at issue (April 19, 2024), but not showing the two calls at issue. *See* Dkt. 23-2, ¶ 8; Dkt. 23-4 at 6; Dkt. 23-5. Collectively, these records not only prove Viasat was not responsible for any calls Plaintiff may have received, but also suggest he ***never received the calls depicted in his screenshots in the first place***.

In response to all this, Plaintiff attempts to sow confusion. Plaintiff declares that (i) his "telephone service provider at the time of the alleged calls was not T-Mobile" but instead was "Google Fi," and (ii) his counsel "sent a subpoena to Google Fi for telephone records," which "remains outstanding" but which he "believe[s]" will "confirm [his] assertion that [he] received the subject calls." Dkt. 30-2, ¶¶ 10, 14.

---

[2] To be clear, the IP Horizon records do not show that Viasat was <u>ever</u> associated with the relevant numbers at <u>any</u> point in time. *See* Dkt. 23-7 and 23-8.

Plaintiff does not explain, however, why he disclosed T-Mobile as his carrier in the first place, why he also subpoenaed them, or why he would need to subpoena his *own* call records (presumably he could just ask for or download them). Plaintiff also does not explain why his counsel subpoenaed Google Fi *a month before* he filed his Response and yet apparently has not received a response from that carrier or any other corroborating evidence to date. *See* Supplemental Declaration of Paul Heeringa ("Supp. Heeringa Decl."), attached hereto, at ¶ 8 and Exhibit A. Plainly, none exists.

Though Plaintiff argues the T-Mobile records "are probative of nothing" (Dkt. 30 at 8), none of the vague, speculative, and unsupported conclusions in his brief or declaration (*see* Dkt. 30-2, ¶¶ 11-13) explain why T-Mobile's authenticated records show his number *was in use* at the time of the subject calls, including on the date in question, but do not show his receipt of the calls alleged in his complaint or any others from Viasat. *See* Dkt. 23-4 at 5. Put simply, if T-Mobile was not his carrier at the relevant time it should have returned no records covering the period in question in response to Viasat's subpoena (*see* Dkt. 23-3). That is not what happened.

Even if Plaintiff could somehow prove he received the alleged calls through another carrier, he still cannot credibly explain away the compelling IP Horizon records showing Viasat had nothing to do with those calls, as the Court recognized. *See* Dkt. 36 at 2. In fact, Plaintiff has now admitted in his discovery responses that the IP Horizon records do not reflect a connection between Viasat and the alleged

callers' numbers. *See, e.g.,* Exhibit B to Supp. Heeringa Decl. at pp. 4-5, 23. Though his Response tries to sidestep them, Plaintiff does not explain how the IP Horizon records *he* obtained in response to *his* subpoena somehow "proves that the numbers from which the Plaintiff received [the alleged] calls were both spoofed" and that they were "'spoofed' to hide Viasat's identity," as he concludes. Dkt. 30 at 8. That is because he cannot. Again, these records simply show "IP Horizon does not have any record of Viasat being associated with the subject numbers for the relevant time period"—or ever—which just further confirms Viasat did not call him. Dkt 36 at 2.

Nevertheless, if Plaintiff believed records from another carrier would "confirm" his allegations, he could (and indeed should) have obtained them by now. Surely, Plaintiff could have sought copies of his own phone records from the aforementioned carriers, or any other records corroborating his story from any source, promptly after Viasat: (i) first informed Plaintiff (through counsel) on July 11, 2025 that Viasat did not call him (*see* Supp. Heeringa Decl., ¶ 5); (ii) filed its initial motion raising the standing issue on July 17, 2025 (*see* Dkt. 11) the day before discovery opened (*see* Supp. Heeringa Decl., ¶ 6); or (iii) produced the authenticated T-Mobile records to Plaintiff's counsel on August 7 (*see id*. ¶ 7). After T-Mobile responded to his own subpoena in late August and vaguely identified another carrier ("Bandwidth") as possibly having "owned" his number (*see* Dkt. 30-3), his counsel could have tried to obtain records from that carrier but did not. After subpoenaing Google Fi, his

counsel could have followed up to see why they did not respond by the return date (September 8, 2025), which was nearly three weeks before he filed his Response on September 26. *See* Exhibit A to Supp. Heeringa Decl. None of this happened.

All told, Plaintiff has been on notice of Viasat's standing challenge for **months**—it is time to either produce evidence supporting his standing now or for this baseless lawsuit to end. Viasat submits the Court should take the latter path here.

### 2.    The "Intertwinement" Rule Does Not Apply In This Case.

Hoping the Court will ignore the evidence and his obvious lack of standing, Plaintiff argues that the Court may not resolve Viasat's factual standing challenge at the pleadings stage because "the jurisdictional facts are intertwined with the merits." Dkt. 30 at 1, 6-9 (citing *Davis*, *Kehr*, *Mortensen*, *Jackson*, *Callier*, *Clough*). Not so.

While the standing inquiry may sometimes appear to reference the "nature and source of the claim asserted," standing "in no way depends on the merits" of the underlying claim. *Warth v. Seldin,* 422 U.S. 490, 500 (1975). Along these lines, the Third Circuit has long held that "[w]hen jurisdiction is intertwined with the merits, 'the existence of disputed material facts will ***not*** preclude the trial court from evaluating for itself the merits of jurisdictional claims'" under Rule 12(b)(1). *Harris*, 724 F.3d at 464 (quoting *Mortensen,* 549 F.2d at 891) (emphasis added). Therefore, the intertwinement rule is not an automatic bar to deciding a factual challenge at the pleadings stage under Rule 12(b)(1), despite what the Response suggests. *See also*

*Charlton v. Comm'r*, 611 F.App'x 91, 94-95 (3d Cir. 2015) ("Because there was no collection action against Charlton, she had no injury, and thus no standing to sue. The District Court thus correctly dismissed Charlton's claims [under Rule 12(b)(1)].").[3]

Here, the question presented by Viasat's Motion is <u>not</u> whether Plaintiff could prevail on the merits of his TCPA claims, and it does <u>not</u> require interpreting the elements of those claims. Instead, the jurisdictional question is whether Plaintiff was ***injured*** and whether that injury (if any) is fairly traceable to Viasat's alleged conduct, such that he has standing. *See also Cottrell v. Alcon Labs.,* 874 F.3d 154, 162 (3d Cir. 2017) (for standing, the focus is "on whether the plaintiff is the proper party to bring those claims" and not on the merits of the claims). These issues are indeed properly decided at the pleadings stage in TCPA cases, as courts in this Circuit and elsewhere have recognized. *See, e.g., Baccari,* 2022 WL 3213839, at *2–3; *see also Goodell v. BH Auto., LLC*, 2023 WL 2691452, at *6 (D. Ariz. Mar. 29, 2023) (ruling similarly as *Baccari* in dismissing TCPA case); Dkt. 24 at 8, n.3 (citing, *inter alia*, *Winner v. Kohl's Dept. Stores, Inc*., 2017 WL 3535038, at *7-8 (E.D. Pa. Aug. 17, 2017) (same)). Plaintiff's Response presents no valid reason why this Court should rule differently.

---

[3] Some courts have recognized that where, as here, "determining standing ***does not require interpreting an element*** of Plaintiff['s] claims," this Court ***may*** "consider [a defendant's] factual attack" under Rule 12(b)(1) now, notwithstanding the general application of the intertwinement rule. *Myslivecek v. FCA US LLC*, 2022 WL 17904526, at *6-7 (E.D. Mich. Dec. 23, 2022) (citations omitted, emphasis added).

Plaintiff relies heavily on *Davis v. Wells Fargo* for his "intertwinement" argument. *See* Dkt. 30 at 1, 6 (citing 824 F.3d 333 (3d Cir. 2016)). However, *Davis* does <u>not</u> instruct that factual standing challenges can never be decided at the pleadings stage whenever merits and jurisdictional facts are arguably "intertwined," as Plaintiff suggests. Rather, the defendant there simply submitted evidence showing the plaintiff sued the "wrong defendant" for his injuries—which the court held was a "merits argument" that "should ordinarily be addressed at the pleading stage" under 12(b)(6). *Id*. at 347.[4] Put differently, it was apparently undisputed the plaintiff in *Davis* suffered an injury-in-fact caused by someone; the dispute was who caused the harm.

Unlike in *Davis*, but like in the defendants in *Baccari*, *Goodell*, and *Winner*, *supra*, Viasat's standing challenge is premised on the fact Plaintiff simply was not injured, let alone by Viasat. *Davis* acknowledges this key distinction, clarifying that while "standing and merits questions may involve overlapping facts, standing is ***generally*** an inquiry about the plaintiff: ***is this the right person to bring this claim***." *Id*. at 348 (citations omitted, emphasis added). And courts have found that whether someone is the "right person" to bring a claim depends, *inter alia*, on whether they were injured by the defendant in the first place. *See, e.g., Anderson v. Gannett Co*.,

---

[4] Specifically, the *Davis* court held that "a case or controversy exist[ed] to determine whether Davis is suing the right insurance company and, even if he should have sued ASIC, whether he may pierce the corporate veil and hold Assurant accountable for the alleged misconduct of ASIC. Davis argues that Assurant may be held responsible; Assurant argues that it may not. That is a merits question." *Id*. at 348.

2023 WL 3604656, at *6 (D.N.J. May 23, 2023) ("[B]y contrast with *Davis*, Gannett is not arguing that it is not the right defendant (which would go to the merits of the claims themselves); rather, its standing argument is based on the contention that Anderson is not the right plaintiff because she has no injury, to wit, she never had money taken from her after she tried to cancel her subscription with Gannett.").[5]

Even after *Davis* (and especially in TCPA cases), courts in this Circuit have decided plaintiff-focused, injury-based factual standing challenges at the pleadings stage under Rule 12(b)(1), even where standing and merits questions may involve potentially overlapping facts. *See, e.g., Baccari, Winner*, and *Anderson, supra*; *see also Dolison v. SavaSeniorCare Admin. Servs., LLC*, 2019 WL 588699, at *5, 8-9 (E.D. Pa. Feb. 13, 2019) (granting Rule 12(b)(1) motion raising factual challenge in non-TCPA case, citing *Davis*, and holding that "[t]he jurisdictional issue—whether plaintiff has suffered a concrete harm—is not 'intertwined' with the merits of plaintiff's case—namely, whether [defendant] violated the FCRA's 'stand-alone' requirement"). In short, whether Plaintiff here was injured and whether that injury is traceable to Viasat's alleged conduct—the jurisdictional inquiries raised by Viasat's Motion—are plainly "plaintiff-specific" challenges appropriately resolved at the

---

[5] In *Anderson*, the court allowed sixty days of "limited" jurisdictional discovery before ruling on the factual standing challenge "because there is a relatively straightforward factual dispute as to whether she has an injury." *Id.* at *7. *See also Anderson v. Gannett Co.*, 2024 WL 3361394, at *4 (D.N.J. July 10, 2024) (ultimately dismissing on standing grounds). Here, Plaintiff has had multiple months of discovery, and yet did not take advantage of it. No more is necessary, given the IP Horizon records.

pleading stage under Rule 12(b)(1) under Third Circuit precedent, and do not trigger the intertwinement rule. *Anderson*, 2023 WL 3604656, at *6 (collecting cases).

Plaintiff's reliance on *Mortensen* and *Kehr Packages, Inc. v. Fidelcor, Inc.* on this point is unavailing. *See* Dkt. 30 at 6-7. For one thing, *Mortensen* states the opposite of what Plaintiff contends: "[T]he existence of disputed material facts will ***not*** preclude the trial court from evaluating for itself the merits of jurisdictional claims." 549 F.2d at 891 (emphasis added). For another, Plaintiff misquotes *Kehr* for the proposition that "a district court should not dismiss for want of jurisdiction where 'the jurisdictional facts are intertwined with the merits of the case'" Dkt 30 at 6 (purportedly quoting 926 F.2d 1406, 1409 (3d Cir. 1991)). Counsel cannot find that sentence anywhere and, in any case, *Kehr* did not involve a ***factual*** standing attack.

Plaintiff's reliance on *Jackson*, *Callier*, and *Clough* here is also misplaced, as each is distinguishable. *See* Dkt. 30 at 7, 9. For example, in *Jackson* (the only case applying Third Circuit law), the standing challenge was clearly an attempt at early adjudication of the merits. Specifically, plaintiff argued the defendant lacked standing for a counterclaim alleging fraud because plaintiff claimed his conduct did not legally amount to fraud. *See Jackson v. Direct Bldg. Supplies LLC*, 2024 WL 1721144, at *3 (M.D. Pa. Apr. 22, 2024). Further, for both *Jackson and Callier*, not only did those cases not involve injury-based standing challenges, but also the parties submitted conflicting sworn statements on the same issues of fact, which the courts found were

11

sufficiently "intertwined" with the merits. *See Jackson*, 2024 WL 1721144, at *3; *Callier v. Unified Health, LLC*, 2024 WL 3418778, at *5 (W.D. Tex. July 15, 2024).

In contrast, the parties' declarations here are not conflicting. Rather, Viasat's declarations and supporting exhibits indicate Plaintiff did not suffer an injury traceable to Viasat, because Viasat does not make outbound telemarketing calls, does not allow (and indeed contractually prohibits) others from doing so on its behalf, has no records of any calls to Plaintiff made by it or anyone else on its behalf, and does not have any connection with the two alleged callers' numbers. *See* Dkt. 23-1, ¶¶ 8-14; *see also* Dkt. 23-3 to Dkt. 23-8. Plaintiff's Response offers nothing rebutting this evidence.

*Clough* does not help Plaintiff, either. There, it was undisputed the plaintiff received a call from an authorized agent ("seller") of the defendant. *See Clough v. Highway Auto. Pros LLC*, 2023 WL 4291826, at *2 (C.D. Cal. May 23, 2023). By contrast, here, the unrebutted evidence shows no one called Plaintiff on Viasat's behalf <u>at all</u>. *See also* Dkt. 23-1, ¶ 11 ("Viasat has also confirmed that no third party vendors working with Viasat called the Subject Number on Viasat's behalf.").

Moreover, contrary to Plaintiff's contention (*see* Dkt. 30 at 10-11), *Baccari* is directly on-point and involved the same factual standing challenge Viasat makes here. The *Baccari* court dismissed on standing grounds under Rule 12(b)(1) because the plaintiff failed to adequately rebut the defendant's evidence showing it did not make, have knowledge of or involvement in, or authorize anyone to make the calls at issue.

*See* 2022 WL 3213839, at \*2–3. The same result is warranted here, as Plaintiff does not rebut Viasat's evidence showing he did not receive any calls by or on behalf of Viasat, despite months of discovery. Instead, as discussed above, Plaintiff merely mischaracterizes the evidence, and repeats the same conclusory allegations from the FAC, like the *Baccari* plaintiff improperly did. *See id.* at \*3. While Plaintiff similarly mischaracterizes the holdings in the *Winner*, *Stewart* and *Hall* cases cited in the Motion (*see* Dkt. 30 at 11-12), those are on-point, too, as each defendant submitted unrebutted evidence showing the plaintiffs lacked an injury. Such is true here.

Finally, that the Court recently granted Viasat's motion to bifurcate discovery belies Plaintiff's position the Court should "deny the Rule 12(b)(1) motion and proceed to discovery so the merits and jurisdictional allegations can be tested on a proper record." Dkt. 30 at 10. As discussed above, Plaintiff could or should have obtained a copy of his own phone records before filing suit, and has had the benefit of multiple months of discovery in this case. That he still has not done so (or obtained any other corroborating evidence) is highly probative: No amount of additional discovery will show an injury that does not exist. Plaintiff had his day in Court and that day is now over. Thus, the entire FAC should be dismissed under Rule 12(b)(1).

### B.     Plaintiff Fails to Plausibly Allege a Theory of TCPA Liability.

As to Viasat's Rule 12(b)(6) arguments, Plaintiff's Response cites a handful of readily-distinguishable decisions, misconstrues some of Viasat's many on-point

authorities on direct TCPA liability while ignoring the rest, and suggests he needs discovery to plead a liability theory. *See* Dkt. 30 at 13-20. All of these points fail.

**First**, as to his authorities, Plaintiff cites one class certification decision (*Bumpus*), a decision relating to a motion to strike class allegations (*Davis*), and two summary judgment decisions (*Chinitz* and *McMorrow*), none of which are relevant to a Rule 12(b)(6) motion. Moreover, many of Plaintiff's cited cases are about ***vicarious*** TCPA liability based on calls made by third parties (*e.g., Cunningham*, *Bumpus*, *Chinitz*, *McMorrow*, *Hayhurst*). Here, Plaintiff's FAC expressly and unequivocally ***disclaims*** a vicarious liability theory. *See* Dkt. 21, ¶ 39 ("To be clear, the Plaintiff alleges direct liability here."). Further, Plaintiff's Response does not address Viasat's arguments as to his failure to plausibly allege a vicarious liability theory (*see* Dkt. 24 at 18), and thus Plaintiff has conceded that issue in any event. *See Bordoni v. Chase Home Fin. LLC,* 374 F. Supp. 3d 378, 384 (E.D. Pa. 2019) ("'Failure to address even part of a motion in a responsive brief may result in that aspect of the motion being treated as unopposed.'") (quoting *Bridges v. Astrue,* 2014 WL 1281158, at *14 (E.D. Pa. Mar. 28, 2014)). In short, cases on vicarious liability are irrelevant here.

Plaintiff's heavy reliance on *Smith v. Am.-Amicable Life Ins. Co. of Texas* is unavailing. Dkt. 30 at 16 (citing 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022)). There, the court misapplied and conflated the standards for pleading "traceability" for Article III standing purposes under Rule 12(b)(1), where an alleged *indirect*

connection might suffice to rebut a *facial* standing challenge in some cases, with the more precise standards for pleading direct and vicarious TCPA liability under Rule 12(b)(6), where an alleged indirect connection is *not* enough to avoid a dismissal. *See* 2022 WL 1003762, at *1–2. *Cf. Bank v. GoHealth, LLC,* 2021 WL 2323282, at *6–12 (E.D.N.Y. Mar. 8, 2021) (similar TCPA case showing the correct application of the standards and dismissing). As these are distinct legal concepts, this shows *Smith* was wrongly decided, has no persuasive value, and thus should not be applied here.

Plaintiff cites to *Abramson v. AP Gas & Elec. (PA), LLC* (*see* Dkt. 30 at 18), where the court found relevant allegations the plaintiff was transferred by the unidentified caller to someone who "'told the [p]laintiff that he was calling to sign individuals up for AP Gas's [*sic*] services'" and "provided an AP Gas telephone number, directed [plaintiff] to call the number for a verification number, stayed on the line during the verification process, and then returned on the line." 2023 WL 1782728, at *3 (W.D. Pa. Feb. 6, 2023). As the Motion discusses, however, myriad courts in and beyond this Circuit have recognized that a call **transferred to** the defendant is not the equivalent of physically placing a call directly to someone (like Plaintiff alleges here) and, thus, does not support an inference of direct liability. *See* Dkt. 24 at 18 (collecting cases).[6] This shows *Abramson* was wrongly decided, too.

---

[6] The Response does not address this point, thus also conceding it. *See Bordoni, supra.*

In *Atkinson v. Choice Home Warranty*, the court declined to dismiss after improperly crediting that plaintiff's bald conclusions that she received calls "from Defendant" and that the calls were "for telemarketing purposes" to sell her a "home warranty." Yet, as the authorities cited in the Motion show, that is inconsistent with how the majority of courts evaluate the sufficiency of direct TCPA liability claims at the pleading stage (*see* Dkt. 24 at 10-19), showing *Atkinson* is an outlier decision at best. Moreover, the factual tipping point for the *Atkinson* court on the direct liability front apparently was that the plaintiff alleged he expressly "asked if the company ***making the calls*** had a website" on one call and was provided with the ***defendant's*** website. 2023 WL 166168, at *5 (D.N.J. Jan. 11, 2023) (emphasis added). Plaintiff did not do that here. Similarly, in *Scofield v. Alleviate Tax LLC,* the plaintiff allegedly called the number used back and reached someone who identified "his company" as Alleviate (the defendant). *See* Dkt. 20 at 17 (citing No. 1:24-cv-03231-DDD-KAS, ECF No. 42 (D. Colo. Sep. 18, 2025)). Again, Plaintiff alleges no such facts here.

**<u>Second</u>**, Plaintiff's Response addresses only four of the <u>dozens</u> of on-point applicable authorities cited in the Motion on this issue. *See* Dkt. 30 at 15-16 (citing *Smith v. Vision Solar*, *Smith v. Direct Building Supplies*, *Aaronson*, and *Doyle*). While Plaintiff misconstrues or misapplies their holdings, those cases (and the many others cited in the Motion that Plaintiff ignores) show that the alleged content of a call and the plaintiff's conclusory statements about the calls and callers are insufficient to

16

plausibly allege a direct TCPA liability theory, and that more factual enhancement is necessary to avoid a dismissal. *See* Dkt. 24 at 11-18 (collecting cases dismissing similarly ill-pled TCPA complaints). Plaintiff's FAC should suffer the same fate—it does not provide any such enhancement and relies solely on the alleged content of the subject calls for his direct liability theory (*see* Dkt. 21, ¶ 39), which is not enough.[7]

**Third**, Plaintiff's Response (like his FAC) also suggests he needs to conduct discovery to adequately allege a theory of TCPA liability. *See* Dkt. 30 at 20. But Plaintiff is not entitled to discovery simply to state a plausible claim for relief; this request just further confirms Plaintiff currently has no facts to support a direct liability theory and instead wants to go fishing in hopes of finding some. *See* Dkt. 24 at 17 (citing *Scruggs*, *Iqbal*, *Hurley*). *See also Top v. Ocean Petroleum, LLC,* 2010 WL 3087385, at *3 (D.N.J. Aug. 3, 2010) ("A Rule 12(b)(6) motion essentially represents a checkpoint that must be cleared before a plaintiff can reach the discovery stage of litigation.") (citing, *inter alia*, *Mann v. Brenner*, 375 F.App'x 232, 239 (3d Cir. 2010)). Plaintiff's suggestion that he is "pleading in the alternative" with the "discovery" references in his FAC (Dkt. 24 at 20) is specious, as "each alternative theory [under Rule 8] must itself be sufficient to state a claim, and factual allegations [supporting it]

---

[7] Plaintiff's Response mentions an inbound call to Viasat—evidence of which was submitted in Viasat's prior motion to dismiss the original complaint relating to his standing under Rule 12(b)(1). But evidence about this call has no relevance as to the issue of his failure to plead a TCPA liability theory. The bottom line is that there are no plausible facts in the FAC supporting an inference Viasat physically placed the alleged calls to Plaintiff, warranting dismissal under Rule 12(b)(6).

must be enough to raise a right to relief above the speculative level." *Kwan v. Schlein*, 246 F.R.D. 447, 451 (S.D.N.Y. 2007). Again, Plaintiff's FAC expressly disclaims vicarious liability and omits facts supporting such a theory.

### C.    Any Dismissal Should Be With Prejudice.

Lastly, Plaintiff asserts a dismissal under Rule 12(b)(1) "must be without prejudice." Dkt. 30 at 21 (citing *Thorne*). *Thorne* does not, however, stand for the proposition that dismissals with prejudice can never occur under Rule 12(b)(1), as Plaintiff suggests. *See Thorne v. Pep Boys Manny Moe & Jack Inc.,* 980 F.3d 879, 896 (3d Cir. 2020). In fact, the Third Circuit has long recognized dismissals with prejudice under Rule 12(b)(1) are proper where amendment would be futile. *See, e.g., Yoder v. Morrow*, 671 F.App'x 27, 29 (3d Cir. 2016) (citing *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.,* 769 F.3d 837, 849 (3d Cir. 2014)).

Here, where the most probative evidence available (*i.e.,* authenticated call records from disinterested third parties) reveal no injury occurred, amendment would be futile. The undisputed record is clear: Viasat did not call Plaintiff, and Plaintiff did not receive the alleged calls. Plaintiff cannot conjure standing where none exists. Dismissal with prejudice is not only warranted, but necessary to prevent further waste of judicial and party resources.

Moreover, Plaintiff also does not address Viasat's argument as to why a dismissal under Rule 12(b)(6) is appropriate (*see* Dkt. 24 at 19 (citing *Warden* and

*Frame*)), conceding that issue. *See Bordoni, supra*. Thus, if the Court does not dismiss with prejudice under Rule 12(b)(1), it should do so under Rule 12(b)(6).

In sum, Plaintiff already had two failed attempts to show standing and plead a plausible claim for relief against Viasat. A third chance would be pointless and futile.

## III.    <u>CONCLUSION</u>

For the reasons provided in the Motion and above, Plaintiff's entire FAC should be dismissed <u>with prejudice</u> under Rules 12(b)(1) and/or 12(b)(6).

Dated: October 24, 2025                Respectfully submitted,

By: */s/ A. Paul Heeringa*

John W. McGuinness
(*Pro Hac Vice* to be Requested)
A. Paul Heeringa
(Admitted *Pro Hac Vice*)
MANATT, PHELPS & PHILLIP, LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, D.C. 20036
Telephone: 202-585-6500
jmcguinness@manatt.com
pheeringa@manatt.com

FREDERICK P. SANTARELLI (PA 53901)
STEVEN C. TOLLIVER, JR. (PA 327165)
ELLIOTT GREENLEAF, P.C.
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000 (phone)
FPSantarelli@elliottgreenleaf.com
sct@elliottgreenleaf.com

*Counsel for Defendant Viasat, Inc.*

## CERTIFICATE OF COMPLIANCE WITH LR 7.8

I hereby certify that, pursuant to M.D. Pa. Local Rule 7.8(b)(2), this Brief complies with the word-count limitation of Local Rule 7.8, as the Brief **contains 4,978 words** (including headings and footnotes but not including the cover page, tables, signature block, or certificates) in 14-point Times New Roman font. This calculation was provided by the word count feature in Microsoft Word.

Dated: October 24, 2025          */s/ A. Paul Heeringa*
                                 A. PAUL HEERINGA


## CERTIFICATE OF SERVICE

I hereby certify that, on October 24, 2025, I filed the foregoing electronically through the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

By: */s/ A. Paul Heeringa*

20