

**2657 Mount Carmel Avenue**
**Glenside, PA 19038**

a@perronglaw.com                                   Tel. (215) 225-5529 (CALL-LAW)
www.perronglaw.com                                            Fax (888) 329-0305

November 18, 2025

*VIA ECF*

Chambers of Hon. Keli M. Neary
United States District Court for the Middle District of Pennsylvania

Re:    Defendant's Discovery Dispute Letter,
*Bronstin v. ViaSat, Inc.*, No. 1:25-cv-00927-KMN

Dear Judge Neary:

I represent Plaintiff Asher Bronstin in the above matter. We write, as the Court has ordered, in response to the Defendant's November 12 Discovery Dispute Letter (ECF No. 38).

**Plaintiff's Phone Records**. As an initial matter, the Defendant's contention that the Plaintiff has refused to produce telephone records available to him, with respect to the calls at issue, is without merit, and was not even a point which the parties had met and conferred about. Responsive to multiple of the Defendant's Requests for production, the Plaintiff has agreed to produce the telephone records of the calls at issue within a reasonable time not to exceed 30 days after the date of the response. The Plaintiff served his responses to the Defendant's discovery on October 21, and thus has agreed to produce responsive documents by November 20, 2025. Courts in the Third Circuit have held such time frame to be presumptively reasonable, in accordance with the 2015 Advisory Committee Notes to Rule 34.[1]

Defendant further seeks to compel *additional* categories of telephone records: records of the Plaintiff's complete calling history and text messaging history for an over one-year period, responsive to Request for Production 4. As an initial matter, the Plaintiff has already explained that he no longer possesses his records from

---

[1] Those notes state in relevant part: The production must be completed either by the time for inspection specified in the request or by another reasonable time specifically identified in the response. When it is necessary to make the production in stages the response should specify the beginning and end dates of the production. Plaintiff has done so here, promising documents within 30 days after the date of response.

Google Fi after he moved his number to T-Mobile. "[T]he court cannot compel the production of things that do not exist. Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation." *Tech v. United States*, 284 F.R.D. 192, 198 (M.D. Pa. 2012). And, with respect to the Plaintiff's T-Mobile records, the Defendant already possesses *those* records by virtue of the subpoena Defendant served on T-Mobile.

In any event, the TCPA case law makes equally clear that Defendant isn't even entitled to the Plaintiff's wholesale telephone records for a one-year period as an unwarranted invasion of the Plaintiff's personal privacy. Given that the TCPA is a remedial statute implicating significant personal privacy concerns, the Plaintiff's *other* call records are simply not relevant, and the information sought is clearly not proportional to the needs of the case. They include calls to family, friends, acquaintances, counsel, privileged calls, and other records of a highly-sensitive and personal nature. In *Roth v. PTGMB LLC*, No. 1:20-CV-00231-SAB, 2020 WL 5820611, at *8 (E.D. Cal. Sept. 30, 2020), for example, the Court refused to compel calling records from 2016 when the calls were made in 2019. Other courts have limited call records to some shorter period than the year sought here, such as the day of the calls at issue. *See, e.g.*, *Kizer v. Starr Indem. & Liab. Co.*, No. CIV-18-846-D, 2019 WL 2017556, at *3 (W.D. Okla. May 6, 2019) (compelling production of 26 hours of telephone records to show negligence in an auto accident); *Clark v. Johnson*, No. 14-CV-582-JED-PJC, 2015 WL 4694045, at *3 (N.D. Okla. Aug. 6, 2015) (compelling a single hour of records to show negligence and divorce information); *Clay v. Lambert*, No. 17-CV-00085-PAB-MEH, 2017 WL 4755152, at *1 (D. Colo. Oct. 20, 2017) (quashing and modifying subpoena for call records to one day before to one day after an accident).

**Plaintiff's Internet Usage And Litigation Matters**. Defendant also takes issue with Plaintiff's refusal to produce his internet usage history, his attorney client agreement, or information about his prior litigation history. Central to each of these requests is a plain fallacy that the Plaintiff's activities in other cases somehow have some bearing on this one. But "[t]he attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants our most careful scrutiny." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008) (quoting *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988)). Defendant's vague and conclusory proposition that the information is "highly relevant to the named plaintiff's claims and possible defenses, their standing, or adequacy as a class representative in TCPA (and other) class actions" further demonstrates that the information is irrelevant and simply sought to embarrass, harass, and annoy the Plaintiff and chill the Plaintiff and the exercise of his rights, not to mention the impropriety of seeking class certification information as a result of discovery on individual claims which *Defendant itself has sought to bifurcate.*

Start with the Plaintiff's internet history. As an initial matter, Defendant has not pled any consent on the Plaintiff's part to receive calls, nor can it, because Defendant's entire theory of the case is that it never called the Plaintiff, and as such, consent is irrelevant. Put another way: putting aside the massively overbroad nature of this request, what relevance does purported internet consent to call someone have to this case when you never called them? In addition to being much more narrow, each of the cases Defendant cites deal with circumstances, unlike here, where there was *some basis* for consent, and thus whether the Plaintiff visited a website was relevant to that issue of consent. But even beyond being irrelevant, seeking a list of every website and entire internet usage for two months, not only by the Plaintiff, but also any other member of his house hold, as in RFP 19, is massively overbroad and disproportional. As an initial matter, it intrudes upon the privacy and data security interests of third parties, namely, other members of the Plaintiff's house hold. But beyond this infirmity, there is simply no reason why the Plaintiff's private internet browsing history would be proportional to the needs of the case, let alone result in any form of relevant discoverable information. To the contrary, this request simply harasses and bullies the Plaintiff into providing irrelevant information of a highly-sensitive and personal nature in an effort to dissuade him from pursuing his claims, not to mention information protected by various privileges, not the least among them the spousal communications privilege. That is precisely the kind of harassment that Rule 26(g)(1)(B) forbids. See *Rheem v. UPMC Pinnacle Hosps.*, No. 1:23-CV-75, 2024 WL 4494695, at *6 (M.D. Pa. Oct. 15, 2024) (holding that courts should guard against intrusiveness in electronic discovery given that most adults "keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate.").

Continue with the Plaintiff's representation agreement with his counsel. Although the Third Circuit has held that fee agreements generally fall outside the scope of the attorney client privilege absent a holding of unusual circumstances, *In re Grand Jury Investigation*, 631 F.2d 17, 19 (3d Cir. 1980), Defendant's request is still subject to the relevance and proportionality requirements of Rule 26. And here, Defendant has made no showing for why it is entitled to Plaintiff's agreement with his counsel apart from citing to unrelated cases and making the conclusory assertion that the "Plaintiff has no valid basis to withhold this information." Defendant's position is nothing more than a "broad assertion" that the information is relevant because it is the representation agreement in the underlying action. *See Doe v. Methacton Sch. Dist.*, 164 F.R.D. 175, 177 (E.D. Pa. 1995) (holding settlement agreement with former defendant was not relevant to the litigation). As the court observed in *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019), information about how this litigation is being funded and the nature and circumstances of payment for the representation here, is irrelevant to the claims and defenses absent a showing of good cause. (citing cases, including *Yousefi v. Delta Electric Motors, Inc.*, No. 13-CV-1632 RSL, 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015) ("[w]hether

3

plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from [a] union is not relevant to any claim or defense at issue.")). And even if *arguendo*, it was relevant at class certification, that is not the procedural posture of the bifurcated discovery period here and remains irrelevant.

Finally, consider the Plaintiff's prior litigation information. Again, as the Plaintiff has indicated, the Plaintiff was working with the Defendant to narrowly tailor those requests, but Defendant filed the instant letter anyway. Though the Defendant is entitled to publicly-available documents regarding the Plaintiff's prior litigation, the Defendant is plainly not entitled to the entirety of the documents it seeks to compel, such as "All non-privileged Documents relating to Your involvement in any prior TCPA litigation" (RFP 44) and "All Documents reflecting any communication by You with any Person or entity (not including Your litigation counsel) regarding alleged TCPA or other telemarketing law violations, including but not limited to all "demand letters" or other forms of communication in or through which You have asserted such a violation by any Person or entity, other than Viasat." (RFP 45)

As an initial matter, such broad and vague requests sweep every allegation and assertion regarding the TCPA, the subject matter of this lawsuit, into its scope, instead of a reasonably particularized category of documents as required by the Rules. Courts in the Third Circuit have held multiple times that "requests using the phrase 'all documents relating or referring to' be vague and broad." *Manville Sales Corp. v. Paramount Sys., Inc.*, No. CIV.A. 86-4157, 1987 WL 14794, at *2 (E.D. Pa. Oct. 20, 1987) (citing *Cont'l Access Control Sys., Inc. v. Racal-Vikonics, Inc.*, 101 F.R.D. 418, 419 (E.D. Pa. 1983)). In essence, this Request asks the Plaintiff to "give us everything even remotely related to the subject matter of this lawsuit, whether or not it is related to this lawsuit." That is plainly impermissible because it is not narrowly tailored, nor does it provide enough information to determine what documents ViaSat is seeking. *See Hart v. Nationwide Mut. Fire Ins. Co.*, 270 F.R.D. 166, 169 (D. Del. 2010) ("The Court will not order Defendant to produce 'all documents, correspondence, memoranda and emails responsive to Plaintiff's requests.' . . . without more specific guidance from Plaintiff on what responses it is challenging and why. In essence, Plaintiff has failed to provide the necessary specificity to allow the Court to compel Defendant to reply to any individual request."); *Patroski v. Ridge*, No. 02:11-CV-01065, 2011 WL 5977582, at *2 (W.D. Pa. Nov. 29, 2011) (denying motion to compel and directing the propounding party to "make a more particularized request as opposed to the current open-ended request for "all" documents that relate or refer to Plaintiff").

During the parties' meet and confer conference, the Plaintiff stated that he would supplement with responsive documents, so long as ViaSat set forth particularized assertions and categories of documents it desired with respect to the Plaintiff's prior litigation activities. ViaSat has refused to identify the same and instead moved to compel. But because even ViaSat's letter is insufficiently specific as to what exactly

ViaSat is seeking to compel, or to permit a search to take place, the motion should be denied.

That ViaSat is being intentionally vague is purposeful because it recognizes that specifically articulating the documents it wants will easily show that what it seeks is irrelevant and disproportional. One's prior litigation history has nothing to do with their standing; it is simply indictive of how many unwanted illegal calls they received and how many lawsuits they receive to collect statutory damages as a result. *Abramson v. Oasis Power LLC*, No. 2:18-cv-00479, 2018 U.S. Dist. LEXIS 129090, at *16 (W.D. Pa. July 31, 2018) ("As other courts addressing this issue have agreed, a citizen's decision to aggressively enforce his rights under the TCPA should not negate otherwise valid privacy interests"). As other Courts have remarked, one's decision to pursue large numbers of those who call them illegally does not mean that they asked for the calls as an initial matter or somehow caused them to occur. "[N]othing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017); *see also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders."); *Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378, at *4 (E.D. Pa. Apr. 5, 2019) ("[T]he fact that Plaintiff warns telemarketers on his website that he will sue them if they violate the TCPA does not raise an inference that he "hopes for and encourages" potential defendants, acquires phones to increase his chances of receiving calls, or is doing anything other than exercising his rights.").

This is not to mention the fact that, insofar as this request slyly seeks settlement information in other TCPA matters, the Third Circuit imposes a heightened relevance standard when it comes to the discoverability of settlement information, thus distinguishing this case from the citations from other circuits proffered by the Defendant. *Spear v. Fenkell*, No. CIV.A. 13-02391, 2015 WL 3947559, at *1 (E.D. Pa. June 26, 2015). Disclosure of settlement information would contravene Rule 408's purposes, are largely inadmissible for the purposes sought under Rule 408, and otherwise probative of little *Jackson v. Clear Link Ins. Agency, LLC*, No. 4:22-CV-01466, 2023 WL 6436692, at *2-*4 (M.D. Pa. Sept. 29, 2023) ("cases settle for different amounts and on different timetables for any number of reasons."). Courts are generally "not persuaded that financial information such as the specific amounts of Plaintiff's prior TCPA settlements or awards is relevant to [Defendant's] defenses." *Charvat v. Southard Corp.*, No. 2:18-CV-190, 2019 WL 13196991, at *3 (S.D. Ohio Feb. 13, 2019); *Quinn v. Branch Banking & Tr. Co.*, No. 5:19-CV-433-OC-30PRL, 2020 WL 264696, at *4 (M.D. Fla. Jan. 17, 2020) (holding that information regarding settlements for TCPA claims were not "relevant to the claims or defenses

5

in this action and proportional to the needs of the case, and will not be permitted."). Documents in the Plaintiff's other TCPA lawsuits, even to the extent Defendant can specifically identify what it is seeking, have nothing to do with the individual merits of his particularized claim here and should likewise not be compelled.

We look forward to the telephonic conference Wednesday morning.

Respectfully Yours,

Andrew R. Perrong, Esq.