# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ASHER BRONSTIN, individually and on behalf of all other similarly situated,

Plaintiff,

v.

VIASAT, INC.,

Defendant.

Civil Action No. 1:25-cv-00927-KMN
(Hon. Keli M. Neary)

**SUPPLEMENTAL TO DEFENDANT'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION TO AMEND COMPLAINT
(APPENDIX OF UNPUBLISHED CASE CITATIONS)**

Case 1:25-cv-00927-KMN Document 55-2 Filed 03/17/26 Page 2 of 49

Berk v. Ritz Carlton Condominium Association, Not Reported in Fed. Supp. (2021)

2021 WL 2651252

2021 WL 2651252
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Jessica BERK, Plaintiff,
v.
RITZ CARLTON CONDOMINUM
ASSOCIATION, et al., Defendants.

Civil Action No. 19-20666
|
Signed 06/28/2021

**Attorneys and Law Firms**

JESSICA BERK, 2715 BOARDWALK, UNIT 1511, ATLANTIC CITY, NJ 08401, Plaintiff appearing pro se.

ROBERT A. BERNS, KAUFMAN DOLOWICH & VOLUCK LLP, 25 MAIN STREET, SUITE 500, HACKENSACK, NJ 07601, Counsel for Defendant Ritz Carlton Condominium Association.

ANDREW S. TURKISH, CARL M. PERRI, JR., 100 CAMPUS DRIVE, SUITE 112, FLORHAM PARK, NJ 07932, JEFFREY M. SHEPPARD, PO BOX 169, HAMMONTON, NJ 08037, Counsel for Defendant Boardwalk Realty.

JOHN T. DONOVAN, CAROLINE STEPHANIE VAHEY, WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP, TWO COMMERCE SQUARE, 2001 MARKET STREET, SUITE 3100, PHILADELPHIA, PA 19103, Counsel for Allied Universal Security.

**OPINION**

HILLMAN, District Judge

 **\*1** This matter comes before the Court upon Defendant Allied Universal Security's ("Allied") Motion for Summary Judgment. (ECF No. 45.) For the reasons below, the Court will grant Allied's Motion.

**BACKGROUND**

Plaintiff purchased a condominium from the Ritz Carlton Condominiums in Atlantic City, New Jersey in January

2019.[1] (ECF No. 45-2 ¶1.) Allied is a security contractor providing front desk services at the Ritz Carlton Condominiums pursuant to a contract for services between Allied and Ritz Carlton Condominiums, the property owner. (Id. ¶2.) Allied does not own the property at issue in this case. (Id.) Plaintiff alleges that since she purchased her condominium from the Ritz Carlton Condominiums, Defendants Ritz Carlton Condominium Association, Boardwalk Realty, and Allied (collectively "Defendants") violated her rights under the Americans with Disabilities Act ("ADA"). (Id. ¶5.) With respect to Allied, Plaintiff argues Allied subjected her to verbal abuse that is demeaning, offensive, and mean-hearted. (Id. ¶6.)

[1] Plaintiff failed to properly file a responsive statement of material facts in opposition to Allied's Motion for Summary Judgment, as required by Local Rule 56.1(a). Rule 56.1(a) explicitly states that "[t]he opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts ... stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." However, the Third Circuit has previously held that "permitting the non-movant to rely on its briefing and evidentiary submissions to dispute the movant's 56.1 statement is consistent" with the intent and spirit of the rules governing summary judgment practice, Boswell v. Eoon, 452 F. App'x 107, 111-12 (3d Cir. 2011), and the Court is cognizant of the preference for adjudications on the merits rather than dismissal on procedural grounds. The Court takes its facts from Allied's statement of undisputed material facts and any additional evidence Plaintiff filed with her motion or cited to in her opposition papers, to the extent she disputes any facts from Allied's Rule 56.1(a) statement.

**DISCUSSION**

**A. Subject Matter Jurisdiction**
This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

Berk v. Ritz Carlton Condominium Association, Not Reported in Fed. Supp. (2021)

2021 WL 2651252

### B. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255, 106 S.Ct. 2505).

**\*2** Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57, 106 S.Ct. 2505. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### C. Analysis

Allied advances several arguments in support of its Motion for Summary Judgment: (1) the Ritz Carlton Condominiums do not constitute a place of public accommodation; (2) Allied does not own, lease, or operate the Ritz Carlton Condominiums; and (3) Plaintiff has not established that she suffers a disability protected by the ADA.

Title III of the ADA prohibits discrimination "on the basis of disability" by "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182(a). "Public accommodation" is defined in terms of 12 categories, one of which being "an inn, hotel, motel, or other place of lodging." 42 U.S.C.S 12181(7).

In Hibbert, this Court dismissed a plaintiff's ADA claims against Bellmawr Park, a "residential complex" because "it does not constitute an inn, hotel, motel, place of lodging, or any other type of transient housing listed in the statute." Hibbert v. Bellmawr Park Mut. House. Corp., 937 F.Supp.2d 565, 572 (D.N.J. 2013). The Court further dismissed the ADA claim against the manager of Bellmawr Park because she did "not fall within the Act's definition of a 'person who ... operates a place of public accommodation.' " Id. (quoting 42 U.S.C.S. 12182(a)). In reaching this conclusion the Court relied on Mitchell v. Walters, No. 10-1061, 2010 WL 3614210, 2010 U.S. Dist. LEXIS 93265 (D.N.J. Sept. 8, 2010). Id. In Mitchell, "the plaintiff claimed that her apartment complex discriminated against her on the basis of disability when it failed to accommodate her arthritis and diabetes." Id. (citing Mitchell, 2010 WL 3614210, at *1, 2010 U.S. Dist. LEXIS 93265, at *2). "The court, however, found that an apartment complex does not fall within the definition of a 'place of public accommodation' under the ADA, as it is more permanent in nature than the lodging and other transient housing covered by the ADA." Id. (citing Mitchell, 2010 WL 3614210, at *1-2, 2010 U.S. Dist. LEXIS 93265, at *4). "In so finding, the court looked to Third Circuit dicta stating that the ADA's legislative history indicated that residential facilities, apartments, and condominium complexes were not meant to be included in the definition of 'places of public accommodation' under the statute." Id. (citing Mitchell, 2010 WL 3614210, at *1, 2010 U.S. Dist. LEXIS 93265, at *2 (discussing Regents of Mercersburg Coll. v. Rep. Franklin Ins. Co., 458 F.3d 159, 165 n.8 (3d Cir. 2006); Indep. Housing Servs. of San Fran. v. Fillmore Ctr. Assocs., 840 F. Supp. 1328, 1344 (N.D. Cal. 1993)). Based on this case law, the Court notes it is unlikely the Ritz Carlton Condominiums are a place of public accommodation.

However, the Court need not rule on this issue because even if the Ritz Carlton Condominiums were a place of public accommodation, Plaintiff's ADA claim would still fail with respect to Allied. This is because Allied does not own, operate, or lease the Ritz Carlton Condominiums. In support of its Motion for Summary Judgment and contention that Allied is a security contractor providing front desk services

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 4 of 49

Berk v. Ritz Carlton Condominium Association, Not Reported in Fed. Supp. (2021)
2021 WL 2651252

at the Ritz Carlton, Allied attaches the signature page of the contract for services between Allied and the Ritz Carlton. As a security contractor who merely provides front desk services at the Ritz Carlton Condominiums, Allied has met its burden of demonstrating the absence of a genuine dispute of material fact. Thus, to survive summary judgment, Plaintiff, the non-moving party, must have identified specific facts and affirmative evidence that contradicts those offered by Allied, the moving party.

**\*3** In response to Allied's motion, Plaintiff fails to contest Allied's argument that it does not operate, own, or lease the Ritz Carlton Condominiums. Instead, Plaintiff merely comments that "there are multiple genuine disputes regarding material fact, and ... therefore, the movant is *not* entitled to judgment as a matter of law." (ECF No. 48 ¶2 (emphasis in original).) However, Plaintiff may not "oppose summary judgment simply on ... conclusory statements that a factual issue exists." Montanez v. Lynch, No. 20-97, 2021 WL 1148472, \*2, 2021 U.S. Dist. LEXIS 56637, \*5 (M.D. Pa. Mar. 25, 2021) (citing Anderson, 477 U.S. at 248, 106 S.Ct. 2505). The Court finds Plaintiff's ADA claim against Allied must fail because Allied has satisfied its burden by providing evidence that Allied is merely a security contractor and does not own, operate, or lease the Ritz Carlton, which is fatal to Plaintiff's ADA claim against Allied. Plaintiff has failed to rebut Allied's position and accordingly, this Court will grant Allied's Motion for Summary Judgment.

The Court notes that even though Allied is entitled to Summary Judgment in its favor on Plaintiff's claims against it, Allied has not affirmatively moved to dismiss the cross-claims asserted against it by the other Defendants, although it seeks that relief in its proposed order. It appears that if Allied cannot be held liable to Plaintiff for her ADA claim, then the other Defendants' cross-claims for contribution and indemnification must fail, but the Court declines to sua sponte address the issue. See, e.g., C.A. Wright, A. Miller, M.K. Kane, Federal Practice and Procedure, Vol. 6, § 1431 (3d ed.) ("The subsequent dismissal of the original claim itself, or the dismissal of that claim against the coparty, does not require that a previously interposed crossclaim also be dismissed, however."). Within 15 days, Allied shall file a motion regarding the other defendants' cross-claims, or the Defendants may file a stipulation agreeing to the dismissal of their cross-claims against Allied.

**CONCLUSION**

For the reasons stated above, the Court will grant Allied's Motion for Summary Judgment.

An appropriate Order will be entered.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 2651252

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4719560

2024 WL 4719560
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

BLUE GENTIAN, LLC, National Express,
Inc., and Telebrands Corp., Plaintiffs,
v.
TRISTAR PRODUCTS, INC., Defendant.

Civil Action No. 13-1758 (EP) (MAH)
|
Signed November 8, 2024

**Attorneys and Law Firms**

Kathleen N. Fennelly, Thomas R. Curtin, Mcelroy,
Deutsch,mulvaney & Carpenter LLP, Morristown, NJ, for
Plaintiffs.

Ravipal Singh, J. Brugh Lower, Gibbons P.C., Newark, NJ,
for Defendant.

### OPINION

Michael A. Hammer, UNITED STATES MAGISTRATE
JUDGE

### I. INTRODUCTION

**\*1** This matter comes before the Court by way of Telebrands
Corporation's ("Telebrands") motions to amend the Fifth
Amended Complaint and its infringement contentions. Mot.
to Am. Compl., June 21, 2024, D.E. 615; Mot. to Am.
Infringement Contentions, June 21, 2024, D.E. 616. Tristar
Products, Inc. ("Tristar") opposes these motions. Opp. to Mot.
to Am. Fifth Am. Compl., July 22, 2024, D.E. 618; Opp.
to Mot. to Am. Contentions, July 22, 2024, D.E. 619. The
Court has considered each party's filings in support of, and
in opposition to, the motions. Pursuant to Federal Rule of
Civil Procedure 78 and Local Rule 78.1, the Court decides
these motions without oral argument. For the reasons set forth
below, the Court denies both Telebrands's motion to amend
the Fifth Amended Complaint, and its motion to amend its
infringement contentions.

### II. BACKGROUND [1]

[1]     The factual and procedural history of this case is
        extensive and complex. Because the Court writes

primarily for the parties, it sets forth only the
pertinent facts relevant to this motion.

This matter is one of several cases alleging patent
infringement regarding expandable and retractable garden
hoses. In this case, Plaintiffs allege that Tristar infringes six
patents related to the hoses. [2] Fifth Am. Compl., D.E. 166,
¶¶ 10-12. Plaintiffs, Blue Gentian, LLC ("Blue Gentian"),
National Express, Inc. ("National Express"), and Telebrands
market, import, promote, use, distribute, offer for sale, and
sell a garden hose known as the "XHose." *Id.* ¶ 12. Blue
Gentian owns several patents associated with the XHose. *Id.*
¶¶ 10, 11. Tristar produces, promotes, and sells a garden hose
known as the "Flex-Able Hose." *Id.* ¶ 12.

[2]     The relevant patents are: (1) U.S. Patent No.
        8,757,213 ("the '213 Patent"); (2) U.S. Patent No.
        8,479,776 ("the '776 Patent"); (3) U.S. Patent No.
        8,291,941 ("the '941 Patent"); (4) U.S. Patent No.
        8,291,942 ("the '942 Patent"); (5) U.S. Design
        Patent D722,681 ("the '681 Patent"); and (6)
        U.S. Design Patent D724,186 ("the '186 Patent")
        (collectively "the Patents-in-Suit"). *Id.* ¶¶ 10-12.

On October 23, 2012, Blue Gentian filed a Complaint in
the United States District Court for the Southern District of
Florida alleging Tristar infringed the Patents-in-Suit. Compl.,
D.E. 1. On October 30, 2012, Blue Gentian filed an Amended
Complaint adding National Express as a Plaintiff and Keith
Mirchandani ("Mirchandani"), the President of Tristar, as a
Defendant. Blue Gentian also added claims for indirect patent
infringement of the '942 Patent, false patent marking, false
advertising, unfair competition under Florida law, tortious
interference with contractual business relationship, and
tortious interference with potential advantageous business
relationship. Am. Compl., D.E. 6.

On March 19, 2013, the Southern District of Florida court
transferred this action to the District of New Jersey, following
Defendants' motion to transfer venue. [3] Order, D.E. 37.
Pursuant to a Consent Order between the parties, Plaintiffs
filed a Second Amended Complaint on July 16, 2013. Sec.
Am. Compl., D.E. 59. In the Second Amended Complaint,
Plaintiffs dismissed Mirchandani as a Defendant, as well as
their claims for false patent marking, false advertising, unfair
competition under Florida law, tortious interference with
contractual business relationship, and tortious interference
with potential advantageous business relationships. *Id.*

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 6 of 49

Blue Gentian, LLC v. Tristar Products, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 4719560

[3]    Since the litigation was transferred to this District, several district and magistrate judges have managed and presided over it. Judge Hillman was assigned to the matter on March 9, 2015, and Judge Donio was assigned to the matter on April 27, 2015. On September 28, 2023, this action was reallocated to Newark and reassigned to Judge Padin and the Undersigned.

**\*2** On November 19, 2014, Plaintiffs filed a Third Amended Complaint. The Third Amended Complaint added claims for direct and indirect infringement of the '776 Patent and the '213 Patent. Third Am. Compl, D.E. 113.

On April 3, 2015, Plaintiffs filed a Fourth Amended Complaint. The Fourth Amended Complaint added claims for direct and indirect infringement of the '681 and '186 Patents. Fourth Am. Compl., D.E. 124.

On November 3, 2015, the Court entered an Amended Scheduling Order that set a deadline of January 8, 2016 to amend pleadings and join parties. Am. Sched. Order, D.E. 165, ¶ 13. The Order also specified that any motion to amend or join parties beyond that date would require the party seeking leave "to show good cause why the amendment could not have been done earlier" pursuant to Federal Rule of Civil Procedure 16. *Id.* That January 8, 2016 deadline to amend pleadings was never extended.

On November 6, 2015, Plaintiffs filed the Fifth Amended Complaint--the operative Complaint. The Fifth Amended Complaint added Wal-Mart Stores, Inc. [4] ("Wal-Mart") as a Defendant and alleged claims for direct and indirect patent infringement of the Patents-in-Suit. Fifth Am. Compl., D.E. 166.

[4]    Plaintiffs voluntarily dismissed Wal-Mart as a Defendant on May 13, 2020. Stip. of Voluntary Dismissal, D.E. 565.

On June 23, 2016, Blue Gentian and National Express moved to file a Sixth Amended Complaint. *See* Mot. for Leave to file Sixth Am. Compl., D.E. 191-1, at 1. Blue Gentian and National Express sought to add claims for patent infringement directed at a "new product." *Id.* Specifically, they sought to include Tristar's new product, a "Flex-Able Bungee Hose," as an infringing product. *Id.* After consideration of the parties' papers and oral argument, the Court denied the motion to amend under Federal Rule of Civil Procedure, based on undue

delay. *See* Order, D.E. 223; Tr. of September 30, 2016 Hrg., D.E. 226, 33:5-36:23. Specifically, the Court determined that:

> This case is a 2013 case. The fact discovery is completed as of today, expert report deadlines are looming, *Markman* briefs have been filed, the complaint has been amended five times, and I deny the proposed amendment on the basis of undue -- on the basis of delay.

*Id.* at 34:17-21. The Court denied Plaintiffs' motion to amend without prejudice to their right to file a new action for the new products and seek consolidation if the new action could procedurally be caught up to the instant action. *Id.* at 33:26-34:3. Plaintiffs did not file a new action.

On May 19, 2017, National Express filed a motion to substitute then non-party, Telebrands, as a Plaintiff for National Express. Mot. to Substitute Party, D.E. 271. National Express moved this Court to substitute Telebrands for National Express because its "entire interest in and to all of the [at-issue patents] ... was transferred from National Express to [Telebrands]." *Id.* at 1. Tristar and then-Defendant, Wal-Mart, opposed the motion in part. Opp. to Mot. to Substitute, D.E. 279. Specifically, they did not oppose joinder of Telebrands as a plaintiff but opposed its full substitution in place of National Express. *Id.* On June 19, 2017, Judge Donio denied National Express's request to substitute Telebrands in its place in this litigation. *See* Order Joining Telebrands, D.E. 289; Inclusion of Telebrands in Discovery Confidentiality Order, D.E. 317. However, the Court joined Telebrands as a party plaintiff and counterclaim defendant. [5] *Id.*

[5]    Telebrands had not been named previously in any iteration of the pleadings. *See generally* Compl., D.E. 1; Fifth Am. Compl., D.E. 166.

**\*3** On January 15, 2020, Judge Hillman determined that Gary Ragner was an unnamed co-inventor of the Patents-in-Suit and should be added as a co-inventor to the Berardi patents. [6] D.E. 545. On January 30, 2020, Defendants moved for clarification of certain aspects of the Court's Opinion. The Court filed an Amended Opinion clarifying certain aspects of its ruling but not reversing its holding. *See* Am. Opin., D.E. 569. Blue Gentian, National Express, and Telebrands

2024 WL 4719560

appealed the original and amended rulings to the Federal Circuit, and this matter was stayed during the pendency of the appeal. Notice of Appeal, D.E. 571; Stip. & Order to Certify Judgment, D.E. 581. On June 9, 2023, the Federal Circuit affirmed Judge Hillman's rulings. *Blue Gentian, LLC v. Tristar Products Inc.*, 70 F.4th 1351, 1354, 1365 (Fed. Cir. 2023). The Federal Circuit issued its Mandate on July 17, 2023. Mandate, D.E. 586.

[6]    From the outset of this litigation, Michael Berardi, principal of Blue Gentian, claimed he was the sole named inventor of the Patents-in-Suit. *See* Fifth Am. Compl., D.E. 166, at ¶¶ 34–165. However, Tristar contested the characterization of Michael Berardi as the sole inventor of the Patents-in-Suit. On July 9, 2017, Tristar filed a Rule 42(b) motion requesting a hearing on the issue of inventorship. *See* Mot. for Hearing, D.E. 301-1, at 3. On January 15, 2020, the Court determined that Berardi was not the sole inventor but rather that Gary Ragner, head of Ragner Technology Corporation, was a co-inventor of the patents. *See* Op., D.E. 545 at 2. Specifically, the Court determined that "Defendants have shown through clear and convincing evidence that Gary Ragner contributed to the conception of the XHose and at least one claim in each of the asserted Berardi patents and should be named an [sic] co-inventor." *See* Am. Opin., D.E. 569, at 48.

On October 2, 2023, this matter along with other related matters pending in this District [7] were referred to mediation and administratively terminated pending the mediation. Order, D.E. 603. Once it was reported to the Court that mediation was unsuccessful, the Court requested status reports from the parties and convened a status conference on February 14, 2024. On February 6, 2024, Telebrands represented in a status report that the "patent infringement claims against Tristar are ready to proceed[,]" but that Telebrands also sought to add Trend Makers, an alleged Tristar-related entity, as a Defendant. *See Tristar v. National Express*, Civ. No. 13-7752, Statement by All Defendants, D.E. 433, at 4. On May 23, 2024, the Court held another status conference where it set a schedule for the instant motions. *See* Am. Sched. Order, D.E. 610, at 2.

[7]    The related actions consist of: *Tristar Products Inc. v. National Express*, Civ. No. 13-7752; *Ragner Tech Corp v. Telebrands Corp.*, Civ. No. 15-8185;

*Telebrands Corp. v. Ragner Tech Group*, Civ. No. 15-3163; *Telebrands Corp. v. Ragner Tech Group*, Civ. No. 16-3594; *Telebrands Corp. v. Ragner Tech Group*, Civ. No. 16-3474, and *Ragner Tech. v. Berardi*, Civ. No. 15-7752.

On June 21, 2024, Telebrands filed the instant motion to file a Sixth Amended Complaint. Telebrands seeks to: (1) include allegations regarding how Tristar "has continued to market and sell infringing products in new ways that were not detailed in the Fifth Amended Complaint;" [8] (2) add Telebrands as a Plaintiff and remove Wal-Mart as a Defendant, two changes which have already occurred in this litigation, but which have not otherwise been set forth in a pleading; (3) remove Blue Gentian and National Express as Plaintiffs because "they no longer hold any right, title or interest" in the Patents-in-Suit; and (4) add Trend Makers, LLC ("Trend Makers"), an alleged alter ego of Tristar, as a Defendant. *See* Mem. in Supp. Mot. to Am. Compl., D.E. 615-1, at 2-5. Telebrands also seeks to join Trend Makers as a Defendant pursuant to Rules 19 or 20. *See id* at 1. By separate motion, Telebrands seeks to amend the infringement contentions to accuse new and additional products marketed or sold by Tristar since December 2015 or by Trend Makers since 2022. *See* Mem. in Supp. Mot. to Am. Infringement Contentions, D.E. 616-1, at 2-3.

[8]    In particular, Telebrands seeks to add a new infringing product, the "Flex-Able Bungee Hose." Mem. in Supp. Mot. to Am. Compl., D.E. 615-1, at 3.

**\*4**  On July 22, 2024, Tristar filed briefs opposing Telebrands's motions to amend the Fifth Amended Complaint and infringement contentions. *See* Opp. to Mot. to Am. Compl., D.E. 618; Opp. to Mot. to Am. Contentions, D.E. 619. Tristar argues that the Court should deny Telebrands's motion to amend the Fifth Amended Complaint because: (1) it has failed to establish good cause to do so at this late stage, nine years after filing the now operative pleading; (2) any amendments now are futile; (3) Telebrands's request to amend is made in bad faith and is the product of undue delay; and (4) Tristar will suffer prejudice if the Court permits the amendments. Opp. to Mot. to Am. Compl., D.E. 618, at 12-13. Tristar contends that the Court should deny Telebrands's request to join Trend Makers under Rule 19 or 20 because joinder is neither required nor permissible. *Id.* at 28-30.

Tristar argues that the Court should deny Telebrands's motion to amend the infringement contentions for the same reasons

Case 1:25-cv-00927-KMN Document 55-2 Filed 03/17/26 Page 8 of 49

Blue Gentian, LLC v. Tristar Products, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 4719560

it should deny the motion to amend the Fifth Amended Complaint. Opp. to Mot. to Am. Contentions, D.E. 619, at 3-6. Specifically, Tristar maintains that Telebrands should not be allowed to include new infringing products or parties at this late stage because Telebrands has failed to show good cause for the amendment and any amendment now would prejudice Tristar. *Id.* at 6-7.

In reply, Telebrands reiterates its arguments in support of its motion to amend the Fifth Amended Complaint pleading, and maintains that it should be permitted to amend the nine-year-old Fifth Amended Complaint to "reflect[ ] the current state of the facts." Reply in Supp. of Mot to Am. Compl., D.E. 625, at 1. Telebrands also asserts that if its motion to amend the pleadings is denied, it will simply file a new action, leading the parties and the Court to the place they are now. *Id.* at 15. With respect to the motion to amend the infringement contentions, Telebrands argues that "[l]ack of diligence ... is not an issue here where Plaintiff seeks to add infringement contentions concerning facts *that took place after the service of the last infringement contentions*." Reply to Mot. to Am. Contentions, D.E. 626, at 5 (emphasis in original).

## III. DISCUSSION

### A. Telebrands's Motion to Amend the Fifth Amended Complaint

#### 1. Rule 16

The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that claims will be decided on their merits rather than on technicalities. *Dole v. Acro Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). Under Federal Rule of Civil Procedure 15(a)(2), the Court should freely give leave to amend the Complaint when justice so requires. *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019) (citing Fed. R. Civ. P. 15(a)(2)). If a motion to amend is untimely, Federal Rule of Civil Procedure 16(b)(4) requires a party to make a showing of "good cause" as to why the scheduling order should be modified before the Court can address the merits of a motion to amend under Rule 15. *See Premier Comp Solutions, LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). While neither party explicitly discusses Rule 16 as it relates to Plaintiff's instant motion, "the fact that neither party specifically names Rule 16 or its required good-cause showing does not preclude the Court from applying that standard to [a] plaintiff's motion

to amend." *Lloyd-Jones v. Connolly*, No. 20-912, 2022 WL 3572837, at \*2 (D.N.J. Aug. 19, 2022) (internal quotations omitted).

Federal Rule of Civil Procedure 16(b)(3)(A) requires courts to issue a scheduling order that "limit[s] the time to join other parties, amend the pleadings, complete discovery, and file motions." A motion to amend filed after the Court's Rule 16(b)(3)(A) deadline is subject to a heightened level of scrutiny. *Korrow v. Aaron's, Inc.*, 300 F.R.D. 215, 220 (D.N.J. 2014). The movant must first satisfy the requirements of Rule 16(b)(4), which requires that party to "demonstrate 'good cause' to amend the Rule 16 Scheduling Order" and obtain the Court's consent "to extend the deadline to amend pleadings." *Id.* (quoting *Velto v. Reliance Standard Life Ins. Co.*, No. 10-1829, 2011 WL 810550, at \*4 (D.N.J. Mar. 1, 2011)); *see also* Fed. R. Civ. P. 16(b)(4). "Only after having found the requisite showing of good cause will the [C]ourt consider whether the proposed amended pleading meets the [Rule] 15(a) standard." *Home Semiconductor Corp. v. Samsung Elecs. Co.*, No. 13-2033, 2019 WL 2135858, at \*2 (D. Del. May 16, 2019); *accord Korrow*, 300 F.R.D. at 220; *Nasa Mach. Tools Inc. v. FAMA Tech. Inc.*, No. 18-2872, 2019 WL 7207503, at \*2 (D.N.J. Dec. 27, 2019).

**\*5** "A determination of 'good cause' under Rule 16 depends on the diligence of the moving party." *Korrow*, 300 F.R.D. at 220 (citing *GlobespanVirata, Inc. v. Texas Instruments Inc.*, No. 03-2854, 2005 WL 1638136, at \*3 (D.N.J. July 12, 2005)). Good cause requires a showing that, despite the movant's attentiveness, "the deadlines set forth in the scheduling order could not reasonably be met." *Id.*; *see also Harrison Beverage Co. v. Dribeck Imps.*, 133 F.R.D. 463, 469 (D.N.J. 1990). "[G]ood cause may be satisfied if the movant shows that their delay in filing the motion to amend stemmed from 'any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order.' " *Fermin v. Toyota Material Handling, U.S.A., Inc.*, No. 10-3755, 2012 WL 1393074, at \*3 (D.N.J. Apr. 23, 2012) (alteration in original) (quoting *Phillips v. Greben*, No. 04-5590, 2006 WL 3069475, at \*6 (D.N.J. Oct. 27, 2006)). "[C]ourts typically examine whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the amended motion before the deadline had expired." *Id.*

The Amended Pretrial Scheduling Order set a January 8, 2016 deadline to file any motion to amend the pleadings. Am.

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 9 of 49

Blue Gentian, LLC v. Tristar Products, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 4719560

Sched. Order, D.E. 165, ¶ 13. The Court did not amend that deadline, nor did any party ask the Court to do so. Telebrands filed the instant motion on June 21, 2024, more than eight years after the deadline in the Amended Scheduling Order. Mot. to Am. Compl., D.E. 615. Therefore, the preliminary question before the Court is whether good cause exists under Rule 16 to now allow Telebrands to amend the Fifth Amended Complaint.

Tristar argues that Telebrands cannot show good cause under Rule 16 because it has not shown due diligence in filing the motion well beyond the deadline to do so. On the other hand, Telebrands completely fails to address the good cause standard under Rule 16. This deficiency alone warrants denial of Telebrands's motion. *See Premier Comp Sols. LLC v. UPMC Health Network, Inc.*, No. 15-703, 2017 WL 11680911, at *2 (W.D. Pa. Sept. 26, 2017) (plaintiff "utterly fails to establish good cause for leave to file a second amended complaint" where plaintiff failed to discuss due diligence under Rule 16), *aff'd, Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) (party forfeits any good cause argument under Rule 16 where its brief relies solely on Rule 15(a)). This is particularly true where, as here, the Court is faced with a motion to amend that includes adding a defendant and new claims, in a twelve-year-old case, and where the deadline to amend the pleadings passed more than eight years ago. *See Int'l Constr. Prod. LLC v. Caterpillar Inc.*, No. 15-108, 2024 WL 406433, at *2 (D. Del. Feb. 2, 2024) (finding that plaintiff, who waited more than five years beyond the deadline to amend, forfeited any good cause argument by failing to address good cause in its moving brief).

In the interest of completeness and fairness, the Court has independently examined the record, and Telebrands's arguments, to determine if there is good cause under Rule 16. But that analysis yields the same result. The instant motion comes nearly ten years after Blue Gentian and National Express filed the operative Fifth Amended Complaint, and many years after the Court denied the motion for leave to amend the complaint for a sixth time. Despite that, Telebrands argues amendment is appropriate to include factual developments occurring since Blue Gentian and National Express filed the Fifth Amended Complaint on November 6, 2015. Those amendments include some technical changes, such as adding Telebrands as a plaintiff, removing Blue Gentian and National Express as plaintiffs, and removing Wal-Mart as a defendant. But the proposed changes also include adding Trend Makers as a defendant,

and adding new accused products. The Court considers those proposed amendments in turn.

**\*6** Other than Telebrands's request to add Trend Makers, none of the proposed amendments is new. In that regard, much of Telebrands's motion to amend seeks to re-litigate matters long since settled by the Court. For example, On June 23, 2016, Blue Gentian and National Express attempted, unsuccessfully, to amend the Complaint to add a new product, a "Flex-Able Bungee Hose." Judge Donio denied that application on September 30, 2016. *See* Mot. for Leave to File Sixth Am. Compl., D.E. 191-1; Order, D.E. 223. Judge Donio denied the motion based on undue delay due in view of the age of the case. *See* Tr. of Oral Op., D.E. 226, 33:5-36:23.

In May 2017, National Express moved to substitute Telebrands, then not a party to this case, as a plaintiff for National Express. Judge Donio denied that application on June 19, 2017. *See* Mot. to Substitute Party, D.E. 271; Order Joining Telebrands, D.E. 289; Inclusion of Telebrands in Discovery Confidentiality Order, D.E. 317. Specifically, Judge Donio added Telebrands as both a plaintiff and a counterclaim defendant. *Id.*

On May 13, 2020, Plaintiffs voluntarily dismissed Wal-Mart as a defendant. Stip. of Voluntary Dismissal, D.E. 565. Therefore, Wal-Mart has not been a defendant in this case for more than four years.

Telebrands's request to include Trend Makers has not previously been litigated. Telebrands contends that Tristar formed Trend Makers in 2022 "to market and sell the infringing Flex-Able Hose products." Mem. in Supp. Mot. to Am. Compl., D.E. 615-1, at 2. Telebrands reasons that because Trend Makers was formed in April 2022, Telebrands could not have known of the existence of Trend Makers before the deadline for amending pleadings passed. That might be true, but Telebrands still must show good cause for seeking to amend the Fifth Amended Complaint now, and good cause requires a showing of diligence. *Korrow*, 300 F.R.D. at 220 ("A determination of 'good cause' under Rule 16 depends on the diligence of the moving party.").

The Court cannot find on the facts before it that Telebrands has acted with the requisite degree of diligence in seeking to add Trend Makers at this juncture. It is true that this action was largely stayed between April 2022 and July 17, 2023 because of the pending Federal Circuit appeal of Judge Hillman's ruling on co-inventorship. It is also true that the

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 10 of 49

Blue Gentian, LLC v. Tristar Products, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 4719560

matter was administratively terminated after being sent to mediation on October 2, 2023, and that it did not become active again until January 25, 2024, when the Undersigned scheduled a conference for February 14, 2024. However, Telebrands filed letters with the Court on July 17, 2023, requesting a conference, and on September 27, 2023, seeking to strike Tristar's motion for judgment on the pleadings. *See* Letter, D.E. 587; Letter, D.E. 601. Neither of these letters indicated that Telebrands sought to add Trend Makers as a defendant. Instead, Telebrands first notified the Court that it would be seeking to add Trend Makers as a defendant in its February 6, 2024 proposed agenda for the February 14, 2024 conference, which the Court ordered the parties to file. Given that Judge Donio had already denied a prior motion to amend based on undue delay, and that the deadline to amend the pleadings expired on January 8, 2016, the Court cannot find that Telebrands acted with the requisite amount of diligence under Rule 16. [9]

[9] Even if Telebrands established good cause under Rule 16 to add Trend Makers and its product to this litigation, the Court would still find that the application fails under Rules 15, 19, and 20, for the reasons set forth below.

The Court therefore concludes Telebrands has not established good cause under Rule 16 to modify the Pretrial Scheduling Order and the amendments thereto. Because the Court has determined that Telebrands has not satisfied the good cause standard under Rule 16, it need not reach Rule 15. *See E. Mins. & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000); *Watson v. Sunrise Senior Living Servs., Inc.*, Civ. No. 10-230, 2015 WL 1268190, at *10 (D.N.J. Mar. 18, 2015). But in the interest of completeness, the Court also considers the motion under that standard.

### 2. Rule 15

**\*7** Tristar argues that the Court should deny Telebrands's motion under Rule 15 because amendment would subject them to undue delay and prejudice, is the product of bad faith, and is futile. Opp. to Mot. to Am. Compl., D.E. 618, at 14-28. On the other hand, Telebrands contends that its proposed Sixth Amended Complaint will not result in undue delay or unfair prejudice and is not futile. Mem. in Supp. Mot. to Am. Compl., D.E. 615-1, at 7-10.

"Federal Rule of Civil Procedure 15(a)(2) provides a liberal standard for motions to amend: 'The Court should freely give leave when justice so requires.' " *Spartan Concrete Prods., LLC v. Argos USVI, Corp.,* 929 F.3d 107, 115 (3d Cir. 2019) (quoting Fed. R. Civ. P. 15 (a)(2)). The Court may deny a motion to amend the pleadings only where there is (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; (4) repeated failures to cure deficiencies; or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Long v. Wilson,* 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings [under Rule 15(a)] should be liberally granted.") (citations omitted); *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002) ("Under Rule 15(a), if a plaintiff requests leave to amend a complaint ... such leave must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment.").

#### a. Undue Delay and Unfair Prejudice

Much of the analysis for undue delay under Rule 15 naturally overlaps with the good-cause analysis under Rule 16. But the standards are distinct, and hence the Court separately considers the undue delay element of Rule 15.

"The concepts of undue delay and unfair prejudice are often interrelated in the context of a Rule 15 analysis, and the Court will consider them together." *Spiderplow, Inc. v. Site Energy*, No. 16-2318, 2017 WL 11477633, at *3 (D.N.J. Feb. 8, 2017). A party's delay, by itself, is insufficient to justify denial of leave to amend. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). "However, 'at some point, the delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party.' " *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). The inquiry into undue delay includes consideration of the court's "[i]nterests in judicial economy and finality," as well as a "focus on the movant's reasons for not amending sooner." *USX Corp. v. Barnhart*, 395 F.3d 161, 168 (3d Cir. 2004).

Further, it is well-established that "[p]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Cornell and Co., Inc. v. Occupational Safety and Health Review Commission*, 573 F.2d 820, 823 (3d Cir. 1978); *see also Johnson v. New Jersey*, No. 18-11299, 2023 WL 3952985, at *4 (D.N.J. June 12, 2023) (quoting *Cureton*, 252 F.3d at 273) (stating the court's focus is specifically "on the hardship to the defendants if the amendment were

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 11 of 49

Blue Gentian, LLC v. Tristar Products, Inc., Not Reported in Fed. Supp. (2024)
2024 WL 4719560

permitted"). In assessing prejudice, courts consider whether the proposed amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Long*, 393 F.3d at 400.

The undue delay element of Rule 15 compels denial of the motion for the same reasons as expressed in the Rule 16 analysis. Telebrands's request to add Trend Makers and a new product comes many years after this matter was filed, and after years of discovery, motion practice, and an appeal to the Federal Circuit. *See Wiley v. City of Newark*, No. 16-2530, 2022 WL 3013075, at *5 (D.N.J. July 29, 2022) (finding undue delay where the plaintiff sought leave to six years following the initial filing). As Judge Donio emphasized when she denied the prior motion to amend the Fifth Amended Complaint, fact discovery was complete as of September 30, 2016, *Markman* briefs had been filed, expert deadlines were looming, and the Complaint had already been amended five times.[10] Tr. of September 30, 2016 Hrg., D.E. 226, at 33:5-36:23. Her Honor reasoned that given the age of the case, and the amount of litigation completed to that point, the additional discovery that the amendment would have required compelled denial of the motion under Rule 15. *Id.* at 35:1-22.

[10]  It is noteworthy that in denying amendment under Rule 15, Judge Donio assumed for the sake of argument that Blue Gentian and National Express had good cause under Rule 16. Tr. of September 30, 2016 Hrg., D.E. 226, at 34:4-15.

 **\*8** Judge Donio's reasoning applies even more forcefully now. This matter, which is already more than eleven years old, and for which the deadline to amend passed eight years ago, would be even further encumbered and delayed from final resolution if the Court allowed the addition of Trend Makers and the new product. Adding Trend Makers and the new product would inevitably require entirely new written discovery and depositions, the exchange of infringement and invalidity contentions, and perhaps a new *Markman* hearing. Moreover, this litigation has witnessed myriad discovery disputes and motions that have required repeated Court intervention. The Court must allow for the strong possibility that new discovery disputes would accompany the new discovery, and further protract this litigation. *See, e.g.*, Letters, D.E.s 641-643. Likely, granting this motion would also require amendments and extensions of all patent-

related tasks as well. *See, infra*, Mot. to Am. Contentions. To allow amendment and the addition of a new party and product at this juncture would multiply the proceedings, protract discovery, and unduly cause Defendants to incur considerable costs. It also would "render[ ] the complaint 'a moving target'." *Ramirez-Rodriguez v. W. New York Bd. of Educ.*, No. 18-17081, 2022 WL 2158965, at *3 (D.N.J. June 15, 2022) ("[A]dding new claims at this stage in the case— over two years after the amendment deadline, and following three years of discovery, after a Final Pretrial Conference was scheduled (although later canceled), and after the BOE has stated its intention to file a summary judgment motion— renders the complaint a 'moving target.' "); *see also Berk v. Ritz Carlton Condo. Ass'n*, No. 19-20666, 2021 WL 2651252 at *4 (D.N.J. Nov. 12, 2021) (stating that courts have "rightly rejected" a "moving target" approach to amendments; "wait and see tactics amount to undue delay and would prejudice the defendants").

It is true that the "mere passage of time is not sufficient grounds to deny leave to amend[.]" *Cureton v. National Collegiate Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir. 2001). But it is not the mere passage of time that warrants denial of the motion; it is the unacceptable degree to which the amendments would further separate this case from its long-awaited resolution, and the undue burden that the amendments would pose for the Court and Tristar. Telebrands asserts that Tristar will not suffer prejudice because "[t]he changes in the Sixth Amended Complaint simply update surrounding facts to these infringement claims based on developments that have occurred in the nearly nine years since the filing of the Fifth Amended Complaint." *See* Mem. in Supp. Mot. to Am. Compl., D.E. 615-1, at 7. That assertion is entirely unpersuasive as it elides the new discovery and other tasks the amendments would require. *Red Clay Consol. Sch. Dist. v. T.S.*, No. 10-00784, 2011 WL 4498964, at *4 (D. De. 2011) (finding prejudice under Rule 15 where the proposed counterclaim would require the plaintiff to "to conduct additional discovery beyond what has already been produced and beyond what is feasible under the governing discovery timeline. Additionally, Plaintiff would likely have to obtain additional expert analysis and develop new legal strategies"). Therefore, the Court is constrained to find that permitting the proposed amendments concerning Trend Makers and its product will result in unfair prejudice to Tristar.[11] *See Spiderplow*, 2017 WL 11477633, at *3 ("[I]f a party waits until the end stages of a litigation to seek its proposed amendment, and its adversary is then forced to ... engage in additional dispositive motion practice to address

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 12 of 49
Blue Gentian, LLC v. Tristar Products, Inc., Not Reported in Fed. Supp. (2024)
2024 WL 4719560

the amendments, then the timing of the amendment may prejudice the non-moving party.").

11    Because the Court is denying the motion for leave to amend based on unfair prejudice and undue delay, it need not reach the issues of futility or dilatory motive. Moreover, adjudication of the futility arguments could significantly impact the ultimate resolution of this case. *Gov't Emps. Ins. Co. v. Yoo*, No. 19-16996, 2019 WL 13536629, *2 (D.N.J. Nov. 5, 2019) (finding that "Defendants' futility arguments go beyond the bounds of Plaintiff's proposed amendments and strike at the heart of the current operative complaint" and declining to reach the merits of Plaintiff's claims on a motion to amend). For example, Tristar asserts that the Court should deny the motion to amend because Telebrands is not the rightful owner of the asserted patents, and Judge Hillman's resolution of the co-inventorship issue, which the Federal Circuit affirmed, were dispositive of the issues in the case. But these arguments rely on evidence outside of the pleadings and are directed to the merits of the litigation. Accordingly, they are more appropriately considered on a motion for summary judgment. *Galluccio v. Pride Indus.*, No. 15-3423, 2016 WL 234840 (D.N.J. Jan. 20, 2016) (finding additional claim would be more appropriately handled at summary judgment as opposed to within a futility analysis); *see also Roxane Lab'ys, Inc. v. Camber Pharms. Inc.*, No. 14-4042, 2015 WL 12838313, at *1 (D.N.J. Apr. 29, 2015) ("Plaintiff's arguments cannot succeed because they rely on facts outside the pleadings.").

### 3. Joinder under Rules 19 and 20

**\*9** Even if Telebrands's motion to add Trend Makers satisfied Rules 15 and 16, its application would fail under Rules 19 and 20. Parties can rely on Federal Rules Civil Procedure 19 and 20 to join additional parties. *Nat'l Packaging Servs. v. Citrus & Allied Essences Ltd.*, 21-6366, 2021 WL 4843608, at *2 (D.N.J. Oct. 18, 2021). Rule 19 determines when joinder of a party is compulsory. *Panella v. O'Brien*, No. 05-1790, 2006 WL 2466858, at *5 (D.N.J. Aug. 24, 2006). To obtain compulsory joinder under 19(a), a party must demonstrate that the absent party is necessary for adjudication. *Gen. Refractories Co. v. First State Ins. Co.*, 500

F.3d 306, 313 (3d Cir. 2007). A non-party is necessary if the absent party claims an interest regarding the action, and is so situated that disposing of the action in its absence may impair or impede the absent party's ability to protect that interest. *Id.* at 405.

A non-party also might be considered necessary if complete relief cannot be afforded among the existing parties. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993). Completeness of relief "is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought." *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996). Furthermore, in determining completeness of relief, a court must consider only the claims in the operative pleading at the time joinder is sought. *Cooley v. Lisman*, No. 16-4499, 2019 WL 11288454, at *4 (D.N.J. Feb. 28, 2019).

Permissive joinder is governed by Rule 20, and is to be liberally granted. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("[U]nder the rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."). A party seeking permissive joinder must show that their claims arise out of the same transaction, occurrence, or series of transactions or occurrences, and that there is a question of law or fact common to all joined parties. *Miller v. Hygrade Food Prods. Corp.*, 202 F.R.D. 142, 143 (E.D. Pa. 2001).

The decision whether to permit joinder under Rule 20 is soundly within the Court's discretion. *Bell v. Lockheed Martin Corp.*, No. 08-6292, 2010 WL 3724271, at *12 (D.N.J. Sept. 15, 2010). Courts should consider "other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness." *Cooley*, 2019 WL 11288454, at *5 (quoting *McKoy v. Carter*, No. 09-4170, 2010 WL 11470887, at *3 (D.N.J. Apr. 16, 2010)). Those other relevant factors include "the possible prejudice that may result to any of the parties in the litigation, the delay of the moving party in seeking an amendment to his pleadings, the motive that the moving party has in seeking the amendment, the closeness of the relationship between the new and the old parties, the effect of an amendment on the court's jurisdiction, and the new party's notice of the pending action." *Id.*

Telebrands seeks to add Trend Makers as a defendant under either Rule 19 or 20. It argues that Trend Makers's joinder

Blue Gentian, LLC v. Tristar Products, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 4719560

is compulsory under Rule 19 because Tristar created Trend Makers to market and sell Tristar's infringing product while shielding Tristar from liability. *See* Mem. in Supp. Mot. to Am. Compl., D.E. 615-1, at 10-11. In short, Telebrands avers that Trend Makers is Tristar's alter ego. Therefore, Telebrands posits that the Court cannot accord complete relief without joining Trend Makers. *Id.* In the alternative, Telebrands requests to add Trend Makers under Rule 20 because it "continues to infringe the Patents-in-Suit." *Id.* at 11.

**\*10** Tristar responds that the Court should deny the request based on futility, bad faith, undue delay, and unfair prejudice. Opp. to Mot. to Am. Fifth Am. Compl., July 22, 2024, D.E. 618, at 28-29. Tristar contends that Trend Makers is not its alter ego, and adding it as a defendant would require "new and distinct discovery, including potential motion practice." *Id.* at 29. Tristar also asserts that Telebrands has failed to establish that joinder of Trend Makers is compulsory, because Telebrands fails to explain why it cannot obtain complete relief if Trend Makers is not joined. *Id.* at 30.

Telebrands's request to add Trend Makers under Rules 19 and 20 is bare and conclusory. Telebrands makes little attempt to even analyze why joinder of Trend Makers is either mandatory or permissive. Instead, Telebrands makes a blanket assertion that Trend Makers was formed in 2022 as Tristar's alter ego. *See Combustion Syss. Servs., Inc. v. Schuykill Energy Resources, Inc.*, 1993 WL 496946, at \*2 (E.D. Pa. Nov. 19, 1993) (noting that the Court lacks the time to "undertake legal research to support the moving party's positions"). Moreover, Telebrands cites only a single case in support of its request, and that case only discusses permissive joinder in general terms. Despite this threadbare showing, the Court will analyze Telebrands's application under both Rule 19 and Rule 20.

Compulsory joinder of Trend Makers under Rule 19 is not appropriate for several reasons. First, the Court cannot conclude that Trend Makers is a necessary party for adjudication of this more than twelve-year-old litigation. This is particularly true where Trend Makers was only formed two years ago. Second, Telebrands does not allege, and the Court cannot find, that complete relief cannot be accorded among the existing parties without Trend Makers's joinder. *Angst, 77 F.3d at 705* (whether complete relief can be accorded is determined as between the existing parties, not as between a party and the party sought to be joined). For example, Telebrands does not allege that Tristar would be unable to

satisfy any money judgment that might be entered against it. Third, having denied Telebrands's request to amend the Fifth Amended Complaint under Rule 15, the Court must consider whether Telebrands can obtain complete relief based on the claims in the Fifth Amended Complaint absent Trend Makers's joinder. *Cooley*, 2019 WL 11288454, at \*4 (noting that a court must consider only the claims in the operative pleading at the time joinder is sought). The Court cannot find, nor does Telebrands provide, any reason it cannot obtain complete relief on its claims in the Fifth Amended Complain absent the joinder of Trend Makers. Indeed, because Trend Makers was only formed in 2022, ten years after this litigation commenced and seven years after the operative Fifth Amended Complaint was filed, the Court fails to understand how Telebrands would be unable to obtain complete relief without the addition of Trend Makers. Accordingly, the Court finds that Trend Makers is not an indispensable party.

The Court also finds that Telebrands's application fails under Rule 20. Even if this Court were to find that Telebrands's claims against Trend Makers arose from the same transaction, occurrence, or series of transactions or occurrences, and that there is a question of law or fact common to all joined parties, it still has the discretion to deny joinder under Rule 20 based on undue delay and unfair prejudice. *Cooley*, 2019 WL 11288454, at \*5. The foregoing discussion of undue delay and prejudice to Tristar under Rule 15 compels a similar conclusion here. The Court adds that joining Trend Makers as a defendant would involve a new set of facts and discovery, essentially starting aspects of the case over in an already twelve-year-old case. Under these circumstances, the Court finds that joinder under Rule 20 will not "comport with the principles of fundamental fairness." *Cooley*, 2019 WL 11288454, at \*5. Therefore, the Court denies Telebrands's request to join Trend Makers under Rules 19 and 20.

**\*11** For all of these reasons, the Court denies Telebrands's motion to amend its Fifth Amended Complaint.

### IV. Telebrands's Request to Amend Infringement Contentions

The Local Patent Rules for the District of New Jersey require early disclosure of the patentee's infringement contentions and the alleged infringer's invalidity contentions. *Sanofi-Aventis v. Barr Labs., Inc.*, 598 F. Supp. 2d 632, 637 (D.N.J. 2009) (describing the disclosure requirements as something that must be disclosed "*ultra* early" (emphasis in original)). One salient purpose of such early disclosure is "to further the goal of full, timely discovery and provide all parties with

2024 WL 4719560

adequate notice and information with which to litigate their cases." *King Pharm., Inc. v. Sandoz Inc.*, No. 08-5974, 2010 WL 2015258, at *4 (D.N.J. May 20, 2010) (quoting *Computer Accelerations Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex 2007)) (internal quotations omitted). The rules "are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *King Pharm.*, 2010 WL 2015258, at *4 (citing *Atmel Corp. v. Info. Storage Devices, Inc.*, No. 95-1987, 1998 WL 775115, at *2 (N.D. Cal. Nov. 4, 1998)) (internal quotations omitted). The courts of this District have distinguished this stricter standard from the more liberal standard to amend a pleading. *See, e.g.*, *Astrazeneca AB v. Dr. Reddy's Labs., Inc.*, No. 11-2317, 2013 WL 1145359, at *2-3 (D.N.J. Mar. 18, 2013). Nevertheless, Rule 3.7 "is not a straitjacket into which litigants are locked from the moment their contentions are served ... [a] modest degree of flexibility [exists], at least near the outset." *Id.* at *2. Therefore, although "preliminary ... contentions are still preliminary it is important to recognize that the Local Patent Rules strive to have the parties establish their contentions early on." *Id.* (internal quotations omitted).

Local Patent Rule 3.7 allows for amendment of contentions "only by order of the Court upon a timely application and showing of good cause." The Federal Circuit has established that with respect to "good cause," parties must "proceed with diligence in amending those contentions when new information comes to light in the course of discovery." *02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366-68 (Fed. Cir. 2006). Thus, good cause "considers first whether the moving party was diligent in amending its contentions." *Dr. Reddy's Labs.*, 2013 WL 1145359, at *3 (citing *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355 (Fed. Cir. 2006)). The moving party bears the burden of establishing diligence and must prove that it was diligent not only in moving to amend, but also in discovering the grounds for the amendment. *02 Micro Int'l Ltd.*, 467 F.3d at 1366. If the court finds diligence, then it must consider whether the non-moving party would suffer prejudice if the court allows the amendment. *Jazz Pharms., Inc. v. Roxane Labs., Inc.*, No. 10-6108, 2013 WL 785067, at *5 (D.N.J. Feb. 28, 2013).

Telebrands seeks to amend the infringement contentions to track its proposed amendments to the Fifth Amended Complaint. The parties' arguments regarding Telebrands's request to amend the infringement contentions largely track their arguments regarding Telebrands's motion to file a Sixth Amended Complaint. Mot. to Am. Infringement Contentions,

June 21, 2024, D.E. 616; Opp. to Mot. to Am. Contentions, July 22, 2024, D.E. 619. Telebrands contends that it has good cause to amend to update its infringement contentions to include the factual developments in this litigation since December 2015, when Blue Gentian and National Express served their initial infringement contentions. Mot. to Am. Infringement Contentions, June 21, 2024, D.E. 616, at 3. Telebrands claims it "has made this Motion in a timely manner and with diligence, especially in light of the complex status of this case in coordination with six other pending cases pending in this District." *Id.* at 4. Tristar argues, *inter alia*, that Telebrands's request should be denied because it cannot demonstrate that its application is timely or that it has good cause for the amendment. Opp. to Mot. to Am. Contentions, July 22, 2024, D.E. 619, at 2-6. In particular, Tristar maintains that Telebrands has been less than diligent in seeking to amend the infringement contentions, and in fact delayed this action considerably with its unsuccessful appeal of Judge Hillman's co-inventorship ruling to the Federal Circuit. *Id.* at 6. Tristar reasons that "Telebrands should not now be permitted to expand the scope of its case, by reason of a delay Telebrands itself orchestrated." *Id.*

**\*12** The Court having already determined that Telebrands did not act with the requisite degree of diligence in moving to amend its Fifth Amended Complaint under Rule 16 or Rule 15, the Court similarly finds that Telebrands also has failed to establish diligence in moving to amend its invalidity contentions. This is particularly true because as noted above, the standard to amend infringement contentions is more onerous than the standard to amend pleadings. *Dr. Reddy's Labs.*, 2013 WL 1145359, at *2. Moreover, it is appropriate to deny a motion to amend infringement contentions where a motion to amend the complaint dealing with the same claims and products has already been denied. *See WAG Acquisition, LLC v. Gattyán Group S.à.r.l.*, No. 14-2832, D.E. 220 (D.N.J. Jan. 29, 2020) (slip op. at 15) ("The Court having already determined that [defendant] did not act with the requisite degree of diligence in moving to amend its answer under Rule 16 or Rule 15 to add an inequitable conduct affirmative defense based on Icecast, the Court similarly finds that [defendant] also has failed to establish diligence in moving to amend its invalidity contentions."); *Symed Labs Ltd. v. Roxane Labs., Inc.*, No. 15-8304, 2018 WL 572 9909, at *5 (D.N.J. Nov. 2, 2018) (plaintiff conceded that if motion to amend its complaint was denied that it would be appropriate to deny motion to amend infringement contentions based on the same subject matter); *Slot Speaker Techs., Inc. v. Apple, Inc.*, No. 13-1161, 2017 WL 4354999, at *2 (N.D. Cal. Sept.

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 15 of 49

**Blue Gentian, LLC v. Tristar Products, Inc., Not Reported in Fed. Supp. (2024)**
2024 WL 4719560

29, 2017) ("Because the Court declines to grant leave to amend the complaint [to add a willful infringement claim] there is no need to amend the infringement contentions to track the willfulness allegation."). Courts have found that amendments to the complaint and infringement contentions go hand in hand when based on the same subject matter. *See Sage Electrochromics, Inc. v. View, Inc.*, No. 12-6441, 2014 WL 1379282, at *2 (N.D. Ca. Apr. 8, 2014) ("[I]n permitting a party to amend the complaint to add a new infringement allegation, the court is effectively permitting the amendment of the infringement contentions. It would be a strange result if a patent plaintiff were to be permitted to amend the complaint to add a new patent infringement claim, and then denied the ability to amend the infringement contentions to reflect that change."); *Orlando Commc'ns LLC v. LG Elecs., Inc.*, No. 14-1017, 2015 WL 1246500, at *14 (M.D. Fla. Mar. 16, 2015) (if plaintiff files an amendment complaint, then plaintiff shall file updated infringement contentions reflecting the changes in the amended complaint); *High 5 Games, LLC v. Marks*, No. 13-7161, 2018 WL 4462477, at *2 (D.N.J. Sept. 18, 2018) (finding it appropriate to permit plaintiff to serve new infringement contentions as to new defendants and new claims after Plaintiff filed a third amended complaint); *Harris Corp. v. Huawei Device USA, Inc.*, No. 18-349, 2019 WL 4247067, at *4 (E.D. Tex. Sept. 6, 2019) (granting motion to amend infringement contentions and therefore, finding it proper to permit plaintiff to amend its complaint to ensure the new contentions were supported by the complaint). Accordingly, Telebrands's motion to amend its invalidity contentions is denied.

## IV. CONCLUSION

For the reasons set forth herein, Telebrands's motions to amend the Fifth Amended Complaint, D.E. 615, and its infringement contentions, D.E. 616, are denied. An Order consistent with this Opinion will issue.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4719560

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Carter v. SNC-Lavalin Constructors, Inc., Not Reported in Fed. Supp. (2019)
2019 WL 918382

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 16 of 49

2019 WL 918382
Only the Westlaw citation is currently available.
United States District Court, D. Maryland.

Quincy CARTER
v.
SNC-LAVALIN CONSTRUCTORS, INC., et al.

Civil Action No. DKC 17-3198
|
Filed 02/25/2019

**Attorneys and Law Firms**

Denise M. Clark, Clark Law Group, PLLC, Washington, DC, for Quincy Carter.

Matthew Owen Gatewood, Eversheds Sutherland (US) LLP, Washington, DC, for Defendant SNC Lavilaw.

Matthew H. Clash Drexler, Devki K. Virk, Pro Hac Vice, Bredhoff and Kaiser PLLC, Washington, DC, for Defendant IUOE Local 77.

**MEMORANDUM OPINION**

DEBORAH K. CHASANOW, United States District Judge

**\*1** Presently pending and ready for resolution in this employment discrimination case is the motion for leave to file an amended complaint filed by Plaintiff Quincy Carter. (ECF No. 30). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6.

Plaintiff has twice previously filed complaints which failed to comply with Fed.R.Civ.P. 8, regarding Defendant IUOE Local 77 due to a lack of diligence on the part of Plaintiff's counsel. Because of the harshness of dismissal with prejudice due to an error of counsel, Plaintiff was given one last chance to amend his complaint. Plaintiff moved for leave to amend and attached a proposed complaint which brought claims for wrongful termination and discriminatory terms and conditions of employment. (ECF No. 30-1). The motion, as it relates to a claim of discriminatory terms and conditions of employment, is unopposed and will be granted. (*See* ECF No. 33, at 4). The motion, as it relates to a claim of wrongful termination against Defendant International Union of Operating Engineers, Local 77 ("Defendant") will be

denied because it is late, because it is futile, and because it was filed in bad faith.

**I. Background**
According to the amended complaint, Plaintiff was a member of Local 77 working for SNC-Lavalin Constructors, Inc. ("SNC"). Plaintiff is African-American. Local 77 held "White only meetings" while Plaintiff was working for SNC. Plaintiff complained to Local 77 about the meetings on September 13, 2016, and, on September 16, Plaintiff was terminated. (ECF No. 30-1 ¶¶ 8-30).

On October 30, 2017, Plaintiff filed a complaint alleging termination and retaliation on the basis of race in violation of local and federal law. Plaintiff was represented by counsel who used the *pro se* form for the complaint. Despite this being a counseled complaint, it contained no allegations supporting the claims against Local 77. (ECF No. 1). Local 77 moved to dismiss (ECF No. 9), and Plaintiff filed an amended complaint (ECF No. 14).

The amended complaint, like the initial complaint, was filed by counsel on the *pro se* form. The amended complaint initially was filed without a version identifying the proposed changes to the complaint in violation of Local Rule 103.6. (ECF No. 15). Plaintiff filed a supplement to the amended complaint to cure this deficiency. (ECF No. 16). Plaintiff's amended complaint contained a short statement of facts alleging that Plaintiff had told his union representative about the "Whites only meetings" and that Local 77 "has been retaliating against the Plaintiff since his termination interfering with job opportunities." (ECF No. 14, at 6). Local 77 moved to dismiss for failure to state a claim (ECF No. 20), and, after briefing, the motion was granted (ECF No. 24). Although dismissal with prejudice would have been appropriate, the court gave one last chance properly to amend the complaint. (*Id.* at 10).

In the Order of May 30, 2018, the court stated, "Any motion for leave to amend ... must be filed within 21 days." (ECF No. 25). Plaintiff did not file a motion for leave to amend within 21 days. Instead, on June 20, 2018, Plaintiff filed a new complaint without an attached copy identifying the changes from the previous complaint. (ECF No. 26). This amended complaint was rejected for not complying with Local Rule 103.8. (ECF No. 27). Plaintiff attempted to cure this deficiency on June 21 (ECF No. 28) but did not request leave to amend and did not request the other party's consent as required by Fed.R.Civ.P. 15(a)(2) and Local

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 17 of 49

Carter v. SNC-Lavalin Constructors, Inc., Not Reported in Fed. Supp. (2019)
2019 WL 918382

Rule 103.6.d. (ECF No. 29). On June 28, a week after the court imposed deadline, Plaintiff finally filed a motion for leave to file a second amended complaint. The seconded amended complaint seeks to bring claims against Local 77 and SNC pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., for wrongful termination and discriminatory terms and conditions of employment. (ECF No. 30-1). [1]

[1]    SNC did not object to the filing of a second amended complaint, and, therefore, Plaintiff will be allowed to amend the claims against it.

## II. Analysis

**\*2**  Plaintiff filed the motion for leave to amend the complaint late and has not moved for leave to allow the late filing. Moreover, a request for leave to allow the late filing would likely have been denied. Pursuant to Fed.R.Civ.P. 6(b)(1), "the court may, for good cause, extend the time: (B) on motion made after the time has expired if the party failed to act because of excusable neglect." "Generally, excusable neglect ... require[s] a demonstration of good faith on the part of the party seeking an extension of time and some reasonable basis for noncompliance within the time specified in the rules." 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1165 (4th ed. 2018). Here, there is no reasonable basis for noncompliance. Plaintiff has already once before failed to comply with Local Rule 103. The Order specified the motion he had to file which should have directed Plaintiff to Fed.R.Civ.P. 15. Plaintiff did not follow the Local Rules, the Federal Rules, or the court's Order. Therefore, even if Plaintiff had moved for leave to allow his late filing, his motion likely would have been denied. In any event, leave to amend will be denied.

A party may amend its pleading once as a matter of course within 21 days after serving it or within 21 days after service of a motion under Rule 12(b), whichever is earlier. Fed.R.Civ.P. 15(a)(1). When the right to amend as a matter of course expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2). Rule 15(a)(2) provides that courts should "freely give leave [to amend] when justice so requires," and commits the matter to the discretion of the district court. *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011). Denial of leave to amend is appropriate "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be

futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis omitted) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) ).

Leave to amend may be denied as futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules," including federal pleading standards. *Katyle v. Perm Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) ). A pleading need not contain detailed factual allegations, but the plaintiff must allege enough facts to make the claim appear "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted) ). Accordingly, denial of leave to amend is appropriate if the court, taking as true the allegations of the proposed amended pleading, would be compelled to dismiss the action. *See Kellogg Brown & Root*, 525 F.3d at 376 (affirming the district court's denial of leave to amend because the "proposed amended complaint does not properly state a claim under Rule 12(b)(6)").

**\*3**  Here, Plaintiff brings a claim for wrongful termination stating that "Following Mr. Carter's September 13, 2016 complaint, a representative of [Local 77] contacted SNC's corporate office in New Jersey," "[o]n information and belief, [Local 77] provided false information to the SNC corporate office so that SNC would terminate [Plaintiff]," "[o]n information and belief, SNC negligently relied on false information provided by [Defendant] who had a racial discriminatory animus," "[o]n information and belief, SNC negligently relied on false information provided by [Local 77] who had a retaliatory animus," and "[o]n information and belief, SNC terminated [Plaintiff] at [Local 77's] insistence." (ECF No. 30-1 ¶¶ 29, 30, 43, 44, 51). Allegations based on information and belief are only appropriate where "the belief is based on factual information that makes the inferences of culpability plausible." *Arista Records, LLC v. Does 3*, 604 F.3d 110, 120 (2d Cir. 2010); *accord Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017).

Plaintiff has not alleged sufficient facts to create an inference that Local 77 controlled or influenced SNC's hiring and firing decisions. Plaintiff has not identified any conversations Local 77 had with SNC about his employment. Plaintiff has not alleged any facts supporting an inference that Local 77 normally had conversations with SNC about employment

decisions. Plaintiff has not alleged any facts supporting an inference that Local 77 had any role in SNC's employment decision. Thus, Plaintiff has not alleged any facts plausibly to support a conclusion that Local 77 provided false information to SNC upon which SNC relied in deciding to terminate Plaintiff.

In addition, Plaintiff's claim of wrongful termination specifically references his termination letter. (ECF No. 30 ¶¶ 36-42). Because the termination letter is integral to the claim of wrongful termination, the court can rely on it without converting the motion to dismiss into one for summary judgment. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013); *see Amaya v. Ballyshear LLC*, 295 F.Supp.3d 204, 217 (E.D.N.Y. 2018) (considering a termination letter in a motion to dismiss because the letter was integral to the complaint); *Jay v. Serv. Employees Int'l Union-United Health Care Workers W.*, 203 F.Supp.3d 1024, 1032 (N.D. Cal. 2016) (same). The termination letter explains that the complaints about Plaintiff which led to his termination came from his fellow employees. (ECF No. 33-1). Although it is not necessary to rely on it, this document makes abundantly clear that Local 77 did not provide the information to SNC which formed the basis for Plaintiff's termination. Plaintiff's motion for leave to amend his claim of wrongful termination against Local 77 is subject to dismissal as futile.

Bad faith generally involves changing legal theories and the belated presentation of facts which the pleader was already aware of in an effort to delay ultimate resolution. *See Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1015 (8th Cir. 2015); Wright & Miller § 1488 ("By failing to introduce the matter contained in the proposed amendment at as early a stage in the litigation as possible, the pleader has demonstrated bad faith in not apprising the opponent of its true position in the action."). Bad faith is established "when it appears that the plaintiff is using Rule 15

to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, [and] to present theories seriatim in an effort to avoid dismissal[.]" *Minter v. Prime Equip.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (internal citations and quotation marks omitted).

Here, the claim of unlawful termination was brought in bad faith. The allegations underlying that claim — providing misinformation to the employer — are mentioned for the first time in the proposed second amended complaint. To the extent Plaintiff had this information, he has had it for years, but he failed to mention it in the EEOC Charge, the first complaint, or the amended complaint. Plaintiff has omitted from his proposed second amended complaint the allegations which appeared in his amended complaint. In short, Plaintiff has changed the basis for the claim. Accordingly, Plaintiff's motion for leave to amend his claim of wrongful termination against Local 77 is subject to dismissal for bad faith.

### III. Conclusion

**\*4** In sum, leave to amend should only be given "when justice so requires," Fed.R.Civ.P. 15(a)(1), and, given the inadequacy of the previous complaints, the inadequacy of Plaintiff's proposed second amended complaint, the discrepancies between the factual allegations in the various complaints, and the stated justification for the termination, justice does not so require. The motion for leave to file an amended complaint filed by Plaintiff Quincy Carter will be granted in part and denied as to the claim of wrongful termination against Defendant International Union of Operating Engineers, Local 77 ("Defendant"). A separate order will follow.

### All Citations

Not Reported in Fed. Supp., 2019 WL 918382

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 510970
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Kristina EISENACHER, Plaintiff
v.
COURT OF COMMON PLEAS OF
DAUPHIN COUNTY, et al., Defendants

CIVIL ACTION NO. 1:24-CV-1707
|
Signed February 14, 2025

**Attorneys and Law Firms**

Andrea L. Shaw, Law Office of Andrew H. Shaw, P.C., Carlisle, PA, Tracy L. Henderson, Pro Hac Vice, Law Offices of Tracy L. Henderson, Esq., Carmel, CA, for Plaintiff.

Megan L. Mallek, Administrative Offices of the PA Courts, Philadelphia, PA, for Defendants Court of Common Pleas of Dauphin County, Judge Royce Morris, Judge Jeffrey Engle.

Guy A. Donatelli, Lamb McErlane, PC, West Chester, PA, for Defendants Superior Court of California, County of San Mateo, Judge Elizabeth Hill, Judge Rachel Holt, Judge Sara Burdick.

### MEMORANDUM

Keli M. Neary, United States District Judge

**\*1** Plaintiff Kristina Eisenacher advances a sole claim pursuant to 42 U.S.C. § 1983 for alleged violations of her parental rights under the Due Process clause of the Fourteenth Amendment to the United States Constitution against five state-court judges. Defendants now move to dismiss the amended complaint with prejudice pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. The court will grant defendants' motions.

### I. Factual Background & Procedural History

Eisenacher is a Pennsylvania resident and the birth mother of E.H., an eight-year-old girl. (See Doc. 22 ¶ 58). Defendants are five state-court judges: the Honorable Royce Morris and Jeffrey Engle of the Court of Common Pleas of Dauphin County, (see id. ¶¶ 59, 63); and the Honorable Elizabeth Hill, Rachel Holt, and Sarah Burdick of the Superior Court

of California for San Mateo County, (see id. at 1 & ¶¶ 50, 60-63). [1] Eisenacher alleges that defendants conspired to terminate her parental rights over E.H. in favor of a man named Charles Hodgin. (See id. ¶¶ 9-10). More specifically, she alleges that in October 2016, Hodgin initiated family law Case No. 16FAM01318 in the California Superior Court for San Mateo County to establish custody over E.H.—and purportedly did so using forged documents that claimed, among other falsities, that E.H. and Eisenacher resided together in California, though they actually lived in Pennsylvania at the time. (See id. ¶¶ 7, 9-10). These documents also included an agreement in which Eisenacher purports to limit her parental rights, which Eisenacher claims Hodgin fraudulently induced her into signing while on a trip to Pennsylvania. (See id. ¶¶ 11-13).

[1]   The amended complaint also listed two court systems—the Court of Common Pleas for Dauphin County and the Superior Court of California of San Mateo County. (See Doc. 22 at 1). However, Eisenacher has since requested that these claims be voluntary dismissed. (See Doc. 33 at 3 (California Court); Doc. 34 at 2 (Pennsylvania Court)). In addition, the amended complaint erroneously refers to Judge Burdick as "Sara" Burdick. (See, e.g., Doc. 22 ¶ 50; see Doc. 25 at 1 (identifying this error)).

Judge Hill was the first judicial officer to preside over the California family law case. She allegedly "ordered law enforcement to take E.H. and give her to Hodgin" based solely on the falsified documents Hodgin submitted. (See id. ¶ 21). Hodgin proceeded to seek enforcement of the California court's order in Dauphin County, Pennsylvania, where E.H. was living at the time. (See id. ¶ 23). Judge Morris presided over the Pennsylvania enforcement action and issued an enforcement decree after speaking to Judge Hill on the telephone *ex parte*. (See id. ¶¶ 23, 25). Police then removed E.H. from preschool and "gave her to Hodgin," who returned to California with the child. (See id. ¶ 27). Eisenacher claims not to have known about the California custody case until well after the alleged abduction, when California District Attorney Investigator Matt Broad contacted her in 2019. (See id. ¶ 19).

**\*2** In 2021, five years after it was initially filed, the California family law case was transferred to Judge Holt, who ultimately granted Hodgin full custody over E.H. (See id. ¶¶ 30, 44). Judge Holt was also assigned to a related case in which Eisenacher sought an order of protection

Eisenacher v. Court of Common Pleas of Dauphin County, Slip Copy (2025)

2025 WL 510970

against Hodgin—a request the court purportedly denied without crediting any information offered by Eisenacher; after conducting a hearing via zoom in which Eisenacher and her counsel were muted; and after conspiring with other judges, including Judge Hill, to fraudulently withhold relief. (See id. ¶¶ 33, 36, 43). As a result of these experiences, Eisenacher left San Mateo County California in 2022 and "is terrified to go back." (See id. ¶ 45).

Eisenacher subsequently returned to Pennsylvania and began filing lawsuits of her own, first in Pennsylvania and then in California. In April 2024, Eisenacher filed a case in the Court of Common Pleas for Dauphin County seeking restoration of her parental rights, which was assigned to Judge Engle. (See id. ¶ 49). She then filed a declaratory relief action in California, which was assigned to Judge Burdick. (See id. ¶ 50). Eisenacher claims that Judge Burdick has ignored her legitimate pleas and "plans to move forward with Hodgin's requested hearings" to terminate her parental rights on the basis of abandonment. (See id. ¶ 51).

Eisenacher alleges that Hodgin has sexually and physically abused E.H. for the entire time she has been in his custody. She also claims that Judges Holt, Burdick, and Engle ignored evidence of the abuse she submitted to them—including photographs of physical injuries; previous disclosures of the purported abuse by E.H.; apparent changes in the child's behavior; and lab reports showing seminal fluid on E.H.'s body—and gave Hodgin custody over E.H., anyway. (See id. ¶¶ 31-35 47, 78). Defendants allegedly ignored other evidence that, in Eisenacher's view, demonstrates that Hodgin is not a fit parent. (See id. ¶ 37). Based on the foregoing, Eisenacher advances a single claim pursuant to 42 U.S.C. § 1983 that defendants violated her parental rights under the Fourteenth Amendment's Due Process Clause. (See id. ¶¶ 65-81). She seeks injunctive relief, (See id. ¶¶ 82-90, 99); declaratory relief, (See id. ¶¶ 91-98, 100); and costs and fees, (See id. ¶ 100).

Eisenacher filed the complaint initiating this matter on October 7, 2024, (see Doc. 1), and amended it once with the consent of all parties on December 11, 2024, (see Doc. 21 (granting joint motion to amend complaint); Doc. 22 (amended complaint)). To date, this court has denied two motions for a temporary restraining order against defendants for substantive deficiencies, (see Docs. 5, 32), [2] and has denied defendants' previously-filed motions to dismiss as moot upon the filing of the amended complaint, (see Doc. 23). Defendants now move to dismiss the amended complaint for lack of personal jurisdiction and, alternatively, for failure to state a claim. [3] (See Doc. 24 (California defendants' motion); Doc. 26 (Pennsylvania defendants' motion)). The motions are fully briefed and ripe for disposition.

[2]    In these orders, the court preliminarily noted that abstention under Younger v. Harris, 401 U.S. 37 (1971), appears to be warranted because (1) "there are ongoing state proceedings that are judicial in nature," (2) those "proceedings implicate important state interests," e.g., child custody, and (3) they "afford an adequate opportunity" for Eisenacher to raise her constitutional claims, see Lazaridis v. Wehmer, 591 F.3d 666, 670 (3d Cir. 2010) (per curiam) (citations omitted). The court further noted that defendants are almost certainly entitled to absolute immunity based upon the conduct alleged, which arises from their official duties in state family court proceedings, see Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006) (per curiam) ("A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts.") (citing Mireles v. Waco, 502 U.S. 9, 12 (1991) (per curiam)).

[3]    Judges Hill, Holt, and Burdick move for dismissal pursuant to both Rules 12(b)(2) and 12(b)(6), (see Doc. 25 at 1), while Judges Morris and Engle move only under Rule 12(b)(6), (see generally Doc. 27).

## II. Legal Standards

**\*3**  Defendants seek dismissal of the amended complaint under Rules 12(b)(2) and 12(b)(6). Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction. See FED. R. CIV. P. 12(b)(2). In ruling on a Rule 12(b)(2) motion, the court must accept the allegations in the complaint as true and draw all reasonable inferences supported by the well-pleaded factual allegations in the plaintiff's favor. See Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992). The court's review is not limited to the face of the pleadings, as consideration of affidavits submitted by the parties is both appropriate and required. See Carteret Sav. Bank, 954 F.2d at 146.

Although the plaintiff bears the ultimate burden of proving personal jurisdiction over a defendant, see Mellon Bank (East) PSFS Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 21 of 49
Eisenacher v. Court of Common Pleas of Dauphin County, Slip Copy (2025)
2025 WL 510970

Cir. 1992), the plaintiff need not make such a showing at the pleading stage of litigation, see Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). To survive a motion to dismiss, the plaintiff must merely allege sufficient facts to establish a *prima facie* case of jurisdiction over the defendant. See id.; Carteret Sav. Bank, 954 F.2d at 142 n.1. When claims of jurisdiction are not clearly frivolous, courts ordinarily allow jurisdictional discovery. See Metcalfe, 566 F.3d at 335-36 (citing Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 362 (3d Cir. 1983)).

In addition, Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker, 292 F.3d at 374 n.7).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the ... claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' " Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. Discussion

Defendants seek dismissal of the amended complaint on at least four independent bases. (See Docs. 25, 26). The court finds that two of these grounds—Younger abstention and absolute judicial immunity for official acts—provide sufficient, independent, and alternative reasons to dismiss the amended complaint without the need for any discovery. Each is discussed in turn below.

#### A. Younger Abstention

**\*4** Lower federal courts must abstain from hearing a case where: (1) "there are [parallel and] ongoing state proceedings that are judicial in nature," (2) those "proceedings implicate important state interests," and (3) they "afford an adequate opportunity" for the federal plaintiff, here Eisenacher, to raise her constitutional claims. See Lazaridis, 591 F.3d at 670 (citations omitted). Each of these three prerequisites is met on the face of the amended complaint. First, Eisenacher explicitly states that the state-court custody proceedings regarding E.H. are ongoing; she even requests that those proceedings be enjoined—a request that would be unnecessary if the state judicial process had already completed. (See Doc. 22 ¶¶ 86-89). Second, the issue involved in the case—child custody—implicates important state interests. See, e.g., Mikhail v Kahn, 991 F. Supp. 3d 596, 628 (E.D. Pa. 2014) (collecting cases holding that child custody proceedings implicate important state interests for purposes of Younger abstention) (citing, *inter alia*, Lazaridis, 591 F.3d at 671 & n.5), aff'd, 572 F. App'x 68 (3d Cir. 2014) (nonprecedential). Lastly, Eisenacher's amended complaint describes multiple opportunities she had to air her constitutional claims in state court. (See Doc. 22 ¶¶ 33, 36-37, 43, 51). That she is dissatisfied by defendants' respective responses to the information she presented to them directly undermines Eisenacher's claim that she did not have an adequate opportunity to present her constitutional arguments.

Moreover, the factual material in Eisenacher's amended complaint does not support her argument that the bad-faith exception to Younger applies under the circumstances alleged. (See Doc. 23 at 2-3); see also Younger, 401 U.S. at 48-54 (discussing Dombrowski v. Pfister, 380 U.S. 479 (1965), and holding that lower courts need not abstain under Younger if plaintiff demonstrates that state-court proceedings were initiated in bad faith or that other extraordinary circumstances exist). To show that this escape valve applies in these circumstances, Eisenacher must plead facts showing that defendants displayed such bias that abstention risks her due process right to a fair adjudication in state court. Mikhail, 991 F. Supp. 2d at 631 (quoting Brooks v. N.H. Sup. Ct., 80 F.3d 633, 640 (1st Cir. 1996)). The amended complaint merely asserts dissatisfaction with credibility determinations

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 22 of 49
Eisenacher v. Court of Common Pleas of Dauphin County, Slip Copy (2025)
2025 WL 510970

made by state courts, not bad faith on the part of defendants or other extraordinary cause. (See Doc. 22 ¶¶ 7, 9, 10, 21, 31-35, 47, 51). The allegations that Hodgin initiated the proceeding using falsified documents, (See id. ¶¶ 7, 9-10), do not demonstrate that any defendant, as a state actor, behaved in bad faith. The amended complaint must be dismissed under Younger. See Mikhail, 991 F. Supp. 3d at 626-27 (noting that abstention would warrant dismissal of Section 1983 action when underlying state court proceeding was child custody dispute) (quoting Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 70 (2013)).

### B. Judicial Immunity

The amended complaint must also be dismissed for a second, independent reason: each of the remaining defendants is entitled to absolute judicial immunity for the conduct alleged. Judicial officers are afforded absolute immunity from civil liability arising from their official duties. See Azubuko, 443 F.3d at 303 (citing Mireles, 502 U.S. at 12). This immunity attaches even if the defendant judge acts in error, maliciously, or in excess of their authority; to succeed, a plaintiff must establish that the defendant "acted in the clear absence of all jurisdiction." See id. (quoting Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (internal quotation marks omitted)). It also exculpates judicial officers from personal-capacity claims, so long as the complaint is predicated on official actions. See O'Callaghan v. Hon. X, 661 F. App'x 179, 182-83 & n.4 (3d Cir. 2016) (nonprecedential) (affirming denial of leave to amend complaint to add personal-capacity claims against state judicial officer because district court determined that claims came within officer's judicial immunity, and emphasizing that state judicial officers are not persons subject to suit under Section 1983) (citing Callahan v. City of Philadelphia, 207 F.3d 668, 673-74 (3d Cir. 2000)).

Our court of appeals has set forth a two-step inquiry to assess claims of judicial immunity. First, a judge is immune only for judicial acts, i.e., actions that, by their nature, are "normally performed by a judge." See id. at 182 (citing Gallas v. Sup. Ct. of Pa., 211 F.3d 760, 768 (3d Cir. 2000)). Second, a judicial officer may be liable for acts taken in the complete absence of jurisdiction, but remains immune from claims based upon acts that are simply in excess of their authority. See id. Allegations that a defendant conducted informal ex parte proceedings are insufficient, see Forrester v. White, 484 U.S. 219, 227 (1988); and even allegations of "grave procedural errors" or unfair or controversial decision-making cannot overcome a judicial-immunity defense, see Stump, 435 U.S. at 359; see also Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)). In

addition, our court of appeals has explained that " 'injunctive relief shall not be granted' in an action brought against 'a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable.' " See Azubuko, 443 F.3d at 304 (quoting 42 U.S.C. § 1983).

**\*5** Here, Eisenacher's claims for injunctive relief are barred because she has not plausibly alleged that a declaratory decree was violated or that declaratory relief is unavailable under the circumstances; in fact, she even requests declaratory relief in her amended complaint. (See Doc. 22 ¶¶ 91-98, 100). And defendants are immune from each of Eisenacher's remaining claims because they relate only to actions or omissions that fall within the scope of the defendants' judicial duties and that were not taken in the clear absence of jurisdiction. Eisenacher's vague allegations that defendants "acted in complete excess of jurisdiction" are, for one, conclusory and need not be credited because they simply reiterate the required element of a claim. (See, e.g., Doc. 22 ¶¶ 21, 23, 33, 71, 75, 77, 79); Twombly, 550 U.S. at 545. The amended complaint does, however, list several informal ex parte hearings and discussions, both between defendants and Hodgin and between defendants themselves. (See id. ¶¶ 19, 21, 23, 25, 27, 31-35, 47, 51, 78). But, as previously noted, judicial officers do not forfeit absolute immunity by conducting informal ex parte hearings, see Stump, 435 U.S. at 359, and consulting with other jurists on a case is something judges normally do and is therefore a judicial function for present purposes, see O'Callaghan, 661 F. App'x at 182 (citation omitted). That defendants allegedly made poor credibility determinations when accepting fraudulent documentation associated with a lawsuit is no more than an allegation of "grave procedural error[ ]," and does not demonstrate the clear absence of all jurisdiction. See Stump, 435 U.S. at 359. The amended complaint is dismissed for failure to plead facts demonstrating that Eisenacher's claims are outside the scope of defendants' judicial immunity.

### C. Leave to Amend

Defendants seek dismissal with prejudice. (See Doc. 25 at 1; Doc. 27 at 11). Under Federal Rule of Civil Procedure 15, leave to amend should be freely given "when justice so requires." FED. R. CIV. P. 15(a)(2). Rule 15 aims to offer the "maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." United States v. Thomas, 221 F.3d 430, 435 (3d Cir. 2000) (quotation omitted). In the seminal case of Foman v. Davis, 371 U.S. 178 (1962), the Supreme Court of the United States provided

2025 WL 510970

guidance for when leave to amend may be denied. The circumstances that weigh against granting leave include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility. Foman, 371 U.S. at 182. Amendment is considered futile if the pleading, "as amended, would fail to state a claim upon which relief could be granted." *In re* Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted).

Leave to amend is unwarranted for two reasons. First, amendment would be futile because the deficiencies identified with the amended complaint are legal in nature and cannot be resolved by way of a curative amendment. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Second, Eisenacher has been on notice of the problems Younger abstention and judicial immunity doctrines pose for her case since the court rejected her first motion for a temporary restraining order on October 8, 2024. (See Doc. 5). Although she has amended her complaint once since then, (see Doc. 22), she has not cured those fundamental deficiencies.

## IV. Conclusion

The court will grant defendants' motions to dismiss the amended complaint with prejudice. An appropriate order shall issue.

## All Citations

Slip Copy, 2025 WL 510970

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 24 of 49

Eustice v. Louisiana Through Board of Supervisors of..., Not Reported in Fed....

2020 WL 12432041

2020 WL 12432041
Only the Westlaw citation is currently available.
United States District Court, M.D. Louisiana.

Christopher D. EUSTICE
v.
State of LOUISIANA THROUGH the BOARD
OF SUPERVISORS OF LOUISIANA STATE
UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE, et al.

CIVIL ACTION NO. 18-1008-SDD-RLB
|
Signed 02/03/2020

**Attorneys and Law Firms**

Christopher D. Eustice, Houston, TX, Pro Se.

Andrew Blanchfield, Keogh, Cox & Wilson, Ltd., John P. Murrill, Lauren Rivera Hadden, Taylor Porter Brooks and Phillips, LLC, Baton Rouge, LA, for State of Louisiana through the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, Fieldon King Alexander, Bart Thompson, Andrew Palermo.

Andrew Wallace Eversberg, Schutte, Terhoeve, Richardson, Eversberg, Cronin, Judice & B, Baton Rouge, LA, for Megan C. Martter.

Andrew Blanchfield, Keogh, Cox & Wilson, Ltd., John P. Murrill, Taylor, Porter, Brooks & Phillips, Baton Rouge, LA, for Jennie Stewart.

**ORDER**

RICHARD L. BOURGEOIS, JR., UNITED STATES MAGISTRATE JUDGE

**\*1** Before the Court are Plaintiff's Motion to Amend Complaint. (R. Doc. 118). The motion is opposed. (R. Doc. 121).

Plaintiff seeks leave to file a Third Amended Complaint in this action. Plaintiff argues that significant grounds exist to amend his complaint once again because he "will likely have a bill of particulars available shortly after a February 6 2020 hearing that he must attend, that describes the specific allegations being brought against him by the Prosecutor

Anjelica Torrance in detail for the 'Stalking' case." (R. Doc. 118 at 1). The LSU Defendants oppose the motion on the basis that Plaintiff has already asserted a claim in this litigation for malicious prosecution, he has amended his complaint twice already, and the defendants have not yet answered his complaints. (R. Doc. 121 at 1-2).

Under Rule 15(a)(2), after the period for amending as a matter of course elapses, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The rule "evinces a bias in favor of granting leave to amend." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]" *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quotations omitted). The Court may consider several factors when determining whether to grant leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment...." *See Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153 (5th Cir. 1981) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

To the extent Plaintiff seeks leave to amend his complaint, the Court finds that Plaintiff is acting in bad faith and with dilatory motive in seeking leave to amend once again prior to the resolution of the pending dispositive motions before the district judge. Given the record including one amendment already allowed, and Plaintiff's attempt to further delay prosecuting his action, the Court will not grant leave to amend the pleadings again until after resolution of the pending dispositive motions before the district judge.

In addition, it appears that Plaintiff is actually attempting to "supplement" his complaint by setting forth claims occurring after the date of the filing of the original pleading. "[T]he court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). It appears that Plaintiff is seeking leave to add malicious prosecution claims against Ms. Torrance with respect to bill of particulars he has not yet obtained. To the extent Plaintiff is seeking

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 25 of 49

Eustice v. Louisiana Through Board of Supervisors of..., Not Reported in Fed....

2020 WL 12432041

leave to do so, in the exercise of its discretion, the Court declines to allow Plaintiff leave to supplement his Complaint as requested with any such new cause of action against a new defendant.

**\*2** Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion to Amend Complaint (R. Doc. 118) is **DENIED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 12432041

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 26 of 49

Jackson v. Locust Medical, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 2701695

2024 WL 2701695
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Gerard JACKSON, individually and on behalf
of all others similarly situated, Plaintiff,
v.
LOCUST MEDICAL, LLC, Defendant.

No. 4:22-CV-00424
|
Signed May 24, 2024

**Attorneys and Law Firms**

Anthony I. Paronich, Broderick Law, P.C., Hingham, MA, Jeffrey M. Bower, Bower Law Associates, PLLC, State College, PA, for Plaintiff.

Anthony G. De Boef, Faith M. Lucchesi, De Boef Lucchesi & Associates, P.C., State College, PA, for Defendant.

**MEMORANDUM OPINION**

Matthew W. Brann, Chief United States District Judge

**I. BACKGROUND**

 *1 On March 21, 2022, Gerard Jackson, Plaintiff, filed a one-count complaint alleging a violation of the Telephone Consumer Protection Act ("TCPA") against Locust Medical, LLC, Defendant, on behalf of himself and a putative class. [1] The Court then issued a Case Management Order on November 30, 2022 to govern this case. [2] In that Order, the filing of amended pleadings and the joinder of additional parties were to occur by March 31, 2023. [3] Although the Court cancelled later pretrial and trial deadlines on February 23, 2024, [4] that Order did not disturb the finality of any prior deadlines. On February 23, 2024, the Court also permitted Plaintiff an extension to file a motion for class certification. [5]

[1]     See Doc. 1 (Compl.).

[2]     See Doc. 20 (Case Mgmt. Ord.).

[3]     See id.

[4]     See Doc. 30 (Ord. Granting Extension and Canceling Deadlines).

[5]     See id.

Now pending before the Court are Plaintiff's Motion to Amend the Complaint and Motion to Certify Class. [6] Through these motions, Jackson seeks to add George Spadaro, the owner of Locust Medical, as a defendant and to certify a class under Federal Rule of Civil Procedure 23(b)(2). [7] These motions are now ripe for disposition; for the reasons that follow, both the Motion to Amend the Complaint and the Motion to Certify Class are denied.

[6]     See Doc. 31 (Motion to Amend Compl.); Doc. 32 (Motion to Certify Class).

[7]     See id.

**II. DISCUSSION**

**A. Rule 16 Standard**

When seeking to modify a case management order, Federal Rule of Civil procedure 16(b)(4) requires the moving party to establish "good cause" for the amendment. [8] "The touchstone for assessing whether there was good cause to amend a complaint is whether the moving party showed due diligence in bringing their claims." [9] " 'Many courts have recognized that [w]here ... the party knows or is in possession of the information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent.' " [10]

[8]     See Premier Comp Sols., LLC v. UPMC, 970 F.3d 316, 318 (3d Cir. 2020).

[9]     Rogers v. Wilmington Trust Co., No. 21-1473, 2022 U.S. App. LEXIS 5653, at *13-14, 2022 WL 621690, at *6 (3d Cir. Mar. 3, 2022) (citing Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 614 F.3d 57, 84 (3d Cir. 2010)).

[10]    Pegley v. Roles, Civil Action. No. 17-732, 2018 U.S. Dist. LEXIS 65052, at *3-4, 2018 WL 1863024, at *2 (W.D. Pa. Apr. 18, 2018) (quoting Graham v. Progressive Direct Ins. Co., 271 F.R.D. 112, 119 (W.D. Pa. 2015)).

**B. Rule 15 Standard**

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 27 of 49

Jackson v. Locust Medical, LLC, Not Reported in Fed. Supp. (2024)
2024 WL 2701695

Federal Rule of Civil Procedure 15(a)(2) requires the court to "freely give leave [to amend] when justice so requires."[11] This is a "liberal standard."[12] Under Rule 15(a), "[a] district court may deny leave [to amend] upon finding undue delay, bad faith, prejudice to the opposing party, or futility."[13] " 'The function of Rule 15(a) ... is to enable a party to assert matters that were overlooked or were unknown at the time the party interposed the original complaint.' "[14]

[11]   *Premier*, 970 F.3d at 318.

[12]   *Id.* at 319.

[13]   *Rogers*, 2022 WL 621690, at *6, 2022 U.S. App. LEXIS 5653, at *13 (citing *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006)).

[14]   *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (quoting 6 C. Wright & A. Miller, *Federal Practice and Procedures* § 1473 (3d ed. 2019)).

### C. Rule 23 Standard

**\*2**  "A party seeking class certification must satisfy the four requirements of Rule 23(a), as well as the requirements of either Rule 23(b)(1), (b)(2), or (b)(3)."[15] Rule 23(a) requires: "(1) the class must be so numerous that joinder of all members is impracticable (numerosity); (2) there must be questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties must be typical of the claims or defense of the class (typicality); and (4) the named plaintiffs must fairly and adequately protect the interests of the class (adequacy of representation, or simple adequacy)."[16] "Rule 23 is not a pleading standard; each requirement must be 'satisf[ied] through evidentiary proof.' "[17]

[15]   *Ferrerras v. Am. Airlines, Inc.*, 946 F.3d 178, 182 (3d Cir. 2019) (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 n.6 (3d Cir. 2008)).

[16]   *Id.* (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590-91 (3d Cir. 2012)).

[17]   *KHS Corp. v. Singer Fin. Corp.*, Civil Action No. 16-55, 2018 U.S. Dist. LEXIS 143337, at *6, 2018 WL 4030699, at *3 (E.D. Pa. Aug. 23, 2018)

(quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013)).

"Assuming a plaintiff can show that all of those conditions exist, the requirements of Rule 23(b) come into play."[18] "To satisfy Rule 23(b)(2), [Jackson] then had to show that [Defendant] 'has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.' "[19]

[18]   *Ferrerras*, 946 F.3d at 183.

[19]   *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 894 (3d Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)).

### D. Factual Background

Jackson has known that George Spadaro is the owner of Locust Medical since at least January 19, 2022.[20] Over the course of Spadaro's deposition in April 2023, it was revealed that the third-party vendor, Central Tact, LLC ("Central Tact"), which Locust Medical used to place telemarketing calls had "abruptly cut off communication" with him.[21] From May to August 2023, Jackson sought third party discovery from Central Tact in an attempt to acquire its call records and to add it to this suit.[22] Based on these efforts, Plaintiff believes that Central Tact is a shell company that is controlled by an Egyptian entity.[23] Following this unsuccessful attempt, in August 2023, Locust Medical "produced its call file of the leads it purchased from Central Tact."[24] This file contained records where sales were actually made.[25]

[20]   *See* Doc. 37 (Brief in Opposition to Motion to Certify Class), Ex. 3 (Plaintiff's Pre-Litigation Demand Letter).

[21]   Doc. 35 (Brief in Support of Motion to Amend Compl.) at 2.

[22]   *See id.*

[23]   *See id.*

[24]   *See id.*

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 28 of 49

Jackson v. Locust Medical, LLC, Not Reported in Fed. Supp. (2024)
2024 WL 2701695

25    *See id.*

The Court has only received a copy of one contract between Locust Medical and Central Tact. [26] In that contract, Defendant imposes a variety of constraints on what leads it would accept, including geographic location, age, and consent. [27] There is no explicit provision requiring adherence to the TCPA, and Defendant did not monitor Central Tact's compliance. [28] Locust Medical also did not maintain any internal procedures to ensure its own compliance with the TCPA. [29] Throughout the pendency of this suit, Defendant has continued to use other third-party vendors in a similar way. [30]

26    *See* Doc. 32 (Motion to Certify Class), Ex. 2 (Marketing Services Agreement).

27    *See id.*

28    *See id.*

29    *See* Doc. 32 (Motion to Certify Class) at 11 (citing Spadaro Dep. ¶¶ 37:8-20).

30    *See* Doc. 35 (Brief in Support of Motion to Amend Compl.) at 3.

### 1. Spadaro's Purported Deception

 **\*3**  In his present motions, Jackson contends that Locust Medical deliberately hid its alleged lack of assets until February 28, 2024. [31] Plaintiff asserts that this lack of assets "was flatly contradicted" by the following four aspects of Spadaro's deposition. [32]

31    *See id.* at 2.

32    *Id.* at 3.

### a. Office Location

First, Spadaro allegedly represented that Defendant had an office in Clinton, West Virginia. [33] Locust Medical notes that this office is its business address, but it is a rental property. [34] In making this distinction, Defendant also observes that "Plaintiff did not ask if the property was owned or rented." [35]

33    *Id.*

34    *See* Doc. 36 (Brief in Opposition to Motion to Amend Compl.) at 7.

35    *Id.*

### b. Walk-in Orders

Next, Plaintiff emphasizes that Spadaro had stated "that individuals can walk into the office to purchase medical supplies and that they 'get a lot of walk-ins' " at its West Virginia location. [36] Defendant responds by acknowledging that members of the public "can order medical supplies in person just as they can on the phone and all such purchases were handled the same way ...." [37] Locust Medical "would place the order with the appropriate supplier who wou[l]d direct mail the goods to the customer, just as occurred" when Jackson ordered medical supplies from Defendant. [38] Further, Spadaro explicitly indicated that 70% of its business could be traced to the telemarketing calls. [39] At no point did Plaintiff ask if Locust Medical "was a retail business ... or if it owned inventory." [40]

36    Doc. 35 (Brief in Support of Motion to Amend Compl.) at 3.

37    Doc. 36 (Brief in Opposition to Motion to Amend Compl.) at 7.

38    *Id.*

39    *See* Doc. 37 (Brief in Opposition to Motion to Certify Class), Ex. 1 (Spadaro Dep.) ¶¶ 34:11-14.

40    Doc. 36 (Brief in Opposition to Motion to Amend Compl.) at 7.

### c. Medicare Licensing

Third, Jackson highlights that Spadaro had asserted that Locust Medical "had appropriate licenses in the United States, including the ability to bill Medicare." [41] Defendant represents that it "does hold appropriate[ ] licenses in the United States[,] including the ability to bill Medicare." [42] In fact, in his Complaint, Jackson averred that Defendant had billed Medicare for the goods he purchased. [43]

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 29 of 49

Jackson v. Locust Medical, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 2701695

[41]    Doc. 35 (Brief in Support of Motion to Amend Compl.) at 3.

[42]    Doc. 36 (Brief in Opposition to Motion to Amend Compl.) at 7.

[43]    *See* Doc. 1 (Compl.) ¶ 27.

### d. Logistical Employees

Finally, Plaintiff argues that Spadaro purposefully created the illusion of a larger operation by implying that Locust Medical employs two logistical employees.[44] In actuality, Spadaro stated that Defendant has only two employees who handle logistics as well as customer service and office management tasks.[45]

[44]    Doc. 35 (Brief in Support of Motion to Amend Compl.) at 3 ("Mr. Spadaro represented that ... [Locust Medical] employs two persons who handle logistics in the United States.").

[45]    *See* Doc. 37 (Brief in Opposition to Motion to Certify Class), Ex. 1 (Spadaro Dep.) ¶¶ 7:9-8:2.

### 2. The Putative Class

Plaintiff contends that there are at least 647 class member victims[46] and that this "list actually underestimates the size of the class because it identifies only those customers ..." that were sold medical products.[47]

[46]    *See* Doc. 41 (Reply Brief in Support of Motion to Certify Class), Ex. 1 (Perrong Decl.) ¶ 16.

[47]    Doc. 32 (Motion to Certify Class) at 8.

### E. Analysis

### 1. Spadaro's Purported Deception

**\*4**    Before determining if Plaintiff may amend his complaint, I take a moment to address Spadaro's purported deception. It is actually Plaintiff's interpretation of Spadaro's deposition testimony that "stretch[es] credulity."[48] After cherry-picking supposed falsities, Plaintiff contends that this "overall obstruction and ball-hiding" cannot be justified by "technically true" statements.[49] But a cursory review of the deposition reveals that Plaintiff has largely misconstrued Spadaro's statements. Perhaps realizing his miscalculation, Jackson backtracks and concludes that the veracity of these statements is ultimately "a red herring that does not bear on the standard for amending a complaint."[50] The reason for this change does not escape the Court's attention.

[48]    Doc. 40 (Reply Brief in Support of Motion to Amend Compl.) at 2.

[49]    *Id.* at 1.

[50]    *Id.*

### 2. Motion to Amend the Complaint

The United States Court of Appeals for the Third Circuit recently "clarif[ied] that when a party moves to amend or add a party after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) ... applies."[51] "A party must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard."[52]

[51]    *Premier*, 970 F.3d at 319.

[52]    *Id.*

Despite this clear direction, neither party addresses Rule 16. This is particularly surprising as both parties acknowledge that the deadline to join additional parties has long passed.[53] Since it is Plaintiff's burden to demonstrate due diligence,[54] I am able to deny this motion on this failure alone.[55] Nevertheless, I am familiar with the underlying facts of this case, and I will apply the standard now for the sake of completeness.

[53]    *See* Doc. 31 (Motion to Amend Compl.) at 1 ("Plaintiff is cognizant of the mandates imposed by Court orders setting scheduling deadlines."); Doc. 36 (Brief in Opposition to Motion to Amend Compl.) ("Plaintiff was well-aware of Spadaro ... but now seeks to add him as an individual defendant ... far outside of the time permitted in the Case Management Order ....").

Jackson v. Locust Medical, LLC, Not Reported in Fed. Supp. (2024)

2024 WL 2701695

54    *See e.g.*, *Dasso Int'l, Inc. v. Moso N. Am., Inc.*, Civil Action No. 17-1574-RGA, 2020 WL 6286768, at \*2, 2020 U.S. Dist. LEXIS 199506, at \*5 (D. Del. Oct. 27, 2020) (citing *Race Tires Am. Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 85 (3d Cir. 2010)).

55    *See e.g.*, *Gap Props., LLC v. Cairo*, No. 19-cv-20117-KM-ESK, 2022 U.S. Dist. LEXIS 246231, 2022 WL 21296064 (D.N.J. Mar. 23, 2022) (Kiel, M.J.); *Severino v. Middlesex Cnty. Prosecutor's Off.*, Civil Action No. 19-19164 (MAS), 2024 WL 1929968, 2024 U.S. Dist. LEXIS 78390 (D.N.J. Apr. 30, 2024) (Bongiovanni, M.J.).

"A moving party has failed to establish due diligence when the record shows that the party was aware of the facts underlying its motion to amend at an earlier time but failed to promptly move to amend." [56] Here, Jackson contends that he was unaware of Locust Medical's apparent lack of assets until February 28, 2024. [57] In reality, he "possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary" to seek leave to amend the complaint far earlier. [58] As Locust Medical correctly notes, Jackson has been aware of Spadaro's existence since at least January 19, 2022 but chose not to name him in this suit. [59] Further, Spadaro's deposition testimony revealed, at least from the Court's point of view, that Locust Medical is a very small operation. [60] Failing to conduct the appropriate follow-up does not excuse Jackson's purported lack of knowledge. [61] It is not this Court's job to rescue Plaintiff from his own strategic choices and lack of diligence.

56    *Assocs. In Med. Toxicology, P.C. v. Emogene Renea Snyder*, Civil No. 1:19-CV-01753, 2021 WL 5750453 at \*1, 2021 U.S. Dist. LEXIS 234601 at \*4 (M.D. Pa. May 3, 2021) (Wilson, J.) (citing *Prince v. Aiellos*, No. 09-CV-05429, 2012 U.S. Dist. LEXIS 71017, 2012 WL 1883812, at \*6 (D.N.J. May 22, 2012)).

57    *See* Doc. 35 (Brief in Support of Motion to Amend Compl.) at 2.

58    *Little Pueblo Inn, LLC v. Stanback, P.C.*, Civil Action No. 20-11233 (RK) (RLS), 2024 U.S. Dist. LEXIS 25610, at \*7, 2024 WL 623872, at \*3 (D.N.J. Feb. 13, 2024) (quoting *Fermin v. Toyota Material Handling, U.S.A., Inc.*, Civ. No. 10-3755,

2012 U.S. Dist. LEXIS 56422, 2012 WL 1393074, at \*3 (D.N.J. Apr. 23, 2012)).

59    *See* Doc. 37 (Brief in Opposition to Motion to Certify Class), Ex. 3 (Plaintiff's Pre-Litigation Demand Letter).

60    Several facts support this suggestion. Most importantly, Locust Medical maintains only one office and it employs only two employees. *See* Doc. 37 (Brief in Opposition to Motion to Certify Class), Ex. 1 (Spadaro Dep.) ¶¶ 7:13-16; 10:24-11:5. Further, its operations are geographically limited. *See id.* ¶¶ 57:1-6.

61    *See Little Pueblo Inn*, 2024 WL 623872, at \*3, 2024 U.S. Dist. LEXIS 25610, at \*7.

**\*5** Although Jackson does not move under Federal Rule of Civil Procedure 19, I will still evaluate whether Spadaro's absence prevents the Court from "accord[ing] complete relief among [the] existing parties" as Plaintiff suggests. [62] Assuming that Spadaro may be held personally liable under Section 217 of the TCPA, [63] his absence does not deprive the Court of the ability to "accord complete relief ...." [64] Spadaro's potential personal liability has no effect on whether Locust Medical may be found liable, nor does it impact the Court's ability to fashion injunctive relief, notwithstanding Jackson's suggestion that this relief is now less effective. Accordingly, I deny the Motion to Amend Complaint.

62    FED. R. CIV. P. 19(a)(1)(A).

63    It is unsettled in the Third Circuit whether corporate officers face personal liability under Section 217 of the TCPA. *See City Select Auto Sales Inc. v. David Randall Assocs.*, 885 F.3d 154, 160 (3d Cir. 2018).

64    Seeing as Plaintiff did not actually move under Rule 19, I limit my analysis to Rule 19(a)(1)(A) as that is the sole argument concerning joinder of required parties before the Court.

### 3. Motion to Certify Class

While Locust Medical challenges Plaintiff's proposed class definition and his ability to meet the requirements of Rule 23(a), I proceed directly to whether Jackson has satisfied Rule 23(b)(2). Rule 23(b)(2) requires "the party opposing the class has acted or refused to act on rounds that apply generally

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 31 of 49

Jackson v. Locust Medical, LLC, Not Reported in Fed. Supp. (2024)
2024 WL 2701695

to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." [65] Despite likely meeting the requirements of 23(a), Jackson cannot certify his proposed class under Rule 23(b)(2).

[65]    FED. R. CIV. P. 23(b)(2).

In *Wal-Mart Stores, Inc. v. Dukes*, [66] "the Supreme Court [of the United States] stated that Rule 23(b)(2) 'does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.' " [67] But the "Supreme Court left open the possibility that monetary awards incidental to injunctive relief may be permissible under Rule 23(b)(2)." [68]

[66]    564 U.S. 338, 131 S. Ct. 2541, 180 L.Ed.2d 374 (2011).

[67]    *Yarger v. ING Bank, Fsb*, 285 F.R.D. 308, 320 (D. Del. 2012) (quoting *Dukes*, 564 U.S. at 360-61, 131 S.Ct. 2541).

[68]    *See id.* (citing *Dukes*, 564 U.S. at 366, 131 S.Ct. 2541).

Although Plaintiff's brief exclusively discusses injunctive relief, the Complaint contains a request for a "reward to Plaintiff and the Class of damages, as allowed by law" in its prayer for relief. [69] I make this observation as it is the Complaint, not Jackson's representations in his subsequent filings, that ultimately controls the relief available to Plaintiff and the putative class. [70]

[69]    Doc. 1 (Compl.) at 8.

[70]    *See e.g.*, *Michel v. Workrise Techs. Inc.*, No. 1:21-CV-00681-LY, 2023 U.S. Dist. LEXIS 62163, 2023 WL 2874445 (W.D. Tex. Apr. 10, 2023).

In the face of this request for statutory damages under the TCPA, it would be improper to certify this class under Rule 23(b)(2). These statutory damages are not incidental to the requested injunctive relief. Despite Jackson's emphasis that Defendant's purported behavior has continued in the face of this lawsuit, "each plaintiff is [still] independently entitled to statutory damages under the TCPA of $500 to $1500." [71] Assuming that the 647 proposed class members each received only one call in violation of the TCPA and that they were willful violations, [72] that would lead to damages of nearly a million dollars. Given Jackson's repeated assertion that there are actually in fact thousands of potential class members, [73] this "strongly suggest[s] this is a case driven by money, not equitable relief." [74] Further, these damages are not "capable of 'mechanical' 'computation' " [75] and would instead require the very individualized reward of monetary damages the Supreme Court disavowed in *Dukes*. [76] Finally, I note that other courts have reached the same conclusion when faced with this question at various stages of litigation. [77] Plaintiff's motion for class certification is therefore also denied.

[71]    *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 579 (S.D. Cal. 2013).

[72]    As currently presented to the Court, it seems that there is a strong likelihood that Defendant would be found to have "willfully or knowingly" violated the TCPA.

[73]    *See* Doc. 32 (Motion to Certify Class) at 8; Doc. 41 (Reply Brief in Support of Motion to Certify Class) at 7, 9.

[74]    *Ung. v. Universal Acceptance Corp.*, 319 F.R.D. 537, 544 (D. Minn. 2017).

[75]    *Zoulek v. Gannett Co.*, Case No. 22-cv-1464-bhl, 2023 U.S. Dist. LEXIS 87109, at *6, 2023 WL 3568359, at *3 (E.D. Wis. May 18, 2023) (quoting *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005)).

[76]    *See e.g.*, *Progressive Health & Rehab Corp. v. Quinn Med., Inc.*, 323 F.R.D. 242 (S.D. Ohio 2017).

[77]    *See e.g.*, *Zoulek*, 2023 WL 3568359, at *3, 2023 U.S. Dist. LEXIS 87109, at *6 (striking class allegations related to certification under Rule 23(b)(2) in a TCPA case); *Wolfkiel v. Intersections Ins. Servs.*, 303 F.R.D. 287, 293 (striking 23(b)(2) class allegations in a TCPA case); *Lyman v. Excel Impact, LLC*, Case No. 23-23767-cv-BLOOM/TORRES, 2024 U.S. Dist. LEXIS 29073, 2024 WL 982562, at *6 (S.D. Fla. Feb. 20, 2024) (Torres, C.M.J.) (recommending 23(b)(2) allegations be struck, in part, due to monetary damages being the "predominant, not incidental form of relief" in a TCPA case); *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 516 (E.D. Wis.

2024 WL 2701695

2014) (denying certification under Rule 23(b)(2) in a TCPA case); *Ung, 319 F.R.D. at 544* (denying motion to certify a 23(b)(2) class due to, in part, the individualized damages available under the TCPA); *Fisher v. MJ Christensen Jewlers, LLC,* Case No. 2:15-cv-000358-RFB-NJK, 2018 U.S. Dist. LEXIS 36048, 2018 WL 1175215 (D. Nev. Mar. 6, 2018) (denying Rule 23(b)(2) certification due to, in part, the statutory damages requested under the TCPA); and *Cabrera v. Gov't Emples. Ins. Co.,* Case No. 12-61390-CIV-WILLIAMS, 2014 U.S. Dist. LEXIS 197169, 2014 WL 11894430 (S.D. Fla. Sept. 26, 2014) (denying certification of

a Rule 23(b)(2) class due to the request for statutory damages under the TCPA).

### III. CONCLUSION

**\*6** For the reasons discussed above, Plaintiff's Motion to Amend Complaint and Motion to Certify Class are both denied.

An appropriate Order follows.

### All Citations

Not Reported in Fed. Supp., 2024 WL 2701695

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Katz v. CrossCountry Mortgage, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 16950481

2022 WL 16950481
Only the Westlaw citation is currently available.
United States District Court, N.D. Ohio.

Sam KATZ, Plaintiff,
v.
CROSSCOUNTRY MORTGAGE, LLC, Defendant.

Case No. 1:22-CV-00925
|
Signed November 15, 2022

**Attorneys and Law Firms**

Bryan A. Reo, Reo Law, Mentor, OH, for Plaintiff.

Austin M. Richards, Kevin W. Kita, Cleveland, OH, for Defendant.

**MEMORANDUM OPINION AND ORDER**

PAMELA A. BARKER, UNITED STATES DISTRICT JUDGE

**\*1** This matter comes before the Court upon the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) of Defendant CrossCountry Mortgage, LLC ("Defendant" or "CrossCountry") filed on September 12, 2022 ("Defendant's Motion"). (Doc. No. 33.) Plaintiff Samuel Katz ("Plaintiff") filed a Brief in Opposition on October 11, 2022 ("Plaintiff's Opposition") (Doc. No. 35) to which Defendant replied on October 25, 2022 ("Defendant's Reply") (Doc. No. 36).

For the following reasons, Defendant's Motion is GRANTED.

**I. Background**

**A. Factual Allegations**
Plaintiff's First Amended Complaint ("FAC") sets forth the following allegations. Plaintiff is a natural person domiciled in Arkansas. (Doc. No. 32, ¶ 2.) Defendant is a business headquartered in Ohio. (*Id.* at ¶ 3.) At all times relevant to the FAC, Plaintiff maintained a telephone within the meaning of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), and Plaintiff is charged when he receives a call to that telephone. (*Id.* at ¶ 7.) Plaintiff listed his telephone number on the National Do Not Call Registry in November 2020. (*Id.* at ¶ 8.)

Using an Automated Telephone Dialing System ("ATDS"), "Defendant collectively made multiple calls per week, beginning in 2019 and continuing into 2022, to Plaintiff's telephone." (*Id.* at ¶ 9.) Some of the calls involved "artificial pre-recorded voices while other calls routed to possible human operators after a perceptible delay." (*Id.* at ¶¶ 10, 11; *see also id.* at ¶ 20.) "Many calls were directly made by Defendant and Defendant identified itself or the call resulted in a direct routing to Defendant," while "[o]ther calls made by Defendant's agents resulted in 'live transfers' to Defendant." (*Id.* at ¶¶ 18, 19.) "Plaintiff received some calls that resulted in the receipt of voicemails left by Defendant. When Plaintiff returned the call and called the number(s) in question, he directly reached Defendant[.]" (*Id.* at ¶ 21.) On July 24, 2019, "Plaintiff told Defendant, 'place me on your do not call list.' " (*Id.* at ¶ 16.)

These calls were "intrusive, harassing, obnoxious, annoying, and unwanted." (*Id.* at ¶ 13.) Plaintiff did not have a relationship with Defendant and never provided Defendant with express or implied consent for Defendant to call Plaintiff's telephone, nor did Plaintiff ever provide Defendant or Defendant's affiliates with his telephone number. (*Id.* at ¶¶ 14, 22.) According to Plaintiff, as of February 25, 2022, "there is no record with the State of Ohio Office of the Attorney General that the Defendant is licensed and registered to engage in telephone solicitation within the state of Ohio." (*Id.* at ¶ 23.)

**B. Procedural History**
On June 2, 2022, Plaintiff filed a complaint in this Court against CrossCountry, as well as against Defendants Federal Savings Bank, Caliber Home Loans, Inc., LoanDepot.com, LLC, Allied First Bank, and Perry Johnson Mortgage Company. (Doc. No. 1.) On June 27, 2022, CrossCountry filed a motion to dismiss, or in the alternative, motion to sever Plaintiff's claims, and on June 27, 2022 and July 15, 2022, respectively, Defendants Perry Johnson Mortgage Company, Allied First Bank, and Federal Savings Bank filed motions to dismiss. (Doc. Nos. 3, 4, 7, 26, respectively.) On July 22, 2022, Plaintiff filed a Notice of Dismissal under Fed. R. Civ. P. 41(a)(1) as to Defendants Federal Savings Bank, Caliber Home Loans, Inc., LoanDepot.com, LLC, Allied First Bank, and Perry Johnson Mortgage Company. (Doc. No. 28.) On July 25, 2022, the Court entered a Marginal Order dismissing these Defendants from the case, leaving CrossCountry as the sole remaining Defendant. (Doc. No. 29.) On August 17, 2022, Plaintiff filed a Motion for Leave to File an Amended

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 34 of 49

Katz v. CrossCountry Mortgage, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 16950481

Complaint ("Plaintiff's Motion"). (Doc. No. 30.) In Plaintiff's Motion, he asserted that the amended complaint "would likely cure any of the alleged pleading deficiencies that served as the basis of Defendant's motion to dismiss." (*Id.* at 2.) On August 23, 2022, CrossCountry filed a Response to Plaintiff's Motion indicating that it did not oppose it. (Doc. No. 31.) On August 25, 2022, the Court granted Plaintiff's Motion. (Aug. 25, 2022 non-doc. Order.)

**\*2** On August 27, 2022, Plaintiff filed his First Amended Complaint against Defendant alleging four causes of action: (1) statutory violations of the TCPA, 47 U.S.C. § 227(b)(3) (Count I); (2) statutory violations of the TCPA, 47 U.S.C. § 227(c)(5) (Count II); (3) statutory violations of the Ohio Consumer Sales Practices Act ("CSPA"), Ohio Rev. C. §§ 1345.01, *et seq.* (Count III); and (4) statutory violations of the Ohio Telephone Solicitation Sales Act ("TSSA"), Ohio Rev. C. §§ 4719.01, *et seq.* (Count IV). Defendant filed the instant Motion to Dismiss on September 12, 2022 (Doc. No. 33), which Plaintiff opposed on October 11, 2022 (Doc. No. 35), and Defendant replied on October 25, 2022 (Doc. No. 36). Defendant's Motion is ripe for decision.

## II. Standard of Review

Defendant moves to dismiss Plaintiff's FAC for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(6), the Court accepts Plaintiff's factual allegations as true and construes the FAC in the light most favorable to Plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.' " *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the FAC raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.' " *Bassett v. Nat. Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for

relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." ' " *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## III. Analysis

Defendant argues that Plaintiff's FAC "employs a 'shotgun-style' pleading that merely parrots the language of the TCPA," and thus, fails to state a claim for which relief can be granted. (Doc. No. 33 at 2.) Defendant argues that "Plaintiff makes no factual allegations regarding, *inter alia*: (1) the nature of any call, i.e. the goods or services being solicited; (2) the identity of the 'lead generator' or his/her relationship to [Defendant]; [ ] (3) any benefits [Defendant] received from Plaintiff as a result of any alleged call"; or (4) when Defendant "supposedly called his telephone number, or even how many times they called in any given year." (*Id.* at 3.)

**\*3** Plaintiff argues that he "has stated sufficient facts to demonstrate a plausible entitle[ment] to relief, or could do so via amendment if the First Amended Complaint has not done so." (Doc. No. 35 at 2.) Plaintiff argues that Defendant's Motion is, in fact, a motion for summary judgment seeking to resolve factual disputes and adjudicate claims, when, at this stage, Plaintiff's claims are properly pled to survive dismissal. (*Id.* at 4.)

### A. Count I—Statutory Violations of the TCPA, 47 U.S.C. § 227(b)(3)

As to Count I, Defendant asserts that the FAC fails to meet the pleading standard as "[t]here are no factual allegations that would support a conclusion that any call from [Defendant] employed an 'artificial or prerecorded voice'– i.e., an inability to interrupt a message or to talk with a human being," as required. (Doc. No. 33 at 5-6.) According to Defendant,

Katz v. CrossCountry Mortgage, LLC, Not Reported in Fed. Supp. (2022)
2022 WL 16950481

Plaintiff's FAC "concedes whatever calls are alleged to be at issue were made by human beings, alleging he spoke with a 'lead generator' who then transferred him and his information to a 'possible human operator.' " (*Id.* at 6 (quoting Doc. No. 32, ¶¶ 11, 19).) Finally, as to Count I, Defendant asserts that Plaintiff's only allegation supporting his conclusion that Defendant employed an automatic telephone dialing system ("ATDS") was based on Plaintiff experiencing a "perceptible delay" on the call, and Plaintiff has failed to provide an explanation as to how the alleged delay substantiated a conclusion that the call was made using an ATDS. (*Id.* at 6-7.)

Plaintiff maintains that he has sufficiently met the pleading requirements to state a claim under the TCPA. (Doc. No. 35 at 3-4.) Plaintiff asserts that he "is not required to give an account of each syllable, supported with an attached expert report attesting to the artificial nature and quality of the voice," to adequately plead that Defendant used an ATDS. (*Id.* at 4.) Rather, Plaintiff argues that his allegations "that on some calls there was a perceptible delay from his answering the call and saying 'hello' and the call engaging or the Defendant (or its agents) otherwise coming on the call," and that "at least some calls consisted of artificial pre-recorded voices," are "sufficient for pleading purposes at this stage." (*Id.* at 3-4.)

The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). "The TCPA defines an ATDS as equipment that has the capacity to store telephone numbers and dial such numbers." *Reo v. Caribbean Cruise Line, Inc.*, 2016 WL 1109042, at *3 (N.D. Ohio Mar. 18, 2016) (citing 47 U.S.C. § 227(a)(1)). Thus, to state a claim under the TCPA, Plaintiff must allege that Defendant (1) made a call, (2) using an ATDS or artificial or prerecorded voice, (3) to a telephone number assigned to a cellular telephone service, (4) absent the prior express consent of the Plaintiff. *See id.* at *4; *see also Seri v. CrossCountry Mortg.*, 2016 WL 5405257, at *2 (N.D. Ohio Sept. 28, 2016).

Plaintiff is also required to make "some additional factual allegations, no matter how minor, in addition to parroting the language of the statute," to sufficiently allege that Defendant utilized a prerecorded or artificial voice or used an ATDS system. *Caribbean Cruise Line*, 2016 WL 1109042, at *4; *see also Johansen v. Vivant, Inc.*, 2012 WL 6590551, at

*3 (N.D. Ill. Dec. 18, 2012) ("It is not unreasonable [ ] to require a plaintiff to describe the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were pre-recorded or delivered via the ATDS."). As the court in *Johansen* explained:

> **\*4** [A] plaintiff must supply enough additional, independent facts "to raise a reasonable expectation that discovery will reveal evidence" of the alleged misconduct. *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. For example, a TCPA plaintiff could describe the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the "person" calling him, the generic content of the message he received, or anything else about the circumstances of a call or message contributing to his belief it was pre-recorded or delivered via an ATDS.
>
> ...
>
> This approach does not burden plaintiffs unduly by requiring pleading of technical details impossible to uncover without discovery, rather it necessitates that they plead only facts easily available to them on the basis of personal knowledge and experience. At the same time, it gives fair notice to defendants by "distinguish[ing] the particular case that is before the court from every other hypothetically possible case" under TCPA, *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir.2010), and avoids the potential abuse of the discovery process to pressure defendants into settling weak cases. *See Twombly*, 550 U.S. at 559, 127 S.Ct. at 1967; *Swanson*, 614 F.3d at 405. This approach balances the requirements of liberal pleading for plaintiffs and fair notice to defendants underpinning our legal system.

*Johansen*, 2012 WL 6590551, at *3.

In support of its argument that Plaintiff's FAC does not include sufficient allegations that Defendant used an ATDS or artificial or prerecorded voice in its alleged calls to Plaintiff, Defendant cites to *Reo*, where another court in this district granted the defendant's motion to dismiss when the complaint "contain[ed] very few factual allegations and merely parrot[ed] the statutory elements of Plaintiffs' TCPA claims, thus failing to meet the pleading standard set forth in *Twombly*." *Reo*, 2016 WL 1109042, at *3-4. In describing the complaint at issue therein, the court noted:

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 36 of 49
Katz v. CrossCountry Mortgage, LLC, Not Reported in Fed. Supp. (2022)
2022 WL 16950481

There is no description of the content of the calls (or texts) and no information regarding the frequency of the calls or why they believed that an ATDS was used or why they believed that an "artificial or prerecorded voice" was used such as a period of "dead air" after answering a call or the inability to interrupt a message or to talk to a human being.

*Id.* at *4. Plaintiff does not attempt to distinguish *Reo* from this matter, and he does not cite any case law in support of his argument.

In his FAC, Plaintiff alleges that Defendant used an ATDS as evidenced by "the perceptible delay and manner in which the Plaintiff's information is transferred between the lead generator and the party the Plaintiff is transferred to," and by "some of the calls having delivered artificial pre-recorded voice messages." (Doc. No. 32, ¶ 11.) Plaintiff provides no other factual allegations to support his claim that Defendant used an ATDS or artificial or prerecorded voice.

Besides the allegation of a "perceptible delay," Plaintiff merely parrots the language of the statute. Like the complaint in *Reo*, Plaintiff's FAC does not include a description of the content of the calls or information regarding the frequency of the calls. *See Reo*, 2016 WL 1109042, at *4. As to Plaintiff's bare assertion that a "perceptible delay" occurred between a "lead generator" and "the party the Plaintiff is transferred to" (Doc. No. 32, ¶ 11), Plaintiff offers no details regarding the alleged delay Plaintiff experienced, including what occurred before or after the delay, nor does Plaintiff offer any description of the "manner" by which the calls were transferred. The allegation that an ATDS was used based on "the perceptible delay and manner in which Plaintiff's information is transferred," is insufficient to state a claim.

**\*5** Further, and importantly, Plaintiff does not offer any factual allegations as to the identities of the lead generator or transferee. Plaintiff does not allege that Defendant, or Defendant's agent, was the "lead generator," nor does Plaintiff identify "Defendant's agents." (*See id.* at ¶¶ 11, 19.) District courts within the Sixth Circuit have dismissed TCPA claims when the plaintiff fails to allege sufficient facts demonstrating

liability for the actions of third parties. *See Reo*, 2016 WL 1109042, at *5 (dismissing plaintiffs' TCPA claims for failure to allege facts establishing vicarious liability of defendant for actions of third party); *see also Cunningham v. Kondaur Cap.*, 2014 WL 8335868, at *6-8 (M.D. Tenn. Nov. 19, 2014) (granting defendant's motion to dismiss because plaintiff failed to allege facts sufficient to hold defendant directly or vicariously liable for the alleged TCPA violations). Here, Plaintiff has failed to allege direct or vicarious liability inasmuch as he has failed to identify the source of these calls.

Without more, these allegations fail to plausibly state a claim that Defendant used an ATDS or artificial or prerecorded voice as required to state a claim under the TCPA.

### B. Count II—Statutory Violations of the TCPA, 47 U.S.C. § 227(c)(5)

As to Count II, Defendant argues that Section 227(c)(5) only provides a private right of action for a person who has received more than one telephone call in violation of the TCPA within a 12-month period. According to Defendant, Plaintiff fails to state a claim for which relief may be granted because Plaintiff has failed to allege when Defendant called him, whether any calls were made after Defendant registered his number on the National Do-Not-Call Registry in November 2020, and any facts to substantiate an allegation that Defendant made more than one call to Plaintiff within any 12-month period. (Doc. No. 33 at 8.)

In response to what he characterizes as Defendant's argument that his claims are threadbare recitals of the relevant statutes, Plaintiff asserts that his FAC includes allegations that (1) his number was put on the National Do-Not-Call Registry in November 2020; (2) Defendant called him throughout 2019 and into 2022; and (3) he made a specific request on July 24, 2019 to be placed on Defendant's internal Do-Not-Call list. (Doc. No. 35 at 5-6.) What Plaintiff fails to do is point this Court to any part of his FAC that includes an allegation that Defendant made more than one call to him within any twelve-month period of time, much less within the twelve-month period of time following his request to be put on the National Do-Not-Call Registry in November 2020.

47 U.S.C. § 227(c)(5) reads:

A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 37 of 49

Katz v. CrossCountry Mortgage, LLC, Not Reported in Fed. Supp. (2022)
2022 WL 16950481

of court of a State bring in an appropriate court of that State —

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

47 U.S.C. § 227(c)(5).

The regulations restricting telephone solicitation are found in 47 C.F.R. § 64.1200(c)(2), which provides in relevant part:

(c) No person or entity shall initiate any telephone solicitation to:

...

(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government ....

47 C.F.R. § 64.1200(c)(2). The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15).

**\*6** Not only does Plaintiff's FAC fail to allege that Defendant made more than one call to him within a 12-month time frame after Plaintiff joined the National Do-No-Call Registry in November 2020, as required by 47 U.S.C. § 227(c)(5), but it also fails to allege or identify how many times he was called by Defendant in any given year. Plaintiff's sole allegation is that Defendant "*collectively* made multiple calls per week, beginning in 2019 and continuing into 2022" to Plaintiff's phone. (Doc. No. 32, ¶ 9 (emphasis added.) By using the term "collectively," Plaintiff is grouping the calls from 2019 through 2022 together, and by doing so, fails to specify the number of calls that allegedly took place each year. Because section 227(c)(5) only provides a private right of action for a person who has received more than one telephone call in violation of the TCPA within a 12-month period, Plaintiff's FAC does not sufficiently allege a violation of the TCPA.

Further, Plaintiff fails to allege that such phone calls were, in fact, telephone solicitations. Plaintiff's FAC is devoid of any allegations that Defendant initiated these calls "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person," as required by 47 U.S.C. § 227(a)(4). As Defendant points out, Plaintiff's FAC contains no factual allegations as to the "nature of any call, i.e. the goods or services being solicited," nor any factual allegations as to "any benefits [Defendant] received from Plaintiff as a result of any alleged call." (Doc. No. 33 at 3.) Without factual allegations as to the content of these calls, Plaintiff's FAC fails to properly allege that such calls were solicitations under the TCPA.

### C. Counts III and IV—State Law Claims

Counts III and IV of Plaintiff's FAC allege violations of Ohio state law—specifically statutory violations of Ohio's Consumers Sales Practices Act and statutory violations of Ohio's Telephone Solicitation Sales Act. (Doc. No. 32 at 7-10.) Defendant argues that it is exempt from liability under the CSPA and TSSA, and even if it was not, Plaintiff has failed to allege facts that support a violation of either statute. (Doc. No. 33 at 9-14.) Plaintiff argues that Defendant is not exempt from either statute, and has nevertheless adequately alleged facts to support claims of violations of both statutes. (Doc. No. 35 at 8-18.)

The Court need not address either argument. Pursuant to 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over state law claims once they have dismissed all claims over which they had original jurisdiction. "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). However, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). Having disposed of Plaintiff's federal claims and considering the relevant factors, the Court declines to exercise supplemental jurisdiction over any state law claims (Counts III and IV) and dismisses them. *See Shaver v. Brimfield Twp.*, 628 F. App'x 378, 384 (6th Cir. 2015) ("[B]ecause the district court properly dismissed the Estate's federal claims, it did not

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 38 of 49

Katz v. CrossCountry Mortgage, LLC, Not Reported in Fed. Supp. (2022)
2022 WL 16950481

abuse its discretion when it declined to exercise jurisdiction over the Estate's state law claims.").

### D. Leave to Amend and Dismissal with Prejudice

As a final matter, Plaintiff argues that Defendant's Motion should be denied, but "[i]n the alternative[,] Plaintiff would respectfully request leave to file an amended complaint to resolve any alleged pleading deficiencies." (Doc. No. 35 at 19.) Plaintiff further argues that "Defendant is not entitled to the 'dismissal with prejudice' that they seek, because they have not even bothered to allege they are exempt, as a matter of law, from the TCPA, while their reliance on irrelevant case precedent to claim CSPA and TSSA exemptions is simply misplaced." (*Id.*) In its Reply, Defendant argues that when "the plaintiff does not articulate how granting further leave to amend will cure the [pleading] deficienc[ies], dismissal with prejudice is the standard relief." (Doc. No. 36 at 1.)

**\*7** Plaintiff's request for leave to amend is denied since Plaintiff has failed to follow the proper procedure for requesting leave to amend. "[A] bare request in an opposition to a motion to dismiss— without any indication of the particular grounds on which amendment is sought ... does not constitute a motion within the contemplation of Rule 15(a)." *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004)). Indeed, "[a] request for leave to amend 'almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is ... not a motion to amend.' " *Id.* (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000)).

Plaintiff's FAC is dismissed with prejudice. As the Sixth Circuit has explained, "a district court does not abuse its discretion by failing to grant leave to amend where the plaintiff has not sought leave and offers no basis for any proposed amendment." *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 739 F. App'x 330, 335 (6th Cir. 2019) (affirming dismissal with prejudice and without leave to amend when the plaintiff provided no basis for the district court to conclude that an amendment could cure his pleading deficiencies). Relying on *Harper*, another court in this district concluded the same, explaining:

> Plaintiffs request leave to amend their complaint following dismissal

for failure to state a claim without providing so much as a hint as to how a second amended complaint could potentially cure the pleading deficiencies set forth in Defendant's Rule 12(b)(6) motion and identified in the Court's dismissal order. Nor have Plaintiffs in their briefing or by affidavit identified any additional factual allegations that could meet the pleading standard. Accordingly, this Court cannot discern whether a basis to grant leave for a second amendment exists. Under these circumstances, and considering that Plaintiffs already have been granted and availed themselves of one opportunity to amend the original complaint, justice is not thwarted by the Court's dismissal with prejudice of the Amended Complaint and denial of leave to amend.

*Chambers v. Nationwide Mut. Ins. Co.*, 2021 WL 463279, at *2 (N.D. Ohio Feb. 8, 2021).

Plaintiff previously sought leave to amend his original complaint to address deficiencies raised in Defendant's initial motion to dismiss, which Defendant did not oppose, and the Court granted. (Doc. Nos. 30, 31; Aug. 25, 2022 non-doc. Order.) Nevertheless, many of the same deficiencies in Plaintiff's original complaint that Defendant raised or identified in its initial motion to dismiss (*see* Doc. No. 3 at 7-9) remain in Plaintiff's FAC. Like the plaintiff in *Chambers*, Plaintiff fails to identify any additional facts or evidence that he can now allege that would cure those deficiencies. As such, there is no indication that a second amended complaint would survive a motion to dismiss. Thus, "justice is not thwarted by the Court's dismissal with prejudice of the Amended Complaint and denial of leave to amend." *Chambers*, 2021 WL 463279, at *2.

Accordingly, Plaintiff's FAC is dismissed with prejudice without leave to amend.

### IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss (Doc. No. 32) is GRANTED.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 16950481

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 40 of 49

Magness v. Walled Lake Credit Bureau, LLC, Not Reported in Fed. Supp. (2014)

2014 WL 12610218

🚩 KeyCite Yellow Flag

Distinguished by  [Southeastern Pennsylvania Transportation Authority v.](#)
[Orrstown Financial Services, Inc.,](#)  M.D.Pa.,  February 14, 2020

2014 WL 12610218
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Melissa Devin MAGNESS
v.
WALLED LAKE CREDIT BUREAU, LLC, et al.

CIVIL ACTION NO. 12-6586
|
Filed 01/31/2014

**Attorneys and Law Firms**

[Arkady Eric Rayz](#), [Dmitry A. Braynin](#), Kalikhman & Rayz
LLC, Huntingdon Valley, PA, [Gerald D. Wells, III](#), [Robert J.](#)
[Gray](#), Connolly Wells & Gray, LLP, [Michael J. Hynes](#), Hynes
Keller & Hernandez, King of Prussia, PA, for Melissa Devin
Magness.

[Martin C. Bryce, Jr.](#), Ballard Spahr Andrews and Ingersoll,
L.L.P., [Andrew J. Soven](#), [Marc A. Goldich](#), Reed Smith, LLP,
Philadelphia, PA, for Walled Lake Credit Bureau, LLC, et al.

ORDER

[Legrome D. Davis](#), District Judge

**\*1**  AND NOW, this 31st day of January 2014, upon
consideration of Plaintiff's Motion for Leave to File Second
Amended Class Action Complaint (Doc. No. 43), Defendants'
responses thereto (Doc. Nos. 57 & 58), and Plaintiff's reply
(Doc. No. 64), it is hereby ORDERED that the motion is
DENIED.

I. Factual Background [1]

[1]    Unless otherwise noted, the facts, and reasonable
       inferences drawn therefrom, are taken from the
       Amended Complaint. [PG Publ'g Co. v. Aichele,](#)
       [705 F.3d 91, 97 (3d Cir. 2013).](#) Page references
       reflect the page number assigned by ECF.

This is a proposed class action suit. In her Amended
Complaint, Plaintiff Melissa Magness alleges violations

under the Fair Debt Collection Practices Act, [15 U.S.C.](#)
[§§ 1692, et](#) [seq.](#) (FDCPA) (Count I) and the Pennsylvania
Unfair Trade Practices and Consumer Protection Law, 73
Pa. Stat. §§ 201.1, [et seq.](#) (UTPCPL) (Count II). Plaintiff
alleges that Defendants Bank of America, N.A. (Bank of
America) and Walled Lake Credit Bureau, LLC (Walled
Lake) violated Plaintiff's rights under the applicable statutes
by wrongfully informing Plaintiff that her mortgage was
in default, threatening to foreclose on her home, and
harassing her with a number of abusive oral and written
communications. After the close of discovery, Plaintiff filed a
motion seeking leave of the Court to file a Second Amended
Complaint so that she could state claims under the Telephone
Consumer Protection Act of 1991, [47 U.S.C. §§ 227, et](#) [seq.](#)
(TCPA) against Bank of America and Walled Lake, as well
as claims under the FDCPA, UTPCPL, and TCPA against
two new defendants, Urban Settlement Services, LLC d/b/a
Urban Lending Solutions (Urban) and Dialogue Marketing,
Inc. (DMI). (Doc. No. 43, at 2.)

In June 2011, Plaintiff acquired a loan from Bank of America
in order to purchase a home. (Doc. No. 15, at ¶¶ 19-20.)
Thereafter, Bank of America sent Plaintiff regular "mortgage
statements," and Plaintiff made timely, monthly payments on
the mortgage in addition to voluntary contributions towards
the principal of the loan. (Id. ¶¶ 21-23.) Despite remaining
current on her loan, in August 2012, Plaintiff received
a "Borrower Response Package" from Bank of America,
which stated, *inter alia* that: (1) Bank of America did not
receive Plaintiff's "last two regularly scheduled payments";
(2) Plaintiff must "take action on this issue quickly"; and
(3) failure to take action may put Plaintiff "at risk of losing
[her] home to foreclosure." (Id. ¶ 24-29.) The package further
identified Bank of America as a "debt collector" and Walled
Lake as a third party "licensed debt collector" working with
Bank of America. (Id. ¶¶ 33.)

After receiving the Borrower Response Package, Plaintiff
immediately contacted Bank of America, remitted an
additional (and allegedly unnecessary) payment, and received
assurance from Bank of America that all "collection
activity" on Plaintiff's account would cease. (Id. ¶¶ 38-39,
41.) Despite Plaintiff's immediate action and Bank of
America's assurances, Plaintiff continued to receive harassing
phone calls, emails, and additional Borrower Response
Packages. (Id. ¶¶ 41-47.) These communications indicated
that Plaintiff's account with Bank of America was in default
and that Plaintiff was at risk of foreclosure on her home.
(Id.) Plaintiff alleges that these communications came from

Magness v. Walled Lake Credit Bureau, LLC, Not Reported in Fed. Supp. (2014)

2014 WL 12610218

"representatives" of Bank of America and identified Walled Lake as a third party debt collector working with Bank of America. (Id.)

**\*2** In her proposed Second Amended Complaint, Plaintiff seeks to further allege that Bank of America, DMI, and Walled Lake called her cell phone using an auto-dialer in violation of the TCPA. (Doc. No. 43-1, at ¶¶ 54, 78-79, 83-84.) She also seeks to include additional facts by pleading that Urban participated in mailing the Borrower Response Package to Plaintiff. (Id. ¶¶ 10, 56.) These new allegations are made on a class-wide basis. (See, e.g., id. ¶ 55.)

## II. Standard of Review

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Indeed, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). Reasons not to grant leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Id.; see also Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) ("Leave to amend must generally be granted unless equitable considerations render it otherwise unjust."). "The same standard applies when considering a request to add or drop parties." Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654 (3d Cir. 1998), abrogated on other grounds as stated in Forbes v. Eagleson, 228 F.3d 471, 483-84 (3d Cir. 2000).

## III. Discussion

### A. Undue Delay

"[I]n the Third Circuit, [undue delay] carries two meanings." Langbord v. U.S. Dep't of the Treasury, 749 F. Supp. 2d 268, 275 (E.D. Pa. 2010). "The Court may deny leave to amend both when granting leave would unduly postpone the pending litigation *and* when circumstances fail to excuse the moving party's lateness in requesting leave to amend." Id. "[D]elay alone is an insufficient ground to deny leave to amend," however, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become

'prejudicial,' placing an unfair burden on the opposing party." Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001) (citing and quoting Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984)). "Delay may become undue when a movant has had previous opportunities to amend a complaint." Id. Ultimately, in determining if there has been undue delay, a court must focus on a movant's reasons for not amending sooner. Id.

Here, we find that Plaintiff's motion for leave to amend was unduly delayed because she was in possession of the factual underpinnings of the information well before filing her motion to amend. Specifically, Plaintiff waited to file her motion for almost three months after Bank of America disclosed that Plaintiff was called using an autodialer. (See Doc. No. 58, at 10, 16-17.) Also, Plaintiff knew of the existence of Urban when Defendant Walled Lake filed its initial disclosures and when it sent its response to interrogatories on July 18, 2013. (See Doc. Nos. 13 & 57-1, at 7, 15.) Although the initial disclosures would not have put Plaintiff on notice of Urban's alleged involvement in the Borrower Response Packages, Plaintiff should have diligently and efficiently determined whether Walled Lake's parent company, which also interacted with Bank of America and held the contracts for Walled Lake, could be liable to her. (See id.) These delays were undue because, instead of seeking leave to amend while actively engaged in discovery, Plaintiff waited until the eve of the dispositive motions deadline; this delay is also undue because Plaintiff had previously amended her complaint. We are not persuaded by Plaintiff's excuse that she was only on notice of the involvement of Urban and DMI in early October 2013, Doc. No. 43, at 6-9, because it does not account for the documented disclosure of Urban to Plaintiff. Thus, Plaintiff unduly delayed filing her motion. See Furman Lumber v. Mountbatten Sur. Co., No. 96-7906, 1997 U.S. Dist. LEXIS 10120, at \*14-16 (E.D. Pa. July 9, 1997) (finding that the plaintiff unduly delayed filing motion for leave to amend where it had knowledge of the facts underlying the amendment two months before filing motion); Whitman v. Proconex, Inc., No. 08-2667, 2009 WL 113740, at \*3 (E.D. Pa. Jan. 14, 2009) (finding unpersuasive the plaintiff's excuse that she had been slow to recognize the significance of information obtained in discovery); Odyssey Waste Servs. v. BFI Waste Sys., No. 05-1929, 2006 U.S. Dist. LEXIS 63861, at \*5, \*10-11 (E.D. Pa. Sept. 6, 2006) (denying leave to amend where party moved 20 days after the close of discovery and one month after it obtained the information that supported the amendment).

**\*3** Further, we find that granting leave to amend will cause undue delay to this litigation because the proposed Second Amended Complaint would place a burden on the Court and delay the resolution of this matter for Defendants. First, and most importantly, Plaintiff seeks to add a class-wide cause of action under the TCPA against two current defendants and two new defendants. This claim would require significant discovery because the parties would be required to analyze the records of phone calls and correspondence between Bank of America, its affiliates, and consumers to look for consumers who (1) received Borrower Response Packages, (2) revoked their express consent to be contacted about loan modification options, and (3) were called by one of the companies after their express opt-out. This discovery would be a significant undertaking that would likely require months to complete —and all for a claim that Plaintiff knew or should have known that she could present three months prior to filing her motion. Second, the addition of two defendants and one claim at this late stage would require the Court to issue a new scheduling order that would re-open discovery after the already extended discovery period, and it would require the current Defendants to engage in repetitive discovery, such as re-deposing Plaintiff. Capp, Inc. v. Dickson/Unigage, Inc., No. 03-5046, 2004 U.S. Dist. LEXIS 19138, at \*10-11 (E.D. Pa. Sept. 8, 2004) ("In this case, plaintiff seeks to inject completely new claims into the action. On the eve of summary judgment briefing, plaintiff seeks to alter and vastly expand the scope of this action, engage in additional and extensive discovery, and delay proceedings significantly."); cf. Furman Lumber, 1997 U.S. Dist. LEXIS 10120, at \*15 ("The addition of a bad faith claim substantially alters the course on which the instant case has been proceeding.") (discussing prejudice).

### B. Prejudice

To prove prejudice, a defendant must "demonstrate that its ability to present its case would be seriously impaired were amendment allowed." Dole v. Arco Chem. Co., 921 F.2d 484, 488 (3d Cir. 1990). To evaluate prejudice, we focus on the hardship the defendants will face if we grant leave to amend. Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984). Courts in the Third Circuit "have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001).

In this case, we find that granting Plaintiff leave to amend will cause prejudice to Defendants. Defendants Walled Lake and Bank of America relied on Plaintiff's Amended Complaint to conduct the discovery that they did; it would be prejudicial to require these parties to bear the burden, time, and expense of engaging in discovery that will be both repetitive and more expansive because of the nature of the additional claim Plaintiff seeks to bring. Further, Plaintiff seeks to add two new defendants that have not participated in this case over the last year and two months. [2] Plaintiff's late attempt to expand the nature of this proposed class action suit will cause prejudice. See Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 824-25 (3d Cir. 1978) (noting that where one party does not collect evidence in justifiable reliance on the moving party's prior allegations, it is prejudicial to allow amendment); Berger v. Edgewater Steel Co., 911 F.2d 911, 924 (3d Cir. 1990) (affirming denial of motion for leave to amend where "allowing the amendment ... would inject new issues into the case requiring extensive discovery" and the moving party filed its motion to amend "after the close of an extended discovery period"); Rehab. Inst. of Pittsburgh v. Equitable Life Assur. Soc'y of U.S., 131 F.R.D. 99, 102 (W.D. Pa. 1990) ("[I]f the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial." (citation omitted)), aff'd without opinion sub nom. Rehab. Inst. of Pa. v. Equitable Life Assur. Soc'y of U.S., 937 F.2d 598 (3d Cir. 1991); Furman Lumber, 1997 U.S. Dist. LEXIS 10120, at \*16-17 (finding prejudice where non-moving party would need to engage in factual discovery based on broad new claim); Cummings v. City of Phila., No. 03-0034, 2004 U.S. Dist. LEXIS 9030, at \*8, \*12-13 (E.D. Pa. Apr. 26, 2004) (denying leave to amend where "[the] third warrant ... is mentioned only once in the Amended Complaint and the Defendants did not have notice that Plaintiffs would challenge the validity of the warrant until the motion to amend was filed"). [3]

[2] Although Plaintiff requests in conclusory fashion that the additional claims relate back to the filing of the case, Doc. No. 43, at 9 n.12, she did not present an argument about why these defendants would not be prejudiced by their late inclusion in this suit; the issue of lack of notice is substantial and was not persuasively argued by Plaintiff. Cf. Glover v. F.D.I.C., 698 F.3d 139, 148 (3d Cir. 2012) ("Pleadings are not like magic tricks, where a

Case 1:25-cv-00927-KMN   Document 55-2   Filed 03/17/26   Page 43 of 49

**Magness v. Walled Lake Credit Bureau, LLC, Not Reported in Fed. Supp. (2014)**

2014 WL 12610218

plaintiff can hide a claim with one hand, only to pull it from her hat with the other.") (discussing relation back of claims).

[3] Because we find that allowing Plaintiff leave to amend would result in undue delay and prejudice, we do not address Defendant Walled Lake's arguments related to futility. (<u>See</u> Doc. No. 57, at 19-32.)

## IV. Conclusion

**\*4** For the reasons set forth above, we deny Plaintiff's Motion for Leave to Amend.

## All Citations

Not Reported in Fed. Supp., 2014 WL 12610218

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Schmidt v. Wells Fargo Bank, N.A., Not Reported in Fed. Supp. (2018)
2018 WL 7550261

2018 WL 7550261
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Deborah SCHMIDT and James Schmidt, Plaintiffs,
v.
WELLS FARGO BANK, N.A., Defendant.

Civ. No. 2:17-cv-01708
|
Signed 11/30/2018

**Attorneys and Law Firms**

Elizabeth Tandy Foster, Dumont, NJ, for Plaintiffs.

Aaron M. Bender, David G. Murphy, Diane A. Bettino, Laura Kateri Conroy, Reed Smith LLP, Princeton, NJ, for Defendant.

**OPINION**

MARK FALK, United States Magistrate Judge

**\*1** This matter comes before the Court on Plaintiffs Deborah and James Schmidt's Motion for Leave to Amend the Complaint. ECF No. 28. For the reasons set forth below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

**I. RELEVANT FACTS AND PROCEDURAL HISTORY**
The underlying facts of this Case were laid out in the Court's September 14, 2017 Opinion ("2017 Opinion"), familiarity with which is assumed. *see Schmidt v. Wells Fargo Bank, N.A.*, No. 2:17-cv-01708, 2017 WL 4074025 (D.N.J. Sept. 14, 2017), ECF No. 11. In the 2017 Opinion, the Court dismissed all of plaintiffs Deborah and James Schmidt's ("Plaintiffs' ") claims against defendant Wells Fargo, N.A. ("Defendant") except those brought under the Telephone Consumer Protection Act ("TCPA"). Since then, the parties stipulated to the dismissal of the TCPA claims related to calls made to Plaintiffs' cellular telephone number ending in 0721. Order (July 30, 2018), ECF No. 37. This leaves the TCPA claim related to calls made to Plaintiffs' home phone as the only surviving claim.

Since the 2017 Opinion, a related state court foreclosure action—*HSBC Bank v. Deborah A. Schmidt*, No. F-8075-17 ("Foreclosure Action")—proceeded to judgment. The New

Jersey Chancery court found that Defendant is entitled to $413,743.25 and ordered that Plaintiffs' house be sold to satisfy the debt. Murphy Aff., Ex. 4, ECF No. 36-2.

In June 2018, Plaintiffs filed the current Motion for Leave to Amend ("Motion"), attaching a brief in support ("Plaintiffs' Brief") and a proposed amended complaint ("PAC"). ECF No. 28. The PAC adds or amends three claims for alleged (1) violations of the New Jersey Consumer Fraud Act ("CFA"); (2) violations of the Real Estate Settlement Procedures Act ("RESPA"); and (3) invasion of privacy and intrusion on seclusion ("IPIS"). Defendant opposed the Motion ("Defendant's Brief"), arguing that "[a]mendment of the Complaint is not only futile, but is intended by Plaintiffs only to delay resolution of this action, interfere with state court proceedings, waste judicial resources, and cause Defendant to incur unnecessary costs." Def. Br. at 1, ECF No. 36. Having received no reply, the Motion is ripe for decision.

**II. LEGAL STANDARD**
Federal Rule of Civil Procedure 15(a) governs motions to amend. At this stage, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend is generally granted unless there is: (1) undue delay or prejudice; (2) bad faith; (3) dilatory motive; (4) failure to cure deficiencies through previous amendment; or (5) futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The ultimate decision to grant or deny leave is in the courts' discretion. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1970).

The futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion. *see In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). The proposed amended claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**III. DISCUSSION**
**\*2** As Defendant's Brief focuses almost exclusively on futility (and the Court finds Defendant's other arguments unconvincing), the Court will similarly focus on the futility analysis. As detailed below, amendment would be futile as to

Schmidt v. Wells Fargo Bank, N.A., Not Reported in Fed. Supp. (2018)

2018 WL 7550261

Plaintiff's proposed CFA and IPIS claims, but not as to the revised RESPA claim.

## A. New Jersey Consumer Fraud Act Claims

Plaintiffs' proposed CFA claims stem from Defendant "routinely cheat[ing] mortgage customers—including the [P]laintiffs—by applying payments first to late fees and costs, in contravention to the stated terms of the mortgage"; "failing to properly credit payments ... under the trial payment plan"; "not disclosing the amount of the balloon payment" or providing an amortization schedule, despite an agreement to provide them; and "refusing to correct the problem[s] despite [being] aware."[1] PAC ¶¶ 37a-38a.

[1]    The "refusal to correct" allegation appears derivative of the other issues Plaintiffs complain of, and thus will not be analyzed separately.

CFA claims require "(1) unlawful conduct by defendant; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Dabush v. Mercedes-Benz USA, LLC*, 874 A.2d 1110, 1115 (N.J. App. Div. 2005). Unlawful conduct includes any deception, fraud, false promise, or misrepresentation. N.J.S § 56:8-2. As to the ascertainable loss requirement, "[a]t the very least, a consumer must be able to quantify or measure what loss he has suffered or will suffer as a result of the unlawful conduct." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 300 (D.N.J. 2009).

Defendant argues Plaintiffs fail to plead each of these elements, that the CFA claim is merely an attempt to revive Plaintiffs' already-dismissed fraud claim, and the CFA claim is barred by *res judicata* and collateral estoppel. Def. Br. at 13.

### 1. Plaintiffs' Refusal to Provide Information Allegations Are Deficient

With respect to Plaintiffs' claims based on a refusal to provide information on the balloon payment and amortization schedule, Plaintiffs did not suffer an ascertainable loss. Plaintiff merely pleads the loss "will be ascertainable when defendant provides discovery." PAC ¶ 39. Though Plaintiffs need not allege a precise figure, they must provide some methodology from which a figure could be calculated. *see Arcand*, 673 F. Supp. 2d at 300. Further, by only alleging

losses that "will be ascertainable," Plaintiffs essentially guarantee that the Court cannot find causation. Without knowing what the loss is, the Court cannot find that the alleged unlawful conduct caused that loss.

### 2. Plaintiffs' Misappropriation Allegations State a Cause of Action

The misappropriation theories do allege an ascertainable loss "in the amount of the payments misapplied and due to inaccuracies in the balance owed due to the failure to properly credit payments." PAC ¶ 39. As to the other elements, it is reasonable to infer Plaintiffs accepted the loan terms and made payments because they assumed those terms would be applied. But contrary to the loan terms, payments were misappropriated to fees or not counted at all (i.e., a misrepresentation). *See* N.J.S § 56:8-2. This injured Plaintiffs in the amount the loan balance was not reduced, and payments not counted. *See* PAC ¶ 39.

### 3. The Misappropriation Allegations Cure Deficiencies Previously Identified

**\*3**  Defendant argues "Plaintiffs attempt to relitigate their dismissed breach of contract and fraud claims without alleging new facts or curing the deficiencies in the original complaint." Def. Br. at 18 (capitalization adjusted). Defendant is wrong. The Court dismissed Plaintiff's common law fraud claim because it "could not discern from the complaint what Wells Fargo specifically lied about." 2017 Op. at 4. The Court dismissed Plaintiff's breach of contract claim because it was "not at all clear from the face of the complaint how such breach caused Plaintiff to sustain damages." *Id.* at 5. The PAC fixes both those problems: Plaintiffs now allege Wells Fargo lied about how payments would be credited and makes clear how that lie damaged them. *See* PAC ¶¶ 19, 37a-38a.

### 4. *Res Judicata* (Claim Preclusion) Bars Plaintiffs' Misappropriation Claims

"Both New Jersey and federal law apply *res judicata* ... when three circumstances are present: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 279 (3d Cir. 2016), *cert. denied*, 137 S. Ct. 2296 (2017)

Schmidt v. Wells Fargo Bank, N.A., Not Reported in Fed. Supp. (2018)

2018 WL 7550261

(citations omitted). Despite the "on the merits" language, "default judgments can support *res judicata*." *Shah v. United States*, 540 F. App'x 91, 93 (3d Cir. 2013) (citation omitted); *see also In re Hawkins*, 231 B.R. 222, 229-30 (D.N.J. 1999) (listing cases).

"The doctrine of *res judicata* bars not only claims that were brought in a previous action, but also claims that could have been brought." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008). In New Jersey foreclosure proceedings, "[o]nly germane counterclaims and cross-claims may be pleaded." N.J. Ct. R. 4:64-5. "Germane counterclaims are those that arise out of the mortgage that is the basis of the foreclosure action ... and include claims relating to payment[,] discharge, and incorrect computation of the amounts due." *Mantovani v. Wells Fargo Bank, N.A.*, No. 18-CV-0886, 2018 WL 3849907, at *4 (D.N.J. Aug. 13, 2018) (citations and internal quotation marks omitted).

Here, Plaintiffs' misappropriation-based CFA claims are barred by *res judicata* (i.e., claim preclusion). First, the claims are "germane" to the foreclosure. Plaintiffs allege Defendant misapplied or failed to credit mortgage payments, thus misrepresenting the total amount due. *see Mantovani*, 2018 WL 3849907, at *4 (defining "germane" to include claims related to payment and the incorrect computation of amounts due). Therefore, the claims could have been brought in the Foreclosure Action. *See* N.J. Ct. R. 4:64-5. Second, a final judgment has already been rendered. *See* Murphy Aff., Ex. 4. Third, the Foreclosure Action included Plaintiffs and Defendant's privy. *See* Murphy Aff., Ex. 1.A at 1. Fourth, the CFA claims are based on the same cause of action as a counterclaim asserted in the Foreclosure Action would have been.

Therefore, Plaintiffs' CFA claims would not survive a motion to dismiss, and the current Motion—as to the CFA claims—is **DENIED** as futile.

### B. Revised Real Estate Settlement Procedures Act Claims

The Court previously dismissed Plaintiffs' RESPA claim because Plaintiffs did not adequately allege they made a qualified written request ("QWR") triggering RESPA's requirements. 2017 Order at 4. Plaintiffs now allege they sent a "Notice of Error" on March 27, 2017 ("NoE"). PAC ¶ 25a; Pl. Br. at 11. Defendant argues that (1) the NoE fails to qualify as a QWR; (2) RESPA did not require a response because of

pending litigation; and (3) Plaintiffs failed to allege damages. Def. Br. at 22-23.

### 1. Plaintiffs Letter Is a Qualified Written Request

RESPA requires a loan servicer that receives a QWR to provide a written response and make appropriate corrections or explain why corrections are unnecessary. 12 U.S.C. § 2605(e)(2). To qualify as a QWR, a communication must (1) be in writing; (2) "include[ ], or otherwise enable[ ] the servicer to identify, the name and account of the borrower"; and (3) "include[ ] a statement of the reasons for the belief of the borrower ... that the account is in error." 12 U.S.C. § 2605(e)(1)(B).

**\*4** The PAC alleges the NoE was in writing. PAC ¶ 25a. As Plaintiffs received a written response, the Court will infer the NoE included information sufficient for Defendant to identify the name and account of the borrower. PAC ¶ 25b; *see Iqbal*, 556 U.S. at 678. The issue is whether the NoE sufficiently notified Defendant of the reasons for the alleged error. *See* 12 U.S.C. § 2605(e)(1)(B). The NoE claims Defendant "reflected our loan as past due since inception of the loan modification. However, as the attached Customer Account Activity Statement provided by Wells Fargo on January 26, 2016 shows there were timely monthly payments from August 1, 2012 through January 15, 2016, the date of this activity statement." This is clear enough. Plaintiffs believed the account was in error because Wells Fargo asserted it was past due despite timely payments. Therefore, Plaintiff adequately alleged they sent a QWR. *See* 12 U.S.C. § 2605(e)(1)(B).

### 2. Defendant Was Required to Respond Despite Active Litigation

Defendant asserts it "has no obligation to respond to an alleged error that was being litigated in Court." Def. Br. at 25-26. Defendant's only authority for the proposition is a single bankruptcy court decision, *In Re Wiggins*, No. 12-26993 (JKS), 2016 WL 7115864, (Bankr. D.N.J. Dec. 6, 2016). In *Wiggins*, the court noted (without citation): "*it would seem* that a mortgage servicer *should not* be obligated to respond to requests for information outside the context of litigation" when the requests for information were made "after this adversar[ial] proceeding had been filed *and dismissed*." *Id.* at *1 (emphasis added and original emphasis removed).

Case 1:25-cv-00927-KMN    Document 55-2    Filed 03/17/26    Page 47 of 49
Schmidt v. Wells Fargo Bank, N.A., Not Reported in Fed. Supp. (2018)
2018 WL 7550261

The court went on to find that the defendants' " reliance upon [the prior dismissal] was justified and finds it hard to imagine that [d]efendants' response could be the basis for a damage claim" before holding none of the communications related to "servicing" the loan, as required by RESPA. *Id.* Given the bankruptcy court's aspirational language, factual differences with the current matter, (e.g., a dismissal *before* the QWS), the alternative holding, and a lack of support for a "litigation exception" in the statute, this Court finds Defendant's argument unpersuasive.

### 3. Plaintiffs Adequately Alleged Damages and Causation

Defendant argues Plaintiffs failed to adequately allege damages and causation. Def. Br. at 26. To state a claim, plaintiffs must allege "(1) actual damages to the borrower as a result of the failure to comply with § 2605; or (2) statutory damages in the case of a pattern or practice of noncompliance with the requirements of § 2605." *Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778, 781 (D.N.J. 2016) (citations omitted). Plaintiffs do not allege a pattern or practice. They do, however, allege that the failure to appropriately respond caused "additional emotional distress since [Plaintiffs] fear and believe they are victims of Wells Fargo's fraudulent and illegal behavior and that the situation is hopeless[, causing] plaintiff Debbvie [sic] Schmidt to suffer from anxiety and emotional distress." PAC ¶ 43.

In analyzing emotional distress claims, courts scrutinize complaints to ensure they adequately allege a causal nexus with the RESPA violation (as opposed to general anxiety related to a potential foreclosure). For example, in *Vilkofsky v. Specialized Loan Servicing, LLC*, the court found sufficient the allegations that plaintiff's distress "stemm[ed] from worry caused by his sense that [defendant] ignored his cries for help; his concern regarding [defendant]'s failure to investigate his claims; his belief that he has been cheated by [defendant]; and his concern that he is not being taken seriously by [defendant], all of which may result in the loss of Plaintiff's home." No. 2:16-CV-01291-NBF, 2017 WL 2573874, at *5 (W.D. Pa. June 14, 2017).

Here, Plaintiff makes similar allegations to those in *Vilkofsky*. The Court can easily infer from the facts alleged that Defendant's failure to properly respond to the NoE contributed to Plaintiffs' emotional distress separate and apart from their fear of foreclosure. By blocking Plaintiffs' attempt at a non-judicial remedy to the issues with their

mortgage, Defendant's response deepened Plaintiff's sense of hopelessness. *See* PAC ¶ 43. Thus, the PAC adequately alleges the non-compliant RESPA response caused Plaintiffs' damage, namely, emotional distress. *see Vilkofsky*, 2017 WL 2573874, at *5.

**\*5** Therefore, Plaintiffs' revised RESPA claims would survive a motion to dismiss, and the current Motion—as to the RESPA claims—is **GRANTED**.

### C. <u>Invasion of Privacy and Intrusion on Seclusion Claims</u>

Plaintiffs allege IPIS liability based on Defendant's "harass[ment of P]laintiff with unending phone calls regarding her debt ... despite [P]laintiffs['] instructions to [Defendant] to stop calling." PAC ¶¶ 22, 44. Defendant argues the PAC does not allege sufficient facts regarding the calls. Def. Br. at 29-31.[2]

> [2] Defendant also makes two alternative arguments. First, the statute of limitations bars the claim. The Court finds this unconvincing. It is the cumulative nature of the calls that Plaintiffs complain of (which continued until January 2017) and the proposed IPIS claim relates back to the original complaint. *See* N.J. Ct. R. 4:9-3. Second, Defendant cites *Buckley v. Trenton Saving Fund Society* for the proposition that reliance on emotional distress damages requires allegations of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Def. Br. at 30 (quoting *Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988) ). That is not at all what *Buckley* stands for. The quoted language is the standard for an intentional infliction of emotional distress claim, not a pleading standard for emotional distress damages. Defendant should be careful to avoid (intentionally or not) misleading the Court.

IPIS liability may attach when the defendant "intentionally intrudes ... upon the solitude or seclusion of another or his private affairs or concerns if the intrusion would be highly offensive to a reasonable person." *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1115 (N.J. 2009) (original ellipses omitted) (quoting Restatement (Second) of Torts, § 652B (1977) ). With respect to debt collection calls, "it is only when the telephone calls are repeated with such persistence and

frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded." *Tamayo v. Am. Coradious Int'l, L.L.C.,* No. CIV.A. 11-6549 JLL, 2011 WL 6887869, at \*4 (D.N.J. Dec. 28, 2011) (quoting Restatement (Second) of Torts, § 652B, cmt. D).

The PAC does not allege facts sufficient for the Court to find Defendant "hounded" plaintiff. *See* Restatement (Second) of Torts, § 652B, cmt. D. Plaintiffs did not plead the number, frequency, or timing of the calls. [3] Instead, the PAC merely asserts the calls were "unreasonable" and "highly offensive," causing Plaintiffs' " privacy to be violated" and "significant emotional distress." PAC ¶ 44-36. Once the Court sets aside those legal conclusions, *see Iqbal*, 556 U.S. at 678, the PAC fails to sufficiently allege IPIS liability.

[3]     The PAC does characterize the calls as "unending," "harassing," "constant," and "incessant[ ]." PAC ¶¶ 22, 44. But these characterizations are not specific

enough to justify a conclusion that the PAC alleges *facts* sufficient to state a claim that is plausible on its face.

**\*6** Therefore, amendment would be futile and the Motion is **DENIED** as to the proposed IPIS claims.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Amend the Complaint is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs may file an amended complaint including the proposed RESPA claims set forth in the PAC. However, amendment as to the CFA and IPIS claims would be futile, and thus no amendment will be permitted.

An appropriate order follows.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 7550261

---

**End of Document**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I am causing the foregoing and all attachments to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon all counsel of record.


Dated: March 17, 2026                    */s/ A. Paul Heeringa*
                                         A. PAUL HEERINGA

2