# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all other similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>VIASAT, INC.,<br><br>  Defendant. | Civil Action No. 1:25-cv-00927-KMN<br><br>(Hon. Keli M. Neary) |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SANCTIONS AGAINST PLAINTIFF'S COUNSEL

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

A. STATEMENT OF FACTS .............................................................................3

B. ARGUMENT .................................................................................................9

  1. SANCTIONS ARE WARRANTED UNDER 28 U.S.C. § 1927.................9

    a. Legal Standard ..............................................................................9

    b. Plaintiff's Counsel Acted in Bad Faith Under Section 1927 By Knowingly Pursuing a Meritless Claim. ......................................10

    c. Attorneys' Fees Accrued at the Commencement of this Action.............13

  2. SANCTIONS ARE WARRANTED UNDER FEDERAL RULE OF CIVIL PROCEDURE 11(b)(2) and 11(b)(3)..................................................15

    a. Legal Standard .............................................................................15

    b. Counsel's Conduct Warrants Rule 11 Sanctions....................................16

    c. Plaintiff's Proposed Amendment Cannot Salvage a Meritless Claim....18

    d. Defendant Seeks Appropriate Relief Under Rule 11(c)(2).....................19

  3. THE COURT MAY ALSO INITIATE SANCTIONS UNDER FED. R. CIV. P. 11(c)(3)....................................................................................20

  4. SANCTIONS ARE ALSO APPROPRIATE UNDER THE COURT'S INHERENT AUTHORITY. ...................................................................20

  5. THE COURT MAY RETAIN JURISDICTION TO RESOLVE THIS MOTION EVEN IF THE ACTION IS DISMISSED. ...................................21

CONCLUSION ....................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*Alphonso v. Pitney Bowes, Inc.*,
   356 F. Supp. 2d 442 (D.N.J. 2005)................................................................12

*Balthazar v. Atl. City Med. Ctr.*,
   279 F. Supp. 2d 574 (D.N.J. 2003), aff'd, 137 F. App'x 482 (3d Cir. 2005)......19

*Barley v. Fox Chase Cancer Ctr.*,
   54 F. Supp. 3d 396 (E.D. Pa. 2014)................................................................10

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)................................................................20

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990)................................................................21

*DiPaolo v. Moran*,
   277 F. Supp. 2d 528 (E.D. Pa. 2003), aff'd, 407 F.3d 140 (3d Cir. 2005) .........21

*Doering v. Union County Bd. of Chosen Freeholders*,
   857 F.2d 191 (3d Cir. 1988) ........................................................15, 19

*Ford v. Temple Hosp.*,
   790 F.2d 342 (3d Cir. 1986) ........................................................9, 13

*Gaiardo v. Ethyl Corp.*,
   835 F.2d 479 (3d Cir. 1987) ........................................................15

*Gillam v. Reliance First Capital, LLC*,
   2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ........................................11

*Hanoverian Inc. v. Pa. Dept. of Envtl Prot*,
   No. 1:07–CV–00658, 2008 WL 906545 (M.D. Pa. March 31, 2008)................16

*Hicks v. City of Philadelphia*,
   753 F. Supp. 3d 409 (E.D. Pa. 2024)................................................................20

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
   278 F.3d 175 (3d Cir. 2002) ........................................................9, 10

*In re Schaefer Salt Recovery, Inc.*,
   542 F.3d 90 (3d Cir. 2008) ........................................................15

*Keister v. PPL Corp.*,
   318 F.R.D. 247 (M.D. Pa. 2015) ........................................................16, 17, 18

*Landy v. Nat. Power Sources, LLC*,
2021 WL 3634162 (D.N.J. Aug. 17, 2021) ......................................................17

*Shelton v. Chaudhry*,
763 F. Supp. 3d 675 (E.D. Pa. 2025)........................................................18, 20

*Young v. Smith*,
269 F. Supp. 3d 251 (M.D. Pa. 2017), aff'd, 905 F.3d 229 (3d Cir. 2018) .15, 16, 19

## STATUTES

28 U.S.C. § 1927 ..................................................................................passim

47 U.S.C. § 227(c)(5)..................................................................................11

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(c)(2)..............................................................................11

## RULES

Fed. R, Civ. P. 11 .................................................................................passim

Fed. R. Civ. P. 11(b)(2)................................................................................15

Fed. R. Civ. P. 11(b)(3)................................................................................15

Fed. R. Civ. P. 11(c)(2)............................................................................15, 19

Fed. R. Civ. P. 11(c)(3)................................................................................20

Fed. R. Civ. P. 11(c)(4)................................................................................16

Rule 11, Section 1927 ..................................................................................21

Rule 12(b)(6)............................................................................................21

## **INTRODUCTION**

Defendant Viasat, Inc. ("Viasat") moves for sanctions against Plaintiff's Counsel under, 28 U.S.C. § 1927, Federal Rule of Civil Procedure 11 ("Rule 11"), and the Court's inherent authority.

This sanctions motion concerns a case that should never have been brought against Viasat. From the moment this action was filed, Plaintiff's Counsel has attributed two April 19, 2024 telemarketing calls to Viasat despite possessing—or having ready access to—conclusive evidence that contradicted that attribution. But despite that evidence, and Viasat's repeated protestations that it had nothing to do with the alleged calls, Counsel nevertheless advanced and maintained a false narrative through the original complaint, the First Amended Complaint ("FAC"), and various sworn submissions. *See* Dkt. 21 ¶¶ 33, 39; Dkt. 30-2.

Most troublingly, Plaintiff (a serial TCPA litigant) recorded both calls before filing suit. But counsel did not produce those recordings—or even acknowledge their existence—until November 20, 2025, nearly six months into this case.  In the interim, because Viasat knew it had never called Plaintiff and was aware of no evidence that Plaintiff received the alleged calls from anyone, it was forced to file two dispositive motions, seek court intervention on multiple discovery issues, and engage in considerable party and non-party discovery to try to bring this case to a quick end.

1

*None* of those costly efforts should have been necessary, however, because the recordings proved all along that Plaintiff's allegations were false. On neither call recording does any speaker identify as calling from Viasat. Dkt. 44-2. The first call never mentions Viasat at all. Dkt. 44-1. The second mentions Viasat only after multiple transfers and only among several internet providers, after Plaintiff volunteered interest in "cheaper internet options." Dkt. 44-2. None of this aligns with Plaintiff's allegations that callers "spoke as though they were calling from Viasat," pitched only Viasat's products, or "confirmed" they were calling from Viasat. And records obtained from IP Horizon, the carrier that owns the two phone numbers at issue, further confirm that neither Viasat nor its vendors were responsible for the calls Plaintiff received. Dkt. 23-7.

Yet Counsel still refuses to concede what should be obvious—Plaintiff has no TCPA case against Viasat. Counsel is now attempting to prolong this case further by proposing another amended complaint that continues to attribute the calls to Viasat notwithstanding the recordings and carrier records confirming that Viasat did not call him.

All of this behavior is sanctionable and Viasat now seeks an award of the attorney's fees it has spent in connection with this matter – which never should have been filed.

2

A.    **STATEMENT OF FACTS**

Plaintiff filed this TCPA putative class action on May 26, 2025, alleging that Viasat is directly liable for two telemarketing calls he received on April 19, 2024. Dkt. 1. From the outset, the case rested entirely on Plaintiff's assertion that the calls were placed by Viasat—an assertion unsupported by any carrier evidence, business records, or contemporaneous documentation, and contradicted by recordings Plaintiff made of the calls.

The original Complaint alleged that Plaintiff received two telemarketing calls on his cell phone from different phone numbers and attributed both calls to Viasat. Dkt. 1. The Complaint did not attach or reference call recordings, did not identify any carrier evidence linking the numbers to Viasat, and did not allege facts establishing that the calls were outbound calls placed by Viasat or any authorized vendor.

Before any discovery occurred—and before Viasat filed any dispositive motion—Viasat repeatedly advised Plaintiff's Counsel that Viasat does not place outbound telemarketing calls and has no connection to the alleged calls. Nevertheless, Plaintiff's Counsel proceeded without disclosing the recordings or acknowledging their contents.

Because Plaintiff alleged receipt of two calls without any objective verification, Viasat could not even confirm whether Plaintiff received the alleged

3

calls at all.[1] Viasat's business records—which track inbound and outbound communications—showed no calls to Plaintiff's number. Viasat also confirmed that it does not place outbound telemarketing calls, does not operate a telemarketing program, and contractually prohibits vendors from engaging in outbound telemarketing on its behalf. *See* Dkts. 11-2; 23-1.

Viasat moved to dismiss the original Complaint arguing, amongst other things, that Plaintiff lacked standing because "he did not receive any call from or on behalf of Viasat." Dkt. 11-1 at 7. Rather than oppose Viasat's motion, Plaintiff instead filed the First Amended Complaint ("FAC"). Dkt. 21.

Plaintiff's FAC doubled down on the same attribution theory and added new allegations seemingly aimed to bolster Plaintiff's direct liability theory. The FAC alleged that callers "spoke as though they were calling from Viasat," pitched only Viasat's products, and, during the second call, "confirmed" that they were calling from Viasat. Dkt. 21 ¶¶ 33, 39. These were not hedged allegations or allegations pled on information and belief. They were definitive factual assertions offered to

---

[1] Amongst other things, Plaintiff spoliated his own phone records and so had no proof that he actually received any calls. Ultimately, Viasat did not receive any evidence establishing that Plaintiff received the calls alleged in his complaint until November 20, when Plaintiff finally produced the call recordings, and January 5, 2026, when Plaintiff produced to Viasat a subpoenaed a copy of his own phone records.

establish direct liability under the TCPA. Yet Plaintiff's Counsel still did not produce any recordings, carrier records, or other evidence supporting those claims.

Viasat again moved to dismiss, submitting sworn declarations establishing that it does not engage in outbound telemarketing, has no relationship with the phone numbers identified in the FAC, and has no record of calling Plaintiff. *See* Dkts. 23-1, 23-7, 23-8.

Plaintiff's Counsel opposed dismissal by submitting a sworn declaration from Plaintiff reiterating that he spoke with a representative who "confirmed" he was calling from Viasat. Dkt. 30-2. This sworn testimony mirrored the FAC's allegations and was offered to overcome Viasat's standing and attribution arguments. However, at the time this declaration was submitted, Plaintiff' had already recorded both calls and those recordings contradict the declaration.

On September 29, 2025, Plaintiff opposed Viasat's motion to bifurcate discovery to focus on individual issues (such as whether Plaintiff actually received the calls at issue).  As before, Plaintiff did not reveal the existence of the call recordings.  Indeed, despite knowing that Viasat's "contention is that it did not call the Plaintiff or any other class member," Plaintiff's Counsel suggested that "[w]hether ViaSat sent the calls at issue or not will be readily ascertainable from *telephone company records and depositions*."  Dkt. 31 at 7 (emphasis added).  Put simply, Counsel continued to hide the ball regarding the existence of the call

recordings despite knowing those recordings are the best evidence of whether Viasat did or "did not call the Plaintiff." *Id.*

Discovery disputes continued over the next few months. On November 11, 2025, Viasat wrote to the Court asking for a discovery dispute conference. Dkt. 38. Viasat explained that "Plaintiff's TCPA case cannot move forward if no one called him," and remarked that based on the discovery it had received to-date it appeared "Plaintiff did not receive either call alleged in the complaint." *Id.* at 2. The letter continued: "As far as Viasat can tell, Plaintiff filed this action and opposed Viasat's motion[s] to dismiss without a factual basis to do so. To the extent Plaintiff argues otherwise, now is the time to produce whatever evidence he has to support his claims or to voluntarily dismiss his complaint." *Id.* at 3. The Court held a discovery conference on November 19. Dkt. 39. Plaintiff's Counsel produced the call recordings the next day.

As noted, the recordings objectively demonstrate that Viasat is not liable for violating the TCPA. In the first call, Viasat is never mentioned. The call contains no statements referencing Viasat's name, products, employees, or services. Dkt. 44-1. The second call contains multiple transfers between individuals, and only after Plaintiff volunteered an interest in switching to "cheaper internet options" does an unidentified speaker mention Viasat—along with other ISPs. Dkt. 44-2. At no point does any caller identify himself or herself as calling from Viasat. *Id.* This directly

contradicts Plaintiff's sworn Declaration and the allegations in the FAC, which assert that callers "spoke as though they were calling from Viasat" and pitched "only" Viasat's services. Dkt. 21, ¶ 39; 30-2.

The call recordings are thus consistent with other discovery materials that demonstrate Viasat never called Plaintiff, including Viasat's sworn evidence submitted in support of its two dispositive motions. *See* Dkts. 11-2; 23-1. That evidence included a subpoena response from IP Horizon, the carrier for the 931 and 530 phone numbers associated with the alleged calls. IP Horizon produced detailed records confirming that neither number was assigned to, used by, or associated with Viasat or any vendor affiliated with Viasat at any time. Dkt. 23-7, 23-8. The records show that the numbers were assigned at various times to entities that have no connection to Viasat and confirm that Viasat had no involvement with the numbers at issue and no connection to the calls described in the FAC. *See id.*

Before receiving the call recordings, Viasat asked Plaintiff's Counsel to dismiss this case multiple times during telephone conversations, and in writing on July 14, 2025, August 7, 2025, and August 11, 2025. *See* Declaration of Paul Heeringa ("Heeringa Decl.") ¶¶ 5-6, Ex. A. These requests fell on deaf ears. Viasat tried again on December 19, 2025. Viasat's Counsel wrote to Plaintiff's counsel outlining the contradictions between the recordings and the FAC and requesting voluntary dismissal. A true and correct copy of the December 19, 2025, letter is

attached hereto as **Exhibit A**. The letter identified the misrepresentations in Plaintiff's declaration, explained that the first call does not reference Viasat at all, and noted that even if the second call referenced Viasat, it would not matter because, as a matter of law, a single call cannot support a TCPA claim as alleged in the FAC.

Plaintiff's Counsel refused to dismiss and instead now seeks to prolong the litigation further by requesting additional discovery and proposing new amendments through a proposed SAC containing allegations that the call recordings show are false.   Plaintiff's most recent filing—the Motion for Leave to File a Second Amended Complaint "SAC Motion"—confirms the vexatious nature of counsel's conduct. Dkt. 52. The SAC Motion now concedes that a third party "physically placed" the calls and that Viasat's involvement, if any, arose only after a call transfer. *Id*.   But Plaintiff personally recorded those calls before filing suit, and those recordings reflect call transfers in real time. The effort to characterize this theory as newly "revealed in discovery" rewrites the procedural history and ignores that Plaintiff alleged direct Viasat liability while withholding recordings that contradicted those allegations. Furthermore, Plaintiff's new allegations that "Viasat subsequently confirmed that this purported "inbound call" to Viasat was instead a call that was *transferred to Viasat* by a vendor…", is contradicted by the call recordings where Plaintiff volunteered an interest in switching to "cheaper internet options" and an unidentified speaker mentions Viasat—along with other ISPs. Dkt. 44-2.

8

The SAC Motion thus functions not as a good-faith amendment, but further evidence of vexatious conduct after Plaintiff's own evidence—and sworn statements—were shown to be inaccurate. That continued pattern of pleading around known facts further multiplied proceedings and underscores why sanctions are warranted.

These actions demonstrate unreasonable and vexatious conduct in pursuing meritless claims.

**B.    ARGUMENT**

     **1.    SANCTIONS ARE WARRANTED UNDER 28 U.S.C. § 1927.**

       **a.    Legal Standard**

28 U.S.C. § 1927 ("Section 1927") authorizes sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927.  Section 1927 "requires a court to find the attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002).

While Section 1927 imposes a demanding standard, bad faith may be inferred where counsel persists in advancing claims that are objectively meritless, ignores evidence contradicting those claims, or demonstrates reckless indifference to the truth. *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986). Courts in this Circuit

9

routinely impose sanctions where counsel continues litigating after learning that the factual premise of a case is unsupported. *See*, e.g., *Barley v. Fox Chase Cancer Ctr.*, 54 F. Supp. 3d 396, 408 (E.D. Pa. 2014).

Section 1927 is directed at post-filing conduct. But where, as here, Counsel's litigation strategy from the outset reflects a knowing or reckless disregard of contrary evidence, that conduct informs the Court's assessment of bad faith and vexatious multiplication of proceedings. *Prudential*, 278 F.3d at 188.

> **b.      Plaintiff's Counsel Acted in Bad Faith Under Section 1927 By Knowingly Pursuing a Meritless Claim.**

This case reflects a sustained pattern of unreasonable and vexatious conduct beginning at filing and continuing through multiple rounds of motion practice, discovery disputes, and attempted amendments. Counsel's conduct satisfies Section 1927's standard.

According to PACER, Plaintiff has pursued more than a dozen TCPA actions since April of 2024.  Likely because he is an active TCPA litigant, Plaintiff recorded both of the April 19, 2024 calls described in this suit. Those recordings were therefore available to Plaintiff's counsel at the inception of this action. Yet Counsel filed the original Complaint alleging that Viasat placed two telemarketing calls to Plaintiff— allegations the recordings do not support.

On the first call, Viasat is never mentioned. On the second, Viasat is referenced only after multiple transfers and only among several internet providers, after Plaintiff

himself volunteered interest in "cheaper internet options." No caller identifies as calling from Viasat, and no caller claims to be a Viasat employee.

These are not technical discrepancies. They go to the core factual and legal premise of the case: that Viasat directly placed telemarketing calls to Plaintiff. A violation of the TCPA's DNC rules (the only claim Plaintiff asserts in his FAC) requires receipt of more than one "telephone solicitation" from or on behalf of the "same entity" in a 12-month period. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). One such call is not enough. *See*, e.g., *Gillam v. Reliance First Capital, LLC*, 2023 WL 2163775, at \*3 (E.D.N.Y. Feb. 22, 2023) (dismissing DNC claim on this basis).

By filing suit despite possessing recordings that contradict that premise, Counsel either failed to review the very evidence underlying the claims or chose to plead facts inconsistent with it. Either scenario exceeds negligence and marks the beginning of the unreasonable multiplication of proceedings, particularly where Counsel is a highly-experienced TCPA litigant. Indeed, according to PACER, Mr. Perrong has filed at least 200 TCPA cases since 2023 and was himself a Plaintiff in over one-hundred TCPA cases between approximately 2017 and 2023. Put simply, Plaintiff's Counsel knows full well what is required to prove direct liability under the TCPA and that his client cannot do so here.

But rather than reassess after Viasat moved to dismiss and submitted sworn declarations establishing that it does not engage in outbound telemarketing, does not

11

permit vendors to do so, and has no connection to the phone numbers at issue, Counsel doubled down.

The First Amended Complaint escalated the allegations, asserting direct liability and alleging that callers "spoke as though they were calling from Viasat," pitched only Viasat's services, and confirmed they were calling from Viasat. Those allegations are irreconcilable with the recordings. At this stage, Counsel possessed Plaintiff's recordings, Viasat's sworn declarations, and third-party evidence undermining attribution of the calls.

Nevertheless, counsel forced Viasat to file a second motion to dismiss and comprehensive briefing addressing standing and liability theories that were factually unsupported. This alone constitutes unreasonable multiplication of proceedings under Section 1927.

The misconduct escalated further when Plaintiff submitted a sworn declaration asserting that a caller "confirmed" he was calling from Viasat. The recordings directly contradict that statement.

Submitting sworn testimony inconsistent with objective recordings in one's possession is not aggressive advocacy. It is litigation abuse. It required Viasat to respond to factual assertions Counsel knew—or recklessly disregarded—were false, further increasing the cost and scope of the litigation. *See Alphonso v. Pitney Bowes, Inc.*, 356 F. Supp. 2d 442, 448–52 (D.N.J. 2005) (sanctioning counsel for acting in

bad faith by pursuing inflated and unsupported damages).

Courts in this Circuit recognize that advancing sworn factual assertions contradicted by documentary evidence is a hallmark of bad faith under Section 1927. *Ford*, 790 F.2d at 347.

Now, even after the recordings and carrier records have conclusively demonstrated that Viasat had no connection to the alleged calls, counsel refuses to dismiss and has sought leave to amend yet again—continuing to attribute the calls to Viasat notwithstanding the objective record. Plaintiff's proposed SAC simply lacks a factual or legal basis.

Continuing to litigate after the factual foundation of a case has collapsed satisfies Section 1927's bad-faith requirement. This conduct increased the cost and complexity of the litigation for no legitimate purpose and falls squarely within the conduct Section 1927 is designed to deter.

### c.    Attorneys' Fees Accrued at the Commencement of this Action.

As a direct result of Counsel's conduct, Viasat was forced to incur fees associated with: two motions to dismiss and comprehensive briefing; standing and liability analysis necessitated by shifting factual narratives; third-party subpoenas to disprove attribution; discovery disputes and Court conferences to obtain withheld evidence; supplemental evidence submissions; and opposition to futile attempts to further amend.

13

There is a clear causal nexus between counsel's misconduct and these excess fees. Indeed, because Plaintiff did not produce the call recordings until November 20, 2025, Viasat was still actively litigating whether Plaintiff even received the alleged calls as late as November 12, 2025. *See* Dkt. 38. Section 1927 exists to deter precisely this type of litigation strategy—where counsel advances a factual narrative contradicted by evidence in their possession, escalates that narrative after being put on notice, and persists even after the record exposes the claims as meritless.

Because Plaintiff possessed the recordings before this action was filed—and those recordings contradict the allegations pled—this case should never have been brought in the first instance. The action was then made far more complicated than it needed to be by Plaintiff's Counsel's refusal to produce the recordings for nearly six months, leading Viasat to extensively litigate issues that the recordings would have mooted (e.g., whether the calls at issue even occurred). Accordingly, the excess fees caused by Counsel's unreasonable and vexatious conduct appropriately accrue from the commencement of this action.

At a minimum, fees should accrue from the point at which Counsel was indisputably on notice that the claims were meritless and nevertheless persisted. In either event, Section 1927 authorizes recovery of the excess costs incurred as a direct result of counsel's bad-faith litigation conduct.

## 2. SANCTIONS ARE WARRANTED UNDER FEDERAL RULE OF CIVIL PROCEDURE 11(b)(2) and 11(b)(3).

### a. Legal Standard

Rule 11 imposes an ongoing duty to ensure that factual contentions have evidentiary support; continued advocacy of untenable allegations is sanctionable. Fed. R. Civ. P. 11(b)(2), (b)(3). The governing standard is objective reasonableness under the circumstances, imposing a duty on attorneys to "'Stop, Think, Investigate and Research' before filing papers either to initiate suit or to conduct the litigation." *Young v. Smith*, 269 F. Supp. 3d 251, 333 (M.D. Pa. 2017), aff'd, 905 F.3d 229 (3d Cir. 2018) (citing *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987)). Rule 11 therefore reaches not only deficient pre-filing investigation, but also the continued advocacy of factual assertions once they are shown to be untenable. *See id*. Rule 11's purpose is deterrence of abusive litigation practices, not punishment. *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194–95 (3d Cir. 1988). Any sanction imposed must therefore be narrowly tailored to address the specific violation and calibrated to deter repetition, with equitable considerations taken into account when monetary sanctions are imposed. *Id.*

When sanctions are sought by motion, Rule 11's safe-harbor provision applies. Fed. R. Civ. P. 11(c)(2). The moving party must serve the motion and proposed order and allow twenty one (21) days for withdrawal or correction before filing. Id. The Third Circuit requires strict compliance with this procedure. *In re*

*Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d Cir. 2008). If the violation is not cured, the Court may award reasonable attorneys' fees and expenses directly resulting from the violation. Fed. R. Civ. P. 11(c)(4).  Viasat served a copy of this motion on Plaintiff on February 18, 2026.

### b.    Counsel's Conduct Warrants Rule 11 Sanctions.

The FAC, the proposed SAC, Plaintiff's Declaration, and Counsel's continued pursuit of this litigation violate Rule 11 because they assert specific factual allegations that lack evidentiary support and are affirmatively contradicted by objective evidence, including recordings and documents in Plaintiff's possession. Dkt. 21, 30-2; *see Young*, 269 F. Supp. 3d at 333. (imposing sanctions, in part because counsel "failed to conduct an inquiry into the facts and the law"). Significantly, once discovery brought documents refuting Plaintiff's factual narrative to light, continued advocacy of those allegations became objectively unreasonable. *See Hanoverian Inc. v. Pa. Dept. of Envtl Prot*, No. 1:07–CV–00658, 2008 WL 906545, *13 (M.D. Pa. March 31, 2008) (imposing sanctions for continuing to advocate meritless and misrepresented claims after learning of these numerous deficiencies). This Court has imposed sanctions where a complaint was kept alive through allegations that were "wholly at odds" with the record and even the plaintiff's own evidence, and where counsel's filings effectively manufactured factual disputes to prolong litigation. *Keister v. PPL Corp.*, 318 F.R.D. 247, 267-69

16

(M.D. Pa. 2015) (sanctions warranted where plaintiff continued to pursue litigation and mediation despite "inconsistencies" and facts that rendered the case "baseless and frivolous").

In *Keister* the court held that Rule 11 sanctions were warranted against plaintiff's counsel because the factual contentions in the second amended complaint lacked evidentiary support and were later found to be untrue during discovery. *Id.* Nevertheless, the plaintiff in *Keister* continued to pursue his claims and "manufactured ambiguity" to try to "extort a settlement…[based] on meritless facts." *Id.* That is precisely what occurred here. Plaintiff failed to carry his burden to show Viasat was connected to the two telemarketing calls. Reasonable inquiry into the facts would have demonstrated that the carrier assignments for the phone numbers at issue showed no link whatsoever to Viasat or its vendors. *See* Dkt. 23-7, 23-8. Further, Plaintiff himself recorded the calls and those recordings disprove Viasat's involvement and connection to the alleged calls. *See* Dkt. 44, 44-1, 44-2. This directly undercuts Plaintiff's theory of direct liability under the TCPA. *See Landy v. Nat. Power Sources, LLC*, 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021) (dismissing TCPA claims for lack of direct liability). Nevertheless, rather than withdraw or correct the challenged allegations, Plaintiff continues to advocate them. Dkt. 37. Rule 11 expressly prohibits such conduct. *See Keister*, 318 F.R.D. at 267-69.

### c.    Plaintiff's Proposed Amendment Cannot Salvage a Meritless Claim.

Plaintiff's delayed decision to amend further only underscores the Rule 11 violation. Plaintiff's counsel now seeks leave to file a SAC.  But the proposed SAC continues to assert allegations that are directly contradicted by Defendant's declarations and evidence that is now part of the record. *See* Dkt. No. 44, 45. Plaintiff's own call recordings defeat any new allegations attributable to Viasat, and indeed, Plaintiff had these records at the initiation of this litigation. Thus, the proposed SAC is not a corrective amendment—it is an attempt to manufacture a factual dispute to avoid dismissal. *See Keister*, 318 F.R.D. at 267-69 (sanctions warranted for "manufactur[ing] ambiguity" in claims).

Courts have condemned this precise tactic. For instance, in *Shelton v. Chaudhry,* the court imposed substantial Rule 11 sanctions where counsel filed pleadings that contradicted the existing record and prior representations in an effort to evade dismissal. *Shelton v. Chaudhry,* 763 F. Supp. 3d 675, 689–92 (E.D. Pa. 2025). The court emphasized that "continu[ing] to submit filings that contained false and unfounded factual and legal assertions, establish[ed] a pattern of deficient lawyering" under Rule 11. *Id.* at 683.

Even if leave were granted, the proposed SAC would remain subject to dismissal on the same grounds as the FAC. Where amendment would be futile and is pursued solely to prolong proceedings, continued advocacy is sanctionable. *See*

18

*Balthazar v. Atl. City Med. Ctr.*, 279 F. Supp. 2d 574, 594 (D.N.J. 2003), aff'd, 137 F. App'x 482 (3d Cir. 2005) (affirming Rule 11 sanctions where proposed amendment merely rehashed previously rejected claims and advanced futile allegations lacking any legal or factual basis).

### d.    Defendant Seeks Appropriate Relief Under Rule 11(c)(2).

Consistent with Rule 11's ultimate goal of deterrence, Viasat seeks appropriately tailored relief in response to Counsel's conduct. *See Doering* 857 F.2d at 195 ("choice of deterrent is appropriate when it is the minimum that will serve to adequately deter the undesirable behavior."). Specifically, Viasat requests an order directing Plaintiff's Counsel to withdraw the allegations in the FAC and Plaintiff's Declaration that are contradicted by the record. If the violations are not cured within the safe-harbor period, Defendant seeks an award of reasonable attorneys' fees to compensate for work directly caused by the offending conduct after expiration of the safe harbor, including opposing Plaintiff's motion for leave to file the SAC, and, if that fails, dispositive motions practice to dismiss the SAC. *See Young*, 269 F. Supp. 3d at 346 (affirming award for attorneys' fees for "portions of the litigation that were necessitated by [counsel's] vexatious conduct"). Viasat does not seek monetary sanctions against Plaintiff personally and does not request a broader fee award under Rule 11. *See id*.

19

### 3. THE COURT MAY ALSO INITIATE SANCTIONS UNDER FED. R. CIV. P. 11(c)(3).

Rule 11(c)(3) also provides the Court with an alternative mechanism for sanctions. Fed. R. Civ. P. 11(c)(3). Under that rule, the Court may issue an order to show cause identifying the specific conduct at issue. No safe harbor applies, and monetary sanctions, if imposed, are payable to the Court rather than the movant. Further, under Rule 11(c)(3), non-monetary sanctions, including striking or correcting pleadings, are expressly authorized. *Shelton*, 763 F. Supp. 3d at 690–92.

### 4. SANCTIONS ARE ALSO APPROPRIATE UNDER THE COURT'S INHERENT AUTHORITY.

The Court may sanction bad-faith litigation conduct under its inherent authority. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). This authority requires explicit findings of bad faith and consideration of lesser sanctions before more severe relief is imposed. *Id.* Where, as here, Counsel advances allegations contradicted by the record, delays corrective action, and pursues futile amendments to avoid dismissal, inherent-power sanctions are appropriate as a backstop to ensure effective deterrence. *See Hicks v. City of Philadelphia*, 753 F. Supp. 3d 409, 414 (E.D. Pa. 2024) ("a court can rely on its inherent authority to address attorneys' ethical lapses").

**5.    THE COURT MAY RETAIN JURISDICTION TO RESOLVE THIS MOTION EVEN IF THE ACTION IS DISMISSED.**

Finally, the Court's authority to resolve this sanctions motion does not depend on the continued pendency of Plaintiff's claims on the merits. It is well settled that a federal court retains jurisdiction to adjudicate collateral matters, including motions for sanctions under Rule 11, Section 1927, and the Court's inherent authority, even after the underlying action has been dismissed. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–98 (1990) (voluntary dismissal does not deprive a court of jurisdiction over a Rule 11 motion); *DiPaolo v. Moran*, 277 F. Supp. 2d 528, 532 (E.D. Pa. 2003), aff'd, 407 F.3d 140 (3d Cir. 2005).

Sanctions determinations are collateral to the merits and serve institutional interests independent of the disposition of the claims themselves, including deterrence of abusive litigation practices and protection of the integrity of the judicial process. *Cooter & Gell*, 496 U.S. at 396. Accordingly, dismissal under Rule 12(b)(6)—whether with or without prejudice—does not divest the Court of jurisdiction to decide a properly noticed sanctions motion arising from conduct that occurred before dismissal. *See id.*

Accordingly, if the Court grants Viasat's pending motion to dismiss under Fed. R. Civ. P. 12(b)(6), Viasat respectfully requests that the Court expressly retain jurisdiction to resolve this sanctions motion and to fashion appropriate, narrowly tailored relief.

## CONCLUSION

For the reasons stated above, the Court should grant the motion, order the corrective relief described above, and award the carefully segmented fees attributable to the violations.

Dated: March 18, 2026

Respectfully submitted,

By: */s/ A. Paul Heeringa*

John W. McGuinness
(*Pro Hac Vice* to be Requested)
A. Paul Heeringa
(Admitted *Pro Hac Vice*)
MANATT, PHELPS & PHILLIP, LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, D.C. 20036
Telephone: 202-585-6500
jmcguinness@manatt.com
pheeringa@manatt.com

FREDERICK P. SANTARELLI (PA 53901)
STEVEN C. TOLLIVER, JR. (PA 327165)
ELLIOTT GREENLEAF, P.C.
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000 (phone)
FPSantarelli@elliottgreenleaf.com
sct@elliottgreenleaf.com

*Counsel for Defendant Viasat, Inc.*

22

**CERTIFICATE OF COMPLIANCE WITH LR 7.8**

I hereby certify that, pursuant to M.D.Pa. Local Rule 7.8(b)(2), this Brief complies with the word-count limitation of Local Rule 7.8, as the Brief is less than 5,000 words (including headings and footnotes but not including the cover page, tables, signature block, or certificates) in 14-point Times New Roman font.

Dated: March 18, 2026          */s/ A. Paul Heeringa*
                               A. PAUL HEERINGA


**CERTIFICATE OF SERVICE**

I certify that, on March 18, 2026, I filed the foregoing electronically through the Court's CM/ECF system, which will send notice of same to all counsel of record.


Dated: March 18, 2026          By: */s/ A. Paul Heeringa*
                               A. PAUL HEERINGA

23