# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ASHER BRONSTIN,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**VIASAT INC.**<br><br>*Defendant.* | Case No.<br>1:25−CV−00927−KMN<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## BRIEF IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANT AND ITS COUNSEL

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

FACTS AND PROCEDURAL HISTORY ...............................................................4

STATEMENT OF QUESTIONS INVOLVED........................................................8

LEGAL STANDARD................................................................................................8

ARGUMENT ..............................................................................................................9

    A.   ViaSat's sanctions motion is itself sanctionable because it relies on factual contentions that are irreconcilably contradicted by ViaSat's own prior pleadings and sworn submissions. ..................................................................................................9

    B.   ViaSat's concealment of XYZies for over six months was a falsehood that independently warrants sanctions..................................................................................18

CONCLUSION .........................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277 (3d Cir. 2010) ...................................................................................9

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990).........................................9

*EuroOptic Ltd. v. W.L. Gore & Assocs., Inc.*, 781 F. Supp. 3d 320 (M.D. Pa. 2025) ..............................................................................................................................19

*Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277 (3d Cir. 1991) .........17

*Gaiardo v. Ethyl Corp.*, 835 F.2d 479 (3d Cir. 1987). ...........................................10

*In re Ray*, 951 F.3d 650 (5th Cir. 2020) ................................................................16

*In re Tutu Wells Contamination Litig.*, 162 F.R.D. 46 (D.V.I.), *opinion clarified*, 162 F.R.D. 81 (D.V.I. 1995)........................................................................ 20, 21

*Indus. Tech. Ventures LP v. Pleasant T. Rowland Revocable Tr.*, No. 08-CV-6227-CJS-MWP, 2012 WL 777313 (W.D.N.Y. Mar. 8, 2012)....................................15

*Maisonville v. F2 Am., Inc.*, 902 F.2d 746 (9th Cir. 1990)....................................16

*On Time Aviation, Inc. v. Bombardier Cap. Inc.*, 570 F. Supp. 2d 328 (D. Conn. 2008) ................................................................................................................ 12, 13

*Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 315 F. Supp. 2d 623 (D.N.J. 2004) ....9

**Other Authorities**

Fed. R. Civ. P. 11 ...............................................................................................8, 9

### <u>INTRODUCTION</u>

This motion is not filed lightly, but it is also not a typical Rule 11 dispute. This motion is compelled by a pattern of sworn misrepresentations that are extraordinary in both breadth and contradiction. ViaSat's own submissions to this Court, a declaration by its employee, and its verified discovery responses certified by that same employee, all *contend* that the *Plaintiff called ViaSat*. Its own sanctions motion and other parts of its discovery responses, as well as the discovery the Court compelled, contains materially *opposite and incompatible* factual conclusions, that a third party, XYZies, has potentially discoverable information and was involved in the conduct at issue. These positions cannot simultaneously be true.

ViaSat's pending sanctions motion asks this Court to punish Plaintiff for adding XYZies as a defendant in the Second Amended Complaint, despite having previously proceeded under a direct liability theory. In prosecuting that motion, ViaSat now acknowledges, for the first time in six months, that a third party "physically placed" the calls to Plaintiff. Yet, months earlier, ViaSat submitted a sworn declaration from its employee Gregory Henderson representing that no call was ever made to Plaintiff "by or on behalf of Viasat," that the telephone numbers at issue are "not associated with any vendor Viasat uses," and that "no third parties" acted on ViaSat's behalf. Those same denials formed the basis of ViaSat's

1

first motion to dismiss, where ViaSat unequivocally declared, in bold, that "it was the ***Plaintiff who called Viasat***—not the other way around." (ECF 11-1) (emphasis original). The Henderson Declaration confirms that ViaSat had received "an *inbound* call to 855-478-5112 on April 19, 2024, at 2:17 pm Pacific Time." (ECF 11-2 ¶ 12). On the record ViaSat *itself* created, the original and First Amended Complaint reasonably proceeded on a direct liability theory against ViaSat, including because ViaSat's *own pleadings*, in bold, proclaimed that the "***Plaintiff called Viasat***."

Those statements were all inaccurate.

ViaSat's own conduct, not Plaintiff's, created the conditions that necessitated the Second Amended Complaint. The entity ViaSat has been forced to identify, XYZies, is the very entity ViaSat swore for six months did not exist, whose involvement it concealed for over six months, and whose identity it disclosed only when this Court ordered it to do so. ViaSat hid the identity of a vendor with potentially discoverable information for the better part of six months, represented to the Court that the Plaintiff called ViaSat and that no third party was involved, and now, shockingly, seeks sanctions against Plaintiff's counsel for conduct that it precipitated. That warrants sanctions against ViaSat and its counsel, not Plaintiff's counsel. ViaSat's present sanctions theory is that Plaintiff should be sanctioned because his proposed Second Amended Complaint supposedly "now

2

concedes that a third party 'physically placed' the calls and that ViaSat's involvement, if any, arose only after a call transfer." (Def.'s Br. Supp. Mot. for Sanctions at 8.) But Plaintiff continued to proceed under a direct liability theory because ViaSat pled, and confirmed under oath, that no such third party existed. Instead, it contended that the Plaintiff called ViaSat, a contention that the Plaintiff knew was untrue in part based on the very recordings that Defendant cites.

The first cracks began appearing when ViaSat served verified discovery responses. Contrary to Mr. Henderson's declaration, and the original motion to dismiss that ViaSat's counsel signed, when ViaSat was asked to identify "each of the individuals that spoke with Plaintiff from your company or any of its vendors," in the discovery attached herein as Exhibit A, ViaSat answered: "Plaintiff did not speak with anyone at Viasat," and ViaSat claimed that it "located no additional information responsive to this Interrogatory." That response is nonsensical. How could the Plaintiff "call Viasat," as pled in Defendant's initial motion to dismiss, while at the same time "not speak with anyone at Viasat?" Other portions of ViaSat's discovery were similarly contradictory. For example, when asked to "state all fact in support of" the contention that the "Plaintiff called you," Defendant responded that "available records reflect Plaintiff made an inbound call to 855-478-5112 on April 19, 2024, at 2:17 pm Pacific Time." Defendant expressly referred Plaintiff to the perjured Henderson declaration and the exhibit thereto.

3

Once ViaSat finally identified XYZies, Plaintiff did exactly what Rule 11 expects of responsible counsel. He promptly sought leave to amend so that the pleadings matched the facts finally disclosed. ViaSat cannot hide a vendor, force Plaintiff to litigate on the sworn premise that no vendor was involved and a pleading that contended that the Plaintiff "called Viasat," and then seek sanctions because Plaintiff amended to name XYZies after it came to light after ViaSat hid its identity for almost six months, despite possessing knowledge of their involvement throughout the period it was making contrary sworn representations.

By withholding this information for over six months and swearing under oath that no such vendor relationship existed, ViaSat forced Plaintiff to litigate in a factual vacuum of ViaSat's own creation and then sought to sanction Plaintiff's counsel for litigating based on facts that ViaSat itself withheld. That is a misuse of Rule 11. Plaintiff has provided ViaSat the requisite twenty-one-day safe harbor notice, and ViaSat has declined to withdraw its motion. Plaintiff therefore submits this motion and respectfully asks the Court to impose appropriate sanctions.

## **FACTS AND PROCEDURAL HISTORY**

ViaSat first manufactured its false factual landscape through ViaSat's first motion to dismiss and the declaration of Gregory Henderson it submitted in support. That motion to dismiss unequivocally pled "In reality, it was the ***Plaintiff who called Viasat***—not the other way around." The motion further contended that

the "Plaintiff's call to Viasat took place at the ***exact same time*** Plaintiff's Complaint alleges Viasat called Plaintiff in violation of the TCPA."  Henderson swore that ViaSat's services are marketed primarily through internet advertisements and that consumers place calls "to Viasat or to certain third parties" to request information or purchase services. (ECF 11-2 ¶ 8.) He then declared that ViaSat had "confirmed that no third parties did so on Viasat's behalf." (*Id.* ¶¶ 9– 10.) At the same time, Henderson swore that "Viasat's records" reflected that an individual using Plaintiff's number made an "*inbound* call" to 855-478-5112 on April 19, 2024, that the caller gave the name "Ash Bronstin," expressed interest in purchasing ViaSat service, provided a credit card number, and remained on the line for "23 minutes and 41 seconds." (*Id.* ¶ 12.)

Those sworn statements naturally drove the Plaintiff to amend the Complaint to plead a direct liability theory, with the obvious corollary to the claim that Plaintiff called ViaSat being that ViaSat called him. If, as Henderson swore, and the motion to dismiss made clear, the Plaintiff (allegedly) called ViaSat, then the only disclosed actor left to sue was ViaSat itself and prove in discovery that ViaSat called Plaintiff, instead of the other way around. Plaintiff thus amended his complaint to litigate on the record that ViaSat itself presented. ViaSat repeated and intensified that same narrative in its October 8, 2025 Responses and Objections to Plaintiff's First Set of Discovery Requests attached herein as Exhibit A. The same

5

Gregory Henderson verified those interrogatory answers under penalty of perjury. The critical responses are Interrogatories Nos. 8, 10, and 11, and RFPs 8-10, which themselves are internally contradictory or at best misleading, which the Plaintiff raised with the Court, and which the Court compelled disclosure of any third parties involved in the instant conduct.

Interrogatory No. 8 asked ViaSat to "Identify each of the individuals that spoke with Plaintiff from your company or any of its vendors." ViaSat answered: "Plaintiff did not speak with anyone at Viasat" and "after conducting a reasonably diligent inquiry, Viasat has located no additional information responsive to this Interrogatory." Interrogatory No. 10 asked ViaSat to identify any third party that "made *or was involved in* the calls alleged in the complaint." ViaSat answered: "the calls alleged in the Complaint did not occur and therefore none." But Interrogatory No. 11 asked: "If you contend that the Plaintiff called you, state all facts in support of the same." There, ViaSat contended that: "available records reflect Plaintiff made an inbound call to 855-478-5112 on April 19, 2024, at 2:17 pm Pacific Time," and further gave a detailed narrative of the calls. Request for Production No. 8 sought "All contracts or documents representing agreements with any third party that dialed the calls to the Plaintiff." ViaSat answered that, "after conducting a reasonably diligent investigation and inquiry, Defendant has determined that it does not have documents responsive to this RFP." Requests for

6

Production Nos. 9 and 10 sought communications with any such third party and internal communications concerning any such third party, and ViaSat gave the same answer: after a "reasonably diligent investigation and inquiry," it had determined that it had *no responsive documents*.

That sworn discovery record, although it insinuated that a third party had potentially discoverable information and was itself internally contradictory, is exactly why Plaintiff continued to litigate on a direct liability theory against ViaSat. ViaSat's own answers said there was no vendor, doubled down on the (false) narrative that the Plaintiff called ViaSat, and did not produce a single response or page naming XYZies. ViaSat cannot now pretend that Plaintiff acted unreasonably by taking those sworn answers seriously.

Only after this Court directed ViaSat to identify any vendors involved in the calls did ViaSat identify XYZies. Plaintiff then promptly sought leave to amend to add XYZies. The proposed amendment was therefore the direct consequence of ViaSat's earlier insistence that no such vendor existed and that no such documents existed and the later revealing of information showing that these representations, including the representation that the Plaintiff called ViaSat, were false. In support of its sanctions motion, ViaSat now tells the opposite story. It argues that Plaintiff's proposed Second Amended Complaint "now concedes that a third party 'physically placed' the calls and that Viasat's involvement, if any, arose only after

7

a call transfer." It further says Plaintiff's allegation that the supposed inbound call "was instead a call that was transferred to Viasat by a vendor" is supposedly contradicted by the recordings. *Id.* Those arguments invert the history of this case. Plaintiff amended because ViaSat finally disclosed facts it had previously denied under oath. That is why the present sanctions motion is untenable and why sanctions are warranted against Defendant and its counsel.

## STATEMENT OF QUESTIONS INVOLVED

1. Should the Court sanction Defendant and its counsel under Rule 11 and/or the Court's inherent authority for filing a Rule 11 sanctions motion brought about by its own litigation misconduct?

*Suggested Answer*: Yes.

*Defendant's Anticipated Answer*: No.

## LEGAL STANDARD

By presenting a written motion to the Court, an attorney certifies that, to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the motion is not being presented for an improper purpose and its factual contentions have evidentiary support. Fed. R. Civ. P. 11(b)(1), (3). A motion for sanctions is itself subject to Rule 11. Fed. R. Civ. P. 11(c)(2), Advisory Committee Notes. If the court determines that Rule 11 has been

8

violated, it may impose an appropriate sanction on any attorney, law firm, or party responsible for the violation. Fed. R. Civ. P. 11(c)(1).

The Supreme Court has explained that Rule 11's central purpose is to deter baseless filings and streamline federal court procedure. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). The goal is to deter baseless filings, not to chill vigorous advocacy. *Id.* In the Third Circuit, the inquiry is objective, focusing on whether the challenged filing was objectively reasonable under the circumstances at the time it was presented. *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 297 (3d Cir. 2010). It is inappropriate to contest the sufficiency of a pleading through a Rule 11 motion instead of an appropriate merits motion, unless the pleading was patently frivolous at the time it was filed. *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 315 F. Supp. 2d 623, 628 (D.N.J. 2004). "It bears repeating that the target is abuse—the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987).

## **ARGUMENT**

A. *ViaSat's sanctions motion is itself sanctionable because it relies on factual contentions that are irreconcilably contradicted by ViaSat's own prior pleadings and sworn submissions.*

ViaSat's sanctions brief is irreconcilable with its first motion to dismiss, the Henderson Declaration, and its discovery responses. The brief argues that

9

Plaintiff's Second Amended Complaint adding XYZies (as well as Plaintiff's Complaint, First Amended Complaint, and "various sworn submissions") were frivolous and unsupported. To make that argument, the brief now affirmatively acknowledges XYZies' involvement in the subject conduct. And, critically fatal to its "ViaSat was never mentioned in the calls" narrative on which it seeks sanctions, ViaSat's very first motion to dismiss contended "it was the ***Plaintiff who called Viasat***—not the other way around." (ECF 11-1) (emphasis original). This is an irreconcilable discrepancy. Defendant now claims that the Plaintiff should be sanctioned for alleging that the calls involved ViaSat employees, a position it now disclaims, and which directly contradicts its signed pleadings in this litigation that precipitated the very allegedly "false" allegations in the Plaintiff's First Amended Complaint. Simply put, ViaSat's own conduct, and concealment of XYZies' involvement, directly precipitated the very conduct it now complains of.

The sanctions motion also directly contradicts the Henderson Declaration which stated unequivocally that no call was ever made "by or on behalf of Viasat," that ViaSat's calling numbers are "not associated with any vendor Viasat uses," and that "no third parties" acted on ViaSat's behalf. These statements were made in the context of, and in support of, the Defendant contending in its first motion to dismiss that the Plaintiff "called ViaSat." Defendant's Rule 11 motion cannot be squared with these statements. Either ViaSat was involved on the call (albeit with a

10

dispute as to what direction the call took place), as in the Declaration and first motion to dismiss, or a third party physically placed the calls, as ViaSat contends is sanctionable because the Plaintiff did not plead these facts. ViaSat cannot occupy both positions simultaneously in the same litigation. The Declaration and motion to dismiss were either false when they were submitted, or ViaSat's counsel made representations in its sanctions motion without the reasonable inquiry that Rule 11 itself demands. Either alternative is sanctionable.

ViaSat's problem in submitting a baseless sanctions motion is further compounded by ViaSat's verified interrogatory responses, each of which was certified by Gregory Henderson under penalty of perjury, as well as its responses to Plaintiff's requests for production. As outlined above, those responses stated that the calls "did not occur" and further doubled down on the irreconcilable narrative that the Plaintiff *called ViaSat*. But the sanctions brief treats the calls as indisputably real and as having been placed by XYZies. Indeed, its entire argument about Plaintiff's "frivolous" addition of XYZies depends on the calls having occurred in a manner attributable to XYZies and not in a manner attributable to ViaSat. Again, either the interrogatory answer denying that the calls occurred was false or Defendant's sanctions motion is false. A party cannot hide a third party's involvement in discovery and take one position in the pleadings and then seek to sanction the adversary when it pleads in line with the party's own representations.

11

*See On Time Aviation, Inc. v. Bombardier Cap. Inc.*, 570 F. Supp. 2d 328, 332 (D. Conn. 2008), aff'd, 354 F. App'x 448 (2d Cir. 2009).

*On Time* is particularly illustrative. There, the Second Circuit affirmed the district court's entering sanctions when the attorney's own motion for sanctions was unsupported by the record and objectively unreasonable. Significantly, as here, the sanctioned party "filed its opposition to summary judgment and then, approximately one month later, filed a motion for sanctions largely duplicative of its summary judgment opposition memorandum" that "merely recast these opposition arguments into a Rule 11–esque form." *Id*. The Court observed that "a firmly held conviction of the correctness of one's position does not authorize collateral attack on an opponent's legal arguments by resort to Rule 11. To hold otherwise would be to condone wasteful motion practice as well as invite responsive cross-motions for sanctions." *Id.* As further support for sanctioning the moving party, the Court further observed that it was "objectively unreasonable" for the movant to say the opponent had no factual basis when the record itself supplied support for the opponent's position. *Id.* at 334. Thus "it was objectively unreasonable for Attorney Joseph to assert that no factual basis for the argument existed." *Id.* at 334-35.

The same is true here. It is objectively unreasonable for ViaSat to assert that no factual basis existed for the Plaintiff's First and Second Amended Complaint

and statements made therein, including in the Declaration of Asher Bronstin, when ViaSat's entire strategy was to withhold the identity and involvement of a third party with potentially discoverable information and claim that the Plaintiff called ViaSat. ViaSat now seeks to sanction the Plaintiff for pleading facts in line with the own *false narrative* it strung, that the Plaintiff allegedly called ViaSat and that no third party was involved in the calls. ViaSat plainly had, and now relies upon knowledge of, its relationship with XYZies, a relationship it concealed for six months. ViaSat's previous sworn, verified statements are flatly at odds with the position ViaSat now asks this Court to credit. Counsel for ViaSat certified the sanctions motion under Rule 11 while relying on a factual predicate, XYZies' conduct, that Viasat's own pleadings, declarations, and verified discovery responses swore did not exist.

The striking feature of this record is that the contradictions all converge on a single person. Gregory Henderson submitted the Declaration stating that the Plaintiff called ViaSat, attached a screenshot to that effect, and denied any third-party involvement. Gregory Henderson then signed the Interrogatory Verification, certifying that the verified responses, which are internally contradictory but nevertheless repeated the same denials, were true. Now, in the same litigation, ViaSat's sanctions brief concedes that a third party, XYZies, was involved in the conduct and should have been named in this litigation from the start and further

13

contends that the Plaintiff and his counsel made numerous false statements regarding ViaSat's direct liability for the conduct at issue. The Henderson Declaration's characterization of the April 19 call as an "inbound call" warrants particular attention. ViaSat used this characterization to suggest that Plaintiff independently decided to call ViaSat, implying Plaintiff could not have been called by anyone and that his claim of receiving unsolicited calls was fabricated. The declaration's framing was designed to defeat Plaintiff's TCPA claim.

But Henderson made those declarations knowing full well that XYZies was involved in the calling conduct at issue. Plaintiff knew he never independently dialed ViaSat's number. He now alleges he received a call from XYZies, which transferred him to ViaSat. That would also explain why ViaSat's records would reflect an inbound call. But ViaSat said none of that and instead took the position that "it was the ***Plaintiff who called Viasat***—not the other way around." (ECF 11-1) (emphasis original). It now moves to sanction Plaintiff for proceeding more than six months in the litigation for failing to name a party that ViaSat knew all along was involved, but which it deliberately kept hidden from Plaintiff. That is precisely the kind of ball hiding Rule 11 prohibits. Either Mr. Henderson did not actually investigate before certifying his sworn statements, establishing a failure of the reasonable inquiry Rule 11(b)(3) requires, or the representations were knowingly false when made by concealing XYZies' involvement. In either case, the

14

certifications violate Rule 11(b). And because the sanctions motion was filed after these contradictions were apparent on the face of Viasat's own submissions, counsel's certification of the sanctions brief itself violates Rule 11(b).

On this point, the case of *Indus. Tech. Ventures LP v. Pleasant T. Rowland Revocable Tr.*, is illustrative. There, the court found the defendants' Rule 11 motion was "utterly without support," noted that the defendants had been reminded of contrary evidence before filing, found the motion had been contradicted by evidentiary proof, denied the motion, and granted the target's cross-motion for fees and costs incurred defending against it. No. 08-CV-6227-CJS-MWP, 2012 WL 777313, at *7 (W.D.N.Y. Mar. 8, 2012). And in *In re Ray*, the Fifth Circuit sanctioned an attorney who "sat silently by" when he was asked at oral argument if he knew of any adverse evidence. 951 F.3d 650, 653 (5th Cir. 2020). Similarly, in *Maisonville v. F2 Am., Inc.*, the court sanctioned an attorney who falsely claimed he had no notice of a status conference when he had actually attempted to cancel it. 902 F.2d 746, 749 (9th Cir. 1990).

Simply put, Plaintiff could not name XYZies in the Second Amended Complaint until ViaSat's relationship with XYZies was disclosed. ViaSat cannot simultaneously rely on the aforementioned representations and then seek to sanction Plaintiff for amending once the Court compelled ViaSat to identify a third party that ViaSat tried for six months to hide. ViaSat's own obstructive conduct is

15

the direct cause of the amended pleading ViaSat now calls frivolous, having manufactured the conditions that required the amendment and for which it now seeks sanctions. That is not a legitimate use of Rule 11. Rule 11 does not punish a party for revising pleadings when discovery finally discloses facts the opposing party had previously withheld or denied. Once ViaSat identified XYZies, Plaintiff sought leave to amend so that the pleadings matched the facts. What would have been sanctionable is the opposite, refusing to amend after the facts changed.

Rule 11 is judged based on the information known to the filer at the time of filing, defined as "an objective knowledge or belief at the time of the filing of the challenged paper that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991). Particularly problematically for ViaSat, its motion does not identify a filing that was allegedly objectively baseless when made. ViaSat should not be permitted to wield Rule 11 as both shield and sword, shielding XYZies from disclosure during discovery and then wielding a sanctions motion once Plaintiff moved to add XYZies to the case. On the facts ViaSat disclosed at the outset, Plaintiff had every reason to proceed directly against ViaSat. Plaintiff's counsel cannot be faulted for failing to plead an undisclosed vendor theory sooner. Plaintiff's decision to add XYZies in the Second Amended Complaint was made on the basis of information this Court ordered ViaSat to produce, which ViaSat finally produced in December. There is nothing

16

frivolous about a pleading that follows the evidence, especially when that evidence was withheld by the opposing party through sworn misrepresentations.

Rule 11(c)(4) requires that any sanction be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. Here, the appropriate relief is straightforward. The Court should deny ViaSat's sanctions motion, grant Plaintiff's present motion, and award Plaintiff the reasonable attorneys' fees and expenses incurred in opposing ViaSat's sanctions motion and in preparing and prosecuting this Rule 11 motion. That relief is directly tailored to the abuse at issue. ViaSat chose to file a Rule 11 motion accusing Plaintiff of sanctionable conduct on a record showing that Plaintiff initially proceeded on direct liability because *ViaSat itself had sworn no vendor was involved*, and that Plaintiff amended only *after* ViaSat finally disclosed the vendor *it had hidden*. Plaintiff should not have been forced to bear the cost of answering that motion.

Defendant's responses show why Plaintiff's litigation choices were reasonable and why ViaSat's sanctions motion is not. ViaSat's motion relies on factual contentions that its own prior sworn submissions contradict. It asks this Court to sanction Plaintiff for naming a defendant whose relevance ViaSat's own motion confirms. It seeks to leverage Rule 11 as a weapon against an opposing party who did nothing more than respond to Court-compelled disclosures. That is the definition of improper use of Rule 11. Rule 11 also imposes an "implied duty

17

of candor, which attorneys violate whenever they misrepresent the evidence supporting their claims." *EuroOptic Ltd. v. W.L. Gore & Assocs., Inc.*, 781 F. Supp. 3d 320, 333 (M.D. Pa. 2025). Rule 11 does not exist to punish a plaintiff for amending a complaint to name the third party whose identity the defendant swore did not exist, concealed for over six months, and disclosed only under compulsion. This Court should thus sanction Defendant, and its counsel, under Rule 11(b)(3) for making factual assertions it knows were either false or wholly unsupported, either at the time they were made, or in the sanctions motion itself.

> ### B. ViaSat's concealment of XYZies for over six months was a falsehood that independently warrants sanctions.

Defendant has hoisted itself on its own petard. ViaSat signed pleadings and Henderson swore, under oath, that no third party was involved in the calls and in fact that the Plaintiff called ViaSat. Plaintiff sought information about XYZies' involvement (or the involvement of any third party, for that matter) in discovery. Defendant said nothing. In so doing, Defendant and its counsel repeatedly failed to disclose the existence of a third party with potentially relevant information and thus violated Rule 11, as well as their duties of honesty and candor to the Court.

ViaSat submitted the Henderson Declaration and associated motion contenting that the Plaintiff placed the calls at issue and denying third-party involvement. ViaSat then served verified discovery responses, again through Henderson, repeating those denials. ViaSat refused to produce documents

18

reflecting its relationship with XYZies, swearing those documents did not exist, stating that it "has determined that it does not have documents responsive" to requests seeking contracts and communications with any third party that called Plaintiff. ViaSat also used those denials offensively. In resisting discovery, it repeatedly argued that Plaintiff "does not purport to plead a vicarious TCPA liability theory in the operative Complaint and expressly disclaims such a theory." ViaSat cannot insist that discovery is improper because Plaintiff has not pleaded vicarious liability, disclaim such a theory, swear no third party exists, and then seek sanctions because Plaintiff amended once a third party was finally disclosed. Only when this Court ordered identification of third parties did the truth emerge. A party that swears it lacks responsive information and is later ordered to produce it has either (a) submitted a false sworn response, or (b) failed to conduct the reasonable inquiry its certification required. Neither is consistent with Rule 11(b).

In this respect, the case of *In re Tutu Wells Contamination Litig.*, is illustrative. The attorneys in *Tutu Wells* had concealed soil test results showing high concentrations of contaminants through various means, including by arranging for the testing to be conducted under the law firm's name, informing the testing firm not to produce a final report, and not disclosing the preliminary report. 162 F.R.D. 46, 64-65 (D.V.I.), *opinion clarified*, 162 F.R.D. 81 (D.V.I. 1995). The attorneys also

19

disclosed volumes of raw data without sufficient information, thereby making an evasive response and concealing unfavorable evidence. *Id.* at 68.

> In sanctioning the attorneys in *Tutu Wells* under Rule 11, the Court remarked:

> Rule 33(c) places an affirmative duty on the party responding to an interrogatory to "specify the records from which the answer may be derived and ascertained...." Indeed, Rule 33(c) goes on to provide that 'the specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained."

*Id.* The Court held that the failure to identify any of the aforementioned circumstances added "insult to injury" because any prejudice to the defendant "was due entirely to their own lack of diligence [and] concealment." *Id.*

So too here. Defendant's failure to identify XYZies' involvement, including in response to interrogatories seeking identification of "all facts in support of the" contention "that the Plaintiff called you," and further in response to whether it contended "that a third party made or was involved in the calls alleged in the complaint," was entirely the Defendant's fault. By responding "none" and doubling down on the proposition that the Plaintiff called the Defendant, Defendant has been undone by circumstances of its own making. This Court should accordingly sanction Defendant and its counsel for concealing the very identity of a party with knowledge that it faults Plaintiff for not knowing about.

Rule 11(c)(4) requires that any sanction be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. Here,

20

the appropriate relief should consist of striking the Defendants' motions to dismiss and the Henderson declaration, compelling revised responses to Interrogatories 8, 10, and 11, and Requests for Production 8, 9, and 10, and awarding the Plaintiff the reasonable attorneys' fees and expenses incurred in opposing ViaSat's motions to dismiss, seeking production from Google Fi demonstrating that the subject calls were placed to Plaintiff, and in making two amendments to the Complaint.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion and issue the sanctions requested herein against Defendant and its counsel.

RESPECTFULLY SUBMITTED AND DATED this March 30, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.8(b)(2), I hereby certify that this brief contains 4,904 words.

DATED this March 9, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 9, 2026, I served the foregoing on all interested parties in this action by transmitting such document(s) electronically from my e-mail address, a@perronglaw.com at Perrong Law LLC, Glenside, Pennsylvania, addressed to:

A. Paul Heeringa
Manatt, Phelps & Phillips, LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, D.C. 20036
pheeringa@manatt.com

and

Frederick P. Santarelli and
Steven C. Tolliver, Jr.
Elliott Greenleaf, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
FPSantarelli@elliottgreenleaf.com
sct@elliottgreenleaf.com
jmc@elliottgreenleaf.com
las@elliottgreenleaf.com

Dated: March 9, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

22