Case 1:25-cv-00927-KMN    Document 62-2    Filed 03/31/26    Page 1 of 8

Industrial Technology Ventures LP v. Pleasant T. Rowland..., Not Reported in...

KeyCite Red Flag

Decision Vacated by Industrial Technology Ventures, L.P. v. Pleasant T. Rowland Revocable Trust, W.D.N.Y., May 1, 2017

2012 WL 777313

Only the Westlaw citation is currently available.

United States District Court,

W.D. New York.

INDUSTRIAL TECHNOLOGY VENTURES LP, Plaintiff,

v.

PLEASANT T. ROWLAND REVOCABLE TRUST, W. Jerome Frautschi Living Trust, W. Jerome Frautschi, and Diane C. Creel, Defendants.

No. 08–CV–6227–CJS–MWP.

|

March 8, 2012.

**Attorneys and Law Firms**

Gregory P. Gulia, Esq., Duane Morris LLP, New York, NY, Kevin F. Berry, Esq., Sean S. Zabaneh, Esq., Duane Morris LLP, Philadelphia, PA, for Industrial Technology Ventures, L.P.

Catherine Grantier Cooley, Esq., Julia M. Hilliker, Esq., Kevin J. Espinosa, Esq., Kevin M. Kearney, Esq., Hodgson Russ LLP, Buffalo, NY, for Pleasant T. Rowland Revocable Trust, W. Jerome Frautschi Living Trust, W. Jerome Frautschi.

Elizabeth J. Reilly–Hodes, Esq., M. Duncan Grant, Esq., Patricia A. McCausland, Esq., William A. Liess, Esq., Pepper Hamilton LLP, Philadelphia, PA, Michael R. Wolford, Esq., Sarah Snyder Merkel, Esq ., The Wolford Law Firm LLP, Rochester, NY, for Diane C. Creel.

DECISION and ORDER

CHARLES J. SIRAGUSA, District Judge.

**INTRODUCTION**

**\*1  Siragusa, J.** This diversity lawsuit alleges unjust enrichment, tortuous interference with business relationships, common law fraud, civil conspiracy and violations of the Securities Exchange Act of 1934. It is now before the Court on Defendants' Joint Motion for Sanctions, Dec. 2, 2011, ECF No. 96, pursuant to Federal Rule of Civil Procedure 11, Plaintiff's Notice of Motion, Feb. 6, 2012, ECF No. 111, seeking Rule 11 sanctions against Defendants.[1] For the reasons below, Defendants' motion is denied, and ITV's motion is granted.

**STANDARDS OF LAW**

The Court has already discussed the factual allegations in the first amended complaint ("complaint"), Sept. 5, 2008, ECF No. 4, and will not repeat them here. *See Industrial Technology Ventures LP v. Pleasant T. Rowland Revocable Trust,* 688 F.Supp.2d 229 (W.D.N.Y.2010). Federal Rule of Civil Procedure 11 states in pertinent part as follows:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) Sanctions.

(1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction

on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

(2) Motion for Sanctions. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

 **\*2**  (3) On the Court's Initiative. On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

(4) Nature of a Sanction. A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

(5) Limitations on Monetary Sanctions. The court must not impose a monetary sanction:

(A) against a represented party for violating Rule 11(b)(2); or

(B) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

(6) Requirements for an Order. An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.
Fed.R.Civ.P. 11(b)-(c).

For the purposes of ruling on a motion for sanctions with regard to the allegations in a complaint, the following

guidance is offered by *Gianoukas v. Campitiello,* 09 Civ. 1266(PAC), 2009 WL 3270808, \*8 (S.D.N.Y. Oct. 13, 2009):

> To establish a violation of Rule 11(b)(2), it must be "patently clear that a claim has absolutely no chance of success...." *E. Gluck Corp. v. Rothenhous,* 252 F.R.D. 175, 179 (S.D.N.Y.2008). Under Rule 11(b)(3), "sanctions may not be imposed unless a particular allegation is utterly lacking in support ." *Storey v. Cello Holdings,* L.L.C., 347 F.3d 370, 388 (2d Cir.2003).

*Gianoukas,* 2009 WL 3270808, \*8. In *Storey v. Cello Holdings, L.L.C.,* 347 F.3d 370 (2d Cir.2003), the Second Circuit, reviewed a district court's imposition of sanctions. The district court determined that the defendant and counsel violated Rule 11 by, inter alia, "making unsupported factual contentions and unwarranted denials of factual contentions...." *Id., at 388.* The Second Circuit vacated the sanctions, stating, "[w]ith regard to factual contentions, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.' *O'Brien v. Alexander,* 101 F.3d 1479, 1489 (2d Cir.1996) (interpreting the 1993 amendment to Rule 11(b))." *Id.* Accordingly, the Court will review Defendants' contentions to determine if the challenged aspects of the complaint are utterly lacking in support.

## ANALYSIS

### *Introduction*

In the Memorandum of Law in Support of Defendants' Joint Motion for Sanctions, Dec. 7, 2011, ECF No. 98 (filed as a sealed document), Defendants contend that the following allegations in the complaint are directly contradicted by evidence in the record: (1) "Creel Intentionally Delayed Taking Action on the Investor Term Sheet"; (2) "Creel Presented Wilson and Other Board Members with a 'Take it or Leave it Term Sheet from the [Trusts]"; and (3) "During the IDFA Conference ... Ecolab Representatives Discussed Ecolab's Strong Interest [i]n Purchasing Ecovation with Hagen and Creel." *Id.,* at i. The Court will review each argument in order.

### *Investor Term Sheet*

 **\*3**  In the complaint,[2] ITV makes the following allegations concerning Creel's handling of the investor term sheet:

Case 1:25-cv-00927-KMN    Document 62-2    Filed 03/31/26    Page 3 of 8

Industrial Technology Ventures LP v. Pleasant T. Rowland..., Not Reported in...

53. Upon information and belief, Creel never entered into good faith and arms-length discussions with the Lenders regarding the Investor Term Sheet.

54. Creel intentionally waited until just days before the expiration of the Waiver Extension to finally meet with the Board to explain that the Lenders were completely displeased with the investment plan set forth in the Investor Term Sheet. Creel presented the Board with a "take it or leave it" term sheet from the Lenders (the "Lender Term Sheet") and told the Board that the Lenders threatened foreclosure after the expiration of the Waiver Extension if the Board did not unconditionally accept the Lender Term Sheet.

55. The Lender Term Sheet provided for an increase in the Line of Credit from about $30 million to about $50 million.

Compl. ¶¶ 53–55. Defendants contend that, "[t]hese allegations are demonstrably false, based on documents that ITV has had in its possession since June of 2006." Def.s' Mem. of Law at 7. Each side sets out a timeline of events surrounding the investor term sheet and the expiration of the Trusts' loan. Consolidating both timelines shows the following:

| Date | Event |
| --- | --- |
| 12/21/05 | The Board unanimously approves retention of JP Morgan to pursue a sale or refinancing of the company. |
| 2/10/06 | The Board unanimously approves amendment of the Trusts' line of credit, waiving default under the original agreement. The agreement expires on June 30, 2006. |
| 3/31/06 | JP Morgan reports to the Board on its progress and the Board encourages JP Morgan to continue its efforts. |
| 4/18/06 | JP Morgan updates the Board on progress on potential capital sources in the event the company cannot be sold. The Board, concerned with distracting management, encourages JP Morgan to continue with its efforts to raise capital and minimizing management's involvement. Ed Becker ("Becker"), a director appointed by Sterling, expresses that several of the Series A investors would be interested in investing in the Company, depending on the structure and valuation of the investment. |
| 5/8/06 | Creel assures the Board that the June 30, 2006, expiration date of the current line of credit "will not be an issue." Handwrtten notes by Kenneth Garcia (Chief Financial Officer for Ecovation), May 8, [2006], Berry Decl. Ex. 62, Jan. 11, 2012, ECF No. 103–5. |
| 6/1/06 | Creel reports to the Board that the Company has not received an acceptable purchase offer. The Trusts' line of credit expires in 29 days. Creel informs ITV's directors on the Board that the Company needed a term sheet as soon as possible to consider further investment by ITV to determine whether the Trusts would agree to participate. Becker states he will lead the effort on behalf of the Series A investors. Creel emphasizes the Company will be out of cash by the first week in July. |

Case 1:25-cv-00927-KMN    Document 62-2    Filed 03/31/26    Page 4 of 8

Industrial Technology Ventures LP v. Pleasant T. Rowland..., Not Reported in...

| 6/14/06 | Series A investors submit Investor Term Sheet. |
|---------|------------------------------------------------|
| 6/16/06 | Creel has a conversation with a representative of the Trusts concerning the Series A Investors' term sheet. Creel, in an email addressed to Becker and others, informed Becker that the Trusts expressed concern about whether their term sheet offered enough money, that they would probably not agree to a line of credit at 10% interest, that they were unwilling to share seniority on the debt, and wondered why Creel and another Company officer were not involved in creation of the Investor Term Sheet. Diane Creel email of Jun. 16, 2006, 6:10 AM, Subj: Call with J & P Advisors on the Term Sheet, Kearney Aff. Ex. 6, Dec. 7, 2011, ECF No. 97 (filed under seal). |
| 6/19/06 | Creel discusses Investor Term Sheet with Frautschi and Rowland. |
| 6/22/06 | Creel provides Series A investors with the Trusts' term sheet. |

**\*4** Viewing the documents submitted in support of ITV's allegations in paragraphs 53 through 54 of the complaint, the Court determines that those allegations are not utterly lacking in support. Defendants' arguments are more properly addressed to the fact finder. Whether a jury, based on the evidence presented, would conclude that Creel "intentionally" waited before presenting the June 2006 terms of the Trusts to the Board remains an issue for trial. The chronology of events, and the email that Creel sent on June 17, 2006, to Garcia, forwarding the one she sent to Rhona earlier the same day, show Creel was unconcerned about the June 30 deadline date until the first of June, and lend support to ITV's allegation that Creel acted intentionally to delay seeking funding from the Series A investors until it was too late.[3]

### "Take It, or Leave It"

Defendants also cite to language in the complaint alleging that Creel essentially presented the Board with a take it, or leave it proposition in the form of the Trust Term Sheet for extension of the line of credit. The complaint alleges:

54. Creel intentionally waited until just days before the expiration of the Waiver Extension to finally meet with the Board to explain that the Lenders were completely displeased with the investment plan set forth in the Investor Term Sheet. Creel presented the Board with a "take it or leave it" term sheet from the Lenders (the "Lender Term Sheet") and told the Board that the Lenders threatened

foreclosure after the expiration of the Waiver Extension if the Board did not unconditionally accept the Lender Term Sheet.

Compl. ¶ 54. Eric Becker[4] testified that the Trusts' term sheet was "put on the table as take it or leave it, and leave it meant we [the Trusts] will foreclose on the company." Becker Dep. 56:21–24, Berry Decl. Ex. 3. Paul R. DiBella testified at his deposition, "[w]e were told that here's a term sheet, take it or leave it." DiBella Dep. 309:2–4, Berry Decl. Ex. 6. Defendants contend that ITV ignored evidence of negotiated terms, which evidence "directly contradicts [ITV's] 'take it or leave it' allegation." Def.s' Mem. of Law at 14. Specifically, ITV requested that the Trusts extend the loan period to December 31, 2008, and the Trusts extended it, after negotiations, to June 30, 2008, and the Trusts "also agreed to amend a financial covenant to the benefit of Ecovation." *Id.* ITV counters that there is evidence the Trusts' term sheet was essentially non-negotiable and that "nonnegotiable" and "take it or leave it" are synonymous. In any event, witnesses characterized the Trusts' term sheet as non-negotiable. *See, e.g.,* Becker Decl. 105:3–4, Berry Decl. Ex. 105, Feb. 6, 2012, ECF No. 112–3; Wilson Dep. 142:1–5 ("this term sheet was presented to us with—with the threat of foreclosure and absolute and definite no negotiation attached to it."), Berry Decl. Ex. 16. The Court concludes that the allegation Creel presented a take it, or leave it, term sheet from the Trusts is supported by some evidence.

### *Intertional Dairy Foods Association ("IDFA") Conference*

**\*5** Defendants also argues that ITV's proposed second amended complaint[5] alleges that Creel had discussions with an individual from Ecolab Food & Beverage concerning Ecolab's interest in purchasing Ecovation. Def.'s Mem. of Law, at 15–16. The operating pleading alleges that "the Lenders and Creel engaged in secret negotiations with Ecolab that were never disclosed to the Board or the Institutional Investors." Compl. ¶ 78. Further, the complaint alleges that these secret negotiations took place after the summer of 2006, when "it appeared to the Board and the Institutional Investors that Ecolab was no longer considered a potential buyer" of Ecovation. Compl. ¶ 77. Defendants cite to the deposition testimony of who it claims were the four participants in the conversations, each of whom "provided clear and direct sworn testimony that the possibility of Ecolab acquiring Ecovation was not mentioned at the IDFA conference." Def. Mem. of Law, at 17. ITV cites to what it claims is contradictory evidence in support of its allegations.

Wilson, ITV points out, testified that one of the participants in the conversation, Dan Hagen (a senior vice president of Ecovation), told him on July 17, 2008, that he, Hagen, and Creel discussed Ecolab's interest in buying Ecovation:

> A. I called Dan and I asked him if he was aware that we'd filed suit against the lenders and Creel. He was—he was—was, in fact, aware of that.
>
> And I said, I had heard that he was party to discussions with Ecolab at a trade show in Orlando, Florida.
>
> He said he had prearranged a meeting with a representative from Ecolab and they did, in fact, meet and there was a discussion of Ecolab's strong interest in acquiring Ecovation....He said he believed it was the week of January 19th.

Wilson Dep. At 414:10–24, 415:6–7. Wilson memorialized the conversation in a memorandum to "The Ecovation File."[6] Wilson Memo, Jul. 17, 2008, Berry Decl. Ex. 95. ITV's Memorandum of Law also points out evidence supporting an inference that Hagen and Creel are lying when they claim no discussions took place with Ecolab at the IDFA conference on the sale of Ecovation to Ecolab. Pl.'s Mem. of Law, at 27.[7] The Court is convinced that sufficient evidence supports the allegations in the complaint.

### Dismissed Claim

Defendants contend that ITV continues to pursue a tortious interference theory even after a claim based on that theory was dismissed by the Court. Def.s' Mem. of Law, at 20. With regard to Count VI, the Court previously determined,

> The Court finds that although the pleading relies on the Investor Term Sheet, to which the Trusts were a potential party, the allegations also show that as a result of the Trusts interference with ITV's relationship to AnAerobics,[8] ITV was no longer able to participate in financial arrangements with AnAerobics. Accordingly, the Court determines that ITV has plead a plausible claim of tortious interference.

**\*6** *Industrial Technology Ventures LP v. Pleasant T. Rowland Revocable Trust,* 688 F.Supp.2d 229, 244 (W.D.N.Y.2010). With regard to Count VII, the Court determined,

> the Trusts' alleged interference with ITV's right of first refusal, the basis for ITV's Count VII claim against the Trusts, is not plausible, since ITV did not have the right of first refusal with regard to debt financing. Further, the loan from the Trusts was unanimously approved by the board of directors. (First Am. Compl. ¶ 61.) However, neither the Trusts memorandum in support of its motion, nor its reply memorandum, addresses ITV's allegation that it "was also engaged in a business relationship with the Company through the Amended Certificate, which provided ITV with certain anti-dilution rights." (First Am. Compl. ¶ 152.) Accordingly, at this stage of the lawsuit, the Court determines that the first amended complaint states a plausible claim with regard to tortious interference with ITV's relationship to AnAerobics based on the Amended Certificate's anti-dilution rights.

*Id.,* at 245. Whether the acts alleged to have been undertaken by the Trusts amount to tortuous interference with the anti-dilution rights remains a jury question. It does not appear to the Court that ITV is pursuing a claim that has been dismissed by the Court.

### Rule 11 Sanction

Defendants have presented no basis for sanctioning ITV as a result of the allegations in the complaint. Nothing presented to the Court in the voluminous exhibits meets the requirement that a particular allegation is utterly lacking in support. In fact, the Court determines that sufficient questions of fact have been presented in the evidentiary materials on the sanctions motion that if this were a motion pursuant to Rule 56, the Court would be precluded from awarding summary judgment to either side.

Case 1:25-cv-00927-KMN    Document 62-2    Filed 03/31/26    Page 6 of 8

Industrial Technology Ventures LP v. Pleasant T. Rowland..., Not Reported in...

### *ITV's Cross–Motion for Sanctions Based on Defendants' Rule 11 Motion*

In its memorandum of law opposing Defendants' joint motion for sanctions, ITV sought sanctions against Defendants arguing that Defendants had no basis to bring a Rule 11 sanctions motion against them and that fact justifies an award to ITV of attorney's fees and costs incurred in defending against the unwarranted Rule 11 motion. Subsequently, on February 6, 2012, ITV filed a separate motion for sanctions, ECF No. 111. In that application, ITV pointed out the Advisory Committee Notes to the 1993 Amendments to Federal Rule of Civil Procedure 11, in which the Committee stated that one would rarely ever need a cross-notice of motion for sanctions under Rule 11, since the court may award reasonable expenses and attorney's fees to the prevailing party. ITV's Mem. of Law, at 2, Feb. 6, 2012, ECF No. 111–1. Moreover, ITV seeks "an additional sanction against the Defendants in order to deter future violations of Rule 11." *Id.* ITV points out that it "reminded the Defendants about evidence contradicting arguments in their motion before the Defendants filed their motion." *Id,* at 3. ITV has also produced a voluminous record with 111 exhibits in support of their position that Defendants had no basis for bringing a Rule 11 motion.

**\*7** In *Safe–Strap Co., Inc. v. Koala Corp.,* 270 F.Supp.2d 407 (S.D.N.Y.2003), the district court recited the law on sanctioning a party for filing a baseless motion for sanctions, writing that,

> Rule 11(c) (1)(A)[9] allows a court, "[i]f warranted, ... [to] award to the party prevailing on the motion [for sanctions] the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." Fed.R.Civ.P. 11(c) (1)(A). In short, "the filing of a motion for sanctions is itself subject to the requirements of [Rule 11] and can lead to sanctions." Fed.R.Civ.P. 11 advisory committee's note (1993 Amendments). "Thus, where a party's motion for Rule 11 sanctions is not well grounded in fact or law, or is filed for an improper purpose, a court my find itself in the position of imposing Rule 11 sanctions on the moving party and/or her attorney." Georgene M. Vairo, Rule 11 Sanctions: Case Law Perspectives And Preventive Measures § 4.01[c][3][F] (2d ed. Supp.1994).

*Safe–Strap Co., Inc.* 270 F.Supp.2d at 421. Such is the situation here. Not only has the Court found that Defendants have failed to show that ITV's allegations were utterly without support, but the Court has also determined that Defendants' joint motion for sanctions against ITV itself is utterly without support. Defendants argued in their memorandum in support that,

> At a minimum, defendants request the Court to strike lTV's fraud claims and the demonstrably false allegations contained in lTV's Second Amended Complaint, and impose a monetary sanction that will deter lTV and its counsel from any future violations. Defendants believe a sanction of $100,000, an amount that is far less than the defendants' costs of investigating and defending the fraud claims, responding to the motion to amend, and bringing this motion, will deter lTV and its counsel from future violations of Rule 11.

Def.s' Mem. of Law, 24. Since the Court has determined that Defendants' motion for sanctions is without support and has been contradicted by evidentiary proof, the Court awards ITV's counsel costs and attorney's fees incurred by ITV in defending against the Rule 11 sanctions motion. ITV is directed to file proof with the Court of the applicable costs and fees, and will permit defense counsel an opportunity to respond.

### CONCLUSION

ITV's motion for leave to file a sur-reply memorandum of law, Feb. 6, 2012, ECF No. 112, is granted. Defendants' Joint Motion for Sanctions, Dec. 2, 2011, ECF No. 96, is denied. ITV's cross-motion for sanctions, Feb 6, 2012, ECF No. 111, is granted, with sanctions imposed as indicated above. ITV shall have until March 15, 2012, to file papers in support of an award of attorney's fees and costs, and Defendants shall have until March 29, 2012, to file responsive papers. The Court will thereafter issue an Order containing the amount allowed for attorney's fees and costs.

IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 777313

Footnotes

Case 1:25-cv-00927-KMN    Document 62-2    Filed 03/31/26    Page 7 of 8

Industrial Technology Ventures LP v. Pleasant T. Rowland..., Not Reported in...

ITV also moved to amend the operative pleading, Jun. 2, 2011, ECF No. 62, moved to substitute exhibits, Aug. 22, 2011, ECF No. 84, and moved for leave to file a sur-reply memorandum of law on the sanctions motion, Feb. 6, 2012, ECF No. 112. The first two motions, ECF Nos. 62 and 84, are pending before U.S. Magistrate Judge Marian W. Payson pursuant to the Court's Order, Mar. 23, 2010, ECF No. 39, referring the case for resolution of all nondispositive motions. The Court granted ITV's motion to file a sur-reply and considered those papers in reaching its decision on the two pending motions before it.

Defendants also cite to portions of the proposed second amended complaint. However, that document is not yet before the court as a pleading in this case.

Relevant excerpts from Creel's email to Rhona include the following:

I believe we can all agree that this debt vehicle is better for all shareholders than a series A extension.... As I have said before, these issues are up to JP and the outcome of how this term sheet is structured is also in their hands. Whatever demands they make will need to be met, because in a couple of weeks they will own the company if this doesn't get done. I think it is in everyone's best interest to get it done, and for it to go quickly and as simply as possible. If there is one VC that is creating the major issues, they will have to fall in line, or others will have to take up their position, If we get to a point where the agreement cannot be negotiated, then JP have to decide how they exercise their pivotal position in the future of the company....JP will continue in the drivers seat after this vehicle is in place by holding 50% of the debt.

ITV's memo in opposition, at 4, contains this information about the Board of Directors:

Until July 2006, the board had seven directors. Four directors were designated by Series A stock owners and three by common stock owners. ITV designated Edward Wilson ("Wilson"), Sterling designated Eric Becker ("Becker"), and Cargill designated David Patchen ("Patchen"). The Series A stock agreement designated Creel as the fourth Series A representative. The common stock owners designated Frautschi, Slocum, and David Call ("Call").

ITV's motion to amend the complaint is pending decision.

Wilson evidently wrote all his typewritten communications entirely in capital letters. The Court has changed the case for this quotation.

Hagen's resume indicates that he arranged for Ecovation's acquisition by Ecolab in January 2007, which is the month and year of the IDFA conference and five months prior to the time that the Defendants. witnesses claim an acquisition was first discussed. Berry Decl., Ex. 91 (ITV0047895) ("Identified a strategic buyer for the company in January 2007 leading to the sale of [ ] Ecovation, Inc. to publically traded Ecolab, Inc. for $210 million.").

Creel wrote a memorandum to the board of directors in June 2007 announcing the potential Ecolab acquisition and indicated that the discussions "started over a meeting Dan Hagen and I had with [Ecolab] at the IDFA Conference in Florida on how we might work together." Berry Decl., Ex. 24 (E00012261).

Minutes of an Ecovation board meeting on August 2, 2007 state that the acquisition dialogue started during the IDFA conference. Berry Decl., Ex. 78 (FRITV007098–99) ("Ms. Creel then reviewed the recent visit made by various Ecolab personnel as a follow-up to the dialogue that started when she met with Ecolab representatives at the IDFA conference in 2/2007 and has continued since then as Ecolab has expressed an interest in possibly acquiring [Ecovation].").

Ecovation provided Morgan Joseph, the company preparing a fairness opinion concerning the proposed acquisition, with an acquisition timeline that began with the following event: "January 2007 Ecovation is introduced to Ecolab at the IDFA forum." Berry Decl., Ex. 39.

A report from Creel to the board of directors regarding the proposed acquisition with Ecolab indicates that Ecovation met Ecolab at the IDFA conference in January 2007. Berry Decl., Ex. 38 (CEO Report at E00066097).

Pl.'s Mem. of Law, at 27–28 (footnotes omitted).

8        AnAerobics is the former name of Ecovation, Inc. Hoover's Company Records, Evocation, Inc. (Jan. 27, 2009).

9        As amended in 2007, the current Rule provides, in subsection (c)(2), that, "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." The 2007 amendments were stylistic only. Advisory Committee Notes, 2007.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.