## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ASHER BRONSTIN,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**VIASAT INC.**<br><br>*Defendant.* | Case No.<br>1:25−CV−00927−KMN<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## REPLY IN SUPPORT OF MOTION
## FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

ViaSat's Opposition confirms the very problem the Second Amended Complaint ("SAC") seeks to correct. ViaSat now contends that a third party, XYZies, "physically placed the calls" and that Plaintiff was transferred "between unidentified individuals." (ECF No. 56 at 6, 8). Yet, for over six months, ViaSat told this Court the opposite: that "it was the ***Plaintiff who called Viasat***—not the other way around" (ECF 11-1 at 7) (emphasis original), that "no third parties" did so on ViaSat's behalf (ECF 11-2 at ¶ 9-10), that ViaSat had no documents reflecting any third-party involvement, and that "the calls alleged in the Complaint did not occur and therefore none" were involved as third parties. ViaSat disclosed XYZies' identity only when this Court ordered it to do so.

The proposed amendment does exactly what Rule 15 contemplates: it conforms the pleadings to facts revealed in discovery. The SAC adds XYZies as a directly liable defendant for physically placing the calls and reframes the claim against ViaSat as one of vicarious liability, a theory that was unavailable to Plaintiff so long as ViaSat swore no third party existed and further swore that the Plaintiff called ViaSat. ViaSat's three arguments against amendment, futility, prejudice, and bad faith, each fail. More fundamentally, each depends on ViaSat's ignoring that its own sworn misrepresentations created the conditions necessitating the amendment it now opposes. The motion should be granted.

## ARGUMENT

*A. The proposed amendment is not futile.*

ViaSat devotes the bulk of its Opposition to futility, arguing the SAC would fail on jurisdictional standing and pleading grounds. (ECF No. 56 at 9-12). But not only does ViaSat conflate its contested factual narrative with legal insufficiency, it does so based on its own misrepresentations at the outset of this litigation. The futility standard under Rule 15 reflects a lighter version of the Rule 12(b)(6) standard. The Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). But, unlike a Rule 12(b)(6) motion, amendment should be denied as futile only where the deficiency is "clear," not merely because the party opposing amendment threatens to file a motion to dismiss. *In re: L'Oreal Wrinkle Cream Mktg. Pracs. Litig.*, No. 2415, 2015 WL 5770202, at *4 (D.N.J. Sept. 30, 2015) ("Rule 15 futility does not contemplate substantive motion practice on the merits of the claims . . . If a proposed amendment is not *clearly* futile, then denial of leave to amend is improper."). ViaSat's arguments against amendment fall well short of this standard.

First, consider ViaSat's chief argument, that the proposed SAC fails to adequately plead traceability to ViaSat. In support of that proposition, ViaSat argues that the recordings and carrier records foreclose any plausible inference that

Plaintiff's injury is fairly traceable to ViaSat. But the recording of the second call, which the parties and the Court now have, does not help ViaSat. It helps Plaintiff.

The recordings of the calls don't disprove traceability. If anything, they confirm it. The recordings' structure tells the story. Both calls begin with the same initial speaker who collects basic clerical and demographic information, including the Plaintiff's name and zip code, while at the same time making clear that the purpose of the call is to sell internet services. ViaSat sells such internet services. At approximately 1 minute and 52 seconds into the second call, that same speaker on the first call, who acknowledged that the "call has declined," states: "I am going to connect your call to the licensed agent in your zip code." A new speaker, "Angel," a salesman, then takes over, identifies himself as a "home services advisor," and proceeds to pitch Plaintiff on ViaSat's satellite internet service at specific pricing, $114 per month with a $20 promotional discount. Angel collects Plaintiff's name, address, email, date of birth, last four digits of his Social Security number, and his credit card information, and processes a $300 upfront payment for installation of ViaSat service. He then schedules a ViaSat installation appointment.

The timing of the transfer corroborates the SAC's theory. Plaintiff's recording of the full call runs 25 minutes and 22 seconds. The transfer to "Angel" occurs at approximately 1 minute and 52 seconds. The post-transfer portion of the call, from the moment Plaintiff is connected to the "license[d] agent" to the end,

thus lasts approximately 23 minutes and 30 seconds. That is effectively identical to the 23 minute and 41 second duration of the purportedly "inbound" call reflected in ViaSat's own records, and almost identically corresponds to the recording telling the Plaintiff to wait to be transferred. (ECF 11-2 at 7.) It is also consistent with ViaSat's position taken at the outset of this litigation that when the "Plaintiff called ViaSat," the Plaintiff spoke with a ViaSat employee (presumably Angel).

That call record further reflects that the purportedly "inbound call" was received at "16:17:17" Pacific Time. (*Id.*). Plaintiff's Google Fi carrier records show the call was received at 21:14:51 Zulu, SAC ¶ 45, which is roughly consistent by calculation when accounting for the initial pre-transfer portion of the call and ringing time between when the call was placed and answered. The nearly exact alignment between ViaSat's recorded call duration and the post-transfer portion of Plaintiff's recording is powerful circumstantial evidence that what Mr. Henderson falsely characterized in his declaration as an "inbound call" to ViaSat was, in fact, a transfer from XYZies to ViaSat, precisely what the SAC alleges. ViaSat's Opposition does not address this timing evidence.

Next, the substance of the call further supports traceability. "Angel" pitched exclusively ViaSat's satellite internet services. The only other "internet provider" mentioned was "AirLink," which Angel offered as an alternative when Plaintiff expressed concern about a $300 upfront charge. But AirLink is a regional ISP that

operates only in rural Oklahoma and does not offer services in Plaintiff's provided zip code in California. *AirLink Internet Services – Connecting Rural Oklahoma*, http://airlinkinternet.net/ [https://archive.li/0Gu77] (listing various towns in Oklahoma and noting that "AirLink Internet Services has been providing wireless high-speed Internet in Northeast Oklahoma for more than 10 years."). AirLink was not a genuine alternative available to Plaintiff in the ZIP code he gave. Instead, it appears to have been provided as an alternative to give the illusion of choice. And that is exactly what happened. Plaintiff chose the ViaSat service, Angel processed the sale, and ViaSat charged Plaintiff's credit card and sent the Plaintiff an email.

The agent's admissions about his employer are devastating to ViaSat's position and, if anything, show why the Plaintiff would not have been justified in relying on multiple points of contradictory and confusing information in making the allegations he did in his original and first amended complaints. The recording reflects that, when Plaintiff pressed Angel on the identity of his company, Angel first identified himself as a "ViaSat Authorized Retailer." When Plaintiff asked for the actual entity name, Angel directed him to a website called "GetTheFastestInternet.com," which he described as "the name of our company, basically . . . with ViaSat." Plaintiff attempted to access that website during the call and reported that it returned a "site can't be reached" error, and that website still does not exist to this day, a fact readily ascertainable by this Court. *Harty v. Nyack*

5

*Motor Hotel Inc.*, No. 19-CV-1322 (KMK), 2020 WL 1140783, at *3 n.1

(S.D.N.Y. Mar. 9, 2020) ("The Website is indeed defunct, and the Court may take

judicial notice of this fact."). Angel could not explain why the website did not

work. He could not provide a physical address. He could not identify any

legitimate entity registered with the California Secretary of State.

Plaintiff then informed Angel that federal law requires callers to identify

their true entity name within 30 seconds of a call. 47 C.F.R. § 64.1200(d)(4).

Angel acknowledged this requirement by saying "I know that," but could offer

nothing more as to his identity than "ViaSat Authorized Retailer." When Plaintiff

pointed out that no entity by that name exists in California, Angel abandoned any

pretense of independent identity, stating, "It's only ViaSat. Basically, it's only

ViaSat. We are only authorized to provide the service to the customers."

At bottom, the recording ends with Angel admitting that the entity he works

for "is only ViaSat." Angel could identify no independent corporate existence.

Angel operated behind a nonexistent website. Angel sold only ViaSat's products

(alongside one sham alternative unavailable in Plaintiff's area). Angel had access

to ViaSat's pricing, promotional discount structure, installation scheduling system,

email sending system, and credit card processing. He collected Plaintiff's personal

information and credit card for the sole purpose of completing a ViaSat

transaction. And ViaSat's own records confirm the transaction was completed. In

addition to Plaintiff's own evidence, Mr. Henderson swore that the Plaintiff made a purchase. Plaintiff provides evidence of the same, including that ViaSat emailed Plaintiff directly. If that does not establish traceability, nothing does.

ViaSat's reliance on the carrier records is similarly unavailing. ViaSat observes that the 931- and 530- calling numbers were "not assigned to, used by, or associated with Viasat." But that's unsurprising. As the SAC clearly alleges, those numbers were *spoofed*, and the IP Horizon records reflect that one of them *wasn't even assigned to a customer*. But, as the Plaintiff's Google Fi records also reveal, the Plaintiff unquestionably received calls from those numbers, which he recorded. The carrier records are entirely consistent with the theory the calls were spoofed.

ViaSat relatedly argues that Plaintiff's prior amendments demonstrate a "repeated failure to cure deficiencies." *Katz* is inapposite. The plaintiff there sought amendment, despite having failed to identify any additional facts or evidence that cured the deficiencies raised in the original motion to dismiss. *Katz v. CrossCountry Mortg., LLC*, No. 1:22-CV-00925, 2022 WL 16950481, at *7 (N.D. Ohio Nov. 15, 2022). But here, the SAC reflects a fundamentally different theory grounded in *facts*: specifically, the involvement of XYZies, that ViaSat itself disclosed only under Court compulsion. The original complaints alleged direct liability because ViaSat's own motion, declaration, and discovery responses all denied third party involvement and asserted that Plaintiff had called ViaSat.

Plaintiff could not have pled XYZies' involvement any sooner because ViaSat denied that any such involvement existed categorically and under oath.

Finally, ViaSat's factual standing challenge under Rule 12(b)(1) is not the appropriate vehicle for resolving these disputes on a motion to amend. The question is whether the SAC's allegations, if true, would establish standing. They plainly would. As pertinent to ViaSat, the only standing argument that ViaSat itself has standing to challenge, traceability, fails, as Plantiff clearly alleges a theory of vicarious liability traceability under both the statutory text and any one of the three generally accepted theories of vicarious liability in TCPA actions. 47 U.S.C. § 227(c)(5) (extending vicarious liability to "persons" who have "received more than one telephone call within any 12-month period by or *on behalf of the same entity* in violation of the regulations," even if that telemarketer is not under the seller's control). Plaintiff has thus more than adequately alleged an injury traceable to both parties: direct liability as to XYZies, and vicarious liability as to ViaSat.

B. *The proposed SAC pleads a plausible TCPA vicarious liability theory as to ViaSat.*

ViaSat's Rule 12(b)(6) argument fares no better. The SAC pleads both direct liability against XYZies for physically placing the calls and vicarious liability against ViaSat for the calls XYZies placed on its behalf. Vicarious liability under the TCPA is firmly established. Judge Brann of this Court has already held that information relating to vicarious liability is properly the subject of discovery and is

8

generally not resolvable on a motion to dismiss. *Jackson v. Aragon Advert., LLC*, No. 4:23-MC-00812, 2023 WL 7413332, at *2 (M.D. Pa. Nov. 9, 2023). This Court has noted that there are "two general approaches" to demonstrating vicarious liability in the TCPA context. *Fridline v. Integrity Vehicle Grp., Inc.*, No. 4:23-CV-01194, 2023 WL 7170642, at *3 (M.D. Pa. Oct. 31, 2023):

> One line of cases generally finds that a telemarketing contract for one company to call and solicit potential customers on another company's behalf plausibly alleges an agency relationship sufficient to survive dismissal; more evidence of control is, of course, required later in the litigation. This was the approach taken by my late colleague, the Honorable James M. Munley, in *Hartley-Culp v. Green Tree Servicing, L.L.C*

> Yet other courts have applied a harsher standard. These decisions find that alleging a contractual telemarketing relationship, without more, implausibly alleges the control over calls necessary to demonstrate agency. They therefore require additional pleadings making specific allegations as to the control exercised by the defendant over the telemarketing company with whom it contracted. Thus, where a plaintiff has been called by a telemarketer and transferred to a defendant's line, for example, courts taking the former approach have found that these facts plausibly allege an agency relationship; courts taking the latter approach have found an agency relationship to remain implausible without additional allegations of control over the means by which the initial call was made.

The *Fridline* Court stated that it was "not persuaded that it must apply a harsher plausibility standard." *Id.* at *4 and held that the plaintiff stated a claim when the plaintiff "received a call from Vanguard soliciting Integrity's Services, and he received mail from Vanguard containing Integrity's contract. On a motion to dismiss, that is enough." *Id.* at *7. That concern is particularly acute here, where ViaSat's entire defense has been to point the finger at a third party whose identity

9

ViaSat itself concealed. As *Fridline* and other cases in this Court make clear, *e.g.*, *Hartley-Culp v. Green Tree Servicing, LLC*, 52 F. Supp. 3d 700, 702 (M.D. Pa. 2014), what the Plaintiff has pled is more than enough, particularly on the exceedingly liberal standard that this Court applies at determining whether or not to even permit amendment as an initial matter.

The facts of this case provide substantial factual support for vicarious liability at this stage. The indicia of an agency relationship are striking. Angel sold ViaSat's product, had real-time access to ViaSat's pricing, promotional offers, and installation scheduling system, processed a credit card payment that ViaSat attempted to bill directly, and eventually identified himself as calling from "only Viasat" and conceding "[w]e are only authorized to provide the service to the customers." These facts give rise to a plausible inference either (1) that the caller was calling on behalf of ViaSat, even if, *arguendo*, the caller was not subject to ViaSat's control, or (2) facts sufficient to plead vicarious liability under any one of the three generally accepted theories of actual agency, apparent authority, or ratification. Whether ViaSat can ultimately be held liable requires discovery into the relationship between ViaSat and XYZies, discovery that ViaSat has thus far blocked and which the parties have agreed to stay.

What's more, ViaSat's futility arguments regarding the direct liability claims against XYZies are not even properly raised by ViaSat at all. As the Plaintiff

10

observed in his motion to amend, a current defendant lacks standing to assert

futility on behalf of a non-party. *Conrad v. Lopez De Lasalle*, 681 F. Supp. 3d 371,

383 (D.N.J. 2023) ("[A] current party unaffected by a proposed amendment lacks

standing to raise a futility argument on behalf of non-parties in opposition to a

motion for leave to amend or supplement a complaint."). XYZies will have its own

opportunity to defend itself. ViaSat cannot make such arguments for XYZies.

   C. *ViaSat's bad faith arguments are similarly unavailing.*

   ViaSat relatedly argues that it will be prejudiced by the proposed

amendment, which it contends is made in bad faith. Not so. ViaSat identifies two

forms of alleged prejudice. First, it contends that granting leave will "moot" the

pending Motion to Dismiss and make Plaintiff's pleading a "moving target."

However, the prospect of responding to an amended pleading is a routine incident

of litigation. *See Miller v. O'Brien Constr., Inc.*, No. 4:19-CV-01611, 2021 WL

510072, at *4 (M.D. Pa. Feb. 11, 2021) ("Altering a pleading likely always causes

some inconvenience to the opposing party.")

   If mooting a pending motion to dismiss were sufficient to deny amendment,

Rule 15's liberal standard would be eviscerated, because virtually every motion to

amend filed after a motion to dismiss would be denied on that basis. The Third

Circuit has never endorsed such a rule. *See Farnese v. Bagnasco*, 687 F.2d 761,

763 (3d Cir. 1982) (citing Fed. R. Civ. P. 15(a)). The showing of prejudice is

11

extraordinary and is usually not presumed to have occurred unless the motion is made "during or after trial;" even adding "entirely new claim[s] to the action" are insufficient for a showing of prejudice. *Tucker v. Reading Co.*, 55 F.R.D. 327, 329 (E.D. Pa. 1972). There is no prejudice, particularly after ViaSat's malfeasance.

ViaSat's "moving target" argument is similarly misplaced. The cases ViaSat cites, *Berk* and *Blue Gentian*, involved plaintiffs who serially amended without any intervening changes in the factual landscape, as revealed through discovery, subsequent investigation, or otherwise. Here, the factual landscape changed materially when ViaSat disclosed, under Court compulsion, a vendor whose identity it hid and whose very *existence* it had denied and for over six months. Plaintiff's pleading moved because the facts moved, and the facts moved only because ViaSat was finally compelled to tell the truth. The case remains at an early stage. Discovery is stayed. The class certification deadline has not passed. No trial date has been set. ViaSat cannot claim that it has been prejudiced through the amendment that added a vendor who was involved in the same underlying conduct, whose identity and involvement ViaSat knew about, but hid, all along. ViaSat presumably still possesses far more knowledge about its relationship with XYZies than Plaintiff does. And ViaSat's bad faith theory fails for similar reasons.

That theory depends on the premise that Plaintiff always knew a third party placed the calls and chose not to plead that theory. The record, as reflected above,

12

demonstrates the opposite. ViaSat's initial motion to dismiss stated, in bold: "it was *the Plaintiff who called Viasat*—not the other way around." It tripled down on those allegations in the Henderson declaration, its amended complaint, and its discovery responses, swearing up and down that no third parties were involved, that the Plaintiff called ViaSat, and that the Plaintiff spoke to a ViaSat employee. As such, Plaintiff undertook to oppose ViaSat's theory of the case, that ViaSat called him, as opposed to the other way around. Moreover, all the Plaintiff's experiences outlined above would have been consistent with that theory anyway.

ViaSat then weaponized its own denials to block the very discovery that would have revealed XYZies' involvement. Throughout its discovery responses, ViaSat objected to third-party discovery on the ground that Plaintiff "does not purport to plead a vicarious TCPA liability theory in the operative Complaint, and *expressly disclaims such a theory*." The strategy was deliberate. ViaSat swore no third party existed, blocked discovery aimed at identifying any third party and then faulted Plaintiff for not pleading a vicarious liability theory, a theory Plaintiff could not plead without the very information ViaSat was withholding. This Court should not reward that strategy. If anyone was acting in bad faith, it was ViaSat.[1]

---

[1] This bad faith conduct is the subject of Plaintiff's own Rule 11 motion against ViaSat and its counsel currently pending before this Court. (ECF Nos. 61, 62.)

Not only that, but Plaintiff's characterization of the calls, based on his own recordings, was reasonable. ViaSat contends that Plaintiff "possessed recordings contradicting his core liability allegations before he filed suit." Not so. As the Plaintiff has explained, the call recordings are themselves confusing and contradictory and ultimately led to an admission that "it's only ViaSat." The recordings are consistent with the complaint. Angel[2] could not identify any *legitimate, plausible* entity other than ViaSat. A consumer hearing this call would reasonably conclude that the caller was ViaSat, exactly what Plaintiff alleged.

Plaintiff is an ordinary consumer, not an investigator. He could not have known the involvement of XYZies, as that entity was never mentioned. XYZies' identity was within ViaSat's exclusive knowledge, and ViaSat chose to conceal it for over six months while simultaneously blaming Plaintiff for not pleading it. That is precisely the gap the SAC fills. And it was only after this Court compelled ViaSat to identify any vendors involved in the calls did ViaSat disclose XYZies. Plaintiff promptly sought leave to amend. That is the responsible course of action Rules 15 and 11 expect of counsel when new facts emerge. What would have been bad faith is the *opposite*: refusing to amend after the evidence changed. ViaSat's reliance on *Carter* is similarly misplaced. *Carter* involved a plaintiff using Rule 15

---

[2] To this day, Plaintiff is unable to ascertain ViaSat's position on whether "Angel" was a ViaSat employee or not.

14

to salvage a lost case by untimely suggestion of new *theories of recovery*. Here, the amendment is tethered directly ViaSat's disclosure of XYZies.

ViaSat cannot conceal a vendor for six months, deny its existence under oath, block discovery aimed at uncovering it, and then characterize Plaintiff's amendment as dilatory or in bad faith. ViaSat's contention that Plaintiff sought amendment on "the eve of a ruling" is likewise not evidence of dilatoriness. The timing of Plaintiff's motion was dictated entirely by the timing of ViaSat's disclosure. If ViaSat had disclosed XYZies at the outset of the litigation, as its discovery obligations required, the amendment would have occurred far earlier. ViaSat manufactured the very delay it now complains of.

## **CONCLUSION**

For the foregoing reasons, and those set forth in Plaintiff's original brief, the Court should grant the Motion and permit filing the Second Amended Complaint.

RESPECTFULLY SUBMITTED AND DATED this 31st day of March, 2026.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> PA Bar #333687
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com

15

## <u>CERTIFICATE OF SERVICE</u>

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: March 31, 2026

>>>>>>>>>>>>>>>>>>>>>>>> /s/ *Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

16