⚑ KeyCite Yellow Flag

Distinguished by Lasermaster International Inc. v. Netherlands Insurance Company, D.N.J., April 20, 2018

2015 WL 5770202
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

IN RE: L'OREAL WRINKLE CREAM
MARKETING PRACTICES LITIGATION.

This Document Relates To: All Cases.

MDL 2415
|
Civil Action No. 12-3571 (WJM)
|
Signed 09/30/2015

## OPINION

FALK, U.S.M.J.

**\*1** Before the Court is Plaintiffs' motion for leave to file an amended complaint. [ECF No. 230.] The motion is opposed. No argument is necessary. Fed.R.Civ.P. 78(b). For the reasons stated below, Plaintiffs' motion is **GRANTED**.

## BACKGROUND[1]

This is a false advertising multidistrict litigation comprised of putative class actions against cosmetics manufacturer L'Oreal USA, Inc.[2] Plaintiffs' Master Consolidated Complaint contains 26 counts alleging, *inter alia,* consumer fraud act violations, unjust enrichment, and breach of express warranty with respect to 30 disputed L'Oreal products, 16 of which Plaintiffs purchased and 14 of which they did not. The pleading survived a pre-answer motion to dismiss, save for two counts alleging unjust enrichment under New Jersey law. *See In re L'Oreal Mktg. & Sales Practices Litig.,* 2013 WL 6450701 (D.N.J. Dec. 9, 2013).

On March 28, 2014, the first scheduling order in the case was entered, permitting discovery to commence and ordering the completion of all fact discovery by December 31, 2014. [ECF No. 79.] Any motions to amend were due by December 1, 2014. *[Id.]* Since that time, the Court has held at least 15 additional conferences with the parties to address a wide range of disputes, including basic document production disputes; disputes over 30(b)(6) depositions; disputes relating to document production from overseas L'Oreal companies implicating French law; and disputes over third-party subpoenas served on 10 retailers of L'Oreal products. Every issue has been fought tooth and nail and many have necessitated full and formal briefing at the parties' request, despite the preference in the Local Civil Rules for the informal resolution of discovery disputes. *See* L. Civ. R. 37.1. Simply put, this is a scorched earth litigation battle with no party giving quarter on almost any issue. Thus, progress has been slow. Despite a discovery period of more than a year, the parties agree that many additional months of discovery will be needed, and that does not account for expert discovery and motion practice. The reality is the case is still in the somewhat early stages and much remains to be accomplished.[3]

**\*2** Against that backdrop, Plaintiffs have made their first request to file an amended complaint in this large, complicated case. Plaintiffs seek the following: (1) to bring a breach of contract claim and claim for violation of 18 U.S.C. § 1961, *et seq.* ("RICO") against current Defendant L'Oreal USA and a new Defendant, L'Oreal S.A. ("L'Oreal France"); and (2) to add L'Oreal France as a Defendant on the claims already in the case for unjust enrichment, breach of express warranty, and consumer fraud.

Plaintiffs claim that leave to file their amended pleading should be granted because this is the first amendment of the complaint sought in this case; because the facts supporting the amendment have only recently been fully uncovered in discovery; because there remains much discovery to be completed in this case and no party will be prejudiced by the amendment; and because any delay in bringing the amendment is attributable to Defendants' approach toward discovery.

Defendants counter that the amendment should be denied because Plaintiffs have delayed in seeking leave to amend; that the scheduling order deadline for amended pleadings has passed and no "good cause" for the amendment has been shown; because the amendment is for tactical reasons relating to document production from L'Oreal France; and because the claims are futile and would not survive a motion to dismiss.

Case 1:25-cv-00927-KMN    Document 63-1    Filed 03/31/26    Page 2 of 33

In re: L'Oreal Wrinkle Cream Marketing Practices Litigation., Not Reported in Fed....

## DISCUSSION

### A. *Legal Standard*

The parties dispute whether Plaintiffs are required to show "good cause" under Rule 16(b) to file their amended complaint or whether the analysis should be controlled by the general and liberal Rule 15 principles. Defendants' position is that the December 1, 2014 deadline for the amendment of pleadings, which was placed in the Court's original scheduling order from March 2014, should control Plaintiffs' request to amend. And because that deadline passed long ago, Plaintiffs should be required to show "good cause" before being permitted to file an amended complaint.[4]

Plaintiffs counter that Rule 15 alone should apply. Plaintiffs' position is a practical one: the scheduling order has been amended on multiple occasions already, with fact discovery repeatedly extended. The contemplation in preparing in the original scheduling order was to have the amendment deadline close to the deadline for the close of discovery. Thus, it is basically only by inadvertence that the deadline for amending pleadings was not also extended. Moreover, the parties are presently negotiating another amended scheduling order and that the deadline for amended pleadings should be extended along with the dates for discovery and everything else.

**\*3** The Court will apply Rule 15 to Plaintiffs' motion. There is no need for Plaintiffs to show good cause under Rule 16 based on the circumstances of this case. The scheduling order has repeatedly been extended with the involvement and consent of both parties. The parties are also negotiating another extension of discovery. The bottom line is the deadline for amended pleadings contained in the original scheduling order is – and has been – inoperative for quite some time, much like the rest of the scheduling order. It would be illogical to hold Plaintiffs to an amendment deadline date in a scheduling order that long ago went stale. This is especially so because discovery will again be extended. The Court's original scheduling order had the deadline for amendment of the pleadings approximately 30 days prior to the close of discovery in December 2014. [ECF No. 79.] Since discovery will again be extended, it makes zero sense to hold Plaintiffs to an amendment deadline of December 2014, when discovery may now remain open well into 2016.[5]

Rule 15 provides that once a responsive pleading has been filed, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2). Leave to amend is generally granted unless there is: (1) undue delay or prejudice; (2) bad faith; (3) dilatory motive; (4) failure to cure deficiencies through previous amendment; or (5) futility. *Foman v. Davis,* 371 U.S. 178, 182 (1962). The ultimate decision to grant or deny leave to amend is a matter committed to the court's sound discretion. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330 (1970). The Third Circuit has "made clear that there is to be a liberal use of Rule 15 to amend complaints so as to state additional causes of action." *Leased Optical Dep't, Inc. v. Opti–Center, Inc.,* 120 F.R.D. 476, 479 (D.N.J.1988) (quotes omitted).

### B. *Plaintiffs' Amendment*

#### 1. *No Prejudice*

"Prejudice to the non-moving party is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp.,* 1 F.3d 1406,1414 (3d Cir.1993). Incidental prejudice is insufficient grounds on which to deny leave to amend. *See In re Caterpillar, Inc.,* 67 F.Supp.3d 663, 668 (D.N.J.2014). Prejudice is generally evaluated by looking at whether the amendment would: (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the nonmoving party from bringing a timely action in another forum. *See, e.g., Long v. Wilson,* 393 F.3d 390, 400 (3d Cir.2004).

Plaintiffs' proposed amendment is not unduly prejudicial. *First,* the motion will not require L'Oreal USA to expend significant additional resources, and L'Oreal USA has been insistent in other disputes in this case that it is entirely distinct from L'Oreal France. The theories in the amended complaint involve the same general allegations, even if the allegations are used to support slightly different or more developed claims. Moreover, discovery is not over and will not be for some time. To the extent the amended pleading will require additional or new discovery, much of it has already been sought from the parties in the case and is being battled over. There is no more than "incidental" prejudice in this case and it is insufficient to abridge Plaintiffs' liberal right to amend their complaint.

**\*4** *Second*, the amendment will not realistically delay resolution of the case. This case is a long way from over, regardless of any amendment. The addition of a party who in some ways is already involved from the sidelines will not

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN Document 63-1 Filed 03/31/26 Page 3 of 33

In re: L'Oreal Wrinkle Cream Marketing Practices Litigation., Not Reported in Fed....

have a truly material impact on when the merits of the case are reached.

*Third*, Defendants argue that they will be prejudiced from delay that will result from dispositive motion practice contemplated with respect to the amended pleading. The Court disagrees. Any dispositive motion practice that may occur is a voluntary decision that either L'Oreal company may make with respect to the amended pleading. However, the likelihood that Defendants may attack the amended complaint with motion practice does not render the amendment itself prejudicial.

#### 2. *No Undue Delay*

"Delay alone ... is an insufficient ground to deny an amendment, unless the delay unduly prejudices the non-moving party." *Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n,* 573 F.2d 820, 823 (3d Cir.1978); *Boileau v. Bethlehem Steel Corp.,* 730 F.2d 929, 938 (3d Cir.1984) (district court erred in not permitting amendment 10 years after original complaint when there was no demonstrated prejudice). Delay is only undue when it places a burden on the Court or causes prejudice to the non-moving party. *Marlowe Patent Holdings v. Dice* Electronics, LLC, 293 F.R.D. 688, 695 (D.N.J.2013).

Delay is not an issue in this case. As has already been explained, the amendment will not cause L'Oreal USA to suffer any prejudice. The absence of prejudice renders any arguable delay materially irrelevant. Moreover, the motion is not brought on the eve of trial or after Defendants have prevailed on a summary judgment motion. Indeed, the Court intends to enter another scheduling order with dates that will include months of additional discovery, which does not even account for additional time that will be needed for expert discovery and motion practice. Despite the age of the case, the fact is Plaintiffs have brought their motion to amend relatively early in the proceedings.

#### 3. *The Amendment is Not Clearly Futile*

The futility analysis on a motion to amend compares to a Rule 12(b)(6) motion. *See In re NAHC, Inc. Sec. Litig.,* 306 F.3d 1314, 1332 (3d Cir.2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.' "). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (citing *Bell*

*Atl. Corp. v. Twombly,* 550 U.S. 544, 570, (2007)). Given the liberal standard for the amendment of pleadings, "courts place a heavy burden on opponents who wish to declare a proposed amendment futile." *See Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc.,* 106 F.Supp.2d 761, 764 (D.N.J.2000) (citations omitted). Although tracking Rule 12(b)(6), Rule 15 futility does not contemplate substantive motion practice on the merits of the claims:

> If a proposed amendment is not *clearly* futile, then denial of leave to amend is improper. This does not require the parties to engage in the equivalent of substantive motion practice upon the proposed new claim or defense; [it] does require, however, that the newly asserted defense appear to be sufficiently well-grounded in fact or law that it is not a frivolous pursuit.

**\*5** *Harrison Beverage Co. v. Dribeck Importers, Inc.,*133 F.R.D. 463, 468 (D.N.J.1990) (emphases added) (citations omitted); see also 6 Wright, Miller & Kane Federal Practice and Procedure, § 1487 (2d ed.1990). Effectively, this means that the proposed amendment must be "frivolous or advance a claim or defense that is legally insufficient on its face...." *Marlowe Patent Hold.,* 293 F.R.D. at 695.

Plaintiffs' proposed claims are not clearly futile or frivolous. First, it is alleged that the new L'Oreal party played a significant role in developing, testing and marketing the products at issue in the case. As to the RICO claim, such a claim requires: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activities. *See Camiolo v. State Farm Fire & Cas Co.,* 334 F.3d 345, 364 (3d Cir.2003). Those umbrella elements have many sub-elements that must be pleaded. Plaintiffs' moving brief spends much time articulating how they have pleaded each required element, including by citation to the paragraphs in the proposed amended pleading. (Pls.' Br. 21–27.) Defendants' opposition does not proceed to challenge Plaintiffs' RICO claim element-by-element. It is enough to say that Defendants view Plaintiffs' RICO claim as a "relabeling of their garden-variety false advertising claim," and representative of nothing more than corporations acting in their own interests, which is perfectly appropriate. (Defs.' Br. 13–14.) It is possible that Defendants may challenge the RICO claim through a motion to dismiss, which is their right. But, for purposes of Rule 15, the Court accepts the allegations in the proposed pleading as true and is concerned only with definite frivolousness. *Harrison Beverage,* 133 F.R.D. at 468. This is not substantive motion practice, which by nature is dispositive. And Plaintiffs' proposed pleading is not on its face frivolous.

Case 1:25-cv-00927-KMN    Document 63-1    Filed 03/31/26    Page 4 of 33

In re: L'Oreal Wrinkle Cream Marketing Practices Litigation., Not Reported in Fed....

The Court would not hesitate to deem the claim futile if it were, for example, barred by the statute of limitations or otherwise plainly prohibited by law. However, a futility determination here would require a searching analysis of the complex elements of a RICO claim, which exceeds the inquiry appropriate on this motion. Moreover, even if the analysis were performed and the claim was determined to be deficient, it is plausible that an amendment of the proposed amendment would be permitted before finally deciding the motion. That is not the contemplation of Rule 15 motion practice.

Plaintiffs' contract claims and claims against L'Oreal France are also not frivolous on their face. Defendants argue that Plaintiffs have no contract with either L'Oreal company and therefore lack the privity necessary for a breach of contract claim. (Defs.' Br. 15–16.) They also argue that L'Oreal France is not subject to personal jurisdiction in New Jersey. *(Id.)* However, as with the RICO claim, there is no glaring futility about Plaintiffs' claims. And both issues presented can require a more searching analysis than may be appropriate in the context of a motion to amend. *See, e.g., In re Azek Bldg. Products, Inc. Mktg. and Sales Practices Litig.,* 2015 WL 410564, at *7 (D.N.J. Jan. 30, 2015) ("the fact-intensive nature of privity frequently renders dismissal at the pleading stage premature"); *Synthes, Inc. v. Marotta,* 281 F.R.D. 217, 230 (E.D.Pa.2012) (collecting cases) (noting, *inter alia,* the absence of papers from the party to be added, as well as the "general reluctance" in the Third Circuit to "rule on personal jurisdiction questions in the context of a motion for leave to amend a complaint."); *see also Marcus v. BMW of N. Am., LLC,* 08–5859, slip op. at 3, CM/ECF No. 118 (D.N.J. Dec. 22, 2009).

**\*6** Some of Plaintiffs' claims may ultimately fail. However, for purposes of this motion and Rule 15, the Court is not able to conclude that any of Plaintiffs' claims are clearly futile. *Harrison Beverage Co.,* 133 F.R.D. at 468.[6]

### CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiffs need not show "good cause" for seeking leave to amend; that if a showing of "good cause" was required, Plaintiffs have done so anyway; and that the proposed amended complaint is neither delayed, prejudicial, nor, for purposes of Rule 15, futile. For those reasons, Plaintiffs' motion is **GRANTED**.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 5770202

Footnotes

1    The history of this case is well known to the parties. Only certain relevant information is summarized below.

2    Defendants are: L'Oreal USA, Inc.; Luxury Products, LLC; and Lanco#me, Inc. They are collectively referenced as "L'Oreal USA."

3    The parties have been repeatedly directed to meet-and-confer and submit a proposed, revised order scheduling the remainder of the case. They have apparently been unable to do so in part because of this pending motion. They also disagree on whether the new scheduling order should include a revised date for the amendment of pleadings. In discussing a new schedule, it seems that Defendants may have refused to include a new date for the amendment of pleadings because doing so would amount to relinquishing their argument, discussed *infra,* that "good cause" need be shown in order for Plaintiffs to file their current proposed amended complaint.

4    Rule 16(b)(4) provides in relevant part: "A schedule may be modified only for good cause." Good cause largely depends on the diligence of the moving party. *Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463, 469 (D.N.J.1990). To establish good cause, the movant must show that "despite its diligence, it could not reasonably have met the scheduling order deadline." *Hutchins v. United Parcel Service,* No. 01–1462, 2005 WL 1793695, at *3 (D.N.J. July 26, 2005). What will constitute "good cause" to warrant modification "necessarily varies with the circumstances of each case." 6A Alan Wright et al., *Federal Practice & Procedure* § 1522.2, at 313 (3d ed.2010). The Court therefore has "great discretion in determining what kind of showing the moving party must make in order to satisfy the good cause requirement of Rule 16(b)." *Thoman v. Philips Med. Sys.,* No. 04–3698, 2007 WL 203943, at *10 (D.N.J. Jan. 24, 2007) (citing 3 James W. Moore et al., *Moore's Federal Practice* § 16.14[1][b] (3d ed.1997)). A request to file an amended pleading after a deadline

Case 1:25-cv-00927-KMN   Document 63-1   Filed 03/31/26   Page 5 of 33

In re: L'Oreal Wrinkle Cream Marketing Practices Litigation., Not Reported in Fed....

contained in a scheduling order generally implicates Rule 16(b). *See Dimensional Commc'n Inc. v. Oz Optics, Ltd.,* 148 Fed. Appx. 82, 85 (3d Cir.2006).

If the Court were to apply Rule 16, the amendment would still be appropriate, as Plaintiffs have shown sufficient good cause for seeking to amend after the deadline in the original scheduling order. The good cause shown includes: the entire lengthy and contentious discovery history in the case; the length of time occupied by formal briefing of discovery motions, which eroded the discovery period and delayed the exchange of information in the case; and the alleged revelations in the recent depositions of L'Oreal and Retailer witnesses Mr. Brocklehurst, Ms. Burns, Mr. Rabinowitz and Mr. Kanji, which Plaintiffs claim revealed "the extent to which the new proposed defendant L'Oreal France was involved in the development, manufacture, marketing and sales of the Wrinkle Cream Products, and the extent to which the Retailers participated with the U.S. L'Oreal Defendants in the marketing of the Lanco#me Products." (Pls.' Br. 16.) The Court has "great discretion" in determining "good cause" in a particular case, *see, e.g., Thoman,* 2007 WL 203943, at *10. Given the Court's long standing involvement in the case and first hand observation of the proceedings, the Undersigned is satisfied that the above constitutes ample good cause.

Defendants also claim that Plaintiffs' amendment, at least as it relates to L'Oreal France, is advanced in bad faith and only as the result of their inability to secure French discovery through L'Oreal USA. As the parties are aware, Plaintiffs contend that L'Oreal USA is in the possession, custody or control of its French parent's documents such that they should be required to produce them pursuant to Rule 34. Contrary to Defendants' suggestion, Plaintiffs were not unsuccessful on that application and it remains pending. The Court sees no bad faith present in seeking discovery from the parties that are presently in the case – while at the same time seeking leave to amend the complaint to assert claims against whatever companies they believe may be appropriate. Indeed, in this case, the implicit involvement of L'Oreal France through its subsidiary in the context of long standing discovery disputes could be argued to negate any bad faith or prejudice.

---

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 1140783

⚑ KeyCite Yellow Flag

Distinguished by [Thorne v. Boston Market Corporation,](#) S.D.N.Y., June 29, 2020

2020 WL 1140783
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Owen HARTY, Plaintiff,

v.

NYACK MOTOR HOTEL INC., a

New York Corporation, Defendant.

No. 19-CV-1322 (KMK)
|
Signed 03/09/2020

**Attorneys and Law Firms**

Appearances:[Peter Erik Sverd, Esq.](#), Law Offices of Peter Sverd, PLLC, New York, NY, Counsel for Plaintiff.

[Edward J. Phillips, Esq.](#), Keane & Beane, White Plains, NY, [Julian Alan Schulman, Esq.](#), Schulman & Kissel, P.C., Suffern, NY, Counsels for Defendant.

OPINION & ORDER

[KENNETH M. KARAS](#), United States District Judge:

**\*1** Plaintiff Owen Harty ("Plaintiff") brings this Action pursuant to the Americans with Disabilities Act (the "ADA"), [42 U.S.C. § 12131, *et seq.*](#), and New York State Human Rights Law ("NYSHRL"), [N.Y. Exec. Law § 296, *et seq.*](#), alleging that Nyack Motor Hotel, Inc. ("Defendant") operates a website that Plaintiff, due to his disabilities, was unable to access. (*See* Compl. (Dkt. No. 1).) Plaintiff seeks injunctive and declaratory relief under the ADA and damages under the NYSHRL. (*See id.* ¶ 28.) Before the Court is Defendant's Motion To Dismiss (the "Motion"), pursuant to [Rules 8(a)](#), [12(b)(1)](#), and [12(b)(6)](#) of the Federal Rules of Civil Procedure. (*See* Not. of Mot. (Dkt. No. 13).) For the reasons below, the Motion is granted.

I. Background

A. Factual Background

The following facts, drawn from Plaintiff's Complaint, are assumed to be true for the purposes of this Motion.

Plaintiff is a resident of Broward County in Florida, and allegedly qualifies as a disabled individual, as defined by the ADA. (Compl. ¶ 1.) Plaintiff avers that he cannot walk and must ambulate in a wheelchair. (*Id.*) Plaintiff is allegedly an "advocate of the rights of similarly situated disabled persons" and regularly visits websites of places of public accommodation to test whether they comply with ADA requirements. (*Id.* ¶ 2.)

Plaintiff alleges that Defendant "owns, leases, leases to, or operates a place of public accommodation as defined by the ADA," namely the Nyack Motor Lodge (the "Lodge"), located at 110 N. Route 303, West Nyack, Rockland County, New York. (*Id.* ¶ 3.) Plaintiff alleges that Defendant is required to comply with the ADA. (*Id.* ¶ 7.) Because of this, Defendant must comply with [28 C.F.R. § 36.302(e)(1)](#), which requires places of public accommodation to "ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms." (*Id.* ¶ 8 (quoting [28 C.F.R. § 36.302(e)(1)(i)](#)).)

Plaintiff alleges that Defendant, "either itself or by and through a third party, implemented, operates, controls and[/]or maintains a website for the [Lodge] which contains an online reservations system." (*Id.* ¶ 10.) The website at issue is "http://www.nyackmotorlodge.com/" (the "Website"). (*Id.*) Plaintiff alleges that this "term" includes "all websites owned and operated by Defendant or by third parties to book or reserve guest accommodations at the hotel." (*Id.*) According to Plaintiff, because a purpose of the Website is to provide information about and facilitate reserving rooms at the Lodge, the Website is subject to the requirements discussed above. (*Id.*)

However, when Plaintiff attempted to access the Website, he was allegedly "unable to do so." (*Id.* ¶ 11.) Plaintiff claims that he "intends to revisit Defendant's [W]ebsite" to test it for further compliance with [28 C.F.R. § 36.302(e)](#) in the "near future." (*Id.* ¶ 12.) He also claims that he is "continuously aware" that the Website "remains non-compliant" and that it would be "futile" to visit it again as long as the purported violations continue to exist. (*Id.* ¶ 13.) Based on the above, Plaintiff seeks injunctive relief and declaratory relief under the ADA, as well as damages under the NYSHRL. (*Id.* ¶¶ 27–28.)

### B. Procedural Background

**\*2** Plaintiff filed his Complaint on February 12, 2019. (*See* Compl.) The case was originally assigned to The Honorable Vincent L. Briccetti ("Judge Briccetti"). (Dkt. (entry for Feb. 13, 2019).) Pursuant to Judge Briccetti's Order, Defendant filed its Motion and supporting papers on May 13, 2019. (*See* Not. of Mot.; *see also* Decl. of Edward J. Phillips, Esq. in Supp. of Mot. ("Phillips Decl."); Decl. of Shashi A. Patel in Supp. of Mot. ("Patel Decl."); Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. Nos. 14–16).) On May 14, 2019, Judge Briccetti issued an Order indicating that Plaintiff had ten days to notify the Court whether he intended to file an amended pleading or rely on the Complaint in responding to Defendant's Motion. (Order (Dkt. No. 17).) In that Order, it was noted that proceeding without amending would mean that Plaintiff is unlikely to receive a further opportunity to amend. (*Id.*) The case was reassigned to this Court on May 14, 2019. (*See* Dkt. (entry for May 14, 2019).) On June 12, 2019, Plaintiff filed an Opposition to the Motion. (*See* Decl. of Peter Sverd, Esq. in Opp'n to Mot. ("Sverd Decl."); Pl.'s Mem. of Law in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. Nos. 20, 20-6).) Defendant filed a Reply on June 19, 2019. (Def.'s Reply Mem. of Law in Supp. of Mot. ("Def.'s Reply Mem.") (Dkt. No. 21).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563,

and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

### B. Analysis

**\*3** Defendant argues that the entire Action is moot because the Website no longer exists. (*See* Def.'s Mem. 4.) Defendant also argues (in one sentence) that the Complaint fails under Federal Rules 8(a) and 12(b)(6) because it provides "no detail whatsoever" regarding how the Website was inaccessible to Plaintiff. (*Id.* at 5.) Furthermore, according to Defendant, Plaintiff is not responsible for the design and content of any third-party booking websites, and to the extent such a claim survives the Motion, it would at least require the joinder of these websites. (*See id.* at 6.) Lastly, according to Defendant, upon dismissal of all the federal claims for the foregoing reasons, the Court should decline to exercise supplemental jurisdiction of any state cause of action under the NYSHRL. (*See id.*)

Case 1:25-cv-00927-KMN    Document 63-1    Filed 03/31/26    Page 8 of 33

Harty v. Nyack Motor Hotel Inc., Not Reported in Fed. Supp. (2020)
2020 WL 1140783

1. Federal Claims

Plaintiff's Complaint only specifically names the Website as the one that he was unable to access due to his disability. (*See* Compl. ¶ 10.) However, the Website has now become defunct, a fact that Plaintiff acknowledges. (*See* Pl.'s Mem. 3, 8.)[1] Plaintiff argues that the Complaint nevertheless survives because it also mentioned other third-party websites related to the Lodge. (*Id.* at 3 (citing Compl. ¶ 10).) A closer look at the Complaint reveals that Plaintiff alleges, in a conclusory fashion, that this "term" includes "all websites owned and operated by Defendant or by third parties to book or reserve guest accommodations at the hotel." (Compl. ¶ 10.) Plaintiff does not mention any of these other websites by name in the Complaint or join them or their parent companies in the Action. Instead, Plaintiff names them for the first time in his Memorandum opposing the Motion, attaching Exhibits of screenshots of postings from the booking platforms priceline.com, booking.com, and hotels.com. (*See* Sverd Decl. Exs. A–C, E (Dkt. Nos. 20-1–3, 20-5).)[2] Although Plaintiff asks the Court to take "judicial notice" of these screenshots, (Pl.'s Mem. 5), Plaintiff is counseled and is not entitled to any of the latitude afforded to pro se litigants in adjudicating a motion to dismiss. And generally, counseled plaintiffs may not "use their opposition to [a] motion to dismiss to raise new claims or arguments." *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 390 n.19 (S.D.N.Y. 2013) (citation, alterations, and quotation marks omitted); *Kiryas Joel All. v. Village of Kiryas Joel*, No. 11-CV-3982, 2011 WL 5995075, at *10 n.9 (S.D.N.Y. Nov. 29, 2011) (same), *aff'd*, 495 F. App'x 183 (2d Cir. 2012). Because Plaintiff did not name any of these third-party booking platforms in the Complaint, it cannot be said that Defendant had "fair notice of the claim[s] asserted" against it. *Greenland v. Municipality of Westchester County*, No. 18-CV-3157, 2019 WL 4640061, at *3 (S.D.N.Y. Sept. 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).[3] Accordingly, the Court will not consider the new allegations and theory of liability raised in Plaintiff's Memorandum. This leaves Plaintiff only with his allegation as to the Website, which, as discussed above, is now defunct, mooting the Action and depriving this Court of subject matter jurisdiction. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (noting that, for jurisdiction to exist, "an actual controversy must be extant at all stages of review, not merely the time the complaint is filed" (citation and quotation

marks omitted)); *Brown v. Mermaid Plaza Assocs. LLC*, No. 13-CV-760, 2018 WL 2722454, at *8 (E.D.N.Y. Mar. 8, 2018) ("A case becomes moot ... when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (citation and some quotation marks omitted)).

**\*4** Nevertheless, the Court notes that, even assuming that the Court could consider the arguments raised in Plaintiff's Memorandum or that the absence of the Website does not moot the Action, Plaintiff's Complaint only makes conclusory allegations that do not survive a Rule 12(b)(6) motion.

Although the Second Circuit "has not directly addressed whether the ADA's prohibition on discrimination in places of 'public accommodation' extends to 'places' on the [i]nternet or to the online services of real-world public accommodations," *Thorne v. Formula 1 Motorsports, Inc.*, No. 19-CV-1077, 2019 WL 6916098, at *2 (S.D.N.Y. Dec. 19, 2019) (citation, alteration, and some quotation marks omitted), a handful of district courts in the Second Circuit have interpreted an analogous case, *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999), to imply that "Title III extends to online fora offering goods and services," *Del-Orden v. Bonobos, Inc.*, No. 17-CV-2744, 2017 WL 6547902, at *5 (S.D.N.Y. Dec. 20, 2017); *see also Thorne*, 2019 WL 6916098, at *2–3 (concluding that the ADA's requirements extend to the website of a seller of boats and boat accessories); *Juscinska v. Paper Factory Hotel, LLC*, No. 18-CV-8201, 2019 WL 2343306, at *3 (S.D.N.Y. June 3, 2019) (online reservation systems for a hotel); *Suvino v. Time Warner Cable, Inc.*, No. 16-CV-7046, 2017 WL 3834777, at *2 (S.D.N.Y. Aug. 31, 2017) (cable company's website functions, such as "service selection, online bill payment[,] and access to streaming services"); *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 397–98 (E.D.N.Y. 2017) (art store franchise's online store); *Markett v. Five Guys Enters. LLC*, No. 17-CV-788, 2017 WL 5054568, at *2 (S.D.N.Y. July 21, 2017) (fast food restaurant's online orders); *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 567, 576 (D. Vt. 2015) (digital library that provides reading subscription services).

However, at this juncture, this Court does not need to reach its own conclusion on the issue because, even *if* Plaintiff's purported injuries stem from legally cognizable rights, Plaintiff fails to sufficiently articulate how Defendant allegedly trampled on those rights. Making all the cognitive leaps that Plaintiff wishes the Court to make—i.e., that the disappearance of the alleged Website does not moot this entire Action, that Defendant may be held liable for the online

presence of a hotel operated by its Tenant, that the Court may consider allegations about the accessibility of third-party websites that provide online reservation functionality for the new hotel, and that Defendant may be held liable for the actions of those third-party websites—the Complaint still fails, as it does not provide particularized allegations as to how any website at issue fails to meet any accessibility requirements. Plaintiff fails to describe any purportedly deficient features, how they impeded his navigation of the Website, or what, if anything, he was able to observe when he did attempt to access the Website. Plaintiff even fails to allege the nature of his disability and how it affects his navigation of the internet or the Website in particular. Even if the Court were to take "judicial notice" of the third-party listings Plaintiff attaches to his Opposition, (Pl.'s Mem. 5), none of the screenshots adds any particularity or plausibility as to how or why these websites were inaccessible to Plaintiff.

**\*5** Although Plaintiff does not need to delve deeply into the technical details of website accessibility at the pleading stage, his conclusory allegations and recitation of legal boilerplate simply do not compare to the kinds of *factual* allegations other plaintiffs have provided in similar cases. *See, e.g., Thorne*, 2019 WL 6916098, at \*1 (listing the alleged barriers to accessibility on the website at issue, such as "images without alternative text, ... links containing no text, ... [and] redundant links," and how they prevented the plaintiff from easily navigating the website); *Juscinska*, 2019 WL 2343306, at \*1 (specifying that the plaintiff was unable to find "meaningful accessibility information" on the website about the guestrooms and that the plaintiff was "unable to reserve an accessible room"); *Del-Orden*, 2017 WL 6547902, at \*2 (noting that the plaintiff had alleged that certain options on the defendant's online store could only be selected by using a computer mouse, which he could not use due to his blindness); *Suvino*, 2017 WL 3834777, at \*2 (noting that the legally blind plaintiff alleged that the website at issue was not coded to accommodate text-to-speech screen reader software and failed to use video description technology); *Markett*, 2017 WL 5054568, at \*1 (noting that the plaintiff alleged that she was blind and that she faced multiple barriers on the defendant's website while attempting to purchase items); *Scribd Inc.*, 97 F. Supp. 3d at 567 (noting that the plaintiffs alleged that they were blind and that the web service at issue was not programmed to be accessible to screen reading software, which would "convert graphical information ... into audio or Braille formats"). Accordingly, in an alternative to mootness grounds, the Court could also dismiss the federal claims for failure to state a claim.[4]

2. State Claim

As the Court has dismissed the federal causes of action, it declines to exercise any supplemental jurisdiction over the NYSHRL claim. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (citations omitted)); *Thomas v. Grunberg 77 LLC*, No. 15-CV-1925, 2017 WL 3263141, at \*1 (S.D.N.Y. July 28, 2017) (dismissing state claims where the federal claims had been mooted); *Torres v. City of New York*, 248 F. Supp. 2d 333, 334 (S.D.N.Y. 2003) ("Where the basis for pendent jurisdiction is dismissed, ordinarily so should the state law claims be dismissed." (citations omitted)).

III. Conclusion

For the foregoing reasons, Defendant's Motion To Dismiss is granted. Because this is the first adjudication of Plaintiff's claims and because the briefing suggests that circumstances have changed since the filing of the Complaint—potentially affecting which parties should be included in this Action—the Court will provide Plaintiff with an opportunity to amend the Complaint. If Plaintiff wishes to file an amended complaint addressing the deficiencies discussed in this Opinion & Order, Plaintiff must do so within 30 days of the date of this Opinion & Order. Plaintiff is advised that the amended complaint will replace, not supplement, all prior complaints. The amended complaint must contain all of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. Failure to timely file an amended complaint may result in dismissal of Plaintiff's claims with prejudice.

The Clerk of the Court is respectfully directed to terminate the pending Motion. (Dkt. No. 13.)

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1140783

Harty v. Nyack Motor Hotel Inc., Not Reported in Fed. Supp. (2020)

2020 WL 1140783

Footnotes

1       The Website is indeed defunct, and the Court may take judicial notice of this fact. "It is generally proper to take judicial notice of articles and [websites] published on the [i]nternet." *Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp. 2d 497, 501 (S.D.N.Y. 2010) (citation and quotation marks omitted), *aff'd*, 483 F. App'x 613 (2d Cir. 2012); *see also Hotel Emps. & Rest. Emps. Union, Local 100 of New York, N.Y. & Vicinity, AFL-CIO v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 549 (2d Cir. 2002) (taking judicial notice of the content of a publicly available website but noting that "the fact ... ha[d] little relevance" to the issue); *Saint Laurie Ltd. v. Yves Saint Laurent Am., Inc.*, No. 13-CV-6857, 2015 WL 12991205, at *7 n.13 (S.D.N.Y. Mar. 27, 2015) (taking judicial notice of the existence and content of a website alleged to violate an agreement); *McNaughton v. de Blasio*, No. 14-CV-221, 2015 WL 468890, at *9 n.10 (S.D.N.Y. Feb. 4, 2015) (taking judicial notice of a publicly available online notice regarding Gmail functionality), *aff'd*, 644 F. App'x 32 (2d Cir. 2016).

2       Some of the Exhibits refer to the "Tappan Zee Hotel," not Defendant. (*See, e.g.*, Sverd Decl. Ex. A.) Defendant explains that Tappanzee Hotel, LLC ("Tenant") leases the facility in question from Defendant and recently rebranded the hotel, explaining the name change. (Patel Decl. ¶ 1.) According to Defendant, the Website was taken down because the Lodge as it was previously known no longer exists, and the new hotel does not "maintain a website of any kind." (*Id.* ¶ 2.) Plaintiff appears to agree that Defendant is a lessor and that Tenant renamed the hotel. (*See* Pl.'s Mem. 3.) However, Plaintiff avers that, given that the newly named hotel is still located at the same facility, the Complaint nevertheless survives. (*Id.*)

3       Moreover, taking "judicial notice" of the existence of these other third-party websites does not cure the more fundamental problem of whether or not *Defendant*—alleged only to be responsible for a Website that does not exist and lessor to the operator of a Lodge that has since been renamed and rebranded—can be held liable for any supposed ADA violations attributable to those websites.

4       Although the Court does not reach this issue at this time, it emphasizes that Plaintiff's cited regulation includes an exception noting that certain ADA requirements on reservations for a place of public accommodation "do not apply to reservations for individual guest rooms ... not owned or substantially controlled by the entity that owns, leases, or operates the overall facility." 28 C.F.R. § 36.302(e)(2). This raises some questions as to whether Defendant, who Plaintiff acknowledges is only the *lessor* of the underlying building and not the operator of the then-Lodge and current hotel, (*see* Pl.'s Mem. 3), is properly alleged to be the sole responsible party in this Action. As discussed in the Conclusion, Plaintiff may amend his Complaint, which provides an opportunity to add other potentially responsible parties.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 16950481

2022 WL 16950481
Only the Westlaw citation is currently available.
United States District Court, N.D. Ohio.

Sam KATZ, Plaintiff,

v.

CROSSCOUNTRY

MORTGAGE, LLC, Defendant.

Case No. 1:22-CV-00925
|
Signed November 15, 2022

**Attorneys and Law Firms**

Bryan A. Reo, Reo Law, Mentor, OH, for Plaintiff.

Austin M. Richards, Kevin W. Kita, Cleveland, OH, for Defendant.

**MEMORANDUM OPINION AND ORDER**

PAMELA A. BARKER, UNITED STATES DISTRICT JUDGE

**\*1** This matter comes before the Court upon the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) of Defendant CrossCountry Mortgage, LLC ("Defendant" or "CrossCountry") filed on September 12, 2022 ("Defendant's Motion"). (Doc. No. 33.) Plaintiff Samuel Katz ("Plaintiff") filed a Brief in Opposition on October 11, 2022 ("Plaintiff's Opposition") (Doc. No. 35) to which Defendant replied on October 25, 2022 ("Defendant's Reply") (Doc. No. 36).

For the following reasons, Defendant's Motion is GRANTED.

**I. Background**

**A. Factual Allegations**

Plaintiff's First Amended Complaint ("FAC") sets forth the following allegations. Plaintiff is a natural person domiciled in Arkansas. (Doc. No. 32, ¶ 2.) Defendant is a business headquartered in Ohio. (*Id.* at ¶ 3.) At all times relevant to the FAC, Plaintiff maintained a telephone within the meaning of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), and Plaintiff is charged when he receives a call to that telephone. (*Id.* at ¶ 7.) Plaintiff listed his telephone

number on the National Do Not Call Registry in November 2020. (*Id.* at ¶ 8.)

Using an Automated Telephone Dialing System ("ATDS"), "Defendant collectively made multiple calls per week, beginning in 2019 and continuing into 2022, to Plaintiff's telephone." (*Id.* at ¶ 9.) Some of the calls involved "artificial pre-recorded voices while other calls routed to possible human operators after a perceptible delay." (*Id.* at ¶¶ 10, 11; *see also id.* at ¶ 20.) "Many calls were directly made by Defendant and Defendant identified itself or the call resulted in a direct routing to Defendant," while "[o]ther calls made by Defendant's agents resulted in 'live transfers' to Defendant." (*Id.* at ¶¶ 18, 19.) "Plaintiff received some calls that resulted in the receipt of voicemails left by Defendant. When Plaintiff returned the call and called the number(s) in question, he directly reached Defendant[.]" (*Id.* at ¶ 21.) On July 24, 2019, "Plaintiff told Defendant, 'place me on your do not call list.' " (*Id.* at ¶ 16.)

These calls were "intrusive, harassing, obnoxious, annoying, and unwanted." (*Id.* at ¶ 13.) Plaintiff did not have a relationship with Defendant and never provided Defendant with express or implied consent for Defendant to call Plaintiff's telephone, nor did Plaintiff ever provide Defendant or Defendant's affiliates with his telephone number. (*Id.* at ¶¶ 14, 22.) According to Plaintiff, as of February 25, 2022, "there is no record with the State of Ohio Office of the Attorney General that the Defendant is licensed and registered to engage in telephone solicitation within the state of Ohio." (*Id.* at ¶ 23.)

**B. Procedural History**

On June 2, 2022, Plaintiff filed a complaint in this Court against CrossCountry, as well as against Defendants Federal Savings Bank, Caliber Home Loans, Inc., LoanDepot.com, LLC, Allied First Bank, and Perry Johnson Mortgage Company. (Doc. No. 1.) On June 27, 2022, CrossCountry filed a motion to dismiss, or in the alternative, motion to sever Plaintiff's claims, and on June 27, 2022 and July 15, 2022, respectively, Defendants Perry Johnson Mortgage Company, Allied First Bank, and Federal Savings Bank filed motions to dismiss. (Doc. Nos. 3, 4, 7, 26, respectively.) On July 22, 2022, Plaintiff filed a Notice of Dismissal under Fed. R. Civ. P. 41(a)(1) as to Defendants Federal Savings Bank, Caliber Home Loans, Inc., LoanDepot.com, LLC, Allied First Bank, and Perry Johnson Mortgage Company. (Doc. No. 28.) On July 25, 2022, the Court entered a Marginal Order dismissing these Defendants from the case, leaving CrossCountry as the

2022 WL 16950481

sole remaining Defendant. (Doc. No. 29.) On August 17, 2022, Plaintiff filed a Motion for Leave to File an Amended Complaint ("Plaintiff's Motion"). (Doc. No. 30.) In Plaintiff's Motion, he asserted that the amended complaint "would likely cure any of the alleged pleading deficiencies that served as the basis of Defendant's motion to dismiss." (*Id.* at 2.) On August 23, 2022, CrossCountry filed a Response to Plaintiff's Motion indicating that it did not oppose it. (Doc. No. 31.) On August 25, 2022, the Court granted Plaintiff's Motion. (Aug. 25, 2022 non-doc. Order.)

**\*2** On August 27, 2022, Plaintiff filed his First Amended Complaint against Defendant alleging four causes of action: (1) statutory violations of the TCPA, 47 U.S.C. § 227(b)(3) (Count I); (2) statutory violations of the TCPA, 47 U.S.C. § 227(c)(5) (Count II); (3) statutory violations of the Ohio Consumer Sales Practices Act ("CSPA"), Ohio Rev. C. §§ 1345.01, *et seq.* (Count III); and (4) statutory violations of the Ohio Telephone Solicitation Sales Act ("TSSA"), Ohio Rev. C. §§ 4719.01, *et seq.* (Count IV). Defendant filed the instant Motion to Dismiss on September 12, 2022 (Doc. No. 33), which Plaintiff opposed on October 11, 2022 (Doc. No. 35), and Defendant replied on October 25, 2022 (Doc. No. 36). Defendant's Motion is ripe for decision.

## II. Standard of Review

Defendant moves to dismiss Plaintiff's FAC for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(6), the Court accepts Plaintiff's factual allegations as true and construes the FAC in the light most favorable to Plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.' " *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the FAC raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.' " *Bassett v. Nat. Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." ' " *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## III. Analysis

Defendant argues that Plaintiff's FAC "employs a 'shotgun-style' pleading that merely parrots the language of the TCPA," and thus, fails to state a claim for which relief can be granted. (Doc. No. 33 at 2.) Defendant argues that "Plaintiff makes no factual allegations regarding, *inter alia*: (1) the nature of any call, i.e. the goods or services being solicited; (2) the identity of the 'lead generator' or his/her relationship to [Defendant]; [ ] (3) any benefits [Defendant] received from Plaintiff as a result of any alleged call"; or (4) when Defendant "supposedly called his telephone number, or even how many times they called in any given year." (*Id.* at 3.)

**\*3** Plaintiff argues that he "has stated sufficient facts to demonstrate a plausible entitle[ment] to relief, or could do so via amendment if the First Amended Complaint has not done so." (Doc. No. 35 at 2.) Plaintiff argues that Defendant's Motion is, in fact, a motion for summary judgment seeking to resolve factual disputes and adjudicate claims, when, at this stage, Plaintiff's claims are properly pled to survive dismissal. (*Id.* at 4.)

### A. Count I—Statutory Violations of the TCPA, 47 U.S.C. § 227(b)(3)

As to Count I, Defendant asserts that the FAC fails to meet the pleading standard as "[t]here are no factual allegations that would support a conclusion that any call from [Defendant] employed an 'artificial or prerecorded voice'– i.e., an inability

2022 WL 16950481

to interrupt a message or to talk with a human being," as required. (Doc. No. 33 at 5-6.) According to Defendant, Plaintiff's FAC "concedes whatever calls are alleged to be at issue were made by human beings, alleging he spoke with a 'lead generator' who then transferred him and his information to a 'possible human operator.' " (*Id.* at 6 (quoting Doc. No. 32, ¶¶ 11, 19).) Finally, as to Count I, Defendant asserts that Plaintiff's only allegation supporting his conclusion that Defendant employed an automatic telephone dialing system ("ATDS") was based on Plaintiff experiencing a "perceptible delay" on the call, and Plaintiff has failed to provide an explanation as to how the alleged delay substantiated a conclusion that the call was made using an ATDS. (*Id.* at 6-7.)

Plaintiff maintains that he has sufficiently met the pleading requirements to state a claim under the TCPA. (Doc. No. 35 at 3-4.) Plaintiff asserts that he "is not required to give an account of each syllable, supported with an attached expert report attesting to the artificial nature and quality of the voice," to adequately plead that Defendant used an ATDS. (*Id.* at 4.) Rather, Plaintiff argues that his allegations "that on some calls there was a perceptible delay from his answering the call and saying 'hello' and the call engaging or the Defendant (or its agents) otherwise coming on the call," and that "at least some calls consisted of artificial pre-recorded voices," are "sufficient for pleading purposes at this stage." (*Id.* at 3-4.)

The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). "The TCPA defines an ATDS as equipment that has the capacity to store telephone numbers and dial such numbers." *Reo v. Caribbean Cruise Line, Inc.*, 2016 WL 1109042, at *3 (N.D. Ohio Mar. 18, 2016) (citing 47 U.S.C. § 227(a)(1)). Thus, to state a claim under the TCPA, Plaintiff must allege that Defendant (1) made a call, (2) using an ATDS or artificial or prerecorded voice, (3) to a telephone number assigned to a cellular telephone service, (4) absent the prior express consent of the Plaintiff. *See id.* at *4; *see also Seri v. CrossCountry Mortg.*, 2016 WL 5405257, at *2 (N.D. Ohio Sept. 28, 2016).

Plaintiff is also required to make "some additional factual allegations, no matter how minor, in addition to parroting the language of the statute," to sufficiently allege that Defendant utilized a prerecorded or artificial voice or used an ATDS

system. *Caribbean Cruise Line*, 2016 WL 1109042, at *4; *see also Johansen v. Vivant, Inc.*, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) ("It is not unreasonable [ ] to require a plaintiff to describe the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were pre-recorded or delivered via the ATDS."). As the court in *Johansen* explained:

> **\*4** [A] plaintiff must supply enough additional, independent facts "to raise a reasonable expectation that discovery will reveal evidence" of the alleged misconduct. *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. For example, a TCPA plaintiff could describe the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the "person" calling him, the generic content of the message he received, or anything else about the circumstances of a call or message contributing to his belief it was pre-recorded or delivered via an ATDS.
>
> ...
>
> This approach does not burden plaintiffs unduly by requiring pleading of technical details impossible to uncover without discovery, rather it necessitates that they plead only facts easily available to them on the basis of personal knowledge and experience. At the same time, it gives fair notice to defendants by "distinguish[ing] the particular case that is before the court from every other hypothetically possible case" under TCPA, *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir.2010), and avoids the potential abuse of the discovery process to pressure defendants into settling weak cases. *See Twombly*, 550 U.S. at 559, 127 S.Ct. at 1967; *Swanson*, 614 F.3d at 405. This approach balances the requirements of liberal pleading for plaintiffs and fair notice to defendants underpinning our legal system.

*Johansen*, 2012 WL 6590551, at *3.

In support of its argument that Plaintiff's FAC does not include sufficient allegations that Defendant used an ATDS or artificial or prerecorded voice in its alleged calls to Plaintiff, Defendant cites to *Reo*, where another court in this district granted the defendant's motion to dismiss when the complaint "contain[ed] very few factual allegations and merely parrot[ed] the statutory elements of Plaintiffs' TCPA claims, thus failing to meet the pleading standard set forth in *Twombly*." *Reo*, 2016 WL 1109042, at *3-4. In describing the complaint at issue therein, the court noted:

Case 1:25-cv-00927-KMN    Document 63-1    Filed 03/31/26    Page 14 of 33

Katz v. CrossCountry Mortgage, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 16950481

There is no description of the content of the calls (or texts) and no information regarding the frequency of the calls or why they believed that an ATDS was used or why they believed that an "artificial or prerecorded voice" was used such as a period of "dead air" after answering a call or the inability to interrupt a message or to talk to a human being. *Id.* at *4. Plaintiff does not attempt to distinguish *Reo* from this matter, and he does not cite any case law in support of his argument.

In his FAC, Plaintiff alleges that Defendant used an ATDS as evidenced by "the perceptible delay and manner in which the Plaintiff's information is transferred between the lead generator and the party the Plaintiff is transferred to," and by "some of the calls having delivered artificial pre-recorded voice messages." (Doc. No. 32, ¶ 11.) Plaintiff provides no other factual allegations to support his claim that Defendant used an ATDS or artificial or prerecorded voice.

Besides the allegation of a "perceptible delay," Plaintiff merely parrots the language of the statute. Like the complaint in *Reo*, Plaintiff's FAC does not include a description of the content of the calls or information regarding the frequency of the calls. *See Reo*, 2016 WL 1109042, at *4. As to Plaintiff's bare assertion that a "perceptible delay" occurred between a "lead generator" and "the party the Plaintiff is transferred to" (Doc. No. 32, ¶ 11), Plaintiff offers no details regarding the alleged delay Plaintiff experienced, including what occurred before or after the delay, nor does Plaintiff offer any description of the "manner" by which the calls were transferred. The allegation that an ATDS was used based on "the perceptible delay and manner in which Plaintiff's information is transferred," is insufficient to state a claim.

**\*5** Further, and importantly, Plaintiff does not offer any factual allegations as to the identities of the lead generator or transferee. Plaintiff does not allege that Defendant, or Defendant's agent, was the "lead generator," nor does Plaintiff identify "Defendant's agents." (*See id.* at ¶¶ 11, 19.) District courts within the Sixth Circuit have dismissed TCPA claims when the plaintiff fails to allege sufficient facts demonstrating liability for the actions of third parties. *See Reo*, 2016 WL 1109042, at *5 (dismissing plaintiffs' TCPA claims for failure to allege facts establishing vicarious liability of defendant for actions of third party); *see also Cunningham v. Kondaur Cap.*, 2014 WL 8335868, at *6-8 (M.D. Tenn. Nov. 19, 2014) (granting defendant's motion to dismiss because plaintiff failed to allege facts sufficient to hold defendant directly or vicariously liable for the alleged TCPA violations). Here,

Plaintiff has failed to allege direct or vicarious liability inasmuch as he has failed to identify the source of these calls.

Without more, these allegations fail to plausibly state a claim that Defendant used an ATDS or artificial or prerecorded voice as required to state a claim under the TCPA.

**B. Count II—Statutory Violations of the TCPA, 47 U.S.C. § 227(c)(5)**

As to Count II, Defendant argues that Section 227(c)(5) only provides a private right of action for a person who has received more than one telephone call in violation of the TCPA within a 12-month period. According to Defendant, Plaintiff fails to state a claim for which relief may be granted because Plaintiff has failed to allege when Defendant called him, whether any calls were made after Defendant registered his number on the National Do-Not-Call Registry in November 2020, and any facts to substantiate an allegation that Defendant made more than one call to Plaintiff within any 12-month period. (Doc. No. 33 at 8.)

In response to what he characterizes as Defendant's argument that his claims are threadbare recitals of the relevant statutes, Plaintiff asserts that his FAC includes allegations that (1) his number was put on the National Do-Not-Call Registry in November 2020; (2) Defendant called him throughout 2019 and into 2022; and (3) he made a specific request on July 24, 2019 to be placed on Defendant's internal Do-Not-Call list. (Doc. No. 35 at 5-6.) What Plaintiff fails to do is point this Court to any part of his FAC that includes an allegation that Defendant made more than one call to him within any twelve-month period of time, much less within the twelve-month period of time following his request to be put on the National Do-Not-Call Registry in November 2020.

47 U.S.C. § 227(c)(5) reads:

A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State —

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

Case 1:25-cv-00927-KMN    Document 63-1    Filed 03/31/26    Page 15 of 33

Katz v. CrossCountry Mortgage, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 16950481

(C) both such actions.
47 U.S.C. § 227(c)(5).

The regulations restricting telephone solicitation are found in 47 C.F.R. § 64.1200(c)(2), which provides in relevant part:

(c) No person or entity shall initiate any telephone solicitation to:

...

(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government ....
47 C.F.R. § 64.1200(c)(2). The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15).

**\*6** Not only does Plaintiff's FAC fail to allege that Defendant made more than one call to him within a 12-month time frame after Plaintiff joined the National Do-No-Call Registry in November 2020, as required by 47 U.S.C. § 227(c)(5), but it also fails to allege or identify how many times he was called by Defendant in any given year. Plaintiff's sole allegation is that Defendant "*collectively* made multiple calls per week, beginning in 2019 and continuing into 2022" to Plaintiff's phone. (Doc. No. 32, ¶ 9 (emphasis added.) By using the term "collectively," Plaintiff is grouping the calls from 2019 through 2022 together, and by doing so, fails to specify the number of calls that allegedly took place each year. Because section 227(c)(5) only provides a private right of action for a person who has received more than one telephone call in violation of the TCPA within a 12-month period, Plaintiff's FAC does not sufficiently allege a violation of the TCPA.

Further, Plaintiff fails to allege that such phone calls were, in fact, telephone solicitations. Plaintiff's FAC is devoid of any allegations that Defendant initiated these calls "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person," as required by 47 U.S.C. § 227(a)(4). As Defendant points out, Plaintiff's FAC contains no factual allegations as to the "nature of any call, i.e. the goods or services being solicited," nor any factual allegations as to

"any benefits [Defendant] received from Plaintiff as a result of any alleged call." (Doc. No. 33 at 3.) Without factual allegations as to the content of these calls, Plaintiff's FAC fails to properly allege that such calls were solicitations under the TCPA.

### C. Counts III and IV—State Law Claims

Counts III and IV of Plaintiff's FAC allege violations of Ohio state law—specifically statutory violations of Ohio's Consumers Sales Practices Act and statutory violations of Ohio's Telephone Solicitation Sales Act. (Doc. No. 32 at 7-10.) Defendant argues that it is exempt from liability under the CSPA and TSSA, and even if it was not, Plaintiff has failed to allege facts that support a violation of either statute. (Doc. No. 33 at 9-14.) Plaintiff argues that Defendant is not exempt from either statute, and has nevertheless adequately alleged facts to support claims of violations of both statutes. (Doc. No. 35 at 8-18.)

The Court need not address either argument. Pursuant to 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over state law claims once they have dismissed all claims over which they had original jurisdiction. "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.' " *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). However, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). Having disposed of Plaintiff's federal claims and considering the relevant factors, the Court declines to exercise supplemental jurisdiction over any state law claims (Counts III and IV) and dismisses them. *See Shaver v. Brimfield Twp.*, 628 F. App'x 378, 384 (6th Cir. 2015) ("[B]ecause the district court properly dismissed the Estate's federal claims, it did not abuse its discretion when it declined to exercise jurisdiction over the Estate's state law claims.").

### D. Leave to Amend and Dismissal with Prejudice

As a final matter, Plaintiff argues that Defendant's Motion should be denied, but "[i]n the alternative[,] Plaintiff would respectfully request leave to file an amended complaint to resolve any alleged pleading deficiencies." (Doc. No. 35 at

Katz v. CrossCountry Mortgage, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 16950481

19.) Plaintiff further argues that "Defendant is not entitled to the 'dismissal with prejudice' that they seek, because they have not even bothered to allege they are exempt, as a matter of law, from the TCPA, while their reliance on irrelevant case precedent to claim CSPA and TSSA exemptions is simply misplaced." (*Id.*) In its Reply, Defendant argues that when "the plaintiff does not articulate how granting further leave to amend will cure the [pleading] deficienc[ies], dismissal with prejudice is the standard relief." (Doc. No. 36 at 1.)

**\*7** Plaintiff's request for leave to amend is denied since Plaintiff has failed to follow the proper procedure for requesting leave to amend. "[A] bare request in an opposition to a motion to dismiss— without any indication of the particular grounds on which amendment is sought ... does not constitute a motion within the contemplation of Rule 15(a)." *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004)). Indeed, "[a] request for leave to amend 'almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is ... not a motion to amend.' " *Id.* (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000)).

Plaintiff's FAC is dismissed with prejudice. As the Sixth Circuit has explained, "a district court does not abuse its discretion by failing to grant leave to amend where the plaintiff has not sought leave and offers no basis for any proposed amendment." *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 739 F. App'x 330, 335 (6th Cir. 2019) (affirming dismissal with prejudice and without leave to amend when the plaintiff provided no basis for the district court to conclude that an amendment could cure his pleading deficiencies). Relying on *Harper*, another court in this district concluded the same, explaining:

> Plaintiffs request leave to amend their complaint following dismissal for failure to state a claim without providing so much as a hint as to how a second amended complaint could potentially cure the pleading deficiencies set forth in Defendant's Rule 12(b)(6) motion and identified in the

Court's dismissal order. Nor have Plaintiffs in their briefing or by affidavit identified any additional factual allegations that could meet the pleading standard. Accordingly, this Court cannot discern whether a basis to grant leave for a second amendment exists. Under these circumstances, and considering that Plaintiffs already have been granted and availed themselves of one opportunity to amend the original complaint, justice is not thwarted by the Court's dismissal with prejudice of the Amended Complaint and denial of leave to amend.

*Chambers v. Nationwide Mut. Ins. Co.*, 2021 WL 463279, at \*2 (N.D. Ohio Feb. 8, 2021).

Plaintiff previously sought leave to amend his original complaint to address deficiencies raised in Defendant's initial motion to dismiss, which Defendant did not oppose, and the Court granted. (Doc. Nos. 30, 31; Aug. 25, 2022 non-doc. Order.) Nevertheless, many of the same deficiencies in Plaintiff's original complaint that Defendant raised or identified in its initial motion to dismiss (*see* Doc. No. 3 at 7-9) remain in Plaintiff's FAC. Like the plaintiff in *Chambers*, Plaintiff fails to identify any additional facts or evidence that he can now allege that would cure those deficiencies. As such, there is no indication that a second amended complaint would survive a motion to dismiss. Thus, "justice is not thwarted by the Court's dismissal with prejudice of the Amended Complaint and denial of leave to amend." *Chambers*, 2021 WL 463279, at \*2.

Accordingly, Plaintiff's FAC is dismissed with prejudice without leave to amend.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss (Doc. No. 32) is GRANTED.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 16950481

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 63-1    Filed 03/31/26    Page 17 of 33

Jackson v. Aragon Advertising, LLC, Not Reported in Fed. Supp. (2023)

2023 WL 7413332
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Gerard JACKSON on behalf of himself
and others similarly situated, Petitioner,
v.
ARAGON ADVERTISING, LLC, Respondent.

No. 4:23-MC-00812
|
Signed November 9, 2023

**Attorneys and Law Firms**

Anthony Paronich, Paronich Law, P.C., Hingham, MA, for Petitioner.

Jeremy M. Klausner, Jeremy Klausner Law, P.C., West Orange, NJ, for Respondent.

**MEMORANDUM OPINION**

Matthew W. Brann, Chief United States District Judge

**\*1** This discovery dispute is an outgrowth of a class action suit brought by Petitioner Gerard Jackson against Clearlink Insurance Agency, LLC, alleging violations of the Telephone Consumer Protection Act.[1] Jackson contends discovery in that case has revealed that telemarketing vendors, including Respondent Aragon Advertising, LLC, have made calls on behalf of Clearlink in violation of the TCPA.[2] While other vendors have agreed to respond to third party subpoenas and produce calling data, Aragon has refused.[3] Seeking to enforce the subpoena, Jackson filed a Motion to Compel in the Southern District of New York,[4] from which Judge Jesse M. Furman transferred it to this Court.[5] Aragon subsequently opposed Jackson's motion,[6] and Jackson filed a reply brief.[7] Jackson's motion is ripe for disposition.

**I. FACTUAL BACKGROUND**

This is not the first dispute between these parties. On May 12, 2022, Jackson entered into a settlement agreement with Aragon regarding allegations that Aragon had contacted him on behalf of Clearlink in violation of the TCPA.[8] Aragon

objects that the subpoena, which sought call data beginning January 1, 2019, was improper as a result.[9] In an attempt to resolve the dispute without court intervention, Jackson agreed to limit his request to calls made after May 12, 2022.[10] Still, Aragon refused to produce any documents.

**II. ANALYSIS**

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Such discovery must take into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit."[11] "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action."[12]

**\*2** A party may seek discovery from a nonparty by serving the nonparty with a subpoena under Rule 45. Rule 45(d)(3)(A)(iv) provides that a court *must* quash or modify a subpoena that "subjects a person to undue burden." "When analyzing whether a civil subpoena places an undue burden on a nonparty, the court considers issues such as relevance, the requesting party's need, the breadth of the request, and the burden imposed."[13]

Aragon argues that the information sought by the subpoena is irrelevant because "(i) [Aragon] is a non-party; (ii) [Jackson, Aragon] *and* Clear Link previously settled almost identical allegations in a May 12, 2022 agreement; and (iii) Petitioner concedes Respondent did not place any call to him after the effective date of the settlement agreement."[14]

In *Clearlink*, Jackson has alleged that Clearlink is vicariously liable for TCPA violations arising from calls made on their behalf by third parties.[15] This would include calls made by Aragon on Clearlink's behalf. If that theory proves correct,[16] and Jackson can certify a class,[17] Clearlink could be held liable for calls made by Aragon, even if Aragon has not called Jackson himself.[18]

Case 1:25-cv-00927-KMN    Document 63-1    Filed 03/31/26    Page 18 of 33

Jackson v. Aragon Advertising, LLC, Not Reported in Fed. Supp. (2023)

Though "the standards for nonparty discovery require a stronger showing of relevance than for party discovery,"[19] Jackson has met this standard. As Jackson notes, and Aragon does not contest, discovery of call lists and related information is generally relevant in TCPA class litigation.[20] Further, deposition testimony taken during discovery[21] shows that a request for such information from Aragon itself is "reasonably calculated to lead to the discovery of admissible evidence."[22]

**\*3** Having rejected Aragon's only argument that the subpoena imposes an undue burden, the Court will grant Jackson's Motion to Compel. The sole remaining issue is whether to require Aragon to comply with the subpoena as written—for information since January 1, 2019—or to restrict the temporal scope of the requested discovery to information post-settlement, or after May 12, 2022. Aragon suggests that, by settling with Aragon, Jackson cannot hold Clearlink itself liable for any calls made by Aragon on Clearlink's behalf

prior to the settlement. If Aragon is correct, then information about such calls prior to May 12, 2022 would likely not be relevant. However, this issue is not properly before this Court, and given Jackson's willingness to limit the scope of the subpoena to records after May 12, 2022,[23] the Court need not decide it today. Aragon shall produce records responsive to the subpoena for the time period of May 13, 2022 to the present.[24]

### III. CONCLUSION

For the foregoing reasons, Petitioner Gerard Jackson's Motion to Compel is granted.

An appropriate Order follows.

### All Citations

Not Reported in Fed. Supp., 2023 WL 7413332

---

Footnotes

1    *Jackson v. Clearlink Ins. Agcy., LLC*, No. 22-CV-01466 (M.D. Pa.) The Court notes that the parties refer to Clearlink as "Clear Link." The Court will defer to Clearlink itself on the proper spelling of its name. *See id.* Doc. 47.

2    Mot. to Compel ("MTC"), Doc. 1, at 2.

3    *Id.*

4    Jackson filed his Motion in S.D.N.Y. because, while the underlying suit is pending before this Court, Federal Rule of Civil Procedure 45 requires that a motion to compel be made in the court for the district where compliance is required. *Id.* at 8-9 (citing Fed. R. Civ. P. 45(d)(2)(B)(i)).

5    Transfer Ord., Doc. 7.

6    Opp., Doc. 13.

7    Reply., Doc. 14.

8    MTC 2; Opp. 2. Aragon suggests that Clearlink was also a party to that agreement. *See id.* Neither party has provided the settlement agreement to the Court, but the Court notes that Clearlink has not raised the settlement agreement as a defense in the underlying litigation, which has now been pending for over a year. *See, e.g., Clearlink*, No. 22-CV-01466, Ans. to Compl., Doc. 10, Ans. to Am. Compl., Doc. 28.

9    Opp. 2.

10   MTC 2.

11   Fed. R. Civ. P. 26(b)(1).

12   Fed. R. Evid. 401.

Jackson v. Aragon Advertising, LLC, Not Reported in Fed. Supp. (2023)

Case 1:25-cv-00927-KMN    Document 63-1    Filed 03/31/26    Page 19 of 33

13    *United States v. Massimino*, 368 F. Supp. 3d 852, 855 (E.D. Pa. 2019) (citing *Diodato v. Wells Fargo Ins. Servs. USA, Inc.*, 2013 WL 6054824, at *1 (M.D. Pa. Nov. 15, 2013); *Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.*, 2012 WL 5862735, at *2 (M.D. Pa. Nov. 19, 2012); *Alexander v. F.B.I.*, 186 F.R.D. 21, 34 (D.D.C. 1998); *United States v. Int'l Bus. Machs. Corp.*, 83 F.R.D. 97, 104 & n.12 (S.D.N.Y. 1979)).

14    Opp. 5.

15    *Clearlink*, Am. Compl., Doc. 28 ¶¶ 37-52.

16    *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd* 577 U.S. 153 (2016) ("[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller.").

17    Courts frequently certify classes in TCPA cases where the plaintiff attempts to hold the defendant liable under a theory of vicarious liability—the agent of the defendant who made the violative communication need not be a party. *E.g., Abramson v. Agentra, LLC*, 2021 WL 3370057 (W.D. Pa. Aug. 3, 2021); *City Select Auto Sales, Inc. v. David/Randall Associates, Inc.*, 96 F. Supp. 3d 403 (D.N.J. 2015); *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169 (E.D. Pa. 2014). *See also Frey v. Frontier Utilities Northeast LLC*, 2020 WL 12697468 (E.D. Pa. Apr. 13, 2020) (granting motion to compel call lists where sought discovery was relevant to class certification and the merits of the claim).

18    *See Sparkle Hill, Inc. v. Invecor, LLC*, 2017 WL 4805201, at *3 (D.N.J. Oct. 25, 2017) (granting plaintiff class summary judgment in TCPA case where defendant was vicariously liable for the violative communications).

19    *In re Domestic Drywall Antitrust Litigation*, 300 F.R.D. 234, 240 (E.D. Pa. 2014) (quotation and citation removed).

20    MTC 4-5 (collecting cases).

21    Neil Chipping, the Director of Lead Optimization at Clearlink, testified that Clearlink ended their relationship with Aragon because "[t]here were a handful of TCPA violations and [Clearlink] wanted to mitigate that risk." MTC Ex. 5, Doc. 1-5, at 7:4-8, 30:17-20.

22    *Westfield Ins. Co. v. Icon Legacy Custom Modular Homes*, 321 F.R.D. 107, 111 (M.D. Pa. 2017) (quotation and citation removed). *See also Bastida v. National Holdings Corp.*, 2016 WL 6472648, at *1 (W.D. Wash. Oct. 31, 2016) (granting motion to compel deposition of nonparty in case where plaintiff was seeking to hold defendant vicariously liable for nonparty's actions); *Leasure v. Willmark Communities, Inc.*, 2012 WL 4361555, at *6 & n.4 (S.D. Cal. Sept. 21, 2012) (granting motion to compel discovery of nonparty where plaintiff was seeking to hold defendant liable for the debt collection practices of nonparty on defendant's behalf).

23    Reply 1-2.

24    Aragon suggests, without support, that the initiation of the underlying suit is the appropriate cutoff date. Opp. 7. Discovery, particularly in cases where the alleged conduct is of the sort that may well continue past the initiation of a lawsuit, is not so limited. *See Starling v. KeyCity Capital, LLC*, 2022 WL 198403, at *6 (N.D. Tex. Jan. 21, 2022) (granting motion to compel discovery of information for calls "for the period beginning January 1, 2021 to the present"). In any case, given that Clearlink terminated their relationship with Aragon in 2022, it is unlikely that there is much, if any, responsive information postdating the filing of the suit.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 63-1    Filed 03/31/26    Page 20 of 33

Fridline v. Integrity Vehicle Group, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 7170642

2023 WL 7170642
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Zach FRIDLINE, on behalf of himself and others similarly situated, Plaintiff,

v.

INTEGRITY VEHICLE GROUP, INC. and Natcap, Inc. d/b/a Vanguard Vehicle Armor, Defendants.

No. 4:23-CV-01194
|
Signed October 31, 2023

**Attorneys and Law Firms**

Anthony I. Paronich, Broderick Law, P.C., Hingham, MA, Jeremy C. Jackson, Bower Law Associates, PLLC, State College, PA, for Plaintiff.

Andrew C. Hanan, The Hanan Law Firm LLC, Cherry Hill, NJ, John P. Morgenstern, O'Hagan Meyer, Philadelphia, PA, for Defendant Integrity Vehicle Group, Inc.

John P. Morgenstern, O'Hagan Meyer, Philadelphia, PA, for Defendant Natcap, Inc.

**MEMORANDUM OPINION**

Matthew W. Brann, Chief United States District Judge

**I. BACKGROUND**

*1 In September 2023, Plaintiff Zachary Fridline filed a two-count amended complaint against Defendants, Natcap, Inc., doing business as Vanguard Vehicle Armor ("Vanguard"), and Integrity Vehicle Group, Inc. ("Integrity").

On September 18, 2023, Integrity filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[1] The motion is now ripe for disposition; for the reasons that follow, it is denied.

**II. DISCUSSION**

**A. Motion to Dismiss Standard**

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[2] and *Ashcroft v. Iqbal*,[3] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "[4] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[ ] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[5]

**B. Facts Alleged in the Amended Complaint**

The facts alleged in the amended complaint, which this Court must accept as true for the purposes of this motion, are as follows.

To fend off unwelcome telemarketers, Zachary Fridline registered his cellphone number on the National Do Not Call Registry on September 12, 2005.[6] This did not spare him. To Fridline's dismay, he received a marketing call from Vanguard, soliciting Integrity's automobile warranty services, in September 2021.[7] Fridline wrote a letter to Vanguard, requesting it to cease calling him.[8] Vanguard continued calling him: in December 2022, on March 30, 2023, on May 8, 2023, and on May 10, 2023.[9] On two of these occasions, Vanguard mailed a copy of Integrity's automobile warranty contract to Fridline's personal residence.[10] Vanguard's calls on March 30, 2023 and May 10, 2023, also began with an automated message, stating: "please hold while we connect your call."[11] Each time, Vanguard solicited Integrity's automobile warranty services.[12] Each time, Fridline told Vanguard to stop.[13] Each time, Vanguard did not listen.[14] Fridline sent Vanguard more emails, to no avail.[15] And Fridline discovered that others had made similar complaints about these calls to the Better Business Bureau.[16] So, he filed the class action lawsuit which comes before this Court today.[17]

Case 1:25-cv-00927-KMN    Document 63-1    Filed 03/31/26    Page 21 of 33

Fridline v. Integrity Vehicle Group, Inc., Not Reported in Fed. Supp. (2023)
2023 WL 7170642

**\*2** Fridline's claims against Integrity, the Moving Defendant, hinge upon Integrity's relationship with Vanguard. According to Fridline, Vanguard and Integrity have entered into a contract requiring Vanguard to promote Integrity products on their telemarketing calls to generate new customers.[18] Integrity then accepted business originating through Vanguard's telemarketing calls.[19] Fridline alleges Integrity's "day-to-day control over Vanguard's actions."[20] He also alleges that Integrity "maintained interim control over Vanguard's actions" because Integrity "had absolute control over whether, and under what circumstances, it would accept a customer;" gave "interim instructions" "by providing the volume of calling and leads it would purchase;" and gave "interim instructions" by "providing the states that those companies were allowed to make calls into and restricting other states that they could not."[21]

Arguing that Vanguard's conduct violates the Telephone Consumer Protection Act ("TCPA")'s prohibitions on automated calls and calls to members of the National Do Not Call Registry, Fridline now pleads two causes of action against Vanguard.[22] Based on Integrity's vicarious liability for Vanguard's conduct, Fridline also brings suit against Integrity on these same bases.[23] Integrity filed this motion to dismiss opposing its vicarious liability for Vanguard's actions.[24]

### C. Analysis

The Telephone Consumer Protection Act of 1991 was motivated by the invasion of privacy caused by abusive telemarketing practices.[25] It places two relevant restrictions on such calls. First, the TCPA makes it unlawful "to make any call ... using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service."[26] Second, the TCPA provides for a "consumer-driven process" to limiting telemarketing calls.[27] If a person placed his name on the national Do-Not-Call registry, any telephone solicitation to that person is an "abusive telemarketing act."[28] Where either violation occurs, private citizens may bring suit against the violating companies for monetary or injunctive relief.[29] Bringing suit for calls in violation of the national Do-Not-Call registry also requires that at least two such calls be made within a twelve-month period.[30]

Fridline sues Defendants Vanguard and Integrity under both causes of action. To state a cause of action under the TCPA, a plaintiff must allege that "(1) a call was made; (2) the recipient did not give express consent to receive the call; (3) the caller" either "used an [Automated Telephone Dialing System];" or placed more than two calls to a member of the National Do Not Call Registry within a twelve-month period; "and (4) the number called is assigned to a cellular telephone service."[31] In its motion to dismiss, Integrity presents no challenge to the merits of Fridline's TCPA claims themselves. Rather, Integrity disputes the first element, that it made a call to Fridline. Fridline responds that an agency relationship existed between Vanguard and Integrity, and thus, Integrity is liable for the TCPA violations resulting from Vanguard's call.

"[T]he Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations."[32] "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."[33] An agency relationship can be established through actual authority, apparent authority, or ratification.[34] The parties dispute the applicability of all three theories of agency liability. But because Fridline plausibly alleges that Vanguard had actual authority to act on Integrity's behalf, the Court need not examine the other bases for liability here.[35]

**\*3** "Actual authority is that authority which a principal expressly or implicitly grants to an agent."[36] "Actual authority 'to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account.'"[37] "[T]he alleged facts must indicate that the principal has control over the agent's acts."[38] While some of Fridline's allegations are indeed conclusory,[39] his remaining allegations are sufficient to survive dismissal.

Fridline has plausibly alleged that a contractual relationship existed between Vanguard and Integrity, for which Integrity specified the volume of calling and leads and the states to which the calls were made. He has alleged that Vanguard called him to solicit Integrity's auto insurance five times, and mailed him a contract on Integrity's behalf twice. These

Case 1:25-cv-00927-KMN    Document 63-1    Filed 03/31/26    Page 22 of 33

Fridline v. Integrity Vehicle Group, Inc., Not Reported in Fed. Supp. (2023)
2023 WL 7170642

facts make it reasonable to infer that a telemarketing contract existed between the parties. While Fridline "does not allege the specifics of any contractual relationship between [Netcap] and [Integrity] ... requiring h[im] to do so prior to discovery would be unreasonable."[40]

"While an agency relationship can be created by contract, not all contractual relationships form an agency."[41] But the United States Court of Appeals for the Third Circuit has not yet commented upon any aspect of vicarious liability under the TCPA. As such, the parties point this Court to conflicting authority regarding what is required to plausibly allege agency liability in this TCPA context.[42] This case law can be synthesized into two general approaches. One line of cases generally finds that a telemarketing contract for one company to call and solicit potential customers on another company's behalf plausibly alleges an agency relationship sufficient to survive dismissal; more evidence of control is, of course, required later in the litigation.[43] This was the approach taken by my late colleague, the Honorable James M. Munley, in *Hartley-Culp v. Green Tree Servicing, L.L.C.*[44]

**\*4** Yet other courts have applied a harsher standard. These decisions find that alleging a contractual telemarketing relationship, without more, implausibly alleges the control over calls necessary to demonstrate agency.[45] They therefore require additional pleadings making specific allegations as to the control exercised by the defendant over the telemarketing company with whom it contracted. Thus, where a plaintiff has been called by a telemarketer and transferred to a defendant's line, for example, courts taking the former approach have found that these facts plausibly allege an agency relationship; courts taking the latter approach have found an agency relationship to remain implausible without additional allegations of control over the means by which the initial call was made.[46]

In this specific context, the Court is not persuaded that it must apply a harsher plausibility standard. The Eastern District of New York's decision in *Jackson v. Caribbean Cruise Line, Inc.*, sets out the usual rationale for requiring such additional allegations.[47] *Jackson* based its reasoning on language from the Third Restatement of Agency:

> The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents ... Performing a duty created by contract may well

benefit the other party but the performance is that of an agent only if the elements of agency are present.[48] From this language, the *Jackson* court concluded that interim instructions are the "hallmark" of an agency relationship.[49] It therefore dismissed a complaint alleging a contract between a telemarketing company and the defendant in which the defendant imposed "certain constraints" on the telemarketer, because the complaint did not further allege that the defendant exercised control over the means by which calls were made.[50]

**\*5** I believe that *Jackson* is generally correct that a contract does not necessarily create an agency relationship as a matter of law—but it can, depending on the degree of control expressed through the contract terms.[51] The Second Restatement of Agency indicates that agency is lacking where the person "contracts to accomplish something for another or to deliver something to another;" he has "contracted to accomplish physical results not under the supervision of the one who has employed them to produce the results."[52] In contrast, "[o]ne who contracts to act on behalf of another and subject to the other's control except with respect to his physical conduct is an agent and also an independent contractor."[53]

The Third Restatement simply states that the *power* to give interim instructions distinguishes contractual relationships in which an agency relationship is also present, and those in which it is not.[54] Failing to plead that interim instructions were actually issued regarding the manner and means by which a company places calls on another company's behalf therefore does not render an agency allegation implausible as a matter of law. The distinction is between exercising the power of control and actually having it. An agency relationship exists in either case, so alleging the exercise of control is neither a "required element," nor a plausibility requirement.[55]

The point is that additional allegations demonstrating an exercise of control, through interim instructions or otherwise, might be necessary in some cases to render an agency allegation plausible, but they are not a required element or "hallmark" of agency whose absence in the pleadings mandates dismissal as a matter of law. It need only be plausible from the face of the complaint that the proposed agent could have issued such interim instructions because it had the "power" to do so. "A principal's control over an agent will as a practical matter be incomplete because no

Case 1:25-cv-00927-KMN    Document 63-1    Filed 03/31/26    Page 23 of 33
Fridline v. Integrity Vehicle Group, Inc., Not Reported in Fed. Supp. (2023)
2023 WL 7170642

agent is an automaton who mindlessly but perfectly executes commands."[56] The control exercised by a principal need not "include control at every moment; its exercise may be very attenuated and, as where the principal is physically absent, may be ineffective."[57] "The existence and scope" of this power of control is generally a "factual matter, and therefore often appropriately left to the jury."[58]

**\*6** Where a contractual relationship has been alleged, what additional allegations are needed to plausibly allege such control, and therefore agency, will depend on the type of contract and other surrounding circumstances. In line with the decisions cited above,[59] such an inference of control is at its most plausible from the bare fact of a contractual relationship where the contract is specifically for telemarketing services. It will often follow from the fact of contracting for telemarketing services that the contractor has the right to issue additional instructions—for example, to instruct the telemarketer that it is not to call persons registered on the "do not call" list, or to issue a script. In contrast, where the complaint alleges a different kind of contractual relationship or the nature of the relationship is too unclear to determine why one company mentions another in its solicitations, additional allegations would be needed to plausibly allege that the defendant had the power to control the manner and means of those solicitations.[60]

Under these circumstances, where plaintiff has alleged that a telemarketing contract existed requiring Vanguard to solicit on Integrity's behalf, it is plausible that Integrity had the power to direct the manner by which Vanguard fulfilled these telemarketing services. Additionally, "apparent authority may be supported by evidence that the seller allows the outside sales entity access to information ... that would normally be within the seller's exclusive control."[61] Vanguard's conduct in sending Integrity's contract to Fridline therefore also supports the plausibility of Integrity's control. Based on the available facts, it is unlikely that Integrity gave no additional instructions to a telemarketer which also appeared willing to mail out and execute contracts on Integrity's behalf.

This assumption of the contracting party's powers is, of course, an inference. But such reasonable inferences must be construed in favor of the non-moving party at the dismissal stage.[62] And "a plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency."[63] He must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts."[64] "[I]t is likely that all of the documents and information that establish (or refute) the details of the agency relationship between [the parties] are exclusively within the Defendants' custody and control."[65] "The question of whether implied authority may have existed would require the Court to know more about the course of the parties' dealings and generally expected course of business in th[is]" "field of marketing. Such questions of fact would be inappropriate for resolution on a motion to dismiss."[66] "[W]ithout any discovery it is impossible for [plaintiff] to know the nature of an alleged relationship between [the telemarketer and defendant] ... But [his] claim at least points to an apparent relationship."[67]

**\*7** Despite the multitude of cases cited in Integrity's briefings, it comes down to this: Fridline plausibly alleges that Integrity contracted with Vanguard to call potential customers on its behalf. He received a call from Vanguard soliciting Integrity's Services, and he received mail from Vanguard containing Integrity's contract. On a motion to dismiss, that is enough. If discovery reveals that Integrity had no such power under its contract with Vanguard, then judgment may be entered in favor of Integrity at that time.

### III. CONCLUSION

Defendant[s]' motion to dismiss pursuant to Rule 12(b)(6) is denied.

An appropriate Order follows.

### All Citations

Not Reported in Fed. Supp., 2023 WL 7170642

### Footnotes

1    Doc. 19.

2    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

2023 WL 7170642

3    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

4    *Id.* at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

5    *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

6    Doc. 17 ¶28.

7    *Id.* ¶35.

8    *Id.* ¶41.

9    *Id.* ¶¶30, 35.

10   *Id.* ¶¶39-40; Doc. 17-1 ("Congratulations! We would like to thank You for choosing Our Service Contract").

11   Doc. 17 ¶¶30-31.

12   *Id.* ¶¶36-37.

13   *Id.* ¶43.

14   *Id.*

15   *Id.* ¶¶44-45.

16   *Id.* ¶46.

17   *Id.* ¶47.

18   *Id.* ¶52.

19   *Id.* ¶53.

20   *Id.* ¶57.

21   *Id.* ¶¶55-56, 59-60.

22   *Id.* at 13-14.

23   *Id.*

24   Doc. 19.

25   *Barr v. Am. Ass'n of Political Consultants*, —— U.S. ——, 140 S.Ct. 2335, 2343, 207 L.Ed.2d 784 (2020); *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 132 S. Ct. 740, 181 L.Ed.2d 881 (2012).

26   47 U.S.C. § 227(b)(1)(A)(iii).

27   *Krakauer v. DISH Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019)

28   47 C.F.R. §§ 64.1200(c)(2), (d).

29   47 U.S.C. §§ 227(b)(3), (C)(5).

30   47 U.S.C. § 227(c)(5).

31    *Kline v. Elite Med. Labs, Inc.*, 2019 WL 6828590, at *4, 2019 U.S. Dist. LEXIS 214802, at *11-12 (M.D. Pa. Dec. 13, 2019); 47 U.S.C. § 227(b)(1)(A)(iii), 227(b)(3), 227(C)(5).

32    *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016) (citing *In re Joint Petition Filed by DISH Network, LLC*, 28 FCC Rcd. 6574 (F.C.C. 2013)).

33    Restatement (Third) Agency § 1.01 (Am. Law Inst. 2006).

34    *Cunningham v. Capital Advance Sols., LLC*, No. 17-13050, 2018 WL 6061405 at *6, 2018 U.S. Dist. LEXIS 197590 at *16-17 (M.D. Pa. Nov 20, 2018).

35    Fed. R. Civ. P. 8(d).

36    *Jurimex v. Kommerz Transit G.M.B.H. v. Case Corp.*, No. 06-3523, 2007 WL 2153278 at *2, 2007 U.S. App. LEXIS 18113 at *5-6 (3d Cir. July 27, 2007) (unpublished) (quoting *Billips v. Mangess Constr. Co.*, 391 A.2d 196, 197 (Del. 1978)).

37    *Id.* (quoting Restatement (Second) Agency § 26 (Am. Law Inst. 1958); Restatement (Third) Agency § 3.01 (Am. Law Inst. 2006)).

38    *Warciak v. Subway Rests., Inc.*, No. 1:16-cv-08694, 2019 WL 978666 at *2, 2019 U.S. Dist. LEXIS 32357 at *7-8 (N.D. Ill. Feb. 28, 2019), *aff'd*, 949 F.3d 354 (7th Cir. 2020).

39    The allegation of "day to day control" is clearly conclusory because it does not specify what control Integrity had and how it was exercised. The allegations that Integrity provided the volume of calling and leads it would purchase, and in what states, plead that a contract for services existed, but are not in themselves "interim instructions." The allegation that "interim instructions" were given then lacks factual support, and is also conclusory.

40    *Metten v. Town Sports Int'l, LLC*, No. 18-CV-4226 (ALC), 2019 WL 1299939 at *3, 2019 U.S. Dist. LEXIS 47138 at *9 (S.D.N.Y. Mar. 21, 2019).

41    *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356-57 (7th Cir. 2020).

42    The split of authority pertains only to what makes a plausible allegation of agency sufficient to survive dismissal.

43    *Hartle-Culp v. Green Tree Servicing, L.L.C.*, 52 F.Supp. 3d 700 (M.D. Pa. 2014); *McCabe v. Caribbean Cruise Line, Inc.*, No. 13-CV-6131, 2014 WL 3014874, 2014 U.S. Dist. LEXIS 91116 (E.D.N.Y. July 3, 2014); *Metten*, 2019 WL 1299939, 2019 U.S. Dist. LEXIS 47138; *Kline v. United Northern Mortg. Bankers Ltd.*, No. 4:18-CV-00489, 2018 WL 4404674 at *2, 2018 U.S. Dist. LEXIS 157816 at *3-4 (M.D. Pa. Sept. 17, 2018); *Wagner v. CLC Resorts & Devs., Inc.*, 32 F.Supp. 3d 1193, 1195 (M.D. Fla 2014); *Spillman v. Dominos Pizza, L.L.C.*, No. 10-349-BAJ-SCR, 2011 WL 721498, at *4, 2011 U.S. Dist. LEXIS 17177, at *10-11 (M.D. La. Feb. 22, 2011); *Dolemba v. Ill. Farmers Ins. Co.*, 213 F.Supp. 3d 988, 997 (N.D. Ill. 2016); *Fitzhenry v. Career Educ. Corp.*, No. 14-cv-10172, 2016 WL 792312, 2016 U.S. Dist. LEXIS 26244 (N.D. Ill. Mar. 1, 2016); *United States v. DISH Network LLC*, 256 F.Supp. 3d 810, 923 (C.D. Ill. 2017).

44    52 F.Supp. 3d 700 (M.D. Pa. 2014).

45    *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *6, 2018 U.S. Dist. LEXIS 52328, at *6 (N.D. Cal. 2018) (granting motion to dismiss because plaintiff failed to allege that defendant exhibited control over "whether, when, and to whom to send the text messages, along with their content."); *Jackson v. Caribbean Cruise Line, Inc.*, 88 F.Supp. 3d 129, 138 (E.D.N.Y. 2015); *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 2888055 (N.D. Cal. 2018) ("To state a plausible claim based on actual authority, plaintiff must allege facts showing that defendant had the right to control the representatives and the manner and the means of the calls they made"); *Banks v. Pro Custom Solar*, 416 F.Supp. 3d 171, n.2 (E.D.N.Y. 2018); *Childress v. Liberty Mutual Ins. Co.*, No. 17-cv-1051, 2018 WL 4684209, 2018 U.S. Dist. LEXIS 167281 (D.N.M. Sept. 28, 2018); *Linlor v. Five9*, 2017 WL 5885671, 2017 U.S. Dist. LEXIS 196266 (S.D. Cal. Nov. 29, 2017); *Reo v. Caribbean Cruise Line, Inc.*, No. 1:14 CV 1374, 2016 WL 1109042, 2016 U.S. Dist. LEXIS 35596, (N.D. Ohio Mar. 18, 2016).

Case 1:25-cv-00927-KMN   Document 63-1   Filed 03/31/26   Page 26 of 33
Fridline v. Integrity Vehicle Group, Inc., Not Reported in Fed. Supp. (2023)
2023 WL 7170642

46   *Compare Kline*, 2018 WL 4404674, at *2, 2018 U.S. Dist. LEXIS 157816, at *3-4 (vicarious liability was plausible because plaintiff alleged that "after answering the unsolicited call, he was eventually connected to a self-identified [ ] agent [of defendant], a fact that allows this Court to infer that whoever made the call was acting in some capacity on [defendant]'s behalf") *with Childress*, 2018 WL 4684209, at *4, 2018 U.S. Dist. LEXIS 167281, at *10 (dismissing claim based on agency as implausible where telemarketer transferred call to defendant because "[t]he transfer of the call ... does not establish that Defendant exerted control over the initiator of the call, supervised or controlled the initial call, or maintained any sort of relationship with the initiator of the call").

47   *Jackson*, 88 F.Supp 3d. at 139.

48   Restatement (Third) Agency § 1.01 cmt. F(1), cmt. G (Am. Law Inst. 2006).

49   *Jackson*, 88 F.Supp. 3d at 138.

50   *Id.* at 138-39.

51   *See* Restatement (Second) Agency § 14N & cmts. (a)-(b) (Am. Law Inst. 1956); *Warciak*, 949 F.3d at 356-57.

52   *Id.* § 14N cmt. (b).

53   *Id.* § 14N.

54   Restatement (Third) Agency § 1.01 cmt. F(1) (Am. Law Inst. 1956). It should also be noted that the rationale behind agency liability is the assumption that Congress legislates against a backdrop of common law, and will not displace those concepts absent explicit language. *Meyer v. Holley*, 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003). When Congress passed the TCPA in 1991, the most recent Restatement was the Second Restatement of Agency. The more instructive restatement would then be the Second restatement of Agency, not the third, which was published in 2006.

55   Of course, absent "interim instructions," the defendant company's control would still have to be proved in some other way. For example, a company could provide scripts to be used in its telemarketing calls, the contract could provide that the defendant company has the right to issue such instructions, or the communications of the parties could demonstrate their understanding of this power. *See, e.g., Hossfeld v. Gov't Emples. Ins. Co.*, 88 F.Supp. 3d 504 (D. Md. 2015) (where telemarketer called defendant and transferred that call to GEICO, GEICO was vicariously liable because it contracted with the telemarketers and provided a script); *In re DISH Network*, 28 F.C.C. Rcd. at 6592 (setting out evidence tending to prove apparent authority).

56   Restatement (Third) Agency § 1.01 cmt. f (Am. Law Ins. 2006).

57   Restatement (Second) Agency § 14 cmt. a (Am. Law Inst. 1956).

58   *Krakauer v. DISH Network, L.L.C.*, 925 F.3d 643, 660 (4th Cir. 2019) (quoting *Metco Prods., Inc., Div. of Case Mfg. Co. v. NLRB*, 884 F.2d 156, 159 (4th Cir. 1989)).

59   *E.g., McCabe v. Caribbean Cruise Line, Inc.*, No. 13-CV-6131, 2014 WL 3014874, 2014 U.S. Dist. LEXIS 91116 (E.D.N.Y. July 3, 2014).

60   *See, e.g., Warciak v. Subway Rests., Inc.*, No. 1:16-cv-08694, 2019 WL 978666 at *3, 2019 U.S. Dist. LEXIS 32357 at *7-8 (N.D. Ill. Feb. 28, 2019), *aff'd*, 949 F.3d 354 (7th Cir. 2020); *Escano v. Concord Auto Protect, Inc.*, No. 22-2096, 2023 WL 4247703 at *4, 2023 U.S. App. LEXIS 16441 at *10-*11 (10th Cir. June 29, 2023); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-cv-02440, 2015 WL 7736547, at *4-5, 2015 U.S. Dist. LEXIS 160349, at *17-18 (S.D.N.Y. Nov. 30, 2015).

61   *In re DISH Network*, 28 F.C.C. Rcd. at 6592.

62   *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 256 (3d Cir. 2013) (citing *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 452 (3d Cir. 2006)).

2023 WL 7170642

63    *Dolemba v. Ill. Farmers Ins. Co.*, 213 F.Supp. 3d 988, 997 (N.D. Ill. 2016) (citing *In re DISH Network*, 28 F.C.C. Rcd. at 6584).

64    *Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4651395 at *2, 2016 U.S. Dist. LEXIS 120451 at *2 (N.D. Ill. Sep. 7, 2016) (citing *In re DISH Network*, 28 F.C.C. Rcd. at 6593 n.139).

65    *Dolemba*, 213 F.Supp. 3d at 997.

66    *Cunningham v. Rapid Response Monitoring Servs.*, 251 F.Supp. 3d 1187, 1199 (M.D. Tenn. 2017).

67    *Hodgin v. Parker Waichman LLP*, No. 3:14-cv-733-DJH, 2015 WL 13022289 at *2, 2015 U.S. Dist. LEXIS 192262 at *5-6 (W.D. Ky. Sept. 30, 2015).

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 510072

2021 WL 510072
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Michael MILLER, Plaintiff,
v.
O'BRIEN CONSTRUCTION, INC., and
BRE RC Monroe MP PA, LP, Defendants.

No. 4:19-CV-01611
|
Filed 02/11/2021

**Attorneys and Law Firms**

David W. Crossett, Joel A. Ready, Cornerstone Law Firm, LLC, Blandon, PA, for Plaintiff.

Michael C. Witsch, Timothy J. Bergere, Armstrong Teasdale LLP, Michael B. Hayes, Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, PA, Amber Gonzales, Pro Hac Vice, Armstrong Teasdale LLP, Denver, CO, for Defendant O'Brien Construction.

Bianca A. Roberto, Stark & Stark, P.C., Yardley, PA, for Defendant BRE RC Monroe MP PA.

**MEMORANDUM OPINION**

Matthew W. Brann, United States District Judge

**\*1** Before this Court is Defendant O'Brien Construction, Inc.'s motion seeking leave to file its second amended answer under Federal Rule of Civil Procedure 15(a).[1] This case arises from a contract dispute between O'Brien and Plaintiff Michael Miller regarding a construction project with which Miller was employed.

This motion is now ripe for disposition. For the following reasons, O'Brien's motion is granted.

**I. BACKGROUND**
This case revolves around a dispute regarding O'Brien's alleged nonpayment for services rendered by Miller in connection with a construction project. Miller is an electrician conducting business under the tradename "Pro Electric."[2]

O'Brien is an Ohio-based general contractor; it hired Miller in February 2019 to complete electrical work on a construction project in Selinsgrove, Snyder County, Pennsylvania.[3]

After O'Brien allegedly failed to pay Miller for his work, Miller filed suit against O'Brien in September 2019.[4] Miller amended his complaint in February 2020.[5] Soon after, O'Brien moved to dismiss Miller's complaint.[6] This motion was denied in May 21, 2020, however, and O'Brien was directed to file any responsive pleadings within fourteen days.[7] O'Brien timely filed its answer, including two counterclaims, on June 4, 2020.[8]

Miller moved to dismiss O'Brien's counterclaims on June 25, 2020.[9] In response, O'Brien filed an amended answer twenty-one days later on July 16, 2020.[10] O'Brien concedes that it was not entitled to this amendment as of right under Rule 15(a).[11] Nevertheless, O'Brien filed the amended answer without consent and without seeking leave of court.[12] Consequently, on December 14, 2020, the Court dismissed O'Brien's answer on the sole basis that it violated the requirements of Rule 15(a).[13] However, the Court permitted O'Brien to file a motion seeking leave to amend within fourteen days.[14]

Importantly, *after* O'Brien had improperly filed its amended answer, but *before* the answer was dismissed, the Court set the deadline for filing amended pleadings on August 30, 2020.[15] O'Brien's present motion has been filed after the August 2020 deadline and is thus in violation of the Court's scheduled deadline for filing amended pleadings.

**II. LEGAL STANDARD**
Leave to amend is usually governed by Rule 15 of the Federal Rules of Civil Procedure. Rule 15(a) states that once a party has exhausted their right to amend, that party "may amend its pleading only with the opposing party's written consent or the court's leave."[16] The Rule further states that leave to amend "shall be freely given when justice so requires."[17] Rule 15(a) is to be construed broadly; "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."[18] "This liberal amendment regime helps effectuate the 'general policy embodied in the Federal Rules favoring resolution of cases on their merits.'"[19]

Case 1:25-cv-00927-KMN    Document 63-1    Filed 03/31/26    Page 29 of 33

Miller v. O'Brien Construction, Inc., Not Reported in Fed. Supp. (2021)
2021 WL 510072

**\*2** "However, [Rule 15(a)] is in some tension with the rule that governs scheduling orders, Federal Rule of Civil Procedure 16."[20] Rule 16(b) provides that, once a district court has issued a scheduling order, that order may be modified "only for good cause and with the judge's consent."[21] And the United States Court of Appeals for the Third Circuit has made clear that parties seeking to amend their complaint after a scheduling deadline has passed must first satisfy the "good cause" standard of Rule 16(b).[22] Once the party has demonstrated good cause, only then will the court consider their request to amend under the more liberal standard of Rule 15(a).[23]

## III. DISCUSSION

O'Brien makes two arguments. First, it maintains that its counterclaims were properly amended on July 16, 2020. O'Brien asserts that it was entitled to amend its a matter of course and thus that the counterclaims were appropriate. Second, O'Brien asks this Court for leave to amend its answer. O'Brien does so on several bases, including: that it is exempt from meeting the good cause standard of Rule 16(b), that, alternatively, it satisfies the Rule 16(b) standard, and that leave to amend is appropriate under Rule 15(a).

### A. Counterclaims

Leave to amend O'Brien's counterclaims is granted. Rule 15(a)(1)(B) authorizes amendment as a matter of course of any pleading to which a responsive pleading is required, so long as any amendment is sought within twenty-one days after a responsive pleading, or a motion to dismiss under Rule 12(b), is served.[24] O'Brien's counterclaims required a responsive pleading. Accordingly, O'Brien had twenty-one days from the date that Miller filed a responsive pleading or a motion to dismiss to amend its counterclaims as of right.

Miller filed his motion to dismiss O'Brien's counterclaims on June 25, 2020, and O'Brien amended its counterclaims exactly twenty-one days later on July 16, 2020. This fact is undisputed, and it is clear that O'Brien was entitled to amend its counterclaims as of right under Rule 15(a). Consequently, O'Brien's motion to amend its counterclaims is granted without further need for analysis.

### B. Amended Answer

### 1. Exception to Rule 16

In seeking leave to amend its answer, O'Brien first argues that it should be exempted from the requirements of Rule 16(b). O'Brien's assertion unfolds in three logical steps:

- Generally, when a party has improperly filed an amended pleading without first seeking leave, a court has discretion to deem the pleading properly amended if leave would have been granted anyways under Rule 15(a) and such a construction would not prejudice the opposing party;

- O'Brien improperly filed an amended complaint on July 16, 2020, before the deadline for amended pleadings had passed;

- As a result, if the Court now finds that leave to file that same amended complaint is appropriate under Rule 15(a), it should deem the amendment to have been filed on July 16, 2020 and thus decline to apply the Rule 16(b) good cause standard.

Though the Court is considerate of O'Brien's predicament, it cannot accept O'Brien's reasoning. O'Brien is correct that it may be appropriate to let an amended pleading lie even where the party filing it has failed to seek leave of court.[25] Nevertheless, this procedure is most often applied when considering a motion to *strike* the pleading as having been improperly filed.[26] This is consistent with the principle that, where leave to amend would have been granted anyways, it is more expeditious to simply get on with the litigation rather than have the parties file an essentially pro forma motion to that effect.[27]

**\*3** Here, however, the Court has already struck O'Brien's amended answer as improperly filed. The Court did so, at least in part, on the basis that neither party had actually briefed whether O'Brien's amended answer satisfied the requirements of Rule 15(a). But once O'Brien's amended answer was stricken, the Court lost any authority it had to waive the procedural barriers blocking O'Brien from properly seeking leave to amend. The Court is not aware of any law or rule authorizing a district to reconstrue an amended pleading as filed earlier simply as a matter of judicial discretion.[28]

Accordingly, because O'Brien's motion seeking leave to amend was filed after the August 30, 2020 deadline, O'Brien

2021 WL 510072

must establish that it satisfies the requirements of both Rule 16(b) and Rule 15(a).

## 2. Rule 16

O'Brien satisfies the good cause standard of Rule 16(b). As stated above, a district court's scheduling order "may be modified only for good cause."[29] The moving party bears the burden of establishing "good cause."[30] Analysis under Rule 16(b)(4) "focuses on the diligence of the party seeking the modification of the scheduling order."[31] Accordingly, if the moving party "was not diligent, there is no 'good cause' for modifying the scheduling order."[32]

Further, "[c]arelessness, or attorney error ... is insufficient to constitute 'good cause' under Rule 16(b)."[33] And where "the party knows or is in possession of the information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent."[34] This presumption "may be rebutted by a cogent explanation as to why the proposed amendment was not included in the original pleading."[35] But in the absence of diligence, there is no "good cause."[36]

The Court concludes that O'Brien has demonstrated good cause. Though O'Brien acknowledges its error in mistakenly believing it was entitled to amend its answer as of right under Rule 15(a), O'Brien has diligently attempted to rectify this error since it came to light. After O'Brien improperly filed its amended answer, time was needed to adjudicate Miller's subsequent motion to strike. It is neither party's fault that Miller's motion was ultimately decided past the August 30, 2020 deadline. And the Court cannot find that O'Brien has not been diligent since the Court struck O'Brien's previous answer on December 14, 2020.

 **\*4** This is case is also unlike *Bolus v. Carnicella*,[37] which Miller cites in opposition. There, the plaintiffs seeking leave to amend entirely failed to address the Rule 16(b) good cause standard.[38] Moreover, the plaintiffs there filed their motion nearly sixteen months after the deadline for amended pleadings had passed.[39] In contrast, O'Brien sought leave within fourteen days of the first opportunity to do so. Finally, the plaintiffs in *Bolus* were in a different stage of litigation; while discovery there was wrapping up, discovery here is still

ongoing and yet to be completed. Consequently, the Court finds *Bolus* distinguishable and concludes that O'Brien has shown good cause.

## 3. Rule 15(a)

The Court concludes leave to amend is appropriate under Rule 15(a). Rule 15(a) "provides, in pertinent part, that after a responsive pleading, a party may amend its pleading 'only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.' "[40] "[I]n the absence of substantial or undue prejudice to the nonmoving party ... 'denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment.' "[41]

Miller makes two arguments in opposition to O'Brien's motion. First, he contends that allowing O'Brien to file its proposed amended answer as-is would result in substantial prejudice. Specifically, Miller claims that O'Brien's amended answer seeks to withdraw three factual admissions (from paragraphs 19, 47, and 48) to which Miller is entitled. Miller would thus have the Court deem these responses as admissions or deny O'Brien leave to amend entirely.

The Court is unconvinced. In *West Run Student Housing Associates v. Huntington National Bank*, the United States Court of Appeals for the Third Circuit held that a plaintiff may amend his or her complaint to omit previously alleged facts for the sole purpose of avoiding dismissal.[42] There, the plaintiff had amended her\* complaint as of right under Rule 15(a) and withdrew certain judicial admissions. In response, the defendant\* moved to dismiss the amended complaint, or to construe the withdrawn allegations as admissions. The district court agreed with the defendant, but the Third Circuit reversed on the basis that a plaintiff may withdraw judicial amendments under Rule 15(a).[43]

Miller's argument boils down to an assertion that O'Brien's amended answer withdraws factual admissions and that this is prejudicial because those admissions were material to Miller's claims. Altering a pleading likely always causes some inconvenience to the opposing party. But just because withdrawing an admission makes Miller's case more difficult does not mean that it is prejudicial for purposes of Rule 15(a), or that such a result is impermissible under the Federal

Miller v. O'Brien Construction, Inc., Not Reported in Fed. Supp. (2021)

2021 WL 510072

Rules.[44] More importantly, *West Run* and its reasoning foreclose Miller's contentions. Consequently, the Court concludes that the amended answer's factual withdrawals are insufficient to justify a denial of leave to amend.

**\*5** Second, Miller argues that three paragraphs in the amended answer, which use a "denied as stated" response, run afoul of Rule 8(b) pleading requirements because they constitute equivocal denials. Miller maintains that this has frustrated his ability to identify the basis for O'Brien's denial, especially because O'Brien's previous response in its original answer had provided factual clarification of the basis for their "denied as stated" response. In support, Miller cites several cases where courts have concluded that a response of "denied as stated," on its own, was deemed insufficient under Rule 8(b).

Miller's argument falls flat because it presumes an unwarranted conclusion. Though the decisions Miller cites serve as examples of where a bare "denied as stated" was considered insufficient and unresponsive, these cases were decided under different rules and thus in different contexts.[45] Though the Federal Rules of Civil Procedure exist in tandem, each rule is distinct; it is thus generally ill-advised to assume that the standards governing one rule are necessarily applicable to another. Miller was free to argue *why* cases addressing Rule 36 and Local Rule 56.1 apply here, but instead, he merely assumed the result. Consequently, this cannot warrant denial of O'Brien's motion.

## IV. CONCLUSION

O'Brien's motion seeking leave to amend its answer is granted.

An appropriate Order follows.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 510072

Footnotes

1       Doc. 81.

2       Doc. 20.

3       *Id.* The owner of this project, BRE RC Monroe MP PA, LP is the second defendant. *Id.*

4       Doc. 1.

5       Doc. 20.

6       Doc. 23.

7       Doc. 34.

8       Doc. 35.

9       Doc. 39.

10      Doc. 57.

11      Doc. 82 at 2 n.1.

12      *Id.* at 2.

13      Doc. 80.

14      *Id.*

15      Doc. 69.

16      Fed. R. Civ. P. 15(a)(2).

Case 1:25-cv-00927-KMN    Document 63-1    Filed 03/31/26    Page 32 of 33
Miller v. O'Brien Construction, Inc., Not Reported in Fed. Supp. (2021)
2021 WL 510072

17    *Id.*; *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[T]his mandate is to be heeded.").

18    *Backof v. New Jersey State Police*, 92 Fed. Appx. 852, 858 (3d Cir. 2004) (quoting *Foman*, 371 U.S. at 182).

19    *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) (quoting *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987)).

20    *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011).

21    Fed. R. Civ. P. 16(b)(4).

22    *Premier Comp Solutions, LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).

23    *Id.* (internal citations omitted).

24    Fed. R. Civ. P. 15(a)(1)(B).

25    *See White v. SKF Aerospace, Inc.*, 768 F. Supp. 498, 501 (E.D. Pa. 1991); *see Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing*, 663 F.2d 419, 425-26 (3d Cir. 1985). *But see United States ex rel. Matthews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003) ("[F]ailing to request leave from the court when leave is required makes a pleading more than technically deficient. The failure to obtain leave results in an amended complaint having no legal effect."); *Murray v. Archambo*, 132 F.3d 609, 612 (10th Cir. 1998) ("Because [the plaintiff's] amended complaint was not properly filed pursuant to Rule 15, it had no legal effect and did not supersede his original complaint."); *Hoover v. Blue Cross & Blue Shield of Alabama*, 855 F.2d 1538, 1544 (11th Cir. 1988) ("In general, if an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, *it is without legal effect and any new matter it contains will not be considered unless the amendment is resubmitted for the court's approval.*") (emphasis in original) (internal quotation marks omitted) (quoting 6 Fed. Practice & Proc. § 1485 at 421 (1971)).

26    *E.g.*, *Hicks v. Resolution Trust Corp.*, 757 F. Supp. 167, 170 (N.D. Ill. 1991); *American Angus Ass'n v. Sysco Corp.*, 865 F. Supp. 1174, 1175 (W.D.N.C. 1993); *Straub v. Desa Indus., Inc.*, 88 F.R.D. 6, 9 (M.D. Pa. 1980).

27    *See Straub*, 88 F.R.D at 9 (citing "the goal of Rule 14 to promote judicial efficiency by eliminating circuity of action" as justification for construing an amendment as properly filed even though it was sought in technical violation of Rule 15(a)).

28    Some courts have considered whether an improperly filed pleading should nevertheless be

deemed as having been filed earlier for purposes of determining the applicability of statutes of limitations under Rule 5. *E.g.*, *U.S. ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 295-96 (5th Cir. 2003); *Angles v. Dollar Tree Stores, Inc.*, 494 Fed. Appx. 326, 329 (4th Cir. Sept. 13, 2012). O'Brien does not attempt to explain why such an outcome is warranted here, where the Court is not addressing Rule 5. Consequently, the Court will not analyze the applicability of these decisions.

29    Fed. R. Civ. P. 16(b)(4).

30    *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 119 (W.D. Pa. 2010).

31    *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 279 (E.D. Pa. 2010) (internal citations omitted); *see Sang Geol Lee v. Won Il Park*, 720 Fed. Appx. 663, 669 (3d Cir. 2017) (affirming the district court's decision to deny leave to amend because the moving party's attorney was "not diligent in seeking amendment").

32    *Banks v. City of Philadelphia*, 309 F.R.D. 287, 290 (E.D. Pa. 2015) (quoting *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 701 (E.D. Pa. 2007) (Robreno, J.)).

33    *Id.* (quoting *Chancellor*, 501 F. Supp. 2d at 701-02).

34    *Price*, 737 F. Supp. 2d at 279 (citing *Chancellor*, 501 F. Supp. 2d at 702).

2021 WL 510072

35    *Id.* (citing *Chancellor*, 501 F. Supp. 2d at 702).

36    *Chancellor*, 501 F. Supp. 2d at 702.

37    2020 WL 6203056 (M.D. Pa. Oct. 22, 2020).

38    *Id.* at *3.

39    *Id.* at *2.

40    *USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004) (quoting Fed. R. Civ. P 15(a)).

41    *Id.* (quoting *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413-14 (3d Cir. 1993), *abrogated by statute on other grounds as recognized by* In re Exxon Mobil Corp. Sec. Litig., 500 F.3d 189, 194-95 (3d Cir. 2007)); *see also Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) (citing *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987)) ("This liberal amendment regime helps effectuate the 'general policy embodied in the Federal Rules favoring resolution of cases on their merits.' ").

42    712 F.3d 165, 171 (3d Cir. 2013) ("This Court and several of our sister courts have recognized that judicial admissions may be withdrawn by amendment.") (collecting cases).

43    *Id.* at 171-72.

44    *See id.* ("Plaintiffs routinely amend complaints to correct factual inadequacies in response to a motion to dismiss ... That is so even when the proposed amendment flatly contradicts the initial allegations.").

45    *E.g.*, *Bernard v. East Stroudsburg Univ.*, 2014 WL 145913, at *1-2 (M.D. Pa. April 14, 2014) (Local Rule 56.1); *Phila. Gear Corp. v. Techniweld, Inc.*, 1992 WL 99622, at *2-3 (E.D. Pa. May 1, 1992) (Rule 36).

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.