# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ASHER BRONSTIN,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**VIASAT INC.**<br><br>*Defendant.* | Case No.<br>1:25−CV−00927−KMN<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S BRIEF IN OPPOSITION TO

## DEFENDANT'S MOTION FOR SANCTIONS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

PROCEDURAL HISTORY...................................................................................2

STATEMENT OF QUESTIONS INVOLVED.......................................................4

LEGAL STANDARD...........................................................................................5

ARGUMENT .......................................................................................................7

   I. Defendant's 28 U.S.C. § 1927 motion fails. .....................................................7

      A.   Plaintiff's conduct was objectively reasonable in light of ViaSat's own
sworn misrepresentations. ...............................................................................7

      B.   The Plaintiff's recordings do not change the analysis. By ViaSat's own
logic, ViaSat advances a theory directly contradicted by the recordings. ........11

   II. Defendant's Rule 11 motion fails. .................................................................15

      A.   The Complaints were objectively reasonable. ..........................................15

      B.   The Bronstin declaration was reasonable in light of Defendant's
contention that Mr. Bronstin called Defendant.................................................18

   III. By seeking to amend, Plaintiff does what Rule 11 requires. .........................20

   IV. Inherent authority sanctions are unwarranted. ..............................................21

CONCLUSION...................................................................................................21

# TABLE OF AUTHORITIES

## Cases

*Alphonso v. Pitney Bowes, Inc.*, 356 F. Supp. 2d 442 (D.N.J. 2005) ........................9

*Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*,
    618 F.3d 277 (3d Cir. 2010) ..........................................................................5

*Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168 (D.N.J.
    Jan. 11, 2023)................................................................................................17

*Barley v. Fox Chase Cancer Ctr.*, 54 F. Supp. 3d 396 (E.D. Pa. 2014) ....................9

*Cambridge Prods., Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048 (Fed. Cir. 1992) ..16

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)...........................................5

ii

*EuroOptic Ltd. v. W.L. Gore & Assocs., Inc.*, 781 F. Supp. 3d 320 (M.D. Pa. 2025) ..................................................................................................................20

*Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277 (3d Cir. 1991) ..........6

*Ford v. Temple Hosp.*, 790 F.2d 342 (3d Cir. 1986) .............................................6, 7

*Gaiardo v. Ethyl Corp.*, 835 F.2d 479 (3d Cir. 1987) ...............................................5

*Hicks v. City of Philadelphia*, 753 F. Supp. 3d 409 (E.D. Pa. 2024) ......................21

*Hoffmann-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359 (Fed. Cir. 2000)............18

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175 (3d Cir. 2002) ...............................................................................................6, 10

*In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90 (3d Cir. 2008) ...........................6, 7

*Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328 (Fed. Cir. 2007) ..............17

*Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006 (2d Cir. 1986)................................16

*Keister v. PPL Corp.*, 318 F.R.D. 247 (M.D. Pa. 2015)....................................19, 20

*Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90 (3d Cir. 1988)................5, 6, 13, 14

*Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823 (N.D. Ill. Dec. 7, 2022)..................................................................................17, 18

*Morris v. W. Manheim Twp.*, No. 1:CV-12-1647, 2013 WL 2177759 (M.D. Pa. May 20, 2013)...........................................................................................6

*Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 315 F. Supp. 2d 623 (D.N.J. 2004) ....6

## Statutes

28 U.S.C. § 1927 .........................................................................4, 7, 11, 14, 15

## Rules

Fed. R. Civ. P. 11 .......................................................5, 6, 13, 15, 16, 20

Fed. R. Civ. P. 11(b)(3)................................................................................16

Fed. R. Civ. P. 11(c)(4).................................................................................6

**INTRODUCTION**

ViaSat's sanctions motion asks this Court to punish Plaintiff for doing the one thing that he and his counsel in this case have done consistently right, that is, following the evidence and amending accordingly. The motion is not a straightforward Rule 11 dispute about a frivolous claim. It is an attempt to weaponize Rule 11 and § 1927 against opposing counsel for litigating on the factual record that ViaSat itself created, concealed, and then contradicted.

ViaSat's first motion to dismiss proclaimed, in bold, that "it was the ***Plaintiff who called Viasat***—not the other way around." (ECF 11-1.) It declared no third party was involved and that its records showed an "inbound call" from Plaintiff. ViaSat's discovery responses doubled down on this false narrative that there was no third party involved, that no responsive documents existed, and that the calls did not occur. On that sworn record and pleadings, Plaintiff pled and maintained a direct liability theory against ViaSat.

ViaSat's motion argues that Plaintiff's counsel should have known better because Plaintiff possessed recordings of the calls from the start. Not so. As discussed at length in Plaintiff's Reply in Support of his Motion to Amend (ECF No. 63,) the recordings, which reflect inbound calls to Plaintiff, and not outbound calls to ViaSat, are themselves internally contradictory and end with the caller conceding that he was "only ViaSat." Plaintiff received emails and credit card

1

charges from ViaSat. Plaintiff's Google Fi carrier records confirm the calls were placed to Plaintiff. And, as discussed in Plaintiff's pending sanctions motion, ViaSat acted wrongly by incorrectly claiming that the Plaintiff called ViaSat.

ViaSat's motion also fails because it conflates an ultimately unsuccessful pleading theory with a sanctionable one. Reasonableness is judged by the information available to the pleader at the time of filing. Plaintiff's filings were grounded in the facts then available to Plaintiff. The sanctions motion does not and cannot identify any specific filing that was objectively baseless when made, because no such filing exists. For the reasons that follow, both sanctions theories are unwarranted, and the motion should be denied.

## PROCEDURAL HISTORY

Plaintiff Asher Bronstin received two telemarketing calls on April 19, 2024 from "spoofed" caller IDs selling internet services, both of which he recorded. His telephone records and recordings of those calls confirm that they were placed *to* Plaintiff. As such, Plaintiff filed his original complaint against ViaSat alleging that ViaSat called him, because the second call with the representative, Angel, ultimately ended with a concession that he was calling from ViaSat, no other legitimate entity was named on the call, and the Plaintiff received both an attempted credit card charge and email from ViaSat.

In response, ViaSat moved to dismiss. Rather than identifying XYZies or acknowledging any third party involvement whatsoever, ViaSat submitted a declaration and proclaimed in bold that "it was the **Plaintiff who called Viasat**— not the other way around." Notably, ViaSat did *not* say that the Plaintiff called XYZies or was transferred by XYZies to ViaSat. ViaSat plainly, boldly, and unequivocally stated that the Plaintiff called "Viasat." The Henderson Declaration confirmed and swore that "no third parties [made an outbound call] on ViaSat's behalf," stated the telephone numbers at issue were "not also [sic] associated with any vendor Viasat uses," and confirmed that the Plaintiff made "an *inbound* call to 855-478-5112 on April 19, 2024, at 2:17 pm Pacific Time." Mr. Henderson also confirmed that a purchase was made on the call. To address the motion, Plaintiff amended his complaint to plead more details about the calls he *received*.

Given ViaSat's submissions denying the involvement of any third party and proclaiming in a pleading that the "Plaintiff . . . called ViaSat," direct liability was the only available theory. Indeed, the first MTD and the first Henderson Declaration made clear that the parties *did not dispute ViaSat's involvement*, only the *direction* of the calls. Plaintiff then submitted a sworn declaration in opposition to ViaSat's second MTD, addressing his *receipt* of the calls from ViaSat, as the calls named no other plausible entity other than ViaSat.

Plaintiff then sought discovery, including about any third party's involvement in the call. ViaSat's discovery responses, verified by the same Gregory Henderson, articulated in various parts that no third parties were involved in the calls, that the calls alleged did not occur, and that ViaSat had no documents or information responsive to the involvement of any third parties. (Ex. A.) Simultaneously, ViaSat resisted all discovery aimed at even uncovering the existence of third party vendors on the ground that "Plaintiff does not purport to plead a vicarious TCPA liability theory in the operative Complaint, and expressly disclaims such a theory," which blocked discovery into XYZies while simultaneously "disclaiming" the very theory that Defendant says Plaintiff should be sanctioned for not making in its instant motion.

Only after this Court directed ViaSat to identify any vendors involved did ViaSat disclose XYZies, an entity ViaSat knew of throughout the entire period of sworn denials. Plaintiff immediately sought leave to amend. ViaSat has filed the instant Rule 11 motion, and the Plaintiff has filed a cross-motion against ViaSat and its counsel based on the aforementioned pattern of sworn misrepresentations. This response follows.

## STATEMENT OF QUESTIONS INVOLVED

1. Should the Court deny Defendant's motion for sanctions under 28 U.S.C. § 1927, Rule 11, and the Court's inherent authority, where Plaintiff's litigation

4

conduct was objectively reasonable at each stage in light of Defendant's own representations, and where Plaintiff amended promptly once the Court compelled disclosure of a vendor whose existence Defendant had denied under oath for over six months?

*Plaintiff's Suggested Answer:*  Yes.

*Defendant's Anticipated*[1] *Answer:*  No.

## LEGAL STANDARD

Rule 11's central purpose is to deter baseless filings, not to chill vigorous advocacy. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). The inquiry is objective, focusing on whether the challenged filing was objectively reasonable *under the circumstances* at the time it was presented. *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 297 (3d Cir. 2010). Sanctions "must not be used as an automatic penalty against an attorney or party advocating the losing side of a dispute," and it "should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988). It bears repeating that the target is abuse—the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute. *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987).

---

[1] Defendant's sanctions motion fails to include the statement of questions involved as required by the Local Rules.

Contesting the sufficiency of a pleading through Rule 11 rather than an appropriate merits motion is inappropriate unless the pleading was patently frivolous when filed. *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 315 F. Supp. 2d 623, 628 (D.N.J. 2004). "To say that a party confronts difficult questions of factual sufficiency is not the same as saying its claims are patently frivolous." *Id.* (quoting *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 290 (3d Cir. 1991)). Sanctions must be limited to what suffices to deter repetition. Rule 11(c)(4).

Section 1927 requires a finding that the attorney (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing costs; and (4) doing so in bad faith or by intentional misconduct. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002). Bad faith may be inferred where counsel demonstrates reckless indifference to the truth or a "serious and studied disregard for the orderly process of justice," *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986), but not where counsel acts on the basis of the opposing party's own misconduct or even misunderstanding. *See Morris v. W. Manheim Twp.*, No. 1:CV-12-1647, 2013 WL 2177759, at *3 (M.D. Pa. May 20, 2013); *Mary Ann Pensiero*, 847 F.2d at 95 (3d Cir. 1988). Moreover, courts have expressed doubt as to whether or not Section 1927 applies to initial pleadings because "the proceedings in a case cannot be multiplied until there *is* a case." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008)

6

## ARGUMENT

### I. Defendant's 28 U.S.C. § 1927 motion fails.

A. Plaintiff's conduct was objectively reasonable in light of ViaSat's own sworn misrepresentations.

Section 1927's demanding standard cannot be satisfied on this record. As a threshold matter, Section 1927 is the wrong mechanism here, since it is directed at *post-filing* multiplication of proceedings, *not* initial pleadings. *In re Schaefer*, 542 F.3d at 101 ("§ 1927 explicitly covers only the multiplication of proceedings that prolong the litigation of a case and likely not the initial pleading, as the proceedings in a case cannot be multiplied until there *is* a case"). The bad faith that Section 1927 requires is characterized by reckless indifference to the truth or disregard for the orderly processes of justice. *Ford*, 790 F.2d at 347.

Plaintiff was not recklessly indifferent to the truth. Rather, Plaintiff was fastidiously attentive to it. The "truth" ViaSat told him, under oath, was that no third party was involved and that the Plaintiff called ViaSat. That sworn narrative directly supported a direct liability theory, and proceeding on that theory and attempting to disprove Defendant's allegations that the Plaintiff called Defendant was not only reasonable, it was the only available responsible course.

ViaSat's first motion to dismiss proclaimed, in bold, that "it was the *Plaintiff who called Viasat*—not the other way around." The Henderson Declaration identified ViaSat's records of a 23-minute-and-41-second "inbound

7

call" to ViaSat from Plaintiff's number on the exact date and time Plaintiff alleged he *received* a telemarketing call. Plaintiff knew he had not placed that call. The most natural inference from ViaSat's own representations was therefore that a ViaSat employee had called him, and that ViaSat was characterizing the call as "inbound" in a misleading or erroneous way. That inference, which tracks ViaSat's own sworn narrative precisely, is what the First Amended Complaint alleged. ViaSat cannot now argue that the inference it invited was in bad faith.

ViaSat then not only contradicted its false position in its responses to the Plaintiff's discovery but also contended that it was "disclaiming" a vicarious liability theory that it contends that the Plaintiff should be sanctioned for not pleading at the outset. When asked directly whether any third party made or "was involved in" the calls, ViaSat answered: "the calls alleged in the Complaint did not occur and therefore none." But when asked to identify persons who spoke with Plaintiff from ViaSat or any of its vendors, ViaSat answered: "Plaintiff did not speak with anyone at Viasat" and "Viasat has located no additional information responsive." ViaSat signed this response despite previously submitting a pleading in which it contended that the "plaintiff . . . called Viasat." Both statements cannot simultaneously be true. And, when asked for documents reflecting agreements with any third party (i.e. XYZies), ViaSat swore no such documents existed. On that sworn record, Plaintiff had not merely a reasonable basis to proceed on direct

8

liability, he had an affirmative sworn confirmation from the opposing party that direct liability was the only theory available because no third party was involved.

The cases ViaSat relies on to establish bad faith are inapposite *precisely* because they involve counsel who persisted in claims *known to be* unsupported. If anything, those cases support sanctions against ViaSat and its counsel, not the other way around. For example, in *Barley*, the Court denied Rule 11 sanctions, but upheld Section 1927 sanctions against the Defendant, even when the Defendant *prevailed at summary judgement*, for filing two improper Rule 11 motions "that were unsupported by billing records that conformed to our Court of Appeals's longstanding precedents for attorney's fee submissions," and which also "failed to comply with the plain language of [Rule 11] and was untimely served." *Barley v. Fox Chase Cancer Ctr.*, 54 F. Supp. 3d 396, 408 (E.D. Pa. 2014). On that basis, the Court sanctioned the *Defendant* for filing two sanctions motions "for the improper purpose of harassing the opponent by burdening her with a needless defense." *Id.*

In *Alphonso*, the court found that plaintiff's counsel acted in bad faith by pursuing an inflated claim for economic losses and an unsupported emotional distress claim based on evidence *within the Plaintiff's possession*, namely, that the plaintiff had stated after the lawsuit was filed that he had no "psychological or sleep problems." *Alphonso v. Pitney Bowes, Inc.*, 356 F. Supp. 2d 442, 455 (D.N.J. 2005). That is plainly not the case here. All the evidence in the Plaintiff's

9

possession pointed at ViaSat's direct involvement, and ViaSat persisted for over six months in a theory that the "plaintiff . . . called Viasat." ViaSat, not the Plaintiff, knew of XYZies involvement, and *never* disclosed this involvement, including in Mr. Heeringa's calls in which he requested Plaintiff's counsel to drop the case, and which it persisted in hiding through discovery.

Similarly, in *In re Prudential*, the Court considered the totality of an attorney's conduct throughout the course of the litigation, including "bombarding the court with paper," and other "emergency" motions of similar ilk. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 190 (3d Cir. 2002). Plaintiff has simply opposed ViaSat's first two motions to dismiss in which it claimed that the Plaintiff called ViaSat and now has sought leave to amend when he found out that ViaSat's own representation was wrong.

None of these cases applies to a counsel who advances a theory directly corroborated by their own evidence and the opposing party's own sworn submissions. Plaintiff did not disregard contrary evidence. He relied on affirmative representations from ViaSat itself, representations now shown to be false because ViaSat concealed XYZies' involvement. If anything, the multiplication of proceedings in this case, the two rounds of motion to dismiss briefing, two rounds of bifurcation premised on the false assertion that the Plaintiff called ViaSat, the

10

amendment filings, and these Rule 11 filings, were all caused by Defendant's

positions disclaiming third party involvement and the outbound calls.

B. The Plaintiff's recordings do not change the analysis. By ViaSat's own logic, ViaSat advances a theory directly contradicted by the recordings.

ViaSat's other Section 1927 theory is that Plaintiff possessed recordings

contradicting his direct liability allegations, and that proceeding with those

allegations while withholding the recordings for six months constitutes actionable

bad faith. This argument fails at both levels.

First, as explained more fully in the Plaintiff's Reply in support of his

Motion to Amend, the recordings did not "contradict" direct liability in any

meaningful sense, and certainly not for Section 1927 purposes, particularly when

the recordings are internally contradictory. The Plaintiff's recording of the first call

*he received* reveals an individual *calling him* about internet service that drops

shortly into the call. And the second call, placed a few minutes later, reveals the

same individual *calling back*, apologizing, stating that the call was declined, and

then retrying the transfer to Angel. And, when the Plaintiff spoke to Angel, he at

various points stated that he either *was* ViaSat, was "authorized" by ViaSat, and

eventually conceded that he was "just" ViaSat.

The references to another internet company in Oklahoma and a fictitious

website do not change the fact that the *only* cognizable legal entity referenced on

the calls was ViaSat. Angel exclusively pitched ViaSat's satellite internet service,

11

at specific pricing, with apparent direct access to ViaSat's discount structure, installation scheduling system, email sending system, and credit card processing system. Based on these manifestations, ViaSat cannot now reasonably claim that the Plaintiff should have sued "GetTheFastestInternet.com," which isn't a real website, or AirLink, a rural Oklahoma ISP that does not offer services in Plaintiff's California zip code he provided. Suing those entities would be the sanctionable thing to do, particularly in light of the ViaSat email and credit card charge.

In short, when Plaintiff reviewed the recordings, which revealed calls to Plaintiff, the only legally cognizable entity he could identify as responsible for the calls was ViaSat. GetTheFastestInternet.com does not exist. AirLink serves only rural Oklahoma. Angel could not name a California entity other than ViaSat itself. The only company for which Angel would identify was ViaSat. Proceeding against ViaSat on the basis of those recordings, particularly given the email and credit card charge, was not done in bad faith or to multiply the proceedings. Rather, it was the *only* reasonable conclusion the recordings supported.

ViaSat's characterization of Plaintiff as a "serial TCPA litigant" who should have divined the proper defendant cuts against ViaSat. A TCPA litigant facing ViaSat's sworn denial of third-party involvement and a contention that he called ViaSat, when he possessed a recording showing the call was placed *to him*, would not be expected to independently hypothesize that a company ViaSat swore did not

12

exist had placed the calls. Indeed, the admission made by Angel at the conclusion

of the call, the email the Plaintiff received from ViaSat *directly*, and the attempted

credit card charge that the Plaintiff received from ViaSat *directly*, all support the

conclusion that ViaSat placed the call, not the other way around.

As the Third Circuit has remarked in the Rule 11 context:

In scrutinizing a filed paper against these requirements, courts must apply an objective standard of reasonableness under the circumstances. The wisdom of hindsight should be avoided; the attorney's conduct must be judged by what was reasonable to believe at the time the pleading, motion, or other paper was submitted. . . . Imposing a continuing duty on counsel to amend or correct a filing based on after-acquired knowledge is inconsistent with the Rule. . . . As the recited facts establish, at the time the Pensieros' counsel filed this complaint his investigation revealed the exclusive dealership of the disputed product brands, . . . the apparent approval by the product manufacturers, and [an AG] opinion [that defendant's actions were unlawful.]

A requirement that counsel, before filing a complaint, secure the type of proof necessary to withstand a motion for summary judgment would set a pre-filing standard beyond that contemplated by Rule 11. At the time plaintiffs' counsel filed the complaint here, he knew facts that supported a reasonable suspicion of cooperation between defendants and other parties who could have been expected to benefit from the defendants' intransigence. These factual circumstances and the rational inferences that may be drawn from them convince us that the allegations of the first count comported with Rule 11's pre-filing investigation requirement.

That plaintiffs abandoned the conspiracy count some months after the complaint was filed does not negate the reasonableness of the inferences existing at the time the complaint was prepared. Indeed, abandoning a claim that appears unlikely to succeed is responsible advocacy to be commended—not abuse of the court's process to be deterred. Courts benefit when counsel reduce the issues in dispute by objectively reappraising the evolving strengths of their positions throughout the course of litigation. Rule 11 was not intended to inhibit such activity by permitting it to be characterized by an adversary as an admission of liability.

13

*Mary Ann Pensiero*, 847 F.2d at 94-96 (cleaned up)

Relatedly, the recordings confirm that the calls were received by Plaintiff, not placed by him. Plaintiff knew he had not called ViaSat, and the recordings and the Google Fi records confirm it. Thus, if possession of recordings establishing that calls were received by someone constitutes sanctionable bad faith for the party receiving the calls, then ViaSat has a far graver problem given that it has signed pleadings, in bold, contending that "it was the ***Plaintiff who called Viasat***—not the other way around." Mr. Henderson confirmed this in a sworn declaration. If the Plaintiff's call recordings are sufficient to form the basis for sanctions, then it is ViaSat who should be sanctioned for multiplying the proceedings despite knowing that the Plaintiff possessed evidence that the calls were placed to Plaintiff. If vexatiousness is established by advancing facts that recordings directly contradict, ViaSat's motions, declarations, and discovery responses all constitute far more egregious conduct than anything Plaintiff's counsel is accused of doing. The motion inverts who should answer for misconduct here.

The "multiplication of proceedings" ViaSat complains of was caused by ViaSat's own sworn misrepresentations. ViaSat cannot come to this Court seeking sanctions for the natural consequence of its own false sworn record and reckless disregard of the evidence adduced. Moreover, it only requested the call recordings in discovery months after taking the position that discovery should be bifurcated

14

on the basis that the "***Plaintiff did not receive either call alleged in the FAC, let alone <u>any</u> call from or on behalf of Viasat***." (ECF No. 27-1). That very conduct cannot be the basis on which to grant Section 1927 sanctions.

Moreover, *neither party* served initial disclosures in this case, despite a joint agreement to do so by August 1, 2025. ViaSat cannot credibly accuse Plaintiff of "hiding the ball" by withholding recordings in its initial disclosures when both parties failed to do so through inadvertence. What's more, ViaSat's missing disclosures would have (or should have) identified XYZies months earlier and avoided the very proceedings ViaSat now complains about.

At bottom, any "multiplication" of the proceedings was not caused by Plaintiff or his counsel. To the contrary, it was directly caused by ViaSat's concealment of XYZies and ViaSat's own decision to file two motions to dismiss, two motions to bifurcate discovery, and to create a sworn factual record that ViaSat knew to be false or at least incomplete. ViaSat's own conduct generated the litigation complexity it now attributes to Plaintiff's counsel. That itself warrants sanctions against ViaSat, not Plaintiff.

## II. Defendant's Rule 11 motion fails.

A. The Complaints were objectively reasonable.

The Plaintiff's complaints allege that Plaintiff received two telemarketing calls from ViaSat selling ViaSat's services from a "spoofed" caller ID. This was a

15

straightforward and accurate description of what occurred. Plaintiff received calls, the calls directly sold ViaSat's satellite internet services, and the only legitimate entity identified on the calls was ViaSat. These were followed by an email and a credit card charge from ViaSat directly. This satisfies Rule 11(b)(3)'s standard that the Plaintiff's factual contentions either have, or are likely to have, evidentiary support. This is objectively reasonable, particularly as any contrary evidence was not available to the Plaintiff and indeed in ViaSat's sole knowledge and control.

When facts which "could hardly be known to an outsider" and other relevant information is "largely in the control of the defendants," under the circumstances, an inquiry consisting of information supplied by the plaintiff is "reasonable" within the meaning of Rule 11. *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1012 (2d Cir. 1986). Based on the totality of the evidence, including the recording, call records, email, and credit card charge, a competent attorney could form a reasonable belief that the Plaintiff's complaints were well grounded in fact and law. *Id.* Here, without the benefit of discovery, no information regarding XYZies or any third party at all was "practically obtainable" by Plaintiff, and so the Rule 11 requirements for filing were met. *Cambridge Prods., Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050 (Fed. Cir. 1992). What's more, a party cannot impose "unreasonable obstacles" to obtaining evidence and then seek to sanction the

16

counterparty on that very basis. *See Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007).

At bottom, any reasonable person, having received the calls that Plaintiff did naming ViaSat as the only cognizable entity and then receiving a credit card charge and email from ViaSat, would reasonably conclude that ViaSat made the calls. So too would any person who received a call selling internet services that disconnected and then receive a call selling the same thing from the same person reasonably conclude that both calls are connected. On this point, ViaSat's claim, relying on *Gillam*, claiming that the claimed inability to connect both calls to ViaSat is sanctionable, is off base. First, *Gillam* was a merits case, not a sanctions case, and it granted a motion to dismiss on the basis that the plaintiff there did not plausibly allege more than one call from the defendant. For starters, ViaSat didn't even raise *Gillam* in its second MTD, and raised it in its first only in the context of a string citation. Regardless, courts have held, including with respect to the same defense counsel firm here, that the indicia of the calls, such as them being from the *same named entity*, give rise to a presumption they come from the same place. *Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168, at *5 (D.N.J. Jan. 11, 2023) (denying MTD because plaintiff pled facts connecting the calls); *Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823, at *3 (N.D. Ill. Dec. 7, 2022) ("The issue of who made the first call isn't much of a

17

whodunit. Moore received two calls from the same number, and the second caller was Healthcare Solutions. It is reasonable to conclude that Healthcare Solutions called the first time, too.").

A reasonable person having received such calls would also reasonably understand that, if ViaSat engaged third parties to conduct marketing on their behalf, ViaSat would be uniquely situated to identify who those third parties are. *Hoffmann-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1364 (Fed. Cir. 2000) (holding sanctions were unwarranted when defendant refused to disclose a manufacturing process in its knowledge, and noting, "It is difficult to imagine what else Roche and Syntex could have done to obtain facts relating to Torpharm's alleged infringement of their process patents."). Instead, ViaSat denied XYZies involvement and instead claimed that the Plaintiff called ViaSat, which was demonstrably false based on the Plaintiff's recordings. The Plaintiff and his counsel conducted a reasonable inquiry into the evidence before filing the Complaints.

B. The Bronstin declaration was reasonable in light of Defendant's contention that Mr. Bronstin called Defendant.

The framing ViaSat attempts of the Bronstin Declaration is staggering in its audacity. Before it was made, ViaSat pled and swore that the Plaintiff called "Viasat," not a third party, and further that the Plaintiff made a purchase from

18

ViaSat. ViaSat doubled down on these representations by expressly disclaiming the involvement of any third party that would have acted on ViaSat's behalf. Given that Plaintiff knew that he had not called ViaSat, what was Plaintiff to do? The Bronstin Declaration directly addresses the discrepancy that ViaSat invited: whether the Plaintiff called ViaSat, or whether ViaSat called him. It pleads facts directly addressing the very issue that ViaSat put at issue: who called whom?

The most logical explanation for any discrepancy as to what the caller "confirmed," (a confirmation supported by the recordings), on the factual record as it existed before XYZies was disclosed, was that ViaSat was characterizing a call as "inbound" when in fact ViaSat had *called* Plaintiff and ViaSat was misrepresenting the call *direction*. That inference, and the declaration, was objectively reasonable given what ViaSat had sworn. After all, ViaSat pled and swore that Plaintiff called ViaSat and there was no third party involved. On those facts, the declaration's characterization that the caller "confirmed" he was calling from ViaSat was a reasonable description of what occurred, and a description that any objective reader of the transcript could reasonably reach.

Here, the record not only "supplied support," for Mr. Bronstin's Declaration, but it also directly addressed Mr. Henderson's two Declarations to the contrary addressing the very same topic. On this point, *Keister* actually supports Plaintiff. There, counsel "implanted uncertainty and ambiguity into the factual posture of

19

[the case] where no such vagueness was warranted and where such inconsistencies were often contradicted by [sworn] testimony." *Keister v. PPL Corp.*, 318 F.R.D. 247, 268 (M.D. Pa. 2015). Like in *Keister*, and unlike in *Shelton*, if anyone was contradicting the record, it was ViaSat, since the Bronstin Declaration merely addresses ViaSat's own assertions and manufactured ambiguity which contended that the Plaintiff called ViaSat directly. The Bronstin declaration was a direct response to those filings. ViaSat, not Plaintiff, was "intentionally vague and incomplete," and these "tactics added significantly more work." *Id.* at 269.

### III. By seeking to amend, Plaintiff does what Rule 11 requires.

ViaSat's attack on the proposed SAC is curious because the SAC is textbook Rule 11 compliance. Once ViaSat disclosed XYZies, under Court compulsion after six months, Plaintiff did exactly what Rule 11 requires: he sought leave to amend to conform the pleadings to the newly disclosed facts. As *Hanoverian* counsels, what would have been sanctionable is the opposite, persisting in a direct liability theory against ViaSat after discovery revealed that XYZies was directly involved.

Rule 11 also imposes "an implied duty of candor, which attorneys violate whenever they misrepresent the evidence supporting their claims." *EuroOptic Ltd. v. W.L. Gore & Assocs., Inc.*, 781 F. Supp. 3d 320, 333 (M.D. Pa. 2025). This duty runs both ways. ViaSat's submissions to this Court violated it. In amending once those misrepresentations were exposed, Plaintiff did not. The earlier complaints

20

were objectively reasonable when filed because ViaSat's own submissions supported them. The SAC is objectively reasonable now because it conforms to the facts ViaSat was ordered to disclose. Nothing about this is sanctionable. It is the story of a litigation conducted on the available record at each point in time.

## IV. Inherent authority sanctions are unwarranted.

ViaSat's alternative bid for sanctions under this Court's inherent authority also fails for the same reasons as ViaSat's other theories. This sanction requires an explicit finding of bad faith. No such finding is warranted here for the reasons set forth above, particularly given Plaintiff's amendment. *See Hicks v. City of Philadelphia*, 753 F. Supp. 3d 409, 415 (E.D. Pa. 2024).

## CONCLUSION

For these reasons, Defendant's Sanctions Motion should be denied *in toto*.

RESPECTFULLY SUBMITTED AND DATED this April 1, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

21

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.8(b)(2), I hereby certify that this brief contains

4,998 words.

DATED April 1, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that, on April 1, 2026, I served the foregoing on counsel for

the Defendant via CM/ECF.

Dated: April 1, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com
.

22