Case 1:25-cv-00927-KMN    Document 64-2    Filed 04/01/26    Page 1 of 15

Atkinson v. Choice Home Warranty, Not Reported in Fed. Supp. (2023)

2023 WL 166168

2023 WL 166168
Only the Westlaw citation is currently available.
**Not for Publication**
United States District Court, D. New Jersey.

Tracy ATKINSON, Plaintiff,

v.

CHOICE HOME WARRANTY, Defendant.

Civil Action No. 22-04464
|
Signed January 11, 2023

**Attorneys and Law Firms**

Jacob U. Ginsburg, Kimmel & Silverman, Ambler, PA, for Plaintiff.

Kenneth D. Friedman, Manatt, Phelps, & Phillips, LLP, New York, NY, for Defendant.

**OPINION**

John Michael Vazquez, United States District Judge

**\*1** This matter arises out of an alleged series of unwanted telephone solicitations. Plaintiff Tracy Atkinson claims that Defendant Choice Home Warranty ("CHW") placed at least seven calls to her cell phone attempting to sell her a home warranty in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA") and the Texas Business and Commerce Code § 302.101. Defendant filed the present motion, seeking dismissal of the Complaint for failure to state a claim and dismissal of Plaintiff's request for injunctive relief for lack of standing. D.E. 8. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the following reasons, Defendant's motion is **DENIED**.

**I. BACKGROUND**[2]
Plaintiff had a cell phone which she "primarily used ... for residential purposes." D.E. 1. ("Compl.") ¶¶ 12-13. Plaintiff "registered that cell phone number on the Do Not Call Registry on or around December 2, 2008." Id. ¶ 14. Nevertheless, "[b]eginning on or around October 13,

2021, Defendant began calling Ms. Atkinson on her cellular telephone to sell Plaintiff a home warranty plan." Id. ¶ 16. Plaintiff did not consent to these calls. Id. ¶ 18. The Complaint alleges that "Defendant placed at least 7 calls to Plaintiff," and includes the following chart of the calls:

| Date: | Caller ID: |
| --- | --- |
| October 13, 2021 9:09 am | 210-712-1299 |
| October 18, 2021 4:33 pm | 210-712-1299 |
| October 22, 2021 1:16 pm | 210-712-1299 |
| October 27, 2021 3:12 pm | 210-712-1299 |
| October 27, 2021 3:18 pm | 817-406-9994 |
| October 28, 2021 12:05 pm | 210-714-5061 |
| November 1, 2021 5:10 pm | 210-712-1299 |

Id. ¶¶ 21-22.
During the October 27, 2021, 3:12 pm call, Plaintiff "asked if the company making the calls had a website." Id. ¶ 24. Plaintiff alleges that the person on the phone "provided 'ChoiceHomeWarranty.com' as the website associated with the party making the calls." Id. During that same call, Plaintiff requested to be removed from the company's call list. Id. ¶¶ 26-27. However, Plaintiff continued to receive calls from Defendant. Id. ¶¶ 28, 30, 32. Plaintiff informed the caller on two subsequent calls that she had requested to be removed from the call list. Id. ¶¶ 29, 31. Plaintiff alleges that CHW "directly placed the subject calls," but that "[i]f in fact, during the course of discovery, Plaintiff learns [CHW] engaged a third-party vendor to place the subject calls, [CHW] would be vicariously liable for such calls." Id. ¶¶ 35-36. Moreover, Plaintiff alleges that the calls were placed with "malicious, intentional, willful, reckless, wanton, and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff." Id. ¶ 40. Plaintiff also alleges that CHW "sought the business of Plaintiff at her Texas phone number while she was a Texas resident." Id. ¶ 34. Plaintiff claims, however, that CHW did not "register as a telephone solicitor with the Texas Secretary of State" as required by Texas law. Id. ¶¶ 34, 45.

**\*2** Plaintiff's Complaint seeks actual and statutory damages under the TCPA and Texas law as well as injunctive relief. Id. The present motion followed. D.E. 8.

**II. STANDARD OF REVIEW**
CHW moves to dismiss the Complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly,

Case 1:25-cv-00927-KMN    Document 64-2    Filed 04/01/26    Page 2 of 15

Atkinson v. Choice Home Warranty, Not Reported in Fed. Supp. (2023)

2023 WL 166168

550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007) (citation omitted). If, after viewing the allegations in the complaint in the manner most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols., LLC*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010). "[T]he defendant bears the burden of showing that the plaintiff has not stated a claim." *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 299 n.4 (3d Cir. 2016) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

CHW also seeks to dismiss Plaintiff's request for injunctive relief pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. To decide such a motion, a court must first determine whether the party presents a facial or factual attack against a complaint. A facial attack contests "subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack challenges "the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'" *Davis*, 824 F.3d at 346 (quoting *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). Here, CHW's motion appears to be a facial

attack, and as a result, like a Rule 12(b)(6) motion to dismiss, "the Court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

## III. ANALYSIS

### A. Count I – TCPA Claim

**\*3** Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls. *See Mims v. Arrow Fin. Servs., LLC,* 565 U.S. 368, 372 (2012). Congress also provided a private right of action for people who have "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5). The regulations provide that "[n]o person or entity shall initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]" 47 C.F.R. § 64.1200(c)(2).

CHW raises many perceived pleading deficiencies as to Plaintiff's TCPA claim. First, CHW claims that Plaintiff has not pled that CHW directly, physically made the calls at issue, as required for direct liability under the TCPA. *See Aaronson v. CHW Grp., Inc.*, No. 18-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) ("In order to establish that a defendant is directly liable under the TCPA, courts have concluded that the plaintiff must show that the defendant actually, physically initiated the telephone call at issue." (citation omitted)). The Court disagrees. In various instances, Plaintiff explicitly alleges that Defendant directly placed the relevant calls. *See, e.g.*, Compl. ¶ 16 ("*Defendant* began calling Ms. Atkinson" on or around October 13, 2021 (emphasis added)); *id.* ¶ 20 ("*Defendant* placed calls to Ms. Atkinson on numerous occasions attempting to solicit Plaintiff a home warranty plan[.]" (emphasis added)); *id.* ¶ 21 ("In total, *Defendant* placed at least 7 calls to Plaintiff[.]" (emphasis added)). While these allegations might be too conclusory to state a claim standing alone, Plaintiff further alleges that when she "asked if *the company making the calls* had a website," the person on the phone "provided 'ChoiceHomeWarranty.com' as the website[.]" *Id.* ¶ 24 (emphasis added). Considered in a light most favorable to Plaintiff, as is required on a motion to dismiss, this allegation allows the Court to draw the reasonable inference that CHW directly made the October 27, 2021, 3:12 pm call. *Cf. Dudley v. Vision Solar, LLC*, No. 21-659, 2021 WL 3077557, at *4 (D.N.J. July 21, 2021) (relying on "common sense alone"

Case 1:25-cv-00927-KMN    Document 64-2    Filed 04/01/26    Page 3 of 15
Atkinson v. Choice Home Warranty, Not Reported in Fed. Supp. (2023)
2023 WL 166168

to find a claim facially plausible where plaintiff alleged that "the entity that placed the call and scheduled the appointment was the same entity that arrived at Plaintiffs' home for the prearranged meeting and presented Plaintiffs with a business card"). Moreover, because four other calls came from the same phone number as that call, the Court can reasonably infer that "more than one telephone call" was directly placed by Defendant.

Defendant cites to various non-binding decisions in search of a contrary result. For instance, Defendant relies on *Landy v. Natural Power Sources, LLC*, No. 21-00425, 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021). In that case, the court ruled that plaintiff had not sufficiently alleged that defendant was directly liable for making the call. *Id.* The plaintiff in *Landy* only alleged that once he was on the call, "he was transferred to" the defendant, without alleging that the defendant placed the initial call. *Id.* Here, Plaintiff alleges explicitly that Defendant placed at least seven calls and that she was provided with "ChoiceHomeWarranty.com" when she asked "if the company making the calls had a website." Compl. ¶¶ 21-24. *Landy* is inapposite.

Plaintiff also cites to *Smith v. Vision Solar LLC*, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020). In that case, the plaintiffs alleged that the defendant contacted one plaintiff "from multiple telephone numbers confirmed to belong to Defendant." *Id.* Plaintiff did not, however, "point to any further information ... to justify this conclusion." *Id.* Thus, the court found that plaintiffs had not sufficiently pled that the calls came from the defendant. *Id.* But here, Atkinson points to a specific fact leading to her conclusion that the calls came from CHW—the provision of the website bearing their name. Thus, *Smith* is also distinguishable.

**\*4** CHW also relies on *Aaronson v. CHW Group, Inc.*, 2019 WL 8953349, at *2. That case noted that "at the pleading stage, plaintiff must allege facts to support [her] conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone." *Id.* (citation omitted). There, the plaintiff did not provide any "details from the telephone calls that would tend to identify defendant as the party that actually, physically took the steps to place the calls to plaintiff's phone." *Id.* Similarly, the court in *Bank v. Vivint Solar, Inc.*, No. 18-2555, 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019), found that plaintiff failed to state a TCPA claim, observing that "absent from the pleading are any specifics as to the statements made [on the phone call]

regarding the source of the [call] or the entity or entities whose business was being promoted." *Atkinson*, however, provided such a detail by alleging that she "asked if *the company making the calls* had a website" and was "provided 'ChoiceHomeWarranty.com' as the website associated with the party making the calls." Compl. ¶ 24. Thus, Plaintiff has pled what the *Aaronson* and *Vivint Solar* courts said was lacking—specific facts to support a reasonable inference that the defendant made the call.

Defendant's reliance on *Meeks v. Buffalo Wild Wings, Inc.*, No. 17-07129, 2018 WL 1524067, at *1-5 (N.D. Cal. Mar. 28, 2018), fares no better. *Meeks* held that the plaintiff had not alleged liability as to defendant Yelp because, while the text messages were sent through Yelp's application, plaintiff's complaint contained "affirmative allegations confirming that Yelp was *not* the maker or initiator of those text messages." *Id.* at *5 (emphasis in original). Instead, the plaintiff alleged that "the app users, *i.e.*, the Buffalo Wild Wings restaurants, initiated the text messages because they, and not Yelp, decided whether, when, and to whom to send the text messages." *Id.* at *4. Atkinson alleges that CHW directly placed the calls at issue, not that it was a software middleman or "platform" through which the calls were made, making *Meeks* inapposite. Defendant's reliance on *Sheski v. Shopify (USA) Inc.*, No. 19-06858, 2020 WL 2474421, at *2-4 (N.D. Cal. May 13, 2020), another case where the defendant merely "provide[d] a platform" for sending text messages but did not have "any control over a retailer's actual text marketing campaigns," fails for the same reason.

Second, Defendant claims that Plaintiff has failed to adequately plead common law agency as necessary to support a claim that CHW is vicariously liable for the calls. Plaintiff admits that she did not "attempt to plead the factual basis for vicarious liability." Opp. at 12; Compl. ¶ 36 ("If in fact, during the course of discovery, Plaintiff learns [CHW] engaged a third-party vendor to place the subject calls, [CHW] would be vicariously liable for such calls."). Given Plaintiff's concession that this was not an attempt to plead vicarious liability, it is unnecessary for the Court to consider Defendant's arguments on this point. Both parties and the Court agree that Plaintiff has not adequately pled vicarious liability—instead, as explained above, she relies on a theory of direct liability at this stage.

Third, Defendant argues that Plaintiff failed to adequately plead that the phone receiving the calls was a "residential telephone." Br. at 18-20. As noted, the relevant regulations

prohibit a person or entity from initiating "any telephone solicitation to ... [a] *residential telephone subscriber* who has registered his or her telephone number on the national do-not-call registry[.]" 47 C.F.R. § 64.1200(c)(2) (emphasis added). "The consensus in [the Third] Circuit is that Do Not Call claims may apply to cell phones." *Dudley*, 2021 WL 3077557, at *5 (citations omitted). Defendant's own authority shows that some courts begin with a presumption that a cellular phone number is "residential" where it has been registered on the national do-not-call registry. *See Mantha v. QuoteWizard.com, LLC*, No. 19-12235, 2022 WL 325722, at *6 (D. Mass. Feb. 3, 2022). "[I]t is not required that a plaintiff provide extensive detail to state a plausible claim as to the residential character of his cell phone." *Dudley*, 2021 WL 3077557, at *5 (citation omitted).

 **\*5**  Plaintiff alleges that she registered her cell phone number on the do-not-call registry, and that she uses that cell phone "primarily ... for residential purposes." Compl. ¶¶ 13, 15. In *Dudley*, the plaintiff only alleged that "[p]laintiffs cell phone numbers [were] used for 'residential purposes.' " *Dudley*, 2021 WL 3077557, at *5. The court noted that "[w]hile the Complaint does not allege additional facts to elaborate on the residential nature of [p]laintiff's cell phones," such allegations are not necessary to state a claim. *Id.* Instead, "the explicit allegation that the cell phone numbers were used 'for residential purposes' " was sufficient. *Id.* (citation omitted). Here, Plaintiff's registration with the do-not-call registry, Compl. ¶ 15, coupled with her explicit allegation that the cell phone is in fact "residential," *id.* ¶ 15, is sufficient at this stage.

Fourth, Defendant claims that Plaintiff has failed to adequately plead that the calls here constitute "telephone solicitations" as required by the statute. Br. at 20-21. The TCPA defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 U.S.C. § 227(a)(4). Plaintiff alleges that "Defendant began calling Ms. Atkinson on her cellular telephone to sell Plaintiff a home warranty plan." Compl. ¶ 16. Plaintiff further alleges that the calls were made "for telemarketing purposes" and that "Defendant placed calls to Ms. Atkinson on numerous occasions attempting to solicit Plaintiff a home warranty plan that Plaintiff had no interest in." *Id.* ¶¶ 19-20. Plaintiff has clearly alleged that the calls were for the purpose of encouraging her to purchase a good or service, as required

by the statute. Thus, Defendant's argument on this point falls short.

Fifth, Defendant argues that Plaintiff has not adequately pled that Defendant made more than one "telephone solicitation" to Plaintiff within twelve months. Br. at 22. As noted above, Plaintiff alleges at least seven total calls, all of which took place within less than one month.[3] Compl. ¶¶ 21-22. Five of these calls came from the phone number 210-712-1299, which was the phone number that called when Plaintiff was provided with "ChoiceHomeWarranty.com" as the website for "the company making the calls." *Id.* ¶¶ 22, 24. Thus, at a minimum, the five calls which came from the same phone number can be directly attributed to Defendant and Plaintiff has sufficiently alleged that she received "more than one telephone call within any 12-month period by or on behalf of the same entity." 47 U.S.C. § 227(c)(5).

Defendant relies on *Greene v. Select Funding, LLC*, No. 20-07333, 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021), in which the court observed that the plaintiff had only answered one call from defendant, which was insufficient to allow the court "to reasonably infer that [the] other calls were solicitations." *Id.* Here, while Plaintiff only alleges the specific content of one call, she answered the phone on at least three occasions, Compl. ¶¶ 24, 29, 31, claims that "Defendant began calling Ms. Atkinson on her cellular telephone to sell Plaintiff a home warranty plan," *id.* ¶ 16, that the "calls" were "for telemarketing purposes," *id.* ¶ 19 and that "Defendant placed *calls* to Ms. Atkinson on *numerous occasions* attempting to solicit Plaintiff a home warranty plan," *id.* ¶ 20 (emphasis added). These allegations create a reasonable inference that more than one of the seven calls explicitly listed were "telephone solicitations" in violation of the statute.

Defendant's sixth and final argument as to the TCPA claim is that Plaintiff has not adequately pled a willful or knowing violation, as necessary to allow entitlement to treble damages. *See* 47 U.S.C. § 227(b)(3). Plaintiff alleges that Defendant's actions were "malicious, intentional, willful, reckless, wanton and negligent" and had the "purpose of harassing Plaintiff." Compl. ¶ 40. While these allegations are conclusory, Plaintiff further alleges that she asked to be removed from Defendant's call list on three occasions but continued to receive calls. *Id.* ¶¶ 26-32. Drawing all reasonable inferences in favor of Plaintiff, the Complaint sufficiently alleges that Defendant acted willfully or knowingly in continuing to call Plaintiff

Case 1:25-cv-00927-KMN    Document 64-2    Filed 04/01/26    Page 5 of 15

Atkinson v. Choice Home Warranty, Not Reported in Fed. Supp. (2023)
2023 WL 166168

despite her repeated indications that she did not wish to receive such calls.

**\*6** For the foregoing reasons, the motion to dismiss Count I is denied.

### B. Count II – Texas Law Claim[4]

Defendant, without citing to any authority, also challenges Plaintiff's claim for violation of the Texas Business and Commerce Code, arguing that "the Complaint provides *zero* facts supporting the essential elements of such a claim." Br. at 23 (emphasis in original). Texas law provides that "[a] seller may not make a telephone solicitation ... to a purchaser located in [Texas] unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

Plaintiff alleges that CHW "sought the business of Plaintiff at her Texas phone number while she was a Texas resident, despite the fact that [CHW] failed to register as a telephone solicitor with the Texas Secretary of State." Compl. ¶ 34. Plaintiff further alleges that CHW engaged in "continuous and repetitive telephone solicitation of Plaintiff without obtaining a registration certificate from the Office of the Secretary of State." *Id.* ¶ 45. These allegations sufficiently state a claim for a violation of § 302.101, and thus the motion to dismiss is denied as to Count II.

In its reply, Defendant seeks to distinguish a case cited by Plaintiff, *Pepper v. Life Protect 24/7, Inc.*, No. 20-02154, 2021 WL 4084514, at *3 (S.D. Tex. Mar. 1, 2021), on the basis that, there, "the plaintiff's complaint 'cite[d] a web address that confirmed[ed] that [the defendant] was [not] registered with the Office of the Secretary of State at the time the calls were placed.' " Reply at 14. That case, however, did not find that such allegations were *necessary* to state a claim. Further, what Defendant appears to demand is closer to evidence than it is to the plausible allegations required to survive a Rule 12(b)(6) motion. *See Hassan v. City of New York*, 804 F.3d 277, 296 (3d Cir. 2015) ("[w]hile it is possible that Plaintiffs will ultimately falter in meeting their burden of proof, the collection of evidence is the object of discovery" and the "pleading of 'evidence' " is not required).

Defendant also notes that Plaintiff did not allege facts to demonstrate that three statutory exceptions to liability do not apply. Br. at 23 n.10. But the Federal Rules only require "a short and plain statement of the claim showing that the pleader

is entitled to relief," Fed. R. Civ. P. 8(a)(2), and a plaintiff is not required to plead around every possible statutory exception or defense to her claim. *Bello v. Cap. One Bank (USA) N.A.*, No. 20-01218, 2020 WL 728804, at *4 (D.N.J. Feb. 13, 2020) (citing *United States v. Columbus Country Club*, 915 F.2d 877, 882 (3d Cir. 1990)) (noting that "it is not [p]laintiff's responsibility to foreclose" the application of statutory exceptions; rather, it is the defendant's burden to establish that a statutory exception to liability applies). It is sufficient that Plaintiff has plausibly alleged the *prima facie* elements of her claim, and that the application of the exceptions noted by Defendant is not apparent from the face of the Complaint.

### C. Standing to Seek Injunctive Relief

**\*7** Finally, Defendant argues that Plaintiff lacks Article III standing to pursue injunctive relief because she has not alleged any threat of future injury.[5] Br. at 23-25. Article III of the U.S. Constitution limits the judicial power of federal courts to deciding "Cases" or "Controversies." U.S. Const. art. III, § 2. To meet the case-or-controversy requirement, a plaintiff must show that she has standing to sue. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted); *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) ("Subsumed within [Article III] is the requirement that a litigant have standing[.]"). To satisfy Article III's standing requirements, the burden is on the plaintiff to show the following:

> (1) [she] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "[A] plaintiff must demonstrate standing separately for each form of relief sought[.]" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citing *Friends of the Earth*, 528 U.S. at 185). The Court must presume that it lacks jurisdiction unless the party invoking jurisdiction establishes otherwise. *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 429 (D.N.J. 1999) (citing *Phila. Fed. of Teachers v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998)).

When a plaintiff seeks injunctive relief, they must demonstrate that they are "likely to suffer future injury"

2023 WL 166168

from the conduct to be enjoined. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 111 (1983) ("The equitable remedy [of injunctive relief] is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again[.]" (citation omitted)). At this stage, given the recurrent and relatively recent nature of the alleged calls, Compl. ¶¶ 21-22, and the fact that Defendant continued to call Plaintiff after she repeatedly asked to be removed from the call list, *id.* ¶¶ 26-32, the Court finds that Plaintiff has alleged facts which, accepted as true, establish a sufficient likelihood that Defendant will call her again in the future. Thus, the motion to dismiss Plaintiff's request for injunctive relief for lack of subject matter jurisdiction is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, D.E. 8, is **DENIED**. An appropriate Order accompanies this Opinion.

## All Citations

Not Reported in Fed. Supp., 2023 WL 166168

## Footnotes

1    The submissions consist of CHW's motion to dismiss, D.E. 8 ("Br."); Plaintiff's opposition, D.E. 10 ("Opp."); and CHW's reply, D.E. 11 ("Reply").

2    The factual background is taken from Plaintiff's Complaint. D.E. 1.

3    Plaintiff also alleges that she "received additional calls from Defendant" beyond those seven. Compl. ¶ 23.

4    Defendant argues that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claim if the TCPA claim is dismissed. Br. at 23. Because Plaintiff's TCPA claim survives the motion to dismiss, the Court does not reach this argument.

5    The TCPA explicitly provides a private right of action which permits a plaintiff to bring "an action based on a violation of the regulations prescribed under this subsection to enjoin such violation." 47 U.S.C. § 227(c)(5)(A). This statutory provision, however, does not obviate the need to establish the constitutional prerequisite of Article III standing. *See Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("Congress may, by legislation, expand standing to the full extent permitted by Art. III ... In no event, however, may Congress abrogate the Art. III *minima*[.]" (citations omitted)).

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00927-KMN    Document 64-2    Filed 04/01/26    Page 7 of 15

Moore v. Healthcare Solutions Inc., Not Reported in Fed. Supp. (2022)

2022 WL 17487823

2022 WL 17487823
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

George MOORE, on behalf of himself
and others similarly situated, Plaintiff,

v.

HEALTHCARE SOLUTIONS
INC. and Prosperity Life Insurance
Group LLC, Defendants.

Case No. 21-cv-4919
|
Signed December 7, 2022

**Attorneys and Law Firms**

Anthony Paronich, Paronich Law, P.C., Hingham, MA, for Plaintiff.

Jason Edward Hunter, Bryan Eliot Curry, Litchfield Cavo LLP, Chicago, IL, for Defendant Healthcare Solutions Inc.

**MEMORANDUM OPINION AND ORDER**

Steven C. Seeger, United States District Judge

 **\*1** Plaintiff George Moore received two calls to his home phone from the same phone number, on the same day. He didn't answer the first call. But when the caller rang his phone a second time, he picked up. And it didn't take him long to regret it. Instead of hearing a friendly voice, he heard a sales pitch for a product that he didn't want.

The caller was a representative from Defendant Healthcare Solutions, Inc., offering to sell Moore an insurance policy. And just like that, Moore's home turned into an insurance bazaar, with a salesperson peddling products that Moore didn't want or need. Moore wasn't interested in insurance, so he hung up.

But Moore didn't leave it at that. His phone number is on the national Do Not Call Registry, and he isn't supposed to receive sales calls at home. So Moore turned the tables and delivered an unwelcome communication of his own. He sued Healthcare Solutions for violating the Telephone Consumer Protection Act ("TCPA") when it called him more than once.

Healthcare Solutions, in turn, moved to dismiss the complaint. For the following reasons, the Court denies Defendant's motion to dismiss.

**Background**

At the motion-to-dismiss stage, the Court must accept as true the complaint's well-pleaded allegations. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

On August 13, 2021, Plaintiff George Moore received two phone calls to his residential telephone line from the same phone number. *See* Cplt., at ¶¶ 19, 22–23 (Dckt. No. 1). The calls went to a residential number "used by Mr. Moore only." *Id.* at ¶ 20. Moore's caller ID showed that both phone calls came from the same phone number. *Id.* at ¶ 23.

Moore didn't answer the first call. *Id.* at ¶ 24. The complaint does not reveal why. Maybe, like many of us when we receive a call from an unknown number, Moore simply ignored the call. After all, answering the phone from an familiar number is a dicey proposition. Not much good can come from it. Most of the time, there is more downside than upside in exposing oneself to a stranger on the phone.

Maybe he had his hands full. Maybe the game was on, or maybe he simply didn't feel like getting interrupted. Whatever the reason, the key point is that someone called, and Moore didn't answer.

But when Moore received a second call from that number, he picked up. *Id.* at ¶ 26. Moore soon discovered that Carol Jandera, an employee of Defendant Healthcare Solutions, was on the other end of the line. And she wanted to sell.

Jandera offered to sell Moore an insurance policy from Prosperity Life Insurance Group. *Id.* at ¶ 28. Jandera then offered to transfer Moore to Prosperity Life so that he could sign up for an insurance policy. *Id.* at ¶ 29.

Moore v. Healthcare Solutions Inc., Not Reported in Fed. Supp. (2022)

2022 WL 17487823

Moore apparently wasn't interested in buying insurance, so he ended the call. *Id.* at ¶ 30. Sometime later, Moore received an email from Jandera to confirm Prosperity Life's policy offer. *Id.* at ¶ 31. Jandera's email address had the domain "ourhcs.com," which is a domain owned by Healthcare Solutions. *Id.* at ¶¶ 32–33.

**\*2** That email, like the call, apparently didn't sit well with Moore. He wrote Healthcare Solutions and requested evidence showing that it had permission to contact him. *Id.* at ¶ 34. He never received a response. *Id.* at ¶ 35.

As it turns out, Moore's phone number was listed on the Do Not Call Registry since July 7, 2017. *Id.* at ¶ 21; *see also* 15 U.S.C. § 6151. He didn't expect unwanted calls as someone with a number on the Do Not Call Registry. He expected domestic tranquility. He didn't want calls from salespeople. He wanted peace and quiet.

Moore responded with his own form of unsolicited communication. He filed a class action complaint against Healthcare Solutions and Prosperity Life, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq. See* Cplt., at ¶¶ 63–64 (Dckt. No. 1). He seeks statutory damages of up to $500 for each violation, and treble damages for any knowing or willful violation. *Id.* at ¶¶ 65–66.

Prosperity Life filed a motion to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim. *See* Prosperity Life's Mtn. to Dismiss (Dckt. No. 11). After jurisdictional discovery, the parties agreed to dismiss Moore's claims against Prosperity Life with prejudice. *See* Stipulation of Dismissal (Dckt. No. 36); *see also* 6/1/22 Order (Dckt. No. 38).

Healthcare Solutions, the only remaining defendant, later filed a motion to dismiss. *See* Healthcare Solution's Mtn. to Dismiss (Dckt. No. 39). That motion is now before the Court.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b) (6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

**Discussion**

Moore's complaint has a single count. He alleges that Healthcare Solutions violated the TCPA by calling him more than once within a twelve-month period, even though his phone number is on the Do Not Call Registry. *See* Cplt., at ¶ 64 (Dckt. No. 1).

The TCPA creates a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." *See* 47 U.S.C. § 227(c)(5). One such regulation prohibits calls to numbers on the Do Not Call Registry.

Under the regulation, "[n]o person or entity shall initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." *See* 47 C.F.R. § 64.1200(c)(2). The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *See* 47 U.S.C. § 227(a)(4).

**\*3** Once a telephone number is registered on the Do Not Call Registry, "registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *See* 47 C.F.R. § 64.1200(c)(2). A failure to respect those technological boundaries can lead to significant relief for the person receiving the call. A plaintiff suing under section 227(c)(5) can recover actual monetary losses or statutory damages up to $500. *See* 47 U.S.C. § 227(c)(5)(B).

Case 1:25-cv-00927-KMN    Document 64-2    Filed 04/01/26    Page 9 of 15

Moore v. Healthcare Solutions Inc., Not Reported in Fed. Supp. (2022)
2022 WL 17487823

Moore contends that the calls from Healthcare Solutions fit the bill. He alleges that Healthcare Solutions called him twice, the minimum number of times to bring a claim. And his residential phone number is on the Do Not Call Registry. So, as Moore sees it, he received too many calls to his phone when he should have received none.

Healthcare Solutions moves to dismiss on two grounds.

Healthcare Solutions first argues that the complaint does not allege that Moore received more than one telephone solicitation. Under the regulation, a caller cannot be liable for only one call. The regulation adopts a call-me-twice, shame-on-you approach.

The argument rests on the fact that Moore didn't pick up the first call. Healthcare Solutions points out that Moore "terminated the first call" without answering. *See* Cplt., at ¶ 24 (Dckt. No. 1). But he did answer the second call, and only then did Moore "engage[ ] the telemarketer ... to learn the purpose of the call." *Id.* at ¶ 24. So, according to Healthcare Solutions, Moore has no way of knowing whether the first call was a "telephone solicitation," or whether it was Healthcare Solutions calling at all.

Moore acknowledges that he never spoke with anyone – including anyone from Healthcare Solutions – during the first call. *See* Pl.'s Resp. to Def.'s Mtn. to Dismiss, at 5 (Dckt. No. 40). That said, he points out that both calls came from the same number, on the same day. So, it is reasonable to assume that the same caller made both calls for the same reason.

The complaint includes enough facts to support a reasonable inference that Healthcare Solutions made two telemarketing calls. The issue of who made the first call isn't much of a whodunit. Moore received two calls from the same number, and the second caller was Healthcare Solutions. It is reasonable to conclude that Healthcare Solutions called the first time, too. Does Healthcare Solutions share a phone number with someone else? Unlikely.

Moore may not know for certain why Healthcare Solutions called him the first time. But the content of the second call gives a pretty good idea. As the plaintiff, Moore is entitled to reasonable inferences in his favor. It is a reasonable inference that the two calls from the same number on the same day were about the same thing.

If anything, it is hard to imagine why else Healthcare Solutions would have called him. There is no suggestion in the complaint that Moore worked there, or knew someone who worked there, or anything along those lines. Maybe Healthcare Solutions has some other story to tell, but if so, summary judgment – not a motion to dismiss – is the time to tell it. It is unlikely that an insurance agent was simply calling a stranger out of the blue to say "Hi."

Two judges in this district have held that the "content and timing" of an answered call can "allow[ ] the court to draw [the] reasonable inference" that unanswered calls were sales solicitations from the defendant. *See Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) (St. Eve, J.); *see also Moore v. Pro Custom Solar LLC*, 2022 WL 1092186, at *2–3 (N.D. Ill. 2022) (Kocoras, J.). The basic idea is that calls from the same number tend to come from the same person. And a salesperson tends to call for only one reason.

 **\*4** In *Toney*, the plaintiff alleged that the defendant called her four times in a two-day period. *See Toney*, 75 F. Supp. 3d at 746. The first day, the plaintiff's caller ID showed that she received three calls from the same phone number. *Id.* at 732, 746. She didn't answer any of those calls. *Id.* The second day, she received a fourth call from the same phone number, and she finally picked up. *Id.* The caller was a representative of the defendant telemarketing company, offering to sell plaintiff a membership to a subscription retail-discount service. *Id.*

The defendant argued that by answering only one call, the plaintiff didn't plausibly allege that she had received at least two calls from the defendant. *Id.* at 746. Judge St. Eve rejected that argument. The plaintiff answered the fourth call and learned that it was a telemarketer. So it was a "reasonable inference" that the three unanswered calls from the same number a day earlier were from the same person for the same purpose. *Id.*

The inference that a telemarketer called to sell something wasn't much of a stretch. After all, that's what telemarketers do. That's the whole point. They use the telephone to market something. Telemarketers aren't known for calling people for other reasons.

Judge Kocoras reached a similar result in *Moore*. There, the plaintiff (George Moore, presumably the same George Moore in the case at hand) received six calls on five different days in July 2021. *See Moore*, 2022 WL 1092186, at *1. He "listened to and terminated" these calls without engaging the caller. *Id.*

2022 WL 17487823

Only during the seventh call, in early August 2021, did the plaintiff engage the caller to learn who was calling. *Id.*

The defendant argued that "[b]ecause Moore was only able to identify the seventh caller in a stream of identical calls ... he [did] not allege he received the requisite two or more calls required under the TCPA." *Id.* at *2. Building on *Toney*, Judge Kocoras ruled that "it is reasonable to believe the first six calls from the same number with the same content were also from [defendant]." *Id.* at *3.

The case at hand does not require a daunting inferential leap, either. Moore received two calls from the same number, on the same day. Given the content of the second call, it is a reasonable inference that the first call was a telemarketing call from Healthcare Solutions.

If anything, the inference is almost unavoidable. Imagine asking your Average Joe on the street why an insurance agent called someone at home. It does not require much creativity to think that the call was about selling insurance. And then, imagine telling Average Joe that there were two calls from the insurance agent on the same day: Call #1 went unanswered, and Call #2 was about selling insurance. Average Joe isn't likely to be stumped about the reason for Call #1.

Maybe Healthcare Solutions can show that it wasn't behind the first call, or that the call wasn't a telephone solicitation. But that's a question for another day. At the motion-to-dismiss stage, the Court must draw all reasonable inferences in Moore's favor. *See AnchorBank*, 649 F.3d at 614. For now, the complaint plausibly alleges that Healthcare Solutions called him twice to peddle a policy.

A different approach would change the incentives against calling and calling and calling people. Congress recognized that unwanted phone calls are an unwelcome intrusion. That's true when you answer your phone. But it is also true when your phone rings, and then rings again – for call after call, again and again – when you don't pick up. The interruption exists without answering the phone. If the calls don't count under the TCPA unless the person picks up, telemarketers would escape liability for all previous interruptions, no matter how annoying or intrusive. Nothing in the statutory text supports giving callers a pass for such intrusions.

**\*5** Healthcare Solutions also makes a second argument, but it does not get very far. The argument is about whether Moore

– as opposed to someone else – personally registered his phone number on the Do Not Call Registry.

As Healthcare Solutions points out, the regulation prohibits initiating a telephone solicitation to a "residential telephone subscriber who has *registered* his or her telephone number" on the Do Not Call Registry. *See* 47 C.F.R. § 64.1200(c)(2) (emphasis added). So, Healthcare Solutions argues that the regulation applies only if Moore himself registered his phone number.

Healthcare Solutions doesn't dispute that Moore's phone number was on the Do Not Call Registry. Instead, it argues that Moore cannot bring a claim because the complaint doesn't allege that Moore himself registered the phone number.

That argument rests on an unduly strict reading of the regulation. The text refers to a subscriber "who has registered" a telephone number. *Id.* Healthcare Solutions reads that provision to mean a subscriber "who has [personally] registered" a particular number. In effect, Healthcare Solutions is attempting to inject an adverb that is nowhere to be seen.

Nothing in the text ascribes any importance to the person who registered the number. The focus is on whether the number was registered, not who did the registration. The regulation protects numbers, not particular people. That's why the Registry includes numbers, not names.

That reading reflects the reality of living together. The regulation covers a "residential telephone subscriber." *Id.* People tend to share residences, and share home telephone numbers. It is hard to see why one spouse would receive the protections of the statute, and another spouse would not. After all, the same phone ringing in the same house could annoy several people. An unwanted phone call to a shared number could annoy everyone in earshot, even if only one member of the household took the time to register the number.

The most natural reading of the regulation prohibits unwanted calls to a number. It is natural to read the statute to protect a number, not simply the person who registered the number.

That reading of the regulation seems to fit with the breadth of the statutory text, too. The statute greenlights a claim by a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this

subsection." *See* 47 U.S.C. § 227(c)(5). It protects a "person" who "received more than one telephone call." *Id.* It doesn't seem to matter who registered the number. Anyone on the receiving end of the call can turn the tables and file suit.

It does not matter who registered the phone number on the Do Not Call Registry. But even if it mattered, the complaint would survive. The complaint alleges that Moore's phone number is registered, and that Moore is the only person who uses that number. That's more than enough to support a reasonable inference that Moore registered his number. *See* Cplt., at ¶¶ 19–21 (Dckt. No. 1).

**Conclusion**

For the foregoing reasons, the motion to dismiss the complaint is denied.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17487823

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 2177759
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

David MORRIS and Pamela Morris, Plaintiffs,

v.

WEST MANHEIM TOWNSHIP,
Chief Timothy Hippensteel, Officer
Schneider, Scott Strausbaugh, Mark
Barney, and Kevin Null, Defendants.

Civil Action No. 1:CV–12–1647.
|
May 20, 2013.

**MEMORANDUM**

A. RICHARD CAPUTO, District Judge.

 **\*1** Presently before the Court is the Motion of Defendants Scott Strausbaugh and Mark T. Barney to Recover Attorney's Fees. (Doc. 21 .) Defendants seek to recover fees from Plaintiffs and/or Plaintiffs' counsel pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1927, Rules 11 and 54 of the Federal Rules of Civil Procedure, and Middle District of Pennsylvania Local Rule 83.3.1. For the reasons that follow, Defendants Strausbaugh and Barney's motion will be denied.

**I. Background**

The instant action is the second of two federal lawsuits filed by Plaintiffs against multiple Defendants, including Defendants Strausbaugh and Barney. With respect to Defendants Strausbaugh and Barney, both actions relate to their alleged deprivation of Plaintiffs' rights by erecting a gate blocking a driveway entrance used by Plaintiffs. In both cases, Plaintiffs claimed Defendants Strausbaugh and Barney violated their First and Fourteenth Amendment rights.

The first action, *Morris v. Kesselring, et al.,* No. 1:09–cv–1739 (M. D.Pa.) (the "2009 Action"), was resolved in this Court in favor of Defendants Strausbaugh and Barney. Specifically, the claims against these Defendants

were dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. *See Morris v. Kesselring, et al.,* No. 1:09–cv–1739 (M. D.Pa. May 9, 2011), ECF No. 156. Following the dismissal of the 2009 Action, Defendants Strausbaugh and Barney were awarded their attorney's fees pursuant to 42 U.S.C. § 1988. *Morris v. Kesselring, et al.,* No. 1:09–cv–1739 (M. D.Pa. Dec. 8, 2011), ECF No. 178.

Plaintiffs appealed the dismissal of the action, *Morris v. Kesselring, et al.,* No. 1:09–cv–1739 (M.D.Pa. Dec. 5, 2011), ECF No. 177, and the award of attorney's fees to the United States Court of Appeals for the Third Circuit. *Morris v. Kesselring, et al.,* No. 1:09–cv–1739 (M.D.Pa. Jan. 6, 2012), ECF No. 182.

While the 2009 Action was pending on appeal, Plaintiffs commenced the instant litigation. *Morris v. W. Manheim Twp., et al.,* No. 1:12–cv–1647 (M.D.Pa. Aug. 17, 2012), ECF No. 1 (the "2012 Action"). As in the 2009 Action, the 2012 Action asserted claims against Defendants Strausbaugh and Barney for deprivations of Plaintiffs' First and Fourteenth Amendment rights. Defendants Strausbaugh and Barney moved to dismiss Plaintiffs' Complaint. *Morris v. W. Manheim Twp., et al.,* No. 1:12–cv–1647 (M.D.Pa. Oct. 22, 2012), ECF No. 12.

Prior to the resolution of Defendants Strausbaugh and Barney's motion to dismiss the 2012 Action, the Third Circuit affirmed the dismissal of the 2009 Action and the award of attorney's fees to Defendants Strausbaugh and Barney. *See Morris v. Kesselring,* Nos. 11–4360, 12–1069, 2013 WL 618797, at *1 (3d Cir. Feb. 20, 2013). Shortly thereafter, Defendants Strausbaugh and Barney's motion to dismiss the 2012 Action was granted. *See Morris v. W. Manheim Twp .,* No. 12–1647, 2013 WL 995551 (M.D.Pa. Mar. 13, 2013).

On March 27, 2013, Defendants Strausbaugh and Barney filed the instant motion for recovery of attorney's fees incurred in defending the 2012 Action. (Doc. 21.) The motion is fully briefed and is ripe for disposition.

**II. Discussion**

 **\*2** Defendants Strausbaugh and Barney seek recovery of their attorney's fees pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1927, Rules 11 and 54 of the Federal Rules of Civil Procedure, and Middle District of Pennsylvania Local Rule 83.3.1.

## A. 42 U.S.C. § 1988

First, Defendants Strausbaugh and Barney seek recovery of their attorney's fees pursuant to 42 U.S.C. § 1988, which provides: "[i]n any action or proceeding to enforce a provision of section[ ] ... 1983 ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, ..." 42 U.S.C. § 1988(b). The "prevailing party" can be either the plaintiff or the defendant, "but a prevailing defendant is entitled to attorney's fees only 'upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation ....' " *Barnes Found. v. Twp. of Lower Merion,* 242 F.3d 151, 157–58 (3d Cir.2001) (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 416–17, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978)). A court need not find the plaintiff brought the action in bad faith to award attorney's fees to the prevailing defendant, but the court must " 'resist the understandable temptation to engage in *post hoc* reasoning by concluding that because a plaintiff did not ultimately prevail his action must have been unreasonable or without foundation.' " *Id.* at 158 (quoting *Christiansburg,* 434 U.S. at 421–22, 98 S.Ct. 694).

The Third Circuit has identified a number of factors relevant to a court's determination whether an award of attorneys' fees to a prevailing defendant is appropriate under § 1988, including: (1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle; (3) whether the case was dismissed prior to trial; (4) whether the case involved an issue of first impression requiring judicial resolution; (5) whether the controversy was based on a real threat of injury to the plaintiff; and (6) whether the trial court found the suit frivolous. *Barnes Found.,* 242 F.3d at 158. These considerations, however, are only guidelines, not strict rules. *Id.*

Although Plaintiffs were unsuccessful in this action, the Court will not rely on "hindsight logic," *Christiansburg,* 434 U.S. at 422, 98 S.Ct. 694, in determining whether to award fees in this case. Rather, considering the relevant factors identified by the Third Circuit as a whole, and also noting that "determinations regarding frivolity are to be made on a case-by-case basis," *Barnes Found.,* 242 F.3d at 158 (citation omitted), the Court will not award attorney's fees to Defendants Strausbaugh and Barney under § 1988 in this case.

## B. 28 U.S.C. § 1927

Second, Defendants argue that sanctions should be imposed on Plaintiffs' counsel pursuant to 28 U.S.C. § 1927. Section 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

**\*3** 28 U.S.C. § 1927. Section 1927 "requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Schaefer Salt Recovery, Inc.,* 542 F.3d 90, 101 (3d Cir.2008) (*In re Prudential Ins. Co. America Sales Practice Litig.,* 278 F.3d 175, 188 (3d Cir.2002)). Prior to imposing sanctions under § 1927, the court must find willful bad faith on the part of the offending attorney. *In re Prudential,* 278 F.3d at 188 (citing *Zuk v. Eastern Pennsylvania Psychiatric Institute,* 103 F.3d 294, 297 (3d Cir.1996)). " 'Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment.' " *Id.* (quoting *Smith v. Detroit Fed'n of Teachers Local 231, Am. Fed. of Teachers, AFL–CIO,* 829 F.2d 1370, 1375 (6th Cir.1987).

Sanctions will not be imposed against Plaintiffs' counsel under § 1927. While Plaintiffs' counsel multiplied and increased the costs of the proceedings, the Court does not find counsel's actions to have been vexatious or in bad faith. Rather, counsel's conduct was a product of "misunderstanding, bad judgment, or well-intentioned zeal." *Lasalle Nat'l Bank v. First Conn. Holding Grp., LLC,* 287 F.3d 279, 289 (3d Cir.2002) (citations omitted). Thus, sanctions under § 1927 are not warranted in this case.

## C. Rule 11

Next, Defendants Strausbaugh and Barney assert that attorney's fees should be awarded under Rule 11 of the Federal Rules of Civil Procedure. Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge,

information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed.R.Civ.P. 11(b). Under Rule 11(c), "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed.R.Civ.P. 11(c)(1). When a request for sanctions are made by motion under Rule 11, the motion "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed.R.Civ.P. 11(c)(2). Sanctions imposed under Rule 11, however, "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(c)(4). Sanctions may "include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

**\*4** In evaluating a Rule 11 motion for sanctions, a district court must determine whether the attorney's conduct was objectively reasonable under the circumstances. *See Ario v. Underwriting Members of Syndicate 53 at Lloyds for the 1998 Year of Account,* 618 F.3d 277, 297 (3d Cir.2010). Sanctions under Rule 11 are "to be applied only 'in the exceptional circumstance' where a claim or motion is patently unmeritorious or frivolous." *Id.* (quoting *Doering v. Union Cnty. Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988)). A district court is to consider a wide range

of alternative possible sanctions for violations of Rule 11. *See Doering,* 857 F.2d at 194. And, "the imposition of sanctions for a Rule 11 violation is discretionary rather than mandatory." *Grider v. Keystone Health Plan Central, Inc.,* 580 F.3d 119, 146 n. 28 (3d Cir.2009) (quoting *Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir.1994)).

The Court declines to impose sanctions against Plaintiffs or their counsel as requested by Defendants under Rule 11, *i.e.,* the attorney's fees they incurred in defending the 2012 action. First, for the reasons stated previously, the Court does not find that monetary sanctions are necessary or warranted in this case. Second, the record is devoid of any indication that Defendants complied with the requirements of Rule 11(c)(2) prior to filing the instant motion for sanctions. *See* Fed.R.Civ.P. 11(c)(2) (Rule 11 motion "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."). According to the Third Circuit, "if the twenty-one day period is not provided, the [Rule 11] motion must be denied." *Metro. Life Ins. Co. v. Kalenevitch,* No. 12–1619, 2012 WL 5279264, at \*2 (3d Cir. Oct. 26, 2012) (quoting *Schaefer Salt Recovery,* 542 F.3d at 99). The motion for sanctions pursuant to Rule 11 will therefore be denied.

**D. Local Rule 83.3.1**

Lastly, Defendants Strausbaugh and Barney seek recovery of their attorney's fees pursuant to Local Rule 83.3.1. That Rule provides, in pertinent part:

In the sound discretion of any judge in this court, after notice and an opportunity to be heard, one or more of the following sanctions may be imposed for failure to comply with any rule or order of court:

....

**(b) Imposition of Costs on Attorneys.**

If counsel acts in a dilatory manner or files motions for the purposes of delay, or fails to comply with any rule or order of court, and the judge finds that the sanctions in subsection 83.3.1(a) above are inadequate or unjust to the parties in light of the facts or circumstances, the judge may, in addition to, or in lieu of, such sanctions assess reasonable costs directly against counsel whose action has obstructed the effective administration of the court's business, ...

M.D. Pa. L.R. 83.3.1.

**\*5** Counsel's conduct does not require the imposition of discretionary sanctions under Local Rule 83.3.1. Specifically, the Court does not find that counsel acted dilatory or for purposes of delay. Likewise, counsel's conduct did not obstruct the Court's administration of its business. Sanctions under Local Rule 83.3.1 are therefore not justified in this case.

### III. Conclusion

For the above stated reasons, Defendants Strausbaugh and Barney's motion will be denied.

An appropriate order follows.

### ORDER

**NOW,** this 20th day of May, 2013, **IT IS HEREBY ORDERED** that the Motion of Defendants Scott Strausbaugh and Mark T. Barney to Recover Attorney's Fees (Doc. 21) is **DENIED.**

### All Citations

Not Reported in F.Supp.2d, 2013 WL 2177759

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.