# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all other similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>VIASAT, INC.,<br><br>　　　　　Defendant. | Civil Action No. 1:25-cv-00927-KMN<br>(Hon. Keli M. Neary) |

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT AND DEFENDANT'S COUNSEL

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

PROCEDURAL HISTORY ......................................................................................... 2

STATEMENT OF FACTS .......................................................................................... 3

    A.    Plaintiff Possessed Recordings of the Alleged April 19, 2024 Calls Before Filing Suit. ........................................................................................3

    B.    Plaintiff's Detailed Description of The Contents of The Calls is Inconsistent With The Recordings. ........................................................4

    C.    Viasat's Initial Motion to Dismiss Was Accurate and Based on the Limited Information Available to it at the Time. ................................5

    D.    Plaintiff Withheld the Recordings Until November 20, 2025. .............7

    E.    Plaintiff Files a Retaliatory Sanctions Motion Just Twelve Days After Defendant Filed its Own Sanctions Motion. .........................................8

STATEMENT OF QUESTIONS INVOLVED ........................................................ 9

LEGAL STANDARDS ............................................................................................... 9

ARGUMENT .............................................................................................................. 10

I.    PLAINTIFF FAILS TO IDENTIFY ANY UNSUPPORTED OR OBJECTIVELY UNREASONABLE FACTUAL CONTENTION IN VIASAT'S SANCTIONS MOTION. ............................................................ 10

II.    PLAINTIFF'S "IRRECONCILABLE CONTRADICTION" THEORY MISCHARACTERIZES VIASAT'S SANCTIONS MOTION. ..................... 12

III.    PLAINTIFF'S VENDOR-CONCEALMENT THEORY IS A DISCOVERY DISPUTE FORECLOSED BY RULE 11(D). .................................................. 15

IV.    VIASAT CHALLENGES PLAINTIFF'S DEMONSTRABLY FALSE ALLEGATIONS, NOT AMENDMENT. ........................................................ 16

V.    PLAINTIFF PROVIDES NO DEVELOPED BASIS FOR INHERENT-AUTHORITY SANCTIONS. ...................................................... 17

CONCLUSION ........................................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.,*
  618 F.3d 277 (3d Cir. 2010). ...............................................................9, 11, 13, 14

*Cooter & Gell v. Hartmarx Corp.,*
  496 U.S. 384 (1990)..................................................................................10

*Ford Motor Co. v. Summit Motor Prods., Inc.,*
  930 F.2d 277 (3d Cir. 1991) ...............................................................10, 11, 13

*Gaiardo v. Ethyl Corp.,*
  835 F.2d 479 (3d Cir. 1987) ...............................................................10, 11

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions,*
  278 F.3d 175 (3d Cir. 2002) ...............................................................17

*In re Tutu Wells Contamination Litigation,*
  162 F.R.D. 46 (D.V.I. 1995)..................................................................16

*Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.,*
  315 F. Supp. 2d 623 (D.N.J. 2004)........................................................10

*Young v. Smith,*
  269 F. Supp. 3d 251 (D.N.J. 2017)........................................................11, 13

## RULES

Fed. R. Civ. P. 11(b)(1)...........................................................................9, 10

Fed. R. Civ. P. 11(c)(2)...........................................................................2, 17

Fed. R. Civ. P. 11(d) ...............................................................................1, 10, 15, 18

Rule 11 .................................................................................................passim

Rule 11(b)(3)..........................................................................................3

Rule 16 ..................................................................................................16

Rule 37 ..................................................................................................16

Rules 26–37............................................................................................1, 10, 16

## **INTRODUCTION**

Plaintiff's Motion for Sanctions (*see* Dkt. 61) is not a good-faith effort to enforce Rule 11. It is a retaliatory cross-motion—filed only after Viasat moved for sanctions against Plaintiff's counsel— that improperly asserts discovery grievances and disputed characterizations of the record as "sanctionable" misconduct, all in an effort to distract from the serious issues raised by Viasat's own motion.[1]

Plaintiff claims Viasat's sanctions motion is itself sanctionable because it hinges on a supposed "irreconcilable contradiction." Dkt. 62 at 9. But Viasat did not change positions. It has consistently and accurately maintained that it did not make or authorize the subject calls. Viasat's reference to an "inbound" call in its first motion to dismiss was accurate—the call records in Viasat's possession show the receipt of an inbound call from Plaintiff's number.  While subsequent discovery indicates that this call was likely transferred by an unknown third party to Viasat's vendor, XYZies, Viasat's statement in one sentence in one brief that the relevant call was made "to Viasat" was not sanctionable.  It was reasonable based on what Viasat understood at the time.

---

[1] Rule 11 explicitly excludes discovery conduct from its scope. Fed. R. Civ. P. 11(d). To the extent Plaintiff believes discovery misconduct occurred, he should have moved under the appropriate rules (i.e., Rules 26 through 37) and not brought this retaliatory Rule 11 motion.

Most importantly, Viasat's own sanctions motion does not turn on whether the second call described by Plaintiff was inbound, outbound, routed, or transferred. Instead, the motion targets a narrower and indisputable set of facts: Plaintiff and his counsel repeatedly alleged—both in pleadings and sworn submissions—that callers on two different calls stated and confirmed they were calling from Viasat, despite Plaintiff's possession of audio recordings that contradict those allegations. Those recordings, produced many months into this case—and after much litigation occurred that would have been entirely unnecessary had the recordings been revealed sooner—prove that this lawsuit should have never been filed against Viasat and thus that Plaintiff's retaliatory sanctions motion should be denied.

## **PROCEDURAL HISTORY**

On March 31, 2026, Plaintiff filed his Motion for Sanctions and Brief in Support, seeking sanctions against Viasat and its counsel pursuant to Federal Rule of Civil Procedure 11(c)(2). *See* Dkts. 61 and 62.

Plaintiff's motion is expressly directed at Viasat's motion for sanctions against Plaintiff's counsel. *See* Dkts. 57 and 58. Plaintiff incorrectly asserts that Viasat's sanctions motion is itself sanctionable because it allegedly relies on factual contentions "irreconcilably contradicted" by Viasat's earlier submissions and because it purportedly attempts to punish Plaintiff for seeking leave to amend after Viasat allegedly concealed a vendor's identity. Dkt. 61 at 2; Dkt. 62 at 9.

2

Viasat submits this opposition to show that Plaintiff's sanctions motion (i) does not identify any factual contention in Viasat's sanctions motion that lacked evidentiary support when made or later advocated, (ii) mischaracterizes Viasat's earlier filings and declarations, (iii) improperly seeks Rule 11 relief for discovery conduct outside Rule 11's scope, and (iv) attempts to convert Rule 11 into a retaliation mechanism.

## STATEMENT OF FACTS

This dispute concerns whether Viasat's counsel acted reasonably when advocating positions based on the information available at the time, and whether Plaintiff's later litigation tactics—particularly his withholding of critical call recordings—was justified given what Viasat stated in its early filings.

### A.    Plaintiff Possessed Recordings of the Alleged April 19, 2024 Calls Before Filing Suit.

Before filing this action, Plaintiff recorded the two calls he allegedly received on April 19, 2024, that form the entire basis of his claims against Viasat. *See* Dkts. 44-1 and 44-2. Plaintiff undisputedly possessed those recordings prior to suit, prior to the filing of the Complaint, and prior to the certification of factual contentions under Rule 11(b)(3).

Those recordings were uniquely within Plaintiff's control. They captured the alleged calls contemporaneously and reflected precisely what the callers said—or did not say—about their identity and corporate affiliation. Plaintiff nevertheless

3

chose not to disclose or produce those recordings with his Complaint, with his First Amended Complaint, or during the early stages of the litigation.

### B.    Plaintiff's Detailed Description of The Contents of The Calls is Inconsistent With The Recordings.

Despite having call recordings proving otherwise, Plaintiff affirmatively alleged—repeatedly and in detail—that the callers identified and confirmed themselves as calling from Viasat, marketed only Viasat products, and spoke as though they were representatives of Viasat. Those allegations were the linchpin of Plaintiff's theory as to who placed the subject calls and his efforts to impose direct TCPA liability on Viasat. *See* Dkt. 1.

Plaintiff doubled down on that narrative in the First Amended Complaint and in sworn submissions, again without producing the recordings. *See* Dkt. 21. Plaintiff repeated these false assertions under oath in a sworn declaration. *See* Dkt. 30-2. At no point did Plaintiff disclose that the recordings failed to contain the "confirmations" he alleged, or that they undermined his twice pleaded narrative. Viasat—and the Court—were asked to assess his liability theory without access to the most direct contemporaneous evidence of what actually occurred on the calls.

Critically, the call recordings establish the callers never claimed to be from Viasat. The first caller did not identify himself at all, let alone mention Viasat. Nor did the second individual who initially called Plaintiff. And the "specialist" to whom

4

Plaintiff later spoke on the second call (after being transferred by two unidentified callers) claimed to represent more than 10 companies and pitched services from more than just Viasat. In fact, the second recording itself suggests that Plaintiff has always known he was not speaking to Viasat; Plaintiff himself tells the "specialist" that "*you aren't Viasat*" before ending the call. Dkt. 44-2 at 11 (emphasis added). And yet Plaintiff and his counsel still sued Viasat, repeatedly alleging that the callers confirmed they were from Viasat. Plaintiff repeated those false claims in his First Amended Complaint, and seeks to add more falsehoods through a proposed Second Amended Complaint.

### C.   Viasat's Initial Motion to Dismiss Was Accurate and Based on the Limited Information Available to it at the Time.

When Viasat timely responded to the original Complaint weeks after its filing, it did so without knowledge of the contents of Plaintiff's recordings and without any disclosure from Plaintiff that recordings existed. Plaintiff also failed to preserve his own phone records. With no phone records and no recordings, Viasat had *no proof* that Plaintiff actually received either call alleged in his complaint.

The only evidence Viasat had at that time it moved to dismiss was its own policy prohibiting outbound telemarketing and its business records.  Viasat introduced that evidence through the declaration of Mr. Gregory Henderson. Dkt. 11-2.  Mr. Henderson explained, among other things, that consumers place calls "to

5

Viasat or to certain third parties" to request information or purchase services, and that Viasat does not make outbound telemarketing calls and does not allow third parties to telemarket on its behalf. Dkt. 11-2 at 3.[2] Plaintiff's sanctions motion and brief repeatedly claim Viasat swore "no third party was involved." Dkt. 61 at 2. But the Henderson declaration filed in support of Viasat's initial motion to dismiss does not state that "no third party exists." Dkt. 11-2. As noted above, it specifically discusses third parties and notes that consumers may place calls to such third parties but that those parties are not permitted to make outbound calls on Viasat's behalf. Id. at ¶ 8.

The Henderson declaration also described the call records in Viasat's possession at the time of its initial motion to dismiss. Those records contained one relevant entry that appeared to show that Plaintiff placed an inbound call to inquire about internet services. Dkt. 11-2 at ¶ 12. Viasat thus reasonably argued that, as far as it knew at the time, Plaintiff made an inbound call "to Viasat."

As the case progressed, Viasat reviewed and undertook its own third party discovery to test Plaintiff's attribution claims. For instance, a subpoena to IP Horizon

---

[2] Similarly, the later Henderson declaration filed in support of Viasat's motion to dismiss the First Amended Complaint describes Viasat's "inbound" marketing program (consumer-initiated calls), reiterates that Viasat does not make outbound marketing calls and contractually prohibits outbound telemarketing on its behalf, states Viasat has no records of making an outbound call to Plaintiff's number and has confirmed that no third party vendors working with Viasat called Plaintiff's number on Viasat's behalf. Dkt. 23-1.

6

(issued by Plaintiff) revealed that the phone numbers Plaintiff attributed to Viasat were not associated with Viasat and were not assigned to any vendor authorized to handle calls on Viasat's behalf. *See* Dkts. 23-26, 23-7, 23-8. A subpoena to T-Mobile (issued by Viasat), Plaintiff's cell carrier, yielded authenticated call records that did not reflect Plaintiff's receipt of the subject calls, let alone a call to Plaintiff from Viasat. *See* Dkts. 23-3, 23-4, and 23-25.

Subsequent discovery clarified what the carrier and call records available at the time of Viasat's initial motion to dismiss could not: the relevant call reflected in Viasat's records possibly captures an eventual call transfer by a still-unknown third party to another third party (XYZies) that was retained to receive marketing calls on behalf of Viasat (and other entities). Once that fuller picture emerged, Viasat's later filings reflected the developing evidentiary record.

### D.  Plaintiff Withheld the Recordings Until November 20, 2025.

While Viasat's precise understanding of the second alleged call changed in discovery, the case dispositive facts have been constant throughout. Viasat has *always* contended that it did not place any calls to Plaintiff and was not otherwise responsible for the subject calls (e.g., it did not authorize them and in fact contractually forbade third parties from making outbound calls) and thus it could not be liable under the TCPA. The recordings Plaintiff belatedly produced bear that out.

Plaintiff did not produce the call recordings until ordered to do so at an informal discovery conference in November 2025—months into the litigation, after multiple motions to dismiss, discovery disputes, and third party subpoenas had already occurred. The recordings do not support Plaintiff's repeated allegations that callers identified or confirmed themselves as calling from Viasat. Nor do they support Plaintiff's new allegations that he was transferred to an individual who confirmed he was a Viasat employee.  In fact, Plaintiff himself states on the second recording that he knows he is not speaking to Viasat itself. Dkt. 44-2, *supra,* page 5 at 11.  Had Plaintiff produced the recordings at the outset, much of the early pleading and discovery practice—including disputes about call direction, attribution, and vendor involvement—could have been clarified immediately. But Plaintiff did not make that choice, presumably because he recognized that, fundamentally, the recordings are irreconcilable with (if not destroy) his liability claims.

**E.    Plaintiff Files a Retaliatory Sanctions Motion Just Twelve Days After Defendant Filed its Own Sanctions Motion.**

Viasat's sanctions motion does not fault Plaintiff or his counsel for disputing Viasat's early characterization of an inbound call, nor does it argue that initial misunderstandings about call routing are sanctionable. It targets something much different: Plaintiff's continued advocacy of specific call-content allegations, pleaded

and sworn, despite Plaintiff's possession of recordings that undermine those allegations.

Plaintiff now seeks to isolate a single early inference advanced by Viasat's counsel made in connection with a now-moot motion and convert it into retroactive justification for Plaintiff's own litigation strategy. This is untenable.

### STATEMENT OF QUESTIONS INVOLVED

Should the Court sanction Viasat and its counsel under Rule 11 and/or the Court's inherent authority for filing a Rule 11 sanctions motion brought about by its own litigation misconduct?[3]

*Plaintiff's Suggested Answer*: Yes.

*Viasat's Answer*: No.

### LEGAL STANDARDS

Rule 11 imposes an objective obligation: by presenting a filing, counsel certifies that factual contentions have evidentiary support (or will likely have support after reasonable investigation) and that the filing is not presented for an improper purpose. Fed. R. Civ. P. 11(b)(1), (b)(3). The Third Circuit inquires whether the attorney's conduct was objectively reasonable under the circumstances. *Ario v.*

---

[3] Plaintiff exclusively moves pursuant to Rule 11 for an order imposing sanctions against Viasat and its counsel for filing its motion for sanctions against Plaintiff's counsel. Dkt. 61. While Plaintiff also suggests in passing the Court should sanction Viasat under its inherent authority, the brief does not provide any argument or law in support of that request. Dkt. 62. Accordingly, the argument is waived.

*Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.,* 618 F.3d 277 (3d Cir. 2010); *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991).

Courts repeatedly warn against using Rule 11 as a tactical weapon. *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 485 (3d Cir. 1987); Advisory Committee Notes to 1993 Amendments (warning against using Rule 11 to intimidate or increase costs); *see also Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 315 F. Supp. 2d 623, 628 (D.N.J. 2004) (Rule 11 not a substitute for merits litigation absent patent frivolousness); *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393 (1990) (Rule 11's purpose is deterrence of baseless filings, not chilling advocacy).

Rule 11 does not apply to discovery: "disclosures and discovery requests, responses, objections, and motions" under Rules 26–37 are excluded. Fed. R. Civ. P. 11(d).

## ARGUMENT

### I.    PLAINTIFF FAILS TO IDENTIFY ANY UNSUPPORTED OR OBJECTIVELY UNREASONABLE FACTUAL CONTENTION IN VIASAT'S SANCTIONS MOTION.

Plaintiff bears the burden of showing that Viasat's sanctions motion advances factual contentions so lacking in evidentiary support that no reasonable attorney could have filed or maintained them. *See* Fed. R. Civ. P. 11(b)(1), (b)(3). He does not meet that burden. Rule 11 asks only whether the attorney's conduct was objectively reasonable under the circumstances—not whether the opposing party

10

disputes the narrative or whether positions evolve as the evidentiary record develops. *Ario*, 618 F.3d at 297; *Ford Motor Co.* 930 F.2d at 289.

Measured against that standard, Viasat's sanctions motion is plainly reasonable. It is grounded in record evidence showing *inter alia* that Plaintiff possessed call recordings before suit; that those recordings do not support the call-content allegations pleaded and sworn to by Plaintiff; that Plaintiff withheld those recordings for months; and that carrier and vendor records undermine Plaintiff's attribution theory. At a minimum, a reasonable attorney could conclude that these facts support a sanctions motion directed at false factual contentions and the delayed disclosure of material evidence.

Plaintiff's contrary suggested approach would transform Rule 11 into an automatic penalty for litigating disputed issues—precisely what the Third Circuit has warned against. *See Gaiardo*, 835 F.2d at 482. Rule 11 does not punish advocacy simply because an opponent disagrees or because arguments are refined as discovery proceeds and facts develop. To the contrary, it requires counsel to reasonably reassess factual positions as better evidence emerges and to abandon allegations that lack evidentiary support. *Young v. Smith*, 269 F. Supp. 3d 251, 334 (D.N.J. 2017).

Plaintiff does not contend that Viasat fabricated evidence, knowingly misrepresented the contents of the recordings, or relied on facts it knew to be false. Nor could he. Instead, he seeks sanctions based on disagreement with Viasat's

11

characterization of the record and on the fact that Viasat advanced an earlier argument—now moot—based on the limited information available to it at the time. Rule 11 does not reach that conduct.

The Advisory Committee has cautioned that Rule 11 should not be used to intimidate opponents, drive up costs, or manufacture ancillary disputes between counsel and client. *See* Advisory Committee Notes to 1993 Amendments. Plaintiff's motion implicates exactly those concerns: he did not seek Rule 11 relief when Viasat filed its motions to dismiss or in connection with any alleged discovery dispute (which would be an improper procedural vehicle in any event), but only after Viasat moved for sanctions against Plaintiff's counsel—confirming the retaliatory nature of this filing and its lack of grounding in Rule 11's objective requirements.

## II.    PLAINTIFF'S "IRRECONCILABLE CONTRADICTION" THEORY MISCHARACTERIZES VIASAT'S SANCTIONS MOTION.

Plaintiff's motion assumes Viasat's sanctions motion depends on "call-routing semantics"—whether Plaintiff "called Viasat" versus being called, routed, or transferred. But Viasat's sanctions motion is directed at something else: Plaintiff's and counsel's repeated factual representations—pleaded and sworn—about what the callers said and did (including alleged "confirmation" they were Viasat), despite Plaintiff's possession of recordings Viasat contends contradict those representations.

Even taking Plaintiff's faulty premise at face value, Rule 11 does not require parties to freeze preliminary characterizations forever. It demands a reasonable

inquiry and evidentiary support—objectively assessed at the time. *Ford Motor*, 930 F.2d at 289; *Ario*, 618 F.3d at 297. Refining positions as evidence develops is not sanctionable; persisting in positions without support is. *Young*, 269 F. Supp. 3d at 333.

Plaintiff also mischaracterizes the earlier declarations he cites. As Viasat has shown, the declarations on which Plaintiff relies do not say "no third party exists"; they describe an entirely inbound marketing ecosystem, whereby calls are made to Viasat or to third parties, and contractual prohibitions on outbound telemarketing on Viasat's behalf—points that are not "irreconcilable" with later evidence about whether particular numbers were associated with Viasat or with any vendor. Rather, Viasat has been consistent on its position: it did not call Plaintiff, did not authorize calls to Plaintiff, and contractually forbade such calls. Plaintiff's "irreconcilable" framing depends on rewriting the record, not on demonstrating objective unreasonableness.

More fundamentally, nothing about whether Viasat was correct to initially describe one call (based on the limited information available to it[4]) as an inbound call is legally relevant to Viasat's sanctions motion. Again, Viasat is reluctantly seeking sanctions because Plaintiff's counsel has repeatedly misrepresented the contents of both recorded calls on which Plaintiff's case entirely depends.

Counsel's own authorities confirm that alleged reliance on an adversary's

---

[4] It is entirely accurate to refer to this call as "inbound" to Viasat, whether it was made by Plaintiff or whether it was transferred from an unknown third party. In either case, Viasat and its vendor (hired only to receive calls) did not place the call.

representations does not excuse advancing unsupported facts. Rule 11 places the burden on the filer—not the opposing party—to ensure factual accuracy. *See Ario*, 618 F.3d at 297. That, of course, makes sense. Logically speaking, that Viasat, operating on less information than Plaintiff and his counsel, disputed whether the calls occurred, whether Plaintiff received or made the calls, and so on, simply could not justify making false statements about the calls. If counsel wanted to clear the air, he could have disclosed the calls. Why he did not is obvious – the recordings destroy Plaintiff's claims against Viasat. But what he could *not* do is say that callers stated and confirmed that they were from Viasat, because the callers did not do so. In fact, as discussed at length, the one caller who mentioned Viasat claimed only that he was an authorized services provider for the company, made clear that he represented over 10 different internet service providers, pitched services from an Oklahoma provider, and supposedly cited fake internet addresses, causing even Plaintiff himself to draw the commonsense conclusion that the caller was not with Viasat. *See* Dkt. 44-2 at 14. Any initial confusion on Viasat's part about the call and who placed it could not possibly justify Plaintiff repeatedly misrepresenting the nature of the calls.

Finally, even if there were some justification for Plaintiff's or his counsel's initial misstatements based on some action of Viasat's, they do not claim that Viasat's actions are currently creating confusion or currently offering some justification for continued misstatements. Nor could they, as they have had the recordings the whole

14

time. And yet even now he asks the court to permit him to file yet another complaint alleging that the second caller transferred Plaintiff to a "sales specialist … who confirmed they were calling from ViaSat" and that "the individuals all spoke as though they were calling from ViaSat." Dkt. 49-1 at 7, 9. Plaintiff's and his counsel's persistence in making false claims to this Court underscores the need for sanctions here, per Viasat's sanctions motion.

### III.    PLAINTIFF'S VENDOR-CONCEALMENT THEORY IS A DISCOVERY DISPUTE FORECLOSED BY RULE 11(D).

Plaintiff's second theme—vendor identification and alleged "concealment"— is overwhelmingly a baseless complaint about discovery responses, vendor disclosures, and discovery timing. In other words, it is about a garden-variety discovery dispute. Rule 11 expressly excludes those matters. Fed. R. Civ. P. 11(d). Plaintiff cannot evade Rule 11(d) by styling discovery grievances as an attack on Viasat's sanctions motion. Whether Plaintiff believes Viasat should have identified a vendor earlier or disputes the content and timing of discovery responses (which notably were provided months before Plaintiff provided the call recordings) is governed—if at all—by the rules designed to address discovery disputes, not by Rule 11. Accordingly, Plaintiff's sanctions motion should be denied on Rule 11(d) grounds alone, without reaching Plaintiff's recharacterization of Viasat's earlier pleadings or the merits of Viasat's sanctions motion.

That Plaintiff's Rule 11 motion is truly a discovery motion in disguise is

15

obvious from the remedies it seeks (aimed at discovery and case management such as striking filings, compelling revised discovery responses, and fee-shifting tied to discovery efforts), and reliance on cases about misrepresentations and concealment in discovery-adjacent contexts.[5] While no discovery violation occurred here, to the extent Plaintiff contends otherwise Rules 26-37 are the appropriate vehicle for his complaints.

## IV.    VIASAT CHALLENGES PLAINTIFF'S DEMONSTRABLY FALSE ALLEGATIONS, NOT AMENDMENT.

Plaintiff asserts Viasat's sanctions motion "tries to punish Plaintiff for simply amending" after Viasat allegedly concealed a vendor. *See* Dkt. 62 at 1. That framing is incorrect. Viasat concealed nothing from Plaintiff, and its sanctions motion is directed at Plaintiff's and his counsel's repeated demonstrably false call-content allegations and sworn submissions, as well as the months-long delay in producing recordings Plaintiff possessed from the outset—conduct Viasat contends forced extensive motion practice, third party discovery, and court intervention.

Viasat's sanctions motion discusses Plaintiff's proposed amendment as part of the broader chronology to show Plaintiff counsel's continued advocacy of an attribution narrative Viasat contends is contradicted by recordings and carrier

---

[5] Plaintiff's reliance on *In re Tutu Wells Contamination Litigation*, 162 F.R.D. 46 (D.V.I. 1995), is misplaced and unavailing. It is not controlling authority, and it addressed extreme, years-long discovery misconduct—violations of discovery orders, deliberate concealment of evidence, misleading discovery responses, and sanctions imposed pursuant to Rules 11, 16, 37, and the court's inherent authority.

evidence. Viasat does not argue that seeking to amend a pleading, standing alone, is sanctionable. But this particular amendment is further evidence of Plaintiff's continuingly false narrative. Plaintiff had no good faith basis in fact to allege Viasat directly called him in his first two complaints. He has no good faith basis in fact to amend to allege a call was transferred to someone who worked for Viasat. The call recordings confirm that Plaintiff's allegations are false.

## V.    PLAINTIFF PROVIDES NO DEVELOPED BASIS FOR INHERENT-AUTHORITY SANCTIONS.

Plaintiff's motion is brought pursuant to Rule 11(c)(2) and seeks sanctions based on Viasat's filing of its sanctions motion and alleged discovery conduct. Plaintiff nominally references inherent authority in his cover motion but, to the extent Plaintiff references inherent authority, Plaintiff does not provide a developed, independent legal argument warranting inherent-authority sanctions against Viasat or its counsel for filing a sanctions motion grounded in record evidence.

Where a party fails to present developed argument, the Court may treat the point as waived. And even setting waiver aside, inherent power is reserved for bad-faith conduct and is generally unnecessary where Rule-based mechanisms govern. *See In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 188-89 (3d Cir. 2002).

17

## CONCLUSION

Plaintiff's Rule 11 motion is a retaliatory effort that mischaracterizes the record and attempts to convert discovery grievances into Rule 11 sanctions. Plaintiff fails to identify any objectively unsupported factual contention in Viasat's sanctions motion, and Plaintiff's motion is independently foreclosed because Rule 11 does not apply to discovery responses and related discovery conduct under Rule 11(d). The Court should deny Plaintiff's motion in its entirety.

Dated: April 14, 2026

Respectfully submitted,

By: */s/ A. Paul Heeringa*

John W. McGuinness
(*Pro Hac Vice* to be Requested)
A. Paul Heeringa
(Admitted *Pro Hac Vice*)
MANATT, PHELPS & PHILLIP, LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, D.C. 20036
Telephone: 202-585-6500
jmcguinness@manatt.com
pheeringa@manatt.com

FREDERICK P. SANTARELLI (PA 53901)
STEVEN C. TOLLIVER, JR. (PA 327165)
ELLIOTT GREENLEAF, P.C.
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000 (phone)
FPSantarelli@elliottgreenleaf.com
sct@elliottgreenleaf.com

*Counsel for Defendant Viasat, Inc.*

18

## CERTIFICATE OF COMPLIANCE WITH LR 7.8

I hereby certify that, pursuant to M.D.Pa. Local Rule 7.8(b)(2), this Brief complies with the word-count limitation of Local Rule 7.8, as the Brief is less than 5,000 words (including headings and footnotes but not including the cover page, tables, signature block, or certificates) in 14-point Times New Roman font.

Dated: April 14, 2026                     /s/ A. Paul Heeringa
                                          A. PAUL HEERINGA

## CERTIFICATE OF SERVICE

I hereby certify that, on April 14, 2026, I filed the foregoing electronically through the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

By: /s/ A. Paul Heeringa
A. PAUL HEERINGA

19