# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all other similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>VIASAT, INC.,<br><br>       Defendant. | Civil Action No. 1:25-cv-00927-KMN<br>(Hon. Keli M. Neary) |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SANCTIONS AGAINST PLAINTIFF'S COUNSEL

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

ARGUMENT .........................................................................................................2

I.      Counsel's repeated false statements on an issue going to the heart of the case warrant sanctions. ...............................................................................2

II.     Precedent supports issuing sanctions here.......................................................8

III.    Counsel's narrative concerning Viasat's early call-record positions is irrelevant and meritless.................................................................................11

IV.    Counsel's reliance on amendment does not excuse his conduct. ..................14

V.     Counsel's § 1927 arguments ignore the multiplication of proceedings. .......15

CONCLUSION ....................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*,
618 F.3d 277 (3d Cir. 2010) ...............................................................1, 9, 10, 12

*Balthazar v. Atl. City Med. Ctr.*,
279 F. Supp. 2d 574 (D.N.J. 2003), *aff'd*, 137 F. App'x 482 (3d Cir.
2005) (unpublished)........................................................................................15

*Gaiardo v. Ethyl Corp.*,
835 F.2d 479 (3d Cir. 1987) .....................................................................10, 11

*Gillam v. Reliance First Capital, LLC*,
2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ................................................1, 4

*In re Kunstler*,
914 F.2d 505 (4th Cir. 1990) ...........................................................................8

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
278 F.3d 175 (3d Cir. 2002) ...................................................................3, 9, 16

*Jasinski v. Showboat Operating Co.*,
644 F.2d 1277 (9th Cir. 1981) ..........................................................................2

*Keister v. PPL Corp.*,
318 F.R.D. 247 (M.D. Pa. 2015) .................................................................8, 15

*Mary Ann Pensiero, Inc. v. Lingle*,
847 F.2d 90 (3d Cir. 1988) .........................................................................9, 15

*Sussman v. Salem, Saxon & Nielsen, P.A.*,
818 F. Supp. 1510 (M.D. Fla. 1993)..................................................................9

*Valdez v. Kreso, Inc.*,
144 F. Supp. 2d 663 (N.D. Tex. 2001) ..............................................................9

*Wharton v. Superintendent Graterford SCI*,
95 F.4th 140 (3d Cir. 2024) ..............................................................................3

*Young v. Smith*,
269 F. Supp. 3d 251 (M.D. Pa. 2017), *aff'd*, 905 F.3d 229 (3d Cir. 2018)........11

## STATUTES

47 U.S.C. § 227(c)(5).........................................................................................4

## RULES

47 C.F.R. § 64.1200(c)(2) ................................................................4

Fed. R. Civ. P. 83(a)(2) ..................................................................2

L.R. 7.8(a) .......................................................................................2

Rule 11 ...................................................................................passim

§ 1927 .........................................................................2, 9, 15, 16

**<u>INTRODUCTION</u>**

Viasat's Motion for Sanctions, like this case as a whole, is straightforward. To prove his direct liability claims under the TCPA, Plaintiff needed to show that Viasat placed at least two solicitation calls to him in a 12-month period.[1] Despite Viasat's adamant denials, Plaintiff spent months alleging that Viasat did just that, specifically claiming that various callers "stated" and "confirmed" that they were calling from Viasat. That was not true. Plaintiff possessed recordings of the calls that directly contradict Plaintiff's allegations and show that Viasat cannot be liable under the TCPA.

Plaintiff's TCPA claims are not merely "losing" and "adventuresome." Dkt. 64 at 5 (quoting *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 297 (3d Cir. 2010)). They are squarely foreclosed by evidence Plaintiff possessed since before this action was filed. Particularly unfortunate, Plaintiff is *still* making representations contradicted by the evidence, now seeking to amend his current pleading to add more falsehoods. That is not mere early-days confusion. It is a consistent pattern of disrespect for the truth warranting sanctions from this Court.

---

[1] *See also Gillam v. Reliance First Capital, LLC,* 2023 WL 2163775, at *3 (E.D.N.Y. Feb. 22, 2023) (dismissing on this basis, where plaintiff alleges only one call).

1

Counsel's response ignores the simple narrative Viasat laid out, seeking to deflect blame by sowing confusion. But Plaintiff's opposition is meritless and, more importantly, legally irrelevant. Plaintiff needed to show *inter alia* that Viasat placed two solicitation calls to him. The recordings show that he cannot do so and has known that all along. Any supposed confusion over whether Plaintiff placed or received one of the two calls cannot possibly justify his and his counsel's repeated false statements about the *content* of *both* calls. Those false statements have bred costly motions practice, third-party discovery, and court interventions. That misconduct and the resultant waste of party and judicial resources it has caused warrants a firm response, whether under § 1927, Rule 11, or the Court's inherent powers.

## ARGUMENT[2]

### I.    Counsel's repeated false statements on an issue going to the heart of the case warrant sanctions.

Section 1927 sanctions apply when counsel multiplies proceedings unreasonably and vexatiously, increasing an opponent's costs, and acts intentionally or in bad

---

[2] Viasat inadvertently omitted separately captioned "procedural history" and "questions involved" sections in its initial briefing. L.R. 7.8(a). It acknowledges and regrets the omissions. Still, the briefing substantively covered those items, and Plaintiff's own identification and analysis of the sanctions issues shows that the nature of the dispute is clear and that he suffered no prejudice. He has not requested any remedy in this regard, and none is warranted. *See* Fed. R. Civ. P. 83(a)(2) ("A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply."); *cf. Jasinski v. Showboat Operating Co.*, 644 F.2d 1277, 1280 n.5 (9th Cir. 1981) ("nonprejudicial noncompliance with local rules" is no reason to reverse).

faith. *See In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002). Rule 11 sanctions, in contrast, apply when counsel unreasonably makes false claims. *See Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 147 (3d Cir. 2024). And inherent-powers sanctions may apply if no other bases for sanctions exist. *See In re Prudential*, 278 F.3d at 189.

Here, Plaintiff's counsel acted in bad faith, or at the very least unreasonably and vexatiously, by repeatedly falsely claiming that callers stated and confirmed that they were calling directly from Viasat. Those claims were not one-offs and were not tangential to the case. Instead, Plaintiff and his counsel repeatedly mischaracterized facts going to the very core of the dispute in complaints, briefing, and attachments. Tellingly, Plaintiff's counsel offers little to justify those false statements.

Nor could he. The original complaint alleged that the first caller "stated he was calling from ViaSat" and that the second caller "stated they were calling from ViaSat." Dkt. 1 at 26. The first amended complaint, similarly, alleged that the second caller transferred Plaintiff to a "sales specialist … who confirmed they were calling from ViaSat" and that "the individuals all spoke as though they were calling from ViaSat." Dkt. 21 at 6, 8. Later, in opposing Viasat's motion to dismiss, counsel confirmed that the complaint alleged "self-identification as 'ViaSat.'" Dkt. 30 at 7. He also included a declaration from Plaintiff himself, in which Plaintiff said that, on the second call, he "sp[oke] with a representative who confirmed that they were calling

3

from ViaSat." Dkt. 30-2 at 2. And even now, Plaintiff's counsel seeks to file a second amended complaint alleging that the second caller transferred Plaintiff to a "sales specialist … who confirmed they were calling from ViaSat" and that "the individuals all spoke as though they were calling from ViaSat." Dkt. 49-1 at 7, 9.

None of that was true, as shown by the call recordings Plaintiff and his counsel have possessed from (indeed well before) the start of this case. On the first call, the caller said only that he was "Sam." Dkt. 44-1 at 2. He did not disclose his employer or even mention Viasat. *See id.* So, the assertion that the first caller "stated he was calling from ViaSat" is false. Dkt. 1 at 26. Importantly, that alone should be case dispositive. Whatever occurred on the second call, TCPA liability requires two calls from the same entity in the relevant time period. Plaintiff has no evidence tying the first alleged call to Viasat and thus no basis to sue Viasat for TCPA violations at all.[3]

On the second call—which came from a different number with a different area code, *see* Dkt 30-2 at 2—an unidentified caller[4] transferred Plaintiff to a "verification officer" named "Ryan Wilson," Dkt. 44-2 at 2. Neither person (the initial caller

---

[3] As noted above, the TCPA provision at issue explicitly requires that a plaintiff "has received more than one telephone [solicitation] call within any 12-month period by or on behalf of the same entity" to bring a private action for violations of the National Do-Not-call Registry regulations. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). Only one such call mandates dismissal. *See Gillam,* 2023 WL 2163775, at *3.

[4] This unidentified caller's voice on the recording is distinct from the initial caller's, suggesting that Plaintiff spoke with a different individual than the first caller.

or Ryan Wilson) disclosed their employer or mentioned Viasat. *See id.* at 2–3. Only after "Ryan" transferred Plaintiff to a third speaker did anyone talk about Viasat (albeit not only Viasat). So, Plaintiff's claims that "the individuals *all* spoke as though they were calling from ViaSat" were likewise false. Dkt. 21 at 8; Dkt 49-1 at 9 (emphasis added). Plaintiff's counsel does not argue otherwise.

And while the final speaker mentioned Viasat, it was not at all accurate to say that person "confirmed they were calling from ViaSat" or engaged in "self-identification as 'ViaSat.'" Dkt. 21 at 6; Dkt 30 at 7; Dkt 30-2 at 2; Dkt 49-1 at 7. On the contrary, the final speaker initially identified himself only as "Angel," said he was a "home service advisor," and eventually pitched Viasat services after suggesting that he had looked at which services would be most affordable. Dkt. 44-2 at 3–4. Over halfway through the call, Angel said, when asked, that his company's name was "Viasat Authorized Retailer." *Id.* at 10; *see also id.* ("We are [not] Viasat, but we are an authorized retailer of them."). But Angel likewise identified "the name of our company" (*i.e.*, his employer) and its website name as "GetTheFastestInternet.com," while also saying "we buy assets" and that Plaintiff "can check the information on BuyAssets.com." *Id.* at 11–12. Angel also clarified and stressed that "we work with more than ten companies" and "are an authorized retailer with more than ten companies." *Id.* at 11; *see also id.* at 13 ("We work with more than ten companies for the internet service right now on your area."). And indeed, before ever giving his

5

company name or information, Angel mentioned that he could offer Plaintiff services "with the company AirLink" too. *Id.* at 7. All of that prompted Plaintiff himself to note, "you aren't Viasat." *Id.* at 14.

Plaintiff's counsel acknowledges the call's contents in passing. *See* Dkt. 64 at 11–12. Yet he overlooks or downplays many statements, while mischaracterizing others. He says Angel "at various points states that he either *was* ViaSat, was 'authorized' by ViaSat, and eventually conceded that he was 'just' ViaSat." Dkt. 64 at 11 (emphasis added). But in fact, as noted, Angel ultimately claimed only that his company "was an authorized retailer" of Viasat's services. Dkt. 44-2 at 10.[5] And he repeatedly stressed that he was an "authorized retailer" for *not only* Viasat, but also more than 10 other internet service providers—something counsel never

---

[5] Angel appeared to acknowledge that "only Viasat" was an actual entity and to "understand" that his purported company's name, "Viasat Authorized Retailer," was not an official company name, while maintaining that his company was "only authorized to provide [Viasat]'s service." *See id.* at 15 (Bronstin: "Yeah, your website doesn't work, and there's no company in California named Viasat Authorized Retailer." Angel: "It's only Viasat. Basically, it's only Viasat. We are only authorized to provide the service to customers." Bronstin: "Right, but what… if it's not the name of your…" Angel: "I understand…" Bronstin: "Wait… yeah." Angel: "Go ahead, go ahead, sorry." Bronstin: "That's not even… Viasat isn't even Viasat's actual entity name." Angel: "Oh, it's Viasat, the entity, the name of the company, the name of the provider."). Consistent with other portions of the call, Angel ultimately never claimed that he was with or directly employed by Viasat, but only that he was authorized to provide Viasat's services (among many others, as he stressed throughout the call).

acknowledges. *See id.* at 11, 13. That all showed that Angel was *not* in fact, an employee of Viasat itself.

Plaintiff's counsel also downplays Angel's pitch for AirLink (which is an unrelated entity) since it is "a rural Oklahoma ISP that does not offer services in [Plaintiff]'s California zip code," and he downplays the fact that Angel gave the company and website name "GetTheFastestInternet.com" since that "isn't a real website." Dkt. 64 at 12. But of course, those points only underscore Viasat's argument here: no one could credibly believe that a sales representative pitching "another internet company in Oklahoma and a fictitious website" *was* Viasat, *id.* at 11, and no one could credibly claim that the representative had *confirmed* that they *were* Viasat.[6]

In short, no one could plausibly maintain that a company purporting to represent more than 10 internet service providers, pitching services from another provider, and offering up fictitious website and company names was in fact *the* internet service provider Viasat. That includes Plaintiff himself, who ended the call after stating the conclusion any reasonable person would have reached under the circumstances: "*you aren't Viasat.*" *Id.* at 14 (emphasis added). And yet Plaintiff and his counsel have

---

[6] For all those reasons, Bronstin cannot credibly argue that receiving a "ViaSat email and [declined] credit card charge" after the fact, *id.* at 12, somehow supports his false claims that the callers *stated* and *confirmed* that they were calling from Viasat. The content of the calls showed that those statements were not true. Instead, the last caller at most claimed to be an authorized retailer of Viasat (among others) who would help Bronstin obtain Viasat services. Nothing about the email was inconsistent with that or could transform the caller's statements into confirmations that he *was* Viasat.

now spent months doubling and tripling down by asserting not only that the callers *are* Viasat, but that they *stated* and *confirmed* as much. Just as Plaintiff himself confirmed before this case ever began, those statements were false.

## II.    Precedent supports issuing sanctions here.

This Court and others have imposed sanctions when, as here, counsel made consistently false claims when they knew or reasonably should have known the truth. In one case involving unsupported age-discrimination claims, for example, this Court noted, "[t]he weak basis for Plaintiff's lawsuit was clear from the start, and very little could have altered its failing trajectory. The claims simply had no basis in fact, yet Plaintiff nevertheless chose to advance them." *Keister v. PPL Corp.*, 318 F.R.D. 247, 262 (M.D. Pa. 2015). Rule 11 sanctions were thus proper, as "the allegations in Plaintiff's Second Amended Complaint were unsupported at the time that [his counsel] wrote them, and were unlikely to ever gain factual support during the course of discovery, because they simply were inaccurate. More troubling, this reliance on unsupported factual allegations was not accidental." *Id.* The very same can be said here of Plaintiff's counsel's claims, which are as false today as he knew or reasonably should have known them to be at the outset of this case.

Other cases are broadly similar. *See* Dkt. 58 at 9–10, 12–13, 16–19 (citing various cases); *see also In re Kunstler*, 914 F.2d 505, 514 (4th Cir. 1990) (Rule 11 sanctions proper since "errors pervade the complaint and concern information which

either was or should have been known to appellants" and counsel "appear to have relied entirely upon discovery in the hope of finding some factual support for many of their claims"); *Valdez v. Kreso, Inc.*, 144 F. Supp. 2d 663, 670 (N.D. Tex. 2001) (Rule 11 sanctions proper since counsel "knew that he was making false factual allegations when he made them" and "[n]o reasonable attorney would have made those factual allegations after the slightest inquiry, much less a reasonable inquiry"); *Sussman v. Salem, Saxon & Nielsen, P.A.*, 818 F. Supp. 1510, 1517 (M.D. Fla. 1993) (Rule 11 sanctions proper since "there is substantial evidence of inclusion of allegations in the Complaint which Plaintiff knew to be false").

Counsel's reliance on cases emphasizing restraint under Rule 11 does warrant a different conclusion. *See* Dkt. 64 at 5–7, 13–14, 16–18. Those cases addressed instances in which counsel acted amid genuine factual uncertainty, refined claims transparently through discovery, or advanced aggressive but evidentially supported positions. *See Ario*, 618 F.3d at 297; *In re Prudential*, 278 F.3d at 188; *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 95–96 (3d Cir. 1988). In those instances, courts denied sanctions because counsel grounded allegations in information they reasonably believed to be accurate at the time, because adverse facts emerged only through discovery, or because counsel corrected course once evidentiary gaps were revealed. The cases rightly stressed that Rule 11 and § 1927 are not designed to punish losing arguments in those situations, but do apply when counsel advances factual contentions

without evidentiary support or persists after that lack of support becomes apparent. *See Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482–83 (3d Cir. 1987).

Plaintiff's cases do not apply here because none involved counsel who possessed evidence directly contradicting his allegations from the outset of the case and nevertheless reaffirmed those allegations by his client under oath and through briefing, multiple times. Objectively, an attorney who pleads facts contradicted by evidence in his possession does not act reasonably. *See Ario*, 618 F.3d at 297. That is different in kind than merely advancing "an ultimately unsuccessful pleading theory." Dkt. 64 at 2. And yet that is what happened here. Counsel did not operate under uncertainty. He possessed the most probative evidence from the outset—recordings of both calls on which Plaintiff's claims depend. Those recordings undercut any claim that the callers stated or confirmed that they were calling from Viasat, or that the calls were transferred to Viasat. Yet counsel chose to make those claims in the initial complaint, repeat them in an amended complaint, and include them in briefing and a declaration from Plaintiff—all while withholding the recordings and forcing dispositive motion practice, third-party discovery, and Court intervention—and he now repeats those false claims again in a proposed second amended complaint. Courts impose sanctions where counsel advances factual narratives contradicted by evidence in their possession or maintain those narratives after the factual foundation has collapsed. *See*

10

*Gaiardo*, 835 F.2d at 482; *Young v. Smith*, 269 F. Supp. 3d 251, 333 (M.D. Pa. 2017),

*aff'd*, 905 F.3d 229 (3d Cir. 2018). This Court should do the same.

### III.   Counsel's narrative concerning Viasat's early call-record positions is irrelevant and meritless.

Counsel devotes most of his briefing not to explaining why his repeated statements that the callers expressly *stated* and *confirmed* that they were from Viasat were true (as he should), but to falsely pointing a finger at Viasat and its counsel. He stresses Viasat's early litigating position in a motion no longer before this Court relating to whether the subject calls occurred, whether Plaintiff made or received the calls, who Plaintiff called if he made the call, and so on. *See, e.g.*, Dkt. 64 at 1, 3–4, 7–8, 10. He also complains about the timing of Viasat's discovery disclosure relating to vendor XYZies (a vendor which, as Viasat's sworn declaration in support of its motion to dismiss confirms, was contractually prohibited from making outbound calls and only retained to receive calls). *See, e.g.*, *id.* at 4, 8, 10, 15, 18. But none of those arguments help him here or undercut the case for sanctions.

First, no claim against Viasat and its counsel shows impropriety, as Viasat explains more fully in its response to counsel's own sanctions motion—a motion he filed solely because Viasat filed a sanctions motion. *See* Dkt. 61 at 1 ("This motion is directed at Defendant's sanctions motion itself.").[7] Unlike Plaintiff and his

---

[7] Indeed, because Plaintiff repeats most of his claims about Viasat's alleged conduct in his sanctions motion and the conduct mainly pertains to that motion, an extended discussion makes more sense in that context. But suffice it to say here, at

11

counsel, neither Viasat nor its counsel initially possessed the best evidence of whether the calls occurred and who was on them. But Viasat always accurately summarized the evidence it possessed.  Plaintiff now suggests that certain statements Viasat made essentially misled him into continually pleading a demonstrably false direct TCPA liability theory against Viasat, but disclosing the recordings would have cleared up any supposed confusion. Unfortunately, Plaintiff and his counsel chose to withhold the recordings instead, and now seek to capitalize on the early ambiguity they caused through a self-consciously retaliatory sanctions motion.

Second, and more importantly for this motion, Plaintiff's claims about Viasat's or its counsel's conduct are wholly irrelevant to his own repeated false statements about the contents of both calls. In fact, counsel's own authorities confirm that alleged reliance on an *adversary's* representations does not excuse advancing unsupported facts. Rule 11 places the burden on the filer—not the opposing party—to ensure factual accuracy. *See Ario*, 618 F.3d at 297. That, of course, makes sense. Logically speaking, that Viasat, operating on less information than Plaintiff and his counsel, disputed whether the calls occurred, whether Plaintiff received or made the calls, and so on, simply could not justify Plaintiff and his counsel making false statements about calls of which they possessed recordings from the outset. If Plaintiff's counsel

---

most Plaintiff can show that Viasat and its counsel acted reasonably amid factual uncertainty and incomplete information and refined claims through discovery.

12

wanted to clear the air, he could have disclosed the call recordings at any point. But what he could *not* do is say that callers stated and confirmed that they were from Viasat, because the callers did not actually do that.

In fact, as discussed at length above, the first caller says *nothing* about Viasat at all, despite the TCPA's requirement (as relevant to Plaintiff's claim) that Plaintiff connect *at least* two calls to Viasat.  Plaintiff's false statement that the first caller "stated he was calling from ViaSat" was legally necessary to avoid dismissal of this entire action.  Put differently, even if *all* of Plaintiff's statements about the *second* call were accurate, the recording of the *first* call doomed Plaintiff's claim.

But, of course, Plaintiff's statements about the subsequent call were also false. A person on the second call[8] who mentioned Viasat claimed only that he was an authorized services provider for the company; made clear that he represented over 10 different internet service providers; expressly pitched services from an Oklahoma provider; and cited fake internet addresses, causing even Plaintiff himself to draw the commonsense conclusion that the caller was not with Viasat. *See* Dkt. 44-2 at 14. Any confusion on Viasat's part about the calls, based on the limited information it

---

[8] To be clear, the person who actually made the second call was not identified on the recording.  Plaintiff was transferred twice before Viasat is even mentioned. It also bears repeating that Viasat did not authorize anyone to make any outbound calls.

had about them at the time, could not possibly justify Plaintiff and his counsel repeatedly misrepresenting the nature of the calls from the outset of the case.

Finally, even if there were some justification for counsel's initial misstatements based on some action of Viasat's, counsel does not claim that Viasat's actions are *still* creating confusion or currently justify continued misstatements. And yet even now he asks the Court to permit him to file yet another complaint alleging that the second caller transferred Plaintiff to a "sales specialist … who confirmed they were calling from ViaSat" and that "the individuals all spoke as though they were calling from ViaSat." Dkt. 49-1 at 7, 9. That persistence in making false claims underscores the need for sanctions here. Counsel has repeatedly misrepresented facts to this Court, keeps doing so, and needs to stop.

## IV.   Counsel's reliance on amendment does not excuse his conduct.

As a direct result of counsel's misstatements, Viasat was forced to incur substantial legal fees and costs associated with two motions to dismiss and comprehensive briefing, standing and liability analysis necessitated by Plaintiff and his counsel's shifting factual narratives, third-party subpoenas to disprove liability to Viasat, discovery disputes and Court conferences to obtain withheld evidence, supplemental evidence submissions, and opposition to futile attempts to further amend.

Counsel contends that his current effort to amend shows compliance with Rule 11's continuing-duty framework. That argument ignores the factual chronology and

14

the law. The issue is not that Plaintiff's counsel sought leave to amend after discovery progressed. It is that counsel filed and maintained allegations and sworn testimony without evidentiary support while purposefully withholding the most probative evidence disproving those allegations and exonerating Viasat. Amendment after months of litigation does not undo the costs imposed by earlier misconduct, nor does it retroactively validate earlier pleadings. *See Pensiero*, 847 F.2d at 95–96. That is particularly true when even the proposed amendment continues to advance the same disproved claims that warrant sanctions in the first instance.

Courts routinely reject attempts to use amendment to manufacture ambiguity and prolong litigation after the factual basis for claims has collapsed. *See Keister*, 318 F.R.D. at 267–69; *Balthazar v. Atl. City Med. Ctr.*, 279 F. Supp. 2d 574, 594 (D.N.J. 2003), *aff'd*, 137 F. App'x 482 (3d Cir. 2005) (unpublished). That should be doubly true when, as noted, the amended complaint itself contains the same misstatements that counsel has consistently advanced throughout the course of the case.

## V.    Counsel's § 1927 arguments ignore the multiplication of proceedings.

Counsel correctly observes that § 1927 targets post-filing conduct. That is precisely why sanctions are appropriate here under § 1927. After filing, Plaintiff and his counsel escalated unsupported allegations, submitted sworn testimony repeating them, withheld recordings that would have streamlined litigation (not to mention exonerate Viasat), and forced multiple motions and discovery disputes.

15

The sequence of events is undisputed. Plaintiff did not produce the recordings with his pleadings, did not reference them when opposing dismissal, did not produce them in discovery, and produced them only after a discovery conference, when the Court ordered it. During that lengthy period, Viasat was forced to file dispositive motions, pursue third-party subpoenas, and seek court intervention.

That conduct falls squarely within § 1927, as interpreted by the Third Circuit. *See In re Prudential*, 278 F.3d at 188; *Schaefer Salt*, 542 F.3d at 101. Counsel's reliance on cases involving aggressive but transparent litigation does not address the concealment of dispositive evidence presented here.

## CONCLUSION

The Court should grant the motion for sanctions under § 1927, Rule 11, and the Court's inherent sanctions authority.

Dated: April 15, 2026

Respectfully submitted,

By: */s/ A. Paul Heeringa*

John W. McGuinness
(*Pro Hac Vice* to be Requested)
A. Paul Heeringa
(Admitted *Pro Hac Vice*)
MANATT, PHELPS & PHILLIP, LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, D.C. 20036
Telephone: 202-585-6500
jmcguinness@manatt.com
pheeringa@manatt.com

FREDERICK P. SANTARELLI (PA 53901)
STEVEN C. TOLLIVER, JR. (PA 327165)
ELLIOTT GREENLEAF, P.C.
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
Blue Bell, PA 19422

16

(215) 977-1000 (phone)
FPSantarelli@elliottgreenleaf.com
sct@elliottgreenleaf.com

*Counsel for Defendant Viasat, Inc.*

## CERTIFICATE OF COMPLIANCE WITH LR 7.8

I hereby certify that, pursuant to M.D.Pa. Local Rule 7.8(b)(2), this Brief complies with the word-count limitation of Local Rule 7.8, as the Brief is less than 5000 words (including headings and footnotes but not including the cover page, tables, signature block, or certificates) in 14-point Times New Roman font.

Dated: April 15, 2026                    /s/ A. Paul Heeringa
                                         A. PAUL HEERINGA

## CERTIFICATE OF SERVICE

I hereby certify that, on April 15, 2026, I filed the foregoing electronically through the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

                                         By: /s/ A. Paul Heeringa
                                             A. PAUL HEERINGA

18