# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VIASAT, INC.,<br><br>Defendant. | Civil Action No. 1:25-cv-00927-KMN (Hon. Keli M. Neary) |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SANCTIONS AGAINST PLAINTIFF'S COUNSEL (APPENDIX OF UNPUBLISHED CASE CITATIONS)

137 Fed.Appx. 482
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial decisions
issued on or after Jan. 1, 2007. See also U.S.Ct.
of Appeals 3rd Cir. App. I, IOP 5.1, 5.3, and 5.7.
United States Court of Appeals,
Third Circuit.

Enez BALTHAZAR, Appellant,

v.

ATLANTIC CITY MEDICAL CENTER; Atlantic
City Medical Center Community Health Services;
Barbara Henderson, M.D.; Joseph Destefano, M.D.;
Allan Feldman, M.D.; Phillip Korzeniowski, M.D.;
Destefano, Feldman, Kaufman & Korzeniowski, P.A.;
Destafano, Feldman & Kaufman, P.A.; University
of Medicine & Dentistry of New Jersey, School of
Osteopathic Medicine; Richard Cooper, D.O., Appellees.

No. 03–3772.
|
Argued June 9, 2005.
|
Decided June 22, 2005.

**Synopsis**
**Background:** Patient sued physicians and medical center,
alleging that defendants' acts subsequent to their medical
treatment of the patient established a pattern of mail or
wire fraud and other activities constituting predicate offenses
under the Racketeer Influenced and Corrupt Organizations
Act (RICO). The United States District Court for the District
of New Jersey, 279 F.Supp.2d 574, Stephen M. Orlofsky, J.,
denied the patient's motion to file an amended complaint, and
sanctioned the patient's attorney. Patient appealed.

**Holdings:** The Court of Appeals, Van Antwerpen, Circuit
Judge, held that:

[1] order denying leave to file an amended complaint had
the effect of dismissing the plaintiff's federal claims with
prejudice, thus rendering a final decision for purposes of
appeal;

[2] court could consider counsel's appeal in his own capacity,
as distinct from his client's;

[3] action was barred by res judicata; and

[4] non-monetary Rule 11 sanctions were properly imposed.

Affirmed.

**Procedural Posture(s):** On Appeal.

West Headnotes (5)

**[1]      Federal Courts**  🔑 Pleading
Following expiration of the 30–day amendment
period in a district court's order, the court's
subsequent order denying leave to file the
amended complaint had the effect of dismissing
the plaintiff's federal claims with prejudice, thus
rendering a final decision for purposes of appeal.
28 U.S.C.A. § 1291.

1 Case that cites this headnote

**[2]      Federal Courts**  🔑 Requisites and
sufficiency; defects
Appellate court could consider counsel's appeal
in his own capacity, as distinct from his
client's, from a district court's imposition of Rule
11 sanctions against him; notwithstanding his
absence in the caption of the notice of appeal,
counsel identified himself in its body, identified
with specificity the sanctions levied against him,
and expressly gave notice that those sanctions
would be appealed, albeit by his client, and such
information, set forth in a case with a single
appellant who was not sanctioned in her own
capacity, sufficiently evidenced counsel's intent
to appeal alongside his client. F.R.A.P.Rule 3(c)
(4), 28 U.S.C.A.

5 Cases that cite this headnote

**[3]      Judgment**  🔑 Dismissal and nonsuit
**Judgment**  🔑 Reviewing court's
determination

Under New Jersey law, state appellate court's affirmance of a dismissal with prejudice for want of an affidavit of merit was an adjudication on the merits for purposes of res judicata.

6 Cases that cite this headnote

**[4]    Judgment**  👈 Identity of Cause of Action or Relief Sought

Patient's federal action, alleging that defendants' acts subsequent to their medical treatment of the patient established a pattern of activities constituting predicate offenses under the Racketeer Influenced and Corrupt Organizations Act (RICO), did not arise from a separate transaction or occurrence from that underlying her state court medical malpractice suit for purposes of res judicata under New Jersey law; patient could have presented her federal RICO claims in state court, and made fraudulent concealment claims arising out of her hysterectomy procedure as early as the date the lower state court denied her motion to amend her state complaint to allege such claims. 18 U.S.C.A. § 1962.

10 Cases that cite this headnote

**[5]    Costs, Fees, and Sanctions**  👈 Affirmative defenses, effect of

**Attorneys and Legal Services**  👈 Non-monetary sanctions

Non-monetary Rule 11 sanctions, ordering counsel to attend two continuing legal education courses, were properly imposed on counsel for filing a proposed amended complaint that was barred by res judicata; substantive allegations in the proposed amended complaint were almost precisely parallel to the client's unsuccessful state court claims, and were also almost identical to allegations that the district court had already dismissed in the client's original federal complaint. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

9 Cases that cite this headnote

**\*483** On Appeal from the United States District Court for the District of New Jersey. (Dist.Ct. No. 02–CV–1136). Before: Hon. Stephen M. Orlofsky.

**Attorneys and Law Firms**

Frank D. Branella, Philadelpia, PA, for Appellant.

Alan S. Gold, Gold, Butkovitz & Robins, Elkins Park, PA, Stanley P. Stahl, Sharon K. Galpern, Stahl & Delaurentis, Voorhees, NJ, Joseph A. Martin, Kerri E. Chewning, Archer & Greiner, Haddonfield, NJ, Thomas F. Marshall, Law Office of Thomas F. Marshall, Mount Holly, NJ, for Appellees.

Before AMBRO, VAN ANTWERPEN, and TASHIMA, * Circuit Judges.

OPINION OF THE COURT

VAN ANTWERPEN, Circuit Judge.

**\*\*1** Appellant Enez Balthazar brought a medical malpractice suit in New Jersey state court that was dismissed with prejudice when her attorney failed to file an affidavit of merit as required by state law. Before a state appeals court affirmed that **\*484** dismissal, Balthazar brought this action based upon the same events she had alleged in state court. Pursuant to Fed.R.Civ.P. 12(b)(6), the District Court dismissed the complaint without prejudice, granting Balthazar leave to move to file an amended complaint. Before she did so, a state appeals court affirmed the dismissal of her state court action. Balthazar subsequently moved to amend her federal complaint. The proposed amended complaint sounded not only in the same underlying allegations already rejected by the state appellate court, but also essentially in the same underlying allegations already once dismissed by the District Court. The District Court denied Balthazar's motion on several grounds, including *res judicata,* forming the basis for this appeal. The District Court also sanctioned Balthazar's attorney, requiring him to attend continuing legal education classes. For the reasons that follow, we will affirm.

I.

The origins of this appeal may be summarized as follows. After filing a medical malpractice action in New Jersey state court on behalf of his client, Ms. Balthazar, attorney Frank Branella failed to file an affidavit of merit in support of his

client's action. The omission, which has never been disputed and is required by New Jersey law, caused Ms. Bathazar's medical malpractice action to be dismissed with prejudice on May 14, 2001. *Balthazar v. Atlantic City Med. Ctr., et al.,* N.J.Super. Ct. Law Div., Camden County, No. L–4527–99 (2001). A state appellate court would later affirm that dismissal on March 5, 2003. 358 N.J.Super. 13, 816 A.2d 1059 (2003). [1]

While the state appellate decision was pending, Ms. Balthazar, through Mr. Branella, filed a complaint in federal court against the same defendants. The federal complaint alleged that defendants' acts subsequent to their medical treatment of Ms. Balthazar established a pattern of mail or wire fraud and other activities constituting predicate offenses under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 *et seq.* ("RICO"). [2] This federal complaint arose from the same conduct at issue in the dismissed state court action; it alleged that the same defendants had attempted to conceal the same acts of medical negligence that had occurred during the same (and only) medical procedure that defendants had ever performed on Ms. Balthazar—an abdominal hysterectomy on January 27, 1998. Specifically, the federal complaint alleged the defendants had conspired to use false records to defeat Ms. Balthazar's state court case and to defraud Ms. Balthazar by increasing the cost of litigation, thereby wasting her assets. [3] In addition to this RICO claim, Balthazar's federal compliant **\*485** alleged a conspiracy to deny her due process and equal protection under 42 U.S.C. § 1985 as well as related state law claims.

**\*\*2** Subsequent to the filing of this federal complaint, a New Jersey appellate court affirmed, in a published opinion, the dismissal of Ms. Balthazar's state court medical malpractice action. As discussed *infra,* central to our analysis in this case is the question of what the state appellate court adjudicated as to Ms. Balthazar's state court litigation. On its face, the state appellate court decision states in pertinent part:

> Plaintiff Enez Balthazar appeals from an order of May 23, 2000 dismissing with prejudice her claims for medical malpractice against [the defendants] as the result of [her] failure to comply with the requirements of the affidavit of merit statute, N.J.S.A. 2A:53A–26 through –29. Balthazar also appeals from an order of May 14, 2001 denying her motion to amend her complaint to allege claims of battery and fraudulent concealment. We affirm.

> ...

On appeal, Balthazar argues that her complaint should have been preserved because of the allegedly fraudulent maintenance of relevant records.... Balthazar also ... claims error in the court's denial of her motion to amend her complaint....

...

... Balthazar argues in her brief, and counsel argued orally that: 'The pivotal issue is whether appellant must rely on the fraudulent medical record that has been provided by respondents.... Appellant can prove the record is fraudulent and unreliable....'

*Balthazar v. Atlantic City Medical Center, et al.,* 358 N.J.Super. 13, 16–21, 816 A.2d 1059, 1061–63 (2003). With respect to these issues, the appellate court determined that:

> We do not find patent the 'fraud' that plaintiff claims to exist, and find no evidence that would suggest that it occurred.... Thus, this is not a case in which there is evidence of deliberate destruction or alteration of medical records in anticipation of suit....

*Id.* at 21, 816 A.2d at 1064. Further, as to allegedly fraudulent acts arising out of the surgery, the appellate court also determined that the allegedly fraudulent document—a second operative report in Balthazar's hospital chart—was substantially similar to the first operative report, and that defendants had provided a reasonable explanation for the presence of the second operative report. As such, it concluded, "[a]ny 'fraud' was thus inconsequential." *Id.* at 22, 816 A.2d at 1064. In so concluding, the appellate court also rejected claims by Balthazar that defendants had "deliberately misled her" about certain sutures, finding "[n]o support for the claim of deliberate misinformation ... in the record." *Id.* at n. 8. Further as to the allegedly fraudulent acts that Balthazar had used to support her motion to amend her complaint, the appellate court stated:

> As a final matter, Balthazar argues that the court committed error in denying as lacking factual support her motion to amend her complaint to assert causes of action for battery and fraudulent concealment....

**\*\*3** ...

... For the reasons discussed at length earlier in this opinion, we find no grounds for a claim of fraudulent concealment. We thus find no abuse of discretion by the trial court in denying Balthazar the right of amendment.

*Id.* at 26–27, 816 A.2d at 1067–68. For these reasons, the state appellate court affirmed the state trial court in its entirety, including the state trial court's dismissal of Balthazar's case with prejudice for **\*486** failing to comply with the requirements of New Jersey's affidavit of merit statute, N.J.S.A. 2A:53A–26 through –29. *Id.*

Meanwhile, in federal court, before the state appellate court had rendered this decision, Appellees the University of Medicine & Dentistry of New Jersey and Dr. Richard Cooper moved to dismiss Balthazar's federal complaint pursuant to Fed.R.Civ.P. 12(b)(6). Because the state appellate court had not yet rendered its opinion, summarized above, the District Court denied the motion on the grounds that Balthazar's federal claims were not plainly "inextricably intertwined" with a state court adjudication.

Subsequently, Appellees the Atlantic City Medical Center and Atlantic City Medical Center Community Health Services also moved to dismiss the federal complaint pursuant to Fed.R.Civ.P. 12(b)(6). The District Court granted that motion on March 3, 2003, dismissing Balthazar's claims without prejudice and granting Balthazar leave for 30 days to move to file an amended complaint. Balthazar does not appeal from that ruling.

Two days later, as summarized above, the state appellate court affirmed the dismissal of Balthazar's state court complaint and the denial of her motion to amend her complaint to allege claims of, *inter alia,* fraudulent concealment. Upon learning of the state appellate decision, the District Court in this case notified Balthazar's attorney on March 12, 2003 that it had reviewed the state appellate decision and that, should he move to amend based upon the events and allegations already adjudicated therein, the District Court would carefully scrutinize the proposed amended complaint for potential Rule 11 violations.

Ms. Balthazar, through her attorney Mr. Branella, subsequently so moved. The District Court reviewed the proposed amended complaint and issued an order to show cause as to why Mr. Branella had not violated Rule 11 in light of the state appellate court's adjudication. This prompted the defendants to file several motions for sanctions against Mr.

Branella, as well as cross-motions by the parties to disqualify their respective counsel. In an opinion and order filed August 15, 2003, the District Court (1) denied Balthazar's motion for leave to file the amended complaint and (2) imposed non-monetary sanctions on Mr. Branella pursuant to Rule 11(b) (1). The District Court determined that Balthazar's proposed amended complaint (I) failed to state claims under RICO and 42 U.S.C. § 1985; (ii) was barred by the doctrine of *res judicata;* and (iii) was also barred by the *Rooker–Feldman* doctrine. The District Court then denied the parties' motions for sanctions and disqualifications. This appeal followed.

## II.

 **\*\*4** **[1]** This case presents two questions of jurisdiction that we must resolve at the outset. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("[E]very federal appellate court has a special obligation to satisfy itself ... of its own jurisdiction ....") (internal quotation omitted); *Benchoff v. Colleran,* 404 F.3d 812, 815 (3d Cir.2005) (same). We first determine the status of the order from which Balthazar appeals, the District Court's August 15, 2003 order denying her motion for leave to file an amended complaint. We have jurisdiction over appeals "from all final decisions of the district courts of the United States," 28 U.S.C. § 1291, but here, from our review of the record, it appears there was neither a final order nor a dismissal of Balthazar's claims with prejudice after the District Court denied her motion for leave to file an amended complaint.

Guided by the Supreme Court's directive that we employ a "practical rather **\*487** than a technical construction" of § 1291's finality requirement, *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), we have previously held that a plaintiff can convert a dismissal with leave to amend into a final order by electing to stand upon the original complaint. *See, e.g., Borelli v. City of Reading,* 532 F.2d 950, 951–52 (3d Cir.1976) ("Only if the plaintiff ... declares his intention to stand on his complaint ... [does] the order become final and appealable."). Here, however, the record shows that Balthazar did not so stand; indeed, as discussed, she sought to amend and appeals only from the denial of her motion to do so. Nevertheless, we believe that the grounds of the District Court's ruling, especially as to the preclusive effect of the state court adjudication of Balthazar's claims, make plain the District Court's intent to dismiss her federal claims with prejudice. As such, requiring Balthazar to return to the District Court

now would wastefully elevate form over substance. *See, e.g., Schrob v. Catterson,* 948 F.2d 1402, 1407 (3d Cir.1991) (holding district court's use of transcript as a final order, while inappropriate, did not deprive us of jurisdiction). We thus conclude that, with the 30–day amendment period in the District Court's March 3, 2003 order having expired, the District Court's subsequent August 15, 2003 order had the effect of dismissing Balthazar's federal claims with prejudice, thus rendering a final decision for purposes of 28 U.S.C. § 1291.

We believe our conclusion is supported by our decision in *Shapiro v. UJB Financial Corp.,* 964 F.2d 272, 279 (3d Cir.1992) (holding "no practical purpose would be served" in dismissing an appeal where defendants did not question the appeal's timeliness and where there was but little doubt that the district court would, on remand, dismiss the claims with prejudice rather than revise its ruling). With no Appellee in this case having questioned the timeliness of this appeal either in briefing or at oral argument, and it being clear from the record that the District Court here would dismiss with prejudice on remand, the reasoning of *Shapiro* counsels that we treat the August 15, 2003 order as a final decision for purposes of § 1291.

 **\*\*5** **[2]** Our second jurisdictional question is whether we may consider Mr. Branella's appeal in his own capacity, as distinct from his client's, from the District Court's imposition of Rule 11 sanctions against him. Citing Rule 3 of the Federal Rules of Appellate Procedure and a 1992 decision of this Court, Appellees contend that we lack jurisdiction to review the imposition of sanctions on attorneys who file notices of appeal only in the names of their clients. *See Collier v. Marshall, Dennehey, Warner, Coleman & Goggin,* 977 F.2d 93 (3d Cir.1992); Fed. R.App. P. 3(c). Generally speaking, this is true: the requirements of Rule 3(c) are jurisdictional, see *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 320–21, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), and Rule 3(c) requires that a notice of appeal identify each appellant. Mr. Branella, in turn, observes that *Torres* emphasize that "mere technicalities should not stand in the way of consideration of a case on the merits." *Id.* (internal quotations omitted). He further argues that Rule 3(c) was amended on December 1, 1993, after our decision in *Collier,* and that, under the revised rule, a notice of appeal may specify the parties taking the appeal by "naming each one in the caption *or* body of the notice." Rule 3(c)(1) (A) (emphasis added). Mr. Branella further observes a second revision to the Rule stating that "[a]n appeal must not be

dismissed for ... failure to name a party whose intent to appeal is otherwise clear from the notice." Fed. R.App. P. 3(c)(4).

While we have not applied our decision in *Collier* to Rule 3 as revised, we have held that "[t]he purpose of Rule 3(c)'s **\*488** identification requirement is to provide notice to the court and the opposing parties of the identity of the appellants." *In re Continental Airlines,* 125 F.3d 120, 129 (3d Cir.1997) (citing *Torres,* 487 U.S. at 318, 108 S.Ct. 2405). Such purpose has been satisfied here. Notwithstanding his absence in the caption of the notice of appeal, Branella identified himself in its body, identified with specificity the sanctions levied against him, and expressly gave notice that those sanctions would be appealed, albeit by his client. We believe that, in this case, such information, set forth in a case with a single appellant who was not sanctioned in her own capacity, sufficiently evidences attorney Branella's intent to appeal alongside his client. *See* Rule 3(c)(4); *see also* Rule 3, 1993 Advisory Committee Note (noting that the 1993 amendment to Rule 3(c) was intended to "make[ ] it clear that dismissal of an appeal should not occur when it is otherwise clear from the notice that the party intended to appeal").

### III.

Our jurisdiction satisfied, we summarize the applicable standards of review. This Court reviews for abuse of discretion a district court's refusal to grant leave to amend a complaint on grounds of futility. *In re Adams Golf, Inc. Secs. Litig.,* 381 F.3d 267, 281 (3d Cir.2004). We likewise will not disturb a district court's decision to impose Rule 11 sanctions absent an abuse of discretion. *See Cooter & Gell v. Hartmax Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Waltz v. County of Lycoming,* 974 F.2d 387, 288 (3d Cir.1992).

### IV.

 **\*\*6** Ms. Balthazar first contends that the District Court abused its discretion in denying her motion for leave to file her amended complaint. The Federal Rules of Civil Procedure require that leave to file an amended pleading "shall be freely given as justice so requires." Fed.R.Civ.P. 15(a); *see also Bechtel v. Robinson,* 886 F.2d 644, 652 (3d Cir.1989) (finding a "strong liberality" in permitting leave to file an amended pleading). However, leave to file is not without limits. *See, e.g., Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9

L.Ed.2d 222 (1962) (denial of leave to amend is appropriate in circumstances "such as ... bad faith, ... undue prejudice to the opposing party ..., [and] futility of amendment"). Here, the District Court determined that Balthazar's amended complaint was futile on several alternative grounds, a determination that appears correct in all respects. That said, the Supreme Court has instructed that, in cases such as this involving state court adjudications, "[d]isposition of the federal action, once the state-court adjudication is complete, [is] governed by preclusion law." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544U.S. 280, 125 S.Ct. 1517, 1527, 161 L.Ed.2d 454 (2005). Accordingly, we will affirm on that basis alone.

The preclusion analysis in this case is straightforward. " 'It is now settled that a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.' " *Walker v. Horn,* 385 F.3d 321, 337 (3d Cir.2004) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)); *see also Paramount Aviation Corp. v. Agusta,* 178 F.3d 132, 135 (3d Cir.1999) ("federal courts should apply the general rule that the preclusive effect of a judgment is determined by the preclusion law of the issuing court"). [4] Under New **\*489** Jersey law, the following elements are required for *res judicata:* (1) the final judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one. *See McNeil v. Legislative Apportionment Comm'n of the State of N.J.,* 117 N.J. 364, 395, 828 A.2d 840, 859 (2003); *see also Watkins v. Resorts Int'l Hotel & Casino, Inc.,* 124 N.J. 398, 412, 591 A.2d 592, 599 (N.J.1991).

 [3]    Here, as to the first element, it is undisputed that the state court adjudication was valid and final, leaving only the questions of whether there has been an adjudication on the merits and whether the claims grow out of the same transaction or occurrence. Balthazar argues both in the negative. She first suggests that an appellate court's affirmance of a dismissal with prejudice for want of an affidavit of merit is not an adjudication on the merits. The argument is unpersuasive because it is incorrect as a matter of New Jersey law. Under New Jersey law, "a judgment of involuntary dismissal or a dismissal with prejudice constitutes adjudication on the merits as fully and completely as if the order had been entered after trial." *Velasquez v. Franz,* 123 N.J. 498, 507, 589 A.2d 143, 148 (1991) (internal quotation

omitted). More recently, the New Jersey Supreme Court has determined that there is no reason to depart from *Velasquez'* s well-settled principle in the scenario presented here, where the action was dismissed with prejudice for failure to file an affidavit of merit as required by the New Jersey affidavit of merit statute:

> **\*\*7**  Like the dismissal addressed in *Velasquez,* a dismissal under the Affidavit of Merit [statute] involves a failure to comply with the statute that the plaintiff cannot cure merely by amending the complaint. Non-compliance does not inhere in the complaint but in the failure to satisfy the essential, collateral affidavit requirement. The plaintiff would be prohibited by *res judicata* based on the Court's ruling in *Velasquez* from filing a new but identical claim.

*Cornblatt v. Barow,* 153 N.J. 218, 246 708 A.2d 401, 415 (1998). In addition to this controlling authority establishing that Ms. Balthazar's state court case was adjudicated on the merits as a matter of law, it is clear that the state appellate court, as discussed *supra,* thoroughly considered Ms. Balthazar's claims and evidence sounding in fraudulent concealment with respect to both her argument against dismissal and her argument that the trial court erred in refusing her motion to amend.

 [4]    Balthazar next suggests that her federal action arises from a separate transaction or occurrence, but we are not persuaded by her arguments that she could not raise her federal claim in her state court action and that she did not discover the facts supporting her federal claim until the fall of 2001. First, Balthazar could have presented her federal RICO claims in state court. *See Tafflin v. Levitt,* 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990) (state courts have concurrent jurisdiction over claims brought pursuant to federal RICO statute). Second, Balthazar made fraudulent concealment claims arising out of her hysterectomy procedure as early as May 14, 2001, the date the lower state court denied her motion to amend her **\*490** state complaint to allege such claims. 816 A.2d at 1061.

The remaining element necessary for *res judicata* is not seriously in dispute, as the parties in the federal action are identical to the parties in the state court action, with the minor exception that Dr. Larry Kaufman was named as a state court defendant but not as a federal defendant. In her federal complaint, Balthazar sued two practices that Kaufman was affiliated with, DeStefano, Feldman, Kaufman & Korzeniowski, P.A., and DeStefano, Feldman & Kaufman, P.A. Balthzar does not allege that Kaufman was negligent or conspired to cover up the alleged negligence; she alleges that she underwent a hysterectomy performed by Dr. Henderson, an employee of the medical group of DeStefano, Feldman, Kaufman & Korzeniowski, P.A., with the assistance of Dr. Korzeniowski, in the presence of a resident, Dr. Richard Cooper. Given Dr. Kaufman's lack of direct involvement as well as the fact that Balthazar has not argued that Dr. Kaufman's absence prohibits preclusion, we believe his absence is immaterial.

For all of these reasons, the elements of *res judicata* under New Jersey law are thus easily satisfied by the facts of this case.

Finally, we observe counsel's correct concession at oral argument that, even if Ms. Balthazar were granted leave to file another amended complaint, she would not, and could not, substantially depart from the amended complaint already rejected by the District Court. Because no amendment to Ms. Balthazar's federal complaint could abate the preclusive effect arising from the adjudication of her state court complaint, her proposed amendments were futile, as would be any future proposed amendments. Therefore the District Court did not abuse its discretion in denying leave to amend.[5]

### IV.

**\*\*8** **[5]** The final issue before us is whether the District Court abused its discretion in imposing non-monetary Rule 11 sanctions on Mr. Branella for filing the proposed amended complaint. Upon review of the record, we conclude the sanctions were proper in all respects. As the District Court correctly noted in its analysis of the substantive allegations in the proposed amended complaint, they were almost precisely parallel to Balthazar's unsuccessful state court claims. They were also almost identical to allegations that the District Court had already dismissed in Balthazar's original federal complaint. As such, the District Court acted within its discretion, as sanctions are proper when, *inter alia,* a party "insist[s] upon a position after it is no longer tenable...." Fed.R.Civ.P. 11 Advisory Committee's Note.

Under Rule 11, the appropriate sanction must be limited to one "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(c)(2). Among the sanctions contemplated by Rule 11 for this purpose are compulsory attendance of legal education classes. *See, e.g., Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 482 (3d Cir.1987). This is precisely what the District Court did here, ordering Mr. Branella to attend two continuing legal education courses, one entitled Federal Practice and Procedure, the other entitled Attorney Professionalism and Rules of Professional Conduct. As the titles of these educational courses indicate, they constitute no more of a sanction than is necessary for deterring the conduct at issue here. Accordingly, **\*491** for this reason as well, we discern no abuse of discretion on the part of the District Court with respect to the sanctions imposed against Mr. Branella.

### V.

For the foregoing reasons, the August 15, 2003 order of the District Court is affirmed.

**All Citations**

137 Fed.Appx. 482, 2005 WL 1473901

---

### Footnotes

\*      The Honorable A. Wallace Tashima, Senior United States Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Balthazar also filed a Petition for Certification to the New Jersey Supreme Court that was denied on June 5, 2003.

The civil RICO statute allows "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter [to] sue therefor in any appropriate United States district court." 18 U.S.C. § 1964(c).

As Balthazar concedes in her briefs before this Court, she had previously filed a state law malpractice action against the same defendants alleging the same underlying harm arising out of a hysterectomy performed on January 27, 1998 by or through Appellees. Balthazar named in her state court action defendants Atlantic City Medical Center, Atlantic City Medical Center Community Health Services; Barbara Henderson; M.D.; Joseph DeStefano, M.D.; Allan Feldman, M.D.; Phillip Korzeniowski, M.D.; Destefano, Feldman, Kaufman & Korzeniowski, P.A.; Richard Cooper, M.D.; and University of Medicine & Dentistry of New Jersey School of Osteopathic Medicine. Dr. Larry Kaufman was named in the state court action but not in the federal court action.

Additionally, as the Supreme Court explained in *Exxon,* the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to " 'give the same preclusive effect to a state-court judgment as another court of that State would give.' " *Exxon,* 125 S.Ct. at 1527 (quoting *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 523, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986)).

As such, we need not reach the District Court's alternative grounds for denying the motion.

---

**End of Document**                              © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 2163775

🚩 KeyCite Yellow Flag

Distinguished by [Schmitendorf v. Juicy's Vapor Lounge, Inc.,](#) D.Kan., March 6, 2024

2023 WL 2163775
Only the Westlaw citation is currently available.
For Online Publication Only
United States District Court, E.D. New York.

Adam GILLAM, individually and on behalf
of all others similarly situated, Plaintiff,
v.
RELIANCE FIRST CAPITAL, LLC, Defendant.

21-CV-4774 (JMA) (JMW)
|
Signed February 22, 2023

**Attorneys and Law Firms**

[Avi Robert Kaufman](#), Pro Hac Vice, Kaufman P.A., Coral Gables, FL, [Stefan Louis Coleman](#), Coleman, PLLC, New York, NY, for Plaintiff.

[Anthony J. Staltari](#), Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, [John W. McGuinness](#), Manatt, Phelps & Phillips, Washington, DC, Paul Heeringa, Pro Hac Vice, Manatt, Phelps & Phillips, LLP, Chicago, IL, for Defendant.

### ORDER

[AZRACK](#), United States District Judge:

**\*1** Before the Court is the motion filed by Defendant Reliance First Capital, LLC ("RFC" or "Defendant") that seeks dismissal for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), or in the alternative, to strike certain allegations from the Complaint pursuant to [Fed. R. Civ. P. 12(f).](#) (See ECF No. 19 (Defendant's Motion)). For the reasons set forth herein, the Court GRANTS Defendant's motion, and dismisses the Complaint with prejudice.

### I. BACKGROUND

The following facts, set forth in the Complaint and the attached exhibits, are presumed true for purposes of Defendant's motion to dismiss.

Plaintiff Adam Gillam ("Gillam" or "Plaintiff") is an individual who resides in Elwood, Indiana. (See Complaint ("Compl.") ECF No. 1, ¶ 1.) Defendant RFC is a Delaware-registered limited liability company headquartered in Melville, New York. (Id. ¶ 2.) RFC is a telemarketing company that "sell[s] home loans and refinancing plans to consumers." (Id. ¶¶ 16-17.)

Plaintiff alleges that, on or about February 22, 2017, he registered his cell phone number [1] on the National Do Not Call ("DNC") registry. [2] (Id. ¶ 23.) According to Gillam, his cell phone number "is not associated with a business, has never been held out by Plaintiff to the public, and is primarily for personal use." (Id. ¶ 24.) Between January 20 and August 3, 2021, Plaintiff received, but did not answer, any of the approximately seventeen (17) calls originating from the same number – (877) 271-3082. (Id. ¶ 26.) On or about August 4, 2021, Gilliam received another call from the same phone number, but this time answered the call and "spoke to an agent who was soliciting refinancing products and identified their company as [Defendant]." (Id. ¶ 28.) Gillam instructed the agent to "stop calling him," which RFC did. (Id.)

[1]    Plaintiff does not include his cell phone number in the Complaint or his opposition to Defendant's motion to dismiss.

[2]    The National DNC Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See Compl. ¶ 6; [47 C.F.R. § 64.1200(c)(2).](#)

Plaintiff initiated this action on August 24, 2021. (See Compl.) The Complaint asserts a single claim on behalf of Gillam and a putative class [3] against RFC, for its purported violation of their rights under Section 227(c)(5) of the Telephone Consumer Protection Act ("TCPA"), [47 U.S.C. § 227, et](#) [seq.](#) (Id.) In the Complaint, Gillam seeks injunctive, statutory, compensatory, and declaratory relief. (Id.)

[3]    Gillam seeks to certify the "Do Not Call Registry Class" ("DNC Registry Class"), consisting of "[a]ll persons in the United States who from four years prior to the filing of this action through trial

2023 WL 2163775

(1) Defendant (or an agent acting on behalf of the Defendant) called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff." Compl. ¶ 31.

**\*2** For the following reasons, the Court finds that Plaintiff has failed to sufficiently plead facts to support his TCPA cause of action. The Court grants Defendant's motion to dismiss and dismisses Plaintiff's Complaint with prejudice.

## II. DISCUSSION

### A. Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Dobroff v. Hempstead Union Free School Dist., No. 21-cv-1567, 2022 WL 4641128, at \*4 (E.D.N.Y. Sept. 30, 2022) (citing Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006)). A court may also consider materials attached to the complaint, materials integral to the complaint, and materials incorporated into the complaint by reference. See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

### B. Plaintiff's Telephone Consumer Protection Act Claim

Under the TCPA, it is generally unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—to any ... cellular telephone service [or] residential telephone line[.]" 47 U.S.C. § 227(b)(1)(A)-(B); Jennings v. Cont. Serv. Group, Inc., 239 F. Supp. 3d 662, 665 (W.D.N.Y. 2017) (quoting Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc., 847 F.3d 92, 94-95 (2d Cir. 2017)) ("The [TCPA] creates a private right of

action, providing for statutory damages in the amount of $500 for each violation as well as injunctive relief against future violations.").

Where, as here, a plaintiff asserts a cause of action pursuant to Section 227(c)(5) of the TCPA ("Section 227(c)(5)"), that plaintiff must allege that the defendant: (1) initiated more than one "telephone solicitation call" within a 12-month period; (2) to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC registry; (3) without the prior consent of the recipient. See Sterling v. Securus Tech., Inc., No. 18-cv-1310, 2019 WL 3387043, at \*5-6 (D. Conn. Jul. 26, 2019) (citing Jennings, 239 F. Supp. 3d at 665); 47 U.S.C. § 227(b)(1)(A)-(B), (c)(5); 47 C.F.R. § 64.1200(c)(2).

Defendant seeks dismissal of the Complaint based on Plaintiff's purported failure to sufficiently allege that he: (1) received more than one RFC-initiated "telephone solicitation" in a 12-month period; and (ii) is a "residential telephone subscriber" under Section 227(c)(5). The Court agrees and dismisses Plaintiff's Complaint with prejudice.

### 1. Plaintiff Does Not Plausibly Allege That He Received More Than One "Telephone Solicitation" in a 12-Month Period

**\*3** Defendant initially contends that Gillam's TCPA claim should be dismissed with prejudice based on his failure to sufficiently allege that he received more than one RFC-initiated "telephone solicitation" in a 12-month period. See 47 C.F.R. § 64.1200(c). Under the TCPA's promulgating regulations, a "telephone solicitation" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." Id. § 64.1200(f)(15). A telephone solicitation does not, however, include "a[ny] call or message [t]o any person with that person's express invitation or permission, [or] [t]o any person with whom the caller has an established business relationship." Id. §§ 64.1200 (f)(5) & (f)(15). A review of the Complaint reveals Plaintiff's failure to adequately plead these facts. Indeed, the Complaint does not allege that: (1) Plaintiff had not previously invited or permitted Defendant to call him and that (2) he and RFC lacked an "established business relationship" prior to the receipt of any calls from RFC's agent(s). [4] See Compl. ¶ 17.

[4] Plaintiff's reliance on paragraphs 19-21 of the Complaint is misplaced. Specifically, those

paragraphs contain general allegations about the class and do not specifically address Plaintiff.

Plaintiff has similarly failed to allege sufficient facts regarding the content of the calls from which the Court could infer that the purpose of the calls was to encourage "the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200 (f)(15). Rather, Plaintiff merely concludes, without any factual support, that an RFC agent "solicit[ed] refinancing products" on the August 4, 2021 telephone call. Compl. ¶ 28. When faced with similarly deficient complaints, courts within and outside of this Circuit have dismissed the complaints without prejudice, and with leave to amend. See Sterling, 2019 WL 3387043, at *10 (dismissing TCPA claim without prejudice and with leave to file an amended complaint, assuming "Plaintiffs [could] cure the deficiencies of their TCPA claims."); Gulden v. Consol. World Travel Inc., No. 16-cv-01113, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (same); Jackson v. Caribbean Cruise Line, Inc., 88 F. Supp. 3d 129, 140 (E.D.N.Y. 2015) (same).

Additionally, while Plaintiff alleges receiving multiple calls, he only alleges answering one call and having one conversation with an RFC representative. See Compl. ¶¶ 25-28. Even if the Court were to assume arguendo that Plaintiff had sufficiently pled receipt of a telephone solicitation on August 4, 2021, his failure to plausibly plead receipt of at least one additional telephone solicitation from an RFC agent within the requisite 12-month period is fatal to his Section 227(c)(5) cause of action. See 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(f)(15). Plaintiff's contention that the Court should consider the other calls received by Gillam as "telephone solicitations" because they were allegedly "close in time to and from the same telephone numbers" as the August 4, 2021 telephone solicitation, is unavailing. See ECF No. 21 (Pl. Opp.) at 2; Nicholas Greene v. Select Funding, LLC, No. 2:20-cv-7333, 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) (dismissing plaintiff's complaint because he "only alleged one telephone solicitation" because "more than one telephone solicitation is needed to trigger a violation" and the plaintiff failed to allege "the content of the other calls that would allow the Court to reasonably infer that these other calls were solicitations.") Even assuming the accuracy of the screenshot of the call log included in Plaintiff's Complaint, Gillam did not actually engage with any of RFC's purported representatives until the August 4, 2021 call. See Compl. ¶ 26. Specifically, the call log shows, with the exception of the August 4, 2021 call, that the other calls were "blocked," "missed call[s]" or "declined call[s]." As such, Plaintiff has not plausibly alleged that these prior calls were "telephone solicitation[s]" under Section 227(c)(5). See Greene, 2021 WL 4926495, at *5. As Plaintiff has failed to plausibly allege this element of his claim, the Court grants Defendant's motion to dismiss.

### 2. Plaintiff Does Not Plausibly Allege That He is a "Residential Telephone Subscriber"

**\*4** On its face, Section 227(c) applies only to "residential" telephone subscribers. See 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c). While multiple federal courts have found that a cellular telephone subscriber may satisfy Section 227(c)'s "residential telephone subscriber" element, a plaintiff must plausibly allege facts establishing that his cellular telephone is actually used for "residential purposes." See, e.g., Marks v. Unique Lifestyle Vacations, LLC, No. 20-cv-4915, 2021 WL 5495778, at *3 (E.D. Pa. Nov. 22, 2021) ("A plaintiff may provide specific facts to support his allegation that his cell phone is residential under the TCPA. However, it is not required that a plaintiff provide extensive detail to state a plausible claim as to the residential character of his cell phone."); Strange v. ABC Co., No. 19-cv-1361, 2021 WL 798870, at *4 (W.D. La. Mar. 1, 2021) (citing Cunningham v. McDonald, No. 15-cv-215, 2018 WL 6737418, *2 (M.D. Tenn. Nov. 5, 2018) ("While a person utilizing a cellular phone may fall within the definition of a 'residential telephone subscriber' under the act, Plaintiff's pleadings allege only that calls were made to his cellular phone and he has pled no facts or offered evidence sufficient for the court to draw the conclusion that he has stated a cause of action under subsection (c)(5)")). A plaintiff's failure to do so renders his Section 227(c)(5) claim(s) vulnerable to dismissal. See Kemen v. Cincinnati Bell Tel. Co. LLC, No. 22-cv-152, 2023 WL 361136, at *5 (S.D. Ohio Jan. 23, 2023) (finding a TCPA claim inadequately pled without allegations showing residential use); Hicks v. Alarm.com, Inc., No. 20-cv-532, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (same).

Based on the above caselaw, the Court finds that Gillam has failed to sufficiently plead that he was, at the time of the calls in question, a "residential telephone subscriber." Here, Plaintiff's Complaint contains conclusory allegations that his cell phone number was not "associated with a business, has never been held out by Plaintiff to the public, and is primarily for personal use," he fails to specifically allege any facts from which the Court could infer that the phone number is used for residential purposes. (See Compl. ¶ 24). This deficiency is similar to the plaintiff's pleading miscues in Hicks, where that court dismissed the plaintiff's Section 227(c) claim based on the plaintiff's failure to articulate – despite his allegations

Case 1:25-cv-00927-KMN    Document 66-1    Filed 04/15/26    Page 13 of 14

Gillam v. Reliance First Capital, LLC, Not Reported in Fed. Supp. (2023)

2023 WL 2163775

that the subject cell phone number was "not associated with a business" and was "for personal use" – any factual support for the "residential telephone subscriber" element of his Section 227(c) claim. Hicks, 2020 WL 9261758, at *5. The Court similarly finds that Gillam has failed to sufficiently plead this additional element of his Section 227(c) claim. Accordingly, the Court grants Defendant's motion to dismiss. [5]

[5]     Based on the Court's above findings and dismissal of Plaintiff's Complaint with prejudice, it is unnecessary to address Defendant's motion to strike certain portions of the Complaint, which the Court denies as moot. See Kemen, 2023 WL 361136, at *5; Smith v. Direct Bldg Supplies, LLC,

No. 20-cv-3583, 2021 WL 4623275, at *4 (E.D. Pa. Oct. 7, 2021).

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to allege sufficient facts to support his one-count TCPA Complaint. The Court grants Defendant's motion to dismiss and dismisses Plaintiff's Complaint with prejudice.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2163775

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that I am causing the foregoing and all attachments to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon all counsel of record.

Dated: April 15, 2026                                  */s/ A. Paul Heeringa*
                                                                   A. PAUL HEERINGA