# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ASHER BRONSTIN,** individually and on behalf of all others similarly situated, | Case No. 1:25−CV−00927−KMN |
| *Plaintiff,* | **CLASS ACTION** |
| *v.* | **JURY TRIAL DEMANDED** |
| **VIASAT INC.** | |
| *Defendant.* | |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS

## AGAINST DEFENDANT AND ITS COUNSEL

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

ARGUMENT .......................................................................................................4

    A.  ViaSat's "Limited Information" Defense Cannot Excuse Affirmative Sworn Misrepresentations It Voluntarily Made. .............................................................4

    B.  ViaSat's Effort to Reduce the Motion to "Call-Routing Semantics" Mischaracterizes the Record and the Misrepresentations at Issue. ......................12

    C.  ViaSat's Rule 11(d) Argument Is Misdirection. The Sanctionable Conduct Is in ViaSat's Court Filings, Not Its Discovery Responses. ...................................14

    D.  The Recordings Do Not Rehabilitate ViaSat's Misrepresentations. .............16

    E.  ViaSat's Amendment Defense to Its Sanctions Motion Inverts the Causal Chain. ................................................................................................................19

    F.  Inherent Authority Is Properly Before the Court. .......................................20

CONCLUSION ................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*In re Tutu Wells Contamination Litig.*, 162 F.R.D. 46 (D.V.I.) ..............................20

**INTRODUCTION**

ViaSat's Opposition rests on a single, much-repeated refrain: that its sworn factual misrepresentations were *"accurate and based on the limited information available to it at the time."* (Oppn. at 8.) That refrain cannot bear the weight ViaSat asks it to bear.

ViaSat's Opposition contains a self-defeating admission that, by itself, warrants sanctions. To salvage the "inbound call" representation it placed at the heart of its first motion to dismiss, ViaSat's Opposition now argues, in footnote 4, that "inbound" should be read to apply "whether [the call] was made by Plaintiff or whether it was transferred from an unknown third party." (Oppn. at 16 n.4.) That defense is squarely irreconcilable with Mr. Henderson's second sworn declaration, which categorically denied the very mechanism on which the Opposition now relies, stating, "Calls are not transferred by these vendors to Viasat, for example." (ECF 23-1 ¶ 10.) ViaSat cannot have it both ways. Either the "inbound" representation was supported only by the kind of vendor transfer Henderson swore did not occur, meaning the representation was unsupported when made, or Henderson's declaration was false when sworn and ViaSat did receive a transfer. Either alternative independently violates Rule 11, and ViaSat's Opposition does not, and cannot, reconcile the two.

1

No one forced ViaSat to file a sworn declaration. No one forced ViaSat to declare, in **bold**, that "it was the ***Plaintiff who called Viasat***—not the other way around." (ECF 11-1 at 7) (emphasis original). No one forced ViaSat to swear, through Mr. Henderson, that it had "no records of making an outbound call to the phone number alleged in the Complaint" and "confirmed that no third parties did so on Viasat's behalf." (ECF 11-2 ¶¶ 9-10.) And no one forced ViaSat to sign verified interrogatory responses perpetuating the refrain that the calls "did not occur" and that there were no responsive documents reflecting any third-party involvement. Those were ViaSat's voluntary, affirmative choices, made to obtain dismissal against Plaintiff by denying the very premises of his direct liability theory. They were not "preliminary characterizations" subject to later refinement, as ViaSat now suggests. They were sworn representations made to a Federal Court, subject to Rule 11, submitted to falsely portray Plaintiff's claims as fictitious.

More fundamentally, this was not innocent error. ViaSat deployed these misrepresentations through the highest-impact procedural vehicles available to it: a Rule 12 motion to dismiss, filed weeks into the case and before any discovery had occurred, and then doubled down in its second motion and its own motion for sanctions against Plaintiff. ViaSat placed its core misrepresentation, that the Plaintiff called Viasat, in **bold** at the head of its argument. It backed that misrepresentation with a sworn declaration from its own employee, attached to the

2

motion, so the Court would treat the falsehood as an established fact. And it did so through a fact-based standing challenge, the procedural vehicle most likely to terminate the case at the threshold, before Plaintiff could test the assertions in discovery, and then weaponized its own misrepresentations in seeking to sanction Plaintiff for daring to seek leave to amend his complaint after Defendant's deception was exposed. The deliberate selection of emphasis and procedural device confirms that what occurred here was a litigation strategy designed to win the case before it could begin, not a misjudgment under uncertainty.

Rule 11 contains no "limited information" exception that excuses unequivocal sworn declarations that declarant's own records show to be false, and it certainly contains no such exception when the party invoking it is the only party with complete access to the records in question. ViaSat, not Plaintiff, knew about its own vendor relationships, knew about XYZies' existence, and knew, at the time of the Henderson Declaration, whether the call its records reflected was a direct call to ViaSat or a transfer in from elsewhere, including XYZies. ViaSat could have said "we do not yet know" or "investigation is ongoing." It could have said that, based on the records, it appeared that the Plaintiff allegedly called XYZies, or that it obtained the Plaintiff's information from XYZies. Instead, it told the Court the opposite, in **bold**, that the Plaintiff "called Viasat" and used that representation to wrongfully attempt to obtain dismissal and forestall discovery into XYZies. And

3

when Plaintiff's discovery requests gave ViaSat the chance to correct the record, ViaSat doubled down rather than correct, verifying, through Henderson again, that "the calls alleged in the Complaint did not occur" and that no responsive documents existed. ViaSat disclosed XYZies only when this Court ordered it to.

ViaSat's secondary argument, that Plaintiff's motion really attacks discovery conduct foreclosed by Rule 11, is misdirection. The principal sanctionable conduct identified in Plaintiff's motion is ViaSat's motion to dismiss and the Henderson Declaration, both of which are textbook Rule 11 filings. The discovery responses corroborate the pattern of misrepresentation and further disprove ViaSat's "limited information" theory, but they are not the predicate. Plaintiff's motion can be granted on the motion to dismiss and the Declarations alone. ViaSat's effort to recharacterize the motion as one about "call-routing semantics" or as a backdoor discovery motion misses, by some distance, the point Plaintiff actually made.

For these and the further reasons set forth below, the Court should grant Plaintiff's Motion and award the relief identified in Plaintiff's opening brief.

## ARGUMENT

**A.    ViaSat's "Limited Information" Defense Cannot Excuse Affirmative Sworn Misrepresentations It Voluntarily Made.**

The centerpiece of ViaSat's Opposition is the contention that its motion to dismiss and Henderson Declarations, however inaccurate they may have been in retrospect, were "reasonable based on what Viasat understood at the time." (Oppn.

4

at 4.) ViaSat repeats variations on this theme throughout its brief. It states that the "inbound" characterization was "accurate" and "based on the limited information available to it" (*id.* at 5); that "subsequent discovery indicates" the call was actually transferred to XYZies (*id.* at 4), that "Viasat's (unidentified) later filings reflected the developing evidentiary record" (*id.* at 10), and that "[r]efining positions as evidence develops is not sanctionable" (*id.* at 16). This argument fails on five independent grounds.

*First*, ViaSat is not Plaintiff. The premise of ViaSat's defense, that it operated under conditions of limited information about how the call alleged in the Complaint reached ViaSat, is implausible on its face. ViaSat is the party in possession of its own vendor relationships. ViaSat now admits that it retained XYZies "to receive marketing calls on behalf of Viasat (and other entities)." (Oppn. at 10.) But, despite that being the case, and despite knowing that this was the case when it filed its motion to dismiss and the Henderson Declaration, ViaSat did not even *disclose* XYZies involvement until the Court ordered it to do so, which it did in December. ViaSat had the contracts. ViaSat had the records. ViaSat had the routing information, knew of XYZies involvement, and had the personnel to interpret such records. If anyone in this litigation had complete information about whether the call reflected in the Henderson Declaration was an inbound call directly to ViaSat or, instead, a transfer in from XYZies (or someone else), or even

5

if XYZies was involved at all, it was ViaSat. Plaintiff was the only party operating in a vacuum about ViaSat's vendor relationships, and that vacuum existed precisely because ViaSat denied that any vendor relationship was implicated.

*Second*, Rule 11 does not exempt a party from accountability for affirmative misrepresentations, or what is, at best, concealment of critical facts, merely because the party preferred not to investigate before making them. The reasonable inquiry obligation under Rule 11(b)(3) is a *precondition* to certifying a filing, not a standard to be applied after the fact when the filing turns out to be wrong. And mootness does not retroactively render Rule 11 misrepresentations un-sanctionable. If ViaSat lacked complete information about whether the call in its records was a direct call to it or a transfer from XYZies, the appropriate course was to say so. Counsel could have said any number of things short of affirmatively representing both that the Plaintiff *called ViaSat* and that no third party was even involved. For example, it could have stated that it was investigating whether any third parties were involved, that its records indicated that the origin of the calls was XYZies, or that it had no involvement in any call transfer. Instead, ViaSat affirmatively declared in **bold** that "it was the Plaintiff ***who called Viasat***" and submitted Henderson's sworn declaration that ViaSat had "confirmed that no third parties did so on Viasat's behalf." Characterizing a call transfer to ViaSat from XYZies as a call *from* the Plaintiff *to ViaSat* without any third parties is not "call-

6

routing semantics." It is an affirmative misrepresentation and concealment of a critical fact, XYZies involvement, that directly impugned the Plaintiff's testimony, pleadings, and credibility. Rule 11 does not permit a party to make affirmative sworn representations based on concealment and then retreat behind a "limited information" excuse it never invoked at the time that in any event was improper.

*Third*, even taking ViaSat's (mis)characterization of the record at face value, the Henderson Declarations were not "preliminary characterizations." They were declarations drafted, signed, and submitted under penalty of perjury, attached to motions that affirmatively made incorrect and unqualified representations about what the Plaintiff did. The first Declaration did not disclose that it received the Plaintiff's information or any call transfer, instead stating that *ViaSat's records* show that the Plaintiff *called ViaSat* and no third party was involved. Henderson shifted those representations in his second Declaration, swearing categorically that "at no time was a call made to the Subject Number by or on behalf of Viasat" and that "Viasat had no involvement in, and has no knowledge of, any of the calls alleged in the Complaint." (ECF 23-1 ¶ 14.) And, despite stating that ViaSat "has developed an "inbound" marketing program," where "consumers will place inbound calls to certain third party vendors (and to a lesser event [sic], to Viasat directly)," ¶ 8, the second Henderson declaration was deliberately silent about whether the Plaintiff is alleged to have made an inbound call as part of that

7

program or if any "certain third party vendor[]" was involved. For that matter, ViaSat's own declarations are internally inconsistent on third party involvement. Rule 11 does not allow a party to "preliminarily" swear something under oath and then disclaim the consequence by claiming the oath was conditional and concealing critical facts.

*Fourth*, and most importantly, ViaSat's defense of the "inbound" characterization is itself self-defeating and exposes yet another sworn misrepresentation. The Opposition now concedes that the call reflected "in *ViaSat's* records" "possibly captures an eventual call transfer by a still-unknown third party to another third party (XYZies) that was retained to receive marketing calls on behalf of Viasat (and other entities)." (Oppn. at 10.) Footnote 4 then doubles down by stating, "It is entirely accurate to refer to this call as 'inbound' to Viasat, whether it was made by Plaintiff or whether it was transferred from an unknown third party. In either case, Viasat and its vendor (hired only to receive calls) did not place the call." (Oppn. at 16 n.4.) ViaSat's entire defense of the "inbound" characterization thus depends on the proposition that a *transfer from* an unknown third party to ViaSat's vendor counts as an "inbound" call to ViaSat as reflected in its records.

That position is irreconcilable with Henderson's second sworn declaration. Henderson swore, categorically and under penalty of perjury, that "[c]alls are not

8

transferred by these vendors to Viasat, for example." (ECF 23-1 ¶ 10.) ViaSat's present defense for its "inbound" characterization depends on *precisely* the kind of transfer Henderson swore does not occur and expressly disclaimed under oath, that a transfer involving ViaSat's vendor (XYZies), counted as a call "to Viasat." The two positions cannot coexist. If Henderson's sworn statement that vendors do not transfer calls to ViaSat was true, then ViaSat's current defense of the "inbound" characterization collapses, because the only way that characterization can be saved is by construing the transfer from XYZies as a call to ViaSat, a position the declaration disclaims. And if ViaSat's current defense to the instant sanctions motion is true, then Henderson's sworn statement was false when made. The Opposition does not, and cannot, reconcile the two.

The Opposition tries to paper over this by pivoting to the irrelevant point that "Viasat and its vendor (hired only to receive calls) did not place the call." (Oppn. at 16 n.4.) But who physically dialed Plaintiff's number was never the question Henderson's declarations purported to settle. The questions Henderson purported to settle were whether ViaSat had any third party involved in the conduct, whether vendors like XYZies transferred calls to ViaSat, and whether the call reflected in ViaSat's records was a direct customer call by Plaintiff to ViaSat itself. Henderson swore "no" to the first two and "yes" to the third. ViaSat now concedes "yes" to first two and "no" to the third, while simultaneously asking the

9

Court to treat its earlier sworn answers as accurate "based on the limited information available to it at the time." (ECF 65 at 1.) That is not refinement of preliminary characterizations. It is the abandonment of sworn factual representations that ViaSat used, successfully, for many months, to try to obtain dismissal, malign the Plaintiff as some sort of fraudster, and to forestall vicarious liability discovery. Each is independently sanctionable.

The Declarations did not say that XYZies received the call now in dispute. They did not say that ViaSat was still investigating. They said, in unequivocal terms, that ViaSat had "no involvement in, and has no knowledge of, any of the calls alleged in the Complaint." (ECF 23-1 ¶ 14.) The Opposition simply continues to expose ViaSat's sworn misrepresentations and show why sanctions against both ViaSat and its counsel are appropriate. ViaSat stands in the awkward position of arguing that its sworn statements were reasonable when made, while in the same brief admitting that those sworn statements were factually wrong. The reasonable inquiry standard does not tolerate that distance between what was sworn and what was true. ViaSat knew of XYZies' involvement when Henderson signed his declarations, in which case the declarations were knowingly false, and has all but conceded that the Plaintiff's interpretations of the declarations and motions is correct by attempting to defend its characterization of the term "inbound." The opposition simply confirms the appropriateness of sanctions here.

10

*Fifth*, even setting aside everything above, ViaSat's post-filing conduct forecloses any inference that the Henderson Declarations were a good faith effort made under conditions of imperfect information. A party that genuinely operates on incomplete information, and that later learns its sworn statements were inaccurate, has obvious options. It can file a corrected declaration, withdraw the inaccurate filings, or simply disclose the correct information to the opposing party so that both sides can litigate on equal footing. ViaSat did none of those things. It did the opposite. When Plaintiff served discovery asking ViaSat to identify any third party that "made or was involved in the calls alleged in the complaint," ViaSat had Henderson verify, again under penalty of perjury, that "the calls alleged in the Complaint did not occur and therefore none" had any third party involvement. When Plaintiff served a Request for Production seeking "all contracts or documents representing agreements with any third party that dialed the calls to the Plaintiff," ViaSat answered that no responsive documents existed. Each of those responses was a chance to correct the record. ViaSat seized none of them.

It was only after Plaintiff was forced to raise these contradictions with the Court, and after the Court compelled ViaSat to identify any vendors involved in the calls, that ViaSat finally acknowledged XYZies' existence in December 2025, nearly six months after Henderson's first declaration, and only when continued concealment was no longer an option. ViaSat did everything it could to prevent

11

Plaintiff from learning the same information it was withholding. And it was only after the Court forced ViaSat to identify the third party that ViaSat adjusted its position. A party operating in good faith on imperfect information does not resist every opportunity to correct the record, withhold the corrective information from its adversary, and disclose the truth only when ordered to do so. Whatever charitable inference might otherwise have attached to ViaSat's earliest submissions, that the Court should treat them as a hasty first effort that turned out to be wrong or the kind of investigative misstep that occurs in the ordinary course of litigation, evaporates in the face of ViaSat's post-filing course of conduct. ViaSat had every chance to correct course. It chose, repeatedly, not to.

**B.      ViaSat's Effort to Reduce the Motion to "Call-Routing Semantics" Mischaracterizes the Record and the Misrepresentations at Issue.**

ViaSat repeatedly describes Plaintiff's theory as one about whether the call was "inbound, outbound, routed, or transferred." (Oppn. at 5.) In addition to being self-defeating, as outlined above, that framing is wrong twice over.

*First*, the misrepresentations Plaintiff identifies are not about call routing in the abstract. They are about who placed the calls and whether anyone besides ViaSat had any involvement at all. In the original motion to dismiss, ViaSat declared in **bold** that "it was the ***Plaintiff who called Viasat***—not the other way around." (ECF 11-1 at 7.) That was an affirmative attribution that the Plaintiff dialed ViaSat's number and spoke to ViaSat. Henderson's declaration echoed and

amplified that attribution by swearing the call was an "inbound call" placed by "an individual using" Plaintiff's number, who provided the name "Ash Bronstin" and a "credit card number," and who remained on the line for "23 minutes and 41 seconds." (ECF 11-2 ¶ 12.) ViaSat cannot now reduce that affirmative attribution to a benign observation about which direction the audio was flowing through the wires. ViaSat told the Court who placed the call, and that representation was false.

*Second*, the central misrepresentation is not really about routing at all. It is about *the existence of a vendor and ViaSat's relationship to it.* ViaSat's first motion to dismiss, the Henderson Declarations, and ViaSat's verified discovery responses each represented, in essence, that the entire program was a ViaSat program from beginning to end and that no third parties made the calls or were involved. ViaSat then leveraged those misrepresentations offensively to paint the Plaintiff as some sort of fraudster who lied about receiving calls and to forestall discovery into its vendor relationships. Defendant's hair splitting by parsing Henderson's words as carefully as possible fails. If the truth was that some third party existed and was involved, but that there was insufficient evidence as to what, precisely, they did, then Rule 11 imposed an obligation to state that, not hide behind a deceptively-written declaration. And, as outlined above, Defendant's own reading is self-defeating, as ViaSat's characterization of a call transfer as an "inbound" call in footnote 4 of its Opposition, and its position that a call to

13

ViaSat's vendors can be treated as one "to ViaSat," Oppn. at 6, is irreconcilable with the Second Henderson Declaration's statement that "Calls are not transferred by these vendors to Viasat, for example," coupled with either Declaration's failure to identify XYZies. ViaSat now admits the call alleged in the Complaint was placed by a third party that was transferred to ViaSat's vendor. Those positions cannot both be true. The Opposition's textual parsing does not change that result.

ViaSat's framing assumes that the only point of contention is the disputed call direction. It is not. Whatever else can be said about call direction or routing, ViaSat cannot reasonably maintain, and its sanctions motion no longer maintains, that the calls "did not occur," that the "Plaintiff called Viasat," or that no third parties were involved and that no call transfers took place. All those representations, and more of the same ilk in the same context, sworn under penalty of perjury, were indisputably false when made.

## C.    ViaSat's Rule 11(d) Argument Is Misdirection. The Sanctionable Conduct Is in ViaSat's Court Filings, Not Its Discovery Responses.

ViaSat devotes a full section of its Opposition to arguing that Plaintiff's motion is "overwhelmingly a baseless complaint about discovery responses, vendor disclosures, and discovery timing," and that Plaintiff's motion is therefore foreclosed by Rule 11(d). (Oppn. at 18.) That characterization is incorrect. Plaintiff's motion targets ViaSat's motions to dismiss and the Henderson

Declarations submitted in support, both of which are paradigmatic Rule 11 filings. Discovery responses simply corroborate the pattern of misrepresentations.

A motion to dismiss is a motion. Rule 11(b) plainly applies to motions. A declaration, sworn under penalty of perjury, attached as a supporting document to a motion is a "paper" certified under Rule 11. Rule 11(b) plainly applies to that, too. The misrepresentations Plaintiff identifies all appear in those filings. They were certified under Rule 11. They are subject to Rule 11. Plaintiff's motion succeeds on the motions to dismiss and the Declarations alone. The discovery responses simply show that ViaSat's pattern of misrepresentations wasn't just a one-off accident, precisely what ViaSat now pleads in its Oppositions.

The discovery responses thus serve as pattern evidence, confirming that the misrepresentations were neither isolated nor accidental and that ViaSat doubled down on them through three rounds of motion practice and into discovery. ViaSat's reliance on Rule 11(d) is, in effect, an attempt to avoid scrutiny of its motions to dismiss and the Declarations by repackaging Plaintiff's argument as a discovery dispute. That repackaging fails because Plaintiff has not asked the Court to sanction ViaSat under Rule 11 for its discovery objections. Plaintiff has asked the Court to sanction ViaSat for misrepresentations made in connection with its motion practice and for prosecuting a sanctions motion built on a factual predicate (XYZies' involvement) that ViaSat's prior sworn submissions denied.

15

Plaintiff's motion does, of course, identify ViaSat's discovery responses as further evidence of the same pattern. That use is permissible. Rule 11(d) excludes discovery *motions and objections* from Rule 11's direct scope. It does not preclude the Court from considering ViaSat's discovery conduct as circumstantial evidence of bad faith or as evidence that ViaSat's pleadings were knowingly false. The Court can sanction ViaSat for what it told the Court in its motions to dismiss, the Henderson Declarations, and for its own baseless sanctions motion, and it can do so even if every discovery response in the case were withdrawn tomorrow. The Rule 11(d) defense, in short, addresses an argument Plaintiff did not make.

**D.    The Recordings Do Not Rehabilitate ViaSat's Misrepresentations.**

ViaSat repeatedly suggests that the Court should excuse its sworn misrepresentations because Plaintiff "withheld"[1] his recordings of the calls. (Oppn. at 10.) That argument fails on two levels.

*First*, as Plaintiff has explained at length in his Reply in Support of Motion for Leave to File Second Amended Complaint and his Opposition to Defendant's Motion for Sanctions, the recordings do not "destroy" Plaintiff's claims. The recordings reflect a series of transfers (which ViaSat denied occurred in the Second

---

[1] Plaintiff complied with Rule 34 and Defendant makes no arguments otherwise. Responding to discovery propounded on a party within the express text of Rule 34 is not "withholding" discovery under any fair of that term, especially when the Defendant has taken the position that discovery should be stayed.

16

Henderson Declaration), ending with an individual who collected Plaintiff's personal information, processed a $300 charge for ViaSat's service, scheduled a ViaSat installation, and ultimately conceded that "[i]t's only ViaSat" and "[w]e are only authorized to provide the service to the customers." The recordings are corroborative of, not contradictory to, Plaintiff's initial theory that the calls were placed by ViaSat and simply transferred between departments internally (as confirmed by the First Henderson Declaration), making the only dispute as to call direction. ViaSat's mantra that the recordings "destroy" Plaintiff's case is, at best, an aggressive characterization of what they actually contain. At worst, those characterizations are themselves additional misrepresentations of the record.

*Second*, and more fundamentally, Plaintiff's production and the recordings he had in his possession are irrelevant to whether ViaSat's representations were supported when ViaSat made them. Rule 11 measures, at the time each certification was made, *ViaSat's* certification against the information *ViaSat* had. ViaSat's misrepresentations were about ViaSat's own vendor relationships, facts uniquely and exclusively within ViaSat's possession. No recording in Plaintiff's hands could possibly inform what ViaSat knew about XYZies. The recordings issue is therefore irrelevant to ViaSat's certification obligations.

ViaSat concealed all the information it had. All Plaintiff had was a recording reflecting an inbound call that was transferred between two individuals that

17

ultimately resulted in ViaSat credit card charges, a ViaSat installation appointment, and a concession that the Plaintiff was basically speaking to ViaSat. Those recordings support an internal transfer theory just as accurately as they do a third party transfer theory. Whether Plaintiff produced his recordings earlier, despite being under no obligation to do so, or later, does not change whether ViaSat, possessing its own records, knowledge of relationships, and contracts, had a reasonable basis to swear and plead what it did. ViaSat's sworn representations were either supported by reasonable inquiry into ViaSat's own records and vendor relationships, or they were not. The state of Plaintiff's discovery production does not bear on that question.

Perplexingly, ViaSat's defense of its inquiry treats the existence of XYZies as a matter that "emerged" only "[a]s the case progressed" through "subsequent discovery." (Oppn., *passim*.) But XYZies was not Plaintiff's vendor. XYZies was *ViaSat's* vendor. ViaSat retained XYZies. ViaSat could have identified XYZies' existence at any time, including before Henderson signed his first Declaration or before it filed its first Motion to Dismiss. That ViaSat instead chose to file declarations affirmatively denying any third party involvement, while concurrently knowing it had a relationship with XYZies, is the precise misconduct Plaintiff's motion targets. The recordings are a sideshow.

18

**E.     ViaSat's Amendment Defense to Its Sanctions Motion Inverts the Causal Chain.**

ViaSat protests that its sanctionable sanctions motion does not penalize Plaintiff's amendment, but rather his "demonstrably false allegations" and his delay in producing the recordings. (Oppn. at 19.) That argument inverts the causal chain. Plaintiff pleaded direct liability in his Amended Complaint against ViaSat because *ViaSat* affirmatively represented that direct liability was the only available theory: that "it was the ***Plaintiff who called Viasat***" (in **bold**), that no third party had any involvement, and that the calls "did not occur." Plaintiff's amendment to add XYZies, and to plead vicarious liability against ViaSat, was a direct response to the disclosure the Court compelled and identification of XYZies, an entity ViaSat had previously denied existed and whose involvement ViaSat had previously denied under oath. ViaSat now seeks sanctions because Plaintiff's pleadings did not match facts ViaSat itself withheld.

That is precisely the kind of ball hiding Rule 11 is designed to prevent. ViaSat cannot misdirect facts uniquely within its possession and then weaponize its own misrepresentations into a sanctions motion against Plaintiff. It certainly cannot do so after having knowledge of all facts and (1) swearing that no vendor was involved, (2) denying in discovery that any responsive documents existed, (3) refusing to participate in discovery on vicarious liability on the ground that no such theory was pleaded, (4) finally identifying XYZies only when ordered to do so, and

19

then (5) seeking sanctions because Plaintiff did not name XYZies sooner. Each link in that chain forecloses the next. ViaSat is not entitled to the benefit of its own concealment. *See, e.g.*, *In re Tutu Wells Contamination Litig.*, 162 F.R.D. 46, 68 (D.V.I.) (where party's prejudice was "was due entirely to their own lack of diligence [and] concealment," it "add[ed] insult to injury" to complain of consequences flowing from that concealment). The principle of *Tutu Wells*, that a party cannot leverage prejudice it created through concealment, is independent of degree. The question is the conduct's character of concealment, not the concealment's magnitude.

## F.      Inherent Authority Is Properly Before the Court.

ViaSat asserts that Plaintiff "waived" inherent authority sanctions by failing to develop a separate argument. (Oppn. at 20.) Not so. Plaintiff's motion expressly invoked the Court's inherent authority and tied it to the same conduct that supports Rule 11 relief. That is not waiver. It is a properly developed argument, pled in the alternative, that the same conduct, evaluated under the inherent authority standard, supports the same relief. The conduct here easily meets that standard. ViaSat made sworn statements its own records contradict. It concealed the very party it now relies on for its sanctions motion. It used those statements to obtain favorable inferences and to forestall vicarious liability discovery. And it now seeks fees for litigation that occurred only because it hid the truth. ViaSat's months of

20

concealment plus contradictory sworn statements plainly fit any reading of inherent authority. Whether viewed under Rule 11 or under the Court's inherent authority, the conduct merits the relief Plaintiff seeks.

## CONCLUSION

ViaSat's Opposition confirms, rather than cures, its Rule 11 violations. To defend the "inbound" representation, ViaSat now relies on the very vendor transfer Henderson swore "do[es] not occur." (ECF 23-1 ¶ 10.) One of those sworn positions is false, and Rule 11 measures both at the time of filing. ViaSat's invocation of "limited information" is itself an admission that the reasonable inquiry obligation was not met. Nobody forced ViaSat to swear what it swore, and it cannot now fault Plaintiff for taking those representations at face value. And ViaSat's concealment of XYZies, broken only by this Court's order, forecloses any inference of good faith. For the foregoing reasons, and for those set forth in Plaintiff's opening brief, the Court should grant Plaintiff's Motion for Sanctions, deny ViaSat's sanctions motion, and award the relief requested, including reasonable attorneys' fees and costs.

RESPECTFULLY SUBMITTED AND DATED this 28th day of April, 2026.

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue

21

Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.8(b)(2), I hereby certify that this brief contains 4,946 words.

DATED this April 28, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: April 28, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

22