### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all others similarly situated, : : : | CIVIL ACTION NO. 1:25-CV-927 |
| : | (Judge Neary) |
| Plaintiff : | |
| : | |
| v. : | |
| : | |
| VIASAT, INC., : | |
| : | |
| Defendant : | |

### MEMORANDUM

Litigation often involves important personal issues and significant amounts of money. This is why it is not a surprise that some cases can be highly emotional for everyone involved. Still, as stewards of the process, lawyers are expected to be courteous, collaborative, and maintain a high level of professionalism. It is incredibly rare that parties cannot foster a working relationship sufficient to cooperatively marshal cases through the federal system. This case presents that rare instance and should *not* be modeled by others.

For a case about unwanted marketing calls, it is unclear why passions have risen so high between the parties. Although the parties' conduct has unnecessarily complicated this matter, the court will resolve the numerous pending motions according to the governing legal standards. The court finds allowing an amended complaint would not be futile and so will allow this case to continue. The dueling motions for sanctions, however, will be denied.

## I. Procedural and Factual Background

Despite being on the no-call registry, plaintiff Asher Bronstin alleges agents for defendant ViaSat, Inc. called him twice, trying to market Viasat's services. (Doc. 49-1 ¶¶ 20, 25, 43, 50). Because of these unwanted calls, Bronstin brought this putative class action. In a prior order, the court bifurcated discovery, having the parties focus only on Bronstin's individual claim before delving into possible class certification. (Doc. 36).

At the same time, Viasat had filed a motion to dismiss this case. (Doc. 23). An associate director for the company claims it does not place outgoing calls to market its services and expressly forbids its contractors from doing so on its behalf. (Doc. 23-1 ¶¶ 2, 9). Further, the company argued Bronstin did not actually receive the calls in question and that the complaint did not adequately plead direct liability as to Viasat. (Doc. 24 at 9-14).

After briefing had completed on this motion, Bronstin filed a motion (Doc. 49) to file an amended complaint. In it, Bronstin argued that with the benefit of the discovery conducted thus far, his theory of the case had changed. Per this new theory, a new defendant company, XYZies, called Bronstin and then transferred him to Viasat. (Doc. 52 at 2). In his proposed amended complaint, Bronstin argues for direct liability as to XYZies and vicarious liability as to Viasat. (Doc. 49-1 ¶ 50). It appears Viasat acknowledges XYZies is one of its contractors. (Doc. 64 at 15).

Further, the parties now appear to agree that Bronstin received two calls on April 19, 2024. (See Doc. 44). In the second call on April 19, 2024, Bronstin was

2

transferred from the person who initially called him to another entity. (Doc. 44-2 at 2:17-24). After the transfer, Bronstin attempted to figure out who he was speaking to and the person on the other end of the line responded, "Viasat Authorized Retailer." (Id. at 9:18). The other individual then continues, saying "We are Viasat." (Id. at 9:22).

Shortly after Bronstin filed his motion for leave to file an amended complaint, Viasat filed a motion for sanctions. Among Viasat's gripes was that Bronstin did not disclose the call recordings at the heart of this case until November 20, 2025, almost six months after this case was filed. (Doc. 58 at 6). Bronstin retaliated with his own motion for sanctions. He defended not disclosing the calls earlier by saying neither party met the joint deadline of August 1, 2025, for initial disclosures. (Doc. 64 at 15). He further complained about Viasat not disclosing its relationship with XYZies for several months as well. (Doc. 62 at 7).

## II. Standards of Review

Under Federal Rule of Civil Procedure 15, leave to amend should be freely given "when justice so requires." FED. R. CIV. P. 15(a)(2). In the seminal case of Foman v. Davis, 371 U.S. 178 (1962), the Supreme Court of the United States provided guidance for when leave to amend may be denied. The circumstances that weigh against granting leave include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility. Foman, 371 U.S. at 182. Amendment is considered futile if the pleading, "as amended, would fail to state a claim upon

3

which relief could be granted." In re Merck & Co., Inc. Sec., Derivative & ERISA Litig., 493 F.3d 393, 400 (3d Cir. 2007) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)). Rule 15 aims to offer "the maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." United States v. Thomas, 221 F.3d 430, 435 (3d Cir. 2000) (citations omitted).

Whether to impose sanctions under Rule 11 is committed to a district court's discretion. See Scott v. Vantage Corp., 64 F.4th 462, 471-72 (3d Cir. 2023). "[T]he central purpose of Rule 11 is to deter baseless filings in district court . . . ." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). "In assessing compliance with Rule 11, courts must apply an objective standard of reasonableness, assessing a party's or attorneys' conduct based on what was reasonable to believe at the time the complaint was submitted. In other words, courts should avoid the wisdom of hindsight when conducting Rule 11 inquiries." Scott, 64 F.4th at 473 (cleaned up).

### III. Discussion

The court begins with Bronstin's motion to file an amended complaint. When opposing the first two complaints, it was Viasat's position that Bronstin did not receive the calls forming the basis of this lawsuit. (Doc. 24 at 4-5). That was the basis for its motion to dismiss for lack of standing. However, discovery has

confirmed that Bronstin did, in fact, receive two calls. (Docs. 44-1, 44-2). Therefore, there can be no question he has suffered an injury in fact.

With an injury in fact established, Viasat argues Bronstin has failed to meet the traceability requirement of standing. In this way, its arguments on standing more or less merge with its arguments on why Bronstin's proposed amended complaint fails to state a claim: it argues Bronstin has not established Viasat's liability in this case. (Doc. 56 at 5-8).

At this stage in the litigation, all Bronstin has to do is offer a plausible account of how Viasat violated the TCPA and harmed him. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (requiring that standing must be established "with the manner and degree of evidence required at the successive stages of the litigation.").

 Bronstin clears this threshold. Someone called him, and, after a transfer by that initial individual, a new person told Bronstin, "We are Viasat, but we are an authorized retailer of them." (Doc. 44-2 at 9:22-23). Viasat's contention that "no caller identifies themselves as Viasat" is plainly untrue. (Doc. 56 at 6). Moreover, Bronstin's proposed amended complaint premises its claims against Viasat on vicarious liability. (Doc. 49-1 ¶ 50). Thus, to the extent there is daylight between saying an organization is not the entity, but an authorized retailer of such entity, that is sufficient—at the pleading stage—to have the case proceed on a vicarious liability theory.

The court is aware Viasat strongly disagrees with the notion it violated the TCPA. And it does not discount the declaration from its associate director stating the company does not place outgoing calls to market its services and expressly forbids its contractors from doing so on its behalf. (Doc. 23-1 ¶¶ 2, 9). However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). This is not to say the court deems recovery remote in this case, but simply the burden on Bronstin at this point is quite light.

Finally, the court will continue to impose some restraints to control costs in this litigation. Though this action began as a putative class action, the court already bifurcated discovery to focus on the claims of the named plaintiff. (Doc. 36). The court stands by that decision and before turning to the potential class action aspect of this case, Bronsin will first be required to show that he, himself as the named plaintiff, has a triable case against Viasat. But for now, Bronstin's motion to file an amended complaint will be granted.

Turning to the next issue, both parties claim the other has committed sanctionable conduct. The core of Viasat's argument is that the call recordings show the case is meritless. (Doc. 58 at 1-2). Given the court finds Bronstin's proposed amended complaint states a viable claim, Viasat's motion must therefore be denied; a viable complaint cannot be frivolous. Again, discovery could very well prove Viasat has no connection to this case. But at this moment, the recordings show someone

claiming to be an authorized retailer of Viasat attempting to sell services as a result of a call which Bronstin did not place. That factual basis gives rise to a plausible claim, and so Viasat's request for sanctions will be denied.

Turning to Bronstin, he requests sanctions as a result of Viasat's motion for sanctions. Specifically, he argues the Viasat's motion rests on a "false narrative" because the limited discovery has shown Viasat has some relationship with XYZies and that, contrary to Viasat's original claims, Bronstin never called Viasat. (Doc. 61 at 1-2). Neither of those arguments are convincing.

To the extent Bronstin complains about Viasat hiding its relationship with XYZies, such an accusation rings hollow when Bronstin did much the same with the call recordings in this case. The point of discovery is to *reduce* litigation costs, and sometimes that is accomplished by sharing potentially inculpatory evidence with the opposing side. The court is disappointed in both parties' reluctance to share crucial information in this case.

Regardless, at this point, the evidence presently before the court does not establish objective unreasonableness by Viasat. Its position is that the company does not call others, and it prohibits its contractors from doing so on its behalf. Not even Bronstin contends Viasat called him at this point and, to the extent XYZies is responsible for calling him in violation of the TCPA, it is still possible that entity did so without Viasat's knowledge or consent. Bronstin's motion effectively assumes he has proven Viasat is liable for the claims asserted in the proposed amended complaint. That is far from certain at this juncture. Viasat's theory of the case is

7

well-within the bounds of reasonableness at this stage in the litigation and not grounds for sanctions.

## IV. Conclusion

The bar for stating a viable claim, while not nothing, is also not very demanding. Bronstin's proposed amended complaint clears that threshold, and so this case will be allowed to continue. As for both parties' requests for sanctions, the court finds neither party has lived up to standards all lawyers should strive for. At the same time, the court declines to issue sanctions and cautions the parties against similar finger-pointing cross-filings in the future.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

June 9th, 2026

8